UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| SHAKEY'S PIZZA ASIA VENTURES, INC.,<br><br>      Plaintiff,<br><br>v.<br><br>PCJV USA, LLC et al.,<br><br>      Defendants. | Case No. 2:24-cv-04546-SB-AGR<br><br>TENTATIVE ORDER DENYING IN PART AND GRANTING IN PART MOTION TO DISMISS OR STRIKE FIRST AMENDED COMPLAINT [DKT. NO. 85] |

      Plaintiff Shakey's Pizza Asia Ventures, Inc. (SPAVI) filed this action alleging that Defendants are infringing its registered trademarks related to the Potato Corner brand of flavored french fries.  On earlier motions, the Court found that the complaint stated plausible claims against Defendants Guy Koren, PCJV USA, LLC (PCJV), and PCI Trading, LLC, found that SPAVI was likely to succeed on the merits of its trademark infringement claim against them, and issued a preliminary injunction prohibiting Defendants' further use of the registered marks.[1]  The Court also granted SPAVI leave to amend, and SPAVI filed a First Amended Complaint (FAC) that added three new claims—for quantum meruit (Count 9), misappropriation of trade secrets (Count 10), and breach of confidence (Count 11).  Defendants now move to dismiss those claims for failure to state a claim or to strike Counts 10 and 11 under California's Strategic Lawsuit Against Public Participation (anti-SLAPP) statute, Cal. Civ. Proc. Code § 425.16.  The Court held a hearing on January 31, 2025.  The motion is denied, except as to SPAVI's preempted claim for breach of confidence.

---

[1] The Court's order at Dkt. No. 56 provides a lengthy discussion of the facts of the case, which need not be repeated here.

I.

"The anti-SLAPP statute was enacted to allow early dismissal of meritless first amendment cases aimed at chilling expression through costly, time-consuming litigation." *Metabolife Int'l, Inc. v. Wornick*, 264 F.3d 832, 839 (9th Cir. 2001). Defendants conflate their anti-SLAPP and Rule 12(b)(6) arguments, failing to clearly identify and apply the correct legal standard. To prevail on an anti-SLAPP motion, Defendants must "show both that their acts arose from behavior aimed at furthering their First Amendment speech rights, and also that Plaintiff[] ha[s] shown no probability of success on [its] claims." *Planned Parenthood Fed'n of Am., Inc. v. Ctr. for Med. Progress*, 890 F.3d 828, 831 (9th Cir. 2018).

A.

Defendants' anti-SLAPP motion fails at the first step: SPAVI's claims for trade secret violations and breach of confidence do not arise out of Defendants' speech. *See City of Cotati v. Cashman*, 29 Cal. 4th 69, 78 (2002) ("In the anti-SLAPP context, the critical point is whether the plaintiff's cause of action itself was *based on* an act in furtherance of the defendant's right of petition or free speech."). Defendants contend that SPAVI's claim arises from speech in PCJV's publicly filed Franchise Disclosure Documents (FDDs). But the FAC references the FDDs only to allege that Defendants have *acknowledged* the existence of SPAVI's trade secrets in their possession. *E.g.*, Dkt. No. 65 ¶ 12 ("[E]ach of PCJV's public disclosures, including Franchise Disclosures Documents, presumed – even declared – that the Potato Corner Intellectual Property consists, in part, of proprietary information and trade secrets that are the property of the licensor (now SPAVI), and must be maintained as secret."). The FDDs thus merely support SPAVI's claims, they are not the source of SPAVI's asserted rights.

To the contrary, the crux of Counts 10 and 11 is that SPAVI owns confidential information including the recipes and ingredients for its flavorings; that only licensed outlets may have access to the flavorings, subject to confidentiality agreements; and that Defendants misappropriated the confidential information by transferring the proprietary flavoring packages to a third party for reverse-engineering to allow Defendants to launch a competing brand. *E.g.*, *id.* ¶¶ 11, 14. Counts 10 and 11 do not reference the FDDs, contrary to Defendants' representation at the hearing, *id.* ¶¶ 170–82, and the two references to the FDD elsewhere in the FAC are peripheral, not the basis of the claims. *See City of Cotati*, 29 Cal. 4th at 78 ("[T]he defendant's act underlying the plaintiff's cause of

2

action must *itself* have been an act in furtherance of the right of petition or free speech.").

Accordingly, Defendants have not met their "initial burden to demonstrate the challenged causes of action arise from an act in furtherance of the defendant's right of petition or free speech." *Mack v. California Dep't of Corr. & Rehab.*, No. 1:15-CV-01600, 2016 WL 4000128, at *10 (E.D. Cal. July 25, 2016), *aff'd on other grounds*, 790 F. App'x 846 (9th Cir. 2019). Their anti-SLAPP motion is denied.

B.

The anti-SLAPP statute provides that "[i]f the court finds that a special motion to strike is frivolous . . . , the court shall award costs and reasonable attorney's fees to a plaintiff prevailing on the motion." Cal. Civ. Proc. Code § 425.16(c)(1). SPAVI asserts entitlement under this provision to an award of reasonable attorney's fees and costs "in an amount to be proven in a subsequent submission." Dkt. No. 94 at 20. Defendants did not respond to this request in their reply or at the hearing. The Court agrees that Defendants' anti-SLAPP motion is frivolous because SPAVI's challenged claims plainly are not predicated on Defendants' speech. SPAVI's unopposed request for an award of fees is therefore granted. The parties shall meet and confer in person or by videoconference and seek to reach agreement on the appropriate amount of reasonable attorney's fees and costs to be awarded. No later than February 14, 2025, the parties shall file either (1) a stipulation as to the reasonable amount of fees or (2) if they are unable to reach agreement, a joint motion in which each side presents its arguments—not to exceed eight pages per side and limited only to the issue of the reasonable amount of fees—together with any supporting evidence (including detailed billing records to support any fees SPAVI seeks to recover). The Court expects to rule on any such joint motion without a hearing unless it determines that a hearing would be useful.

II.

Defendants challenge SPAVI's quantum meruit and breach of confidence claims for failure to state a claim. Although their challenges to the trade secret misappropriation claim are asserted as part of their anti-SLAPP argument, it appears that they may also intend to move to dismiss Count 10 for failure to state a claim, and the Court, reading their motion generously, will consider those arguments.

A.

To survive a motion to dismiss under Rule 12(b)(6), a plaintiff must allege "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). A claim has "facial plausibility" if the plaintiff pleads facts that "allow[] the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). In resolving a Rule 12(b)(6) motion, a court must accept all well-pleaded factual allegations as true, but "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice," and courts "are not bound to accept as true a legal conclusion couched as a factual allegation." *Id.* (quoting *Twombly*, 550 U.S. at 555). Assuming the veracity of well-pleaded factual allegations, a court must "determine whether they plausibly give rise to an entitlement to relief." *Id.* at 679. There is no plausibility "where the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct." *Id.*

B.

Defendants summarily argue that SPAVI's quantum meruit claim fails because the FAC fails to allege (1) a reasonable expectation of payment, (2) Defendants' agreement to pay, or (3) unjust enrichment. Each argument fails.

Defendants cite legal authority only in support of their first argument—that a party seeking to recover for quantum meruit "must show the circumstances were such that the services were rendered under some understanding or expectation of both parties that compensation therefor was to be made." *McLeod v. Zero Gravity Mgmt.*, No. 2:22-CV-01547-FWS, 2024 WL 3304527, at *10 (C.D. Cal. Jan. 8, 2024) (quoting *Chodos v. Borman*, 227 Cal. App. 4th 76, 96 (2014)). At least at the pleading stage, SPAVI has met this burden. The FAC alleges that Defendants spent more than two years negotiating—ultimately unsuccessfully—for a royalty rate they would pay SPAVI. Dkt. No. 65 ¶¶ 79–82. The FAC also alleges that Defendants repeatedly acknowledged that the marks were owned by Cinco Group—SPAVI's predecessor-in-interest—and that Defendants were obligated to pay licensing fees to use the marks and would negotiate a written license agreement. *Id.* ¶¶ 57–59. In light of (1) SPAVI's purchase of the registered marks from Cinco Group, (2) Defendants' acknowledgments of Cinco Group's ownership of those marks and of Defendants' obligation to pay fees for their use, and (3) Defendants' negotiations with SPAVI to agree on a reasonable royalty rate, the

FAC alleges circumstances that plausibly support an expectation of payment for Defendants' continuing use of SPAVI's marks.

Defendants' remaining arguments fail. Defendants cite no authority suggesting that an agreement to pay is required for a quantum meruit claim. Indeed, an agreement to pay would presumably give rise to a breach of contract claim instead. And to the extent unjust enrichment is required for a quantum meruit claim (an assertion for which Defendants cite no authority), the FAC plausibly alleges that it would be unjust to allow Defendants to continue profiting from SPAVI's marks while refusing to pay any royalties. Defendants have not shown that they are entitled to dismissal of SPAVI's quantum meruit claim.

C.

Some of the arguments Defendants raise as part of their anti-SLAPP motion could also be construed as challenges to the plausibility of SPAVI's trade secret claim, which SPAVI clarifies in its opposition arises under California's Uniform Trade Secrets Act (CUTSA), Cal. Civ. Code § 3426 *et seq.*

Defendants first argue that the SPAVI does not identify its alleged trade secrets with sufficient detail, citing cases for the proposition that general lists of broad categories are not adequate to identify trade secrets. But the FAC alleges ownership of specific trade secrets, including "the specific ingredients and proportions of the ingredients in each of the approximately seven flavors, as well as the recipe for preparation of each," which SPAVI protects are "a deeply guarded secret" protected by restricting access to the flavoring packets to licensed Potato Corner stores bound by confidentiality agreements.[2] Dkt. No. 65 ¶ 11; *see also id.* ¶ 49 ("The Potato Corner brand is also identifiable by its preparation of fries, which uses seven proprietary flavorings sold to SPAVI by one single supplier, the identity of which is confidential and not publicly known. The ingredients are not known outside the Potato Corner family, and the specific recipe (and proportions of each ingredient) are a trade secret. SPAVI maintains and benefits from the secrecy of the recipes and ingredient allocation of each flavoring and requires its

---

[2] At the hearing, defense counsel disputed the existence of any such confidentiality agreements. On Defendants' pleading challenge, the Court accepts as true the allegations in the FAC, as it must.

supplier to protect that secrecy."). These allegations adequately identify the alleged trade secrets giving rise to SPAVI's claim.[3]

Defendants also contend that SPAVI has not alleged any improper acts of misappropriation, relying on the first sale doctrine—without any authority applying that doctrine in the trade secret context—to argue that purchasers of a product on the open market are free to reverse engineer the product. The FAC alleges, however, that Defendants received the flavoring packets under confidentiality agreements, that they were required to return them upon termination of their license, and that they instead improperly transferred them to unauthorized third parties for reverse engineering in violation of their obligations to maintain secrecy. *E.g.*, *id*. ¶¶ 50, 90, 173. Defendants do not meaningfully address these allegations or identify any authority suggesting that they are insufficient to survive a pleading challenge.[4] Accordingly, Defendants have not shown that they are entitled to dismissal of SPAVI's trade secret claim.

### D.

Finally, Defendants argue that SPAVI's breach of confidence claim in Count 11 is preempted by CUTSA. Under California law, CUTSA "preempts common law claims that are based on the same nucleus of facts as the misappropriation of trade secrets claim for relief." *K.C. Multimedia, Inc. v. Bank of Am. Tech. & Operations, Inc.*, 171 Cal. App. 4th 939, 958 (2009) (finding breach of confidence claim preempted). SPAVI argues that Count 11 is not based on the same facts as Count 10 but rather relies on information that may not rise to the level of a trade secret.

Numerous federal courts have relied on *K.C. Multimedia* to find that CUTSA supersedes claims based on the same facts even when the information

---

[3] Because the flavoring ingredients and recipes are sufficiently identified, the Court need not decide whether other allegations addressing other potential trade secrets are sufficient to identify any additional trade secrets. *See Franklin v. Midwest Recovery Sys.*, LLC, No. 8:18-CV-02085-JLS, 2020 WL 3213676, at *1 (C.D. Cal. Mar. 9, 2020) ("[Rule] 12(b)(6) does not provide a mechanism for dismissing only a portion of a claim") (collecting cases).

[4] In connection with an argument about "probable cause" for purposes of the anti-SLAPP statute, Defendants discuss evidence related to the licensing agreements and purchase orders. The Court does not consider evidence in ruling on the Rule 12(b)(6) motion.

does not rise to the level of a trade secret. *E.g.*, *Vox Network Sols., Inc. v. Gage Techs., Inc.*, No. 22-CV-09135, 2024 WL 1260573, at *4 (N.D. Cal. Mar. 25, 2024) ("If there is no material distinction between the wrongdoing alleged in a [C]UTSA claim and that alleged in a different claim, the [C]UTSA claim preempts the other claim.") (quoting *Arthur J. Gallagher & Co. v. Tarantino*, 498 F. Supp. 3d 1155, 1174 (N.D. Cal. 2020)); *Prostar Wireless Grp., LLC v. Domino's Pizza, Inc.*, 360 F. Supp. 3d 994, 1006 (N.D. Cal. 2018) ("To survive preemption, [the plaintiff's] claims must allege wrongdoing that is materially distinct from the wrongdoing alleged in a CUTSA claim.") (cleaned up); *Mattel, Inc. v. MGA Ent., Inc.*, 782 F. Supp. 2d 911, 987 (C.D. Cal. 2011) ("In an effort to align with the California courts that have addressed this issue, the Court concludes that UTSA supersedes claims based on the misappropriation of confidential information, whether or not that information meets the statutory definition of a trade secret."). On the other hand, SPAVI identifies a few older district court decisions that declined to dismiss claims based on confidential information that was not a trade secret. *E.g.*, *Applied Materials, Inc. v. Advanced Micro-Fabrication Equip. (Shanghai) Co.*, No. 07-CV-05248, 2009 WL 10709716, at *2 (N.D. Cal. Nov. 13, 2009).

To the extent these cases are in tension, the Court need not determine whether the law permits a separate breach of confidence claim based on information that is both not a trade secret *and* distinct from the facts giving rise to its CUTSA claim because the predicate of SPAVI's argument—that Counts 10 and 11 are based on different facts—plainly fails. The acts identified in Count 11 as giving rise to liability are:

a. Misappropriating the flavoring packages, which should have been returned upon receipt of the Termination Letter, using them without having the authority or right to do so, and delivering them to unauthorized third parties to reverse engineer and then manufacturing them to reverse-engineer SPAVI's recipes for their own benefit while refusing to the protect the secrecy thereof; and

b. Developing a fast-food business to compete with the Potato Corner brand while, at the same time, operating Potato Corner outlets and being in possession of the Potato Corner Intellectual Property and reverse-engineered flavorings that are the fruit of the misappropriation at issue.

Dkt. No. 65 ¶ 180.  These allegations are identical to the first two acts alleged as giving rise to trade secret misappropriation liability under CUTSA in Count 11.  *Id.* ¶ 173(a) and (b).

Thus, regardless of whether SPAVI could allege a viable breach of confidence claim, the claim it has alleged in Count 11 is plainly "based on the same nucleus of facts as the misappropriation of trade secrets claim for relief" and therefore preempted.  *K.C. Multimedia*, 171 Cal. App. 4th at 958.  Accordingly, Count 11 is dismissed for failure to state a claim.

### III.

Defendants' motion to dismiss is granted as to SPAVI's claim for breach of confidence in Count 11 of the FAC, and that claim is dismissed for failure to state a claim.  The motion is otherwise denied.

SPAVI's request for reasonable attorney's fees and costs incurred in opposing Defendants' anti-SLAPP motion is granted, and the parties shall file their stipulation or joint motion on the amount of fees by February 14, 2025, as ordered in Section I.B.

Date: January 31, 2025

Stanley Blumenfeld, Jr.
United States District Judge