<pre>
 1                   UNITED STATES DISTRICT COURT
                    CENTRAL DISTRICT OF CALIFORNIA
 2                  WESTERN DIVISION - LOS ANGELES

 3

 4   SHAKEYS PIZZA ASIA VENTURES, )  Case No. CV 24-4546-SB (AGRx)
     INC.,                        )
 5                                )  Los Angeles, California
            Plaintiff,            )  Friday, February 28, 2025
 6                                )  10:23 A.M. to 10:47 A.M.
                 v.               )
 7                                )
     PCJV USA, LLC, et al.,       )
 8                                )
            Defendants.           )
 9   _____)

10

11

12

13                     TRANSCRIPT OF PROCEEDINGS
            BEFORE THE HONORABLE STANLEY BLUMENFELD, JR.
14                  UNITED STATES DISTRICT JUDGE

15

16   Appearances:              See Page 2

17   Deputy Clerk:             Lynnie Fahey

18   Court Reporter:           Recorded; CourtSmart

19   Transcription Service:    JAMS Certified Transcription
                               16000 Ventura Boulevard #1010
20                             Encino, California  91436
                               (661) 609-4528
21

22

23

24
     Proceedings recorded by electronic sound recording;
25   transcript produced by transcription service.
</pre>

1    APPEARANCES:

2


3    For the Plaintiff:        Ervin Cohen and Jessup LLP
                                By:  MICHAEL D. MURPHY
4                                    KENNETH P. HSU
                                9401 Wilshire Boulevard, Ninth Floor
5                               Beverly Hills, California  90212
                                (310) 273-6333
6                               mmurphy@ecjlaw.com
                                khsu@ecjlaw.com
7


8    For the Defendants:       Blank Rome LLP
                                By:  TODD M. MALYNN
9                                    ARASH BERAL
                                2029 Century Park East, Sixth Floor
10                              Los Angeles, California  90067
                                (424) 239-3400
11                              todd.malynn@blankrome.com
                                arash.beral@blankrome.com
12

13

14

15

16

17

18

19

20

21

22

23

24

25

1    LOS ANGELES, CALIFORNIA, FRIDAY, FEBRUARY 28, 2025, 10:23 A.M.

2          THE CLERK:  Calling item ten, 24-cv-4546,

3    *Shakeys Pizza Asia Ventures, Inc. v. PCJV USA, LLC, et al.*

4          Counsel, please state your appearances starting

5    with plaintiff.

6          MICHAEL D. MURPHY:  Good morning, Your Honor.

7    Michael Murphy here on behalf of the plaintiff.

8          TODD M. MALYNN:  Good morning, Your Honor.

9    Todd Malynn and Arash Beral on behalf of defendant.

10          THE COURT:  All right.  Good morning.

11          And this is -- yes, did you?

12          KENNETH P. HSU:   Yes.

13          THE COURT:  One lawyer should, generally, identify

14    all parties.  No, that's okay.  You can identify yourself,

15    please.

16          MR. HSU:  Kenneth Hsu also on behalf of plaintiff,

17    Your Honor.  Good morning.

18          THE COURT:  All right.  And this is here on a

19    contempt motion.

20          Let me hear from the defense, if you wish to be

21    heard.  For the record, the Court did issue an order to try

22    to flesh out whether it should anticipate and be ready for an

23    evidentiary hearing, and the Court did not hear back from the

24    parties indicating that there is no request for an

25    evidentiary hearing.  Is there a request for further

1    argument, Counsel?

2         MR. MALYNN:  Your Honor, we're here to answer your

3    questions.

4         THE COURT:  And please be seated, other than

5    Mr. Beral.

6         MR. MURPHY:  There -- a couple points I would make

7    and --

8         ARASH BERAL:  Malynn.

9         MR. MURPHY:  Malynn.

10        THE COURT:  All right.  Mr. Malynn.

11        MR. MURPHY:  And those couple points were, in our

12   point of view, at the U.S. franchisor level.  The -- PCJV and

13   Guy Koren promptly, diligently, and reasonably complied with

14   this Court's order by debranding -- taking steps to debrand

15   and taking the steps to get the approvals -- state and

16   regulatory approvals and landlord approvers [sic] to complete

17   the rebrand by having signed a gentlemen's -- switched out

18   once they -- the tenant and the landlords approved the

19   modification to the permanent signage elements.  That's the

20   stage where we're at.  Everything is now at the tenant-

21   landlord stage, and once we get the landlords' approval, the

22   -- we get a date for installation, the signage -- the

23   remaining permanent elements will be done.

24        But as far as the debrand, they quickly acted --

25   you know, social media, uniforms, cups -- they did that

1  promptly, diligently, and there's no evidence that they did

2  not act in accordance with their interpretation of the order,

3  Your Honor.

4           THE COURT:  Is there any evidence with regard to

5  uniforms and product in November and December -- and perhaps

6  beyond but at least in November, December -- November 15th --

7  or starting November 15th of last year that your client was

8  using the brand contrary to the Court's order?

9           MR. MALYNN:  Your Honor, the record itemizes the

10  dates when they put in the orders for the uniforms and I --

11  at the top of my head, I don't know exactly when the uniforms

12  came in, but when they -- they were ordered.  When they came

13  in, they were sent out into the field.  Was that by

14  December 15th?  I don't know off the top of my head but as

15  declarations -- they went date by date of when they took

16  steps; so I believe you can rely upon the declarations to

17  answer that question.

18           THE COURT:  And what about the photographs that

19  were presented by the plaintiff in this case?  The

20  photographs that would suggest even ,if I'm recalling

21  correctly, as late as January?

22           MR. MALYNN:  No.  Well, the photographs in the

23  moving papers were in November.  In January the permanent

24  signage is -- was still up.  As far as the items, the -- in

25  January there was 35 stores that we believed were going to be

1    still affiliated with us that we would be working with.  I

2    don't know the exact timing of those pictures because we have

3    lost control of all but one noncompany-affiliated franchisee.

4    So the status of those pictures were of nonaffiliated -- I

5    can't speak to their compliance.  But with regards to the

6    PCJV company-owned stores in Seattle, which were down to

7    11 stores -- or stores -- restaurants, I believe the accurate

8    reflection are the pictures that were provided to you in the

9    supplement.

10          THE COURT:  But the Court did receive not only the

11   moving papers but reply papers, and the reply responded to

12   your opposition and attached more photographs, if I recall

13   correctly, and that was in January, January 14th to 16th --

14   thereabouts.  That would suggest that your client wasn't in

15   compliance as of the date that those photographs were taken.

16          Now, what I hear you to be saying, I think, is to

17   the extent that the photographs demonstrate lack of

18   compliance -- you're not disputing the photographs, you're

19   not saying the photographs are fabrications or submitted

20   fraudulently, but you're saying they would have been of third

21   parties who had no affiliation over which your client had no

22   control.  Am I understanding you correctly?

23          MR. MALYNN:  They can speak to the source of the

24   photographs.  I don't know the chain of custody and which

25   stores.  They -- that's their proffered evidence.  I can say

1    as of this hearing that those don't accurate -- those

2    pictures do not accurately reflect the state of the stores.

3    So to the extent that -- here we're to -- we're here to

4    discuss coercive action to compel compliance, and there's no

5    course of action by the judge -- by Your Honor that is needed

6    to get us into compliance.

7         THE COURT:  I understand that's your focus, but let

8    me tell you what the Court's focus is.

9         MR. MALYNN:  Yes, sir.

10        THE COURT:  There is that focus, to be sure, and it

11   may be that no coercive action is required at this point, but

12   the contempt proceeding also does raise the issue of

13   compensatory damages, effectively, during the period of time

14   where your client may not have been in compliance, and so my

15   questions are really directed at that.

16        MR. MALYNN:  With respect to the compensatory,

17   Your Honor, we don't believe there are any compensatory

18   damages.  This is about competing franchise systems.  They

19   didn't have one -- there was one -- there was one existing

20   franchise system --

21        THE COURT:  Let me pause you --

22        MR. MALYNN:  Yes.

23        THE COURT:  -- so that you're not off in one

24   direction and I'm asking about a different one.

25             There may be no claim here for royalty damage or

1    what have you -- at least I'm not satisfied, tentatively, by

2    what I've seen that there is, but there are the issue -- or

3    there is the issue of attorneys' fees, and that clearly is a

4    form of compensation that, if the Court finds that your

5    client was not in compliance, even if it currently is in

6    substantial compliance, that I'm going to have to deal with.

7         Did you have a meet-and-confer with the other side

8    about possibly agreeing upon an amount of attorneys' fees?

9    Before you answer, I'm not talking about the anti-SLAAP,

10   which the Court is disappointed with what it received --

11   largely from the plaintiff, I'm disappointed.  But have you

12   had a meet-and-confer to see if you can resolve the

13   attorneys' fees' issue concerning the period of arguable

14   noncompliance?

15        MR. MALYNN:  I have not had that discussion with

16   Mr. Murphy.  Happy to have that discussion today if you want

17   us to go outside and talk about that.

18        THE COURT:  All right.  Unless you have anything

19   further to say, I do want to hear from Mr. Murphy.

20        MR. MALYNN:  Yes, Your Honor.

21        THE COURT:  Thank you.

22        Start, please, with the issue whether the defense

23   -- the defendant is currently in substantial compliance.

24        MR. MURPHY:  Your Honor, no.  The answer is no.

25   And we take as -- January 31st as kind of the -- from

1    January 31st to today as the point that is most important for

2    this Court.  Prior to that date, this Court has already

3    found, we've established by clear-and-convincing evidence

4    that there was noncompliance at every store.  So from -- the

5    question is now from January 31st to today.

6            I sent out Mr. Agaki to look at every -- he checked

7    out seven of the stores on -- the day before yesterday.

8    Culver City -- they have branded cups, say "Potato Corner."

9    They've got menus.  They've got signs.  They actually had

10   people with uniforms in Topanga that say "Potato Corner."  I

11   have proof at every store that he went to still is displaying

12   "Potato Corner," and I'm going to talk about the signs in a

13   minute but even in obviously minor ways.  On the receipts,

14   when you get it printed out, it says "Potato Corner"

15   sometimes with the cartoon potato on it.

16           So I could present -- actually I assembled this

17   declaration in a manner that is compliant with this Court's

18   requirements as far as depositing with the Court hard copies.

19   I didn't file it last night because we didn't have authority

20   to file anything in addition --

21           THE COURT:  But, Mr. Murphy, I need for you to

22   focus on this proceeding --

23           MR. MURPHY:  Sure.

24           THE COURT:  -- not a proceeding that perhaps you

25   anticipate filing because I can't address -- or I can't

1    fairly ask the defense to address papers that have not yet

2    been filed, allegations that have not yet been made.

3              MR. MURPHY:  Happy to.

4              THE COURT:  So on this record is there substantial

5    compliance?

6              MR. MURPHY:  No, Your Honor.  Because the --

7              THE COURT:  Point to the record, please.

8              MR. MURPHY:  Well, the point to the record is that

9    they had -- they were ordered to show cause -- they had the

10   burden to establish as to each of the items that we raised

11   that there was either compliance -- kind of the purge issue

12   -- or is it was impossible to do so.  What we -- what has

13   been filed with this Court are very broad, vague, sometimes

14   intentionally equivocal declarations that fail to identify as

15   to each of the -- even the categories of violations at each

16   of the stores that were the basis for this Court's conclusion

17   of clear-and-convincing evidence that they have either been

18   rectified or impossible.  Let me given an example.

19             There are references to leases that prohibit

20   certain changes but no identification of any specific lease

21   as it applies to any specific store.  We're just taking the

22   word for someone that generally every lease makes it

23   impossible to have fixed the issues that we raised that was

24   the basis for this Court's conclusion of clear-and-convincing

25   evidence.

1          So there actually has been zero evidence of a

2   admissible or specific kind that would provide any convincing

3   confirmation for this Court that the issue has been resolved.

4   In other words, it's essentially a null set, which is why we

5   believe that the -- probably the best solution is a special

6   master.  Because we have -- we're -- we keep coming to court,

7   and we keep getting -- no -- there's no satisfying answer.

8   What I would love is a satisfying evidentiary presentation by

9   the defendants as to each of the categories, Your Honor, as

10  -- they've presented "Here's why we didn't," "Here's what

11  we've done."  Instead, we get generalities.

12          THE COURT:  Mr. Murphy, let me tell you what the

13  Court would appreciate.

14          MR. MURPHY:  Thank you.

15          THE COURT:  What the Court would appreciate is a

16  higher level of professionalism and cooperation in this case

17  -- and please look at me without a nonverbal response that is

18  disrespectful.  Just don't respond -- a genuine meet-and-

19  confer, and you go through the issues, and you seek to reach

20  a resolution, as opposed to constantly firing at each other

21  or coming into court without giving the Court any advance

22  notice that there are all of these violations that you intend

23  to introduce and you've come to court with a substantial

24  declaration, which means that this proceeding is going to

25  have to be continued, in effect, where what the parties could

 1   have done very simply -- and the plaintiff, in my view,

 2   should have done -- is said, "Yes, we do want an evidentiary

 3   hearing because there's noncompliance, and we're going to

 4   show you that," and that's what this proceeding is for, and

 5   instead, you come into court, don't ask for an evidentiary

 6   hearing.  My impression is there's substantial compliance

 7   based on the record I have, and now you're telling me there

 8   really isn't.

 9        And so that's what the Court would like, would

10   really appreciate, and I'm not seeing it in this case.  I've

11   seen a little bit of improvement, from what I can glimpse

12   into, in counsels' communications with each other but still

13   not the level of professionalism that should be expected,

14   that you should expect of yourself, your firm, and the other

15   side, and their firm.  So that's what the Court would really

16   appreciate.

17        So what is it -- is your proposal?  I'm not going

18   to order a special master at this point.  So what's your next

19   ask?

20        MR. MURPHY:  My next ask is -- may I first address

21   a couple of the points that the Court just raised -- very

22   shortly?

23        THE COURT:  Respond to the Court's question,

24   please.

25        MR. MURPHY:  We believe that the burden of proof

1    that was set by the Court's January 31st order essentially

2    set the table as to what would transpire today.  In my

3    experience, when burden of proof is established and the other

4    side doesn't satisfy it, then you -- you're -- it's over.

5           I actually assumed, Your Honor, based upon the last

6    hearing we were here that Guy Koren would be here in person.

7    It was implied that that was going to be an expectation.  So

8    when the Court issued its order two days ago, I immediately

9    communicated with defense counsel and said, "What are you

10   going to do?"

11          And they said, "We do not intend to call

12   witnesses."

13          And I said, "Well, I would like to call some

14   witnesses, then," and they said they do not want to and they

15   believe that it would require a stipulation.

16          So we had to make a game-time decision, Your Honor,

17   and the game-time decision was let's figure out where the

18   Court is.  I believe that the evidence is insufficient to

19   address the comprehensive violations that were the basis of

20   the January 31st order.

21          And so my request is that we -- the Court order us

22   -- I think -- contempt has happened; right?  So we know that

23   -- from January 31st prior.  So the plaintiff is entitled to

24   some sort of compensation whether there is a purge or not.

25   We believe that there's evidence that there has been no

1   correction as of today.  So I think the Court -- I would

2   request that the Court would order us to meet and confer in

3   -- within seven days -- in person, if we want, I've got a

4   nice new office -- and we can discuss a -- an agreement as to

5   compensation prior to January 31st and discuss how we resolve

6   what we believe to be the continued noncompliance issues,

7   which I have confirmed both personally and through

8   Eric Agaki.

9           THE COURT:  All right.  Thank you.  Please take a

10  seat.

11          Let me hear from -- I'll hear from defense counsel.

12          MR. MURPHY:  May I just say one more thing,

13  Your Honor?  I apologize, but prior to what I said just now,

14  Your Honor was suggesting that I was making nonverbal cues.

15  I'm basically legally blind, and so I have to rotate between

16  progressives and here -- very aggressive progressives so that

17  I can see what the Court is saying and what I can read on my

18  computer.  That was all I was doing, Your Honor, was moving

19  my head up to see the Court and then looking down at my

20  papers to make sure that I could see what I had written.

21          THE COURT:  All right.  I'll hear from defense

22  counsel.

23          MR. MALYNN:  Thank you, Your Honor.

24          THE COURT:  And just so that you know, my tentative

25  thinking coming into this hearing was to do essentially that

1   except to have the parties meet and confer with regard to

2   compensation -- Mr. Murphy, please take a seat -- and wasn't

3   anticipating that there was still remaining issues as to

4   compliance.  And so my inclination -- but I'll give you an

5   opportunity to respond -- is to have you meet and confer in

6   person and to discuss an appropriate amount of compensation.

7   I do intend to find that there was contempt.  It appeared to

8   me up until this proceeding that there, perhaps, was

9   substantial compliance.  Frankly, I'm not sure at this point.

10  I just don't know.  I don't have enough information.

11           If the parties can't reach an agreement, what I

12  will do with regard to substantial compliance and the

13  attorneys' fees is I'm going to have you back here, it's

14  probably going to be an evidentiary hearing, and I can assure

15  you the parties are going to incur a great deal more of

16  costs, and I'm going to set this matter aside, I'm going to

17  give you substantial time on both sides, and if I find that

18  there isn't compliance going forward, I am going to very

19  seriously consider coercive sanctions, including

20  imprisonment, if necessary.

21           So what I'm hearing from you, Counsel -- and I'm

22  not adjudicating it because I don't know -- is that your

23  clients were making good-faith efforts to come into

24  compliance and it took them until about now or last month.

25  Footnote -- just so that you know where the Court is -- I

1    hear that.  It's an argument.  It's not a persuasive

2    argument.  I do not believe that your clients acted in good

3    faith to come into compliance with the Court's order up until

4    now, and now I thought they, perhaps, were.

5           Incidentally, with regard to up to now, if there

6    were issues with regard to the Court's order, the appropriate

7    response is to come back to the Court not to seek motion for

8    consideration and the like but seek modification with regard

9    to, for example, the amount of time that you might need to

10   transition.

11          But be that as it may, that's the Court's strong

12   inclination is to find that there's contempt here and order

13   compensatory damages only in the amount of reasonable

14   attorneys' fees.

15          With regard to going forward, if the Court has to

16   conduct further proceedings, in light of what I've seen, I am

17   going to want to hear from the witnesses.  The witness is

18   going to come in, and the parties should be prepared for the

19   consequences, including your client, if I determine that

20   there isn't compliance up to that point.  So your client now

21   has had -- it's now February 28th -- since November, when the

22   Court issued its order, a reasonable amount of time, to say

23   the least, to come into compliance.

24          Incidentally, I don't mean to be naïve or unaware

25   with regard to business and business transitions as your

1    client might think.  I'm not.  But that's not something that

2    becomes the Court's concern other than impossibility.  Once

3    the Court finds, as it did, with regard to the appropriate

4    standard that there's a violation of intellectual property

5    rights, your client doesn't any longer have a right to a

6    smooth and easy transition, and if there are landlord

7    agreements, your client is faced with a federal court order

8    that your client has to comply with.

9         Now, the Court has tried to be, at least, somewhat

10   sympathetic to that position and not be overly aggressive in

11   calling your client out on the carpet with regard to dealing

12   with landlord issues, with the regulatory issues, and my

13   prior orders suggest that, but so that you know, Counsel,

14   what your obligations are -- what your clients' obligations

15   are is, if there are regulatory requirements that are

16   delaying things, if there are landlord requirements that are

17   delaying things is to get express approval from the Court to

18   allow your client to wait for those processes to proceed and

19   complete before you have to check those items off with regard

20   to signage for the landlord and with regard to rebranding

21   names by your client concerning the California regulators.

22        So I hope the parties will not dash the Court's

23   expectations yet again and will meet and confer and try to

24   resolve this.  Your client should understand, if this comes

25   back to me after that and it turns out that he's not

1   complying, there are going to be very significant but

2   appropriate consequences.  The plaintiff should understand,

3   as they will see in the Court's order regarding attorneys'

4   fees, I'm going to give -- be giving them $5,000 with regard

5   to the anti-SLAAP because the Court is not satisfied that

6   they're getting the Court's message as well.

7           I'm expecting reasonableness, not exploitations,

8   getting leverage, and the like.  Your client has lost this

9   issue at this point and needs to come into compliance.  Get

10  the message.  Stop delaying.  The other side needs to get the

11  message that they need to engage in good faith and attempt,

12  within reason, to reach an accommodation rather than being

13  overly aggressive.  If you can't, the Court is here, it will

14  adjudicate the disputes, and it will make fair and reasons --

15  reasoned decisions in that regard.  But you, at least, now

16  have something that you can, at least, think about as you go

17  forward.

18          So do you wish to be heard with regard to what the

19  Court is proposing to do, which is to order a meet-and-

20  confer?

21          MR. MALYNN:  No.  I understand your position,

22  Your Honor, and we will endeavor to satisfy the Court.

23          THE COURT:  All right.

24          MR. MALYNN:  This is the first that we've heard of

25  the noncompliance as of today.

1          THE COURT:  All right.

2          MR. MALYNN:  So we will address that immediately

3    and get to the bottom of that.

4          THE COURT:  All right.  And so the parties are

5    ordered to meet and confer by no later than -- in person by

6    no later than March 7th, and you're to provide the Court with

7    a status report by March 10th as to the results of the

8    meet-and-confer and whether there are issues that need to be

9    adjudicated.

10          If there are issues that need to be adjudicated, by

11    March 14th you're to provide the Court with a witness list

12    and exhibit list.  You're ordered to look at the Court's

13    trial court order and comply, essentially, as if this were a

14    bench trial with all of the filings that will be required for

15    you to file in advance of the hearing, and the Court is going

16    to set this matter for a hearing on any violations that

17    remain at issue, and I will do so on March 28.  And the

18    parties should be prepared to trail.  Depending upon what --

19    the amount of time that is necessary and the like, it's

20    possible that I will have to trail this matter with regard to

21    the evidentiary component, but I would strongly encourage the

22    parties to avoid having to come back to this Court on an

23    evidentiary hearing.

24          Anything further before I conclude this matter for

25    the --

1          MR. MALYNN:  No, Your Honor.

2          THE COURT:  -- defense?

3          Anything further, Mr. Murphy, on behalf of the

4   plaintiff?

5          MR. MURPHY:  No, Your Honor.

6          THE COURT:  Then this matter is concluded.

7          THE CLERK:  All rise.  Court is adjourned.

8       (Proceedings adjourned at 10:02 a.m.)

9   ///

10   ///

CERTIFICATE

    I certify that the foregoing is a correct transcript

from the electronic sound recording of the proceedings in the

above-entitled matter.

/s/ Julie Messa                    April 6, 2025
Julie Messa, CET**D-403            Date
Transcriber