**BLANK ROME LLP**
Arash Beral (SBN 245219)
arash.beral@blankrome.com
Todd M. Malynn (SBN 181595)
todd.malynn@blankrome.com
Victor Sandoval (SBN 344461)
victor.sandoval@blankrome.com
2029 Century Park East | 6th Floor
Los Angeles, CA 90067
Telephone:  424.239.3400
Facsimile:   424.239.3434

Attorneys for Defendants, Counterclaimants, and Third Party Plaintiffs PCJV USA, LLC, PCI TRADING LLC, POTATO CORNER, LA GROUP, LLC, GK CAPITAL GROUP, LLC, NKM CAPITAL GROUP, LLC and GUY KOREN, and Defendants J & K AMERICANA, LLC, J&K LAKEWOOD, LLC, J&K OAKRIDGE, LLC, J&K VALLEY FAIR, LLC, J & K ONTARIO, LLC, J&K PC TRUCKS, LLC, HLK MILPITAS, LLC, and GK CERRITOS, LLC

# UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| SHAKEY'S PIZZA ASIA VENTURES, INC, a Philippines corporation,<br><br>Plaintiff,<br><br>vs.<br><br>PCJV USA, LLC, a Delaware limited liability company; PCI TRADING , LLC, a Delaware limited liability company; GUY KOREN, an individual; POTATO CORNER LA GROUP, LLC, a California limited liability company; NKM CAPITAL GROUP, LLC, a California limited liability company; J & K AMERICANA, LLC, a California limited liability company; J&K LAKEWOOD, LLC, a California limited liability company; J&K VALLEY FAIR, LLC, a California limited liability company; J & K ONTARIO, LLC, a California limited liability company; HLK MILPITAS, LLC, a California, limited liability company; GK CERRITOS, LLC, a California, limited liability company;  J&K PC TRUCKS, LLC, a California limited liability company; and, GK CAPITAL GROUP, LLC, a California | Case No. 2:24-CV-04546-SB(AGRx)<br><br>*Hon. Stanley Blumenfeld, Jr.*<br><br>**DECLARATION OF TODD M. MALYNN IN SUPPORT OF DEFENDANT PCJV USA, LLC'S MOTION FOR RELIEF UNDER FRCP RULE 37(b)(2)**<br><br>Date:         May 22, 2025<br>Time:        1:30 p.m.<br>Location:  Zoom Video Conference<br><br>Complaint Filed:  May 31, 2024<br>Trial Date:            August 4, 2025 |

160850.00001/151296968v.1

**DECLARATION OF TODD M. MALYNN**

| | |
|---|---|
| limited liability company and DOES 1 through 100, inclusive, | |
| Defendants. | |
| _____ | |
| PCJV USA, LLC, a Delaware limited liability company; PCI TRADING LLC, a Delaware limited liability company; POTATO CORNER LA GROUP LLC, a California limited liability company; GK CAPITAL GROUP, LLC, a California limited liability company; NKM CAPITAL GROUP LLC, a California limited liability company; and GUY KOREN, an individual, | |
| Counter-Claimants, | |
| v. | |
| SHAKEY'S PIZZA ASIA VENTURES, INC, a Philippines corporation, | |
| Counter Defendant. | |
| _____ | |
| PCJV USA, LLC, a Delaware limited liability company; PCI TRADING LLC, a Delaware limited liability company; POTATO CORNER LA GROUP LLC, a California limited liability company; GK CAPITAL GROUP, LLC, a California limited liability company; NKM CAPITAL GROUP LLC, a California limited liability company; and GUY KOREN, an individual, | |
| Third Party Plaintiffs, | |
| v. | |
| PC INTERNATIONAL PTE LTD., a Singapore business entity; SPAVI INTERNATIONAL USA, INC., a California corporation; CINCO CORPORATION, a Philippines corporation; and ROES 1 through 10, inclusive, | |
| Third Party Defendants. | |

160850.00001/151296968v.1                    1
**DECLARATION OF TODD M. MALYNN**

# DECLARATION OF TODD M. MALYNN

I, Todd M. Malynn, declare as follows:

1. I am a partner at Blank Rome LLP, counsel of record for the Defendants, Counter-Claimants and Third-Party Plaintiffs, including PCJV USA, LLC ("PCJV") and Guy Koren ("Koren") (collectively, "Defendants") in this action against plaintiff and counterclaim defendant Shakey Pizza Asia Ventures, Inc. ("Plaintiff" or "SPAVI"). I have personal knowledge of the facts set forth in this declaration, and if called upon to testify under oath, I could and would testify competently thereto.

## Plaintiff Suppressed Discovery Relevant to Its Effort to Avoid *Res Judicata* & Collateral Estoppel

2. Attached collectively as **Exhibit 1** are true and correct copies of the settlement agreement and membership interest purchase agreement, which (a) resolved the state court action Cinco Corporation ("Cinco") filed against, among others, Cinco's joint venture partner and PCJV's President Koren, and (b) informs the preclusive effect of Cinco's dismissal with prejudice of the state court action. The settlement is proffered to support that Cinco sold its joint venture interests in PCJV and rights attached thereto to Koren, made representations and warranties and agreed to indemnify Defendants, and released all known and unknown claims.

3. Attached as **Exhibit 2** is a true and correct copy of the state court's preliminary injunction order against Cinco and any party acting in concert and participation with Cinco that SPAVI alleges in its complaint restrained its alleged right to control and terminate PCJV's right to use the U.S. trademarks. It is proffered to show that Cinco, as Koren's joint venture partner, was enjoined from interfering with Koren's right to manage and operate PCJV, including his right as PCJV's President to control the U.S. trademarks, and communicating with U.S. franchisees Cinco's threat to terminate PCJV's right to use the U.S. trademarks at the preliminary injunction hearing in response to the state court's tentative ruling.

4. Attached collectively as **Exhibit 3** is a true and correct copy of a supplemental report summarizing preliminary injunction rulings, which underly Cinco's dismissal with prejudice and settlement with Defendants, and the hearing transcript wherein the state court ruled that under the joint venture agreement and first amendment thereto Koren was delegated the "perpetual" right to, among other things, control PCJV's use of intellectual property.

5. A difference between the state court's preliminary injunction and Cinco's settlement with Koren, on the one hand, and the District Court's preliminary injunction, on the other, is that the former treats Cinco as one of PCJV's joint venture partners, and the latter does not. PCJV's Requests for Production of Documents ("RFP"), Set One, which sought discovery related to Cinco's transaction with SPAVI that occurred in the middle of litigation, sought to shed light on how this issue was handled. Plaintiff suppressed documents that are relevant to this issue in response to RFP Nos. 1 to 20, including documents falling within its Rule 26 disclosures, in violation of the Magistrate Judge's March 12, 2025 Order.

**Plaintiff Suppressed Discovery Within its Initial Disclosures in Violation of the Court's March 12 Order**

6. Attached as **Exhibit 4** is a true and correct copy of the Rule 26 disclosures Plaintiff served on Defendants that list categories of documents Plaintiff stated it intended to use at trial. Plaintiff's Rule 26 disclosure includes: "Documents relating to intellectual property comprising the Potato Corner brand,… including documents showing SPAVI's ownership of the Potato Corner brand…, documents evidencing SPAVI's trade secrets included within the Potato Corner Intellectual Property, protectability of any of the Potato Corner Intellectual Property (including the maintenance of secrecy of any confidential, proprietary, and/or trade secret information);…."

7. Attached as **Exhibit 5** is a true and correct copy of Plaintiff's Responses to Defendant's Requests for Production of Documents, Set One, wherein Plaintiff

1 refuses to produce documents, including documents within Plaintiff's Rule 26 disclosures. Specifically, among other documents Plaintiff refused to produce, Plaintiff refused to produce all non-privileged documents "relating to" intellectual property comprising the Potato Corner brand, including the transactional documents showing SPAVI's ownership of the brand, including correspondence, due diligence, draft and final agreements, legal options, board minute meetings and resolutions pertaining to the acquisition of the Potato Corner brand.

**Plaintiff Proffered No Justification for Violating The March 12 Order Before Belatedly Raising Issues Just Prior the Joint Agenda Deadline**

8. Attached as **Exhibit 6** is a true and correct copy of Plaintiff's initial Response to Interrogatory No. 1, which Plaintiff served on January 16, 2025, after being granted an extension.

9. Attached as **Exhibit 7** is a true and correct copy of my January 17, 2024 email to Plaintiff's counsel objecting to Plaintiff's interrogatory response and requesting to meet and confer, to which I received no response.

10. Attached collectively as **Exhibit 8** are true and correct copies of my January 24, 2025 emails (a) noting Plaintiff's counsel's failure to respond to my January 17, 2024 email and (b) setting forth Defendants' objection to Plaintiff's response to PCJV's document requests and requesting a meet and confer.

11. On January 31, 2025, I met and conferred with Plaintiff's counsel on Plaintiff's responses to PCJV's first set of discovery. During that meeting, the parties reached an impasse on Interrogatory No. 1 but had a productive discussion on RFP Nos. 1 to 27, which I documented on February 4, 2024. Attached as **Exhibit 9** is a true and correct copy of my February 4, 2024 email documenting the January 31, 2025 meet and confer on Defendant's document requests.

12. During the meet and confer, (a) a distinction was made between responsive documents relating and not relating to the United States, (b) Plaintiff agreed to circulated a proposed confidentiality productive order "this week," which

1  was subsequently approved by Defendants but not filed by Plaintiff, (c) Plaintiff
2  agreed to make an initial production and would inform Defendants "this week"
3  where it drew the line, and (d) Defendants agreed to table their request for all
4  responsive documents until after it reviewed Plaintiff's initial production.
5      13.  Unfortunately, on February 6, 2025, Plaintiff back tracked on the
6  progress made on January 31, 2024, including objecting to producing U.S. related
7  documents within its Rule 26 disclosures. Attached as **Exhibit 10** is a true and
8  correct copy of an email string including my February 13, 2025 point-by-point
9  response to Plaintiff's February 6, 2025 email, wherein I inquired whether Plaintiff
10 was standing upon its objections, to which I did not receive a response.
11     14.  After Plaintiff did not take steps to get a protective order on file,
12 respond to my February 13, 2025 email or provide the promised initial production or
13 letter identifying which documents it would produce and which ones it was
14 withholding and would record on a privilege log, my assistant and I contacted the
15 Magistrate Judge's Department to arrange for a discovery conference, which led to
16 the March 12, 2025 hearing.
17     15.  At the March 12, 2025 hearing, which I attended alongside my partner,
18 Arash Beral, the Court heard oral argument, addressed the parties' concerns and
19 issued an order on PCJV's first set of discovery. During the hearing, I notified the
20 Court that Defendants had approved the stipulated protective order Plaintiff's
21 counsel had circulated, and Plaintiff's counsel confirmed that, as ordered, he would
22 get it on file and begin a rolling production of documents he had already gathered
23 the next week. Neither happened.
24     16.  In fact, Plaintiff did not comply with anything it was ordered to do on
25 March 12, 2025. Plaintiff did not produce any documents the week of March 24,
26 2025, serve a further response to Interrogatory No. 1 by March 21, or file the
27 protective order Defendants approved or take the steps necessary to file a protective
28 order by March 14. Having not commenced a rolling production of documents (with

certain scope limitations and understanding of good faith efforts would be made to confer thereafter over custodians and search terms) the week of March 24 (including documents SPAVI represented it had already gathered and agreed to produce), Plaintiff thwarted the original purpose of the April 4, 2024 status conference (to resolve production issues, including as to custodians and search terms).

17.  Attached as **Exhibit 11** is a true and correct copy of my March 26, 2025 email responding to a request by Plaintiff to meet and confer, wherein I inquired with Plaintiff as to whether or when Plaintiff was "going to comply with the Magistrate Judge's order and produce documents and a list of search terms for our review and comment." At the meeting and confer, which Plaintiff tried to limit to issues he wanted to discuss, Plaintiff's counsel told me that he was not going to use the subject of each RFP as a search term, to which I objected. In addition, he wanted to completely transform the process and meet and confer on a more narrow list of search terms before Plaintiff produced any documents, to which I objected. The stated rationale (other than depriving defense counsel with the agreed-upon opportunity to review an initial production before commenting upon custodians and search terms) was that Plaintiff wanted to save costs associated with potentially having to conduct more than one production of documents. Plaintiff otherwise refused to meet and confer on Plaintiff's failure to comply with the March 12 Order, which I informed Plaintiff was unfairly prejudicing Defendants. Plaintiff's counsel provided no explanation for Plaintiff's refusal to produce documents already gathered—other than Plaintiff had not yet filed the approved protective order as ordered. Attached as **Exhibit 12** is my March 26, 2025 email documenting the unfair prejudice and delay resulting from Plaintiff's failure to comply with the March 12 Order in advance of the April 4, 2024 status conference.

18.  Plaintiff's counsel eventually filed a protective order on March 31, 2025, after sending me a redline with numbering issues I corrected and showing the removal of a paragraph I found immaterial under the circumstances. Attached as

**Exhibit 13** is a true and correct copy of an email string dated March 31, 2025, and the redline I received, showing how Plaintiff's counsel was able to file a protective order the same day he circulated a version to me.

19. On April 3, 2025, after I drafted and circulated the day before a joint agenda for filing in connection with the April 4, 2025 status conference, I emailed Plaintiff's counsel an hour before the deadline for authorization to file the joint agenda. Plaintiff's counsel had not previously met and conferred about any issues he intended to raise at the conference but informed me he had changes, which I received shortly before the filing deadline. Because the proposed changes included argument and positions that were being mischaracterized, I was forced to edit the joint agenda and get Plaintiff's counsel approval for filing, which I did.

20. It is no justification that Defendants, who are subject to a preliminary injunction and complied with court deadlines, refuse to prejudice themselves by reopening deadlines and continuing the trial. The District Court's standing order is clear that trials are not continued absent diligence and a timely request. Plaintiff rejected and refused in November, December, January, and early February to meet and confer on the case management order before deadlines expired.

21. Plaintiff's failure to produce and propound discovery does not evidence diligence and its belated request to meet and confer after refusing to do so for months and missing court deadlines was untimely. Attached as **Exhibit 14** is my March 28, 2025 email to Plaintiff's counsel confirming what my partner, Mr. Arash Beral, already informed Plaintiff's counsel on March 20, 2025 and March 24, 2025 regarding the case management order.

22. Plaintiff did not produce any documents on or before April 11, 2025. Instead, on Friday night, April 11, 2025, we received an email trying to negotiate a limited review of only one document (the alleged asset purchase agreement), which email is attached as **Exhibit 15**.

**Defendant's Reasonable Attorneys' Fees**

23. Plaintiff's failure to comply with the March 12, 2025 Order has caused Defendants to incur substantial attorneys' fees. My partner, Mr. Arash Beral's billing rate on this matter has been reduced to $878 per hour. My billing rate has been reduced to $1,057 per hour. Since March 12, Mr. Beral has spent over 10 hours as a result of Plaintiff's failure to comply with the March 12 Order, including assisting in preparing and revising these papers, at a cost of over $8,780 to our clients. I have spent over 30 hours doing the same, at a cost of over $31,710 to our clients. In connection with reviewing Plaintiff's opposition and sur-reply and preparing our reply and attending the hearing on this motion, we anticipate at least an additional 15 hours of Mr. Beral's time and 30 hours of my time at a total further expense of no less than $44,880 ($13,170 + $31,710). By the time this matter is heard, our clients will have incurred over $85,370 in attorneys' fees due to Plaintiff's failure to comply with the March 12 Order.

I declare under penalty of perjury that the foregoing is true and correct. Executed April 14, 2025, within the United States, its territories, possessions, or commonwealths.

_____
Todd M. Malynn

160850.00001/151296968v.1

8

**DECLARATION OF TODD M. MALYNN**