cc: Fiscal

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| SHAKEY'S PIZZA ASIA VENTURES, INC,<br><br>　　　　Plaintiff,<br><br>　v.<br><br>PCJV USA, LLC et al.,<br><br>　　　　Defendants. | Case No. 2:24-cv-04546-SB-AGR<br><br>ORDER AWARDING ATTORNEY'S FEES FOR CIVIL CONTEMPT |

　　　This order addresses the outstanding order to show cause (OSC) re civil contempt sanctions, as well as the OSC why the parties should not be sanctioned for their violations of the Court's orders in connection with their interactions and filings related to civil contempt.

I.

　　　The parties are well acquainted with the facts and history of this hotly litigated trademark dispute, which need not be repeated in full here. Relevant to the instant contempt proceedings, on November 14, 2024, the Court preliminarily enjoined Defendants Guy Koren, PCJV USA, LLC, and PCI Trading, LLC[1] "from directly or indirectly using, advertising, marketing, promoting, or distributing" three registered marks belonging to Plaintiff Shakey's Pizza Asia Ventures, Inc. (SPAVI) during the pendency of this action. Dkt. No. 56 at 28–29.

---

[1] For purposes of this matter, the parties do not distinguish among these three defendants, to whom the Court will refer collectively as Defendants. The preliminary injunction did not directly enjoin any other defendants, although the distinction appears immaterial as all defendants are controlled by Koren.

1

Concerned that Defendants did not promptly comply with the Court's order, SPAVI moved for an OSC why Defendants should not be held in civil contempt. The Court held a hearing on January 31, 2025, and found by clear and convincing evidence that Defendants—who did not deny that they and their franchisees were still using the marks—were actively violating the Court's order. Dkt. No. 100. In particular, SPAVI produced uncontroverted evidence that as late as mid-January (two months after the injunction issued), "Defendants and their franchisees continue[d] to use SPAVI's marks on their signage, menus, uniforms, and paper goods at each of the eight locations visited by SPAVI's investigator" and "Defendants have not shown, or even attempted to show, that it [wa]s impossible for them to cease using the marks in these ways." *Id*. at 2. Defendants submitted on the Court's tentative ruling making these findings. Based on its findings, the Court ordered Defendants to show cause "why they should not be held in civil contempt for violating the Court's preliminary injunction by failing to stop their use of SPAVI's marks" and "why the Court should not impose coercive escalating fines or imprisonment, order them to pay compensatory fines and SPAVI's attorney's fees incurred to enforce the injunction, and/or appoint a special master to oversee compliance." *Id*. at 3.

In their OSC response and at the February 28, 2025 OSC hearing, Defendants produced evidence and argued that they had taken steps to come into compliance and that there was no need for coercive sanctions. At the hearing, SPAVI disputed whether Defendants had achieved substantial compliance with the injunction, attempting to raise new evidence of additional violations that had not been filed on the docket or produced to Defendants before the hearing. The Court stated its view that Defendants violated the injunction at least as recently as mid-January and that, while coercive sanctions, royalty payments, and appointment of a special master were unwarranted, an award of attorney's fees to compensate SPAVI for responding to the violations was appropriate. *See generally* Dkt. No. 145 (transcript of February 28, 2025 hearing). The Court emphasized to the parties that "[w]hat [it] would appreciate is a higher level of professionalism and cooperation in this case . . . ." *Id*. at 11:15–20.

The Court gave the parties additional time to meet and confer "to thoroughly discuss (1) any outstanding violations of the Court's preliminary injunction, which the Court expects Defendants to promptly remedy, and (2) the amount of reasonable attorney's fees to award to Plaintiff in connection with its contempt motion, in light of the Court's conclusion that Defendants violated the preliminary injunction before the January 31, 2025 OSC." Dkt. No. 117 at 1. The Court set an evidentiary hearing on March 28, which would be vacated if the parties could

reach agreement, and "strongly encourage[d] the parties and counsel to exhibit greater professionalism and cooperation to avoid the need for further judicial intervention." *Id*. at 2.

On the same day, the Court issued its order awarding SPAVI only $5,000 in attorney's fees incurred responding to Defendants' frivolous anti-SLAPP motion, rather than the approximately $22,000 requested by SPAVI. Dkt. No. 118. The Court explained that its limiting of the award was because SPAVI had waited until the night before the motion was due to provide any billing records for Defendants' review, frustrating the purpose of the meet-and-confer requirement:

> The purpose of the Court's requirement that the parties meet in person or by videoconference was to encourage early and comprehensive discussions that would avoid what has been presented to the Court—a last-minute motion in which the parties have not adequately applied the law or taken the time necessary to thoroughly engage with each other on the reasonableness of the fees sought.

*Id*. at 2–3.

On March 10—the deadline set at the OSC hearing—the parties filed a joint report describing promising interactions between counsel and agreeing that more time would be helpful to continue discussions because "[i]t is the belief of the parties that they are moving in the right direction, and that it is likely that there will be resolution." Dkt. No. 121 at 4. The Court granted their requested extension, and two days later the parties filed a further report in which SPAVI stated that it was "satisfied that Defendants have achieved substantial compliance" with the injunction, such that "Plaintiff and Defendants can now affirmatively represent to the Court that the issue of whether the ongoing noncompliance constitutes a contempt has been resolved, and they do not believe an evidentiary hearing on ongoing contempt is necessary." Dkt. No. 126 at 3–4. The parties represented that they were still "negotiating in good faith" to agree on the amount of attorney's fees and "hopeful that such a compromise will be made." *Id*. at 4.

In response, the Court: (1) clarified that absent an objection by the parties (which did not occur), it would decide any remaining issues on the evidentiary record before it; (2) "encourage[d] the parties to continue to negotiate in good faith to reach agreement on the amount of attorney's fees to be paid to Plaintiff"; and (3) ordered the parties by March 24 to file "either a joint statement that they have fully resolved their dispute over attorney's fees (in which case the Court will

vacate the March 28 hearing) or a joint statement not to exceed three pages per side presenting the parties' positions, together with billing records for any fees Plaintiff seeks to recover." Dkt. No. 127.[2]

The parties' cooperation was short-lived. After they failed to file their joint statement by March 24, the Court ordered that they file their overdue submission the next day, warning that "[f]urther violation of the Court's order may result in an order to show cause re sanctions." Dkt. No. 133. The parties filed a report, Dkt. No. 134, that, as the Court later described it, was "joint in name only, in which the parties have reverted unhelpfully to pointing fingers at one other," Dkt. No. 135. SPAVI claimed to have discovered evidence of new violations that it had just raised with Defendants, and the parties blamed each other for the lack of progress in agreeing on fees, although both sides requested more time to negotiate. Dkt. No. 134. Defendants asserted—and it appears to be undisputed—that SPAVI did not provide its portion of the draft until an hour before the deadline and still had not provided the billing records on which it relied. Hoping to refocus the parties' efforts, the Court allowed additional time and once again refrained from pursuing sanctions notwithstanding the parties' misconduct:

> The parties agree on little besides the fact that more time to continue negotiations would be helpful. Their approach—waiting until after a deadline has passed and then arguing about who bears more blame for missing it—is inappropriate and counterproductive. Although both sides have violated the Court's order at Dkt. No. 127, the Court hopes that allowing the parties additional time to negotiate will enable them to refocus their efforts toward productive cooperation. The Court therefore declines to issue a new order to show cause re sanctions at this time and instead continues the March 28 non-evidentiary hearing to April 11, 2025 at 8:30 a.m. The parties shall continue to negotiate in good faith to reach agreement on the amount of attorney's fees to be paid to Plaintiff for Defendants' contempt. The parties shall conduct at least one further in-person meeting by April 4 if they have not reached full agreement before then. No later than noon on April 8, 2025, the parties shall file either a joint statement that they have fully resolved their dispute over attorney's fees (in which case the

---

[2] These limits were requested by the parties. Dkt. No. 126 at 4 ("Plaintiff and Defendants respectfully request that [if they cannot reach agreement,] the Parties prepare a Joint Statement not to exceed more than 3 pages per side (excluding exhibits) . . . .").

> Court will vacate the April 11 hearing) or a joint statement not to exceed three pages per side presenting the parties' positions, together with billing records for any fees Plaintiff seeks to recover. The Court expects Defendants to promptly remedy any remaining noncompliance with the Court's preliminary injunction.

Dkt. No. 135.

The additional time allowed for negotiations proved to be in vain. The parties did not file their joint report by the deadline, and the Court ordered the parties to show cause "why they should not be sanctioned under Rule 16(f)(1)(C) and the Court's inherent authority for their violation of the Court's order. In particular, the parties and counsel should address why the Court should not issue monetary sanctions in a reportable amount in light of their long history of noncooperation and the Court's repeated warnings about their conduct." Dkt. No. 148. Shortly thereafter, the parties filed a status report in which SPAVI sought an award of $75,000 (reduced from approximately $140,000 to which it claimed to be entitled) and Defendants appeared to request an award of no more than $25,000— their highest offer. Dkt. No. 149. SPAVI attached billing records to the filing— some of which it had not provided to Defendants. It is clear that the parties did not meet and confer on these matters in the manner required by the Court. According to Defendants' account:

> This morning, we requested [SPAVI's counsel] Mr. Murphy to send us his 3-page submission by 10 a.m. so that we'd have sufficient time to address whatever positions he was going to take with the Court. His response to us at 9:25 am was: "You have not sent yours. Why should you see ours?" At 9:34 am, Mr. Murphy wrote: "You write your 3 pages, I write mine. I attach the billing records. What more is there?" While we were preparing our portion, at 11:03 am, Mr. Murphy sent us a blank joint statement with a demand that we include our position and return it by 11:50 am.

*Id*. at 8. For its part, SPAVI places the blame for the breakdown in negotiations at Defendants' feet but does not dispute Defendants' account of their communication, including the fact that neither side provided any part of its contribution to the "joint report" to the other side until less than an hour before the deadline.

Counsel for both sides timely filed their responses to the OSC re sanctions. Dkt. Nos. 150, 151. SPAVI accepts responsibility for the late filing of the April 8

5

joint report, which counsel attributes to a combination of an administrative oversight and a computer failure, but both sides offer widely divergent accounts of each other's and their own professionalism and conduct. It is clear that both sides waited until the last minute to prepare the report; SPAVI had not even collected—let alone shared with Defendants—all the billing records on which it intended to rely a few hours before the filing deadline, and Defendants did not provide their portion of the briefing until ten minutes before the deadline, without having seen SPAVI's portion, which was never shared with Defendants before filing.

      The Court held a hearing on both OSCs on April 11, 2025, and took the matters under submission.

## II.

      "Under traditional principles of equity practice, courts have long imposed civil contempt sanctions to 'coerce the defendant into compliance' with an injunction or 'compensate the complainant for losses' stemming from the defendant's noncompliance with an injunction." *Taggart v. Lorenzen*, 587 U.S. 554, 560 (2019) (quotation omitted). A party moving for contempt sanctions "has the burden of showing by clear and convincing evidence that the contemnors violated a specific and definite order of the court," after which the burden shifts to the contemnors to demonstrate why they were unable to comply. *F.T.C. v. Affordable Media*, 179 F.3d 1228, 1239 (9th Cir. 1999) (quotation omitted).

      Courts finding civil contempt may award attorney's fees and costs incurred in responding to the opposing side's violation of a court order, even in the absence of willful disobedience, to compensate the innocent party. *Perry v. O'Donnell*, 759 F.2d 702, 705 (9th Cir. 1985). "Compensatory awards are limited to actual losses sustained as a result of the contumacy." *Gen. Signal Corp. v. Donallco, Inc.*, 787 F.2d 1376, 1380 (9th Cir. 1986) (cleaned up). The contempt power "must be exercised with restraint and discretion." *Institue of Cetacean Research v. Sea Shepherd Conservation Society*, 774 F.3d 935, 951 (9th Cir. 2014) (quoting *Roadway Exp., Inc. v. Piper*, 447 U.S. 752, 764 (1980)). Even after concluding that a compensatory award of attorney's fees is appropriate in response to a party's civil contempt, the court must determine what fee is reasonable, which it generally does by calculating the lodestar—i.e., the number of hours reasonably expended multiplied by the reasonable hourly rate. *Innovation Ventures, LLC v. Distrib., Inc.*, No. 12-CV-00717-AB, 2015 WL 5319815, at *2 (C.D. Cal. Apr. 29, 2015) (collecting cases). "[T]he fee applicant bears the burden of establishing

entitlement to an award and documenting the appropriate hours expended and hourly rates." *Hensley v. Eckerhart*, 461 U.S. 424, 437 (1983).

## III.

Defendants have offered no new argument or evidence that undermines the Court's prior finding by clear and convincing evidence that Defendants were actively violating the Court's injunction at least through mid-January (two months after the injunction issued) by continuing to use SPAVI's marks on their signage, menus, uniforms, and paper goods at each of the locations visited by SPAVI's investigator. Accordingly, the Court finds that Defendants were in civil contempt and that an award of attorney's fees to SPAVI is warranted to compensate it for its efforts to bring the contempt to the Court's attention and to pursue full compliance.

In light of the parties' agreement on March 12 that Defendants had "achieved substantial compliance" and that "the issue of whether the ongoing noncompliance constitutes a contempt has been resolved," Dkt. No. 126 at 3–4, the Court limits its inquiry to the prior contempt that has now been cured. At the April 11 hearing, SPAVI raised new violations, some of which have already been resolved after they were brought to Defendants' attention. To the extent SPAVI believes there are additional new violations that have not been cured, those must be addressed in a separate proceeding—but only after the parties have thoroughly met and conferred to attempt to resolve the matter without judicial intervention. The Court reiterates its warning that if it finds noncompliance going forward, it will "very seriously consider coercive sanctions, including imprisonment, if necessary." Dkt. No. 145 at 15:18–20.

Turning to the amount of fees to be awarded, the parties have once again failed even to address the lodestar method. *See* Dkt. No. 118 at 2 ("Neither side expressly applies a lodestar approach; they principally dispute the number of hours reasonably expended in opposing the anti-SLAPP motion, although Defendants also explain that counsel have not had the chance to fully review Plaintiff's records or discuss the matter with their clients."). Defendants do not challenge the reasonableness of counsel's rates, although they raise several challenges to the total fees requested and some of the tasks for which SPAVI seeks compensation.

More fundamentally, the parties have once again failed to engage in the meaningful meet-and-confer process required by the Court. The parties waited until just hours before the deadline to even discuss exchanging drafts; SPAVI refused to provide its draft to Defendants; Defendants provided their draft to

SPAVI less than an hour before the filing deadline; and SPAVI did not even obtain—let alone produce to Defendants—some of the billing records on which it relies until the day of the filing, far too late for Defendants to meaningfully respond even if SPAVI had provided the documents to them. This failure is especially perplexing given the Court's prior order denying most of the fees SPAVI sought on the anti-SLAPP motion because of SPAVI's failure to meet and confer adequately or to provide its fee documentation to Defendants until the day before the filing was due. Dkt. No. 118 at 3 (noting that the purpose of the meet-and-confer requirement is to avoid "a last-minute motion in which the parties have not . . . taken the time necessary to thoroughly engage with each other on the reasonableness of the fees sought"). Yet SPAVI still seems content to continue with the same improper approach, refusing to provide its briefing to Defendants even on the morning it was due. SPAVI's response (which it admitted at the hearing) to Defendants' request to exchange briefing—"You write your 3 pages, I write mine. I attach the billing records. What more is there?"—is wholly inappropriate. As the Court previously explained, a filing that consists merely of two opposing briefs that were separately drafted without access to the arguments on the other side is joint in name only and deprives the Court of the core benefit of a joint filing—namely, that the parties have thoroughly discussed and responded to the arguments on the other side and sought to reach agreement where possible.

Moreover, the records on which SPAVI relies do not support the fee amounts requested. While some tasks are plainly compensable, others are not—at least in the absence of further explanation. *See, e.g.*, Dkt. No. 149 at 17 of 64 (seeking compensation for correspondence and filings in the Ninth Circuit). The billing records also contain extensive block billing, combining compensable and noncompensable tasks into a single entry, with no way for the Court to evaluate the portion of the entry that is compensable. *See, e.g.*, *id*. (requesting 0.5 hours in a 5.2-hour block billing entry for "Finalize Notice of Interested Parties; confer with private investigator regarding report of franchisees; review documents regarding same; draft correspondence to franchisees regarding short-term license; confer with client and franchisees regarding licenses, related issues, etc.; correspond with Koren's counsel regarding compliance with injunction; strategize regarding same; draft cease and desist correspondence regarding trade secrets; research regarding Koren's request to modify bond"). While SPAVI makes substantial reductions for some of these entries, the Court cannot verify what amount of time may be compensable from the documents provided. SPAVI also seeks to recover for billing entries that are partially redacted, precluding review. *Id*. at 28 of 64. Most concerning, however, is the fact that SPAVI relies on three invoices (exhibits 4, 6,

8

and 7) that it did not provide to Defendants before filing the joint report. *See* Dkt. No. 151 at 5 (stating that exhibits 1, 2, 3, and 5 were circulated).

This leaves the Court in a quandary. On the one hand, Defendants have engaged in flagrant contempt of the Court's injunction, which has resulted in considerable expense to SPAVI. Such contempt, some of which appears to have been willful, is inexcusable. On the other hand, SPAVI has the burden of establishing its entitlement to fees, and its approach continues to be seriously deficient, notwithstanding the Court's prior ruling on a similar issue. Moreover, both parties have failed to cooperate effectively in a manner that drives up the cost to both sides, for which both sides bear some responsibility.

Faced with this record and the parties' approach, the Court awards fees as follows. First, the Court will exclude all billing records that were not produced to Defendants in advance—i.e., exhibits 4, 6, and 7. The Court has carefully reviewed the remaining records (exhibits 1, 2, 3, and 5) to determine whether the fees requested are compensable and adequately documented. The entries fall into three categories: (1) tasks clearly necessitated by Defendants' contempt and sufficiently documented to support a fee award; (2) tasks not shown to be the result of the contempt; and (3) entries combining compensable and non-compensable tasks without sufficient detail to separate the compensable portion.

The volume of the billing entries for which SPAVI seeks compensation make it impracticable for the Court to describe its analysis of each entry, but it provides the following representative examples from exhibit 1. Plainly compensable tasks include: SPAVI's billing .7 hours to "[r]esearch specific issues with order non compliance and draft email to [defense] counsel" on November 19; .1 hours to correspond with the investigator on November 25; and .5 hours to draft cease-and-desist letters on November 27, 2024. Dkt. No. 149 at 16–17 of 64. Entries in the second category (i.e., tasks not shown to be compensable) include correspondence and research in late November related to matters in the Ninth Circuit and Defendants' challenges to the preliminary injunction, as well as numerous FedEx receipts on November 29, 2024, with no explanation of what was mailed. *Id.* at 17, 19–20 of 64. Entries in the final category include block billing, such as the November 21 entry for 4.5 hours for revising correspondence about compliance with the injunction (which is compensable) along with research on the First Amended Complaint and work on Defendants' ex parte application for reconsideration (which are not compensable) and work on a "letter to franchisees" (which may or may not be compensable, depending on the nature of the letter, which is not described). *Id.* at 16 of 64. SPAVI requests compensation for 2.3

9

hours of that time, but the billing records do not allow the Court to determine how much of the 4.5 hours in the entry were spent on compensable tasks.

Applying this approach to each of the billing entries for which SPAVI seeks reimbursement, the Court concludes that the entries in exhibits 1, 2, 3, and 5 in the first category—compensable tasks for which SPAVI has provided adequate documentation—total $26,596. This sum significantly understates the fees to which SPAVI likely would be entitled if it had provided adequate documentation and timely obtained and turned over its billing records to Defendants to enable a meaningful meet-and-confer. But SPAVI bears the burden of documenting the fees it seeks, and it has not adequately done so as to the fees in the second and third categories. Particularly in light of the obligation to exercise its contempt power "with restraint and discretion," *Institue of Cetacean Research*, 774 F.3d at 951 (quoting *Roadway*, 447 U.S. at 764), the Court will award only the $26,596 that SPAVI has satisfactorily documented. This substantial discount is not unjust in light of SPAVI's contribution to the proliferation of costs and its failures to adequately meet and confer or to meet its burden to prove entitlement to more fees.

The Court's approach addresses several of Defendants' objections—that SPAVI has included entries that are not recoverable, that many entries are block-billed, and that SPAVI seeks to recover for tasks that are redacted. To the extent they are not mooted by the award of only slightly more than the sum suggested by Defendants, the Court briefly rejects Defendants' other objections as follows: (1) the Court is not limited to awarding SPAVI the fees requested in its moving papers, particularly where additional fees were incurred after the filing of those papers; (2) Defendants have not shown that it was improper for SPAVI to have two attorneys appear at a hearing (at which Defendants also had two attorneys appear); and (3) to the extent a holistic perspective requires a reduction in fees, the substantial reduction above is sufficient.

Defendants have once again escaped liability for the entire cost of their misconduct because of SPAVI's own failures to properly pursue their requested fees. Defendants should not interpret the Court's holding SPAVI to its burden to support its requested fees as a minimization of Defendants' contempt, which the Court views as serious. The Court expects Defendants to strictly comply with the Court's injunction going forward.

No later than April 21, 2025, Defendants shall (1) pay to SPAVI as compensation for the harm caused by their contempt the sum of $26,596 and (2) file a declaration that payment has been made.

IV.

In its response to the OSC re sanctions and at the hearing, SPAVI has accepted responsibility for the untimely joint filings. Had those failures resulted solely from administrative error related to counsel's firm change and a computer glitch, sanctions would not be warranted. However, the late filings occurred because SPAVI chose to wait until the day of the deadline to prepare its exhibits and coordinate the joint briefing. Indeed, SPAVI's counsel represents that the parties' "prior practice," which he evidently considered adequate, was for defense counsel to "send me his inserts 30 minutes before the deadline." Dkt. No. 151 at 5. This flies in the face of the Court's repeated admonitions about the importance of "early and comprehensive discussions" that would avoid last-minute motions in which the parties have not adequately engaged with one another. Dkt. No. 118 at 2. The parties still appear not to understand that failing to exchange their written positions before filing a joint submission is a per se failure to meet and confer as required.

Moreover, the presentations of both sides in their declarations and at the April 11 hearing continue to raise serious concerns about counsel's lack of professionalism, cooperation, and compliance with the Court's orders, especially concerning their obligations to meet and confer. Beyond their noncompliance, which appears sanctionable on its own, each side accuses the other of incivility ranging from sarcasm to shouting and name-calling. As the Court stated at the hearing, the persistent misconduct in this case suggests that both monetary sanctions and the reporting of counsel to the state bar may be warranted. Both sides welcomed the Court's further investigation, which each side suggests will prove it to be in the right, and both sides agreed that appointment of a special master for that purpose would be appropriate. *See* Fed. R. Civ. P. 53(a)(1)(A) (permitting appointment of a special master to "perform duties consented to by the parties").

Accordingly, the Court defers ruling on the OSC re sanctions and orders as follows. The parties shall meet and confer in person or by videoconference and no later than April 21, 2025 shall file: (1) a joint filing containing all email correspondence between the parties relevant to their meet-and-confer efforts on the issue of attorney's fees for contempt and their preparation of the joint filings that were filed late; (2) a declaration from each side addressing any further context or history the Court should consider in evaluating counsel's interactions (as requested by counsel at the hearing); and (3) a joint proposal for the retention of a special master to investigate counsel's compliance with the Court's order, including (a) the

name and contact information of an individual whom the parties agree may be appointed as a special master, (b) a proposal for payment of the special master, and (c) a proposed plan for the timing and scope of the investigation.

      Counsel are advised that the Court will consider the extent of their cooperation and professionalism (or lack thereof) in complying with this order as a factor in determining what sanctions should be imposed for the parties' misconduct thus far.  The Court's intention is—and has been throughout this case—to encourage the parties to cooperate professionally, respectfully, and productively to avoid the need for further judicial intervention.  The Court's consideration of sanctions comes only after numerous warnings have proven insufficient to prompt appropriate behavior.

Date: April 15, 2025

                                        Stanley Blumenfeld, Jr.
                                        United States District Judge