MICHAEL D. MURPHY
mdmurphy@foxrothschild.com
JORDAN ZOLLIECOFFER
jzolliecoffer@foxrothschild.com
FOX ROTHSCHILD LLP
Constellation Place
10250 Constellation Boulevard, Suite 900
Los Angeles, California 90067
Telephone: 310.598.4150
Facsimile: 310.556.9828

Attorneys for Plaintiff SHAKEY'S PIZZA ASIA VENTURES, INC.

**UNITED STATES DISTRICT COURT**

**CENTRAL DISTRICT OF CALIFORNIA**

SHAKEY'S PIZZA ASIA VENTURES, INC, a Philippines corporation,

Plaintiff,

v.

PCJV USA, LLC, a Delaware limited liability company; PCI TRADING, LLC, a Delaware limited liability company; GUY KOREN, an individual; POTATO CORNER LA GROUP, LLC, a California limited liability company; NKM CAPITAL GROUP, LLC, a California limited liability company; J & K AMERICANA, LLC, a California limited liability company; J&K LAKEWOOD, LLC, a California limited liability company; J&K VALLEY FAIR, LLC, a California limited liability company; J & K ONTARIO, LLC, a California limited liability company; HLK MILPITAS, LLC, a California, limited liability company; GK CERRITOS, LLC, a California, limited liability company; J&K PC TRUCKS, LLC, a California limited liability company; and, GK CAPITAL GROUP, LLC, a California limited liability company and DOES 1 through 100, inclusive,

Defendants.

Case No. 2:24-CV-04546-SB(AGRx)

*Hon. Stanley Blumenfeld*

**JOINT FILING OF PLAINTIFF AND DEFENDANTS IN FURTHER RESPONSE TO OSC AS PER ORDER OF APRIL 15, 2025 (Dkt. 155); DECLARATIONS OF ARASH BERAL AND MICHAEL MURPHY**

Complaint Filed: May 31, 2024
Trial Date: August 4, 2025

PCJV USA, LLC, a Delaware limited liability company; PCI TRADING LLC, a Delaware limited liability company; POTATO CORNER LA GROUP LLC, a California limited liability company; GK CAPITAL GROUP, LLC, a Ca1ifornia limited liability company; NKM CAPITAL GROUP LLC, a California limited liability company; and GUY KOREN, an individual,

Counter-Claimants,

v.

SHAKEY'S PIZZA ASIA VENTURES, INC, a Philippines corporation,

Counter Defendant.

PCJV USA, LLC, a Delaware limited liability company; PCI TRADING LLC, a Delaware limited liability company; POTATO CORNER LA GROUP LLC, a California limited liability company; GK CAPITAL GROUP, LLC, a Ca1ifornia limited liability company; NKM CAPITAL GROUP LLC, a California limited liability company; and GUY KOREN, an individual,

Third Party Plaintiffs,

v.

PC INTERNATIONAL PTE LTD., a Singapore business entity; SPAVI INTERNATIONAL USA, INC., a California corporation; CINCO CORPORATION, a Philippines corporation; and DOES 1 through 10, inclusive,

Third Party Defendants.

**JOINT STATEMENT**

Pursuant to this Court's Order of April 15 (Dkt. 155), Plaintiff Shakey's Pizza Asia Ventures, Inc., and Defendants PCJV USA, LLC and Guy Koren (collectively, "Defendants"), and their counsel of record, submit the following joint filing in response to and compliance with this Court's Order of that date.

**Summary of Meet and Confer Efforts in Preparation of this Response**

Counsel for Plaintiff, Michael Murphy ("Mr. Murphy"), and counsel for Defendants, Arash Beral ("Mr. Beral"), participated in a Webex video conference on April 18, 2025. As set forth in the attached declarations of Mr. Murphy and Mr. Beral, the video conference call on Friday was productive and enlightening, helping lay the groundwork for future interactions. To extend this intention beyond this OSC, Mr. Beral, Mr. Malynn, Mr. Murphy, and one of Mr. Murphy's associates have already scheduled dinner for April 30, 2025, at 6 pm, to further the goal and intention of counsel to act professionally and in good faith with one another.

At the outset, and as a reflection of its importance to all counsel in this action, Mr. Beral and Mr. Murphy discussed matters of a private nature (many of which are serious). The remainder of the video conference was spent discussing the proposal for a Special Master set forth at the conclusion of this Joint Filing, as well as discussing the manner of producing and filing the correspondence requested. Mr. Murphy offered to gather the correspondence that he would propose to be filed as being relevant to the OSC. That was in progress as of the April 18, 2025 video conference and Mr. Murphy and Mr. Beral worked closely together today to finalize the submission, and had multiple, cordial exchanges, and telephone calls.

Mr. Beral also proposed that, rather than address, point by point, each of Mr. Murphy's statements contained towards the second half of his Declaration filed on April 10, 2025, which would be counterproductive to the goals and intentions of the parties, that the parties move beyond it. Mr. Murphy agreed and, as set forth in his

declaration attached hereto, Mr. Murphy requests that, to the extent permitted by the PACER docketing system, paragraphs 13, 21 through 26 and 30 through 37 be removed from the public version of that filing. If not permitted, Mr. Murphy asks that it be disregarded as counterproductive under these new understandings and commitments.

**Description of Concurrently**
**Filed Correspondence**

Attached to Mr. Murphy's declaration are 28 of the 50 relevant correspondence between counsel as requested by the Court. They are each filed as a separate exhibit (1 through 28), with attachments also appended as required by PACER. The remaining 22 Exhibits were blocked from PACER, despite having been attetmpoting to file since 8:47 p.m. Every problem solving technique has been employed, but the issue appears to be resulting from hyperlinking within these many emails. The solution proposed at Fox, who took the lead on filinbg this is to file this statement with those 22 emails, and then a Volume two, as soon as possible after midnight. (Murphy Decl., ¶¶ 13-16.)

These documents are those that refer to the meet and confer at issue, and no party has included some as secret advocacy designed to provide context in their favor, given the agreements set forth in the declarations attached hereto.

**Joint Proposal for Retention**
**of a Special Master**

The parties' desire and mutual goal is to work cooperatively and professionally with one another, as both Mr. Beral and Mr. Murphy communicated to each other on Friday, April 18. As ordered, counsel have further agreed as follows. If, after this Court's review of this joint statement, the attached declarations, and the correspondence filed concurrently herewith, the Court still believes that an investigation into a violation of a Court Order is warranted, and

needed, the Parties propose that:

1. **Proposed Master**: The Hon. Richard A. Stone, with Signature Resolution be appointed as a Special Master pursuant to Fed. Rule Civ. P. 53(a)(1)(A). Judge Stone has consented to this appointment and is appropriate as he was the mediator in the prior case in which Mr. Beral and Mr. Murphy were counsel for the principal parties. As such, all parties are comfortable with his impartiality. He can be contacted through his Case Administrator, Sarah Osborne (email: sosborne@signatureresolution.com and telephone: (310) 810-0012).

2. **Scope of Appointment**: The scope of the appointment, as per the Parties' agreement, shall be to investigate compliance with the Orders found at Dkt. 117, 122, 127, 133, and 135 concerning the filing of joint statements, so as to determine whether each of the Orders were complied with, and if not, why, and if any party or counsel violated those Orders and, if so, what sanctions, referrals, or further orders are warranted and commensurate with the severity of the violation, if found, that the Master recommends be ordered by this Court. This proposed investigation shall include review of the correspondence filed concurrently herewith, as well as interviews with whomever the Special Master believes is necessary, but likely, to be Mr. Murphy, Mr. Beral, Mr. Malynn, and Mr. Hsu (of Ervin, Cohen & Jessup), and any other documents, correspondence, or other material which may be relevant to the Special Master's review.

3. **Length of Time and Deadline to Complete Appointment**: The Parties believe that the Special Master should not need more than 15 hours to complete the assignment, and that it can be completed within 30 days, with, potentially, a buffer of 2 weeks so as to accommodate scheduling, Memorial Day, and other potentially unknown intervening

delays. As such, six weeks from the date of an Order is issued appointing a Special Master would be the proposed completion date.

4. **Compensation of Proposed Master**: As far as payment the parties are willing to pay 50% of the total fees (having been apprised of Judge Stone's rate). The total payment, if all 15 hours are taken, would be,

/ / /

$36,000. Further, the parties are willing to waive their rights to seek reallocation pursuant to FRCP 53(g).

Dated: March 10, 2025

**FOX ROTHSCHILD LLP**

*/s/ Michael D. Murphy*
Michael D. Murphy
Jordan Zolliecoffer
Attorneys for Plaintiff

DATED: March 10, 2025

**BLANK ROME LLP**

By: */s/ Arash Beral*
Arash Beral
Todd Malynn
Attorneys for Defendants

## DECLARATION OF ARASH BERAL

I, Arash Beral, declare as follows:

1. I am a partner at Blank Rome LLP, counsel of record for Defendants, Counterclaimants, and Third-Party Plaintiffs. I have personal knowledge of the facts set forth in this declaration, and if called upon to testify under oath, I could and would testify competently thereto.

2. On Friday, April 18, Mr. Murphy and I had a very productive video call. Before I address the call, I would like the Court to know that my desire is and has always been to have professional relationships with all of my opposing counsel, and Mr. Murphy and his colleagues have been no exception. I believe my reputation in the legal profession has been that of a professional, civil advocate. I have multiple examples, such as communications from counsel and others, demonstrating that they enjoy working alongside or opposite me because of that professionalism and civility I display. Just last Thursday, April 17, I received an (unsolicited) email from opposing counsel in another matter pending before the Honorable James V. Selna (Case No. 8:24-cv-01813-JVS-JDE), stating: "It has been a pleasure working with you and Nick. Eve and I appreciate how professional your team has been throughout this entire dispute. I hope to run into you both again down the line." The lead plaintiffs' counsel on that matter followed up stating: "I second Ed's note that we enjoyed working across the table from you. Thank you for your professionalism and cooperation, which was to the benefit of both our clients." I'm happy to share a copy of this communication with the Court.

3. As another example, in August 2023, I was one of many lead trial counsel at a jury trial before the Honorable Maame Ewusi-Mensah Frimpong in the case of *Skye Orthobiologics, et al. v. CTM Biomedical, LLC, et al.* (Case No. 2:20-cv-03444-MEMF). I represented one of the defendants in that action working alongside multiple other defense lawyers and several plaintiffs' lawyers. After a long 7-day trial and following the end of the closing arguments after the jury went

into deliberations, lead plaintiffs' trial counsel gave me a hug and we mutually exchanged pleasantries and respect for each other's closing arguments. This was in the presence of the Court, other lawyers, and parties.

4. I believe my colleague and law partner, Mr. Malynn, to also be an attorney who displays professionalism and civility and enjoys a great reputation in the legal community. Mr. Malynn began his intellectual property law practice at Skadden, Arps, Slate, Meagher & Flom LLP. He also was very recently recognized by the Daily Journal as a "Top Intellectual Property Lawyer 2025."

5. Going into the call on Friday afternoon with Mr. Murphy, I expected Mr. Murphy to appreciate having a more "personal" call. I, thus, spoke with Mr. Murphy about my personal life as well as Mr. Malynn's personal life. With Mr. Malynn's consent, I disclosed to Mr. Murphy that throughout the course of this case, Mr. Malynn has been dealing with a Stage 3 cancer diagnosis, while undergoing multiple surgical procedures, chemo and other therapies. Sadly, Mr. Malynn is scheduled for another hospital procedure this week to determine whether his cancer has progressed to Stage 4.

6. Mr. Murphy and I agreed to get dinner together on April 30, with Mr. Malynn and Mr. Murphy's colleague who just joined the case, Mr. Follett. Mr. Murphy's assistant already made the reservations. I look forward to that dinner.

7. We also agreed on a plan concerning the Special Master, which is presented in the concurrently filed joint report. I also discussed with Mr. Murphy the accusations made against us in Mr. Murphy's April 10 declaration (Dkt. No. 151). Mr. Murphy and I agreed that I need not address those accusations with the Court, and that it would be counter-productive to do so, and that Mr. Murphy would review those accusations and either withdraw them or meaningfully otherwise address them with a goal towards cooperation and professionalism. Meanwhile, I reserved the right to address those accusations, if necessary, with the Special Master.

I declare under penalty of perjury that the foregoing is true and correct. Executed April 21, 2025, within the United States, its territories, possessions, or commonwealths.

*/s/ Arash Beral*
Arash Beral

## DECLARATION OF MICHAEL MURPHY

I, Michael D. Murphy, declare as follows:

1. I am an attorney duly admitted to practice before this Court. I am a partner with Fox Rothschild LLP, attorneys of record for Plaintiff Shakey's Pizza Asia Ventures, Inc. ("SPAVI"), as well as the newly named Third-Party Defendants: Cinco Corporation, PC International PTE Ltd, and SPAVI International USA, Inc.

2. I have personal knowledge of the facts set forth herein, except for those stated on information and belief and, as to those, I am informed and believe that they are true.

3. I submit this declaration in response to that part of this Court's Order issued April 15, 2025, continuing the Order to Show Cause conducted on April 8, 2025 deferring ruling on its Order to Show Cause pending this submission. (Dkt. 155).

4. As previously mentioned to this Court, one of my primary sources of referrals are from former opponents, or their counsel. Moreover, I have never had a Court raise the quality of my professional treatment of another attorney, whether in the midst of litigation, or after. I do indeed believe in zealous advocacy, but given these data points, I have assumed that I accurately traverse the line of zealous advocacy and humanity. This being my first time having been asked to show cause for my treatment of opposing counsel, I am treating it as a gift, so as to ensure that I am intentional about deferring to kindness, even in the heat of battle.

5. The Webex meeting I participated in with Arash Beral on April 18, 2025, reinforced the importance of what the Court is asking us to do. Indeed, and ironically, Mr. Beral has always been an attorney I have opposed who I genuinely like and with whom we have been friendly even when sparring. Our mutual love of marathons (my midsection notwithstanding) has often been a source of small talk, in addition to mutual professional acquaintances we share.

6. Friday, April 18, 2025, was perhaps the first time Mr. Beral and I have spoken, not about this case, but about life since 2021. Mr. Beral opened the discussion with a reminder about how we all have lives outside of these courtrooms, and sometimes serious issues can affect everything, including our demeaner and mood, etc.

7. During this call, Mr. Beral disclosed to me, for the first time, serious information about his colleague, Mr. Malynn. Having had no knowledge of this, the context of everything between us did alter, dramatically. Having dealt with cancer in my family and family of choice, the devastation it leaves in its wake renders everything else so minor in importance. Mr. Beral and I both commented on how he, Mr. Beral, has personal issues affecting him and was sure I do too. Indeed, having been diagnosed with a life-threatening disease myself in 2015 (now a chronic condition), I truly can relate to how I interacted with people professionally, and personally in the midst of the terror when first diagnosed.

8. Mr. Beral and I then discussed the value of a dinner between counsel, social only, that would be attended by him and Mr. Malynn, as well as me and, if she is in Los Angeles, Ms. Zolliecoffer, the first associate I brough into this case when joining my new firm. If not, I will be inviting Mr. Follett, who made an appearance last week. I made the reservation at once, during that meeting, on April 18, 2025, and it is set for April 30, 2025 at 6 pm.

9. It was at this point that Mr. Beral proposed that he decline to provide the additional context invited by this Court, should he so elect.

10. In response, and seeing no constructive benefit, I ask that I be given leave to take whatever affirmative efforts are necessary or possible, to have Dkt. 151 (my declaration of April 10, 2025) removed and replaced with a redacted declaration that I will prepare and submit, that removes paragraphs 13, 21 through 26 and 30 through 37, and redacts them out.

/ / /

11. If, given the nature of the public record and PACER, this is an impossibility, I request that those paragraphs be deemed stricken from the record.

12. Finally, at the end of our Webex meeting on April 18, 2025, Mr. Beral and I agreed, to ask the one neutral who we have both dealt with in these matters, be asked to serve as Special Master, and quickly devised our strategy to get the terms of this proposed appointment sufficiently concrete to comply with this Court's order by the date of this Declaration, April 21, 2025. The proposal contained in this Joint Filing is approved by me, and the language has been crafted by each of us, jointly. We do not expect applause or congratulations, but, given the wording of Dkt. 155, That is important for the Court to know.

13. If there is any context I believe is necessary, that is this: The correspondence being filed concurrently herewith, upon review, reveals that, the parties were both jointly, and sincerely, engaged in negotiating these issues of compliance and fees at all times, except the last week prior to April 4, 2025. It was not until the week before April 4, 2025, that the transmission of joint statements, as one voice, changed. Mr. Beral and I have been preparing joint statements since 2018, with at least three different judges, and each judge has a different preference and, in compliance with some judges' orders, dropping in one position before filing was not viewed by any judicial officer as being a violation. This is not to disregard, or diminish, this Court's expectations, however, that context is important for the statement made in paragraph 13.

14. Finally, I took the lead in gathering the correspondence requested by this Court in Dkt. 155. Mr. Beral and I agreed on April 18, 2025, that these communications should involve, exclusively, any communication referring to the meet and confer at issue, or compliance with Orders found in Dkt. 117, 122, 127, 133, and 135. There are 50 exhibits in total. All 50 exhibits have been prepared and ready to file since mid-day, today, however, obtaining a Master, and the terms thereby, along with working through these statements, over Passover and Easter,

with less than one week, resulted in the joint statement being ready for filing in the 8 pm hour.

15. Attached hereto as Exhibits 1 through 28, attached hereto, are true and correct copies of every communication that refers to or evidence compliance with any of the Orders at issue, up to and through March 10, 2025 at 6 pm. My staff began filing this document at approximately, 8:50 pm. The exhibits started being rejected based on the formatting, despite being pdfs and less than the size limit. My staff has tried everything for three hours. Our solution has been to file this document with twenty-eight of the exhibits attached. The remaining exhibits, once we resolve the formatting issue, will be uploaded as soon as possible, in what we will call a Vol. 2 within the hour and hopefully no later than 2 a.m.

16. All of these exhibits, considered together, are the entiretly of the communications referring to the parties' compliance with Dkt. 117, 122, 127, 133, and 135, and that otherwise refer to, expressly, the meet and confer as to compliance with the inunction and the amount of attorneys' fees to be awarded to Plaintiff upon contempt.

I declare under penalty of perjury that the foregoing is true and correct. Executed April 21, 2025, within the United States, its territories, possessions, or commonwealths.

*/s/ Michael D. Murphy*
Michael Murphy

## CERTIFIFCATE OF SERVICE

The undersigned certifies that, on April 21, 2025, the foregoing document was electronically filed with the Clerk of the Court for the United States District Court, Central District of California, using the Court's ECF filing system. I further certify that all counsel for all parties to this action are registered CM/ECF user and that service will be accomplished by the CM/ECF system.

I certify under penalty of perjury that the foregoing is true and correct.

Dated: April 21, 2025

**FOX ROTHSCHILD LLP**

Michael D. Murphy
Attorneys for Plaintiff SHAKEY'S PIZZA ASIA VENTURES, INC.