# EXHIBIT 34

**From:** Murphy, Michael D.
**To:** Beral, Arash
**Cc:** Zolliecoffer, Jordan; James, Pauletta; Malynn, Todd M.
**Subject:** RE: Meet and Confer over Fees on Contempt Motion
**Date:** Wednesday, March 12, 2025 2:22:28 PM

We have a joint response on this due, so let me look and turnaround a response within the hour. In the meantime, would you please advise on the proposed stip I sent a bit ago re SPAVI's response? I am offering to get all if not at least two of these new parties deemed served and responding within weeks, rather than the normal course. We need to file soon. (I thought I had sent the email proposing more time yesterday but I didn't press the second "send" instruction).



**Michael Murphy**
Partner
(213) 213-1211
(310) 974-2271 (cell)
mdmurphy@foxrothschild.com

Learn about our new brand.

**From:** Beral, Arash <arash.beral@blankrome.com>
**Sent:** Wednesday, March 12, 2025 2:00 PM
**To:** Murphy, Michael D. <mdmurphy@foxrothschild.com>
**Cc:** Zolliecoffer, Jordan <JZolliecoffer@foxrothschild.com>; James, Pauletta <PJames@foxrothschild.com>; Malynn, Todd M. <Todd.Malynn@BlankRome.com>
**Subject:** [EXT] Meet and Confer over Fees on Contempt Motion
**Importance:** High

Mike:

As you know, on your motion for OSC re: contempt (filed 12/26/24 – Dkt. No. 87, the "motion"), we were ordered to thoroughly discuss "the amount of reasonable attorney's fees to award to Plaintiff in connection with its contempt motion, in light of Court's conclusion that Defendants violated the preliminary injunction before the January 31, 2025 OSC." Dkt. No. 117. While your motion had requested various forms of relief, including a "per day" fine, a special master, and future legal fees, Judge Blumenfeld informed us that he only would issue an award of reasonable attorney's fees incurred through January 31, 2025 in connection with bringing your motion.

As a preliminary matter, kindly note that your motion and your declaration in support of the motion requested **$25,612.50** in total attorney's fees. (Dkt. No. 87-1 at Paragraph 16.) We view that amount to be the outer bounds of what SPAVI could potentially receive as an award. On that, I've had a chance to review your fee invoices. Unfortunately, it's practically impossible for me to determine how much time was reasonably spent on the motion for three principal reasons:

1. A lot of the fees are incurred for other items (such as opposing our motion for reconsideration, or our motion for stay, or our motion to dismiss, or are in connection with filings made with the Ninth Circuit, or involve communicating with PCJV's franchisees).
2. While you went through the effort of trying to isolate what you believe is the "relevant time" on *your* fee entries that are partly redacted (which I appreciate), I did not get the same for Kenny's fee entries. Therefore, it is impossible for me to determine how much of Kenny's time (in a partially redacted block-bill entry, for example) involves the motion vs. other matters.
3. There appear to be some duplication of efforts between you and Kenny.

Perhaps more importantly and from a more holistic perspective, you brought this motion at a time when you believed there were "38 Potato Corner stores using the trademarks." I surmise that part of SPAVI's strategy in bringing this motion was to try and "use it" to strike relationships with PCJV's third party franchisees (which it did). Indeed, you have told us that: (a) SPAVI has entered agreements with third party franchisees; and (b) with respect to injunction compliance, you are only concerned with the stores that Mr. Koren has an interest in (like those 7 defendant entity stores you sued: NKM, J&K Americana, J&K Lakewood, J&K Valley Fair, J&K Ontario, HLK Milpitas, GK Cerritos). It appears to us, therefore, that the fees SPAVI incurred in bringing this motion and using the motion to forge alliances with third parties *significantly benefitted SPAVI*. Put another way, at least 70-80% of the motion (dealing with third party franchisees) is not germane or relevant to this analysis (and your client has by all accounts received a significant benefit by forging relationships with PCJV's third party franchisees anyway).

That all said, we have to try and reach common ground on a reasonable fee. If our side is able to convince the Court that roughly only 20% of your fee request should be awarded (given that roughly 80% of it is not in issue and/or otherwise resulted in a benefit to SPAVI), then the "rough" reasonable fee is $5,000 (give or take 5-10% margin of error and accepting your entire $25K fee request made in the motion). If the Court does not view the "benefit" gained by SPAVI as a result of forging relationships with PCJV's third party franchisees as an offset, we presume the Court will award SPAVI something up to $25,612.50, but likely less.

Just now, I received authority to propose we simply cut this roughly in half and agree on **$12,500**. We think it's fair. Let us know SPAVI's response please. Thank you.

(I have meetings at 2 pm and 3:30 pm in other matters. I'll be back on this case later.)

Best,

Arash

**Arash Beral** | BLANKROME
2029 Century Park East | Los Angeles, CA 90067
Arash Beral | Blank Rome LLP

********************************************************************************

This message and any attachments may contain confidential or privileged information and are only for the use of the intended recipient of this message. If you are not the intended recipient, please notify the Blank Rome LLP or Blank Rome Government Relations LLC sender by return email, and delete or destroy this and all copies of this message and all attachments. Any unauthorized disclosure, use, distribution, or reproduction of this message or any attachments is prohibited and may be unlawful.

********************************************************************************