# EXHIBIT 42

**From:** Beral, Arash
**To:** Murphy, Michael D.
**Cc:** Malynn, Todd M.; Zolliecoffer, Jordan; James, Pauletta; Kozak, Lori S.
**Subject:** [EXT] RE: Meet and Confer items
**Date:** Tuesday, March 25, 2025 1:27:40 PM
**Attachments:** Joint Statement re Contempt Negotiations March 25 2025-C.docx

I don't understand the point you're making about the Instagram account.

On the joint statement, no, I don't agree. We need to give the Court a meaningful update. Please include your portion. I've included ours.

I'm heading into a 1:30 pm meeting, please include your portion and file before 2 pm.

**Arash Beral** | BLANK**ROME**
2029 Century Park East | Los Angeles, CA 90067
Arash Beral | Blank Rome LLP


**From:** Murphy, Michael D. <mdmurphy@foxrothschild.com>
**Sent:** Tuesday, March 25, 2025 12:54 PM
**To:** Beral, Arash <arash.beral@blankrome.com>
**Cc:** Malynn, Todd M. <Todd.Malynn@BlankRome.com>; Zolliecoffer, Jordan <JZolliecoffer@foxrothschild.com>; James, Pauletta <PJames@foxrothschild.com>; Kozak, Lori S. <lkozak@foxrothschild.com>
**Subject:** RE: Meet and Confer items


Arash:

The Instagram account did have that material, and it is so specific to your clients that it could not have been vestigial from a prior user, unless they were Nostradamus. It was up, and your client did post it.

Anyway, attached is the proposed joint report.

Thanks

Michael Murphy
Partner
(213) 213-1211
(310) 974-2271 (cell)
mdmurphy@foxrothschild.com

Learn about our new brand.

**From:** Beral, Arash <arash.beral@blankrome.com>
**Sent:** Tuesday, March 25, 2025 12:06 PM
**To:** Murphy, Michael D. <mdmurphy@foxrothschild.com>
**Cc:** Malynn, Todd M. <Todd.Malynn@BlankRome.com>; Zolliecoffer, Jordan <JZolliecoffer@foxrothschild.com>; James, Pauletta <PJames@foxrothschild.com>; Kozak, Lori S. <lkozak@foxrothschild.com>
**Subject:** [EXT] Re: Meet and Confer items

What personal stuff? I told you what you said is not true - the Instagram account does not have that content up. And I asked you what you are drafting exactly as I have little time to address anything if it's going to involve anything other than your request to continue the fees stuff.

On Mar 25, 2025, at 11:59 AM, Murphy, Michael D. <mdmurphy@foxrothschild.com> wrote:

Arash:

The more you complain about the tone of my emails, yours become more personal. What are you talking about? Stop the personal stuff, please.

I will be circulating shortly.

Michael Murphy
Partner
(213) 213-1211
(310) 974-2271 (cell)
mdmurphy@foxrothschild.com

Learn about our new brand.

**From:** Beral, Arash <arash.beral@blankrome.com>
**Sent:** Tuesday, March 25, 2025 11:56 AM
**To:** Murphy, Michael D. <mdmurphy@foxrothschild.com>
**Cc:** Malynn, Todd M. <Todd.Malynn@BlankRome.com>; Zolliecoffer, Jordan <JZolliecoffer@foxrothschild.com>; James, Pauletta <PJames@foxrothschild.com>; Kozak, Lori S. <lkozak@foxrothschild.com>
**Subject:** [EXT] Re: Meet and Confer items

Doubt I'm going to have an answer for you by your noon deadline, but it is untrue what you said ("I am disappointed that this shows up on Instagram"). It does NOT show up on Instagram. I assume (only my assumption) that the account was reactivated by Meta and was only up for minutes or hours before content changed to Undercover Fries. I see a posting yesterday introducing Undercover Fries.

What are you preparing exactly for the joint statement? Please don't ambush me with anything more than your continuance request.

On Mar 25, 2025, at 10:20 AM, Murphy, Michael D. <mdmurphy@foxrothschild.com> wrote:

Please send it to your client or Ms. Grudnowsky if this was ever up (it was).

**From:** Beral, Arash <arash.beral@blankrome.com>
**Sent:** Tuesday, March 25, 2025 10:17:02 AM
**To:** Murphy, Michael D. <mdmurphy@foxrothschild.com>
**Cc:** Malynn, Todd M. <Todd.Malynn@BlankRome.com>; Zolliecoffer, Jordan <JZolliecoffer@foxrothschild.com>; James, Pauletta <PJames@foxrothschild.com>; Kozak, Lori S. <lkozak@foxrothschild.com>
**Subject:** [EXT] Re: Meet and Confer items

I'm at the Stanley Mosk courthouse on another matter. I just checked Instagram and none of that stuff about potato corner shows up.

> On Mar 25, 2025, at 10:05 AM, Murphy, Michael D. <mdmurphy@foxrothschild.com> wrote:
>
> Arash:
>
> I had an unexpected family issue take me offline yesterday afternoon. Although it was interrupted by a flurry of attention regarding the attached which was found on Instagram yesterday. For those two reasons I was not able to prepare out filing. We have had to investigate the latter, which we are still doing.
>
> Since we have a filing to prepare, as per Judge Blumenfeld's Order of this morning, I will be drafting that, and raising the below. I would like an explanation of this by noon. I am disappointed that this shows up on Instagram after I stick my neck out and advise that I believe the active contempt has finally ceased.
>
> Accordingly, I request that you explain the attached, and explain why I should not argue that the ruling that your client was in contempt of the past now appears to fit in that category of mootness exceptions wherein some wrongdoing has ceased, but is likely to repeat. Why is this not proof that a special master is required, given that we have to spend our time monitoring everything. How is this not contempt? Given Ms. Grudnowsky's testimony has to how the social media aspect of compliance was the first?
>
> This is of course, putting aside the separate problem that we will have to meet and confer about which is that your client's operations still look like potato corner in every way, except the trademarks, and the fixture signs are still up. You are clearly attempting to pawn off the brand. But that is a discussion for another day
>
> Thank you,
>
> **From:** Beral, Arash <arash.beral@blankrome.com>
> **Sent:** Monday, March 24, 2025 9:34:19 PM
> **To:** Murphy, Michael D. <mdmurphy@foxrothschild.com>; Malynn, Todd M. <Todd.Malynn@BlankRome.com>
> **Cc:** Zolliecoffer, Jordan <JZolliecoffer@foxrothschild.com>; James, Pauletta <PJames@foxrothschild.com>
> **Subject:** [EXT] RE: Meet and Confer items
>
> Mike:
>
> Still haven't heard back from you on any of the below emails, including the attorney's fees stuff. As a reminder, on Thursday, you asked to continue the fees stuff and I said that would be fine. I trust that you are handling the filing of a statement with the Court tonight.
>
> Arash
>
> **Arash Beral** | BLANKROME
> 2029 Century Park East | Los Angeles, CA 90067

**From:** Beral, Arash
**Sent:** Monday, March 24, 2025 2:39 PM
**To:** Murphy, Michael D. <mdmurphy@foxrothschild.com>; Malynn, Todd M. <Todd.Malynn@BlankRome.com>
**Cc:** Zolliecoffer, Jordan <JZolliecoffer@foxrothschild.com>; James, Pauletta <PJames@foxrothschild.com>
**Subject:** RE: Meet and Confer items

Mike:

We were disappointed that we didn't hear from you on Friday. You didn't send your document production either. I really don't understand why we must be confronted with these accusatorial, unnecessary emails, which you know are untrue or misleading. I don't get it. I thought we had turned the page.

**Please arrange a time to discuss all issues – yours and ours – with Todd either today or tomorrow.** I'm completely slammed on other matters. I've been in Court with a client all morning, which hearing bled into the lunch hour, and I just got back a little while ago to have these long emails from you to address. I have other urgent matters to tend to this afternoon and I'm back in Court tomorrow. It would have helped for you to identify all your issues in advance so that I could review and give my input to Todd before you meet with him. That opportunity being wasted, quickly pointing out:

1. I am confused by the accusation about our request for you to identify the issues before a meet and confer; we made a customary request. Again, we want to have time to evaluate your positions and authorities so that we could have a meaningful discussion with you; we've made this request multiple times. You not only have requested that we send meet and confer letters to you in the past, but we have prepared one in advance of each of our requested meet and confers (which we have had many) in this case. You could have just helped us by identifying the issues, but elected not to. That's fine. Todd will discuss with you, take copious notes, and then discuss your issues with me. He will also discuss our issues as well.

1. I am also confused about your "reversing tires 180 degrees" comment. I don't know what that means, but I assume you're suggesting that we changed positions. We never did. My memory is that we complained in November about your amended pleading, which added claims and parties without leave of court, and you essentially opposed any suggestion at a continuance of the deadlines (not trial date, but deadlines). Then the Court dealt with the deadlines issue (again, not trial date, but deadlines) in a footnote in one of its Orders. We chose not to file a motion to amend the CMO, but to stay on track with all deadlines and trial date – and any time the matter came up, you would not commit anyway. And we've heard Judge Blumenfeld say time and time again that dates are firm; in fact, you and I had this discussion in Court – we said that Judge Blumenfeld is not likely to change any dates. I made a proposal to you to stay this case pending the Ninth Circuit ruling and you refused that. Thus, our side fully complied with the Scheduling Order, as we were and are required to do. We're not going to prejudice our clients to give you a renewed discovery phase, or to designate experts after you've seen our designation, or otherwise renew the waived MSJ dates, etc. The Counterclaim/TPC does not change the analysis either – nothing in there enlarged the scope of discovery; all the issues were addressed in the early motion to dismiss and injunction papers (at least, if not addressed by the preceding state court litigation) and you've had plenty of time to do discovery on the subject matters. Nothing is new. We also offered you depositions in the past and you elected not to do any.

1. Plaintiff currently is in violation of the Magistrate Judge's Order, requiring the production of documents to the first set of document requests last week, including documents you represented you had already gathered. We have not refused to meet and confer on search terms. The search term issue was separate from the agreed-upon initial production you were to make last week. It concerned a follow-up production in accordance with the Order.

You agreed to provide a list of search terms to us (which you have not done) so we could comment on them. It was agreed that the initial production would give us insight as to relevant custodians of record to enable us to provide informed comments. You have now deprived us of the ability to so make informed comments on search terms by hiding them from us and refusing to make the initial production of core relevant documents already gathered. You seem to be holding this issue hostage because we objected – appropriately – to your untimely discovery requests.

Best,

Arash

**Arash Beral** | BLANKROME
2029 Century Park East | Los Angeles, CA 90067
Arash Beral | Blank Rome LLP

**From:** Murphy, Michael D. <mdmurphy@foxrothschild.com>
**Sent:** Monday, March 24, 2025 8:53 AM
**To:** Beral, Arash <arash.beral@blankrome.com>; Malynn, Todd M. <Todd.Malynn@BlankRome.com>
**Cc:** Zolliecoffer, Jordan <JZolliecoffer@foxrothschild.com>; James, Pauletta <PJames@foxrothschild.com>
**Subject:** RE: Meet and Confer items

Arash:

**#1 Our Rule 12 Motion**: Nothing in the Local Rules allows you to condition a meet and confer under LR 7-3 on a written submission preceding even the setting of the meet and confer. You are forcing me to waste my client's money on fees. You are correct I have asked for this in the past from you, but have never conditioned a meet and confer on this. Please identify a date over the next two days to conduct this meet and confer that I have been asking for over a period of nearly two weeks. Should you decline to do so, I will withdraw my offer to accept service upon simply delivering the summonses to my email for the three new defendant.

Regarding the basis for our Rule 12 Motion, it is quite simple, the entire pleading is fatally flawed and must be dismissed.

- As for the affirmative defenses which SPAVI will seek to have adjudicated on the pleadings: they are either pled with insufficient specificity, or they do not exist. Failure to state a claim, for example, is not an affirmative defense. Full faith and credit, while it can be an affirmative defense, has to at least identify some factual basis. Each of your affirmative defenses, with few exceptions, are faulty. You should read the CD Cal. Case Rosen (attached), as it is quite illuminating
- As for the claims in the counter claim and third party complaint, I think with few exceptions, not one of the elements of any claim is supported by any allegations
    i. For Cinco: what is the contract it is bound to? The AJVA supersedes the JVA and Cinco is not a party. What is the source of Cinco's supposed fiduciary duties? What is the relationship from which that supposed fiduciary duty arises? It is not a member, of PCJV, it is not a signatory to the AJVA. A licensor owes no fiduciary duties. Can you find one single authority that confers such a duty in this context?
    ii. For SPAVI: each of the claims sound in interference. What specifically is the act of SPAVI that interfered with contract / business expectancy. You don't ever actually allege that. And what is the specific contract provision being interfered with? What is the

      wrongful act of SPAVI (as you know this is a requirement for the business expectancy claims).
- iii. For the Singapore entity and SPAVI US Third Party Defendants: you fail to allege a single fact that would establish a controversy. Not one.

      Given the above, you should just dismiss the counter claim and third party claim. In fact, we urge you to rethinking this entire pleading (the Answer and Counterclaim and Third Party Claim) and dismiss the entire thing as we believe, and are now likely to pursue disnmissal under FRCP Rule 11. Each of the four subsections of FRCP 11(b) have been triggered. The best evidence of the absence of any evidence, legally tenable arguments, and for your improper purpose for both the claims and affirmative defenses, is that you made no effort in this pleading to acknowledge this same Court's analysis in the Injunction Order that aderesases thgee aregyuments on point, and attempt to identify facts that would defeat those arguments. This is a concession that you know you have no legal or factual argument around the Court's analysis, which sent your claims into preliminary defeat, indicating that you know you will lose again.

**#2 Scheduling Order**: I request you rethink this new position, reversing tires 180 degrees announced, for the first time in response to this email at the end of last week. Putting aside the record (which shows you asking for this, us agreeing to this, the Court recommending this, and you never once saying you have changed your mind until this email sent last week, there are a lot of things that undermine your newly changed position. First, the fact that you served your Rule 26 disclosures so late you made it impossible for us to use those as a basis and framework for4 discovery, effectively undermining Rule 26 in this case entirely. Second, do you really think the judge is going to tell Cinco, the Singapore entity, and SPAVI US that they get no discovery, no Rule 26 disclosures? Nothing? I think these three points alone will be difficult to explain to the Court. Accordingly, by forcing us to water the fees to prepare an Ex Parte application is, in our opinion, nothing more than another way to force our client to waste more fees and time. Let's avoid all of that, and just work up a new calendar to propose.

#4 Documents. I tried to meet and confer with you on search terms, which are3 better decided now. You refused. I also asked for a courtesy on time for other discovery responses, in part so I could get this production rolling, and you refused. This forced me to drop everything and work on this. At a certain point, the refusal by your side to extend many courtesies whatsoever is beginning to look like your substantive strategy. We will begin producing thus week. I am very sorry about how you have decided to degrade the baseline of basic courtesies extended between attorneys. Especially when I have given you every single extension you have asked for. Everyone.

<image001.jpg>
<image001.jpg>
Michael Murphy
Partner
<image001.jpg>
(213) 213-1211
<image001.jpg>
(310) 974-2271 (cell)
<image001.jpg>
mmurphy@toxtorts.child.com
<image001.jpg>
Learn about our new brand.

**From:** Beral, Arash <arash.beral@blankrome.com>
**Sent:** Thursday, March 20, 2025 8:40 PM

**To:** Murphy, Michael D. <mdmurphy@foxrothschild.com>; Malynn, Todd M. <Todd.Malynn@BlankRome.com>
**Cc:** Zolliecoffer, Jordan <JZolliecoffer@foxrothschild.com>; James, Pauletta <PJames@foxrothschild.com>
**Subject:** [EXT] RE: Meet and Confer items

Mike:

I'm going on a 12+ hour day here and my eyes are glazing over. I'm also in depos or hearings every day over the next couple weeks with multiple trials coming up. I'll try to connect with Todd tomorrow to see when he's available to confer and also with the clients over the weekend. My quick comments are below since you requested a response today:

First, #3 is fine.

As to #1, please specifically identify the issues you want to confer about so that we can study it before a meeting. I think Todd has asked for this already.

As to #2, I personally don't think your proposal makes sense for our clients. We've been diligently complying with the Case Management Order and we did not file a request for an extension of the CMO either. Since your side didn't address our extension request back in November/December, we treated the CMO to be final especially given its language that it should be treated as being final, as well as Judge Blumenfeld's admonitions to other parties in other cases each time we appeared in Court that dates are final. And certainly, at this late juncture, you can't expect us to prejudice our clients with wholesale revisions to the CMO which would essentially enable you to hit the reset button on waived percipient discovery deadlines, expert discovery deadlines, MSJ deadlines, etc. Moreover, every day of delay with a preliminary injunction hanging over our clients' heads is prejudicial (not to mention almost all of PCJV's franchisees now claiming to "rescind"); our clients want to vindicate their rights ASAP. That said, I will discuss your proposal with our clients and if they wish to agree to it or have a counter-proposal, I will let you know.

Re: #4, SPAVI is required to produce documents this week. It's already been months that we've been chasing this down. We trust that you will comply with the Magistrate Judge's Order and produce documents tomorrow. In addition, SPAVI is to provide the search terms it is using to ensure that it has gathered all responsive documents subject to the limitations stated in the Order. We cannot delay any further, especially when the discovery motion hearing deadline is April 11. Please comply. As to our written request last Friday to meet and confer over SPAVI's discovery responses as to our second set of discovery requests, this must also be brought to the Magistrate Judge's attention ASAP given the April 11 deadline. I will ask Todd to propose a joint agenda on that tomorrow.

Best,

**Arash Beral** | BLANKROME
2029 Century Park East | Los Angeles, CA 90067
Arash Beral | Blank Rome LLP


**From:** Murphy, Michael D. <mdmurphy@foxrothschild.com>
**Sent:** Thursday, March 20, 2025 3:04 PM
**To:** Beral, Arash <arash.beral@blankrome.com>; Malynn, Todd M. <Todd.Malynn@BlankRome.com>
**Cc:** Zolliecoffer, Jordan <JZolliecoffer@foxrothschild.com>; James, Pauletta <PJames@foxrothschild.com>
**Subject:** Meet and Confer items

Arash and Todd:

1. **Pleading Challenges: Please advise today** as to three times you can meet and confer with Jordan and I regarding a Rule 12 Motion and Motion for Judgment on the

Pleadings on behalf of SPAVI, SPAVI US, Cinco, and the Singapore entity. The Motion will be challenging each of the causes of action in the Third Party Complaint / Counterclaim under 12(b)(6) and for failing under Iqbal and Twombly. As for SPAVI we will also be challenging a host of your affirmative defenses and seeking to have them dismissed as well. When you propose dates and times, please keep in mind that once you send us the subpoenas / or we agree to waive service, we only have 12 days to file and our LR 7-3 meet and confer has to be within time sufficient to accomplish that. I can be available tomorrow afternoon. I would prefer it be before 1, because Jordan is on the East Coast.

1. **Trial Schedule**: Rather than us going back and forth as to who was supposed to propose a schedule, given that this was first asked of us by you in December, we propose the below schedule, which I think I can get buy in on with respect to Cinco as well as the additional SPAVI parties you named. We are giving up a lot with respect to time for Cinco's role, as a courtesy. I cannot guarantee its agreement but lets all of us come to an agreement and then I will work with them. We would like to also include in here that for any deadlines that passed, that deadline is extended as if it did not yet toll. This avoids anyone playing games with respect to meeting and conferring as to outstanding discovery (both of us could do so, so let's nip it in the bud). If we can agree on this over the next 24 hours, I will obtain a waiver of service. **Please respond to this proposed schedule by noon tomorrow**.

1. **Contempt Damages**: Regarding fees in contempt, I owe you some additional backup here. I have not had the time to sit down and get you revised redactions showing that we in fact did reduce Kenny's time in each entry where other tasks were identified. I would like to ask the Court for an extra week. **Please confirm this is acceptable**.

1. **Meet and Confer on Discovery**: I noted your letter last Friday. I would like us to complete the meet and confer as to the pleading challenges first, and then we can address document productions, responses, on all sides. I believe an in person meet and confer is advisable. Please note: our production with respect to what was discussed at the IDC got delayed because of things out of my control. We would like to propose the dates on that be extended by 10 days as to each.

Thank you,

| Trial ☐ Court ☐ Jury (Mon., 8:30 a.m.) | ~~August 4, 2025~~ January 5, 2026 |
|---|---|
| **Pretrial Conference** (Fri., 9:30 a.m.) (including hearing on motions in limine) | ~~July 18, 2025~~ December 19, 2025 |
| Deadline to Complete Rule 26 Disclosures or Amended Disclosures | April 16, 2025 |
| **Motion to Amend Pleadings/Add Parties** (Hearing Deadline) | ~~November 8, 2024~~ April 30, 20225 |
| **Discovery Deadline - Nonexpert** | ~~March 14, 2025~~ August 15, 2025 |
| **Discovery Deadline – Expert** | ~~April 11, 2025~~ September 11, 2025 |
| Initial Expert Disclosure | ~~February 28, 2025~~ August 1, 2025 |
| Rebuttal Expert Disclosure | ~~March 14, 2025~~ August 15, 2025 |
| **Discovery Motion Hearing Deadline**[1] | ~~April 11, 2025~~ September 11, 2025 |
| **Non-Discovery Motion Hearing Deadline** | ~~April 25, 2025~~ September 26, 2025 |
| **Settlement Conference Deadline** ☐ 1. Mag. J.   ☐ 2. Panel   ☐ 3. Private | ~~May 9, 2025~~ October 10, 2025 |
| **Post-Settlement Status Conf.** (Fri., 8:30 a.m.): Joint Status Report Due (7 days before *by 9:00 a.m.*): | ~~May 23, 2025~~ October 24, 2025 |

|  | ~~May 16, 2025~~ | October 17, 2025 |
|---|---|---|
| **Trial Filings (First Set) Deadline** | ~~June 20, 2025~~ | November 21, 2025 |
| **Trial Filings (Second Set) Deadline** | ~~July 7, 2025~~ | December 8, 2025 |

This email contains information that may be confidential and/or privileged. If you are not the intended recipient, or the employee or agent authorized to receive for the intended recipient, you may not copy, disclose or use any contents in this email. If you have received this email in error, please immediately notify the sender at Fox Rothschild LLP by replying to this email and delete the original and reply emails. Thank you.

*******************************************************************************************

This message and any attachments may contain confidential or privileged information and are only for the use of the intended recipient of this message. If you are not the intended recipient, please notify the Blank Rome LLP or Blank Rome Government Relations LLC sender by return email, and delete or destroy this and all copies of this message and all attachments. Any unauthorized disclosure, use, distribution, or reproduction of this message or any attachments is prohibited and may be unlawful.

*******************************************************************************************

This email contains information that may be confidential and/or privileged. If you are not the intended recipient, or the employee or agent authorized to receive for the intended recipient, you may not copy, disclose or use any contents in this email. If you have received this email in error, please immediately notify the sender at Fox Rothschild LLP by replying to this email and delete the original and reply emails. Thank you.

[1] A motion seeking or opposing further nonexpert discovery must be heard on or before the nonexpert discovery deadline.

This email contains information that may be confidential and/or privileged. If you are not the intended recipient, or the employee or agent authorized to receive for the intended recipient, you may not copy, disclose or use any contents in this email. If you have received this email in error, please immediately notify the sender at Fox Rothschild LLP by replying to this email and delete the original and reply emails. Thank you.
&lt;PHOTO-2025-03-23-05-09-00.jpg&gt;

This email contains information that may be confidential and/or privileged. If you are not the intended recipient, or the employee or agent authorized to receive for the intended recipient, you may not copy, disclose or use any contents in this email. If you have received this email in error, please immediately

notify the sender at Fox Rothschild LLP by replying to this email and delete the original and reply emails. Thank you.

This email contains information that may be confidential and/or privileged. If you are not the intended recipient, or the employee or agent authorized to receive for the intended recipient, you may not copy, disclose or use any contents in this email. If you have received this email in error, please immediately notify the sender at Fox Rothschild LLP by replying to this email and delete the original and reply emails. Thank you.

This email contains information that may be confidential and/or privileged. If you are not the intended recipient, or the employee or agent authorized to receive for the intended recipient, you may not copy, disclose or use any contents in this email. If you have received this email in error, please immediately notify the sender at Fox Rothschild LLP by replying to this email and delete the original and reply emails. Thank you.

| | |
|---|---|
| 1 | MICHAEL D. MURPHY |
|   | mdmurphy@foxrothschild.com |
| 2 | JORDAN ZOLLIECOFFER |
|   | jzolliecoffer@foxrothschild.com |
| 3 | FOX ROTHSCHILD LLP |
|   | Constellation Place |
| 4 | 10250 Constellation Boulevard, Suite 900 |
|   | Los Angeles, California 90067 |
| 5 | Telephone:  310.598.4150 |
|   | Facsimile:   310.556.9828 |
| 6 | |
| 7 | Attorneys for Plaintiff SHAKEY'S PIZZA ASIA VENTURES, INC. |

# UNITED STATES DISTRICT COURT

# CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| SHAKEY'S PIZZA ASIA VENTURES, INC, a Philippines corporation,<br><br>Plaintiff,<br><br>v.<br><br>PCJV USA, LLC, a Delaware limited liability company; PCI TRADING, LLC, a Delaware limited liability company; GUY KOREN, an individual; POTATO CORNER LA GROUP, LLC, a California limited liability company; NKM CAPITAL GROUP, LLC, a California limited liability company; J & K AMERICANA, LLC, a California limited liability company; J&K LAKEWOOD, LLC, a California limited liability company; J&K VALLEY FAIR, LLC, a California limited liability company; J & K ONTARIO, LLC, a California limited liability company; HLK MILPITAS, LLC, a California, limited liability company; GK CERRITOS, LLC, a California, limited liability company; J&K PC TRUCKS, LLC, a California limited liability company; and, GK CAPITAL GROUP, LLC, a California limited liability company and DOES 1 through 100, inclusive,<br><br>Defendants. | Case No. 2:24-CV-04546-SB(AGRx)<br><br>*Hon. Stanley Blumenfeld*<br><br>**JOINT STATUS REPORT OF PLAINTIFF AND DEFENDANTS REGARDING ONGOING MEET AND CONFER DISCUSSIONS**<br><br>Complaint Filed:   May 31, 2024<br>Trial Date:             August 4, 2025 |

1

| | |
|---|---|
| 1 | PCJV USA, LLC, a Delaware limited liability company; PCI TRADING LLC, a Delaware limited liability company; POTATO CORNER LA GROUP LLC, a California limited liability company; GK CAPITAL GROUP, LLC, a California limited liability company; NKM CAPITAL GROUP LLC, a California limited liability company; and GUY KOREN, an individual, |
| 2 | |
| 3 | |
| 4 | |
| 5 | |
| 6 | |
| 7 | Counter-Claimants, |
| 8 | v. |
| 9 | SHAKEY'S PIZZA ASIA VENTURES, INC, a Philippines corporation, |
| 10 | |
| | Counter Defendant. |
| 11 | |
| 12 | PCJV USA, LLC, a Delaware limited liability company; PCI TRADING LLC, a Delaware limited liability company; POTATO CORNER LA GROUP LLC, a California limited liability company; GK CAPITAL GROUP, LLC, a California limited liability company; NKM CAPITAL GROUP LLC, a California limited liability company; and GUY KOREN, an individual, |
| 13 | |
| 14 | |
| 15 | |
| 16 | |
| 17 | |
| 18 | Third Party Plaintiffs, |
| 19 | v. |
| 20 | PC INTERNATIONAL PTE LTD., a Singapore business entity; SPAVI INTERNATIONAL USA, INC., a California corporation; CINCO CORPORATION, a Philippines corporation; and DOES 1 through 10, inclusive, |
| 21 | |
| 22 | |
| 23 | |
| 24 | Third Party Defendants. |

2

## PLAINTIFF'S STATEMENT

Pursuant to this Court's Orders of March 13, 2025 (Dkt. 127) and today, March 25, 2025 (Dkt. 133), Plaintiff and Defendants PCJV USA, LLC and Guy Koren (collectively, "Defendants") submit the following status report, regarding their ongoing meet and confer efforts to resolve (1) "any outstanding violations of the Court's preliminary injunction," and (2) "the amount of reasonable attorney's fees to award to Plaintiff in connection with its contempt motion."

First, this Report was supposed to be a Joint Report as per an email exchange between counsel in which counsel for all parties agreed that Plaintiff needed another week to file a Joint Report given that the backup to be gathered is not insubstantial, and, moreover, other very pressing and imminent issues occupied all Parties' attention. Among the things that had to be addressed over the last 12 days (since this Court's last Order on this issue) are as follows:

- The Parties attended on March 13, 2025, and have attended, and met and conferred upon conference with the Magistrate Judge regarding a discovery dispute.
- After that conference, Plaintiff, having finally a narrower set of documents to search for in response to Defendants' Requestrs for Production, have been diligently searching for responsive documents, which has taken priority over the separate gathering of backup to support Plaintiffs' fee demand in this case, given the guidance on timing suggested by the Magistrate.
- Because responsive pleadings were due by Plaintiff as to the Answer and Counterclaim and Third Party Complaint, and Plaintiff, as well as the three new Third Party Defendant wish to challenge them under Rule 12, these parties have had interrelated service, and Rule 12 deadline to satisfy, which also includes attempts to meet and confer under LR 7-3. Those have taken much of our time as well.

3

- Plaintiff also intends to file an Application for the Case Management Order and trial date to be changed as a result of, among other things, three new parties having been named and not even served, the fact that the case is not at issuer as to the parties originally named, and other issues in disclosure and discovery. The meet and confer overt that has also been pressing, given where the parties are in the current scheduling order.

Counsel for Defendants agreed that another week to negotiate is warranted.

As Plaintiff's counsel was writing yesterday's Joint Report Plaintiffs' counsel was made aware of new violations of the Injunction Order. I spent the last twenty-four hours investigating them and have now raised them with Defendants' counsel. Those new violations, if true, will impact this Court's final ruling as to when the contempt concluded, and the remedies which may require more in addition to just Plaintiffs' fees.

Accordingly, there remains no agreement as to fees, however, this is not a result of an impasse, it is a result of not having completed the negotiation, and an additional new issue having been discovered within hours of the deadline to file this report. Accordingly, the Parties respectfully request that the deadline contained in this Court's Order of March 13, 2025, be extended to April 8, 2025.

Second, thirty minutes before this Court's 2 pm deadline, counsel for Plaintiff changed their agreement, and sent a new section for this Joint statement now substantively debating the fees issue. This sandbagging has rendered it impossible for Plaintiff to write, in 30 minutes why their $90,000 proposal on fees was reasonable and a reduction. We sought fees for only those filings that addressed injunction compliance, and Kenny's time was reduced. It would be unfair to decide the issue here and now, given that until 30 minutes before this filing, this was to be a joint request for further time. The 90k fees and costs is reasonable and is substantiated by backup. Plaintiff just needs more time to gather it.

4

## DEFENDANTS' STATEMENT

On Wednesday, March 5, Mr. Murphy informed that he'd likely be seeking $20,000-$30,000 in attorney's fees with respect to the contempt motion.

On Saturday, March 8, we received a link to download fee invoices from Mr. Murphy, alongside a separate email from Mr. Murphy claiming that the fees total "AT LEAST $92,414.50" and offering to settle at $60,000.

On Monday morning, March 10, our staff accessed the link and downloaded four redacted invoices. That same day, we emailed Mr. Murphy (in part):

> The Court ordered us to thoroughly discuss "the amount of reasonable attorney's fees to award to Plaintiff in connection with its contempt motion, in light of the Court's conclusion that Defendants violated the preliminary injunction before the January 31, 2025 OSC." Dkt. No. 117. On Wednesday evening, you informed us that the monetary sanctions you'd be seeking were likely going to be in the $20-30K range. Your Saturday morning email, however, included amounts that were substantially higher than that. I need more time to review your fee invoices (downloaded today) in between handling other matters, and discuss them with our clients and get back to you. I would like us to stipulate to continue our meet and confer on the fees until Friday this week so that we could hopefully reach an agreement on that. As well, I don't see the need for an evidentiary hearing on March 28 involving compliance, but if you do, I suggest we agree to postpone that as well in light of our ongoing discussions on that subject.

By Wednesday, March 12, we had finished our review of the redacted fee invoices and sent another email to Mr. Murphy:

> As you know, on your motion for OSC re: contempt (filed 12/26/24 – Dkt. No. 87, the "motion"), we were ordered to thoroughly discuss "the amount of reasonable attorney's fees to award to Plaintiff in connection with its contempt motion, in light of Court's conclusion that Defendants violated the preliminary injunction before the January 31, 2025 OSC." Dkt. No. 117. While your motion had requested various forms of relief, including a "per day" fine, a special master, and future legal fees, Judge Blumenfeld informed us that he only would issue an award of reasonable attorney's fees incurred through January 31, 2025 in connection with bringing your motion.
>
> As a preliminary matter, kindly note that your motion and your declaration in

5

support of the motion requested **$25,612.50** in total attorney's fees. (Dkt. No. 87-1 at Paragraph 16.) We view that amount to be the outer bounds of what SPAVI could potentially receive as an award. On that, I've had a chance to review your fee invoices. Unfortunately, it's practically impossible for me to determine how much time was reasonably spent on the motion for three principal reasons:

1.  A lot of the fees are incurred for other items (such as opposing our motion for reconsideration, or our motion for stay, or our motion to dismiss, or are in connection with filings made with the Ninth Circuit, or involve communicating with PCJV's franchisees).

2.  While you went through the effort of trying to isolate what you believe is the "relevant time" on *your* fee entries that are partly redacted (which I appreciate), I did not get the same for Kenny's fee entries. Therefore, it is impossible for me to determine how much of Kenny's time (in a partially redacted block-bill entry, for example) involves the motion vs. other matters.

3.  There appear to be some duplication of efforts between you and Kenny.

Perhaps more importantly and from a more holistic perspective, you brought this motion at a time when you believed there were "38 Potato Corner stores using the trademarks." I surmise that part of SPAVI's strategy in bringing this motion was to try and "use it" to strike relationships with PCJV's third party franchisees (which it did). Indeed, you have told us that: (a) SPAVI has entered agreements with third party franchisees; and (b) with respect to injunction compliance, you are only concerned with the stores that Mr. Koren has an interest in (like those 7 defendant entity stores you sued: NKM, J&K Americana, J&K Lakewood, J&K Valley Fair, J&K Ontario, HLK Milpitas, GK Cerritos). It appears to us, therefore, that the fees SPAVI incurred in bringing this motion and using the motion to forge alliances with third parties *significantly benefitted SPAVI*. Put another way, at least 70-80% of the motion (dealing with third party franchisees) is not germane or relevant to this analysis (and your client has by all accounts received a significant benefit by forging relationships with PCJV's third party franchisees anyway).

That all said, we have to try and reach common ground on a reasonable fee. If our side is able to convince the Court that roughly only 20% of your fee request should be awarded (given that roughly 80% of it is not in issue and/or otherwise resulted in a benefit to SPAVI), then the "rough" reasonable fee is $5,000 (give or take 5-10% margin of error and accepting your entire $25K fee

request made in the motion). If the Court does not view the "benefit" gained by SPAVI as a result of forging relationships with PCJV's third party franchisees as an offset, we presume the Court will award SPAVI something up to $25,612.50, but likely less.

Just now, I received authority to propose we simply cut this roughly in half and agree on **$12,500**. We think it's fair. Let us know SPAVI's response please. Thank you.

Later that day on March 12, Mr. Murphy called to address only the issue of Mr. Hsu's entries and agreed to send un-redacted invoice. He did not address the other points above, and stated he did not think that $12,500 would be enough.

On Thursday, March 20, Mr. Murphy sent an email acknowledging that he still owes us "additional backup" and that he would like to ask the Court for an extra week. We said that would be fine.

Last night at 9:34 pm, with a statement being due and not having heard further from Mr. Murphy on these issues, we emailed him:

> Still haven't heard back from you on any of the below emails, including the attorney's fees stuff. As a reminder, on Thursday, you asked to continue the fees stuff and I said that would be fine. I trust that you are handling the filing of a statement with the Court tonight.

Mr. Murphy did not respond last night. There have been multiple emails today (while defense counsel has been in court on other matters), which counsel is happy to provide (including the original emails copied above). Counsel was only given a draft joint statement from Mr. Murphy at 1 pm, which did not contain information relevant to the Court. As to the "compliance issue" (which first surfaced hours ago), it concerns Defendants' "Undercover Fries" Instagram account (@undercover_fries) which we assume Meta recently activated and for a period of time – maybe hours – may have contained Potato Corner material before removed. We are still investigating the matter but have promptly responded to Mr. Murphy's requests for information regarding same.

| | |
|---|---|
| Dated: March 25, 2025 | **FOX ROTHSCHILD LLP** |
| | _____<br>Michael D. Murphy<br>Jordan Zolliecoffer<br>Attorneys for Plaintiff SHAKEY'S PIZZA ASIA VENTURES, INC. |
| DATED: March 25, 2025 | **BLANK ROME LLP**<br><br>By: */s/ Arash Beral*<br>_____<br>Arash Beral<br>Todd Malynn<br>Victor Sandoval<br>Attorneys for Defendants |

## **CERTIFIFCATE OF SERVICE**

The undersigned certifies that, on February 27, 2025, the foregoing document was electronically filed with the Clerk of the Court for the United States District Court, Central District of California, using the Court's ECF filing system. I further certify that all counsel for all parties to this action are registered CM/ECF user and that service will be accomplished by the CM/ECF system.

I certify under penalty of perjury that the foregoing is true and correct.

Dated: February 27, 2025

FOX ROTHSCHILD LLP

Michael D. Murphy
Attorneys for Plaintiff SHAKEY'S
PIZZA ASIA VENTURES, INC.