# EXHIBIT 3

**Murphy, Michael D.**

| | |
|---|---|
| **From:** | Malynn, Todd M. <Todd.Malynn@BlankRome.com> |
| **Sent:** | Thursday, February 13, 2025 11:36 AM |
| **To:** | Michael D. Murphy; Kenneth Hsu |
| **Cc:** | Beral, Arash; Sandoval, Victor |
| **Subject:** | FW: Shakey's Pizza Asia Ventures, Inc. v. PCJV USA, LLC, et al. |

Mike:

Let's begin with the low-hanging fruit. You mentioned that you will get back to us regarding the 90-day extension proposal of the CMO dates by last week. We have not heard from you, however. What is your position?

As to the meet and confer points, first, your version of our discussions is incorrect and, second, here are my point-by-point responses in the same order addressed:

1. I answered your question and you thanked me for the answer and appreciated how it moved the ball forward even though you disagreed with our view of relevance.

    Again, Plaintiff's complaint puts the transactional documents squarely at issue—any privacy concerns have been waived. The international IP portfolio transaction lies at the heart of this case. Your position that one related document (assignments) is sufficient to allegedly evidence what was allegedly purchased from Cinco is wrong and immaterial. We are not limited to one document to prove one thing or piecemeal production of documents comprising one transaction put squarely at issue.

    Among other things, we are entitled to cross-examine Plaintiff's proffered piece of evidence. As we've noted, what was transferred by the assignments remained controlled by the purchase agreement (*e.g.*, Cinco cannot transfer what it does not own), including because all related documents must be construed as a whole and consistently with each other, which you acknowledged during our meet and confer.

    You are not entitled to "cherry-pick" among the documents comprising the relevant transaction, including because how Plaintiff's treated trademark rights in other jurisdictions is relevant to how they treated U.S. trademark rights. Whether or not you successfully scrubbed the transactional documents with an eye toward litigation is immaterial. We are entitled to the discovery as it is directly relevant to what was transferred, including whether Cinco owned and/or transferred anything more than a rebuttable presumption of ownership. The transactional documents are also directly relevant to prove whether Plaintiff is bound by the master license agreement and/or induced Cinco to breach its obligations owed to Koren and the LA Group, including by stepping into Cinco's shoes under the joint venture agreement.

    As to what your email says you offered to produce, which is less than what you agreed to produce, when are those documents going to be produced along with a privilege log identifying what is being withheld? You specifically agreed to produce all relevant, non-privileged documents subject to a productive order while we disagreed about scope.

    a. The Court's preliminary injunction rulings (an issue not raised during the meet and confer), which are based on a likelihood of success, do not narrow Plaintiff's discovery obligations. We do not believe Plaintiff can meet its burden of production under *Sengoku* without producing the transaction documents, which you acknowledged were likely included in a binder with a table of contents. As to royalties, the transactional documents apparently are relevant there, too, given that you just volunteered this issue.

    b. *See* above. We are entitled to the entire set of documents. Plaintiff does not get to self-determine relevance of a transaction it put at issue.

    c. You proposed to circulate a two-tier draft protective order. You said you had one you would circulate for our review and approval. Please do what you said you would do.

    d. The Court will control and enforce the protective order, including any over designation.

2. You agreed to produce all relevant (from your point of view), non-privileged documents subject to a protective order. You told me you would make a proposal in light of my "helpful" answers to your questions that covered all of the issues below. You also confirmed that you would tell me last week when you expected we would receive Plaintiff's initial production, which we would review, as it would help resolve and possibly moot issues regarding scope and the standard use of "related to" like terms in document requests. You agreed not to delay Plaintiff's production of relevant, non-privileged documents subject to a protective order (along with a privilege log we requested) while we discussed scope concerns involving "related to" like issues. Please do what you promised during our meet and confer.

    i. *See* above.

    ii. I never said that the "sole" relevant issue was Plaintiff's trademark rights. Plaintiff's transaction document are also relevant to Plaintiff's knowledge of Defendants' prior contractual rights, acquiescence in PCJV's control of the U.S. trademarks, unclean hands, *etc*.

        1. *See* above. There is no obligation to answer rhetorical questions, including questions to which you already know the answer.

        2. *See* above. Certainly, you should save your efficacy argument regarding whether an assignment converts a rebuttable presumption into a conclusive presumption for the Court. In the meantime, please do what you promised and produce non-privileged, responsive documents subject to a protective order along with a privilege log of documents being withheld.

        3. You already agreed to produce the "core" documents responsive to each request, which you agreed was the subject matter of each request without us fighting over what a standard phrase like "related to" means. We already met and conferred on this issue and you agreed to produce non-privilege responsive documents subject to a protective order.

3. Privilege:

    a. We are looking for communications relating to the Cinco-SPAVI transaction, not Cinco-PCJV litigation. If you contend any are privileged (including with your firm), those should be logged.

    b. *See* below:

        i. The Magistrate will separate business and non-business communications. In contrast to relevance (where the propounding party's point of view of relevance normally controls in part because it does not have access to the documents), as to what is private, trade secret or privileged, including what is a business communication, the propounding party's point of view (produce everything) generally does not dictate what is withheld and recorded on a

2

        privilege log (in no small part because the propounding party cannot see the documents). You have to apply the law, produce non-privileged responsive documents and put documents you claim as privileged on a log.

      ii. Multiple witnesses have already testified regarding due diligence. We do not need to do busy work (*e.g.,* identify for you testimony you already possess). We believe the testimony of each one of the witnesses waives or contributes to the waiver of any and all documents relevant to due diligence, including legal opinions and pricing for the trademark portfolio. Having sole knowledge of the documents, you have to produce documents as to which due diligence is relevant or put them on a privilege log if you contend that privilege has not been waived.

4. Put-at-issue waiver:  It is our position that you do not get to put private matters directly at issue and then withhold production of the same. You cannot use confidentiality as a shield and a sword. It is hardly a novel position. You may produce documents subject to a protective order. If we believe you have over-designated a document, we will inform you. We agreed not to fight over objections, now, when you have not produced non-objectionable documents.

5. Vague/ambiguous: This boilerplate objection does not allow you to delay the production of relevant, non-privileged documents, let alone renege on your agreements.

6. Breath:  We already agreed how to resolve "breadth" concerns. You agreed to produce and tell us last week when you are going to produce relevant, non-privileged documents plus a privilege log. From there, we would revisit breadth concerns. You do and did not need to wait to prepare a privilege log.

7. Boilerplate / General Objections:  We agreed to disagree about boilerplate objections. You acknowledged that the federal rules do not authorize general objections, hardly a concession.

If we are at an impasse on these issues, we will prepare a joint statement for your review. To avoid a motion, please immediately do what you said you would do last week, circulate a draft protective order, and tell us when are you going to produce relevant, non-privileged documents and a privilege log, and confirm what those documents are in light of my helpful answers to your questions, which you agreed moved the ball forward.

Regards,
Todd

**Todd M. Malynn** | BLANKROME
2029 Century Park East | 6th Floor | Los Angeles, CA 90067
O: 424.239.3469 | M: 310.595.0271 | F: 424.389.7610 | todd.malynn@blankrome.com

---

**From:** Michael D. Murphy <mmurphy@ecjlaw.com>
**Sent:** Thursday, February 6, 2025 6:12 PM
**To:** Malynn, Todd M. <Todd.Malynn@BlankRome.com>; Kenneth Hsu <khsu@ecjlaw.com>
**Cc:** Beral, Arash <arash.beral@blankrome.com>; Sandoval, Victor <Victor.Sandoval@BlankRome.com>
**Subject:** RE: Shakey's Pizza Asia Ventures, Inc. v. PCJV USA, LLC, et al.

Todd:

Your email does not comport with our recollection of what was discussed and agreed upon at the meet and confer last week. Accordingly, we are concerned that our positions, representations, agreements, disputes, and questions were not understood, documented, received, and/or remembered during that conversation. Please

3

review the below and respond to each of these points and questions as we have raised these before with you and impact the scope of our agreements during this negotiation process as to your clients' Requests for Production:

1. We did not, as your email suggests, agree to produce the deal documents memorializing the transaction between Cinco and SPAVI in which the latter acquired the Potato Corner IP Portfolio. We asked you to specify what claim or defense in this action those deal documents will assist in proving or disproving. You were unable to specify anything concrete other than a general belief of entitlement, and a claim that those deal documents will contain some sort of concession that SPAVI was buying Potato Corner with some express acknowledgement as to your position regarding the license here in the US. In response, we offered to produce those parts of the transaction that refer to the US, US Operations, PCJV, or any US specific person, entity, or dispute, and you rejected that, saying you want more. We ask you again:

    a. Please specify what the purpose is for these transactional documents memorializing the acquisition of Potato Corner from Cinco, unless your sole purpose is to prove SPAVI was purchasing the Potato Corner IP with some admission that they were doing so with no expectation of royalties in the US, or as you contend, loss of ownership. We request that you refrain from using justifications that have already been rejected by the Court as such explanations will not be a compelling reason for to change our mind on this.

    b. With the above stated purpose in mind, how would portions of the transactional documents that do not refer to the US or PCJV or Koren, etc. assist your case?

    c. And how do you respond to the fact that your clients now view themselves as competitors of SPAVI, and are asking for financially sensitive information of a competitor's acquisition of a competing brand? Do you have any authority permitting this?

    d. The last time Guy got his hands on transactional documents of the former licensor's (Cinco) transaction exchanging and selling shares, he sued every name appearing in that document (with no privity to or duties owed to Guy whatsoever), in a tactic clearly designed to harass and abuse. Those claims had no probable cause. What is to stop Guy from doing so now?

2. Relatedly, we have not agreed to produce the below documents, but our client is considering what it could produce under certain limitations. To consider a scope broader than what we intend to propose, we need to understand: your purpose for seeking each of the following, what elements of a claim or defense do these assist you in proving or disproving, and is the scope of what is asked for proportional to your need? Further, we request answers to the below:

    i. How does how SPAVI "learned of" the opportunity to buy PC sufficient to justify every document or communication "relating to" this fact, which could implicate substantial irrelevant documents and communications given the lack of particularity around the term "related to"? Put simply, who cares and what does this get you?

    ii. As to the following categories, you have stated that the sole purpose is to conduct discovery as to SPAVI's "trademark rights."

        1. Please explain what you mean by that term – to do discovery on SPAVI's "trademark rights" acquired?

        2. Please also explain how (1) the deeds you already have copies of assigning all ownership and good will in the marks to SPAVI (as well as corroboration by seller, buyer, and the USPTO of the sale ) is not the **conclusive** and **irrefutable** evidence of

4

what trademark rights SPAVI acquired? Your email initiating this meet and confer failed to note the deeds themselves. Does that not end the inquiry?

3. Please explain each of the following would disprove what the deeds clearly state as to what was purchased, or otherwise prove some fact necessary for a claim or defense:
    a. letters of intent,
    b. term sheets,
    c. internal reports,
    d. analyses,
    e. presentations,
    f. minutes of meetings,
    g. committee or board resolutions,
    h. other documents reflecting board and committee decisions,
    i. financial statements,
    j. asset valuations,
    k. legal opinions,
    l. audit reports,
    m. regulatory filings,
    n. payment records,
    o. wire transfers,
    p. bank statements,
    q. third-party and internal communications related to the acquisition,
    r. documents evidencing due diligence,
    s. documents evidencing negotiations,
    t. updates,
    u. progress reports,
    v. delays or setbacks,
    w. documents evidencing side oral agreements,
    x. valuations,
    y. risk assessments,
    z. discounts,
    aa. press releases,
    bb. public announcements,
    cc. and other public communications regarding the acquisition of Potato Corner assets

3. Privilege:

    a. <u>Privilege Log</u>: we cannot address the log until you identify what you are demanding as to privilege logs with trial counsel (our firm). You promised at our meet and confer to get back to us on this. Are you demanding we log ECJ's communications with SPAVI? We did discuss the concept of "what is good for the goose is good for the gander," however, after the oral argument on contempt last week, we do not believe our communications with our clients are the same as yours. Specifically, an attorney's assistance in a client's contempt falls within the crime-fraud exception, and, as such, we will likely be seeking your firm's communications with any of the Defendants relating to compliance with the injunction (there are cases on point). Please ensure all such communications are preserved.

    b. <u>Existence / waiver of privilege</u>: your initial correspondence claims the following, which I would like to understand so we know what your position is.

5

      i. You assert "business communications" with counsel are not privileged. Please explain how you are defining business communications versus privileged ones and explain what your position is for communications that are mixed with business communications and privileged ones. Do you contend the entire communication is privileged?

      ii. You claim our client waived any privilege objections by introducing evidence of due diligence. What specific testimony are you referring to that you claim waived the privilege, and what is your authority for this? Also, is it your contention that the scope of the waiver, assuming you were right, expands to all privileged communications? Or just due diligence? If the latter, even under your formulation, there would still be privileged communications.

4. <u>Your rejection of the confidentiality objection</u>. You have not yet explained the basis for your claim that our client has waived all objections as to confidentiality, financial sensitivity, etc. What specific allegations have waived those objections, and do you have any authority for this proposition? Also, is it your position that you get access to any confidential and sensitive information, even if not relevant or proportional, simply by entering a protective order? Do you have authority for this position? As I have said before, a protective order does not give you carte blanche to get core and irrelevant information.

5. <u>Vague / ambiguous</u>: the terms you identified in your initiating email (at the bottom of this chain) as ones objected to on vagueness grounds, do indeed add ambiguity and lack of particularity. We must explain to our client what you are looking for and asking them to hunt down, and these terms make that a challenge. You will note, we often clarify in the objections how we are interpreting a vague term. I do not see any discussion of which of those interpretations you agree with or disagree.

6. <u>Breadth</u>: whenever we object on overbreadth and burden, we invite you to step back and consider what you are asking for from a practical standpoint. Using imprecise language as your RFPs tend to do, leads to absurd results like asking SPAVI to produce every communication between any of its employees and any third party about the sale of Porat Corner to SPAVI – around the world. You cannot want that. We often note examples of the outpost in Malaysia to illustrate this issue. You complained during our meet and confer that I am fighting over the margins. You are correct in that we are trying to figure out the boundaries here. That is required, however, to conduct a document collection, review, and production.

7. <u>Boilerplate / General Objections</u>. We did not have any agreements as to the general objections, as we skipped to the more important issue which is the objections themselves. We pointed out that our objections are not boilerplate, as they are specific to each request. Moreover, the requests themselves are a bit boilerplate, so, had we elected to go that route, it would have been proper.

We will be preparing our proposal as promised concurrent with your answers to the above, however, please note, our proposal will be adopting our positions set forth above, as you have yet to convince us that your positions are accurate. We invite you to try to do so in this meet and confer email.

Best,

---

**Michael D. Murphy**

ERVIN COHEN & JESSUP LLP

9401 Wilshire Boulevard, 12th Floor | Beverly Hills, CA 90212-2974
(310) 281-6267 *(t)* | (310) 859-2325 *(f)*
www.ecjlaw.com | mmurphy@ecjlaw.com | About me | LinkedIn

The information contained herein is confidential and privileged attorney-client information or work product intended only for the individual or entity to whom it is addressed. Any unauthorized use, distribution or copying of this communication is strictly prohibited. If you have received this communication in error, please notify me immediately.



**From:** Malynn, Todd M. <Todd.Malynn@BlankRome.com>
**Sent:** Tuesday, February 4, 2025 9:18 AM
**To:** Michael D. Murphy <mmurphy@ecjlaw.com>; Kenneth Hsu <khsu@ecjlaw.com>
**Cc:** Beral, Arash <arash.beral@blankrome.com>; Sandoval, Victor <Victor.Sandoval@BlankRome.com>
**Subject:** RE: Shakey's Pizza Asia Ventures, Inc. v. PCJV USA, LLC, et al.

Mike and Kenny,

This email will confirm our meet and confer conference last Thursday to resolve Plaintiff's objections to Defendants' First Set of Requests for Production of Documents (RFP) as well as to scheduling and a protective order. Here is where we landed. First, Defendants proposed a 90-day extension of the case management order in light of the Order permitting the Defendants to add supplemental claims. Plaintiff's is going to respond to our proposal with an eye towards submission of a stipulation this week.

Second, we agreed that general objections are not authorized by the federal rules and that Plaintiff will revisit its boilerplate/specific objections in light of Defendants' feedback during the meet and confer. Defendants have requested a privilege log of relevant documents withheld on the grounds other than disproportionality/burden. Please address this issue in your letter this week.

Third, Plaintiff has agreed to produce relevant, non-privileged documents (beyond which its responses have already agreed to produce) subject to a protective order, a draft of which you are going to provide this week. With an appropriate confidentiality designation, those documents will include non-privileged documents evidencing the transaction between Cinco and SPAVI as well as each item that forms the subject of an RFP. Plaintiff agreed to inform us in detail this week as to the scope of the initial, agreed-upon production and when those documents are going to be produced. That production is moving forward while we continue to discuss Defendants' RFPs, Plaintiff's objections and where Plaintiff has unilaterally drawn lines in its initial production. Defendants, in turn, will review Plaintiff's initial production, which will be informative.

Regards,
Todd

**Todd M. Malynn** | BLANKROME
2029 Century Park East | 6th Floor | Los Angeles, CA 90067
O: 424.239.3469 | M: 310.595.0271 | F: 424.389.7610 | todd.malynn@blankrome.com


**From:** Malynn, Todd M.
**Sent:** Friday, January 24, 2025 1:01 PM
**To:** Kenneth Hsu <khsu@ecjlaw.com>; Beral, Arash <arash.beral@blankrome.com>; Sandoval, Victor <Victor.Sandoval@BlankRome.com>
**Cc:** Michael D. Murphy <mmurphy@ecjlaw.com>; Ayesha Rector <arector@ecjlaw.com>; Chary Weis

<cweis@ecjlaw.com>
**Subject:** RE: Shakey's Pizza Asia Ventures, Inc. v. PCJV USA, LLC, et al.

Kenny,

We are writing to set up a time to meet and confer on Plaintiff's Response to PCJV's Frist Set of Requests for Production of Documents ("RFP"). Please let us know when you are available to meet and confer next week.

**Preliminary Statement & General Objections**

The Federal Rules of Civil Procedure, including and in particular Rule 34(b)(4), do not authorize general objections to document requests but require specific grounds for any objection. Please provide an amended response that withdraws the general objections.

**Boilerplate Objections**

Similarly, the Federal Rules of Civil Procedure do not authorize general objections labeled as specific objections to document requests but require specific grounds for any objection. Plaintiff's Responses repeat boilerplate objections that must be amended or withdrawn, including for the reasons set out below. Further, even if a boilerplate objection had any efficacy, it does not support Plaintiff's refusals to produce documents. Rather, Plaintiff remains obligated produce all non-privileged, non-objectionable documents in response to each RFP while we meet and confer on objections.

**Response Nos. 1 to 20**

- Objection: "overbroad, burdensome, oppressive, and seeks documents that are neither relevant to the claims and defenses in this action nor proportional to the needs of this action."

Plaintiff does not get to decide what documents are relevant to the business opportunity, risk assessment, valuation, contracts and transfer of IP at the heart of the case—Plaintiff's purchase of Cinco's international Potato Corner assets, including U.S. registrations. Plaintiff made a business decision in the middle of a dispute where Cinco was enjoined from unilaterally acting upon alleged trademark rights over Defendants' objections based on their written agreements, after which Plaintiff opted to acquire already enjoined trademark rights and forum shop rather than intervene and litigate who had superior contractual rights as between Plaintiff and Defendants before Cinco's settlement with Defendants and dismissal with prejudice.

To date, the evidence of Plaintiff's acquisition of any U.S. trademark rights are assignments of U.S. registrations (which only support a rebuttable presumption) and declarations attesting to proffered legal opinions concerning the presumption. The best evidence of Plaintiff's alleged trademark rights remains the agreements between Plaintiff and Cinco and all documents related thereto, including letters of intent, term sheets, internal reports, analyses, presentations, minutes of meetings, committee or board resolutions, other documents reflecting board and committee decisions, financial statements, asset valuations, legal opinions, audit reports, regulatory filings, payment records, wire transfers, bank statements, third-party and internal communications related to the acquisition, all other documents evidencing due diligence, negotiations, updates, progress reports, delays or setbacks, side oral agreements, valuation, risk assessment, discounts, etc., as well as press releases, public announcements, and other public communications regarding the acquisition of Potato Corner assets.

Further, given that all terms of related contracts must be considered as a whole, each to inform the other, we are entitled to documents for all jurisdictions to compare treatment to the U.S. In addition, given the time of the transaction, due diligence and valuation documents are directly relevant to risks. Finaly, given what is at stake

and how much resources Plaintiff has already spent forwarding its positions, the RFP is proportional to the need to discover the truth and ability to cross examine Plaintiff's proffered witnesses. Defendants are entitled to all non-privileged, responsive documents, not just the limited and narrowly described documents Plaintiff has agreed to search for and produce in response to a few of the RFP.

- Objection: "confidential, proprietary, trade secret, and protected from disclosure from the right to privacy belonging to SPAVI and various third parties located both domestically and internationally, including confidential internal and external communications, agreements, contracts, disclosures, and deal documents relating to a highly sensitive acquisition transaction involving SPAVI, a Philippines corporation."

This objection was waived once Plaintiff's pled and put its acquisition of U.S. trademark rights in dispute. It is duplicative of Plaintiff's first boilerplate objection. It just uses a different label to raise the same issue. Further, the remedy to the label, if any, are confidentiality protections, including AEO designations. Finally, to resolve any specific objection not waived, Defendants are entitled to a privilege log of any and all responsive documents being withheld on this ground.

- Objection: "attorney-client privilege and the attorney work product doctrine, especially given that SPAVI was represented by, advised by, and dealing with counsel in connection with its acquisition of the "Potato Corner" brand."

Business communications with counsel are not protected by privileged. Also, this objection was waived once Plaintiff's put into evidence multiple declarations attesting to due diligence as evidence of the U.S. trademark rights it allegedly purchased and evidence of Plaintiff's prior knowledge of Defendants' contractual rights to the same U.S. trademark assets before any acquisition. Further, to resolve a specific objection not waived, Defendants are entitled to a privilege log of any and all responsive documents being withheld on this ground.

- Objection:  vague and ambiguous as to the terms "related to the sale of Potato Corner assets," "final purchase agreement," "ancillary agreements," "business opportunity," "DOCUMENTS EVIDENCING," "valuation," "negotiation," "letters of intent," "term sheets," "discount that YOU requested or received," "risk of litigation," "in any particular country" as a modifier of "acquiring POTATO CORNER assets," "financial statements," "asset," "risk assessment," "potential litigation," "DOCUMENTS and COMMUNICATIONS REFLECTING decisions made," "business," "updates, progress reports, delays or setbacks" in or during negotiations, "offers of value," "perceived or possible," "REGARDING the acquisition of POTATO CORNER assets," "agents," "financial DOCUMENTS," "payment records," "bank statements, "RELATED to the transfer of intellectual property to YOU," "internal reports, analyses, and presentations," "competitive analyses," "strategic plans," "management," "advisors," "consultants," "RELATED to compliance with any legal or regulatory requirements in connection with the acquisition of POTATO CORNER assets," and "audit reports."

The objections lack merit. These terms are commonly used and understood and do not prevent the production of relevant, non-privileged documents while the parties meet and confer on proportionality. Nor can the alleged ambiguity be construed and used to withhold non-privileged responsive documents by unilaterally interpreting to distinguish communications with Cinco-related parties, internal communications or communications with parties related to Plaintiff.

**Response No. 21**

- Objection: "overbroad, burdensome, oppressive, and seeks documents that are neither relevant to the claims and defenses in this action nor proportional to the needs of this action."

Defendants are entitled to all documents and communications related to PCJV's franchisees, which Plaintiff have solicited and are trying to compel to join Plaintiff's organization. These documents are directly relevant to the dispute, including Defendants' damages from unfair competition and wrongful interference. The objections have no merit. After receiving the promised production, Defendants will evaluate the same for full compliance notwithstanding the objections.

- Objection: "confidential documents or information protected by the attorney-client privilege, the attorney work product doctrine, or the right to privacy" or "joint defense privilege."

Documents and communications with third parties are neither private nor privileged. Further, business communications with counsel do not make them privileged. To the extent any privilege is asserted with a third-party, foundation must be laid, and none has been provided. Further, to resolve a specific objection, Defendants are entitled to a privilege log of any and all responsive documents being withheld on this ground.

**Response Nos. 22, 24, 25, 26, 27**

- Objection: "confidential, proprietary, trade secret, and/or private information protected from disclosure from the right to privacy belonging to SPAVI and various third parties located both domestically and internationally."

Defendants are entitled to discover documents relating to alleged trade secrets and confidential information, including documents Plaintiff does not possess, has provided to Defendants or is relevant to damages. If Plaintiff has no responsive documents disclosing trade secrets or confidential information, including recipes, ingredients, specific ingredients, ingredient allocations, proportions of the ingredients, recipes for preparation of each, identities of its suppliers, and other know-how procedures or processes used or employed at Potato Corner outlets, it must state that it has no responsive documents. It is not germane whether a third party possesses alleged trade secrets or confidential information. Similarly, documents containing responsive information that has already been publicly disclosed, including on product labeling, must be produced. Further, one remedy is to produce documents under a protective order, including with AEO designations. Defendants further incorporate their prior meet and confer as to Plaintiff's related interrogatory response and disclosure.

- Objection: "attorney-client privilege, the attorney work product doctrine, or the right to privacy."

As to any right of privacy, it is has been waived to the extent not already discused above. Plaintiff is entitled to a privilege log of any documents withheld on the grounds of privilege.

- Objection: "mischaracterizes or misstates the allegations in SPAVI's operative Complaint as pled."

This objection lacks merit. The RFP covers all reasonable interpretations of an allegation, not simply Plaintiff's subjective interpretation, which is unknown. Having put at issue all reasonable interpretations, Plaintiff is required to produce all documents responsive to all reasonable interpretations, including as requested, however characterized.

- Objection: "documents already in PCJV's possession, custody, or control.'

This objection is baseless because documents Plaintiff disclosed is necessary to eliminate a dispute as to those documents. Defendants are entitled to confirm through discovery the entire universe of documents allegedly disclosed to Defendants, whehter or not they were, in fact, disclosed or are still possessed by Defendants.

**Response No. 23**

- Objection: "confidential documents or information protected by the attorney-client privilege, the attorney work product doctrine, or the right to privacy."

Any confidentiality objection has been waived and is adequately protected by a protective order. With regard to internal or third party documents or communications, they are not privileged. To the extent any documents are withheld on the grounds of privilege, Plaintiff is entitled to a privilege log.

- Objection: "mischaracterizes or misstates the allegations in SPAVI's operative Complaint as pled."

This objection lacks merit. The RFP covers all reasonable interpretations of an allegation, not simply Plaintiff's subjective interpretation, which is unknown. Having put at issue all reasonable interpretations, Plaintiff is required to produce all documents responsive to all reasonable interpretations, including as requested, however characterized

**Todd M. Malynn** | BLANKROME
2029 Century Park East | 6th Floor | Los Angeles, CA 90067
O: 424.239.3469 | M: 310.595.0271 | F: 424.389.7610 | todd.malynn@blankrome.com

---

**From:** Kenneth Hsu <khsu@ecjlaw.com>
**Sent:** Tuesday, January 21, 2025 6:31 PM
**To:** Beral, Arash <arash.beral@blankrome.com>; Malynn, Todd M. <Todd.Malynn@BlankRome.com>; Sandoval, Victor <Victor.Sandoval@BlankRome.com>
**Cc:** Michael D. Murphy <mmurphy@ecjlaw.com>; Ayesha Rector <arector@ecjlaw.com>; Chary Weis <cweis@ecjlaw.com>
**Subject:** Shakey's Pizza Asia Ventures, Inc. v. PCJV USA, LLC, et al.

**VIA ELECTRONIC SERVICE**

Shakey's Pizza Asia Ventures, Inc. v. PCJV USA, LLC, et al.
Case No. 2:24-cv-04546-SB(AGRx)

Dear Counsel:

Attached for electronic service regarding the above referenced matter is the following document:

- **PLAINTIFF SHAKEY'S PIZZA ASIA VENTURES, INC.'S RESPONSE TO DEFENDANT PCJV USA, LLC'S REQUESTS FOR PRODUCTION OF DOCUMENTS, SET ONE**

Please let me know should you have any difficulty with accessing the attached.

Thank you,

**Kenneth P. Hsu, Esq.**
Partner

ERVIN COHEN & JESSUP LLP

9401 Wilshire Boulevard, 12th Floor ⏐ Beverly Hills, CA 90212-2974
(310) 281-6321 *(t)* ⏐ (310) 859-2325 *(f)*
www.ecjlaw.com ⏐ khsu@ecjlaw.com ⏐ About me ⏐ LinkedIn

The information contained herein is confidential and privileged attorney-client information or work product intended only for the individual or entity to whom it is addressed. Any unauthorized use, distribution or copying of this communication is strictly prohibited. If you have received this communication in error, please notify me immediately.

\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*

This message and any attachments may contain confidential or privileged information and are only for the use of the intended recipient of this message. If you are not the intended recipient, please notify the Blank Rome LLP or Blank Rome Government Relations LLC sender by return email, and delete or destroy this and all copies of this message and all attachments. Any unauthorized disclosure, use, distribution, or reproduction of this message or any attachments is prohibited and may be unlawful.

\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*