**BLANK ROME LLP**
Arash Beral (SBN 245219)
arash.beral@blankrome.com
Todd M. Malynn (SBN 181595)
todd.malynn@blankrome.com
Jamison T. Gilmore (SBN322100)
jamison.gilmore@blankrome.com
2029 Century Park East | 6th Floor
Los Angeles, CA 90067
Telephone:   424.239.3400
Facsimile:   424.239.3434

Attorneys for Defendants, Counterclaimants, and Third Party Plaintiffs PCJV USA, LLC, PCI TRADING LLC, POTATO CORNER, LA GROUP, LLC, GK CAPITAL GROUP, LLC, NKM CAPITAL GROUP, LLC and GUY KOREN, and Defendants J & K AMERICANA, LLC, J&K LAKEWOOD, LLC, J&K OAKRIDGE, LLC, J&K VALLEY FAIR, LLC, J & K ONTARIO, LLC, J&K PC TRUCKS, LLC, HLK MILPITAS, LLC, and GK CERRITOS, LLC

## UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| SHAKEY'S PIZZA ASIA VENTURES, INC, a Philippines corporation,<br><br>Plaintiff,<br><br>vs.<br><br>PCJV USA, LLC, a Delaware limited liability company; PCI TRADING , LLC, a Delaware limited liability company; GUY KOREN, an individual; POTATO CORNER LA GROUP, LLC, a California limited liability company; NKM CAPITAL GROUP, LLC, a California limited liability company; J & K AMERICANA, LLC, a California limited liability company; J&K LAKEWOOD, LLC, a California limited liability company; J&K VALLEY FAIR, LLC, a California limited liability company; J & K ONTARIO, LLC, a California limited liability company; HLK MILPITAS, LLC, a California, limited liability company; GK CERRITOS, LLC, a California, limited liability company;  J&K PC TRUCKS, LLC, a California limited liability company; and, GK CAPITAL GROUP, LLC, a California | Case No. 2:24-CV-04546-SB(AGRx)<br><br>*Hon. Stanley Blumenfeld, Jr.*<br><br>**REPLY IN SUPPORT OF DEFENDANT PCJV USA, LLC'S MOTION FOR:**<br><br>**1. SANCTIONS AGAINST PLAINTIFF SHAKEY'S PIZZA ASIA VENTURES, INC. UNDER FRCP RULE 37(B)(2)(A); AND**<br>**2. PAYMENT OF EXPENSES AGAINST PLAINTIFF AND ITS COUNSEL OR RECORD UNDER FRCP RULE 37(B)(2)(C)**<br><br>**FOR FAILURE TO COMPLY WITH THE MAGISTRATE JUDGE'S COURT ORDER DATED MARCH 12, 2025 (DKT. NO. 128)**<br><br>Date:        June 27, 2025 |

| | |
|---|---|
| 1 | limited liability company and DOES 1 through 100, inclusive, |
| 2 | Defendants. |
| 3 | |

| | |
|---|---|
| 4 | PCJV USA, LLC, a Delaware limited liability company; PCI TRADING LLC, a Delaware limited liability company; POTATO CORNER LA GROUP LLC, a California limited liability company; GK CAPITAL GROUP, LLC, a California limited liability company; NKM CAPITAL GROUP LLC, a California limited liability company; and GUY KOREN, an individual, |
| 5 | |
| 6 | |
| 7 | |
| 8 | |
| 9 | Counter-Claimants, |
| 10 | v. |
| 11 | SHAKEY'S PIZZA ASIA VENTURES, INC, a Philippines corporation, |
| 12 | |
| 13 | Counter Defendant. |

| | |
|---|---|
| 14 | PCJV USA, LLC, a Delaware limited liability company; PCI TRADING LLC, a Delaware limited liability company; POTATO CORNER LA GROUP LLC, a California limited liability company; GK CAPITAL GROUP, LLC, a California limited liability company; NKM CAPITAL GROUP LLC, a California limited liability company; and GUY KOREN, an individual, |
| 15 | |
| 16 | |
| 17 | |
| 18 | |
| 19 | |
| 20 | Third Party Plaintiffs, |
| 21 | v. |
| 22 | PC INTERNATIONAL PTE LTD., a Singapore business entity; SPAVI INTERNATIONAL USA, INC., a California corporation; CINCO CORPORATION, a Philippines corporation; and ROES 1 through 10, inclusive, |
| 23 | |
| 24 | |
| 25 | Third Party Defendants. |
| 26 | |
| 27 | |
| 28 | |

Time:          8:30 am
Location:     Zoom Video Conference

Complaint Filed:   May 31, 2024
Trial Date:          August 4, 2025

## <u>TABLE OF CONTENTS`</u>

I.     INTRODUCTION ...................................................................................1

II.    ARGUMENT..........................................................................................3

     A.    Plaintiff's Failure to File a Cross-Motion and its Untimely
          Opposition Should be Factored into the Court's Decision .............3

     B.    Magistrate Judges May Enforce Their Orders Compelling
          Discovery with Sanctions.................................................................4

     C.    Defendants Fulfilled Their Meet and Confer Obligations While
          Plaintiff Refused to Produce Court-Ordered Documents, Including
          Those Identified in Initial Disclosures .............................................6

     D.    Defendants' Motion Specified Why the Compelled and Now
          Suppressed Documents Bear Directly on the Case........................8

     E.    Plaintiff Willfully Violated the March 12 Order in Bad Faith
          Because it Did Not Even Produce Documents, Including
          Documents Identified in Plaintiff's Own Initial Disclosures..........9

     F.    Defendants Will Be Severely Prejudiced If Sanctions Are Not
          Issued...............................................................................................10

     G.    There is No "Understanding" That Deadlines Would Be Continued
          .........................................................................................................11

III.   CONCLUSION ...................................................................................12

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Bailey v. Gatan, Inc.*,
783 F. App'x 692 (9th Cir. 2019) ............................................................... 5

*Bond Litigation*,
223 F.R.D. at 530 ............................................................................... 10

*Concrete Enterprises, Inc.*,
318 F.R.D. at 392 .......................................................................... 8, 10

*Federal Treasury Enterprise Sojuzplodoimport v. Spirits Intern., N.V.*,
623 F.3d 61 (2d Cir. 2010) ....................................................................... 9

*General Atomic Co. v. Exxon Nuclear Co., Inc.*,
90 F.R.D. 290 (S.D. Cal. 1981) ................................................................ 8

*In re Heritage Bond Litigation*,
223 F.R.D. 527 ............................................................................... 8, 10

*Inland Concrete Enterprises, Inc. v. Kraft*,
318 F.R.D. 383 (C.D. Cal. 2016) ........................................................... 5, 8

*International Business Properties v. ITT Sheraton Corp.*,
65 F.3d 175 ............................................................................. 5, 8, 10

*McGuire v. Dobbs Intern. Services, Inc.*,
232 F.3d 895 (9th Cir. 2000) ................................................................. 10

*Navellier v. Sletton*,
262 F.3d 923 (9th Cir. 2001) ................................................................... 9

*Pacific Far East Line, Inc. v. R.J. Reynolds Industries, Inc.*,
1981 WL 2517 ...................................................................................... 8

*Sanchez v. Rodriguez*,
298 F.R.D. 460 (C.D. Cal. 2014) .......................................................... 8, 10

*Signature Financial LLC v. McClung*,
2017 WL 8836292, (C.D. Cal. July 27, 2017) ............................................... 6

*Ucci v. LAPD*,
2018 WL 1581671 (C.D. Cal. Mar. 28, 2018) ............................................... 5

*Wm. T. Thompson Co. v. General Nutrition Corp., Inc.*,
593 F. Supp. 1443 (C.D. Cal. 1984) ......................................................... 9

**Other Authorities**

*Standing Order for Civil Cases Assigned to Judge Stanley Blumenfeld, Jr.*, Mar. 1,
2024 .................................................................................................. 5

**Rules**

Federal Rule of Civil Procedure 72(a) ......................................................... 5

# I.   **INTRODUCTION**

Defendants are entitled to a fair trial, including on their claims for damages and on whether a permanent injunction based on Plaintiff's alleged trademark assignment from Defendants' prior joint venture partner should issue. Trial is August 4, 2025. The parties' first set of trial filings (including joint witness and exhibits lists and contentions of fact and law) are due today.

Sanctions are critical to ensure a fair trial due to unfair prejudice caused by Plaintiff's willful suppression of evidence (documents responsive to PCJV's Request Nos. 1 to 22 and 24 to 27) in bad faith (Plaintiff has refused to produce responsive documents falling within its own initial disclosures and discovery has long since closed) and in violation of this Court's March 12, 2025 Order compelling compliance with Plaintiff's discovery obligations.[1] Every document pertaining to (a) Plaintiff's alleged acquisition and proffered assignment relevant to what was allegedly conveyed, including final and draft versions of the purchase agreement with Defendants' former joint venture partner and correspondence related thereto, and (b) SPAVI's knowledge of Defendants' claimed, or ability to assert, superior U.S. trademark rights and defenses to enforcement, including due diligence, risk assessments, legal opinions, advisory memos, and correspondence related thereto, including with or among Board members, should have been produced or put on a privilege log in January 2025—after an extension was provided more than a month after service of Defendant's document requests. Plaintiff's suppression not only violated Rule 26 but also violated the March 12 Order.

Plaintiff's suppression of evidence has made trial on Plaintiff's case-in-chief and Defendants' defenses unfair and unmanageable, including due to the number of alternative factual scenarios now facing a jury as to which potentially dispositive facts have been suppressed, including documents fully substantiating Defendants'

---

[1] Plaintiff was ordered to begin a rolling production of all responsive documents in March and complete its production by April 11, 2025, none of which occurred.

good faith belief in their superior trademark rights, which should defeat any claim for damages or disgorgement. Attached as Exhibit 1 to the Supplemental Declaration of Todd M. Malynn is a Flow Chart showing in red all the dispositive issues as to which Plaintiff has suppressed directly relevant evidence.

Plaintiff has also suppressed evidence relating to its trade secret claims based on public-facing seasoning packages (after belatedly serving a non-compliant redo of its interrogatory response containing the same defects the Court recognized on March 12) depriving a jury from considering basic facts going to Plaintiff's case-in-chief. For example, there are no documents from SPAVI's manufacturers or suppliers of the seasoning packages and seasoning contents as to whether they are prohibited from selling the same seasonings to third parties, including over the Internet (documents responsive to Request Nos. 26-27). Similarly, there are no documents or communications related to the allegation that SPAVI suffered millions of dollars in damages as a proximate cause of Defendants' alleged misappropriation of trade secrets (Request No. 25). Despite having ample time to produce responsive documents, Plaintiff instead deprived Defendants of basic documentation supporting Plaintiff's claims in violation of the March 12 Order.

In its April 4 Order (Dkt. No. 144), the Court permitted Plaintiff to file by April 25, 2025 a "cross-motion for reconsideration of the deadlines at issue in Defendants' motion." Plaintiff did not do so. Plaintiff, thus, effectively conceded that no reconsideration of the "deadlines at issue" was necessary. As the Court is also aware, Plaintiff did not file a timely opposition to the Motion either. Plaintiff filed an opposition two weeks late, and without leave of Court.

Plaintiff does not take ownership or responsibility for its willful failure to comply with its discovery obligations or the March 12 or April 4 Orders. Plaintiff's late-filed opposition does not even attempt to justify its failure to produce critical documents, not just relevant documents it was ordered to produce by April 11, 2025 in response to proper requests. Instead, Plaintiff deflects, blaming its discovery

2

violations on others and posits a fake new trial date and case deadlines as some sort of justification without seeking any such relief for months.

The facts before the Court are simple—Plaintiff willfully failed to comply with a Court Order and caused Defendants to be without critical evidence Plaintiff confirmed exists. There is no more appropriate case than this one for the issuance of Rule 37 sanctions. On April 4, the Court reminded Plaintiff of its discovery obligations in stating the Court expected, at the very least, substantial compliance with the March 12 Order, including because Plaintiff still had a week to meet the April 11 deadline. Also, Rule 37(b) makes clear the Court expects substantial justification as to why no sanctions should issue if a party fails to comply with a court order. Nevertheless, Plaintiff made a strategy decision to deprive Defendants of documents central to Plaintiff's case-in-chief and Defendants' defenses and attempt later to convince this Court that its violations of a Court Order do not warrant severe and significant sanctions. It is as if Plaintiff believes that orders of the Court and the Federal Rules of Civil Procedure do not apply to it.

The Court should issue terminating, issue, and evidentiary sanctions to remedy Defendants' unfair prejudice from Plaintiff's violation of the March 12 Order. The Court should also award reasonable attorneys' fees.

## II.   **ARGUMENT**

### A.   **Plaintiff's Failure to File a Cross-Motion and its Untimely Opposition Should be Factored into the Court's Decision**

The Court's April 4 Order set a specific briefing schedule. Dkt. No. 144. Defendants had 10 days to file their motion (by April 14) and Plaintiff had 11 days after that to file an opposition and cross-motion for reconsideration of the deadlines at issue (by April 25). *Id.* at p. 3. Defendants timely filed their Motion. Plaintiff did nothing by April 25.

On May 9, and without leave of court, Plaintiff filed an opposition. Both Rule 37(b) and the Court at the April 4 conference were clear that, to avoid sanctions,

Plaintiff's opposition brief should have attempted to show, at least: (1) substantial compliance with the March 12 Order and (2) substantial justification as to why no sanctions should issue for Plaintiff's failure to begin a rolling production in March and produce all compelled documents by April 11, as ordered. Even if the Court were to consider it, Plaintiff's belatedly filed opposition does neither.

When the Court set the briefing schedule on April 4, Plaintiff still had a week to produce documents before the April 11 deadline—notwithstanding its prior violations of the March 12 Order. Plaintiff violated the March 12 Order by not beginning a rolling production in March, depriving Defendants the opportunity to evaluate proffered search terms and record custodians being used to gather and produce documents before the April 4 conference. Further, Plaintiff willfully violated the March 12 Order by not producing *any* documents by April 11, making any search terms and custodians moot. This was purposeful and strategic; Plaintiff wanted to prejudice Defendants so as to force a trial continuance and effectively extend the preliminary injunction issued against Defendants in this case.

Plaintiff's untimely opposition should be disregarded because it was filed late and it ignores the Court's guidance on April 4. Plaintiff's opposition neither attempts to show substantial compliance with the March 12 Order, nor justifies its failure to produce responsive and critical documents by April 11. Plaintiff remains out of compliance while it suppressed critical evidence it already confirmed it has in its possession in violation of both the March 12 and April 4 Orders.

## B.    Magistrate Judges May Enforce Their Orders Compelling Discovery with Sanctions

Plaintiff's lead argument is that the March 12 Order compelling Plaintiff to comply with its discovery obligations is not an "order" at all because (a) Plaintiff elected not to object to it (*see* Opp. at 1) and (b) the Order resulted from a "discovery conference" pursuant to Local Rule, not a former motion to compel, which was prohibited by Local Rule (*see* Opp. at 22-23). Both arguments lack merit.

4

Plaintiff cannot disregard the Court's March 12 Order because it chose not to object to it as required by Local Rule 72-2.1 and Federal Rule of Civil Procedure 72(a). If anything, Plaintiff waived any objection to the March 12 Order when it failed to serve and file timely objections. *See Ucci v. LAPD*, 2018 WL 1581671, at *1 n. 2 (C.D. Cal. Mar. 28, 2018) (finding plaintiff waived objections to magistrate judge's discovery order when party did not timely file and serve objections); *see also Bailey v. Gatan, Inc.*, 783 F. App'x 692, 694 (9th Cir. 2019) (holding failure to timely object to magistrate judge's pretrial non-dispositive discovery order bars challenge to that order).

Further, Magistrate Judges are empowered to issue sanctions subject to review by the District Court for non-compliance with discovery orders issued from discovery conferences after a joint statement is submitted pursuant to Local Rule. *See Inland Concrete Enterprises, Inc. v. Kraft*, 318 F.R.D. 383, 392-93 (C.D. Cal. 2016) (district court adopting magistrate judge's recommendation to enter default against defendant for willful failure to comply with magistrate judge's orders); *see also International Business Properties v. ITT Sheraton Corp.*, 65 F.3d 175, 1-4 (affirming dismissal of plaintiff's action for non-compliance, including non-compliance with magistrate judge's order finding plaintiff did not comply with stipulated order). Both the District Court's Standing Order and the Magistrate Judge's Rules, in fact, prohibit the unilateral filing of motions to compel. The District Court requires that all discovery disputes be heard by the Magistrate Judge, and the Magistrate Judge's rules prohibits the filing of motions to compel unless it is first determined that the dispute warrants further briefing. *See* Judge Blumenfeld, *Standing Order for Civil Cases Assigned to Judge Stanley Blumenfeld, Jr.*, Mar. 1, 2024, at 5; *see also* Judge Rosenberg, at "Judge's Procedures" ¶ 1. Plaintiff cannot avoid sanctions for violating the March 12 Order either because it elected not to appeal the Order to the District Court, or because the Order issued from a discovery conference as it did not warrant further briefing.

**C.    Defendants Fulfilled Their Meet and Confer Obligations While
Plaintiff Refused to Produce Court-Ordered Documents, Including
Those Identified in Initial Disclosures**

Plaintiff's fallback arguments include misdirecting the Court as to
Defendant's meet and confer obligations and falsely blaming *Defendants* for
*Plaintiff's* failure to produce documents. (*See* Opp. at 23.) In reality, Defendant
fulfilled its meet and confer obligations and did not obstruct any document
production. Plaintiff may not withhold relevant documents falling within its own
initial disclosures as "hostage" while trying to coerce compromises. Rather, at
minimum, Plaintiff was to immediately produce responsive documents falling
within its own initial disclosures. *See Signature Financial LLC v. McClung*, 2017
WL 8236292, at *2 (C.D. Cal. July 27, 2017) (ordering plaintiff to produce
documents disclosed in initial disclosures because they were properly requested).

In meet and confer correspondence, Defendants reiterated several times that
Plaintiff is obligated to produce documents as to which there was no *bona fide*
discovery dispute. *E.g.*, Malynn Decl., Exhs. 9-12. Plaintiff was obligated to
produce those documents, including documents falling within its own initial
disclosures, since at least January 21, 2025—after several extensions following
service of Plaintiff's Document Requests. *See id.*, Exhs. 5, 8.

Plaintiff cannot fault others for not having enough time to produce
documents. Plaintiff had no justification for withholding the vast majority of them
in the first place, as virtually all of them fall within Plaintiff's initial disclosures,
which lists "[d]ocuments relating to intellectual property comprising the Potato
Corner brand,… including documents showing SPAVI's ownership of the Potato
Corner brand…, documents evidencing SPAVI's trade secrets included within the
Potato Corner Intellectual Property, protectability of any of the Potato Corner
Intellectual Property (including the maintenance of secrecy of any confidential,
proprietary, and/or trade secret information)…." Malynn Decl., Exh. 4.

6

From the outset of the case, Plaintiff knew it had put at issue all documents relevant to its alleged ownership and acquisition of U.S. trademark rights in the middle of litigation between Defendants and their joint venture partner and trademark registrant Cinco Corporation. Despite this knowledge, Plaintiff refused to produce those documents in discovery, including in violation of the March 12 Order, all to impede Defendants and their ability to prepare for trial.

Contrary to Plaintiff's argument (*see* Opp. at 23), Defendant satisfied its meet and confer obligation, after which Defendant sought relief from the Court, who issued an Order compelling Plaintiff to comply with its discovery obligations. The March 12 Order laid out Plaintiff's discovery obligations and set an April 4 conference to address discovery issues before Plaintiff's April 11 ultimate compliance date. Until production was made, Defendants were not required to further meet and confer as a predicate for relief.[2]

Importantly, Plaintiff failed to produce critical documents, such as the agreement in which it allegedly acquired Cinco's assets (RFP No. 1), any documents regarding due diligence into Cinco's intellectual property rights and obligations (RFP Nos. 2-4, 6), and any documents showing the negotiation of the purchase agreement—shifting or sharing of litigation risk (such as Cinco making reps or warranties or Plaintiff agreeing to indemnify Cinco) or any side agreements or communication related to litigation (RFP Nos. 4-6, 7), and far more. Further, the March 12 Order resolved all objections to Defendants' Requests for Production. Plaintiff states it produced certain "relevant" documents, suggesting it had the right to withhold documents that fall within the March 12 Order if those documents are

---

[2] There was never a *bona fide* dispute over search terms and records custodians. The RFPs, themselves, plainly provide the search terms Plaintiff should have used to gather and produce documents. Defendants were under no obligation to compromise in advance of document production. Defendant properly objected to Plaintiff's admitted effort to change the process from Plaintiff beginning a rolling production, from which Defendants could evaluate search terms and records custodians being utilized, from compromising first without any reference to whom the custodians were or any example of the types of records being captured.

irrelevant, disproportionate, or objectionable on some other basis. Plaintiff was not permitted to do so. The March 12 Order carefully considered Plaintiff's objections to documents and made select exceptions to production. For example, the Court stated Plaintiff may exclude or redact portions of documents that apply solely to countries other than the United States in response to Request Nos. 1-20. Dkt. No. 128 at p. 2. Plaintiff's attempt to relitigate objections by selectively producing documents is not substantial compliance with the March 12 Order.

"[I]t is fundamental that a party that does not provide discovery cannot profit from its own failure." *Pacific Far East Line, Inc. v. R.J. Reynolds Industries, Inc.*, 1981 WL 2517, at *13 (citation omitted); *General Atomic Co. v. Exxon Nuclear Co., Inc.*, 90 F.R.D. 290, 291, 308 (S.D. Cal. 1981) (precluding evidence withheld from production after ordered to produce it). Indeed, documents intentionally suppressed during discovery in violation of a Court Order are routinely the subject of terminating or issue sanctions. *See, e.g.*, *See Inland Concrete Enterprises, Inc.*, 318 F.R.D. at 392-93 (terminating sanctions); *see also International Business Properties*, 65 F.3d 175, 1-4 (same); *Sanchez v. Rodriguez*, 298 F.R.D. 460, 464 (C.D. Cal. 2014) (same); *In re Heritage Bond Litigation*, 223 F.R.D. 527, 530-31, 533 (issue sanctions). Those sanctions should issue here.

### D. Defendants' Motion Specified Why the Compelled and Now Suppressed Documents Bear Directly on the Case

Plaintiff argues that "Defendants' Motion fails to identify any specific aspects of the Order that they claim was not complied with, and that prejudice them." Opp. at 23. This objection is not true. At pages 4-6 and 17, Defendants' Motion explains the compelled documents are relevant to (1) cross-examine the efficacy of Plaintiff's assignment from Cinco and also as to the trade secret claims and (2) prove that the assignment does not affect Defendants' trademark rights. Plaintiff's proffered assignment, alone, could never meet Plaintiff's burden of proof because its burden requires a showing beyond a rebuttal presumption of ownership—that

8

Plaintiff acquired rights free and clear of any pre-existing rights to use or control the U.S. marks that could not be terminated "at-will."[3] By suppressing documents in violation of the March 12 Order, Defendants have been unfairly prejudiced.

**E.    Plaintiff Willfully Violated the March 12 Order in Bad Faith Because it Did Not Even Produce Documents, Including Documents Identified in Plaintiff's Own Initial Disclosures**

The March 12 Order specified Plaintiff's discovery obligation, which Plaintiff willfully violated. There was no compliance by April 4 and no compliance by April 11. Plaintiff's belated, selective partial production as to portions of a few of Defendants' Requests more than a month after April 11 does not justify Plaintiff's willful violation of the March 12 Order. *See Wm. T. Thompson Co. v. General Nutrition Corp., Inc.*, 593 F. Supp. 1443, 1455-56 (C.D. Cal. 1984) (finding terminating sanctions proper when a party partially complied with a special master's orders and only partially produced responsive documents).

Responsive documents falling within Plaintiff's initial disclosures, including Plaintiff's purchase agreement, should have been produced nearly half a year ago when there was still sufficient time for Defendants to conduct additional discovery. After Plaintiff forced Defendants to obtain a Court Order specifying Plaintiff's discovery obligations, no way should it have taken more than a month to comply with the Court's March 12 Order.

Each of the requested sanctions is warranted by settled law:

1.    Prohibiting Plaintiff from supporting its claims for trademark infringement with any documents responsive to Request Nos. 1-27 (*see Navellier v. Sletton*, 262 F.3d 923, 947 (9th Cir. 2001) (evidentiary sanctions));

---

[3] *See Federal Treasury Enterprise Sojuzplodoimport v. Spirits Intern., N.V.,* 623 F.3d 61, 67-68, 71 (2d Cir. 2010) (vacating district court judgment based on trademark assignment, not underlying transactional documents, because district court was called upon to resolve element of plaintiff's case-in-chief, which could not be fairly resolved without consideration of acquisition documents).

2. Dismissing with prejudice or striking from Plaintiff's pleadings Plaintiff's claims for misappropriation of trade secrets (*see Inland Concrete Enterprises, Inc.*, 318 F.R.D. at 392-93 (terminating sanctions); *see also International Business Properties*, 65 F.3d 175, 1-4 (same); *Sanchez*, 298 F.R.D. at 464 (same));

3. Directing that the various matters detailed in the Notice of Motion embraced in the March 12 Order and substance of the compelled discovery be established for purposes of this action (*see In re Heritage Bond Litigation*, 223 F.R.D. at 530-31, 533 (issue sanctions));

4. Awarding Defendants reasonable expenses, including attorneys' fees, caused by Plaintiff's and its counsel's failure to comply with the March 12 Order (Dkt. 128) in an amount of no less than $85,370 (*see McGuire v. Dobbs Intern. Services, Inc.*, 232 F.3d 895, 3-4 (9th Cir. 2000) (monetary sanctions)); and

5. Finding Plaintiff in contempt to ensure an even playing field (*see In re Heritage Bond Litigation*, 223 F.R.D. at 533 (civil contempt).

**F.    Defendants Will Be Severely Prejudiced If Sanctions Are Not Issued**

Plaintiff's failure to produce documents rightfully requested in contravention of its discovery obligations and the Court's March 12 Order is unfairly prejudicial to Defendants in preparing to defend against Plaintiff's case-in-chief. Defendants must now prepare several cases in one depending on whether (a) Plaintiff obtained a complete or partial assignment of rights from Cinco, (b) Plaintiff had knowledge of Cinco's approval of Franchise Disclosure Documents and ratification of PCJV's rights under the master license agreement, (c) Cinco transferred rights pursuant to PCJV's consent under their MLA, (d) Plaintiff had knowledge of Cinco's status as a joint venture partner as found by the state court notwithstanding Plaintiff's proffered interpretation of a First Amendment adding PCI to the JVA, (e) Plaintiff had knowledge of Defendants' pre-existing rights to use and PCJV's President's right to

10

control the U.S. Potato Corner marks if the MLA was unenforceable, and (f) Plaintiff had knowledge of Cinco's acquiesce in PCJV's control over the U.S. marks and PCJV's defenses of assignment in gross and unclean hands. Plaintiff's defiance of this Court's order and suppression of evidence requires Defendants to prepare alternative defenses that involve different trial strategies, evidence, and witnesses.

Plaintiff's failure to comply with this Court's Order unfairly prejudices Defendants in preparing other defenses as well. For example, Defendants assert delay and laches as defenses. Without documentation showing the due diligence that Plaintiff performed to determine what trademark rights, if any, Cinco could transfer free and clear of Defendants' pre-existing rights, Defendants must prepare different case strategies guessing as to what Plaintiff learned regarding Defendants' pre-existing rights and Cinco's obligations owed to PCJV and Koren, and whether Plaintiff's due diligence provided inquiry, constructive, or actual notice of Cinco's obligations. The various possibilities involve different lines of questioning, presentation of facts and law, ordering of witnesses, and argumentation at closing. Plaintiff's trial by ambush is unfairly prejudicial to Defendants, a waste of judicial resources, and potentially a waste of the jury's time or unfairly confusing as Defendants are forced to hit moving targets at trial.

## G. There is No "Understanding" That Deadlines Would Be Continued

Seizing upon an obvious mistake in the March 12 hearing transcript, Plaintiff's counsel ("Mr. Murphy") knowingly and falsely attributes to Defendants' counsel ("Mr. Malynn") his own argument—which *was* disputed in real time by Defendants' counsel ("Mr. Beral"):

> MR. MALYNN [***WHEN IN REALITY MR. MURPHY KNEW HE MADE THE FOLLOWING STATEMENT***]: Yeah. Our [Plaintiff's, Cross-Complaint Defendants', and Third-Party Defendants'] problem is that the crossclaims, third-party claims have now brought in new additional parties, and the trade secret claim is somewhat new. And so there was always kind of an understanding, we're going to have to get a new scheduling order…. (Murphy Decl, Exh. 16 at 97:7-12.)

There was no such understanding. The District Court's standing order is clear regarding relief concerning the CMO. The moving party—or parties if relief is sought by stipulation—must establish *good cause* to modify the CMO, including that the moving party or parties have (a) diligently prosecuted the case and (b) timely sought relief from discovery deadlines and trial dates.[4]

It was *Defendants* who first raised the prospect of stipulating to change the CMO after Plaintiff (without leave of Court [again]) filed an amended pleading adding trade secret claims. Judge Blumenfeld suggested that he would consider *at that time* a stipulation to change the *deadlines* (but not the trial date). Defendants tried to meet and confer with Plaintiff, but Plaintiff ignored Defendants. Defendants then complied with the existing CMO and, as the months went by, noted to Mr. Murphy that good cause no longer exists to amend the CMO after Mr. Murphy revisited the issue on February 28, 2025, at a court hearing.

At the March 12, 2025 hearing, Defendants' counsel opposed relief from the CMO, including any trial continuance, and for good reason. The preliminary injunction does not expire until trial and should not be extended without good cause. Plaintiff, Cross-Defendant, and Third-Party Defendants have consistently rejected belated efforts to modify the CMO and the CMO's deadlines have since passed and discovery has closed. The Court expressly directed Mr. Murphy not to delay but to immediately seek relief from Judge Blumenfeld. Yet, two months later, nothing—no motion to modify the CMO, which plainly shows that the "noise" regarding the CMO was "cover" to suppress evidence.

## III.  CONCLUSION

This is an egregious case of willful violations of discovery obligations and Court Orders. When the proverbial "shoe was on the other foot," Plaintiff seized

---

[4] Plaintiff certainly cannot satisfy this standard and Defendants will show that good cause is lacking to modify the CMO as to Third-Party Defendants, whose joinder does not expand the scope of the case from the cross-claims of which Plaintiff has had notice since the filing of this action in May 2024.

upon the issuance of the preliminary injunction against Defendants to file motion after motion to hold Defendants in contempt of Court and obtain sanctions and also to extract Defendants' third-party franchisees for itself. After gutting Defendants' operations, Plaintiff then thumbed its nose at this Court's Orders. Severe consequences are warranted.

DATED:  June 20, 2025          **BLANK ROME LLP**


By: */s/ Todd M. Malynn*
          Arash Beral
          Todd M. Malynn
          Jamison T. Gilmore
          Attorneys for Defendants, Counterclaimants, and Third Party Plaintiffs PCJV USA, LLC, PCI TRADING LLC, POTATO CORNER, LA GROUP, LLC, GK CAPITAL GROUP, LLC, NKM CAPITAL GROUP, LLC and GUY KOREN, and Defendants J & K AMERICANA, LLC, J&K LAKEWOOD, LLC, J&K OAKRIDGE, LLC, J&K VALLEY FAIR, LLC, J & K ONTARIO, LLC, J&K PC TRUCKS, LLC, HLK MILPITAS, LLC, and GK CERRITOS, LLC

13

# <u>CERTIFICATE OF COMPLIANCE</u>

The undersigned counsel of record for Defendants certifies that this brief contains 3,987 words, which complies with the word limit of Local Rule 11-6.1.

DATED:  June 20, 2025

                                        _/s/ Todd M. Malynn_____
                                        Todd M. Malynn

**CERTIFICATE OF SERVICE**

The undersigned certifies that on June 20, 2025, the foregoing document was electronically filed with the Clerk of the Court for the United States District Court, Central District of California, using the Court's Electronic Case Filing (ECF) system. I further certify that all participants in the case are registered CM/ECF users and that service will be accomplished by the CM/ECF system.

I certify under penalty of perjury that the foregoing is true and correct. Executed on June 20, 2025.

By:   /s/AJ Cruickshank