MICHAEL D. MURPHY (SBN 224678)
MDMurphy@foxrothschild.com
MATTHEW FOLLETT (SBN 325481)
MFollett@foxrothschild.com
FOX ROTHSCHILD LLP
Constellation Place
10250 Constellation Boulevard, Suite 900
Los Angeles, California 90067
Telephone:  310.598.4150
Facsimile:   310.556.9828

Attorneys for Plaintiff and Counterclaim Defendant SHAKEY'S PIZZA ASIA VENTURES, INC. and Third-Party Defendants CINCO CORPORATION, PC INTERNATIONAL PTE LTD., and SPAVI INTERNATIONAL USA, INC.

# UNITED STATES DISTRICT COURT

# CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| SHAKEY'S PIZZA ASIA VENTURES, INC, a Philippines corporation,<br><br>Plaintiff,<br><br>v.<br><br>PCJV USA, LLC, a Delaware limited liability company; PCI TRADING, LLC, a Delaware limited liability company; GUY KOREN, an individual; POTATO CORNER LA GROUP, LLC, a California limited liability company; NKM CAPITAL GROUP, LLC, a California limited liability company; J & K AMERICANA, LLC, a California limited liability company; J&K LAKEWOOD, LLC, a California limited liability company; J&K VALLEY FAIR, LLC, a California limited liability company; J & K ONTARIO, LLC, a California limited liability company; HLK MILPITAS, LLC, a California, limited liability company; GK CERRITOS, LLC, a California, limited liability company; J&K PC TRUCKS, LLC, a California limited liability company; and, GK CAPITAL GROUP, LLC, a California limited liability company and DOES 1 through 100, inclusive, | Case No. 2:24-CV-04546-SB(AGRx)<br><br>*The Hon. Stanley Blumenfeld, Jr.*<br><br>**PLAINTIFF AND COUNTERCLAIM DEFENDANT SHAKEY'S PIZZA ASIA VENTURES, INC. AND THIRD PARTY DEFENDANTS CINCO CORPORATION, SPAVI INTERNATIONAL US, INC., AND PC INTERNATIONAL PTE, LTD.'S MEMORANDUM OF CONTENTIONS OF LAW AND FACT**<br><br>Complaint Filed:   May 31, 2024<br>Trial Date:             August 4, 2025 |

1

SPAVI'S CONTENTIONS OF LAW AND FACT                                           CASE NO. 2:24-CV-04546-SB(AGRX)
173693918.1

|   |   |
|---|---|
| 1 | Defendants. |
| 2 |   |
| 3 | PCJV USA, LLC, a Delaware limited liability company; PCI TRADING LLC, a Delaware limited liability company; POTATO CORNER LA GROUP LLC, a California limited liability company; GK CAPITAL GROUP, LLC, a California limited liability company; NKM CAPITAL GROUP LLC, a California limited liability company; and GUY KOREN, an individual, |
| 4 |   |
| 5 |   |
| 6 |   |
| 7 |   |
| 8 | Counter-Claimants, |
| 9 | v. |
| 10 | SHAKEY'S PIZZA ASIA VENTURES, INC, a Philippines corporation, |
| 11 |   |
| 12 | Counter Defendant. |
| 13 | PCJV USA, LLC, a Delaware limited liability company; PCI TRADING LLC, a Delaware limited liability company; POTATO CORNER LA GROUP LLC, a California limited liability company; GK CAPITAL GROUP, LLC, a California limited liability company; NKM CAPITAL GROUP LLC, a California limited liability company; and GUY KOREN, an individual, |
| 14 |   |
| 15 |   |
| 16 |   |
| 17 |   |
| 18 |   |
| 19 | Third Party Plaintiffs, v. |
| 20 | PC INTERNATIONAL PTE LTD., a Singapore business entity; SPAVI INTERNATIONAL USA, INC., a California corporation; CINCO CORPORATION, a Philippines corporation; and DOES 1 through 10, inclusive, |
| 21 |   |
| 22 |   |
| 23 |   |
| 24 | Third Party Defendants. |

## **TABLE OF CONTENTS**

I. INTRODUCTION .................................................................................................. 5

II. CLAIMS AND DEFENSES [L.R. 16-4.1] ......................................................... 8

    A. Summary Statement of SPAVI's claims [L.R. 16-4.1(a)] ..................... 8

    B. Elements to be Proven for Claims [L.R. 16-4.1(b)] ............................. 9

    C. Summary of Key Evidence in Support of Claims [L.R. 16-4.1(c)] ..... 11

    D. Summary of Counterclaims, Affirmatiove Defenses, and Third Party Clams the Elements to be Proven and Evidence [L.R. 16-4.1(d)-(g)]. 13

        1. The Affirmartive Defenses Are Improperly Pled and Useless at Trial. ................................................................................................. 14

        2. Defendantrs are Unable to Specify Key Facts in their Countercloaims Which are Implausible to the Extreme. ........... 15

        3. The Third Partry Claims are a Black Box that Should Never Be Sent to a Jury in this Condition. ................................................ 16

III. Anticipated Evidentiary Issues [L.R. 16-4.1(h)] .............................................. 17

IV. Disputed Issues of Law [L.R. 16-4.1(h)] ......................................................... 17

V. BIFURCATION OF ISSUES [L.R. 16-4.3] ..................................................... 17

VI. JURY TRIAL [L.R. 16-4.4] .............................................................................. 18

VII. ATTORNEYS' FEES [L.R. 16-4.5] ................................................................. 18

VIII. ABANDONMENT OF ISSUES [L.R. 16-4.6] ................................................ 19

# TABLE OF AUTHORITIES

**Cases**
*Aguirre v. Guerrero*, 2014 WL 12703414 (C.D. Cal. June 3, 2014) ....................... 18
*Atari Interactive, Inc. v. Redbubble, Inc.*, 515 F.Supp.3d 1089 (N.D. Cal. 2021) ... 10
*Bellagio Jewelry, Inc. v. Croton Watch Co., Inc.*, 2008 WL 11339936 (C.D. Cal. Oct. 15, 2008) ................................................................................................ 19
*Cosmonova, LLC v. BioFilm, Inc.*, 763 F.Supp.3d 1157 (S.D. Cal. 2025) ............... 10
*DTM Rsch., L.L.C. v. AT & T Corp.*, 245 F.3d 327, 332 (4th Cir. 2001) ................ 12
*GoTo.com, Inc. v. Walt Disney Co.*, 202 F.3d 1199 (9th Cir. 2000) ....................... 10
*Gracie v. Gracie*, 217 F.3d 1060 (9th Cir. 2000) .................................................... 19
*Love v. Assoc. Newspapers, Ltd.*, 611 F.3d 601 (9th Cir. 2010) ............................. 19
*Parra v. City of Santa Ana*, 2012 WL 13018578 (C.D. Cal. Aug. 6, 2012) ........... 18
*Santa Clarita Valley Water Agency v. Whittaker Corp.*, 2021 WL 4338973 (C.D. Cal. Aug. 13, 2021) ................................................................................ 18
*Sengoku Works Ltd. v. RMC Int'l, Ltd.*, 96 F.3d 1217 (9th Cir. 1996) ................... 11
*Walker v. Countrywide Home Loans, Inc.*, 98 Cal.App.4th 1158 (2002) ............... 19
*Wolsey, Ltd. v. Foodmaker, Inc.*, 1998 WL 2001059 (C.D. Cal. Dec. 3, 1998) ...... 18

**Statutes**
15 U.S.C. § 1114 ........................................................................................ 8, 9, 10, 18
15 U.S.C. § 1117(a) .................................................................................................. 18
15 U.S.C. § 1125(a)(1)(A) ..................................................................................... 8, 9
15 U.S.C. § 1125 ...................................................................................................... 18
15 U.S.C. § 1125(a) ................................................................................... 8, 9, 10, 18
Cal. Bus & Prof Code § 17200 ................................................................. 8, 10, 18, 19
Cal. Civ. Code 3426.1 .............................................................................................. 10

**Other Authorities**
Ninth Circuit Model Civil Jury Instructions, Instruction No. 15.6 ..................... 9, 10
Ninth Circuit Model Civil Jury Instructions, Instruction No. 15.18 .......................... 9

Pursuant to Local Rule 16-4, Plaintiff and Counterclaim Defendant Shakey's Pizza Asia Ventures, Inc. ("SPAVI"), as well as Third Party Defendants Cinco Corporation ("Cinco"), SPAVI International US, Inc. ("SPAVI International"), and PC International PTE, Ltd. ("PC International"), offer this Memorandum of Contentions of Law and Fact.

## I. INTRODUCTION

This case is a simple one, and trial should have been as well. The Plaintiff is Shakey's Pizza Asia Ventures, Inc. ("SPAVI"), a publicly traded corporation based out of Manila, owns and operates multiple brands around the world including Potato Corner, a global brand of quick-service restaurants with 2000 restaurants around the world. It owns a family of Potato Corner marks, including the three principal marks, one of which, shown below, is incontestable (the **"Potato Corner Logo Mark,"**



(U.S. Reg. No. 3760041). The other two are the "Potato Corner Characters Mark" (U.S. Reg. No. 5900257), and the tag line "World's Best Flavored French Fries." (U.S. Reg. No. 6088456).

At issue in this action is the refusal of the holdover licensee, Defendant PCJV USA, LLC ("Defendant PCJV") and its principal, Guy Koren, to cease using the Potato Corner brand upon termination of its terminable at will license. This termination occurred after years of negotiations between SPAVI and Koren failed to achieve any written document. When the negotiations failed, SPAVI terminated the license, however, Defendant Koren and PCJV continued operating, and failed to even acknowledge the termination. At issue, then, are standard trademark claims alleged

against a holdover licensee. Indeed, Koren has admitted each of the elements, rendering this case as essentially a damages case.

Nevertheless, the case has been complicated by the fact that PCJV wishes to make this trial about who owns the Potato Corner brand, claiming Cinco did not actually own it when sold to SPAVI, and SPAVI International's current efforts to expand Potato Corner is invalid, and the SPAVI entity that holds newer Potato Corner marks is violating PCJV's claimed right to Potato Corner. Putting aside the wholesale absence of any evidentiary support, these claims, if true, would destroy SPAVI's Potato Corner acquisition – a publicly traded company's asset worth a quarter billion dollars – handing it to Defendants, causing a cascade of consequences beyond the damages claim that Defendants are claiming. If not baseless, these would be significant claims.

These assertions of baseless claims has created two issues that will needlessly prolong trial, which must be resolved by this Court, the first of which requires resolution before anything else can be done.

Specifically, Defendants did not name the three Third Party Defendants until a few weeks before the close of discovery, such that the summons on Cinco, SPAVI International, and PC International did not issue until March 31, 2025—two weeks after discovery had closed under the current Case Management Order ("CMO"), and their responsive pleading was filed two weeks later, April 15, 2025. (Dkt. 137 [issued summons], Dkt. 156 [Answer to Third Party Complaint].) As such, none of them have had the chance to defend themselves, have been denied access to any of the tools that the Fed. Rules Civ. P. allow: no discovery, no disclosures, no right to challenge the claims under Rules 12 or 56. Similarly, Defendants' attempts to challenge SPAVI's ownership – alleged through confusing affirmative defenses and counterclaims that do not make any sense – were not filed until February 20, 2025, also preventing SPAVI from engaging in discovery on those claims. Dkt. 108. Even worse, Defendants' Initial Disclosures were not even served until February 28, 2025,

1  such that SPAVI was denied the right to the benefits of Ruyle 26. Put simply, no
2  matter how diligent, none of the parties Koren seeks relief against could have been
3  ready for trial, when they were denied disclosures, discovery, and challenges as a
4  matter of law.

5  As explained herein, and in the concurrently filed Application to Amend the
6  COA, a trial on August 4, 2025, would have constitutional infirmities given the
7  absence of any due process for each of SPAVI, Cinco, SPAVI International, and PC
8  International. Defendants blocked this from being presented to this Court,
9  notwithstanding it having been raised on the record multiple times by Plaintiffs'
10 counsel. The only alternative to continuing trial would be an order precluding any
11 evidence or argument by Defendants in support of any of their affirmative defenses,
12 counterclaims, or third-party claims, given their having raised these claims late and
13 then refused to present the issue for this Court. Although that would result in an
14 effective default by Defendants on their claims to own Potato Corner, it is the only
15 possible solution to the serious constitutional defects they created.

16 The second issue that will have to be resolved is Defendants' stated intent on
17 Defendants' desire to offer evidence and argument in support of false propositions of
18 law. They continue to assert the existence of a res judicata defense, or assert that they
19 have rights to the United States registrations, suggesting, falsely, that these
20 international registrations are somehow automatically divisible by jurisdiction (they
21 are not). It is one thing to assert these arguments in briefs to this Court, quite another
22 to confuse the jury with erroneous legal positions.

23 Absent these two issues, this would be a short trial on damages owed by
24 Defendants, followed by subsequent proceedings for attorneys' fees and a permanent
25 injunction. These two problems threaten to prolong trial, confuse the jury, and waste
26 resources, not to mention the due process problems presented. Of course, given that
27 this entire strategy is based on manufactured propositions of law that do not exist,
28 and factual claims that are pure fantasy. Allowing the parties their due process right

to engage in discovery, and challenge these claims will benefit everyone involved, as these affirmative defenses, counterclaims, and third-party claims would likely not survive a Rule 12 or 56 challenge after discovery. But under these circumstances, none of those demands for relief should ever be presented to a jury.

## II.    CLAIMS AND DEFENSES [L.R. 16-4.1]

### A.    Summary Statement of SPAVI's claims [L.R. 16-4.1(a)]

There are two injuries for which relief is sought: use of the Potato Corner trademarks after termination of the license, and the unauthorized taking of flavorings that Guy Koren himself called "trade secrets" for years, and giving them to a third party to reverse engineer, so as to compete with SPAVI. These are the claims.

Claims 1 and 2: SPAVI brings a claim for trademark infringement under 15 U.S.C. §§ 1114 and 1125(a).

Claim 3: Plaintiff brings a claim for federal unfair competition and false designation of origin under 15 U.S.C. § 1125(a)(1)(A).

Claims 4 and 5: SPAVI's claim for contributory trademark infringement and false designation of origin (15 U.S.C. § 1114 and 1125(a)) seek to ensure that Defendants, including Koren, are liable not only for their own uses of the marks, but for the extent to which they aid and abet others.

Claim 6: SPAVI brings a claim under California common law for unfair competition, alleging that it owns common law rights in various marks within the Potato Corner Family (in addition to the federally registered and protectible marks), and those too have been violated.

Claim 7: This is SPAVI's Claim under Cal. Bus. & Prof. Code § 17200 for unfair competition which alleges the entire course of conduct of Defendants from the refusal to negotiate, termination, continuing without authority to hold themselves out as Potato Corner, while developing a competing brand that included, among other things, the unauthorized reverse engineering of flavors (the '"beating heart of the

brand." This entire scheme is one that is an unfair and fraudulent practice, requiring disgorgement and attorneys' fees.

Claim 8 seeks Declaratory Relief which will form the basis for the permanent injunction that SPAVI will seek.

Claim 9 Quantum Meruit: Simply seeks the recovery of the value of the trademarks and flavorings that Defendants used without compensation.

Claim 10: Trade Secret Misappropriation (Cal. Civ. Code 3426.1): this claim seeks relief from Guy Koren's having, after being terminated, taken flavorings that he, for a decade, called (and are) "trade secret" in public filings, and giving them to a third party (he had lost authority to handle them let alone five them to a stranger to the brand) to reverse engineer, and then rolled out the reverse engineered flavorings in an attempt to compete using the new name "Undercover Fries," and that has caused the company harm.

**B.    Elements to be Proven for Claims [L.R. 16-4.1(b)]**

Claims 1 and 2: trademark infringement under 15 U.S.C. §§ 1114 and 1125(a), requires proof of alleging it owns a valid, protectable, federally registered service marks and Defendants PCJV and Koren and the remaining Defendants (each of whom operates a store under PCJV's license) continued using Potato Corner's marks after termination of their license, without Plaintiff's consent in a manner likely to cause confusion, mistake, or deception. *See* Ninth Circuit Model Civil Jury Instructions, Instruction Nos. 15.6, 15.18. Because Defendants admit that the marks they are using are the actual marks being infringed, the likelihood of confusion test is not as onerous, and is, effectively stipulated to.

Claim 3: SPAVI's federal unfair competition and false designation of origin under 15 U.S.C. § 1125(a)(1)(A), has the same elements, except will be focusing on different valid, protectable, service marks that are not registered, and are used as part of the Potato Corner Family, and Defendants have used them in a manner that is likely to cause confusion, mistake, or deception. *See* Ninth Circuit Model Civil Jury

Instructions, Instruction No. 15.6 & comments; *e.g.*, *GoTo.com, Inc. v. Walt Disney Co.*, 202 F.3d 1199, 1204 n.3 (9th Cir. 2000).

Claims 4 and 5: SPAVI's claim for contributory trademark infringement and false designation of origin (15 U.S.C. § 1114 and 1125(a)) have the same elements except liability attaches effectively to an aider and abettor who supplies material to the infringer or induced infringement also controlled the induced party. (i.e., Koren, PCJV, and PCI Trading, and possibly NKM). *Atari Interactive, Inc. v. Redbubble, Inc.*, 515 F. Supp. 3d 1089, 1109 (N.D. Cal. 2021), aff'd in part, appeal dismissed in part, No. 21-17062, 2023 WL 4704891 (9th Cir. July 24, 2023). Although SPAVI also intends to prove alter ego liability on Claims 1 and 2, these claims ensure that liability will flow towards the top.

Claim 6: SPAVI brings a claim under California common law for unfair competition, alleging Plaintiff owns common law rights in various marks within the Potato Corner Family, and Defendants have used them in a manner that is likely to cause confusion, mistake, or deception; Defendants knowingly intended to confuse, mislead, or deceive consumers; causing Plaintiff competitive injury.

Claim 7: This is SPAVI's Claim under Cal. Bus. & Prof. Code § 17200 for unfair competition which requires only: an unfair, unlawful, or fraudulent business practice, and injury to SPAVI.

Claim 8 seeks Declaratory Relief seeks declarations as to what the license was that was terminated on May 31, 2024. That is the key fact that begins and ends all of this.

Claim 9 Quantum Meruit: Simply seeks the recovery of the value of the trademarks that Defendants used without compensation, and this claim dates back to when SPAVI took over, as it was always clear that SPAVI expected to be paid. *Cosmonova, LLC v. BioFilm, Inc.*, 763 F. Supp. 3d 1157, 1172 (S.D. Cal. 2025).

Claim 10: Trade Secret Misappropriation (Cal. Civ. Code 3426.1): this claim requires proof that any of the name Defendants either took or assisted in the taking

of a trade secret through improper means, and used that misappropriation to gain a competitive advantage.  seeks relief from Guy Koren's having, after being terminated, taken flavorings that he, for a decade, called (and are) "trade secret" in public filings, and using improper means gave them to a third party (he had lost authority to handle them let alone five them to a stranger to the brand) to reverse engineer, and then rolled out the reverse engineered flavorings in an attempt to compete using the new name "Undercover Fries," and that has caused the company harm.

This has most certainly caused the company harm and that the flavorings are a trade secret owned by SPAVI, in that its secrecy holds value to SPAVI, and, further, that reverse engineering was an unauthorized taking of a trade secret for his own personal benefit.

### C. Summary of Key Evidence in Support of Claims [L.R. 16-4.1(c)]

What makes a trial on these claims so simple is that every element is either admitted by Guy Koren himself, or by PCJV, usually in statements found in the public record over the last 15 years. Even much of the damages can be derived from public statements.

As for the trademark infringement claims, Defendants obtained an early assessment of their defenses at the injunction phase of this case. First, as to validity and ownership, Defendants have no rebuttal to Plaintiffs' success on these elements (established by the trifecta of federal registrations, proof of first use, and a deed from Cinco to SPAVI). It is for this reason that Defendants intend to continue promoting legally false theories to the jury, hoping to confuse the jury enough to get it wrong. For example, in their jury instructions they propose (in "15.17") the legally false statement of law misrepresenting the *Sengokyu* case, by suggesting that case held that a contract is the first place to look for who owns a mark, when that case says registration absent proof of prior use is the first place to look. *Sengoku Works Ltd. v. RMC Int'l, Ltd.*, 96 F.3d 1217, 1220-21 (9th Cir. 1996). Defendants should be held

1  to task for proposing statements of law that are false and each time Defendants make
2  a false representation about Sengoku and other statements of law, they violate this
3  duty. Now is when that duty means the most as lay persons are listening and making
4  all the decisions at trial.

5       The only true fact at issue in this claim, when the false statements of law are
6  cleared away, is damages. The record is strewn with financial statements and
7  analysis, such that Plaintiffs are confident that a compelling damage case will be
8  established based on Defendants' and Plaintiffs' financials (as well as Defendants'
9  expert, whose testimony actually benefits SPAVI, not Defendants).

10       As for misappropriation, again, Koren does not deny that after the termination
11  letter he took packages of flavors (again, the "beating heart of this brand") and
12  handed it to a third party with no authority, and had the package reverse engineered
13  and that the reverse engineered product us being used by Undercover fries. Koren's
14  defenses here will be based on how the law is applied to these undisputed facts.

15       First, Koren intends to challenge whether the flavorings are a trade secret. He
16  faces an uphill battle given the decade of pronouncements by him to the contrary
17  including in the Francise Disclosure Document every year, and in every franchise
18  agreement, which repeats over and over that the flavorings are "trade secret."

19       Second, Koren will question whether SPAVI owns the trade secret, as if a
20  secret is something anyone can own, like property in fee simple. The leading case on
21  this question is *DTM Rsch., L.L.C. v. AT & T Corp.*, 245 F.3d 327, 332 (4th Cir.
22  2001), which explained that "the "proprietary aspect" of a trade secret flows, not
23  from the knowledge itself, but from its secrecy." *Id*. ("It is the secret aspect of the
24  knowledge that provides value to the person having the knowledge.") This analysis
25  fits here, as will be established by the testimony of those responsible for maintaining
26  this secrecy of the flavorings will testify.

27       The rest of Koren's rebuttals are more tin the "gotcha" category. For example,
28  he intends on capitalizing on the fact that he never disclosed the name of the third

party that conducted the reverse engineering (which he claims was legal), despite it being a disclosure he should have voluntarily made during the disclosure process.

Finally, it is the tying of these two sets of claims together that makes the § 17200 claim perhaps the most compelling. SPAVI will prove a course of conduct commencing with luring franchisees in with knowing false statements of trademark rights, and lying to the owners of the brand about his commitment to trade secrecy and confidentiality, until his attempt to use the marks for free fails and Koren finally had to be accountable for the free brand he was using. His reaction, however, was to continue using the mark without authority, while building a new brand while stalling claiming to be Potato Corner, whose secrets he was stealing and misappropriating and reverse engineering so he can compete with SPAVI. That is a story that will be compelling and could result in disgorgement and attorneys' fees.

### D. Summary of Counterclaims, Affirmatiove Defenses, and Third Party Clams the Elements to be Proven and Evidence [L.R. 16-4.1(d)-(g)]

Dkt. 108 contains Defendants' Affirmative Defenses and Counterlcaims alleged against SPAVI, and Third Party claims alleged against the Third-Party Defendants. Much of this portion of this Memorandum is speculative because SPAVI and the Third Party Defendants were denied the opportunity to engage in discovery or challenge any claims, and so, as a result, do not know what the basis for the claims are, the evidence that Koren intends to use to prove these claims, or the legal issues. Counterclaim and Third-Party Defendants ae all certain of one thing: these claims against them are baseless. That said, they are also impenetrable and misleading such that it is difficult to know what is actually being alleged.

Indeed, the amount of time the Third-Party Defendants and SPAVI are going to spend fumbling in the dark trying to figure out these claims when that should have been done in discovery, will be a disservice to this Court and the jury as it will prolong trial. And then, if this Court tries to cut things short, when the parties

defending these claims never even got discovery, the due process issues will compound. That cannot be helped because Defendants' disclosures were not helpful, and no discovery was allowed. The guesses will, however, be educated.

### 1. The Affirmartive Defenses Are Improperly Pled and Useless at Trial.

Most of the affirmative defenses do not exist as a matter of law or are a salad of multiple and sometimes nonexistent affirmative defenses (First Affirmative Defense failure to state a claim, Third through Fifth Affirmative Defenses are mishmashes of res judicata (twice), collateral estoppel (twice), release, waiver, consent, acquiescence, ratification, equitable estoppel, and judicial estoppel, fraud, tortious interference, breach of contract, inducement to breach contract, unclean hands, bad faith, and "in pari dilecto," laches and statutes of limitation), some do not exist or are impossible to understand (Seventh, Eighth, Ninth, Tenth, Thirteenth Affirmative Defenses.) Only three of them actually identity a cognizable affirmative defense except those, along with each of the other affirmative defenses allege no facts that support these "affirmative defenses."

The poor quality of the affirmative defense pleading was the topic of a meet and confer, and Defendants' counsel did not dispute much of SPAVI's challenge on a procedural level. Defendants do not dispute that they should not have combined affirmative defenses together, and the absence of allegations explaining the factual basis made them hard to understand. When read all as one, it appears these affirmative defenses are the wastebin from the cutting room floor into which Defendants dropped references from the failed injunction opposition attempting to preserve defenses that have been rejected by every judge to hear them, such as res judicata. That said, the Affirmative Defenses cannot serve as a basis for any instruction to the jury, given that they are useless. A Rule 12 Motion is necessary to clean up the mess for the benefit of the Court and jury.

**2.     Defendantrs are Unable to Specify Key Facts in their Countercloaims Which are Implausible to the Extreme.**

These causes of action are confusing and difficult to understand. They come in three species, none of which are minimally plausible. Again, no matter how diligent SPAVI was, it could never have conducted discovery on these claims in the less than 30 days allotted. By having not been able to ask a single question in discovery or challenge them, the parties and this Court are stuck with them. Due process benefits everyone.

**Interference Claims**. First, are Defendants' Interference claims: Inducing Breach (2nd Counterclaim); Intentional Interference with Contract (3rd Counterclaim); Intentional Interference with Prospective Econ Relations (4th Counterclaim); and Negligent Interference with Prospective Econ Relations (4th Counterclaim). When asked during meet and confers' what the specific contract and term is that was interfered with, PCJV's counsel responds, intentionally, with the following phrase "the PCJV Governing Document**s** (note the plural). When asked what those documents are, not one of them is a document to which Cinco is a signatory, and only one is a valid ongoing agreement: the AJVA. Accordingly, being unable to identify the contract, which was interfered with is a problem for Defendants, so are other issues (like the absence of any allegation of an independently wrongful act that was committed as part of the prospective economic advantage interference claims – a fatal defect. Noe one was ever given a chance to challenge these defects in Rule 12 or 56.

**Breach of Duty Claims**: Breach of Fiduciary Duty (7th Counterclaim), Breach of Contract and Good Faith and Fair Dealing (8th and 9th). These are defective as a matter of law, given that SPAVI never had any relationship with any Defendant. No contract was entered into, and no fiduciary duty could possibly have arisen simply as the holder of an implied license. Indeed, the irony of these claims of course is that SPAVI tried to get into a contractual relationship with Defendants and they bombed the negotiation. As such, these claims should have been thrown out. The evidence

that Defendants intend to use to prove this is unknown, and, as such, the analysis will have to occur in real time at trial.

**Third are the odd** "Aiding and Abetting Torts" (6th Counter); Cal. Bus and Prof. Code § 17200 (10th Counter/3rd Party Claim); Quantum Meruirt (11th Counter/3rd Party Claim) and Accounting (12th). The factual; basis for these causes of action is unknown, unclear, and untested.

Plaintiff met and conferred with Defendants under LR 7-3 after the Feb. 20, 2025 and Defendants suggesting they would amend at least their affirmative defenses, only to change their mind on amending, and changing their mind as to stipulating to a new COA, thus eliminating SPAVI's right under the COA to file a Rule 12 Motion given that the deadline to file that Motion had passed. A Rule 12 Motion by all Third-Party Defendants and SPAVI could be filed within one week of this Court's grant of permission and Defendants' completion of a Rule 7-3 meet and confer.

**3.  The Third Partry Claims are a Black Box that Should Never Be Sent to a Jury in this Condition.**

It is not entirely clear why SPAVI International and PC International have been named. Both were created by Plaintiff as part of its restructuring of the global promotion of the brand after the 2022 acquisition. The fact that no one can decipher from the record why these two third party defendants are here speaks volumes about these claims not being ready.

For this Court's edification prior to a final status conference, SPAVI International is the domestic arm of SPAVI, that will be in charge of all of SPAVI's US operations. PC International is a SPAVI subsidiary that holds and owns trademarks for SPAVI, and is currently the power of all the new marks created for Potato Corner.

Neither SPAVI International nor PC International have had any priority with any Defendant. It appears that they have been named because they claim rights to

own (PC International) and use (SPAVI International) Potato corner marks that Koren and PCJV are hoping in their counterclaims to prove they own. It is possible – upon reading the "Forst Claim for Relief," at these parties are here if Koren wins on some trademark point, then these two SPAVI parties would then be liable for using Koren's marks. That said, the Third-Party Defendants have no other information about why the claims are alleged, the evidence to be used against them, or the purpose, other than harassment.

The claims alleged against Cinco are as follows, and also fatally flawed. What makes trial on these claims as alleged so insidious, is that Cinco has been in this case less than two months, based on a Complaint that says nothing about why it has been sued, and has given Cinco no opportunity to learn about, let alone test or ask for dismissal of these claims.

Cinco is alleged to have breached a fiduciary duty, and yet no known duty ever existed by Cinco (Claim 7). The Claim is so fatally vague, the allegations are meaningless. Similarly, the Complaint appears to sue Koren for breach pf contract and good faith and fair dealing (counterclaims 8 and 9), without specifying which contract and term they are liable for. And of course, what is the unfair practice – being a part of an enterprise designed to deprive Koren of his rights. That is, it, nothing more specific. What specific acts of these three defendants is unknown. Without discovery, they will have no idea what to prepare for or what (potentially false statement) of the law they will have to respond to.

No one should be forced to trial on these claims as written.

### III. Anticipated Evidentiary Issues [L.R. 16-4.1(h)]

The known evidentiary issues were largely raised above when appropriate.

### IV. Disputed Issues of Law [L.R. 16-4.1(h)]

The issues of law most likely to arise have been addressed. Whatever Guy Koren tells him is the defense du jour will likely occupy the parties' time.

### V. **BIFURCATION OF ISSUES [L.R. 16-4.3]**

As is standard practice in California Superior Court, federal courts regularly bifurcate (i) entitlement to punitive damages, and (ii) the amount of punitive damages. *See Santa Clarita Valley Water Agency v. Whittaker Corp.*, 2021 WL 4338973, at *15 (C.D. Cal. Aug. 13, 2021) (Blumenfeld, J.) (bifurcating trial such that punitive would be heard in the second phase "[i]f the jury returns a verdict for Plaintiff and finds that Defendant acted with 'oppression, fraud, or malice,' Cal. Civ. Code § 3295(b) in the first phase"); see also *Aguirre v. Guerrero*, 2014 WL 12703414, at *2 (C.D. Cal. June 3, 2014) (same); *Parra v. City of Santa Ana*, 2012 WL 13018578, at *1 (C.D. Cal. Aug. 6, 2012) (same); *Wolsey, Ltd. v. Foodmaker, Inc.*, 1998 WL 2001059, at *7 (C.D. Cal. Dec. 3, 1998) (same).

Bifurcation of *punitive* damages is **_inappropriate_** here. Defendants are not likely to win on any of their claims, such that arguments against punitive damage were already presented to be futile. Conversely, Plaintiffs feel confident of the knowing and intentional wrongdoing of Koren, which will loom large in their presentation. This case can, and should, be tried all at once.

## VI. JURY TRIAL [L.R. 16-4.4]

SPAVI demanded a jury trial as part of its complaint. Dkt. No. 1. It is entitled to a jury trial on its claims under 15 U.S.C. §1114, 15 U.S.C. §1125(A), and the common law. The plaintiff is entitled to have the jury determine its actual damage and its punitive damage, and it believes an advisory opinion as to disgorgement is contemplated in this Circuit and warranted here. The decisions on whether to grant injunctive relief and attorneys' fees are for the Court, as well as Plaintiff's entitlement to relief under Cal. Bus. & Prof. Code § 17200 and the equitable relief thereunder.

## VII. ATTORNEYS' FEES [L.R. 16-4.5]

Plaintiff has incurred significant attorneys' fees and costs in pursuing its claims against Defendants. If Plaintiff prevails, it is entitled to recover its attorneys' fees for Defendants' violations of 15 U.S.C. §§ 1114 and 1125 because this is an exceptional case within the meaning of 15 U.S.C. § 1117(a). Indeed, the evidence

will show that Defendants deliberately and wantonly disregarded Plaintiff's rights and that their disregard for the law was so powerful they have engaged in contempt.

In addition, "Defendant[s] and [their] counsel went beyond the bounds of providing a vigorous defense." *Bellagio Jewelry, Inc. v. Croton Watch Co., Inc.*, 2008 WL 11339936, at *1 (C.D. Cal. Oct. 15, 2008). Their "bad faith discovery responses," "litigation and settlement tactics," "willful use of the [] mark after the cease-and-desist letter was received," and adjudicated discovery misconduct that Judge Kim found sanctionable, separately warrant an award of fees under 15 U.S.C. § 1117. *Id*. Plaintiff is further entitled to an award of its attorneys' fees and costs incurred in litigating the state law causes of action because they are "so intertwined [with the Lanham Act claims] that it is impossible to differentiate between work done on claims." *Gracie v. Gracie*, 217 F.3d 1060, 1069-70 (9th Cir. 2000); *Love v. Assoc. Newspapers, Ltd.*, 611 F.3d 601, 614 (9th Cir. 2010) (upholding award of attorneys' fees with respect to all claims, including non-Lanham Act claims, on grounds that the claims were inextricably intertwined).

Finally, Plaintiff is also entitled to its attorneys' fees for Defendants' violation of Cal. Bus. & Prof. Code § 17200. *Walker v. Countrywide Home Loans, Inc.*, 98 Cal.App.4th 1158, 1179 (2002) (If a plaintiff prevails in an unfair competition law claim, it may seek attorney fees as a private attorney general pursuant to Code of Civil Procedure section 1021.5.").

## VIII. ABANDONMENT OF ISSUES [L.R. 16-4.6]

No issues have been abandoned by the parties, aside from the Defendants' counterclaim that this Court dismissed on summary judgment.

Dated: June 20, 2025

**FOX ROTHSCHILD LLP**

*/s/ Michael D. Murphy*
Michael D. Murphy
Matthew Follett
Attorneys for Plaintiff and Counterclaim Defendant SHAKEY'S PIZZA ASIA VENTURES, INC. and Third-Party Defendants CINCO CORPORATION, PC INTERNATIONAL PTE LTD., and SPAVI INTERNATIONAL USA, INC.