**BLANK ROME LLP**
Todd M. Malynn (SBN 181595)
todd.malynn@blankrome.com
Arash Beral (SBN 245219)
arash.beral@blankrome.com
Jamison T. Gilmore (SBN 322100)
jamison.gilmore@blankrome.com
2029 Century Park East | 6th Floor
Los Angeles, CA 90067
Telephone:   424.239.3400
Facsimile:   424.239.3434

Attorneys for Defendants, Counterclaimants, and
Third Party Plaintiffs PCJV USA, LLC, PCI
TRADING LLC, POTATO CORNER, LA
GROUP, LLC, GK CAPITAL GROUP, LLC,
NKM CAPITAL GROUP, LLC and GUY
KOREN, and Defendants J & K AMERICANA,
LLC, J&K LAKEWOOD, LLC, J&K
OAKRIDGE, LLC, J&K VALLEY FAIR, LLC, J
& K ONTARIO, LLC, J&K PC TRUCKS, LLC,
HLK MILPITAS, LLC, and GK CERRITOS, LLC

# UNITED STATES DISTRICT COURT

# CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| SHAKEY'S PIZZA ASIA VENTURES, INC, a Philippines corporation, | Case No. 2:24-CV-04546-SB(AGRx) |
| Plaintiff, | *Hon. Stanley Blumenfeld, Jr.* |
| vs. | **THE PCJV USA PARTIES' OPPOSITION TO EX PARTE APPLICATION TO CONTINUE TRIAL DATE AND AMEND CMO** |
| PCJV USA, LLC, a Delaware limited liability company; PCI TRADING , LLC, a Delaware limited liability company; GUY KOREN, an individual; POTATO CORNER LA GROUP, LLC, a California limited liability company; NKM CAPITAL GROUP, LLC, a California limited liability company; J & K AMERICANA, LLC, a California limited liability company; J&K LAKEWOOD, LLC, a California limited liability company; J&K VALLEY FAIR, LLC, a California limited liability company; J & K ONTARIO, LLC, a California limited liability company; HLK MILPITAS, LLC, a California, limited liability company; GK CERRITOS, LLC, a California, limited liability company;  J&K PC TRUCKS, LLC, a California limited liability company; and, GK CAPITAL GROUP, LLC, a California | Complaint Filed:   May 31, 2024<br>Trial Date:          August 4, 2025 |

1  limited liability company and DOES 1 through 100, inclusive,

2                    Defendants.

3  _____

4  PCJV USA, LLC, a Delaware limited liability company; PCI TRADING LLC, a
5  Delaware limited liability company; POTATO CORNER LA GROUP LLC, a
6  California limited liability company; GK CAPITAL GROUP, LLC, a California
7  limited liability company; NKM CAPITAL GROUP LLC, a California limited liability
8  company; and GUY KOREN, an individual,

9                    Counter-Claimants,

10       v.

11  SHAKEY'S PIZZA ASIA VENTURES, INC, a Philippines corporation,

12                    Counter Defendant.

13  _____

14  PCJV USA, LLC, a Delaware limited liability company; PCI TRADING LLC, a
15  Delaware limited liability company; POTATO CORNER LA GROUP LLC, a
16  California limited liability company; GK CAPITAL GROUP, LLC, a California
17  limited liability company; NKM CAPITAL GROUP LLC, a California limited liability
18  company; and GUY KOREN, an individual,

19

20                    Third Party Plaintiffs,

21       v.

22  PC INTERNATIONAL PTE LTD., a Singapore business entity; SPAVI
23  INTERNATIONAL USA, INC., a California corporation; CINCO CORPORATION, a
24  Philippines corporation; and ROES 1 through 10, inclusive,

25                    Third Party Defendants.

26  _____

27

28

                                   1
THE PCJV USA PARTIES' OPPOSITION TO EX PARTE APPLICATION

# **TABLE OF CONTENTS**

I.    INTRODUCTION ........................................................................................1

II.    STATEMENT OF FACTS.........................................................................2

III.    ARGUMENT.............................................................................................4

    A.    The Application Does Not Comply with the CMO's Requirements ................................................................................5

        1.    There is No Required Chart Detailing Diligence .................5

        2.    The Application is Untimely .................................................6

        3.    The Application's Showing of Good Cause is Missing ........8

    B.    The Application Misstates the True Record ...................................9

    C.    Moving Parties are Misusing the *Ex Parte* Procedure by Seeking Relief From a Claimed "Emergency" They Created .....................10

    D.    Moving Parties' Violations of Court Orders Should Preclude the Relief They Are Seeking........................................................12

    E.    There is No Reason to Presume Any Prejudice to Counter-Defendants and Third Party Defendants Given SPAVI's Statement That it is Prepared to go to Trial .....................................13

    F.    PCJV USA Parties' Allegations Were Fully Disclosed by August 2024, if Not Earlier, and Did Not Expand What is at Issue For Trial—They are Based on the Same Common Nucleus of Facts ..14

    G.    PCJV USA Parties Would be Extremely Prejudiced if the *Ex Parte* Application were Granted and the Trial Moved ...........................15

IV.    CONCLUSION .......................................................................................16

# <u>TABLE OF AUTHORITIES</u>

<u>Page(s)</u>

**Cases**

*360 Destination Group Fl., LLC v. 360 DG, LLC*,
   Case No. 8:21-cv-02114-SPG-DFM, 2024 WL 3914498 (C.D. Cal. July 10, 2024)
   .................................................................................................... 10

*CarMax Auto Superstores Cal. LLC v. Hernandez*,
   94 F. Supp. 3d 1078 (C.D. Cal. 2015) ..................................................... 12

*Johnson v. Mammoth Recreations, Inc.*,
   975 F.2d 604 (9th Cir. 1992) ................................................................... 4

*Lumens Co. v. GoEco LED LLC*, Case No. SA CV  14-01286-CJC (DFMx),
   2016 WL 11185326 (C.D. Cal. June 2, 2016) ........................................ 4

*Markson v. CRST Int'l, Inc.*,
   Case No.: 5:17-cv-01261-SB-SP, 2020 WL 8994101 (C.D. Cal. Oct. 16, 2020).... 7

*Mission Power Eng'g Co. v. Cont'l Cas. Co.*,
   883 F. Supp. 488 (C.D. Cal. 1995) ........................................................ 11

*Zivkovic v. S. Cal. Edison Co.*,
   302 F.3d 1080 (9th Cir. 2002) ................................................................ 4

1

## I.    INTRODUCTION

Defendants, Counterclaimants, and Third Party Plaintiffs ("PCJV USA Parties") oppose the *Ex Parte* Application to continue the trial date and amend the CMO. The Application is the culmination of a pattern of noncompliance, delay and tactical maneuvering, which now seeks to upend the firm trial schedule set by this Court after months of inaction and missed deadlines. The PCJV USA Parties have, from the outset, diligently complied with every requirement of the CMO, participated in all required conferences, timely addressed discovery, and prepared for trial in reliance on the Court's repeated admonitions that the trial date is firm and will not be amended absent a timely and compelling showing of good cause.

First and foremost, the Application must be denied with prejudice because it omits the mandatory chart detailing the work that has been completed, what remains to be completed and why. In no uncertain terms, the Court states in the same order mandating this chart that: "***Failure to comply with the above requirements will result in the denial of the request with prejudice.***" Dkt. No. 29 at 4 (emphasis in original).

Second, the Application must be denied because it is untimely. The Application was filed: (1) six months after Plaintiff, Counter-Defendants, and Third Party Defendants ("Moving Parties") rejected efforts to amend the CMO, (2) approximately four months after changing strategy and requesting a stipulation to amend the CMO, and (3) nearly three months after the Magistrate Judge directed Moving Parties' to move for relief from the CMO and Moving Parties claimed that they "have an ex parte that [they]'re filing." Declaration of Arash Beral ("Beral Decl."), ¶ 37. Yet, no motion or application was filed after several months of discussions contemplating amending the CMO.

Further, the Application should be denied because it is not supported by a legitimate showing of diligence in litigating this case. Instead, the record demonstrates that Moving Parties repeatedly failed to meet discovery deadlines,

neglected to serve timely expert disclosures, ignored opportunities to confer, and disregarded Orders and local rules. Moving Parties' belated attempt to "reset" the litigation schedule—after waiving key deadlines and failing to pursue discovery or expert designations—would unfairly prejudice the PCJV USA Parties, who have invested significant resources in preparing for the August 2025 trial date and face ongoing harm under a preliminary injunction that Moving Parties have leveraged to disrupt PCJV USA Parties' business relationships and revenues.

PCJV USA Parties would be substantially prejudiced if the trial date were moved. PCJV USA Parties' trial counsel have cleared their calendars in reliance on the current schedule, and any continuance would cause substantial prejudice, not only due to the preliminary injunction, but also given the health concerns of lead counsel and the scheduling of numerous other complex trials in the months following the current trial date. Moving Parties' Application is untimely and unsupported, and granting it would reward a pattern of neglect and gamesmanship, undermine the integrity of the Court's Orders, and inflict further harm on the PCJV USA Parties.

## II.  STATEMENT OF FACTS

The concurrently-filed Beral Decl. sets forth all the relevant facts and documents the Court may need to deny the Application with prejudice. The Complaint here was filed on May 31, 2024, and the trial was set for August 4, 2025, pursuant to a CMO that the Court repeatedly emphasized would not be amended absent a timely and compelling showing of good cause. The PCJV USA Parties have consistently complied with all deadlines and requirements set forth in the CMO, including participation in conferences, timely service and response to discovery, and preparation of detailed factual summaries and disclosures.

From the outset, counsel for the PCJV USA Parties communicated their positions to Moving Parties' counsel, including the need for all relevant transactional documents and the issue of defense and indemnity from Cinco. Despite repeated

THE PCJV USA PARTIES' OPPOSITION TO EX PARTE APPLICATION

follow-ups, Moving Parties' counsel failed to respond to requests regarding disclosures and other scheduling matters. The PCJV USA Parties timely executed Rule 4 waivers, participated in meetings of counsel, and provided comprehensive input for the Joint Rule 26 Report, including disclosure of their claims and positions (all before they filed a responsive pleading in the case).

Moving Parties and their counsel repeatedly failed, however, to meet their obligations under the CMO and the Federal Rules. This includes, among other things:

- Serving untimely document demands after the deadline for written discovery had passed;
- Failing to designate expert or rebuttal expert witnesses by the deadlines;
- Not taking depositions (other than an expert deposition);
- Failing to comply with discovery orders, including a March 12, 2025 Magistrate Judge's Order to produce documents by April 11, 2025;
- Failing to participate in required pretrial activities, such as exchanging jury instructions, verdict forms, and motions *in limine*, and engaging in timely pretrial meet and confer sessions.

Back on November 22, 2024, it was Plaintiff who filed a First Amended Complaint adding new claims and parties without leave of Court. The PCJV USA Parties promptly sought clarification from the Court. The Court denied their application but noted that any amendment to the schedule would require a properly supported request. Moving Parties' counsel did not pursue a timely stipulation or motion to amend the CMO at that time. Throughout the litigation, Moving Parties' counsel failed to comply with discovery obligations, resulting in multiple proceedings before the Magistrate Judge and a motion for sanctions under Rule 37. Despite agreements and Court Orders, Plaintiff did not produce required documents within the ordered timeframe, leading to further delay and prejudice to the PCJV USA Parties.

THE PCJV USA PARTIES' OPPOSITION TO EX PARTE APPLICATION

After weeks of missed deadlines, Moving Parties' counsel belatedly proposed to amend the CMO and continue the trial date, seeking to reset all deadlines, including those already waived. The PCJV USA Parties, having relied on the Court's admonitions and Moving Parties' prior refusal to agree to any extension, declined to consent to a wholesale revision of the schedule, citing the prejudice to their clients and the integrity of the Court's Orders.

The record reflects a consistent pattern of neglect, noncompliance, and tactical delay by Moving Parties and their counsel, including failure to meet deadlines, disregard for Court Orders, and attempts to shift the burden of their inaction onto the PCJV USA Parties. Moving Parties' belated request to continue the trial and amend the CMO is unsupported by any legitimate showing of diligence or necessity.

In short, the PCJV USA Parties have acted diligently and in good faith throughout this litigation, while Moving Parties have failed to comply with their obligations and now seeks to upend the firm trial schedule to the detriment of PCJV USA Parties. The facts demonstrate that Moving Parties' request for a continuance and amendment of the CMO is unwarranted and would result in substantial prejudice to the PCJV USA Parties.

## III.  ARGUMENT

"The party seeking to modify the deadlines in a case management order bears the burden of establishing good cause." *Lumens Co. v. GoEco LED LLC*, Case No. SA CV  14-01286-CJC (DFMx), 2016 WL 11185326, at *2 (C.D. Cal. June 2, 2016) (citing *Zivkovic v. S. Cal. Edison Co.*, 302 F.3d 1080, 1087-88 (9th Cir. 2002)) (denying motion to modify scheduling order). To show good cause, a party must provide specific, detailed, and non-conclusory reasons for the amendment, including a showing of diligence in pursuing the litigation. *Johnson v. Mammoth Recreations, Inc.*, 975 F.2d 604, 609 (9th Cir. 1992). Courts also consider the existence or degree of prejudice to the party opposing the modification. *Id.*

THE PCJV USA PARTIES' OPPOSITION TO EX PARTE APPLICATION

**A.    The Application Does Not Comply with the CMO's Requirements**

The CMO plainly provides that its deadlines "will *not* be continued absent a timely showing of good cause." Dkt. No. 29 at 1. Good cause, the CMO makes clear, requires a showing of diligence "from the outset of the case" and requires the completion and filing of a specific chart detailing all discovery and significant events from the outset of the case. *Id.* at 1, 4. The Application fails to comply.

**1.    There is No Required Chart Detailing Diligence**

On September 6, 2024, the Court issued the CMO after counsel for all parties held their early meeting of counsel, including before appearances were made on both sides by PCJV USA Parties and Third Party Defendants. The Court issued the CMO based on the jointly filed Rule 26(f) report, which, in detail:

(a) disclosed six years of prior litigation and discovery on the same contracts at issue in this case that resolved control of the Potato Corner USA franchise system and resulted in a settlement under which Defendants acquired from then-plaintiffs Cinco and PCI all of their interests in Potato Corner USA as well as all of their licensing rights and obligations under those contracts;

(b) disclosed the anticipated and necessary joinder of Cinco, PCI and the other Moving Parties in whose name Potato Corner marks have been registered in the U.S. and in whose name SPAVI is trying to take over and run Potato Corner USA after 100% of that business was sold to PCJV USA Parties;

(c) disclosed the limited additional discovery, if any, counsel for all parties anticipated to adjudicate all trademark issues related to Potato Corner USA, including claims for declaratory relief, infringement, and breach of common law and contractual obligations related thereto; and

(d) disclosed anticipated witnesses and documents counsel may use or call at trial related to potential liability arising from who has superior rights, whether those rights can be enforced against the other side, and any recoverable damages.

In short, the Rule 26(f) report disclosed that PCJV USA Parties' anticipated counterclaims and third party complaint would track Plaintiff's complaint in that both sides seek declaratory relief based on the same contracts in the state court action plus SPAVI's 2022 purchase agreement and Defendants' 2024 settlement with the "Cinco Parties." The Application concedes that the jointly filed Rule 26(f) report in August 2024 was accurate—that Defendants' pleading, joinder of parties and legal theories

5

are based on the same evidence and nucleus of operative facts as SPAVI's pleading—when they colorfully claim that Defendants' pleading, "[a]t its core,…alleges claims hopelessly tangled with SPAVI's claims against Defendants;…."

After the scheduling conference, at which the Court thoroughly went through anticipated issues, joinder of parties and deadlines, the Court issued the CMO, which (i) provided more time to complete discovery than the Court's published guidelines for trademark cases when the parties opt not to try the case before a Magistrate on a longer schedule, and (ii) clearly and unmistakably provided notice to counsel for all parties that a specific chart provided in the CMO must be completed and filed with the Court as part of any request to modify any specified deadline or to continue the trial. Dkt. No. 29 at 4. On the same page below the chart, which is set out below, the CMO emphasizes in what appears to be 16 pt font: "***Failure to comply with the above requirements will result in the denial of the request with prejudice.***" *Id.*

| Completed Work | | | |
|---|---|---|---|
| **Date** | **Pty** | **Event** | **Explanation** |
| __/__/__ | Π | Complaint | |
| __/__/__ | Δ | Answer | |
| __/__/__ | Π | Initial Disclosures | |
| __/__/__ | Δ | Initial Disclosures | |
| __/__/__ | Π | Interrog., RFPs, RFAs (Set #1)[2] | |
| __/__/__ | Δ | Interrog., RFPs, RFAs (Set #1) | |
| __/__/__ | Π | Smith Depo | |
| **Remaining Work[3]** | | | |
| __/__/__ | Π | Jones Depo | Detail: (1) why it was not already done; (2) prior efforts to complete it; and (3) why the amount of time requested is necessary. |

The Application fails to provide the mandatory chart.

### 2.    The Application is Untimely

The Application's request for a continuance is untimely because the CMO has been in place since last September and discovery has been closed for more than 15

weeks. *See Markson v. CRST Int'l, Inc.*, Case No.: 5:17-cv-01261-SB-SP, 2020 WL 8994101, at *1 (C.D. Cal. Oct. 16, 2020) (Blumenfeld, J.) (finding a motion to modify a CMO untimely when it "had been in place for more than four months, and discovery is already well under way."). Opposing counsel even alerted the Magistrate Judge on April 4, 2025 of his intent to bring this very "ex parte" Application but did not bring it until June 26, 2025, 83 days later. Beral Decl., ¶ 37.

SPAVI, the buyer of alleged superior trademark rights from the state-court plaintiff/seller Cinco, had its opportunity to conduct whatever discovery it felt necessary from the outset of discovery. Further, after SPAVI answered the fully telegraphed Counterclaim on March 13, 2025 (Dkt. No. 129) it could have moved for a continuance, but it did not. Rather it waited until after the nonexpert discovery deadline, expert discovery deadline, discovery motion deadline, non-discovery motion deadline, settlement conference deadline, and first set of trial filings deadline passed. *See* Dkt. No. 29 at 2. The parties have been vigorously preparing for trial. SPAVI's failure to timely bring this *Ex Parte* Application should not be rewarded with a continuance of trial after critical dates have passed.

The Counter-Defendants and Third Party Defendants also failed to timey seek a continuance. They, too, were obligated to promptly seek relief or comply with the CMO deadlines in preparation for trial after they appeared in this case on April 15, 2025. Counsel for Counter-Defendants and Third Party Defendants, who was and is also Cinco's and SPAVI's counsel, has known of the PCJV USA Parties' claims against the SPAVI parties, including Cinco since June 4, 2024, within days of the Complaint's filing on May 31, 2024. Beral Decl. ¶ 2, Exh. A. Further, after refusing to meet and confer with PCJV USA Parties in December 2024 and into January 2025 regarding the CMO and rejecting any continuance in connection with requested discovery extensions, Beral Decl. ¶ 19, counsel for the first time expressed on February 28, 2025 that the CMO should be amended; however, by that time

circumstances both in the case (missed deadlines) and in connection with the case (lost revenue from 19 third party franchisees with whom SPAVI tortiously interfered by allegedly terminating their Potato Corner rights) had substantially changed. Beral Decl., ¶ 27.

At *no* point did PCJV USA Parties' counsel agree to a CMO amendment. Beral Decl. ¶¶ 27, 30-32, 34-37. Likewise, the Magistrate Judge on April 4, 2025 made clear that she had no authority to continue the trial or any deadlines, and that relief should be requested from the District Court, if desired. Beral Decl. ¶ 37. Yet, like SPAVI, Counter-Defendants and Third Party Defendants waited months to file this *Ex Parte* Application—letting deadline after deadline pass. The Counterclaim/Third Party Complaint was filed over four months ago (on February 20, 2025). This untimely Application should be denied, especially considering that trial filings have already begun, including the preparation and filing of exhibit lists, witness lists, and memoranda of contentions of law and fact. *See* Dkt. Nos. 197-201.

### 3.    The Application's Showing of Good Cause is Missing

The CMO is clear that good cause for a continuance will not be found unless there is a "specific, detailed,…and non-conclusory showing of diligence from the outset of the case, describing: (i) all relevant work previously done (including when each item was completed), (ii) all relevant work that remains to be done, (iii) why the remaining work could not previously have been done (including efforts made to complete each remaining item), and (iv) why the amount of time requested is needed to complete the remaining work." Dkt. No. 29 at 1. Moving Parties have failed to meet this burden. Their application fails to factually specify:

- That no document requests, no requests for admission, no interrogatories, no deposition notices, no non-expert depositions, no expert designations and no dispositive motions were timely served or filed by SPAVI;

- What discovery, if any, beyond that which was produced in the state-court action and provided with initial disclosures was allegedly still needed in this case before or after the PCJV USA Parties filed their Counterclaim/Third

8

Party Complaint in light of the fact that it essentially is a reverse image or reflection of SPAVI's complaint and "[a]t its core, the Third Party Complaint alleges claims hopelessly tangled with SPAVI's claims against Defendants;"

- Why Moving Parties did not file the *Ex Parte* Application earlier;

- Why Moving Parties did not file a Motion to Dismiss instead of Answers;

- The grounds, if any, upon which they supposedly could seek to file a Rule 12 motion and when those grounds were first discovered or could have been discovered and relief sought, if necessary, to bring such a motion;

- The grounds, if any, upon which they supposedly could seek to file a Rule 56 motion and when those grounds were first discovered or could have been discovered and relief sought, if necessary, to bring such a motion or why they do not have evidence to support a summary judgment motion; or

- The reasons or facts supporting the amount of time desired or claimed necessary to prepare for trial, including how long it would take to get specifically identified additional discovery completed.

The Application wholly lacks a significant amount of necessary information required by this Court's CMO for a continuance. Moving Parties had full notice of the CMO requirements for a continuance, and they have not complied with those requirements. Accordingly, their Application should be denied. Dkt. No. 29 at 1, 4.

## B.    The Application Misstates the True Record

As set forth in the Beral Decl., the Moving Parties misstate the true record. They deflect from their lack of diligence in litigating the case and failure to timely seek relief from the CMO. They misstate the true record in raising due process concerns for the first time on the eve of trial after joint exhibit and witness lists and memoranda of law and fact have been filed.

Given the failure to comply with the CMO after a fulsome joint Rule 26(f) report and initial disclosures were served after six years of state court litigation on the same contracts creating/governing the Potato Corner USA franchise system, and the failure to articulate what documents, if any (to which the Moving Parties did not seek in discovery), the Third Party Defendants supposedly did not have in their possession relating to either side's claims stemming from their alleged superior rights to use or

control the U.S. Potato Corner marks, there is no *bona fide* due process concern. The time for raising *bona fide* case management issues was months ago.

Moreover, there was never an agreement to continue the trial or any CMO deadline. There were efforts by PCJV USA Parties to meet and confer with counsel for the Moving Parties on the CMO in December 2024 and into January 2025, which initially were met with silence and then expressly rebuffed. Beral Decl., ¶¶ 14, 19. After SPAVI missed the deadline to timely propound discovery and then on the eve of missing a deadline to designate expert witnesses or to arrange for a meeting regarding an MSJ, it expressed an interest in a trial continuance and modifying the CMO. Beral Decl., ¶¶ 27-29. It did so for the first time on February 28, 2025, before a hearing for contempt sanctions, and raised the issue again during an in-person meet and confer a few days later on March 5. Beral Decl. ¶ 30.

The record is also clear that neither SPAVI nor the Third Party Defendants have identified documents relevant to this case not in their possession, whether they were already produced in the state-court litigation, attached to Defendants' supplemental initial disclosures, or being suppressed and not produced in response to PCJV USA Parties' discovery requests. At this stage in the proceeding, there is no due process concern in having Third Party Defendants stand next to SPAVI during trial to defend SPAVI's allegations and denial of liability on all of their parts in breaching fiduciary and contractual obligations and aiding and abetting and tortiously interfering with the same, as well as the usurping franchisee relationships.

## C.    Moving Parties are Misusing the *Ex Parte* Procedure by Seeking Relief From a Claimed "Emergency" They Created

"An *ex parte* application for relief 'must show why the moving party should be allowed to go to the head of the line in front of all other litigants and receive special treatment.' *360 Destination Group Fl., LLC v. 360 DG, LLC*, Case No. 8:21-cv-02114-SPG-DFM, 2024 WL 3914498, at *1 (C.D. Cal. July 10, 2024) (citing *Mission*

*Power Eng'g Co. v. Cont'l Cas. Co.*, 883 F. Supp. 488, 492 (C.D. Cal. 1995)). It is not enough to claim that the other side is a "wrongdoer." *Mission Power*, 883 F. Supp. at 493. "To justify *ex parte* relief, 'the evidence must show that the moving party's cause will be irreparably prejudiced if the underlying motion is heard according to regular noticed motion procedures.' *360 Destination Group Fl., LLC,* 2024 WL 3914498, at *1. "'Lawyers must understand that filing an ex parte motion . . . is the forensic equivalent of standing in a crowded theater and shouting, 'Fire!' There had better be a fire.'" *Id.* Even if procedurally proper, a plaintiff "would not be able to meet its burden to justify *ex parte* relief…[if] the crisis requiring *ex parte* relief did not occur by any faut of its own (except excusable neglect)." *Id.* at *2.

Moving Parties' *Ex Parte* Application fails this fundamental requirement of not being responsible for the alleged need to bypass "regular motion procedures." Since the outset of the case and by no later than the early meeting of counsel and jointly filed Rule 26(f) report, Moving Parties have been on notice of PCJV USA Parties' anticipated claims and joinder of Third Party Defendants if they were not already joined as necessary/indispensable parties. There is no reason to believe Moving Parties were not prepared to respond when PCJV USA Parties filed their Counterclaim/Third Party Complaint on February 20, 2025. *See* Dkt. No. 108. Even considering it takes a few days to prepare a motion to continue trial, that still does not justify waiting over four months, including two months after their appearance, on the eve of trial after trial filings have been made and others are underway. Nothing stopped Moving Parties from filing a fully noticed motion for a continuance, including as directed by the Magistrate Judge.

Moving Parties' argument that an *ex parte* continuance is proper because the Third Party Defendants' deadline to respond to the Third Party Complaint was April 15, 2025 misses the mark. They do not explain why they could not have filed sooner or why Third Party Defendants could not have filed a noticed motion when or shortly

THE PCJV USA PARTIES' OPPOSITION TO EX PARTE APPLICATION

after they appeared—or even after a month in mid-May to have this motion heard on normal notice before now. Moving Parties' failure to avail itself of ordinary noticed motion practice despite having time to do so, and failure to explain why it could not file sooner, requires a denial of the *Ex Parte* Application.

### D.    Moving Parties' Violations of Court Orders Should Preclude the Relief They Are Seeking

Courts should only help those with clean hands who properly seek relief before violating court rules. *See CarMax Auto Superstores Cal. LLC v. Hernandez*, 94 F. Supp. 3d 1078, 1087-88 (C.D. Cal. 2015). Here, Moving Parties are seeking relief from Court Orders they have repeatedly violated and ignored after violating prior Court Orders and also after being expressly admonished by the Court when doing so. Among other things:

a.    Moving Parties failed to meet joint filing deadlines;

b.    SPAVI failed to comply with the Magistrate Judge's March 12, 2025 Discovery Order (currently subject to Rule 37 motion);

c.    Moving Parties did not timely propound any discovery, did not designate any expert witness, and did not even serve a notice the deposition on Defendants' expert or timely request financial records in his report;[1]

d.    Moving Parties have to reasonably meet and confer on anti-SLAPP fees and contempt fees;

e.    Cinco failed to attend any of the mandatory settlement conferences undermining the ability to evaluate and resolve the case;

f.    Moving Parties failed to exchange jury instructions/verdict forms by May 23, 2025 (or at all) as required;

g.    Moving Parties did not object to PCJV USA Parties' jury instructions/verdict forms by May 27, 2025 (or at all) as required;

h.    Moving Parties did not meet and confer by June 6, 2025, regarding the pretrial documents under Fed. R. Civ. Proc. 16 as required;

i.    Moving Parties did not serve by June 18, 2025 a letter supporting the motions *in limine* they subsequently said they intend to bring or submit their portion of those motions by June 23, 2025 as required;

---

[1] Pursuant to a *sua sponte* request by the Magistrate Judge, Defendants voluntarily produced financial records and their damages expert for deposition.

12

j.   Moving Parties filed a joint exhibit list unilaterally populating the "date admitted" column and some of the "date identified" column over Defendants' objection as that being contrary to the CMO; and

k.   Moving Parties failed to give PCJV USA Parties sufficient notice in this *Ex Parte* Application of when PCJV USA Parties' opposition was due in violation of the August 9, 2024 Standing Order (Dkt. No. 25 at 16).

**E.    There is No Reason to Presume Any Prejudice to Counter-Defendants and Third Party Defendants Given SPAVI's Statement That it is Prepared to go to Trial**

Even if Counter/Third Party Defendants were in the case earlier, SPAVI itself failed to meet the deadlines to conduct percipient discovery or to bring a dispositive motion under Rule 12 or Rule 56, so there is no reason to believe that things would have been any different had the Counter/Third Party Defendants been named in the case earlier. If they did not already have all the relevant documents but documents were somehow needed from PCJV USA Parties, SPAVI would have timely served document requests:

- If depositions were needed after six years of state court litigation and having full control over all the documents related to the 2022 purchase agreement, including drafts, correspondence, due diligence from Cinco, committee or board minutes, *etc.*, SPAVI would have timely noticed and taken depositions.

- If SPAVI truly viewed its own pleading as more than for declaratory relief, SPAVI could have designated expert witnesses, not only on damages or disgorgement, but also on consumer association and perception. If there truly were Rule 12 or 56 issues lurking, SPAVI would have filed such motions.

Put simply, there is no reason to presume any prejudice or inability for the Third Party Defendants to stand next to SPAVI at trial and defend their actions in purporting to terminate PCJV USA Parties' pre-existing rights to use and control the U.S. Potato Corner trademarks after they were enjoined from doing so by a state court for years.

13

**F.** **PCJV USA Parties' Allegations Were Fully Disclosed by August 2024, if Not Earlier, and Did Not Expand What is at Issue For Trial—They are Based on the Same Common Nucleus of Facts**

Moving Parties' *Ex Parte* Application fails to state that they knew of PCJV USA Parties' claims as early as June 4, 2024, but no later than August 2024. Beral Decl. ¶¶ 2-7. Within a few days of SPAVI blindsiding PCJV USA Parties with a federal Complaint while a tolling agreement was in place after Cinco settled with PCJV USA Parties, defense counsel emailed counsel for SPAVI and Third Party Defendants and plainly telegraphed for them PCJV USA Parties' defenses, counterclaims and third party claims. Beral Decl. ¶ 2. During the early meeting of counsel in August 2024, PCJV USA Parties' counsel likewise informed counsel for SPAVI and Third Party Defendants why Cinco and the other Third Party Defendants would be joined and why they would be sued together with SPAVI in this case. Beral Decl. ¶ 6-7. Moving Parties' knowledge of PCJV USA Parties' claims well in advance of the filing of the Counterclaim/Third Party Complaint belies their claim that they had inadequate time move for a continuance. Moving Parties should have moved for a continuance as soon as they responded to the Counterclaim/Third Party Complaint given that SPAVI had not already filed for such relief.

Other than with regard to damages, for which PCJV USA Parties have produced financial records and designated an expert, the cases are basically mirror images of each other. Plaintiff and PCJV USA Parties claim superior trademark rights and seek declaratory relief. Plaintiff seeks damages for PCJV USA Parties' use of intellectual property. PCJV USA Parties seek damages for Moving Parties' breach of fiduciary duty, aiding and abetting breach of fiduciary duty, breach of contract, inducing breach of contract, and tortious interference with existing relationship and prospective economic advantages—all stemming from the alleged 2022 acquisition and purported "at-will" termination of PCJV USA Parties' superior trademark rights and disruption

14

of relationships. PCJV USA Parties' actual filing of a responsive pleading that joined Plaintiff's Complaint and included affirmative defenses and affirmative claims arising from the same nucleus of facts and based on the same evidence does not factually expand the case one iota in terms of liability—it just adds alternative legal theories for the jury to consider in providing PCJV USA Parties' the relief they deserve.

### G.    PCJV USA Parties Would be Extremely Prejudiced if the *Ex Parte* Application were Granted and the Trial Moved

When the Court granted a preliminary injunction and set a $100,000 bond based on an August 4, 2025 trial date, the Court provided for relief covering the estimated cost of changing signage and other out-of-pocket expenses, but did not provide relief for loss of revenue or goodwill—damages PCJV USA Parties are incurring every day they cannot use the U.S. Potato Corner marks. Putting aside the adequacy of the bond, that was the *quid pro quo*—a $100,000 bond based on a timely August 4, 2024 trial.

PCJV USA Parties would be extremely prejudiced if that changed now. PCJV USA Parties should neither lose their promised day in court, nor the case by attrition. But for SPAVI's tortious interference, there is no termination, no preliminary injunction motion, not even any cease-and-desist noise. Moving Parties are in the middle of usurping Potato Corner USA and trying to bankrupt PCJV USA Parties before having to defend themselves in court after unilaterally monetizing the U.S. franchise system that PCJV USA Parties built.

PCJV USA Parties are prepared to go to trial as should be each of the Moving Parties, who are represented by the same counsel that litigated and settled the state court action and that has prosecuted this action from the outset. PCJV USA Parties have already disclosed their expert, witness list, exhibit list, contentions of law and fact, motion *in limine*, *etc.* Moving Parties were not entitled to those disclosures unless they were going to trial per the CMO.

/ / /

**THE PCJV USA PARTIES' OPPOSITION TO EX PARTE APPLICATION**

Moreover, PCJV USA Parties' counsel have cleared their calendars for August as instructed by the Court. They cannot fairly back fill that time with other work, let alone dislodge other work down the road to redo trial preparation and block off another month for trial at Moving Parties' convenience. Key witnesses are already traveling to Los Angeles, not just from elsewhere in California, but from Philippines in August to potentially testify if the case does not settle before trial starts. Beral Decl., ¶ 45.

SPAVI is touting in the press that it is actively creating a franchise system to replace PCJV USA, LLC as the U.S. franchisor of Potato Corner USA. Beral Decl., ¶ 43, Exh. L. SPAVI is trying to directly compete against PCJV USA Parties' business, and claiming the 19 franchisee locations as its own. PCJV USA Parties need relief as soon as possible. There is no due process concern in maintaining the trial date and related dates that all parties have had ample notice of. Moreover, if there were any due process concern, it was plainly waived months ago.

## IV.    CONCLUSION

For all of the foregoing reasons, the Application should be denied with prejudice.[2]

---

[2] The PCJV USA Parties have contemplated making a motion to the Court to dismiss Plaintiff's Complaint and to strike Counter-Defendants/Third Party Defendants' Answer for lack of prosecution and repeated violations of Court Orders. The PCJV USA Parties' welcome the Court to act *sua sponte* to notice an OSC if it believes the record of the SPAVI Parties' violations potentially warrants such relief.

THE PCJV USA PARTIES' OPPOSITION TO EX PARTE APPLICATION

DATED: June 30, 2025          **BLANK ROME LLP**

By: */s/ Todd M. Malynn*
Todd M. Malynn
Arash Beral
Jamison T. Gilmore
Attorneys for Defendants, Counterclaimants,
and Third Party Plaintiffs PCJV USA, LLC,
PCI TRADING LLC, POTATO CORNER,
LA GROUP, LLC, GK CAPITAL GROUP,
LLC, NKM CAPITAL GROUP, LLC and
GUY KOREN, and Defendants J & K
AMERICANA, LLC, J&K LAKEWOOD,
LLC, J&K OAKRIDGE, LLC, J&K
VALLEY FAIR, LLC, J & K ONTARIO,
LLC, J&K PC TRUCKS, LLC, HLK
MILPITAS, LLC, and GK CERRITOS,
LLC

**THE PCJV USA PARTIES' OPPOSITION TO EX PARTE APPLICATION**

## <u>CERTIFICATE OF WORD COUNT</u>

The undersigned, counsel of record for Koren Parties, certifies that this brief contains 5,296 words, which complies with the word limit of L.R. 11-6.1.

Dated: June 30, 2025

_/s/ Todd M. Malynn_
Todd M. Malynn

THE PCJV USA PARTIES' OPPOSITION TO EX PARTE APPLICATION

## <u>CERTIFICATE OF SERVICE</u>

The undersigned certifies that on June 30, 2025, the foregoing document was electronically filed with the Clerk of the Court for the United States District Court, Central District of California, using the Court's Electronic Case Filing (ECF) system.  I further certify that all participants in the case are registered CM/ECF users and that service will be accomplished by the CM/ECF system.

I certify under penalty of perjury that the foregoing is true and correct. Executed on June 30, 2025.


By:   /s/AJ Cruickshank

**THE PCJV USA PARTIES' OPPOSITION TO EX PARTE APPLICATION**