**BLANK ROME LLP**
Todd M. Malynn (SBN 181595)
todd.malynn@blankrome.com
Arash Beral (SBN 245219)
arash.beral@blankrome.com
Todd M. Malynn (SBN 181595)
jamison.gilmore@blankrome.com
2029 Century Park East | 6th Floor
Los Angeles, CA 90067
Telephone:  424.239.3400
Facsimile:   424.239.3434

Attorneys for Defendants, Counterclaimants, and Third Party Plaintiffs PCJV USA, LLC, PCI TRADING LLC, POTATO CORNER LA GROUP, LLC, GK CAPITAL GROUP, LLC, NKM CAPITAL GROUP, LLC and GUY KOREN, and Defendants J & K AMERICANA, LLC, J&K LAKEWOOD, LLC, J&K OAKRIDGE, LLC, J&K VALLEY FAIR, LLC, J & K ONTARIO, LLC, J&K PC TRUCKS, LLC, HLK MILPITAS, LLC, and GK CERRITOS, LLC

# UNITED STATES DISTRICT COURT

# CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| SHAKEY'S PIZZA ASIA VENTURES, INC, a Philippines corporation,<br><br>Plaintiff,<br><br>vs.<br><br>PCJV USA, LLC, a Delaware limited liability company; PCI TRADING , LLC, a Delaware limited liability company; GUY KOREN, an individual; POTATO CORNER LA GROUP, LLC, a California limited liability company; NKM CAPITAL GROUP, LLC, a California limited liability company; J & K AMERICANA, LLC, a California limited liability company; J&K LAKEWOOD, LLC, a California limited liability company; J&K VALLEY FAIR, LLC, a California limited liability company; J & K ONTARIO, LLC, a California limited liability company; HLK MILPITAS, LLC, a California, limited liability company; GK CERRITOS, LLC, a California, limited liability company;  J&K PC TRUCKS, LLC, a California limited liability company; and, GK CAPITAL GROUP, LLC, a California | Case No. 2:24-CV-04546-SB(AGRx)<br><br>*Hon. Stanley Blumenfeld, Jr.*<br><br>**DECLARATION OF ARASH BERAL IN SUPPORT OF PCJV USA PARTIES' OPPOSITION TO EX PARTE APPLICATION TO CONTINUE TRIAL DATE AND AMEND CMO**<br><br>Complaint Filed:   May 31, 2024<br>Trial Date:            August 4, 2025 |

160850.00001/154448422v.1

**DECLARATION OF ARASH BERAL IN SUPPORT OF PCJV USA PARTIES' OPPOSITION TO EX PARTE APPLICATION TO CONTINUE TRIAL DATE AND AMEND CMO**

limited liability company and DOES 1 through 100, inclusive,

Defendants.

_____

PCJV USA, LLC, a Delaware limited liability company; PCI TRADING LLC, a Delaware limited liability company; POTATO CORNER LA GROUP LLC, a California limited liability company; GK CAPITAL GROUP, LLC, a California limited liability company; NKM CAPITAL GROUP LLC, a California limited liability company; and GUY KOREN, an individual,

Counter-Claimants,

v.

SHAKEY'S PIZZA ASIA VENTURES, INC, a Philippines corporation,

Counter Defendant.

_____

PCJV USA, LLC, a Delaware limited liability company; PCI TRADING LLC, a Delaware limited liability company; POTATO CORNER LA GROUP LLC, a California limited liability company; GK CAPITAL GROUP, LLC, a California limited liability company; NKM CAPITAL GROUP LLC, a California limited liability company; and GUY KOREN, an individual,

Third Party Plaintiffs,

v.

PC INTERNATIONAL PTE LTD., a Singapore business entity; SPAVI INTERNATIONAL USA, INC., a California corporation; CINCO CORPORATION, a Philippines corporation; and ROES 1 through 10, inclusive,

Third Party Defendants.

# DECLARATION OF ARASH BERAL

I, Arash Beral, declare as follows:

1. I am a partner at Blank Rome LLP, counsel of record for Defendants, Counterclaimants, and Third Party Plaintiffs. I have personal knowledge of the facts set forth in this declaration, and if called upon to testify under oath, I could and would testify competently thereto.

### Notice of Defendants' Claims, Defenses and Joinder of Parties

2. Attached hereto as **Exhibit A** is a true and correct copy of my email communications with Mr. Murphy from last year (from May 31, 2024, when the lawsuit was filed, following through that weekend and June 4, 2024). In those emails, I explained my position in detail (including Cinco's responsibility) while also commenting on the fact that we need to receive "all of the Shakey's Pizza Asia-Cinco transactional documents" and why.

3. Attached hereto as **Exhibit B** is a true and correct copy of my email to Mr. Murphy following up on Mr. Murphy's silence on our request for defense and indemnity. I asked: "Are the Cinco Parties going to engage my firm to represent the defendants? I would appreciate a response, even if it's a no. Otherwise, I will get the defendants to engage us and we will move forward accordingly, including likely agreeing to accept service. Please advise."

4. On July 30, 2024, after the Cinco Parties declined our demand, we received Rule 4 waivers from Mr. Murphy's office. We signed and returned them.

5. On August 21, 2024, we participated in a meeting of counsel with opposing counsel before we or our clients appeared in the lawsuit.

6. On August 23, 2024, opposing counsel forwarded to us a draft Rule 26 report, which listed HLK Milpitas and GK Cerritos as defendants (even though those parties had not been named in the Complaint). Attached hereto as **Exhibit C** is opposing counsel's August 23 email alongside their draft Rule 26 report.

160850.00001/154448422v.1

2

DECLARATION OF ARASH BERAL IN SUPPORT OF PCJV USA PARTIES' OPPOSITION TO EX PARTE APPLICATION TO CONTINUE TRIAL DATE AND AMEND CMO

7. I deleted the references to the two unnamed parties and returned our portion of the Rule 26 report including a 5-6 page summary of the facts, our position, meanwhile also disclosing documents and witnesses (*a la* initial disclosures). We disclosed and did not conceal that our clients have claims of their own to assert, including against Cinco, which Defendants viewed as a necessary or indispensable party. *See* Dkt. No. 27.

8. On September 6, 2024 (and, again, before Defendants had responded to the Complaint), we appeared before the Court for a Mandatory Scheduling Conference. The Court remarked that it appreciated our detailed factual summary of the case and our positions and scheduled the trial date much later than it otherwise would have given the anticipated complexity of the case. The Court also made clear that the trial date is firm and the CMO will not be amended without a timely showing of good cause. *See* Dkt. No. 29.

9. While the Joint Rule 26 Report disclosed expected witnesses and documents and offered different positions on the topic of initial disclosures, the Case Management Order did not address it nor did the topic come up at the Mandatory Scheduling Conference. On September 30, 2024, I followed up with opposing counsel asking to discuss a deadline for serving initial disclosures. I did not hear back and the matter was not discussed any further. Attached hereto as **Exhibit D** is a true and correct copy of my September 30, 2024 email to opposing counsel where I said: "It just occurred to me that we did not discuss the deadline for serving initial disclosures and it did not come up at the Scheduling Conference either or subsequent order …"

10. Also on September 30, 2024, we filed our motion to dismiss. In it, we included arguments that Cinco and PCIPL must be joined as indispensable parties, after meeting and conferring a week before on this subject. *See* Dkt. No 41.

/ / /

11. On October 18, 2024, we opposed SPAVI's preliminary injunction motion. In it, we included documents and testimony supporting Defendants' positions. *See* Dkt. No. 48.

12. On November 22, 2024, SPAVI filed its First Amended Complaint adding new claims and parties (HLK Milpitas and GK Cerritos) – which opposing counsel clearly knew of as of August 23, at least (*see* ¶ 6 above and Exh. C) – without leave of Court.

13. On December 2, 2024, we filed an application with the Court (Dkt. No. 72) where we asked for an Order clarifying that the First Amended Complaint was improper to the extent that it added new claims and parties without leave of Court. The next day, Mr. Murphy sent an email to us, a true and correct copy of which is attached hereto as **Exhibit E**, claiming that he had not discovered the existence of HLK Milpitas and GK Cerritos until after November 19, 2024. This was patently false. *See* ¶ 6 above and Exh. C. Mr. Murphy also did not offer any stipulation to amend the CMO given the addition of the new claims and parties.

### SPAVI Parties' Failure to Timely Take Discovery and Refusal to Meet and Confer on a New CMO

14. On December 4, 2024, the Court denied Defendants' application (Dkt. No. 80) and stated in a footnote regarding upcoming deadlines: "To the extent the amendment prevents the parties from complying with the current deadlines despite their exercise of diligence, the Court will consider a properly supported request for a reasonable extension of the deadlines in the case management order." Based on this noted direction to timely submit a proper request for extension, we promptly reached out to Mr. Murphy with follow-up in December and into January about potentially modifying the CMO. *See* Murphy Decl., ¶ 7. Mr. Murphy did not respond to our meet and confer requests.

/ / /

15. On December 6, 2024, we served our first set of document demands and special interrogatories on Plaintiff.

16. On December 13, 2024, opposing counsel began to draft discovery requests. Based on fee records sent to us in this action and filed with the Court in connection with Plaintiff's prior fee requests, from the unredacted entries, we see that opposing counsel billed for "Draft and confer regarding discovery requests to PCJV" on December 13, 2024. *See* Dkt. No. 149 at 27.

17. On December 17, 2024, I invited opposing counsel to "take some depositions" and "do discovery." Attached hereto as **Exhibit F** is a true and correct copy of my December 17, 2024 email to opposing counsel.

18. On December 20, 2024, opposing counsel billed for "Revise and confer regarding draft correspondence to client regarding Koren's discovery requests." *See* Dkt. No. 149 at 28.

19. On January 8, 2025, opposing counsel asked us for an extension to respond to our discovery requests, which we served on December 6. At that time I followed up about a CMO extension agreement and was rebuffed by Mr. Murphy. Mr. Murphy responded: "Are you conditioning an extension on discovery on our client's agreement to amend the CMO?" He also stated: "Kenny and I do not have time to set up a meeting with our client to discuss this." Mr. Murphy cited the fires and evacuations as the reason for the extension request. I granted the request without conditions after I got heavy pushback on a CMO extension agreement. (Interestingly, we see in the fee entries that opposing counsel was clearly working and billing on this case on January 8 and January 9, 2025, contrary to his representation, *see* Dkt. No. 149 at 37.)

20. On January 10, 2025, Mr. Murphy billed for "review and revise discovery requests." *See* Dkt. No. 149 at 37.

/ / /

21. On January 16, 2025, opposing counsel asked for a further discovery extension to respond to our document demands. We granted it.

22. On February 11, 2025, we served our second set of document demands and interrogatories.

23. On February 14, 2025, and without prior warning or responding to my request to set a mutual deadline for serving formal initial disclosures, opposing counsel served their initial disclosures, claiming that we "refused" to do so in return. I had to remind counsel that it was *me* who followed up about setting a deadline to serving initial disclosures back in September and that I had not heard back, but that we would prepare and serve our disclosures. Attached hereto as **Exhibit G** is a true and correct copy of my February 21, 2025 email to opposing counsel.

24. Also on February 14, 2025, opposing counsel served an untimely set of document demands. Based on the Court's CMO, February 11 was the deadline to serve written discovery requests since the nonexpert discovery deadline was set for March 14, 2025.

## SPAVI Parties' Untimely *Ex Parte* Application Follows SPAVI's Refusal to Produce Discovery

25. On February 20, 2025, we filed our Answer, Counterclaim, and Third Party Complaint. Nothing in that pleading expanded the scope of the case or was relying on any facts or evidence other than facts or evidence already or exclusively in SPAVI's control. Rather, based on the same facts and evidence, including the same contracts at issue in prior litigation over control of the Potato Corner USA franchise system, Defendants' responsive pleading joined SPAVI's allegations and asserted legal theories as defenses (*e.g.,* acquiesce, ratification, promissory estoppel, waiver, assignment in gross, naked license, unclean hands) and claims (*e.g.*, breach of fiduciary duty, adding and abetting breach of fiduciary duty, breach of contract, inducing breach of contract, interference with contractual relations, including PCJV

160850.00001/154448422v.1                                6

DECLARATION OF ARASH BERAL IN SUPPORT OF PCJV USA PARTIES' OPPOSITION TO EX PARTE APPLICATION TO CONTINUE TRIAL DATE AND AMEND CMO

USA's franchisee relationships, vendors and suppliers). Nothing in that pleading was a "surprise" to opposing counsel, as we had communicated Defendants' position from the outset of this case. Indeed, the *Ex Parte* Application fails to adequately identify anything "new" in that pleading that the SPAVI parties did not already know or do not already possess.

26. By in or about February 2025, SPAVI had succeeded in entering agreements with PCJV USA's third-party franchisees and interrupting PCJV USA's relationships with and revenues from them.

27. We were in Court on February 28, 2025. Before the hearing, Mr. Murphy signaled to me that he wanted to talk to me in the attorney conference room. He and I went into the conference room where he, for the first time after having ignored all of our CMO extension requests, made a proposal to extend the trial date and related deadlines. I told him that if he has a proposal for our clients to consider, then he should send it, but, I told him very unequivocally, that I doubt that the District Court would grant an untimely stipulation to amend dates and continue the trial at this point, especially after watching and witnessing the Court interact with other parties in other cases on this same subject. I proposed to Mr. Murphy a potential stay of the action pending the Ninth Circuit's ruling on our appeal (subject to client approval) and he emphatically said "no" to that proposal and left the room.[1]

---

[1] I believe it was because opposing counsel realized they had served discovery requests three days late and/or were unprepared to designate expert witnesses that they were now all of a sudden willing to agree to amend the CMO. Before that (while PCJV USA's third-party franchisees remained loyal to Defendants), opposing counsel ignored our requests to meet and confer on a CMO amendment and also emphatically derided us for conditioning discovery extensions on a CMO amendment. Before this February 28 meeting, I was under the belief that opposing counsel would never agree to amend the CMO and, therefore, we and our clients ultimately made the decision to proceed with the case without seeking a CMO amendment. The circumstances also had substantially changed. PCJV USA's third-party franchisees struck agreements with SPAVI. PCJV USA started losing revenue from the potential loss of its 19 third party franchisees. Anything we did at this point would come at a big cost and prejudice to our clients, and we would need client approval to enter any agreement to amend dates anyway.

28. February 28, 2025 was our "initial expert disclosure" deadline in the CMO. We served our updated disclosures and expert disclosures on that date. Opposing counsel did not serve anything. (Nor did opposing counsel serve a rebuttal expert disclosure on March 14, 2025.)

29. March 3, 2025 was the deadline for any party wishing to bring a summary judgment motion to arrange an in-person meeting per Dkt. No. 31. This date passed and no party made such request.

30. On March 5, 2025, Mr. Malynn and I attended an in-person conference at Mr. Murphy's office in Century City. Mr. Murphy brought up a CMO amendment. Mr. Malynn noted the change in circumstances (lost revenue from 19 third-party franchisees resulting from SPAVI's alleged termination of PCJV USA's right to continue using the U.S. Potato Corner trademarks) and corresponding need to hold the August 4, 2025 trial date. I told Mr. Murphy again that we would have to run any proposal he wished to make by our clients, but that I highly doubted the District Court would agree to amend the CMO at that late date.

31. Mr. Malynn had already met and conferred with Mr. Murphy regarding SPAVI's discovery responses and failure to produce any documents, and we were then engaging with the Magistrate Judge regarding SPAVI's failure to produce documents and discovery. On March 12, 2025, Magistrate Judge Rosenberg issued an Order directing SPAVI to comply with discovery requests and to begin its rolling production of documents the week of March 24, 2025 to be completed by April 11, 2025. *See* Dkt. No. 128. SPAVI did not produce any documents, at all, during this time period despite being ordered and acknowledging he could do so (*see* Dkt. No. 202-6 at p. 96 ["…and then I can begin our rolling production next week…"]; *id.* at p. 103 ["I can be able to represent as of a week before April 11th, the extent to which the majority, the substantial majority, substantial compliance and what is remaining to produce, you have it."]). All this led to further proceedings and a Rule 37 motion

for sanctions, which Magistrate Judge Rosenberg took off calendar for a period of time but which was ultimately heard this past Friday, June 28, 2025.

32. At the March 12, 2025 hearing with Magistrate Judge Rosenberg, the transcript of which is attached at Dkt. No. 202-6, there is a statement at page 97 attributed to Mr. Malynn but which was really Mr. Murphy speaking. We alerted the Magistrate Judge to this issue on Friday and we understand that the Court is going to address this issue. In any event, Mr. Murphy does not deny that the words spoken at lines 7-14 on page 97 are his, not Mr. Malynn's. There, Mr. Murphy claimed that we are going to get a new scheduling order, to which I responded "I am not so confident.…"

33. On March 14, 2025, we served supplemental disclosures. Opposing counsel did not.

34. For the first time on March 20, 2025, opposing counsel sent an email in which he made a proposal with new dates to revise the CMO. He not only proposed to push the trial date to *January 5, 2026* but he also proposed to effectively reset all the deadlines, some of which he had already waived (like percipient discovery, expert designations, and MSJ). I responded the same day (and without delay) with my thoughts. I explained:

> As to #2, I personally don't think your proposal makes sense for our clients. We've been diligently complying with the Case Management Order and we did not file a request for an extension of the CMO either. Since your side didn't address our extension request back in November/December, we treated the CMO to be final especially given its language that it should be treated as being final, as well as Judge Blumenfeld's admonitions to other parties in other cases each time we appeared in Court that dates are final. And certainly, at this late juncture, you can't expect us to prejudice our clients with wholesale

revisions to the CMO which would essentially enable you to hit the reset button on waived percipient discovery deadlines, expert discovery deadlines, MSJ deadlines, etc. Moreover, every day of delay with a preliminary injunction hanging over our clients' heads is prejudicial (not to mention almost all of PCJV's franchisees now claiming to "rescind"); our clients want to vindicate their rights ASAP. That said, I will discuss your proposal with our clients and if they wish to agree to it or have a counter-proposal, I will let you know.

Attached hereto as **Exhibit H** is a true and correct copy of my March 20, 2025 email.

35. While we were discussing this proposal with our clients, opposing counsel accused us of "reversing tires 180 degrees announced." On March 24, 2025, I sent an email to opposing counsel addressing that accusation:

I am also confused about your "reversing tires 180 degrees" comment. I don't know what that means, but I assume you're suggesting that we changed positions. We never did. My memory is that we complained in November about your amended pleading, which added claims and parties without leave of court, and you essentially opposed any suggestion at a continuance of the deadlines (not trial date, but deadlines). Then the Court dealt with the deadlines issue (again, not trial date, but deadlines) in a footnote in one of its Orders. We chose not to file a motion to amend the CMO, but to stay on track with all deadlines and trial date – and any time the matter came up, you would not commit anyway. And we've heard Judge Blumenfeld say time and time again that dates are firm; in fact, you and I had this discussion in Court – we said that Judge Blumenfeld is not likely to change any dates. I made a proposal to you to stay this case pending the Ninth Circuit

160850.00001/154448422v.1

10

DECLARATION OF ARASH BERAL IN SUPPORT OF PCJV USA PARTIES' OPPOSITION TO EX PARTE APPLICATION TO CONTINUE TRIAL DATE AND AMEND CMO

> ruling and you refused that. Thus, our side fully complied with the Scheduling Order, as we were and are required to do. We're not going to prejudice our clients to give you a renewed discovery phase, or to designate experts after you've seen our designation, or otherwise renew the waived MSJ dates, etc. The Counterclaim/TPC does not change the analysis either – nothing in there enlarged the scope of discovery; all the issues were addressed in the early motion to dismiss and injunction papers (at least, if not addressed by the preceding state court litigation) and you've had plenty of time to do discovery on the subject matters. Nothing is new. We also offered you depositions in the past and you elected not to do any.

Attached hereto as **Exhibit I** is a true and correct copy of my March 24, 2025 email.

36. On March 28, 2025, Mr. Malynn wrote opposing counsel to confirm that we do not agree with the CMO amendment proposal, re-emphasizing the emails I had sent on March 20 and March 24. Attached hereto as **Exhibit J** is a true and correct copy of Mr. Malynn's March 28, 2025 email.

37. On April 4, 2025, we appeared again before the Magistrate Judge. By then, the Magistrate Judge's discovery order (Dkt. No. 128) was violated and we discussed and set a briefing schedule on our motion for sanctions under Rule 37. Per my notes, the Magistrate Judge was clear with opposing counsel that she did not have "authority to change the schedule," and that opposing counsel should "go to the District Judge." Mr. Murphy remarked: "I have an ex parte that we're filing." At that hearing, the Magistrate Judge also declined to hear our issues concerning SPAVI's deficient responses to the second set of discovery requests we had served on SPAVI on February 11, citing the CMO as the reason why those discovery issues

could not be heard as they were not timely. Mr. Murphy neither moved for a trial continuance nor filed an *ex parte* application following the hearing.[2]

38. In addition to all of the foregoing, including failing to serve timely discovery requests, designate experts or rebuttal experts, take depositions (other than an expert deposition), or comply with discovery, including comply with *a Court Order* to provide discovery, opposing counsel failed to:

   a. Meet and confer reasonably over the issue of attorney's fees on the anti-slapp motion and contempt over the preliminary injunction;
   b. File joint filings on time;
   c. Cause an officer of Cinco Corporation to attend any of the settlement conference sessions that we had with the Magistrate Judge;
   d. Exchange proposed jury instructions and verdict forms by May 23, 2025 (or at all) as required by Dkt. No. 30 and the Local Rules;
   e. Exchange objections to the proposed jury instructions and verdict forms by May 27, 2025 (or at all);
   f. Engage in a pre-trial meet and confer by June 6, 2025 as required;[3]
   g. Send a letter by June 18, 2025 identifying any motions in limine opposing counsel is planning to bring;

---

[2] Even though Mr. Murphy did not serve a notice of deposition prior to the April 4, 2025 hearing, the Magistrate Judge asked Defendants to make their damages expert available for deposition and to produce financial records referenced in his report, which they did. The SPAVI parties took the expert deposition on April 10, 2025.

[3] Attached hereto as **Exhibit K** is a true and correct copy of an email chain with opposing counsel where our side offered multiple days to meet and confer the week of June 2, 2025. Opposing counsel asked for June 6 and later reneged. This delay continued until the day our first set of trial filings were due (June 20, 2025). As the Court may recall, on June 13, 2025, I brought this issue to the Court's attention.

  h. Furnish the Court on June 20, 2025 with a joint exhibit list without the "date identified" and "date admitted" columns populated;[4]

  i. Send a moving portion of any motion in limine opposing counsel is planning to bring by June 23, 2025 (or at all); and

  j. Comply with the strict requirements of the CMO in bringing this *ex parte* application on June 26, 2025.

  39. On Friday, June 27, 2025, we appeared before the Magistrate Judge for a hearing on our motion for sanctions under Rule 37. Opposing counsel complained that his move from his prior law firm (Ervin Cohen & Jessup) to his present law firm (Fox Rothschild) is causing a delay because he has not been able to obtain documents from his prior law firm. On February 27, however, the Court ordered opposing counsel to "file a statement certifying, if true, that the substitution request will not cause any case delay." *See* Dkt. No. 114. Opposing counsel did so. *See* Dkt. No. 115.

  40. Mr. Malynn and I have cleared our calendars this summer to proceed with the trial in this action in August 2025 (with a 30-day trailing period), alongside our witnesses. After this trial, I have 13 other trials scheduled to start in October 2025 through June 2026, many of them in complex matters which will involve multi-week trials. Continuing the trial in this action creates significant prejudice for me, after having relied on the CMO, complied with the CMO, and also relied on opposing counsel's failure to timely bring any application or motion to amend the CMO. Mr. Malynn also has other trial commitments and conflicts in the fall through the spring of next year.

---

[4] I cautioned opposing counsel not to populate his "date identified" and "date admitted" columns because those must be filed blank for the Clerk to fill in at trial. He refused.

160850.00001/154448422v.1  13

**DECLARATION OF ARASH BERAL IN SUPPORT OF PCJV USA PARTIES' OPPOSITION TO EX PARTE APPLICATION TO CONTINUE TRIAL DATE AND AMEND CMO**

41. Our side has been diligently preparing for trial despite a host of problems, including Mr. Malynn's health. Mr. Malynn has been in and out of the hospital multiple times undergoing various procedures. From his lobectomy in October 2024, chemotherapy from December 2024 through February 2025, and more recently, spending 20 days in the hospital due to a reoccurring pleural effusion in his lung, we have not sought any accommodation due to those circumstances. I am not a trademark lawyer; he is. I have serious concerns about the significant prejudice that would be caused to me and my clients if there were a trial continuance and Mr. Malynn's health were to – God forbid – deteriorate.

42. My clients are under a preliminary injunction order, which the SPAVI parties have used to help strike deals with my clients' third party franchisees, vendors, and suppliers. My clients have lost significant revenues and been harmed. Every day of delay is a day of prejudice to my clients insofar as they will not be able to present their claims and defenses at trial (all of which are intertwined, arise from the same set of facts, and a bifurcated trial would only further prejudice our clients with unnecessary additional litigation expenses).

43. Attached hereto as **Exhibit L** is a true and correct copy of a June 23, 2025 article titled "SPAVI's US expansion to be led by its hot Potato Corner business," accessible at https://mb.com.ph/2025/06/23/spavis-us-expansion-to-be-led-by-its-hot-potato-corner-business.

44. Attached hereto as **Exhibit M** is a true and correct copy of a June 26, 2025 email notification of this *ex parte* proceeding, which is not in accord with local rules. Among other things, it fails to specify the time for a response.

45. I am informed that at least one key witness is traveling to Los Angeles, not just from elsewhere in California, but from the Philippines in August to potentially testify if the case does not settle before trial starts.

/ / /

1  I declare under penalty of perjury that the foregoing is true and correct.
2  Executed June 29, 2025, within the United States, its territories, possessions, or
3  commonwealths.

*/s/ Arash Beral*
Arash Beral