# EXHIBIT E

| | |
|---|---|
| **From:** | Michael D. Murphy <mmurphy@ecjlaw.com> |
| **Sent:** | Tuesday, December 3, 2024 11:39 AM |
| **To:** | Malynn, Todd M. |
| **Cc:** | Beral, Arash; Kenneth Hsu; Cruickshank, AJ |
| **Subject:** | Pre LR 7-1 Meet and Confer Proposal RE: Activity in Case 2:24-cv-04546-SB-AGR Shakeys Pizza Asia Ventures, Inc v. PCJV USA, LLC et al Notice of Appeal to 9th Circuit Court of Appeals |

Todd / Arash:

We write regarding the meet and confer as to the purported Rule 12 Challenge to the Amended Complaint. Although we have not yet met and conferred "face to face" we note that there are both substantive and procedural challenges and believe the latter can be resolved easily (notwithstanding our disagreement as to whether the procedural challenges would have merit).

**Your incomplete meet and confer as to the First Amended Complaint, and what remains outstanding to discuss, let alone resolve**. On Thanksgiving day, you sent us meet and confer correspondence on our client's First Amended Complaint, asking to meet and confer by video in advance of an intended Rule 12 Motion. I had already agreed to stipulate to an extension on your responsive pleading deadline of this Friday, given Arash's loss of his mother, which, as a result, you indicated that you would seek that meet and confer this week beginning December 2, 2024. Barely after midnight on December 2, 2024, you nevertheless filed an Ex Parte Application circumventing the meet and confer process with the Court, asking the Court to weigh in on issues you have with our pleading. We do not believe it makes sense or is a wise use of judicial resources to ask the Court to weigh in on the dispute as to the Amended Complaint ***before*** our Rule 7-1 meet and confer. Indeed, your December 2, 2024 ex parte appears to have simply disregarded Rule 7-1 altogether and jumped right to asking for Court relief. Herein, we have a proposal that we believe will address all the procedural issues we raise.

**Your procedural challenges with respect to the First Amended Complaint**: Your chief challenge to the First Amended Complaint arises from your belief that the addition of two new parties – HLK Milpitas, LLC and GK Cerritos, LLC, as well as the claims for quantum meruit, trade secret misappropriation, and breach of confidentiality. Your argument is that none of these parties, allegations, or claims were specifically authorized in this manner in the Court's November 14, 2024 ruling, and, as such could not be included in conformity with that ruling. We disagree but have a proposal that will remove this as a procedural issue.

**Each of the new parties, allegations, and claims did not arise until after November 14, 2024 ruling**. It is important to note that, with respect to each of these procedural challenges, they arise from parties, allegations, or claims that had not occurred or were not discovered until after this action was filed, and, indeed, after the deadline to amend the Complaint.

New Parties: HLK Milpitas, LLC or GK Cerritos, LLC. For example, prior to November 19, 2024, the Milpitas and Cerrito stores had not been disclosed in any manner that we had been aware of, and, indeed, the most recent FDD as of November 18, 2024 did not identify the Milpitas and Cerritos stores as being owned by entities owned or controlled by Mr. Koren, nor had any prior FDD before November 19, 2024 ever identify HLP Milpitas, LLC or GK Cerritos, LLC as being Koren owned entities operating Potato

1

Corner franchises. It was not until November 19, 2024 – barely two weeks ago – when your client's newest FDD was published reflecting PCJV's status as a franchisor in 2024 – that first identified HLP Milpitas, LLC or GK Cerritos, LLC as being Koren owned entities operating Potato Corner franchises. I asked Mr. Beral prior to his last Rule 12 Motion if he would disclose all entities operating Potato Corner franchises so we can dispense with the convenient non-disclosure of some infringing entities, but Mr. Beral refused, forcing us instead to wait until the FDD, as that is a public statement by PCJV of, among other things, all Potato Corner operations owned and controlled by Mr. Koren. The First Amended Complaint was filed three days later adding those parties and you have objected because we did not seek leave prior to filing to add those two new Defendants about which we had never previously known.

New Allegations and Claims as to the Trade Secrecy, and Confidentiality Breaches. Similarly, prior to November 20, 2024, we had suspicions that Mr. Koren was preparing a competitor using SPAVI's proprietary information, and trade secrets, and, indeed, Mr. Koren had not expressly denied it and had disavowed his decades plus of prior representations that the Potato Cortner brand is comprised, in part, of trade secrets and proprietary information including the flavorings. We did not, however, have actual facts on which to base this claim. This was discovered on November 20, 2024 when Koren conducted a meeting of franchisees, wherein, in addition to advising the franchisees they need not comply with the injunction as to the trademarks, he also admitted that, after SPAVI terminated PCJV's Potato Corner license to use all intellectual property on May 31, 2024, he continued to maintain possession of the flavoring packets (despite having lost all rights to access and use them), then misappropriated them by handing them over to a third party who also did not have rights to possess those proprietary products, and reverse engineered them. On November 20, 2024, Koren announced to the franchisees the fruits of that misappropriation would be made available to the franchisees on December 2, 2024, when new flavorings from this new supplier using the reverse engineered flavoring derived from packets of Potato Corner flavorings to which it did not possess the rights to access, open, manipulate, test, and reverse engineer. Accordingly, it was not until November 20, 2024 – less than two weeks ago – in which we possessed actual facts establishing the theft of trade secrets and breach of confidentiality.

New Allegations as to Quantum Meruit. Koren's latest gambit – to flout a federal court order and continue to remain open as Potato Corners around the nation, has resulted in the PCJV stores having earned a profit off a theft of intellectual property and contempt of Court. All profits earned by PCJV or any of Koren's stores should be awarded to SP{AVI. Similarly, the claim for quantum meruit was not first known until after the filing of the Rule 12 Motion and Opposition, when the sheer inequity of Koren's having failed to ever pay royalties was laid bare: he never intended to pay for use of serve as a caretaker of the intellectual property but, instead, had designs to steal it, alter it, and attempt to transform it into a naked license. It would be inequitable for Koren and the Defendants to have been using this intellectual property without any intent to pay for it, contrary to his having asserted otherwise. As such, SPAVI is entitled to be awarded what Koren, PCJV, and his stores have earned. We are just learning about the extent of Koren's inequitable retention of gains that are not his. For example, the extent to which he has been marking up the Potato Corner flavorings has yielded a windfall to him to which he is not entitled.

**Proposal: Stipulate to a Supplemental Complaint Under FRCP 15(d) Adding the New Claims, along with an Amended Complaint that Only Amends as to the Defendants**. As a technical matter, although we could keep them in as part of an amended complaint, each of the new claims (and facts supporting them) are better alleged in a "supplemental pleading setting out any transaction, occurrence, or event that happened after the date of the pleading to be supplemented." FRCP 15(d). Alternatively, we could also file it as a new case, however, that would be a waste as there is preference in the federal courts to have cases tried together involving the same nucleus of facts. We propose that SPAVI prepare a

Supplemental Complaint identifying these facts occurring after May 31, 2024 – trade secret theft, breach of confidence, and quantum meruit, and then keep the Amended Complaint to the Court ordered further specification as to why each Koren Affiliate other than PCJV and PCI have been named. We suspect that our having added the two new Defendants within days of learning of them would be approved by the Court.

This proposal resolves your issue – maintaining these allegations and claims in a separate pleading (although we could rely on this route, as it is a common practice to include new claims and allegations arising after filing in amended pleadings). We are willing to take this procedural step to get this issue out of the way.

Very Truly Yours,

**Michael D. Murphy**

ERVIN COHEN & JESSUP LLP

9401 Wilshire Boulevard, 12th Floor | Beverly Hills, CA 90212-2974
(310) 281-6367 *(t)* | (310) 859-2325 *(f)*

www.ecjlaw.com | mmurphy@ecjlaw.com | About me | LinkedIn

The information contained herein is confidential and privileged attorney-client information or work product intended only for the individual or entity to whom it is addressed. Any unauthorized use, distribution or copying of this communication is strictly prohibited. If you have received this communication in error, please notify me immediately.



**From:** Malynn, Todd M. <Todd.Malynn@BlankRome.com>
**Sent:** Thursday, November 28, 2024 4:43 PM
**To:** Michael D. Murphy <mmurphy@ecjlaw.com>
**Cc:** Beral, Arash <arash.beral@blankrome.com>; Kenneth Hsu <khsu@ecjlaw.com>; Cruickshank, AJ <AJ.Cruickshank@BlankRome.com>
**Subject:** RE: Activity in Case 2:24-cv-04546-SB-AGR Shakeys Pizza Asia Ventures, Inc v. PCJV USA, LLC et al Notice of Appeal to 9th Circuit Court of Appeals

Mike,

Thank you for forwarding to me the attached email, of which I was unaware. I will send to you a proposed stipulation tomorrow.

I was not "misinformed" by Arash. You did not copy me on the attached email, Arash was out of the office due to his father's passing, and your first email did not include this new information, even though my meet and confer email requested an answer to Arash's request, which you have now provided.

Both of us are working on Thanksgiving. The answer to your continued question (rephrased just as inaccurately) was complete when first provided and remains the same.

3

Regards,
Todd

**Todd M. Malynn** | BLANKROME
2029 Century Park East | 6th Floor | Los Angeles, CA 90067
O: 424.239.3469 | M: 310.595.0271 | F: 424.389.7610 | todd.malynn@blankrome.com

---

**From:** Michael D. Murphy <mmurphy@ecjlaw.com>
**Sent:** Thursday, November 28, 2024 4:18 PM
**To:** Malynn, Todd M. <Todd.Malynn@BlankRome.com>
**Cc:** Beral, Arash <arash.beral@blankrome.com>; Kenneth Hsu <khsu@ecjlaw.com>; Cruickshank, AJ <AJ.Cruickshank@BlankRome.com>
**Subject:** RE: Activity in Case 2:24-cv-04546-SB-AGR Shakeys Pizza Asia Ventures, Inc v. PCJV USA, LLC et al Notice of Appeal to 9th Circuit Court of Appeals

Todd:

Your email is very confusing. I granted the extension on Tuesday. See attached. We just need to formalize into a stip. If you would like to prepare one rather than wait until we come back next week, that is fine. We are a little occupied spending our Thanksgiving not with our families but opposing two of your motions, both due Monday, the day after our supposed holiday.

And I am not conditioning anything on our grant of an extension. Arash most certainly can have that extra time.

I am pointing out, however, that it is troubling that we would grant that extension (on Tuesday), and then the next day you would refuse a one-day extension on our brief due Monday before the 9th Circuit so we could spend more time with our families. You refused. I would like to know your purpose for refusing, if, as we said, we would not use that one day in furtherance of an argument regarding delay. Indeed, your clients have obtained an effective stay anyway, by refusing to comply and acting in contempt of the Nov. 14, 2024 Order.

Now that you are aware that you were misinformed as to our having granted the extension for Arash, and given that there is no prejudice that would be suffered, again, I ask: why did you reject our request for one extra day before the 9th Circuit?

Happy Thanksgiving

---

**Michael D. Murphy**

ERVIN COHEN & JESSUP LLP

9401 Wilshire Boulevard, 12th Floor | Beverly Hills, CA 90212-2974
(310) 281-6367 *(t)* | (310) 859-2325 *(f)*
www.ecjlaw.com | mmurphy@ecjlaw.com | About me | LinkedIn

The information contained herein is confidential and privileged attorney-client information or work product intended only for the individual or entity to whom it is addressed. Any unauthorized use, distribution or copying of this communication is strictly prohibited. If you have received this communication in error, please notify me immediately.



**From:** Malynn, Todd M. <Todd.Malynn@BlankRome.com>
**Sent:** Thursday, November 28, 2024 4:08 PM
**To:** Michael D. Murphy <mmurphy@ecjlaw.com>
**Cc:** Beral, Arash <arash.beral@blankrome.com>; Kenneth Hsu <khsu@ecjlaw.com>; Cruickshank, AJ <AJ.Cruickshank@BlankRome.com>
**Subject:** Re: Activity in Case 2:24-cv-04546-SB-AGR Shakeys Pizza Asia Ventures, Inc v. PCJV USA, LLC et al Notice of Appeal to 9th Circuit Court of Appeals

Mike,

The two are not related or comparable. Please confirm whether you are going to grant the extension Arash requested to file a responsive pleading due to his father's passing. I do not know why you or Kenny have not already granted it, let alone now seek something in return for a death in his family. Because of his father's passing and because you did not grant the extension when asked, he asked me to handle. To avoid prejudice, I prepared a detailed meet and confer on Thanksgiving, so that you had it before our call tomorrow. If you decline Arash's request, what time is best for us to speak tomorrow?

You were already informed why we stood on the time frame adopted by the Ninth Circuit in connection with an emergency motion to stay.
Given the positions you have asserted, including in a letter you delivered so employees of a third party franchisee would read and disrupt his business, your email is less than accurate.

Regards,
Todd

Sent from my iPhone

> On Nov 28, 2024, at 1:48 PM, Michael D. Murphy <mmurphy@ecjlaw.com> wrote:
>
> Todd and Arash:
>
> We will review.
>
> I do have one question: when we were asked about an extension on the responsive pleading, it was out of respect for the loss in Arash's family, and his representation that he had not read the Complaint yet – suggesting he was writing the responsive pleading.
>
> I was surprised that, within 24 hours of our courtesy to your firm, you refused to allow one extra day for our response to the 9th Circuit Application for a stay on enforcement of the action, especially knowing that we would not use that extra day as any argument towards delay. We are already briefing an opposition to another motion of yours in the District Court – relating to the bond – which is also due Monday.

What was your purpose in refusing to stipulate to one (1) day on our Opposition to the Stay Motion so that we do not have to write two oppositions to your Motions due on Monday?

Best,

**Michael D. Murphy**

ERVIN COHEN & JESSUP LLP

9401 Wilshire Boulevard, 12th Floor | Beverly Hills, CA 90212-2974
(310) 281-6367 *(t)* | (310) 859-2325 *(f)*
www.ecjlaw.com | mmurphy@ecjlaw.com | About me | LinkedIn

The information contained herein is confidential and privileged attorney-client information or work product intended only for the individual or entity to whom it is addressed. Any unauthorized use, distribution or copying of this communication is strictly prohibited. If you have received this communication in error, please notify me immediately.



**From:** Malynn, Todd M. <Todd.Malynn@BlankRome.com>
**Sent:** Thursday, November 28, 2024 11:08 AM
**To:** Kenneth Hsu <khsu@ecjlaw.com>
**Cc:** Beral, Arash <arash.beral@blankrome.com>; Cruickshank, AJ <AJ.Cruickshank@BlankRome.com>; Michael D. Murphy <mmurphy@ecjlaw.com>
**Subject:** RE: Activity in Case 2:24-cv-04546-SB-AGR Shakeys Pizza Asia Ventures, Inc v. PCJV USA, LLC et al Notice of Appeal to 9th Circuit Court of Appeals

Kenny,

Thank you for your consideration of Arash's request for extension to file a responsive pleading. I trust that you will be confirming the request tomorrow or we will be speaking on Friday.

Please let this email constitute Defendants' good faith effort to meet and confer, including on a Rule 12(b)(6) motion to dismiss, a Rule 12(f) motion to strike, a special motion to strike under California's anti-SLAPP statute, and an *ex parte* application for reconsideration to modify the preliminary injunction and set a compliance deadline in light of changed circumstances. One change in circumstance is your letter dated November 27, 2024, wherein Plaintiff makes threats that are neither supported nor intended by the preliminary injunction.

**The First Amended Complaint**

1. **Inclusion of new parties without leave of court in violation of scheduling order**

The order granting in part and denying in part Defendants' prior Rule 12(b)(6) motion and Plaintiff's motion for preliminary injunction (the "Order") did not modify the scheduling order or grant Plaintiff leave to add new parties. Please immediately dismiss the new purported defendants (*e.g.,* HLK Milpitas, LLC, GL Cerritos, LLC).

   2. **Continued inclusion of affiliated franchisee defendants based on alleged derivative use**

The Order dismissed affiliated franchisee defendants whose prior pled connection to the case was derivative use from PCJV, the lawfulness of which remains in dispute until trial or a final decision by the Ninth Circuit. The amended complaint does not add new charging allegations but, once again, pleads that the claims against the previously dismissed affiliated franchisee defendants are based on allegations of derivative use. There is no need for these defendants to resolve Plaintiff's claim for declaratory relief and PCJV, PCIT and Koren are responsible for the derivative use, so there is no basis for their inclusion. Please immediately dismiss the purported affiliated franchisee defendants in addition to the ones listed above.

   3. **Include of new claims in violation of the scheduling order**

The Order does not authorize the inclusion of new claims. In fact, at the hearing, you specifically chose not to ask for leave to add new claims after meeting and conferring on the request. Having not asked for leave to add new claims, the amended complaint's inclusion of new claims violates the scheduling order. Please dismiss the Ninth, Tenth and Eleventh Causes of Action, each one of which also fails to state a claim upon which relief can be granted.

**Ninth Cause of Action**

Plaintiff's conclusory allegations fail to state a claim, including for four reasons beyond the obvious—they are based on a false premise: That Plaintiff owns the U.S. trademarks and have a right to unilaterally revoke Defendants' use thereof. Those are ultimate issues in the case, which will be resolved on Defendants' counterclaim for declaratory relief if the Ninth Circuit does not take up the issues and resolve them on appeal.

First, even if the order granting Plaintiff's motion for a preliminary injunction holds, the same order recognizes Plaintiff acquired a non-royalty bearing license. That is the very rationale of the Order in holding that the master license agreement attached to the complaint is unenforceable. The Order does not reach Defendants' forthcoming promissory estoppel affirmative defense, which, as an alternative legal theory, would enforce the non-royalty bearing master license agreement over the alleged "unwritten" allegedly revoked one. Either way, no consideration is due and owing.

Second, Plaintiff has no reasonable expectation of payment for a second reason: SPAVI had notice of facts (indeed, full knowledge) supportive of Defendants' own legal claim to the U.S. marks and promissory estoppel defense, which due diligence discovery will confirm. SPAVI's pleading does not allege facts to the contrary and has filed pleadings

7

declaring to due diligence. Thus, it never had a reasonable expectation of payment (absent a settlement between the parties), nor an expectation of obtaining control over the marks until it prevailed in court. Having notice of facts supportive of Defendants' expectations, Plaintiff's purchase agreement presumably bakes in and incorporates into the purchase price the alleged value of the non-royalty bearing license, even if an "unwritten" one came into existence. No expectation of payment, no basis for quantum merit, which would simply be a windfall.

Third, Plaintiff's complaint is circular. If Defendants have an obligation to make payment, even quantum meruit, then the master license agreement would be enforceable. The alleged missing term would not be missing. The Court could simply imply a reasonable royalty rate and enforce the master license agreement based on Defendants' course of performance the last 15 years.

Fourth, if equity has anything to say, the doctrine of promissory estoppel would control. For this additional reason, the Ninth Cause of Action fails to state a claim.

**Tenth Cause of Action**

This cause of action is a SLAPP. California's anti-SLAPP statute protects First Amendment activity, which, in turn, protects courts in California from parties trying to create litigation out of existing litigation. Plaintiff claims that it is the owner of trade secrets, which it claims it licensed to Defendants. As to the alleged license, Plaintiff's claim is predicated on it prevailing, not only that it acquired trade secrets from Cinco, but also that Defendants owed an obligation to SPAVI to keep the alleged trade secrets confidential and not to use them for their own benefit. Plaintiff's complaint bases the elements of this claim on public disclosures in Franchise Disclosure Documents, which it alleges are contrary to Defendants' "brazen" position now in court, which, even if wrong, the litigation privilege protects (if not wrong, there is no liability).

It does not matter which allegation is true—Defendants' alleged prior public statements in Franchise Disclosure Documents or in court. Either way, liability is based on protected speech. Section 425.17 does not apply because PCJV is not a business "primarily engaged in the business of selling or leasing goods or services" to consumers, and even if it were a qualified person by being a seller of a branded business opportunity, the qualifying conditions are not met. Statements in court are not commercial speech. Public disclosures in Franchise Disclosure Documents (authored by Cinco's counsel) about seasonings purchased from Cinco under Plaintiff's legal theory that Cinco (not PCJV) owned the alleged trade secrets, were statements about Cinco's products. They were not statements about a PCJV product or a competitor's product. Therefore, it is immaterial that they were included in Franchise Disclosure Documents allegedly "for the purpose of purpose of obtaining approval for, promoting, or securing sales or leases of, or commercial transactions in, the person's goods or services or in the course of delivering the person's goods or services."

Plaintiff has no probability of success on merits, including because Plaintiff's amended complaint does not state a claim for multiple reasons. First, the allegation of ownership of confidential information are too conclusory to state a claim (especially without the public

disclosures in the Franchise Disclosure Documents). We both know SPAVI does not own the flavored seasonings but simply resells them, which makes the public disclosures in the Franchise Disclosure Documents material to the claim and Defendants' "brazen" contrary position allegedly offensive.

Second, the claim is contrary to the law of the case—the Court's prior ruling on Defendants' TRO application that there was neither a fiduciary nor a contractual obligation in the parties to buy/sell flavored seasonings. In other words, under Plaintiff's legal theory and factual position (buying no rights in PCJV and denying that it induced a breach or that Cinco breached the AJVA when it sold the trademarks to SPAVI), SPAVI and Defendants did not have a commercial relationship other than via purchase orders. The purchase orders are not alleged in the complaint as they do not support the claim. That Defendants also allegedly had an "unwritten, recoverable, at-will" trademark license is immaterial. SPAVI acquired no rights in PCJV. Therefore, the alleged license plainly did not come with strings attached. The parties' negotiations are plainly alleged to have been fruitless.

Third, the Court can take judicial notice that SPAVI does not own the flavored seasonings, which will help isolate and expose the SLAPP. While the basis of Plaintiffs' claimed ownership of confidential information (other than public disclosures in Franchise Disclosure Documents) is unclear, once SPAVI allegedly acquired the IP without any rights in PCJV, where is the obligation to keep confidential information secret and how is reverse engineering a misappropriation? Business & Professions Code § 16600 prevents the alleged "unwritten, revocable, at-will license" – to which Defendants never agreed and have always opposed by word and conduct – from being interpreted as a contract in restraint of trade. It would be void to that extent.

Fourth, the first sale doctrine defeats the claim. After purchasing seasonings from SPAVI, Defendants were free to reverse engineer them. Neither the purchase orders nor the reference trade secret misappropriation statute creates any obligation to return product purchased in an arms-length transaction whether or not there in an "unwritten, recoverable, at-will" license. Even the allegation acknowledges SPAVI's failure to maintain the alleged confidential information confidential. There is no obligation to return or account for anything.

**Eleventh Cause of Action**

This claim is preempted. There is no common law breach of confidence claim in California.

**The November 27, 2024 Letter**

As you well know, the Order speaks to a name change. It rejected Plaintiff's request for any other restraint on competition, which was requested by Plaintiff in several different ways, all of which were rejected. Yet, Plaintiff is now making over-the-top claims and admits to accessing privileged communications previously warned about in a letter to third parties franchisees trying to (a) put them out of business or (b) induce breaches of their contractual obligations and/or real estate leases.

In response to the Order, Defendants' *ex parte* application informed the Court of the name-change requirements, estimated the time necessary for a U.S. franchisee to effect a name change, and

requested a full compliance deadline. While the Order does not set a compliance deadline, it does recognize a reasonable time frame, which evidence informs. Defendants neither get to set a reasonable time frame on its own, let alone send a letter making false statements to third parties, including that there is a final order (there is not) or when a reasonable time has lapsed.

Please immediately confirm that you withdraw SPAVI's demands on third-party franchisees. Otherwise, we will notify the District Court and Ninth Circuit of the false and/or misleading allegations in your letter, which violate the letter and spirit of the Order, including as modified by the Order granting in part and denying in part Defendants' *ex parte* application for reconsideration (*etc.*).

**Accessing privileged communications**

Prior to our last conference call with U.S. franchisees, who are under contract with PCJV, you were notified that there was a common interest privilege, which the U.S. franchisees confirmed. You were also warned to stop tortiously interfering with PCJV's contractual rights. Roll call was taken at the meeting, at which time each U.S. franchisee confirmed the common interest privilege. All of them indicated their alignment with PCJV, which they previously confirmed when they conveyed their rejection of prior solicitations. Yet, you continue to intentionally violate and access privileged communications. To date, no justification has been provided. And the Order provides none.  We intend to notify the Court of this misconduct in our forthcoming *ex parte* application.

Regards,
Todd

**Todd M. Malynn** | BLANKROME
2029 Century Park East | 6th Floor | Los Angeles, CA 90067
O: 424.239.3469 | M: 310.595.0271 | F: 424.389.7610 | todd.malynn@blankrome.com

*************************************************************************************

This message and any attachments may contain confidential or privileged information and are only for the use of the intended recipient of this message. If you are not the intended recipient, please notify the Blank Rome LLP or Blank Rome Government Relations LLC sender by return email, and delete or destroy this and all copies of this message and all attachments. Any unauthorized disclosure, use, distribution, or reproduction of this message or any attachments is prohibited and may be unlawful.

*************************************************************************************