UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| SHAKEY'S PIZZA ASIA VENTURES, INC.,<br><br>　　　　Plaintiff,<br><br>　v.<br><br>PCJV USA, LLC et al.,<br><br>　　　　Defendants. | Case No. 2:24-cv-04546-SB-AGR<br><br><br>ORDER (1) DENYING EX PARTE APPLICATION TO AMEND CASE MANAGEMENT ORDER [DKT. NO. 202], (2) REQUIRING EXPEDITED RESPONSE TO REPORT AND RECOMMENDATION, AND (3) CONTINUING TRIAL-RELATED DEADLINES |

　　　　More than nine months ago, on September 6, 2024, the Court entered a case management order (CMO) setting this case for trial on August 4, 2025. The CMO includes detailed instructions on the standard parties must meet to obtain a continuance of any of its deadlines:

> The deadlines below will *not* be continued absent *a timely showing of good cause*. **Good cause** requires a specific, detailed, timely, and non-conclusory showing of diligence from the outset of the case, describing: (i) all relevant work previously done (including when each item was completed), (ii) all relevant work that remains to be done, (iii) why the remaining work could not previously have been done (including efforts made to complete each remaining item), and (iv) why the amount of time requested is needed to complete the remaining work. *The **Attachment to this Order** describes the requirements in more detail, and failure to comply with them will result in denial of the request with prejudice.*

1

Dkt. No. 29 at 1.  The attachment to the CMO provides further instruction, requiring that the showing of good cause "shall be placed in a table in chronological order and shall include *all* discovery and significant procedural events from the outset of the case in the format illustrated" in the attachment, with a prominent warning that "***[f]ailure to comply with the above requirements will result in the denial of the request with prejudice***." *Id*. at 4.  The Court's standing order for civil cases contains similar instructions and warnings.  Dkt. No. 25 at 16–18.

In February 2025, three weeks before the fact discovery deadline, Defendants filed a counterclaim and third-party complaint that added three new parties:  PC International Pte Ltd., SPAVI International USA, Inc., and Cinco Corporation.  These third-party defendants are represented by Michael Murphy, the same counsel who represents Plaintiff (and who represented Cinco for years in the preceding state-court litigation), who had notice of the new claims immediately after their filing.  In mid-March, the parties filed a stipulation in which Murphy "indicated that he would either accept service on behalf of two, if not all three Third Party Defendants or otherwise would facilitate service, so as to accelerate their appearance, and responsive pleading timing."  Dkt. No. 124 at 3.  On April 3, a month and a half after they were named, Murphy accepted service on behalf of the third-party defendants.  Dkt. No. 140.  They answered on April 15.

By his own admission, Murphy has believed for more than six months that a continuance is necessary.  Dkt. No. 202 at 7 ("Since December 2024 and through March 2025, the parties have discussed—and agreed—on the need for a continuance and modified CMO.").  Nevertheless, Murphy did not file a request for a continuance—on behalf of either Plaintiff or the third-party defendants—before the close of discovery, before the motion hearing deadline, before the post-settlement status conference, or even before the first set of pretrial filings were due.  Instead, Plaintiff and the third-party defendants (collectively, Movants) waited until June 26—nearly a week after the first set of pretrial filings and more than four months after Defendants filed their counterclaim—to file an ex parte application for a six-month continuance of the trial date and a reopening of discovery and motions practice.  Defendants oppose the request, arguing that Plaintiff has not been diligent and that they are prepared for trial and would be prejudiced by the requested continuance.

I.

The ex parte application fails for at least three independent reasons.

2

First, Movants have not addressed, much less satisfied, the standard for ex parte relief. To justify ex parte relief, the moving party must show that (1) irreparable harm will result if the matter is not heard in the regular manner—i.e., through a noticed motion—and (2) the moving party did not create the crisis that necessitates ex parte relief. *Mission Power Eng'g Co. v. Cont'l Cas. Co.*, 883 F. Supp. 488, 492 (C.D. Cal. 1995); *Azam v. Brown*, 714 F. App'x 663, 665 (9th Cir. 2017) (identifying *Mission Power* as providing the standard for ex parte relief). To be sure, it is now too late for Movants to bring a noticed motion. But that is a problem entirely of Movants' own making. They provide no explanation for waiting months to seek relief, particularly where the justification for their request—the fact that the third-party defendants did not have time to conduct discovery or file dispositive motions—has been apparent since February. This failure is especially notable given Plaintiff's repeated complaints about Defendants' improper use of ex parte applications. *See, e.g.*, Dkt. No. 89 at 1 (noting Defendants' "obvious failure to establish any exigency warranting *ex parte* relief").

Movants attempt to put much of the blame on Defendants, who they contend initially agreed to seek an extension and then reneged in March. Defendants dispute Movants' characterization of their positions. Regardless, Defendants' agreement or disagreement to a continuance is largely irrelevant to Movants' burden. As the CMO explains, "[t]he Court applies the same standard of good cause for all requests [to continue] (whether opposed or unopposed)." Dkt. No. 29 at 4. If Movants believed they needed a continuance, it was incumbent upon them to act diligently to seek one, with or without Defendants' cooperation. In any event, Movants' own evidence shows that they have known of Defendants' opposition to a continuance since at least March 20. Dkt. No. 202-5 at 5 of 8. Having inexplicably waited three more months to file their application, Movants cannot show that ex parte relief is now warranted.

Second, the ex parte application does not contain a chart showing all work completed and remaining to be completed, as required by the CMO. The table is an important tool that enables a full, fair, and efficient assessment of the moving party's diligence. This omission, for which Movants offer no excuse, is fatal: as the CMO warns, "**[f]ailure to comply . . . will result in the denial of the request with prejudice**." Dkt. No. 29 at 4. Nor have Movants otherwise made "specific, detailed, timely, and non-conclusory showing of diligence from the outset of the case," as required to establish good cause for a continuance. *Id.* at 1. Because

3

Movants have not complied with the requirements in the CMO for seeking a continuance, their application is denied.

Third, and most importantly, Movants did not merely fail to document their diligence; they have not been diligent. Under Rule 16(b), a case management order "may be modified only for good cause and with the judge's consent." Fed. R. Civ. P. 16(b)(4). The "good cause" requirement "primarily considers the diligence of the party seeking the amendment." *Johnson v. Mammoth Recreations, Inc.*, 975 F.2d 604, 609 (9th Cir. 1992).

Had Movants sought a continuance promptly after Defendants filed their counterclaims and third-party complaint (or after the third-party defendants appeared), they would have been entitled to a continuance, as they could not reasonably have complied with the existing deadlines despite their diligence. *Id*. But the diligence inquiry is not limited to that fixed point in time—Movants have an ongoing obligation to be diligent, including in seeking any required extensions. *See, e.g.*, *Orr v. Bank of Am., NT & SA*, 285 F.3d 764, 784 (9th Cir. 2002) (affirming denial of continuance where plaintiff "lacked diligence as she waited for two weeks after being served with the summary judgment papers before seeking a continuance"); *see also Morgal v. Maricopa Cnty. Bd. of Sup'rs*, 284 F.R.D. 452, 460 (D. Ariz. 2012) (explaining that "[t]he diligence obligation is ongoing" and that courts in the Ninth Circuit require a movant to show "that he was diligent in seeking amendment of the Rule 16 order, once it became apparent that he could not comply with the order") (cleaned up).

Here, Movants waited months to seek relief. Only after completing the first round of pretrial filings did they assert for the first time that it would violate due process to require them to go to trial without the third-party defendants' having had the opportunity to conduct discovery or file dispositive motions. Movants' concerns are serious, but they come too late.[1] Absent an explanation for their months-long delay, Movants have not shown good cause to continue the trial by half a year and reopen discovery and motions practice on the eve of trial. The application is denied.

---

[1] "No procedural principle is more familiar to this Court than that a constitutional right may be forfeited . . . by the failure to make timely assertion of the right." *Michel v. Louisiana*, 350 U.S. 91, 99 (1955) (quoting *Yakus v. United States*, 321 U.S. 414, 444 (1944)). Movants' argument (which cites no legal authority) ignores this principle and, taken to its logical conclusion, suggests that Movants could have raised their due process argument for the first time at trial.

II.

The same day that Defendants filed their opposition to Movants' ex parte application, Magistrate Judge Alicia Rosenberg issued a report and recommendation (R&R) on Defendants' motion for discovery sanctions. Dkt. No. 204. The R&R recounts various failures by Plaintiff, including multiple untimely filings (e.g., a supplemental response filed 19 days late, documents produced 23 days late, and a late opposition); concludes that the requested nonmonetary sanctions are not warranted; and recommends allowing a 45-day extension for Defendants to conduct limited discovery specified in the R&R. Objections to the R&R are currently due July 14, with responses thereto due July 28—ten days after the pretrial conference and just one week before trial.

The lateness of the R&R is not in the least attributable to Judge Rosenberg, who commendably issued her 21-page R&R on the Monday morning following the Friday oral argument on the sanctions motion. Rather, the parties once again waited until the last minute—two days before the fact discovery deadline—to seek relief that could and should have been sought earlier. *See id.* at 14–15 ("The parties in this case were free to seek court intervention on one or more discovery disputes at any point after the discovery period commenced, yet did not avail themselves of the opportunity until two days before the fact discovery cut-off date."). Regardless, it is now impracticable to require the parties to file their second set of pretrial filings before they respond to the R&R and the Court has an opportunity to decide whether the additional discovery suggested by Judge Rosenberg should be allowed (which would affect the pretrial submissions). Moreover, Defendants—the beneficiaries of the additional discovery proposed by Judge Rosenberg—have taken the position in their opposition to Plaintiffs' ex parte application that they would be substantially prejudiced by any continuance of the trial date, including because of the preliminary injunction currently in place and because of counsel's health issues. It is therefore not obvious that they want the additional discovery Judge Rosenberg suggests, which would cause further delay.

Accordingly, to minimize delay and unnecessary inefficiency, the Court will expedite resolution of the R&R and grant a short continuance of the trial-related deadlines. *See United States v. Barney*, 568 F.2d 134, 136 (9th Cir. 1978) (court may shorten the statutory time to respond to an R&R "if exigencies of the calendar require" expedited submissions). The Court therefore orders as follows:

5

The parties shall promptly meet and confer in person or by videoconference to attempt to reach agreement on how to proceed, including whether Defendants wish to waive the discovery proposed by Judge Rosenberg and proceed to trial without further delay. No later than July 7, 2025, the parties shall file a joint report stating their positions, including any agreements that may moot the R&R. If the parties are not in agreement, each side shall file any objections to the R&R by July 7, 2025. Any response to the other side's objection shall be filed by July 9, 2025.

The deadline for the second set of pretrial filings is continued to July 25, 2025.[2] The pretrial conference is continued to August 8, 2025, at 10:00 a.m. The jury trial is continued to August 18, 2025 at 8:30 a.m.

Date: July 1, 2025

                                                     Stanley Blumenfeld, Jr.
                                                     United States District Judge

---

[2] The parties' submissions suggest that they have not yet done the work necessary to narrow the issues and prepare this case for trial. Counsel are cautioned that the Court expects a greater degree of cooperation than they have so far exhibited. *See, e.g.*, Dkt. No. 30 at 7 ("The Court expects counsel to agree on almost all the jury instructions, particularly when pattern or model instructions provide a statement of applicable law."). If the parties fail to narrow their disputes sufficiently to be ready for an efficient trial, they should be prepared for the Court to continue the pretrial conference, order them to further meet and confer (repeating the process and trailing the matter day by day for as long as may be necessary), and impose sanctions if they are not cooperating in good faith. The Court will separately address the outstanding order to show cause re sanctions based on counsel's prior interactions.