**BLANK ROME LLP**
Todd M. Malynn (SBN 181595)
todd.malynn@blankrome.com
Arash Beral (SBN 245219)
arash.beral@blankrome.com
Jamison T. Gilmore (SBN 322100)
jamison.gilmore@blankrome.com
2029 Century Park East | 6th Floor
Los Angeles, CA 90067
Telephone:   424.239.3400
Facsimile:    424.239.3434

Attorneys for Defendants, Counterclaimants, and
Third Party Plaintiffs PCJV USA, LLC, PCI
TRADING LLC, POTATO CORNER, LA
GROUP, LLC, GK CAPITAL GROUP, LLC,
NKM CAPITAL GROUP, LLC and GUY
KOREN, and Defendants J & K AMERICANA,
LLC, J&K LAKEWOOD, LLC, J&K
OAKRIDGE, LLC, J&K VALLEY FAIR, LLC, J
& K ONTARIO, LLC, J&K PC TRUCKS, LLC,
HLK MILPITAS, LLC, and GK CERRITOS, LLC

## UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| SHAKEY'S PIZZA ASIA VENTURES, INC, a Philippines corporation, | Case No. 2:24-CV-04546-SB(AGRx) |
| Plaintiff, | *Hon. Stanley Blumenfeld, Jr.* |
| vs. | **THE PCJV USA PARTIES' OBJECTIONS TO THE REPORT & RECOMMENDATION RE: MOTION FOR SANCTIONS (DKT. NO. 205-1)** |
| PCJV USA, LLC, a Delaware limited liability company; PCI TRADING , LLC, a Delaware limited liability company; GUY KOREN, an individual; POTATO CORNER LA GROUP, LLC, a California limited liability company; NKM CAPITAL GROUP, LLC, a California limited liability company; J & K AMERICANA, LLC, a California limited liability company; J&K LAKEWOOD, LLC, a California limited liability company; J&K VALLEY FAIR, LLC, a California limited liability company; J & K ONTARIO, LLC, a California limited liability company; HLK MILPITAS, LLC, a California, limited liability company; GK CERRITOS, LLC, a California, limited liability company;  J&K PC TRUCKS, LLC, a California limited liability company; and, GK CAPITAL GROUP, LLC, a California | Complaint Filed:   May 31, 2024<br>Trial Date:          August 18, 2025 |

1   limited liability company and DOES 1
    through 100, inclusive,

2                           Defendants.

3   _____

4   PCJV USA, LLC, a Delaware limited
    liability company; PCI TRADING LLC, a
5   Delaware limited liability company;
    POTATO CORNER LA GROUP LLC, a
6   California limited liability company; GK
    CAPITAL GROUP, LLC, a California
7   limited liability company; NKM CAPITAL
    GROUP LLC, a California limited liability
8   company; and GUY KOREN, an individual,

9                       Counter-Claimants,

10        v.

11  SHAKEY'S PIZZA ASIA VENTURES,
    INC, a Philippines corporation,

12                      Counter Defendant.

13  _____

14  PCJV USA, LLC, a Delaware limited
    liability company; PCI TRADING LLC, a
15  Delaware limited liability company;
    POTATO CORNER LA GROUP LLC, a
16  California limited liability company; GK
    CAPITAL GROUP, LLC, a California
17  limited liability company; NKM CAPITAL
    GROUP LLC, a California limited liability
18  company; and GUY KOREN, an individual,

19
                        Third Party Plaintiffs,
20
21        v.

22  PC INTERNATIONAL PTE LTD., a
    Singapore business entity; Plaintiff
23  INTERNATIONAL USA, INC., a California
    corporation; CINCO CORPORATION, a
24  Philippines corporation; and ROES 1 through
    10, inclusive,

25                     Third Party Defendants.

26  _____

27

28

# **TABLE OF CONTENTS**

**Page(s)**

I.    PCJV USA PARTIES' OBJECTIONS TO THE R&R ............................................. 1

    A.    Objections re: Foundational Facts & Reported Background .................. 1

        1.    Objections re: Timing of Motion & Alleged Impossibility.......... 1

            a.    Plaintiff Intentionally Suppressed Evidence ...................... 4

                i.    Plaintiff Expressly Put Transaction Documents at Issue in Its Complaint; They Were Specifically Requested Four Days Later; And They Were Responsive to Timely Discovery Requests............... 5

                ii.    Plaintiff Put Due Diligence Documents at Issue When Declarants Testified in Support of the Preliminary Injunction, and They Were Responsive to Timely Discovery Requests ................. 5

                iii.    Plaintiff's First Amended Complaint Put at Issue Documents Evidencing Trade Secret Ownership, Steps Taken to Protect Trade Secrets and Sales and Use of Seasoning Packages, and They Were Responsive to Timely Discovery Requests............... 6

                iv.    Plaintiff Waived Objections to the Production of Transactional, Trade Secret and Due Diligence Documents, Not Only Because They Were Put At Issue, But Also Because They Fall Within Plaintiff's Initial Disclosures............................................................ 7

            b.    The R&R Errs in Starting the Analysis on March 12 ......... 8

                i.    Rule 26 Prohibits Parties from Holding Non-Objectionable Documents "Hostage" While Objecting to Producing Other Documents................ 8

                ii.    The R&R Errs by Faulting PCJV USA Parties Out of Context—Standing Plaintiff's Request for a CMO Continuance on its Head ............................................. 9

        2.    Objections re: Protective Order & Rolling Production ............... 10

        3.    Objections re Plaintiff's Late-Filed Opposition .......................... 10

    B.    Objections re: Discussion of Rule 37(b) Motion .................................... 11

        1.    Objections re: Initial Briefing........................................................ 11

         2.    Objections re "Beyond the Disobedient Party's Control"........... 13

        3.    Objections re: Non-Compliant April 11 Email............................ 17

    C.    Objections re: Remedies Recommended (Which PCJV USA Parties did Not Request) Rather Than Requested Remedies .................................... 18

        1.    Preclusion Order ............................................................................ 18

        2.    Objections re: Transaction Related Issue/Evidentiary Sanctions 19

i

3.    Objections re: Trade Secret Claim ................................................ 22

D.    Objections re: Document Requests .......................................................... 23

1.    Document Request No. 1 ...................................................... 23

2.    Document Request Nos. 9, 12 and 25 ...................................... 24

3.    Document Requests re: Group 1 ............................................ 25

4.    Document Requests re: Group 2 ............................................ 25

5.    Document Requests re: Group 3 ............................................ 26

**THE PCJV USA PARTIES' OBJECTIONS TO THE REPORT & RECOMMENDATION RE: MOTION FOR SANCTIONS (DKT. NO. 205-1)**

# **TABLE OF AUTHORITIES**

**Page(s)**

**Cases**

*Adriana Int'l Corp. v. Theoren*,
913 F.2d 1406 (9th Cir. 1990) .................................................................. 15

*Bridge Lines, Inc. v. Luxury Coach of America, LLC*,
Case No. 5:24-cv-00288-SPG-SPx, 2024 WL 5355588
(C.D. Cal. Nov. 15, 2024) ......................................................................... 13

*Computer Task Group, Inc. v. Brotby*,
364 F.3d 1112 (9th Cir. 2004) .................................................................. 15

*Cortez v. Best Buy Stores, LP*,
CV 11-05053 SJO (PLAx), 2011 WL 13238983 (C.D. Cal. Oct. 28, 2011) .......... 1

*In re Heritage Bond Lit.*,
223 F.R.D. 527 (C.D. Cal. 2024) ....................................................... 13, 15

*Internationale Pour Participations Industrielles Et Commerciales, S. A. v. Rogers*,
357 U.S. 197 (1958) .................................................................................. 16

*National Urban League v. Ross*, Case No.
20-CV-05799-LHK, 2020 WL 5578931 (N.D. Cal. Sept. 17, 2020) ...................... 2

*Ollier v. Sweetwater Union High School Dist.*,
768 F.3d 843 (9th Cir. 2014) ...................................................................... 4

*Potlatch Corp. v. U.S.*,
679 F.2d 153 (9th Cir. 1982) ...................................................................... 16

*S. Cal. Darts Assoc. v. S. Cal. Darts Assoc., Inc.*,
No. CV1201899RGK, 2012 WL 12882764 (C.D. Cal. June 22, 2012) ................... 1

*Sanchez v. Rodriguez*,
298 F.R.D. 460 (C.D. Cal. 2014) ............................................................... 14

*Signature Financial LLC v. McClung*,
2017 WL 8236292 (C.D. Cal. July 27, 2017) ................................................. 8

*Simpson v. Lear Astronics Corp.*,
77 F.3d 1170 (9th Cir. 1996) ...................................................................... 3

*Teixeira v. BMW of N. Am., LLC*,
Case No. 2:22-cv-02338-WLH-MAR, 2023 WL 6787457
(C.D. Cal. Sept. 26, 2023) ........................................................................ 13

*United States v. Sumitomo Marine & Fire Ins. Co.*,
617 F.2d 1365 (9th Cir. 1980) .................................................................. 15

*Yeti by Molly, Ltd. v. Deckers Outdoor Corp.*,
259 F.3d 1101 (9th Cir. 2001) .............................................................. 4, 14

**Rules**

Rule 26 ............................................................................................. passim

Rule 26(a) ................................................................................................ 4

Rule 37 .................................................................................................. 16

Rule 37(c)(1) ............................................................................................ 4

iii

Defendants, Counterclaimants, and Third Party Plaintiffs ("PCJV USA Parties") object to the Report & Recommendation ("R&R") and request *de novo* review of their motion for sanctions. PCJV USA Parties do not believe that the R&R's recommended remedies would correct the grave injustices caused here.

## I.    PCJV USA PARTIES' OBJECTIONS TO THE R&R

### A.    Objections re: Foundational Facts & Reported Background

#### 1.    Objections re: Timing of Motion & Alleged Impossibility

PCJV USA Parties object that the R&R begins its analysis "two days before the fact discovery cut-off date of March 14, 2025" (Dkt. No. 205-1 at 2), then, rather than fault *Plaintiff* for failing to comply with discovery, the R&R appears to fault PCJV USA Parties for "sit[ting] back, wait[ing] until the last minute, then complain[ing] it is prejudiced because the other side should have produced documents sooner" (*id.* at 15).[1] That is an unfair description of what occurred. Rather, the record shows that PCJV USA Parties were diligent at all times, including requesting the transactional-based documents four days after this lawsuit was filed followed up with formal document demands served in early December 2024 before responsive pleadings were filed. PCJV USA Parties should not be faulted for *Plaintiff's* failure to comply.

Plaintiff's effort to justify its non-compliance with its discovery obligations, which culminated in the March 12 Order, and the recommendation to deny PCJV USA Parties' motion for sanctions on the grounds of "impossibility," Dkt. No. 205-1 at 14, miss the mark. Under settled authority,[2] a party cannot claim "impossibility"

---

[1] Similarly, PCJV USA Parties object to R&R's comment that "counsel should not wait until the last minute to request court intervention in discovery disputes, as happened in this case," Dkt. No. 205-1 at 7, as this remark is made out-of-context and without consideration of what actually caused delay.

[2] *See Cortez v. Best Buy Stores, LP*, CV 11-05053 SJO (PLAx), 2011 WL 13238983, at *3 (C.D. Cal. Oct. 28, 2011) (refusing to set aside a Magistrate Judge's Order on the grounds of impossibility when the defendant previously stated it could comply with the order); *see also S. Cal. Darts Assoc. v. S. Cal. Darts Assoc., Inc.*, No. CV1201899RGK, 2012 WL 12882764, at *1 (C.D. Cal. June 22, 2012) ("impossibility of compliance cannot serve as a defense when the impossibility is the

where, as here, compliance was neither impossible (Plaintiff had over a year to gather and produce case-in-chief documents as well 30 days to gather and produce other compelled documents by the April 11 deadline and another 77 days from March 12 to June 27 to complete its production) nor when the non-compliant party's allegation is based on a circumstance of its own making (Plaintiff's failure to seek review or reconsideration of the April 11 deadline and discovery obligations or a trial continuance in March or April, as directed and required by the CMO).

PCJV USA Parties' objection is not just that "SPAVI should have anticipated the need to produce the documents that are the subject of the March 12, 2025 Order long ago," Dkt. No. 205-1 at 14, but also that Rule 26 precludes a party from engaging in trial by ambush and obligates a party to produce documents requested in discovery that fall within its initial disclosures, *i.e.*, documents that it might use at trial to meet its burden of proof.[3] PCJV USA Parties seek appropriate relief for Plaintiff's decision to suppress evidence in violation of Rule 26 and court orders.

Plaintiff undisputably became obligated under Rule 26 to produce all responsive documents put at issue by January 2025. And the Magistrate Judge made quick work of Plaintiff's relevancy, privacy and disproportionality objections when the Court granted PCJV USA Parties' motion and compelled the production of all documents responsive to Plaintiff's Requests for Production of Documents ("RFP"), Set One, inclusive of "RFP Nos. 1 to 20" and a "privilege log," with specific and limited carve-outs, limitations or directions as to numbered requests, beginning "the week of March 24, 2025" and completing "by April 11, 2025" after counsel "promptly file a stipulation for a protective order by March 14, 2025." Dkt. No. 128 at 1-3.

---

intended result of the non-moving party's actions"); *National Urban League v. Ross*, Case No. 20-CV-05799-LHK, 2020 WL 5578931, at *8 (N.D. Cal. Sept. 17, 2020).
[3] The R&R fails to distinguish (a) documents that fall within Plaintiff's initial disclosures, including referenced in its pleadings, from (b) documents Defendants requested so as to prosecute their claims and discover impeachment evidence.

2

Plaintiff did not challenge the March 12 Order, thereby disposing of any objections to discovery.[4] The lone remaining issue was Plaintiff's non-compliance with its Rule 26 obligations as specified in the plain language of the March 12 Order.

The timing of Plaintiff's production was based on answers provided when "the court questioned counsel at the discovery conference." Dkt. No. 205-1 at 2. Plaintiff's counsel had already circulated a protective order, which PCJV USA Parties' counsel had already approved, and Plaintiff's counsel represented he had already gathered documents he was then prepared to produce and 30 days should be sufficient to complete production. Dkt. No. 153-2 ¶¶ 11-13, 15-16. To ensure no unfairness, the Court set a further hearing on April 4, 2025,[5] at which the Court set a briefing schedule on a motion for sanctions. Dkt. No. 138, 141.

As to compliance, PCJV USA Parties' motion (Dkt. No. 153) established that (a) Plaintiff became obligated in January 2025 to produce documents, and (b) Plaintiff's attempt at justifying its failure to produce a single document was based on its request for a trial continuance; Plaintiff was purposefully delaying producing documents to force a trial continuance. Moreover, regardless of whether the March 12 conference occurred early or late relative to pleadings or deadlines, the ordered April 11 deadline gave Plaintiff an entire month to produce, before the close of discovery, documents that it had not already gathered and produced the week of March 24. The April 4 order also provided a mechanism for relief from the April 11

---

[4] *Simpson v. Lear Astronics Corp.*, 77 F.3d 1170, 1174 (9th Cir. 1996) ("[A] party who fails to file timely objections to a magistrate judge's non[-]dispositive order with the district judge to whom the case is assigned forfeits its right to appellate review of that order"); L.R. 72-2.1 (objections to pre-trial non-dispositive rulings from Magistrate Judges must be asserted within fourteen days of a written ruling).

[5] The original purpose of the April 4, 2025 conference was to hear PCJV USA Parties' objections, if any, to the search terms and records custodians Plaintiff had used or was using to gather and produce responsive documents—all of which related to a singular transaction put at issue in Plaintiff's pleadings and parsed into document requests to avoid any particularity or disproportionality concerns. The original purpose of the April 4 hearing became moot when, in violation of the March 12 Order, Plaintiff did not begin a rolling production the week of March 24 and did not proffer search terms and records custodians as ordered, *i.e.,* before April 4. Dkt. No. 153-2 ¶ 16.

deadline if Plaintiff had substantially complied with the March 12 Order and showed good cause in accordance with the briefing schedule.

The R&R omits material facts as to Plaintiff's failure to comply not only with its discovery obligations in January 2025, but also with the March 12 Order by April 11, 2025, which was a predicate for relief from the April 11 deadline. Plaintiff did not: (a) file the approved protective order by March 14, (b) begin a rolling production of documents as promised and ordered the week of March 24, (c) circulate any search terms or record custodians by April 4, or (d) produce any documents by April 11. It also (e) violated the April 4 briefing schedule, and (f) did not move for reconsideration or show good cause or substantial compliance with the March 12 Order by April 11, let alone at all. PCJV USA Parties' objections to the R&R's factual background and omission of material facts should be sustained for the following reasons:

### a. Plaintiff Intentionally Suppressed Evidence

Rule 26 was promulgated to prevent unfair surprise at trial. *Ollier v. Sweetwater Union High School Dist.*, 768 F.3d 843, 862 (9th Cir. 2014). To this end, Rule 26 requires the initial disclosure of documents as well as the production of requested documents a party might use at trial in support of a claim or defense where it bears the burden of proof. *See Yeti by Molly, Ltd. v. Deckers Outdoor Corp.*, 259 F.3d 1101, 1105-07 (9th Cir. 2001) ("Rule 37(c)(1) gives teeth to these requirements by forbidding the use at trial of any information required to be disclosed by Rule 26(a) that is not properly disclosed"). There is no basis to refuse to produce a requested document put at issue by a pleading or in a declaration or that falls within Rule 26 disclosure requirements. *Id.* at 1105-07 (affirming sanction for failure to produce expert report until approximately month before trial).

### i.  Plaintiff Expressly Put Transaction Documents at Issue in Its Complaint; They Were Specifically Requested Four Days Later; And They Were Responsive to Timely Discovery Requests

At issue in this trademark case is not whose name is published on a registration certificate—it is who has a superior right to use or control the marks—including at common law and/or by written agreement. Valid ownership is a threshold issue, but just one element of Plaintiff's case-in-chief that Plaintiff's and PCJV USA Parties' respective agreements with the original foreign rights holder inform. Guy Koren and his LA Group—who built the fast-food restaurant franchise through which the Potato Corner marks expanded to the U.S.—originally co-owned PCJV (the joint-venture limited-liability-company U.S. franchisor and first continuous and exclusive user of the U.S. marks) with the original registrant. Plaintiff's proffered assignment does not substantiate that Cinco sold a superior claim to ownership to Plaintiff.

Even if it could prove a superior claim to ownership, Plaintiff would still have to prove it acquired the right to terminate PCJV's agreed-upon right to use the marks, including to license them to franchisees, "at-will," thereby (a) ending restaurant franchise business its partners created, and (b) disrupting PCJV's relationships with U.S. franchisees. Just four days after Plaintiff filed its Complaint, PCJV USA Parties' counsel addressed the need for "all of the Shakey's Pizza Asia-Cinco transactional documents" and why. (*See* Exh. A to Dkt. No. 203-1.) The need for the transactional documents was raised time after time, including in written discovery requests. Plaintiff became obligated to produce them by at least January 2025, all of which bore on the alleged source of Plaintiff's alleged IP rights.

### ii.  Plaintiff Put Due Diligence Documents at Issue When Declarants Testified in Support of the Preliminary Injunction, and They Were Responsive to Timely Discovery Requests

In support of Plaintiff's motion for a preliminary injunction, Plaintiff submitted evidence showing it conducted due diligence before announcing its transaction with Cinco in December 2021. *See* Dkt. No. 44-4 ¶ 22; Dkt. No. 44-5 ¶¶ 14-25. Plaintiff's

5

First Amended Complaint (at ¶¶ 73-77) alleges that in the state court action, Cinco and Plaintiff (as a person in active concert or participation) were enjoined from interfering from PCJV's franchise business and communicating with PCJV's franchisees (regarding an alleged right to terminate use of the marks). Although not involved in the preliminary injunction proceedings, the Magistrate Judge was informed of Plaintiff's preliminary injunction declarations and was not surprised in March, April or June to hear that Plaintiff had put due diligence at issue given that the alleged transaction with Cinco occurred in the middle of state-court litigation where an injunction had issued restricting enforcement of alleged trademark rights. Plaintiff became obligated to produce these at-issue documents in January 2025 as well.

### iii. Plaintiff's First Amended Complaint Put at Issue Documents Evidencing Trade Secret Ownership, Steps Taken to Protect Trade Secrets and Sales and Use of Seasoning Packages, and They Were Responsive to Timely Discovery Requests

At the March 12, 2025 hearing, Plaintiff conceded that it does not own the recipes of the french fry seasonings that are the subject of its Cal-UTSA claim, which was one reason it was compelled to provide a further answer to PCJV's interrogatory requesting the disclosure of the alleged trade secrets. Rather, Plaintiff is apparently accusing PCJV USA Parties of somehow misappropriating somebody else's trade-secret recipes (recipes they never had) by "reverse engineering" the powder that was in the seasoning packages, and which are sold in the market.

In response to timely served discovery requests, Plaintiff became obligated to produce requested trade-secret documents in support of its case-in-chief, including ones that would not only overcome the statutory presumption under Cal-UTSA that reverse engineering does not constitute misappropriation, but also ones that support its contentions that (i) it has the right to enforce somebody else's trade secrets, (ii) the suppliers of seasoning packages did not sell them to others in accordance with the first-sale doctrine transferring title to buyers to use them as they saw fit, (iii) both

suppliers and Plaintiff took reasonable steps to prevent reverse engineering when they sold seasoning packages, (iv) PCJV USA Parties promised Plaintiff they would not reverse engineer flavors, and (v) damages for the alleged breach of a still undisclosed obligation not to reverse engineer packaged seasonings. No documents have been produced supportive of this claim as well (Plaintiff has only produced SEC filings and publicly released statements). Dkt. No. 196-1 ¶¶ 4-5.

### iv. Plaintiff Waived Objections to the Production of Transactional, Trade Secret and Due Diligence Documents, Not Only Because They Were Put At Issue, But Also Because They Fall Within Plaintiff's Initial Disclosures

The requested transactional, trade-secret and due-diligence documents all fall within Plaintiff's initial disclosure of documents that Plaintiff might use at trial, which Plaintiff, itself, described as follows: "*Documents relating to intellectual property* comprising the [allegedly acquired] Potato Corner brand,…including [a] *documents showing Plaintiff's ownership* of the Potato Corner brand…, [b] *documents evidencing Plaintiff's trade secrets* included within the Potato Corner Intellectual Property, *protectability* of any of the Potato Corner Intellectual Property (including the *maintenance of secrecy* of any confidential, proprietary, and/or trade secret information)…." Dkt. No. 153-6 at 26 (emphasis added).

Because Plaintiff disclosed it might use at trial any document "related to intellectual property" it allegedly acquired from Cinco, including documents showing ownership of IP and alleged trade-secret protectability and maintenance, there was no, and could be no, *bona fide* objection to PCJV's requests for those documents. Rather, after being granted extensions, Plaintiff became obligated in January 2025 to produce the documents supporting its amended complaint and preliminary injunction papers put at issue, including the following documents "related to intellectual property" it allegedly acquired from Cinco: (a) transactional documents related to Plaintiff's case-in-chief, (b) trade-secret documents related to Plaintiff's case-in-

7

chief, and (c) due-diligence documents related to Plaintiff's knowledge of (i) potential pre-existing common law or contractual rights in PCJV relating to the allegedly acquired IP, including any basis to claim trademark ownership or license rights not terminable "at-will," (ii) potential obligations owed to PCJV or its joint venture partners, including to grant a master license, and (iii) public sales of the allegedly secret seasoning packages and prior efforts to reverse engineer packaged flavors without objection by the original supplier, Cinco or Plaintiff.

### b.    The R&R Errs in Starting the Analysis on March 12

#### i.    Rule 26 Prohibits Parties from Holding Non-Objectionable Documents "Hostage" While Objecting to Producing Other Documents

Plaintiff's obligation under Rule 26 was to produce in January 2025 all responsive documents it had put at issue and might use at trial, and any other non-objectionable documents. Under Rule 26, parties may not withhold relevant documents falling within their own initial disclosures "hostage" while trying to coerce compromises as to documents over which there might be *bona fide* objections. At minimum, parties are to immediately produce responsive documents falling within their initial disclosures, including because such production could moot the need to fight about other responsive documents. *See Signature Financial LLC v. McClung*, 2017 WL 8236292, at *2 (C.D. Cal. July 27, 2017) (ordering plaintiff to produce documents disclosed in initial disclosures because they were timely requested).

Plaintiff can neither claim not having enough time nor fault others for allegedly not having enough time to produce (a) transactional documents, (b) trade secret documents, and (c) due diligence documents. It put transactional documents at issue in May and they were first requested in June 2024. It put due diligence documents at issue in October by submitting declarations attesting to due diligence and trade secret documents at issue in November when it amended its complaint—giving it plenty of time to gather relevant documents when they were requested in December. In meet

and confer correspondence in January, PCJV USA Parties reiterated several times (and Plaintiff's counsel agreed) that Plaintiff was obligated to produce documents as to which there was no *bona fide* discovery dispute, such as documents falling within its initial disclosures, at which time defense counsel made clear there might be nothing left to compel or fight about. *E.g.*, Dkt. Nos. 153-11-14.

By March 12, 2025, Plaintiff already had 10 months, including since December 2024, to gather and produce documents it had put at issue and might use at trial as stated in its initial disclosure. The Court did not need a further hearing or briefing to resolve Plaintiff's baseless objections. Rather, the Court properly resolved Plaintiff's objections on the "spot" on March 12, 2025 (Dkt. No. 205-1 at 1.) The R&R errs in failing to address Plaintiff's non-compliance prior to March 12 (which led to the need for the March 12 hearing in the first place).

### ii.    The R&R Errs by Faulting PCJV USA Parties Out of Context—Standing Plaintiff's Request for a CMO Continuance on its Head

The R&R should not excuse Plaintiff's suppression of evidence in discovery, including failure to timely produce documents within its own initial disclosures, then fault PCJV USA Parties for initially believing Plaintiff actually wanted a trial continuance when, in reality, Plaintiff was simply delaying its discovery obligations. Rather than reopen discovery and prejudice PCJV USA Parties with a trial continuance thereby rewarding Plaintiff's dilatory conduct, the R&R should have *estopped* Plaintiff from continuing to belatedly rely upon the specter of a trial continuance as a reason to avoid sanctions and not timely producing documents. Plaintiff did not move for a continuance for three months after the March 12 conference, then waited until the eve of the June 27 hearing with the Magistrate Judge to move *ex parte* with the District Court without complying with CMO requirements. There are good reasons to believe Plaintiff just used the issue for delay and to avoid sanctions while suppressing evidence.

### 2.    Objections re: Protective Order & Rolling Production

To facilitate Plaintiff's rolling production in March, the Court ordered counsel to file a protective order by March 14, 2025. Rather than timely file an already approved protective order, Plaintiff refused to countersign and file a protective order until March 31, 2025, then used that delay as an excuse at the April 4 hearing for not beginning the rolling production as ordered. PCJV USA Parties object to the R&R's omission of these material facts and suggestion that they were somehow at fault, or Plaintiff was excused from no rolling production.

Plaintiff's ongoing failure to comply with its discovery obligation, first in January 2025, then in March 2025 as ordered, substantiates a pattern of behavior that runs contrary to counsel's after-the-fact excuse-making. The R&R should be overruled because Plaintiff's conduct (not counsel's words) should be given more credence. Plaintiff did not substantially comply with the March 12 Order; no motion for reconsideration of the April 11 deadline was filed; and the R&R should not have accepted belated, disputed, and vague representations about compliance.

### 3.    Objections re Plaintiff's Late-Filed Opposition

The R&R states that the Court "on its own motion, continued the [May 22] hearing to June 27, 2025 due to other ongoing discussions in this case…." (Dkt. No. 1 at 4.) PCJV USA Parties object to this description of events. The Court on its own motion took the May 22 hearing off calendar after Plaintiff delayed filing its opposition, which created overlap with "other ongoing discussions in this case." It was PCJV USA Parties who had to email the Magistrate Judge's Chambers to put the hearing back on calendar to enable them to file their reply, which the Magistrate Judge did not do until after "other ongoing discussions" were completed.

---

10

**B.    Objections re: Discussion of Rule 37(b) Motion**

**1.  Objections re: Initial Briefing**

PCJV USA Parties object that the R&R denies relief based on untimely excuses by Plaintiff's counsel, which is reported out-of-context in the R&R,[6] and to the extent that the March 12 and April 4 Orders were not the product of full briefing (Dkt. No. 205-1 at 6). The R&R excuses Plaintiff's non-compliance and delay in filing an opposition after not seeking reconsideration, which caused the Court to take PCJV USA Parties' motion off calendar, because it supposedly is "equally true that, particularly at the first discovery conference, the parties and the court may not have full appreciation and knowledge of facts that bear on the proportionality of the discovery that is ordered." Dkt. #205-1 at 6. That is not the case here.

PCJV's document requests all concerned one singular transaction regarding Plaintiff's alleged acquisition of intellectual property put at issue in Plaintiff's complaint, preliminary injunction papers and amended complaint. There was no need for further briefing and, if more time were needed for production, the April 4 Order provided Plaintiff with the opportunity to file a motion for reconsideration provided there was substantial compliance with the March 12 Order (there was not) and good cause (not more delay). Plaintiff did not seek reconsideration of the April 11 deadline and did not substantially comply with the March 12 Order by April 11, let alone by May 9, 2025, when it belatedly filed its opposition brief.

At the March 12 hearing, the Court, for good reasons, overruled Plaintiff's discovery objections as Plaintiff was trying to suppress evidence it put at issue regarding the alleged acquisition of IP rights in the U.S. The Court authorized only limited redactions of transactional documents, including due diligence and trade secret related documents, where those documents solely concerned IP rights in other

---

[6] *See* Dkt. No. 205-1 at 7 ("Plaintiff's counsel in this case explains that he did not anticipate the sheer volume of electronic communications that resulted from application of the search terms after the March 12, 2025 discovery conference.").

countries. At the March 12 and June 27, 2025 hearings, PCJV USA Parties' counsel (a) informed why they wanted unredacted documents, as the jury should be entitled to compare any businesses Plaintiff acquired in other countries to the alleged IP rights Plaintiff allegedly acquired without the franchise business in the United States, and (b) made clear that Plaintiff should have, at minimum, timely produced redacted documents, so that a jury could consider whether Plaintiff was suppressing evidence in not permitting the jury to compare what Plaintiff purchased in other countries to the U.S. IP rights it allegedly acquired. At the June 27 hearing, Plaintiff's counsel conceded that, although he could have timely produced a redacted copy of the acquisition agreement, he did not do so in March or April, more than 10 months into the case, presupposing PCJV USA Parties "would cry foul" concerning the amount of redactions, thereby depriving PCJV USA Parties of evidence to show the jury regarding Plaintiff's suppression of evidence. (Dkt. No. 205-1 at 9.)

The R&R should also have overruled Plaintiff's excuses regarding the alleged amount of undisclosed documents, which nobody can verify. It lacks credibility that Plaintiff—10 months into prosecution of its case after receiving in December requests for documents falling in its initial disclosure, and after April 4 or when a motion for reconsideration was due—supposedly realized that there were more responsive documents than anticipated. Plaintiff always knew the volume of (a) documents comprising the acquisition,[7] (b) documents in its closing binder comprising the entire transaction, (c) draft agreements, (d) deal correspondence, (e) due diligence from Cinco, (f) its own due diligence, (g) any trade-secret due diligence, (h) board/committee minutes, risk assessments, legal opinions, (i) contracts with suppliers of seasoning package, (j) documents prohibiting suppliers from engaging in

---

[7] Defendants object to the R&R's reference to the acquisition agreement as the "Asset Purchase Agreement" or "APA." (Dkt. #205-1 at 9.) There is no evidence that Plaintiff's transaction with Cinco was limited to the purchase of assets in the United States. The R&R's reference to one undisclosed agreement as the APA is if (a) it is all or the only relevant agreement and (b) the proper name of that one agreement is among the unfair prejudice at trial Defendants moved to avoid.

THE PCJV USA PARTIES' OBJECTIONS TO THE REPORT & RECOMMENDATION RE: MOTION FOR
SANCTIONS (DKT. NO. 205-1)

Internet sales or brand owners or licensees from reselling seasoning packages, (k) prior enforcement against reverse engineering, and (l) damages.

Moreover, the time to raise any "impossibility" argument was months ago when any motion for reconsideration after substantial compliance with the March 12 Order was due. The Court did not need further briefing to know that in March or by April 11 Plaintiff had not produced any documents as ordered, and as of the date for a motion for reconsideration, Plaintiff had not substantially complied with the March 12 Order or sought relief from the April 11 deadline to comply with the Order.

### 2. Objections re "Beyond the Disobedient Party's Control"

The standard for willful or bad faith violation of a discovery order to warrant terminating or issue sanctions, or a preclusion order, is met in this case.[8] PCJV USA Parties are entitled to an even playing field at trial; their claims and defenses have been unfairly complicated and prejudiced by Plaintiff's suppression.

A finding of bad faith is supported by (a) Plaintiff's refusal to produce documents in January 2025, when PCJV USA Parties still had time to take depositions, followed by (b) Plaintiff's refusal to produce documents, as ordered, beginning in March and by no later than 30 days on April 11 after being compelled on March 12, 2025. The R&R should be overruled to the extent it suggests Plaintiff's

---

[8] To dismiss an action or to refuse a party from supporting or opposing designated claims or defenses, terminating sanctions may be ordered when a party has engaged in "disobedient conduct not shown to be outside the control of the litigant." *Trans-Bridge Lines, Inc. v. Luxury Coach of America, LLC*, Case No. 5:24-cv-00288-SPG-SPx, 2024 WL 5355588, at *2 (C.D. Cal. Nov. 15, 2024) (Report and Recommendation issuing terminating sanctions when party failed to produce discovery pursuant to court order adopted in 2025 WL 278403); *Teixeira v. BMW of N. Am., LLC*, Case No. 2:22-cv-02338-WLH-MAR, 2023 WL 6787457, at *1 (C.D. Cal. Sept. 26, 2023). Five factors are used to determine whether to issue terminating sanctions or the functional equivalent: "(1) the public's interest in expeditious resolution of litigation; (2) the court's need to manage its docket; (3) the risk of prejudice to the defendants; (4) the public policy favoring disposition of cases on their merits; and (5) the availability of less drastic sanctions." *Trans-Bridge Lines, Inc.*, 2024 WL 5355588, at *3. "[T]he key factors are prejudice and availability of lesser sanctions." *In re Heritage Bond Lit.*, 223 F.R.D. 527, 530 (C.D. Cal. 2024) (citation omitted). The other three factors do not pertain to lesser sanctions. *Teixeira*, 2023 WL 6787457 at *2-9 (ordering evidentiary sanctions for violating two discovery orders).

suppression of evidence put at issue by its pleading and that falls within its initial disclosures 10 months into the case was not in bad faith.[9]

A finding of willful disobedience, at minimum, is plainly supported by the record. PCJV USA Parties object that the R&R does not reference, even once, Plaintiff's initial disclosures or Rule 26 violation in January by refusing to produce case-in-chief documents that its pleadings reference and put at issue and that it represented it might use at trial. Rather than produce them, Plaintiff argued without moving for a trial continuance to run the clock and delay discovery proceedings. PCJV USA Parties further object that the R&R denies requested relief based on the plainly erroneous suggestion that compliance with the March 12 and April 4 orders were allegedly "beyond the disobedient party's control." (Dkt. No. 205-1 at 8.) Several cases establish the proper relief is to impose sanctions against Plaintiff.

In *Yeti*, the Ninth Circuit affirmed issuance of a sanction precluding testimony from an expert from testifying when that expert's report was produced twenty-eight days before trial. 259 F.3d at 1105-06. Even though the sanction made is "perhaps almost impossible" to rebut damages calculations, the court did not require a finding that the gamesmanship was due to willfulness, fault, or bad faith. *See id.* This Court should find the same and preclude documents not produced in discovery.

In *Sanchez v. Rodriguez*, 298 F.R.D. 460 (C.D. Cal. 2014), the District Court adopted a Report and Recommendation dismissing a complaint with prejudice due to the plaintiff's failure to comply with discovery obligations and a court order compelling discovery. *Id.* at 463-64. There, the plaintiff did not respond to discovery, was ordered to produce discovery, and belatedly responded by requesting more time

---

[9]  It is wrong for the R&R (at 19) to ignore Plaintiff's statutory obligation to identify its own alleged trade secrets, then to adopt Plaintiff's proffered confusion as to which food or beverage times are allegedly trade secret and subject to a claim of being reversed engineered, or proffered confusion as to which supplier agreements to produce, when all responsive documents were ordered be produced on March 12, 2025. The Court set a hearing on April 4 to resolve any issues with the March 12 order as well as invited a timely motion for reconsideration if necessary.

14

to comply. *Id.* at 464. Similarly, Plaintiff did not produce a single document before the April 11 deadline (and only public filings/statements thereafter) responsive to PCJV's requests for production, was ordered to produce documents, and untimely stated it needs more time (over 107 days) to comply. Accordingly, the same result should be provided here as was provided in *Sanchez*—terminating sanctions.

In *In re Heritage Bond Litigation*, defendants were ordered to produce documents by a certain date to plaintiffs. 223 F.R.D. at 530. The Court found "this failure clearly prejudices Betker plaintiffs by preventing them from preparing their case." *Id.* (citing *Adriana Int'l Corp. v. Theoren*, 913 F.2d 1406, 1412 (9th Cir. 1990) ("Failure to produce documents as ordered ... is considered sufficient prejudice."); *Computer Task Group, Inc. v. Brotby*, 364 F.3d 1112, 1116 (9th Cir. 2004) (same)). The Court found evidentiary sanctions and civil contempt were proper where minimal efforts were shown to obtain responsive documents. *Id.* at 531, 533. Here, like in *In re Heritage Bond Litigation*, Plaintiff has failed to comply with an Order to produce documents and there is no justification for a 107-day failure to produce a single compelled non-public record in this case. Even worse than in that case, Plaintiff was ordered to initiate a rolling production but failed to do so and have left PCJV USA Parties at the eve of trial without critical documents. Dkt. No. 196-1 at 3.

Cases cited in the R&R either support an issuance of sanctions or are materially distinguishable from this case. *United States v. Sumitomo Marine & Fire Ins. Co.*, 617 F.2d 1365 (9th Cir. 1980) supports a sanctions order. That case acknowledges the general rule that "neither dismissal nor preclusion of evidence that is tantamount to dismissal may be imposed when the failure to comply with discovery orders is due to circumstances beyond the disobedient party's control." *Id.* at 1369. However, the Court did not follow that general rule—it affirmed the district court's issuance of a preclusion sanction after the government failed to produce court-ordered discovery up until the eve of trial. *Id.* at 1370. Importantly, the Court found that the mere fact

**THE PCJV USA PARTIES' OBJECTIONS TO THE REPORT & RECOMMENDATION RE: MOTION FOR SANCTIONS (DKT. NO. 205-1)**

that the court-ordered discovery was not produced up until two weeks before trial presented an "unmistakable" prejudice to the defendant/counterclaimant. *Id.*

In contrast, the Court in *Societe Internationale Pour Participations Industrielles Et Commerciales, S. A. v. Rogers*, 357 U.S. 197 (1958) held a Rule 37 dismissal of a complaint for a failure to comply with U.S. court order to produce documents unwarranted when complying with the order would subject the appellant to criminal sanctions in Switzerland. *Id.* at 211-12. Dissimilarly, Plaintiff has not claimed its production of documents would subject it to criminal sanctions.

Also dissimilar to this case, the Court in *Potlatch Corp. v. U.S.*, 679 F.2d 153 (9th Cir. 1982) reversed Rule 37 preclusion sanctions against the U.S. for a less than two month delay in complying with an order to produce expert reports because the delay was caused by a detailed explanation of administrative hurdles between multiple U.S. agencies and red-tape in obtaining approval to retain experts. *Id.* at 154, 156. The order requiring production of the expert reports gave approximately six months to comply, the U.S. obtained authority to hire the experts approximately six weeks and eight weeks after the order was issued, and compliance with the order was approximately delayed by seven weeks. *See id.* at p. 154-55. The timing of production roughly matched up with the delay caused by the administrative hurdles in obtaining approval to hire the experts, which the Court found was not the U.S.'s fault. *Id.* at 156. Further, the Court found the U.S. would have been prejudiced because it was unable to use independent experts to show the U.S.'s IRS expert's analysis was not an "out of the ballpark" opinion. *Id.* at 157. Lastly, the Court found the prejudice to appellee was minor because the appellee still had time to depose the U.S.'s experts before trial and the U.S. did not disclose the appellee's expert reports to the U.S.'s experts to give an unfair advantage to prepare more for trial than appellee. *Id.*

*Potlach* is inapplicable here. There were no governmental administrative burdens stopping Plaintiff from complying its discovery obligations and the Court's

THE PCJV USA PARTIES' OBJECTIONS TO THE REPORT & RECOMMENDATION RE: MOTION FOR SANCTIONS (DKT. NO. 205-1)

Orders. PCJV USA Parties did not cause Plaintiff's failure to comply with its discovery obligations or the Court's Orders. Plaintiff would not be prejudiced if precluded from using documents not produced in discovery.

### 3.     Objections re: Non-Compliant April 11 Email

PCJV USA Parties object to the R&R's effort (at 10) to change what was ordered on March 12, 2025—which Plaintiff did not challenge and which PCJV USA Parties were entitled to rely upon, including in evaluating the case for trial, and to proffer a conclusion that should not be adopted. Plaintiff's April 11, 2025 email on its face is non-compliant. It purports to offer a limited, conditional inspection in the future (not by the April 11 deadline) of one document responsive to RFP No. 1—an agreement put at issue by Plaintiff's pleading and falling within its initial disclosures waiving privacy objections—without actually producing or permitting the copying of any redacted documents, which is not compliant with the March 12 Order.

At the June 27 hearing, PCJV USA Parties supported the below reasons why the R&R should be overruled and why redacted documents, including documents responsive to RFP No. 1 (not just an agreement), should have been timely produced:

- Plaintiff was ordered to comply with its Rule 26 discovery obligations as specified in the March 12 Order, including to complete a compelled production of all responsive documents by April 11;

- Plaintiff's ordered production not only included documents and communications responsive to RFP No. 1 (not just an agreement), but also the production of all transactional documents, drafts, correspondence, minutes, due diligence, risk assessments, *etc.*, none of which were offered as part of a non-compliant inspection after the discovery deadline;

- Plaintiff was permitted to redact documents, including any agreement, as specified in the Order; it was not authorized without leave of court to unilaterally change or reduce its obligation to an inspection where nothing could be copied, scanned or photographed to prepare for trial; and

- The March 12 Order overruled Plaintiff's objections, including to the acquisition agreement; it did not invite Plaintiff to engage in non-compliance, so as to relitigate objections to production, to transform the March 12 Order into a limited, late and conditional inspection of one document, and to deprive PCJV USA Parties of a redacted version of that agreement essential to Plaintiff's case to prepare for trial.

After Plaintiff's suppression of evidence between January to April, PCJV USA Parties responded appropriately to Plaintiff's counsel's April 11 email and failure to comply with March 26 Order by proceeding with their motion for sanctions pursuant to the April 4 briefing schedule. In contrast, after violating the March 12 Order when it failed to begin a rolling production in March and failed to produce any documents by April 11, Plaintiff did not follow the briefing schedule, let alone seek reconsideration of its obligations based on a showing of substantial compliance.

### C.   Objections re: Remedies Recommended (Which PCJV USA Parties did Not Request) Rather Than Requested Remedies

#### 1.   Preclusion Order

The R&R does not address the very first request for relief in PCJV USA Parties' Notice of Motion (at 2 ¶ 1) designed to prevent unfair surprise and prejudice at trial which is routinely and commonly issued in response to a party's failure to produce documents in discovery, including before initial pre-trial filings and before a post-discovery mandatory settlement conference—whether or not in violation of a court order: "Prohibiting Plaintiff from supporting its claims for trademark infringement with any documents responsive to RFP Nos. 1-27."

Instead of addressing unfair surprise at trial and a preclusion order supported by the record, the R&R recommends relief that was not requested. That relief would cause further delays, unfairly prejudice PCJV USA Parties with a trial continuance and ongoing and mounting losses of revenue and goodwill. Meanwhile, the preliminary injunction would remain, causing more expense to overturn, when Plaintiff made the decision prior to April not to produce documents in discovery. Plaintiff should not benefit from its refusal to satisfy its Rule 26 obligations. To prevent trial by ambush and avoid further delays, responsive documents not produced in discovery in this action, in the preliminary injunction proceedings, or in the state court action involving the same parties, should be excluded from the trial.

### 2. Objections re: Transaction Related Issue/Evidentiary Sanctions

Under different headings, the R&R (at 9-10 and 12) quotes issue or evidentiary sanctions taken from PCJV's Notice of Motion (but omits the overlapping issue sanctions in the supporting memorandum), regarding what PCJV USA Parties expected the willfully suppressed evidence would prove as supported by PCJV USA Parties' motion, reply and Flow Chart re: Superior Trademark Rights.[10] PCJV USA Parties object to the R&R's failure to address PCJV USA Parties' arguments; the R&R just repeats Plaintiff's unsupported, conclusory argument.

The non-monetary sanctions set out below are necessary and appropriate to even the playing field for trial and compensate PCJV USA Parties for the loss of evidence, including impeachment evidence. Plaintiff specifically refused, time and again, to comply with its discovery obligations, including court orders, with the expressed purposes of complicating PCJV USA Parties' case and confusing the jury—which is the theme this Court has heard from Plaintiff's counsel at numerous hearings:

- *That Plaintiff did not acquire U.S. trademark rights in PCJV, whether owned or licensed by PCJV, or co-owned by PCJV's foreign and domestic joint venture partners.*

This issue sanction is on point, supported, and should be granted: Cinco obviously could not assign to Plaintiff trademark rights Cinco did not own or, in fact, did not sell to Plaintiff. Because this sanction tracks Plaintiff's CEO's own declaration that Plaintiff did not acquire any "rights…in PCJV" (Dkt. No. 44-4 ¶ 12), it would support Plaintiff's own CEO's theory.

Plaintiff has suppressed evidence both acknowledging that Cinco could not sell rights belonging to PCJV and revealing whether Plaintiff, in fact, acquired branding

---

[10] Defendants' flow chart highlights critical issues raised in the motion upon which Plaintiff has suppressed relevant evidence—making visual the obvious prejudice to Defendants' defense at trial, including because they now need to address issues and alternative theories based on what the suppressed evidence would have revealed, including as to Plaintiff's knowledge of each of these issues in 2022.

rights in PCJV, whether owned or licensed by PCJV, or co-owned by PCJV's partners. Plaintiff suppressed evidence that it knew it could not acquire from Cinco that which Cinco did not own and did not, in fact, sell to Plaintiff, including rights and obligations in PCJV's governing documents. As to who has superior trademark rights, including ownership of the U.S. Potato Corner marks, it should be established for trial that, not only did Cinco not sell any ownership rights belonging to PCJV, but also did not sell any licensing rights under PCJV's governing documents, which Cinco sold to Koren in settling the state-court action.

- *That Plaintiff did not acquire any ownership or licensing rights of PCJV or PCJV's foreign or domestic joint venture partners.*

Similar to the first issue sanction, this sanction seeks to make clear to the jury that Plaintiff neither acquired PCJV nor PCJV's rights (or PCJV's partners' co-ownership rights) in the U.S. Potato Corner franchise system that licensed the U.S. marks to U.S. franchisees, including PCJV-affiliated and third-party franchisees. The R&R should be overruled because the trademark rights owned or licensed by the PCJV to operate Potato Corner USA were not acquired by Plaintiff as established by its suppression of evidence.

- *That any proffered evidence regarding Plaintiff's purchase agreement with Cinco [] regarding the trademark ownership or licensing rights and obligations of PCJV or PCJV's domestic joint venture partners under the written agreements signed by PCJV or PCJV's domestic joint venture partners are immaterial and inadmissible.*

This evidentiary sanction seeks the preclusion of any proffered evidence, including testimony, about what the suppressed evidence, including the acquisition agreement, allegedly means or says—in particular as to whether Plaintiff acquired a superior claim to trademark ownership free and clear of PCVJ's branding or licensing rights or obligations at common law or under PCJV's governing documents. Having suppressed relevant evidence, including all transactional documents, due diligence, risk assessments and legal opinions (which should have, at minimum, been put on a

privilege log), Plaintiff should not be allowed to engage in unfair surprise or testify about legal documents having suppressed evidence in discovery.

- *That Plaintiff knowingly acquired U.S. registrations and U.S. trademark rights, if any, covering the trademarks used by PCJV and the Potato Corner USA franchise system subject to any and all prior common law and contractual rights of PCJV or PCJV's domestic joint venture partners.*

This issue sanction is on point and supported too: Plaintiff suppressed due diligence conducted in the middle of litigation between Cinco and PCJV USA Parties after attaching pre-existing contracts to the complaint. Whatever trademark rights Plaintiff acquired in the United States are subject to those preexisting contracts. Knowledge of those contracts is an element of PCJV USA Parties' claims for tortious inference with contracts and contractual relations and aiding and abetting Cinco's breach of fiduciary obligations to PCJV and its partners. The suppressed evidence, including acquisition agreement, due diligence, risk assessments and legal opinions, would have established Plaintiff's knowledge of PCJV's pre-existing contracts, including the reasons why the state court issued an injunction enjoining any effort to enforce trademark rights against PCJV and its Potato Corner USA franchise business as admitted in Plaintiff's complaint. The R&R should be overruled.

- *That the consideration Plaintiff paid for Cinco's international rights to the Potato Corner trademark portfolio reflected the risk and expense of litigation over whether PCJV and PCJV's domestic joint venture partners had superior rights to use and/or control the use of the Potato Corner trademarks in the United States for more than 20 years pursuant to the terms of written agreements signed by PCJV or PCJV's joint venture partners.*

- *That Plaintiff did not pay Cinco adequate consideration for U.S. registrations and U.S. trademark rights, if any, covering the marks used by PCJV and the Potato Corner USA franchise system.*

The R&R's proffered confusion about why these issue sanctions directly flow from Plaintiff's suppression of evidence, including the acquisition agreement, negotiation related thereto, due diligence and risk assessment, lacks merit and should be overruled too. Plaintiff has suppressed evidence as to (a) what it paid, if anything,

21

to Cinco for U.S. trademark rights—or whether it simply assumed the burden of litigating against PCJV and its domestic partners, (b) whether Cinco made any representation or warranties to Plaintiff about the United States—or whether any trademark rights in the United States were sold "as-is, where is," and (c) whether Cinco owed Plaintiff indemnity if Plaintiff lost in litigation against PCJV or its domestic partners—or whether Plaintiff indemnified Cinco if Cinco got dragged into the lawsuit against PCJV and its domestic partners. Neither PCJV USA Parties nor the Court should have to waste time establishing the general principles or the underlying facts suppressed in discovery by Plaintiff in violation of court orders.

- *That Plaintiff had full knowledge of PCJV's franchise agreements with third-party U.S. franchisees, including full knowledge that those agreements were approved by both the foreign and domestic joint venture partners of PCJV for PCJV's benefit.*

Plaintiff suppressed evidence bearing directly on damages. But for Plaintiff's tortious conduct in allegedly acquiring trademark ownership of the U.S. Potato Corner marks with the alleged right to terminate PCJV's Potato Corner USA franchise system's use of those marks, including the right of PCJV's affiliated and third-party franchisees to use the marks, Plaintiff still has undisrupted relationships with its former third-party U.S. franchisees. The suppressed evidence is directly relevant to establish Plaintiff's knowledge and, indeed, the very purpose of Plaintiff's acquisition of U.S. trademark rights—to usurp PCJV USA Parties' franchise business.

### 3.   Objections re: Trade Secret Claim

The R&R did not address PCJV USA Parties' request for a terminating sanction as to Plaintiff's trade secret claim, which was based on Plaintiff's failure to produce any documents relevant to this claim, including documents within its initial disclosures, in violation of court orders. Plaintiff had multiple opportunities to support its case-in-chief with documents. Because Plaintiff cannot meet its burden of proof without the willfully suppressed evidence, a terminating sanction is appropriate.

The R&R did address PCJV USA Parties' request for the below issue sanctions pertaining to the elements of Plaintiff's Cal-UTSA claim to even the playing field and to compensate PCJV USA Parties for the loss of evidence, including impeachment evidence, if Plaintiff's trade-secret claim is not dismissed:

- *That the contents and labeling of the flavored seasoning packages are not trade secrets, including because they are publicly available and purchased by third parties.*

- *That Plaintiff has not taken reasonable steps to maintain the alleged secrecy of the contents or labeling of the flavored seasoning packages.*

- *That Plaintiff does not own or possess the alleged trade secret recipes or ingredient allocations of the flavored seasoning packages.*

- *That Plaintiff has not been damaged as a result of competition mimicking the flavors of the flavored seasonings.*

The R&R provides no explanation (there is none), however, why Plaintiff's refusal to produce documents within its initial disclosures in violation of a court order should result in further delays to reopen discovery to produce documents a month before trial. Thus, in addition to a preclusion order to prevent unfair surprise, because Plaintiff cannot fairly rebut the above factual conclusions without the suppressed evidence, the above issue sanctions are appropriate.

## D.  Objections re: Document Requests

### 1.  Document Request No. 1

PCJV USA Parties object to the R&R insofar as it is unclear that RFP No. 1 does not request one agreement, but seeks all documents and communications referring to or evidencing the acquisition agreement. Counsel's email offering a post-discovery inspection of one responsive document without the right to copy a redacted version did not comply with the March 12 Order.

PCJV USA Parties object to the unduly prejudicial and likely illusory remedy the R&R recommends in response to Plaintiff's failure to produce copies of all responsive documents and communications referring to or evidencing the agreements related to the sale of Potato Corner assets, including the documents comprising

23

Cinco's transaction with Plaintiff. First, further delaying this proceeding and expiration of the preliminary injunction by reopening discovery and increasing the expense of this proceeding would be unduly prejudicial to PCJV USA Parties.

Second, because of the prejudice, the remedy offered is not one PCJV USA Parties sought. In addition to further delays, it would merely invite more litigation over PCJV USA Parties' right to use a redacted agreement at trial. PCJV USA Parties should not be made worse off as a result of Plaintiff's willful discovery violation.

Third, the proffered remedy does not comport with Plaintiff's discovery violation, including failure to produce in discovery the acquisition agreement it put at issue in May 2024, which was requested in June 2024, and which it was obligated to produce by January 2025, when there remained time to conduct depositions. Obviously, Plaintiff have little interest in the R&R's invitation to see what is behind "Curtain No. 1" in a game of "Let's Make a Deal," not hosted by Monte Hall, but by the party in violation of court orders and guilty of suppressing evidence, who would control what is made available for inspection or production. It is unfair to reward Plaintiff after it suppressed evidence that should have been produced by January, to control potential evidence at trial. Neither PCJV USA Parties nor the Court should accept the spoiler's word that spoliation is not what is occurring on the eve of trial.

## 2.    Document Request Nos. 9, 12 and 25

PCJV USA Parties object to the R&R because the only documents produced by Plaintiff were public filings or statements responsive to RFP Nos. 8, 14 and 19. As made clear at the June 27, 2025 hearing, Plaintiff did not produce any documents that were not already in the public record. Dkt. No. 196-1 ¶ 4.

For example, Plaintiff did not produce any let alone all responsive documents to RFP Nos. 9, 12 and 25. Plaintiff's opposition did not refer to any Bates Nos. or provide any examples any responsive documents allegedly produced in discovery. It simply provided a conclusory statement by counsel engaged in discovery violations

**THE PCJV USA PARTIES' OBJECTIONS TO THE REPORT & RECOMMENDATION RE: MOTION FOR SANCTIONS (DKT. NO. 205-1)**

without any verification or privilege log from Plaintiff that all documents responsive to RFP Nos. 9, 12 and 25 were produced or accounted for in a privilege log.

To be sure, at the June 27 hearing, PCJV USA Parties specifically identified Plaintiff's lone belated production of public filings on April 12, 2025. In response, Plaintiff's counsel referred to a phantom second production of documents (that never occurred) and as to which Plaintiff's counsel at the June 27 hearing could not provide any evidence or bates label range of numbers to substantiate ever occurring. The R&R's recommendation to deny PCJV USA Parties' motion for sanctions without a verification from Plaintiff or substantiation that all documents responsive to RFP Nos. 9, 12 and 25 have been produced should be overruled.

### 3.    Document Requests re: Group 1

PCJV USA Parties object to the R&R's proffered grounds and recommendation as to the documents in Group 1 as Plaintiff's conduct (not words) should control the Court's Order. Plaintiff did not move for reconsideration of the April 11 deadline—let alone to narrow its obligations under the March 12 Order as the R&R (at 16-18) now recommends—after supposedly "realizing" there were more documents than anticipated to review and produce or put on a privilege log. Plaintiff also did not do any of those things four months later by June 27, 2025. Failing to produce any documents in Group 1 a month before trial utterly belies Plaintiff's counsel's excuses for non-compliance with the March 12 Order, which, one month before trial, are immaterial and do not constitute substantial compliance.

### 4.    Document Requests re: Group 2

The R&R seems to acknowledge that Plaintiff has produced no "documents underlying Plaintiff's damages claims based on misappropriation" (Dkt. No. 205-1 at 19). Here, Plaintiff's counsel stated at the July 27 hearing that Plaintiff only produced public filings. He made no showing that the public filings disclosed financial information relating to the alleged misappropriation (they do not), let alone amounted

to anything more than conclusory, vague and out-of-context numbers for the entire company, not just to the United States. Therefore, both preclusion and issue sanctions related to damages (as opposed to disgorgement) are entirely appropriate.

Moreover, the R&R ultimately concedes that nothing prevented compliance with the March 12 Order. Other than financial records Plaintiff does not have (or still refuses to produce), the R&R simply repeats what Plaintiff was already ordered to produce on March 12: "[T]he flavorings at issue in the CUTSA claim [*i.e.,* what Plaintiff contends is trade secret without discovery from PCJV USA Parties]; and the agreements described in Paragraph 3(e)(i) in the March 12, 2025 Order." Dkt. No. 205-1 at 20. There is no justification why these documents were not already produced by January, March or April, 2025, let alone by June 27, 2025.

### 5.    Document Requests re: Group 3

Group 3 documents comprise all documents and communications related to the U.S. franchisees (RFP No. 21), who now, in seemingly joining Plaintiff's organization, are claiming they were defrauded by PCJV. PCJV USA Parties object to the R&R (at 20) because Plaintiff's failure to produce documents in response to RFP No. 21 is relevant to both issue and evidentiary sanctions. Plaintiff suppressed evidence of Plaintiff's knowledge prior to the 2022 transaction as to whether Cinco had "at-will" termination rights to disrupt PCJV's relationship with third-party franchisees. Similarly, Plaintiff's suppression of evidence is relevant to Plaintiff's tortious interference with PCJV's relationship with its franchisees. The suppression of relevant subsequent conduct—here Plaintiff's inducement of U.S. franchisees to join its organization and accuse PCJV of fraud as grounds to rescind franchisee agreements—supports the requested issue sanctions bearing on Plaintiff's knowledge of whether they acquired "at-will" termination rights.  After not producing documents and communications in response to RFP No. 21, including any privilege log, Plaintiff

**THE PCJV USA PARTIES' OBJECTIONS TO THE REPORT & RECOMMENDATION RE: MOTION FOR SANCTIONS (DKT. NO. 205-1)**

should not be permitted to deny that they knew they did not have "at-will" termination rights, and thus knew they tortiously interfered with PCJV's relationships.

DATED:  July 7, 2025          **BLANK ROME LLP**


                              By: */s/ Todd M. Malynn*
                              Todd M. Malynn
                              Arash Beral
                              Jamison T. Gilmore
                              Attorneys for Defendants, Counterclaimants, and Third Party Plaintiffs PCJV USA, LLC, PCI TRADING LLC, POTATO CORNER, LA GROUP, LLC, GK CAPITAL GROUP, LLC, NKM CAPITAL GROUP, LLC and GUY KOREN, and Defendants J & K AMERICANA, LLC, J&K LAKEWOOD, LLC, J&K OAKRIDGE, LLC, J&K VALLEY FAIR, LLC, J & K ONTARIO, LLC, J&K PC TRUCKS, LLC, HLK MILPITAS, LLC, and GK CERRITOS, LLC

**THE PCJV USA PARTIES' OBJECTIONS TO THE REPORT & RECOMMENDATION RE: MOTION FOR SANCTIONS (DKT. NO. 205-1)**

1

## **CERTIFICATE OF SERVICE**

2

3       The undersigned certifies that on July 7, 2025, the foregoing document was

4   electronically filed with the Clerk of the Court for the United States District Court,

5   Central District of California, using the Court's Electronic Case Filing (ECF)

6   system.  I further certify that all participants in the case are registered CM/ECF

7   users and that service will be accomplished by the CM/ECF system.

8       I certify under penalty of perjury that the foregoing is true and correct.

9   Executed on July 7, 2025.

10

11                              By:   /s/AJ Cruickshank

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**THE PCJV USA PARTIES' OBJECTIONS TO THE REPORT & RECOMMENDATION RE: MOTION FOR SANCTIONS (DKT. NO. 205-1)**