MICHAEL D. MURPHY
MDMurphy@foxrothschild.com
MATTHEW FOLLETT
MFollett@foxrothschild.com>
FOX ROTHSCHILD LLP
Constellation Place
10250 Constellation Boulevard, Suite 900
Los Angeles, California 90067
Telephone:  310.598.4150
Facsimile:   310.556.9828

Attorneys for Plaintiff and Counterclaim
Defendant SHAKEY'S PIZZA ASIA
VENTURES, INC. and Third-Party Defendants
CINCO CORPORATION, PC
INTERNATIONAL PTE LTD., and SPAVI
INTERNATIONAL USA, INC.

## UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| SHAKEY'S PIZZA ASIA VENTURES, INC, a Philippines corporation,<br><br>Plaintiff,<br><br>v.<br><br>PCJV USA, LLC, a Delaware limited liability company; PCI TRADING, LLC, a Delaware limited liability company; GUY KOREN, an individual; POTATO CORNER LA GROUP, LLC, a California limited liability company; NKM CAPITAL GROUP, LLC, a California limited liability company; J & K AMERICANA, LLC, a California limited liability company; J&K LAKEWOOD, LLC, a California limited liability company; J&K VALLEY FAIR, LLC, a California limited liability company; J & K ONTARIO, LLC, a California limited liability company; HLK MILPITAS, LLC, a California, limited liability company; GK CERRITOS, LLC, a California, limited liability company; J&K PC TRUCKS, LLC, a California limited liability company; and, GK CAPITAL GROUP, LLC, a California limited liability company and DOES 1 through 100, inclusive, | Case No. 2:24-CV-04546-SB(GRX)<br><br>*The Hon. Stanley Blumenfeld, Jr.*<br><br>**RESPONSE TO OBJECTIONS BY PCJV USA PARTIES REGARDING  MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION [DKT. 204]**<br><br>Complaint Filed:    May 31, 2024<br>Trial Date:           August 4, 2025 |

1

1          Defendants.

2

3    PCJV USA, LLC, a Delaware limited
     liability company; PCI TRADING LLC,
4    a Delaware limited liability company;
     POTATO CORNER LA GROUP LLC,
     a California limited liability company;
5    GK CAPITAL GROUP, LLC, a
     California limited liability company;
6    NKM CAPITAL GROUP LLC, a
     California limited liability company; and
7    GUY KOREN, an individual,

8              Counter-Claimants,

9        v.

10   SHAKEY'S PIZZA ASIA VENTURES,
     INC, a Philippines corporation,
11
               Counter Defendant.
12

13   PCJV USA, LLC, a Delaware limited
     liability company; PCI TRADING LLC,
14   a Delaware limited liability company;
     POTATO CORNER LA GROUP LLC,
15   a California limited liability company;
     GK CAPITAL GROUP, LLC, a
16   California limited liability company;
     NKM CAPITAL GROUP LLC, a
17   California limited liability company; and
     GUY KOREN, an individual,
18
     Third Party Plaintiffs,
19   v.
     PC INTERNATIONAL PTE LTD., a
20   Singapore business entity; SPAVI
     INTERNATIONAL USA, INC., a
21   California corporation; CINCO
     CORPORATION, a Philippines
22   corporation; and DOES 1 through 10,
     inclusive,
23
               Third Party Defendants.
24
     //////////////////
25

26

27

28

                        2

# **TABEL OF CONTENTS**

Page

I.    **INTRODUCTION** ...................................................................6

II.   **RELEVANT FACTS AND PROCEDURAL HISTORY** ..........................9

    A. Relevant Underlying Facts Supported by Evidence in the Record. .....9

    B. Defendants Embark on A Scorch Earth Campaign Marked By Tenuous at Best (And Thus Far all Rejected) Legal Theories and Factual Mischaracterizations. ................................................11

III.  **ARGUMENT** ......................................................................11

    A.    The Order was the Subject of Pre-Motion Informal Agreements Not Motions to Compel ......................................................12

    B.    *The Document Requests Complained About Were Never Ordered Produced, Are Wholly Inadmissible at Trial, And Given the Record, The Evidence That Matters if The Deed.* ..............................12

    C.    *Plaintiffs' Objections Based on Relevance, Proportionality, and Financial Secrecy Were Never Evaluated.* ...........................14

    D.    *The Magistrate Judge Correctly Denied Defendants' Call For De Facto Terminating Sanctions Because They Utterly Failed Not Only To Demonstrate Prejudice, But Tie Any Prejudice To Their Requested Relief.* ......................................................15

    E.    Defendants' Averments About Plaintiff "Hostage Holding" Rule 26 Documents Is A Poorly Disguised Attempt To Suggest That Every Single Document That It Has Requested—including Those the Magistrate Has Rejected As Overbroad—Falls Within The Scope of Plaintiff's Rule 26 Disclosures. ...........................17

    F.    The Report Does Not Err By Faulting PCJV USA Parties. ...........18

    G.    *The Failure to Meet and Confer Throughout this Process Caused the Delays About Which Plaintiffs Complain.* ...........................18

    H.    *The Objections Fail to Explain, Let Alone Address, PCJV's Failures in Disclosure Preventing Compliance with Certain Trade Secret Requests.* ...................................................19

    I.    *A Mere Glance At The Cases To Which Defendants Cite Reveal That Termination Sanctions Would Be Far Too Severe.* .................19

IV.   **CONCLUSION** .................................................................23

3

**<u>Tabel of Authorities</u>**

**Page**

# <u>TABLE OF AUTHORITIES</u>

**Page(s)**

**Cases**

*B. F. Goodrich Co. v. A. T. I. Caribe, Inc.*,
  366 F. Supp. 464 (D. Del. 1973) ........................................................ 12

*Bridge Lines, Inc. v. Luxury Coach of America, LLC*,
  Case No. 5:24-cv-00288-SPG-SPx, 2024 WL 5355588 (C.D. Cal.
  Nov. 15, 2024) .................................................................................... 18

*Coleman v. American Red Cross*
  (6th Cir. 1994) 23 F3d 1091 .............................................................. 14

*Harmon v. CSX Transportation, Inc.*
  (6th Cir. 1997) 110 F3d 364 .............................................................. 14

*In re Heritage Bond Lit.*,
  223 F.R.D. 527 (C.D. Cal. 2024) ........................................................ 20

*Imperial Residential Design, Inc. v. Palms Dev. Grp., Inc*.,
  70 F.3d 96 (11th Cir. 1995) ................................................................ 12

*Ins. Corp. of Ireland v. Compagnie Des Bauxites De Guinee*,
  456 U.S. 694 ....................................................................................... 14

*U.S. ex rel. Lujan v. Hughes Aircraft Co.*,
  243 F.3d 1181 (9th Cir. 2001), *overruled by Stein v. Kaiser Found.
  Health Plan, Inc.,* 115 F.4th 1244 (9th Cir. 2024) ............................... 6

*Navellier v. Sletten*,
  262 F.3d 923 (9th Cir. 2001) ............................................................... 7

*Pac. Supply Co-op. v. Farmers Union Cent. Exch. Inc.*,
  318 F.2d 894 (9th Cir. 1963) ............................................................. 13

*Palos Verdes Corp. v. Hous. Auth. of Los Angeles Cnty.*,
  202 Cal. App. 2d 827 (1962) ............................................................. 12

4

*Potlatch Corp. v. U.S.*,
  679 F.2d 153 (9th Cir. 1982) ...............................................................21

*Sanchez v. Rodriguez*,
  298 F.R.D. 460 (C.D. Cal. 2014) .......................................................20

*Teixeira v. BMW of N. Am., LLC*,
  Case No. 2:22-cv-02338-WLH-MAR, 2023 WL 6787457 (C.D.
  Cal. Sept. 26, 2023) ...........................................................................19

*United States v. Sumitomo Marine & Fire Ins. Co.*,
  617 F.2d 1365 (9th Cir. 1980) .............................................................21

*Yeti by Molly, Ltd. v. Deckers Outdoor Corp.*,
  259 F.3d 1101 (9th Cir. 2001) .............................................................19

**Other Authorities**

Defendants' Averments About Plaintiff "Hostage Holding" ....................16

Fed. R. Civ. P. 37(c)(1).............................................................................14

7 James W.M. Moore, et al., Moore's Federal Practice § 37.63 (3d ed.
  2009) ...................................................................................................14

LR 72-3.6 ...................................................................................................11

Rule 26 ...............................................................................................16, 17

Rule 26(e) ..................................................................................................14, 15

Rule 37(b)(2)..........................................................................................14, 20

1    Plaintiff and Counter Defendant SHAKEY'S PIZZA ASIA VENTURES,

2  INC ("SPAVI"); PC INTERNATIONAL PTE LTD; SPAVI INTERNATIONAL

3  USA, INC; and CINCO CORPORATION (all collectively, the "SPAVI Parties")

4  submit this response to the objections (the "Objections") of Defendants,

5  Counterclaimants, and Third Party Plaintiffs ("PCJV USA Parties" or

6  "Defendants") to the Report And Recommendation Re: Defendants' Motion for

7  Sanctions ("the Report" or "R&R") by Magistrate Judge Alicia G. Rosenberg.[1]

8  Dkts. 204 & 211.

9    **I.    <u>INTRODUCTION</u>**

10    Defendant PCJV USA, LLC used to offer franchises domestically for the

11  brand Potato Corner. Potato Corner's new owner – SPAVI – was unable to strike a

12  licensing deal with PCJV, after two years of negotiating, and, as such, SPAVI, the

13  terminated PCJV's implied revocable at will license. According to McCarthy on

14  Trademarks, "the terminated dealer who is a "hold-over" and refuses to change the

15  mark is an infringer." (3 McCarthy on Trademarks and Unfair Competition,  §

16  25:31 (§ 25:31 ("The holdover licensee—Use of mark by ex-licensee is trademark

17  infringement, 3 McCarthy on Trademarks and Unfair Competition § 25:31 (5th

18  ed.).)

19    Defendant Guy Koren, the effective owner of PCJV and each of the affiliate

20  stores, as well as the owner of PCJV, which has entered into franchise agreements

21  with third parties, has never produced an agreement giving PCJV licensing rights

22  after May 31, 2024. That is because none exists. At the injunction proceeding,

23  Defendants proffered law and facts to support their claim that two documents give

24  them rights today, although each has already been dispensed by the 9th Circuit and

25  now constitute the law of the case; a "doctrine that requires a district court to follow

26  _____

27  [1] The SPAVI Parties respectfully note that they are responding as best possible
    under the circumstances; specifically, that while the PCJV USA Parties had seven
    days to draft their Objections after the Court issued its July 1 Order, the SPAVI

28  Parties had two days to draft a response to them.

6

the appellate court's resolution of an issue of law in all subsequent proceedings in the same case." *U.S. ex rel. Lujan v. Hughes Aircraft Co.,* 243 F.3d 1181, 1186 (9th Cir. 2001), *overruled by Stein v. Kaiser Found. Health Plan, Inc.,* 115 F.4th 1244 (9th Cir. 2024).

Rather than find a way out of this case, which is now a damages case, Defendants now reveal that their strategy will be to cause chaos by forcing Plaintiffs to defend legal claims and factual arguments that are not in any way supported by law and fact, notwithstanding the certification to the reverse effect.

Defendants' objections – served at midnight the night it was due (after having seven days to prepare it), so as to minimize the time available to respond – confirm this strategy.

They claim an Order following a motion to compel was violated. It was not. They claim that their Requests for Production were ordered to be complied with. They were not. Instead, the Magistrate procured agreements to produce a select category of documents and conduct searches based on mutually agreeable search terms.

As to the former, SPAVI complied. As to the latter, SPAVI tried to meet and confer, but Defendants refused, resulting in voluminous production that could not possibly be reviewed in time. This was Defendants' fault, not Plaintiff, given the refusal to meet and confer.

Defendants also claim entitlement to documents relating to the deal to Cinco and SPAVI. They do not. Relying upon a legal theory that is precluded and contrary to multiple authorities and based on facts that do not exist, Defendants wish to strike Plaintiffs' entire case for trademark infringement and trade secret theft, based upon the ***proper*** refusal of Plaintiffs to comply based on well-founded objections.

What Plaintiff agreed to, in the narrow March 12 Order, are only peripherally tied to the Requests at issue. When the Cinco – SPAVI deal documents were

RESPONSE TO OBJECTIONS BY PCJV USA
PARTIES REGARDING  MAGISTRATE JUDGE
DKT. 204]

2:24-CV-04546-SB(AGRX)

reviewed by Plaintiffs' counsel, it was revealed that the entire massive document would be redacted, if in compliance with the Order. As such, in an attempt to help Defendants, Plaintiff offered to show the whole unredacted agreement under limited circumstances so that they could see nothing contained therein would be beneficial.

Rather than meet and confer, Defendants' ignored the email, advised the Magistrate, again,  falsely, that this part of the order was ignored by Plaintiff, and sought orders that Plaintiff may not seek damages on its trademark case because of this document they were never entitled to, no order commanded the production of, and that was offered under limited circumstances as an attempt to meet and confer. Bootstrapping on that fact pattern, Defendants seek the death penalty against Plaintiff by not providing an irrelevant document that does not help them and for which objections were preserved from the outset.

Defendants' Objections to the Report should be overruled for additional reasons. The scattershot failure to comply with the requisite elements of a sanctions motion requiring, in essence, an order, knowing violation of the specific order that specifically causes prejudice, met, and conferred upon in good faith, warranting a narrowly tailored issue sanction. *See , e.g., Navellier v. Sletten*, 262 F.3d 923, 947–48 (9th Cir. 2001) (discussing these factors and also holding, which was never addressed by Defendants, why this should be the *first* sanction.) Reliance on sweeping generalizations without support, PCJV seeks the death penalty in a case, where, notably, the only documents the PCJV Parties have produced in this case, entirely, are its injunction exhibits and those the Magistrate ordered them to produce on April 4th2025.

That should not be lost on anyone, as contrast to the documented efforts by Plaintiff's counsel to comply under the very difficult circumstances to which Defendant contributed at best and calculated at worst.

8

## II.    <u>RELEVANT FACTS AND PROCEDURAL HISTORY</u>

SPAVI is a restaurant chain and food service company that is the sole owner of the "Potato Corner" brand, an international fast food outlet chain that proudly sells a variety of flavored fries and other menu items. At issue in this case is Defendant PCJV USA, LLC's ("PCJV") loss of rights to use the brand, on May 31, 2024, after a decade and a half of being the sole licensee in the United States, and opening nearly forty stores, without paying a single thin cent for the rights to the brand. PCJV ignored the termination of its license, and continued using the Potato Corner brand, causing this lawsuit to be filed against PCJV and its principal (Defendant Guy Koren) who owns and controls the remaining Defendants who operate Potato Corners under sublicenses with PCJV (which is also terminated). PCJV desperately wants to prove that its rights to use the brand continued after May 31, 2024 (even though there was no written license agreement). Those efforts have failed spectacularly, as PCJV and Koren have since been enjoined from using the Potato Corner brand, and their knowing refusal to comply with that order has resulted in one contempt ruling. (Dkt. Nos. 56, 155.)

Nevertheless, PCJV is keen on lobbing the same alleged facts and legally untenable arguments rejected during the injunction, particularly in contexts like this, in which it is not bound by the obligation to substantiate a fact with competent evidence or support its legal arguments with good law.

### A. Relevant Underlying Facts Supported by Evidence in the Record.

"Potato Corner" was previously owned by Cinco, and as one of its founders, Jose P. Magsaysay, Jr. testifies, it began with one potato corner cart in 1992 and soon became a worldwide phenomenon. (Dkt. 44-3 (Magsaysay Decl., ¶ 2-12.) In December 2021, SPAVI entered into a transaction to acquire the Potato Corner Intellectual Property ("PCIP") from the founders, including the international registrations for the Potato Corner Standard Characters Mark, the Potato Corner

1    Logo Mark, one tag line mark, and all of the rights thereto, from Cinco. (Dkt. 44-10

2    through 44-15). That transaction closed during the first half of 2022. x

3    The dates of first use arise from Cinco's first use, and despite having said,

4    repeatedly, they used the marks first, this is untrue. Defendants have no proof that

5    they used the marks first, except in the context of the absurd argument that they, as

6    licensees of SPAVI used the marks in the United States first (on behalf of Cinco,

7    the licensor). This apparent claim, adverse possession by a licensor, is ludicrous

8    and, if it were the law, would collapse the entire trademark licensing regime by

9    making licensors and licensee adverse competitors.

10        SPAVI spent more than two years from the announcement of its acquisition

11    of the Potato Corner Intellectual Property attempting to enter into a written license

12    agreement with PCJV and PCIT. (Dkt 44-5 (Leong-Tan Decl. ¶ 33-66; and Dkt 44-

13    6 Alvero Decl. at ¶¶ 10-19). Despite SPAVI's good faith negotiations, Koren

14    abandoned the negotiations and was unwilling to enter a commercially viable

15    license agreement, refusing to produce financials for his stores. (Dkt 44-5, Leong-

16    Tan Decl. ¶ 52-66.) For these reasons, on May 31, 2024, SPAVI terminated the at

17    will license currently enjoyed by PCJV, PCIT, and the Koren Affiliates that operate

18    Potato Corner franchisees of PCJV.

19        On May 31, 2024, Plaintiff filed its Complaint against Defendants (Dkt. 1),

20    hours after Plaintiffs terminated the at will license of Defendant PCJV (licensee),

21    and its owner (Koren), the supply chain affiliate (PCIT), and sublicensees (the

22    remaining Defendants) refused to cease using the Trademarks. In fact, none of the

23    Defendants, let alone Koren, reached to communicate with SPAVI after receipt of

24    the letter, not even to ask to discuss the document – they pretended it never

25    happened. (Dkt. 38-1 (Gregorio Decl., 73.)

26

27

28

RESPONSE TO OBJECTIONS BY PCJV USA                                    2:24-CV-04546-SB(AGRX)
PARTIES REGARDING  MAGISTRATE JUDGE
DKT. 204]

**B. Defendants Embark on A Scorch Earth Campaign Marked By Tenuous at Best (And Thus Far all Rejected) Legal Theories and Factual Mischaracterizations.**

For SPAVI, protection of its brand is key and a primary purpose of this litigation. (Murphy Decl., ¶¶ 3-7) Moreover, SPAVI must have the market cleared of the damage caused to the brand by Defendants, who, at the end of the day, are nothing holdover licensees who refuse to give up the rights they lost to someone else's brand.

Between September 20, 2024 and January 31, 2025, *alone*, Plaintiffs were forced to oppose ten Motions, Requests for Orders, or Requests for Emergency Orders (including two in the Ninth Circuit and one in front of SCOTUS. (Dkt. 173-1 ¶¶ 121-14; Dkt Nos. 41, 46, 58-61, 63-64, 71, 72-72, 75-78, 80, 85, 88-89, 92, 94, 95.) Half of these had to be briefed over Thanksgiving weekend, and the Christmas holiday (professional courtesies soundly denied). (Id.) Plaintiff, however, had multiple orders reaffirming the likelihood of success in this action on the trademark claims, and an injunction. However, the injunction was being so brazenly disregarded, an OSC re contempt was necessary. And that lengthy process ensued from December 26, 2024 through April 15, 2025 (Dkt. 155.)

Defendants' brazen strategy of burying the owner of the IP they are stealing with frivolous motions, disregarding Court orders in a contemptuous way, using frivolous theories and allegations of fact that are lacking in any probable cause in filing after filing has forced Plaintiffs to incur multiple 6-figures in attorneys' fees just to attempt to obtain injunction orders and coerce compliance – which Defendants still refuse. (Dkt. 173-1., ¶¶ 14-15.)

### III.   ARGUMENT

The Objections contain a subtle warning to Plaintiff and this Court: Defendants intend to use their time in front of a jury cite incorrect legal principles

1  and facts that do not exist; a strategy on which these Objections also rely.

2    A.    **The Order was the Subject of Pre-Motion Informal Agreements**
3          **Not Motions to Compel**

4    Defendants seem confused as to the procedural posture, suggesting that the

5  Order at issue was from a Motion to Compel (it was not) and that "the Court

6  granted PCJV USA Parties' motion and compelled the production of all documents

7  responsive to Plaintiff's Requests for Production of Documents ("RFP"), Set One,

8  inclusive of "RFP Nos. 1 to 20" and a "privilege log," with specific and limited

9  carveouts." (Objections at 2:18-21.) This statement is simply incorrect.  There was

10 no Motion, no objections were overruled, and what was ordered was a specific set

11 of documents, and to conduct searches using agreed upon search terms as to the

12 rest.

13   At the hearing on this Motion the Magistrate went through each category that

14 was the subject of the Order, and confirmed SPAVI's compliance. The Objections

15 fail to note this, and fail to even attach the Transcript. *See also* LR 72-3.6.

16   Defendants complain that much of the responsive documents were found in

17 public filings, but that is exactly what was discussed on March 12, 2025. Publicly

18 traded companies make statements that are covered by the SEC rules, and that is

19 what was produced. Any Board minutes and financial statements related to Potato

20 Corner all are found in SEC filings, which Plaintiff produced.

21   The difficulties came down to the search terms, for most of the Requests,

22 which, as discussed below, is a problem of PCJV's own making. Had they met and

23 conferred things might have turned out differently.

24   B.    ***The Document Requests Complained About Were Never***
25          ***Ordered Produced, Are Wholly Inadmissible at Trial, And Given the***
26          ***Record, The Evidence That Matters if The Deed.***

27   The Objections State: "PCJV's document requests all concerned one singular

28

RESPONSE TO OBJECTIONS BY PCJV USA                              2:24-CV-04546-SB(AGRX)
PARTIES REGARDING  MAGISTRATE JUDGE
DKT. 204]

transaction regarding Plaintiff's alleged acquisition of intellectual property put at issue in Plaintiff's complaint, preliminary injunction papers and amended complaint." Dkt. 211 at p. 11.

There is superior evidence of the sale is already in the record, and it is conclusive proof that SPAVI is the owner. There are multiple different doctrines that render the purchase and sale documents irrelevant.

First, the record evidence between the parties to the deal – Cinco and SPAVI – is conclusive even if as PCJV hopes, the underlying contract is ambiguous. In California's recitation of the merger rule states "[i]If the language of a deed is plain, certain, and unambiguous, neither parol evidence nor surrounding facts and circumstances will be considered to add to, detract from, or vary its terms or to determine the estate conveyed. *See, e..g, Palos Verdes Corp. v. Hous. Auth. of Los Angeles Cnty.*, 202 Cal. App. 2d 827, 836 (1962). The merger doctrine applies, obviously to purchases of intellectual property as well. *See, generally, B. F. Goodrich Co. v. A. T. I. Caribe, Inc.*, 366 F. Supp. 464, 467 (D. Del. 1973). As such, the purchase and sale agreement is irrelevant and inadmissible as violative of the merger doctrine given the clear and unambiguous deed.

Second, because PCJV was not a party to the transaction, it cannot challenge the deed or representations contained therein., *See Imperial Residential Design, Inc. v. Palms Dev. Grp., Inc.*, 70 F.3d 96, 99 (11th Cir. 1995) (agreeing that "that, where there is no dispute between the copyright owner and the transferee about the status of the copyright, it would be unusual and unwarranted to permit a third-party infringer to invoke [the requirement of a writing memorializing the status] to avoid suit for copyright infringement.") Indeed, PCJV has no standing to assert any defects, even if there was a vague deed.

Third, and perhaps most significant, at all times prior to the termination, PCJV, as "a licensee [] of a trademark or trade name may not set up any adverse

13

claim in it as against its licensor." *Pac. Supply Co-op. v. Farmers Union Cent. Exch. Inc.,* 318 F.2d 894, 908 (9th Cir. 1963). Under the licensee estoppel doctrine, the merger doctrine, or the standing doctrine, any of the deal documents are inadmissible to disprove what is unequivocal in the Deed: SPAVI owns all of the Potato Corner trademarks and associated goodwill.

### C.    *Plaintiffs' Objections Based on Relevance, Proportionality, and Financial Secrecy Were Never Evaluated.*

PCJV is a competitor of SPAVI, having incubated its competing brand as a holdover licensee illegally operating as a Potato Corner. As a competitor, SPAVI rightly objected to PCJV seeing the financial innards of an irrelevant transaction. These objections were preserved,  and were objections based on relevance and proportionality.

PCJV makes a surprising presentation as to what transpired with the Magistrate below, stating that the Objections State: "At the March 12 hearing, the Court, for good reasons, overruled Plaintiff's discovery objections as Plaintiff was trying to suppress evidence it put at issue regarding the alleged acquisition of IP rights in the U.S." This is utterly false. To the contrary, the Magistrate (as confirmed in the R&R ruled on some objections – by sustaining them. *See e.g.*, Dkt. 204.

Had Plaintiff refused to agree, it is confident its objections would prevail. Plaintiff

Rather than go through the laborious process of opposing a Motion to Compel, notwithstanding the objectionable nature of these requests seeking irrelevant documents barred by multiple doctrines, Plaintiff agreed to produce what it could that relates specifically to U.S. Operations, of which it turned out there was no single document not covered by the attorney-client privilege. It is true that no privilege log was produced, however, no argument has been made that the absence

14

of a log prepared in the last days of discovery identifying which attorneys were party to which email predating the deed – irrelevant documents anyway – has prejudiced Defendants one bit.

> **D.     The Magistrate Judge Correctly Denied Defendants' Call For De Facto Terminating Sanctions Because They Utterly Failed Not Only To Demonstrate Prejudice, But Tie Any Prejudice To Their Requested Relief.**

"Rule 37(b)(2) contains two standards – one general and one specific – that limit a district court's discretion." *Ins. Corp. of Ireland v. Compagnie Des Bauxites De Guinee*, 456 U.S. 694, 707 1982). "First, any sanction must be 'just,'" reflecting "the general due process restrictions on the court's discretion." *Id.* "[S]econd, the sanction must be specifically related to the particular 'claim' which was at issue in the order to provide discovery." *Id.*  The mere violation of a discovery order alone—even if considered in a vacuum and excluding the mitigating circumstances that Plaintiff has demonstrate here does not warrant dismissal of a case unless the opposing party shows it was prejudiced thereby. *See Coleman v. American Red Cross* (6th Cir. 1994) 23 F3d 1091, 1095—violation of protective order by plaintiff's lawyer did not justify dismissal of action; *see Harmon v. CSX Transportation, Inc.* (6th Cir. 1997) 110 F3d 364, 368—dismissal upheld where counsel's neglect in failing to respond to interrogatories prejudiced defendant's trial preparation.

Like their underlying motion, Defendants objections fail to ***credibly*** demonstrate (or demonstrate at all) that they were prejudiced by any failure to comply with any specific aspect of the March 12., 2025 Order. *See* Fed. R. Civ. P. 37(c)(1) ( ". . . unless the failure [to comply with Rule 26(e)] ... is harmless"); 7 James W.M. Moore, et al., Moore's Federal Practice § 37.63 (3d ed. 2009) (sanctions may not be imposed if a party's failure to provide information as required

by Rule 26(e) was harmless). Moreover, they fail to specifically tie any claimed harmed to *de facto dispositive* sanctions they seek.

Defendants' Objections in no way rebut the findings by the magistrate that they were not harmed by any noncompliance with the March order or that they failed to adequately connect any prejudice to the sanctions they seek. *See e.g*., Dkt. 204, pp. 15-16. (The Motion "failed to explain the prejudice [Defendants] suffers in defending against SPAVI's claims or presenting evidence in support of the counterclaims.); see e.g., Dkt. 204, p. 12. (Defendants have "not shown any prejudice from a 23-day delay in SPAVI's production of documents responsive to these document requests.")

Defendants' only claims to purported prejudice are their conclusory accusations that Plaintiff is "suppressing" a cornucopia of documents that will somehow bolster their theories of fact and law that thus far that every single court to have heard them has rejected. In support of their averments of suppression, Defendants, for example, point to the Asset Purchase Agreement that has not yet been produced—but which they do not deny that Plaintiff offered for them to inspect *in person*. They curiously omit from explaining how Plaintiff could simultaneously conspire to suppress documents while at the same time offering Defendants a chance to look at them in person, which the magistrate judge—who issued the March 12 Discovery Order—concluded actually "exceeded" the requirements of her order. Dkt. 204, p. 10.  Illogical averments aside, Defendants point to not a single email, document, testimony, or anything else to suggest that Plaintiff is suppressing or destroying evidence.

The magistrate judge astutely observed that Defendants have failed to connect Plaintiff's purported violations with the sanctions that they request. Their failure is all the more alarming because the sanctions they seek would prove *de facto* terminating. If granted, it would be virtually—if not completely—impossible

RESPONSE TO OBJECTIONS BY PCJV USA PARTIES REGARDING  MAGISTRATE JUDGE DKT. 204]

2:24-CV-04546-SB(AGRX)

for Plaintiff to prevail on its claims, or for Defendants to *not* prevail on their cross-claims. Defendants' claim of wanting only to avoid "trial by ambush" must be dismissed for what it is—a thinly-veiled pretext for a Hail Mary pass that asks the Court to presume that the documents not yet produced just so happen to support every single of one of their ill-fitted factual and legal theories. Had Defendants *really* wanted to avoid "surprise" or "ambush," they would have simply requested that any documents not yet produced be disallowed.

### E. Defendants' Averments About Plaintiff "Hostage Holding" Rule 26 Documents Is A Poorly Disguised Attempt To Suggest That Every Single Document That It Has Requested—including Those the Magistrate Has Rejected As Overbroad—Falls Within The Scope of Plaintiff's Rule 26 Disclosures.

Plaintiff has not held "hostage" any Rule 26 documents. The magistrate judge articulated no such finding and Defendants have not evidenced anything to support the claim. Throughout their Motion and Objections to the Report, Defendants try to conflate without anyone noticing the documents that fall under Rule 26 Disclosures and the documents that *they* aver having been put "at issue" by virtue of Plaintiff's claims and the claims that *Defendants* have asserted. No mind is paid to the magistrate judge's conclusion about the ones she deemed as facially overbroad, "kitchen sink" requests, or as violative of attorney-client privilege. Plaintiff makes its claim to the intellectual property rights at issue by virtue of the contract that it entered with Cinco. By Defendants' logic—much already soundly rejected by the magistrate judge—this means that virtually every conceivable document, including every single communication with anyone ever—including those containing legal opinions—even tangentially related to the transaction between Cinco and SPAVI falls with the purview of Rule 26 disclosures. Similarly falling within the purview of the Rule 26 disclosures are documents sufficient "to

17

1  compare **any businesses Plaintiff acquired in other countries** to the alleged IP

2  right Plaintiff allegedly acquired without the franchise business in the United

3  States." (Dkt. 211, p. 12:2-4). The argument not only flies in the face of logic, it

4  flies in the face of any conceivable tenant regarding proportionality in discovery.

5          **F.**     **The Report Does Not Err By Faulting PCJV USA Parties.**

6        The Objections attempt to frame the magistrate judge as having "excuse[d]

7  Plaintiff's suppression of evidence in discovery, including failure to timely produce

8  documents within its own initial disclosures, then fault PCJV USA Parties for

9  initially believing Plaintiff actually wanted a trial continuance when, in reality,

10  Plaintiff was simply delaying its discovery obligations" (Dkt. 211, p.9:15-18) This

11  suggestion alone signals the suspicion with which the Court should consider this

12  argument.

13        Nowhere has the Court excused the suppression of evidence. Full stop. The

14  only half-hearted support for this claim appears to be Defendants' own self-serving

15  claim that Plaintiff moved for an ex parte and that "there are good reasons to

16  believe Plaintiff just used the issue for delay and to avoid sanctions while

17  suppressing evidence." No rhyme or reason is given on what exactly these "good

18  reasons" are or how the ex parte in any way caused a delay related to the discovery

19  issues before the magistrate judge.

20          **G.**    *The Failure to Meet and Confer Throughout this Process*

21               *Caused the Delays About Which Plaintiffs Complain.*

22        The Court need look no further than Defendants' repeated refusals to meet-

23  and-confer or compromise to get a peak at their true motivation in seeking much of

24  its discovery. Their refusal to meet-and-confer or compromise caused most of the

25  delay about which they complain. Defendant refused to meet-and-confer about

26  search terms, for example, which in turn yielded over 40,000 documents consisting

27  of multitudes of more pages. As evidenced by Plaintiff, the unwillingness to meet-

28

RESPONSE TO OBJECTIONS BY PCJV USA
PARTIES REGARDING  MAGISTRATE JUDGE
DKT. 204]
                                         2:24-CV-04546-SB(AGRX)

and-confer over the terms further magnified the problem presented by the category

of documents sought, since Defendants are now actively competing with Plaintiff

and the documents reveal financial, operational, and strategic information.

H.    ***The Objections Fail to Explain, Let Alone Address, PCJV's***

***Failures in Disclosure Preventing Compliance with Certain***

***Trade Secret Requests.***

In terms of documents related to SPAVI' trade secrets claims, Defendant

wholly-failed, as the magistrate judge recognized, to disclose which of the SPAVI

flavorings that Defendants sent to a third party for reverse engineering. This too

created the obstacle to production for which Defendants now cry foul. As the

magistrate judge keenly observed, "Without knowing whether or how Defendants

reverse engineered one or more flavorings, Plaintiff is unable to identify the

relevant agreements that it will contend prohibit Defendants from reverse

engineering in the manner they did." Dkt. 204 p. 19.

I.    ***A Mere Glance At The Cases To Which Defendants Cite Reveal***

***That Termination Sanctions Would Be Far Too Severe.***

In *Bridge Lines, Inc. v. Luxury Coach of America, LLC,* Case No. 5:24-cv-

00288-SPG-SPx, 2024 WL 5355588 (C.D. Cal. Nov. 15, 2024) the defendants

refused to sit for deposition or permit inspection of a bus and raised only objections

in response to plaintiff's interrogatories and requests for production. The defendant

also failed to respond to plaintiff's requests to meet and confer. The defendant failed

to comply with the court's order requiring responses, production, and making a

representative available for a deposition and had not produced any discovery as of

the filing of the motion for terminating sanctions.

The court issued terminating sanctions after the defendant received sufficient

warning regarding the potential for terminating sanctions. And, importantly the

court believed that no other sanctions were appropriate because the defendants

RESPONSE TO OBJECTIONS BY PCJV USA                        2:24-CV-04546-SB(AGRX)
PARTIES REGARDING  MAGISTRATE JUDGE
DKT. 204]

counsel had withdrawn and the defendants failed to file a substitution of attorney form or an intent to proceed pro se and after its counsel withdrew it failed to respond in the case in any manner. "Defendant's complete lack of response to the court's order indicates it does not intend to litigate this action properly, but rather intends to defy the court's discovery orders."

In *Teixeira v. BMW of N. Am., LLC*, Case No. 2:22-cv-02338-WLH-MAR, 2023 WL 6787457, at *1 (C.D. Cal. Sept. 26, 2023), evidentiary sanctions were issued because the defendant did not comply with the first motion to compel and a second motion was brought after document were still not produced. The Court emphasized that the Plaintiff's counsel identified specific categories of documents, described their relevance, and explained why he believes these documents exist and are in the defendant's control to both the court and the defendant. The defendant on the other hand had failed to directly address the plaintiff's arguments regarding relevance, or even cite the applicable legal standard, case law, or local rules. Instead, the defendant argues that the documents the plaintiff seeks are not necessary for him to litigate his case, despite the fact that the Court has already made the opposite determination.

In *Yeti by Molly, Ltd. v. Deckers Outdoor Corp*., 259 F.3d 1101 (9th Cir. 2001) The sanction precluding the testimony was based on the fact that the defendant failed to provide the expert rebuttal report for two and a half years and justified the delay by stating that the expert would only be used as a rebuttal witness and a report would only be issued if the defendant decided to have him testify. The report was eventually produced two years after the close of discovery, more than one year after the plaintiff's damages report was supplemented, and 28 days before trial. The defendant only justified the failure to timely produce the report on the fact that they were under the belief that the plaintiff's expert would be supplementing the report again, but the court did not buy this excuse because the

1    defendant could have issued a preliminary report or asked for an extension on the

2    discovery deadline. The failure to disclose this report was not justified or these

3    reasons.

4         In *Sanchez v. Rodriguez*, 298 F.R.D. 460 (C.D. Cal. 2014), terminating

5    sanctions were issued for several reasons based on the procedural history of the

6    case. First, the plaintiff failed to respond to a motion to compel and thus, the court

7    granted the motion requiring response by a date certain. The court cautioned the

8    plaintiff that failure to comply would result in sanctions. The plaintiff filed for an

9    extension, which was granted. The plaintiff did not produce the documents or

10   provide discovery responses by the new deadline. The defendant filed a motion

11   seeking terminating sanctions when the plaintiff failed to oppose the motion, the

12   court then issued an Order To Show Cause Re: Dismissal Of Action. The plaintiff

13   did not respond to the OSC or contacted the court in anyway. It appears that the

14   non-responsiveness not only to the defendants but the Court resulted in the

15   terminating sanctions.  "The plaintiff has flouted several of this Court's Orders,

16   which has caused this action to come to a stall and to consume an unwarranted and

17   inordinate amount of this Court's time and resources to deal with a problem arising

18   solely from plaintiff's failure and refusal to meet his discovery obligations and to

19   comply with court orders." at 472.

20        In *In re Heritage Bond Lit.,* 223 F.R.D. 527 (C.D. Cal. 2024), The Court

21   noted "Arguably, however, Rule 37(b)(2) sanctions may be premature because this

22   Court has not yet tried less drastic monetary sanctions against Kasirer defendants to

23   bring about their compliance with the Order of April 22, 2004." The Court did issue

24   the evidentiary sanctions because they never paid the monetary sanction from the

25   original order. Additionally, they failed to timely disclose clearly relevant

26   documents to Betker plaintiffs and make any effort to obtain the requested

27   documents. The documents they did provide were insufficient and devoid of key

28

RESPONSE TO OBJECTIONS BY PCJV USA
PARTIES REGARDING  MAGISTRATE JUDGE
DKT. 204]

2:24-CV-04546-SB(AGRX)

information. The court only awarded civil contempt sanctions because plaintiffs did not provide the Court any basis to award them civil contempt sanctions other than the attorney's fees they sought.

In *United States v. Sumitomo Marine & Fire Ins. Co.,* 617 F.2d 1365 (9th Cir. 1980), The defendant maintained that the court ignored the general rule that "neither dismissal nor preclusion of evidence that is tantamount to dismissal may be imposed when the failure to comply with discovery orders is due to circumstances beyond the disobedient party's control." However, this was not exactly the case. Sanctions were issued in the above cited case after 18 months of delay and failures during that time period to comply with the court ordered discovery. While the Court identified that the delay in complying with the order was likely due to short staffing, the trial court stated that "if the government counsel's problem was insufficient staffing, then perhaps the imposition of sanctions would generate some help from the Justice Department." A series of warnings from the district court, including the assessment of $500 in sanctions against the government counsel in March 1976, failed to convince the government that discovery orders were to be strictly followed in this case. Therefore, the court had no other choice but to issue a preclusion sanction.

In *Potlatch Corp. v. U.S.,* 679 F.2d 153 (9th Cir. 1982), the facts are not even close to the instant one. It pertains to the government's inability to meet the deadline because before an expert could be hired, the government Defendant had to overcome bureaucratic delays between government agencies. Specifically, the Government Defendant had to "secure the administrative file on this matter from the IRS, to study it, and to secure the defense recommendations of the Department before he could file the Government's answer; his need to find and interview appraisers able and willing to act and report within what was sure to be a limited period of time; his need to make a choice of appraisers and negotiate a fee likely to

1   prove acceptable in Washington before authority to hire could be sought; and the

2   need for the FBI to check the experts selected before authority to hire could be

3   granted." None of this is even relevant or equitable to this our case.

4   **IV.    CONCLUSION**

5          For the reasons discussed above, the SPAVI Parties respectfully request that

6   the  Court overrule the objections by the PCJV USA Parties to the Report.

7

8

9

10   Dated:  July 9, 2025                          **FOX ROTHSCHILD LLP**

11

12                                          _/s/ Michael D. Murphy_
                                           Michael D. Murphy
13                                          Matthew Follett
                                           Jordan Zolliecoffer
14                                          Attorneys for Plaintiff and Counterclaim
                                           Defendant SHAKEY'S PIZZA ASIA
15                                          VENTURES, INC. and Third-Party
                                           Defendants CINCO CORPORATION,
16                                          PC INTERNATIONAL PTE LTD., and
                                           SPAVI INTERNATIONAL USA, INC.
17

18

19

20

21

22

23

24

25

26

27

28

RESPONSE TO OBJECTIONS BY PCJV USA
PARTIES REGARDING  MAGISTRATE JUDGE
DKT. 204]                                                          2:24-CV-04546-SB(AGRX)

1

CERTIFICATE OF SERVICE

2          The undersigned certifies that, on July 9, 2025, the foregoing document was

3  electronically filed with the Clerk of the Court for the United States District Court,

4  Central District of California, using the Court's ECF filing system. I further certify

5  that all counsel for all parties to this action are registered CM/ECF user and that

6  service will be accomplished by the CM/ECF system.

7          I certify under penalty of perjury that the foregoing is true and correct.

8

9                                                    /s/ Michael d. Murphy
                                                      Michael D. Murphy
10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

RESPONSE TO OBJECTIONS BY PCJV USA                                    2:24-CV-04546-SB(AGRX)
PARTIES REGARDING  MAGISTRATE JUDGE
DKT. 204]