UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| SHAKEY'S PIZZA ASIA VENTURES, INC.,<br><br>    Plaintiff,<br><br>v.<br><br>PCJV USA, LLC et al.,<br><br>    Defendants. | Case No. 2:24-cv-04546-SB-AGR<br><br>ORDER DENYING MOTION FOR DISCOVERY SANCTIONS [DKT. NO. 153] AND APPOINTING SPECIAL MASTER |

    Notwithstanding the court's repeated warnings, the parties have continued to litigate this case in an unreasonable, uncooperative, and dilatory manner that falls far short of the court's requirements. The present dispute involves objections to a report and recommendation (R&R) on an untimely defense motion for discovery sanctions, based on an underlying discovery dispute that was not timely raised with the magistrate judge. The court denies Defendants' requested relief and appoints a special master to investigate the parties' misconduct and recommend appropriate sanctions.

I.

    The court issued a case management order (CMO) on September 6, 2024, providing the parties six months—until March 14, 2025—to complete fact discovery. Dkt. No. 29. The CMO cautioned the parties that they "should plan to complete discovery far enough in advance of the discovery deadline to allow for the filing of a discovery motion if necessary and for completion of the discovery allowed if relief is granted." *Id*. at 2. Instead, the parties waited until early March—less than two weeks before the discovery deadline—to inform Magistrate Judge Alicia Rosenberg of a discovery dispute. At Defendants' request, she promptly set a discovery conference for March 12. Defendants filed a joint agenda

1

for the discovery conference on March 11, although they attached the wrong exhibits, depriving Judge Rosenberg of the ability to review the dispute fully in advance. Dkt. No. 123. Defendants did not file a motion to compel or a motion for discovery sanctions at any point during the discovery period allowed by the CMO.

At the March 12 conference, Judge Rosenberg spent more than two hours hearing the dispute over the discovery Defendants sought and instructing the parties on producing narrower, more appropriate discovery. Toward the end of the conference, the parties for the first time mentioned that the fact discovery deadline was two days later. Judge Rosenberg then expressed concern about her inability to allow further discovery, but both defense counsel (Mr. Malynn and Mr. Beral) told her that she had until April 11 to rule on a discovery motion:

> THE COURT: Right. So I have a problem because I have no authority to change the cutoff date. So I can't order production unless the district judge's order --
>
> MR. MALYNN: April 11th is when we have to have a motion in front of the judge if we can't do this without motion.
>
> MR. BERAL: Every --
>
> THE COURT: April 11 is the deadline for a motion?
>
> MR. BERAL: Yes. Every motion hearing, April 11th is the deadline. Discovery cutoff is this Friday, March 14th.
>
> MR. MALYNN: For propounding discovery.
>
> MR. BERAL: Well, actually, no.
>
> THE COURT: In -- now that I think --
>
> MR. BERAL: It's cutoff.
>
> THE COURT: District courts, you have --
>
> MR. MALYNN: Yeah. Okay. You're right. Correct.
>
> THE COURT: Well, that's a major problem. Why are people coming to me so late?
>
> MR. MALYNN: We propounded this discovery months ago, your Honor. It's just been --

> THE COURT: I understand that, but coming to the court two days before the discovery cutoff date, how would anyone be able to produce anything in two days?
>
> MR. BERAL: Well, we've been guided by the discovery motion hearing deadline, which is April 11th, which would require us to file a motion by this Friday.

Dkt. No. 169 at 97:17–98:18. Defendants' representations were incorrect: the hearing deadline for *fact* discovery motions was March 14—the same as the deadline for fact discovery, and any motion seeking further fact discovery would have needed to be filed weeks earlier (as the CMO clearly states). Accepting Defendants' representations that the deadline for hearing discovery motions was April 11, Judge Rosenberg ordered Plaintiff to complete certain discovery before that date. *See id.* at 101:1–3 ("I feel comfortable using the April 11, 2025 date, unless you get relief from the district judge to extend the discovery cutoff beyond that."); Dkt. No. 128 (minute order setting deadlines for Plaintiff's production). The parties agreed to the proposed schedule.

Plaintiff did not produce all the discovery ordered by Judge Rosenberg. On April 14, Defendants filed a motion for discovery sanctions, set for hearing on May 31. Dkt. No. 153. The hearing deadline for all discovery motions had passed on April 11, and the hearing deadline for non-discovery motions was April 25, so the motion was more than a month late by any measure. Judge Rosenberg vacated the hearing but then, at Defendants' request, heard argument on Friday, June 27. The following Monday, Judge Rosenberg issued her 21-page R&R. Dkt. No. 204.

The R&R recounts various failures by Plaintiff to fully or timely comply with the discovery order and recommends that additional discovery be permitted if this court allows an extension, but it finds that the issue sanctions sought by Defendants (precluding Plaintiff from proving many key aspects of its case) are not warranted. Judge Rosenberg emphasized the difficulties raised by the parties' delay in seeking relief. *Id.* at 7 ("[C]ounsel should not wait until the last minute to request court intervention in discovery disputes, as happened in this case."); *id.* at 14–15 ("The parties in this case were free to seek court intervention on one or more discovery disputes at any point after the discovery period commenced, yet did not avail themselves of the opportunity until two days before the fact discovery cut-off date. A party cannot simply sit back, wait until the last minute, and then complain it is prejudiced because the other side should have produced documents earlier.").

3

In the meantime, on the verge of trial and after filing the first set of pretrial documents, Plaintiff[1] filed an ex parte application to amend the CMO, reopen discovery and motions practice, and continue the trial by six months.  Defendants opposed the motion, arguing that any delay would prejudice them and that Plaintiff had waited too long to seek relief.  On July 1, this court denied the ex parte application as untimely, finding that Plaintiff had not been diligent, and ordered the parties to meet and confer about the R&R, "including whether Defendants wish to waive the discovery proposed by Judge Rosenberg and proceed to trial without further delay."  Dkt. No. 208 at 6.  The court set an expedited schedule for either side to object to the R&R and briefly continued the remaining trial-related deadlines to allow resolution of the R&R.

In the parties' joint report, Defendants state that they oppose the relief suggested by Judge Rosenberg and do not wish to delay trial to reopen discovery.  Defendants filed a lengthy objection to the R&R, disputing Judge Rosenberg's description of the relevant background and requesting additional relief.  Plaintiff did not file objections to the R&R (including to its finding that Plaintiff violated Judge Rosenberg's discovery order) but responded to Defendants' objections.

## II.

A district judge "shall make a de novo determination of those portions of [a magistrate judge's] report or specified proposed findings or recommendations to which objection is made" and "may accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate judge."  28 U.S.C. § 636(b)(1).  "The statute makes it clear that the district judge must review the magistrate judge's findings and recommendations de novo *if objection is made*, but not otherwise."  *United States v. Reyna-Tapia*, 328 F.3d 1114, 1121 (9th Cir. 2003) (en banc).

## III.

Although Judge Rosenberg has made extraordinary efforts to accommodate the parties and address their arguments notwithstanding the difficulties caused by their delay, this court concludes on its de novo review that Defendants' motion for

---

[1] Some of the filings at issue, including the ex parte application, were joined by the third-party defendants, who are represented by the same counsel as Plaintiff.  The court refers solely to Plaintiff for simplicity, as the distinction is immaterial to this order.

discovery sanctions should be denied in its entirety because both the motion and the underlying request for discovery on which it is predicated were untimely.

Sanctions motions must be timely filed, and "unreasonable delay may render such a motion untimely." *MGA Ent., Inc. v. Nat'l Prods. Ltd.*, No. 10-CV-07083-JAK, 2012 WL 4052023, at *4 (C.D. Cal. Sept. 14, 2012) (cleaned up). "Discovery motions filed after the deadline for dispositive motions are presumptively untimely and such late-filed motions are routinely denied on that basis alone." *McCart-Pollak v. Saevitzon*, No. 2:20-CV-01624, 2025 WL 1706894, at *1 (D. Nev. June 17, 2025) (collecting cases). Defendants have neither sought leave to file their untimely motion nor shown good cause for their delay.

Similarly, Defendants' underlying request for more discovery was untimely. Defendants ignored the court's admonition to "complete discovery far enough in advance of the discovery deadline to allow for the filing of a discovery motion if necessary and for completion of the discovery allowed if relief is granted" (Dkt. No. 29 at 2), and instead waited until just before the discovery deadline to seek a discovery conference with the magistrate judge. This was far too late for effective relief, as Judge Rosenberg pointed out before defense counsel misrepresented to her that the fact discovery motion hearing deadline was a month later. By the time they sought relief in March, the only way for Defendants properly to obtain any additional discovery was to seek an extension of the CMO. They neither requested a continuance nor showed the diligence that is required under Rule 16 and the CMO to obtain a continuance.[2] *See* Dkt. No. 29 at 1 ("The deadlines below will *not* be continued absent *a timely showing of good cause.* **Good cause** requires a specific, detailed, timely, and non-conclusory showing of diligence from the outset of the case . . . ."); *Johnson v. Mammoth Recreations, Inc.*, 975 F.2d 604, 609 (9th

---

[2] In their objections, Defendants take issue with Judge Rosenberg's criticism of their delay, objecting that Plaintiff had been obligated to produce the disputed discovery since January 2025 and that the R&R should not have limited its analysis to Plaintiff's compliance with the March 12 order. Their argument fails for two reasons. First, the sanctions motion on its face seeks relief solely for Plaintiff's "failure to comply with the Magistrate Judge's Order dated March 12, 2025." Dkt. No. 153 at 2. Second, to the extent Defendants contend that Plaintiff has been in violation of its discovery obligations since at least January, their months-long delay in seeking relief is all the more problematic.

Cir. 1992) (Rule 16(b)'s "good cause" requirement for extending a CMO "primarily considers the diligence of the party seeking the amendment").

Excusing Defendants' untimeliness would be fundamentally unfair under the circumstances. They filed their motion after discovery had closed and set it for hearing even after the deadline for non-discovery motions to be heard. The court cannot properly consider the sanctions motion unless it first modifies the CMO to extend the deadline to hear discovery disputes. Yet Defendants have not moved to modify the CMO. On the contrary, Defendants vehemently—and successfully—opposed Plaintiff's recent request for a continuance of the pretrial and trial deadlines based on Plaintiff's delay in seeking an extension.

Defendants fail to acknowledge either the untimeliness of their motion or the obvious unfairness of their implicit request to grant them an extension immediately after having persuaded the court to deny Plaintiff's request for an extension to obtain discovery. Nor have they shown that they are entitled to the continuance they necessarily would have to seek. On this record, Defendants' delay is fatal. *See Glob. Master Int'l Grp., Inc. v. Esmond Nat., Inc.*, No. 19-CV-10360-RGK, 2021 WL 1187106, at *2 (C.D. Cal. Feb. 23, 2021) (denying untimely discovery sanctions motion because "with discovery now closed, it is too late for plaintiffs to seek evidentiary sanctions via a Rule 37 Motion for sanctions with respect to defendants' alleged non-compliance with their discovery obligations during the discovery period"), *aff'd*, No. 21-55809, 2023 WL 5181577 (9th Cir. Aug. 11, 2023).

In sum, Defendants bring an untimely motion seeking sanctions for Plaintiff's failure to produce discovery that Defendants untimely sought and that was ordered to be produced after the fact discovery cutoff based on Defendants' misrepresentation about the deadline. Defendants have neither sought leave for their late filing nor shown good cause for their delay (including their delay in first raising Plaintiff's noncompliance until days before the close of fact discovery). The motion is therefore denied as untimely.

III.

Even if the court were to overlook Defendants' untimeliness, Defendants have not shown that they are entitled to relief beyond what Judge Rosenberg recommended. Notwithstanding Plaintiff's belated assertions that it did nothing wrong (which should have been raised in an objection to the R&R), the R&R identifies multiple violations of Judge Rosenberg's March 12 order by Plaintiff.

Those violations, while more serious than Plaintiff suggests, are also less egregious than Defendants represent. Both sides continue to take aggressive positions that disserve their clients and ignore the obvious fact that neither side has comported itself appropriately over the course of this litigation. In any event, Judge Rosenberg recommended a measured remedy (assuming that the parties would promptly seek a continuance of the CMO)—briefly reopening discovery for the limited purpose of requiring Plaintiff to produce a subset of the evidence Defendants were seeking. Because Defendants have refused the suggested relief, this court need not determine whether reopening discovery for Defendants' benefit would be warranted under the totality of the circumstance.

The relief Defendants seek instead consists largely of orders effectively precluding Plaintiff from proving the key elements of its claims—for example, its ownership of the trademarks at issue. Such remedies are unreasonable and unwarranted for several reasons. First, the parties have already presented extensive argument and evidence on these matters in connection with the preliminary injunction, and both this court and the Ninth Circuit found that Plaintiff is likely to prevail on its trademark claim. Defendants appear to be trying to reassert legal theories that have been repeatedly rejected. Second, Defendants do not have clean hands; they have already been held in contempt and otherwise sanctioned for their misconduct in this case. Effectively precluding Plaintiff from presenting its case would be a disproportionate windfall to Defendants in a case where both sides have persistently failed to act diligently or to comply with the court's orders or their professional obligations. Third, "imposing such sanctions on [Plaintiff] would in essence reward [Defendants'] untimeliness by providing even greater benefit to their case (such as exclusion of evidence and witnesses) than they would have received through a timely discovery motion." *Glob. Master*, 2021 WL 1187106, at *2. Accordingly, Defendants have not shown that they are entitled to the remedies they seek, even apart from their untimeliness.

## IV.

On April 8, following a series of failures by the parties to meet and confer adequately or to timely file required joint reports, the court ordered the parties to show cause "why they should not be sanctioned under Rule 16(f)(1)(C) and the Court's inherent authority for their violation of the Court's order [to file a joint statement that was due by noon on April 8].³ In particular, the parties and counsel

---

³ The prior order, issued March 25, explained that "[a]fter missing their initial deadline, the parties filed a rushed report that is joint in name only, in which the

should address why the Court should not issue monetary sanctions in a reportable amount in light of their long history of noncooperation and the Court's repeated warnings about their conduct." Dkt. No. 148. After a hearing, the court further elaborated on the parties' misconduct and considered the appointment of a special master to investigate further—to which the parties agreed:

> [T]he presentations of both sides in their declarations and at the April 11 hearing continue to raise serious concerns about counsel's lack of professionalism, cooperation, and compliance with the Court's orders, especially concerning their obligations to meet and confer. Beyond their noncompliance, which appears sanctionable on its own, each side accuses the other of incivility ranging from sarcasm to shouting and name-calling. As the Court stated at the hearing, the persistent misconduct in this case suggests that both monetary sanctions and the reporting of counsel to the state bar may be warranted. Both sides welcomed the Court's further investigation, which each side suggests will prove it to be in the right, and both sides agreed that appointment of a special master for that purpose would be appropriate. *See* Fed. R. Civ. P. 53(a)(1)(A) (permitting appointment of a special master to "perform duties consented to by the parties").
>
> Accordingly, the Court defers ruling on the OSC re sanctions and orders as follows. The parties shall meet and confer in person or by videoconference and no later than April 21, 2025 shall file: (1) a joint filing containing all email correspondence between the parties relevant to their meet-and-confer efforts on the issue of attorney's fees for contempt and their preparation of the joint filings that were filed late; (2) a declaration from each side addressing any further context or history the Court should consider in evaluating counsel's interactions (as requested by counsel at the hearing); and (3) a joint proposal for the retention of a special master to investigate counsel's compliance

---

parties have reverted unhelpfully to pointing fingers at one other. . . . Their approach—waiting until after a deadline has passed and then arguing about who bears more blame for missing it—is inappropriate and counterproductive." Dkt. No. 135. The court noted that both sides had violated its previous order but "hope[d] that allowing the parties additional time to negotiate w[ould] enable them to refocus their efforts toward productive cooperation." *Id*. The court therefore declined at that time to issue an order to show cause and ordered the parties to continue their negotiations and file a further joint statement by noon on April 8.

> with the Court's order, including (a) the name and contact information of an individual whom the parties agree may be appointed as a special master, (b) a proposal for payment of the special master, and (c) a proposed plan for the timing and scope of the investigation.
>
> Counsel are advised that the Court will consider the extent of their cooperation and professionalism (or lack thereof) in complying with this order as a factor in determining what sanctions should be imposed for the parties' misconduct thus far. The Court's intention is—and has been throughout this case—to encourage the parties to cooperate professionally, respectfully, and productively to avoid the need for further judicial intervention. The Court's consideration of sanctions comes only after numerous warnings have proven insufficient to prompt appropriate behavior.

Dkt. No. 155 at 11–12. The parties agreed to the appointment of the Hon. Richard A. Stone as a special master, with the parties to split his fees equally. Dkt. No. 164 at 5 ("Judge Stone has consented to this appointment and is appropriate as he was the mediator in the prior case in which Mr. Beral and Mr. Murphy were counsel for the principal parties. As such, all parties are comfortable with his impartiality."). They reported, however, that they shared a mutual goal to work cooperatively and professionally with one another and suggested that appointment of Judge Stone might be unnecessary.

     In light of the parties' then-ongoing settlement discussions and in the hope that their behavior would improve (as briefly appeared possible), the court deferred appointing a special master or further pursuing sanctions. The parties' recent filings unfortunately display a continuing pattern of noncooperation and noncompliance with court orders (including the deadlines that both parties ignored in connection with discovery and the discovery sanctions order) that cannot go unaddressed. Accordingly, consistent with the parties' agreement and Judge Stone's consent, the court now appoints Judge Stone as a special master pursuant to Rule 53(a)(1)(A). Judge Stone shall investigate the parties' compliance with the court's orders that gave rise to the order to show cause (Dkt. Nos. 117, 122, 127, 133, and 135), including by (1) reviewing the correspondence filed by the parties at Dkt. Nos. 164 and 165, (2) interviewing whomever he believes is necessary to evaluate counsel's compliance with their professional obligations and the court's orders, and (3) reviewing as much of the docket as he believes is helpful for context. Judge Stone's fees shall be equally divided between the two sides, and the parties shall pay Judge Stone directly in the manner he directs. No later than

August 29, 2025, Judge Stone shall file a report on his investigation, including his recommendations as to what sanctions and referrals may be warranted. The parties shall promptly provide a copy of this order to Judge Stone and file a declaration that they have done so by July 14, 2025. If Judge Stone does not believe he will be able to complete his investigation and report by August 29, he may file a request for more time that proposes a reasonable alternative deadline.

Date: July 11, 2025

                                                    Stanley Blumenfeld, Jr.
                                                    United States District Judge