**BLANK ROME LLP**
Todd M. Malynn (SBN 181595)
todd.malynn@blankrome.com
Arash Beral (SBN 245219)
arash.beral@blankrome.com
Jamison T. Gilmore (SBN 322100)
jamison.gilmore@blankrome.com
2029 Century Park East | 6th Floor
Los Angeles, CA 90067
Telephone:  424.239.3400
Facsimile:   424.239.3434

Attorneys for Defendants, Counterclaimants, and Third Party Plaintiffs PCJV USA, LLC, PCI TRADING LLC, POTATO CORNER, LA GROUP, LLC, GK CAPITAL GROUP, LLC, NKM CAPITAL GROUP, LLC and GUY KOREN, and Defendants J & K AMERICANA, LLC, J&K LAKEWOOD, LLC, J&K OAKRIDGE, LLC, J&K VALLEY FAIR, LLC, J & K ONTARIO, LLC, J&K PC TRUCKS, LLC, HLK MILPITAS, LLC, and GK CERRITOS, LLC

# UNITED STATES DISTRICT COURT

# CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| SHAKEY'S PIZZA ASIA VENTURES, INC, a Philippines corporation,<br><br>Plaintiff,<br><br>vs.<br><br>PCJV USA, LLC, a Delaware limited liability company; PCI TRADING , LLC, a Delaware limited liability company; GUY KOREN, an individual; POTATO CORNER LA GROUP, LLC, a California limited liability company; NKM CAPITAL GROUP, LLC, a California limited liability company; J & K AMERICANA, LLC, a California limited liability company; J&K LAKEWOOD, LLC, a California limited liability company; J&K VALLEY FAIR, LLC, a California limited liability company; J & K ONTARIO, LLC, a California limited liability company; HLK MILPITAS, LLC, a California, limited liability company; GK CERRITOS, LLC, a California, limited liability company;  J&K PC TRUCKS, LLC, a California limited liability company; and, GK CAPITAL GROUP, LLC, a California | Case No. 2:24-CV-04546-SB(AGRx)<br><br>*Hon. Stanley Blumenfeld, Jr.*<br><br>**THE PCJV USA PARTIES' OPPOSITION TO SPAVI PARTIES' MOTION IN LIMINE NO. ONE (DKT. NO. 215)**<br><br>Complaint Filed:  May 31, 2024<br>Trial Date:         August 18, 2025 |

160850.00001/153289966v.1

| | |
|---|---|
| 1 | limited liability company and DOES 1 through 100, inclusive, |
| 2 | Defendants. |
| 3 | |
| 4 | PCJV USA, LLC, a Delaware limited liability company; PCI TRADING LLC, a Delaware limited liability company; POTATO CORNER LA GROUP LLC, a California limited liability company; GK CAPITAL GROUP, LLC, a California limited liability company; NKM CAPITAL GROUP LLC, a California limited liability company; and GUY KOREN, an individual, |
| 8 | Counter-Claimants, |
| 9 | |
| 10 | v. |
| 11 | SHAKEY'S PIZZA ASIA VENTURES, INC, a Philippines corporation, |
| 12 | Counter Defendant. |
| 13 | |
| 14 | PCJV USA, LLC, a Delaware limited liability company; PCI TRADING LLC, a Delaware limited liability company; POTATO CORNER LA GROUP LLC, a California limited liability company; GK CAPITAL GROUP, LLC, a California limited liability company; NKM CAPITAL GROUP LLC, a California limited liability company; and GUY KOREN, an individual, |
| 19 | Third Party Plaintiffs, |
| 20 | v. |
| 21 | PC INTERNATIONAL PTE LTD., a Singapore business entity; SPAVI INTERNATIONAL USA, INC., a California corporation; CINCO CORPORATION, a Philippines corporation; and ROES 1 through 10, inclusive, |
| 25 | Third Party Defendants. |

# I. INTRODUCTION[1]

At the preliminary injunction stage, the Court had a limited record from which to ascertain the mutual intent and rights and obligations of the parties pertaining to the U.S. Potato Corner marks. At trial, the Court (and jury) will hear testimony and review documents demonstrating that:

1. PCJV was established as a partnership between Cinco Group and LA Group to expand Potato Corner in the United States.

2. Initial discussions focused on transitioning from an unlawful licensing model to a franchising model, as advised by DLA Piper.

3. The joint venture was structured to ensure both parties had a stake in the U.S. investment, with Cinco Group providing trademark rights as its primary consideration, and the LA Group providing services as its primary consideration.

4. Drafts of the Joint Venture Agreement ("JVA") and a Master License Agreement ("MLA") were circulated and negotiated, with DLA Piper and other legal advisors providing input. Because of its majority controlling share in PCJV, Cinco Group desired a "lifetime license" arrangement with PCJV, but DLA Piper advised that a term must be included in the MLA. DLA, thus, chose to include a 50-year MLA term. Cinco's agent reported on January 18, 2011 that the MLA was "drafted and ready for signing." Still, the parties looked to the JVA as the foundational document which governed all of their rights and obligations, including the duration of their partnership and trademark use rights.

5. The transition to franchising required the preparation of Franchise

---

[1] The SPAVI Parties' MILs are untimely and violate the Civil Pretrial Order. The SPAVI Parties missed the June 23, 2025 deadline to serve their moving portions, instead filing them unilaterally as motions on July 14, 2025, without prior service or proper adequate meet and confer. *See Pate v. BMW of N. Am., LLC et al.*, 2025 WL 1843106, at *2 (C.D. Cal. Apr. 18, 2025) (denying MIL as untimely because trial continuance did not reset expired deadlines); Gilmore Decl., ¶¶ 2-4. The motions also are improper because they seek to exclude broad categories of evidence rather than specific, clearly inadmissible material, contrary to the Civil Pretrial Order and prevailing authority. The motions should thus be denied. Out of caution, the PCJV USA Parties are filing oppositions, and respectfully request leave for further argument and briefing if the Court is leaning towards granting the MIL.

Disclosure Documents ("FDDs") and compliance with U.S. government regulations.[2] In the FDDs, DLA, with Cinco Group's approval and consent, reported the existence of a licensing agreement on a 50-year licensing term.

6. There was concern about the allocation of fees, with 60% going to Cinco Group and LA Group and 40% retained for franchisee support, raising questions about regulatory acceptability (among other things). Both sides thus waived their 30% consideration, respectfully, for licensing and services, at all times.

7. The parties emphasized the importance of mutual trust and a long-term relationship, with flexibility and open communication highlighted as key values.

8. The partnership was described as innovative and out-of-the-box, with both sides expressing a commitment to the success and growth of Potato Corner in the U.S. and to maintain a "lasting relationship."

PCJV was a carefully negotiated partnership, balancing legal, tax, immigration, and operational considerations. The shift from licensing to franchising to comply with U.S. franchise laws was a major strategic and regulatory milestone. Trust, flexibility, and shared vision were repeatedly emphasized as foundational to the joint venture's success.

For 15 years, the parties operated with the express understanding that long-term trademark rights were in existence, whether those be under the JVA, the MLA, or any other iteration thereof or, purely, under their meeting of the minds. They were fiduciaries. Mr. Koren's and Mr. Magsaysay's relationship began on that premise. In fact, in April 2009, the two of them discussed trademark rights in emails, and Mr. Koren expressly rejected at-will branding rights. What followed were multiple discussions among the fiduciaries to "vest" PCJV with as much rights

---

[2] For example, DLA filed a Notice of Violation on behalf of PCJV for franchisee locations that opened before FDDs were completed. California's Department of Business Oversight ("DBO") commenced an action against and sanctioned PCJV for several infractions, including for opening three franchisees without FDDs, including the first Potato Corner outlet that Koren owns in Santa Anita and the second outlet Koren oversaw the design in San Bruno, which later closed.

as possible so that PCJV could grow and expand the brand. It cannot be emphasized enough that Cinco's Magsaysay wanted PCJV to have "lifetime" rights. The 50-year term reported in the FDDs and the MLA was DLA's idea. Otherwise, Cinco acted and conducted business as if PCJV had lifetime rights under the JVA, including as amended, and PCJV's LLC Agreement. For its part, PCJV believed that *at the very least*, it had a 50-year license, which was enough for at least Mr. Koren's lifetime.

The LA Group had full control over building and overseeing the Potato Corner brand in the U.S., for the mutual benefit of all partners. The parties' conduct, including the design and operation of U.S. Potato Corner restaurants, was consistent with this understanding. It is for the jury to resolve whether PCJV, in light of SPAVI's refuting that it purchased any rights or obligations in PCJV, including obligations under the parties' meeting of the minds relating to trademark use and licensing, is the true owner of the U.S. Potato Corner marks at common law, under the JVA, including as amended,[3] or under Koren's settlement agreement with Cinco.

## II. FACTUAL QUESTIONS TO BE RESOLVED BY THE JURY

### A. Whether the PCJV USA Parties in 2024, or SPAVI in 2022, Owned or Acquired Trademark Rights and Obligations

SPAVI's case and MIL appear premised on SPAVI acquiring from Cinco in 2022 ownership of an "implied license" to PCJV that was terminable "at will." There is not a single document, however, which establishes that the meeting of the minds of the parties was to create "at will" rights. Quite the opposite in fact, the documents demonstrate the parties had reached a meeting of the minds as to long-term rights, and they conducted business that way for over a decade and reported to the world through FDDs that exact expressed intent. Because SPAVI has disavowed

---

[3] There is a factual dispute as to whether the "First Amendment to the Joint Venture Agreement" was intended as a complete or partial integration. Parol evidence will prove that the boilerplate integration clause did not and was not meant to supersede (a) PCJV's LLC agreement, (b) PCJV's master services agreement or (c) Cinco's obligations as a partner and party to the joint venture agreement—it is not and was not intended as a novation of fiduciary obligations, and prior written consent to the transfer of any obligations and voting rights remained expressly required.

acquiring any right or obligation in PCJV, PCJV is entitled to evidence and argue its ownership rights. The jury could reasonably infer, for example, that SPAVI's alleged asset purchase agreement with Cinco did not include rights or obligations under PCJV's governing documents.[4] Likewise, the jury could reasonably find that the PCJV USA Parties acquired Cinco's rights and obligations when Cinco sold to them all of Cinco's interests in PCJV along with any and all trademark rights "attached" thereto "unencumbered" by any licensing obligations to SPAVI in 2024.

### B. Whether Cinco Owned a Valid Registration or Any U.S. Trademarks in 2022 to Sell in the First Place

Prevailing under both *Sengoku* and 15 U.S.C. § 1055 are essential to SPAVI's case-in-chief. SPAVI could not have acquired U.S. trademark rights, let alone an implied license terminable at will in 2022, unless Cinco was the senior user who actually exercised control over a licensee related company.[5] Cinco "vested" branding rights in the U.S. franchisor partnership, and the LA Group provided the terms and conditions upon which they would build the Potato Corner brand in the United States for the mutual benefit of PCJV's partners as the first and only lawful and continuous user of the U.S Potato Corner marks—without which Cinco has no trademark rights or registration in 2022. This case is about what happens when stated terms and conditions are acted upon and then disavowed 15 years later based on a proffered assignment by one joint venture partner over asserted objections.

If Cinco rejected the terms and conditions upon which PCJV's LA Group agreed that its use would inure to the benefit of Cinco, *i.e.,* license the U.S. Potato

---

[4] SPAVI's proffered assignment, itself, does not answer critical questions, including whether SPAVI stepped into Cinco's shoes, or whether SPAVI has concealed that Cinco, in fact, affirmed PCJV's long-term trademark rights by undertaking the assignment pursuant to the MLA.

[5] 15 U.S.C. § 1055's "related company" test alone is not dispositive because even alleged "related companies" who made first lawful, continuous and exclusive use of the marks have the right to establish senior use and ownership under *Sengoku*'s two part test. Moreover, because SPAVI disavows the terms and conditions under which PCJV's use would inure to Cinco's benefit, PCJV is entitled to rebut SPAVI's position that PCJV is a mere licensee under *Sengoku*'s multi-factor test.

1  Corner marks, neither Cinco nor SPAVI could be the true owner of the U.S. Potato

2  Corner marks in 2022 or the goodwill created by the first lawful, continuous and

3  exclusive user of the marks unless they prevail on *Sengoku's* multi-factor test. PCJV

4  is entitled to rebut the presumption of valid senior rights afforded by the proffered

5  assignment being asserted against under both prongs of *Sengoku*.[6]

### III. THE MOTION MISSTATES LAW AND MISAPPLIES DOCTRINES

SPAVI Parties' reliance on estoppel and the parol evidence rule (which they mischaracterize as deed merger) is misplaced.[7] Licensing estoppel does not apply when, as here, the party seeking estoppel has repudiated the license and is trying to deny the other party the benefit of its bargain. The parol evidence rule does not prevent the PCJV USA Parties from presenting evidence of their pre-existing or acquired rights, or from examining what was actually transferred in the assignment and cross-examining witnesses.[8] The law allows alleged infringers to challenge the validity of assigned registrations by examining the underlying transactions behind the assignments. *Rex Real Estate I, L.P. v. Rex Real Estate Exchange, Incorporated,* 80 F.4th 607, 617-18 (5th Cir. 2023); *Federal Treasury Enterprise Sojuzplodoimport v. Spirits Intern. N.V.,* 623 F.3d 61, 68 (2d Cir. 2010); *Gerlach, Inc. v. Gerlach Maschinenbau GmbH,* 592 F.Supp.3d 634, 641-42 (N.D. Ohio 2022); *In re Impact Distributors, Inc.,* 260 B.R. 48, 53-54 (S.D. Fla. 2001). Under settled law, the PCJV USA Parties are entitled to present their case to the jury.

---

[6] Further, even if SPAVI prevails under *Sengoku*, SPAVI cannot prevail under 15 U.S.C. § 1055 if the jury finds that Cinco, in fact, did not exercise control over PCJV's use of the marks or SPAVI failed to exercise control over the marks before commencing legal action in state or federal court against PCJV after acquiring registrations or otherwise engaged in an assignment in gross or naked license.

[7] Full briefing, not a 5-page opposition, is the process by which to resolve the application of legal doctrines to the merits of a case. The PCJV USA Parties continue to touch on here why SPAVI Parties' legal authorities do not apply in this case, but request leave to file further briefing to address these issues if necessary.

[8] The assignment, at minimum, is ambiguous and subject to interpretation. It is equally plausible that it merely conveyed all of Cinco's rights "as-is, where-is" and only expresses Cinco/SPAVI's legal opinion that PCJV had no ownership or non-terminable-at-will licensing rights under PCJV's governing documents.

## IV. CONCLUSION

For the reasons stated, SPAVI Parties' MIL No. One should be denied.

DATED: July 21, 2025             **BLANK ROME LLP**

By: */s/ Todd M. Malynn*
　　　Todd M. Malynn
　　　Arash Beral
　　　Jamison T. Gilmore
Attorneys for Defendants, Counterclaimants, and Third Party Plaintiffs PCJV USA, LLC, PCI TRADING LLC, POTATO CORNER, LA GROUP, LLC, GK CAPITAL GROUP, LLC, NKM CAPITAL GROUP, LLC and GUY KOREN, and Defendants J & K AMERICANA, LLC, J&K LAKEWOOD, LLC, J&K OAKRIDGE, LLC, J&K VALLEY FAIR, LLC, J & K ONTARIO, LLC, J&K PC TRUCKS, LLC, HLK MILPITAS, LLC, and GK CERRITOS, LLC

## CERTIFICATE OF COMPLIANCE

The undersigned counsel of record for PCJV USA Parties, certify that this brief contains 1,953 words, which complies with the word limit of Local Rule 11-6.1.

DATED: July 21, 2025

                                        */s/ Todd M. Malynn*
                                        TODD M. MALYNN

# CERTIFICATE OF SERVICE

The undersigned certifies that on July 21, 2025, the foregoing document was electronically filed with the Clerk of the Court for the United States District Court, Central District of California, using the Court's Electronic Case Filing (ECF) system. I further certify that all participants in the case are registered CM/ECF users and that service will be accomplished by the CM/ECF system.

I certify under penalty of perjury that the foregoing is true and correct. Executed on July 21, 2025.

By:   */s/AJ Cruickshank*