MICHAEL D. MURPHY (SBN 224678)
mdmurphy@foxrothschild.com
MATTHEW FOLLETT (SBN 325481)
mfollett@foxrothschild.com
JESSICA NWASIKE (SBN 343087)
jnwasike@foxrothschild.com
FOX ROTHSCHILD LLP
Constellation Place
10250 Constellation Boulevard, Suite 900
Los Angeles, California 90067
Telephone: 310.598.4150
Facsimile: 310.556.9828

Attorneys for Plaintiff and Counterclaim Defendant SHAKEY'S PIZZA ASIA VENTURES, INC. and Third Party Defendants CINCO CORPORATION, PC INTERNATIONAL PTE LTD., and SPAVI INTERNATIONAL USA, INC.

# UNITED STATES DISTRICT COURT

# CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| SHAKEY'S PIZZA ASIA VENTURES, INC, A PHILIPPINES CORPORATION,<br><br>Plaintiff,<br><br>v.<br><br>PCJV USA, LLC, A DELAWARE LIMITED LIABILITY COMPANY; PCI TRADING, LLC, A DELAWARE LIMITED LIABILITY COMPANY; GUY KOREN, AN INDIVIDUAL; POTATO CORNER LA GROUP, LLC, A CALIFORNIA LIMITED LIABILITY COMPANY; NKM CAPITAL GROUP, LLC, A CALIFORNIA LIMITED LIABILITY COMPANY; J & K AMERICANA, LLC, A CALIFORNIA LIMITED LIABILITY COMPANY; J&K LAKEWOOD, LLC, A CALIFORNIA LIMITED LIABILITY COMPANY; J&K VALLEY FAIR, LLC, A CALIFORNIA LIMITED LIABILITY COMPANY; J & K ONTARIO, LLC, A CALIFORNIA LIMITED LIABILITY | Case No. 2:24-CV-04546-SB(AGRx)<br><br>*The Hon. Stanley Blumenfeld, Jr.*<br><br>**AMENDED DECLARATION OF MICHAEL MURPHY IN RESPONSE TO ORDER TO SHOW CAUSE DKT. 223**<br><br>Complaint Filed:   May 31, 2024<br>Trial Date:   August 18, 2025 |

1

| | |
|---|---|
| 1 | COMPANY; HLK MILPITAS, LLC, A CALIFORNIA, LIMITED LIABILITY COMPANY; GK CERRITOS, LLC, A CALIFORNIA, LIMITED LIABILITY COMPANY; J&K PC TRUCKS, LLC, A CALIFORNIA LIMITED LIABILITY COMPANY; AND, GK CAPITAL GROUP, LLC, A CALIFORNIA LIMITED LIABILITY COMPANY AND DOES 1 THROUGH 100, INCLUSIVE, |
| 2 | |
| 3 | |
| 4 | |
| 5 | |
| 6 | |
| 7 | Defendants. |
| 8 | |
| 9 | PCJV USA, LLC, A DELAWARE LIMITED LIABILITY COMPANY; PCI TRADING LLC, A DELAWARE LIMITED LIABILITY COMPANY; POTATO CORNER LA GROUP LLC, A CALIFORNIA LIMITED LIABILITY COMPANY; GK CAPITAL GROUP, LLC, A CA1IFORNIA LIMITED LIABILITY COMPANY; NKM CAPITAL GROUP LLC, A CALIFORNIA LIMITED LIABILITY COMPANY; AND GUY KOREN, AN INDIVIDUAL, |
| 10 | |
| 11 | |
| 12 | |
| 13 | |
| 14 | |
| 15 | |
| 16 | Counter-Claimants, |
| 17 | v. |
| 18 | SHAKEY'S PIZZA ASIA VENTURES, INC, A PHILIPPINES CORPORATION, |
| 19 | |
| 20 | Counter Defendant. |
| 21 | PCJV USA, LLC, A DELAWARE LIMITED LIABILITY COMPANY; PCI TRADING LLC, A DELAWARE LIMITED LIABILITY COMPANY; POTATO CORNER LA GROUP LLC, A CALIFORNIA LIMITED LIABILITY COMPANY; GK CAPITAL GROUP, LLC, A CA1IFORNIA LIMITED LIABILITY COMPANY; NKM CAPITAL GROUP LLC, A CALIFORNIA LIMITED LIABILITY COMPANY; AND GUY KOREN, AN INDIVIDUAL, |
| 22 | |
| 23 | |
| 24 | |
| 25 | |
| 26 | |
| 27 | |
| 28 | Third Party Plaintiffs, |

|   |   |
|---|---|
| 1 | v. |
| 2 | PC INTERNATIONAL PTE LTD., A SINGAPORE BUSINESS ENTITY; SPAVI INTERNATIONAL USA, INC., A CALIFORNIA CORPORATION; CINCO CORPORATION, A PHILIPPINES CORPORATION; AND DOES 1 THROUGH 10, INCLUSIVE, |
| 6 | *Third Party Defendants.* |

I, Michael D. Murphy, declare as follows:

1. I am a Partner with the law firm Fox Rothschild LLP, attorneys of record for Plaintiff and Counterclaim Defendant SHAKEY'S PIZZA ASIA VENTURES, INC. and Third-Party Defendants CINCO CORPORATION, PC INTERNATIONAL PTE LTD., and SPAVI INTERNATIONAL USA, INC. ("Plaintiff and Third Party Defendants"). I am licensed to practice before all courts in the State of California.

2. I offer this Amended Declaration, first, in response to this Court's OSC issued on July 23, 2025 ("OSC"), pertaining to the Motions *in Limine* filed independently, rather than jointly, and second, in response to this Court's OSC issued on July 25, 2025 regarding the failure to file joint pretrial filings on July 25, 2025 (Dkt. 226).

3. I am submitting this corrected declaration upon discovering that the declaration filed on August 1, 2025 erroneously omitted the additional discussion ordered by this Court in Dkt. 226.

### Motions in Limine (Dkt. 223)

4. On July 3, 2025, Defendants filed their motion *in limine* on the injunction and contempt issue. Dkt. No. 209. Defendants did not follow the Court's guidelines regarding the filing of joint motions *in limine*.

/ / /

5. In this litigation, Defendants have regularly asserted that Plaintiff's conduct amounted to waiver or default relating to various pretrial filings. Indeed, as noted in the Court's OSC, Defendants' motion *in limine* asserted that Plaintiff missed the deadline to file an opposition despite the fact that the Court continued the trial and pre-trial filing deadlines two days prior. Therefore, out of an abundance of caution and to avoid any risk of waiving Plaintiff's rights, or any argument as to waiver, I filed Plaintiff's own *limine* motions on July 14, 2025.

6. Our filing was not designed to be a sign of disrespect. It was my intent to prepare all replies and all of those would be assembled in pretrial filings as per this Court's Order. It was not a sign of disregard for this Court's Order or instructions but instead a belt and suspenders approach to protect the record from Defendants' accusations of tardiness and waiver. I sincerely apologize for having filed a document out of order from this Court's pretrial instructions. I assure this Court that this will never happen again.

### July 25, 2025 Deadline

7. The July 25, 2025 deadline was not met as a result of three primary reasons: the Joint Exhibit List, the Jury Instructions, and the Pretrial Order. As explained herein, Defendants' delays regarding the Joint Exhibit List were the first domino causing that delay to occur. The other two documents would also have been completed in time, but for the Defendants;' unreasonable demands and delays.

8. <u>Exhibit List</u>. In evaluating this situation, two important issues as to the Joint Exhibit List –the primary document causing the failure to meet the July 25, 2025 deadline –must be noted.

9. First, the Plaintiff's contribution to the Joint Exhibit List is not in any way similar to that of Defendant PCJV USA, LLC ("PCJV") and the other Defendants, Counterclaimants, and Third Party Defendants (hereinafter "Defendants"). Plaintiff's portion is a realistic set of fewer than 150 exhibits that are logical in their flow, and that have, almost entirely, been either filed with this Court

4

or produced by Defendants. In contrast, Defendants' portion is an impenetrable list of more than five hundred frequently unspecified documents, many of which Defendants have never produced to Plaintiff. Defendants have conceded they do not intend to use all of them at trial, stating, as their counsel James Gilmore admitted on July 24, 2025, that they intentionally included the same document multiple times, to make it easier for the questioning attorney, rather than comply with the Court's orders regarding duplicates. Indeed, their list has duplicates not only of Plaintiff's Exhibits (requiring the parties to defer to Plaintiff's number for that exhibit) but even has duplicates within itself, sometimes more than twice. This has been raised with Defendants' counsel on multiple occasions, beginning in early July 2025. I have repeatedly explained that the instructions by this Court require that we only have one exhibit number per document, and that I'm available to discuss seeking leave of this Court as to whether or not it will allow us to use the Defendants' number for certain exhibits so that a series of related documents can remain in order. Defendants refused to acknowledge the importance of compliance with this rule and never once made any response as to how we resolve this issue. Because this is a Joint Exhibit List, by this blatant violation of the requirement of, among other things, eliminating duplicates between Defendants' and Plaintiffs' exhibits, I would not be able to escape Defendants' disregard for the instructions regarding Joint Exhibit Lists, but, remained powerless to force Defendants to follow the rules.

10. Second, Defendants have never complied with the obligations for the Amended Joint Exhibit List, choosing instead to deliver to us with a new list two days before the July 25, 2025 deadline, and then blame us for the resulting delay. The purpose of the first Joint Exhibit List we submitted on June 20, 2025 was to disclose our intended trial exhibits, which we were then to produce copies of in this second round of pre-trial filings. Defendants' contribution to the Amended Joint Exhibit List was, instead, to jettison the first list, pretend it never existed, and drop

///

hundreds of renumbered and new trial exhibits two days before the July 25, 2025 deadline.

11. Specifically, on July 23, 2025, Defendants submitted a new exhibit list to include in the Joint Exhibit List. It appears they added to, and reordered, their exhibit list. Putting aside the duplicates (multiple copies of the same document as different exhibits as well as duplicates with our exhibits), this overlong exhibit list included many new exhibits to add to the already overlong list they included on June 20, 2025.

12. Upon receipt of this, effectively, new exhibit list, we had two jobs as Plaintiff.

13. First, we had to review this entire new set, new ordering of exhibits, and identify our objections. Second, we were required to ensure that the entire list was compliant with all governing rules. This was an extraordinary effort. Defendants' contribution to the June 20, 2025 list had failed to identify many of the exhibits with sufficient specificity to preemptively make objections before seeing the document, although I had spent more than 10 hours doing so between June 20, 2025 and July 23, 2025 (although I did not make it through the entire list). Such efforts were rendered useless when we received an entirely reordered list on July 23, 2025. I had to start over, reviewing each of the 500+ new exhibits for objections. Many of these exhibits are rather long.

14. I could have rejected inclusion of this new list as part of our Joint Exhibit List, and insisted that Defendants use the original list from June 20, 2025, and exchange marked exhibits confirming conforming to the June 20, 2025 list. Instead, because I have doubled my efforts at cooperation, I attempted to meet and confer and cooperate, to no avail. I did raise my concern about the effect of having submitted a new list but sought ways to work around it.

15. For example, I attempted to meet and confer on July 23 and 24 as to Defendants' new exhibits not previously included on the June 20, 2025 list. As a

trial lawyer, I know it is reasonable and common for exhibits to be initially inadvertently omitted. I attempted to seek a disclosure and concession that certain exhibits were new, expressly stating that I did not object to the concept as there are a few that we would want to add as well. The responses from Defendants' counsel refused to acknowledge that they had added exhibits, claiming instead that it was sufficient for the new exhibits to have been included in general descriptions of their Initial Disclosures.

16. Because we were required to now evaluate 500+ documents for exhibit in a short time frame –24 hours given that Defendants refused to deliver this entirely new set until we had ours prepared this late submission set us up to fail. Indeed, the time I had to devote to this new exhibit list , knowing Defendants would claim waiver if we did not raise an objection, displaced my ability to work on the other pressing items: the jury instructions and the pretrial order. I was also stuck in a Catch-22 in that the issues I raised weeks earlier about duplicates, for example, had now been compounded. How can I finalize Plaintiff's list if I have exhibits that are duplicates of exhibits Defendants include once, twice, or three times in theirs? As it is a Joint Exhibit List, I too would be in violation of the order. So, then, I could not finalize my exhibits or mark them, let alone complete our list.

17. There are several reasons for our delay in producing hard copies of our exhibits. First, we were waiting to find out what was going to result from Defendants' Rule 37 Motion, which would impact our evidentiary presentation, so we did not have to prepare our exhibits twice. That, of course, did not conclude until July 11, 2025, two weeks before the deadline. Second, as I explained to Defendants' counsel multiple teleconferences, I needed them to remove duplicates and work with me on a sensible approach to exhibit marking and numbering that is compliant given that there is so much overlap between our exhibit list,  and theirs, the fact that their exhibit list combined documents from which we were only using a portion, and

///

other issues. Moreover, all of our exhibits, with a few exceptions, were either part of this Court's docket or produced by Defendants.

18. I had to put off finishing jury instructions and the Pretrial Order until finishing our objections to the new exhibit list, which was not finished until July 25, 2025.

19. <u>Jury Instructions</u>. The Jury Instructions were also not completed in time, and this too was an issue that was caused by Defendants and was a substantial factor in causing us to be unable to achieve the July 25, 2025 deadline.

20. Upon receipt of the jury instructions proposed by Defendants, I noted that they were loaded with false statements of the law, distortions of the Ninth Circuit instructions, and instructions for which there is no evidence or that are contrary to this Court's injunction ruling and Ninth Circuit affirmance, that . I knew meeting and conferring would be a long and difficult process. This is one area in which there can be no compromise on the specific accuracy of the law. Given that Defendants' instructions are almost entirely (except for the introductory items) communicating bad law (already rejected by this Court) or assume facts that do not exist, they will mislead the jury and a retrial is a guarantee if any of them, let alone one of them, got through this meet and confer process.

21. On July 24, 2025, I asked that Defendants meet and confer telephonically or by Zoom to make the meet and confer process more efficient. Defendants refused, and demanded I prepare a redline of their instructions. This added demand –that I redline their instructions –in addition to the expectation that we also craft objections and alternative instructions, was unreasonable substantively and imposed a monumental additional amount of time to accomplish. Given again the proximity to the deadline, this added demand by Defendants set us up to fail.

22. It is important to note my predicament as Plaintiff's counsel in this case, given that I cannot force Defendants to, for example, agree to the correct legal

standard in the jury instructions, while also being under the additional mandate of this Court that we must cooperate and minimize disputes. Given that I dispute nearly all of Defendants' instructions as being bad law and unsupported, unless we could agree on more, we were going to appear, on the face of it, that we had not engaged in any attempts to minimize disputes.

23.  I was not able to finish the redline to the jury instructions demanded by Defendants as a prerequisite to meeting and conferring upon the instructions so that they could "understand" the nature of our problem with their proposals. This meant we could not complete the jury instructions by July 25, 2025, let alone prepare the separate sets of agreed and disputed sets as required by this Court.

24.  We would have been able to complete the jury instructions by July 25, 2025 on time had Defendants agreed to participate in a face to-face meet and confer or at least by Zoom or teleconference. Yes, it would have been a long meeting, but it would have accomplished in that one session what it took us to complete over the next week: back and forth trading of descriptions of what was wrong with the objections and responses to objections and alternative language. Had we been able to meet and confer by video conference, at least, we could have avoided the lengthy process of manually identifying everything wrong with Defendants' objections.

25.  Notably, the Exhibit List had also caused the jury instructions to be delayed given that I had to put aside my redlining busy work (necessitated by Defendants' refusal to meet and confer verbally over the jury instructions) so that I could go through the new exhibit list of Defendants.

26.  Finally, given the barriers and delays described above, we could not materially commence the Pretrial Order drafting) until Friday, July 25, 2025.

27.  <u>Pretrial Order</u>. The primary time consuming tasks for the Pretrial Order are: (1) the stipulated facts; (2) charts regarding objections to exhibits; and (3) the information about claims and defenses and evidence in support of each. Defendants had offered to draft the stipulated facts, but did not deliver them until

Wednesday, July 23, 2025, when I was now occupied with the new non-compliant exhibit list of 500+ exhibits demanded by Defendants, and the redlining of the jury instructions. I could not even begin looking at these proposed stipulated facts until late on July 25, 2025.

28. There were other aspects of this document that were also prolonged by Defendants' positions in this process. For example, it is time-consuming enough to dedicate myself to a comprehensive analysis of the objections we would proffer to Defendants' exhibits. Responding to Defendants' objections to our evidence also took more time than it should have. This is because Defendants over-objected in such a way as to be, on its face, a nuisance designed to waste time, and cause my client expense. As evidence of this, one need only look at their objection to Exhibit 1 – the USPTO registration for one of the trademarks at issue –to which Defendants objected under 403, accusing that this exhibit would cause "[u]nfair prejudice, juror confusion, and waste of time outweighs probative value (FRE 403)." That the registration of the key trademark at issue in this case should be excluded as "prejudicial" is absurd on its face (indeed, the document could be judicially noticed). Even worse, in their own portion of the Joint Exhibit List, they include the same document more than once. *See* Defs. Exhibits 1485, 1276 (the otherwise improper, combined, "USPTO filings" for this same trademark).

29. Given the above, I have no doubt that, had Defendants (1) submitted an updated exhibit list that reflected the first list or had conceded that this was a new list entirely and met and conferred on a way to alleviate the burdens being imposed on us because of this new list; or, (2) had Defendants met and conferred by video or in person or by phone to discuss the jury instructions, and agreed to only include instructions that are based on good law, and adhere to the Ninth Circuit model instructions, we could have met the July 25,25, 2025 deadline, no matter what other delays had been imposed.

///

30. I do not mean to suggest we were perfect in our approach to the preparation of the pretrial documents. Given the history of this litigation, this was always going to be a bit messier than the standard case. That said, I know of no delay claimed by Defendants that, absent the sandbagging as to the exhibit list and refusal to meet and confer as to the jury instructions, would have resulted in the pretrial documents not having been completed by July 25, 2025.

31. Going back to our exhibit list, as explained above, we were inhibited from completing our list because of Defendants, and it is true that the actual exhibits themselves did not exchange until the last 24 hours when the mutual exchange occurred. Nevertheless, because our second list was based on, and did not materially diverge from, the June 20, 2025 list, Defendants had no surprises and could have begun their preemptive evaluation and preparation of objections at the end of June. I know of nothing we have done, on our end, which could be construed as a substantial factor in the missed deadline.

32. As a final note, I think it is important that this Court also be aware of the genesis of the final draft of the stipulation that we filed on July 24, 2025 to extend the July 25, 2025 deadline (and that was rejected by this Court, with specific criticism as to its failure to identify due diligence prior to the extension request). I saw the writing on the wall as to the ability to finish by July 25, 2025, and so it was I who suggested the stipulation and proposed a draft that did indeed attempt to satisfy the requirement that we establish we have been hard at work and that we need more time notwithstanding our diligence. Mr. Beral redlined out, and refused to agree to, any of that language required by this Court to satisfy a request for an extension, leaving us with a simple bare request for more time, which was rejected based on this failure to comply with the rules. Mr. Beral refused to agree to anything more than that stripped down bare request. I had no choice but to agree to this obviously defective stipulation, as it was either ask for the stipulation or know that we were about to miss a deadline.

1   I declare under penalty of perjury under the laws of the United States that the
2   foregoing is true and correct.
3
4   Dated: August 3, 2025          */s/ Michael D. Murphy*
5                                    Michael D. Murphy

CASE NO. 2:24-CV-04546-SB(AGRX)
AMENDED DECLARATION OF MICHAEL MURPHY IN RESPONSE TO ORDER TO SHOW CAUSE DKT. 223

# CERTIFICATE OF SERVICE

The undersigned certifies that, on August 4, 2025, the foregoing document was electronically filed with the Clerk of the Court for the United States District Court, Central District of California, using the Court's ECF filing system. I further certify that all counsel for all parties to this action are registered CM/ECF user and that service will be accomplished by the CM/ECF system.

I certify under penalty of perjury that the foregoing is true and correct.

Dated: 8/4/2025

**FOX ROTHSCHILD LLP**

*/s/ Michael D. Murphy*
Michael D. Murphy
Attorneys for Plaintiff
SHAKEY'S
PIZZA ASIA VENTURES, INC.

175216558.1