MICHAEL D. MURPHY (SBN 224678)
mdmurphy@foxrothschild.com
MATTHEW FOLLETT (SBN 325481)
mfollett@foxrothschild.com
JESSICA NWASIKE (SBN 343087)
jnwasike@foxrothschild.com
FOX ROTHSCHILD LLP
Constellation Place
10250 Constellation Boulevard, Suite 900
Los Angeles, California 90067
Telephone:  310.598.4150
Facsimile:   310.556.9828

Attorneys for Plaintiff and Counterclaim
Defendant SHAKEY'S PIZZA ASIA
VENTURES, INC. and Third Party Defendants
CINCO CORPORATION, PC
INTERNATIONAL PTE LTD., and SPAVI
INTERNATIONAL USA, INC.

# UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| SHAKEY'S PIZZA ASIA VENTURES, INC, a Philippines corporation,<br><br>Plaintiff,<br><br>v.<br><br>PCJV USA, LLC, a Delaware limited liability company; PCI TRADING, LLC, a Delaware limited liability company; GUY KOREN, an individual; POTATO CORNER LA GROUP, LLC, a California limited liability company; NKM CAPITAL GROUP, LLC, a California limited liability company; J & K AMERICANA, LLC, a California limited liability company; J&K LAKEWOOD, LLC, a California limited liability company; J&K VALLEY FAIR, LLC, a California limited liability company; J & K ONTARIO, LLC, a California limited liability company; HLK MILPITAS, LLC, a California, limited liability company; GK CERRITOS, LLC, a California, limited liability company; J&K PC TRUCKS, LLC, a California | Case No. 2:24-CV-04546-SB(AGRx)<br><br>*The Hon. Stanley Blumenfeld, Jr.*<br><br>**[PROPOSED] PRETRIAL CONFERENCE ORDER**<br><br><br>Complaint Filed:    May 31, 2024<br>Trial Date:          August 18, 2025 |

1    limited liability company; and, GK CAPITAL GROUP, LLC, a California

2    limited liability company and DOES 1 through 100, inclusive,

3

4              Defendants.

5    PCJV USA, LLC, a Delaware limited liability company; PCI TRADING LLC,

6    a Delaware limited liability company; POTATO CORNER LA GROUP LLC,

7    a California limited liability company; GK CAPITAL GROUP, LLC, a

8    California limited liability company; NKM CAPITAL GROUP LLC, a

9    California limited liability company; and GUY KOREN, an individual,

10

11             Counter-Claimants,

        v.

12    SHAKEY'S PIZZA ASIA VENTURES, INC, a Philippines corporation,

13

14              Counter Defendant.

15    PCJV USA, LLC, a Delaware limited liability company; PCI TRADING LLC,

16    a Delaware limited liability company; POTATO CORNER LA GROUP LLC,

17    a California limited liability company; GK CAPITAL GROUP, LLC, a

18    California limited liability company; NKM CAPITAL GROUP LLC, a

19    California limited liability company; and GUY KOREN, an individual,

20

21             Third Party Plaintiffs,

22         v.

23    PC INTERNATIONAL PTE LTD., a Singapore business entity; SPAVI

24    INTERNATIONAL USA, INC., a California corporation; CINCO

25    CORPORATION, a Philippines corporation; and DOES 1 through 10,

26    inclusive,

27             Third Party Defendants.

28

Following pretrial proceedings, pursuant to F.R.Civ.P. 16 and L.R. 16, IT IS ORDERED:

1.  The parties are:
- Plaintiff and Counter Defendant, SHAKEY'S PIZZA ASIA VENTURES, INC, a Philippines corporation;
- Defendant, Counter Claimant, and Third Party Plaintiff, PCJV USA, LLC, a Delaware limited liability company;
- Defendant, Counter Claimant, and Third Party Plaintiff , GUY KOREN, an individual;
- Defendant, Counter Claimant, and Third Party Plaintiff, PCI TRADING, LLC, a Delaware limited liability company;
- Defendant, Counter Claimant, and Third Party Plaintiff, POTATO CORNER LA GROUP, LLC, a California limited liability company;
- Defendant, Counter Claimant, and Third Party Plaintiff, NKM CAPITAL GROUP, LLC, a California limited liability company;
- Defendant, J & K AMERICANA, LLC, a California limited liability company;
- Defendant, J&K LAKEWOOD, LLC, a California limited liability company;
- Defendant, J&K VALLEY FAIR, LLC, a California limited liability company;
- Defendant, J & K ONTARIO, LLC, a California limited liability company;
- Defendant, HLK MILPITAS, LLC, a California, limited liability company;
- Defendant, GK CERRITOS, LLC, a California, limited liability company;

- Defendant, J&K PC TRUCKS, LLC, a California limited liability company;
- Defendant, Counter Claimant, and Third Party Plaintiff, GK CAPITAL GROUP, LLC, Ca1ifornia limited liability company;
- Third Party Defendant, PC INTERNATIONAL PTE LTD., a Singapore business entity;
- Third Party Defendant, SPAVI INTERNATIONAL USA, INC., a California corporation; and
- Third Party Defendant, CINCO CORPORATION, a Philippines corporation.

The pleadings that raise the issues are:

- Plaintiff's First Amended Complaint. Dkt. 65.
- Answer to Amended Complaint, Third Party Complaint. Dkt. 108.
- Plaintiff's Answer and Affirmative Defenses to Defendants' Counterclaim/Third Pary Complaint. Dkt. 129
- Answer and Affirmative Defenses of Third Party Defendants to Defendants' Counterclaim/Third Party Complaint. Dkt. 156.

2.      Federal jurisdiction and venue are invoked on the following grounds: This Court has subject matter jurisdiction in this matter pursuant to 28 U.S.C. Sections 1331 and 1338(a) (federal question; trademarks) as it arises under acts of Congress related to trademarks. The Court has ancillary jurisdiction over the California state law claims alleged herein pursuant to 28 U.S.C. Sections 1338(b) and 1367 because the facts giving rise to those claims arise from the same common nucleus of operative facts as the claims subject to subject matter jurisdiction. Venue is proper in this District pursuant to 28 U.S.C. Section 1391 because Defendants transact regular and established business within this District and because a substantial part of the events or omissions giving rise to the claims occurred in this District.

3.    Plaintiff, Counter-Defendant and Third-Party Defendants (sometimes referred to herein as "Plaintiffs") estimate trial to take 7 trial days; Defendants, Counterclaimants and Third-Party Plaintiffs (sometimes referred to herein as "Defendants") estimate trial to take 15 days.

4.    The trial is to be a jury trial. At least seven (7) days prior to the trial date the parties shall file and serve by e-mail, fax, or personal delivery: (a) proposed jury instructions as required by L.R. 51-1 and (b) any special questions requested to be asked on voir dire.

5.    The following facts are admitted and require no proof: the Parties have not stipulated to any facts.

7.    **Claims and Defenses**

<u>Plaintiff and Counter Defendant ("Plaintiff")</u>

(A)    Plaintiff is pursuing the following claims against the following defendants:

(1)    Defendants and each of them are liable for Trademark Infringement (15 U.S.C. § 1114);

(2)    Defendants and each of them are liable for  Trademark Infringement (15 U.S.C. § 1125(a));

(3)    Defendants and each of them are liable for False Designation of Origin and Description of Fact (15 U.S.C. § 1125(a));

(4)    Defendants and each of them are liable for Contributory Trademark Infringement (15 U.S.C. § 1125(a));

(5)    Defendants and each of them are liable for Contributory Trademark Infringement  and False Designation of Origin and Description of Fact (15 U.S.C. § 1125(a));

(6)    Defendants and each of them are liable for Common Law Trademark Infringement;

(7)     Defendants and each of them are liable for Unfair Competition (Cal. Bus. & Prof. Code § 17200 et seq);

(8)     Declaratory Relief is warranted;

(9)     Plaintiff is entitled to compensation pursuant to Quantum Meruit; and

(10)   Defendants Misappropriation of Trade Secrets; and

(B)     The elements required to establish Plaintiff's first five claims depend on the same elements, the only difference being the Defendant responsible:

1. , Potato Corner's Intellectual Property which includes the Logo Mark, Fo Characters Mark and the tag line "World's Best Flavored French Fries" which are distinctive;

2. Plaintiff owns Potato Corner's Intellectual Property which includes the Logo Mark, Characters Mark and the tag line "World's Best Flavored French Fries" as trademarks;

3. Defendants used or caused someone else to use Potato Corner's Intellectual Property which includes the Logo Mark, Characters Mark and the tag line "World's Best Flavored French Fries" in interstate commerce; and

4. Defendants used or caused someone else to use Potato Corner's Intellectual Property which includes the Logo Mark, Characters Mark and the tag line "World's Best Flavored French Fries" without the consent of the Plaintiff in a manner that is either likely to cause confusion among ordinary consumers as to the source, sponsorship, affiliation, or approval of the services or presumed likely to cause confusion, given the identity of the marks.

5.     The elements required to establish Plaintiff's first five claims depend on the same elements:

(B)     The elements required to establish Plaintiff's sixth claim for unfair business practices is an incipient violation of the trademark and trade secret rights

of Plaintiff, or violates the policy or spirit of such a law because its effects are comparable to or the same as a violation of the law, or otherwise significantly threatens or harms competition.

(C) The elements required to establish Plaintiff's claim for quantum meruit is first:

1. That Defendant requested, by words or conduct, that Plaintiff provide a license to use the Potato Corner Intellectual Property for the benefit of Defendant PCJV;

2. That Plaintiff provided such license to use the Potato Corner Intellectual Property as requested by Defendant PCJV;

3. That Defendant has not paid Plaintiff royalties or any other compensation to Plaintiff for the use of the Potato Corner Intellectual Property; and

4. The reasonable value for the use of the Potato Corner Intellectual Property that was provided.

(D) The elements required to establish Plaintiff's claim for trade secret misappropriation:

1. That Plaintiff owned Trade Secrets;

2. That the Potato Corner Trade Secrets was a trade secret at the time of the misappropriation;

3. That Defendants improperly acquired and/or used one or more of the Potato Corner Trade Secrets;

4. That Plaintiff was harmed, or Defendants were unjustly enriched; and

5. That Defendants' acquisition and/or use of the Potato Corner Trade Secrets was a substantial factor in causing Plaintiff's harm and/or Defendants to be unjustly enriched.

6. That Defendant requested, by words or conduct, that Plaintiff provide a license to use the Potato Corner Intellectual Property for the benefit of Defendant PCJV;

(C) In brief, the key evidence Plaintiff relies on for each of the claims is the same as the evidence set forth in its Amended Complaint (Dkt. 65) and the Motion for Preliminary Injunction (Dkt. 44) as well as the admissions of various parties, including Guy Koren. That evidence includes emails internal to PCJV before 2019, public admissions of Defendants including Guy Koren, publicly available information, financial statements of the Defendants and franchisees, as well as witness testimony by Cinco and SPAVI as to, among other things, who owns the intellectual property at issue and negotiation of a potential license, which failed, leading to the termination of the license, admissions of the Defendants and photographs regarding uses of the intellectual property after termination, financial statements of Defendants and franchisees regarding damages (disgorgement of profits) as well as testimony from various regarding Koren and Defendants' unclean hands.

(D) In response to the counter claims alleged against it, Plaintiff intends to assert the following affirmative defenses:

(1) Uncertainty of Pleading

(2) Misjoinder of Parties

(3) Nonjoinder of Parties

(4) Election of Remedies

(5) Laches

(6) Consent

(7) Estoppel

(8) One Who Seeks Equity Must Do Equity

(9) Failure to Mitigate

(10) Immunity

(11) Privilege

(12) Unclean Hands

(13) Waiver

(14) Comparative Fault

(15) Lack Or Inadequacy of Consideration

(16) Abandonment Or Mutual Rescission of Contract

(17) Accord And Satisfaction

(18) Novation

(19) Modification of Contract

<u>Defendants, Counter Claimants, and Third Party Plaintiffs ("PCJV USA Parties")</u>

**A. PCJV USA Parties plan to pursue the following counterclaims/third party claims and Defendants plan to pursue the following affirmative defenses:**

1. *PCJV USA Parties' Claims*

(1)   Declaratory Relief

(2)   Inducing Breach of Contract

(3)   Intentional Interference with Contractual Relations

(4)   Intentional Interference with Prospective Economic Relations

(5)   Negligent Interference with Prospective Economic Relations

(6)   Aiding and Abetting Torts

(7)   Breach of Fiduciary Duty

(8)   Breach of Contracts

(9)   Breach of the Implied Covenant of Good Faith and Fair Dealing

(10)  Violations of Business & Professions Code §§ 17200, *et seq.*

(11)  Quantum Meruit

(12)  Accounting

2. *PCJV USA Parties' Affirmative Defenses*

(1)   Failure to State a Claim

1    (2)    Waiver, Consent/Acquiescence, Ratification, Promissory Estoppel,

2    Equitable Estoppel, and Judicial Estoppel

3    (3)    Unclean Hands

4    (4)    *In pari delicto*

5    (5)    Laches/Statute of Limitations

6    (6)    Sections 14, 15 and/or 33(b) of the Lanham Act, including Senior Use,

7    Fraud on the USPTO, Abandonment by Assignment in Gross, Abandonment by

8    Naked License

9    (7)    Authorized Use

10    (8)    Public Availability of Trade Secrets

11    (9)    Mitigation

12    (10)    Lack of At-Will License Agreement

13    **B. The elements required to establish PCJV USA Parties'**

14    **counterclaims/third party claims and Defendants' affirmative**

15    **defenses:**

16    1. *PCJV USA Parties' Counterclaims/Third Party Claims*

17    (1)    <u>Declaratory Relief</u> – (1) an injury in fact that is concrete and

18    particularized and actual or imminent, not conjectural or hypothetical that is (2)

19    casually connected and fairly traceable to the conduct complained of and not the

20    result of the independent action of some third party not before the court and (3)

21    likely as opposed to merely speculative, such that the injury will be redressed by a

22    favorable decision.

23    (2)    <u>Inducing Breach of Contract</u> – (1) that there was a contract between

24    any one of the PCJV USA Parties and any one of the Cinco parties; (2) that SPAVI

25    knew of the contract; (3) that SPAVI intended to cause any one of the Cinco parties

26    to breach the contract; (4) that SPAVI's conduct caused any one of the Cinco

27    parties to breach the contract; (5) that any one of the PCJV USA Parties were

28

harmed; and that SPAVI's conduct was a substantial factor in causing Defendants harm.

(3)     <u>Intentional Interference with Contractual Relations</u> –  (1) that there were various contracts, including contracts with the Cinco parties, franchisees, suppliers, and vendors; (2) that SPAVI knew of the contracts; (3) that SPAVI's conduct prevented performance or made performance more expensive or difficult; (4) that SPAVI either (a) intended to disrupt the performance of these contracts or (b) knew that disruption of performance was certain or substantially certain to occur; (5) that any one of the PCJV USA Parties were harmed; and (6) that SPAVI's conduct was a substantial factor in causing any one of the PCJV USA Parties' harm.

(4)     <u>Interference with Prospective Economic Relations</u> – (1) that any one of the PCJV USA Parties were in various economic relations, including with Cinco parties, franchisees, suppliers, and venders were in that probably would have resulted in an economic benefit to Defendants; (2) that Cinco Corporation knew of the relationships; (3) that SPAVI engaged in conduct to destroy the value of any one of the PCJV USA Parties' relationships by usurping the benefits of those relationships for SPAVI's benefit; (4) that by engaging in this conduct, SPAVI either (a) intended to disrupt the relationships or (b) knew that disruption of the relationships was certain or substantially certain to occur; (5) that those relationships were disrupted; (6) that any one of the PCJV USA Parties were harmed; and (6) that SPAVI's conduct was a substantial factor in causing any one of the PCJV USA Parties' harm.

(5)     <u>Negligent Interference with Prospective Economic Relations</u> – (1) that any one of the PCJV USA Parties were in various economic relations, including with Cinco parties, franchisees, suppliers, and venders that probably would have resulted in a future economic benefit to any one of the PCJV USA Parties; (2) that SPAVI knew or should have known of these relationships; (3) that SPAVI knew or

1    should have known that these relationships would be disrupted if it failed to act

2    with reasonable care;  (4) that SPAVI failed to act with reasonable care; (5) that

3    SPAVI engaged in wrongful conduct through engaging in conduct to destroy the

4    value of any one of the PCJV USA Parties' relationships by usurping the benefits of

5    those relationships for SPAVI's benefit; (6) that the relationships was disrupted; (7)

6    that any one of the PCJV USA Parties were harmed; and (8) that SPAVI's wrongful

7    conduct was a substantial factor in causing Defendants' harm.

8          (6)    <u>Aiding and Abetting Torts</u> – (1) that SPAVI knew that a breach of a

9    fiduciary duty, breach of the implied covenant of good faith and fair dealing, fraud,

10    or conversion was going to be committed by Cinco Corporation against any one of

11    the PCJV USA Parties; (2) that SPAVI gave substantial assistance or

12    encouragement to Cinco Corporation; and (3) that Cinco Corporation's conduct was

13    a substantial factor in causing harm to any one of the PCJV USA Parties.

14          (7)    <u>Breach of Fiduciary Duty</u> can be proven in one of two ways: First, (1)

15    that either Cinco Corporation or SPAVI, as Cinco Corporation's successor-in-

16    interest, was a joint venture partner of PCJV; (2) that Cinco Corporation or SPAVI,

17    as Cinco Corporation's successor-in-interest, acted on PCJV's behalf for purposes

18    of providing PCJV with an exclusive right to use the Potato Corner trademark in the

19    United States; (3) that Cinco Corporation or SPAVI, as Cinco Corporation's

20    successor-in-interest, failed to act as a reasonably careful partner would have acted

21    under the same or similar circumstances; (4) that any one of the PCJV USA Parties

22    were harmed; and (5) that the conduct of Cinco Corporation or SPAVI, as Cinco

23    Corporation's successor-in-interest,  was a substantial factor in causing any one of

24    the PCJV USA Parties' harm;

25          Second, (1) that Cinco Corporation or SPAVI, as Cinco Corporation's

26    successor-in-interest, was a joint venture partner of PCJV; (2) that Cinco

27    Corporation or SPAVI, as Cinco Corporation's successor-in-interest, knowingly

28    acted against interests of PCJV and PCJV's other joint venture partners in

connection with providing PCJV with an exclusive right to use the Potato Corner trademark in the United States; (3) that any one of the PCJV USA Parties did not give informed consent to the conduct of Cinco Corporation or SPAVI, as Cinco Corporation's successor-in-interest; (4) that any one of the PCJV USA Parties were harmed; and (5) that the conduct of Cinco Corporation or SPAVI, as Cinco Corporation's successor-in-interest, was a substantial factor in causing any one of the PCJV USA Parties' harm.

(8)     <u>Breach of Contracts</u> – (1) that any one of the PCJV USA Parties and Cinco Corporation entered into a contract; (2) that any one of the PCJV USA Parties did all, or substantially all, of the significant things that the contract required them to do; (3) that Cinco Corporation failed to do something that the contract required it to do; that any one of the PCJV USA Parties were harmed; and (4) that Cinco Corporation's breach of contract was a substantial factor in causing any one of the PCJV USA Parties' harm.

(9)     <u>Breach of Implied Covenant of Good Faith and Fair Dealing</u> – (1) that any one of the PCJV USA Parties and Cinco Corporation entered into a contract; (2) that SPAVI became Cinco Corporation's successor-in-interest such that it owed and owes any one of the PCJV USA Parties contractual duties; (3) that any one of the PCJV USA Parties did all, or substantially all of the significant things that the contract required them to do; (4) that Cinco Corporation and SPAVI engaged in negotiations in bad faith to effectuate a fraud or otherwise obtain an upper hand against any one of the PCJV USA Parties and by engaging in efforts to undermine any one of the PCJV USA Parties' long-term rights in the "Potato Corner" marks; (5) that by doing so, Cinco Corporation or SPAVI did not act fairly and in good faith; and (6) that any one of the PCJV USA Parties were harmed by Cinco Corporation's or SPAVI's conduct.

(10)    <u>Violations of Business & Professions Code §§ 17200, *et seq.*</u> – (1) SPAVI parties engaged in a business act and (2) the act offends established public

policy, that is immoral, unethical, oppressive, unscrupulous, or substantially injurious to consumers, and (3) any one of the PCJV USA Parties were harmed from the business act.

(11)   Quantum Meruit – (1) that any of the SPAVI Parties requested, by words or conduct, that any one of the PCJV USA Parties perform services for the benefit of any of the SPAVI Parties; (2) that any one of the PCJV USA Parties performed the services as requested; (3) that the requesting SPAVI Party/Parties has not paid any one of the PCJV USA Parties for the services; and (4) the reasonable value of the services that were provided.

(12)   Accounting – (1) a relationship that requires accounting exists between SPAVI Parties and Defendants and (2) a balance is owed by SPAVI Parties to any one of the PCJV USA Parties, which can only be ascertained with an accounting.

## 2. *Defendants' Affirmative Defenses*

(1)   Failure to State a Claim – even if all the factual allegations in the First Amended Complaint are true, they are insufficient to establish a cause of action and the case should therefore be dismissed.

(2)   Waiver, Consent/Acquiescence, Ratification, promissory Estoppel, Equitable Estoppel, and Judicial Estoppel - For waiver: (1) SPAVI knew PCJV USA Parties were required to obtain any rights to use "Potato Corner" marks or recipes from SPAVI and (2) that SPAVI freely and knowingly gave up its right to have PCJV USA Parties perform these obligations. For consent/acquiescence, that SPAVI conveyed its consent through an affirmative word or deed for PCJV USA Parties to use the "Potato Corner" marks. For ratification, that SPAVI consented to PCJV USA Parties' use of the "Potato Corner" marks and trade secrets after PCJV USA Parties used them.  For promissory estoppel: (1) Cinco promised PCJV USA Parties may exclusively use the "Potato Corner" marks in the U.S., (2) PCJV USA Parties relied on Cinco's promise, and (3) PCJV USA Parties were injured from Cinco's promise. For judicial estoppel: (1) Cinco took a prior position in the state

court action that SPAVI did not acquire rights or interests in PCJV, (2) Cinco now takes the position that SPAVI did acquire rights or interests in PCJV, (3) the state court took Cinco's initial position as true, (4) the positions are inconsistent, and (5) the first position was not taken as a result of ignorance, fraud, or mistake.

(3)     <u>Unclean Hands</u> - (1) SPAVI or Cinco engaged in inequitable conduct, (2) the inequitable conduct directly relates to SPAVI's trademark infringement or trade secret misappropriation claims, (3) the inequitable conduct injured PCJV USA Parties;

(4)     *In Pari Delicto- (1) Plaintiff and Defendants have substantially equal economic strength, (2) Plaintiff is at least equally responsible for the harmful conduct as defendants, and (3) Plaintiff was not held by economic pressure to engage in the harmful conduct.*

(5)     <u>Laches/Statute of Limitations</u> - That SPAVI discovered or by the exercise of reasonable diligence should have discovered PCJV USA Parties misappropriated SPAVI's trade secret over three years before SPAVI filed this action. To establish SPAVI's claims based on trademark infringement are barred by the statute of limitations, PCJV USA Parties must prove SPAVI knew, should have known, or had constructive notice of PCJV USA Parties' infringing conduct over three years before SPAVI filed this action. To establish all of SPAVI's claims are barred by laches, PCJV USA Parties must prove: (1) SPAVI unreasonably delayed in filing this action and (2) PCJV USA Parties are prejudiced by SPAVI's delay.

(6)     <u>Sections 14, 15 and/or 33(b) of the Lanham Act</u> - (1) Defendants continuously used the trademark, without interruption, in the U.S.; (2) they began using the trademark without knowledge of SPAVI's prior use elsewhere; and (3) they used the trademark before SPAVI published the registered trademark. To establish its defense that Plaintiff defrauded the USPTO, PCJV USA Parties must prove: (1) Cinco made a false representation regarding a material fact, (2) Cinco had knowledge or believed the representation was false, (3) Cinco intended to

induce reliance upon the misrepresentation, (4) the USPTO reasonably relied on the misrepresentation, and (5) the reliance proximately caused PCJV USA Parties' harm. To establish its defense of abandonment, PCJV USA Parties must prove: (1) Cinco discontinued its use in the ordinary course of trade, intending not to resume using it; (2) failed to act so that the trademark's primary significance to prospective consumers has become the good itself and not the producer of the good; or (3) failed to exercise adequate quality control over the goods sold under the trademark by a licensee.

(7)    <u>Authorized Use</u> - PCJV USA Parties had a right to use the marks.

(8)    <u>Public Availability of Trade Secrets</u> - the alleged trade secret was readily ascertainable by proper means at the time of the alleged use.

(9)    <u>Mitigation</u> - (1) SPAVI failed to use reasonable efforts to mitigate damages and (2) the amount by which damages would have been mitigated.

(10)    <u>Lack of At-Will License Agreement</u> - there was no offer, consideration, or acceptance of an at-will license to use "Potato Corner" marks.

## C. In brief, the key evidence PCJV USA Parties rely on for each counterclaim, third party claim and affirmative defense is:

### 1. *PCJV USA Parties' Counterclaims/Third Party Claims*

First Counterclaim/Third Party Claim:

- Testimony regarding how Koren created PCJV's kiosk-style/in-line fast-food restaurants and developed the goodwill in the U.S. brand, and consumer association of the brand to Potato Corner USA and PCJV;

- Koren/Magsaysay's April 3, 2009 email and the PCGC-NKM license;

- Draft versions of PCJV's Governing Documents and parol evidence;

- PCJV's FDDs and Board Minutes;

- Cinco's verified pleadings in the state court action and SPAVI's pleadings here;

- Cinco's only USPTO declaration of use, which submitted a specimen evidencing Cinco's claimed use of the U.S. marks was PCJV's use of the U.S. marks;

- The settlement agreement, membership interest purchase agreement, and corresponding assignments ("Settlement Documents") that resulted in Cinco's dismissal with prejudice of asserted claims and release of all known and unknown claims against Koren Parties with no carve out for any claims for damages against Koren Parties, preserving only a claim for declaratory relief as to SPAVI's acquisition of international trademark rights; and

- PCJV's First Request for Production of Documents, SPAVI's response thereto, and the Magistrate's March 12, 2025 Order.

- PCJV's Governing Documents and testimonial evidence regarding the consideration paid to Cinco thereunder, the absence of any claim against PCJV for breach of contract for allegedly failing to pay royalties, and Cinco's release of all known and unknown claims regarding any alleged failure to pay royalties;

- Testimonial evidence that there is no privity of contract between SPAVI and PCJV;

- Cinco's membership interest purchase agreement and parol evidence regarding Koren's purchase of all of Cinco's interests in PCJV and all of Cinco's licensing rights "attached" thereto, unencumbered by any claim by any third-party with respect thereto, along with representations and warranties that PCJV did not need any license from any third party to operate its U.S. Potato Corner USA franchise business; and

- PCJV's Governing Documents and testimonial evidence regarding Koren's First Amendment right to stand on his good faith belief that PCJV or he had no obligation to pay royalties to SPAVI.

- SPAVI's March 31, 2024 alleged termination of IP rights;

- SPAVI's decision to continue to sell, and offer to sell, at a profit flavored seasoning package to PCJV until September 2024;

- Evidence, including testimony, regarding the absence of any confidentiality obligation between SPAVI and Koren Parties;

- Evidence, including testimony, regarding the publicly available sources of Ferna's Potato Corner french fry seasoning packages; and

- Evidence, including testimony, regarding the reverse engineering process and denying any knowledge of Ferna's recipes, including in prior endeavors to reverse engineer Ferna's flavors on behalf of Cinco; and

- Evidence of damages, and expert report, opinion, testimony.

Second through Twelfth Claims: Same as the First Claim.

## 1. *Defendants' Affirmative Defenses*

Failure to State a Claim:

- Testimony regarding how Koren created PCJV's kiosk-style/in-line fast-food restaurants and developed the goodwill in the U.S. brand, and consumer association of the brand to Potato Corner USA and PCJV;

- Koren/Magsaysay's April 3, 2009 email and the PCGC-NKM license;

- Draft versions of PCJV's Governing Documents and parol evidence;

- PCJV's FDDs and Board Minutes;

- Cinco's verified pleadings in the state court action and SPAVI's pleadings here;

- Cinco's only USPTO declaration of use, which submitted a specimen evidencing Cinco's claimed use of the U.S. marks was PCJV's use of the U.S. marks;

- The settlement agreement, membership interest purchase agreement, and corresponding assignments ("Settlement Documents") that resulted in Cinco's dismissal with prejudice of asserted claims and release of all known and unknown claims against Koren Parties with no carve out for any claims for damages against Koren Parties, preserving only a claim for declaratory relief as to SPAVI's acquisition of international trademark rights; and

- PCJV's First Request for Production of Documents, SPAVI's response thereto, and the Magistrate's March 12, 2025 Order.

- PCJV's Governing Documents and testimonial evidence regarding the consideration paid to Cinco thereunder, the absence of any claim against PCJV for breach of contract for allegedly failing to pay royalties, and Cinco's release of all known and unknown claims regarding any alleged failure to pay royalties;

- Testimonial evidence that there is no privity of contract between SPAVI and PCJV;

- Cinco's membership interest purchase agreement and parol evidence regarding Koren's purchase of all of Cinco's interests in PCJV and all of Cinco's licensing rights "attached" thereto, unencumbered by any claim by any third-party with respect thereto, along with representations and warranties that PCJV did not need any license from any third party to operate its U.S. Potato Corner USA franchise business; and

- PCJV's Governing Documents and testimonial evidence regarding Koren's First Amendment right to stand on his good faith belief that PCJV or he had no obligation to pay royalties to SPAVI.

- SPAVI's March 31, 2024 alleged termination of IP rights;

- SPAVI's decision to continue to sell, and offer to sell, at a profit flavored seasoning package to PCJV until September 2024;

- Evidence, including testimony, regarding the absence of any confidentiality obligation between SPAVI and Koren Parties;

- Evidence, including testimony, regarding the publicly available sources of Ferna's Potato Corner french fry seasoning packages; and

- Evidence, including testimony, regarding the reverse engineering process and denying any knowledge of Ferna's recipes, including in prior endeavors to reverse engineer Ferna's flavors on behalf of Cinco.

Waiver, Consent/Acquiescence, Ratification, Promissory Estoppel, Equitable Estoppel, and Judicial Estoppel: Same as Failure to State a Claim.

Unclean Hands: Same as Failure to State a Claim.

*In pari delicto*: Same as Failure to State a Claim.

Laches/Statute of Limitations: Same as Failure to State a Claim.

Sections 14, 15 and/or 33(b) of the Lanham Act, including Senior Use, Fraud on the USPTO, Abandonment by Assignment in Gross, Abandonment by Naked License: Same as Failure to State a Claim.

Authorized Use: Same as Failure to State a Claim.

Public Availability of Trade Secrets: Same as Failure to State a Claim.

Mitigation: Same as Failure to State a Claim.

8.    In view of the admitted facts and the elements required to establish the claims, counterclaims and affirmative defenses, the following issues remain to be tried: Plaintiff asserts that as to the first five claims the only issue left to be decided is damages, and the same as to quantum meruit. As to trade secret misappropriation and unfair competition, the Defendants do not dispute they reverse engineered flavorings, and, as such, what remains to be tried is whether they were trade secret, protected that secrecy, and whether reverse engineering constitutes misappropriation, as well as damages.

Defendants contend the following elements must be established regarding the claims asserted in Plaintiff's amended complaint:

**Trademark Ownership**

1.    Whether Cinco and Koren and his LA investors agreed that (a) the U.S. Potato Corner franchisor would be the "vehicle" through which the Potato

Corner brand would expand in the United States and (b) PCJV's LA Group and President would be "vested" with control over what the registered U.S. Potato Corner marks identified?

2.      Whether the written joint venture agreement ("JVA") signed by Cinco and its four directors ("Cinco Group"), on one hand, and Koren and two LA investors ("LA Group"), on the other hand, recognized coownership of the U.S. Potato Corner trademarks, expressed terms and conditions upon which PCJV's use of the marks would inure to Cinco's benefit, constituted an implied agreement that Cinco had no right to unilaterally terminate PCJV's right to use the U.S. Potato Corner marks at its sole discretion, and/or constituted or included an "agreement to agree" to a master license agreement?

3.      In light of the partnership between the Cinco Group and LA Group, whether the parties' written joint venture agreement recognizes that PCJV's consideration was the lifetime right to use the U.S. Potato Corner marks subject only to a supermajority vote or further agreement by the parties, and Cinco's consideration was a promised long-term licensee-licensor relationship?

4.      If there were no license agreement in 2022 under which PCJV's use of the U.S. Potato Corner marks would inure to Cinco's benefit, whether Cinco (as a foreign registrant) or PCJV (as the first lawful and/or only continuous and exclusive user of the U.S. Potato Corner marks) had a superior claim to ownership under the multi-factor common-law test based on the parties' course of conduct and consumer association?

5.      Whether Cinco's U.S. trademark registrations should be cancelled or transferred to PCJV if there were no license agreement, because Cinco committed fraud on the USPTO when it filed declarations that it had made lawful and continuous use of the U.S. Potato Corner marks in 2016?

6.      Whether Cinco's U.S. trademark registrations are invalid under 15 U.S.C. § 1055 because Cinco did not have a contractual right to control and/or did

not exercise reasonable control over what the registered U.S. Potato Corner marks identified for a substantial period of time (*e.g.,* more than 3 or 5 years)?

7.    Whether the PCJV USA Parties in 2024 acquired the U.S. Potato Corner marks in their settlement agreement and membership interest purchase agreement with Cinco because SPAVI in 2022 did not acquire Cinco's interests in PCJV or trademark rights and obligations under PCJV's governing documents, including by not stepping into Cinco's shoes or assuming fiduciary or contractual obligations owed to PCJV?

8.    Whether PCJV has a superior claim to ownership of the U.S Potato Corner marks and registrations as the continuous and exclusive user of the marks because Cinco or SPAVI engaged in an assignment in gross, a naked license, or for other reasons SPAVI cannot enforce the trademarks against PCJV?

**Wrongful License Termination**

9.    Whether Cinco Group and LA Group agreed that PCJV had lifetime trademark rights to create, develop, manage, and sell Potato Corner branded, franchised restaurant businesses subject only to a supermajority vote or further agreement?

10.    Whether Cinco Group and LA Group expressly or impliedly agreed to a master license with a 20-year term and three 10-year options?

11.    Whether Cinco Group and LA Group expressly or impliedly agreed, at minimum, that Cinco did not have any right to terminate PCJV's right to use the U.S. Potato Corner marks "at-will"?

12.    Whether Cinco Group and LA Group agreed that Cinco could not transfer any right or obligation to license the U.S. Potato Corner without the LA Group's prior written consent?

13.    Whether Cinco had a fiduciary obligation not to unilaterally terminate PCJV's right to use the U.S. Potato Corner trademarks for its own economic benefit to PCJV's detriment?

14.     Whether Cinco affirmed or ratified that PCJV at least had a license with a 20-year term and three 10-year options in exchange for PCJV's exclusive use of the Potato Corner marks inuring to Cinco's benefit when, among other things, (a) Cinco executed the JVA and LLC Agreement, (b) Cinco's CEO signed the master services agreement ("MSA"), (c) Cinco had its counsel direct PCJV to sign a master license agreement ("MLA"), (c) approved or performed under PCJV's franchise disclosure documents ("FDDs"), (d) filed a declaration of use with the United States Patent and Trademark Office ("USPTO"), and/or (e) sold or transferred rights in the U.S. Potato Corner marks to SPAVI in 2022?

15.     Whether Cinco and/or SPAVI are estopped to deny that PCJV, at minimum, had a 20-year license with three 10-year options due to the PCJV USA Parties' reasonable and detrimental reliance upon on Cinco's request that PCJV sign the MLA, the parties' mutual waiver of remuneration in favor of growth, and/or Cinco's approval and performance under FDDs?

### Other Enforcement Issues

16.     Whether SPAVI's effort to enforce the U.S. Potato Corner trademarks against the PCJV USA Parties is barred or limited by one or more defenses, including (a) waiver, (b) consent/acquiescence, (c) ratification, (d) promissory estoppel or judicial estoppel, (e) unclean hand/*in pari delicto*, (f) senior use, (g) fraud on the USPTO, (h) assignment in gross, (i) naked license, (j) pre-existing non-terminable right to use, (k) seasoning packages acquired by property means/no confidentiality obligation to SPAVI, and (l) failure to mitigate?

### Monetary Recovery

17.     Whether there is a factual basis for legal damages or equitable disgorgement?

18.     If Plaintiff is entitled to monetary recovery, in what amount?

**SPAVI's Quantum Meruit Claim**

19.    Whether there is a factual basis for *quantum meruit*, including a contractual relationship with PCJV supporting a reasonable expectation of a royalty payment that the PCJV USA Parties would waive rights not to pay royalties in favor of growth of the U.S. Potato Corner franchise system?

20.    Were the PCJV USA unjustly enriched?

**SPAVI's CAL-UTSA Claim**

21.    Whether SPAVI owns any alleged trade secrets?

22.    Whether SPAVI, Cinco or the owner of the alleged trade secrets publicly sold or disclosed the alleged trade secrets and took reasonable steps to prevent reverse engineering of the seasoning flavors?

23.    Whether SPAVI can overcome the statutory presumption that reverse engineering codes not constitutes misappropriation?

24.    Whether SPAVI has suffered any loss of value by viture of competition in seasoning flavors?

**Third Party Claims Against Cinco**

25.    Whether Cinco breached a fiduciary or contractual obligation not to sell any interests in PCJV to SPAVI?

26.    Whether Cinco breached a fiduciary or contractual obligation not to sell any rights or obligations to SPAVI without Koren's prior written consent.

27.    Whether the mutual obligation to use "best efforts" to enter into agreements contemplated by the JVA, including a limited liability company agreement ("LLC Agreement"), a master services agreement ("MSA") and the MLA, was among the obligations that no PCJV partner could sell or transfer without prior written consent of the other partners?

28.    Whether Cinco's alleged rights as a licensor were among the rights that no PCJV partner could sell or transfer without prior written consent of the other partners?

29.     Whether an obligation not to unilaterally terminate PCJV's right to use the U.S. Potato Corner trademarks was among the obligations that no PCJV partner could sell or transfer without prior written consent of the other partners?

30.     Whether the fourth recital in the JVA (a) was merely a recital and not a term of the JVA or a binding exception to JVA's prohibition against the unilateral transfer of any interest, rights or obligations, (b) was superseded by provisions in PCJV's LLC Agreement prohibiting the unilateral transfer of membership interests or voting rights in PCJV, and (c) did not constitute prior written consent by the LA Group authorizing Cinco to transfer any "obligations" and more than economic rights in JVA to a "wholly owned" subsidiary?

31.     Whether the mutual intent of the parties was that a "wholly owned" subsidiary meant less-than-a-100%-owned subsidiary that did not own or control the U.S. Potato Corner marks?

32.     Whether the boilerplate integration clause in the First Amendment to the Joint Venture Agreement ("First Amendment") copied from the JVA's miscellaneous provisions was intended as a partial or complete integration of the JVA, LLC Agreement, MSA and/or master license (as evidenced by the MLA, FDDs, Board minutes and course of performance)?

33.     Whether the First Amendment's boilerplate integration clause copied from the JVA was mutually intended as a novation of Cinco's obligations under the JVA and the parties' related agreements?

34.     Whether the PCJV USA Parties have suffered damages caused by Cinco's breach of fiduciary or contractual obligations and if so, in what amount?

**Counterclaims Against SPAVI**

35.     Whether SPAVI in its transaction with Cinco assumed fiduciary or contractual obligations to PCJV or PCJV's partners by virtue of a complete assignment or an assignment of all rights and obligations under PCJV governing documents?

36.    Whether SPAVI wrongfully terminated PCJV's pre-existing right to use the U.S. Potato Corner marks under common law, under the JVA, or under any expressed or implied master license?

37.    Whether SPAVI breached an obligation to use its "best efforts" to negotiate a master license?

38.    Whether SPAVI aided and abetted a breach of fiduciary duty owed by Cinco not to sell or transfer any interest in PCJV to SPAVI?

39.    Whether SPAVI aided and abetted a breach of fiduciary duty owed by Cinco when Cinco allegedly transferred the U.S. Potato Corner trademark rights to SPAVI without prior written consent?

40.    Whether SPAVI induced Cinco to breach its contractual obligation not to sell or transfer any interest in PCJV to SPAVI?

41.    Whether SPAVI induced Cinco to breach its contractual obligation not to sell or transfer any trademark right or obligation to SPAVI?

42.    Whether SPAVI tortiously interfered, intentionally or negligently, with the PCJV Parties' contractual relations with U.S. franchisees, including by wrongfully acquiring the U.S. Potato Corner trademarks or by wrongfully terminating PCJV's right to use the U.S. Potato Corner marks?

43.    Whether SPAVI tortiously interfered, intentionally or negligently, with the PCJV Parties' prospective economic advantage arising from is contractual relations with third-party U.S. franchisees, including by wrongfully acquiring the U.S. Potato Corner trademarks or by wrongfully terminating PCJV's right to use the U.S. Potato Corner marks?

44.    Whether the PCJV USA Parties suffered damages caused by SPAVI's breach of fiduciary or contractual obligations and if so, in what amount?

45.    Whether the PCJV USA Parties suffered damages caused by SPAVI's inducing Cinco to breach contractual obligations and if so, in what amount?

46.     Whether the PCJV USA Parties suffered damages caused by SPAVI's tortious interference with their contractual relations with U.S. franchisees and if so, in what amount?

47.     Whether the PCJV USA Parties suffered damages caused by SPAVI's tortious interference their prospective economic advantage arising from their contractual relations with U.S. franchisees and if so, in what amount?

9.     All discovery is complete to the extent there are no outstanding deadlines, however Plaintiff and Third-Party Defendants object to this case proceeding to trial despite the fact that none of these parties were permitted to engage in any discovery at all.

10.     Plaintiff contends that all disclosures under F.R.Civ.P. 26(a)(3) have not been made. Defendants dispute that contention.

The joint exhibit list of the parties has been filed under separate cover as required by L.R. 16-6.1. Unless all parties agree that an exhibit shall be withdrawn, all exhibits will be admitted without objection at trial, except those exhibits listed below:

(a) Plaintiff objects to the following Exhibit Nos. on the following grounds:

| Ex. No. | Description | Objections |
|---------|-------------|------------|
| 1007 | May 2, 2017 Email from Ismael G. Khan to Erlinda Bartolome RE Letter of Appreciation to Guy Koren | II: Relevance FRE 401, 403; ;Hearsay: FRE 801, 802 |
| 1009 | April 20, 2010 Meeting Minutes | II: Relevance FRE 401, 403; ;Hearsay: FRE 801, 802 |
| 1010 | April 20, 2010 Email from Erlinda Bartolome to Amit | II: Relevance FRE 401, 403; ;Hearsay: |

| | | |
|---|---|---|
| | Nemanim and Guy Koren with the attached "Working Draft" of the Joint Venture Agreement | FRE 801, 802 |
| 1011 | April 21 – April 23, 2010 Meeting Minutes | II: Relevance FRE 401, 403; ;Hearsay: FRE 801, 802 |
| 1012 | April 27, 2010 Meeting Minutes | II: Relevance FRE 401, 403; ;Hearsay: FRE 801, 802 |
| 1013 | April 29, 2010 Meeting Minutes | II: Relevance FRE 401, 403; ;Hearsay: FRE 801, 802 |
| 1016 | May 15, 2010 Email from Jose Magsaysay to Erlinda Bartolome RE Embracing DLA Piper | II: Relevance FRE 401, 403; ;Hearsay: FRE 801, 802 |
| 1017 | May 18, 2010 Email from Jose Magsaysay to Amit Nemanim RE "SF Attorneys" Handling the JV Agreement | II: Relevance FRE 401, 403; ;Hearsay: FRE 801, 802 |
| 1019 | May 30, 2010 Meeting Minutes | II: Relevance FRE 401, 403; ;Hearsay: FRE 801, 802 |

27

| | | |
|---|---|---|
| 1020 | June 1, 2010 Email from Jose Magsaysay to Guy Koren, et al. with the Attached Draft JV Agreement | II: Relevance FRE 401, 403; ;Hearsay: FRE 801, 802 |
| 1021 | June 2, 2010 Email from Mark Tung to Guy Koren with His Comments on the Attached Draft JV Agreement | II: Relevance FRE 401, 403; ;Hearsay: FRE 801, 802 |
| 1023 | June 11, 2010 Email from Erlinda Bartolome to Jose Magsaysay, et al. with Her Comments to the Attached Draft JV Agreement | II: Relevance FRE 401, 403; ;Hearsay: FRE 801, 802 |
| 1024 | June 14, 2010 Email from Jose Magsaysay to Erlinda Bartolome RE Rejecting Mark Tung for the JV Company | II: Relevance FRE 401, 403; ;Hearsay: FRE 801, 802 |
| 1025 | June 28, 2010 Email Communications amongst Cinco Group, LA Group, and DLA Piper with the attached Further Revised JV Agreement | II: Relevance FRE 401, 403; ;Hearsay: FRE 801, 802 |
| 1026 | July 2, 2010 Email from Erlinda Bartolome to Ben | II: Relevance FRE 401, 403; ;Hearsay: |

| | | Olivas RE Cinco Group's Comments to the draft JV Agreement | FRE 801, 802 |
|---|---|---|---|
| | 1027 | Erlinda Bartolome's August 2010 Report | II: Relevance FRE 401, 403; ;Hearsay: FRE 801, 802 |
| | 1028 | September 16, 2010 Email from Erlinda Bartolome to Jose Magsaysay, et al. with the Attached Final Draft JV Agreement | II: Relevance FRE 401, 403; ;Hearsay: FRE 801, 802 |
| | 1029 | September 16, 2010 Email from Jose Magsaysay to Erlinda Bartolome RE Final Draft JV Agreement | II: Relevance FRE 401, 403; ;Hearsay: FRE 801, 802 |
| | 1036 | February 27, 2011 Email from Erlinda Bartolome to Kim Lambert RE Directors/Shareholders of NKM and PCJV | II: Relevance FRE 401, 403; ;Hearsay: FRE 801, 802 |
| | 1037 | April 10, 2011 Email from Erlinda Bartolome to Med Quiambao RE Ownership of PCJV | II: Relevance FRE 401, 403; ;Hearsay: FRE 801, 802 |
| | 1038 | DLA Piper's August 16, 2011 Invoice (Invoice No. 2609883) | II: Relevance FRE 401, 403; ;Hearsay: FRE 801, 802 |

| 1039 | DLA Piper's August 16, 2011 Invoice (Invoice No. 2609884) | II: Relevance FRE 401, 403; ;Hearsay: FRE 801, 802 |
|------|-----------------------------------------------------------|-----------------------------------------------------|
| 1040 | DLA Piper's August 16, 2011 Invoice (Invoice No. 2609885) | II: Relevance FRE 401, 403; ;Hearsay: FRE 801, 802 |
| 1041 | DLA Piper's August 16, 2011 Invoice (Invoice No. 2609887) | II: Relevance FRE 401, 403; ;Hearsay: FRE 801, 802 |
| 1042 | An Email Chain Beginning June 10, 2013 and Ending November 10, 2013 RE DLA Piper Outstanding Invoices | II: Relevance FRE 401, 403; ;Hearsay: FRE 801, 802 |
| 1043 | An Email Chain Beginning September 27, 2011 and Ending October 6, 2011 RE Mr. Magsaysay's Visa application and PCJV Membership Certificates | II: Relevance FRE 401, 403; ;Hearsay: FRE 801, 802 |
| 1044 | February 28, 2012 Email from Ben Olivas to Guy Koren, et al. RE No Additional Payments to Open 9 New Stores | II: Relevance FRE 401, 403; ;Hearsay: FRE 801, 802 |
| 1046 | June 29, 2012 Email from Kim Lambert to Ben Olivas RE Operating Agreement | II: Relevance FRE 401, 403; ;Hearsay: FRE 801, 802 |

| 1047 | July 10, 2012 Email from Amir Jacoby to Jose Magsaysay RE Complaining about DLA Piper | II: Relevance FRE 401, 403; ;Hearsay: FRE 801, 802 |
|---|---|---|
| 1048 | July 23, 2012 Email from Erlinda Bartolome to Guy Koren RE Request for Papers for the Cinco Board | II: Relevance FRE 401, 403; ;Hearsay: FRE 801, 802 |
| 1057 | LA Group's November 4, 2015 Letter to Cinco Group Board of Directors | II: Relevance FRE 401, 403; ;Hearsay: FRE 801, 802 |
| 1059 | 12/10/16 - Emails amongst Guy Koren, Mabuhay (Lito Sibayan) and Jose Magsaysay, concerning a Potential Transaction | II: Relevance FRE 401, 403; ;Hearsay: FRE 801, 802 |
| 1060 | 11/2/16 - Draft Letter of Intent from Mabuhay | II: Relevance FRE 401, 403; ;Hearsay: FRE 801, 802 |
| 1061 | LA Group's February 24, 2017 Letter to Cinco Group | II: Relevance FRE 401, 403; ;Hearsay: FRE 801, 802 |
| 1063 | September 14, 2017 Email from Guy Koren to Patricia Anatalio RE Stores not paying | II: Relevance FRE 401, 403; ;Hearsay: FRE 801, 802 |

| | | |
|---|---|---|
| | royalties | |
| 1069 | Amir Jacoby's Privilege Log | II: Relevance FRE 401, 403; ;Hearsay: FRE 801, 802 |
| 1073 | II: April 3, 2018 Letter from Guy Koren to Jose Magsaysay RE Transfer of Bank Accounts | II: Relevance FRE 401, 403; ;Hearsay: FRE 801, 802 |
| 1074 | II: March 27, 2018 Email from Jose Magsaysay to Guy Koren, et al. RE Requesting Meeting | II: Relevance FRE 401, 403; ;Hearsay: FRE 801, 802 |
| 1075 | II: April 9, 2018 Purported Meeting Minutes | II: Relevance FRE 401, 403; ;Hearsay: FRE 801, 802 |
| 1083 | Defendant and Cross-Complainant Guy Koren's Opposition to Brief to Cinco Corporation's *Ex Parte* Application for Order to Show Cause Re: Preliminary Injunction | II: Relevance FRE 401, 403; ;Hearsay: FRE 801, 802 |
| 1088 | Plaintiff Cinco Corporation and Potato Corner International, Inc.'s Motion to File Under Seal Certain Exhibits In Support of Motion | II: Relevance FRE 401, 403; ;Hearsay: FRE 801, 802 |

| | | |
|---|---|---|
| | for Summary Adjudication, filed December 19, 2018 | |
| 1089 | Verified Response of Cross-Defendant Amir Jacoby to Demurrer to Cross-Defendant PCJV USA, LLC, et al. to the First Amended Complaint of Plaintiffs Cinco Corporation and PCI, filed October 26, 2018 | II: Relevance FRE 401, 403; ;Hearsay: FRE 801, 802 |
| 1092 | 4/20/10 Draft of the JV Agreement | II: Relevance FRE 401, 403; ;Hearsay: FRE 801, 802 |
| 1093 | 6/1/10 Joint Venture Agreement from Jose Magsaysay | II: Relevance FRE 401, 403; ;Hearsay: FRE 801, 802 |
| 1094 | 6/11/10 Final draft of JV Agreement | II: Relevance FRE 401, 403; ;Hearsay: FRE 801, 802 |
| 1095 | 6/28/10 Joint Venture Agreement draft 2 | II: Relevance FRE 401, 403; ;Hearsay: FRE 801, 802 |
| 1096 | 7/2/10 JV Agreement Draft V2 with notes from Ben Olivas | II: Relevance FRE 401, 403; ;Hearsay: FRE 801, 802 |
| 1097 | 9/16/10 Final copy of the JV Agreement from Ben | II: Relevance FRE 401, 403; ;Hearsay: |

| | | FRE 801, 802 |
|---|---|---|
| 1098 | 9/16/10 Lyndah agreeing with the Final Draft of the JV Agreement | II: Relevance FRE 401, 403; ;Hearsay: FRE 801, 802 |
| 1101 | 6/29/12 Kim Lambert asking Ben Olivas for a signed operating agreement | II: Relevance FRE 401, 403; ;Hearsay: FRE 801, 802 |
| 1102 | 7/10/12 Amir Jacoby inquiring on outstanding issue involving Potato Corner and DLA Piper to Joe | II: Relevance FRE 401, 403; ;Hearsay: FRE 801, 802 |
| 1103 | 10/1/09 Potato Corner USA Joint Venture Agreement | II: Relevance FRE 401, 403; ;Hearsay: FRE 801, 802 |
| 1104 | 11/30/10 Limited Liability Company Agreement of PCJV USA, LLC | II: Relevance FRE 401, 403; ;Hearsay: FRE 801, 802 |
| 1105 | 10/16/12 PCJV Board Meeting notes | II: Relevance FRE 401, 403; ;Hearsay: FRE 801, 802 |
| 1108 | 4/19/10 US Trip April — LA Team notes | II: Relevance FRE 401, 403; ;Hearsay: FRE 801, 802 |
| 1109 | 4/20/10 Meeting in Topanga Mall notes | Relevance FRE 401, 403; ;Hearsay: FRE 801, 802 |
| 1110 | 5/30/10 PCJV USA LLC First | II: Relevance FRE |

| | | Board of Directors Meeting notes | 401, 403; ;Hearsay: FRE 801, 802 |
|---|---|---|---|
| | 1111 | 6/10/10 Email conversation between Amit Newman and Guy Koren; Amir Jacoby | II: Relevance FRE 401, 403; ;Hearsay: FRE 801, 802 |
| | 1112 | 6/14/10 Email conversation between multiple parties in regards to JV Agreement | II: Relevance FRE 401, 403; ;Hearsay: FRE 801, 802 |
| | 1113 | PCJV USA LLC Franchisor Entity for Potato Corner in the US Corporate Set-Up | II: Relevance FRE 401, 403; ;Hearsay: FRE 801, 802 |
| | 1114 | 4/26/12 Email conversations between Ben Olivas to multiple parties on PCJV – Info for Singer Lewak and Background info supporting documents | II: Relevance FRE 401, 403; ;Hearsay: FRE 801, 802 |
| | 1115 | 1/7/11 Email from Erlinda Bartolome to Ben Olivas on PCJV, LLC Draft FS and Management Rep Letter | II: Relevance FRE 401, 403; ;Hearsay: FRE 801, 802 |
| | 1117 | 4/10/11 Email from Erlinda Bartolome to Med Quiambao on shareholding of companies | II: Relevance FRE 401, 403; ;Hearsay: FRE 801, 802 |
| | 1118 | 11/10/13 Email conversations between multiple parties on DLA Outstanding Invoices | II: Relevance FRE 401, 403; ;Hearsay: FRE 801, 802 |

| | | |
|---|---|---|
| 1119 | 10/6/11 Email conversations between multiple parties on PCJV Membership Certificates, and Cinco – Stock certificates and stock ledger | II: Relevance FRE 401, 403; ;Hearsay: FRE 801, 802 |
| 1120 | 2/28/12 Email from Ben Olivas to multiple parties on PCJV – Revised Joint Venture Agreement Terms | II: Relevance FRE 401, 403; ;Hearsay: FRE 801, 802 |
| 1121 | 5/25/15 Email from Ben Olivas to multiple parties on PCJV – Cinco counter proposal to LA Group | II: Relevance FRE 401, 403; ;Hearsay: FRE 801, 802 |
| 1122 | 8/8/15 Letter from Ricardo Montelibano to Guy and Amir on current situation of PCJV LLC | II: Relevance FRE 401, 403; ;Hearsay: FRE 801, 802 |
| 1123 | 11/4/15 Letter to Cinco Group Board of Directors c/o Lyndah Bartolome | II: Relevance FRE 401, 403; ;Hearsay: FRE 801, 802 |
| 1124 | 12/10/16 Email conversations between Lito Sibayan and Guy Koren regarding PC and Non-disclosure | II: Relevance FRE 401, 403; ;Hearsay: FRE 801, 802 |

| 1125 | 2/24/17 Letter to Cinco Group c/o Ricardo Montelibano | II: Relevance FRE 401, 403; ;Hearsay: FRE 801, 802 |
|------|------|------|
| 1126 | 12/3/17 Email from Amir Jacoby to multiple parties on US trip minutes | II: Relevance FRE 401, 403; ;Hearsay: FRE 801, 802 |
| 1127 | 2/13/18 Multiple email conversations in regards to US trip minutes | II: Relevance FRE 401, 403; ;Hearsay: FRE 801, 802 |
| 1128 | 3/8/18 Email from Amir Jacoby to multiple parties on PCJV USA – Moving forward | II: Relevance FRE 401, 403; ;Hearsay: FRE 801, 802 |
| 1129 | 3/16/18 Email from Inbal Jacoby to multiple parties on PCJV USA – Chief Accounting Officer | II: Relevance FRE 401, 403; ;Hearsay: FRE 801, 802 |
| 1130 | 3/20/18 Email from Dom Hernandez to multiple parties on PCJV Letter of Intent | II: Relevance FRE 401, 403; ;Hearsay: FRE 801, 802 |
| 1131 | 4/3/18 Letter to Jo Mag regarding PCJV & PCIT Transfer of Bank Accounts | II: Relevance FRE 401, 403; ;Hearsay: FRE 801, 802 |

|  |  |  |
|---|---|---|
| 1135 | 6/19/18 Order Denying Cinco's Request for Injunctive Relief and Granting Koren's Request for Injunctive Relief | II: Relevance FRE 401, 403; ;Hearsay: FRE 801, 802 |
| 1136 | 6/4/19 Order Granting Motion to Quash | II: Relevance FRE 401, 403; ;Hearsay: FRE 801, 802 |
| 1137 | 8/30/19 Order Denying Potato Corner International's Motion for Preliminary Injunction | II: Relevance FRE 401, 403; ;Hearsay: FRE 801, 802 |
| 1138 | 5/28/24 Minutes Regarding Trial Readiness Conference | II: Relevance FRE 401, 403; ;Hearsay: FRE 801, 802 |
| 1139 | 5/14/18 Order Granting Ex Parte Application for Temporary Restraining Order in Case No. BC701075 | II: Relevance FRE 401, 403; ;Hearsay: FRE 801, 802 |
| 1146 | PCJV's Growth Chart | II: Hearsay: FRE 801, 802; Failure to authenticate , FRE 901 |

v.7175285968.1

| 1147 | PCJV's Spreadsheet RE SPAVI Royalty | II: Hearsay: FRE 801, 802; Failure to authenticate , FRE 901 |

(b) PCJV USA Parties object to the following Exhibit on the following grounds:

| Ex. No. | Description | Objections |
| --- | --- | --- |
| 4 | U.S. Patent and Trademark Office Trademark Assignment Cover Sheet (Potato Corner Logo Mark and Characters Mark) Dkt. 44-13 | Δ: Admissibility of exhibits presented at the preliminary injunction stage must be independently assessed for admissibility at trial (FRCP 65(a)(2); *Burlington Northern R. Co. v. Dept. of Revenue of State of Wash.*, 783 F.Supp. 1274, 1281 (W.D. Wash. 1991)); secondary evidence (FRE 1004). |
| 6 | U.S. Patent and Trademark Office Trademark Assignment Cover Sheet (World's Best Characters Mark) Dkt. 44-15 | Δ: Admissibility of exhibits presented at the preliminary injunction stage must be independently assessed for admissibility at trial (FRCP 65(a)(2); *Burlington Northern R. Co. v. Dept. of Revenue of State of Wash.*, 783 F.Supp. 1274, 1281 (W.D. Wash. 1991)); secondary evidence (FRE 1004). |
| 9 | 2012 PCJV USA LLC Amended Joint Venture Agreement Dkt. 44-18 | Δ: Objection only to the extent that the exhibit description is incorrect (it should be "First Amendment to the Joint Venture Agreement"). |
| 20 | May 29, 2023 Email from Y. Tan | Δ: Admissibility of exhibits presented at the preliminary injunction stage must be independently assessed for admissibility at trial (FRCP 65(a)(2); *Burlington Northern R. Co. v. Dept. of Revenue of State of Wash.*, 783 F.Supp. 1274, 1281 (W.D. Wash. 1991)); unfair prejudice outweighs probative value (FRE 403); secondary evidence (FRE 1004); inadmissible hearsay (FRE 802); confidential settlement |

| | | |
|---|---|---|
| | | and mediation communications (Cal. Evid. Code 1115, *et seq.*, 1152, 1154). |
| 21 | June 28, 2023 Email from G. Koren Dkt. 44-30 | Δ: Admissibility of exhibits presented at the preliminary injunction stage must be independently assessed for admissibility at trial (FRCP 65(a)(2); *Burlington Northern R. Co. v. Dept. of Revenue of State of Wash.*, 783 F.Supp. 1274, 1281 (W.D. Wash. 1991)); unfair prejudice, juror confusion, and waste of time outweighs probative value (FRE 403); secondary evidence (FRE 1004); inadmissible hearsay (FRE 802); confidential settlement and mediation communications (Cal. Evid. Code 1115, *et seq.*, 1152, 1154). |
| 22 | July 3, 2023 Email from Y. Tan Dkt. 44-31 | Δ: Admissibility of exhibits presented at the preliminary injunction stage must be independently assessed for admissibility at trial (FRCP 65(a)(2); *Burlington Northern R. Co. v. Dept. of Revenue of State of Wash.*, 783 F.Supp. 1274, 1281 (W.D. Wash. 1991)); unfair prejudice, juror confusion, and waste of time outweighs probative value (FRE 403); secondary evidence (FRE 1004); inadmissible hearsay (FRE 802); confidential settlement and mediation communications (Cal. Evid. Code 1115, *et seq.*, 1152, 1154). |
| 23 | July 12, 2023 Email from Y. Tan Dkt. 44-32 | Δ: Admissibility of exhibits presented at the preliminary injunction stage must be independently assessed for admissibility at trial (FRCP 65(a)(2); *Burlington Northern R. Co. v. Dept. of Revenue of State of Wash.*, 783 F.Supp. 1274, 1281 (W.D. Wash. 1991)); unfair prejudice, juror confusion, and waste of time outweighs probative value (FRE 403); secondary evidence (FRE 1004); inadmissible hearsay (FRE 802); confidential settlement and mediation communications (Cal. Evid. Code 1115, *et seq.*, 1152, 1154). |
| 24 | January 23, 2024 Email from V. Gregorio Dkt. 44-33 | Δ: Admissibility of exhibits presented at the preliminary injunction stage must be independently assessed for admissibility at trial (FRCP 65(a)(2); *Burlington Northern R. Co. v. Dept. of Revenue of State of Wash.*, 783 F.Supp. 1274, 1281 (W.D. Wash. 1991)); unfair prejudice, juror confusion, and waste of time outweighs probative value (FRE 403); secondary evidence (FRE 1004); inadmissible |

40

| | | | |
|---|---|---|---|
| | | | hearsay (FRE 802); confidential settlement and mediation communications (Cal. Evid. Code 1115, *et seq.*, 1152, 1154). |
| | 25 | Y. Tan Text Messages with G. Koren Dkt. 44-34 | Δ: Admissibility of exhibits presented at the preliminary injunction stage must be independently assessed for admissibility at trial (FRCP 65(a)(2); *Burlington Northern R. Co. v. Dept. of Revenue of State of Wash.*, 783 F.Supp. 1274, 1281 (W.D. Wash. 1991)); unfair prejudice, juror confusion, and waste of time outweighs probative value (FRE 403); secondary evidence (FRE 1004); inadmissible hearsay (FRE 802); confidential settlement and mediation communications (Cal. Evid. Code 1115, *et seq.*, 1152, 1154). |
| | 26 | February 16, 2024 Email from G. Koren Dkt. 44-35 | Δ: Admissibility of exhibits presented at the preliminary injunction stage must be independently assessed for admissibility at trial (FRCP 65(a)(2); *Burlington Northern R. Co. v. Dept. of Revenue of State of Wash.*, 783 F.Supp. 1274, 1281 (W.D. Wash. 1991)); unfair prejudice, juror confusion, and waste of time outweighs probative value (FRE 403); secondary evidence (FRE 1004); inadmissible hearsay (FRE 802); confidential settlement and mediation communications (Cal. Evid. Code 1115, *et seq.*, 1152, 1154). |
| | 27 | February 27, 2024 Email from V. Gregorio Dkt. 44-36 | Δ: Admissibility of exhibits presented at the preliminary injunction stage must be independently assessed for admissibility at trial (FRCP 65(a)(2); *Burlington Northern R. Co. v. Dept. of Revenue of State of Wash.*, 783 F.Supp. 1274, 1281 (W.D. Wash. 1991)); unfair prejudice, juror confusion, and waste of time outweighs probative value (FRE 403); secondary evidence (FRE 1004); inadmissible hearsay (FRE 802); confidential settlement and mediation communications (Cal. Evid. Code 1115, *et seq.*, 1152, 1154). |
| | 28 | March 5, 2024 Email from Y. Tan Dkt. 44-37 | Δ: Admissibility of exhibits presented at the preliminary injunction stage must be independently assessed for admissibility at trial (FRCP 65(a)(2); *Burlington Northern R. Co. v. Dept. of Revenue of State of Wash.*, 783 F.Supp. 1274, 1281 (W.D. Wash. 1991)); unfair prejudice, juror confusion, and waste of time outweighs probative value (FRE 403); secondary |

| | | evidence (FRE 1004); inadmissible hearsay (FRE 802); confidential settlement and mediation communications (Cal. Evid. Code 1115, *et seq.*, 1152, 1154). |
|---|---|---|
| 29 | May 31, 2024 Letter from Y. Tan Dkt. 44-38 | Δ: Admissibility of exhibits presented at the preliminary injunction stage must be independently assessed for admissibility at trial (FRCP 65(a)(2); *Burlington Northern R. Co. v. Dept. of Revenue of State of Wash.*, 783 F.Supp. 1274, 1281 (W.D. Wash. 1991)); secondary evidence (FRE 1004); inadmissible hearsay (FRE 802); objection to the extent that the exhibit description is incorrect (it is from Vic Gregorio, not Y. Tan). |
| 31 | June 13, 2024 Letter from Y. Tan Dkt. 44-40 | Δ: Admissibility of exhibits presented at the preliminary injunction stage must be independently assessed for admissibility at trial (FRCP 65(a)(2); *Burlington Northern R. Co. v. Dept. of Revenue of State of Wash.*, 783 F.Supp. 1274, 1281 (W.D. Wash. 1991)); secondary evidence (FRE 1004); inadmissible hearsay (FRE 802). |
| 32 | April 15, 2024 Statement of Managements Responsibility for Consolidated Financial Statements Dkt. 44-41 | Δ: Admissibility of exhibits presented at the preliminary injunction stage must be independently assessed for admissibility at trial (FRCP 65(a)(2); *Burlington Northern R. Co. v. Dept. of Revenue of State of Wash.*, 783 F.Supp. 1274, 1281 (W.D. Wash. 1991)); incomplete document (FRE 106); irrelevant (FRE 402); unfair prejudice, juror confusion, and waste of time outweighs probative value (FRE 403); secondary evidence (FRE 1004); inadmissible hearsay (FRE 802). |
| 36 | July 31, 2024 Email from K. Hsu Re: RE: SPAVI Dkt. 44-45 | Δ: Irrelevant (FRE 402); inadmissible hearsay (FRE 802); unfair prejudice outweighs probative value (FRE 403). |
| 37 | July 12, 2023 Email from Y. Tan Dkt. 44-46 | Δ: Objection to the extent that the exhibit description is incorrect (it is Guy Koren's Verified Third Amended Cross-Complaint). |
| 40 | SPAVIs Sample Franchise Agreement for Potato Corner Dkt. 44-48 | Δ: Admissibility of exhibits presented at the preliminary injunction stage must be independently assessed for admissibility at trial (FRCP 65(a)(2); *Burlington Northern R. Co. v. Dept. of Revenue of State of* |

| | | |
|---|---|---|
| | | *Wash.*, 783 F.Supp. 1274, 1281 (W.D. Wash. 1991)); irrelevant (FRE 402). |
| 41 | Photos Re: Potato Bro (Glendale, California) Dkt. 44-49 | Δ: Admissibility of exhibits presented at the preliminary injunction stage must be independently assessed for admissibility at trial (FRCP 65(a)(2); *Burlington Northern R. Co. v. Dept. of Revenue of State of Wash.*, 783 F.Supp. 1274, 1281 (W.D. Wash. 1991)); irrelevant (FRE 402). |
| 44 | September 22, 2024 Email Re: RE: SPAVI/PCJV L.R. 7-3 Conference of Counsel Dkt. 44-52 | Δ: Irrelevant (FRE 402); inadmissible hearsay (FRE 802); unfair prejudice outweighs probative value (FRE 403). |
| 45 | Declaration of Maria Rosario L. Ybanez (October 10, 2024) Dkt. 44-2 | Δ: Inadmissible hearsay (FRE 802); unfair prejudice outweighs probative value (FRE 403); secondary evidence (FRE 1004). |
| 46 | Declaration of Jose P. Magsaysay (October 10, 2024) Dkt. 44-3 | Δ: Inadmissible hearsay (FRE 802); unfair prejudice outweighs probative value (FRE 403); secondary evidence (FRE 1004). |
| 47 | Declaration of Vicente Gregorio (October 10, 2024) Dkt. 44-4 | Δ: Inadmissible hearsay (FRE 802); unfair prejudice outweighs probative value (FRE 403); secondary evidence (FRE 1004). |
| 48 | Declaration of Yiow Leong Tan (October 10, 2024) Dkt. 44-5 | Δ: Inadmissible hearsay (FRE 802); unfair prejudice outweighs probative value (FRE 403); secondary evidence (FRE 1004). |
| 49 | Declaration of Jose Arnold T. Alvero (October 10, 2024) Dkt. 44-6 | Δ: Inadmissible hearsay (FRE 802); unfair prejudice outweighs probative value (FRE 403); secondary evidence (FRE 1004). |
| 50 | Declaration of Jorge Ma Q. Concepcion (October 10, 2024) Dkt. 44-7 | Δ: Inadmissible hearsay (FRE 802); unfair prejudice outweighs probative value (FRE 403); secondary evidence (FRE 1004). |
| 51 | Declaration of Zachary Lake (October 10, 2024) Dkt. 44-8 | Δ: Inadmissible hearsay (FRE 802); unfair prejudice outweighs probative value (FRE 403); secondary evidence (FRE 1004). |

| 72 | Declaration of Guy Koren from State Court Case in Support of Motion for Summary Adjudication | Δ: Objection to the extent that the exhibit description is incorrect (it a letter from Yiow-Leong Tan, not a declaration from Guy Koren). |
|----|----|----|
| 79 | PCJV LA Group Partnership Agreement dated March 1, 2013 | Δ: Objection to the extent that the exhibit description is incorrect (it is the Group Master Services Agreement, not the Group Partnership Agreement). |
| 104 | June 10, 2019 email re answers to questions | Δ: Irrelevant (FRE 402); privileged, work product. |

11.    Witness lists of the parties have been filed with the Court.

Only the witnesses identified in the lists will be permitted to testify (other than solely for impeachment). Each party intending to present evidence by way of deposition testimony has marked such depositions in accordance with L.R. 16-2.7. For this purpose, Plaintiff intends to lodged with the Clerk the following deposition transcript, to which Defendants object: Engel.

12.    The following law and motion matters and motions *in limine*, and no others, are pending or contemplated: Plaintiff is considering a new Motion for Contempt as well as commencing proceedings under FRCP 11. Defendants may make appropriate motions at trial.

13.    Bifurcation of the following issues for trial is ordered: None.

14.    The foregoing admissions having been made by the parties, and the parties having specified the foregoing issues remaining to be litigated, this Final Pretrial Conference Order shall supersede the pleadings and govern the course of the trial of this cause, unless modified to prevent manifest injustice.

1

2

3    DATED: _____

4                                          _____
                                           Stanley Blumenfeld, Jr.
5                                          United States District Judge

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

[PROPOSED] PRETRIAL CONFERENCE ORDER                    CASE NO. 2:24-CV-04546-SB(AGRX)
175285968.1

1    Approved as to form and content.

2

3    Dated:  August 5, 2025                    /s/ Michael D. Murphy
                                              Michael D. Murphy
4                                             Matthew Follett
5                                             Jessica Nwasike
                                              Fox Rothschild LLP
6                                             *Attorneys for Plaintiff and*
7                                             *Counterclaim Defendant, and Third*
                                              *Party Defendants*
8

9
     Dated:  August 5, 2025                    /s/ Todd M. Malynn
10                                            Arash Beral
11                                            Todd M. Malynn
                                              Blank Rome LLP
12                                            *Attorneys for Defendants,*
13                                            *Counterclaimants, and Third Party*
                                              *Plaintiffs*
14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

1

## **CERTIFICATE OF SERVICE**

2       The undersigned certifies that, on August 5, 2025, the foregoing document

3   was electronically filed with the Clerk of the Court for the United States District

4   Court, Central District of California, using the Court's ECF filing system. I further

5   certify that all counsel for all parties to this action are registered CM/ECF users and

6   that service will be accomplished by the CM/ECF system.

7       I certify under penalty of perjury that the foregoing is true and correct.

8

9

10   Dated:  August 5, 2025                          **FOX ROTHSCHILD LLP**

11

12                                               */s/ Michael D. Murphy*
                                                  Michael D. Murphy
13                                               Attorneys for Plaintiff and Counterclaim
                                                 Defendant SHAKEY'S PIZZA ASIA
14                                               VENTURES, INC. and Third Party
                                                 Defendants CINCO CORPORATION,
15                                               PC INTERNATIONAL PTE LTD., and
                                                 SPAVI INTERNATIONAL USA, INC.
16

17

18

19

20

21

22

23

24

25

26

27

28

[PROPOSED] PRETRIAL CONFERENCE ORDER              CASE NO. 2:24-CV-04546-SB(AGRX)
175285968.1