| | |
|---|---|
| 1 | Michael D. MURPHY (SBN 224678) |
| | mdmurphy@foxrothschild.com |
| 2 | MATTHEW FOLLETT (SBN 325481) |
| | mfollett@foxrothschild.com |
| 3 | JESSICA NWASIKE (SBN 343087) |
| | jnwasike@foxrothschild.com |
| 4 | FOX ROTHSCHILD LLP |
| | Constellation Place |
| 5 | 10250 Constellation Boulevard, Suite 900 |
| | Los Angeles, California 90067 |
| 6 | Telephone: 310.598.4150 |
| 7 | Facsimile: 310.556.9828 |
| 8 | Attorneys for Plaintiff and Counterclaim Defendant SHAKEY'S PIZZA ASIA |
| 9 | VENTURES, INC. and Third Party Defendants CINCO CORPORATION, PC |
| 10 | INTERNATIONAL PTE LTD., and SPAVI INTERNATIONAL USA, INC. |

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | | |
|---|---|---|
| | SHAKEY'S PIZZA ASIA VENTURES, INC, A PHILIPPINES CORPORATION, | Case No. 2:24-CV-04546-SB(AGRx) |
| | | *The Hon. Stanley Blumenfeld, Jr.* |
| | Plaintiff, | |
| | v. | **DECLARATION OF MICHAEL MURPHY IN RESPONSE TO ORDER TO SHOW CAUSE DKT. 238** |
| | PCJV USA, LLC, A DELAWARE LIMITED LIABILITY COMPANY; PCI TRADING, LLC, A DELAWARE LIMITED LIABILITY COMPANY; GUY KOREN, AN INDIVIDUAL; POTATO CORNER LA GROUP, LLC, A CALIFORNIA LIMITED LIABILITY COMPANY; NKM CAPITAL GROUP, LLC, A CALIFORNIA LIMITED LIABILITY COMPANY; J & K AMERICANA, LLC, A CALIFORNIA LIMITED LIABILITY COMPANY; J&K LAKEWOOD, LLC, A CALIFORNIA LIMITED LIABILITY COMPANY; J&K VALLEY FAIR, LLC, A CALIFORNIA LIMITED LIABILITY COMPANY; J & K ONTARIO, LLC, A | Complaint Filed:   May 31, 2024<br>Trial Date:   August 18, 2025 |

1

| | |
|---|---|
| 1<br>2<br>3<br>4<br>5<br>6<br>7<br>8 | CALIFORNIA LIMITED LIABILITY COMPANY; HLK MILPITAS, LLC, A CALIFORNIA, LIMITED LIABILITY COMPANY; GK CERRITOS, LLC, A CALIFORNIA, LIMITED LIABILITY COMPANY; J&K PC TRUCKS, LLC, A CALIFORNIA LIMITED LIABILITY COMPANY; AND, GK CAPITAL GROUP, LLC, A CALIFORNIA LIMITED LIABILITY COMPANY AND DOES 1 THROUGH 100, INCLUSIVE,<br><br>  Defendants. |
| 9<br>10<br>11<br>12<br>13<br>14<br>15 | PCJV USA, LLC, A DELAWARE LIMITED LIABILITY COMPANY; PCI TRADING LLC, A DELAWARE LIMITED LIABILITY COMPANY; POTATO CORNER LA GROUP LLC, A CALIFORNIA LIMITED LIABILITY COMPANY; GK CAPITAL GROUP, LLC, A CA1IFORNIA LIMITED LIABILITY COMPANY; NKM CAPITAL GROUP LLC, A CALIFORNIA LIMITED LIABILITY COMPANY; AND GUY KOREN, AN INDIVIDUAL, |
| 16 | Counter-Claimants, |
| 17 | v. |
| 18<br>19 | SHAKEY'S PIZZA ASIA VENTURES, INC, A PHILIPPINES CORPORATION, |
| 20 | Counter Defendant. |
| 21<br>22<br>23<br>24<br>25<br>26<br>27 | PCJV USA, LLC, A DELAWARE LIMITED LIABILITY COMPANY; PCI TRADING LLC, A DELAWARE LIMITED LIABILITY COMPANY; POTATO CORNER LA GROUP LLC, A CALIFORNIA LIMITED LIABILITY COMPANY; GK CAPITAL GROUP, LLC, A CA1IFORNIA LIMITED LIABILITY COMPANY; NKM CAPITAL GROUP LLC, A CALIFORNIA LIMITED LIABILITY COMPANY; AND GUY KOREN, AN INDIVIDUAL, |
| 28 | |

2

Declaration of Michael Murphy re OSC Dkt. 238                CASE NO. 2:24-CV-04546-SB(AGRX)

175373488.1

|   |   |
|---|---|
| 1 | Third Party Plaintiffs, |
| 2 | v. |
| 3 | PC INTERNATIONAL PTE LTD., A SINGAPORE BUSINESS ENTITY; SPAVI INTERNATIONAL USA, INC., A CALIFORNIA CORPORATION; CINCO CORPORATION, A PHILIPPINES CORPORATION; AND DOES 1 THROUGH 10, INCLUSIVE, |
| 7 | *Third Party Defendants.* |

I, Michael D. Murphy, declare as follows:

1. I am a Partner with the law firm Fox Rothschild LLP, attorneys of record for Plaintiff and Counterclaim Defendant SHAKEY'S PIZZA ASIA VENTURES, INC. and Third-Party Defendants CINCO CORPORATION, PC INTERNATIONAL PTE LTD., and SPAVI INTERNATIONAL USA, INC. ("Plaintiff and Third Party Defendants"). I am licensed to practice before all courts in the State of California.

2. I offer this Declaration in response to this Court's OSC issued on July 30, 2025 ("OSC"), asking for each side to explain why we should not be assessed large monetary sanctions as a result of pretrial filings which were as described by the Order "untimely, incomplete, and woefully deficient."

3. As a threshold matter, as requested, I can report and certify that I, Michael Murphy, have never been sanctioned by any court or agency or the subject of an OSC for failing to follow any court rule or order.

4. At issue in this OSC is this Court's instructions regarding compliance with "the court's orders and failures to cooperate." I am aware of both instructions, however, in this case those two work against the other. I will explain after a discussion of the legal standard.

5. There are two bases upon which this Court suggests sanctions might be warranted: Rule 169F)and under this Court's inherent authority.

3

6.      Under Rule 16(f), this Court does have the authority to enforce compliance with Court orders, and a handful of District Courts have held that they can be ordered "even if that failure was not made in bad faith." *Martin Fam. Tr. v. Heco/Nostalgia Enters. Co.*, 186 F.R.D. 601, 604 (E.D. Cal. 1999) (issuing sanctions of $300 for having missed a filing deadline); *but see Zambrano v. City of Tustin*, 885 F.2d 1473, 1480 (9th Cir. 1989) ("We do not think that the imposition of financial sanctions for mere negligent violations of the local rules is consistent with the intent of Congress or with the restraint required of the federal courts in sanction case."). As such, a reckless noncompliance is sufficient and whether negligent noncompliance is enough, has not yet been resolved. Even the *Martin* Court acknowledged that in that case, there was something more that informed the sanctions awarded. *See* 186 F.R.D. at 604 (noting the "cavalier" attitude of the attorney).

7.      Separately, this Court's inherent authority permits this Court to "levy sanctions, including attorneys' fees, for 'willful disobedience of a court order' or when a party has 'acted in bad faith, vexatiously, wantonly, or for oppressive reasons.'" *Fink v. Gomez*, 239 F.3d 989, 991 (9th Cir. 2001) (citing *Roadway Exp., Inc. v. Piper*, 447 U.S. 752, 766 (1980).) The most common instance of sanctions being awarded against counsel arise from the filing of false and frivolous pleadings, committing a fraud on the Court, etc. See, generally, *Chambers v. NASCO, Inc.*, 501 U.S. 32 (1991). That said, it appears to remain the rule, that "willful disobedience of a court order" is required for a Court to "assess attorney's fees as a sanction."

8.      I do not believe either standard has been met with respect to the filing deadline of July 25, 2025, which, I do not dispute, was not met.

9.      As a threshold matter, the dual goals of deadline compliance and cooperation, in this case, with these parties, work at cross-purposes. As this Court has now seen, at this late stage, Defendants still intend to pursue legal theories and

4

1. factual assertions that are contrary to law, this Court's rulings, and the Ninth Circuit's affirmance of the injunction. Their entire case is premised upon a contract that has been interpreted against them, and legal theories that are contrary to the Lanham Act and represent cases (such as *Sengoku*) as saying something different from what the authorities actually state.

10. So long as my opponents in this case insist upon taking positions (and asserting that they will present these false facts and false legal theories to a jury), cooperation becomes more difficult. How, for example, do I cooperate on the issue of jury instructions, when my opponents insist – unwaveringly – upon proffering jury instructions that are false, unreasonable, and unwarranted/I acknowledge that they believe our view of the law and facts is also on another planet compared to theirs – which, of course compounds the difficulty

11. As an example, I direct this Court to Defendants' Proposed Instruction "15.17 Trademark Ownership—Merchant or Distributor (Modified)." Citing the *Sengoku* case (which says the opposite), the first sentence makes a false assertion of the law – "You must first look to agreements between PCJV USA, LLC; PCI Trading, LLC; GK Capital Group, LLC; Guy Koren; Potato Corner LA Group, LLC; and NKM Capital Group, LLC ("PCJV plaintiffs") and Cinco Corporation to determine who owns the "Potato Corner" marks." This is false on the law because *Sengoku* says first to register is the most important consideration, unless there is a dispute of first use. In *Sengoku*, of course (as has been pointed out to Defendants), one party was the first to use, and the ither was the first to register, In this case our client ius the first to use *and* the registrant. Moreover, this is not a merchant – distributor relationship. For this and other reasons, the entire instruction misstates the law and distorts the form instructions.

12. In raising this with Defendants, they refused to budge, re-read *Sengoku* (let alone this Court or the Ninth Circuit's interpretation of *Sengoku*), or re-evaluate

5

the law on which they base their positions. I can count at least 4 telephonic or zoom need and confers since June in which I have urged – sometimes even begged – my opposing counsel to reconsider relying upon *Sengoku* or other legal theories rejected by this Court and the Ninth Circuit, and to rethink relying upon the Amended Joint Venture Agreement ("AJVA") as the basis for their Counterclaims, as that has already been interpreted against them, as confirmed by the Ninth Circuit. I have cited the merger doctrine, law of the case, even the res judicata effects of their own dismissals in the prior case, and they refuse.

13.  So, this, then, is my dilemma: how do I minimize disagreements and obtain true "joint statements" when my opposing counsel insists upon including in those joint statements positions of law that are false? My solution has been to try to negotiate more, hoping to have a breakthrough.

14.  The best example of this dilemma, and how it failed every time during this process of preparing pretrial documents, is with respect to the Stipulated Facts. On July 23, 2025, I received a set of proposed stipulated facts from counsel for Defendants. I was delighted that this contained a document I could actually work with. I agreed with almost half of them, and others I could work with. So, I proposed an alternative set. Notably, there were at least five of Defendants' proposed facts, that I agreed to without revision.

15.  The response by Defendants to my *accepting* many of their proposed facts but not all of them – was to retract their proposal and refused to agree on any stipulated facts. Specifically, they explained that they did not like the "narrative" that the facts they wrote that we agreed to resulted in without the others, and therefore refused to agree on any of them. So, after days of negotiating stipulated facts, and actually agreeing upon a handful, Defendants, on July 25, 2025, pulled their agreement on anything, based on something other than whether the fact is true or not. This was confusing, and resulted in that part of the Pretrial Order (stipulated

facts) having nothing to agree upon. This was alarming to me, given that this Court had specifically already called out the Stipulated Facts, and stated it expected the parties to have met, conferred, and come up with agreeable facts. Accordingly, on July 29, 2025, at 1:00 p.m., I sent an email to Mr. Beral that said the following:

> "Arash:
>
> We are both trial lawyers. We know that they are not treated as or used as a story, They plug in to the case where relevant.
> Perhaps your issue is that you wish to have them remain objectionable. We can make them stipulated but subject to objection and just place them in the next section.
>
> Or we can ask the judge for them to only be read when that part of the case comes up. Never done that but worth a shot for agreement. Or that he instruct that they are not to be read as a story, beginning, middle and the end.
>
> The facts I proposed are all true. Undisputable. You even wrote half of them.
>
> I am urging you to reconsider"

16. Two hours passed, and rather than consent to the at least handful of facts that Defendants wrote and I agreed to, Mr. Beral had drafted an entirely new set of facts, but this time, they were one sided and directed to, for example, the former litigation which just has no relevance to this case. We could not agree to this new set.

17. So, after getting to an actual agreement, Defendants changed their mind, leaving us all with nothing – knowing that this Court is expecting *something*.

18. This discrete issue – the negotiation of the Stipulated Facts – is a microcosm of this entire pretrial filing situation, and indeed, this case. I tried desperately to negotiate, and to cooperate, and Defendants' counsel's unreasonable positions (refusing to agree to actual stipulated facts because of the "narrative") and their unwavering adherence to these positions – results in no agreement. But to this

Court's eyes, we were all not cooperating.

19. It is this tension between cooperation and timeliness that, at the end of the day, caused the delay and non-compliance. I address each of the issues noted by this Court to explain.

20. <u>The July 24, 2025 Proposed Stipulation</u>. On page 1 of Dkt. 238, this Court noted the proposed stipulation on the day before the July 25, 2025 deadline, again criticizing our having failed to include in the stipulation our diligence and the good cause facts necessary for a stipulation to be granted. As explained in my last declaration: I saw the writing on the wall as to the ability to finish by July 25, 2025, and so it was I who suggested the stipulation and proposed a draft that did indeed attempt to satisfy the requirement that we establish we have been hard at work and that we need more time notwithstanding our diligence. Mr. Beral redlined out, and refused to agree to any of that language required by this Court to satisfy a request for an extension, leaving us with a simple bare request for more time, which was rejected based on this failure to comply with the rules. Mr. Beral refused to agree to anything more than that stripped down bare request. I had no choice but to agree to this obviously defective stipulation, as it was either ask for the stipulation or know that we were about to miss a deadline. If it had been my choice, I would have had the language this Court insists upon, but I cannot force my opponents to agree to anymore. So, I was forced to file the barren stipulation for more time, resulting in this Court criticizing all parties, not knowing I tried to include it.

21. I will now go through each of the missing or late documents identified by his Court in Dkt. 238, and explain how it was neither my recklessness, willfulness, bad faith – or even negligence – that caused them to be late or non-complaint.

22. Missing Document 1: Jury Instructions. As explained earlier in this Declaration, the Jury Instructions were plagued with the fact that the parties see this

8

case from such different perspectives, that it makes cooperation on jury instructions impossible. Indeed, this Court notes that this is one of the two documents "most critical for determining the shape of the trial." This is true, however, cooperation on this document with opponents who are willing to misstate authorities and insist on doing so, makes cooperation impossible.

23. At 8:16 a.m. on July 29, 2025, we received from our opposing counsel a response to our redlining of their jury instructions – a document that should have contained concessions based on a review of the relevant case laws and authorities. Upon review of their document, I learned that Defendants refused to budge, on even the most blatantly incorrect instructions, having instead, expanded their objections to ours. It now being almost 9 am, I could have just said, we are at an impasse, but I was mindful of this Court's instructions as to cooperation. Nevertheless, Defendants' jury instruction document still insisted upon the incorrect statements of law (including, for example, with respect to *Sengoku*), proffering incomplete instructions (such as the intentional interference with prospective economic advantage that omits the "wrongfulness" element), or attempting to wiggle out of the fact that they have no contract – none – between any of their clients and any of the parties they have sued (SPAVI, Cinco, SPAVI International, or PC International), by insisting upon breach of contract and interference instructions that are oblique, vague an confusing.

24. Rather than claim impasse, we worked hard to find common ground. I started even horse-trading objections, including the proposal made at some point on July 29, 2025 that everyone just drop their process objections (such as untimeliness of initial proposals, failure to produce after initial disclosures etc.). Those were largely rejected or ignored.

25. The product ultimately filed this week reflects what amounts to, in my estimation, the highest level of attempts to cooperate I have ever experienced, and

we still are far apart. That is because, without a doubt, Defendants continue to insist upon bad law to inform their positions. As a result, I can say that the inability to arrive at more agreements on instructions, in time for the deadline at issue was a result of the competing goals of cooperation and timeliness, not negligence, recklessness, or any disregard on my part for the Court's orders.

26. Pretrial Order: this document requires having come to terms with a reasonable set of exhibits being objected to, cooperation on stipulated facts, and accurate view of the governing law. The first two issues – excessive objections and an excessive exhibit list as well as the stipulated fact issue – have already been addressed. The key reason that this was late is as follows: *Defendants had not even begun to draft their inserts in the descriptions of law and facts and evidence supporting their claims until July 29, 2025*. There is no reason they needed to see the actual document to draft this language, and could have done so the preceding week (as we had). By waiting until the afternoon of July 29, 2025, to *draft* the elements and supporting evidence for their claims, the Defendants guaranteed this would not be filed even if we had agreement on stipulated facts and exhibits.

27. Voir Dire Question. Having been unable to secure agreement on a stipulation that satisfied this Court's rules, this Court notes that the only document timely filed on the "twice extended July 29 deadline" was the proposed Voir Dire questions. I have nothing to offer on the sufficiency of this document, as this Court does not fault our presentation of voir dire questions. I reviewed the Defendants' proposal when first received and several times during the pretrial filing process, and knew I could not agree to what they were hoping this Court would ask potential jurors. I knew there was little hope of obtaining agreement if Defendants believe these one-sided questions would ever be allowed.

28. Subsequent to 9:00 a.m. on July 29, 2025, when we were all actively engaged in the process of trying to complete these pretrial filings – as this Court

10

states in Dkt 238 to "further narrow their disputes" is when I was desperately urging counsel for Defendants to agree on stipulated facts, as set forth above. I was trying to narrow disputes, but the disputes kept *growing* notwithstanding my efforts.

29. <u>Joint Exhibit List.</u> In my last declaration I explained the difficulty in preparing the Joint Exhibit list. That difficulty is revealed by this Court's critique of the excessive and unreasonable objections by Defendants. In an attempt to minimize objections, my colleague Jessica Nwasike and I worked late into the night on July 28, 2025, to address many of the objections raised by Defendants (even though many of them were just objections to titles, or objections to the Rule 65 issue to which we agreed). It was only because of that effort that the Exhibit list was reduced. I do acknowledge that I objected to more than I would, typically, however, the lion's share of Defendants' exhibits are so out of the realm of what might even be tenuously relevant for foundation purposes, that it is clear the attempt will be to steer this case towards issues other than the trademarks and trade secrets at issue. We were bound to object, but did our best not to overdo it.

30. <u>Joint Statement of the Case.</u> This is a document to be read to the jury, and agreement on its language was necessarily plagued by the Mars-Venus problem described above. I cannot agree that the jury be read a statement as to what they will be asked to decide – whether in settling with Cinco in the prior case, PCJV "acquired" the Potato Corner brand – which Defendants were insisting upon. Because Defendants took the "my way or the highway," position, again, here, we had no choice but to present the alternatives stated. Luckily, this week, I do believe we had a breakthrough on that one, single, short document.

31. <u>Verdict Form.</u> The Court chides me for my assertion I had begun work on this before – but it is true. This is in fact one of the ways in which I begin preparation for trial given that, after all, this is the document that the jury will spend the most time on. The problem here is that Defendants' proposal is so distorted –

11

misplacing burdens, confusing affirmative defenses with elements of a claim, and mis-stating the law – the Mars-Venus problem made this impossible to cooperate on as well. The reason that this was so late getting to Defendants is not my lack of diligence, but my hope that we could come to terms on the governing law, which would guide our agreement on this document. Once I saw the response on the jury instructions on July 29, 2025 during the 8 o'clock hour, I knew we were going to have to submit competing versions. If we cannot agree on the law to instruct, we were never going to agree on the worksheet for the jury based on the law.

32. At the end of the day, the inability to file these documents on time was not because of our negligence, or bad faith. Both sides wanted to timely file these documents and were working around the clock for days all diligently focused on the deadline. That each side thinks the other is using the wrong law and facts – that is what caused this to take so long. Indeed, and again, a review of this week's filings in which there remain substantial disagreement is the product of even more attempts at cooperation.

33. Given the above, I do not believe that this situation represents the type of case that warrants issuance of sanctions. If this Court believes this Declaration does not resolve the question, I respectfully request that it be presented to the Special Master, for consideration along the other issues this Court has asked for him to investigate, given the relationship between what is at issue in this OSC and the issues presented to the Special Master,

I declare under penalty of perjury under the laws of the United States that the foregoing is true and correct.

Dated:  August 6, 2025                       /s/ Michael D. Murphy
                                             Michael D. Murphy

# CERTIFICATE OF SERVICE

The undersigned certifies that, on August 6, 2025, the foregoing document was electronically filed with the Clerk of the Court for the United States District Court, Central District of California, using the Court's ECF filing system. I further certify that all counsel for all parties to this action are registered CM/ECF user and that service will be accomplished by the CM/ECF system.

I certify under penalty of perjury that the foregoing is true and correct.

Dated:  8/6/2025                                            **FOX ROTHSCHILD LLP**


*/s/ Michael D. Murphy*
Michael D. Murphy
Attorneys for Plaintiff SHAKEY'S
PIZZA ASIA VENTURES, INC.

Case 2:24-cv-04546-SB-AGR   Document 248   Filed 08/06/25   Page 14 of 14   Page ID
#:10471

175373488.1