MICHAEL D. MURPHY (SBN 224678)
mdmurphy@foxrothschild.com
MATTHEW FOLLETT (SBN 325481)
mfollett@foxrothschild.com
JESSICA NWASIKE (SBN 343087)
jnwasike@foxrothschild.com
FOX ROTHSCHILD LLP
Constellation Place
10250 Constellation Boulevard, Suite 900
Los Angeles, California 90067
Telephone:  310.598.4150
Facsimile:   310.556.9828

Attorneys for Plaintiff and Counterclaim
Defendant SHAKEY'S PIZZA ASIA
VENTURES, INC. and Third Party Defendants
CINCO CORPORATION, PC
INTERNATIONAL PTE LTD., and SPAVI
INTERNATIONAL USA, INC.

# UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| SHAKEY'S PIZZA ASIA VENTURES, INC, a Philippines corporation,<br><br>            Plaintiff,<br><br>        v.<br><br>PCJV USA, LLC, a Delaware limited liability company; PCI TRADING, LLC, a Delaware limited liability company; GUY KOREN, an individual; POTATO CORNER LA GROUP, LLC, a California limited liability company; NKM CAPITAL GROUP, LLC, a California limited liability company; J & K AMERICANA, LLC, a California limited liability company; J&K LAKEWOOD, LLC, a California limited liability company; J&K VALLEY FAIR, LLC, a California limited liability company; J & K ONTARIO, LLC, a California limited liability company; HLK MILPITAS, LLC, a California, limited liability company; GK CERRITOS, LLC, a California, limited liability company; J&K PC TRUCKS, LLC, a California | Case No. 2:24-CV-04546-SB(AGRx)<br><br>*The Hon. Stanley Blumenfeld, Jr.*<br><br>**TRIAL BRIEF OF PLAINTIFF AND COUNTERCLAIM DEFENDANT AND ALL THREE THIRD-PARTY DEFENDANTS.**<br><br>Complaint Filed:      May 31, 2024<br>Trial Date:         August 18, 2025 |

1

limited liability company; and, GK
CAPITAL GROUP, LLC, a California
limited liability company and DOES 1
through 100, inclusive,

Defendants.

PCJV USA, LLC, a Delaware limited
liability company; PCI TRADING LLC,
a Delaware limited liability company;
POTATO CORNER LA GROUP LLC,
a California limited liability company;
GK CAPITAL GROUP, LLC, a
Ca1ifornia limited liability company;
NKM CAPITAL GROUP LLC, a
California limited liability company; and
GUY KOREN, an individual,

Counter-Claimants,

v.

SHAKEY'S PIZZA ASIA VENTURES,
INC, a Philippines corporation,

Counter Defendant.

PCJV USA, LLC, a Delaware limited
liability company; PCI TRADING LLC,
a Delaware limited liability company;
POTATO CORNER LA GROUP LLC,
a California limited liability company;
GK CAPITAL GROUP, LLC, a
Ca1ifornia limited liability company;
NKM CAPITAL GROUP LLC, a
California limited liability company; and
GUY KOREN, an individual,

Third Party Plaintiffs,

v.

PC INTERNATIONAL PTE LTD., a
Singapore business entity; SPAVI
INTERNATIONAL USA, INC., a
California corporation; CINCO
CORPORATION, a Philippines
corporation; and DOES 1 through 10,
inclusive,

Third Party Defendants.

PLAINTIFF'S TRIAL BRIEF                                    CASE NO. 2:24-CV-04546-SB(AGRX)

# **TABLE OF CONTENTS**

I.     SHORT SUMMARY OF FACTS ..................................................................5

II.    ONE RECENT case implicating issues for trial ..............................................6

III.   *YUGA* FURTHER UNDERMINES DEFENDANTS' ABSURD ATTEMPTS TO CHALLENGE SPAVI'S ACQWUISITION .......................................................9

IV.    REPLY To DEFENDANTS' MEMORANDUM Of Contentons Of Fact And Law ....................................................................................................................11

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

## <u>TABLE OF AUTHORITIES</u>

**Page(s)**

**Cases**

*Arizona v. California*,
   460 U.S. 605 (1983) ................................................................................ 8

*B. F. Goodrich Co. v. A. T. I. Caribe, Inc.*,
   366 F. Supp. 464,467 (D. Del. 1973) ................................................... 10

*Imperial Residential Design, Inc. v. Palms Dev. Grp., Inc.*,
   70 F.3d 96 (11th Cir. 1995) ................................................................... 11

*Palos Verdes Corp. v. Hous. Auth. of Los Angeles Cnty.*,
   202 Cal. App. 2d 827 (1962) ................................................................. 10

*Ranchers Cattlemen Action Legal Fund United Stockgrowers of Am. v.
   U.S. Dep't of Agr.*,
   499 F.3d 1108 (9th Cir. 2007) ................................................................. 8

*Shakeys Pizza Asia Ventures, Inc. v. PCJV USA, LLC*,
   No. 24-7084, 2025 WL 1431270 (9th Cir. May 19, 2025) ........................... 8, 11

*Yuga Labs, Inc. v. Ripps*,
   No. 24-879, 2025 WL 2056060 (9th Cir. July 23, 2025) ...................... 6, 7, 8, 9

**Statutes**

15 U.S.C. § 1055 .......................................................................................... 8

10 USC § 1055 – ........................................................................................... 7

evidence. L .................................................................................................... 6

Lanham Act ................................................................................................... 8

**Other Authorities**

Local Rule 16-10 ........................................................................................... 5

Rule 11 ........................................................................................................ 12

Rule 37 ........................................................................................................ 12

Pursuant to Local Rule 16-10, Plaintiff Shakey's Pizza Asia Ventures Inc. ("Plaintiff" or "SPAVI") and Third Party Defendants Cinco Corporation, SPAVI International USA, Inc., and PC International PTE Ltd ("Plaintiff and Third-Party Defendants") offer the following Trial Brief.

## I. SHORT SUMMARY OF FACTS

Although this Court likely has enough exposure to this case (in his nightmares, quite possibly), that it need not be reminded, the executive summary of the facts arise from SPAVI's acquisition of the global brand Potato Corner brand from Cinco effective March 2022, which include the distinctive dancing Potato ("Spudster") in the middle of a banner with yellows and greens, that also says "Potato Corner." That "Logo Mark" is now incontestable as per the USPTO, and serves as, effectively the "House Mark," or "Flagship Mark," as it incorporates the also registered characters mark – "Potato Corner." The third Mark is the tag line: "World's Best Flavored French Fries."

In March of 2022, SPAVI took over the in-progress negotiations with the troubled US Potato Corner network, the growth of which it concluded had lagged -- achieving less than 40 stores nationwide over a ten year period. The subject of the negotiations with PCJV USA, LLC ("PCJV") – owned and controlled by Defendant Guy Koren ("Koren") – was the documentation of the terms of PCJV's license in a written agreement. SPAVI was aware of the fact that no written agreement had been in place since the inception of PCJV, and wished to remedy that to create stability, and a predictable revenue stream for this public company.

After two years of slow responses and unreasonable demands (Koren insisting he would never pay a royalty of more than 0.7%, whereas PCJV third-party franchisees were paying 6%, and 10-years earlier he was willing to pay 5%) and after having vanished for months without responding to the polite emails of SPAVI executives, SPAVI concluded the negotiations were dead, and, on May 31, 2024, SPAVI terminated the license. Given that there was no written license in place,

1    SPAVI  concluded that the license was terminable at will, and did just that.

2         Koren and PCJV did not respond to the termination, nor did they take any

3    action to cease use of the Marks now that the licenses to use them had been pulled.

4    They did not even acknowledge the termination had occurred, say, with an email

5    asking for time to comply and negotiate. They simply went on business as usual.

6    SPAVI was then forced to file an injunction against PCJV, Koren's Potato Corner

7    stores (most of the remaining affiliates), and separately set out to notify the

8    franchisees of PCJV that an injunction motion was looming and to reach out if they

9    wanted protection from closure pursuant to a Court order.

10         One contempt order later (and, sadly,, another one about to be filed), the parties

11    are now about to try what should be a simple damages case for a willful holdover

12    licensee. Instead, Defendants have manufactured and invested what can only be

13    called a lawless strategy resting on a house of cards that contradict statutory and

14    decisional law. They hope to invalidate the Potato Corner Marks and then take control

15    over them; however, this can only  happen if the Court and jury took lawless action

16    and the Ninth Circuit affirmed.

17         This strategy however, as explained in Section III herein, requires vigilance by

18    SPAVI, and its counsel, to protect their record, and marks, by ensuring that the

19    evidence and law presented to the jury, particularly through witnesses and counsel

20    argument, adhere to what is permitted under the governing authorities and rules.

21    **II.    ONE RECENT CASE IMPLICATING ISSUES FOR TRIAL**

22         There is one case decided by the Ninth Circuit in the last few weeks that is are

23    of note, and useful for the parties to consider when completing jury instructions and

24    claims analysis and marshalling of  the evidence. L.R. 16-10(a).

25         In the case of <u>Yuga Labs, Inc. v. Ripps,</u> No. 24-879, 2025 WL 2056060, at *26

26    (9th Cir. July 23, 2025), the Ninth Circuit addressed from soup to nuts a dispute not

27    unlike this one, wherein a trademark infringement and unfair competition complaint

28    was alleged, the Defendant attempted every means possible (although in that case,

1    not contrary to statutory and decisional law), to invalidate the marks, and lost. As

2    such, the methodology and ordering od threw issues is a reminder as to what takes

3    priority over which issue. As relevant to this case, *Yuga* Court also held as follows:

4        First, the Court confirms the factual uphill battle that Defendants face in this

5    case in their attempts to challenge SPAVI's ownership of the Potato Corner brand.

6    The penultimate fact that proves ownership is "priority" – i.e. the first to use the

7    Marks. *Yuga Labs, Inc. v. Ripps*, No. 24-879, 2025 WL 2056060, at *10 (9th Cir.

8    July 23, 2025). In our case, there is no dispute that a licensee of Cinco was the first

9    to use the Mark, and, thus, Cinco had priority. This is an undisputed fact – that a

10    licensee of Cinco was the first to use the Marks at issue – that should, quite frankly,

11    go into the Parties' Stipulated Facts, however, although proposed, it was rejected by

12    Defendants.

13        Defendants are seeking to invalidate this first use by Cinco (as reported in the

14    judicially noticeable registration with the USPTO), by two means, one is lawless and

15    the other takes a logical U-turn back to lawlessness.

16        Specifically, Defendants seek to argue that the first use should be credited to

17    the licensee: PCJV. This Court, and the Ninth Circuit have both rejected this

18    argument as a matter of law – as contradicting, for example 10 USC § 1055 – and

19    yet, they continue to rely on this argument that they, somehow, are the true owners

20    since they were the first to plant the flag of Potato Corner in the US. Specifically, the

21    Ninth Circuit ruled as follows:

22        PCJV argues that it has a superior claim to ownership of the marks as

23        the first and exclusive domestic user of the marks. But in the licensor-

24        licensee context, a licensee's use of a trademark inures to the benefit

25        of the licensor-registrant. *See* 15 U.S.C. § 1055..

26    *Shakeys Pizza Asia Ventures, Inc. v. PCJV USA, LLC*, No. 24-7084, 2025 WL

27    1431270, at *1 (9th Cir. May 19, 2025)

28        This affirmation – a holding on a legal issue – must constitute law of the case

7

1   (indeed, the law), and Defendants should not be  allowed to traffic in this twice

2   rejected theory. It is not controversial to point out that rulings by this Court and the

3   Ninth Circuit "on pure issues of law, however, are binding." *Ranchers Cattlemen*

4   *Action Legal Fund United Stockgrowers of Am. v. U.S. Dep't of Agr.*, 499 F.3d 1108,

5   1114 (9th Cir. 2007); s*ee, e.g. Arizona v. California*, 460 U.S. 605, 618 (1983) (citing

6   the rule as being "when a court decides upon a rule of law, that decision should

7   continue to govern the same issues in subsequent stages in the same case").

8       The disregard for the actual text of the Lanham Act is almost as stunning as

9   the parade of truly likely horrible, should they be able to rewrite the Lanham Act with

10  defiant lawless jury instructions. If a licensee could, effectively, adversely possess the

11  brands they are promoting, this would immediately disrupt the entire intellectual

12  property regime, as now licensors would be adverse to the licensees around the world,

13  wary that if the licensees do too good a job, they lose their rights.

14      Plaintiff suspects that the Defendants will latch onto language in *Yuga* Court

15  explaining that the  first use must have been "lawful." Defendants have hinted at a

16  violation of the franchise law with the first use, but the evidence of this is quite flimsy,

17  and is not likely to satisfy the stringent requirement of the Ninth Circuit that the

18  violation has to be intertwined with, and not collateral to, the use of the Marks sought

19  to be invalidated. *Id*. Moreover, what Defendants of course do not explain is what the

20  *next* use was: a subsequent use by a  licensee of Cinco, PCJV. Again, they run into 15

21  USC § 1055. Defendants cannot, and should stop trying, to get around the fact that

22  Cinco was the valid priority owner of the Marks.

23      The rest of *Yuga,* does not offer much guidance on the disputed facts,

24  particularly given that in this  case, unlike *Yuga*, the infringer was once a licensee,

25  and the willful and petulant refusal to stop using the Marks has – as Plaintiff will argue

26  – crossed over into pure counterfeiting. Indeed, Plaintiff will, within the next forty-

27  eight hours be filing an Ex Part Application to shorten time for hearing on a second

28  contempt motion involving violations of the Injunction that truly shock the conscience

8

of any person claiming to respect the institution of this Court.

## III. *YUGA* FURTHER UNDERMINES DEFENDANTS' ABSURD ATTEMPTS TO CHALLENGE SPAVI'S ACQWUISITION

That said, *Yuga* does offer one additional nugget for Defendants to consider as they present their alternative attack against SPAVI's ownership – challenge the sufficiency of the (conclusive) proof that SPAVI purchased the entirety of the brand, including all rights affecting the US and all goodwill. Specifically, as Defendants seek to ask this Court to allow them to (strangers to the transaction) invite the jury to disregard a deed signed by the seller (Cinco) and the buyer (SPAVI) notarized by both, attesting to the complete sale of all intellectual property and goodwill, the Ninth Circuit reminds us all of this: when interpreting deal documents signed between two parties to an agreement, "our job . . . is to construe the words of the contract, not after-the-fact statements about its contents. *See Miller v. Glenn Miller Prods., Inc.,* 454 F.3d 975, 989 (9th Cir. 2006) (per curiam) ("[T]he fundamental goal of contract interpretation is to give effect to the mutual intent of the parties as it existed at the time of contracting." (alteration in original) (citation omitted)). *Yuga*, 2025 WL 2056060, at *12. T

As applied to this case, the contracting parties to the sale of Potato Corner were Cinco and SPAVI. As such, the goal of this Court in interpreting the deal documents is to give effect to the meaning of the mutual intent of Cino and SPAVI, not the fantasies of a stranger to the deal: PCJV and Koren.

Defendants repeatedly complain that they were denied the transactional documents – an assertion that disregards the simple fact that the deeds (Trial Exhibits 4 and 6) ***are the transactional documents***. Most commonly analyzed in the real estate context, courts described deeds as "an executed contract [that is] is subject to the rules applicable to contracts." *Est. of Stephens*, 28 Cal. 4th 665, 672, 49 P.3d 1093, 1096–97 (2002). To be effective they go from one party to the next, and, in this context, each notarized the document so as to make it effective. Accordingly, "if the language

9

of a deed is plain, certain, and unambiguous, neither parol evidence nor surrounding facts and circumstances will be considered to add to, detract from, or vary its terms or to determine the estate conveyed." *Palos Verdes Corp. v. Hous. Auth. of Los Angeles Cnty.,* 202 Cal. App. 2d 827, 836 (1962). As such, the deed is the final word of Cinco and SPAVI, and no other document preceding it matters.

Defendants repeatedly scoff that deeds are for dirt, and not intellectual property. This is incorrect, and the finality of deeds is in fact a concept that applies in the intellectual property context as well. *B. F. Goodrich Co. v. A. T. I. Caribe, Inc.,* 366 F. Supp. 464,467 (D. Del. 1973) (applying this concept in the intellectual property context). It is true there is less case law on this, but that is because deeds are less common in the IP realm, as there is not a recordation requirement for protection of rights.

Notwithstanding their failure to adduce ***any law whatsoever*** establishing that the deeds memorizing the sale of the brand and its goodwill entirely (including the US), are not to be believed, Defendants continue to claim they have the right to dig into the parol evidence of their competitor. They are untethered by precedent, and unhindered by the absence of any authorities supporting then, and as such they demand that SPAVI and this Court waste resources letting them present a theory that will eventually lose when those who care about precedent realize that the deeds are conclusive evidence of ownership.

The entertainment of any actual effort by Defendants to change the terms of the sale of Potato Corner between SPAVI and Cinco has always seemed curious. As the Eleventh Circuit opined in a similar challenge by a third party to a sale of copyrights: "where there is no dispute between the copyright owner and the transferee about the status of the copyright, it would be unusual and unwarranted to permit a third-party infringer to invoke [the requirement of a writing memorializing the status] to avoid suit for copyright infringement." *Imperial Residential Design, Inc. v. Palms Dev. Grp., Inc.*, 70 F.3d 96, 99 (11th Cir. 1995).

At the end of the day, PCJV and Koren are just that: infringers seeking to invoke contract interpretation rules to challenge what the owner of the IP acquired. They cite no law allowing third parties to proffer parol evidence of someone else's deal. When viewed through this lens they are simply trying to find some excuse for their willful infringement.

## IV.   *REPLY TO DEFENDANTS' MEMORANDUM OF CONTENTIONS OF FACT AND LAW*

Section 1A – comprising the first eight pages of Defendants Memorandum of Contentions of Fact and Law is nothing short of astonishing. (Dkt. 197.) Not one of these arguments is supportable by law and fact. Indeed, this entire critique of SPAVI's claims repeats the very same arguments rejected by this Court and the Ninth Circuit. Out of the gate, Defendants again trot out the argument that the Amended Joint Venture Agreement *is* the license agreement with Cinco – a claim rejected by this Court and the Ninth Circuit. There the Court affirmed, holding that:

> But the AJVA contained an agreement to enter a *future* Master
> License Agreement, not a "perpetual license" like PCJV
> claims. See *First Nat'l Mortg. Co. v. Fed. Realty Inv. Tr.*, 631
> F.3d 1058, 1065 (9th Cir. 2011) ("[A]n 'agreement to agree,'
> without more, is not a binding contract.").

2025 WL 1431270, at *one.

Whereas the separate analysis  as to the fake unsigned illusory license agreement  left room open for further evidence, the ruling on the AJVA was as  a matter of law, and must, again, hold as the law of the case.

Plaintiff has made its belief as to the failure of Defendants; pleadings to satisfy Rule 11 known to this Court. That violation is now about to have severe consequences on due process, which is why Plaintiff views Defendants' brief as a warning that unless ordered otherwise, Defendants will continue to cite bad law, and will do everything they can to push bad law and unsupportable facts on a jury –

11

leading to wasted time, resources, and potentially errors so bad by Defendants that a mistrial is requested.

As such, Plaintiff respectfully requests that this Court rule, finally, on those aspects raised by Defendants in their putative theory of the case have been adjudicated against them as a matter of law, and are law of the case. Once that issue, and the issue of Cinco's priority, the validity of the sale of Potato Corner, the absence of rights by PCJV to own the brand, etc., the more streamlined this trial, and focused on the real facts in dispute.

There are two other ways in  which Defendants 'penchant for incorrect assertions to this Court are also revealed in that Section 1(A).

First, in an attempt to produce this Court against Plaintiff, they make the wildly outrageous accusation of "suppression of evidence." They claim Plaintiff was ordered to produce documents and failed, and then purports to decisive  that order in its footnote one. Plaintiff respectfully requests that this Court focus instead  on the source document Defendants purport to summarize – which can be found in Dkt. 128, in which the Magistrate reported on an agreement made informally, and entered into as an order, that only ordered a subset of the purchase and sale agreement (that do not exist) to be produced.  Moreover, at the hearing on Defendants' late Rule 37 Motion,  the Magistrate went through her March 12 order and concluded that the only unsatisfied portion was that which ordered the gathering of documents – a gathering that was so large it was impossible to accomplish. Moreover, and finally, of course, the purchase and sale agreements are irrelevant, as again, the sole sale document that matters are the deeds.

PCJV is a competitor. It developed its competing brand while infringing on SPAVI's. It should not be given the keys to the financial innards of SPAVI's acquisition of their competitor unless it is necessary. They failed to prove that. Indeed, they never even made a motion to compel.

And yet, they accuse Plaintiffs' of "suppression."

Each authority cited, each fact asserted, each document described by Defendants must be taken with a grain of salt, and the source document reviewed. Otherwise, Plaintiff will be prejudiced irreparably.

The remainder of Defendants brief will be addressed in other documents.


Dated:  August 11, 2025                    _____/s/ Michael D. Murphy_____
Michael D. Murphy
Matthew Follett
Jessica Nwasike
Fox Rothschild LLP
*Attorneys for Plaintiff and Counterclaim Defendant, and Third Party Defendants*

1
2
## <u>CERTIFICATE OF SERVICE</u>
3
4
5
6
7

The undersigned certifies that, on August 11, 2025, the foregoing document was electronically filed with the Clerk of the Court for the United States District Court, Central District of California, using the Court's ECF filing system. I further certify that all counsel for all parties to this action are registered CM/ECF users and that service will be accomplished by the CM/ECF system.

8
I certify under penalty of perjury that the foregoing is true and correct.
9
10    Dated:  August 11, 2025                          **FOX ROTHSCHILD LLP**
11
12
13
14
15
16

_/s/ Michael D. Murphy_
Michael D. Murphy
Attorneys for Plaintiff and Counterclaim
Defendant SHAKEY'S PIZZA ASIA
VENTURES, INC. and Third Party
Defendants CINCO CORPORATION,
PC INTERNATIONAL PTE LTD., and
SPAVI INTERNATIONAL USA, INC.

17
18
19
20
21
22
23
24
25
26
27
28

14

PLAINTIFF'S TRIAL BRIEF                                    CASE NO. 2:24-CV-04546-SB(AGRX)