MICHAEL D. MURPHY (SBN 224678)
mdmurphy@foxrothschild.com
MATTHEW FOLLETT (SBN 325481)
mfollett@foxrothschild.com
JESSICA NWASIKE (SBN 343087)
jnwasike@foxrothschild.com
FOX ROTHSCHILD LLP
Constellation Place
10250 Constellation Boulevard, Suite 900
Los Angeles, California 90067
Telephone:   310.598.4150
Facsimile:   310.556.9828

Attorneys for Plaintiff and Counterclaim
Defendant SHAKEY'S PIZZA ASIA
VENTURES, INC. and Third Party Defendants
CINCO CORPORATION, PC
INTERNATIONAL PTE LTD., and SPAVI
INTERNATIONAL USA, INC.

# UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| SHAKEY'S PIZZA ASIA VENTURES, INC, a Philippines corporation,<br><br>        Plaintiff,<br><br>      v.<br><br>PCJV USA, LLC, a Delaware limited liability company; PCI TRADING, LLC, a Delaware limited liability company; GUY KOREN, an individual; POTATO CORNER LA GROUP, LLC, a California limited liability company; NKM CAPITAL GROUP, LLC, a California limited liability company; J & K AMERICANA, LLC, a California limited liability company; J&K LAKEWOOD, LLC, a California limited liability company; J&K VALLEY FAIR, LLC, a California limited liability company; J & K ONTARIO, LLC, a California limited liability company; HLK MILPITAS, LLC, a California, limited liability company; GK CERRITOS, LLC, a California, limited liability company; J&K PC TRUCKS, LLC, a California | Case No. 2:24-CV-04546-SB(AGRx)<br><br>*The Hon. Stanley Blumenfeld, Jr.*<br><br>**JOINTLY FILED CLAIMS, COUNTERCLAIMS, THIRD PARTY CLAIMS, AND AFFIRMATIVE DEFENSES TO BE TRIED**<br><br><br>Complaint Filed:    May 31, 2024<br>Trial Date:      August 18, 2025 |

1  limited liability company; and, GK
2  CAPITAL GROUP, LLC, a California
   limited liability company and DOES 1
3  through 100, inclusive,

4               Defendants.

5  PCJV USA, LLC, a Delaware limited
   liability company; PCI TRADING LLC,
6  a Delaware limited liability company;
   POTATO CORNER LA GROUP LLC,
7  a California limited liability company;
   GK CAPITAL GROUP, LLC, a
8  Ca1ifornia limited liability company;
   NKM CAPITAL GROUP LLC, a
9  California limited liability company; and
   GUY KOREN, an individual,
10
                Counter-Claimants,
11
        v.
12
   SHAKEY'S PIZZA ASIA VENTURES,
13 INC, a Philippines corporation,

14              Counter Defendant.

15 PCJV USA, LLC, a Delaware limited
   liability company; PCI TRADING LLC,
16 a Delaware limited liability company;
   POTATO CORNER LA GROUP LLC,
17 a California limited liability company;
   GK CAPITAL GROUP, LLC, a
18 Ca1ifornia limited liability company;
   NKM CAPITAL GROUP LLC, a
19 California limited liability company; and
   GUY KOREN, an individual,
20
21              Third Party Plaintiffs,

22      v.

23 PC INTERNATIONAL PTE LTD., a
   Singapore business entity; SPAVI
24 INTERNATIONAL USA, INC., a
   California corporation; CINCO
25 CORPORATION, a Philippines
   corporation; and DOES 1 through 10,
26 inclusive,

27              Third Party Defendants.

28

                                    2

# **TABLE OF CONTENTS**

**Page**

I.  Plaintiff Shakey's Pizza Asia Venture's Inc. ("SPAVI" or "Plaintiff):  Claims to be Tried by a Jury..................................................................................4

    1)  Claim 1: Trademark Infringement Against All Entity Defendants .......4

    2)  Claim 3: False Designation of Origin and Description of Fact Against All Entity Defendants (15 U.S.C. § 1125):............................................20

    3)  Claim 4: Contributory Trademark Infringement Against All Defendants (Against Guy Koren, PCJV USA, LL, PCI Trading, LLC, Potato Corner LA  Group, LLC; GK Capital,  LLC or NKM Capital Group, LLC)..........................................................................................32

    4)  Claim 5: Contributory False Designation of Origin Against Guy Koren, PCJV USA, LL, PCI Trading, LLC, Potato Corner LA  Group, LLC; GK Capital,  LLC or NKM Capital Group, LLC......................36

Pursuant to Dkt. No. 254, the parties submit the following causes of action, counterclaims, third party claims, and affirmative defenses as at issue for trial. SPAVI further notes that two of its entries in this document are longer than one paragraph. With respect to those notes, given their rarity herein, and given the number of pleadings disputing those elements themselves, the disagreements abiu what can or cannot be presented therein have been extensive and cannot easily  be consolidated into one paragraph while communicating the same layered issues. SPAVI apologizes to this Court and assures this Court it was not meant as a sign of disrespect, bit, rather a sign of the importance of those elements at issue.

# I.    PLAINTIFF SHAKEY'S PIZZA ASIA VENTURE'S INC. ("SPAVI OR "PLAINTIFF):  CLAIMS TO BE TRIED BY A JURY.

### 1)    Claim 1: Trademark Infringement Against All Entity Defendants

(15 U.S.C. § 1114), regarding the three registered marks at issue: (1) U.S. Reg. No. 5900257: the word mark "Potato Corner" ("Word Mark"); (2) U.S. Reg. No. 6088456 protecting "World's Best Flavored  French Fries (the "Slogan Mark"); and (3) U.S. Reg. No. 3760041 (the "Logo Mark") protecting: 

    a.    Element No. 1: the Word Mark, Slogan Mark, and/or the Logo Mark (all collectively, the "Marks") are valid and protectible trademarks:

        1.    This element is not disputed

    b.    Element No. 2: Plaintiff owns the Word Mark, Slogan Mark, and/or the Logo Mark

        1.    This element is disputed.

        2.    Nature of Dispute: Legal and Factual

        3.    Plaintiff's Legal Position: Defendants do not dispute that the registrations for all three Marks (Trial Exhibit Nos. 1, 3, and 5) identify Cinco as the registrant and the first to use each of the three Marks, nor do Defendants dispute that the

1    Deeds of Assignment attached to the notices filed with the
2    USPTO (Trial Exhibit Nos. 4 and 6) confirm that,
3    unequivocally and without exception, the entirety of these
4    Marks were sold and assigned to Plaintiff, along with all
5    the goodwill arising out of or associated with the Marks.
6    Defendants also do not dispute the testimony of Seller
7    (Cinco) and Buyer (SPAVI) that the Deeds are accurate in
8    every way, that the sale and assignments were
9    comprehensive, without carve outs, and fully
10   consummated. Instead, Defendants take internally
11   inconsistent positions that are contradicted by various legal
12   doctrine, including: **(1) Licensee Estoppel,** wherein PCJV
13   (as well as all other Defendants that operate or own a
14   business using the Marks), as a licensee of Cinco (and
15   subsequently SPAVI) through the implied license or even
16   the unsigned Master License Agreement claimed by
17   Defendants to be binding "may not set up any adverse
18   claim in it as against its licensor." *Pac. Supply Co-op. v.*
19   *Farmers Union Cent. Exch. Inc.,* 318 F.2d 894, 908 (9th
20   Cir. 1963). **(2) The Lanham Act provisions rendering**
21   **Defendants' positions contrary to federal law**, in that
22   Defendants' attempts to claim that the first time they used
23   the Marks should be credited to them, even though they
24   were acting as licensees of PCJV or Defendants' claim of
25   ownership of the goodwill created through PCJV's stores
26   (operated as licensees) inured to Defendants' benefit
27   contradicts 15 USC § 1055 (as well as the unsigned Master
28   License Agreement they claimed to be adhering to this

JOINTLY FILED CLAIMS TO BE TRIED                    CASE NO. 2:24-CV-04546-SB(AGRX)
175468760.1

whole time). **(3) Law of the case**, in that Defendants' challenge to Plaintiff's ownership of the Marks based on Defendants' first use as licensee of Cinco has already been resolved by this Court and the Ninth Circuit, which held that "it is undisputed that Cinco registered the three marks at issue then transferred ownership of those marks to SPAVI." The Ninth Circuit then explicitly rejected PCJV's theories that it was the first to use the marks domestically by holding that "in the licensor-licensee context, a licensee's use of a trademark inures to the benefit of the licensor-registrant" (*Shakeys Pizza Asia Ventures, Inc. v. PCJV USA, LLC*, No. 24-7084, 2025 WL 1431270, at *1 (9th Cir. May 19, 2025)), thus rendering, for example, any allegation by PCJV of its use as a licensee as being proof of its first use cannot serve as a basis to challenge SPAVI's ownership because this theory has been considered and rejected by the Ninth Circuit in this case, as has also the various other legal theories of Defendants offered during the injunction stage that are based on the same facts asserted during the injunction and rejected by this Court. Even at the injunction stage, rulings by this Court and the Ninth Circuit "on pure issues of law, however, are binding." *Ranchers Cattlemen Action Legal Fund United Stockgrowers of Am. v. U.S. Dep't of Agr.*, 499 F.3d 1108, 1114 (9th Cir. 2007); s*ee, e.g. Arizona v. California*, 460 U.S. 605, 618 (1983) (citing the rule as being "when a court decides upon a rule of law, that decision should continue to govern the same issues in subsequent stages in the same

case"). **(4) Authorities cited by Defendants do not support their position, including *Sengoku*,** which presented a distinguishable case – a foreign manufacturer that was the first to use versus the domestic distributor that was the registrant, whereas in this case the foreign licensor is both the first to use and the registrant – and yet, Defendants continue to cite it as supporting their claim of ownership or rights, and it does not. **(5) The merger doctrine,** wherein the purchase and sale agreement between Cinco and SPAVI selling and agreeing to assign to SPAVI the Potato Corner marks and brand merge into the undisputed and unequivocal deeds that are notarized and ratified by Buyer and Seller (Trial Exhibit Nos. 4 and 6) such that these Deeds would control if there was any inconsistency between the purchase and sale agreement and the deed (there is not, as those agreements said nothing about and acknowledged no rights held by any of the Defendants), such that Defendants' speculative theory that the purchase and sale agreement between Cinco and SPAVI reserved some rights for Defendants cannot even be presented to the jury given that the Deeds do not reserve anything for Defendants – a doctrine that applies in federal intellectual property cases and renders any questions as to what the deal between SPAVI and Cinco actually said, irrelevant. *See, e.g., Palos Verdes Corp. v. Hous. Auth. of Los Angeles Cnty.,* 202 Cal. App. 2d 827, 836 (1962) (explaining that "if the language of a deed is plain, certain, and unambiguous, neither parol evidence nor surrounding

facts and circumstances will be considered to add to, detract from, or vary its terms or to determine the estate conveyed); *B. F. Goodrich Co. v. A. T. I. Caribe, Inc.,* 366 F. Supp. 464,467 (D. Del. 1973) (applying this concept in the intellectual property context). **(6) Standing**, in that none of the Defendants were party to the transaction between Cinco and Plaintiff, and as such, have no standing to question whether the Deeds (notarized and ratified) represent the actual deal between Cinco and SPAVI or some other imagined reservation of their rights supposedly contained in the purchase and sale agreement that did not make it into the Deeds (a fantasy that did not happen). *See, e.g. Imperial Residential Design, Inc. v. Palms Dev. Grp., Inc.*, 70 F.3d 96, 99 (11th Cir. 1995) (agreeing that "that, where there is no dispute between the copyright owner and the transferee about the status of the copyright, it would be unusual and unwarranted to permit a third-party infringer to invoke [the requirement of a writing memorializing the status] to avoid suit for copyright infringement."). **(7) Judicial estoppel**, in his sworn allegations in the Prior Governance Action (*Cinco Corporation et. al. v. Guy Koren et. al.* Los Angeles Superior Court Case No. BC701075), Koren admitted repeatedly including in verified allegations that Cinco "owned the Potato Corner brand" (Trial Exhibit No. 1421, ¶ 26), an allegation that Cinco **_admitted_** (Trial Exhibit, No. 1422, ¶ 26.), such that PCJV and Koren must be barred from making a "factual assertion" that Cinco did not own  the  brand "which

JOINTLY FILED CLAIMS TO BE TRIED
175468760.1

CASE NO. 2:24-CV-04546-SB(AGRX)

directly contradicts an earlier assertion made in the same proceeding or a prior one.'" Un*ited States v. Lence*, 466 F.3d 721, 726 (9th Cir. 2006) (citing and quoting *Russell v. Rolfs,* 893 F.2d 1033, 1037 (9th Cir.1990)).

4.   <u>Defendants' Position Statement:</u> The ownership issues framed by the Proposed Final Pretrial Conference Order (Dkt. No. 244), the Memoranda of Contentions of Law and Fact (Dkt. Nos. 197 and 199) and pleadings are: (1) senior use under *Sengoku*, including actual first use (restructure in 2009) and lawful first use, *see CreAgri, Inc. v. USANA Health Services, Inc.*, 474 F3d 626, 630 (9th Cir. 2007); (2) continuous use under 15 U.S.C § 1055; (3) assignment in gross; (4) acquisition of "attached" rights by the PCJV USA Parties and Plaintiff's corresponding denial of acquiring burdens attached to the trademarks; (5) naked license; and (6) priority favoring Defendants based on other defenses. Plaintiff's proffered statement is non-responsive. It is a combative, inappropriate and false narrative of Defendants' position, record evidence, preliminary rulings and the ownership issues for trail as set forth in the Proposed Final Pretrial Conference Order (Dkt. No. 244), Memorandums of Contentions of Law and Fact (Dkt. Nos. 197 and 199) and pleadings. "The court's preliminary injunction did not make final factual determinations; no party moved for summary judgment; and the jury needs to be instructed on the claims asserted in this case." Dkt. No. 254 at 2. Plaintiff's unpled defenses of infringer standing, licensee estoppel, judicial estoppel,

and merger (parol evidence) doctrine are not issues for trial per the Proposed Final Pretrial Conference Order (Dkt. No. 244) or Plaintiff's Memorandum of Contentions of Law and Fact (Dkt. No. 199). Plaintiff's asserted "legal positions," which seek to avoid a trial on the merits, are also based on inapplicable authority (or no authority at all) and misstate the record. For these reasons, including because Plaintiff's "legal positions" go beyond identifying the actual ownership issues set for trial, Defendants will address them if or when they arise after the evidence on ownership is presented at trial

5.    <u>Plaintiff's Supporting Evidence:</u> Notarized Deeds signed by seller and buyer; USPTO filings including Registrations and Assignments, testimony of Gregorio (Plaintiff's CEO), Magsaysay (Cinco's CEO), Koren, Ybanez (Plaintiff's General Counsel), FDDs, Franchise Agreements.

6.    <u>Defendants' Supporting Evidence:</u> documents and testimony including and related to (1) Defendants' senior use and quality control of Potato Corner in the United States; (2) the superseding partnership agreement; (3) DLA Piper's notification of Cinco Corporation's unlawful use of Potato Corner in the United States; (4) the State of California's Department of Business Oversight's Order sanctioning PCJV USA, LLC for Cinco Corporation's alleged prior use of Potato Corner in the United States; (5) the superseding and restructure agreement confirmed by Guy Koren and Jose Magsaysay vesting ownership of Potato Corner in their partnership; (6) the joint venture

CASE NO. 2:24-CV-04546-SB(AGRX)

agreement vesting co-ownership of Potato Corner in the United States in PCJV USA, LLC; (7) control over Potato Corner in the United States being vested with and exercised by PCJV USA, LLC; (8) Potato Corner USA being affixed to Potato Corner in the United States; (9) consumer association of Potato Corner in the United States with PCJV USA, LLC, to whom complaints, if any, were lodged; (10) PCJV USA, LLC's creation, development and hold over the goodwill of Potato Corner in the United States for over a decade; (11) absent a license agreement, which SPAVI Parties disavow, PCJV USA, LLC's use inured to its own benefit; (12) Cinco Corporation's lack of control of Potato Corner in the United States for over a decade; (13) Defendants' objection to Plaintiff's alleged acquisition of U.S. trademark rights in breach of Cinco Corporation's fiduciary duties and PCJV USA, LLC's joint venture agreement ("JVA") and First Amendment thereto ("First Amendment") given that Plaintiff was disavowing the existence of a license agreement; (14) Cinco Corporation assigned U.S. Potato Corner trademarks to Plaintiff without the goodwill associated with the trademarks; (15) Plaintiff's lack of control of Potato Corner in the United States after it allegedly acquired the U.S. trademarks; (16) Defendants' Membership Interest Purchase Agreement ("MIPA") with Cinco acquiring all of its Interests in PCJV USA, LLC and all rights "attached" thereto unencumbered by a need for a license from any third party; (17) Plaintiff's denial of stepping into Cinco

Corporation's shoes and acquiring the licensing burdens attached to the U.S. trademarks; and (18) Plaintiff's suppression of ownership evidence.

    c.    <u>Element No. 3</u>: Defendants used the Word Mark, Slogan Mark, and/or the Logo Mark in interstate commerce after May 31, 2024:

        1.    This element is undisputed.

    d.    <u>Element No. 4</u>: Defendants' use of the Word Mark, Slogan Mark, and/or the Logo Mark in interstate commerce after May 31, 2024, was without the consent of Plaintiff and in a manner likely to cause confusion among ordinary consumers as to the source, sponsorship, affiliation, or approval of the services.

        1.    This element is disputed.

        2.    <u>Nature of Dispute</u>: Legal and Factual

        3.    <u>Plaintiff's Legal Position</u>: <u>As for absence of consent</u>, given the absence of any ownership  rights, Defendants must locate some right as a licensee of the owner (SPAVI). Defendants offer two documents proffered as agreements that bind Cinco to a perpetual license. Neither work as a matter of law. First, they offer the unsigned October 10, 2010, document containing terms for a Master License Agreement (Trial Exhibit No. 11), which this Court (and the Ninth Circuit) have reviewed. Both have interpreted it as a matter of law, concluding that it is an unsigned draft (as Koren's testimony has confirmed) and illusory because the licensor is given no consideration for this purported agreement. The unsigned document cannot, as a matter of law, have bound Cinco, even through implied contract law, because Cinco did not do anything in furtherance of that

| | |
|---|---|
| 1 | document to imply its assent. Moreover, multiple times |
| 2 | after October 10, 2010, documents were signed stating that |
| 3 | Cinco would be expecting a 30% royalty recovery. Second, |
| 4 | Plaintiffs point to § 3(g) of an Amended Joint Venture |
| 5 | Agreement (and its predecessor the Joint Venture |
| 6 | Agreement) – Trial Exhibit Nos. 8 and 9 – which this Court |
| 7 | has already interpreted to constitute an agreement to agree, |
| 8 | in the future, with Cinco on a license agreement. As the |
| 9 | Ninth Circuit said in affirming this conclusion, "the AJVA |
| 10 | contained an agreement to enter a *future* Master License |
| 11 | Agreement, not a "perpetual license" like PCJV claims." |
| 12 | *Shakeys Pizza Asia Ventures, Inc. v. PCJV USA, LLC*, No. |
| 13 | 24-7084, 2025 WL 1431270, at *1 (9th Cir. May 19, 2025) |
| 14 | (citing *First Nat'l Mortg. Co. v. Fed. Realty Inv. Tr.*, 631 |
| 15 | F.3d 1058, 1065 (9th Cir. 2011) ("[A]n 'agreement to |
| 16 | agree,' without more, is not a binding contract."). This |
| 17 | interpretation of the AJVA and JVA is a legal conclusion, |
| 18 | which, as affirmed by the Ninth Circuit are legal |
| 19 | conclusions, and, as such, these are pure conclusions of |
| 20 | law, which means: **this Court's conclusion that § 3(g) of** |
| 21 | **the JVA and AJVA are agreements to agree and do not** |
| 22 | **bind Cinco to a "perpetual license" are law of the case** |
| 23 | **and cannot be disturbed or challenged at trial**. This |
| 24 | theory based on interpretation of a contract has been |
| 25 | considered and rejected by this Court and the Ninth Circuit |
| 26 | in this case, and because it is a "pure issue[] of law, |
| 27 | however, [it is] binding" on Defendants under law of the |
| 28 | case. *Ranchers Cattlemen Action Legal Fund United* |

*Stockgrowers of Am. v. U.S. Dep't of Agr.*, 499 F.3d 1108, 1114 (9th Cir. 2007); s*ee, e.g. Arizona v. California*, 460 U.S. 605, 618 (1983) ((citing the rule as being "when a court decides upon a rule of law, that decision should continue to govern the same issues in subsequent stages in the same case"). Defendants now trot out other theories such the fact that the JVA and prior Operating Agreement are still somewhat live under a theory of partial integration, however, the following point prevails over each of these contortions: Defendants can point to no agreement or document, or acct, or statement, binding Cinco to a perpetual, irrevocable, royalty free licensee of its Marks. As such, in the absence of any written  agreement, or documentation of any license terms, the sole license that existed as of May 31, 2024, was implied and terminable at will  *See Pogrebnoy v. Russian Newspaper Distribution, Inc.*, 289 F. Supp. 3d 1061, 1070 (C.D. Cal. 2017), *aff'd*, 742 F. App'x 291 (9th Cir. 2018) ("[A]n implied license, like any other contract, is terminable at the will of either party if it is not for a specified term."). One final flaw exists in the attempt to bind Cinco to the AJVA, and that is one of issue preclusion in favor of Plaintiffs. As evidenced by Plaintiff's own Third Amended Complaint (verified) in the Prior Governance Action, the entire pleading is based on the theory that -- and it sought judgment concluding that - - Cinco is an alter ego of the entity that was a 60% member of PCJV. (*See* Trial Exhibit No. 1421 p. 7:3-14.) Such allegations, having been dismissed, with  prejudice, by

1    Koren, re4nder thee accusations extinguished, and, as such,

2    Defendants are precluded from alleging them ever again.

3        Regarding likelihood of confusion, which may be

4    resumed, and the jury may be so instructed "[w]here,' as

5    here, "a licensee persists in the unauthorized use of a

6    licensor's trademark, courts have found that the continued

7    use alone establishes a likelihood of consumer

8    confusion." *Robert Trent Jones II, Inc. v. GFSI, Inc*., 537

9    F. Supp. 2d 1061, 1065 (N.D. Cal. 2008) (citing and

10   quoting *Sun Microsystems v. Microsoft Corp.,* 999

11   F.Supp. 1301, 1311 (N.D.Cal.1998) (citing *Paisa, Inc. v.*

12   *N & G Auto, Inc.,* 928 F.Supp. 1009, 1012 n. 4

13   (C.D.Cal.1996); *Hollywood Athletic Club,* 938 F.Supp. at

14   614–15 (C.D.Cal.1996)). The Sixth Circuit's analysis in

15   Max Rack, Inc. v. Core Health & Fitness, LLC, 40 F.4th

16   454, 464 (6th Cir. 2022) is instructive:

17

18       "A separate body of law has developed for this
         distinct claim that a holdover licensee has
19       continued to use a licensor's mark after their
         agreement expired. *See* 4 McCarthy, *supra*, §
20       25:31 (citing cases). In this context, courts have
         jettisoned     the     usual     totality-of-the-
21       circumstances test in favor of a more
         categorical    rule:    "proof    of    continued,
22       unauthorized use of an original trademark by
         one whose license to use the trademark had
23       been terminated is sufficient to establish
24       'likelihood of confusion.' " *U.S. Structures, Inc.*
         *v. J.P. Structures, Inc.*, 130 F.3d 1185, 1190
25       (6th Cir. 1997); *ITT Indus., Inc. v. Wastecorp.*
26       *Inc.*, 87 F. App'x 287, 293 (3d Cir. 2004);
27       *Gorenstein Enters., Inc. v. Quality Care-USA,*

28

---
15

*Inc.*, 874 F.2d 431, 435 (7th Cir. 1989); *Burger King Corp. v. Mason*, 710 F.2d 1480, 1492–93 (11th Cir. 1983); *Pro. Golfers Ass'n of Am. v. Bankers Life & Cas. Co.*, 514 F.2d 665, 670 (5th Cir. 1975); *L & L Wings, Inc. v. Marco-Destin, Inc.*, 676 F. Supp. 2d 179, 188 (S.D.N.Y. 2009). This rule makes good sense when a holdover licensee blatantly infringes the licensor's mark by using that mark in the same way as it did before the agreement expired. Without any need to tick through factors, it should be obvious that consumers will believe, for example, that a pizza restaurant remains affiliated with the "Little Caesars" chain when a terminated franchisee continues to operate the pizzeria as a Little Caesars. *See Little Caesar Enters., Inc. v. Miramar Quick Serv. Rest. Corp.*, 2020 WL 4516289, at *3 (6th Cir. 2020) (order)"

Although Plaintiff intends to, and will, adduce proof of the *Sleekcraft* factors, the presumption exists, and it is entitled to stand on this presumption alone. *See also, Brookfield Commc'ns, Inc. v. W. Coast Ent. Corp.*, 174 F.3d 1036, 1056 (9th Cir. 1999) ("In light of the virtual identity of marks, if they were used with identical products or services likelihood of confusion would follow as a matter of course"); *Park 'n Fly, Inc. v. Dollar Park & Fly, Inc.*, 782 F.2d 1508, 1509 (9th Cir. 1986) (holding that when marks and services are identical and channels are the same, likelihood of confusion is assumed, even if the other factors weight against); *see also Blue Mako Inc. v. Minidis*, No. CV 07-916 AHM (SHX), 2008 WL 11334205 (C.D. Cal. June 23, 2008) (applying these principles to similar facts). Although Plaintiff intends to, and will, adduce proof of the *Sleekcraft* factors, the presumption exists, and it is entitled to stand on this

1    presumption alone.

2    4.    <u>Defendants' Position Statement:</u> If Defendants are not

3    found to have a superior claim to ownership, authorization

4    issues framed by the Proposed Final Pretrial Conference

5    Order (Dkt. No. 244), the Memoranda of Contentions of

6    Law and Fact (Dkt. Nos. 197 and 199) and pleadings are

7    whether, based on a partnership meeting of the minds,

8    governing documents, course of performance, fiduciary

9    and contractual obligations, the implied covenant of good

10   faith and fair dealing, and reasonable and detrimental

11   reliance: (1) PCJV USA, LLC had a "lifetime" license as a

12   joint venture partner; (2) PCJV USA, LLC had a 20-year

13   license with three 10-year options; (3) PCJV USA, LLC

14   had a non-terminable-at-will license; (4) Plaintiff owed

15   fiduciary or contractual obligations to provide PCJV USA,

16   LLC a long-term license consistent with the PCJV USA

17   Parties being joint venture partners, s*ee* J. Thomas

18   McCarthy, *McCarthy on Trademarks and Unfair*

19   *Competition,* § 18:15, at (5th ed.) ("'It is elementary

20   ancient law that an assignee never stands in any better

21   position than his assignor'") (citation omitted); and (5)

22   other defenses to enforcement, including promissory

23   estoppel, authorizing PCJV USA, LLC's continued use of

24   the U.S. trademarks. Plaintiff's proffered statement is non-

25   responsive. It is a combative, inappropriate and false

26   narrative of record evidence, preliminary rulings and the

27   authorization issues for trail as set forth in the Proposed

28   Final Pretrial Conference Order (Dkt. No. 244),

1    Memoranda of Contentions of Law and Fact (Dkt. Nos.
2    197 and 199) and pleadings. "The court's preliminary
3    injunction did not make final factual determinations; no
4    party moved for summary judgment; and the jury needs to
5    be instructed on the claims asserted in this case." Dkt. No.
6    254 at 2. Plaintiff's asserted "legal positions," which seek
7    to avoid a trial on the merits, are also based on inapplicable
8    authority (or no authority at all) and misstate the record.
9    For these reasons, including because Plaintiff's "legal
10   positions" go beyond identifying the actual authorization
11   issues set for trial, Defendants will address them if or when
12   they arise after the evidence on PCJV USA LLC's
13   authorization to continue using the U.S. trademarks is
14   presented at trial.

15       5.    <u>Plaintiff's Supporting Evidence</u>: Trial Exhibit 29 (May 31,
16   2024 Termination); photographs of various stores taken
17   from May 31, 2025 through the present; Testimony of
18   Koren; Plaintiff executives Gregorio (Plaiuntiff's CEO),
19   Concepcion (Plaintiff's COO charged with US operations),
20   Tan (Director responsible for international franchising);
21   investigator; Franchisees; Kim Lambert and Barry Kurtz;
22   in addition to  the following documents Amended Joint
23   Venture Agreement and Joint Venture Agreement.

24       6.    <u>Defendants' Supporting Evidence</u>: documents and
25   testimony including and related to (1) Defendants' senior
26   use and quality control of Potato Corner in the United
27   States; (2) the superseding and restructure agreement
28   confirmed by Guy Koren and Jose Magsaysay vesting

partnership rights to build, develop and control Potato Corner in the United States; (3) the joint venture agreement vesting lifetime partnership rights to build, develop and control Potato Corner in the United States; (4) absent a license agreement, which SPAVI Parties disavow, PCJV USA, LLC's owns the U.S. Potato Corner marks as its use inured to its own benefit; (5) all the terms and conditions of the JVA and First Amendment thereto controlling licensing, approval of franchisee agreements, including as disclosed in franchise disclosure documents ("FDDs"), and management and operations of Potato Corner in the United States; (6) parol evidence regarding the partners' meeting of the minds; (7) the JVA's related agreements, which remained operative and under which Cinco Corporation remained a fiduciary and party to the JVA after the First Amendment as confirmed a plethora of documentary evidence; (8) the license agreements setting forth the terms and conditions upon which PCJV USA, LLC's senior use and control of Potato Corner in the United States would inure to the benefit of Cinco Corporation, which the SPAVI Parties now disavow, even though Cinco Corporation offered it through DLA Piper, or thereafter accepted, countersigned or otherwise entered into the license agreements as evidenced in many writings and agreed and approved of in FDDs; (9) course of performance for more than a decade as evidenced by approved FDDs, which ratified the license agreements and confirmed an entered into license agreement; (10) reasonable and detrimental

reliance; (11) fiduciary obligations, the implied covenant of good faith and fair dealing, and the JVA and First Amendment's plain acknowledgement that there are no terminable-at-will branding rights; (12) Plaintiff's denial of stepping into Cinco Corporation's shoes and acquiring the licensing burdens attached to the U.S. trademarks; and (13) Plaintiff's suppression of authorization evidence

e.   Element No. 5: Damage caused by infringement designation.

1.   This element is disputed.

2.   Nature of Dispute: factual

3.   Plaintiff's Supporting Evidence: Defendants have produced financials for the period in question May 31, 2024 through the present, and, given that the entirety of their business is built of the confusion, we only need to prove profits which can be disgorged. Thus, the financials as well as Koren testimony and testimony of franchisees as well as correspondence regarding costs of goods sold as well as the testimony of the CFO of Shakey's will establish damage. No expert is needed for arithmetic. To the contrary, it is Defendant who bears a heavier burden of establishing what costs or expenses "actually contributed to the sale of the infringing products." *Monster Energy Co. v. Integrated Supply Network, LLC*, 533 F. Supp. 3d 928, 938 (C.D. Cal. 2021)

4.   Defendants' Supporting Evidence:

**2)   Claim 3: False Designation of Origin and Description of Fact Against All Entity Defendants (15 U.S.C. § 1125):**

a.    <u>Element No. 1</u>: The Defendants used a designation, such as a word, term, name, device, or a combination thereof, or a false designation of origin:

1.    This element is disputed.

2.    <u>Nature of Dispute:</u> Legal and Factual

3.    <u>Plaintiff's Position Statement</u>: This is essentially the federal version of our § 17200 claim in that, when looked at in its entirety, fits squarely within what was intended by 15 USDCD 1125(a)(1)(A). By continuing to operate using the same federal trademarks, menu layouts, and color schemes, and promotes its new brand as having the 'same taste' after having reverse engineered the flavorings and then used that, plus the menu that is unchanged – same colors, fonts, pictures, layout, even same product names – and all of this is likely to cause consumer confusion regarding the source or origin of the goods or services, as customers may believe the new business is still affiliated with or originates from the original brand. *See generally Blue Mako Inc. v. Minidis*, No. CV 07-916 AHM (SHX), 2008 WL 11334205 (C.D. Cal. June 23, 2008) (applying these principles to similar facts).

4.    <u>Defendants' Position Statement:</u> The legal issues set for trial in the Proposed Final Pretrial Conference Order (Dkt. No. 244), Memoranda of Contentions of Law and Fact (Dkt. Nos. 197 and 199) and pleadings regard ownership of and authorization to use the U.S. Potato Corner trademarks; there is no "trade dress" issue in the pleadings set for trial. Moreover, "same as" comparative advertising

CASE NO. 2:24-CV-04546-SB(AGRX)

of taste or fragrance is not unfair competition. *Smith v. Chanel*, Inc., 402 F.2d 562, 563 (9th Cir. 1968). Further, proffered "former location" confusion is not actionable in California (*see* Bus. & Prof. Code § 16600) nor proves or is probative of ordinary consumer confusion that is the subject of the Lanham Act after the market settles from a partnership divorce, especially after Plaintiff is the one who changed the *status quo* and caused any confusion

5.  <u>Plaintiff's Supporting Evidence:</u> Photographs and testimony from former franchisees, the COO of SPAVI, Mr. Concepcion, as well as the testimony of Koren, and the Franchise Agreements, FDDs, and leases, of PCJV over the years.

6.  <u>Defendants' Supporting Evidence:</u> documents and testimony including and related to (1) Defendants' ownership of the U.S. Potato Corner trademarks, which merely are a symbol of PCJV USA, LLC's business and restaurant and catering services; (2) Defendants' authorization to use the U.S. Potato Corner trademarks; (3) no consumer survey evidence; (4) no evidence of actionable ordinary consumer confusion but just speculation about market conditions after the market stabilizes, let alone actionable confusion attributable to alleged unfair competition framed by the Proposed Final Pretrial Conference Order (Dkt. No. 244), Memoranda of Contentions of Law and Fact (Dkt. Nos. 197 and 199) and pleadings; (5) no marketplace confusion before Plaintiff brought this action; (6) any marketplace confusion would

stem from Plaintiff's efforts to create it rather than Plaintiff just filing an action for declaratory relief to resolve ownership and authorization issues after it acquired contested assets in the middle of franchise litigation between joint venture partners; and (7) Plaintiff's suppression of evidence, including Plaintiff's communications with U.S. franchisees under contract with PCJV USA, LLC that were timely requested and ordered be produced.

  b. Element No. 2: The use was in interstate commerce.

   i. This element is not disputed

  c. Element No. 3 : The use was in connection with goods or services.

   1. This element is disputed.

   2. Nature of Dispute: Legal and Factual

   3. Plaintiff's Position Statement: Defendants' purported objection is one of fact no law. The registrations are for services, and the use of the marks was for services. If Defendants were using the Marks for some other purpose, they have more liability than previously known.

   4. Defendants' Position Statement: The registered first use of the registered marks are for restaurant and catering services; the registered marks are merely a symbol of Potato Corner in the United States, which distributed goods and services; the case is not a "goods" case, including because the registrations predate any alleged unfair competition.

   5. Plaintiff's Supporting Evidence: USPTO filings including Registrations and Assignments.

1      6. Defendants' Supporting Evidence: documents and

2        testimony including and related to (1) U.S. Reg. No.

3        5900257: the word mark "Potato Corner"; (2) U.S. Reg.

4        No. 6088456: "World's Best Flavored French Fries; and

5        (3) U.S. Reg. No. 3760041: the Logo Mark.

6   d. Element No. 4: Defendants' designation or false designation is

7    likely to cause confusion, mistake, or deception regarding either

8    the affiliation, connection, or association of the defendant with

9    another person, or the origin, sponsorship, or approval of the

10   defendant's goods, services, or commercial activities by another

11   person.

12    1. This element is disputed in part.

13    2. Nature of Dispute: Legal and Factual

14    3. Plaintiff's Legal Position: The ultimate test" for unfair

15      competition is exactly the same as for trademark

16      infringement: "whether the public is likely to be deceived

17      or confused." *Century 21 Real Est. Corp. v. Sandlin*, 846

18      F.2d 1175, 1178 (9th Cir. 1988)Regarding likelihood of

19      confusion, which may be presumed, and the4 jury may be

20      so instructed "[w]here,' as here, "a licensee persists in the

21      unauthorized use of a licensor's trademark, courts have

22      found that the continued use alone establishes a likelihood

23      of consumer confusion." *Robert Trent Jones II, Inc. v.*

24      *GFSI, Inc*., 537 F. Supp. 2d 1061, 1065 (N.D. Cal. 2008)

25      (citing and quoting *Sun Microsystems v. Microsoft Corp.,*

26      999 F.Supp. 1301, 1311 (N.D.Cal.1998) (citing *Paisa, Inc.*

27      *v. N & G Auto, Inc.,* 928 F.Supp. 1009, 1012 n. 4

28      (C.D.Cal.1996); *Hollywood Athletic Club,* 938 F.Supp. at

614–15 (C.D.Cal.1996)). The Sixth Circuit's analysis in Max Rack, Inc. v. Core Health & Fitness, LLC, 40 F.4th 454, 464 (6th Cir. 2022) is instructive:

> "A separate body of law has developed for this distinct claim that a holdover licensee has continued to use a licensor's mark after their agreement expired. *See* 4 McCarthy, *supra*, § 25:31 (citing cases). In this context, courts have jettisoned the usual totality-of-the-circumstances test in favor of a more categorical rule: "proof of continued, unauthorized use of an original trademark by one whose license to use the trademark had been terminated is sufficient to establish 'likelihood of confusion.' " *U.S. Structures, Inc. v. J.P. Structures, Inc.*, 130 F.3d 1185, 1190 (6th Cir. 1997); *ITT Indus., Inc. v. Wastecorp. Inc.*, 87 F. App'x 287, 293 (3d Cir. 2004); *Gorenstein Enters., Inc. v. Quality Care-USA, Inc.*, 874 F.2d 431, 435 (7th Cir. 1989); *Burger King Corp. v. Mason*, 710 F.2d 1480, 1492–93 (11th Cir. 1983); *Pro. Golfers Ass'n of Am. v. Bankers Life & Cas. Co.*, 514 F.2d 665, 670 (5th Cir. 1975); *L & L Wings, Inc. v. Marco-Destin, Inc.*, 676 F. Supp. 2d 179, 188 (S.D.N.Y. 2009). This rule makes good sense when a holdover licensee blatantly infringes the licensor's mark by using that mark in the same way as it did before the agreement expired. Without any need to tick through factors, it should be obvious that consumers will believe, for example, that a pizza restaurant remains affiliated with the "Little Caesars" chain when a terminated franchisee continues to operate the pizzeria as a Little Caesars. *See Little Caesar Enters., Inc. v. Miramar Quick Serv. Rest. Corp.*, 2020 WL 4516289, at *3 (6th Cir. 2020) (order)"

Although Plaintiff intends to, and will, adduce proof of the *Sleekcraft* factors, the presumption exists, and it is entitled to

stand on this presumption alone. *See also, Brookfield Commc'ns, Inc. v. W. Coast Ent. Corp.*, 174 F.3d 1036, 1056 (9th Cir. 1999) ("In light of the virtual identity of marks, if they were used with identical products or services likelihood of confusion would follow as a matter of course"); *Park 'n Fly, Inc. v. Dollar Park & Fly, Inc.*, 782 F.2d 1508, 1509 (9th Cir. 1986) (holding that when marks and services are identical and channels are the same, likelihood of confusion is assumed, even if the other factors weight against); *see also Blue Mako Inc. v. Minidis*, No. CV 07-916 AHM (SHX), 2008 WL 11334205 (C.D. Cal. June 23, 2008) (applying these principles to similar facts).

4.  <u>Defendants' Position Statement:</u> Defendants are not going to argue no likelihood of confusion arising from continuous use of registered and unregistered trademarks if Defendants do not prevail on ownership or authorization. However, this is not a "trade dress" case. The legal issues set for trial in the Proposed Final Pretrial Conference Order (Dkt. No. 244), Memoranda of Contentions of Law and Fact (Dkt. Nos. 197 and 199) and pleadings regard ownership of and authorization to use the U.S. Potato Corner trademarks; there is no "trade dress" issue in the pleadings set for trial. Moreover, "same as" comparative advertising of taste or fragrance is not unfair competition. *Smith v. Chanel*, Inc., 402 F.2d 562, 563 (9th Cir. 1968). Further, proffered "former location" confusion is not actionable in California (*see* Bus. & Prof. Code § 16600) nor proves or is probative of ordinary consumer confusion that is the subject of the Lanham Act after the

market settles from a partnership divorce, especially after Plaintiff is the one who changed the *status quo* and caused any confusion.

5. <u>Plaintiff's Supporting Evidence:</u> Trial Exhibit 29 (May 31, 2024 Termination); photographs of various stores taken from May 31, 2025 through the present; Testimony of Koren; Plaintiff executives Gregorio (Plaiuntiff's CEO), Concepcion (Plaintiff's COO charged with US operations), Tan (Director responsible for international franchising); investigator; Franchisees; Kim Lambert and Barry Kurtz; in addition to  the following documents Amended Joint Venture Agreement and Joint Venture Agreement; the COO of SPAVI, Mr. Concepcion, the Franchise Agreements, FDDs, and leases, of PCJV over the years.

6. <u>Defendants' Supporting Evidence:</u> documents and testimony including and related to (1) Defendants' ownership of the U.S. Potato Corner trademarks, which merely are a symbol of PCJV USA, LLC's business and restaurant and catering services; (2) Defendants' authorization to use the U.S. Potato Corner trademarks; (3) no consumer survey evidence; (4) no evidence of actionable ordinary consumer confusion but just speculation about market conditions after the market stabilizes, let alone actionable confusion attributable to alleged unfair competition framed by the Proposed Final Pretrial Conference Order (Dkt. No. 244), Memoranda of Contentions of Law and Fact (Dkt. Nos. 197 and 199) and pleadings; (5) no marketplace confusion before Plaintiff

brought this action; (6) any marketplace confusion would stem from Plaintiff's efforts to create it rather than Plaintiff just filing an action for declaratory relief to resolve ownership and authorization issues after it acquired contested assets in the middle of franchise litigation between joint venture partners; and (7) Plaintiff's suppression of evidence, including Plaintiff's communications with U.S. franchisees under contract with PCJV USA, LLC that were timely requested and ordered be produced

e.    Element No. 5: Damage caused by false designation.

1.    This element is disputed.

2.    Nature of Dispute: Legal and factual

3.    Plaintiff's Legal Position: The standard to be followed is set forth in 15 USC § 1117 which only requires this Court's approval in equity to proceed with money damages. The Courts have, contrary to Defendant's apparent position, removed the requirement of willfulness to obtain disgorgement., *Romag Fasteners, Inc. v. Fossil, Inc.*, —— U.S. ——, 140 S. Ct. 1492, 1495-97, 206 L.Ed.2d 672 (2020) (holding willfulness is not a precondition to disgorgement of profits under the Lanham Act). (Dkt. No. 594.)  Defendants ignore the difference between normal infringement and this case, the holdover licensee, where the standard for likelihood of confusion is lowered, and even sometimes presumed, and irreparable harm is also presumed. The Lanham Act allows Defendants to raise the other arguments to rebut the presumption of irreparable

1    harm, but the standard as applied here allows for

2    disgorgement.

3    4.    <u>Defendants' Position Statement:</u> Likelihood of confusion,

4    when coupled with likely irreparable harm, is the standard

5    for injunctive relief, the primary remedy under the Lanham

6    Act (*National Grange of the Order of Patrons of*

7    *Husbandry v. Cal. State Grange*, 182 F.Supp. 3d 1065,

8    1071 (E.D. Cal. 2016)), the benefits of which Plaintiff has

9    already obtained in this case by flipping franchisees under

10    contract with Defendants to join its organization—

11    notwithstanding PCJV USA, LLC's rebranding rights and

12    obligations disclosed in FDDs; Plaintiff fails to

13    acknowledge its legal and higher burden of proof to

14    establish an entitlement to monetary recovery, whether

15    legal damages (which Plaintiff is not pursuing as there is

16    no evidence it has a legal right to conduct a franchise

17    business in California or elsewhere in the United States) or

18    disgorgement—both of which stem from actual confusion

19    in the market not attributable to Plaintiff's own conduct as

20    proof of a defendant actually trading on the goodwill of

21    another resulting in either lost profits or unjust enrichment

22    (*Gracie v. Gracie*, 217 F.3d 1060, 1068 (9th Cir. 2000)); in

23    addition to there being no consumer survey evidence or

24    probative evidence of actual confusion not attributable to

25    Plaintiff's own conduct (let alone attributable to trademark

26    infringement), Defendants' exercise of bona fide good faith

27    belief not to waive (a) pre-existing partnership (whether

28    ownership or authorization) rights and obligations to use

and control the U.S. trademarks and to equally receive service fees if any royalties were paid to the registrant when (b) Plaintiff allegedly acquired U.S. Potato Corner trademarks in the middle of franchise litigation between joint venture partners, (c) over Defendants' objection, (d) initiating this lawsuit in a conspiracy 3 days after the settlement with Plaintiff's assignor to circumvent a state court injunction rather than go to trial in state court, (e) disregarding a tolling agreement to continue discussions and not filing an action for declaratory relief if there was an impasse to determine who has superior trademark rights, (f) creating the risk of marketplace confusion by virtue of its own conduct; and (e) suppressing evidence, including properly served discovery ordered to be produced, does not satisfy Plaintiff's legal burden of proof. *See Yuga Labs, Inc. v. Ripps*, Case No. CV 22-4355-JFW(JEMx), 2023 WL 7089922, at *10 (C.D. Cal. Oct. 25, 2023) (while totality of the circumstances are used to determine an award of profits, "defendant's mental state is 'a highly important consideration . . . .'").

5.  <u>Plaintiff's Supporting Evidence:</u> Defendants have produced financials for the period in question May 31, 2024 through the present, and, given that the entirety off their business is built off the confusion, we only need to prove profits which can be disgorged. Thus, the financials as well as Koren testimony and testimony of franchisees as well; as correspondence regarding costs of goods sold as well as the testimony of the CFO of Shakley's will

1    establish damage. No expert is needed for arithmetic. To

2    the contrary, it is Defendant who bears a heavier burden of

3    establishing what costs or expenses "actually contributed

4    to the sale of the infringing products." *Monster Energy Co.*

5    *v. Integrated Supply Network, LLC*, 533 F. Supp. 3d 928,

6    938 (C.D. Cal. 2021)

7    6.    Defendant's Supporting Evidence: documents and

8    testimony including and related to (1) the parties' meeting

9    of the minds and partnership agreement to co-own Potato

10    Corner in the United States, where Defendants promised to

11    contribute services and Plaintiff promised to vest IP rights

12    in the partnership as supported by written agreements and

13    verified pleadings; (2) the JVA and related agreements

14    vesting licensing and quality control in PCJV USA, LLC's

15    President, approval of franchise agreements, including as

16    disclosed in FDDs, in PCJV USA, LLC's Management,

17    and authority to manage Potato Corner in the United States

18    in PCJV USA, LLC's executive officers (not Cinco

19    Corporation); (3) absent a license agreement, PCJV USA,

20    LLC's use of the U.S. Potato Corner marks inured to PCJV

21    USA, LLC's benefit; (4) Defendants' continuing

22    authorization to use the U.S. Potato Corner trademarks

23    under a lifetime, 50-year, or non-terminable-at-will

24    license, including for the reasons stated herein; (5)

25    Defendants' objection to Plaintiff's announced plans to

26    acquire Cinco Corporation's assets and liabilities, but

27    representations to Defendants that they would be bound by

28    a settlement with Cinco resolving licensing issues; (6) the

parties' tolling agreement, including to continue discussions after Defendants separately settled with Cinco Corporation; (7) Plaintiff and Cinco Corporation's bad faith conspiracy to initiate this lawsuit 3 days after the settlement with Plaintiff's assignor to circumvent a state court injunction rather than go to trial in state court or settle with Defendants; (8) Plaintiff's own misconduct creating the risk of marketplace confusion; (9) no consumer survey evidence or evidence of marketplace confusion attributable to trademark infringement or unfair competition that is the subject of this case; (10) Plaintiff's suppression of evidence, including properly served discovery ordered to be produced; (11) no evidence of unjust enrichment, including no net profits or net profits attributable to the alleged infringement at issue, to disgorge; and (12) no evidence regarding individual Defendants' responsibility

3)    **Claim 4: Contributory Trademark Infringement Against All Defendants (Against Guy Koren, PCJV USA, LL, PCI Trading, LLC, Potato Corner LA  Group, LLC; GK Capital,  LLC or NKM Capital Group, LLC)**

a.    Element No. 1: inducement of any Defendant to infringe one of the Marks (affirmative steps or actions taken to encourage infringement, exercising control over means oof infringement, offering tools to assist in infringement, instructing how to infringe).

1.    This element is disputed.

2.    Nature of Dispute: Legal and Factual

3. <u>Plaintiff's Position Statement:</u> it is assumed that the primary dispute by Defendants here will be as to the underlying question of infringement (ownership, license, etc.). But if it is true that Plaintiff owned the Marks, and had exclusive right to control them and Defendants lost their right on May 31, 2024, the question is fairly on the table whether (1) PCJV, the former licensees of the brand, engaged in post termination contribution or inducement to its sublicensees whose rights had also been terminated by giving them aid and comfort (and collecting money from them) after termination,, or (2) the supply chain affiliate PCI Trading's sales of infringing cups etc. was constituted contribution or inducement, or (3) whether Koren, the owner or operator oof them all was also responsible for contribution or inducement. 115 USC 1114; *Fonovisa, Inc. v. Cherry Auction, Inc.*, 76 F.3d 259, 264–65 (9th Cir. 1996) (applied to host of swap meets when host know infringement was occurring); *citing Inwood Lab'ys, Inc. v. Ives Lab'ys, Inc.*, 456 U.S. 844, 854 (1982); *see Inwood Lab'ys, Inc.*, 456 U.S. at 844, 854 (1982) (explaining that when a party "suppl[ies]] its product to one whom it knows or has reason to know is engaging in trademark infringement, the manufacturer or distributor is contributorily responsible for any harm done as a result of the deceit").

4. <u>Defendants' Position Statement:</u> To establish liability for contributory infringement, Plaintiff bears the burden of proving the defendant had intent to cause direct

infringement or prior knowledge of direct infringement. *See Perfect 10, Inc. v. Visa Intern. Service Ass'n,* 494 F.3d 788, 807 (9th Cir. 2007). That is not the same thing as having knowledge of a bona fide dispute over trademark ownership or authorization to use a trademark. Similarly, officer or director liability includes a knowledge requirement to establish liability. *SinCo Technologies Pte Ltd. v. SinCo Electronics,* Case No. 17-cv-05517-EMC, 2018 WL 10638468, at *1 (N.D. Cal. Jan. 5, 2018).

5. <u>Plaintiff's Supporting Evidence:</u> Testimony and statements of Koren, franchisees, and SPAVI executives after termination; correspondence with franchisees by SPAVI; Franchise agreements and FDDs.

6. <u>Defendants' Supporting Evidence:</u> documents and testimony including and related to (1) the evidentiary record establishing a bona fide trademark dispute over ownership and authorization to use the U.S. Potato Corner trademarks; (2) the alleged contributory infringing Defendants did not have the intent to cause infringement or knowledge that direct infringement was occurring; (3) the alleged contributory infringing Defendants are not similarly situated, including because some our downstream users (who contributing nothing upstream) and one is simply a supplier of publicly available materials; (4) Mr. Koren, as an officer or member of Defendant entities, also had no intent to confuse consumers, had no intent to trade off the goodwill he did not own or have authorization to

use, and had good faith reasons to believe that trademark infringement was not occurring.

    b.   <u>Element No. 2:</u> Material contribution

        1.   This element is disputed.

        2.   Nature of Dispute: Factual

        3.   <u>Plaintiff's Supporting Evidence:</u> testimony of Koren, his staff, franchisees, and their communications

        4.   <u>Defendants' Supporting Evidence:</u> documents and testimony including and related to whether the contribution of each Defendant was material to the alleged infringement and was provided with the requisite knowledge.

    c.   <u>Element No. 3:</u> Injury to Plaintiff.

        1.   This element is disputed

        2.   <u>Nature of Dispute:</u> Legal and Factual

        3.   <u>Plaintiff's Position Statement:</u> The standard to be followed is set forth in 15 USC 1117 which only requires this Court's approval in  equity to proceed with money damages. The Courts have contrary to Defendant's apparent position removed the requirement of willfulness to obtain disgorgement., *Romag Fasteners, Inc. v. Fossil, Inc.*, —— U.S. ——, 140 S. Ct. 1492, 1495-97, 206 L.Ed.2d 672 (2020) (holding willfulness is not a precondition to disgorgement of profits under the Lanham Act). (Dkt. No. 594.)  Defendants ignore the difference between normal infringement and this case, the holdover licensee, where the standard for likelihood of confusion is lowered, and even sometimes presumed, and irreparable harm is also presumed. The Lanham Act allows Defendants to raise the

1            other arguments to rebut the presumption of irreparable

2            harm, but the standard as applied here allows for

3            disgorgement.

4       4.     <u>PCJV USA Parties' Position Statement:</u> Defendants

5            incorporate their positions legal positions above regarding

6            liability and damages for direct infringement and liability

7            for contributory infringement. In addition, damages for

8            contributory infringement should not be awarded upstream

9       5.     <u>Plaintiff's Supporting Evidence:</u> Defendants have

10            produced financials for the period in question May 31,

11            2024 through the present, and, given that the entirety of

12            their  business is built off the confusion, we only need to

13            prove profits which can be disgorged. Thus, the financials

14            as well as Koren testimony and testimony of franchisees as

15            well; as correspondence regarding costs of  goods sold as

16            well as the testimony of the CFO of Shakley's will

17            establish damage. No expert is needed for arithmetic. To

18            the contrary, it is Defendant who bears a heavier burden of

19            establishing what costs or expenses "actually contributed

20            to the sale of the infringing products." *Monster Energy Co.*

21            *v. Integrated Supply Network, LLC*, 533 F. Supp. 3d 928,

22            938 (C.D. Cal. 2021)

23       6.     <u>Defendants' Supporting Evidence:</u> Defendants incorporate

24            their above record

25    **4)**     <u>**Claim 5: Contributory False Designation of Origin Against Guy**</u>

26            <u>**Koren, PCJV USA, LL, PCI Trading, LLC, Potato Corner LA**</u>

27            <u>**Group, LLC; GK Capital,  LLC or NKM Capital Group, LLC**</u>

28

a.   <u>Element No. 1:</u> inducement of any Defendant to make use  a false designation, such as a word, term, name, device, or a combination thereof, or a false designation of origin (affirmative steps or actions taken to encourage infringement, exercising control over means oof infringement, offering tools to assist in infringement, instructing how to infringe).

ii.   This element is disputed.

iii.   Nature of Dispute: Legal and Factual

iv.   <u>Plaintiff's Position Statement:</u> it is assumed that the primary dispute by  Defendants here will be as to the underlying question  of infringement (ownership, license, etc.). But if it is true that Plaintiff owned the Marks, and had exclusive right to control them and Defendants lost their right on May 31, 2024, the question is fairly on the table whether (1) PCJV, the former licensees of the brand, engaged in post termination contribution  or inducement to its sublicensees whose rights had also been terminated  by giving them aid and comfort (and collecting money from them) after  termination,, or (2) the supply chain affiliate PCI Trading's sales of infringing cups etc. was constituted contribution  or inducement, or (3) whether  Koren, the owner or operator oof them all was also responsible  for contribution  or inducement. 115 USC 1114; *Fonovisa, Inc. v. Cherry Auction, Inc*., 76 F.3d 259, 264–65 (9th Cir. 1996) (applied to host of swap meets when host know  infringement was occurring); *citing Inwood Lab'ys, Inc. v. Ives Lab'ys, Inc*., 456 U.S. 844, 854  (1982); *see Inwood Lab'ys, Inc*., 456 U.S. at 844, 854 (1982) (explaining that when a party "suppl[ies]] its product to one whom it

1    knows or has reason to know is engaging in trademark

2    infringement, the manufacturer or distributor is contributorily

3    responsible for any harm done as a result of the deceit").

4    v.    Defendants' Position Statement: To establish liability for

5    contributory infringement, Plaintiff bears the burden of

6    proving the defendant had intent to cause direct infringement

7    or prior knowledge of direct infringement. *See Perfect 10, Inc.*

8    *v. Visa Intern. Service Ass'n*, 494 F.3d 788, 807 (9th Cir.

9    2007). That is not the same thing as having knowledge of a

10    *bona fide* dispute over trademark ownership or authorization to

11    use a trademark. Similarly, officer or director liability includes

12    a knowledge requirement to establish liability. *SinCo*

13    *Technologies Pte Ltd. v. SinCo Electronics*, Case No. 17-cv-

14    05517-EMC, 2018 WL 10638468, at *1 (N.D. Cal. Jan. 5,

15    2018).

16    vi.    Plaintiff's Supporting Evidence: Testimony and

17    statements of Koren, franchisees, and SPAVI executives after

18    termination; correspondence with franchisees by SPAVI;

19    Franchise agreements and FDDs.

20    vii.    Defendants' Supporting Evidence: documents and

21    testimony including and related to (1) the evidentiary record

22    establishing a bona fide trademark dispute over ownership and

23    authorization to use the U.S. Potato Corner trademarks; (2) the

24    alleged contributory infringing Defendants did not have the

25    intent to cause infringement or knowledge that direct

26    infringement was occurring; (3) the alleged contributory

27    infringing Defendants are not similarly situated, including

28    because some our downstream users (who contributing nothing

1    upstream) and one is simply a supplier of publicly available

2    materials; (4) Mr. Koren, as an officer or member of

3    Defendant entities, also had no intent to confuse consumers,

4    had no intent to trade off the goodwill he did not own or have

5    authorization to use, and had good faith reasons to believe that

6    trademark infringement was not occurring.

7    b. Element No. 2: Material contribution

8    i. This element is disputed.

9    ii.    Nature of Dispute: Factual

10    iii.    Plaintiff's Supporting Evidence: testimony of Koren, his

11    staff, franchisees, and their communications

12    iv.    Defendants' Supporting Evidence: documents and

13    testimony including and related to whether the contribution of

14    each Defendant was material to the alleged infringement and

15    was provided with the requisite knowledge.

16    c. Element No. 3: Injury to Plaintiff.

17    i. This element is disputed.

18    ii.    Nature of Dispute: Legal and factual

19    ii. Plaintiff's Position Statement: The standard to be followed is

20    set forth in 15 USC 1117 which only requires this Court's

21    approval in  equity to proceed with money damages. The

22    Courts have contrary to Defendant's apparent position

23    removed the requirement of willfulness to obtain

24    disgorgement., *Romag Fasteners, Inc. v. Fossil, Inc.*, ─── U.S.

25    ───, 140 S. Ct. 1492, 1495-97, 206 L.Ed.2d 672

26    (2020) (holding willfulness is not a precondition to

27    disgorgement of profits under the Lanham Act). (Dkt. No.

28    594.)  Defendants ignore the difference between normal

infringement and this case, the holdover licensee,  where the standard for likelihood of confusion is lowered, and even sometimes presumed, and irreparable harm is also presumed. The Lanham Act allows Defendants to raise the other arguments to rebut the presumption of irreparable harm, but the standard as applied here allows for disgorgement,

iii.    <u>PCJV USA Parties' Position Statement:</u> Defendants incorporate their legal positions above regarding liability and damages for direct infringement and liability for contributory infringement. In addition, damages for contributory infringement should not be awarded upstream.

iv.    <u>Plaintiff's Supporting Evidence:</u> Defendants have produced financials for the period in question May 31, 2024 through the present, and, given that the entirety off their business is built off the confusion, we only need to prove profits which can be disgorged. Thus, the financials as well as Koren testimony and testimony of franchisees as well; as correspondence regarding costs of  goods sold as well as the testimony of the CFO of Shakley's will establish damage. No expert is needed for arithmetic. To  the contrary, it is Defendant who bears a heavier burden of establishing what costs or expenses "actually contributed to the sale of the infringing products." *Monster Energy Co. v. Integrated Supply Network, LLC*, 533 F. Supp. 3d 928, 938 (C.D. Cal. 2021)

iii. <u>Defendants' Supporting Evidence:</u> Defendants incorporate their above record.

**2)  <u>Claim 6: Common Law Trademark Infringement Against All</u>**

**Defendants (Against Guy Koren, PCJV USA, LL, PCI Trading, LLC, Potato Corner LA  Group, LLC; GK Capital,  LLC or NKM Capital Group, LLC).**

    a. <u>Element No. 1:</u> the Word Mark, Slogan Mark, and/or the Logo Mark (all collectively, the "Marks") are valid and protectible trademarks:

        i. This element is undisputed

    b. <u>Element No. 2:</u> Plaintiff owns the Word Mark, Slogan Mark, and/or the Logo Mark

        i. This element is disputed.

        ii.    <u>Nature of Dispute:</u> Factual and Legal.

        iii.    <u>Plaintiff's Legal Position:</u> Defendants do not dispute that the registrations for all three Marks (Trial Exhibit Nos. 1, 3, and 5) identify Cinco as the registrant and the first to use each of the three Marks, nor do Defendants dispute that the Deeds of Assignment attached to the notices filed with the USPTO (Trial Exhibit Nos. 4 and 6) confirm that, unequivocally  and without exception, the entirety of these Marks were sold and assigned to Plaintiff, along with all the goodwill arising out of or associated with the Marks. Defendants also do not dispute the testimony of Seller (Cinco) and Buyer (SPAVI) that the Deeds are accurate in every way, that the sale and assignments were comprehensive, without carve outs, and fully consummated. Instead, Defendants take internally inconsistent positions that are contradicted by various legal doctrine, including the ones discussed *supra*: Licensee Estoppel, the Lanham Act provisions rendering Defendants' positions contrary to federal law, Law of the Case, that the Authorities

1    cited by Defendants do not support their position, including

2    *Sengoku*, the Merger Doctrine, and Defendants' standing.

3        ii.   Defendants' Position Statement: Defendants incorporate their

4              legal positions above

5        iii.  Plaintiff's Supporting Evidence: Notarized Deeds signed by

6              seller and buyer; USPTO filings including Registrations and

7              Assignments, testimony of Gregorio (Plaintiff's CEO),

8              Magsaysay (Cinco's CEO), Koren, Ybanez (Plaintiff's General

9              Counsel), FDDs, Franchise Agreements.

10       iv.   Defendants' Supporting Evidence: Defendants incorporate their

11             above factual positions

12    c.   Element No. 3: Defendants used Word Mark, Slogan Mark, and/or the

13         Logo Mark in interstate commerce after May 31, 2024:

14        i.    This element is undisputed.

15    d.   Element No. 4: Defendants' use of the Word Mark, Slogan Mark,

16         and/or the Logo Mark in interstate commerce after May 31, 2024, was

17         without the consent of Plaintiff and in a manner likely to cause

18         confusion among ordinary consumers as to the source, sponsorship,

19         affiliation, or approval of the services.

20        ii.   This element is disputed.

21        iii.  Nature of Dispute: Legal and Factual

22        iv.   Plaintiff's Legal Position: As for absence of consent, given the

23             absence of any ownership  rights, Defendants must locate

24             some rights as a licensee of the owner (SPAVI). Defendants

25             offer two documents proffered as agreements that bind Cinco

26             to a perpetual license. Neither work as a matter of law. First,

27             they offer the unsigned October 10, 2010, document

28             containing terms for a Master License Agreement (Trial

1   Exhibit No. 11), which this Court (and the Ninth Circuit) have

2   reviewed. Both have interpreted it as a matter of law,

3   concluding that it is an unsigned draft (as Koren's testimony

4   has confirmed) and illusory because the licensor is given no

5   consideration for this purported agreement. The unsigned

6   document cannot, as a matter of law, have bound Cinco, even

7   through implied contract law, because Cinco did not do

8   anything in furtherance of that document to imply its assent.

9   Moreover, multiple times after October 10, 2010, documents

10  were signed stating that Cinco would be expecting a 30%

11  royalty recovery. Second, Plaintiffs point to § 3(g) of an

12  Amended Joint Venture Agreement (and its predecessor the

13  Joint Venture Agreement) – Trial Exhibit Nos. 8 and 9 – which

14  this Court has already interpreted to constitute an agreement to

15  agree, in the future, with Cinco on a license agreement. As the

16  Ninth Circuit said in affirming this conclusion, "the AJVA

17  contained an agreement to enter a *future* Master License

18  Agreement, not a "perpetual license" like PCJV claims."

19  *Shakeys Pizza Asia Ventures, Inc. v. PCJV USA, LLC*, No. 24-

20  7084, 2025 WL 1431270, at *1 (9th Cir. May 19, 2025) (citing

21  *First Nat'l Mortg. Co. v. Fed. Realty Inv. Tr.*, 631 F.3d 1058,

22  1065 (9th Cir. 2011) ("[A]n 'agreement to agree,' without

23  more, is not a binding contract."). This interpretation of the

24  AJVA and  JVA is a legal conclusion, which, as affirmed  by

25  the Ninth Circuit are legal conclusions, and, as such,  these are

26  pure conclusions of law, which means: **this Court's**

27  **conclusion that § 3(g) of the JVA and AJVA are**

28  **agreements to agree and do not  bind Cinco  to a**

1  **"perpetual license" are law of the case and cannot be**

2  **disturbed or challenged at trial**. This theory based on

3  interpretation of a contract has been considered and rejected by

4  this Court and the Ninth Circuit in this case, and because it is

5  a "pure issue[] of law, however, [it is] binding" on Defendants

6  under law of the case. *Ranchers Cattlemen Action Legal Fund*

7  *United Stockgrowers of Am. v. U.S. Dep't of Agr.*, 499 F.3d

8  1108, 1114 (9th Cir. 2007); s*ee, e.g. Arizona v. California*, 460

9  U.S. 605, 618 (1983) ((citing the rule as being "when a court

10  decides upon a rule of law, that decision should continue to

11  govern the same issues in subsequent stages in the same

12  case"). Defendants now trot out other theories such the fact

13  that the JVA and prior Operating Agreement are still

14  somewhat live under a theory of partial integration, however,

15  the following point prevails over each of these contortions:

16  Defendants can point to no agreement or document, or acct, or

17  statement, binding Cinco to a perpetual, irrevocable, royalty

18  free licensee of its Marks. As such, in the absence of any

19  written agreement, or documentation of any license terms, the

20  sole license that existed as of May 31, 2024, was implied and

21  terminable at will *See Pogrebnoy v. Russian Newspaper*

22  *Distribution, Inc.*, 289 F. Supp. 3d 1061, 1070 (C.D. Cal.

23  2017), *aff'd*, 742 F. App'x 291 (9th Cir. 2018) ("[A]n implied

24  license, like any other contract, is terminable at the will of

25  either party if it is not for a specified term."). One final flaw

26  exists in the attempt to bind Cinco to the AJVA, and that is

27  one of issue preclusion in favor of Plaintiffs. As evidenced by

28  Plaintiff's own Third Amended Complaint (verified) in the

1  Prior Governance Action, the entire pleading is based on the
2  theory that -- and it sought judgment concluding that -- Cinco
3  is an alter ego of the entity that was a 60% member of PCJV.
4  (*See* Trial Exhibit No. 1421 p. 7:3-14.) Such allegations,
5  having been dismissed, with prejudice, by Koren, re4nder
6  thee accusations extinguished, and, as such, Defendants are
7  precluded from alleging them ever again.

8  Regarding likelihood of confusion, which may be presumed,
9  and the jury may be so instructed "[w]here,' as here, "a
10  licensee persists in the unauthorized use of a licensor's
11  trademark, courts have found that the continued use alone
12  establishes a likelihood of consumer confusion." *Robert Trent*
13  *Jones II, Inc. v. GFSI, Inc*., 537 F. Supp. 2d 1061, 1065 (N.D.
14  Cal. 2008) (citing and quoting *Sun Microsystems v. Microsoft*
15  *Corp.,* 999 F.Supp. 1301, 1311 (N.D.Cal.1998) (citing *Paisa,*
16  *Inc. v. N & G Auto, Inc.,* 928 F.Supp. 1009, 1012 n. 4
17  (C.D.Cal.1996); *Hollywood Athletic Club,* 938 F.Supp. at 614–
18  15 (C.D.Cal.1996)). The Sixth Circuit's analysis in Max Rack,
19  Inc. v. Core Health & Fitness, LLC, 40 F.4th 454, 464 (6th Cir.
20  2022) is instructive:

21
22  "A separate body of law has developed for this
   distinct claim that a holdover licensee has
23  continued to use a licensor's mark after their
   agreement expired. *See* 4 McCarthy, *supra*, §
24  25:31 (citing cases). In this context, courts have
   jettisoned the usual totality-of-the-circumstances
25  test in favor of a more categorical rule: "proof of
   continued, unauthorized use of an original
26  trademark by one whose license to use the
   trademark had been terminated is sufficient to
27  establish 'likelihood of confusion.' " *U.S.*
28

---

45

*Structures, Inc. v. J.P. Structures, Inc.*, 130 F.3d 1185, 1190 (6th Cir. 1997); *ITT Indus., Inc. v. Wastecorp. Inc.*, 87 F. App'x 287, 293 (3d Cir. 2004); *Gorenstein Enters., Inc. v. Quality Care-USA, Inc.*, 874 F.2d 431, 435 (7th Cir. 1989); *Burger King Corp. v. Mason*, 710 F.2d 1480, 1492–93 (11th Cir. 1983); *Pro. Golfers Ass'n of Am. v. Bankers Life & Cas. Co.*, 514 F.2d 665, 670 (5th Cir. 1975); *L & L Wings, Inc. v. Marco-Destin, Inc.*, 676 F. Supp. 2d 179, 188 (S.D.N.Y. 2009). This rule makes good sense when a holdover licensee blatantly infringes the licensor's mark by using that mark in the same way as it did before the agreement expired. Without any need to tick through factors, it should be obvious that consumers will believe, for example, that a pizza restaurant remains affiliated with the "Little Caesars" chain when a terminated franchisee continues to operate the pizzeria as a Little Caesars. *See Little Caesar Enters., Inc. v. Miramar Quick Serv. Rest. Corp.*, 2020 WL 4516289, at *3 (6th Cir. 2020) (order)"

Although Plaintiff intends to, and will, adduce proof of the *Sleekcraft* factors, the presumption exists, and it is entitled to stand on this presumption alone.

v. <u>Defendants' Position Statement:</u> Defendants incorporate all their above legal positions.

vi. <u>Plaintiff's Supporting Evidence:</u> Trial Exhibit 29 (May 31, 2024 Termination); photographs of various stores taken from May 31, 2025 through the present; Testimony of Koren; Plaintiff executives Gregorio (Plaiuntiff's CEO), Concepcion (Plaintiff's COO charged with US operations), Tan (Director responsible for international franchising); investigator; Franchisees; Kim Lambert and Barry Kurtz; in addition to the

1    following documents Amended Joint Venture Agreement and

2    Joint Venture Agreement.

3        vii.    Defendants' Supporting Evidence: Defendants

4    incorporate their above factual positions.

5    **3) Claim 9 (from FAC, Dkt. 65): Quantum Meruit Against PCJV**

6        a.  Element No. 1: That Defendant requested, by words or conduct, that

7    Plaintiff provide a license to use the Potato Corner Intellectual

8    Property for the benefit of Defendant PCJV;

9        i.   This element is disputed.

10       ii.  Nature of Dispute: Legal and Factual

11       iii. Plaintiff's Position Statement: Defendants' issues are factual and

12    not legal.

13       iv.  Defendants' Position Statement: *Quantum meruit* is an implied

14    contract (or quasi-contract) claim stemming from requested

15    services "under which a plaintiff who has rendered services

16    benefiting the defendant may recover the reasonable value of

17    those services when necessary to prevent unjust enrichment of

18    the defendant." *In re De Laurentiis Ent. Grp. Inc.*, 963 F.2d

19    1269, 1272 (9th Cir. 1992). Plaintiff will be unable to establish

20    liability for *quantum meruit* for three reasons:  Defendants (1)

21    "requested" no (2) "services" from Plaintiff for which Plaintiff

22    had a (3) "reasonable expectation" of payment. *See McLeod v.*

23    *Zero Gravity Mgmt.,* 2:22-CV-01547-FWS-AGR, 2024 WL

24    3304527, at *10 (C.D. Cal. Jan. 8, 2024); *see also Corsini v.*

25    *Canyon Equity, LLC,* C-10-2061-JL, 2011 WL13247447, at *6

26    (N.D. Cal, May 23, 2011). Plaintiff's quantum meruit cause of

27    action does not contain critical elements of the cause of action.

28    *See* CACI No. 317.

v.   <u>Plaintiff's Supporting Evidence:</u> Course of Dealings between Defendants and SPAVI,. Specifically, Defendants have no evidence of a written license to use SPAVI's Potato Corner Intellectual Property, and, as such, its rights (that it has sold to its franchisees) derive from what is, at best, a terminable at will, fully revocable license because Defendants were nonetheless operating Potato Corner locations, as if a written license existed. *See Pogrebnoy v. Russian Newspaper Distribution, Inc.,* 289 F. Supp. 3d 1061, 1070 (C.D. Cal. 2017), aff'd, 742 F. App'x 291 (9th Cir. 2018) ("[A]n implied license, like any other contract, is terminable at the will of either party if it is not for a specified term."). After SPAVI's acquisition of the Potato Corner brand, it became the licensor of the Potato Corner Intellectual Property. Between December of 2021 through 2024, the months immediately preceding this action, SPAVI engaged in a good faith and exhaustive attempt to negotiate the terms of a written license with PCJV. Defendant Guy Koren engaged and participated in this negotiation; Testimony of Koren, Plaintiff executives Gregorio (Plaiuntiff's CEO), Concepcion (Plaintiff's COO charged with US operations), Tan (Director responsible for international franchising), Magsaysay (Cinco's CEO); Emails and correspondence with SPAVI, Koren, and PCJV relating to negotiations of a licensing agreement for the use of the Potato Corner Intellectual Property; Amended Joint Venture Agreement; Franchise Agreements; FDDs

vi.   <u>Defendants' Supporting Evidence:</u> (1) There was no request for services; PCJV USA, LLC's objected to Plaintiff's transaction with its former fiduciary and joint venture partner Cinco

1   Corporation and asserted its pre-existing rights to use and

2   control Potato Corner in the United States; it did not "request"

3   any services from Plaintiff; rather, PCJV USA, LLC's became

4   subject to an involuntary interloper in breach of Cinco

5   Corporation's fiduciary and contractual obligations; (2) No

6   "services" were provided by Plaintiff to PCJV USA, LLC's

7   within the meaning of *quantum meruit* even according to

8   Plaintiff's own authority cited in its Memorandum of

9   Contentions of Law and Fact (Dkt. No. 199, citing *Cosmonova,*

10  *LLC v. BioFilm*, Inc., 763 F. Supp. 3d 1157 (S.D. Cal. 2025)

11  (dismissing quantum meruit claim)). Rather, Plaintiff allegedly

12  provided an implied "at-will" license allegedly extinguishing

13  PCJV USA, LLC's long-term right to use and/or to a long-term

14  license, which was beneficial to Plaintiff, indeed far more

15  beneficial to Plaintiff, and thus not a "service" within the

16  meaning of *quantum meruit. Cosmonova, LLC*, 763 F. Supp. 3d

17  at 1172. (3) Plaintiff had no reasonable expectation of any

18  royalty payment to Plaintiff for the same reason no royalty is

19  recoverable under the Lanham Act. Plaintiff never paid a royalty

20  to Cinco Corporation, no claim for breach of contract was

21  brought by Cinco Corporation, and Plaintiff cannot put itself

22  into a better situation than its assignor, Cinco Corporation. *See*

23  McCarthy, *supra*, § 18:15 ("'It is elementary ancient law that an

24  assignee never stands in any better position than his

25  assignor....'") (citation omitted). Defendants are simply seeking

26  a windfall or to punish Defendants' exercise of First

27  Amendment rights.

28      a.   <u>Element No. 2</u>: That Plaintiff provided such license to use the Potato

Corner Intellectual Property as requested by Defendant PCJV.

    i.   This element is disputed.

    ii.   Nature of Dispute: Legal and Factual

    iii.   <u>Plaintiff's Position Statement:</u> this is a factual dispute.

    iv.   <u>Defendants' Position Statement:</u> Defendant disputes Element 2 for the same reason they dispute Element 1.

    v.   <u>Plaintiff's Supporting Evidence:</u> Defendants have operated Potato Corner locations that utilize the Potato Corner Intellectual Property through what is, at best, a terminable at will, fully revocable license because Defendants were nonetheless operating Potato Corner locations, as if a written license existed. *See Pogrebnoy v. Russian Newspaper Distribution, Inc.,* 289 F. Supp. 3d 1061, 1070 (C.D. Cal. 2017), aff'd, 742 F. App'x 291 (9th Cir. 2018) ("[A]n implied license, like any other contract, is terminable at the will of either party if it is not for a specified term."). SPAVI has consented to that use until the termination of the license agreement on May 31, 2024; Trial Exhibit 29 (May 31, 2024 Termination); Testimony of Concepcion (Plaintiff's COO charged with US operations), Tan (Director responsible for international franchising), Magsaysay (Cinco's CEO), Koren; Emails and correspondence with SPAVI, Koren, and PCJV relating to negotiations of a licensing agreement for the use of the Potato Corner Intellectual Property; Amended Joint Venture Agreement; Franchise Agreements; FDDs

    vi.   <u>Defendants' Supporting Evidence:</u> Defendant relies upon the same record evidence to dispute both Elements 1 and 2

  b.  <u>Element No. 3:</u> That Defendant has not paid Plaintiff royalties or any

other compensation to Plaintiff for the use of the Potato Corner Intellectual Property

    i. This element is disputed.

    ii.    Nature of Dispute: Legal and Factual

    iii.    <u>Plaintiff's Position Statement:</u> Plaintiff does not know what the issue is here.

    iv.    <u>Defendants' Position Statement:</u> Defendant disputes Element 3 for the same reason they dispute Element 1.

    v.    <u>Plaintiff's Supporting Evidence:</u> Financial statements produced by Defendants showing that there have been no royalty fees paid to SPAVI; Testimony of Koren, Plaintiff executives Gregorio (Plaintiff's CEO), Concepcion (Plaintiff's COO charged with US operations), Tan (Director responsible for international franchising), Jose Magsaysay (Cinco's CEO)

    vi.    <u>Defendants' Supporting Evidence:</u> Defendant relies upon the same record evidence to dispute both Elements 1 and 2.

  c.  <u>Element No. 4:</u> The reasonable value for the use of the Potato Corner Intellectual Property that was provided.

    i. This element is disputed.

    ii.    Nature of Dispute: Factual

    v.  <u>Plaintiff's Supporting Evidence:</u> Financial statements produced by Defendants showing that there have been no royalty fees paid to SPAVI; Testimony of Koren, Plaintiff executives Gregorio (Plaintiff's CEO), Concepcion (Plaintiff's COO charged with US operations), Tan (Director responsible for international franchising), Jose Magsaysay (Cinco's CEO); Notarized Deeds signed by seller and buyer; USPTO filings including Registrations and Assignments

iii.     Defendants' Supporting Evidence: The reasonable value
is nominal or $1.00 because the 15-year track record is equal
payment of royalties and service fees (followed by and waiver in
favor of growth). See McCarthy, supra, § 18:15 ("'It is
elementary ancient law that an assignee never stands in any
better position than his assignor….'") (citation omitted).

**4) <u>Claim 10 (from FAC, Dkt. 65): Misappropriation of Trade Secrets</u>**

a. <u>Element No. 1:</u> That SPAVI owned the recipes, ingredients, and
ingredient allocations for its proprietary flavorings, the identities of its
suppliers, and other know-how, procedures, and processes used and
employed at Potato Corner outlets, including outlets owned and/or
operated by Defendants ("Potato Corner Trade Secrets")

   i. This element is disputed.

   ii.     Nature of Dispute: Legal and Factual

   iii.    [If legal dispute] Plaintiff's Position Statement: ]

   iv.    Defendants' Position Statement: As a threshold matter, a
trade secret could only comprise "information, including a
formula, pattern, compilation, program, device, method,
technique, or process." Cal. Civ. Code 3426.1(d). SPAVI has
not identified what "information" it claims Defendants
misappropriated. "Flavors" is not information, and packaging
is an object. Thus, SPAVI cannot carry its burden to "identify
the trade secrets and carry the burden of showing they exist."
*InteliClear, LLC v. ETC Global Holdings, Inc.*, 978 F.3d 653,
658. A flavor is an idea and catch-all phrase, which is not
protected. *Id.*; *Silvaco Data Systems v. Intel Corp.*, 184 Cal.
App. 4th 210, 220 (2010). Moreover, the plaintiff must "own"

1    the trade secret—meaning the plaintiff either has title to the

2    secret or has knowledge of the know how and licenses it with a

3    confidentiality obligation. *See Sinclair v. Aquarius*

4    *Electronics, Inc.,* 42 Cal.App.3d 216, 225-228 (1974) (trade

5    secret licensing involves sharing sensitive, undisclosed

6    information). A conclusory assignment from a prior reseller

7    with no knowledge of the trade secret does not establish the

8    required chain of title. *Memry Corp. v. Kentucky Oil*

9    *Technology, N.V.*, No. C-04-03843 RMW, 2006 WL 3734384,

10   at *5 (N.D. Cal. 2006). Here, there is no evidence of the

11   existence or ownership of trade secret information

12   v.    Plaintiff's Supporting Evidence: SPAVI owns all

13   trademarks, service marks, recipes, trade secrets, and other

14   intellectual property affiliated with the Potato Corner brand.

15   SPAVI acquired all of this intellectual property from the then-

16   owners, Cinco Corporation ("Cinco"), in a deal that closed in

17   2022.  Additional evidence includes: Notarized Deeds signed

18   by seller and buyer; USPTO filings including Registrations

19   and Assignments, testimony of Gregorio (Plaintiff's CEO),

20   Magsaysay (Cinco's CEO), Tan (Director responsible for

21   international franchising),

22   vi.    Defendants' Supporting Evidence: the following category,

23   which is defined above, captures the key phase and supporting

24   evidence: SPAVI Parties' Tortious Conduct. Among other

25   things, Cinco Corporation's consent to reverse engineering of

26   spices means that Plaintiff's predecessor did not know the

27   alleged secret, did not own or have a trade secret license, and

28   did not assign one to Plaintiff.

1    b. <u>Element No. 2:</u> That these Potato Corner Trade Secrets were a secret at

2   the time of the misappropriation

3     i. This element is disputed

4     ii.  Nature of Dispute: factual

5     iii.  <u>Plaintiff's Supporting Evidence:</u> The Potato Corner brand

6      is identifiable by its preparation of fries, which uses seven

7      proprietary flavorings sold to SPAVI by one single supplier,

8      the identity of which is confidential and not publicly known.

9      The ingredients are not known outside the Potato Corner

10     family, and the specific recipe (and proportions of each

11     ingredient) are also kept secret. SPAVI maintains and benefits

12     from the secrecy of the recipes and ingredient allocation of

13     each flavoring and requires its supplier to protect that secrecy.

14     The only persons with access to the flavoring packets

15     delivered from the supplier (with ingredients listed but not

16     quantities and proportions) are those bound by confidentiality

17     and secrecy in favor. Anyone with access to the flavoring

18     packages and ingredients is prohibited from using them for a

19     purpose other than for the Potato Corner brand's benefit and

20     may not misappropriate or take for themselves any of the

21     proprietary information embodied in those packets. Additional

22     evidence includes: The Franchise Disclosure Documents

23     ("FDD"); agreements with the Franchisees; testimony of

24     Gregorio (Plaintiff's CEO), Magsaysay (Cinco's CEO),

25     Ybanez (Plaintiff's General Counsel), Tan (Director

26     responsible for international franchising), and Franchisees

27     iv.  Defendants' Supporting Evidence: supplier agreements;

28     third-party Ferna's sale of spices to the public that SPAVI

1    contends are secret; Cinco Corporation's consent for reverse

2    engineering of spices (meaning it did not know the alleged

3    secret and thus did not have a trade secret license); and

4    SPAVI's lack of evidence demonstrating it maintain secrecy,

5    including but not limited to non-disclosure agreements,

6    physically locked storage of product and recipes alleged to be

7    trade secrets, use of two-factor authentication to access online

8    storage of recipes alleged to be trade secrets, monitoring and

9    securing of employees' and agents' communications and use

10    technology to transfer data to third parties, such as by way of

11    flash drives and cloud storage.

12    c.  <u>Element No. 3:</u> That Defendants improperly acquired, used, or

13    disclosed the Potato Corner Trade Secrets

14        i. This element is disputed

15        ii.    Nature of Dispute: Legal and Factual

16        iii.   Plaintiff's Position Statement:

17        iv.    Defendants' Position Statement: By statute, reverse

18    engineering is fair competition. It follows that, to establish

19    wrongful acquisition, use or disclosure, Plaintiff must establish

20    a legal duty in the acquisition of a product not to reverse

21    engineer it. However, Plaintiff denies and cannot establish any

22    legal duty between Plaintiff and Defendants as it affirmatively

23    alleges they are not fiduciaries, it did not assume obligations

24    and there is no privity of contract establishing any

25    confidentiality obligation between them

26        v.    <u>Plaintiff's Supporting Evidence:</u> Both the JVA and AJVA

27    contain an agreement to agree on a Master License Agreement.

28    However, there was never a written license agreement between

Plaintiff and Defendants. After SPAVI acquired the Potato Corner intellectual property rights, which included the Potato Corner Trade Secrets, SPAVI engaged in a good faith and exhaustive attempt to negotiate the terms of a written license with Defendants. Defendant Guy Koren engaged and participated in this negotiation, but was unwilling to agree to any minimally commercially viable licensing terms. Moreover, Guy Koren refused to, engage in reasonable and good faith negotiation. Instead, he only offered royalty rates and license fees that were more than 90% below what Koren had agreed to be reasonable licensing fees over a decade prior. Koren also repeatedly disengaged from the negotiation process, but still was utilizing the Potato Corner Intellectual Property. Therefore, SPAVI terminated the license agreement as of May 31, 2024. After the termination, Defendants improperly, illegally, and unfairly misappropriated the flavoring packages in their possession, which should have been returned immediately following receipt of the May 31, 2024, Termination Letter, and transferred possession of those proprietary packages of flavorings to a third party for the purpose of reverse-engineering the flavorings directly from the packages themselves. Defendants also developed "Undercover Fries" to roll out the reverse engineered fries to compete with the Potato Corner brand while, at the same time, operating Potato Corner outlets and being in possession of the Potato Corner Intellectual Property, including the Potato Corner Trade Secrets. Additional evidence includes: Franchisee Photographs; Testimony from former franchisees, Concepcion

(Plaintiff's COO charged with US operations), Koren, investigator; the Franchise Agreements; FDDs; and leases, of PCJV over the years.

  i. Defendants' Supporting Evidence: Superseding Joint Venture (2008–2010), Alternative Licensing Arrangements and Ongoing Ratification (2011–2012), Formalization and Modification of the Joint Venture (2012), LA Group Partnership Agreement and Evolving Business Dynamics and Terms (2013–2018), Dispute, Litigation, and State Court Proceedings (2018 and Beyond), and Ongoing Annual Ratification and Regulatory Compliance.

 d. <u>Element No. 4:</u> That SPAVI was harmed and/or Defendants were unjustly enriched by its use of the Potato Corner Trade Secrets

  i. This element is disputed

  ii. Nature of Dispute: Factual

  iii. <u>Plaintiff's Supporting Evidence:</u> The secrecy of the Potato Corner Trade Secrets holds value to SPAVI. The reverse engineering was an unauthorized taking of a trade secret for Defendants own personal benefit to open a competing store "Undercover Fries". Additional evidence includes: Franchisee Photographs; Testimony from former franchisees, Gregorio (Plaintiff's CEO), Concepcion (Plaintiff's COO charged with US operations), Ybanez (Plaintiff's General Counsel), Tan (Director responsible for international franchising), and Koren; the Franchise Agreements; FDDs; leases, of PCJV over the years; and financial statements of Defendants.

  iv. Defendants' Supporting Evidence: Defendants incorporate their above factual positions

 e. <u>Element No. 5:</u> Defendants acquisition, use, or disclosure of the Potato

Corner Trade Secrets was a substantial factor in causing Plaintiff's harm or for Defendants to be unjustly enriched.

    i. This element is disputed

    ii.    Nature of Dispute: Factual

    iii.    <u>Plaintiff's Supporting Evidence:</u> Defendants' misappropriation, wrongful disclosure, and/or repudiation of the existence of SPAVI's above-described trade secrets and proprietary information, SPAVI has been damaged and continues to be damaged. Evidence includes: Defendants financials for the period in question May 31, 2024 through the present; testimony of Gregorio (Plaintiff's CEO), Ybanez (Plaintiff's General Counsel), Concepcion (Plaintiff's COO charged with US operations), Tan (Director responsible for international franchising), Koren, franchisees.

    iv.    Defendants' Supporting Evidence: Defendants incorporate their above factual positions

**I.   <u>Defendants' Affirmative Defenses to be Tried by a Jury</u>**

   **1)  <u>Affirmative Defense No. 1: Waiver (asserted by all Defendants as to all claims alleged by SPAVI against them)</u>**

    a. <u>Element No. 1:</u> Through implied and/or express conduct, SPAVI knowingly waived a valid right, privilege, advantage, or benefit allegedly conferred upon it and its attempt to enforce that right, privilege, advantage, or benefit is thus barred.

    i.  The parties dispute that this element is satisfied.

    ii.  <u>Nature of Dispute:</u> Factual and Legal

    iii.  <u>Defendants' Position Statement:</u> The specific rights or privileges that have been waived include the alleged right to terminate PCJV USA, LLC's right to use the U.S. Potato

1    Corner marks, and the alleged right to claim that the purchased

2    seasoning packages were secret and improperly acquired.

3    Plaintiff's enforcement waiver is based on Plaintiff and

4    Plaintiff's predecessor's knowing acquiescence in PCVJ USA,

5    LLC's use and quality control of Potato Corner in the United

6    States, including before and after Plaintiff's alleged acquisition

7    of the same. *See* McCarthy, *supra*, § 18:15 ("'It is elementary

8    ancient law that an assignee never stands in any better position

9    than his assignor,' thus once an assignee has notice of an

10    injunction against the assignor, it is bound to comply.")

11    (citation omitted). Plaintiff's predecessor acquiesced for years

12    in PCJV USA, LLC's use and quality contract. The fact of

13    Plaintiff's due diligence, negotiations, and alleged transaction

14    with Cinco Corporation before allegedly acquiring the U.S.

15    trademarks put Plaintiff on actual notice of PCJV USA, LLC's

16    use and control rights, and in response Plaintiff represented

17    that it would be bound by any agreements related to the

18    licensing of Potato Corner intellectual property in the United

19    State, and thereafter did not attempt to enforce any alleged

20    contrary right for years and then denied acquiring PCJV USA,

21    LLC's use and quality control rights. As to the commercial

22    sale of packaged seasonings, both Plaintiff and its predecessor

23    have known for years that they did not own them, that they

24    were publicly available for purchase in the market, and that it

25    was not improper to reverse engineer them, and Plaintiff

26    thereafter fulfilled an order and agreed to a fulfill a second

27    order even after the alleged termination.

28    iv.    Plaintiff's Position Statement: Defendants fail  to identify any

specific right or privilege or benefit that was waived. The only relationship between SPAVI and any Defendant, was that of licensor to licensee, pursuant to an implied license. The only right that SPAVI possessed was to terminate or negotiate. It decision to wait to negotiate with Koren is not a waiver oof its right to terminate. Ironically, it is SPAVI that is alleging that Defendants waived their right to claim the AJVA confers perpetual licensing rights, after negotiating the terms of a written license that would confer narrower rights for three years without once taking the position that it did not need a written license – a three year period during which much occurred in reliance on Korenn's assent to the need for a written license.

v. <u>Defendants' Supporting Evidence:</u> The PCJV USA Parties intend to rely on testimony and also on a robust written evidentiary record which demonstrates the parties' mutual intentions and the evolution of their business relationship from the inception through the present. The following categories and chronology capture the key phases and supporting evidence: *1. Superseding Joint Venture (2008–2010)*, including (a) testimony and documentary evidence (i.e., communications and the original NKM Master License Agreement) showing the parties' shared intent to bring Potato Corner to the U.S., (b) exhibits reflecting the transition from a simple license to a joint venture partnership in 2009-2010, including meeting minutes, correspondence, and planning documents from April/May 2010, (c) evidence of the July 2010 formation of PCJV USA, LLC as the master franchisor

for all U.S. and Israel operations, with PCJV granted all rights to use and license the U.S. intellectual property ("Superseding Joint Venture (2008–2010)"); *2. Alternative Licensing Arrangements and Ongoing Ratification (2011–2012)*, including (a) documents and communications (i.e., DLA Piper records, regulatory filings, and Franchise Disclosure Documents) evidencing the parties' reliance on an alternative license agreement in 2011 for Cinco's benefit, which was referenced and ratified in annual FDDs and other regulatory filings, (b) evidence of the 2012 Master Services Agreement, which authorized the LA Group to license the brand for an indefinite duration, further reflecting the parties' mutual understanding and operational structure ("Alternative Licensing Arrangements and Ongoing Ratification (2011–2012)"); *3. Formalization and Modification of the Joint Venture (2012)*, including (a) executed copies of the Joint Venture Agreement (JVA) and the LLC Operating Agreement from August 2012, memorializing the parties' rights, obligations, and governance structure, (b) the First Amendment to the JVA (October 2012), with supporting meeting minutes, documenting specific modifications to the parties' governance protocols only ("Formalization and Modification of the Joint Venture (2012)"); *4. LA Group Partnership Agreement and Evolving Business Dynamics and Terms (2013–2018)*, including (a) the 2013 written partnership agreement entered into by the LA Group, reflecting further refinement of the parties' roles and expectations, (b) communications, board minutes, and negotiation records from

2015–2018 detailing ongoing discussions about operational challenges, restructuring proposals (including Koren's potential acquisition of Cinco shares or the LA Group's acquisition of 100% of PCJV/PCI Trading), and a contemplated new Master License Agreement for Cinco's benefit in exchange for 100% ownership in PCJV/PCI Trading ("LA Group Partnership Agreement and Evolving Business Dynamics and Terms (2013–2018)"); *5. Dispute, Litigation, and State Court Proceedings (2018 and Beyond)*, including (a) evidence of the April 2018 board meeting and resolutions that precipitated the state court litigation, including verified pleadings, declarations, and court filings that set forth the parties' mutual intentions and positions during the dispute, including also, if necessary, settlement negotiation discussions and the settlement and other agreements reached among the parties, (b) additional documents and testimony from the state court proceedings, including verified cross-complaints, declarations, and orders, which further clarify the parties' understanding and course of conduct ("Dispute, Litigation, and State Court Proceedings (2018 and Beyond)"); *6. Ongoing Annual Ratification and Regulatory Compliance*, including FDDs, regulatory filings, and correspondence with state agencies, evidencing the parties' continued mutual recognition of the licensing and franchising structure, as well as the ratification of their agreements and operational practices ("Ongoing Annual Ratification and Regulatory Compliance"); *7. SPAVI Parties' Tortious Conduct*, including a comprehensive body of documents and testimony which

demonstrates the SPAVI parties' coordinated and wrongful actions aimed at appropriating the business operations, supply chain, and goodwill of the Potato Corner USA franchise system for their own benefit, such as (a) testimony and documentary evidence showing SPAVI's deliberate efforts to undermine and take over PCJV's established franchise network in the United States, (b) communications, internal memoranda, and correspondence reflecting SPAVI's outreach to PCJV franchisees, including direct offers of temporary licenses and inducements to sever ties with PCJV, as detailed in termination letters and related notices, (c) evidence of SPAVI's attempts to bypass PCJV's role as franchisor by negotiating directly with third-party franchisees, thereby disrupting existing contractual relationships and causing business uncertainty, (d) documents and witness statements establishing SPAVI's interference with PCI Trading's procurement and distribution of supplies, (e) testimony regarding SPAVI's refusal to supply powders to PCJV and its franchisees following the purported termination of the license, thereby jeopardizing ongoing operations and franchisee livelihoods, (f) evidence of SPAVI's efforts to control or redirect supplier relationships, including attempts to obtain confidential supplier information and to assert exclusive rights over the sourcing and distribution of Potato Corner products in the U.S., (g) testimony and exhibits documenting SPAVI's use of the established Potato Corner USA brand reputation and customer base to promote its own interests, including public statements, regulatory filings, and direct communications with

franchisees and suppliers, (h) rather than simply seeking declaratory relief, SPAVI's own conduct has interjected potential confusion in the marketplace, including the unauthorized use of trademarks, solicitation of franchisees, and dissemination of misleading information regarding the status of the franchise system and intellectual property rights, (i) documents showing SPAVI's attempts to claim ownership of the goodwill and business relationships cultivated by PCJV and PCI Trading over years of operation, despite the absence of any direct contractual relationship with many U.S. franchisees prior to the dispute, (j) evidence of the resulting harm to PCJV, PCI Trading, and the broader franchise network, including lost business opportunities, damaged supplier relationships, and erosion of brand value and goodwill ("SPAVI Parties' Tortious Conduct")..

vi.  Plaintiff's Supporting Evidence: testimony of the negotiators from 2021 through 2024 including Mr. Gregorio and Mr. Tan (from SSPAVI), their correspondence with Koren and his testimony, the NKM  License agreement and the JVA and AJVA (none of which SPAAVI is a party to or conferred rights that SPAVI  is  responsible for. The absence of contractual privity or otherwise is what disproves this affirmative defense.

b.  Causes of Action Barred by this Affirmative Defense: all of SPAVI's causes of action

2)  **Affirmative Defense No. 2: In Pari Delicto (asserted as to all of SPAVI's causes of action).**

a.  Element No. 1: Plaintiff and Defendants have substantially equal

1    economic strength.

2         i.   This element is not in dispute.

3    b.   <u>Element No. 2</u>: Plaintiff is at least equally responsible for the harmful

4    conduct as Defendants.

5         i.   Disputed Status of Element 2: The parties dispute that this

6              element is satisfied.

7        ii.   Nature of Dispute: Legal and Factual

8       iii.   <u>Defendants' Position Statement:</u> Defendants' elements precisely

9              follow CACI No. 3431

10       iv.   <u>Plaintiff's Position Statement:</u> the statement of these  elements

11             omit that to apply "in  pari director" requires that SPPAVI have

12             engaged in  "illegal, fraudulent, or inequitable conduct,"  and

13             that has never  been alleged, nor is there any evidence of this.

14        v.   <u>Defendant's Supporting Evidence:</u> the following category,

15             which is defined above, captures the key phase and supporting

16             evidence: SPAVI Parties' Tortious Conduct.

17       vi.   <u>Plaintiff's Supporting Evidence:</u> testimony of the negotiators

18             from 2021 through 2024 including Mr. Gregorio and Mr. Tan

19             (from SSPAVI), their correspondence with Koren and his

20             testimony, the NKM  License agreement and the JVA and

21             AJVA (none of which SPAAVI is a party to or conferred rights

22             that SPAVI  is  responsible for. The absence of contractual

23             privity or otherwise is what disproves this affirmative defense.

24   c.   <u>Element No. 3</u>: Plaintiff was not held by economic pressure to engage

25   in harmful conduct.

26        i.   Disputed Status of Element 3: The parties dispute that this

27             element is satisfied.

28       ii.   <u>Nature of Dispute:</u> Legal and Factual.

iii.  <u>Defendants' Position Statement:</u> Defendants' elements precisely follow CACI No. 3431.

iv.  <u>Plaintiff's Position Statement:</u> the statement of these elements omit that to apply "in pari dilecto" requires that SPPAVI have engaged in "illegal, fraudulent, or inequitable conduct," and that has never been alleged, nor is there any evidence of this.

v.  <u>Defendant's Supporting Evidence</u>: documents and testimony including and related to (1) PCJV USA, LLC's right to use Potato Corner IP and quality control rights related thereto under PCJV USA, LLC's governing documents, including agreements and related negotiations, franchise disclosure documents and board minutes; (2) the parties' course of conduct regarding PCJV USA, LLC's use and control of U.S. Potato Corner trademarks; (3) the fact of SPAVI's due diligence, negotiations, and alleged acquisition of Cinco Corporation's assets and liabilities; (4) SPAVI's denial of acquiring any IP rights or obligations under PCJV's governing documents; (5) SPAVI's statement that it would be bound by a settlement with Cinco; (6) SPAVI's knowing failure to do anything for years regarding PCJV USA Parties' full exercise of its right to use and quality control; and (7) SPAVI's decision to renege on a purchase order, creating a short-term supply chain problem.

vi.  <u>Plaintiff's Supporting Evidence</u>: testimony of the negotiators from 2021 through 2024 including Mr. Gregorio and Mr. Tan (from SSPAVI), their correspondence with Koren and his testimony, the NKM License agreement and the JVA and AJVA (none of which SPAAVI is a party to or conferred rights that SPAVI is responsible for. The absence of contractual

privity or otherwise is what disproves this affirmative defense.

    d. <u>Causes of Action Barred by this Affirmative Defense</u>: all of SPAVI's causes of action.

**3) <u>Affirmative Defense No. 3: Statute of Limitations. (asserted as to all of SPAVI's causes of action)</u>**

    a. <u>Element No. 1</u>: SPAVI (either independently or as successor-in-interest to Cinco) knew, should have known, or had constructive notice of PCJV USA Parties' alleged infringing conduct over three years before SPAVI filed this action.

        i. The parties dispute that this element is satisfied.

        ii. Nature of Dispute: Factual

        iii. <u>Defendant's Supporting Evidence</u>: the following categories, which are defined above, capture the key phases and supporting evidence: Superseding Joint Venture (2008–2010), Alternative Licensing Arrangements and Ongoing Ratification (2011–2012), Formalization and Modification of the Joint Venture (2012), LA Group Partnership Agreement and Evolving Business Dynamics and Terms (2013–2018), Dispute, Litigation, and State Court Proceedings (2018 and Beyond), Ongoing Annual Ratification and Regulatory Compliance, and SPAVI Parties' Tortious Conduct.

        iv. <u>Plaintiff's Supporting Evidence</u>: Testimony off Mr. Gregorio (CEO of SPAVI) regarding termination of negotiations and sending the Termination Letter hours before this lawsuit was filed, such that, unless the statute of limitations is calculated by way of hours rather than years, this defense is an impossibility.

    b. <u>Causes of Action Barred by this Affirmative Defense</u>: all of SPAVI's causes of action.

**4) Affirmative Defense No. 4: Abandonment through Assignment in Gross.**

    a. Element No. 1: Cinco Corporation assigned U.S. Potato Corner trademarks to SPAVI without the goodwill associated with the trademarks.

        i. The parties dispute that this element is satisfied.

        ii. Nature of Dispute: Factual and Legal

        iii. Defendants' Supporting Legal Position: Trademarks cannot be assigned or transferred apart from the goodwill of the business they represent. *See Federal Treasury Enterprise Sojuzplodoimport v. Spirits Intern. N.V.*, 623 F.3d 61, 68 (2d Cir. 2010); *Glow Industries, Inc. v. Lopez*, 273 F. Supp. 2d 1095, 1108 (C.D. Cal. 2003); *Hallmark Hardwoods, Inv. V. Omni Wood Product, LLC*, 2011 WL 13176098, *15 (C.D. Cal. 2011); *In re Impact Distributors, Inc.*, 260 B.R. 48, 53-55 (S.D. Fla. 2001); *Money Store v. Harriscorp Fin., Inc.*, 689 F.2d 666, 670 (7th Cir. 1982).

        iv. Plaintiff's Supporting Legal Position: this is a factual dispute. Plaintiff argues that it did receive goodwill, while Defendants argue that we did not.

        v. Defendants' Supporting Evidence: the following category, which is defined above, captures the key phase and supporting evidence: SPAVI Parties' Tortious Conduct.

        vi. Plaintiff's Supporting Evidence: the  deeds filed with the USPTO, proof of intent to continue using the marks,, including plans to expand rapidly within the US (testimony of SPAVI executives charged with this expansion, including Mr. Gregorio, Mr. Tann, and Mr. Concepcion, the COO.)

b. <u>Causes of Action Barred by this Affirmative Defense</u>: SPAVI's causes of action for Trademark Infringement (15 U.S.C. § 1114), Trademark Infringement (15 U.S.C. § 1125(a)), False Designation of Origin and Description of Fact (15 U.S.C. § 1125(a)), Contributory Trademark Infringement (15 U.S.C. § 1114), Contributory Trademark and False Designation of Fact (15 U.S.C. § 1125(a)), Common Law Trademark Infringement, Declaratory Relief and Unfair Competition (Bus. & Prof. Code § 17200).

**5) <u>Affirmative Defense No. 5: Abandonment through Naked Licensing.</u>**

a. <u>Element No. 1</u>: SPAVI Parties (including Cinco's) alleged licensed use of U.S. Potato Corner trademarks to PCJV USA Parties.

   i. This element is disputed.

   ii. <u>Nature of the dispute:</u> Legal

   iii. <u>Defendants' Position Statement:</u> Defendants assert both ownership and use rights arising from naked licensing, i.e., authorization to use without adequate control. Ownership arises from Cinco Corporation's naked license because it barred the sale of any trademark rights to Plaintiff, and the PCJV USA Parties acquired all of Cinco Corporation's Interests and rights in Potato Corner in the United States in their settlement and MIPA. Ownership also arises from Plaintiff's naked licensing because PCJV USA, LLC is a senior user of the mark, including because Plaintiff never had any right to control Potato Corner in the United States, did not exercise control over Potato Corner in the United States, and had no grounds to believe PCJV USA, LLC would listen to or take any instruction from SPAVI.

   iv. <u>Plaintiff's Supporting Legal Position:</u> the wording of this element, however, is going to be confusing to a jury. If it is

1    PCJV's position that it was not even a licensee as of May 31,

2    2024, the damages calculation will change considerably.

3    b. <u>Element No. 2</u>: SPAVI Parties (including Cinco) did not exercise

4    adequate control over PCJV USA Parties' use of U.S. Potato Corner

5    trademarks.

6    i.   The parties dispute that this element is satisfied.

7    ii.  Nature of Dispute: Factual and Legal.

8    iii. Defendant's Supporting Legal Position:

9    iv.  <u>Plaintiff's Supporting Legal Position:</u> First, this is an incorrect

10    statement of the law, as the focus is  less so on  the use of the

11    Marks, but more so on the nature and quality of the goods and/or

12    services sold by the licensee. Second, though unsatisfying in its

13    failure to conclusively resolve the debate, in the Ninth Circuit

14    this defense likely requires a showing of clear and convincing

15    evidence. <u>FreecycleSunnyvale v. Freecycle Network</u>, 626 F.3d

16    509, 514 (9th Cir. 2010)

17    v.   <u>Defendants' Supporting Evidence:</u> the following categories,

18    which are defined above, capture the key phases and supporting

19    evidence: Superseding Joint Venture (2008–2010), Alternative

20    Licensing Arrangements and Ongoing Ratification (2011–2012),

21    Formalization and Modification of the Joint Venture (2012), LA

22    Group Partnership Agreement and Evolving Business Dynamics

23    and Terms (2013–2018), Dispute, Litigation, and State Court

24    Proceedings (2018 and Beyond), Ongoing Annual Ratification

25    and Regulatory Compliance, and SPAVI Parties' Tortious

26    Conduct

27    vi.  <u>Plaintiff's Supporting Evidence:</u> Pursuant to the three

28    considerations as to whether naked licensing has occurred, as

1    summarized in F19 Franchising, LLC v. Endo Fitness LL, LLC,

2    No. 2:23-CV-00185-MEMF-JCX, 2023 WL 11950376, at *6–9

3    (C.D. Cal. July 28, 2023), this is the one issue for trial  in which

4    the prior action is actually relevant,, as it sets forth that efforts to

5    exert control, as do the prior correspondence between Cinco and

6    PCJV, and, moreover, the course of dealing prior to termination

7    establishes the attempts to get control.

8    c.  Causes of Action Barred by this Affirmative Defense: SPAVI's causes

9    of action for Trademark Infringement (15 U.S.C. § 1114), Trademark

10   Infringement (15 U.S.C. § 1125(a)), False Designation of Origin and

11   Description of Fact (15 U.S.C. § 1125(a)), Contributory Trademark

12   Infringement (15 U.S.C. § 1114), Contributory Trademark and False

13   Designation of Fact (15 U.S.C. § 1125(a)), Common Law Trademark

14   Infringement, Declaratory Relief and Unfair Competition (Bus. &

15   Prof. Code § 17200).

16   **6) Affirmative Defense No. 6: Senior Use.**

17   a.  Element No. 1: Defendants were the first to use the U.S. Potato Corner

18   trademarks in the United States.

19       i.   The parties dispute that this element is satisfied.

20       ii.  Nature of Dispute: Legal and factual.

21       iii. Defendant's Legal Position Statement: "The first to use a mark

22            in an area is deemed the 'senior' user and has the right to enjoin

23            'junior users from using confusing similar marks in the same

24            industry or market or within the senior user's natural zone of

25            expansion." Optimal Pets, Inc. v. Nutri-Vet, LLC, 877 F. Supp.

26            953, 959 (C.D. Cal. 2012).

27       iv.  Plaintiff's Legal Position Statement: See 15 USC § 1055. This

28            argument is not made in good faith. It is also law of the case.

1           v.   Defendants' Supporting Evidence:

2         vi.   <u>Plaintiff's Supporting Evidence:</u> Registrations and testimony of

3                Koren and  Mr. Magsaysay

4       b.   <u>Element No. 2</u>: SPAVI intends to use the U.S. Potato Corner

5           trademarks in the United States.

6           i.   The parties dispute that this element is satisfied.

7         ii.   Nature of Dispute: Legal and factual.

8        iii.   <u>Defendants' Legal Position Statement:</u> "The first to use a mark

9                in an area is deemed the 'senior' user and has the right to enjoin

10               'junior users from using confusing similar marks in the same

11               industry or market or within the senior user's natural zone of

12               expansion." *Optimal Pets, Inc. v. Nutri-Vet, LLC*, 877 F. Supp.

13               953, 959 (C.D. Cal. 2012).

14         iv.   <u>Plaintiff's Legal Position Statement:</u> Unclear what the dispute is

15               here other than factual.

16          v.   <u>Defendants' Supporting Evidence:</u> the following categories,

17               which are defined above, capture the key phases and supporting

18               evidence: Superseding Joint Venture (2008–2010), Alternative

19               Licensing Arrangements and Ongoing Ratification (2011–2012),

20               Formalization and Modification of the Joint Venture (2012), LA

21               Group Partnership Agreement and Evolving Business Dynamics

22               and Terms (2013–2018), Dispute, Litigation, and State Court

23               Proceedings (2018 and Beyond).

24         vi.   <u>Plaintiff's Supporting Evidence:</u> Testimony of Gregorio, Tan,

25               Concepcion, and Shaikh and Hussein

26       c.   <u>Causes of Action Barred by this Affirmative Defense</u>: SPAVI's causes

27           of action for Trademark Infringement (15 U.S.C. § 1114), Trademark

28           Infringement (15 U.S.C. § 1125(a)), False Designation of Origin and

Description of Fact (15 U.S.C. § 1125(a)), Contributory Trademark Infringement (15 U.S.C. § 1114), Contributory Trademark and False Designation of Fact (15 U.S.C. § 1125(a)), Common Law Trademark Infringement, Declaratory Relief and Unfair Competition (Bus. & Prof. Code § 17200).

**7) Affirmative Defense No. 7: Continuous Prior Use Within Remote Geographic Area.**

    a.  <u>Element No. 1</u>: Defendants continuously used the trademark, without interruption, in the U.S.

        i.  The parties dispute that this element is satisfied.

        ii.  Nature of Dispute: Legal and factual.

        iii.  <u>Defendants' Supporting Legal Position:</u> (1) PCJV USA, LLC's is the senior use under *Sengoku*, including actual first use (restructure in 2009) and lawful first use, *see CreAgri, Inc. v. USANA Health Services, Inc.*, 474 F3d 626, 630 (9th Cir. 2007); (2) but for a license agreement, which SPAVI Parties disavow, PCJV USA, LLC's use inured to its own benefit; (3) Cinco Corporation did not control PCJV USA, LLC's use of the Potato Corner marks; and (4) SPAVI Parties did not control PCJV USA, LLC's use of the Potato Corner marks.

        iv.  <u>Plaintiff's Supporting Legal Position:</u> See 115 USC §1055. This argument is not  made in good faith.

        v.  <u>Defendants' Supporting Evidence:</u> the following categories, which are defined above, capture the key phases and supporting evidence: Superseding Joint Venture (2008–2010), Alternative Licensing Arrangements and Ongoing Ratification (2011–2012), Formalization and Modification of the Joint Venture (2012), LA Group Partnership Agreement and Evolving Business Dynamics

1      and Terms (2013–2018), Dispute, Litigation, and State Court

2      Proceedings (2018 and Beyond).

3      vi.   Plaintiff's Supporting Evidence: All evidence presented in

4      Plaintiffs' case in chief will prove the defense of this.

5   b.   Element No. 2: Defendants began using the trademark without

6      knowledge of SPAVI's prior use elsewhere.

7      i.   Disputed Status of Element 2: The parties dispute that this

8      element is satisfied.

9      ii.   Nature of Dispute: Factual.

10     iii.   Defendants' Supporting Evidence: the following categories,

11     which are defined above, capture the key phases and supporting

12     evidence: Superseding Joint Venture (2008–2010), Alternative

13     Licensing Arrangements and Ongoing Ratification (2011–2012),

14     Formalization and Modification of the Joint Venture (2012), LA

15     Group Partnership Agreement and Evolving Business Dynamics

16     and Terms (2013–2018), Dispute, Litigation, and State Court

17     Proceedings (2018 and Beyond).

18     iv.   Plaintiff's Supporting Evidence: Koren testimony, registrations.

19   c.   Element No. 3: Defendants used the trademark before SPAVI

20     published the registered trademark.

21     i.   Disputed Status of Element 3: The parties dispute that this

22     element is satisfied.

23     ii.   Nature of Dispute: factual.

24     iii.   Defendants' Supporting Evidence: the following categories,

25     which are defined above, capture the key phases and supporting

26     evidence: Superseding Joint Venture (2008–2010), Alternative

27     Licensing Arrangements and Ongoing Ratification (2011–2012),

28     Formalization and Modification of the Joint Venture (2012), LA

Group Partnership Agreement and Evolving Business Dynamics and Terms (2013–2018), Dispute, Litigation, and State Court Proceedings (2018 and Beyond).

  iv. <u>Plaintiff's Supporting Evidence: 15</u> USC § 1055. This argument is not made in good faith

 d. <u>Causes of Action Barred by this Affirmative Defense</u>: SPAVI's causes of action for Trademark Infringement (15 U.S.C. § 1114), Trademark Infringement (15 U.S.C. § 1125(a)), False Designation of Origin and Description of Fact (15 U.S.C. § 1125(a)), Contributory Trademark Infringement (15 U.S.C. § 1114), Contributory Trademark and False Designation of Fact (15 U.S.C. § 1125(a)), Common Law Trademark Infringement, Declaratory Relief and Unfair Competition (Bus. & Prof. Code § 17200).

**8) Affirmative Defense No. 6: Mitigation.**

 a. <u>Element No. 1</u>: SPAVI failed to use reasonable efforts to mitigate alleged damages.

  i. The parties dispute that this element is satisfied.

  ii. Nature of Dispute: Factual.

  iii. <u>Defendants' Supporting Evidence</u>: the following category, which is defined above, captures the key phase and supporting evidence: SPAVI Parties' Tortious Conduct.

  iv. <u>Plaintiff's Supporting Evidence:</u> Plaintiff looks forward to presenting the jury with every effort taken to get PCJV and Koren to either pay for  or stop, finally, using this brand for which he has never paid to benefit from, whether that was negotiating a license, terminating the license  or other attempts.

 b. <u>Element No. 2</u>: the amount by which damages would have been mitigated.

1          i.  The parties dispute that this element is satisfied.

2          ii.  Nature of Dispute: Factual.

3          iii. <u>Defendants' Supporting Evidence:</u> the following category,

4              which is defined above, captures the key phase and supporting

5              evidence: SPAVI Parties' Tortious Conduct.

6          iv. <u>Plaintiff's Supporting Evidence:</u> Testimony of Koren, Gregorio,

7              Victor Tan,  Financial documents.

8      c.  <u>Causes of Action Barred by this Affirmative Defense</u>: All of SPAVI

9          Parties' causes of action (to the extent they seek damages).

10  **9) <u>Affirmative Defense No. 9: Senior Use Trademark Ownership</u>**

11      a.  <u>Element No. 1</u>: At the time of first lawful use, the partnership and JVA

12          evidence co-ownership of the U.S. Potato Corner marks.

13          i.  Disputed Status of Element 1: The parties dispute that this

14              element is satisfied.

15          ii.  Nature of Dispute: Legal and factual.

16          iii. <u>Defendants' Position Statement:</u> The partnership and joint

17              venture agreement between PCJV USA, LLC's LA Group and

18              Cinco Group recognize and support per their terms and

19              conditions that PCJV USA, LLC—the first actual, lawful,

20              continuous and exclusive user of the U.S. Potato Corner

21              marks—owns the U.S. Potato Corner marks (which was the LA

22              Group's long-term security and consideration) at least until the

23              parties executed the contemplated master license agreement

24              (which was the Cinco Group's consideration) that they both

25              agreed to enter into in accordance with their fiduciary and

26              contractual obligations, but which still treated them as joint

27              venture partners. *See Sengoku Works Ltd. v. RMC Int'l, Ltd.*, 96

28              F.3d 1217, 1219 (9th Cir. 1996); *cf. Precision Door Service, Inc.*

*v. Bell,* No. C 02–01108 CW, 2002 WL 655053, at *6 (N.D. Cal April 18, 2002). Given that Plaintiff is disavowing the license agreement—meaning the factual basis upon which PCJV USA, LLC's use might inure to Cinco Corporation's benefit did not happen—the operative coownership agreements favor Defendants or, at minimum, are not dispositive as to ownership. Plaintiff does not get ownership by default because all exclusive users under *Sengoku* are alleged "related companies." Under *Sengoku*, an alleged "related company" who is an exclusive user in the United States, gets to rebut that presumption, especially where, as here, the registrant filed an intent to use application that would only evidence senior use if the exclusive user's first actual and lawful use inured to its benefit. Under the partnership and joint venture agreement, which "vested" in the joint venture and exclusive user complete licensing rights and obligations in the United States, approval of franchise agreements, including as disclosed in FDDs, restrictions on transfer, payment of equal royalties and service fees, and lifetime rights to license and quality control over Potato Corner in the United States, it plainly supports ownership in the joint venture or, at minimum, is not dispositive. The jury is entitled to consider the following five factors used in the Ninth Circuit to help determine ownership as between PCJV USA, LLC, an exclusive domestic user, and Plaintiff, an assignee of a foreign registrant, which plainly demonstrate that PCJV USA, LLC owns the U.S. marks unless and until there was a meeting of the minds on an enforceable license agreement: (1) which party invented and affixed the mark to the product; (2) which party's name appeared with the

trademark; (3) which party maintained the product's quality and uniformity; (4) which party does the public identify with the product and make complaints to; and (5) which party possesses the goodwill associated with the product.

iv. <u>Plaintiff's Position Statement:</u> This misstates the Lanhan act and the rules of priority. *See Yagu*. And *Sengoku,*

v. <u>Defendants' Supporting Evidence:</u> documents and testimony including and related to (1) DLA Piper's notification of Cinco Corporation's unlawful use of Potato Corner in the United States; (2) the State of California's Department of Business Oversight's Order sanctioning PCJV USA, LLC for Cinco Corporation's alleged prior use of Potato Corner in the United States; (3) the superseding and restructure agreement between Guy Koren and Jose Magsaysay vesting ownership of Potato Corner in their partnership; (4) the joint venture agreement vesting co-ownership of Potato Corner in the United States in PCJV USA, LLC; (5) control over Potato Corner in the United States being vested with and exercised by PCJV USA, LLC; (6) Potato Corner USA being affixed to Potato Corner in the United States; (7) consumer association of Potato Corner in the United States with PCJV USA, LLC, to whom complaints, if any, were lodged; (8) PCJV USA, LLC's creation, development and hold over the goodwill of Potato Corner in the United States for over a decade; (9) Cinco's lack of control of Potato Corner in the United States for over a decade; (10) Plaintiff's lack of control of Potato Corner in the United States after it allegedly acquired the U.S. trademarks and before it registered additional Potato

Corner trademarks; and (11) Plaintiff's suppression of evidence relevant to ownership.

    vi. <u>Plaintiff's Supporting Evidence:</u> The registration and Koren's admissions regarding control

  b. <u>Element No. 2 (if Element No. 1 is not dispositive):</u> The following factors demonstrate PCJV USA, LLC owns the U.S. Potato Corner Trademarks:  (1) which party invented and affixed the mark to the product;  (2) which party's name appeared with the trademark; (3) which party maintained the product's quality and uniformity; (4) which party does the public identify with the product and make complaints to; and (5) which party possesses the goodwill associated with the product.

    i. Disputed Status of Element 3: The parties dispute that this element is satisfied.

    ii. <u>Nature of Dispute:</u> Legal and factual.

    iii. <u>Defendants' Position Statement:</u> Defendants incorporate the above legal position.

    iv. <u>Plaintiff's Position Statement:</u> this is incomprehensible and not made in good faith.

    v. <u>Defendants' Supporting Evidence:</u> Defendants incorporate the above legal position.

    vi. <u>Plaintiff's Supporting Evidence:</u> this is incomprehensible and not made in good faith.

## II.   <u>Counterclaimants and Third Party Plaintiffs' ("PCJV USA Parties") Causes of Action to be Tried by a Jury</u>

### 1) Cause of Action No. 2: Inducing Breach of Contract

  b. <u>Element No. 1:</u> there was a contract between any one of the PCJV USA Parties, on the one hand, and any one of the Cinco parties

(inclusive of the "Cinco Group" and "PCI Group") or franchisees on the other hand.

    i.    Disputed Status of Element 1:  The parties dispute this element is satisfied.

    ii.    <u>Nature of Dispute:</u> factual and legal

    iii.    <u>PCJV USA Parties Legal Position Statement:</u> The term for PCJV USA, LLC's use of the U.S. Potato Corner trademarks "can be [i]mplied from the nature of the contract and circumstances surrounding it." *See Consolidated Theatres, Inc. v. Theatrical Stage Emp. Union, Local 16*, 69 Cal.2d 713, 725 (1968).  The "initial effort of the court, in construing contracts of continuing performance of forbearance which contain no express term of duration, must always be that of implying a term of duration commensurate with the intentions of the parties . . . ." *Id.* at 727.  Only when "the nature of the contract and the totality of the surrounding circumstances give no suggestion as to any ascertainable term . . . , the obligations under the contract shall be terminable at will by any party upon reasonable notice after such a reasonable time has elapsed." *Id.* Further, it is immaterial that SPAVI had full knowledge of the contracts' terms. *See Jenni Rivera Enterprises, LLC v. Latin World Entertainment Holdings, Inc.*, 36 Cal. App. 5th 766, 783 (2019). Nor is SPAVI's belief about the legal significance of facts or belief that the parties' agreements are legally binding or has a different legal effect from what it is judicially held to have.  *See Little v. Amber Hotel Co.*, 202 Cal. App. 4th 280, 302 (2011).

iv.    Plaintiff's Position Statement: as drafted it is impossible to know what the specific contract is that is at issue here. It has never been disclosed, and still undisclosed. Rather than jettison the claim or actually identify the  contract, instead, Defendants' solution is to fudge with obtuse language in the jury instructions, designed to confuse everyone, including the jury: "there was a contract between any one of the PCJV Plaintiffs and any one of the Cinco parties." Indeed, the only contract that Cinco has been a party to with any of these Counterclaimants is the Settlement Agreement of the Prior Governance Action. There is no other written agreement between  PCJV and Cinco, or between any other Counterclaimant and Cinco.

v.    PCJV USA Parties' Supporting Evidence: the following categories, which are defined above, capture the key phases and supporting evidence: Superseding Joint Venture (2008–2010), Alternative Licensing Arrangements and Ongoing Ratification (2011–2012), Formalization and Modification of the Joint Venture (2012), LA Group Partnership Agreement and Evolving Business Dynamics and Terms (2013–2018), Dispute, Litigation, and State Court Proceedings (2018 and Beyond), and Ongoing Annual Ratification and Regulatory Compliance.

vi.    SPAVI and Cinco Parties' Supporting Evidence: Each of the agreements included in the trial exhibits and  testimony of Mr. Magsaysay, Mr. Koren, and Ms. Victor – all of  which will establish that  none of the Counterclaimants – PCJV, PCIT, LA Group LLC, GK Capital, NKM, or Koren have

1   any contract to which Cinco has privity.

2   c.  Element No. 2: SPAVI knew of the contract.

3       i.   Disputed Status of Element 2:  The parties dispute this

4            element is satisfied.

5       ii.  Nature of Dispute: factual  and legal.

6       iii. PCJV USA Parties Legal Position Statement: "the contract"

7            refers to each and every applicable contract, including all

8            written, oral, and/or implied-in-fact agreements between the

9            "Cinco Group" and/or "PCI Group," on the one hand, and

10           Cross-Complainants PCJV, PCI Trading, LA Group, GK

11           Capital, NKM, and Koren, on the other hand, inclusive of the

12           JVA/AJVA, LLC Agreement, license agreements, MSA (as

13           restated, amended, modified, or appended over time through

14           PCJV meeting minutes, written communications of the PCJV

15           Board, and/or representations made in FDDs); (2) the

16           Settlement Documents between the "Koren Parties" and

17           "Cinco Parties"; and (3) the franchise agreements PCJV

18           entered with franchisees. Plaintiff's position statement does

19           not assert a legal argument

20      iv.  SPAVI and Cinco's Position Statement: as drafted it is

21           impossible to  know what the specific contract is at issue

22           here. It has never been disclosed, and still undisclosed. So,

23           when this element in the instructions says, "the contract,"

24           whereas the prior element refers to some unidentified

25           contract, as a matter of law, yes, this element is disputed. To

26           the extent any actual contract ever existed between Cinco and

27           these parties, the only one that is possible is the Settlement

28           Agreement and corresponding agreement selling PCJV

equity to GKK Capital. (Trial Exhibit 1176.) Because Cinco has never been a party to any other contract with any of the Counterclaim Defendants, that is the only one that could possibly be at issue, but Defendants refuse to acknowledge this.

    v.    PCJV USA Parties' Supporting Evidence: the following category, which is defined above, captures the key phase and supporting evidence: SPAVI Parties' Tortious Conduct.

    vi.    SPAVI and Cinco Parties' Supporting Evidence: Each of the agreements included in the trial exhibits and testimony of Mr. Gregorio, Mr. Tan, Ms. Victor, as well as Mr. Koren – all of which will establish that were aware of no contract between none of the Counterclaimants – PCJV, PCIT, LA Group LLC, GK Capital, NKM, or Koren have any contract to which Cinco has privity. After the fact, now, having been sued, SPAVI will unequivocally testify that it had knowledge of the terms off the settlement and never saw the document until this case commenced.

    d.    Element No. 3: SPAVI intended to cause any one of the Cinco parties or franchisees to breach the contract

    i.    Disputed Status of Element 3:  The parties dispute this element is satisfied.

    ii.    Nature of Dispute: factual and legal.

    iii.    PCJV USA Parties' Position Statement: Plaintiff's position statement does not address a legal issue concerning this element. To the extent Plaintiff's position statement addresses element 1, PCJV USA Parties incorporate their respective response here.

iv.   Plaintiff's Position Statement: as drafted it is impossible to know what the specific contract is at issue here. It has never been disclosed, and still undisclosed. So, when this element in the instructions says, "the contract," whereas the prior element refers to some unidentified contract, as a matter of law, yes, this element is disputed. To the extent any actual contract ever existed between Cinco and these parties, the only one that is possible is the Settlement Agreement and corresponding agreement selling PCJV equity to GKK Capital. (Trial Exhibit 1176.) Because Cinco has never been a party to any other contract with any of the Counterclaim Defendants, that is the only one that could possibly be at issue, but Defendants refuse to acknowledge this.

v.    PCJV USA Parties' Supporting Evidence: the following category, which is defined above, captures the key phase and supporting evidence: SPAVI Parties' Tortious Conduct.

vi.   SPAVI's Supporting Evidence: Each of the agreements included in the trial exhibits and  testimony of Mr. Gregorio, Mr.  Tan, Ms. Victor, as well as Mr. Koren  – all of  which will establish that they were not aware of and  had no intent to cause anyone to breach any contract.  Also, the correspondence leading up to the termination of the license – Trial Exhibits 20-31 – also confirm the intent was to negotiate a license with PCJV, something for which  years were spent in pursuit, to no avail.

e.  Element No. 4: SPAVI's conduct caused any one of the Cinco parties to breach the contract

i.   Disputed Status of Element 4:  The parties dispute this

1    element is satisfied.

2        ii.   <u>Nature of Dispute:</u> factual and legal.

3        iii.   <u>PCJV USA Parties' Supporting Legal Position:</u> The term for

4            PCJV USA, LLC's use of the U.S. Potato Corner trademarks

5            "can be [i]mplied from the nature of the contract and

6            circumstances surrounding it." *See Consolidated Theatres,*

7            *Inc. v. Theatrical Stage Emp. Union, Local 16*, 69 Cal.2d

8            713, 725 (1968). The "initial effort of the court, in

9            construing contracts of continuing performance of

10           forebearance which contain no express term of duration,

11           must always be that of implying a term of duration

12           commensurate with the intentions of the parties . . . ." *Id.* at

13           727. Only when "the nature of the contract and the totality

14           of the surrounding circumstances give no suggestion as to

15           any ascertainable term . . . , the obligations under the contract

16           shall be terminable at will by any party upon reasonable

17           notice after such a reasonable time has elapsed." *Id.* Further,

18           it is immaterial that SPAVI had full knowledge of the

19           contracts' terms. *See Jenni Rivera Enterprises, LLC v. Latin*

20           *World Entertainment Holdings, Inc.*, 36 Cal. App. 5th 766,

21           783 (2019). Nor is SPAVI's belief about the legal

22           significance of facts or belief that the parties' agreements are

23           legally binding or has a different legal effect from what it is

24           judicially held to have. *See Little v. Amber Hotel Co.*, 202

25           Cal. App. 4th 280, 302 (2011).

26       iv.   <u>Plaintiff's Position Statement:</u> First, this presumes Cinco

27           breached a contract. The only contracts that have been

28           identified as being "breached" are the unsigned licensee

1   agreement and the AJVA. Neither document binds Cinco –
2   indeed, that the AJVA constitutes an agreement to agree and
3   not a contract  has  already been adjudicated and decided as
4   law of the case. It is impossible to  know what the specific
5   contract is at issue here. To the extent any actual contract
6   ever existed between Cinco and these parties, the only one
7   that is possible is the Settlement Agreement and
8   corresponding agreement selling PCJV equity to GKK
9   Capital. (Trial Exhibit 1176.) Because Cinco has never been
10  a party to any other contract with any of the Counterclaim
11  Defendants, that is the only one that could possibly be at
12  issue, but Defendants refuse to acknowledge this.

13          v.    PCJV USA Parties' Supporting Evidence: the following
14                categories, which are defined above, capture the key phases
15                and supporting evidence: Superseding Joint Venture (2008–
16                2010), Alternative Licensing Arrangements and Ongoing
17                Ratification (2011–2012), Formalization and Modification of
18                the Joint Venture (2012), LA Group Partnership Agreement
19                and Evolving Business Dynamics and Terms (2013–2018),
20                Dispute, Litigation, and State Court Proceedings (2018 and
21                Beyond), Ongoing Annual Ratification and Regulatory
22                Compliance, and SPAVI Parties' Tortious Conduct.

23          vi.   SPAVI Parties' Supporting Evidence: The absence of
24                evidence that  Cinco was a party to, or  breached, any
25                contract with any  of the Counterclaimants is  the supporting
26                evidence.

27      f.  Element No. 5: any one of the PCJV USA Parties were harmed
28          i.    Disputed Status of Element 4:  The parties dispute this

1          element is satisfied.

2          ii.   <u>Nature of Dispute:</u> factual and legal.

3          iii.  <u>PCJV USA Parties' Position Statement:</u> Plaintiff's position

4                statement does not address a legal issue concerning this

5                element. To the extent Plaintiff's position statement

6                addresses element 1, PCJV USA Parties incorporate their

7                respective response here.

8          iv.   <u>Plaintiff's Position Statement:</u> First, this presumes Cinco

9                breached a contract. The only contracts that have been

10               identified as being "breached" are the unsigned licensee

11               agreement and the AJVA. Neither document binds Cinco –

12               indeed, that the AJVA constitutes an agreement to agree and

13               not a contract  has  already been adjudicated and decided as

14               law of the case. It is impossible to  know what the specific

15               contract is at issue here. To the extent any actual contract

16               ever existed between Cinco and these parties, the only one

17               that is possible is the Settlement Agreement and

18               corresponding agreement selling PCJV equity to GKK

19               Capital. (Trial Exhibit 1176.) Because Cinco has never been

20               a party to any other contract with any of the Counterclaim

21               Defendants, that is the only one that could possibly be at

22               issue, but Defendants refuse to acknowledge this.

23         v.    <u>PCJV USA Parties' Supporting Evidence:</u> the following

24               category, which is defined above, captures the key phase and

25               supporting evidence: SPAVI Parties' Tortious Conduct.

26         vi.   <u>SPAVI Parties' Supporting Evidence:</u> The absence of

27               evidence that  Cinco was a party to, or  breached, any

28               contract with any  of the Counterclaimants is  the supporting

1    evidence, as there is no way any of the Counterclaimants

2    could have been harmed.

3        g.  <u>Element No. 6:</u> SPAVI's conduct  was a substantial factor in

4        causing harm to any of the Counterclaimants.

5          i.  Disputed Status of Element  6:  The parties dispute this

6            element is satisfied.

7          ii.  <u>Nature of Dispute:</u> factual and legal.

8          iii.  <u>PCJV USA Parties' Position Statement:</u> Plaintiff's position

9            statement does not address a legal issue concerning this

10            element. To the extent Plaintiff's position statement

11            addresses element 1, PCJV USA Parties incorporate their

12            respective response here

13          iv.  <u>Plaintiff's Position Statement:</u> Again, this presumes Cinco

14            breached a contract. The only contracts that have been

15            identified as being "breached" are the unsigned licensee

16            agreement and the AJVA. Neither document binds Cinco –

17            indeed, that the AJVA constitutes an agreement to agree and

18            not a contract  has  already been adjudicated and decided as

19            law of the case. It is impossible to  know what the specific

20            contract is at issue here. To the extent any actual contract

21            ever existed between Cinco and these parties, the only one

22            that is possible is the Settlement Agreement and

23            corresponding agreement selling PCJV equity to GKK

24            Capital. (Trial Exhibit 1176.) Because Cinco has never been

25            a party to any other contract with any of the Counterclaim

26            Defendants, that is the only one that could possibly be at

27            issue, but Defendants refuse to acknowledge this.

28          v.  <u>PCJV USA Parties' Supporting Evidence:</u> the following

categories, which are defined above, capture the key phases and supporting evidence: Superseding Joint Venture (2008–2010), Alternative Licensing Arrangements and Ongoing Ratification (2011–2012), Formalization and Modification of the Joint Venture (2012), LA Group Partnership Agreement and Evolving Business Dynamics and Terms (2013–2018), Dispute, Litigation, and State Court Proceedings (2018 and Beyond), Ongoing Annual Ratification and Regulatory Compliance, and SPAVI Parties' Tortious Conduct.

vi. <u>SPAVI and Cinco's Supporting Evidence:</u> SPAVI's only act that could have caused "harm" to any of the Counterclaimants is termination of the license, which it was permitted to do. The absence of evidence that Cinco was a party to, or breached, any contract with any of the Counterclaimants is the supporting evidence, as there is no way any of the Counterclaimants could have been harmed let alone as a result of any act by SPAVI.

2) **<u>Cause of Action No. 3: Intentional Interference with Contractual Relations.</u>**

a. <u>Element No. 1</u>: there were various contracts, including contracts with the Cinco parties, franchisees, suppliers, and vendors,

i. Disputed Status of Element 1: The parties dispute that this element is satisfied.

ii. <u>Nature of Dispute:</u> Legal and factual

iii. <u>PCJV USA Parties' Legal Position:</u> The term for PCJV USA, LLC's use of the U.S. Potato Corner trademarks "can be [i]mplied from the nature of the contract and circumstances surrounding it." *See Consolidated Theatres, Inc. v. Theatrical*

*Stage Emp. Union, Local 16*, 69 Cal.2d 713, 725 (1968). The "initial effort of the court, in construing contracts of continuing performance of forbearance which contain no express term of duration, must always be that of implying a term of duration commensurate with the intentions of the parties . . . ." *Id.* at 727. Only when "the nature of the contract and the totality of the surrounding circumstances give no suggestion as to any ascertainable term . . . , the obligations under the contract shall be terminable at will by any party upon reasonable notice after such a reasonable time has elapsed." *Id.* Further, it is immaterial that SPAVI had full knowledge of the contracts' terms. *See Jenni Rivera Enterprises, LLC v. Latin World Entertainment Holdings, Inc.*, 36 Cal. App. 5th 766, 783 (2019). Nor is SPAVI's belief about the legal significance of facts or belief that the parties' agreements are legally binding or has a different legal effect from what it is judicially held to have. *See Little v. Amber Hotel Co.*, 202 Cal. App. 4th 280, 302 (2011).

vii.    Plaintiff's Supporting Legal Position: The only contracts that have been identified as being "breached" are the unsigned licensee agreement and the AJVA. Neither document binds Cinco – indeed, that the AJVA constitutes an agreement to agree and not a contract has already been adjudicated and decided as law of the case. It is impossible to know what the specific contract is at issue here. To the extent any actual contract ever existed between Cinco and these parties, the only one that is possible is the Settlement Agreement and corresponding agreement selling PCJV equity to GKK

Capital. (Trial Exhibit 1176.) Because Cinco has never been a party to any other contract with any of the Counterclaim Defendants, that is the only one that could possibly be at issue, but Defendants refuse to acknowledge this.

    iv.   PCJV USA Parties' Supporting Evidence: the following categories, which are defined above, capture the key phases and supporting evidence: Superseding Joint Venture (2008–2010), Alternative Licensing Arrangements and Ongoing Ratification (2011–2012), Formalization and Modification of the Joint Venture (2012), LA Group Partnership Agreement and Evolving Business Dynamics and Terms (2013–2018), Dispute, Litigation, and State Court Proceedings (2018 and Beyond), and Ongoing Annual Ratification and Regulatory Compliance.

    v.   SPAVI and Cinco's Supporting Evidence: the absence of evidence is enough. There are no  such contracts

  b.  Element No. 2: SPAVI knew of the contracts.

    i.   Disputed Status of Element 2: The parties dispute that this element is satisfied.

    i.   Nature of Dispute: Factual.

    ii.   PCJV USA Parties' Supporting Evidence: the following category, which is defined above, captures the key phase and supporting evidence: SPAVI Parties' Tortious Conduct.

    iii.   Plaintiff's Supporting Evidence: the absence of evidence is enough. There are no  such contracts.

  c.  Element No. 3: SPAVI's conduct prevented performance or made performance more expensive or difficult.

    i.   Disputed Status of Element 3:  The parties dispute that this

element is satisfied.

    ii.   <u>Nature of Dispute:</u> Factual.

    iii.   <u>PCJV USA Parties' Supporting Evidence:</u> PCJV USA Parties' Supporting Evidence: the following categories, which are defined above, capture the key phases and supporting evidence: Superseding Joint Venture (2008–2010), Alternative Licensing Arrangements and Ongoing Ratification (2011–2012), Formalization and Modification of the Joint Venture (2012), LA Group Partnership Agreement and Evolving Business Dynamics and Terms (2013–2018), Dispute, Litigation, and State Court Proceedings (2018 and Beyond), Ongoing Annual Ratification and Regulatory Compliance, and SPAVI Parties' Tortious Conduct.

    iv.   <u>SPAVI and Cinco's Supporting Evidence:</u> the absence of evidence is enough. There are no  such contracts

d.  <u>Element No. 4</u>: SPAVI either (a) intended <u>to</u> disrupt the performance of these contracts or (b) knew that disruption of performance was certain or substantially certain to occur.

    i.   Disputed Status of Element 4:  The parties dispute that this element is satisfied.

    ii.   Nature of Dispute: Factual.

    iii.   PCJV USA Parties' Supporting Evidence: the following category, which is defined above, captures the key phase and supporting evidence: SPAVI Parties' Tortious Conduct.

    iv.   <u>SPAVI and Cinco's Supporting Evidence:</u> the absence of evidence is enough. There are no  such contracts

e.  <u>Element No. 5</u>: any one of the PCJV USA Parties were harmed.

    i.   Disputed Status of Element 5:  The parties dispute that this

1          element is satisfied.

2              ii.    Nature of Dispute: Factual.

3              iii.   PCJV USA Parties' Supporting Evidence:

4              iv.    SPAVI Parties' Supporting Evidence: the absence of evidence

5                     is enough. There are no  such contracts.

6          f.   Element No. 6: SPAVI's conduct was a substantial factor in causing

7               any one of the PCJV USA Parties' harm.

8              i.     Disputed Status of Element 6:  The parties dispute that this

9                     element is satisfied.

10             ii.    Nature of Dispute: Factual.

11             iii.   PCJV USA Parties' Supporting Evidence:

12             iv.    SPAVI Parties' Supporting Evidence: the absence of evidence

13                    is enough. There are no  such contracts

14     3)  **Cause of Action No. 4: Interference with Prospective Economic**

15         **Relations.**

16         a.   Element No. 1: any one of the PCJV USA Parties were in various

17              economic relations, including with Cinco parties, franchisees,

18              suppliers, and venders were in that probably would have resulted in an

19              economic benefit to Defendants.

20             i.     Disputed Status of Element 1:  The parties dispute that this

21                    element is satisfied.

22             ii.    Nature of Dispute: Legal and factual.

23             iii.   PCJV USA Parties' Supporting Legal Position: The term for

24                    PCJV USA, LLC's use of the U.S. Potato Corner trademarks

25                    "can be [i]mplied from the nature of the contract and

26                    circumstances surrounding it."  *See Consolidated Theatres,*

27                    *Inc. v. Theatrical Stage Emp. Union, Local 16*, 69 Cal.2d 713,

28                    725 (1968).  The "initial effort of the court, in construing

1    contracts of continuing performance of forebearance which

2    contain no express term of duration, must always be that of

3    implying a term of duration commensurate with the intentions

4    of the parties . . . ." *Id.* at 727.  Only when "the nature of the

5    contract and the totality of the surrounding circumstances give

6    no suggestion as to any ascertainable term . . . , the obligations

7    under the contract shall be terminable at will by any party

8    upon reasonable notice after such a reasonable time has

9    elapsed." *Id.* Further, it is immaterial that SPAVI had full

10    knowledge of the contracts' terms. *See Jenni Rivera*

11    *Enterprises, LLC v. Latin World Entertainment Holdings, Inc.*,

12    36 Cal. App. 5th 766, 783 (2019). Nor is SPAVI's belief about

13    the legal significance of facts or belief that the parties'

14    agreements are legally binding or has a different legal effect

15    from what it is judicially held to have.  See Little v. Amber

16    Hotel Co., 202 Cal. App. 4th 280, 302 (2011).

17    iv.    Plaintiff's Supporting Legal Position: the only relationships

18          SPAVI knew about were with franchisees and certain vendors.

19          the specific  relationships at issue here have never been

20          disclosed.

21    v.    PCJV USA Parties' Supporting Evidence: the following

22          categories, which are defined above, capture the key phases

23          and supporting evidence: Superseding Joint Venture (2008–

24          2010), Alternative Licensing Arrangements and Ongoing

25          Ratification (2011–2012), Formalization and Modification of

26          the Joint Venture (2012), LA Group Partnership Agreement

27          and Evolving Business Dynamics and Terms (2013–2018),

28          Dispute, Litigation, and State Court Proceedings (2018 and

1    Beyond), and Ongoing Annual Ratification and Regulatory

2    Compliance.

3       vi.    SPAVI's Supporting Evidence: testimony of executives.

4    b.    Element No. 2: SPAVI knew of the relationships.

5       i.    Disputed Status of Element 2:  The parties dispute that this

6       element is satisfied.

7       ii.    Nature of Dispute: Factual.

8       iii.    PCJV USA Parties' Supporting Evidence: the following

9       category, which is defined above, captures the key phase and

10       supporting evidence: SPAVI Parties' Tortious Conduct.

11       iv.    SPAVI's Supporting Evidence: testimony of executives

12    c.    Element No. 3: SPAVI engaged in conduct to destroy the value of any

13    one of the PCJV USA Parties' relationships by usurping the benefits of

14    those relationships for SPAVI's benefit.

15       i.    Disputed Status of Element 3:  The parties dispute that this

16       element is satisfied.

17       ii.    Nature of Dispute: Factual.

18       iii.    PCJV USA Parties' Supporting Evidence: the following

19       category, which is defined above, captures the key phase and

20       supporting evidence: SPAVI Parties' Tortious Conduct.

21       iv.    SPAVI's Supporting Evidence: Testimony of Tan and

22       Concepcion and Victor and Shaikh and Hussein will all

23       support SPAVI here.

24    d.    Element No. 4: by engaging in this conduct, SPAVI either (a) intended

25    to disrupt the relationships or (b) knew that disruption of the

26    relationships was certain or substantially certain to occur.

27       i.    Disputed Status of Element 4:  The parties dispute that this

28       element is satisfied.

ii.  Nature of Dispute: Factual.

iii.  PCJV USA Parties' Supporting Evidence: the following category, which is defined above, captures the key phase and supporting evidence: SPAVI Parties' Tortious Conduct.

iv.  SPAVI's Supporting Evidence: Tan and Concepcion and Victor and Shaikh and Hussein will all support SPAVI here.

e.  Element No. 5: those relationships were disrupted.

i.  Disputed Status of Element 5:  The parties dispute that this element is satisfied.

ii.  Nature of Dispute: Factual.

iii.  PCJV USA Parties' Supporting Evidence: the following categories, which are defined above, capture the key phases and supporting evidence: Superseding Joint Venture (2008–2010), Alternative Licensing Arrangements and Ongoing Ratification (2011–2012), Formalization and Modification of the Joint Venture (2012), LA Group Partnership Agreement and Evolving Business Dynamics and Terms (2013–2018), Dispute, Litigation, and State Court Proceedings (2018 and Beyond), Ongoing Annual Ratification and Regulatory Compliance, and SPAVI Parties' Tortious Conduct.

iv.  SPAVI Parties' Supporting Evidence: it is unknown what relationships were disrupted.

f.  Element No. 6: any one of the PCJV USA Parties were harmed.

i.  Disputed Status of Element 6:  The parties dispute that this element is satisfied.

ii.  Nature of Dispute: Factual.

iii.  PCJV USA Parties' Supporting Evidence: the following category, which is defined above, captures the key phase and

supporting evidence: SPAVI Parties' Tortious Conduct.

    iv.   SPAVI Parties' Supporting Evidence: no proof of this has ever been established, particularly harm caused by any of the responding parties.

  g. Element No. 7: SPAVI's conduct was a substantial factor in causing any one of the PCJV USA Parties' harm.

    i.   Disputed Status of Element 7:  The parties dispute that this element is satisfied.

    ii.  Nature of Dispute: Factual.

    iii. PCJV USA Parties' Supporting Evidence: the following category, which is defined above, captures the key phase and supporting evidence: SPAVI Parties' Tortious Conduct.

    iv.   SPAVI Parties' Supporting Evidence: no proof of this has ever been established, particularly harm caused by any of the responding parties.

**4)  Cause of Action No. 5: Negligent Interference with Prospective Economic Advantage.**

  a. Element No. 1: any one of the PCJV USA Parties were in various economic relations, including with Cinco parties, franchisees, suppliers, and venders that probably would have resulted in a future economic benefit to any one of the PCJV USA Parties.

    i.   Disputed Status of Element 1:  The parties dispute that this element is satisfied.

    ii.  Nature of Dispute: Legal and factual.

    iii. PCJV USA Parties' Supporting Legal Position: The term for PCJV USA, LLC's use of the U.S. Potato Corner trademarks "can be [i]mplied from the nature of the contract and circumstances surrounding it." *See Consolidated Theatres,*

1   Inc. *v. Theatrical Stage Emp. Union, Local 16*, 69 Cal.2d 713,
2   725 (1968). The "initial effort of the court, in construing
3   contracts of continuing performance of forebearance which
4   contain no express term of duration, must always be that of
5   implying a term of duration commensurate with the intentions
6   of the parties . . . ." *Id.* at 727. Only when "the nature of the
7   contract and the totality of the surrounding circumstances give
8   no suggestion as to any ascertainable term . . . , the obligations
9   under the contract shall be terminable at will by any party
10  upon reasonable notice after such a reasonable time has
11  elapsed." *Id.* Further, it is immaterial that SPAVI had full
12  knowledge of the contracts' terms. *See Jenni Rivera*
13  *Enterprises, LLC v. Latin World Entertainment Holdings, Inc.*,
14  36 Cal. App. 5th 766, 783 (2019). Nor is SPAVI's belief about
15  the legal significance of facts or belief that the parties'
16  agreements are legally binding or has a different legal effect
17  from what it is judicially held to have. *See Little v. Amber*
18  *Hotel Co.*, 202 Cal. App. 4th 280, 302 (2011).

19        vii.    Plaintiff's Supporting Legal Position: the only relationships
20                SPAVI knew about were with franchisees and certain vendors.
21                the specific  relationships at issue here have never been
22                disclosed.

23        iv.     PCJV USA Parties' Supporting Evidence: documents and
24                testimony including and related to prospective supplier
25                economic relationships and franchisee relations. the following
26                categories, which are defined above, capture the key phases
27                and supporting evidence: Superseding Joint Venture (2008–
28                2010), Alternative Licensing Arrangements and Ongoing

Ratification (2011–2012), Formalization and Modification of the Joint Venture (2012), LA Group Partnership Agreement and Evolving Business Dynamics and Terms (2013–2018), Dispute, Litigation, and State Court Proceedings (2018 and Beyond), Ongoing Annual Ratification and Regulatory Compliance, and SPAVI Parties' Tortious Conduct.

     v.   SPAVI's Supporting Evidence: testimony of executives.

b.  Element No. 2: SPAVI knew or should have known of these relationships.

     i.   Disputed Status of Element 2:  The parties dispute that this element is satisfied.

     ii.  Nature of Dispute: Factual.

     iii. PCJV USA Parties' Supporting Evidence: the following category, which is defined above, captures the key phase and supporting evidence: SPAVI Parties' Tortious Conduct.

     iv. SPAVI Parties' Supporting Evidence: testimony of executives

c.  Element No. 3: SPAVI knew or should have known that these relationships would be disrupted if it failed to act with reasonable care.

     i.   Disputed Status of Element 3:  The parties dispute that this element is satisfied.

     ii.  Nature of Dispute: Factual.

     iii. PCJV USA Parties' Supporting Evidence: the following category, which is defined above, captures the key phase and supporting evidence: SPAVI Parties' Tortious Conduct.

     iv. SPAVI's Supporting Evidence: Testimony of Tan and Concepcion and Victor and Shaikh and Hussein will all support SPAVI here

d.  Element No. 4: SPAVI failed to act with reasonable care.

1          i.   Disputed Status of Element 4:  The parties dispute that this element is satisfied.

ii.   Nature of Dispute: Factual.

iii.   <u>PCJV USA Parties' Supporting Evidence:</u> the following category, which is defined above, captures the key phase and supporting evidence: SPAVI Parties' Tortious Conduct.

iv.   <u>SPAVI's Supporting Evidence:</u> Tan and Concepcion and Victor and Shaikh and Hussein will all support SPAVI here

e.   <u>Element No. 5</u>: SPAVI engaged in wrongful conduct through engaging in conduct to destroy the value of any one of the PCJV USA Parties' relationships by usurping the benefits of those relationships for SPAVI's benefit.

i.   Disputed Status of Element 5:  The parties dispute that this element is satisfied.

ii.   Nature of Dispute: Factual.

iii.   <u>PCJV USA Parties' Supporting Evidence:</u> the following categories, which are defined above, capture the key phases and supporting evidence: Superseding Joint Venture (2008–2010), Alternative Licensing Arrangements and Ongoing Ratification (2011–2012), Formalization and Modification of the Joint Venture (2012), LA Group Partnership Agreement and Evolving Business Dynamics and Terms (2013–2018), Dispute, Litigation, and State Court Proceedings (2018 and Beyond), Ongoing Annual Ratification and Regulatory Compliance, and SPAVI Parties' Tortious Conduct.

iv.   <u>SPAVI Parties' Supporting Evidence:</u> Tan and Concepcion and Victor and Shaikh and Hussein will all support SPAVI here

f.  <u>Element No. 6</u>: the relationships were disrupted.

    i.   Disputed Status of Element 6:  The parties dispute that this element is satisfied.

    ii.   Nature of Dispute: Factual.

    iii.   <u>PCJV USA Parties' Supporting Evidence</u>: the following category, which is defined above, captures the key phase and supporting evidence: SPAVI Parties' Tortious Conduct.

    iv.   <u>SPAVI Parties' Supporting Evidence</u>: SPAVI is unaware of what relationships were harmed.

g.  <u>Element No. 7</u>: any one of the PCJV USA Parties were harmed.

    i.   Disputed Status of Element 7:  The parties dispute that this element is satisfied.

    ii.   Nature of Dispute: Factual.

    iii.   <u>PCJV USA Parties' Supporting Evidence</u>: the following category, which is defined above, captures the key phase and supporting evidence: SPAVI Parties' Tortious Conduct.

    i.   <u>SPAVI Parties' Supporting Evidence</u>: no proof of this has ever been established, particularly harm caused by any of the responding parties

h.  <u>Element No. 8</u>: SPAVI's wrongful conduct was a substantial factor in causing Defendants' harm.

    i.   Disputed Status of Element 8:  The parties dispute that this element is satisfied.

    ii.   Nature of Dispute: Factual.

    iii.   <u>PCJV USA Parties' Supporting Evidence</u>: the following category, which is defined above, captures the key phase and supporting evidence: SPAVI Parties' Tortious Conduct.

    iv.   <u>SPAVI's Supporting Evidence:</u> no proof of this has ever been

1  established, particularly harm caused by any of the responding

2  parties.

3  **5) Cause of Action No. 6: Aiding and Abetting Torts.**

4     a.  <u>Element No. 1</u>: SPAVI knew that a breach of a fiduciary duty, breach

5  of the implied covenant of good faith and fair dealing, fraud, or

6  conversion was going to be committed by Cinco Corporation, its

7  affiliates, or its agents against any one of the PCJV USA Parties.

8      i.  Disputed Status of Element 1:  The parties dispute that this

9  element is satisfied.

10      ii.  Nature of Dispute: Factual.

11      iii.  <u>PCJV USA Parties' Supporting Evidence</u>: the following

12  categories, which are defined above, capture the key phases

13  and supporting evidence: Superseding Joint Venture (2008–

14  2010), Alternative Licensing Arrangements and Ongoing

15  Ratification (2011–2012), Formalization and Modification of

16  the Joint Venture (2012), LA Group Partnership Agreement

17  and Evolving Business Dynamics and Terms (2013–2018),

18  Dispute, Litigation, and State Court Proceedings (2018 and

19  Beyond), Ongoing Annual Ratification and Regulatory

20  Compliance, and SPAVI Parties' Tortious Conduct

21      iv.  <u>SPAVI's Supporting Evidence:</u> no torts have occurred so

22  nothing could be aided or abetted.

23     b.  <u>Element No. 2</u>: SPAVI gave substantial assistance or encouragement

24  to Cinco Corporation, its affiliates, or its agents.

25      v.  Disputed Status of Element 2:  The parties dispute that this

26  element is satisfied.

27      vi.  Nature of Dispute: Factual.

28      vii.  <u>PCJV USA Parties' Supporting Evidence</u>: the following

1  category, which is defined above, captures the key phase and

2  supporting evidence: SPAVI Parties' Tortious Conduct.

3      viii.   SPAVI's Supporting Evidence: no torts have occurred so

4  nothing could be aided or abetted.

5    c.  Element No. 3: Cinco Corporation's, its affiliates, or tis agents'

6  conduct was a substantial factor in causing harm to any one of the

7  PCJV USA Parties.

8      ix.   Disputed Status of Element 3:  The parties dispute that this

9  element is satisfied.

10      x.   Nature of Dispute: Factual.

11      xi.   PCJV USA Parties' Supporting Evidence: the following

12  category, which is defined above, captures the key phase and

13  supporting evidence: SPAVI Parties' Tortious Conduct.

14      xii.   SPAVI's Supporting Evidence: no torts have occurred so

15  nothing could be aided or abetted.

16  **6) Cause of Action No. 7: First Count of Breach of Fiduciary Duty.**

17    a.  Element No. 1: either Cinco Corporation or SPAVI, as Cinco

18  Corporation's successor-in-interest, was a joint venture partner of

19  PCJV.

20      i.   Disputed Status of Element 1:  The parties dispute that this

21  element is satisfied.

22      ii.   Nature of Dispute: Factual.

23      iii.   PCJV USA Parties' Supporting Evidence:

24      iv.   SPAVI and Cinco's Supporting Evidence: the absence of

25  evidence will suffice. Also, no evidence that SPAVI is a

26  successor in interest or took on this liability

27    b.  Element No. 2: Cinco Corporation or SPAVI, as Cinco Corporation's

28  successor-in-interest, acted on PCJV's behalf for purposes of

1    providing PCJV with an exclusive right to use the Potato Corner

2    trademark in the United States.

3          i.    Disputed Status of Element 2:  The parties dispute that this

4                element is satisfied.

5          ii.   Nature of Dispute: Factual

6          iii.  PCJV USA Parties' Supporting Evidence: the following

7                categories, which are defined above, capture the key phases

8                and supporting evidence: Superseding Joint Venture (2008–

9                2010), Alternative Licensing Arrangements and Ongoing

10               Ratification (2011–2012), Formalization and Modification of

11               the Joint Venture (2012), LA Group Partnership Agreement

12               and Evolving Business Dynamics and Terms (2013–2018),

13               Dispute, Litigation, and State Court Proceedings (2018 and

14               Beyond), Ongoing Annual Ratification and Regulatory

15               Compliance, and SPAVI Parties' Tortious Conduct

16         iv.   SPAVI and Cinco's Supporting Evidence: the absence of

17               evidence will suffice. Also, no evidence that SPAVI is a

18               successor in interest or took on this liability

19      c.  Element No. 3: Cinco Corporation or SPAVI, as Cinco Corporation's

20          successor-in-interest, failed to act as a reasonably careful partner

21          would have acted under the same or similar circumstances.

22         i.    Disputed Status of Element 3:  The parties dispute that this

23               element is satisfied.

24         ii.   Nature of Dispute: Factual

25         iii.  PCJV USA Parties' Supporting Evidence: the following

26               categories, which are defined above, capture the key phases

27               and supporting evidence: Superseding Joint Venture (2008–

28               2010), Alternative Licensing Arrangements and Ongoing

Ratification (2011–2012), Formalization and Modification of the Joint Venture (2012), LA Group Partnership Agreement and Evolving Business Dynamics and Terms (2013–2018), Dispute, Litigation, and State Court Proceedings (2018 and Beyond), Ongoing Annual Ratification and Regulatory Compliance, and SPAVI Parties' Tortious Conduct

    iv.   <u>SPAVI and Cinco's Supporting Evidence:</u> the absence of evidence of a duty will suffice. Also, no evidence that SPAVI is a successor in interest or took on this liability

d.  <u>Element No. 4</u>: any one of the PCJV USA Parties were harmed.

    i.   Disputed Status of Element 4:  The parties dispute that this element is satisfied.

    ii.   Nature of Dispute: factual

    iii.   <u>PCJV USA Parties' Supporting Evidence:</u> the following category, which is defined above, captures the key phase and supporting evidence: SPAVI Parties' Tortious Conduct.

    iv.   <u>SPAVI and Cinco's Supporting Evidence:</u> the absence of evidence of a duty will suffice. Also, no evidence that SPAVI is a successor in interest or took on this liability

e.  <u>Element No. 5</u>: the conduct of Cinco Corporation or SPAVI, as Cinco Corporation's successor-in-interest, was a substantial factor in causing any one of the PCJV USA Parties' harm.

    i.   Disputed Status of Element 5:  The parties dispute that this element is satisfied.

    ii.   Nature of Dispute: factual

    iii.   <u>PCJV USA Parties' Supporting Evidence:</u> the following category, which is defined above, captures the key phase and supporting evidence: SPAVI Parties' Tortious Conduct

iv.   SPAVI and Cinco's Supporting Evidence: the absence of evidence of a duty will suffice. Also, no evidence that SPAVI is a successor in interest or took on this liability

7) **Cause of Action No. 7: Second Count of Breach of Fiduciary Duty.**

   a.  Element No. 1: Cinco Corporation or SPAVI, as Cinco Corporation's successor-in-interest, was a joint venture partner of PCJV.

       i.   Disputed Status of Element 1:  The parties dispute that this element is satisfied.

       ii.   Nature of Dispute: factual

       iii.   PCJV USA Parties' Supporting Evidence: [insert]

       iv.   SPAVI and Cinco's Supporting Evidence: the absence of evidence of a duty will suffice. Also, no evidence that SPAVI is a successor in interest or took on this liability

   b.  Element No. 2: Cinco Corporation or SPAVI, as Cinco Corporation's successor-in-interest, knowingly acted against interests of PCJV and PCJV's other joint venture partners in connection with providing PCJV with an exclusive right to use the Potato Corner trademark in the United States.

       i.   Disputed Status of Element 2:  The parties dispute that this element is satisfied.

       ii.   Nature of Dispute: Factual

       iii.   PCJV USA Parties' Supporting Evidence: the following categories, which are defined above, capture the key phases and supporting evidence: Superseding Joint Venture (2008–2010), Alternative Licensing Arrangements and Ongoing Ratification (2011–2012), Formalization and Modification of the Joint Venture (2012), LA Group Partnership Agreement and Evolving Business Dynamics and Terms (2013–2018),

Dispute, Litigation, and State Court Proceedings (2018 and Beyond), Ongoing Annual Ratification and Regulatory Compliance, and SPAVI Parties' Tortious Conduct

    iv.   SPAVI and Cinco's Supporting Evidence: the absence of evidence of a duty will suffice. Also, no evidence that SPAVI is a successor in interest or took on this liability

  c.  Element No. 3: any one of the PCJV USA Parties did not give informed consent to the conduct of Cinco Corporation or SPAVI, as Cinco Corporation's successor-in-interest.

    i.   Disputed Status of Element 3:  The parties dispute that this element is satisfied.

    ii.   Nature of Dispute: Factual

    iii.   PCJV USA Parties' Supporting Evidence: the following categories, which are defined above, capture the key phases and supporting evidence: Superseding Joint Venture (2008–2010), Alternative Licensing Arrangements and Ongoing Ratification (2011–2012), Formalization and Modification of the Joint Venture (2012), LA Group Partnership Agreement and Evolving Business Dynamics and Terms (2013–2018), Dispute, Litigation, and State Court Proceedings (2018 and Beyond), Ongoing Annual Ratification and Regulatory Compliance, and SPAVI Parties' Tortious Conduct.

    iv.   SPAVI and Cinco's Supporting Evidence: the absence of evidence of a duty will suffice. Also, no evidence that SPAVI is a successor in interest or took on this liability

  d.  Element No. 4: any one of the PCJV USA Parties were harmed,

    i.   Disputed Status of Element 4:  The parties dispute that this element is satisfied.

ii. Nature of Dispute: Factual.

iii. <u>PCJV USA Parties' Supporting Evidence:</u> the following category, which is defined above, captures the key phase and supporting evidence: SPAVI Parties' Tortious Conduct.

iv. <u>SPAVI and Cinco's Supporting Evidence:</u> the absence of evidence of a duty will suffice. Also, no evidence that SPAVI is a successor in interest or took on this liability

e. <u>Element No. 5</u>: the conduct of Cinco Corporation or SPAVI, as Cinco Corporation's successor-in-interest, was a substantial factor in causing any one of the PCJV USA Parties' harm.

i. Disputed Status of Element 5:  The parties dispute that this element is satisfied.

ii. Nature of Dispute: factual

iii. <u>PCJV USA Parties' Supporting Evidence:</u> the following category, which is defined above, captures the key phase and supporting evidence: SPAVI Parties' Tortious Conduct

iv. <u>SPAVI and Cinco's Supporting Evidence:</u> the absence of evidence of a duty will suffice. Also, no evidence that SPAVI is a successor in interest or took on this liability

8) **<u>Cause of Action No. 7: Breach of Contract.</u>**

a. Element No. 1: there is a contract between PCJV and Cinco Corporation or SPAVI, as Cinco Corporation's successor-in-interest.

i. Disputed Status of Element 1:  The parties dispute this element is satisfied.

ii. Nature of Dispute: factual and legal

iii. <u>PCJV USA Parties' Position Statement:</u> The term for PCJV USA, LLC's use of the U.S. Potato Corner trademarks "can be [i]mplied from the nature of the contract and

1    circumstances surrounding it." *See Consolidated Theatres,*

2    *Inc. v. Theatrical Stage Emp. Union, Local 16*, 69 Cal.2d

3    713, 725 (1968). The "initial effort of the court, in construing

4    contracts of continuing performance of forebearance which

5    contain no express term of duration, must always be that of

6    implying a term of duration commensurate with the

7    intentions of the parties . . . ." *Id.* at 727. Only when "the

8    nature of the contract and the totality of the surrounding

9    circumstances give no suggestion as to any ascertainable

10   term . . . , the obligations under the contract shall be

11   terminable at will by any party upon reasonable notice after

12   such a reasonable time has elapsed." *Id.* Further, it is

13   immaterial that SPAVI had full knowledge of the contracts'

14   terms. *See Jenni Rivera Enterprises, LLC v. Latin World*

15   *Entertainment Holdings, Inc.*, 36 Cal. App. 5th 766, 783

16   (2019). Nor is SPAVI's belief about the legal significance of

17   facts or belief that the parties' agreements are legally binding

18   or has a different legal effect from what it is judicially held to

19   have.  *See Little v. Amber Hotel Co.*, 202 Cal. App. 4th 280,

20   302 (2011)

21   iv.   Plaintiff's Position Statement: as drafted it is impossible to

22         know what the specific contract is that is at issue here. It has

23         never been disclosed, and still undisclosed. Rather than

24         jettison the claim or actually identify the  contract, instead,

25         Defendants' solution is to fudge with obtuse language in the

26         jury instructions, designed to confuse everyone, including the

27         jury: "there was a contract between any one of the PCJV

28         Plaintiffs and any one of the Cinco parties." Indeed, the only

1    contract that Cinco has been a party to with any of these

2    Counterclaimants is the Settlement Agreement of the Prior

3    Governance Action. There is no other written agreement

4    between  PCJV and Cinco, or between any other

5    Counterclaimant and Cinco.  It is possible that

6    Counterclaimants are seeking to allege that Cinco is an alter

7    ego of Potato Corner  International or others, however,

8    PCJV and the other counterclaimants already  alleged this --

9    alt3er ego status of Cinco --  and after a negotiated

10    settlement, dismissed this claim with prejudice. They may

11    not raise it now. *See, e.g., Torrey Pines Bank v. Superior Ct.*,

12    216 Cal. App. 3d 813, 820 (Ct. App. 1989) (holding that ""a

13    dismissal with prejudice is the maiden name for a  common

14    law retraxit," and "[a] retraxit is equivalent to a judgment on

15    the merits and as such bars further litigation on the same

16    subject matter between the parties."); *Datta v. Staab*, 173

17    Cal. App. 2d 613, 620—21 (1959) ("The effect of a dismissal

18    with prejudice is quite different, however, when it is

19    executed and filed in return for a consideration moving from

20    the defendant. Such a dismissal operates as a complete bar to

21    any future action and has the same legal effect as a common

22    law petraxit.").

23    v.    Defendants' Supporting Evidence: the following categories,

24    which are defined above, capture the key phases and

25    supporting evidence: Superseding Joint Venture (2008–

26    2010), Alternative Licensing Arrangements and Ongoing

27    Ratification (2011–2012), Formalization and Modification of

28    the Joint Venture (2012), LA Group Partnership Agreement

1    and Evolving Business Dynamics and Terms (2013–2018),

2    Dispute, Litigation, and State Court Proceedings (2018 and

3    Beyond), and Ongoing Annual Ratification and Regulatory

4    Compliance.

5        vi.    SPAVI Parties' Supporting Evidence: Each of the

6            agreements included in the trial exhibits and testimony of

7            Mr. Magsaysay, Mr. Koren, and Ms. Victor – all of which

8            will establish that none of the Counterclaimants – PCJV,

9            PCIT, LA Group LLC, GK Capital, NKM, or Koren have

10           any contract to which Cinco has privity; the settlement

11           agreement (Trial Exhibit 1172) and evidence of the

12           dismissals with prejudice, as well as the pleadings in the

13           prior case establishing what has been dismissed, and subject

14           to retraxit.

15    b.  Element No. 2: PCJV USA Parties did all or substantially all of the

16        things required under the contract, or were excused from so

17        performing:

18        i.    Disputed Status of Element 2: The parties dispute this

19            element is satisfied.

20        ii.   Nature of Dispute: factual and legal.

21        iii.  PCJV USA Parties' Position Statement: Plaintiff's position

22            statement does not address a legal issue concerning this

23            element. To the extent Plaintiff's position statement

24            addresses element 1, PCJV USA Parties incorporate their

25            respective response here

26        iv.   Plaintiff's Position Statement: as drafted it is impossible to

27            know what the specific contract is at issue here. It has never

28            been disclosed, and still undisclosed. So, when this element

1   in the instructions says, "the contract," whereas the prior

2   element refers to some unidentified contract, as a matter of

3   law, yes, this element is disputed. To the extent any actual

4   contract ever existed between Cinco and these parties, the

5   only one that is possible is the Settlement Agreement and

6   corresponding agreement selling PCJV equity to GKK

7   Capital. (Trial Exhibit 1176.) Because Cinco has never been

8   a party to any other contract with any of the Counterclaim

9   Defendants, that is the only one that could possibly be at

10   issue, but Defendants refuse to acknowledge this. It is

11   possible that Counterclaimants are seeking to allege that

12   Cinco is an alter ego of Potato Corner  International or

13   others, however,  PCJV and the other counterclaimants

14   already  alleged this --  alter ego status of Cinco --  and after

15   a negotiated settlement, dismissed this claim with prejudice.

16   They may not raise it now. *See, e.g., Torrey Pines Bank v.*

17   *Superior Ct.*, 216 Cal. App. 3d 813, 820 (Ct. App. 1989)

18   (holding that "a dismissal with prejudice is the maiden name

19   fir a common law retraxit," and "[a] retraxit is equivalent to a

20   judgment on the merits and as such bars further litigation on

21   the same subject matter between the parties."); *Datta v.*

22   *Staab*, 173 Cal. App. 2d 613, 620—21 (1959) ("The effect of

23   a dismissal with prejudice is quite different, however, when

24   it is executed and filed in return for a consideration moving

25   from the defendant. Such a dismissal operates as a complete

26   bar to any future action and has the same legal effect as a

27   common law petraxit.") (internal

28       v.   <u>PCJV USA Parties' Supporting Evidence</u>: the following

---

112

categories, which are defined above, capture the key phases and supporting evidence: Superseding Joint Venture (2008–2010), Alternative Licensing Arrangements and Ongoing Ratification (2011–2012), Formalization and Modification of the Joint Venture (2012), LA Group Partnership Agreement and Evolving Business Dynamics and Terms (2013–2018), Dispute, Litigation, and State Court Proceedings (2018 and Beyond), and Ongoing Annual Ratification and Regulatory Compliance.

vi.   SPAVI Parties' Supporting Evidence: Each of the agreements included in the trial exhibits and testimony of Mr. Magsaysay, Mr. Koren, and Ms. Victor – all of which will establish that none of the Counterclaimants – PCJV, PCIT, LA Group LLC, GK Capital, NKM, or Koren have any contract to which Cinco has privity; the settlement agreement (Trial Exhibit 1172) and evidence of the dismissals with prejudice, as well as the pleadings in the prior case establishing what has been dismissed, and subject to retraxit..

c.   Element No. 3: Cinco Corporation or SPAVI, as Cinco Corporation's successor-in-interest, breached the contract

i.   Disputed Status of Element 3: The parties dispute this element is satisfied.

ii.   Nature of Dispute: factual and legal.

iii.   PCJV USA Parties' Position Statement: SPAVI intended to cause the breach of the above listed contracts by: (1) allegedly acquiring IP rights from Cinco (which SPAVI claims include US IP rights), without LA

1   Group's/Koren's/PCJV's prior written consent in violation of

2   the JVA/AJVA/LLC Agreement; (2) failing to allegedly

3   acquire the associated obligations and burdens under those

4   agreements to, for example, acknowledge our use and

5   termination rights, make best efforts to cooperate for the

6   success of PCJV, to perform further acts (such as execute

7   and deliver all required documents), if necessary, to provide

8   us use rights, or to, at minimum, acknowledge that PCJV

9   maintains a 50-year license or at least may continue to use

10  for as long as necessary under the franchise agreements it

11  was authorized to sign with franchisees in violation of the

12  JVA/AJVA/LLC Agreement/license agreements/MSA (and

13  associated written, oral, implied-in-fact

14  agreements/modifications, such as meeting minutes, written

15  communications of the PCJV members/managers, FDDs);

16  (3) refusing to acknowledge PCJV's right to reverse engineer

17  the powders/spices in violation of the PCJV board meeting

18  minutes; (4) refusing to acknowledge PCJV's affiliated

19  Koren stores' right not to pay royalties in accordance with

20  the JVA/AJVA/LLC Agreement; (5) refusing to

21  acknowledge LA Group's and Cinco Group/PCI Group's

22  mutual waiver of royalties as to all other initial/franchise fees

23  or other royalty income actually collected or to be collected

24  by PCJV in accordance with the JVA/AJVA/LLC

25  Agreement/FDDs; (6) refusing to honor the settlement struck

26  with Cinco whereby Koren/GK acquired all interests and

27  attached interests (despite representing that it would); and (7)

28  causing certain PCJV franchisees to breach their franchise

1      agreements and associate themselves with SPAVI.

2          iv.    Plaintiff's Position Statement: The only contracts that have

3                  been identified as being "breached" are the unsigned licensee

4                  agreement and the AJVA. Neither document binds Cinco –

5                  indeed, that the AJVA constitutes an agreement to agree and

6                  not a contract  has  already been adjudicated and decided as

7                  law of the case. It is impossible to  know what the specific

8                  contract is at issue here. To the extent any actual contract

9                  ever existed between Cinco and these parties, the only one

10                 that is possible is the Settlement Agreement and

11                 corresponding agreement selling PCJV equity to GKK

12                 Capital. (Trial Exhibit 1176.) Because Cinco has never been

13                 a party to any other contract with any of the Counterclaim

14                 Defendants, that is the only one that could possibly be at

15                 issue, but Defendants refuse to acknowledge this.

16          v.     PCJV USA Parties' Supporting Evidence: the following

17                 categories, which are defined above, capture the key phases

18                 and supporting evidence: Superseding Joint Venture (2008–

19                 2010), Alternative Licensing Arrangements and Ongoing

20                 Ratification (2011–2012), Formalization and Modification of

21                 the Joint Venture (2012), LA Group Partnership Agreement

22                 and Evolving Business Dynamics and Terms (2013–2018),

23                 Dispute, Litigation, and State Court Proceedings (2018 and

24                 Beyond), Ongoing Annual Ratification and Regulatory

25                 Compliance, and SPAVI Parties' Tortious Conduct.

26          vi.    SPAVI Parties' Supporting Evidence: The absence of

27                 evidence that  Cinco was a party to, or  breached, any

28                 contract with any  of the Counterclaimants is  the supporting

1    evidence.

2        d.  Element No. 4: PCJV USA Parties were harmed.

3            i.   Disputed Status of Element 4:  The parties dispute this

4                 element is satisfied.

5            ii.  Nature of Dispute: factual and legal.

6            iii. Defendants' Position Statement: Plaintiff's position

7                 statement does not address a legal issue concerning this

8                 element. To the extent Plaintiff's position statement

9                 addresses element 1, PCJV USA Parties incorporate their

10                respective response here.

11           iv.  Plaintiff's Position Statement: Cinco breached no contract.

12                The only contracts that have been identified as being

13                "breached" are the unsigned licensee agreement and the

14                AJVA. Neither document binds Cinco – indeed, that the

15                AJVA constitutes an agreement to agree and not a contract

16                has  already been adjudicated and decided as law of the case.

17                It is impossible to  know what the specific contract is at issue

18                here. To the extent any actual contract ever existed between

19                Cinco and these parties, the only one that is possible is the

20                Settlement Agreement and corresponding agreement selling

21                PCJV equity to GKK Capital. (Trial Exhibit 1176.) Because

22                Cinco has never been a party to any other contract with any

23                of the Counterclaim Defendants, that is the only one that

24                could possibly be at issue, but Defendants refuse to

25                acknowledge this.

26           v.   Defendants' Supporting Evidence: the following category,

27                which is defined above, captures the key phase and

28                supporting evidence: SPAVI Parties' Tortious Conduct.

vi.  SPAVI Parties' Supporting Evidence: The absence of evidence that Cinco was a party to, or breached, any contract with any of the Counterclaimants is the supporting evidence, as there is no way any of the Counterclaimants could have been harmed.

**9)  Cause of Action No. 9: Breach of Covenant oof Good Faith and Fair Dealing.**

e.  Element No. 1: there is a contract between a Counterclaimant and Cinco Corporation / that SPAVI is a successor in interest to a contract with Cinco.

i.  Disputed Status of Element 1: The parties dispute this element is satisfied.

ii.  Nature of Dispute: factual and legal

iii.  PCJV USA Parties' Position Statement: The term for PCJV USA, LLC's use of the U.S. Potato Corner trademarks "can be [i]mplied from the nature of the contract and circumstances surrounding it." *See Consolidated Theatres, Inc. v. Theatrical Stage Emp. Union, Local 16*, 69 Cal.2d 713, 725 (1968). The "initial effort of the court, in construing contracts of continuing performance of forebearance which contain no express term of duration, must always be that of implying a term of duration commensurate with the intentions of the parties . . . ." *Id.* at 727. Only when "the nature of the contract and the totality of the surrounding circumstances give no suggestion as to any ascertainable term . . . , the obligations under the contract shall be terminable at will by any party upon reasonable notice after such a reasonable time has elapsed." *Id.* Further, it is

1    immaterial that SPAVI had full knowledge of the contracts'

2    terms. *See Jenni Rivera Enterprises, LLC v. Latin World*

3    *Entertainment Holdings, Inc.*, 36 Cal. App. 5th 766, 783

4    (2019). Nor is SPAVI's belief about the legal significance of

5    facts or belief that the parties' agreements are legally binding

6    or has a different legal effect from what it is judicially held to

7    have. *See Little v. Amber Hotel Co.*, 202 Cal. App. 4th 280,

8    302 (2011).

9    iv.    Plaintiff's Position Statement: Moreover, and again, as

10    drafted it is impossible to  know what the specific contract is

11    that is at issue here. It has never been disclosed, and still

12    undisclosed. Rather than jettison the claim or actually

13    identify the  contract, instead, Defendants' solution is to

14    fudge with obtuse language in the jury instructions, designed

15    to confuse everyone, including the jury: "there was a contract

16    between any one of the PCJV Plaintiffs and any one of the

17    Cinco parties." Indeed, the only contract that Cinco has been

18    a party to with any of these Counterclaimants is the

19    Settlement Agreement of the Prior Governance Action. There

20    is no other written agreement between  PCJV and Cinco, or

21    between any other Counterclaimant and Cinco.  It is possible

22    that Counterclaimants are seeking to allege that Cinco is an

23    alter ego of Potato Corner  International or others, however,

24    PCJV and the other counterclaimants already  alleged this --

25    alt3er ego status of Cinco --  and after a negotiated

26    settlement, dismissed this claim with prejudice. They may

27    not raise it now. *See, e.g., Torrey Pines Bank v. Superior Ct.*,

28    216 Cal. App. 3d 813, 820 (Ct. App. 1989) (holding that ""a

1    dismissal with prejudice is the maiden name for a common
2    law retraxit," and "[a] retraxit is equivalent to a judgment on
3    the merits and as such bars further litigation on the same
4    subject matter between the parties."); *Datta v. Staab*, 173
5    Cal. App. 2d 613, 620—21 (1959) ("The effect of a dismissal
6    with prejudice is quite different, however, when it is
7    executed and filed in return for a consideration moving from
8    the defendant. Such a dismissal operates as a complete bar to
9    any future action and has the same legal effect as a common
10   law petraxit."). Second, as for SPAVI, it purchased
11   intellectual property, and did not assume any contracts
12   binding Cinco. Thus, the claim that SPAVI is  bound to good
13   faith and fair dealing as a "successor in interest has no basis"
14   and can be resolved a matter of law,,  given that this  simply
15   requires interpretation of contracts  binding  Cinco (of which
16   there are no one) to which SPAVI assumed (also, null set).
17   Put simply – S{PAVI  is  not a  successor in interest to any
18   contract of Cinco, and by purchasing the intellectual property
19   of  Cinco, it was only  bound to those contracts  involving the
20   use and licensing of the brand – none of which are at issue  in
21   this case.

22        v.    <u>PCJV USA Parties' Supporting Evidence:</u> the following
23              categories, which are defined above, capture the key phases
24              and supporting evidence: Superseding Joint Venture (2008–
25              2010), Alternative Licensing Arrangements and Ongoing
26              Ratification (2011–2012), Formalization and Modification of
27              the Joint Venture (2012), LA Group Partnership Agreement
28              and Evolving Business Dynamics and Terms (2013–2018),

1  Dispute, Litigation, and State Court Proceedings (2018 and

2  Beyond), and Ongoing Annual Ratification and Regulatory

3  Compliance.

4  vi.  <u>SPAVI Parties' Supporting Evidence:</u> Each of the

5  agreements included in the trial exhibits and testimony of

6  Mr. Magsaysay, Mr. Koren, and Ms. Victor – all of which

7  will establish that none of the Counterclaimants – PCJV,

8  PCIT, LA Group LLC, GK Capital, NKM, or Koren have

9  any contract to which Cinco has privity; the settlement

10  agreement (Trial Exhibit 1172) and evidence of the

11  dismissals with prejudice, as well as the pleadings in the

12  prior case establishing what has been dismissed, and subject

13  to retraxit.

14  f.  Element No. 2: The Counterclaimant that is a party to the contract

15  did all or substantially all of the things required under the contract,

16  or were excused from so performing:

17  i.  Disputed Status of Element 2: The parties dispute this

18  element is satisfied.

19  ii.  Nature of Dispute: factual and legal.

20  iii.  <u>PCJV USA Parties' Position Statement:</u> Plaintiff's position

21  statement does not address a legal issue concerning this

22  element. To the extent Plaintiff's position statement

23  addresses element 1, PCJV USA Parties incorporate their

24  respective response here.

25  iv.  <u>Plaintiff's Position Statement:</u> as drafted it is impossible to

26  know what the specific contract is at issue here. It has never

27  been disclosed, and still undisclosed. So, when this element

28  in the instructions says, "the contract," whereas the prior

120

1    element refers to some unidentified contract, as a matter of

2    law, yes, this element is disputed. To the extent any actual

3    contract ever existed between Cinco and these parties, the

4    only one that is possible is the Settlement Agreement and

5    corresponding agreement selling PCJV equity to GKK

6    Capital. (Trial Exhibit 1176.) Because Cinco has never been

7    a party to any other contract with any of the Counterclaim

8    Defendants, that is the only one that could possibly be at

9    issue, but Defendants refuse to acknowledge this. It is

10   possible that Counterclaimants are seeking to allege that

11   Cinco is an alter ego of Potato Corner  International or

12   others, however,  PCJV and the other counterclaimants

13   already  alleged this --  alter ego status of Cinco --  and after

14   a negotiated settlement, dismissed this claim with prejudice.

15   They may not raise it now. *See, e.g., Torrey Pines Bank v.*

16   *Superior Ct*., 216 Cal. App. 3d 813, 820 (Ct. App. 1989)

17   (holding that "a dismissal with prejudice is the maiden name

18   for a  common law retraxit," and "[a] retraxit is equivalent to

19   a judgment on the merits and as such bars further litigation

20   on the same subject matter between the parties."); *Datta v.*

21   *Staab*, 173 Cal. App. 2d 613, 620—21 (1959) ("The effect of

22   a dismissal with prejudice is quite different, however, when

23   it is executed and filed in return for a consideration moving

24   from the defendant. Such a dismissal operates as a complete

25   bar to any future action and has the same legal effect as a

26   common law petraxit."). Second, as for SPAVI, it purchased

27   intellectual property, and did not assume any contracts

28   binding Cinco. Thus, the claim that SPAVI is  bound to good

1    faith and fair dealing as a "successor in interest has no basis"

2    and can be resolved a matter of law,,  given that this  simply

3    requires interpretation of contracts  binding  Cinco (of which

4    there are no one) to which SPAVI assumed (also, null set).

5    Put simply – S{PAVI  is  not a  successor in interest to any

6    contract of Cinco, and by purchasing the intellectual property

7    of  Cinco, it was only  bound to those contracts  involving the

8    use and licensing of the brand – none of which are at issue  in

9    this case.

10   v.    PCJV USA Parties' Supporting Evidence: the following

11        categories, which are defined above, capture the key phases

12        and supporting evidence: Superseding Joint Venture (2008–

13        2010), Alternative Licensing Arrangements and Ongoing

14        Ratification (2011–2012), Formalization and Modification of

15        the Joint Venture (2012), LA Group Partnership Agreement

16        and Evolving Business Dynamics and Terms (2013–2018),

17        Dispute, Litigation, and State Court Proceedings (2018 and

18        Beyond), Ongoing Annual Ratification and Regulatory

19        Compliance, and SPAVI Parties' Tortious Conduct.

20   vi.   SPAVI Parties' Supporting Evidence: Each of the

21        agreements included in the trial exhibits and  testimony of

22        Mr. Magsaysay, Mr. Koren, and Ms. Victor – all of  which

23        will establish that  none of the Counterclaimants – PCJV,

24        PCIT, LA Group LLC, GK Capital, NKM, or Koren have

25        any contract to which Cinco has privity; the settlement

26        agreement (Trial Exhibit 1172) and evidence of the

27        dismissals with  prejudice, as well as the pleadings in the

28        prior case establishing what has been dismissed, and subject

1     to retraxit.

2     g.  Element No. 3: Cinco or SPAVI engaged in conduct that breached

3         the duty of good faith and fair dealing.

4         i.   Disputed Status of Element 3:  The parties dispute this

5              element is satisfied.

6         ii.  Nature of Dispute: factual and legal.

7         iii. PCJV USA Parties' Position Statement: Plaintiff's position

8              statement does not address a legal issue concerning this

9              element. To the extent Plaintiff's position statement

10             addresses element 1, PCJV USA Parties incorporate their

11             respective response here.

12        iv.  Plaintiff's Position Statement: The only contracts that have

13             been identified as being "breached" are the unsigned licensee

14             agreement and the AJVA. Neither document binds Cinco –

15             indeed, that the AJVA constitutes an agreement to agree and

16             not a contract  has  already been adjudicated and decided as

17             law of the case. It is impossible to  know what the specific

18             contract is at issue here. To the extent any actual contract

19             ever existed between Cinco and these parties, the only one

20             that is possible is the Settlement Agreement and

21             corresponding agreement selling PCJV equity to GKK

22             Capital. (Trial Exhibit 1176.) Because Cinco has never been

23             a party to any other contract with any of the Counterclaim

24             Defendants, that is the only one that could possibly be at

25             issue, but Defendants refuse to acknowledge this. In the

26             absence of a contract binding Cinco, it is possible that

27             Counterclaimants are seeking to allege that Cinco is an alter

28             ego of Potato Corner  International or others, however,

123

1    PCJV and the other counterclaimants already  alleged this --

2    alter ego status of Cinco --  and after a negotiated settlement,

3    dismissed this claim with prejudice. They may not raise it

4    now. *See, e.g., Torrey Pines Bank v. Superior Ct*., 216 Cal.

5    App. 3d 813, 820 (Ct. App. 1989) (holding that ""a dismissal

6    with prejudice is the maiden name for a  common law

7    retraxit," and "[a] retraxit is equivalent to a judgment on the

8    merits and as such bars further litigation on the same subject

9    matter between the parties."); *Datta v. Staab*, 173 Cal. App.

10    2d 613, 620—21 (1959) ("The effect of a dismissal with

11    prejudice is quite different, however, when it is executed and

12    filed in return for a consideration moving from the defendant.

13    Such a dismissal operates as a complete bar to any future

14    action and has the same legal effect as a common law

15    petraxit."). Second, as for SPAVI, it purchased intellectual

16    property, and did not assume any contracts binding Cinco.

17    Thus, the claim that SPAVI is  bound to good faith and fair

18    dealing as a "successor in interest has no basis" and can be

19    resolved a matter of law,,  given that this  simply requires

20    interpretation of contracts  binding  Cinco (of which there are

21    no one) to which SPAVI assumed (also, null set). Put simply

22    – S{PAVI  is  not a  successor in interest to any contract of

23    Cinco, and by purchasing the intellectual property  of  Cinco,

24    it was only  bound to those contracts involving the use and

25    licensing of the brand– none of which are at issue  in this

26    case.

27    v.    <u>PCJV USA Parties' Supporting Evidence:</u> the following

28          category, which is defined above, captures the key phase and

1    supporting evidence: SPAVI Parties' Tortious Conduct.

2    vi.    <u>SPAVI Parties' Supporting Evidence:</u> The absence of

3    evidence that Cinco was a party to, or breached, any

4    contract with any of the Counterclaimants is the supporting

5    evidence. Plaintiff's Position Statement: In addition to the

6    absence of any contract binding Cinco or SPAVI – thus

7    there could be no corresponding breach of the covenant of

8    good faith and fair dealing – the evidence of Koren's

9    behavior during the license negotiations, particularly with

10    SPAVI, lead to the conclusion that it was he that caused the

11    negotiations to fail, not anyone else. Testimony of SPAVI

12    (Gregorio and Tan) as well as their correspondence with

13    Koren (Trial Exhibits 20-31) will establish this. The only

14    contracts that have been identified as being "breached" are

15    the unsigned licensee agreement and the AJVA. Neither

16    document binds Cinco – indeed, that the AJVA constitutes an

17    agreement to agree and not a contract has already been

18    adjudicated and decided as law of the case. It is impossible to

19    know what the specific contract is at issue here. To the extent

20    any actual contract ever existed between Cinco and these

21    parties, the only one that is possible is the Settlement

22    Agreement and corresponding agreement selling PCJV

23    equity to GKK Capital. (Trial Exhibit 1176.) I acknowledge

24    has never been a party to any other contract with any of the

25    Counterclaim Defendants, which is the only one that could

26    possibly be at issue, but Defendants refuse to acknowledge

27    this.

28    h.    <u>Element No. 4:</u> Counterclaimants were harmed.

1      i.    Disputed Status of Element 4:  The parties dispute this

2            element is satisfied.

3      ii.   Nature of Dispute: legal.

4      iii.  PCJV Usa Parties' Position Statement: Plaintiff's position

5            statement does not address a legal issue concerning this

6            element. To the extent Plaintiff's position statement

7            addresses element 1, PCJV USA Parties incorporate their

8            respective response here.

9      iv.   Plaintiff's Position Statement: Cinco breached no contract.

10           The only contracts that have been identified as being

11           "breached" are the unsigned licensee agreement and the

12           AJVA. Neither document binds Cinco – indeed, that the

13           AJVA constitutes an agreement to agree and not a contract

14           has  already been adjudicated and decided as law of the case.

15           It is impossible to  know what the specific contract is at issue

16           here. To the extent any actual contract ever existed between

17           Cinco and these parties, the only one that is possible is the

18           Settlement Agreement and corresponding agreement selling

19           PCJV equity to GKK Capital. (Trial Exhibit 1176.) Because

20           Cinco has never been a party to any other contract with any

21           of the Counterclaim Defendants, that is the only one that

22           could possibly be at issue, but Defendants refuse to

23           acknowledge this.

24    i.  **Cause of Action No. 11: Quantum Meruit.**

25         i.    Element No. 1: any of the SPAVI Parties requested, by words

26               or conduct, that any one of the PCJV USA Parties perform

27               services for the benefit of any of the SPAVI Parties.

28                  i.  Disputed Status of Element 1:  The parties dispute that

---

1    this element is satisfied.

2    ii.   <u>Nature of Dispute:</u> Factual

3    iii.   <u>PCJV USA Parties' Supporting Evidence:</u> the following

4    categories, which are defined above, capture the key

5    phases and supporting evidence: Superseding Joint

6    Venture (2008–2010), Alternative Licensing

7    Arrangements and Ongoing Ratification (2011–2012),

8    Formalization and Modification of the Joint Venture

9    (2012), LA Group Partnership Agreement and Evolving

10    Business Dynamics and Terms (2013–2018), Dispute,

11    Litigation, and State Court Proceedings (2018 and

12    Beyond), and Ongoing Annual Ratification and

13    Regulatory Compliance.

14    iv.   <u>SPAVI and Cinco's Supporting Evidence:</u> the lack of

15    evidence of this will suffice. Testimony of Gregorio will

16    confirm as will testimony of Koren.

17    ii.   <u>Element No. 2</u>: any one of the PCJV USA Parties performed

18    the services as requested.

19    i.   Disputed Status of Element 2:  The parties dispute that

20    this element is satisfied.

21    ii.   Nature of Dispute: factual

22    iii.   <u>PCJV USA Parties' Supporting Evidence:</u> the following

23    categories, which are defined above, capture the key

24    phases and supporting evidence: Superseding Joint

25    Venture (2008–2010), Alternative Licensing

26    Arrangements and Ongoing Ratification (2011–2012),

27    Formalization and Modification of the Joint Venture

28    (2012), LA Group Partnership Agreement and Evolving

1           Business Dynamics and Terms (2013–2018), Dispute,

2           Litigation, and State Court Proceedings (2018 and

3           Beyond), Ongoing Annual Ratification and Regulatory

4           Compliance, and SPAVI Parties' Tortious Conduct.

5       iv.   <u>SPAVI and Cinco's Supporting Evidence:</u> the lack of

6           evidence of this will suffice. Testimony of Gregorio will

7           confirm as will testimony of Koren.

8     iii.   <u>Element No. 3</u>: the requesting SPAVI Party/Parties has not

9       paid any one of the PCJV USA Parties for the services.

10       i.   Disputed Status of Element 3:  The parties dispute that

11           this element is satisfied.

12       ii.   Nature of Dispute: Factual

13       iii.   <u>PCJV USA Parties' Supporting Evidence:</u> the following

14           category, which is defined above, captures the key phase

15           and supporting evidence: SPAVI Parties' Tortious

16           Conduct.

17       iv.   <u>SPAVI and Cinco's Supporting Evidence:</u> the lack of

18           evidence of this will suffice. Testimony of Gregorio will

19           confirm as will testimony of Koren.

20    iv.   <u>Element No. 4</u>: the reasonable value of the services that were

21       provided.

22       i.   Disputed Status of Element 4:  The parties dispute that

23           this element is satisfied.

24       ii.   Nature of Dispute: Factual

25       iii.   <u>PCJV USA Parties' Supporting Evidence:</u> documents and

26           testimony including and related to the following: (1)

27           PCJV USA Parties' financial records; (2) PCJV USA

28           Parties' historical growth; and (3) PJCV USA Parties'

1        franchisee agreements and communications.

2        iv.  SPAVI and Cinco's Supporting Evidence: there is no

3             evidence of this.

4

5    **III.**    **SPAVI Parties' Affirmative Defenses**

6        1)  **Affirmative Defense No. 1**: Laches (asserted by Counter Defendant and

7            Third Party Defendants as to all claims alleged against them)

8            a.  Element No. 1: A Delay in asserting a claim.

9                i.   This element is disputed

10               ii.  Nature of Dispute: Legal and Factual

11               iii. Plaintiff's Position Statement: Laches is an affirmative

12                    defense.

13               iv.  Defendants' Position Statement: Laches is an equitable

14                    claim to be tried by the Court. *Ultimax Cement Mfg.*

15                    *Corp. v. CTS Cement Mfg. Corp.*, 856 F.Supp. 2d 1136,

16                    1151 (2012).

17               v.   Plaintiff's Supporting Evidence:  Both the JVA and

18                    AJVA contain an agreement to agree on a Master License

19                    Agreement. However, there was never a written license

20                    agreement executed between Counterclaimants and

21                    Cinco. Counterclaimants entered into a negotiation

22                    process with Cinco, prior to SPAVI's acquisition of the

23                    Potato Corner brand and all of the Potato Corner

24                    Intellectual Property from Cinco, for the terms of a

25                    license to use the Potato Corner Intellectual Property.

26                    These negotiations began before SPAVI purchased the

27                    rights to the Potato Corner IP. So, Counterclaimants have

28                    been aware of the lack of ownership rights in the Potato

Corner Intellectual Property and the non-existence of a written agreement. Then, between December of 2021 through 2024, the months immediately preceding this action, SPAVI engaged in a good faith and exhaustive attempt to negotiate the terms of a written license with PCJV as well. Never once did Counterclaimants state that they had ownership rights to the Potato Corner Intellectual Property, and SPAVI relied on that representation because had one been expressed, that would have been a dispute as to the ownership rights to which SPAVI would have filed this lawsuit sooner. Additional evidence includes: Notarized Deeds signed by seller and buyer; USPTO filings including Registrations and Assignments; Testimony of Gregorio (Plaintiff's CEO), Magsaysay (Cinco's CEO), Koren, Ybanez (Plaintiff's General Counsel), Tan (Director responsible for international franchising); and emails and correspondence during the negotiation of the terms of the license agreement.

vi. PCJV USA's Parties Supporting Evidence: SPAVI parties have not articulated their defense beyond what is included in their Answers until 7am on August 12, 2025. *See* n. 1. As it is articulated in the Answers, PCJV Parties cannot determine the factual basis for the defense. As such, the out of an abundance of caution, PCJV Parties incorporate by reference all of the evidence cited in support of their causes of action

b. Element No. 2: acquiescence by Counterclaim Defendants or Third

Party Defendants or their suffering of prejudice, which can include detrimental reliance on the status quo, loss of evidence, or other circumstances that make it inequitable to allow the claimants to assert their claim after the delay.

  i. This element is disputes

  ii. Nature of Dispute: Legal and factual

  iii. Plaintiff's Position Statement: Laches is an affirmative defense.

  iv. <u>PCJV USA Parties' Position Statement:</u> PCJV USA Parties' Position Statement: Laches is an equitable claim to be tried by the Court. *Ultimax Cement Mfg. Corp. v. CTS Cement Mfg. Corp.*, 856 F.Supp. 2d 1136, 1151 (2012). "A defendant must demonstrate three elements to successfully assert laches defense: (1) delay in asserting a right or claim; (2) the delay was not reasonable or excusable; and (3) prejudice to the party against whom laches is asserted." *Magic Kitchen LLC v. Good Things Internat., Ltd.*, 153 Cal. App. 4th 1144, 1157 (2007). SPAVI Parties' statement of what it needs to prove here as an element to laches is incorrect

  v. Plaintiff's Supporting Evidence: Both the JVA and AJVA contain an agreement to agree on a Master License Agreement. However, there was never a written license agreement executed between Counterclaimants and Cinco. Counterclaimants entered into a negotiation process with Cinco, prior to SPAVI's acquisition of the Potato Corner brand and all of the Potato Corner Intellectual Property from Cinco, for the terms of a

1    license to use the Potato Corner Intellectual Property.

2    These negotiations began in [DATE]. So, as of [DATE],

3    Counterclaimants have been aware of the lack of

4    ownership rights in the Potato Corner Intellectual

5    Property and the non-existence of a written agreement.

6    Then, between December of 2021 through 2024, the

7    months immediately preceding this action, SPAVI

8    engaged in a good faith and exhaustive attempt to

9    negotiate the terms of a written license with PCJV as

10   well. Never once did Counterclaimants state that they had

11   ownership rights to the Potato Corner Intellectual

12   Property, and SPAVI relied on that representation because

13   had one been expressed, that would have been a dispute

14   as to the ownership rights to which SPAVI would have

15   filed this lawsuit sooner. Additional evidence includes:

16   Notarized Deeds signed by seller and buyer; USPTO

17   filings including Registrations and Assignments;

18   Testimony of Gregorio (Plaintiff's CEO), Magsaysay

19   (Cinco's CEO), Koren, Ybanez (Plaintiff's General

20   Counsel), Tan (Director responsible for international

21   franchising); and emails and correspondence during the

22   negotiation of the terms of the license agreement.

23   vi.   PCJV USA Parties' Supporting Evidence: SPAVI parties

24   have not articulated their defense beyond what is included

25   in their Answers until 7am on August 12, 2025. *See* n. 1.

26   As it is articulated in the Answers, PCJV Parties cannot

27   determine the factual basis for the defense.  As such, the

28   out of an abundance of caution, PCJV Parties incorporate

---

by reference all of the evidence cited in support of their

causes of action.

2) **<u>Affirmative Defense No. 2:</u>** Consent (asserted by Counterclaim

Defendant and Third Party Defendants as to all claims alleged against

them)

    a.  Element No. 1: One or more of the Counterclaimants or Third Party

Plaintiffs consented to the acts about which they complain.

        i.  This element is disputed.

        ii.  Nature of Dispute: Legal and factual

        iii.  Plaintiff's Position Statement: The elements are taken

from CACI 1721

        iv.  <u>PCJV USA Parties' Position Statement:</u> SPAVI Parties'

appear to have combined an element of their laches

affirmative defense. Otherwise, there is no legal support

for SPAVI Parties' articulated element

        v.  <u>Plaintiff's Supporting Evidence:</u> Both the JVA and AJVA

contain an agreement to agree on a Master License

Agreement. However, there was never a written license

agreement executed between Counterclaimants and

Cinco. Counterclaimants entered into a negotiation

process with Cinco, prior to SPAVI's acquisition of the

Potato Corner brand and all of the Potato Corner

Intellectual Property from Cinco, for the terms of a

license to use the Potato Corner Intellectual Property.

These negotiations began in [DATE]. So, as of [DATE],

Counterclaimants have been aware of the lack of

ownership rights in the Potato Corner Intellectual

Property and the non-existence of a written agreement.

1       Then, between December of 2021 through 2024, the
2       months immediately preceding this action, SPAVI
3       engaged in a good faith and exhaustive attempt to
4       negotiate the terms of a written license with PCJV as
5       well. Never once did Counterclaimants state that they had
6       ownership rights to the Potato Corner Intellectual
7       Property, and SPAVI relied on that representation because
8       had one been expressed, that would have been a dispute
9       as to the ownership rights to which SPAVI would have
10      filed this lawsuit sooner. Additional evidence includes:
11      Notarized Deeds signed by seller and buyer; USPTO
12      filings including Registrations and Assignments;
13      Testimony of Gregorio (Plaintiff's CEO), Magsaysay
14      (Cinco's CEO), Koren, Ybanez (Plaintiff's General
15      Counsel), Tan (Director responsible for international
16      franchising); and emails and correspondence during the
17      negotiation of the terms of the license agreement.

18      vi.   PCJV USA Parties' Supporting Evidence: SPAVI parties
19            have not articulated their defense beyond what is included
20            in their Answers until 7am on August 12, 2025. *See* n. 1.
21            As it is articulated in the Answers, PCJV Parties cannot
22            determine the factual basis for the defense.  As such, the
23            out of an abundance of caution, PCJV Parties incorporate
24            by reference all of the evidence cited in support of their
25            causes of action.

26  3) **Affirmative Defense No. 3:** Estoppel (asserted by Counterclaim
27      Defendant and Third Party Defendants as to all claims alleged against
28      them)

a. <u>Element No. 1:</u> A representation or concealment of material facts;

    i. This element is disputed

    ii. Nature of Dispute: Legal and factual

    iii. <u>SPAVI and Cinco's Position Statement:</u> Estoppel is an affirmative defense

    iv. <u>PCJV USA Parties Position:</u> PCJV USA Parties' Position Statement: Equitable estoppel is an equitable claim to be tried by the Court. *Ultimax Cement Mfg. Corp. v. CTS Cement Mfg. Corp.,* 856 F.Supp. 2d 1136, 1151 (2012).

    v. <u>Plaintiff's Supporting Evidence:</u> Counterclaimants have no evidence of a written license to use SPAVI's Potato Corner Intellectual Property, and, as such, its rights (that it has sold to its franchisees) derive from what is, at best, a terminable at will, fully revocable license because Defendants were nonetheless operating Potato Corner locations, as if a written license existed. See Pogrebnoy v. Russian Newspaper Distribution, Inc., 289 F. Supp. 3d 1061, 1070 (C.D. Cal. 2017), aff'd, 742 F. App'x 291 (9th Cir. 2018) ("[A]n implied license, like any other contract, is terminable at the will of either party if it is not for a specified term."). After SPAVI's acquisition of the Potato Corner brand, it became the licensor of the Potato Corner Intellectual Property. Between December of 2021 through 2024, the months immediately preceding this action, SPAVI engaged in a good faith and exhaustive attempt to negotiate the terms of a written license with PCJV. Defendant Guy Koren engaged and participated in this negotiation, but was unwilling to agree to any minimally

1  commercially viable licensing terms. Never once did

2  Counterclaimants state that they had ownership rights to

3  the Potato Corner Intellectual Property, and SPAVI relied

4  on that representation. Additional evidence includes:

5  Testimony of Gregorio (Plaintiff's CEO), Magsaysay

6  (Cinco's CEO), Koren, Ybanez (Plaintiff's General

7  Counsel), Tan (Director responsible for international

8  franchising); and emails and correspondence during the

9  negotiation of the terms of the license agreement.

10  vi.  PCJV USA Parties' Supporting Evidence: SPAVI parties

11  have not articulated their defense beyond what is included

12  in their Answers. As it is articulated there, PCJV Parties

13  cannot determine the factual basis for the defense.  As

14  such, the out of an abundance of caution, PCJV Parties

15  incorporate by reference all of the evidence cited in

16  support of their causes of action.

17  b.  Element 2: Made with knowledge, actual or virtual, of the facts;

18  i.  This element is disputed

19  ii.  Nature of Dispute: Legal and factual

20  iii.  Plaintiff's Position Statement: Estoppel is an affirmative

21  defense

22  iv.  PCJV USA Parties' Position Statement: Equitable

23  estoppel is an equitable claim to be tried by the Court.

24  *Ultimax Cement Mfg. Corp. v. CTS Cement Mfg. Corp.,*

25  856 F.Supp. 2d 1136, 1151 (2012).

26  v.  Plaintiff's Supporting Evidence: Plaintiff's Supporting

27  Evidence: Counterclaimants have no evidence of a written

28  license to use SPAVI's Potato Corner Intellectual

1  Property, and, as such, its rights (that it has sold to its
2  franchisees) derive from what is, at best, a terminable at
3  will, fully revocable license because Defendants were
4  nonetheless operating Potato Corner locations, as if a
5  written license existed. *See Pogrebnoy v. Russian*
6  *Newspaper Distribution, Inc.,* 289 F. Supp. 3d 1061, 1070
7  (C.D. Cal. 2017), aff'd, 742 F. App'x 291 (9th Cir. 2018)
8  ("[A]n implied license, like any other contract, is
9  terminable at the will of either party if it is not for a
10 specified term."). After SPAVI's acquisition of the Potato
11 Corner brand, it became the licensor of the Potato Corner
12 Intellectual Property. Between December of 2021 through
13 2024, the months immediately preceding this action,
14 SPAVI engaged in a good faith and exhaustive attempt to
15 negotiate the terms of a written license with PCJV.
16 Defendant Guy Koren engaged and participated in this
17 negotiation, but was unwilling to agree to any minimally
18 commercially viable licensing terms. Never once did
19 Counterclaimants state that they had ownership rights to
20 the Potato Corner Intellectual Property, and SPAVI relied
21 on that representation. Additional evidence includes:
22 Testimony of Gregorio (Plaintiff's CEO), Magsaysay
23 (Cinco's CEO), Koren, Ybanez (Plaintiff's General
24 Counsel), Tan (Director responsible for international
25 franchising); and emails and correspondence during the
26 negotiation of the terms of the license agreement
27   vi.  PCJV USA Parties' Supporting Evidence: SPAVI parties
28       have not articulated their defense beyond what is included

1       in their Answers. As it is articulated there, PCJV Parties

2       cannot determine the factual basis for the defense.  As

3       such, the out of an abundance of caution, PCJV Parties

4       incorporate by reference all of the evidence cited in

5       support of their causes of action

6   c.  Element 3: To a party ignorant, actually, and permissibly, of the

7       truth;

8           i.   This element is disputed

9           ii.  Nature of Dispute: legal and factual

10          iii. Plaintiff's position statement: Estoppel is an affirmative

11               defense

12          iv.  PCJV USA Parties' Position Statement: Equitable

13               estoppel is an equitable claim to be tried by the Court.

14               *Ultimax Cement Mfg. Corp. v. CTS Cement Mfg. Corp.*,

15               856 F.Supp. 2d 1136, 1151 (2012).

16          v.   Plaintiff's Supporting Evidence: Plaintiff's Supporting

17               Evidence: Counterclaimants have no evidence of a written

18               license to use SPAVI's Potato Corner Intellectual

19               Property, and, as such, its rights (that it has sold to its

20               franchisees) derive from what is, at best, a terminable at

21               will, fully revocable license because Defendants were

22               nonetheless operating Potato Corner locations, as if a

23               written license existed. See Pogrebnoy v. Russian

24               Newspaper Distribution, Inc., 289 F. Supp. 3d 1061, 1070

25               (C.D. Cal. 2017), aff'd, 742 F. App'x 291 (9th Cir. 2018)

26               ("[A]n implied license, like any other contract, is

27               terminable at the will of either party if it is not for a

28               specified term."). After SPAVI's acquisition of the Potato

Corner brand, it became the licensor of the Potato Corner Intellectual Property. Between December of 2021 through 2024, the months immediately preceding this action, SPAVI engaged in a good faith and exhaustive attempt to negotiate the terms of a written license with PCJV. Defendant Guy Koren engaged and participated in this negotiation, but was unwilling to agree to any minimally commercially viable licensing terms. Never once did Counterclaimants state that they had ownership rights to the Potato Corner Intellectual Property, and SPAVI relied on that representation. Instead, Counterclaimant engaged in the negotiation process. Additional evidence includes: Testimony of Gregorio (Plaintiff's CEO), Magsaysay (Cinco's CEO), Koren, Ybanez (Plaintiff's General Counsel), Tan (Director responsible for international franchising); and emails and correspondence during the negotiation of the terms of the license agreement

vi. <u>PCJV USA Parties' Supporting Evidence:</u> SPAVI parties have not articulated their defense beyond what is included in their Answers. As it is articulated there, PCJV Parties cannot determine the factual basis for the defense. As such, the out of an abundance of caution, PCJV Parties incorporate by reference all of the evidence cited in support of their causes of action

d. <u>Element 4:</u> With the intention, actual or virtual, that the ignorant party act on it; and

i. This element is disputed

ii. Nature of Dispute: legal and factual

iii.  <u>Plaintiff's position statement:</u> Estoppel is an affirmative defense

iv.  <u>PCJV USA Parties' Position Statement:</u> Equitable estoppel is an equitable claim to be tried by the Court. *Ultimax Cement Mfg. Corp. v. CTS Cement Mfg. Corp.*, 856 F.Supp. 2d 1136, 1151 (2012).

v.  <u>Plaintiff's Supporting Evidence:</u> Never once did Counterclaimants state that they had ownership rights to the Potato Corner Intellectual Property. Instead, Defendant Guy Koren engaged and participated in the negotiation of the license to use the Potato Corner Intellectual Property, with the intent of having SPAVI relied on that representation that Counterclaimant did not have a license. Additional evidence includes: Testimony of Gregorio (Plaintiff's CEO), Magsaysay (Cinco's CEO), Koren, Ybanez (Plaintiff's General Counsel), Tan (Director responsible for international franchising); and emails and correspondence during the negotiation of the terms of the license agreement

vi.  <u>PCJV USA Parties' Supporting Evidence:</u> SPAVI parties have not articulated their defense beyond what is included in their Answers. As it is articulated there, PCJV Parties cannot determine the factual basis for the defense.  As such, the out of an abundance of caution, PCJV Parties incorporate by reference all of the evidence cited in support of their causes of action.

e.  Element 5: That party was induced to act on it and was harmed.

i.  This element is disputed

ii.   Nature of Dispute: legal and factual

iii.   <u>Plaintiff's position statement:</u> Estoppel is an affirmative defense

iv.   <u>PCJV USA Parties' Position Statement:</u> Equitable estoppel is an equitable claim to be tried by the Court. *Ultimax Cement Mfg. Corp. v. CTS Cement Mfg. Corp.*, 856 F.Supp. 2d 1136, 1151 (2012).

v.   <u>Plaintiff's Supporting Evidence:</u> Never once did Counterclaimants state that they had ownership rights to the Potato Corner Intellectual Property. Instead, Defendant Guy Koren engaged and participated in the negotiation of the license to use the Potato Corner Intellectual Property, with the intent of having SPAVI relied on that representation that Counterclaimant did not have a license. Guy Koren refused to, engage in reasonable and good faith negotiation. Instead, he only offered royalty rates and license fees that were more than 90% below what Koren had agreed to be reasonable licensing fees over a decade prior. Koren also repeatedly disengaged from the negotiation process, but still was utilizing the Potato Corner Intellectual Property. In the three months prior to the termination of the licensing agreement, Koren had gone radio silent, leading SPAVI to believe that it no longer was interested in negotiating a license. Therefore, SPAVI had no option, but to terminate Counterclaimants license of the Potato Corner Intellectual Property. Additional evidence includes: Testimony of Gregorio (Plaintiff's CEO), Magsaysay (Cinco's CEO),

Koren, Ybanez (Plaintiff's General Counsel), Tan (Director responsible for international franchising); and emails and correspondence during the negotiation of the terms of the license agreement

vi.   <u>PCJV USA Parties' Supporting Evidence:</u> SPAVI parties have not articulated their defense beyond what is included in their Answers. As it is articulated there, PCJV Parties cannot determine the factual basis for the defense.  As such, the out of an abundance of caution, PCJV Parties incorporate by reference all of the evidence cited in support of their causes of action.

4)   **<u>Affirmative Defense No. 4</u>** Failure to Mitigate  Damages (asserted by Counterclaim Defendant and Third Party Defendants as to all claims alleged against them)

a.   Element No. 1: That the party seeking the damage award failed to use reasonable efforts to mitigate damages

i.   This element is disputed

ii.   Nature of Dispute: factual

iii.   <u>Plaintiff's Supporting Evidence:</u> Both the JVA and AJVA contain an agreement to agree on a Master License Agreement. There was never a written license agreement between Counterclaimants and counter defendants or third party defendants for the use of the Potato Corner Intellectual Property. Counterclaimants entered into a negotiation process with Cinco, prior to SPAVI's acquisition of the Potato Corner brand and all of the Potato Corner Intellectual Property from Cinco, for the terms of a license to use the Potato Corner Intellectual

1    Property. These negotiations began before SPAVI

2    purchased the rights to the Potato Corner IP. So,

3    Counterclaimants have been aware of the lack of

4    ownership rights in the Potato Corner Intellectual

5    Property and the non-existence of a written agreement.

6    Then, between December of 2021 through 2024, the

7    months immediately preceding the filing of this action,

8    SPAVI engaged in a good faith and exhaustive attempt to

9    negotiate the terms of a written license with

10    Counterclaimants as well. Never once did

11    Counterclaimants state that they had ownership rights to

12    the Potato Corner Intellectual Property, and SPAVI relied

13    on that representation because had one been expressed,

14    that would have been a dispute as to the ownership rights

15    to which SPAVI would have filed this lawsuit sooner.

16    Moreover, Guy Koren refused to engage in reasonable

17    and good faith negotiation, which would have led to the

18    execution of a licensing agreement. Instead, he only

19    offered royalty rates and license fees that were more than

20    90% below what Koren had agreed to be reasonable

21    licensing fees over a decade prior. Koren also repeatedly

22    disengaged from the negotiation process, but still was

23    utilizing the Potato Corner Intellectual Property. In the

24    three months prior to the termination of the licensing

25    agreement, Koren had gone radio silent, leading SPAVI to

26    believe that it no longer was interested in negotiating a

27    license. Therefore, SPAVI had no option, but to terminate

28    Counterclaimants license to use the Potato Corner

1                    Intellectual Property. Additional evidence includes:

2                    Notarized Deeds signed by seller and buyer; USPTO

3                    filings including Registrations and Assignments;

4                    Testimony of Gregorio (Plaintiff's CEO), Magsaysay

5                    (Cinco's CEO), Koren, Ybanez (Plaintiff's General

6                    Counsel), Tan (Director responsible for international

7                    franchising); May 31, 2024 Termination Letter; and

8                    emails and correspondence during the negotiation of the

9                    terms of the license agreement.

10            iv.  Defendants' Supporting Evidence: SPAVI parties have

11                  not articulated their defense beyond what is included in

12                  their Answers until 7am on August 12, 2025. *See* n. 1. As

13                  it is articulated in the Answers, PCJV Parties cannot

14                  determine the factual basis for the defense.  As such, the

15                  out of an abundance of caution, PCJV Parties incorporate

16                  by reference all of the evidence cited in support of their

17                  causes of action

18        b.  Element No. 2: the amount, if any, by which damages have been

19           mitigated

20             i.  This element is disputed

21            ii.  <u>Nature of Dispute:</u> factual

22           iii.  <u>Plaintiff's Supporting Evidence:</u> Had Counterclaimants

23                  negotiated in good faith, SPAVI would have executed a

24                  license agreement and not terminated the licensing

25                  agreement. The amount of alleged damage resulting from

26                  the termination of the license agreement could have been

27                  mitigated. Additional evidence includes: Amended Joint

28                  Venture Agreement and Joint Venture Agreement;

Testimony of Koren, Plaintiff executives Gregorio (Plaiuntiff's CEO), Concepcion (Plaintiff's COO charged with US operations), Tan (Director responsible for international franchising); Emails and correspondence with SPAVI, Koren, and PCJV relating to negotiations of a licensing agreement for the use of the Potato Corner Intellectual Property; Financial documents of Counterclaimants; May 31, 2024 Termination Letter

iv. Defendants' Supporting Evidence: SPAVI parties have not articulated their defense beyond what is included in their Answers until 7am on August 12, 2025. *See* n. 1. As it is articulated in the Answers, PCJV Parties cannot determine the factual basis for the defense.  As such, the out of an abundance of caution, PCJV Parties incorporate by reference all of the evidence cited in support of their causes of action

5) **Affirmative Defense No. 5:** Immunity (asserted by SPAVI as to all claims alleged against it)

a. Element No. 1 – That Counterclaim Defendant had a legitimate economic interest and thus shielded from liability in pursuit of its own lawful business interests

i. This element is disputed

ii. Nature of Dispute: Legal and factual

iii. PCJV USA Parties' Position Statement: PCJV USA Parties cannot articulate a response to this affirmative defense because SPAVI Parties did not provide their statement of what the applicable elements are or their positions regarding those elements.  They have otherwise

1          not articulated how this affirmative defense applies

2          beyond their Answers.

3          iv.  <u>Plaintiff's Supporting Evidence:</u> In December 2021,

4          SPAVI entered into a transaction to acquire the Potato

5          Corner Intellectual Property, including the Potato Corner

6          Standard Characters Mark and the Potato Corner Logo

7          Mark, and all of the rights thereto, from Cinco. That

8          transaction closed during the first half of 2022. As such,

9          SPAVI had an economic interest in the Potato Corner

10         Intellectual Property. Additional evidence includes:

11         Notarized Deeds signed by seller and buyer; USPTO

12         filings including Registrations and Assignments,

13         testimony of Gregorio (Plaintiff's CEO), Magsaysay

14         (Cinco's CEO), Tan (Director responsible for

15         international franchising)

16         v.  PCJV USA Parties' Supporting Evidence: SPAVI parties

17         have not articulated their defense beyond what is included

18         in their Answers. As it is articulated there, PCJV Parties

19         cannot determine the factual basis for the defense.  As

20         such, the out of an abundance of caution, PCJV Parties

21         incorporate by reference all of the evidence cited in

22         support of their causes of action.

23   6)  **<u>Affirmative Defense No. 6</u>**: Privilege (asserted by SPAVI as to all claims

24       alleged against it)

25       a.  <u>Element No. 1</u> – That Counterclaim Defendant had a legitimate

26       economic interest

27            i.  This element is disputed

28            ii.  Nature of Dispute: legal and factual

iii. <u>Defendants' Position Statement:</u> SPAVI parties have not articulated their defense beyond what is included in their Answers. *See* n. 1. As it is articulated in the Answers, PCJV Parties cannot determine the legal basis for the defense

iv. <u>Plaintiff's Supporting Evidence:</u> In December 2021, SPAVI entered into a transaction to acquire the Potato Corner Intellectual Property, including the Potato Corner Standard Characters Mark and the Potato Corner Logo Mark, and all of the rights thereto, from Cinco. That transaction closed during the first half of 2022. As such, SPAVI had an economic interest in the Potato Corner Intellectual Property. Additional evidence includes: Notarized Deeds signed by seller and buyer; USPTO filings including Registrations and Assignments, testimony of Gregorio (Plaintiff's CEO), Magsaysay (Cinco's CEO), Tan (Director responsible for international franchising)

v. <u>Defendants' Supporting Evidence:</u> SPAVI parties have not articulated their defense beyond what is included in their Answers until 7am on August 12, 2025. *See* n. 1. As it is articulated in the Answers, PCJV Parties cannot determine the factual basis for the defense.  As such, the out of an abundance of caution, PCJV Parties incorporate by reference all of the evidence cited in support of their causes of action

b. <u>Element No. 2</u> – That Counterclaim Defendant acted only to protect its own economic interest.

i. This element is disputed

ii. Nature of Dispute: legal and factual

iii. Defendants' Position Statement: SPAVI parties have not articulated their defense beyond what is included in their Answers. *See* n. 1. As it is articulated in the Answers, PCJV Parties cannot determine the legal basis for the defense.

iv. <u>Plaintiff's Supporting Evidence:</u> Counterclaimant have no evidence of a written license to use SPAVI's Potato Corner Intellectual Property, and, as such, its rights (that it has sold to its franchisees) derive from what is, at best, a terminable at will, fully revocable license because Defendants were nonetheless operating Potato Corner locations, as if a written license existed. *See Pogrebnoy v. Russian Newspaper Distribution, Inc.,* 289 F. Supp. 3d 1061, 1070 (C.D. Cal. 2017), aff'd, 742 F. App'x 291 (9th Cir. 2018) ("[A]n implied license, like any other contract, is terminable at the will of either party if it is not for a specified term."). After SPAVI's acquisition of the Potato Corner brand, it became the licensor of the Potato Corner Intellectual Property. Between December of 2021 through 2024, the months immediately preceding this action, SPAVI engaged in a good faith and exhaustive attempt to negotiate the terms of a written license with PCJV. Defendant Guy Koren engaged and participated in this negotiation, but was unwilling to agree to any minimally commercially viable licensing terms. Therefore, Plaintiff had no option to terminate the license of the Potato

Corner Intellectual Property. Additional evidence includes: Testimony of Koren, Plaintiff executives Gregorio (Plaiuntiff's CEO), Concepcion (Plaintiff's COO charged with US operations), Tan (Director responsible for international franchising), Magsaysay (Cinco's CEO); Emails and correspondence with SPAVI, Koren, and PCJV relating to negotiations of a licensing agreement for the use of the Potato Corner Intellectual Property; Amended Joint Venture Agreement; Franchise Agreements; FDDs; Trial Exhibit 29 (May 31, 2024 Termination)

    v.  Defendants' Supporting Evidence: SPAVI parties have not articulated their defense beyond what is included in their Answers until 7am on August 12, 2025. *See* n. 1. As it is articulated in the Answers, PCJV Parties cannot determine the factual basis for the defense.  As such, the out of an abundance of caution, PCJV Parties incorporate by reference all of the evidence cited in support of their causes of action.

  c.  <u>Element No. 3</u> – That Counterclaim Defendant acted reasonably and in good faith to protect it.

    i.  This element is disputed

    ii.  Nature of Dispute: legal and factual

    iii.  Defendants' Position Statement: SPAVI parties have not articulated their defense beyond what is included in their Answers. *See* n. 1. As it is articulated in the Answers, PCJV Parties cannot determine the legal basis for the defense.

iv.  <u>Plaintiff's Supporting Evidence:</u> Counterclaimant have no evidence of a written license to use SPAVI's Potato Corner Intellectual Property, and, as such, its rights (that it has sold to its franchisees) derive from what is, at best, a terminable at will, fully revocable license because Defendants were nonetheless operating Potato Corner locations, as if a written license existed. *See Pogrebnoy v. Russian Newspaper Distribution, Inc.,* 289 F. Supp. 3d 1061, 1070 (C.D. Cal. 2017), aff'd, 742 F. App'x 291 (9th Cir. 2018) ("[A]n implied license, like any other contract, is terminable at the will of either party if it is not for a specified term."). After SPAVI's acquisition of the Potato Corner brand, it became the licensor of the Potato Corner Intellectual Property. Between December of 2021 through 2024, the months immediately preceding this action, SPAVI engaged in a good faith and exhaustive attempt to negotiate the terms of a written license with PCJV. Defendant Guy Koren engaged and participated in this negotiation, but was unwilling to agree to any minimally commercially viable licensing terms. Therefore, Plaintiff had no option to terminate the license of the Potato Corner Intellectual Property. Additional evidence includes: Testimony of Koren, Plaintiff executives Gregorio (Plaiuntiff's CEO), Concepcion (Plaintiff's COO charged with US operations), Tan (Director responsible for international franchising), Magsaysay (Cinco's CEO); Emails and correspondence with SPAVI, Koren, and PCJV relating to negotiations of a licensing

agreement for the use of the Potato Corner Intellectual Property; Amended Joint Venture Agreement; Franchise Agreements; FDDs; Trial Exhibit 29 (May 31, 2024 Termination)

v. Defendants' Supporting Evidence: SPAVI parties have not articulated their defense beyond what is included in their Answers until 7am on August 12, 2025. *See* n. 1. As it is articulated in the Answers, PCJV Parties cannot determine the factual basis for the defense.  As such, the out of an abundance of caution, PCJV Parties incorporate by reference all of the evidence cited in support of their causes of action.

7) **Affirmative Defense No. 7:** Unclean Hands (asserted by Counterclaim Defendant and Third Party Defendants as to all claims alleged against them)

a. <u>Element No. 1</u>: Counterclaimant engaged in inequitable and/or unethical behavior that bars it from seeking relief

i. This element is disputed

ii. Nature of Dispute: factual

iii. <u>Plaintiff's Supporting Evidence:</u> Counterclaimants have at best, a terminable at will, fully revocable license because Defendants were nonetheless operating Potato Corner locations, as if a written license existed. *See Pogrebnoy v. Russian Newspaper Distribution, Inc.,* 289 F. Supp. 3d 1061, 1070 (C.D. Cal. 2017), aff'd, 742 F. App'x 291 (9th Cir. 2018) ("[A]n implied license, like any other contract, is terminable at the will of either party if it is not for a specified term."). Despite using the Potato Corner

Intellectual Property for over a decade, Counterclaimants have never once paid a single cent of a licensing for its use to Cinco nor SPAVI. Counterclaimants have used Cinco's, and after the asset purchase, SPAVI's trademark without compensation to either party. Additional evidence includes: Financial statements of Counterclaimants evidence that no licensing fees have ever been paid; Notarized Deeds signed by seller and buyer; USPTO filings including Registrations and Assignments; Testimony of Gregorio (Plaintiff's CEO), Magsaysay (Cinco's CEO), Koren, Ybanez (Plaintiff's General Counsel), Tan (Director responsible for international franchising), Concepcion (Plaintiff's COO charged with US operations); emails and correspondence with Cinco, SPAVI, Koren, and PCJV relating to negotiations of a licensing agreement

iv.  Defendants' Supporting Evidence: SPAVI parties have not articulated their defense beyond what is included in their Answers until 7am on August 12, 2025. *See* n. 1. As it is articulated in the Answers, PCJV Parties cannot determine the factual basis for the defense.  As such, the out of an abundance of caution, PCJV Parties incorporate by reference all of the evidence cited in support of their causes of action. Also, the state court preliminary injunction (holding that Cinco Corporation was not likely to prevail on prior claims of wrongdoing); confidential settlement communications do not support allegations; Cinco Corporation's settlement and release of prior

1    allegations of wrongdoing.

2    8) **Affirmative Defense No. 8:** Waiver (asserted by Counterclaim Defendant

3    and Third Party Defendants as to all claims alleged against them)

4        a.    Element No. 1: Through implied and/or express conduct,

5            Counterclaimants knowingly waived a valid right, privilege,

6            advantage, or benefit allegedly conferred upon it and its attempt to

7            enforce that right, privilege, advantage, or benefit is thus barred.

8                i.    This element is disputed

9                ii.    Nature of Dispute: factual

10                vii.    Plaintiff's Supporting Evidence: Both the JVA and AJVA

11                    contain an agreement to agree on a Master License

12                    Agreement. There was never a written license agreement

13                    between Counterclaimants and counter defendants or third

14                    party defendants. Counterclaimant entered into a

15                    negotiation process with Cinco, prior to SPAVI's

16                    acquisition of the Potato Corner brand and all of the

17                    Potato Corner Intellectual Property from Cinco, for the

18                    terms of a license to use the Potato Corner Intellectual

19                    Property. These negotiations began before SPAVI

20                    purchased the rights to the Potato Corner IP. So,

21                    Counterclaimants have been aware of the lack of

22                    ownership rights in the Potato Corner Intellectual

23                    Property and the non-existence of a written agreement.

24                    Then, between December of 2021 through 2024, the

25                    months immediately preceding the filing of this action,

26                    SPAVI engaged in a good faith and exhaustive attempt to

27                    negotiate the terms of a written license with

28                    Counterclaimants as well. Never once did

1    Counterclaimants state that they had ownership rights to

2    the Potato Corner Intellectual Property, and SPAVI relied

3    on that representation because had one been expressed,

4    that would have been a dispute as to the ownership rights

5    to which SPAVI would have filed this lawsuit sooner.

6    Instead, Counterclaimants and Counter Defendants

7    continued to negotiate the terms of a license to use the

8    Potato Corner Intellectual Property. Additional evidence

9    includes: Notarized Deeds signed by seller and buyer;

10   USPTO filings including Registrations and Assignments;

11   Testimony of Gregorio (Plaintiff's CEO), Magsaysay

12   (Cinco's CEO), Koren, Ybanez (Plaintiff's General

13   Counsel), Tan (Director responsible for international

14   franchising); and emails and correspondence during the

15   negotiation of the terms of the license agreement.

16       iii.   Defendants' Supporting Evidence: SPAVI parties have

17              not articulated their defense beyond what is included in

18              their Answers until 7am on August 12, 2025. *See* n. 1. As

19              it is articulated in the Answers, PCJV Parties cannot

20              determine the factual basis for the defense.  As such, the

21              out of an abundance of caution, PCJV Parties incorporate

22              by reference all of the evidence cited in support of their

23              causes of action. The state court preliminary injunction

24              (enjoining Cinco Corporation from interfering with

25              PCJV's President's control over Potato Corner in the

26              United States and communicating with its franchisees);

27              confidential settlement communications do not support

28              any waiver, as Defendants never waived any rights but

1  were trying to settle disputes; Cinco Corporation's

2  settlement and release of prior allegations and transfer of

3  the very interests, rights and obligations over which the

4  parties are now litigating.

5  9) **Affirmative Defense No. 9:** Comparative Fault (asserted by

6  Counterclaim Defendant SPAVI as to the negligent interference with

7  prospective economic relations claim)

8  a.  Element No. 1: That Counterclaimant was negligent

9  i.  This element is disputed

10  ii.  Nature of Dispute: factual

11  iii.  <u>Plaintiff's Supporting Evidence:</u> Both the JVA and AJVA

12  contain an agreement to agree on a Master License

13  Agreement. As such, there was no written license

14  agreement. Counterclaimant entered into a negotiation

15  process with Cinco, prior to SPAVI's acquisition of the

16  Potato Corner brand and all of the Potato Corner

17  Intellectual Property from Cinco, for the terms of a

18  license to use the Potato Corner Intellectual Property.

19  These negotiations began before SPAVI purchased the

20  rights to the Potato Corner IP. So, Counterclaimants have

21  been aware of the lack of ownership rights in the Potato

22  Corner Intellectual Property and the non-existence of a

23  written agreement. Then, between December of 2021

24  through 2024, the months immediately preceding this

25  action, SPAVI engaged in a good faith and exhaustive

26  attempt to negotiate the terms of a written license with

27  PCJV as well. Never once did Counterclaimants state that

28  they had ownership rights to the Potato Corner

1    Intellectual Property, and SPAVI relied on that

2    representation because had one been expressed, that

3    would have been a dispute as to the ownership rights to

4    which SPAVI would have filed this lawsuit sooner.

5    Moreover, Guy Koren could have, but refused to, engage

6    in reasonable and good faith negotiation. Instead, he only

7    offered royalty rates and license fees that were more than

8    90% below what Koren had agreed to be reasonable

9    licensing fees over a decade prior. Koren also repeatedly

10    disengaged from the negotiation process, but still was

11    utilizing the Potato Corner Intellectual Property.

12    Additional evidence includes: Notarized Deeds signed by

13    seller and buyer; USPTO filings including Registrations

14    and Assignments; Testimony of Gregorio (Plaintiff's

15    CEO), Magsaysay (Cinco's CEO), Koren, Ybanez

16    (Plaintiff's General Counsel), Tan (Director responsible

17    for international franchising); and emails and

18    correspondence during the negotiation of the terms of the

19    license agreement.

20    iv.    Defendants' Supporting Evidence: SPAVI parties have

21    not articulated their defense beyond what is included in

22    their Answers until 7am on August 12, 2025. *See* n. 1. As

23    it is articulated in the Answers, PCJV Parties cannot

24    determine the factual basis for the defense.  As such, the

25    out of an abundance of caution, PCJV Parties incorporate

26    by reference all of the evidence cited in support of their

27    causes of action. The state court preliminary injunction

28    (enjoining Cinco Corporation from interfering with

1    PCJV's President's control over Potato Corner in the

2    United States and communicating with its franchisees); at

3    all relevant times Defendants exercised control over

4    Potato Corner in the United States and did not change the

5    status quo between the parties, including in dealings with

6    Plaintiff and Plaintiff's predecessor.

7        b.  <u>Element No. 2</u>: That Counterclaimant's negligence was a substantial

8        factor in causing its harm.

9          i.  This element is disputed

10         ii.  Nature of Dispute: factual

11         iii.  <u>Plaintiff's Supporting Evidence:</u> Guy Koren could have,

12   but refused to, engage in reasonable and good faith

13   negotiation. Instead, he only offered royalty rates and

14   license fees that were more than 90% below what Koren

15   had agreed to be reasonable licensing fees over a decade

16   prior. Koren also repeatedly disengaged from the

17   negotiation process, but still was utilizing the Potato

18   Corner Intellectual Property. In light of the two year

19   negotiation process that went nowhere, and

20   Counterclaimant no furnishing any consideration

21   whatsoever in exchange for the use of the Potato Corner

22   Intellectual Property, SPAVI concluded that it exhausted

23   all efforts to negotiate a license agreement with

24   Counterclaimants. As such, SPAVI had no choice by to

25   terminate Counterclaimants licensing agreement.

26   Additional supporting evidence includes: Notarized

27   Deeds signed by seller and buyer; USPTO filings

28   including Registrations and Assignments; Testimony of

1    Gregorio (Plaintiff's CEO), Magsaysay (Cinco's CEO),

2    Koren, Ybanez (Plaintiff's General Counsel), Tan

3    (Director responsible for international franchising); May

4    31, 2024 Termination Letter; and emails and

5    correspondence during the negotiation of the terms of the

6    license agreement.

7        iv.    Defendants' Supporting Evidence: SPAVI parties have

8    not articulated their defense beyond what is included in

9    their Answers until 7am on August 12, 2025. *See* n. 1. As

10    it is articulated in the Answers, PCJV Parties cannot

11    determine the factual basis for the defense.  As such, the

12    out of an abundance of caution, PCJV Parties incorporate

13    by reference all of the evidence cited in support of their

14    causes of action. The state court preliminary injunction

15    (enjoining Cinco Corporation from interfering with

16    PCJV's President's control over Potato Corner in the

17    United States and communicating with its franchisees); at

18    all relevant times Defendants exercised control over

19    Potato Corner in the United States and did not change the

20    status quo between the parties, including in dealings with

21    Plaintiff and Plaintiff's predecessor

22    10)    **Affirmative Defense No. 10:** Lack or Inadequacy of Consideration

23    (asserted by Counterclaim Defendant and Third Party Defendants as to all

24    claims alleged against them)

25        a.    <u>Element No. 1:</u> Counterclaimant has failed or refused to provide

26    anything of value in exchange for the use of SPAVI's license to use

27    the Potato Corner Intellectual Property

28        i.    This element is disputed

---

158

ii.  Nature of Dispute: factual

iii.  <u>Plaintiff's Supporting Evidence:</u> Despite using the Potato Corner Intellectual Property for over a decade, Counterclaimants have never once paid a single cent of a licensing fee for its use to Cinco nor SPAVI. Counterclaimants have used Cinco's, and after the asset purchase, SPAVI's trademark without compensation to either party. Additional evidence includes: Financial statements of Counterclaimants evidence that no licensing fees have ever been paid; Notarized Deeds signed by seller and buyer; USPTO filings including Registrations and Assignments; Testimony of Gregorio (Plaintiff's CEO), Magsaysay (Cinco's CEO), Koren, Ybanez (Plaintiff's General Counsel), Tan (Director responsible for international franchising), Concepcion (Plaintiff's COO charged with US operations); JVA and AJVA; emails and correspondence with Cinco, SPAVI, Koren, and PCJV relating to negotiations of a licensing agreement

iv.  Defendants' Supporting Evidence: SPAVI parties have not articulated their defense beyond what is included in their Answers until 7am on August 12, 2025. *See* n. 1. As it is articulated in the Answers, PCJV Parties cannot determine the factual basis for the defense.  As such, the out of an abundance of caution, PCJV Parties incorporate by reference all of the evidence cited in support of their causes of action

11)  **Affirmative Defense No. 11**: Abandonment or Mutual Recession of

Contract (asserted by Counterclaim Defendant and Third Party Defendants as to all claims alleged against them)

a.  <u>Element No. 1</u>: Counterclaimants license to use the Potato Corner Intellectual Property was effectively terminated by mutual consent or that Counterclaimants actions led SPAVI to believe that it was abandoned.

      i.  This element is disputed.

      ii.  Nature of Dispute: factual

      iii.  <u>Plaintiff's Supporting Evidence:</u> Counterclaimants have no evidence of a written license to use SPAVI's Potato Corner Intellectual Property, and, as such, its rights (that it has sold to its franchisees) derive from what is, at best, a terminable at will, fully revocable license because Defendants were nonetheless operating Potato Corner locations, as if a written license existed. *See Pogrebnoy v. Russian Newspaper Distribution, Inc.,* 289 F. Supp. 3d 1061, 1070 (C.D. Cal. 2017), aff'd, 742 F. App'x 291 (9th Cir. 2018) ("[A]n implied license, like any other contract, is terminable at the will of either party if it is not for a specified term."). After SPAVI's acquisition of the Potato Corner brand, it became the licensor of the Potato Corner Intellectual Property. Between December of 2021 through 2024, the months immediately preceding this action, SPAVI engaged in a good faith and exhaustive attempt to negotiate the terms of a written license with PCJV. Defendant Guy Koren engaged and participated in this negotiation, but was unwilling to agree to any minimally commercially viable licensing terms. Moreover, Guy

1    Koren refused to, engage in reasonable and good faith

2    negotiation. Instead, he only offered royalty rates and

3    license fees that were more than 90% below what Koren

4    had agreed to be reasonable licensing fees over a decade

5    prior. Koren also repeatedly disengaged from the

6    negotiation process, but still was utilizing the Potato

7    Corner Intellectual Property. In the three months prior to

8    the termination of the licensing agreement, Koren had

9    gone radio silent, leading SPAVI to believe that it no

10   longer was interested in negotiating a license. Therefore,

11   SPAVI had no option, but to terminate Coutnerclaimants

12   license of the Potato Corner Intellectual Property.

13   Additional evidence includes: Testimony of Koren,

14   Plaintiff executives Gregorio (Plaiuntiff's CEO),

15   Concepcion (Plaintiff's COO charged with US

16   operations), Tan (Director responsible for international

17   franchising), Magsaysay (Cinco's CEO); Emails and

18   correspondence with SPAVI, Koren, and PCJV relating to

19   negotiations of a licensing agreement for the use of the

20   Potato Corner Intellectual Property; Amended Joint

21   Venture Agreement; Franchise Agreements; FDDs; Trial

22   Exhibit 29 (May 31, 2024 Termination)

23   iv.  Defendants' Supporting Evidence: SPAVI parties have

24   not articulated their defense beyond what is included in

25   their Answers until 7am on August 12, 2025. *See* n. 1. As

26   it is articulated in the Answers, PCJV Parties cannot

27   determine the factual basis for the defense.  As such, the

28   out of an abundance of caution, PCJV Parties incorporate

---

JOINTLY FILED CLAIMS TO BE TRIED                    CASE NO. 2:24-CV-04546-SB(AGRX)
175468760.1

by reference all of the evidence cited in support of their causes of action. Defendants settled with Plaintiff's predecessor and acquired all of Plaintiff's predecessor's interests in PCJV and all "attached" rights; it did not abandon any rights or obligations under PCJV USA, LLC's governing documents.

## IV. Adjudication of Causes of Action, Counter Claims, Third Party Claims, and Affirmative Defenses Not to be Decided by a Jury

The parties request adjudication of the following causes of action, counter claims, third party claims, and affirmative defenses in the following manner and at the following time:

1) At the conclusion of trial, Plaintiff will seek a permanent injunction and declaratory relief with this Court, as well as for additional relief under the Lanham Act reserved for this Court. At that time, depending on the jury's reaction to the § 1125 unfair competition claim, Plaintiff will present that equitable claim to this Court. Plaintiff will also present at that time its affirmative defense of "One Who Seeks Equity Must Do Equity."

2) PCJV USA Parties request the Court to adjudicate PCJV USA Parties' following causes of action at the conclusion of trial:  (1) Declaratory Relief; and (2) Violations of Business & Professions Code §§ 17200, et seq

3) PCJV USA Parties request the Court to adjudicate PCJV USA Parties' following affirmative defenses at the conclusion of trial: (1) failure to state a claim; (2) consent/acquiescence, ratification, promissory estoppel, equitable estoppel, and judicial estoppel; (3) unclean hands; (4) laches, (5) fraud on USPTO, (6) authorized use, (7) public availability of trade secrets, and (8) lack of at will license agreement

The parties abandoned the following claims:

1) PCJV USA Parties abandon their Accounting cause of action.

2) SPAVI Parties are no longer pursuing the claim for unregistered trademarks.

Dated: August 12, 2025          _/s/ Michael D. Murphy_
                                Michael D. Murphy
                                Matthew Follett
                                Jessica Nwasike
                                Fox Rothschild LLP
                                *Attorneys for Plaintiff and Counterclaim Defendant, and Third Party Defendants*

Dated: August 12, 2025          _/s/ Arash Beral_
                                Arash Beral
                                Todd M. Malynn
                                Blank Rome LLP
                                *Attorneys for Defendants, Counterclaimants, and Third Party Plaintiffs*

# **CERTIFICATE OF SERVICE**

The undersigned certifies that, on August 12, 2025, the foregoing document was electronically filed with the Clerk of the Court for the United States District Court, Central District of California, using the Court's ECF filing system. I further certify that all counsel for all parties to this action are registered CM/ECF users and that service will be accomplished by the CM/ECF system.

I certify under penalty of perjury that the foregoing is true and correct.


Dated:  August 12, 2025                          **FOX ROTHSCHILD LLP**


                                                 */s Michael Murphy*
                                                 Michael D. Murphy
                                                 Attorneys for Plaintiff and Counterclaim
                                                 Defendant SHAKEY'S PIZZA ASIA
                                                 VENTURES, INC. and Third Party
                                                 Defendants CINCO CORPORATION,
                                                 PC INTERNATIONAL PTE LTD., and
                                                 SPAVI INTERNATIONAL USA, INC.