EXHIBIT A

Michael D. Murphy (SBN 224678)
  mmurphy@ecjlaw.com
Kenneth P. Hsu (SBN 306326)
  khsu@ecjlaw.com
**ERVIN COHEN & JESSUP LLP**
9401 Wilshire Boulevard, Twelfth Floor
Beverly Hills, California 90212-2974
Telephone: (310) 273-6333
Facsimile: (310) 859-2325

Attorneys for Plaintiff SHAKEY'S
PIZZA ASIA VENTURES, INC.

# UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA, WESTERN DIVISION

SHAKEY'S PIZZA ASIA
VENTURES, INC, a Philippines
corporation,

Plaintiff,

v.

PCJV USA, LLC, a Delaware limited
liability company; PCI TRADING,
LLC, a Delaware limited liability
company; GUY KOREN, an individual;
Potato Corner LA Group, LLC, a
California limited liability company;
NKM CAPITAL GROUP, LLC, a
California limited liability company; J
& K AMERICANA, LLC, a California
limited liability company; J & K
CULVER, LLC, a California limited
liability company; J&K LAKEWOOD,
LLC, a California limited liability
company; J&K OAKRIDGE, LLC, a
California limited liability company;
J&K VALLEY FAIR, LLC, a
California limited liability company;
J & K CAPITAL 2, LLC, a California
limited liability company; J & K
ONTARIO, LLC, a California limited
liability company; J&K PC TRUCKS,
LLC, a California limited liability
company; J&K CONSULTANTS
GROUP, LLC, a California limited
liability company; GK CAPITAL
GROUP, LLC, a California limited
liability company; and DOES 1 through
100, inclusive,

Defendants.

Case No. 2:24-cv-04546-PVC

*Hon. Stanley Blumenfeld, Jr.*

**JOINT RULE 26(F) REPORT**

MSC Date:        September 6, 2024
Time:              8:30 a.m.
Courtroom:      6C

Complaint Filed:      May 31, 2024
Response Due:        September 30, 2024
Proposed Trial Date: November 10, 2025

*Action Filed:   May 31, 2024*

ERVIN COHEN & JESSUP LLP

Plaintiff Shakey's Pizza Asia Ventures, Inc. ("SPAVI") and Defendants PCJV USA LLC ("PCJV"), PCI Trading, LLC ("PCIT"), Guy Koren ("Koren"), Potato Corner LA Group, LLC; NKM Capital Group, LLC; J & K Americana, LLC; J & K Culver, LLC; J&K Lakewood, LLC; J&K Oakridge, LLC; J&K Valley Fair, LLC; J & K Capital 2, LLC; J & K Ontario, LLC; J&K PC Trucks, LLC; J&K Consultants Group, LLC; GK Capital Group, LLC (the "Koren Affiliates") (collectively with PCJV, PCIT, and Koren, "Defendants") (collectively with SPAVI, the "Parties"), through their undersigned counsel, hereby submit this Joint Report. Pursuant to Federal Rule of Civil Procedure 26(f), Local Rule 26-1, and this Court's Standing Order, the Parties' counsel met and conferred regarding the below subject matters by videoconference on August 21, 2024.

# I.   SUBJECT MATTER JURISDICTION

The Parties agree that the Court has federal question subject matter jurisdiction pursuant to 28 U.S.C. Sections 1331 and 1338(a) (trademarks) as SPAVI's allege causes of action for trademark infringement and false designation of origin and description of fact, as well as ancillary jurisdiction over SPAVI's California state law causes of action pursuant to 28 U.S.C. Sections 1338(b) and 1367 because the facts giving rise to those causes of action arise from the same common nucleus of operative facts as the causes of action subject to subject matter jurisdiction. SPAVI also contends – and Defendants do not dispute – that this Court separately has subject matter jurisdiction pursuant to 28 U.S.C. Section 1332 (diversity) as there is complete diversity of citizenship between SPAVI, on the one hand, and Defendants, including each of the members of the LLCs that are Defendants, on the other.

# II.   STATEMENT OF THE CASE

## A.   Plaintiff's Statement

This action concerns Defendants' alleged "hold-over" trademark infringement arising from the domestic franchising of the international fast food outlet chain, the

"Potato Corner." SPAVI is the owner of the Potato Corner brand as of March 5, 2022, and alleges that Defendants – namely, PCJV and PCIT, a domestic franchisor of the Potato Corner and its affiliated operational entity; the Koren Affiliates, certain franchisees of the Potato Corner; and Koren, their principal – are continuing to openly use the intellectual property comprising the Potato Corner brand (the "Potato Corner Intellectual Property") without any operative licensing authorizing that use. As alleged in further detail in the Complaint (ECF 1), this intellectual property includes three service marks registered with the U.S. Patent and Trademark Office: the green and yellow "Potato Corner" logo shown below (U.S. Reg. No. 3760041), the trademark "Potato Corner" (U.S. Reg. No. 5900257), and the phrase "World's Best Flavored French Fries" (U.S. Reg. No. 6088456):



SPAVI contends that any purported license between Defendants and the Potato Corner brand's prior owner, Cinco Corporation ("Cinco"), authorizing Defendants' use of that intellectual property is invalid, expired, and/or illusory. Indeed, to date, SPAVI has not received any royalties or license fees from Defendants despite their continuous use of the Potato Corner Intellectual Property.

Further, SPAVI alleges that, while SPAVI began negotiating a written license agreement with Koren after it acquired the Potato Corner Intellectual Property, such negotiations failed after Koren made unreasonable demands that would render any such agreement valueless to SPAVI and, eventually, abandoned the negotiations altogether. Notwithstanding SPAVI's continued efforts to advance such negotiations while minimizing disruptions to franchisees not affiliated with Koren, SPAVI had no choice but to terminate any license authorizing Defendants' use of the Potato Corner Intellectual Property and file this action. SPAVI alleges causes of action for

ERVIN COHEN & JESSUP LLP

trademark infringement (15 U.S.C. §§ 1114, 1125(a)); false designation of origin and description of fact (15 U.S.C. § 1125(a)); contributory trademark infringement (15 U.S.C. § 1114); contributory trademark infringement and false designation of origin and description of fact (15 U.S.C. § 1125(a)); common law trademark infringement; unfair competition (Cal Bus. & Prof. Code § 17200 *et seq.*); and declaratory relief.

SPAVI notes that, pursuant to this Court's Mandatory Scheduling Conference Order, its foregoing Statement was solely intended to provide a "short synopsis of the facts, the main claims, counterclaims, affirmative defenses, and procedural history." SPAVI disputes many of the facts set forth in Defendants' lengthier Statement and reserves all rights to respond to the allegations therein.

## B.    Defendants' Statement

Neither Plaintiff's Statement nor its Complaint captures the background of this case; therefore, as Defendants have not yet responded to the Complaint, they feel compelled to address the history of this dispute. Indeed, not only is there a sordid history underlying this case but this case is effectively the "sequel" to a six-year-long state court litigation displaying actions taken by Philippines-based parties to target and harass Koren and his American businesses for years in brazen breaches of all cognizable fiduciary and contractual duties owed to Koren. That state court action was mostly settled and dismissed on May 28, 2024 at which time a tolling agreement was in place with SPAVI and Cinco through January 2, 2025; three days later, however, on May 31, 2024, SPAVI filed this action.

The factual history of this dispute dates back to the early 1990s when two contemporaneous circumstances would ultimately converge: (1) Koren lived in the Philippines by virtue of his father's work for the Israeli Embassy in Manila and (2) five (a reference to the "cinco" in Cinco Corporation) Filipino individuals led by Jose P. Magsaysay, Jr. (adoringly known by his nickname "JoMag") created Potato Corner, a flavored fries concept that they derived from "flavored popcorn." While

ERVIN COHEN & JESSUP LLP

ERVIN COHEN & JESSUP LLP

1   attending school at the "International School Manila" and living along Ayala
2   Avenue in Makati, Koren first discovered a Potato Corner cart across the street and
3   came to love and enjoy the fries almost daily.

4           Koren later moved to Los Angeles and reached out to JoMag to expand Potato
5   Corner to the United States. Koren and JoMag had a long, friendly, and productive
6   meeting in person in Downtown Los Angeles in 2008 – discussing a variety of
7   matters including Koren's exposure to Filipino language, culture, traditions, values,
8   and its people – at the end of which JoMag told Koren: "it makes me feel safe to
9   award you the rights to the U.S."

10          Potato Corner had no franchise system in the United States at the time.
11  Rather, the first written agreement among the parties (entered April 2009)
12  contemplated a license for Koren to open stores within Los Angeles County with the
13  option to expand the territory to all of California upon certain terms, along with
14  sublicensing rights. Koren paid the agreed-to license fees to open ten Potato Corner
15  stores and moved ahead with funding, developing, and opening his first store in the
16  Westfield Santa Anita mall.

17          Months later, however, JoMag informed Koren that a long-time friend of
18  JoMag's and then-partner at DLA Piper LLP (Ben Olivas) advised that according to
19  American law, there was a requirement to establish a franchise business; not doing
20  so in fact created significant contingent liabilities and exposure. With the help of
21  DLA Piper, the parties then wholly reformulated the structure while attempting to
22  dodge potential civil and regulatory liability with the then-California Department of
23  Business Oversight, and became *partners and fiduciaries* in the American business:
24  of significance, JoMag's 60% ownership group was obligated to license Potato
25  Corner intellectual property to the American franchisor and Koren's 40% group was
26  required to manage the franchisor's operations. In order to induce Koren to take this
27  additional role on and to accept the minority percentage position in the franchisor,
28  JoMag's group, among other things, afforded Koren's group mutual consent and

right of first refusal rights. The consent provisions reads: "Neither Party shall assign any of its rights *or obligations* under this Agreement, nor his/its member interests in the Company without the prior written consent of the other Party." Emphasis added.

It bears noting that JoMag's group refused to invest any more than $30,000 to launch this new business and relied on Koren to grow it with his own group's capital and sweat equity. The financial nature of the partnership being what it was, on or about October 16, 2012, the parties memorialized an agreement in their Board meeting minutes that no license (i.e., royalty) fee would ever be paid to Cinco but that Cinco elected to receive distributions (upon PCJV's election to issue distributions) in lieu of a license fee ("Board has approved that this will not be an expense in the P & L of PCJV but shall be given as part of its distributive income"). In fact, no license fee was ever paid to Cinco; Cinco, for its part, was handsomely profiting from sales of goods and supplies to the American franchisor and its supply-chain arm, PCI Trading.

In 2017, Cinco and its four owners (one unfortunately had passed away) sold 55% of their interests to a group colloquially known as the "Hernandez Group" in the Philippines. Koren objected and reminded them of the consent and right of first refusal provisions in the contract. The Philippines-based parties (inclusive of the Hernandez Group) then attempted to make things right by selling their ownership stakes in the American businesses to Koren. But they changed their minds (or had their minds changed by unscrupulous actors) and in 2018, they attempted a hostile takeover of the American franchisor. Using DLA Piper, they manufactured claims against Koren, purported to "remove" him as President, and on April 10, 2018, filed suit against him in the action entitled, *Cinco Corp., et al. v. Koren, et al.*, LASC Case No. BC701075 (the "Cinco Action"). Koren cross-complained and after considering dueling injunction motions, the Court awarded Koren a preliminary injunction in June 2018 allowing Koren to reclaim his position in the American franchisor and enjoining Cinco and others from interfering.

JOINT RULE 26(F) REPORT

ERVIN COHEN & JESSUP LLP

1    After those injunction proceedings, the case seemed on its way towards

2    resolution (again); indeed, lead counsel at DLA Piper telephoned undersigned

3    counsel for Koren, Arash Beral, to congratulate Koren for prevailing on the

4    injunction proceedings and proposed a mediation. Two months later, however, Ervin

5    Cohen & Jessup substituted into the case in place of DLA Piper representing all of

6    the Philippines-based parties, including Cinco. Ervin Cohen & Jessup would go on

7    to file *multiple* motions including further injunction motions, all of which injunction

8    motions failed, and would engage in voluminous discovery efforts. Given the

9    volume of activity, the case became so complex that it was moved to the "complex"

10   division of the Superior Court and assigned to the Hon. William F. Highberger. In

11   January 2021, some of the parties in the case participated in days of live witness

12   examination proceedings, at the conclusion of which Judge Highberger directed lead

13   counsel for certain of the parties (inclusive of Mr. Murphy of Ervin Cohen & Jessup

14   and Mr. Beral of Blank Rome) to discuss getting the case resolved. A mediation

15   ensued.

16   While the parties were engaged in mediation, SPAVI (also represented by

17   Ervin Cohen & Jessup) persuaded Cinco to breach its contractual obligations and

18   fiduciary duties owed to Koren (yet again) and dispose of its intellectual property

19   and other assets without Koren's consent. SPAVI claims that it came to acquire

20   those assets in 2022. *Again, Cinco never obtained Koren's prior written consent to*

21   *assign its obligations.* SPAVI then entered the global settlement discussions with

22   extreme demands, pretending it had clean hands. Koren engaged in those settlement

23   discussions to attempt to enter a global resolution in good faith (with Cinco and

24   SPAVI) but SPAVI declined. The result was a piecemeal resolution: Koren came to

25   acquire all the United States ownership interests (including ownership of all

26   franchise agreements), and the "licensing" issues were carved out with a tolling

27   agreement entered with Cinco and SPAVI to expire January 2, 2025. After multiple

28   delays by the Philippines-based parties and an extremely irritated Judge, the parties

1   were finally able to report to the Superior Court that they had resolved the Superior

2   Court case on May 28, 2024, and the case was dismissed. Three days later, Ervin

3   Cohen & Jessup, without warning, filed this action on behalf of SPAVI. On the

4   same day, SPAVI purported to "terminate" PCJV's license and sought to interfere

5   with Koren's relationship with his approximate 40 franchisees in the United States.

6           SPAVI's actions are ill-fated. The operative agreements recognize the

7   American franchisor's vested interests in the U.S. IP by (a) promising the American

8   franchisor the right to continue to use the IP as long as the American franchisor

9   remained extant and its rights under the agreements were not terminated, and (b)

10  prohibited any attempt to assign the IP without the American franchisor's written

11  consent. The clear and unambiguous terms, along with the consideration fully

12  supporting their validity and enforceability, were agreed upon by the then-record

13  holder of the IP and 60% owner of the American franchisor, Cinco, for one simple

14  reason: Koren created and developed the goodwill associated with Potato Corner in

15  the United States, and would not have done so without the protection of his

16  partnership with Cinco and these contractual provisions, which prohibited Cinco

17  from assigning the IP out from under Koren and risking the loss and ruin of his

18  work, *i.e.,* the American franchise system. All or virtually all of the goodwill U.S.

19  consumers associate with the U.S. Potato Corner business was created by Koren

20  who started, fully operated and managed and has always had an ownership interest

21  in the American franchise from its inception and continuously to date.

22          The holder of the obligation to "license" the IP to the American franchisor

23  and obligation not to assign the IP without written consent plainly protected the

24  American franchisor's vested interest in the U.S. IP from any effort by Cinco or a

25  third-party interloper (such as SPAVI) from monetizing the goodwill Koren created

26  and associated in the United States with the IP, including by trying to split the

27  record holder of the U.S. IP from the American franchise and goodwill consumers

28  associate with the IP in the United States. SPAVI induced Cinco to breach its

8

1  contractual obligations, tortiously interfered with contractual relations and
2  prospective economic advantages, and aided and abetted Cinco's breach of fiduciary
3  duty, by executing assignment documents covering the IP without the American
4  franchisor's consent—thereby splitting record ownership of IP rights in the United
5  States from the owners of the American franchise and the holder of the goodwill
6  associated in the American franchise that the U.S. IP represents. In stepping into
7  Cinco's shoes, SPAVI assumed Cinco's contractual and fiduciary obligations and
8  the agreements governing the Philippines/U.S. Potato Corner partnership.

9  **III.  DAMAGES/INSURANCE**

10      **A.  Damages**

11          **1.  Plaintiff's Statement**

12        SPAVI's damages are indeterminable at this early, pre-discovery stage, but
13  are believed to be at least several millions of dollars and counting.

14          **2.  Defendants' Statement**

15        SPAVI has no claim for damages because the IP dispute before the Court
16  merely involves ownership, licensing, breach of contract and tort issues specific to
17  the United States. Even in the unlikely event SPAVI were to prevail in the IP
18  dispute, there is no actual or likely consumer confusion, or basis to claim the same
19  in the United States arising from alleged "hold-over" trademark infringement,
20  because consumers correctly (not mistakenly) associate the U.S. IP with a single
21  source and origin: the American franchise.[1]

22        If any portion of the Complaint survives Rule 12, Defendants will bring their
23  own claims for relief. Defendants' damages, which unlike SPAVI's claim for
24  damages does not depend on any showing of actual confusion, are indeterminable at

---

[1] SPAVI's alternative claim for declaratory relief fails to state a claim because
SPAVI has failed to join a necessary and indispensable party—Cinco. SPAVI filed
this action without joining Cinco in an act of forum shopping to avoid litigating the
IP dispute in state court and to preempt Defendants' filing of a related action in state
court following expiration of the tolling agreement.

ERVIN COHEN & JESSUP LLP

1  this early, pre-discovery stage.

    **B.**    **Insurance**

        **1.**    **Plaintiff**

SPAVI presently do not have insurance coverage applicable to this action.

        **2.**    **Defendants**

Defendants' insurance carrier is reviewing this matter and is currently uncertain whether it will accept coverage. The carrier is reserving all of its rights, including the right to deny coverage.

**IV.**    <u>**PARTIES, EVIDENCE, ETC.**</u>

    **A.**    **List of Parties**

- **Plaintiff**: SPAVI. SPAVI's parent corporation is Century Pacific Group, Inc., a Philippines corporation.

- **Defendants:** All defendants named in this lawsuit are or were entities managed and wholly or partially owned by Koren. There are no other parents or subsidiaries.

    **B.**    **Percipient Witnesses**

Without waiving any rights to identify other percipient witnesses in advance of trial, the Parties identify the following percipient witnesses. The Parties reserve their right to identify and conduct discovery as to other percipient witnesses not identified below:

- FRCP 30(b)(6) witnesses for each of the named parties;

- FRCP 30(b)(6) witnesses for each of the third parties that operate franchises of Potato Corner in the United States;

- Koren;

- Amir Jacoby;

- Amit Nemanim;

- Alon Koren;

- Erlinda Bartholome;

ERVIN COHEN & JESSUP LLP

- Ashley Grudnowski;
- Presently unidentified individuals employed by PCJV and PCIT;
- Presently unidentified individuals employed by the Koren Affiliates;
- Individuals employed by franchisees of the Potato Corner not owned or operated by Koren or the Koren Affiliates;
- Yiow Leong-Tan;
- Jose P. Magsaysay, Jr.;
- Vicente Gregorio;
- Jose Arnold T. Alvero;
- Maria Rosario L. Ybanez;
- FRCP 30(b)(6) witness for Bunzl Public Limited Company;
- Presently unidentified individuals employed by SPAVI but responsible for (a) the decision to acquire the Potato Corner Intellectual Property, (b) the due diligence in connection with that transaction, (c) the contracts and communications between Cinco and SPAVI and (d) the decisions relating to the American franchise, including the use of litigation and self-help tactics.
- FRCP 30(b)(6) witnesses for Cinco; and
- Each of the "Cinco Parties" as defined in the settlement agreement entered with Cinco, inclusive of Cinco Corporation, Potato Corner International, Inc., Highfive Corporation, Jose P. Magsaysay, Jr., Jose Miguel Ma. Montinola, Ricardo Enrique K. Montelibano, Ma. Victoria O. Bermejo, John Edward Hernandez, Chad Dominic Hernandez, Miguel Raymundo Hernandez, Myrose Victor, Marivic Del Pilar, Jose Marco Del Pilar, Dia Lacaba, Nicardo Falcis, Bernabe M. Hernandez, Alma Veronica Abcede, Maria Christina V. Dizon, Cesar T. Hernandez, Valens Capital Ventures Inc., and Clayderman Holdings Corporation.

## C.   Key Documents

### 1.   Plaintiff

Without waiving its right to identify other documents in advance of trial,

SPAVI identifies the following key documents. SPAVI reserves its right to identify and conduct discovery as to other documents not identified below:

- Documents relating to the Potato Corner Intellectual Property, including documents showing SPAVI's ownership of the Potato Corner brand, trademark registration documents filed with the U.S. Patent and Trademark Office, and more;

- Documents evidencing Defendants' continued use of the Potato Corner Intellectual Property, including documents used by Defendants containing the Potato Corner Intellectual Property, photographs of Potato Corner outlets owned and/or operated by Defendants, and more;

- Correspondence between SPAVI and Defendants, including the notice of termination of any license of the Potato Corner Intellectual Property sent on May 31, 2024;

- Correspondence between SPAVI and franchisees of the Potato Corner not owned or operated by Koren or the Koren Affiliates, including correspondence relating to SPAVI's termination of any license of the Potato Corner Intellectual Property sent after May 31, 2024; and

- Actual or purported agreements between any of the Defendants, on the one hand, and any other person governing the ownership or use of Potato Corner Intellectual Property.

- Communications between, among, sent to, or received from, any of the Parties related to ownership or use of Potato Corner Intellectual Property.

### 2.    Defendants

Without waiving their right to identify other documents in advance of trial, Defendants identify the following key documents in addition to the documents or category of documents identified by Plaintiff. Defendants reserve their right to identify and conduct discovery as to other documents not identified by Plaintiff or below by Defendants:

• Defendants' contracts with Cinco relating to the IP and American franchise;

• Communications, whether internal or external, involving Cinco relating to the IP and the American franchise;

• SPAVI's contracts with Cinco relating to the IP and American franchise, including but not limited to representations by Cinco to SPAVI related to the U.S. IP and American franchise and/or obligation in Cinco to indemnify, defend and/or hold harmless SPAVI related to the U.S. IP and American franchise;

• Communications, whether internal or external, involving SPAVI relating to the IP and American franchise;

• Documents relating to any and all representations by Cinco to SPAVI related to the U.S. IP and American franchise or obligation in Cinco to indemnify, defend and/or hold harmless SPAVI related to the U.S. IP and American franchise;

• Documents relating to the ownership, management and control of the American franchise;

• Documents evidencing consumer association of the Potato Corner Intellectual Property in the United States with a single source and origin: The American franchise;

• SPAVI's handling of other Potato Corner outlets or franchises around the world other than in the United States;

• SPAVI's contracts and communications with third parties relating to the American franchise; and

• Documents relating to any and all efforts to use self-help or litigation to obtain ownership or control of the American franchise.

## V. **DISCOVERY**

### A. **Status of Discovery**

The Parties have not yet commenced discovery in this action.

Defendants object to the premature commencement of discovery for two

---

1    reasons:  (1) Defendants time to respond to the complaint is not until September 30,

2    2024; and (2) Defendants expect that their Rule 12 motions will be granted.

3    **B.**    **Discovery Plan**

4         **1.**    ***Subjects on Which Discovery May Be Needed***

5              **(a)**    **Plaintiff**

6    SPAVI contends that written and oral discovery will be needed on at least the

7    following subjects:

8    •    Defendants' use of the "Potato Corner Intellectual Property," as defined

9    in the operative Complaint (ECF 1);

10    •    Purported agreements governing Defendants' use of the Potato Corner

11    Intellectual Property;

12    •    Defendants' communications and dealings with the prior licensor of the

13    Potato Corner Intellectual Property, as well as representatives of the prior 60%

14    owner, Potato Corner International, Inc., including prior litigation and the settlement

15    thereof;

16    •    Defendants' communications and dealings with SPAVI;

17    •    Franchisor-franchisee dealings between and among Defendants,

18    including franchise agreements;

19    •    Defendants' revenue, earnings, and profits arising from their use of the

20    Potato Corner Intellectual Property;

21    •    Consumer confusion arising from Defendants' use of Potato Corner

22    Intellectual Property.

23    SPAVI reserves its right to conduct discovery regarding subject matters not

24    expressly described above.

25              **(b)**    **Defendants**

26    Defendants contend that written and oral discovery will be needed on at least

27    the following subjects in addition to the subjects raised above:

28    •    Ownership of the U.S. IP;

ERVIN COHEN & JESSUP LLP

14

• The contractual rights and obligations of both the record IP rights holder (whether Cinco or SPAVI) and the American franchisor, including but not limited to all the contracts and communications related thereto;

• Ongoing interference, detriment and harm to the American franchise as a result of Cinco's decision to sell record ownership of IP created, developed, owned, licensed and/or used by the American franchisor to SPAVI;

• SPAVI's decision to acquire the Potato Corner Intellectual Property in the middle of Defendants' six-year dispute with Cinco without consent or approval;

• SPAVI's contracts and communications with Cinco, including but not limited to those related to the U.S. IP, the American franchise, this litigation and parties' ongoing dispute in which SPAVI inserted itself;

• SPAVI's due diligence in connection with such transactions;

• SPAVI's decision to retain the same counsel that represented Cinco in its disputes with Defendants;

• SPAVI's contemplated or actual use of self-help or litigation tactics to obtain control over the American franchise;

• Representations, warranties and/or obligations to indemnify, defend, hold harmless or otherwise compensate SPAVI related to the U.S. IP, the American franchise, this litigation and related disputes;

• Ownership, management and control of the American franchise;

• Consumer association of the Potato Corner Intellectual Property in the United States with a single source and origin: the American franchise.

• SPAVI's handling of other Potato Corner outlets or franchises around the world other than in the United States; and

SPAVI's contracts and communications with third parties regarding the American franchise.

## 2. *Proposed Deadlines for Discovery*

Based on the Court's guidelines, the Parties jointly propose the following

JOINT RULE 26(F) REPORT

ERVIN COHEN & JESSUP LLP

deadlines specifically applicable to discovery if the case proceeds to trial:

- **Deadline for Rule 26(a) Initial Disclosures:**

Plaintiff proposes 14 days after the date of completion of the Mandatory Scheduling Conference.

Defendants propose that the obligation to exchange initial disclosures be stayed until after the Rule 12 Motions are resolved.

- **Fact Discovery Cut-Off:** July 11, 2025

- **Expert Discovery Cut-Off:** September 12, 2025

The Parties agree that discovery need not be conducted in distinct "phases."

> 3.    *Any Issues Relating to Discovery, Privilege, or Trial-Preparation Protection*

Although the Parties do not presently anticipate issues regarding disclosures, electronically stored information, privilege, trial-preparation materials, or confidentiality, the Parties will meet and confer regarding a Protective Order that will address any issues that may arise. The Parties anticipate that they will be able to agree on a Protective Order that will be approved by the Court.

> 4.    *Any Changes on Discovery Limitations*

The Parties agree that, at this stage, the Court need not make any changes in the limitations on discovery imposed by the Federal Rules of Civil Procedure or by the Local Rules. However, the Parties respectively reserve their right to move the Court for such a change after discovery commences.

## VI.   LEGAL ISSUES

### A.    Plaintiff

Without waiving its right to identify other key legal issues in advance of trial, SPAVI identifies the following key legal issues this early, pre-discovery stage:

- Ownership of the Potato Corner Intellectual Property;

- The validity of the purported license agreements that Defendants have previously claimed authorize their use of the Potato Corner Intellectual Property.

ERVIN COHEN & JESSUP LLP

### B. Defendants

- Without waiving the right to identify other key legal issues, Defendants identify the following key legal issues in addition to the issues identified above by SPAVI at this early, pre-discovery stage:

- Whether SPAVI's complaint states a plausible claim for relief under *Twombly* arising from conclusory allegations of actual or likely confusion related to SPAVI's allegations of "holder over" trademark infringement, which, themselves, are predicated on SPAVI's self-serving view of the case;

- Whether Cinco is a necessary and indispensable party, including but not limited to the reasons set forth herein;

- Whether the American franchisor and/or SPAVI own the U.S. IP rights, including and in particular if the parties separate;

- Whether Cinco breached contractual obligations and fiduciary duties when it sold IP owned, licensed and/or used by the American franchisor to SPAVI;

- Whether SPAVI aided and abetted, induced a breach of or interfered with Cinco's contractual obligations or prospective economic advantages belonging to the American franchisor, including by purchasing record ownership of IP owned, licensed and/or used by the American franchisor;

- Whether SPAVI aided and abetted, has breached or interfered with contractual obligations related to the American franchise or prospective economic advantages related to the U.S. Potato Corner franchisees in connection with its effort to coerce Koren out of business and take over the American franchise;

- Damages suffered by the American franchise system and irreparable harm occurring, or likely to occur, to the American franchise;

- Whether damages are an adequate remedy at law precluding injunctive relief on Plaintiff's claims of alleged "hold-over" trademark infringement; and

- Whether Plaintiff can establish "irreparable harm" under *Herb Reed Enterprises LLC v. Florida Entertainment Management Inc.,* 736 F.3d 1239 (2013)

once Defendants rebut any allegations by SPAVI of irreparable harm in connection with its threatened motion for a "preliminary injunction" to win the case.

## VII. MOTIONS

### A. Procedural Motions

#### 1. Plaintiff

SPAVI intends on filing a motion for preliminary injunction enjoining Defendants from their continuous, unauthorized, direct and indirect use of the Potato Corner Intellectual Property. SPAVI has met and conferred with Defendants' counsel regarding that motion pursuant to Local Rule 7-3 and anticipates that it will be filed shortly. SPAVI reserves its right to file additional procedural motions not expressly described above.

#### 2. Defendants

Defendants intend to bring Rule 12 motions and their own motion for preliminary injunction, if necessary.

### B. Dispositive Motions

#### 1. Plaintiff

SPAVI may file a motion for summary judgment regarding some or all of its causes of action. SPAVI reserves its right to file additional dispositive motions not expressly described above.

#### 2. Defendants

If SPAVI's complaint is not dismissed on Rule 12 grounds, Defendants may file a motion for summary judgment regarding some or all of SPAVI's causes of action and/or Defendants' causes of action.

### C. Class Certification Motion

Inapplicable.

## VIII. ALTERNATIVE DISPUTE RESOLUTION (ADR)

### A. Prior Discussions

The Parties briefly discussed the possibility of a potential resolution of this

ERVIN COHEN & JESSUP LLP

action during and after the Rule 26(f) conference of counsel. The Parties have not otherwise engaged in substantive settlement discussions, but will continue to do so.

### B. ADR Selection

At this stage, the Parties prefer a magistrate judge for a mediation.

## IX. TRIAL

### A. Proposed Trial Date

**Trial:** November 10, 2025 (*i.e.,* 14 months from the date of the MSC). The Parties agree that, while this Court typically estimates 7 to 12 months for trademark actions, discovery in this action may require additional time given the amount of issues and potential witnesses who may be abroad and/or outside of this Court's jurisdiction (*e.g.,* the Philippines), and the possible joinder of and/or amount of potential discovery from one or more third-parties (*e.g.,* Cinco). In addition, as explained above, the Parties anticipate relatively extensive motion practice, including motions for preliminary injunction, a motion to dismiss, and potential motions for summary judgment.

### B. Time Estimate

SPAVI estimates a jury trial of approximately 7-10 days. Defendants estimate a jury trial of approximately 15 days. Without waiving their rights to identify additional witnesses, the Parties anticipate that they will call over a dozen witnesses each, including the percipient witnesses identified in Section IV.B above and multiple expert witnesses.

### C. Jury or Court Trial

The Parties mutually request a jury trial.

### D. Magistrate Judge

The Parties jointly consent to having a Magistrate Judge only for purposes of addressing and resolving discovery matters. The Parties do not consent to having a Magistrate Judge for all purposes, including trial.

### E. Trial Counsel

**SPAVI's trial counsel:** Michael D. Murphy (lead trial counsel), Kenneth P. Hsu, Ervin Cohen & Jessup LLP

**Defendants' counsel:** Arash Beral, Todd M. Malynn, Blank Rome LLP

## X.  SPECIAL REQUESTS/OTHER ISSUES

None.


DATED:  August 27, 2024          ERVIN COHEN & JESSUP LLP
                                 Michael D. Murphy
                                 Kenneth P. Hsu



                          By:    ___*/s/ Michael D. Murphy*___
                                 Michael D. Murphy
                                 Attorneys for Plaintiff SHAKEY'S PIZZA
                                 ASIA VENTURES, INC.

ERVIN COHEN & JESSUP LLP

DATED:  August 27, 2024

BLANK ROME LLP
Arash Beral
Todd M. Malynn


By:  _____/s/ Arash Beral_____
Arash Beral
Attorneys for Defendants PCJV USA, LLC, PCI TRADING, LLC, GUY KOREN, Potato Corner LA Group, LLC, NKM CAPITAL GROUP, LLC, J & K AMERICANA, LLC, J & K CULVER, LLC, J&K LAKEWOOD, LLC; J&K OAKRIDGE, LLC, J&K VALLEY FAIR, LLC, J & K CAPITAL 2, LLC, J & K ONTARIO, LLC, J&K PC TRUCKS, LLC, J&K CONSULTANTS GROUP, LLC, and GK CAPITAL GROUP, LLC


## **ATTESTATION OF SIGNATURE**

As required by Local Rule 5-4.3.4(a)(2)(i), I, the undersigned, hereby attest that each signature has concurred in the filing of this document and has authorized the filing with his or her signature block.


_____/s/ Michael D. Murphy_____
Michael D. Murphy

ERVIN COHEN & JESSUP LLP