MICHAEL D. MURPHY (SBN 224678)
mdmurphy@foxrothschild.com
MATTHEW FOLLETT (SBN 325481)
mfollett@foxrothschild.com
MEEGHAN TIRTASAPUTRA (SBN 325572 )
mtirtasaputra@foxrothschild.com
JESSICA NWASIKR (SBN 343087)
jnwasike@foxrothschild.com
Fox Rothschild LLP
Constellation Place
10250 Constellation Boulevard, Suite 900
Los Angeles, California 90067
Telephone:  310.598.4150
Facsimile:   310.556.9828

Attorneys for Plaintiff and Counterclaim
Defendant SHAKEY'S PIZZA ASIA
VENTURES, INC. and Third Party Defendants
CINCO CORPORATION, PC
INTERNATIONAL PTE LTD., and SPAVI
INTERNATIONAL USA, INC.

# UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| SHAKEY'S PIZZA ASIA VENTURES, INC, a Philippines corporation,<br><br>Plaintiff,<br><br>v.<br><br>PCJV USA, LLC, a Delaware limited liability company; PCI TRADING, LLC, a Delaware limited liability company; GUY KOREN, an individual; POTATO CORNER LA GROUP, LLC, a California limited liability company; NKM CAPITAL GROUP, LLC, a California limited liability company; J & K AMERICANA, LLC, a California limited liability company; J&K LAKEWOOD, LLC, a California limited liability company; J&K VALLEY FAIR, LLC, a California limited liability company; J & K ONTARIO, LLC, a California limited liability company; HLK MILPITAS, LLC, a California, limited liability company; GK CERRITOS, LLC, a California, limited liability company; J&K PC TRUCKS, LLC, a California | Case No. 2:24-CV-04546-SB(AGRx)<br><br>*The Hon. Stanley Blumenfeld, Jr.*<br><br>**JOINT FILING OF REDLINE COMPARISON BETWEEN DKT. NO. 258 AND DKT. NO 263-1 PURSUANT TO DKT. NO. 279.**<br><br>Complaint Filed:   May 31, 2024<br>Trial Date:          August 26, 2025 |

1

limited liability company; and, GK CAPITAL GROUP, LLC, a California limited liability company and DOES 1 through 100, inclusive,

Defendants.

PCJV USA, LLC, a Delaware limited liability company; PCI TRADING LLC, a Delaware limited liability company; POTATO CORNER LA GROUP LLC, a California limited liability company; GK CAPITAL GROUP, LLC, a California limited liability company; NKM CAPITAL GROUP LLC, a California limited liability company; and GUY KOREN, an individual,

Counter-Claimants,

v.

SHAKEY'S PIZZA ASIA VENTURES, INC, a Philippines corporation,

Counter Defendant.

PCJV USA, LLC, a Delaware limited liability company; PCI TRADING LLC, a Delaware limited liability company; POTATO CORNER LA GROUP LLC, a California limited liability company; GK CAPITAL GROUP, LLC, a California limited liability company; NKM CAPITAL GROUP LLC, a California limited liability company; and GUY KOREN, an individual,

Third Party Plaintiffs,

v.

PC INTERNATIONAL PTE LTD., a Singapore business entity; SPAVI INTERNATIONAL USA, INC., a California corporation; CINCO CORPORATION, a Philippines corporation; and DOES 1 through 10, inclusive,

Third Party Defendants.

2

1    The Parties respectfully file this redline comparison of Dkt. No. 258 and

2    Dkt. No. 263-1 pursuant to the Court's order on August 21, 2025. Dkt. No. 279.

3    A true and correct copy of the redline comparison between Dkt. No. 258 and

4    Dkt. No. 263-1 is attached as Exhibit A.

5

6

7

8    Dated: August 22, 2025                        **FOX ROTHSCHILD LLP**

9

10                                                 */s/ Michael D. Murphy*

11                                                 Michael D. Murphy
                                                   Attorneys for Plaintiff and Counterclaim
12                                                 Defendant SHAKEY'S PIZZA ASIA
                                                   VENTURES, INC. and Third Party
13                                                 Defendants CINCO CORPORATION,
                                                   PC INTERNATIONAL PTE LTD., and
14                                                 SPAVI INTERNATIONAL USA, INC.

15    Dated: August 22, 2025                       **BLANK ROME LLP**

16

17                                                 */s/ Jamison T. Gilmore*

18                                                 Arash Beral
                                                   Todd M. Malynn
19                                                 Jamison T. Gilmore
                                                   Attorneys for Defendants,
20                                                 Counterclaimants, and Third-Party
                                                   Plaintiffs.

21

22

23

24

25

26

27

28

3

1

## **ATTESTATION**

2        Pursuant to Local Rule 5-4.3.4, the filer attests that all signatories listed, and

3   on whose behalf the filing is submitted, concurs in the filing's content and have

4   authorized the filing.

5

6                                  */s/ Michael D. Murphy*
                                   Michael D. Murphy

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

4

# CERTIFICATE OF SERVICE

The undersigned certifies that, on August 22, 2025, the foregoing document was electronically filed with the Clerk of the Court for the United States District Court, Central District of California, using the Court's ECF filing system. I further certify that all counsel for all parties to this action are registered CM/ECF user and that service will be accomplished by the CM/ECF system.

I certify under penalty of perjury that the foregoing is true and correct.

Dated:  August 22, 2025                    FOX ROTHSCHILD LLP


                                           /s/ Michael D. Murphy
                                           Michael D. Murphy
                                           Attorneys for Plaintiff and Counterclaim
                                           Defendant SHAKEY'S PIZZA ASIA
                                           VENTURES, INC. and Third-Party
                                           Defendants CINCO CORPORATION,
                                           PC INTERNATIONAL PTE LTD., and
                                           SPAVI INTERNATIONAL USA, INC.

# Exhibit A

:24-CV-04546-SB-AGR Document 258 Filed
08/12/25

Page 1 of 164 Page
ID

#:10762

MICHAEL D. MURPHY (SEN 224678)
mdmurpliy@foxrotlischild.com MATTHEW
FOLLETT (SEN 325481)
mfollett@foxrotliscliild.com JESSICA
NWASIKE (SEN 343087)
jnwasike@foxrotlischild.com Fox ROTHSCHILD
LLP Constellation Place
10250 Constellation Boulevard, Suite 900 Los
Angeles, California 90067 Telephone:
310.598.4150 Facsimile: 310.556.9828

Attorneys for Plaintiff and Counterclaim
Defendant SHAKEY'S PIZZA ASIA
VENTURES, INC. and Third Party Defendants
CINCO CORPORATION, PC
INTERNATIONAL PTE LTD., and SPAVI
INTERNATIONAL USA, INC.

:24-cv-04546-SB-AGR Document 258 263-1 Filed 08/12/25 08/14/25 Page 2 of 164 173 Page ID #:10763:11140

# UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA

SHAKEY'S PIZZA ASIA VENTURES, INC, a Philippines corporation,

    Plaintiff,

    v.

PCJV USA, EEC, a Delaware limited liability company; PCI TRADING, EEC, a Delaware limited liability company; GUY KOREN, an individual; POTATO CORNER LA GROUP, EEC, a California limited liability company; NKM CAPITAL GROUP, EEC, a California limited liability company; J & K AMERICANA, EEC, a California limited liability company; J&K LAKEWOOD, EEC, a California limited liability company; J&K VALLEY FAIR, EEC, a California limited liability company; J&K ONTARIO, EEC, a California limited liability company; HLK MILPITAS, EEC, a California, limited liability company; GK CERRITOS, EEC, a California, limited liability company; J&K PC TRUCKS, EEC, a California

Case No. 2:24-CV-04546-SB(AGRx)

*The Hon. Stanley Blumenfeld, Jr.*

**AMENDED JOINTLY FILED CLAIMS, COUNTERCLAIMS, THIRD PARTY CLAIMS, AND AFFIRMATIVE DEFENSES TO BE TRIED**

Complaint Filed:    May 31, 2024
Trial Date:    August 18, 2025

     i

AMENDED JOINTLY FILED CLAIMS TO BE TRIED, COUNTERCLAIMS, THIRD PARTY CLAIMS, AND AFFIRMATIVE DEFENSES TO BE TRIED

CASE NO. 2:24-CV-04546-SB(AGRX)

175689043.1

:24-cv-04546-SB-AGR Document 263-1 Filed 08/14/25 Page 3 of 173 Page ID #:11141

California, limited liability company; J&K TRUCKS, LLC, a California limited liability company; and, GK CAPITAL GROUP, LLCf, a California limited liability company and DOES 1 through 100, inclusive,

        Defendants.

PCJV USA, LEGLLC, a Delaware limited liability company; PCI TRADING EECLLC, a Delaware limited liability company; POTATO CORNER LA GROUP EECLLC, a California limited liability company; GK CAPITAL GROUP, EECLLC, a California limited liability company; NKM CAPITAL GROUP EECLLC, a California limited liability company; and GUY KOREN, an individual,

        Counter-Claimants,

   v.

SHAKEY'S PIZZA ASIA VENTURES, INC, a Philippines corporation,

        Counter Defendant.

PCJV USA, EECLLC, a Delaware limited liability company; PCI TRADING EECLLC, a Delaware limited liability company; POTATO CORNER LA GROUP EECLLC, a California limited liability company; GK CAPITAL GROUP, EECLLC, a California limited liability company; NKM CAPITAL GROUP EECLLC, a California limited liability company; and GUY KOREN, an individual,

        Third Party Plaintiffs,

   v.

PC INTERNATIONAL PTE LTD., a Singapore business entity; SPAVI INTERNATIONAL USA, INC., a California corporation: CINCO CORPORATION; a Philippines corporation; and DOES 1 through 10, inclusive,

        Third Party Defendants.

:24-cv-04546-SB-AGR Document 258 Filed 08/12/25 Page 3 of 164 Page ID

3

CASE NO. 2:24-CV-04546-SB(AGRX)

3

AMENDED JOINTLY FILED CLAIMS, COUNTERCLAIMS, THIRD PARTY CLAIMS, AND AFFIRMATIVE DEFENSES TO BE TRIED

175468760.1

## TABLE OF CONTENTS

Page

I.   Plaintiff Shakey's Pizza Asia Venture's Inc. ("SPAVI" or "Plaintiff"): Claims to be Tried by a Jury ............................................................................. 4

    1)    Claim 1: Trademark Infringement Against All Entity Defendants ..... 4

    2)    Claim 3: False Designation of Origin and Description of Fact Against All Entity Defendants (15 U.S.C. § 1125):20 ..................................... 25

    3)    Claim 4: Contributory Trademark Infringement Against All Defendants (Against Guy Koren, PCJV USA, FF, PCI Trading, EEC, Potato Comer FA Group, EEC; GK Capital, EEC or NKM Capital Group, EEC)32 ................................................................................. 37

    4)    Claim 5: Contributory False Designation of Origin Against Guy Koren, PCJV USA, EL, PCI Trading, EEC, Potato Comer LA Group, EEC; GK Capital, EEC or NKM Capital Group, EEC36 ................... 41

CASE NO. 2:24-CV-04546-SB(AGRX)
AMENDED JOINTLY FILED CLAIMS , COUNTERCLAIMS, THIRD PARTY CLAIMS, AND AFFIRMATIVE DEFENSES TO BE TRIED
175468760.1

Pursuant to Dkt. No. 254, the parties submit the following causes of action, counterclaims, third party claims, and affirmative defenses as at issue for trial. ~~SPAVI further notes that two of its entries in this document are longer than one paragraph. With respect to those notes, given their rarity herein, and given the number of pleadings disputing those elements themselves, the disagreements abiu what can or cannot be presented therein have been extensive and cannot easily be consolidated into one paragraph while communicating the same layered issues. SPAVI apologizes to this Court and assures this Court it was not meant as a sign of disrespect, bit, rather a sign of the importance of those elements at issue.~~

## I.     PLAINTIFF SHAKEY'S PIZZA ASIA VENTURE'S INC. ("SPAVI" OR "PLAINTIFF"): CLAIMS TO BE TRIED BY A JURY.

### 1)     <u>Claim 1: Trademark Infringement Against All Entity Defendants</u>

(15U.S.C. § 1114), regarding the three registered marks at issue: (l)U.S.Reg. No. 5900257: the word mark "Potato Corner" ("Word Mark"); (2) U.S. Reg. No. 6088456 protecting "World's Best Flavored French Fries (the "Slogan Mark"); and (3) U.S. Reg. No. 3760041 (the "Logo Mark") protecting:

    a.   <u>Element No. 1</u>: the Word Mark, Slogan Mark, and/or the Logo Mark (all collectively, the "Marks") are valid and protectible trademarks:

        1. This element is not disputed

    b.   <u>Element No. 2</u>: Plaintiff owns the Word Mark, Slogan Mark, and/or the Logo Mark

        1.   This element is disputed.

        2.   <u>Nature of Dispute:</u> Legal and Factual

        3.   <u>Plaintiff's Legal Position:</u> Defendants do not dispute that the registrations for all three Marks (Trial Exhibit Nos. 1, 3, and 5) identify Cinco as the registrant and the first to use

each of the three Marks, nor do Defendants dispute that the

~~*Document 258 Filed 08/12/25 Page 5 of 164 Page ID #:10766*~~ Deeds of Assignment attached to the notices filed with the USPTO (Trial Exhibit Nos. 4 and 6) confirm that, unequivocally and without exception, the entirety of these Marks were sold and assigned to Plaintiff, along with all the goodwill arising out of or associated with the Marks. Defendants also do not dispute the testimony of Seller (Cinco) and Buyer (SPAVI) that the Deeds are accurate in every way, that the sale and assignments were comprehensive, without carve outs, and fully consummated. Instead, Defendants take internally inconsistent positions that are contradicted by various legal doctrine, including: **(1) Licensee Estoppel,** wherein PCJV (as well as all other Defendants that operate or own a business using the Marks), as a licensee of Cinco (and subsequently SPAVI) through the implied license or even the unsigned Master License Agreement claimed by Defendants to be binding "may not set up any adverse claim in it as against its licensor." *Pac. Supply Co-op.* v. *Farmers Union Cent. Exch. Inc.,* 318 F.2d 894, 908 (9th Cir. 1963). **(2) The Lanham Act provisions rendering Defendants' positions contrary to federal law,** in that Defendants' attempts to claim that the first time they used the Marks should be credited to them, even though they were acting as licensees of PCJV or Defendants' claim of ownership of the goodwill created through PCJV's stores (operated as licensees) inured to Defendants' benefit contradicts 15

CASE NO. 2:24-CV-04546-SB(AGRX)

AMENDED JOINTLY FILED CLAIMS~~,~~ COUNTERCLAIMS, THIRD PARTY CLAIMS, AND AFFIRMATIVE DEFENSES TO BE TRIED

~~175468760.1~~

USC § 1055 (as well as the unsigned Master License Agreement they claimed to be adhering to this

~~Document 258 Filed 08/12/25 Page 6 of 164 Page ID #:10767~~

whole time). **<u>(3) Law of the case,</u>** in that Defendants' challenge to ~~Plaintiffs~~ Plaintiff's ownership of the Marks based on Defendants' first use as licensee of Cinco has already been resolved by this Court and the Ninth Circuit, which held that "it is undisputed that Cinco registered the three marks

case"). **(4) Authorities cited by Defendants do not suoDort their position, including** Sennoku. which presented a distinguishable case - a foreign manufacturer that was the first to use versus the domestic distributor that was the registrant, whereas in this case the foreign licensor is both the first to use and the registrant - and yet, Defendants continue to cite it as supporting their claim of ownership or rights, and it does not. **(5) The merger doctrine,** wherein the purchase and sale agreement between Cinco and SPAVI selling and agreeing to assign to SPAVI the Potato Comer marks and brand merge into the undisputed and unequivocal deeds that are notarized and ratified by Buyer and Seller (Trial Exhibit Nos. 4 and 6) such that these Deeds would control if there was any inconsistency between the purchase and sale agreement and the deed (there is not, as those agreements said nothing about and acknowledged no rights held by any of the Defendants), such that Defendants' speculative theory that the purchase and sale agreement between Cinco and SPAVI reserved some rights for Defendants cannot even be presented to the jury given that the Deeds do not reserve anything for Defendants - a doctrine that applies in federal intellectual property cases and renders any questions as to what the deal between SPAVI and Cinco actually said, irrelevant. *See, e.g., Palos Verdes Corp.* v. *Hons. Auth. of Los Angeles Cnty.,* 202 Cal. App. 2d 827, 836 (1962) (explaining that "if the language of a deed is plain, certain, and unambiguous, neither parol evidence nor surrounding

AFFIRMATIVE DEFENSES TO BE TRIED

175468760.1

at issue then transferred ownership of those marks to SPA VI."

The Ninth Circuit then explicitly rejected PCJV's theories that it was the first to use the marks domestically by holding that "in the licensor-licensee context, a licensee's use of a trademark inures to the benefit of the licensor-registrant" *(Shakeys Pizza Asia Ventures, Inc.* v. *PCJV USA, LLC,* No. 24-7084, 2025 WL 1431270, at *1 (9th Cir. May 19, 2025)), thus rendering, for example, any allegation by PCJV of its use as a licensee as being proof of its first use cannot serve as a basis to challenge ~~SPA Vi's~~ SPAVFs ownership because this theory has been considered and rejected by the Ninth Circuit in this case, as has also the various other legal theories of Defendants offered during the injunction stage that are based on the same facts asserted during the injunction and rejected by this Court. Even at the injunction stage, rulings by this Court and the Ninth Circuit "on pure issues of law, however, are binding." *Ranchers Cattlemen Action Legal Fund United Stockgrowers of Am.* v. *U.S. Dep't of Agr.,* 499 F.3d 1108, 1114 (9th Cir. 2007); *see, e.g. Arizona* v. *California,* 460 U.S. 605,618 (1983) (citing the rule as being "when a court decides upon a rule of law, that decision should continue to govern the same issues in subsequent stages in the same case"). **(4) Authorities cited by Defendants do not support their position, including** *Sen2oku,* **which presented a distinguishable case - a foreign manufacturer that was the first to use versus the**

domestic distributor that

10

CASE NO. 2:24-CV-04546-SB(AGRX)

10

AMENDED JOINTLY FILED CLAIMS, COUNTERCLAIMS, THIRD PARTY CLAIMS, AND AFFIRMATIVE DEFENSES TO BE TRIED

175468760.1

was the registrant, whereas in this case the foreign licensor is both the first to use and the registrant - and yet, Defendants continue to cite it as supporting their claim of ownership or rights, and it does not. **(5) The merger doctrine,** wherein the purchase and sale agreement between Cinco and SPAVI selling and agreeing to assign to SPAVI the Potato Comer marks and brand merge into the undisputed and unequivocal deeds that are notarized and ratified by Buyer and Seller (Trial Exhibit Nos. 4 and 6) such that these Deeds would control if there was any inconsistency between the purchase and sale agreement and the deed (there is not, as those agreements said nothing about and acknowledged no rights held by any of the Defendants), such that Defendants' speculative theory that the purchase and sale agreement between Cinco and SPAVI reserved some rights for Defendants cannot even be presented to the jury given that the Deeds do not reserve anything for Defendants - a doctrine that applies in federal intellectual property cases and renders any questions as to what the deal between SPAVI and Cinco actually said, irrelevant. *See, e.g., Palos Verdes Corp.* v. *Hons. Auth. of Los Angeles Cnty.,* 202 Cal. App. 2d 827, 836 (1962) (explaining that "if the language of a deed is plain, certain, and unambiguous, neither parol evidence nor surrounding facts and circumstances will be considered to add to, detract from, or vary its terms or to determine the estate

11
CASE NO. 2:24-CV-04546-SB(AGRX)
AMENDED JOINTLY FILED CLAIMS,
COUNTERCLAIMS, THIRD PARTY CLAIMS, AND
AFFIRMATIVE DEFENSES TO BE TRIED

conveyed); *B. F. Goodrich Co.* v. *A. T. I. Caribe, Inc.,* 366 F. Supp. 464,467 (D. Del. 1973) (applying this concept in the intellectual property context). **(6) Standing,** in that none of the Defendants were party to the transaction between Cinco and Plaintiff, and as such, have no standing to question whether the Deeds (notarized and ratified) represent the actual deal between Cinco and SPAVI or some other imagined reservation of their rights supposedly contained in the purchase and sale agreement that did not make it into the Deeds (a fantasy that did not happen). *See, e.g. Imperial Residential Design, Inc.* v. *Palms Dev. Grp., Inc.,* 70 F.3d 96, 99 (11th Cir. 1995) (agreeing that "that, where there is no dispute between the copyright owner and the transferee about the status of the copyright, it would be unusual and unwarranted to permit a third-party infringer to invoke [the requirement of a writing memorializing the status] to avoid suit for copyright infringement."). (7) **Judicial estoppel,** in his sworn allegations in the Prior Governance Action *{Cinco Corporation et. al.* v. *Guy Koren et. al.* Los Angeles Superior Court Case No. BC701075), Koren admitted repeatedly including in verified allegations that Cinco "owned the Potato Comer brand" (Trial Exhibit No. 1421,     26), an allegation that Cinco *admitted* (Trial Exhibit, No. 1422,     26.), such that PCJV and Koren must be barred from making a "factual assertion" that Cinco did not own the brand "which

-24-CV-04546-S B-AG R:**24-cv-04546-SB-AGR Document 263-1 Filed 08/14/25 Page 7 of 173 Page ID #:11145**

**#:10770**

directly contradicts an earlier assertion made in the same proceeding or a prior one.'"-'"' *United States* v. *LencePence*, 466

8

13
CASE NO. 2:24-CV-04546-SB(AGRX)
13
AMENDED JOINTLY FILED CLAIMS, COUNTERCLAIMS, THIRD PARTY CLAIMS, AND AFFIRMATIVE DEFENSES TO BE TRIED
175468760.1

F.3d 721, 726 (9th Cir. 2006) (citing and quoting *Russell* v.
*Rolfs,* 893 F.2d 1033, 1037 (9th Cir.1990)).

4.    <u>Defendants' Position Statement:</u> The ownership issues
framed by the Proposed Final Pretrial Conference Order
(Dkt. No. 244), the Memoranda of Contentions of Law and
Fact (Dkt. Nos. 197 and 199) and pleadings are: (1) senior
use under *Sengoku,* including actual first use (restructure in
2009) and lawful first use, *see CreAgri, Inc.* v. *USANA
Health Services, Inc.,* 474 F3d 626, 630 (9th Cir. 2007); (2)
continuous use under 15 U.S.C § 1055; (3) assignment in
gross; (4) acquisition of "attached" rights by the PCJV
USA Parties and Plaintiff's corresponding denial of
acquiring burdens attached to the trademarks; (5) naked
license; and (6) priority favoring Defendants based on
other defenses. Plaintiff's proffered statement is non-
responsive. It is a combative, inappropriate and false
narrative of Defendants' position, record evidence,
preliminary rulings and the ownership issues for trail as set
forth in the Proposed Final Pretrial Conference Order (Dkt.
No. 244), Memorandums of Contentions of Law and Fact
(Dkt. Nos. 197 and 199) and pleadings. "The court's
preliminary injunction did not make final factual
determinations; no party moved for summary judgment;
and the jury needs to be instructed on the claims asserted in
this case." Dkt. No. 254 at 2. Plaintiffs unpled defenses of
infringer standing, licensee estoppel, judicial estoppel, and
merger (parol evidence) doctrine are not issues for trial per
the Proposed Final Pretrial Conference Order (Dkt. No.

244) or Plaintiff's Memorandum of Contentions of Law and Fact (Dkt. No. 199). Plaintiffs asserted "legal positions," which seek to avoid a trial on the merits, are also based on inapplicable authority (or no authority at all) and misstate the record. For these reasons, including because Plaintiffs "legal positions" go beyond identifying the actual ownership issues set for trial, Defendants will address them if or when they arise after the evidence on ownership is presented at trial

5.  <u>Plaintiffs Supporting Evidence:</u> Notarized Deeds signed by seller and buyer; USPTO filings including Registrations and Assignments, testimony of Gregorio (Plaintiffs CEO), Magsaysay (Cinco's CEO), Koren, Ybanez (Plaintiffs General Counsel), FDDs, Franchise Agreements.

6.  <u>Defendants' Supporting Evidence:</u> documents and testimony including and related to (1) Defendants' senior use and quality control of Potato Comer in the United States; (2) the superseding partnership agreement; (3) DLA Piper's notification of Cinco Corporation's unlawful use of Potato Comer in the United States; (4) the State of California's Department of Business Oversight's Order sanctioning PCJV USA, EEC for Cinco Corporation's alleged prior use of Potato Corner in the United States; (5) the superseding and restructure agreement confirmed by Guy Koren and Jose Magsaysay vesting ownership of Potato Comer in their partnership; (6) the joint venture

15

agreement vesting co-ownership of Potato Comer in the

United States in PCJV USA, LLC; (7) control over Potato

Corner in the United States being vested with and exercised

by PCJV USA, LLC; (8) Potato Comer USA being affixed

to Potato Corner in the United States; (9) consumer

association of Potato Corner in the United States with

PCJV USA, LLC, to whom complaints, if any, were

lodged; (10) PCJV USA, LLC's creation, development and

hold over the goodwill of Potato Comer in the United

States for over a decade; (11) absent a license agreement,

which SPAVI Parties disavow, PCJV USA, LLC's use

inured to its own benefit; (12) Cinco Corporation's lack of

control of Potato Corner in the United States for over a

decade; (13) Defendants' objection to Plaintiffs alleged

acquisition of U.S. trademark rights in breach of Cinco

Corporation's fiduciary duties and PCJV USA, LLC's joint

venture agreement ("JVA") and First Amendment thereto

("First Amendment") given that Plaintiff was disavowing

the existence of a license agreement; (14) Cinco

Corporation assigned U.S. Potato Comer trademarks to

Plaintiff without the goodwill associated with the

trademarks; (15) Plaintiff s lack of control of Potato Comer

in the United States after it allegedly acquired the U.S.

trademarks; (16) Defendants' Membership Interest

Purchase Agreement ("MIPA") with Cinco acquiring all of

its Interests in PCJV USA, LLC and all rights "attached"

thereto unencumbered by a need for a license from any

third party; (17) Plaintiff's denial of stepping into Cinco

n

AFFIRMATIVE DEFENSES TO BE TRIED

175468760.1

agreement vesting co-ownership of Potato Comer in the United States in PCJV USA, LLC; (7) control over Potato Corner in the United States being vested with and exercised by PCJV USA, LLC; (8) Potato Comer USA being affixed to Potato Corner in the United States; (9) consumer association of Potato Corner in the United States with PCJV USA, LLC, to whom complaints, if any, were lodged; (10) PCJV USA, LLC's creation, development and hold over the goodwill of Potato Comer in the United States for over a decade; (11) absent a license agreement, which SPAVI Parties disavow, PCJV USA, LLC's use inured to its own benefit; (12) Cinco Corporation's lack of control of Potato Corner in the United States for over a decade; (13) Defendants' objection to Plaintiffs alleged acquisition of U.S. trademark rights in breach of Cinco Corporation's fiduciary duties and PCJV USA, LLC's joint venture agreement ("JVA") and First Amendment thereto ("First Amendment") given that Plaintiff was disavowing the existence of a license agreement; (14) Cinco Corporation assigned U.S. Potato Comer trademarks to Plaintiff without the goodwill associated with the trademarks; (15) Plaintiff s lack of control of Potato Comer in the United States after it allegedly acquired the U.S. trademarks; (16) Defendants' Membership Interest Purchase Agreement ("MIPA") with Cinco acquiring all of its Interests in PCJV USA, LLC and all rights "attached" thereto unencumbered by a need for a

17

24 CV 04546 S B AG R:24-cv-04546-SB-AGR Document 263-1 Filed 08/14/25 Page 10 of 173 Page ID #:11148

license from any

18
CASE NO. 2:24-CV-04546-SB(AGRX)
18
AMENDED JOINTLY FILED CLAIMS, COUNTERCLAIMS, THIRD PARTY CLAIMS, AND AFFIRMATIVE DEFENSES TO BE TRIED
175468760.1

third party; (17) Plaintiff's denial of stepping into Cinco Corporation's shoes and acquiring the licensing burdens attached to the U.S. trademarks; and (18) Plaintiffs suppression of ownership evidence.

c.    <u>Element No. 3</u>: Defendants used the Word Mark, Slogan Mark, and/or the Logo Mark in interstate commerce after May 31,2024:

1.    This element is undisputed.

d.    <u>Element No. 4</u>: Defendants' use of the Word Mark, Slogan Mark, and/or the Logo Mark in interstate commerce after May 31,2024, was without the consent of Plaintiff and in a manner likely to cause confusion among ordinary consumers as to the source, sponsorship, affiliation, or approval of the services.

1.    This element is disputed.

2.    <u>Nature of Dispute</u>: Legal and Tactual

3.    <u>Plaintiffs Legal Position</u>: <u>As for absence of consent,</u> given the absence of any ownership rights, Defendants must locate some right as a licensee of the owner (SPAVI). Defendants offer two documents proffered as agreements that bind Cinco to a perpetual license. Neither work as a matter of law. first, they offer the unsigned October 10, 2010, document containing tenns for a Master License Agreement (Trial Exhibit No. 11), which this Court (and the Ninth Circuit) have reviewed. Both have interpreted it as a matter of law, concluding that it is an unsigned draft (as Keren's testimony has confirmed) and illusory because the licensor is given no consideration for this purported agreement. The unsigned document cannot, as a matter of law, have bound Cinco, even through implied contract law,

CASE NO. 2:24-CV-04546-SB(AGRX)
AMENDED JOINTLY FILED CLAIMS,
COUNTERCLAIMS, THIRD PARTY CLAIMS, AND
AFFIRMATIVE DEFENSES TO BE TRIED

because Cinco did not do anything in furtherance of that document to imply its assent. Moreover, multiple times after October 10,2010, documents were signed stating that Cinco would be expecting a 30% royalty recovery. Second, Plaintiffs point to § 3(g) of an Amended Joint Venture Agreement (and its predecessor the Joint Venture Agreement) - Trial Exhibit Nos. 8 and 9 - which this Court has already interpreted to constitute an agreement to agree, in the future, with Cinco on a license agreement. As the Ninth Circuit said in affirming this conclusion, "the AJVA contained an agreement to enter a~~—~~ *future* Master License Agreement, not a "perpetual license" like PCJV claims." *Shakeys Pizza Asia Ventures, Inc.* v. *PCJV USA,* ~~*LLC, I.JX\\*~~ No. 24-7084,2025 WL 1431270, at *1 (9th Cir. May 19,2025) (citing ~~*First*~~ *Urst* *Nat'l Mortg. Co.* v. *Fed. Realty Inv. Tr.,* 631 F.3d 1058, 1065 (9th Cir. 2011) ("[A]n 'agreement to agree,' without more, is not a binding contract."). This interpretation of the AJVA and JVA is a legal conclusion, which, as affinned by the Ninth Circuit are legal conclusions, and, as such, these are pure conclusions of law, which means: **this Court's conclusion that § 3(g) of the JVA and AJVA are agreements to agree and do not bind Cinco to a "perpetual license"~~»~~ are law of the case and cannot be disturbed or challenged at trial.** This theory based on interpretation of a contract has been considered and rejected by this Court and the Ninth Circuit

2:24-cv-04546-SB-AGR          Document 258 Filed 08/12/25 Page 14 of 164 Page ID #:10775

*Stockgrowers of Am.* v. *U.S. Dep't of Agr.,* 499 F.3d 1108, 1114 (9th Cir. 2007); *see, e.g. Arizona* v. *California,* 460 U.S. 605, 618 (1983) ((citing the rule as being "when a court decides upon a rule of law, that decision should continue to govern the same issues in subsequent stages in the same case"). Defendants now trot out other theories such the fact that the JVA and prior Operating Agreement are still somewhat live under a theory of partial integration, however, the following point prevails over each of these contortions: Defendants can point to no agreement or document, or acct, or statement, binding Cinco to a perpetual, irrevocable, royalty free licensee of its Marks. As such, in the absence of any written agreement, or documentation of any license terms, the sole license that existed as of May 31, 2024, was implied and terminable at will *See Pogrebnoy* v. *Russian Newspaper Distribution, Inc.,* 289 F. Supp. 3d 1061, 1070 (C.D. Cal. 2017), *affd,* 742 F. App'x 291 (9th Cir. 2018) ("[A]n implied license, like any other contract, is terminable at the will of either party if it is not for a specified tenn"). One final flaw exists in the attempt to bind Cinco to the AJVA, and that is one of issue preclusion in favor of Plaintiffs. As evidenced by Plaintiffs own Third Amended Complaint (verified) in the Prior Governance Action, the entire pleading is based on the theory that — and it sought judgment concluding that—Cinco is an alter ego of the entity that was a 60% member of PCJV. *(See* Trial Exhibit No. 1421 p. 7:3-14.) Such allegations, having been dismissed, with prejudice, by

14

in this case, and because it is a "pure issue[] of law, however, [it is] binding" on Defendants under law of the case. *Ranchers Cattlemen Action Legal Fund United Stockgrowers of Am.* v. *U.S. Dep't of Agr.,* 499 F.3d 1108, 1114 (9th Cir. 2007); *see, e.g. Arizona* v. *California,* 460 U.S. 605, 618 (1983) ((citing the rule as being "when a court decides upon a rule of law, that decision should continue to govern the same issues in subsequent stages in the same case"). Defendants now trot out other theories such the fact that the JVA and prior Operating Agreement are still somewhat live under a theory of partial integration, however, the following point prevails over each of these contortions: Defendants can point to no agreement or document, or acct, or statement, binding Cinco to a perpetual, irrevocable, royalty free licensee of its Marks. As such, in the absence of any written agreement, or documentation of any license terms, the sole license that existed as of May 31, 2024, was implied and terminable at will *See Pogrebnoy* v. *Russian Newspaper Distribution, Inc.,* 289 F. Supp. 3d 1061, 1070 (C.D. Cal. 2017), *affd,* 742 F. App'x 291 (9th Cir. 2018) ("[A]n implied license, like any other contract, is terminable at the will of either party if it is not for a specified tenn."). One final flaw exists in the attempt to bind Cinco to the AJVA, and that is one of issue preclusion in favor of Plaintiffs. As evidenced by Plaintiffs own Third Amended Complaint (verified) in the Prior Governance Action, the

22
CASE NO. 2:24-CV-04546-SB(AGRX)
22

entire pleading is based on

JOINTLY FILED CLAIMS TO BE TRIEDCASE NO. 2:24-CV-04546-SB(AGRX)
175468760.1
AMENDED JOINTLY FILED CLAIMS,
COUNTERCLAIMS, THIRD PARTY CLAIMS, AND
AFFIRMATIVE DEFENSES TO BE TRIED

the theory that — and it sought judgment concluding that - - Cinco is an alter ego of the entity that was a 60% member of PCJV. *(See* Trial Exhibit No. 1421 p. 7:3-14.) Such allegations, having been dismissed, with prejudice, by Koren, re4nder thee accusations extinguished, and, as such, Defendants are precluded from alleging them ever again.

Regarding likelihood of confusion, which may be resumed, and the jmy may be so instructed "[w]here,'as [wjhere,'as here, "a licensee persists in the unauthorized use of a licensor's trademark, courts have found that the continued use alone establishes a likelihood of consumer confusion." Robert *Trent Jones II, Inc.* v. *GFSI, Inc.,* 537 F. Supp. 2d 1061,1065 (N.D. Cal. 2008) (citing and quoting *Sun Microsystems* v. *Microsoft Corp.,* 999 F.Supp. 1301, 1311 (N.D.Cal.1998) *(citing Paisa, Inc.* v. *N & GAuto, Inc.,* 928 F.Supp. 1009,1012 n. 4 (C.D.Cal.1996); *Hollywood Athletic ClubChib,* 938 F.Supp. at 614-15 (C.D.Cal. (C.D.Cal.1996)). The Sixth Circuit's analysis in Max Rack, Inc, v. Core Health & Fitness, LLCFFC, 40 F.4th 454, 464 (6th Cir. 2022) is instructive:

> "A separate body of law has developed for this distinct claim that a holdover licensee has continued to use a licensor's mark after their agreement expired. *See 4* McCarthy, *supra,* § 25:31 (citing cases). In this context, courts have jettisoned the usual totality-of-the-circumstances test in favor of a more

categorical rule: "proof of continued, unauthorized use of an original trademark by one whose license to use the trademark had [15] been terminated is sufficient to establish 'likelihood of confusion.' " *U.S. Structures, Inc.* v. *J.P. Structures, Inc.,* 130 F.3d 1185, 1190 (6th Cir. 1997); *ITT Indus., Inc.* v. *Wastecorp.*

*Inc.,* 87 F. App'x 287, 293 (3d Cir. 2004); *Gorenstein Enters., Inc.* v. *Quality Care-USA, Inc.,* 874 F.2d 431, 435 (7th Cir. 1989); *Burger King Corp.* v. *Mason,* 710 F.2d 1480, 1492-93 (11th Cir. 1983); *Pro. Golfers Ass'n of Am.* v. *Bankers Life & ~~Cas~~Gas. Co.,* 514 F.2d 665,670 (5th Cir. 1975); *L & L Wings, Inc.* v. *Marco-Destin,*

*Inc.,* 676 F. Supp. 2d 179,188 (S.D.N.Y. 2009). This rule makes good sense when a holdover licensee blatantly infringes the licensor's mark by using that mark in the same way as it did before the agreement expired. Without any need to tick through factors, it should be obvious that consumers will believe, for example, that a pizza restaurant remains affiliated with the "Little Caesars" chain when a terminated franchisee continues to operate the pizzeria as a Little Caesars. *See Little Caesar Enters., Inc.* v. *Miramar Quick Serv. Rest. Corp.,* 2020 WL 4516289, at *3 (6th Cir. 2020) (order)"

Although Plaintiff intends to, and will, adduce proof of the *Sleekcraft* factors, the presumption exists, and it is entitled to stand on this presumption alone. *See also, Brookfield Commc'ns, Inc.* v. *W. CoastEnt. Corp.,* 174 F.3d 1036, 1056 (9th Cir. 1999) ("In light of the virtual identity of marks, if they were used with identical products or services likelihood of confusion would

follow as a matter of course"); *Park 'n Ely, Inc.* v. *Dollar Park & ~~Fly~~Ely, Inc.,* 782 F.2d 1508, 1509 (9th Cir. 1986) (holding that when marks and services are identical and channels are the same, likelihood of confusion is assumed, even if the other factors weight against); *see also Blue Mako Inc.* v. ~~Minidis, Mmidis^~~ No. CV 07-916 AHM (SHX), 2008 WL 11334205 (C.D. Cal. June 23, 2008) (applying these principles to similar facts). Although Plaintiff intends to, and will, adduce proof of the *Sleekcraft* factors, the presumption exists, and it is entitled to stand on this presumption alone.

4.  Defendants' Position Statement: If Defendants are not found to have a superior claim to ownership, authorization issues framed by the Proposed Final Pretrial Conference Order (Dkt. No. 244), the Memoranda of Contentions of Law and Fact (Dkt. Nos. 197 and 199) and pleadings are whether, based on a partnership meeting of the minds, governing documents, course of performance, fiduciary and contractual obligations, the implied covenant of good faith and fair dealing, and reasonable and detrimental reliance: (1) PCJV USA, LLC had a "lifetime" license as a joint venture partner; (2) PCJV USA, LLC had a 20-year license with three 10-year options; (3) PCJV USA, LLC had a non-tenninable-at-will license; (4) Plaintiff owed fiduciary or contractual obligations to provide PCJV USA, LLC a long-term license consistent with the PCJV USA Parties being joint venture partners, see J. Thomas McCarthy, *McCarthy on Trademarks and Unfair Competition,* § 18:15, at (5th ed.) ('"It is elementary

CASE NO. 2:24-CV-04546-SB(AGRX)
AMENDED JOINTLY FILED CLAIMS~~,~~
COUNTERCLAIMS, THIRD PARTY CLAIMS, AND
AFFIRMATIVE DEFENSES TO BE TRIED
~~175468760.1~~

ancient law that an assignee never stands in any better position than his assignor'") (citation omitted); and (5) other defenses to enforcement, including promissory

estoppel, authorizing PCJV USA, LLC's continued use of the U.S. trademarks. Plaintiff's proffered statement is non-responsive. It is a combative, inappropriate and false narrative of record evidence, preliminary rulings and the authorization issues for trail as set forth in the Proposed Final Pretrial Conference Order (Dkt. No. 244), Memoranda of Contentions of Law and Fact (Dkt. Nos. 197 and 199) and pleadings. "The court's preliminary injunction did not make final factual determinations; no party moved for summary judgment; and the jury needs to be instructed on the claims asserted in this case." Dkt. No. 254 at 2. Plaintiffs asserted "legal positions," which seek to avoid a trial on the merits, are also based on inapplicable authority (or no authority at all) and misstate the record. For these reasons, including because Plaintiffs "legal positions" go beyond identifying the actual authorization issues set for trial, Defendants will address them if or when they arise after the evidence on PCJV USA LLC's authorization to continue using the U.S. trademarks is presented at trial.

4.5.   Plaintiffs Supporting Evidence: Trial Exhibit 29 (May 31, 2024 Termination); photographs of various stores taken from May 31, 2025 through the present; Testimony of Koren; Plaintiff executives Gregorio (~~Plaintiff s~~ Plaiuntiffs CEO), Concepcion (Plaintiffs COO charged with US operations), Tan (Director responsible for international franchising); investigator; Franchisees; Kim Lambert and Barry Kurtz;

CASE NO. 2:24-CV-04546-SB(AGRX)
28
AMENDED JOINTLY FILED CLAIMS-, COUNTERCLAIMS, THIRD PARTY CLAIMS, AND AFFIRMATIVE DEFENSES TO BE TRIED
~~175468760.1~~

:24-cv-04546-SB-AGR Document 263-1 Filed 08/14/25 Page 19 of 173 Page ID #:11157

in addition to the following documents Amended Joint Venture Agreement and Joint Venture Agreement.

6. Defendants' Supporting Evidence: documents and testimony including and related to (1) Defendants' senior use and quality control of Potato Comer in the United States; (2) the superseding and restructure agreement confirmed by Guy Koren and Jose Magsaysay vesting partnership rights to build, develop and control Potato Corner in the United States; (3) the joint venture agreement vesting lifetime partnership rights to build, develop and control Potato Corner in the United States; (4) absent a license agreement, which SPAVI Parties disavow, PCJV USA, LLC's owns the U.S. Potato Corner marks as its use inured to its own benefit; (5) all the terms and conditions of the JVA and First Amendment thereto controlling licensing, approval of franchisee agreements, including as disclosed in franchise disclosure documents ("FDDs"), and management and operations of Potato Comer in the United States; (6) parol evidence regarding the partners' meeting of the minds; (7) the JVA's related agreements, which remained operative and under which Cinco Corporation remained a fiduciary and party to the JVA after the First Amendment as confirmed a plethora of documentary evidence; (8) the license agreements setting forth the terms and conditions upon which PCJV USA, LLC's senior use and control of Potato Comer in the United States would inure to the benefit of Cinco Corporation, which the SPAVI

Parties now disavow, even though Cinco Corporation offered it through DLA Piper, or thereafter accepted, countersigned or otherwise entered into the license agreements as evidenced in many writings and agreed and approved of in FDDs; (9) course of performance for more than a decade as evidenced by approved FDDs, which ratified the license agreements and confirmed an entered into license agreement; (10) reasonable and detrimental reliance; (11) fiduciary obligations, the implied covenant of good faith and fair dealing, and the JVA and First Amendment's plain acknowledgement that there are no terminable-at-will branding rights; (12) Plaintiff's denial of stepping into Cinco Corporation's shoes and acquiring the licensing burdens attached to the U.S. trademarks; and (13) Plaintiffs suppression of authorization evidence e. <u>Element No. 5</u>: Damage caused by infringement designation.

1. This element is disputed.

2. Nature of Dispute: factual Legal and Factual

3. Plaintiffs Position Statement: The standard to be followed is set forth in 15 USC § 1117 which only requires this Court's approval in equity to proceed with money damages. The Courts have, contrary to Defendant's apparent position, removed the requirement of willfulness to obtain disgorgement., *Romag Fasteners, Inc.* v. *Fossil, Inc.*, ---- U.S. ------, 140 S. Ct. 1492,1495-97,206 L.Ed.2d 672 (2020) (holding willfulness is not a precondition to disgorgement of profits under the Lanliam Act). (Dkt. No.

594.) Defendants ignore the difference between normal infringement and this case, the holdover licensee, where the standard for likelihood of confusion is lowered, and even sometimes presumed, and irreparable harm is also presumed. The Lanham Act allows Defendants to raise the other arguments to rebut the presumption of irreparable harm, but the standard as applied here allows for disgorgement

4.    Defendants' Position Statement: Likelihood of confusion, when coupled with likely irreparable harm, is the standard for injunctive relief, the primary remedy under the Lanham Act *(National Grange of the Order of Patrons of Husbandry* v. *Cal State Grange,* 182 F.Supp. 3d 1065, 1071 (E.D. Cal. 2016)), the benefits of which Plaintiff has already obtained in this case by flipping franchisees under contract with Defendants to join its organization— notwithstanding PCJV USA, LLC's rebranding rights and obligations disclosed in FDDs; Plaintiff fails to acknowledge its legal and higher burden of proof to establish an entitlement to monetary recovery, whether legal damages (which Plaintiff is not pursuing as there is no evidence it has a legal right to conduct a franchise business in California or elsewhere in the United States) or disgorgement—both of which stem from actual confusion in the market not attributable to Plaintiffs own conduct as proof of a defendant actually trading on the goodwill of another resulting in either lost profits or unjust enrichment *(Grade* v. *Grade, 2\1* F.3d 1060,1068 (9th Cir. 2000)); in

addition to there being no consumer survey evidence or probative evidence of actual confusion not attributable to Plaintiffs own conduct (let alone attributable to trademark infringement), Defendants' exercise of bona fide good faith belief not to waive (a) pre-existing partnership (whether ownership or authorization) rights and obligations to use and control the U.S. trademarks and to equally receive service fees if any royalties were paid to the registrant when (b) Plaintiff allegedly acquired U.S. Potato Comer trademarks in the middle of franchise litigation between joint venture partners, (c) over Defendants' objection, (d) initiating this lawsuit in a conspiracy 3 days after the settlement with Plaintiffs assignor to circumvent a state court injunction rather than go to trial in state court, (e) disregarding a tolling agreement to continue discussions and not filing an action for declaratory relief if there was an impasse to determine who has superior trademark rights, (f) creating the risk of marketplace confusion by virtue of its own conduct; and (e) suppressing evidence, including properly served discovery ordered to be produced, does not satisfy Plaintiff's legal burden of proof. *See Yuga Labs, Inc. v. Ripps,* Case No. CV 22-4355-JFW(JEMx), 2023 WL 7089922, at *10 (C.D. Cal. Oct. 25, 2023) (while totality of the circumstances are used to determine an award of profits, "defendant's mental state is 'a highly important consideration . . . .'").

    5.    3.**Plaintiffs Supporting Evidence:** Defendants have

produced financials for the period in question May 31, 2024 through the present, and, given that the entirety of their business is built of the confusion, we only need to prove profits which can be disgorged. Thus, the financials as well as Koren testimony and testimony of franchisees as well as correspondence regarding costs of goods sold as well as the testimony of the CFO of Shakey's will establish damage. No expert is needed for arithmetic. To the contrary, it is Defendant who bears a heavier burden of establishing what costs or expenses "actually contributed to the sale of the infringing products." *Monster Energy Co.* v. *Integrated Supply Network, LLC,* 533 F. Supp. 3d 928, 938 (C.D. Cal. 2021)

6.    4.Defendants' Supporting Evidence:    Defendant's Supporting Evidence: documents and testimony including and related to (1) the parties' meeting of the minds and partnership agreement to co-own Potato Corner in the United States, where Defendants promised to contribute services and Plaintiff promised to vest IP rights in the partnership as supported by written agreements and verified pleadings; (2) the JVA and related agreements vesting licensing and quality control in PCJV USA, EEC's President, approval of franchise agreements, including as disclosed in FDDs, in PCJV USA, EEC's Management, and authority to manage Potato Corner in the United States in PCJV USA, EEC's executive officers (not Cinco

,2:24-cv-04546-SB-AGR :24-cv-04546-SB-AGR Document 258 263-1 Filed 08/12/25 08/14/25 Page 12 of 164 24 of 173 Page ID #:10773:11162

Corporation); (3) absent a license agreement, PCJV USA, LLC's use of the U.S. Potato Comer marks inured to PCJV USA, LLC's benefit; (4) Defendants' continuing authorization to use the U.S. Potato Corner trademarks under a lifetime, 50-year, or non-tenninable-at-will license, including for the reasons stated herein; (5) Defendants' objection to Plaintiff's announced plans to acquire Cinco Corporation's assets and liabilities, but representations to Defendants that they would be bound by a settlement with Cinco resolving licensing issues; (6) the parties' tolling agreement, including to continue discussions after Defendants separately settled with Cinco Corporation; (7) Plaintiff and Cinco Corporation's bad faith conspiracy to initiate this lawsuit 3 days after the settlement with Plaintiffs assignor to circumvent a state court injunction rather than go to trial in state court or settle with Defendants; (8) Plaintiff's own misconduct creating the risk of marketplace confusion; (9) no consumer survey evidence or evidence of marketplace confusion attributable to trademark infringement or unfair competition that is the subject of this case; (10) Plaintiffs suppression of evidence, including properly served discovery ordered to be produced; (11) no evidence of unjust enrichment, including no net profits or net profits attributable to the alleged infringement at issue, to disgorge; and (12) no evidence regarding individual Defendants' responsibility

CASE NO. 2:24-CV-04546-SB(AGRX)
AMENDED JOINTLY FILED CLAIMS-, COUNTERCLAIMS, THIRD PARTY CLAIMS, AND AFFIRMATIVE DEFENSES TO BE TRIED
175468760.1

**2) Claim 3: False Designation of Origin and Description of Fact Against All Entity Defendants (15 U.S.C. § 1125):**

a.  <u>Element No. 1</u>: The Defendants used a designation, such as a word, term, name, device, or a combination thereof, or a false designation of origin:

1.  This element is disputed.

2.  <u>Nature of Dispute:</u> Legal and Factual

3.  <u>Plaintiff's Position Statement</u>: This is essentially the federal version of our § 17200 claim in that, when looked at in its entirety, fits squarely within what was intended by 15 USDCD 1125(a)(1)(A). By continuing to operate using the same federal trademarks, menu layouts, and color schemes, and promotes its new brand as having the 'same taste' after having reverse engineered the flavorings and then used that, plus the menu that is unchanged - same colors, fonts, pictures, layout, even same product names - and all of this is likely to cause consumer confusion regarding the source or origin of the goods or services, as customers may believe the new business is still affiliated with or originates from the original brand. *See generally Blue Mako Inc. v. Minidis,* No. CV 07-916 AHM (SHX), 2008 WL 11334205 (C.D. Cal. June 23, 2008) (applying these principles to similar facts).

4.  <u>Defendants' Position Statement:</u> The legal issues set for trial in the Proposed Final Pretrial Conference Order (Dkt. No. 244), Memoranda of Contentions of Law and Fact (Dkt. Nos. 197 and 199) and pleadings regard ownership of and authorization to use the U.S. Potato Comer

trademarks; there is no "trade dress" issue in the pleadings set for trial. Moreover, "same as" comparative advertising of taste or fragrance is not unfair competition. *Smith* v. *Chanel,* Inc., 402 F.2d 562, 563 (9th Cir. 1968). Further, proffered "former location" confusion is not actionable in California {*see* Bus. & Prof. Code § 16600) nor proves or is probative of ordinary consumer confusion that is the subject of the Lanham Act after the market settles from a partnership divorce, especially after Plaintiff is the one who changed the *status quo* and caused any confusion

5.    Plaintiffs Supporting Evidence:    Photographs    and testimony from former franchisees, the COO of SPAVI, Mr. Concepcion, as well as the testimony of Koren, and the Franchise Agreements, FDDs, and leases, of PCJV over the years.

6.    Defendants' Supporting Evidence:    documents    and testimony including and related to (1) Defendants' ownership of the U.S. Potato Corner trademarks, which merely are a symbol of PCJV USA, LLC's business and restaurant    and    catering    services;    (2)    Defendants' authorization to use the U.S. Potato Corner trademarks; (3) no    consumer    survey    evidence;    (4)    no    evidence    of actionable    ordinary    consumer    confusion    but    just speculation about market conditions after the market stabilizes, let alone actionable confusion attributable to alleged unfair competition framed by the Proposed Final

Pretrial Conference Order (Dkt. No. 244), Memoranda of Contentions of Law and Fact (Dkt. Nos. 197 and 199) and pleadings; (5) no marketplace confusion before Plaintiff brought this action; (6) any marketplace confusion would stem from Plaintiff's efforts to create it rather than Plaintiff just filing an action for declaratory relief to resolve ownership and authorization issues after it acquired contested assets in the middle of franchise litigation between joint venture partners; and (7) Plaintiff's suppression of evidence, including Plaintiff's communications with U.S. franchisees under contract with PCJV USA, LLC that were timely requested and ordered be produced.

b.      <u>Element No. 2</u>: The use was in interstate commerce;.

i.  This element is not disputed

c.      <u>Element No. 3</u> : The use was in connection with goods or services.

1.      This element is disputed.

2.      <u>Nature of Dispute:</u> Legal and Factual

3.      <u>Plaintiffs Position Statement:</u> Defendants' purported objection is one of fact no law. The registrations are for services, and the use of the marks was for services. If Defendants were using the Marks for some other purpose, they have more liability than previously known.

4.      <u>Defendants' Position Statement:</u> The registered first use of the registered marks are for restaurant and catering services; the registered marks are merely a symbol of Potato Comer in the United States, which distributed

goods and services; the case is not a "goods" case, including because the registrations predate any alleged unfair competition.

5. <u>Plaintiffs Supporting Evidence:</u> USPTO filings including Registrations and Assignments.

6. <u>Defendants' Supporting Evidence:</u> documents and testimony including and related to (1) U.S. Reg. No. 5900257: the word mark "Potato Comer"; (2) U.S. Reg. No. 6088456: "World's Best Flavored French Fries; and (3) U.S. Reg. No. 3760041: the Logo Mark.

d. <u>Element No. 4</u>: Defendants' designation or false designation is likely to cause confusion, mistake, or deception regarding either the affiliation, connection, or association of the defendant with another person, or the origin, sponsorship, or approval of the defendant's goods, services, or commercial activities by another person.

1. This element is disputed in part.

2. <u>Nature of Dispute:</u> Legal and Factual

3. <u>Plaintiffs Legal Position</u>: The ultimate test" for unfair competition is exactly the same as for trademark infringement: "whether the public is likely to be deceived or confused." *Century 21 Real Est. Corp.* v. *Sandlin,* 846 F.2d 1175, 1178 (9th Cir. 1988)Regarding likelihood of confusion, which may be presumed, and the4 jury may be so instructed "[wjhere,' as here, "a licensee persists in the unauthorized use of a licensor's trademark, courts have found that the continued use alone establishes a likelihood of consumer confusion." *Robert Trent Jones II, Inc.* v.

*GTSI, Inc.,* 537 F. Supp. 2d 1061, 1065 (N.D. Cal. 2008) *iting and quoting* Sun Microsystems v. Microsoft Corp., 999 F.Supp. 1301, 1311 (N.D.Cal. 1998) (citing Raisa, Inc. (citing and quoting *Sun Microsystems* v. *Microsoft Corp.,* 999 F.Supp. 1301, 1311 (N.D.Cal.1998) (citing *Raisa, Inc.* v. *N & G Auto, Inc.,* 928 F.Supp. 1009, 1012 n. 4 (C.D.Cal.1996); *Hollywood Athletic Club,* 938 F.Supp. at 614-15 (C.D.Cal.1996)). The Sixth Circuit's analysis in Max Rack, Inc, v. Core Health & Fitness, LLC, 40 F.4th 454, 464 (6th Cir. 2022) is instructive:

> "A separate body of law has developed for this distinct claim that a holdover licensee has continued to use a licensor's mark after their agreement expired. *See 4* McCarthy, *supra,* § 25:31 (citing cases). In this context, courts have jettisoned the usual totality-of-the-circumstances test in favor of a more categorical rule: "proof of continued, unauthorized use of an original trademark by one whose license to use the trademark had been terminated is sufficient to establish 'likelihood of confusion.' " *H.S U.S. Structures, Inc.* v. *J.P. Structures, Inc.,* 130 F.3d 1185, 1190 (6th Cir. 1997); *ITT Indus., Inc. v. Wastecorp. Inc.,* 87 F. App'x 287, 293 (3d Cir. 2004); *Gorenstein Enters., Inc.* v. *Quality Care-USA, Inc.,* 874 F.2d 431, 435 (7th Cir. 1989); *Burger King Corp.* v. *Mason,* 710 F.2d 1480, 1492-93 (11th Cir. 1983); Pro. *Golfers Ass'n of Am.* v. *Bankers Life & Gas. Co.,* 514 F.2d 665, 670 (5thCir 5th Cir. 1975); *L&L Wings, Inc.* v. v. *Marco- Destin, Inc.,* 676 F. Supp. 2d 179,188 (S.D.N.Y. 2009). This rule makes good sense when a holdover licensee blatantly infringes the

licensor's mark by using that mark in the same way as it did before the agreement expired. Without any need to tick through factors, it should be obvious that consumers will believe,

40

JOINTLY FILED CLAIMS TO BE TRIED CASE NO. 2:24-CV-04546-SB(AGRX)
175468760.1
AMENDED JOINTLY FILED CLAIMS, COUNTERCLAIMS, THIRD PARTY CLAIMS, AND AFFIRMATIVE DEFENSES TO BE TRIED

,2:24-cv-04546-SB-AGR :24-cv-04546-SB-AGR Document 258 263-1 Filed 08/12/25 08/14/25 Page 15 of 164 30 of 173 Page ID #:10776:11168

for example, that a pizza restaurant remains affiliated with the "Little Caesars" chain when a terminated franchisee continues to operate the pizzeria as a Little Caesars. *See Little Caesar Enters., Inc. v. Miramar QuickServ. Rest. Corp.,* 2020 WL 4516289, at *3 (6th Cir. 2020) (order)"

Although Plaintiff intends to, and will, adduce proof of the *Sleekcraft* factors, the presumption exists, and it is entitled to stand on this presumption alone. *See also, Brookfield Commc'ns, Inc.* v. *W. Coast Ent. Corp.,* 174 F.3d 1036, 1056 (9th Cir. 1999) ("In light of the virtual identity of marks, if they were used with identical products or services likelihood of confusion would follow as a matter of course"); *Park 'n Fly Ely, Inc.* v *Dollar Park & Fly, Inc.,* 782 F.2d 1508,1509 (9th Cir. 1986) (holding that when marks and services are identical and channels are the same, likelihood of confusion is assumed, even if the other factors weight against); *see also BlueMako Inc.* v. *Minidis,* No. CV 07- 916 AHM (SHX), 2008 WL 11334205 (C.D. Cal. June 23, 2008) (applying these principles to similar facts).

4.    Defendants' Position Statement: Defendants are not going to argue no likelihood of confusion arising from continuous use of registered and unregistered trademarks if Defendants do not prevail on ownership or authorization. However, this is not a "trade dress" case. The legal issues set for trial in the Proposed Final Pretrial Conference Order (Dkt. No. 244), Memoranda of Contentions of Law and Fact (Dkt. Nos. 197 and 199) and pleadings regard ownership of and authorization to use the

AMENDED JOINTLY FILED CLAIMS-, COUNTERCLAIMS, THIRD PARTY CLAIMS, AND AFFIRMATIVE DEFENSES TO BE TRIED
175468760.1

U.S. Potato

Corner trademarks; there is no "trade dress" issue in the pleadings set for trial. Moreover, "same as" comparative advertising of taste or fragrance is not unfair competition. *Smith* v. *Chanel, Inc.*, 402 F.2d 562, 563 (9th Cir. 1968). Further, proffered "former location" confusion is not actionable in California *{see* Bus. & Prof. Code § 16600) nor proves or is probative of ordinary consumer confusion that is the subject of the Lanham Act after the market settles from a partnership divorce, especially after Plaintiff is the one who changed the *status quo* and caused any confusion.

4.5.   Plaintiffs Supporting Evidence: Trial Exhibit 29 (May 31, 2024 Termination); photographs of various stores taken from May 31, 2025 through the present; Testimony of Koren; Plaintiff executives Gregorio (Plaiuntiffs CEO), Concepcion (Plaintiffs COO charged with US operations), Tan (Director responsible for international franchising); investigator; Franchisees; Kim Lambert and Barry Kurtz; in addition to the following documents Amended Joint Venture Agreement and Joint Venture Agreement; the COO of SPAVI, Mr. Concepcion, the Franchise Agreements, FDDs, and leases, of PCJV over the years.

5.6.   Defendants' Supporting Evidence: documents and testimony including and related to (1) Defendants' ownership of the U.S. Potato Corner trademarks, which merely are a symbol of PCJV USA, EEC's business and restaurant and catering services; (2) Defendants'

AMENDED JOINTLY FILED CLAIMS, COUNTERCLAIMS, THIRD PARTY CLAIMS, AND AFFIRMATIVE DEFENSES TO BE TRIED
175468760.1

,2:24-cv-04546-SB-AGR :24-cv-04546-SB-AGR Document 258 263-1 Filed 08/12/25 08/14/25 Page 17 of 164 31 of 173 Page ID #:10778:11169

authorization to use the U.S. Potato Corner trademarks; (3) no consumer survey evidence; (4) no evidence of actionable ordinary consumer confusion but just speculation about market conditions after the market stabilizes, let alone actionable confusion attributable to alleged unfair competition framed by the Proposed Final Pretrial Conference Order (Dkt. No. 244), Memoranda of Contentions of Law and Fact (Dkt. Nos. 197 and 199) and pleadings; (5) no marketplace confusion before Plaintiff brought this action; (6) any marketplace confusion would stem from Plaintiff's efforts to create it rather than Plaintiff just filing an action for declaratory relief to resolve ownership and authorization issues after it acquired contested assets in the middle of franchise litigation between joint venture partners; and (7) Plaintiff's suppression of evidence, including Plaintiff's communications with U.S. franchisees under contract with PCJV USA, LLC that were timely requested and ordered be produced

e.   Element No. 5: Damage caused by false designation.

1.   This element is disputed.

2.   Nature of Dispute: Legal and factual

3.   Plaintiff's Plaintiffs Legal Position: The standard to be followed is set forth in15USC§1117 which only requires this Court's approval in equity to proceed with money damages. The Courts have, contrary to Defendant's apparent position, removed the requirement of willfulness to obtain

43
CASE NO. 2:24-CV-04546-SB(AGRX)
43
AMENDED JOINTLY FILED CLAIMS-, COUNTERCLAIMS, THIRD PARTY CLAIMS, AND AFFIRMATIVE DEFENSES TO BE TRIED
175468760.1

,2:24-cv-04546-SB-AGR :24-cv-04546-SB-AGR Document 258 263-1 Filed 08/12/25 08/14/25 Page 15 of 164 30 of 173 Page ID #:10770 11168

Document 258 263-1 Filed 08/12/25 08/14/25 Page 29 of 164 33 of 173 Page ID #:10790:11171

dis
gor
ge
me
nt.,
*Ro*
*ma*
*g*
*Fa*
*ste*
*ner*
*s,*
*Inc*
*., v.*
*Fo*
*ssil*
*,*
*Inc*
*., U*
*.S.*
(20
20)
(ho
ldi
ng
wil
lful

44
CASE NO. 2:24-CV-04546-SB(AGRX)
44
AMENDED JOINTLY FILED CLAIMS-,
COUNTERCLAIMS, THIRD PARTY CLAIMS, AND
AFFIRMATIVE DEFENSES TO BE TRIED
17468760.1

,2:24-cv-04546-SB-AGR :24-cv-04546-SB-AGR Document 258 263-1 Filed 08/12/25 08/14/25
Page 17 of 164 31 of 173 Page
ID #:1

nes

s is

not

a

pre

co

ndi

tio

n

to

dis

gor

ge

me

nt

of

pro

fits

un

der

the

La

nli

am

Ac

t).

(D

:2:24-cv-04546-SB-AGR :24-cv-04546-SB-AGR Document 258 263-1 Filed 08/12/25 08/14/25 Page 16 of 164 32 of 173 Page ID #:

kt.
No
.
59
4.)
De
fen
da
nts
ign
ore
the
dif
fer
enc
e
bet
we
en
nor
ma
l
inf
rin
ge
me
nt

AMENDED JOINTLY FILED CLAIMS , COUNTERCLAIMS, THIRD PARTY CLAIMS, AND AFFIRMATIVE DEFENSES TO BE TRIED
17 168760.1



sio

n is

lo

we

red

;

an

d

eve

n

so

me

tim

es

pre

su

me

d,

an

d

irre

par

abl

e

har

m

is

CASE NO. 2:24-CV-04546-SB(AGRX)
AMENDED JOINTLY FILED CLAIMS , COUNTERCLAIMS, THIRD PARTY CLAIMS, AND AFFIRMATIVE DEFENSES TO BE TRIED
171168760.1



,2:24-cv-04546-SB-AGR :24-cv-04546-SB-AGR Document 258 263-1 Filed 08/12/25 08/14/25 Page 17 of 164 31 of 173 Page ID #:

also presumed. The Lanham Act allows Defendants to raise the other arg

,2:24-cv-04546-SB-AGR :24-cv-04546-SB-AGR Document 258 263-1 Filed 08/12/25 08/14/25 Page 16 of 164 32 of 173 Page ID #:

um
ent
s to
reb
ut
the
pre
su
mp
tio
n
of
irre
par
abl
e

2:24-cv-04546-SB-AGR :24-cv-04546-SB-AGR

AMENDED JOINTLY FILED CLAIMS , COUNTERCLAIMS, THIRD PARTY CLAIMS, AND AFFIRMATIVE DEFENSES TO BE TRIED
17 168760.1

AMENDED JOINTLY FILED CLAIMS, ~~51~~ ~~JOINTLY FILED~~ COUNTERCLAIMS, THIRD PARTY CLAIMS~~,~~ AND AFFIRMATIVE DEFENSES TO BE TRIED                    CASE NO. 2:24-CV-04546-SB(AGRX)

~~175468760.1~~

disgorgement—both of which stem from actual confusion in the market not attributable to Plaintiffs own conduct as proof of a defendant actually trading on the goodwill of another resulting in either lost profits or unjust enrichment *{Grade* v. *Grade, 2\l* F.3d 1060,1068 (9th Cir. 2000)); in addition to there being no consumer survey evidence or probative evidence of actual confusion not attributable to Plaintiffs own conduct (let alone attributable to trademark infringement), Defendants' exercise of bona fide good faith belief not to waive (a) pre-existing partnership (whether ownership or authorization) rights and obligations to use and control the U.S. trademarks and to equally receive service fees if any royalties were paid to the registrant when (b) Plaintiff allegedly acquired U.S. Potato Comer trademarks in the middle of franchise litigation between joint venture partners, (c) over Defendants' objection, (d) initiating this lawsuit in a conspiracy 3 days after the settlement with Plaintiffs assignor to circumvent a state court injunction rather than go to trial in state court, (e) disregarding a tolling agreement to continue discussions and not filing an action for declaratory relief if there was an impasse to determine who has superior trademark rights, (f) creating the risk of marketplace confusion by virtue of its own conduct; and (e) suppressing evidence, including properly served discovery ordered to be produced, does not satisfy

Plaintiff's legal burden of proof. *See Yuga Labs, Inc. v. Ripps,* Case No. CV 22-4355-JFW(JEMx), 2023 WL 7089922, at *10 (C.D. Cal. Oct. 25, 2023) (while totality of the circumstances are used to determine an award of profits, "defendant's mental state is 'a highly important consideration . . .'").

5. <u>Plaintiffs Supporting Evidence:</u> Defendants have produced financials for the period in question May 31, 2024 through the present, and, given that the entirety off their business is built off the confusion, we only need to prove profits which can be disgorged. Thus, the financials as well as Koren testimony and testimony of franchisees as well; as correspondence regarding costs of goods sold as well as the testimony of the CFO of Shakley's will establish damage. No expert is needed for arithmetic. To the contrary, it is Defendant who bears a heavier burden of establishing what costs or expenses "actually contributed to the sale of the infringing products." *Monster Energy Co.* v. *Integrated Supply Network, LLC,* 533 F. Supp. 3d 928, 938 (C.D. Cal. 2021)

6. <u>Defendant's Supporting Evidence:</u> documents and testimony including and related to (1) the parties' meeting of the minds and partnership agreement to co-own Potato Corner in the United States, where Defendants promised to contribute services and Plaintiff promised to vest IP rights in the partnership as supported by written

agreements and verified pleadings; (2) the JVA and related agreements vesting licensing and quality control in PCJV USA, LLC's President, approval of franchise agreements, including as

disclosed in FDDs, in PCJV USA, LLC's Management, and authority to manage Potato Corner in the United States in PCJV USA, LLC's executive officers (not Cinco Corporation); (3) absent a license agreement, PCJV USA, LLC's use of the U.S. Potato Comer marks inured to PCJV USA, LLC's benefit; (4) Defendants' continuing authorization to use the U.S. Potato Corner trademarks under a lifetime, 50-year, or non-tenninable-at-will license, including for the reasons stated herein; (5) Defendants' objection to Plaintiff's announced plans to acquire Cinco Corporation's assets and liabilities, but representations to Defendants that they would be bound by a settlement with Cinco resolving licensing issues; (6) the parties' tolling agreement, including to continue discussions after Defendants separately settled with Cinco Corporation; (7) Plaintiff and Cinco Corporation's bad faith conspiracy to initiate this lawsuit 3 days after the settlement with Plaintiffs assignor to circumvent a state court injunction rather than go to trial in state court or settle with Defendants; (8) Plaintiff's own misconduct creating the risk of marketplace confusion; (9) no consumer survey evidence or evidence of marketplace

confusion attributable to trademark infringement or unfair competition that is the subject of this case; (10) Plaintiffs suppression of evidence, including properly served discovery ordered to be produced; (11) no evidence of unjust enrichment, including no net profits or net profits attributable to the

alleged infringement at issue, to disgorge; and (12) no evidence regarding individual Defendants' responsibility

**3)**     **Claim 4: Contributory Trademark Infringement Against All Defendants (Against Guv Koren, ~~PC.JV~~ PCJV USA, LL, PCI Trading, LLC, Potato Corner LA Group, LLC; GK Capital, LLC or NKM Capital Group, LLC)**

a.     <u>Element No. 1:</u> inducement of any Defendant to infringe one of the Marks (affirmative steps or actions taken to encourage infringement, exercising control over means oof infringement, offering tools to assist in infringement, instructing how to infringe).

1.     <u>This element is disputed.</u>

2.     <u>Nature of Dispute:</u> Legal and Factual

3.     Plaintiff's Position Statement: it is assumed that the primary dispute by Defendants here will be as to the underlying question of infringement (ownership, license, etc.). But if it is true that Plaintiff owned the Marks, and had exclusive right to control them and Defendants lost their right on May 31, 2024, the question is fairly on the table whether (1) PCJV, the former licensees of the brand, engaged in post termination contribution or inducement to its sublicensees whose rights had also been terminated by giving them aid and comfort (and collecting money from them) after termination,, or (2) the supply chain affiliate PCI Trading's sales of infringing cups etc. was constituted contribution or inducement, or (3) whether Koren, the

CASE NO. 2:24-CV-04546-SB(AGRX)
56
AMENDED JOINTLY FILED CLAIMS-, COUNTERCLAIMS, THIRD PARTY CLAIMS, AND AFFIRMATIVE DEFENSES TO BE TRIED
175468760.1

,2:24-cv-04546-SB-AGR :24-cv-04546-SB-AGR Document 258 263-1 Filed 08/12/25 08/14/25 Page 23 of 164 37 of 173 Page ID #:10784:11175

owner or operator oof them all was also responsible for

57
CASE NO. 2:24-CV-04546-SB(AGRX)
57
AMENDED JOINTLY FILED CLAIMS, COUNTERCLAIMS, THIRD PARTY CLAIMS, AND AFFIRMATIVE DEFENSES TO BE TRIED
175468760.1

3. 24-cv-04546-SB-AGR   Plaintiffs Position Statement: it is assumed that the Document 263-1 Filed 08/14/25 Page 38 of 173 Page ID #:11176 primary dispute by Defendants here will be as to the underlying question of infringement (ownership, license, etc.). But if it is true that Plaintiff owned the Marks, and had exclusive right to control them and Defendants lost their right on May 31, 2024, the question is fairly on the table whether (1) PCJV, the former licensees of the brand, engaged in post termination contribution or inducement to its sublicensees whose rights had also been terminated by giving them aid and comfort (and collecting money from them) after termination,, or (2) the supply chain affiliate PCI Trading's sales of infringing cups etc. was constituted contribution or inducement, or (3) whether Koren, the owner or operator oof them all was also responsible for contribution or inducement. 115 USC 1114; *Fonovisa, Inc.*

v. *Cherry Auction, Inc.,* 76 F.3d 259, 264-65 (9th Cir. 1996) (applied to host of swap meets when host know infringement was occurring); *citingInwoodLab'ys, Inc.* v. *Ives Lab'ys, Inc.,* 456 U.S. 844, 854 (1982); *see Inwood*

4.    *Lab'ys, Inc.,* 456 U.S. at 844, 854 (1982) (explaining that when a party "supplies]] its product to one whom it knows or has reason to know is engaging in trademark infringement, the manufacturer or distributor is contributorily responsible for any harm done as a result of the deceit").

Defendants' Position Statement: To establish ~~liability~~ liability for

contributory infringement, Plaintiff bears the burden of proving the defendant had intent to cause direct infringement or prior knowledge of direct infringement. *See Perfect 10, Inc.* v. *Visa Intern. Service Ass'n,* 494 F.3d 788, 807 (9th Cir. 2007). That is not the same thing as having knowledge of a bona fide dispute over trademark ownership or authorization to use a trademark. Similarly, officer or director liability includes a knowledge

infringement or prior knowledge of direct infringement. See *Perfect 10, Inc.* v. *Visa Int'n. Service Ass'n,* 494 F.3d 788, 807 (9th Cir. 2007). That is not the same thing as having knowledge of a bona fide dispute over trademark ownership or authorization to use a trademark. Similarly, officer or director liability includes a knowledge requirement to establish liability. *SinCo Technologies Pte Ltd.* v. *SinCo Electronics,* Case No. 17-cv-05517-EMC, 2018 WL 10638468, at *1 (N.D. Cal. Jan. 5, 2018).

5.   Plaintiff's Supporting Evidence: Testimony and statements of Koren, franchisees, and SPAVI executives after termination; correspondence with franchisees by SPAVI; Franchise agreements and FDDs.

6.  6. <u>Defendants' Supporting Evidence:</u> documents and testimony including and related to (1) the evidentiary record establishing a bona fide trademark dispute over ownership and authorization to use the U.S. Potato Corner trademarks; (2) the alleged contributory infringing Defendants did not have the intent to cause infringement or knowledge that direct infringement was occurring; (3) the alleged contributory infringing Defendants are not similarly situated, including because some our downstream users (who contributing nothing upstream) and one is simply a supplier of publicly available materials; (4) Mr. Koren, as an officer or member of Defendant entities, also had no intent to confuse consumers, had no intent to trade off the goodwill he did not own or have authorization to use, and had good faith reasons to believe that trademark infringement was not occurring.

> *Formatted:* Justified, Indent: Left: 1.6", Hanging: 0.5", Line spacing: Exactly 24 pt, No bullets or numbering, Pattern: Clear

    b.   <u>Element No. 2:</u> Material contribution

      1.   This element is disputed.

      2.   Nature of Dispute: Factual

      3.   <u>Plaintiff's Supporting Evidence:</u> testimony of Koren, his staff, franchisees, and their communications

      4.   <u>Defendants' Supporting Evidence:</u> documents and testimony including and related to whether the contribution of each Defendant was material to the alleged infringement and was provided with the requisite knowledge.

> *Formatted:* Indent: Left: 1.1", First line: 0", Line spacing: Exactly 24 pt, Outline numbered + Level: 1 + Numbering Style: a, b, c, … + Start at: 1 + Alignment: Left + Aligned at: 0" + Indent at: 0", Pattern: Clear, Tab stops: 1.59", Left

    c.   <u>Element No. 3:</u> Injury to Plaintiff.

CASE NO. 2:24-CV-04546-SB(AGRX)
AMENDED JOINTLY FILED CLAIMS, COUNTERCLAIMS, THIRD PARTY CLAIMS, AND AFFIRMATIVE DEFENSES TO BE TRIED
175468760.1

1.  This element is disputed

2.  <u>Nature of Dispute:</u> Legal and Factual

3.  <u>Plaintiffs Position Statement:</u> The standard to be followed
    is set forth in 15 USC 1117 which only requires this
    Court's approval in equity to proceed with money
    damages. The Courts have contrary to Defendant's
    apparent position removed the requirement of willfulness
    to obtain
    disgorgement., *Romas~~.~~ Fasteners, Inc, v. Fossil Inc., ----
    ITS. ------ . 140 S. Ct. 1492. 1495-97. 206 L.Ed.2d 672
    (2020)* (holding willfulness is not a precondition to
    disgorgement of profits under the ~~Lanliam~~ Lanham Act).
    (Dkt. No. 594.) Defendants ignore the difference between
    normal infringement and this case, the holdover licensee,
    where the standard for likelihood of confusion is lowered,
    and even sometimes presumed, and irreparable harm is also
    presumed. The Lanham Act allows Defendants to raise the
    other arguments to rebut the presumption of irreparable
    ~~hann~~harm, but the standard as applied here allows for
    disgorgement.

4.  <u>PCJV USA Parties' Position Statement:</u> Defendants
    incorporate their positions legal positions above regarding
    liability and damages for direct infringement and liability
    for contributory infringement. In addition, damages for
    contributory infringement should not be awarded upstream

5.  <u>Plaintiffs Supporting Evidence:</u> Defendants have produced
    financials for the period in question May 31, 2024 through
    the present, and, given that the entirety of their business is

built off the confusion, we only need to

prove profits which can be disgorged. Thus, the financials as well as Koren testimony and testimony of franchisees as well; as correspondence regarding costs of goods sold as well as the testimony of the CFO of Shakley's will establish damage. No expert is needed for arithmetic. To the contrary, it is Defendant who bears a heavier burden of establishing what costs or expenses "actually contributed to the sale of the infringing products." *Monster Energy Co.* v. *Integrated Supply Network, LLC,* 533 F. Supp. 3d 928, 938 (C.D. Cal. 2021)

1.6.    Defendants' Supporting Evidence: Defendants incorporate their above record

**4)    Claim 5: Contributory False Designation of Origin Against Guy Koren, PCJV PC JV USA, LL, PCI Trading, LLC, Potato Corner LA Group, LLC; GK Capital, LLC or NKM Capital Group, LLC**

36

a.    Element No. 1: inducement of any Defendant to make use a false designation, such as a word, term, name, device, or a combination thereof, or a false designation of origin (affirmative steps or actions taken to encourage infringement, exercising control over means oof infringement, offering tools to assist in infringement, instructing how to infringe).

ii.    This element is disputed.

iii.    Nature of Dispute: Legal and Factual

iv.    Plaintiff's Plaintiffs Position Statement: it is assumed that the primary dispute by Defendants here will be as to the underlying question of infringement (ownership, license, etc.). But if it is true that Plaintiff owned the Marks, and had

> **Formatted:** Indent: Left:  1.6", Line spacing:  Exactly 23.75 pt, Outline numbered + Level: 1 + Numbering Style: 1, 2, 3, … + Start at: 6 + Alignment: Left + Aligned at:  0" + Indent at:  0", Pattern: Clear, Tab

iv.    exclusive right to control them and Defendants lost their right on May 31, 2024, the question is fairly on the table whether (1) PCJV, the former licensees of the brand, engaged in post termination contribution or inducement to its sublicensees whose rights had also been terminated by giving them aid and comfort (and collecting money from them) after termination,, or (2) the supply chain affiliate PCI Trading's sales of infringing cups etc. was constituted contribution or inducement, or (3) whether Koren, the owner or operator oof them all was also responsible for contribution or inducement. 115 USC 1114; *Fonovisa, Inc.* v. *Cherry Auction, Inc.,* 76 F.3d 259, 264-65 (9th Cir. 1996) (applied to host of swap meets when host know infringement was occurring); *citing Inwood Lab'ys, Inc.* v. *Ives Lab'ys, Inc.,* 456 U.S. 844, 854 (1982); *see InwoodLab'ys, Inc.,* 456 U.S. at 844, 854 (1982) (explaining that when a party "supplies]] its product to one whom it knows or has reason to know is engaging in trademark infringement, the manufacturer or distributor is contributorily responsible for any harm done as a result of the deceit").,

v.    <u>Defendants' Position Statement:</u> To establish liability for contributory infringement, Plaintiff bears the burden of proving the defendant had intent to cause direct infringement or prior knowledge of direct infringement. *See Perfect 10, Inc.* v. *Visa Intern. Service Ass 'n,* 494 F.3d 788, 807 (9th Cir. 2007). That is not the same thing as having knowledge of a *bona fide* dispute over trademark ownership or authorization to use a trademark. Similarly, officer or director liability includes a knowledge requirement to establish liability. *SinCo*

*Technologies Pte Ltd.* v. *SinCo Electronics,* Case No. 17-cv-05517-EMC, 2018 WL 10638468, at *1 (N.D. Cal. Jan. 5, 2018).

    vi.    ~~Plaintiff's~~ Plaintiffs Supporting Evidence: Testimony and statements of Koren, franchisees, and SPAVI executives after termination; correspondence with franchisees by SPAVI; Franchise agreements and FDDs.

    vii.    Defendants' Supporting Evidence: documents and testimony including and related to (1) the evidentiary record establishing a bona fide trademark dispute over ownership and authorization to use the U.S. Potato Comer trademarks; (2) the alleged contributory infringing Defendants did not have the intent to cause infringement or knowledge that direct infringement was occurring; (3) the alleged contributory infringing Defendants are not similarly situated, including because some our downstream users (who contributing nothing upstream) and one is simply a supplier of publicly available materials; (4) Mr. Koren, as an officer or member of Defendant entities, also had no intent to confuse consumers, had no intent to trade off the goodwill he did not own or have authorization to use, and had good faith reasons to believe that trademark infringement was not occurring.

    b.   Element No. 2: Material contribution

        i. This element is disputed.

        ii.    Nature of Dispute: Factual

        iii.    Plaintiffs Supporting Evidence: testimony of Koren, his staff, franchisees, and their communications

        iv.    Defendants' Supporting Evidence: documents and

testimony including and related to whether the contribution of each Defendant was material to the alleged infringement and was provided with the requisite knowledge.,

c. Element No.–, 3: Injury to Plaintiff.

   i. This element is disputed.

   ii.    Nature of Dispute: Legal and factual

   ii. Plaintiff's Position Statement: The standard to be followed is set forth in 15 USC 1117 which only requires this Court's approval in equity to proceed with money damages. The Courts have contrary to Defendant's apparent position removed the requirement of willfulness to obtain disgorement., *Romas-;Fasteners, Inc,* v. *Fossil, Inc.,* ---- ITS. ---- . 140 S. Ct. 1492. 1495-97. 206 L.Ed.2d 672 (2020) (holding willfulness is not a precondition to disgorgement of profits under the Lanham Act). (Dkt. No. 594.) Defendants ignore the difference between normal infringement and this case, the holdover licensee, where the standard for likelihood of confusion is lowered, and even sometimes presumed, and irreparable harm-hann is also presumed. The Lanliam-Lanham Act allows Defendants to raise the other arguments to rebut the presumption of irreparable harm, but the standard as applied here allows for disgorgement,

   iii.    PCJV USA Parties' Position Statement: Defendants incorporate their legal positions above regarding liability and damages for direct infringement and liability for contributory

44

~~iii.~~ infringement. In addition, damages for contributory

infringement should not be awarded upstream~~.~~,

**Formatted:** Indent: Left: 1.72", Line spacing: Exactly 23.75 pt, No bullets or numbering, Pattern: Clear

iv.    <u>Plaintiffs Supporting Evidence:</u> Defendants have produced

financials for the period in question May 31, 2024 through the

present, and, given that the entirely off their business is built off

the confusion, we only need to prove profits which can be

disgorged. Thus, the financials as well as Koren testimony and

testimony of franchisees as well; as correspondence regarding

costs of goods sold as well as the testimony of the CFO of

Shakley's will establish damage. No expert is needed for

arithmetic. To the contrary, it is Defendant who bears a heavier

burden of establishing what costs or expenses "actually

contributed to the sale of the infringing products." *Monster*

*Energy Co.* v. *Integrated Supply Network, LLC,* 533 F. Supp. 3d

928, 938 (C.D. Cal. 2021)

iii.  <u>Defendants' Supporting Evidence:</u> Defendants incorporate their

above record.

2)  <u>**Claim 6: Common Law Trademark Infringement Against All**</u>

   <u>**Defendants (Against ~~Guy~~ Guy Koren, PCJV USA, LL, PCI Trading,**</u>

   <u>**LLC, Potato Corner LA Group, LLC; GK Capital, LLC or NKM**</u>

   <u>**Capital Group, LLC).**</u>

   a.  <u>Element No. 1:</u> the Word Mark, Slogan Mark, and/or the Logo Mark

      (all collectively, the "Marks") are valid and protectible trademarks:

      i. This element is undisputed.

   b.  <u>Element No. 2:</u> Plaintiff owns the Word Mark, Slogan Mark, and/or

      the Logo Mark

      i. This element is disputed.

      ii.   <u>Nature of Dispute:</u> Factual and Legal.

iii.  <u>Plaintiffs Legal Position:</u> Defendants do not dispute that the registrations for all three Marks (Trial Exhibit Nos. 1, 3, and 5) identify Cinco as the registrant and the first to use each of the three Marks, nor do Defendants dispute that the Deeds of Assignment attached to the notices filed with the USPTO (Trial Exhibit Nos. 4 and 6) confirm that, unequivocally and without exception, the entirety of these Marks were sold and assigned to Plaintiff, along with all the goodwill arising out of or associated with the Marks. Defendants also do not dispute the testimony of Seller (Cinco) and Buyer (SPAVI) that the Deeds are accurate in every way, that the sale and assignments were comprehensive, without carve outs, and fully consummated. Instead, Defendants take internally inconsistent positions that are contradicted by various legal doctrine, including the ones discussed *supra:* Licensee Estoppel, the Lanham Act provisions rendering Defendants' positions contrary to federal law, Law of the Case, that the Authorities cited by Defendants do not support their position, including *Sengoku,* the Merger Doctrine, and Defendants' standing.

ii.  <u>Defendants' Position Statement:</u> Defendants incorporate their legal positions above

iii.  <u>~~Plaintiff's~~ Plaintiffs Supporting Evidence:</u> Notarized Deeds signed by seller and buyer; USPTO filings including Registrations and Assignments, testimony of Gregorio (Plaintiffs CEO),

~~iii.~~ Magsaysay (Cinco's CEO), Koren, Ybanez (Plaintiffs General Counsel), FDDs, Franchise Agreements.~~.~~

iv.  <u>Defendants' Supporting Evidence:</u> Defendants incorporate their

> **Formatted:** Justified, Indent: Left: 1.6", Line spacing: Exactly 23.75 pt, No bullets or numbering, Pattern: Clear

above factual positions

c. <u>Element No. 3:</u> Defendants used Word Mark, Slogan Mark, and/or the Logo Mark in interstate commerce after May 31, 2024:

    i. This element is undisputed.

d. <u>Element No. 4:</u> Defendants' use of the Word Mark, Slogan Mark, and/or the Logo Mark in interstate commerce after May 31, 2024, was without the consent of Plaintiff and in a manner likely to cause confusion among ordinary consumers as to the source, sponsorship, affiliation, or approval of the services.

    ii. This element is disputed.

    iii. <u>Nature of Dispute:</u> Legal and Factual

    iv. <u>Plaintiff's Legal Position: As for absence of consent,</u> given the absence of any ownership rights, Defendants must locate some rights as a licensee of the owner (SPAVI). Defendants offer two documents proffered as agreements that bind Cinco to a perpetual license. Neither work as a matter of law. First, they offer the unsigned October 10, 2010, document containing terms for a Master License Agreement (Trial Exhibit No. 11), which this Court (and the Ninth Circuit) have reviewed. Both have interpreted it as a matter of law, concluding that it is an unsigned draft (as Keren's testimony has confirmed) and illusory because the licensor is given no consideration for this purported agreement. The unsigned document cannot, as a matter of law, have bound Cinco, even

through implied contract law, because Cinco did not do anything in furtherance of that document to imply its assent. Moreover, multiple times after October 10, 2010, documents were signed stating that Cinco would be expecting a 30% royalty recovery. Second, Plaintiffs point to § 3(g) of an Amended Joint Venture Agreement (and its predecessor the Joint Venture Agreement) - Trial Exhibit Nos. 8 and 9 - which this Court has already interpreted to constitute an agreement to agree, in the future, with Cinco on a license agreement. As the Ninth Circuit said in affirming this conclusion, "the AJVA contained an agreement to enter a *future* Master License Agreement, not a "perpetual license" like PCJV claims." *Shakeys Pizza Asia Ventures, Inc.* v. *PCJV USA, LLC,* No. 24- 7084, 2025 WE WL 1431270, at *1 (9th Cir. May 19, 2025) (citing *First Nat'lMortg. Co.* v. *Fed. Realty Inv. Tr.,* 631 F.3d 1058, 1065 (9th Cir. 2011) ("[A]n 'agreement to agree,' without more, is not a binding contract."). This interpretation of the AJVA and JVA is a legal conclusion, which, as affirmed by the Ninth Circuit are legal conclusions, and, as such, these are pure conclusions of law, which means: **this Court's conclusion that § 3(g) of the JVA and AJVA are** **agreements to agree and do not bind Cinco to a "perpetual** **license" are law of the case and cannot be disturbed or** **challenged at trial.** This theory based on interpretation of a contract has been considered and rejected by this Court and the Ninth Circuit in this case, and because it is a "pure issue[] of law, however, [it is] binding" on Defendants under law of the case. *Ranchers Cattlemen Action Legal Fund United Stockgrowers of Am.* v. *U.S. Dep't ofAgr.,* 499 F.3d

1108, 1114 (9th Cir. 2007); *see, e.g. Arizona* v. *California,* 460 U.S. 605, 618 (1983) ((citing the rule as being "when a court decides upon a rule of law, that decision should continue to govern the same issues in subsequent stages in the same case"). Defendants now trot out other theories such the fact that the JVA and prior Operating Agreement are still somewhat live under a theory of partial integration, however, the following point prevails over each of these contortions: Defendants can point to no agreement or document, or acct, or statement, binding Cinco to a perpetual, irrevocable, ~~royally~~ royalty free licensee of its Marks. As such, in the absence of any written agreement, or documentation of any license terms, the sole license that existed as of May 31, 2024, was implied and terminable at will *See Pogrebnoy* v. *Russian Newspaper Distribution, Inc.,* 289 F. Supp. 3d 1061, 1070 (C.D. Cal. 2017), *aff'd,* 742 F. App'x 291 (9th Cir. 2018) ("[A]n implied license, like any other contract, is terminable at the will of either party if it is not for a specified term."). One final flaw exists in the attempt to bind Cinco to the AJVA, and that is one of issue preclusion in favor of Plaintiffs. As evidenced by Plaintiff's own Third Amended Complaint (verified) in the Prior Governance Action, the entire pleading is based on the theory that — and it sought judgment concluding that — Cinco is an alter ego of the entity that was a 60% member of PCJV. *(See* Trial Exhibit No. 1421 p. 7:3-14.) Such allegations, having been dismissed, with prejudice, by Koren, re4nder thee accusations extinguished, and, as such, Defendants are precluded from alleging them ever again.

Regarding likelihood of confusion, which may be presumed, and the jury may be so instructed "[w]here, '"[w]here, ' as here, "a licensee persists in the unauthorized use of a licensor's trademark, courts have found that the continued use alone establishes a likelihood of consumer confusion." *Robert Trent Jones II Jones II, Inc.* v. *GFSI, Inc.,* 537 F. Supp. 2d 1061, 1065 (N.D. Cal. 2008) (citing and quoting *Sun Microsystems* v. *Microsoft Corp.,* 999 F.Supp. 1301, 1311 (N.D.Cal.1998) (citing *Paisa Raisa, Inc.* v. *N & G.Auto G Auto, Inc.,* 928 F.Supp. 1009, 1012 n. 4 (C.D.Cal.1996); *Hollywood Athletic Chib Club,* 938 F.Supp. at 614- 15 (C.D.Cal. (C.D.Cal. 1996)). The Sixth Circuit's analysis in Max Rack . , Inc, v. Core Health & Fitness, FFC LLC, 40 F.4th 454, 464 (6th Cir. 2022) is instructive:

> "A separate body of law has developed for this distinct claim that a holdover licensee has continued to use a licensor's mark after their agreement expired. *See* 4 McCarthy, *supra,* § 25:31 (citing cases). In this context, courts have jettisoned the usual totality-of-the-circumstances test in favor of a more categorical rule: "proof of continued, unauthorized use of an original trademark by one whose license to use the trademark had been tenninated is sufficient to establish 'likelihood of confusion.' " *US U.S.*

:24-cv-04546-SB-AGR Document ~~258~~ 263-1 Filed ~~08/12/25~~ 08/14/25 Page ~~138 of 164~~ 48 of 173 Page ID #:~~10899~~:11186

45

*Structures, Inc.* v. *J.P. Structures, Inc.,* 130 F.3d 1185, 1190 (6th Cir. 1997); *ITT Indus., Inc.* v. *Wastecorp. Inc.,* 87 F. App'x 287, 293 (3d Cir. 2004); *Gorenstein Enters., Inc.* v. *Quality Care-USA, Inc.,* 874 ~~F.2d 431~~ F.2d 431, 435 (7th Cir. 1989);

> *Burger King Corp.* v. *Mason,* 710 F.2d 1480, 1492-93 (11th Cir. 1983); Pro. *Golfers Ass'n of Am.* v. *Bankers Life & ~~Gas~~Cas. Co.,* 514 F.2d 665, 670 (5th Cir. 1975); *L & L Wings, Inc.* v. *Marco- Destin, Inc.,* 676 F. Supp. 2d 179, 188 (S.D.N.Y. 2009). This rule makes good sense when a holdover licensee blatantly infringes the licensor's mark by using that mark in the same way as it did before the agreement expired. Without any need to tick through factors, it should be obvious that consumers will believe, for example, that a pizza restaurant remains affiliated with the "Little Caesars" chain when a terminated franchisee continues to operate the pizzeria as a Little Caesars. *See Little Caesar Enters., Inc.* v. *Miramar QuickServ. Rest. Corp.,* 2020 WL 4516289, at *3 (6th Cir. 2020) (order)"

Although Plaintiff intends to, and will, adduce proof of the *Sleekcraft* factors, the presumption exists, and it is entitled to stand on this presumption alone.

~~i.~~v. Defendants' Position Statement: Defendants incorporate all their above legal positions.

~~ii.~~vi.    Plaintiff's Supporting Evidence: Trial Exhibit 29 (May 31, 2024 Termination); photographs of various stores taken from May 31, 2025 through the present; Testimony of Koren; Plaintiff executives Gregorio (Plaiuntiff's CEO), Concepcion (Plaintiffs COO charged with US operations), Tan (Director responsible for international franchising); investigator; Franchisees; Kim Lambert and Barry Kurtz; in addition to the following documents Amended Joint Venture Agreement and Joint Venture Agreement.

~~iii.~~vii.    Defendants' Supporting Evidence: Defendants incorporate their above factual positions.

**Formatted:** Indent: Left: 1.4", Hanging: 0.25", Line spacing: Exactly 24 pt, Outline numbered + Level: 1 + Numbering Style: i, ii, iii, … + Start at: 5 + Alignment: Left + Aligned at: 0" + Indent at: 0", Pattern: Clear, Tab stops: 1.65", Left

### 3) Claim 9 (from FAC, Dkt. 65): Quantum Meruit Against PCJV

a. <u>Element No. 1:</u> That Defendant requested, by words or conduct, that Plaintiff provide a license to use the Potato Comer Intellectual Property for the benefit of Defendant PCJV;

    i. This element is disputed.

    ii. <u>Nature of Dispute:</u> Legal and Factual

    iii. <u>Plaintiff's Position Statement:</u> Defendants' issues are factual and not legal.

    iv. <u>Defendants' Position Statement:</u> *Quantum meruit* is an implied contract (or quasi-contract) claim stemming from requested services "under which a plaintiff who has rendered services benefiting the defendant may recover the reasonable value of those services when necessary to prevent unjust enrichment of the defendant." *In re De Laurentiis Ent. Grp. Inc.,* 963 F.2d 1269, 1272 (9th Cir. 1992). Plaintiff will be unable to establish liability for *quantum meruit* for three reasons: Defendants (1) "requested" no (2) "services" from Plaintiff for which Plaintiff had a (3) "reasonable expectation" of payment. *See McLeod* v. *Zero Gravity Mgmt.,* 2:22-CV-01547-FWS-AGR, 2024 WL 3304527, at \*10 (C.D. Cal. Jan. 8, 2024); *see also Corsini* v. *Canyon Equity, LLC,* C-10-2061-JL, 2011 WL 13247447, at \*6 (N.D. Cal, May 23, 2011). Plaintiffs quantum memit cause of action does not contain critical elements of the cause of action. See CACI No. 317.

    v. <u>Plaintiffs Supporting Evidence:</u> Course of Dealings between Defendants and SPAVI,. Specifically, Defendants have no evidence of a written license to use SPAVFs Potato Comer Intellectual Property, and, as such, its rights (that it has sold to its

franchisees) derive from what is, at best, a terminable at will, fully revocable license because Defendants were nonetheless operating Potato Comer locations, as if a written license existed. *See Pogrebnoy* v. *Russian Newspaper Distribution, Inc.,* 289 F. Supp. 3d 1061, 1070 (C.D. Cal. 2017), affd, 742 F. App'x 291 (9th Cir. 2018) ("[A]n implied license, like any other contract, is terminable at the will of either party if it is not for a specified term."). After SPAVFs acquisition of the Potato Corner brand, it became the licensor of the Potato Corner Intellectual Property. Between December of 2021 through 2024, the months immediately preceding this action, SPAVI engaged in a good faith and exhaustive attempt to negotiate the terms of a written license with PCJV. Defendant Guy Koren engaged and participated in this negotiation; Testimony of Koren, Plaintiff executives Gregorio (Plaiuntiffs CEO), Concepcion (Plaintiffs COO charged with US operations), Tan (Director responsible for international franchising), Magsaysay (Cinco's CEO); Emails and correspondence with SPAVI, Koren, and PCJV relating to negotiations of a licensing agreement for the use of the Potato Comer Intellectual Properly; Amended Joint Venture Agreement; Franchise Agreements; FDDs

vi. <u>Defendants' Supporting Evidence:</u> (1) There was no request for services; PCJV USA, EEC's objected to Plaintiff's transaction with its former fiduciary and joint venture partner Cinco Corporation and asserted its pre-existing rights to use and

control Potato Comer in the United States; it did not "request" any services from Plaintiff; rather, PCJV USA, LLC's became subject to an involuntary interloper in breach of Cinco Corporation's fiduciary and contractual obligations; (2) No "services" were provided by Plaintiff to PCJV USA, LLC's within the meaning of *quantum meruit* even according to Plaintiff's own authority cited in its Memorandum of Contentions of Law and Fact (Dkt. No. 199, citing *Cosmonova, LLC v. BioFilm,* Inc., 763 F. Supp. 3d 1157 (S.D. Cal. 2025) (dismissing quantum meruit claim)). Rather, Plaintiff allegedly provided an implied "at-will" license allegedly extinguishing PCJV USA, LLC's long-term right to use and/or to a long-term license, which was beneficial to Plaintiff, indeed far more beneficial to Plaintiff, and thus not a "service" within the meaning of *quantum meruit. Cosmonova, LLC,* 763 F. Supp. 3d at 1172. (3) Plaintiff had no reasonable expectation of any royalty payment to Plaintiff for the same reason no royalty is recoverable under the Lanham Act. Plaintiff never paid a royalty to Cinco Corporation, no claim for breach of contract was brought by Cinco Corporation, and Plaintiff cannot put itself into a better situation than its assignor, Cinco Corporation. *See* McCarthy, *supra,* § 18:15 ("'It is elementary ancient law that an assignee never stands in any better position than his assignor....'") (citation omitted). Defendants are simply seeking a windfall or to punish Defendants' exercise of First Amendment rights.

a. Element No. 2: That Plaintiff provided such license to use the Potato

Corner Intellectual Property as requested by Defendant PCJV.

    i. This element is disputed.

    ii. Nature of Dispute: Legal and Factual

    iii. <u>Plaintiffs Position Statement:</u> this is a factual dispute.

    iv. <u>Defendants' Position Statement:</u> Defendant disputes Element 2 for the same reason they dispute Element 1.

    v. <u>Plaintiffs Supporting Evidence:</u> Defendants have operated Potato Comer locations that utilize the Potato Comer Intellectual Property through what is, at best, a terminable at will, fully revocable license because Defendants were nonetheless operating Potato Comer locations, as if a written license existed. *See Pogrebnoy* v. *Russian Newspaper Distribution, Inc.,* 289 F. Supp. 3d 1061, 1070 (C.D. Cal. 2017), aff d, 742 F. App'x 291 (9th Cir. 2018) ("[A]n implied license, like any other contract, is terminable at the will of either party if it is not for a specified term."). SPAVI has consented to that use until the termination of the license agreement on May 31, 2024; Trial Exhibit 29 (May 31, 2024 Termination); Testimony of Concepcion (Plaintiffs COO charged with US operations), Tan (Director responsible for international franchising), Magsaysay (Cinco's CEO), Koren; Emails and correspondence with SPAVI, Koren, and PCJV relating to negotiations of a licensing agreement for the use of the Potato Corner Intellectual Property; Amended Joint Venture Agreement; Franchise Agreements; FDDs

    vi. <u>Defendants' Supporting Evidence:</u> Defendant relies upon the same record evidence to dispute both Elements 1 and 2.

  b. <u>Element No. 3:</u> That Defendant has not paid Plaintiff royalties or any other compensation to Plaintiff for the use of the Potato Comer Intellectual Property

> **Formatted:**
> Justified, Indent: Left: 0.85", Hanging: 0.25", Line spacing: Exactly 24 pt, Outline numbered + Level: 1 + Numbering Style: a, b, c, ... + Start at: 1 + Alignment: Left + Aligned at: 0" + Indent at: 0", Pattern: Clear, Tab

i. This element is disputed.

ii.     Nature of Dispute: Legal and Factual

iii.    ~~Plaintiffs~~ Plaintiff's Position Statement: Plaintiff does not know what the issue is here.

iv.    Defendants' Position Statement: Defendant disputes Element 3 for the same reason they dispute Element 1.

v.    Plaintiffs Supporting Evidence: Financial statements produced by Defendants showing that there have been no royalty fees paid to SPAVI; Testimony of Koren, Plaintiff executives Gregorio (Plaintiffs CEO), Concepcion (Plaintiffs COO charged with US operations), Tan (Director responsible for international franchising), Jose Magsaysay (Cinco's CEO)

~~v.~~vi.    Defendants' Supporting Evidence: Defendant relies upon the same record evidence to dispute both Elements 1 and 2.

c.   Element No. 4: The reasonable value for the use of the Potato Corner Intellectual Property that was provided.

i. This element is disputed.

ii.    Nature of Dispute: Factual

~~vi.~~ ~~v.~~v. Plaintiffs Supporting Evidence: Financial statements produced by Defendants showing that there have been no royalty fees paid to SPAVI; Testimony of Koren, Plaintiff executives Gregorio (Plaintiff's CEO), Concepcion (Plaintiffs COO charged with US operations), Tan (Director responsible for international franchising), Jose Magsaysay (Cinco's CEO); Notarized Deeds

CASE NO. 2:24-CV-04546-SB(AGRX)
AMENDED JOINTLY FILED CLAIMS, COUNTERCLAIMS, THIRD PARTY CLAIMS, AND AFFIRMATIVE DEFENSES TO BE TRIED
175468760.1

signed by seller and buyer; USPTO filings including Registrations and Assignments

i.iii.     **Defendants' Supporting Evidence:** The reasonable value is nominal or $1.00 because the 15-year track record is equal payment of royalties and service fees (followed by and waiver in favor of growth). See McCarthy, supra, § 18:15 ("'It is elementary ancient law that an assignee never stands in any better ~~position~~ osition than his assignor...(citation omitted).

### 4)  Claim 10 (from FAC, Dkt. 65): Misappropriation of Trade Secrets

a.  <u>Element No. 1:</u> That SPAVI owned the recipes, ingredients, and ingredient allocations for its proprietary flavorings, the identities of its suppliers, and other know-how, procedures, and processes used and employed at Potato Corner outlets, including outlets owned and/or operated by Defendants ("Potato Corner Trade Secrets")

i. This element is disputed.

ii.     Nature of Dispute: Legal and Factual

iii.    [If legal dispute] Plaintiffs Position Statement:~~]~~

iv.     Defendants' Position Statement: As a threshold matter, a trade secret could only comprise "information, including a formula, pattern, compilation, program, device, method, technique, or process." Cal. Civ. Code 3426.1(d). SPAVI has not identified what "information" it claims Defendants misappropriated. "Flavors" is not information, and packaging is an object. Thus, SPAVI cannot carry its burden to "identify the trade secrets and carry the burden of showing they exist." *InteliClear, LLC* v. *ETC Global Holdings, Inc.,* 978 F.3d 653, 658. A flavor is an idea and catch-all phrase, which is not

Formatted: Indent: Left: 1.47", Hanging: 0.13", Line spacing: Exactly 24 pt, Outline numbered + Level: 1 + Numbering Style: i, ii, iii, … + Start at: 3 + Alignment: Left + Aligned at: 0" + Indent at: 0", Pattern: Clear, Tab

protected. *Id.\* M*; *Silvaco Data Systems* v. *Intel CorpCorp.,* 184 Cal. App. 4th 210, 220 (2010). Moreover, the plaintiff must "own" the trade secret—meaning the plaintiff either has title to the secret or has knowledge of the know how and licenses it with a confidentiality obligation. *See Sinclair* v. *Aquarius Electronics, Inc.,* 42 Cal.App.3d 216, 225-228 (1974) (trade secret licensing involves sharing sensitive, undisclosed information). A conclusory assignment from a prior reseller with no knowledge of the trade secret does not establish the required chain of title. *Memry Corp.* v. *Kentucky Oil Technology, N.* K, No. C-04-03843 RMW, 2006 WL 3734384, at *5 (N.D. Cal. 2006). Here, there is no evidence of the existence or ownership of trade secret information

v.    <u>Plaintiffs Supporting Evidence:</u> SPA VI owns all trademarks, service marks, recipes, trade secrets, and other intellectual property affiliated with the Potato Corner brand. SPAVI acquired all of this intellectual property from the then-owners, Cinco Corporation ("Cinco"), in a deal that closed in 2022. Additional evidence includes: Notarized Deeds signed by seller and buyer; USPTO filings including Registrations and Assignments, testimony of Gregorio (Plaintiffs CEO), Magsaysay (Cinco's CEO), Tan (Director responsible for international franchising),

vi.    Defendants' Supporting Evidence: the following category, which is defined above, captures the key phase and supporting evidence: SPAVI Parties' Tortious Conduct. Among other things, Cinco Corporation's consent to reverse engineering of spices means that Plaintiffs predecessor did not know the

alleged secret, did not own or have a trade secret license, and did not assign one to Plaintiff.

b. Element No. 2: That these Potato Comer Trade Secrets were a secret at the time of the misappropriation

    i. This element is disputed

    ii.   Nature of Dispute: factual

    iii.   Plaintiffs Supporting Evidence: The Potato Comer brand is identifiable by its preparation of fries, which uses seven proprietary flavorings sold to SPAVI by one single supplier, the identity of which is confidential and not publicly known. The ingredients are not known outside the Potato Comer family, and the specific recipe (and proportions of each ingredient) are also kept secret. SPAVI maintains and benefits from the secrecy of the recipes and ingredient allocation of each flavoring and requires its supplier to protect that secrecy. The only persons with access to the flavoring packets delivered from the supplier (with ingredients listed but not quantities and proportions) are those bound by confidentiality and secrecy in favor. Anyone with access to the flavoring packages and ingredients is prohibited from using them for a purpose other than for the Potato Corner brand's benefit and may not misappropriate or take for themselves any of the proprietary information embodied in those packets. Additional evidence includes: The Franchise Disclosure Documents ("FDD"); agreements with the Franchisees; testimony of

Gregorio (Plaintiffs CEO), Magsaysay (Cinco's CEO), Ybanez (Plaintiffs General Counsel), Tan (Director responsible for international franchising), and Franchisees

iv.   Defendants' Supporting Evidence: supplier agreements; third-party Fema's sale of spices to the public that SPAVI contends are secret; Cinco Corporation's consent for reverse engineering of spices (meaning it did not know the alleged secret and thus did not have a trade secret license); and ~~SPAVFs~~ SPA Vi's lack of evidence demonstrating it maintain secrecy, including but not limited to non-disclosure agreements, physically locked storage of product and recipes alleged to be trade secrets, use of two-factor authentication to access online storage of recipes alleged to be trade secrets, monitoring and securing of employees' and agents' communications and use technology to transfer data to third parties, such as by way of flash drives and cloud storage.

c.   <u>Element No. 3:</u> That Defendants improperly acquired, used, or disclosed the Potato Comer Trade Secrets

i. This element is disputed

ii.   Nature of Dispute: Legal and Factual

~~hi.~~   Plaintiff~~-~~'s Position Statement~~:~~

~~ii.~~ iv.   Defendants' Position Statement: By statute, reverse engineering is fair competition. It follows that, to establish wrongful acquisition, use or disclosure, Plaintiff must establish a legal duty in the acquisition of a product not to reverse engineer it. However, Plaintiff denies and cannot establish any legal duty between Plaintiff and Defendants as it affirmatively alleges they are not fiduciaries, it did not assume obligations

> **Formatted:** Indent: Left: 1.6", Hanging: 0.13", Line spacing: Exactly 24 pt, Outline numbered + Level: 1 + Numbering Style: i, ii, iii, ... + Start at: 3 + Alignment: Left + Aligned at: 0" + Indent at: 0", Pattern: Clear, Tab stops: 2.09", Left

and there is no privity of contract establishing any confidentiality obligation between them

ii.     Plaintiff's Plaintiffs Supporting Evidence: Both the JVA and AJVA contain an agreement to agree on a Master License Agreement. However, there was never a written license agreement between

v.     Plaintiff and Defendants. After SPAVI acquired the Potato Comer intellectual property rights, which included the Potato Comer Trade Secrets, SPAVI engaged in a good faith and exhaustive attempt to negotiate the terms of a written license with Defendants. Defendant Guy Koren engaged and participated in this negotiation, but was unwilling to agree to any minimally commercially viable licensing terms. Moreover, Guy Koren refused to, engage in reasonable and good faith negotiation. Instead, he only offered royalty rates and license fees that were more than 90% below what Koren had agreed to be reasonable licensing fees over a decade prior. Koren also repeatedly disengaged from the negotiation process, but still was utilizing the Potato Comer Intellectual Property. Therefore, SPAVI terminated the license agreement as of May 31, 2024. After the termination, Defendants improperly, illegally, and unfairly misappropriated the flavoring packages in their possession, which should have been returned immediately following receipt of the May 31, 2024, Termination Letter, and transferred possession of those proprietary packages of flavorings to a third party for the purpose of reverse-engineering the flavorings directly from the packages themselves. Defendants also developed "Undercover Fries" to roll out the

reverse engineered fries to compete with the Potato Comer brand while, at the same time, operating Potato Corner outlets and being in possession of the Potato Comer Intellectual Property, including the Potato Comer Trade Secrets. Additional evidence includes: Franchisee Photographs; Testimony from former franchisees, Concepcion (Plaintiffs COO charged with US operations), Koren, investigator; the Franchise Agreements; FDDs; and leases, of PCJV over the years.

   i. Defendants' Supporting Evidence: Superseding Joint Venture (2008-2010), Alternative Licensing Arrangements and Ongoing Ratification (2011-2012), Formalization and Modification of the Joint Venture (2012), LA Group Partnership Agreement and Evolving Business Dynamics and Terms (2013-2018), Dispute, Litigation, and State Court Proceedings (2018 and Beyond), and Ongoing Annual Ratification and Regulatory Compliance.

d. <u>Element No. 4:</u> That SPAVI was harmed and/or Defendants were unjustly enriched by its use of the Potato Corner Trade Secrets

   i. This element is disputed

   ii. Nature of Dispute: Factual

   iii. <u>Plaintiffs Supporting Evidence:</u> The secrecy of the Potato Corner Trade Secrets holds value to SPAVI. The reverse engineering was an unauthorized taking of a trade secret for Defendants own personal benefit to open a competing store "Undercover Fries". Additional evidence includes: Franchisee Photographs; Testimony from former franchisees, Gregorio

      iii.  (~~Plaintiffs~~ Plaintiff's CEO), Concepcion (Plaintiffs COO charged with US operations), Ybanez (~~Plaintiffs~~ Plaintiff's General Counsel), Tan (Director responsible for international franchising), and Koren; the Franchise Agreements; FDDs; leases, of PCJV over the years; and financial statements of Defendants,

      iv.  Defendants' Supporting Evidence: Defendants incorporate their above factual positions

  e.  <u>Element No. 5:</u> Defendants acquisition, use, or disclosure of the Potato Corner Trade Secrets was a substantial factor in causing Plaintiffs harm or for Defendants to be unjustly enriched.

      i.  This element is disputed

      ii.  Nature of Dispute: Factual

      hi.  <u>Plaintiffs Supporting Evidence:</u> Defendants' misappropriation, wrongful disclosure, and/or repudiation of the existence of ~~SPAVFs~~ SPA Vi's above-described trade secrets and proprietary information, SPAVI has been damaged and continues to be damaged. Evidence includes: Defendants financials for the period in question May 31, 2024 through the present; testimony of Gregorio (Plaintiffs CEO), Ybanez (Plaintiffs General Counsel), Concepcion (~~Plaintiffs~~ Plaintiff's COO charged with US operations), Tan (Director responsible for international franchising), Koren, franchisees~~.~~, iv. Defendants' Supporting Evidence: Defendants incorporate their above factual positions **I. <u>Defendants' Affirmative Defenses to be Tried by a Jury</u>**

  **1) <u>Affirmative Defense No. 1: Waiver (asserted by all Defendants as to all claims alleged by SPAVI against them)</u>**

    a.  <u>Element No. 1:</u> Through implied and/or express conduct, SPAVI knowingly waived a valid right, privilege, advantage, or benefit allegedly conferred upon it and its attempt to enforce that right, privilege, advantage, or benefit is thus barred.

Formatted: Indent: Left: 1.6", Line spacing: Exactly 24 pt, No bullets or numbering, Pattern: Clear

Formatted: Indent: Left: 0.85", Hanging: 0.25", Line spacing: Exactly 24 pt, Outline numbered + Level: 1 + Numbering Style: a, b, c, … + Start at: 1 + Alignment: Left + Aligned at: 0" + Indent at: 0", Pattern: Clear, Tab

    i.  The parties dispute that this element is satisfied.

    ii.  <u>Nature of Dispute:</u> Factual and Legal

    iii.  <u>Defendants' Position Statement:</u> The specific rights or privileges that have been waived include the alleged right to terminate PCJV USA, EEC's right to use the U.S. Potato Comer marks, and the alleged right to claim that the purchased seasoning packages were secret and improperly acquired. Plaintiff's enforcement waiver is based on Plaintiff and Plaintiff's predecessor's knowing acquiescence in PCVJ USA, EEC's use and quality control of Potato Comer in the United States, including before and after Plaintiff's alleged acquisition of the same. *See* McCarthy, *supra*, § 18:15 ("'It is elementary ancient law that an assignee never stands in any better position than his assignor,' thus once an assignee has notice of an injunction against the assignor it is bound to comply.") (citation omitted). Plaintiff's predecessor acquiesced for years in PCJV USA, EEC's use and quality contract. The fact of Plaintiff's due diligence, negotiations, and alleged transaction with Cinco Corporation before allegedly acquiring the U.S. trademarks put Plaintiff on actual notice of PCJV USA, EEC's use and control rights, and in response Plaintiff represented that it would be bound by any agreements related to the licensing of Potato Comer intellectual property in the United State, and thereafter did not attempt to enforce any alleged contrary right for years and then denied acquiring PCJV USA, LLC's use and quality control rights. As to the commercial sale of packaged seasonings, both Plaintiff and its predecessor have known for years that they did not own them, that they were

CASE NO. 2:24-CV-04546-SB(AGRX)
AMENDED JOINTLY FILED CLAIMS, COUNTERCLAIMS, THIRD PARTY CLAIMS, AND AFFIRMATIVE DEFENSES TO BE TRIED
175468760.1

,2:24-cv-04546-SB-AGR :24-cv-04546-SB-AGR Document 258 263-1 Filed 08/12/25 08/14/25 Page 47 of 164 65 of 173 Page ID #: 10808:11203

publicly available for purchase in the market, and that it was not improper to reverse engineer them, and Plaintiff thereafter fulfilled an order and agreed to a fulfill a second order even after the alleged termination.

Comer marks, and the alleged right to claim that the purchased seasoning packages were secret and improperly acquired. Plaintiff's enforcement waiver is based on Plaintiff and Plaintiff's predecessor's knowing acquiescence in PCVJ USA, LLC's use and quality control of Potato Comer in the United States, including before and after Plaintiff's alleged acquisition of the same. See McCarthy, supra, § 18:15 ("'It is elementary ancient law that an assignee never stands in any better position than his assignor,' thus once an assignee has notice of an injunction against the assignor, it is bound to comply.") (citation omitted). Plaintiff's predecessor acquiesced for years in PCJV USA, LLC's use and quality contract. The fact of Plaintiff's due diligence, negotiations, and alleged transaction with Cinco Corporation before allegedly acquiring the U.S. trademarks put Plaintiff on actual notice of PCJV USA, LLC's use and control rights, and in response Plaintiff represented that it would be bound by any agreements related to the licensing of Potato Comer intellectual property in the United State, and thereafter did not attempt to enforce any alleged contrary right for years and then denied acquiring PCJV USA, LLC's use and quality control rights. As to the commercial sale of packaged seasonings, both Plaintiff and its predecessor have known for years that they did not own them, that they were publicly available for purchase in the market, and that it was not improper to reverse engineer them, and Plaintiff

thereafter fulfilled an order and agreed to a fulfill a second order even after the alleged termination,

i.iv.Plaintiff's Position Statement: Defendants fail to identify any specific right or privilege or benefit that was waived. The only relationship between SPAVI and any Defendant, was that of licensor to licensee, pursuant to an implied license. The only right that SPAVI possessed was to terminate or negotiate.lt decision to wait to negotiate with Koren is not a waiver oof its right to terminate. Ironically, it is SPAVI that is alleging that Defendants waived their right to claim the AJVA confers perpetual licensing rights, after negotiating the terms of a written license that would confer narrower rights for three years without once taking the position that it did not need a written license - a three year period during which much occurred in reliance on Korenn's assent to the need for a written license.

ii.v.Defendants' Supporting Evidence: The PCJV USA Parties intend to rely on testimony and also on a robust written evidentiary record which demonstrates the parties' mutual intentions and the evolution of their business relationship from

the inception through the present. The following categories and chronology capture the key phases and supporting evidence: *1. Superseding Joint Venture (2008-2010),* including (a) testimony and documentary evidence (i.e., communications and the original NKM Master License Agreement) showing the parties' shared intent to bring Potato Comer to the U.S., (b) exhibits reflecting the transition from a simple license to a joint venture partnership in 2009-2010, including meeting minutes, correspondence, and planning documents from April/May 2010, (c) evidence of the July 2010 formation of PCJV USA, LLC as the master franchisor

60

for all U.S. and Israel operations, with PCJV granted all rights to use and license the U.S. intellectual property ("Superseding Joint Venture (2008-2010)"); 2. *Alternative Licensing Arrangements and Ongoing Ratification (2011-2012),* including (a) documents and communications (i.e., DLA Piper records, regulatory filings, and Franchise Disclosure Documents) evidencing the parties' reliance on an alternative license agreement in 2011 for Cinco's benefit, which was referenced and ratified in annual FDDs and other regulatory filings, (b) evidence of the 2012 Master Services Agreement, which authorized the LA Group to license the brand for an indefinite duration, further reflecting the parties' mutual understanding and operational structure ("Alternative Licensing Arrangements and Ongoing Ratification (2011- 2012)"); 23. *Formalization and Modification of the Joint Venture (2012),* including (a) executed copies of the Joint

89
CASE NO. 2:24-CV-04546-SB(AGRX)
89

Venture Agreement (JVA) and the LLC Operating Agreement from August 2012, memorializing the parties' rights, obligations, and governance structure, (b) the First Amendment to the JVA (October 2012), with supporting meeting minutes, documenting specific modifications to the parties' governance protocols only ("Formalization and Modification of the Joint Venture (2012)"); *4. LA Group Partnership Agreem ent Agreement and Evolving Business Dynam ics and Terms (2012-2018 2013-2018),* including (a) the 2013 written partnership agreement entered into by the LA Group, reflecting further refinement of the parties' roles and expectations, (b) communications, board minutes, and negotiation records from 2015-2018 detailing ongoing discussions about operational challenges, restructuring proposals (including Keren's potential acquisition of Cinco shares or the LA Group's acquisition of 100% of PCJV/PCI Trading), and a contemplated new Master License Agreement for Cinco's benefit in exchange for 100% ownership in PCJV/PCI Trading ("LA Group Partnership Agreement and Evolving Business Dynamics and Terms (2013-2018)"); 5. *Dispute, Litigation, and State Court Proceedings (2018 and Beyond),* including (a) evidence of the April 2018 board meeting and resolutions that precipitated the state court litigation, including verified pleadings, declarations, and court filings that set forth the parties' mutual intentions and positions during the dispute, including also, if necessary, settlement negotiation discussions and the settlement and other agreements reached among the

parties, (b) additional documents and testimony from the state

court proceedings, including verified cross-complaints, declarations, and orders, which further clarify the parties' understanding and course of conduct ("Dispute, Litigation, and State Court Proceedings (2018 and Beyond)"); *6. Ongoing Annual Ratification and Regulatory Compliance,* including FDDs, regulatory filings, and correspondence with state agencies, evidencing the parties' continued mutual recognition of the licensing and franchising structure, as well as the ratification of their agreements and operational practices ("Ongoing Annual Ratification and Regulatory Compliance"); 7. *SPA VI Parties ' Tortious Conduct,* including a comprehensive body of documents and testimony which demonstrates the SPAVI parties' coordinated and wrongful actions aimed at appropriating the business operations, supply chain, and goodwill of the Potato Comer USA franchise system for their own benefit, such as (a) testimony and documentary evidence showing SPAVFs SPA Vi's deliberate efforts to undennine and take over PCJV's established franchise network in the United States, (b) communications, internal memoranda, and correspondence reflecting SPAVFs SPA Vi's outreach to PCJV franchisees, including direct offers of temporary licenses and inducements to sever ties with PCJV, as detailed in termination letters and related notices, (c) evidence of SPAVFs SPA Vi's attempts to bypass PCJV's role as franchisor by negotiating directly with third-party franchisees, thereby disrupting existing contractual relationships and causing

business uncertainty, (d) documents and witness statements establishing SPAVFs interference with PCI Trading's procurement and distribution of supplies, (e) testimony regarding SPAVFs refusal to supply powders to PCJV and its franchisees following the purported termination of the license, thereby jeopardizing ongoing operations and franchisee livelihoods, (f) evidence of SPAVFs efforts to control or redirect supplier relationships, including attempts to obtain confidential supplier information and to assert exclusive rights over the sourcing and distribution of Potato Comer products in the U.S., (g) testimony and exhibits documenting SPAVFs use of the established Potato Comer USA brand reputation and customer base to promote its own interests, including public statements, regulatory filings, and direct communications with franchisees and suppliers, (h) rather than simply seeking declaratory relief, SPAVFs own conduct has interjected potential confusion in the marketplace, including the unauthorized use of trademarks, solicitation of franchisees, and dissemination of misleading infonnation information regarding the status of the franchise system and intellectual property rights, (i) documents showing SPAVFs attempts to claim ownership of the goodwill and business relationships cultivated by PCJV and PCI Trading over years of operation, despite the absence of any direct contractual relationship with many U.S. franchisees prior to the dispute, (j) evidence of the resulting harm to PCJV, PCI Trading, and the broader franchise network, including lost business opportunities, damaged supplier relationships, and erosion of brand value and goodwill

AMENDED JOINTLY FILED CLAIMS-, COUNTERCLAIMS, THIRD PARTY CLAIMS, AND AFFIRMATIVE DEFENSES TO BE TRIED
175468760.1

("SPAVI Parties' Tortious Conduct")., vi.

    i. Plaintiff's Supporting Evidence: testimony of the negotiators from 2021 through 2024 including Mr. Gregorio and Mr. Tan (from SSPAVI), their correspondence with Koren and his testimony, the NKM License agreement and the JVA and AJVA (none of which SPAAVI is a party to or conferred rights that SPAVI is responsible for. The absence of contractual privity or otherwise is what disproves this affinnative affirmative defense.

b. Causes of Action Barred by this Affinnative Affirmative Defense: all of SPAVFs SPA Vi's causes of action

**1)2)  Affirmative Defense No. 2: In Pari Delicto (asserted as to all of SPA Vi's causes of action)).**

**SPA VPs causes of action).**

a. a. Element No. 1: Plaintiff and Defendants have substantially equal economic strength.

    i. This element is not in dispute.

b. Element No. 2: Plaintiff is at least equally responsible for the harmful conduct as Defendants.

    i. Disputed Status of Element 2: The parties dispute that this element is satisfied.

    ii. Nature of Dispute: Legal and Factual

    iii. Defendants' Position Statement: Defendants' elements precisely follow CACI No. 3431

    iv. Plaintiffs Position Statement: the statement of these elements omit that to apply "in pari director dilecto" requires that SPPAVI have engaged in "illegal, fraudulent, or inequitable conduct," and

    iv. that has never been alleged, nor is there any evidence of this.

---

Formatted: Indent: Left: 1.36", First line: 0.36", Space After: 0 pt, Line spacing: Exactly 23.75 pt, No bullets or numbering, Pattern: Clear

Formatted: Heading #21, Indent: Left: 0.6", Line spacing: Exactly 23.75 pt, Outline numbered + Level: 1 + Numbering Style: 1, 2, 3, … + Start at 2 + Alignment: Left + Aligned at: 0" + Indent at: 0", Keep with next, Keep lines together, Tab stops: 0.86", Left

Formatted: Body text (2)1, Indent: Left: 0.85", Hanging: 0.25", Line spacing: Exactly 23.75 pt, Outline numbered + Level: 1 + Numbering Style: a, b, c, … + Start at: 1 + Alignment: Left + Aligned at: 0" + Indent at: 0", Tab

Formatted: Indent: Left: 0.85", Hanging: 0.25", Line spacing: Exactly 23.75 pt, Outline numbered + Level: 1 + Numbering Style: a, b, c, … + Start at: 1 + Alignment: Left + Aligned at: 0" + Indent at: 0", Pattern: Clear, Tab

Formatted: Right, Right: 0.26", Line spacing: Exactly 24 pt, No bullets or numbering, Pattern: Clear

v. <u>Defendant's Supporting Evidence:</u> the following category, which is defined above, captures the key phase and supporting evidence: SPAVI Parties' Tortious Conduct.

vi. Plaintiffs Plaintiff's <u>Supporting Evidence:</u> testimony of the negotiators from 2021 through 2024 including Mr. Gregorio and Mr. Tan (from SSPAVI), their correspondence with Koren and his testimony, the NKM License agreement and the JVA and AJVA (none of which SPAAVI is a party to or conferred rights that SPAVI is responsible for. The absence of contractual privity or otherwise is what disproves this affirmative defense.

c. <u>Element No. 3</u>: Plaintiff was not held by economic pressure to engage in harmful conduct.

ii.i. Disputed Status of Element 3: The parties dispute that this element is satisfied.

iii.ii. <u>Nature of Dispute:</u> Legal and Factual.

iv.iii. Defendants' Position Statement: Defendants' elements precisely follow CACI No. 3431.

v.iv. Plaintiff's Plaintiffs <u>Position Statement:</u> the statement of these elements omit that to apply "in pari delicto" requires that SPPAVI have engaged in "illegal, fraudulent, or inequitable conduct," and that has never been alleged, nor is there any evidence of this.

vi.v. <u>Defendant's Supporting Evidence:</u> documents and testimony including and related to (1) PCJV USA, LLC's EEC's right to use Potato Comer IP and quality control rights related thereto under PCJV USA, LLC's EEC's governing documents, including agreements and related negotiations, franchise disclosure documents and

[Formatted: Indent: Left: 0.85", Hanging: 0.25", Line spacing: Exactly 24 pt, Outline numbered + Level: 1 + Numbering Style: a, b, c, … + Start at: 1 + Alignment: Left + Aligned at: 0" + Indent at: 0", Pattern: Clear, Tab]

board minutes; (2) the parties' course of conduct regarding ~~PCJV~~ PCJV USA, LLC's use and control of U.S. Potato Comer trademarks; (3) the fact of ~~SPA Vi's~~ SPAVFs due diligence, negotiations, and alleged acquisition of Cinco Corporation's assets and liabilities; (4) ~~SPA Vi's~~ SPAVFs denial of acquiring any IP rights or obligations under PCJV's governing documents; (5) ~~SPA Vi's~~ SPAVFs statement that it would be bound by a settlement with Cinco; (6) ~~SPA Vi's~~ SPAVFs knowing failure to do anything for years regarding PCJV USA Parties' full exercise of its right to use and quality control; and (7) ~~SPA Vi's~~ SPAVFs decision to renege on a purchase order, creating a short-term supply chain problem~~.~~,

vii. ~~Plaintiff's~~ Plaintiffs Supporting Evidence: testimony of the negotiators from 2021 through 2024 including Mr. Gregorio and Mr. Tan (from SSPAVI), their correspondence with Koren and his testimony, the NKM License agreement and the JVA and AJVA (none of which SPAAVI is a party to or conferred rights that ~~SPAVI~~ SPA VI is responsible for. The absence of contractual 66

vi.  privity or otherwise is what disproves this ~~affirmative~~ affinnative defense,

d. Causes of Action Barred by this ~~Affirmative~~ Affinnative Defense: all of SPAVFs causes of action.

**3) Affirmative Defense No. 3: Statute of Limitations, (asserted as to all of ~~SPA Vi's~~ SPAVI's causes of action)**

a. Element No. 1: SPAVI (either independently or as successor-in-interest to Cinco) knew, should have known, or had constructive notice of PCJV USA Parties' alleged infringing conduct over three years

> **Formatted:** Body text (2)1, Indent: Left: 1.26", Hanging: 0.33", Line spacing: Exactly 24 pt, Outline numbered + Level: 1 + Numbering Style: i, ii, iii, … + Start at: 1 + Alignment: Left + Aligned at: 0" + Indent at: 0", Tab

before SPAVI filed this action.

   i.  The parties dispute that this element is satisfied.

   i.ii.  Nature of Dispute: Factual

   ii.iii.    Defendant's Supporting Evidence: the following categories, which are defined above, capture the key phases and supporting evidence: Superseding Joint Venture (2008-2010), Alternative Licensing Arrangements and Ongoing Ratification (2011-2012), Formalization and Modification of the Joint Venture (2012), LA Group Partnership Agreement and Evolving Business Dynamics and Terms (2013-2018), Dispute, Litigation, and State Court Proceedings (2018 and Beyond), Ongoing Annual Ratification and Regulatory Compliance, and SPAVI Parties' Tortious Conduct.

   iii.iv.    Plaintiffs Supporting Evidence: Testimony off Mr. Gregorio (CEO of SPAVI) regarding termination of negotiations and sending the Termination Letter hours before this lawsuit was filed, such that, unless the statute of limitations is calculated by way of hours rather than years, this defense is an impossibility.

  a.b.    Causes of Action Barred by this Affirmative Defense: all of SPAVFs SPA Vi's causes of action.

                    67

**4) Affirmative Defense No. 4: Abandonment through Assignment in Gross.**

  a.  Element No. 1: Cinco Corporation assigned U.S. Potato Comer trademarks to SPAVI without the goodwill associated with the trademarks.

   i.  The parties dispute that this element is satisfied.

   ii.  Nature of Dispute: Factual and Legal

   iii.  Defendants' Supporting Legal Position: Trademarks cannot be assigned or transferred apart from the goodwill of the business

CASE NO. 2:24-CV-04546-SB(AGRX)
AMENDED JOINTLY FILED CLAIMS, COUNTERCLAIMS, THIRD PARTY CLAIMS, AND AFFIRMATIVE DEFENSES TO BE TRIED
175468760.1

they represent. *See Federal Treasury Enterprise Sojuzplodoimport* v. *Spirits Intern. N. V.,* 623 F.3d 61, 68 (2d Cir. 2010); *Glow Industries, Inc.* v. *Lopez,* 273 F. Supp. 2d 1095, 1108 (C.D. Cal. 2003); *Hallmark Hardwoods, Inv. V. Omni Wood Product, LLC,* 2011 WL 13176098, \*15 (C.D. Cal. 2011);/« *re Impact Distributors, Inc.,* 260 B.R. 48, 53-55 (S.D. Fla. 2001); *Money Store* v. *Harriscorp Fin., Inc.,* 689 F.2d 666, 670 (7th Cir. 1982).

iv. <u>Plaintiffs Supporting Legal Position:</u> this is a factual dispute. Plaintiff argues that it did receive goodwill, while Defendants argue that we did not.

v. <u>Defendants' Supporting Evidence:</u> the following category, which is defined above, captures the key phase and supporting evidence: SPAVI Parties' Tortious Conduct.

vi. <u>Plaintiffs Supporting Evidence:</u> the deeds filed with the USPTO, proof of intent to continue using the marks,, including plans to expand rapidly within the US (testimony of SPAVI executives charged with this expansion, including Mr. Gregorio, Mr. Tann, and Mr. Concepcion, the COO.)

68

b. <u>Causes of Action Barred by this Affirmative Defense:</u> SPAVFs SPA Vi's causes of action for Trademark Infringement (15 U.S.C. § 1114), Trademark Infringement (15 U.S.C. § 1125(a)), False Designation of Origin and Description of Fact (15 U.S.C. § 1125(a)), Contributory Trademark Infringement (15 U.S.C. § 1114), Contributory Trademark and False Designation of Fact (15 U.S.C. § 1125(a)), Common Law Trademark Infringement, Declaratory Relief and Unfair Competition (Bus. & Prof. Code § 17200).

5) <u>**Affirmative Defense No. 5: Abandonment through Naked Licensing.**</u>

**Formatted:**
Heading #21, Indent: Left: 0.35", Line spacing: Exactly 23.75 pt, Outline numbered + Level: 1 + Numbering Style: 1, 2, 3, … + Start at: 4 + Alignment: Left + Aligned at: 0" + Indent at: 0", Keep with next, Keep lines together, Tab stops: 0.59", Left

a. Element No. 1: SPAVI Parties (including Cinco's) alleged licensed use of U.S. Potato Corner trademarks to PCJV USA Parties.

    i. This element is disputed.

    ii. <u>Nature of the dispute:</u> Legal

    iii. <u>Defendants' Position Statement:</u> Defendants assert both ownership and use rights arising from naked licensing, i.e., authorization to use without adequate control. Ownership arises from Cinco Corporation's naked license because it barred the sale of any trademark rights to Plaintiff, and the PCJV USA Parties acquired all of Cinco Corporation's Interests and rights in Potato Comer in the United States in their settlement and MIPA. Ownership also arises from ~~Plaintiffs~~ Plaintiff's naked licensing because PCJV USA, EEC is a senior user of the mark, including because Plaintiff never had any right to control Potato Comer in the United States, did not exercise control over Potato Comer in the United States, and had no grounds to believe PCJV USA, EEC would listen to or take any instruction from SPAVI.

    ~~iv.~~ Plaintiffs Supporting Legal Position: the wording of this element, however, is going to be confusing to a jury. If it is

    iv. PCJV's position that it was not even a licensee as of May 31, 2024, the damages calculation will change considerably~~,~~.

b. Element No. 2: SPAVI Parties (including Cinco) did not exercise adequate control over PCJV USA Parties' use of U.S. Potato Corner trademarks.

    i. The parties dispute that this element is satisfied.

    ii. Nature of Dispute: Factual and Legal.

    iii. Defendant's Supporting Legal Position~~:~~

    iv. <u>Plaintiffs Supporting Legal Position:</u> First, this is an incorrect

**Formatted:** Body text (2)1, Indent: Left: 1.26", Hanging: 0.33", Line spacing: Exactly 24 pt, Outline numbered + Level: 1 + Numbering Style: i, ii, iii, … + Start at: 1 + Alignment: Left + Aligned at: 0" + Indent at: 0", Tab

AMENDED JOINTLY FILED CLAIMS-, COUNTERCLAIMS, THIRD PARTY CLAIMS, AND AFFIRMATIVE DEFENSES TO BE TRIED
175468760.1

statement of the law, as the focus is less so on the use of the Marks, but more so on the nature and quality of the goods and/or services sold by the licensee. Second, though unsatisfying in its failure to conclusively resolve the debate, in the Ninth Circuit this defense likely requires a showing of clear and convincing evidence. Freecycle Sunnyvale v. Freecycle Network, 626 F.3d 509, 514 (9th Cir. 2010)

v.  Defendants' Supporting Evidence: the following categories, which are defined above, capture the key phases and supporting evidence: Superseding Joint Venture (2008-2010), Alternative Licensing Arrangements and Ongoing Ratification (2011-2012), Formalization and Modification of the Joint Venture (2012), LA Group Partnership Agreement and Evolving Business Dynamics and Terms (2013-2018), Dispute, Litigation, and State Court Proceedings (2018 and Beyond), Ongoing Annual Ratification and Regulatory Compliance, and SPAVI Parties' Tortious Conduct

vi. Plaintiffs Supporting Evidence: Pursuant to the three considerations as to whether naked licensing has occurred, as

vi.  summarized in F19 Franchising, LLC EEC v. Endo Fitness LL EL, EEC, No. 2:23-CV-00185-MEMF-JCX, 2023 WE 11950376, at *6-9 (C.D. Cal. July 28, 2023), this is the one issue for trial in which the prior action is actually relevant,, as it sets forth that efforts to exert control, as do the prior correspondence between Cinco and PCJV, and, moreover, the course of dealing prior to termination establishes the attempts to get control,,

> **Formatted:** Body text (2)1, Indent: Left: 1.29", Hanging: 0.31", Line spacing: Exactly 23.75 pt, Outline numbered + Level: 1 + Numbering Style: i, ii, iii, ... + Start at: 1 + Alignment: Left + Aligned at: 0" + Indent at: 0", Tab

c.  Causes of Action Barred by this Affirmative Defense: SPAVFs causes of action for Trademark Infringement (15 U.S.C. § 1114), Trademark

100
CASE NO. 2:24-CV-04546-SB(AGRX)
100
AMENDED JOINTLY FILED CLAIMS,
COUNTERCLAIMS, THIRD PARTY CLAIMS, AND
AFFIRMATIVE DEFENSES TO BE TRIED
175468760.1

Infringement (15 U.S.C. § 1125(a)), False Designation of Origin and Description of Fact (15 U.S.C. § 1125(a)), Contributory Trademark Infringement (15 U.S.C. § 1114), Contributory Trademark and False Designation of Fact (15 U.S.C. § 1125(a)), Common Law Trademark Infringement, Declaratory Relief and Unfair Competition (Bus. & Prof. Code § 17200).

6) **Affirmative Defense No. 6: Senior Use.**

a. **Element No. 1**: Defendants were the first to use the U.S. Potato Comer trademarks in the United States.

   i. The parties dispute that this element is satisfied.

   ii. Nature of Dispute: Legal and factual.

   iii. <u>Defendant's Legal Position Statement</u>: "The first to use a mark in an area is deemed the 'senior' user and has the right to enjoin 'junior users from using confusing similar marks in the same industry or market or within the senior user's natural zone of expansion." *Optimal Pets, Inc.* v. *Nutri-Vet, LLC*, 877 F. Supp. 953,959 (C.D. Cal. 2012).

   iv. Plaintiffs Legal Position Statement: See 15 USC § 1055. This argument is not made in good faith. It is also law of the case.

   v. Defendants' Supporting Evidence:

   vi. <u>Plaintiffs Supporting Evidence</u>: Registrations and testimony of Koren and Mr. Magsaysay

b. <u>Element No. 2</u>: SPAVI intends to use the U.S. Potato Comer trademarks in the United States.

   i. The parties dispute that this element is satisfied.

Formatted: Heading #21, Indent: Left: 0.35", Line spacing: Exactly 23.75 pt, Outline numbered + Level: 1 + Numbering Style: 1, 2, 3, … + Start at: 4 + Alignment: Left + Aligned at: 0" + Indent at: 0", Keep with next, Keep lines together, Tab stops: 0.62", Left

    ii. Nature of Dispute: Legal and factual.

    iii. <u>Defendants' Legal Position Statement:</u> "The first to use a mark in an area is deemed the 'senior' user and has the right to enjoin 'junior users from using confusing similar marks in the same industry or market or within the senior user's natural zone of expansion." *Optimal Pets, Inc.* v. *Nutri-Vet, LLC,* 877 F. Supp. 953,959 (C.D. Cal. 2012).

    iv. <u>Plaintiffs Legal Position Statement:</u> Unclear what the dispute is here other than factual.

    v. <u>Defendants' Supporting Evidence:</u> the following categories, which are defined above, capture the key phases and supporting evidence: Superseding Joint Venture (2008-2010), Alternative Licensing Arrangements and Ongoing Ratification (2011-2012), Formalization and Modification of the Joint Venture (2012), LA Group Partnership Agreement and Evolving Business Dynamics and Terms (2013-2018), Dispute, Litigation, and State Court Proceedings (2018 and Beyond).

    vi. <u>Plaintiffs Supporting Evidence:</u> Testimony of Gregorio, Tan, Concepcion, and Shaikh and Hussein

  c. <u>Causes of Action Barred by this Affirmative Defense</u>: SPA Vi's causes of action for Trademark Infringement (15 U.S.C. § 1114), Trademark Infringement (15 U.S.C. § 1125(a)), False Designation of Origin and

  c. *ID#: 10834*Description of Fact (15 U.S.C. § 1125(a)), Contributory Trademark Infringement (15 U.S.C. § 1114), Contributory Trademark and False Designation of Fact (15 U.S.C. § 1125(a)), Common Law Trademark Infringement, Declaratory Relief and Unfair Competition

JOINTLY FILED CLAIMS TO BE TRIED CASE NO. 2:24-CV-04546-SB(AGRX)
175468760.1
102
AMENDED

AFFIRMATIVE DEFENSES
175468760.1

> **Formatted:** Body text (2)1, Indent: Left: 0.85", Hanging: 0.25", Line spacing: Exactly 23.75 pt, Outline numbered + Level: 1 + Numbering Style: a, b, c, … + Start at: 1 + Alignment: Left + Aligned at: 0" + Indent at: 0", Tab

(Bus. &

Prof. Code § 17200).

**7) Affirmative Defense No. 7: Continuous Prior Use Within Remote Geographic Area.**

a. ~~a.~~ Element No. 1: Defendants continuously used the trademark, without interruption, in the U.S.

   i. The parties dispute that this element is satisfied.

   ii. Nature of Dispute: Legal and factual.

   iii. Defendants' Supporting Legal Position: (1) PCJV USA, EEC's is the senior use under *Sengoku,* including actual first use (restructure in 2009) and lawful first use, *see CreAgri, Inc.* v. *USANA Health Services, Inc.,* 474 F3d 626, 630 (9th Cir. 2007); (2) but for a license agreement, which SPAVI Parties disavow, PCJV USA, EEC's use inured to its own benefit; (3) Cinco Corporation did not control PCJV USA, EEC's use of the Potato Corner marks; and (4) SPAVI Parties did not control PCJV USA, EEC's use of the Potato Comer marks.

   iv. Plaintiffs Supporting Legal Position: Seel 15 USC §1055. This argument is not made in good faith.

   v. Defendants' Supporting Evidence: the following categories, which are defined above, capture the key phases and supporting evidence: Superseding Joint Venture (2008-2010), Alternative Licensing Arrangements and Ongoing Ratification (2011-2012), Formalization and Modification of the Joint Venture (2012), LA Group Partnership Agreement and Evolving Business Dynamics and Terms (2013-2018), Dispute, Litigation, and State Court Proceedings (2018 and Beyond).

   ~~and Tenns (2013-2018), Dispute, Litigation, and State Court~~

Formatted: Heading #21, Indent: Left:  0.35", Hanging:  0.25", Outline numbered + Level: 1 + Numbering Style: 1, 2, 3, … + Start at: 4 + Alignment: Left + Aligned at:  0" + Indent at:  0", Keep with next, Keep lines together, Tab stops: 0.59", Left

CASE NO. 2:24-CV-04546-SB(AGRX)
103
103
AMENDED JOINTLY FILED CLAIMS ,
AFFIRMATIVE DEFENSES TO BE TRIED
175468760.1
175468760.1

,2:24-cv-04546-SB-AGR :24-cv-04546-SB-AGR Document 258 263-1 Filed 08/12/25 08/14/25 Page 136 of 164 80 of 173 Page258 263-1 Filed 08/12/25 08/14/25 Page 62 of 164 80 of 173 Page ID #:10897 :11218 :10823 :11218

Proceedings (2018 and Beyond).

    vi. Plaintiffs Supporting Evidence: All evidence presented in Plaintiffs' case in chief will prove the defense of this.

b. Element No. 2: Defendants began using the trademark without knowledge of SPAVFs prior use elsewhere.

    i. Disputed Status of Element 2: The parties dispute that this element is satisfied.

    ii. Nature of Dispute: Factual.

    iii. Defendants' Supporting Evidence: the following categories, which are defined above, capture the key phases and supporting evidence: Superseding Joint Venture (2008-2010), Alternative Licensing Arrangements and Ongoing Ratification (2011-2012), Formalization and Modification of the Joint Venture (2012), LA Group Partnership Agreement and Evolving Business Dynamics and Tenns Terms (2013-2018), Dispute, Litigation, and State Court Proceedings (2018 and Beyond).

    iv. Plaintiffs Supporting Evidence: Koren testimony, registrations.

c. Element No. 3: Defendants used the trademark before SPAVI published the registered trademark.

    i. Disputed Status of Element 3: The parties dispute that this element is satisfied.

    ii. Nature of Dispute: factual.

    iii. Defendants' Supporting Evidence: the following categories, which are defined above, capture the key phases and supporting evidence: Superseding Joint Venture (2008-2010), Alternative Licensing Arrangements and Ongoing Ratification (2011-2012), Formalization and Modification of the Joint Venture (2012), LA

CASE NO. 2:24-CV-04546-SB(AGRX)
104
104
AMENDED JOINTLY FILED CLAIMS ,

AFFIRMATIVE DEFENSES TO BE TRIED
175468760.1
175468760.1

iii. 74Group Partnership Agreement and Evolving Business Dynamics and Terms (2013-2018), Dispute, Litigation, and State Court Proceedings (2018 and Beyond).

**Formatted:** Body text (2)1, Indent: Left: 1.26", Hanging: 0.33", Line spacing: Exactly 24 pt, Outline numbered + Level: 1 + Numbering Style: i, ii, iii, … + Start at: 1 + Alignment: Left + Aligned at: 0" + Indent at: 0", Tab

JOINTLY FILED CLAIMS TO BE TRIEDCASE NO. 2:24-CV-04546-SB(AGRX)
175468760.1
105
AMENDED

AFFIRMATIVE DEFENSES
175468760.1

       i.iv. Plaintiffs Supporting Evidence: 15 USC § 1055. This argument is not made in good faith

    d. <u>Causes of Action Barred by this Affirmative Defense</u>: SPAVEs SPAVFs causes of action for Trademark Infringement (15 U.S.C. § 1114), Trademark Infringement (15 U.S.C. § 1125(a)), False Designation of Origin and Description of Fact (15 U.S.C. § 1125(a)), Contributory Trademark Infringement (15 U.S.C. § 1114), Contributory Trademark and False Designation of Fact (15 U.S.C. § 1125(a)), Common Law Trademark Infringement, Declaratory Relief and Unfair Competition (Bus. & Prof. Code § 17200).

**8) Affirmative Defense No. 6: Mitigation.**

    a. <u>Element No. 1</u>: SPAVI failed to use reasonable efforts to mitigate alleged damages.

       i. The parties dispute that this element is satisfied.

       ii. Nature of Dispute: Factual.

       iii. <u>Defendants' Supporting Evidence</u>: the following category, which is defined above, captures the key phase and supporting evidence: SPAVI Parties' Tortious Conduct.

       iv. <u>Plaintiffs Supporting Evidence</u>: Plaintiff looks forward to presenting the jury with every effort taken to get PCJV and Koren to either pay for or stop, finally, using this brand for which he has never paid to benefit from, whether that was negotiating a license, terminating the license or other attempts.

    b. <u>Element No. 2</u>: the amount by which damages would have been mitigated.

<div align="center">75</div>

       i. The parties dispute that this element is satisfied.

       ii. Nature of Dispute: Factual.

> **Formatted:** Heading #21, Indent: Left: 0.35", Line spacing: Exactly 23.75 pt, Outline numbered + Level: 1 + Numbering Style: 1, 2, 3, … + Start at: 8 + Alignment: Left + Aligned at: 0" + Indent at: 0", Keep with next, Keep lines together, Tab stops: 0.62", Left

    *iii.* <u>Defendants' Supporting Evidence:</u> the following category, which is defined above, captures the key phase and supporting evidence: SPAVI Parties' Tortious Conduct.

    *iv.* <del>Plaintiffs</del> <u>Plaintiff's Supporting Evidence:</u> Testimony of Koren, Gregorio, Victor Tan, Financial documents.

  c. <u>Causes of Action Barred by this Affirmative Defense:</u> All of SPAVI Parties' causes of action (to the extent they seek damages).

**9)** <u>**Affirmative Defense No. 9: Senior Use Trademark Ownership**</u>

  a. <u>Element No. 1</u>: At the time of first lawful use, the partnership and JVA evidence co-ownership of the U.S. Potato Comer marks.

    i. Disputed Status of Element 1: The parties dispute that this element is satisfied.

    ii. Nature of Dispute: Legal and factual.

    iii. <u>Defendants' Position Statement:</u> The partnership and joint venture agreement between PCJV USA, EEC's LA Group and Cinco Group recognize and support per their terms and conditions that PCJV USA, EEC—the first actual, lawful, continuous and exclusive user of the U.S. Potato Corner marks—owns the U.S. Potato Comer marks (which was the LA Group's long-term security and consideration) at least until the parties executed the contemplated master license agreement (which was the Cinco Group's consideration) that they both agreed to enter into in accordance with their fiduciary and contractual obligations, but which still treated them as joint venture partners. *See Sengoku Works Ltd.* v. *RMC Int* 7, *I Ad.*, 96 F.3d 1217, 1219 (9th Cir. 1996); *cf. Precision Door Service, Inc.*

    <u>*v. Bell,* No. C 02-01108 CW, 2002 WE 655053, at *6 (N.D. Cal</u><del>*Bell,* No. C 02-01108 CW, 2002 WL 655053, at *6 (N.D. Cal</del>

**Formatted:** Heading #21, Indent: Left: 0.35", Line spacing: Exactly 23.75 pt, Outline numbered + Level: 1 + Numbering Style: 1, 2, 3, … + Start at: 8 + Alignment: Left + Aligned at: 0" + Indent at: 0", Keep with next, Keep lines together, Tab stops: 0.59", Left

2:24-cv-04546-SB-AGR :24-cv-04546-SB-AGR Document 258 263-1 Filed 08/12/25 08/14/25 Page 64 of 164 82 of 173 Page ID #:10825:11220

**Formatted:** Indent: Left: 1.6", Line spacing: Exactly 24 pt, No bullets or numbering, Pattern: Clear

v.    April 18, 2002). Given that Plaintiff is disavowing the license agreement—meaning the factual basis upon which PCJV USA, LLC's use might inure to Cinco Corporation's benefit did not happen—the operative coownership agreements favor Defendants or, at minimum, are not dispositive as to ownership. Plaintiff does not get ownership by default because all exclusive users under *Sengoku* are alleged "related companies." Under *Sengoku,* an alleged "related company" who is an exclusive user in the United States, gets to rebut that presumption, especially where, as here, the registrant filed an intent to use application that would only evidence senior use if the exclusive user's first actual and lawful use inured to its benefit. Under the partnership and joint venture agreement, which "vested" in the joint venture and exclusive user complete licensing rights and obligations in the United States, approval of franchise agreements, including as disclosed in FDDs, restrictions on transfer, payment of equal royalties and service fees, and lifetime rights to license and quality control over Potato Comer in the United States, it plainly supports ownership in the joint venture or, at minimum, is not dispositive. The jury is entitled to consider the following five factors used in the Ninth Circuit to help determine ownership as between PCJV USA, LLC, an exclusive domestic user, and Plaintiff, an assignee of a foreign registrant, which plainly demonstrate that PCJV USA, LLC owns the U.S. marks unless and until there was a meeting of the minds on an enforceable license agreement: (1) which party invented and affixed the mark to the product; (2) which party's name appeared with the

trademark; (3) which party maintained the product's quality and uniformity; (4) which party does the public identify with the product and make complaints to; and (5) which party possesses the goodwill associated with the product.

    iv.  <u>Plaintiffs Position Statement:</u> This misstates the Lanhan act and the rules of priority. *See Yagu.* And *Sengoku,*

    v.  <u>Defendants' Supporting Evidence:</u> documents and testimony including and related to (1) DLA Piper's notification of Cinco Corporation's unlawful use of Potato Corner in the United States; (2) the State of California's Department of Business Oversight's Order sanctioning PCJV USA, LLC for Cinco Corporation's alleged prior use of Potato Corner in the United States; (3) the superseding and restructure agreement between Guy Koren and Jose Magsay say vesting ownership of Potato Corner in their partnership; (4) the joint venture agreement vesting co-ownership of Potato Comer in the United States in PCJV USA, LLC; (5) control over Potato Comer in the United States being vested with and exercised by PCJV USA, LLC; (6) Potato Comer USA being affixed to Potato Corner in the United States; (7) consumer association of Potato Comer in the United States with PCJV USA, LLC, to whom complaints, if any, were lodged; (8) PCJV USA, LLC's creation, development and hold over the goodwill of Potato Comer in the United States for over a decade; (9) Cinco's lack of control of Potato Corner in the United States for over a decade; (10) Plaintiffs lack of control of Potato Comer in the United States after it allegedly acquired the U.S. trademarks and before it registered additional Potato Corner trademarks; and (11) Plaintiffs suppression of evidence

relevant to ownership.

    vi.  <u>Plaintiffs Supporting Evidence:</u> The registration and Koren's admissions regarding control

  b.  <u>Element No. 2 (if Element No. 1 is not dispositive):</u> The following factors demonstrate PCJV USA, EEC owns the U.S. Potato Comer Trademarks: (1) which party invented and affixed the mark to the product; (2) which party's name appeared with the trademark; (3) which party maintained the product's quality and uniformity; (4) which party does the public identify with the product and make complaints to; and (5) which party possesses the goodwill associated with the product.

    i.  Disputed Status of Element 3: The parties dispute that this element is satisfied.

    ii.  <u>Nature of Dispute:</u> Legal and factual.

    iii.  <u>Defendants' Position Statement:</u> Defendants incorporate the above legal position.

    iv.  <u>Plaintiffs Position Statement:</u> this is incomprehensible and not made in good faith.

    v.  <u>Defendants' Supporting Evidence:</u> Defendants incorporate the above legal position.

    vi.  <u>Plaintiffs Supporting Evidence:</u> this is incomprehensible and not made in good faith.

## II.  <u>Counterclaimants and Third Party Plaintiffs' ("PCJV USA Parties") Causes of Action to be Tried by a Jury</u>

### 1)  **Cause of Action No. 2: Inducing Breach of Contract**

    b.  <u>Element No. 1:</u> there was a contract between any one of the PCJV USA Parties, on the one hand, and any one of the Cinco parties

<div align="center">79</div>

(inclusive of the "Cinco Group" and "PCI Group") or franchisees on the other hand.

    i.    Disputed Status of Element 1: The parties dispute this element is satisfied.

    ii.    <u>Nature of Dispute:</u> factual and legal

    iii.    <u>PCJV USA Parties Legal Position Statement:</u> The term for PCJV USA, EEC's use of the U.S. Potato Comer trademarks "can be [i]mplied from the nature of the contract and circumstances surrounding it." *See Consolidated Theatres, Inc.* v. *Theatrical Stage Emp. Union, Local 16,* 69 Cal.2d 713, 725 (1968). The "initial effort of the court, in constming contracts of continuing performance of forbearance which contain no express term of duration, must always be that of implying a term of duration commensurate with the intentions of the parties . . . ." *Id.* at 727. Only when "the nature of the contract and the totality of the surrounding circumstances give no suggestion as to any ascertainable term . . ., the obligations under the contract shall be terminable at will by any party upon reasonable notice after such a reasonable time has elapsed." *Id.* Further, it is immaterial that SPA VI had full knowledge of the contracts' terms. *SeeJenni Rivera Enterprises, ETC* v. *Latin World Entertainment Holdings, Inc.,* 36 Cal. App. 5th 766, 783 (2019). Nor is SPA Vi's belief about the legal significance of facts or belief that the parties' agreements are legally binding or has a different legal effect from what it is

,2:24-cv-04546-SB-AGR :24-cv-04546-SB-AGR Document 258 263-1 Filed 08/12/25 08/14/25 Page 69 of 164 87 of 173 Page ID #:10830:11225

judicially held to have. *See Little* v. *Amber Hotel Co.*, 202 Cal. App. 4th 280, 302 (2011).

iv.   <u>Plaintiffs Position Statement:</u> as drafted it is impossible to know what the specific contract is that is at issue here. It has never been disclosed, and still undisclosed. Rather than jettison the claim or actually identify the contract, instead, Defendants' solution is to fudge with obtuse language in the jury instructions, designed to confuse everyone, including the jury: "there was a contract between any one of the PCJV Plaintiffs and any one of the Cinco parties." Indeed, the only contract that Cinco has been a party to with any of these Counterclaimants is the Settlement Agreement of the Prior Governance Action. There is no other written agreement between PCJV and Cinco, or between any other Counterclaimant and Cinco.

v.   <u>PCJV USA Parties' Supporting Evidence:</u> the following categories, which are defined above, capture the key phases and supporting evidence: Superseding Joint Venture (2008-2010), Alternative Licensing Arrangements and Ongoing Ratification (2011-2012), Formalization and Modification of the Joint Venture (2012), LA Group Partnership Agreement and Evolving Business Dynamics and Terms (2013-2018), Dispute, Litigation, and State Court Proceedings (2018 and Beyond), and Ongoing Annual Ratification and Regulatory Compliance.

vi.   <u>SPAVI and Cinco Parties' Supporting Evidence:</u> Each of the agreements included in the trial exhibits and testimony of Mr. Magsaysay, Mr. Koren, and Ms. Victor - all of which will

**Formatted:** Indent: Left: 1.42", Hanging: 0.43", Line spacing: Exactly 24 pt, Outline numbered + Level: 1 + Numbering Style: i, ii, iii, ... + Start at: 1 + Alignment: Left + Aligned at: 0" + Indent at: 0", Pattern: Clear, Tab

establish that none of the Counterclaimants - PCJV, PCIT, LA

Group EEC LLC, GK Capital, NKM, or Koren have

81

any contract to which Cinco has privity,

c. <u>Element No. 2:</u> SPAVI knew of the contract.

   i. Disputed Stahis of Element 2: The parties dispute this element
      is satisfied.

   ii. <u>Nature of Dispute:</u> factual and legal.

   hi. <u>PCJV USA Parties Legal Position Statement:</u> "the contract"
       refers to each and every applicable contract, including all
       written, oral, and/or implied-in-fact agreements between the
       "Cinco Group" and/or "PCI Group," on the one hand, and
       Cross-Complainants PCJV, PCI Trading, LA Group, GK
       Capital, NKM, and Koren, on the other hand, inclusive of the
       JVA/AJVA, EEC LLC Agreement, license agreements, MSA
       (as restated, amended, modified, or appended over time
       through PCJV meeting minutes, written communications of
       the PCJV Board, and/or representations made in FDDs LDDs);
       (2) the Settlement Documents between the "Koren Parties"
       and "Cinco Parties"; and (3) the franchise agreements PCJV
       entered with franchisees. Plaintiffs position statement does not
       assert a legal argument

   iv. <u>SPAVI and Cinco's Position Statement:</u> as drafted it is
       impossible to know what the specific contract is at issue here.
       It has never been disclosed, and still undisclosed. So, when
       this element in the instructions says, "the contract," whereas
       the prior element refers to some unidentified

88

> **Formatted:** Indent: Left: 1.1", First line: 0", Line spacing: Exactly 24 pt, Outline numbered + Level: 1 + Numbering Style: a, b, c, … + Start at: 1 + Alignment: Left + Aligned at: 0" + Indent at: 0", Pattern: Clear, Tab stops: 1.34", Left

contract, as a matter of law, yes, this element is disputed. To the extent any actual contract ever existed between Cinco and these parties, the only one that is possible is the Settlement Agreement and corresponding agreement selling PCJV

82

equity to GKK Capital. (Trial Exhibit 1176.) Because Cinco has never been a party to any other contract with any of the Counterclaim Defendants, that is the only one that could possibly be at issue, but Defendants refuse to acknowledge this.

    iv. v.  PCJV USA Parties' Supporting Evidence: the following category, which is defined above, captures the key phase and supporting evidence: SPAVI Parties' Tortious Conduct.

    v. vi.  SPAVI and Cinco Parties' Supporting Evidence: Each of the agreements included in the trial exhibits and testimony of Mr. Gregorio, Mr. Tan, Ms. Victor, as well as Mr. Koren - all of which will establish that were aware of no contract between none of the Counterclaimants - PCJV, PCIT, LA Group EEC, GK Capital, NKM, or Koren have any contract to which Cinco has privity. After the fact, now, having been sued, SPAVI will unequivocally testify that it had knowledge of the terms off the settlement and never saw the document until this case commenced.

    d.  Element No. 3: SPAVI intended to cause any one of the Cinco parties or franchisees to breach the contract

        i.  Disputed Stahis of Element 3: The parties dispute this element is satisfied.

        ii.  Nature of Dispute: factual and legal, hi.

> Formatted: Indent: Left: 1.43", Hanging: 0.42", Line spacing: Exactly 24 pt, Outline numbered + Level: 1 + Numbering Style: i, ii, iii, … + Start at: 5 + Alignment: Left + Aligned at: 0" + Indent at: 0", Pattern: Clear, Tab

;24-cv-04546-SB-A.R   ...   **PCJV USA Parties' Position Statement:** Plaintiff's position statement does not address a legal issue concerning this element. To the extent Plaintiffs position statement addresses element 1, PCJV USA Parties incorporate their respective response here.

iv.   <u>Plaintiffs Position Statement:</u> as drafted it is impossible to know what the specific contract is at issue here. It has never been disclosed, and still undisclosed. So, when this element in the instructions says, "the contract," whereas the prior element refers to some unidentified contract, as a matter of law, yes, this element is disputed. To the extent any actual contract ever existed between Cinco and these parties, the only one that is possible is the Settlement Agreement and corresponding agreement selling PCJV equity to GKK Capital. (Trial Exhibit 1176.) Because Cinco has never been a party to any other contract with any of the Counterclaim Defendants, that is the only one that could possibly be at issue, but Defendants refuse to acknowledge this.

v.   <u>PCJV USA Parties' Supporting Evidence:</u> the following category, which is defined above, captures the key phase and supporting evidence: SPAVI Parties' Tortious Conduct.

vi.   <u>SPAVI's Supporting Evidence:</u> Each of the agreements included in the trial exhibits and testimony of Mr. Gregorio, Mr. Tan, Ms. Victor, as well as Mr. Koren - all of which will establish that they were not aware of and had no intent to cause anyone to breach any contract. Also, the correspondence leading up to the termination of the license - Trial Exhibits 20-31 - also confirm the intent was to negotiate

> **Formatted:** Indent: Left: 1.4", Hanging: 0.44", Line spacing: Exactly 24 pt, Outline numbered + Level: 1 + Numbering Style: i, ii, iii, ... + Start at: 1 + Alignment: Left + Aligned at: 0" + Indent at: 0", Pattern: Clear, Tab stops: 1.85", Left

115
CASE NO. 2:24-CV-04546-SB(AGRX)
115
AMENDED JOINTLY FILED CLAIMS,
COUNTERCLAIMS, THIRD PARTY CLAIMS, AND
AFFIRMATIVE DEFENSES TO BE TRIED
175468760.1

a license with PCJV, something for which years were spent in pursuit, to no avail.

e.  Element No. 4: ~~SPAVI's~~ SPAVEs conduct caused any one of the Cinco parties to breach the contract

i.  ~~Disputed Stahis~~ Status of Element 4: The parties dispute this

i.  element is satisfied.

> **Formatted:** Body text (2)1, Indent: Left: 1.47", Hanging: 0.38", Line spacing: Exactly 24 pt, Outline numbered + Level: 1 + Numbering Style: i, ii, iii, ... + Start at: 1 + Alignment: Left + Aligned at: 0" + Indent at: 0", Tab

ii.  Nature of Dispute: factual and legal.

iii.  PCJV USA Parties' Supporting Legal Position: The term for PCJV USA, ~~LLC's~~ EEC's use of the U.S. Potato Comer trademarks "can be [i]mplied from the nature of the contract and circumstances surrounding it." *See Consolidated Theatres, Inc.* v. *Theatrical Stage Emp. Union, Local 16*, 69 Cal.2d 713, 725 (1968). The "initial effort of the court, in constming contracts of continuing performance of forebearance which contain no express term of duration, must always be that of implying a term of duration commensurate with the intentions of the parties . . . " *Id.* at 727. Only when "the nature of the contract and the totality of the surrounding circumstances give no suggestion as to any ascertainable term . . . , the obligations under the contract shall be terminable at will by any party upon reasonable notice after such a reasonable time has elapsed." *Id.* Further, it is immaterial that SPA VI had full knowledge of the contracts' terms. *SeeJenni Rivera Enterprises, ETC* v. *Latin World Entertainment Holdings, Inc.,* 36 Cal. App. 5th 766, 783 (2019). Nor is ~~SPAVIN~~ SPAVEs belief about the legal significance of facts or belief that the parties' agreements are legally binding or has a different legal effect from what it is judicially held to have.

*See Little* v. *Amber Hotel Co.*, 202 Cal. App. 4th 280, 302 (2011).

iv.   <u>Plaintiffs Position Statement:</u> First, this presumes Cinco breached a contract. The only contracts that have been identified as being "breached" are the unsigned licensee agreement and the AJVA. Neither document binds Cinco - indeed, that the AJVA constitutes an agreement to agree and not a contract has already been adjudicated and decided as law of the case. It is impossible to know what the specific contract is at issue here. To the extent any actual contract ever existed between Cinco and these parties, the only one that is possible is the Settlement Agreement and corresponding agreement selling PCJV equity to GKK Capital. (Trial Exhibit 1176.) Because Cinco has never been a party to any other contract with any of the Counterclaim Defendants, that is the only one that could possibly be at issue, but Defendants refuse to acknowledge this.

v.    <u>PCJV USA Parties' Supporting Evidence:</u> the following categories, which are defined above, capture the key phases and supporting evidence: Superseding Joint Venture (2008-2010), Alternative Licensing Arrangements and Ongoing Ratification (2011-2012), Formalization and Modification of the Joint Venture (2012), LA Group Partnership Agreement and Evolving Business Dynamics and Terms (2013-2018), Dispute, Litigation, and State Court Proceedings (2018 and

Beyond), Ongoing Annual Ratification and Regulatory Compliance, and SPAVI Parties' Tortious Conduct.

vi.  <u>SPAVI Parties' Supporting Evidence:</u> The absence of

evidence that Cinco was a party to, or breached, any contract with any of the Counterclaimants is the supporting evidence.

f.  <u>Element No. 5:</u> any one of the PCJV USA Parties were harmed

~~i.   Disputed Stahis of Element 4: The parties dispute this~~

i.   <del>se</del>element is satisfied.

ii.  <u>Nature of Dispute:</u> factual and legal.

iii.  <u>PCJV USA Parties' Position Statement:</u> Plaintiff's position statement does not address a legal issue concerning this element. To the extent Plaintiffs position statement addresses element 1, PCJV USA Parties incorporate their respective response here.

iv.  <u>Plaintiffs Position Statement:</u> First, this presumes Cinco breached a contract. The only contracts that have been identified as being "breached" are the unsigned licensee agreement and the AJVA. Neither document binds Cinco - indeed, that the AJVA constitutes an agreement to agree and not a contract has already been adjudicated and decided as law of the case. It is impossible to know what the specific contract is at issue here. To the extent any actual contract ever existed between Cinco and these parties, the only one that is possible is the Settlement Agreement and corresponding agreement selling PCJV equity to GKK Capital. (Trial Exhibit 1176.) Because Cinco has never been a party to any other contract with any of the Counterclaim Defendants, that is the only one

> **Formatted:** Body text (2)1, Indent: Left: 1.5", Hanging: 0.35", Line spacing: Exactly 24 pt, Outline numbered + Level: 1 + Numbering Style: i, ii, iii, … + Start at: 1 + Alignment: Left + Aligned at: 0" + Indent at: 0", Tab stops: 1.84", Left

.

that could possibly be at issue, but Defendants refuse to acknowledge this.

v. <u>PCJV USA Parties' Supporting Evidence:</u> the following category, which is defined above, captures the key phase and supporting evidence: SPAVI Parties' Tortious Conduct.

vi. <u>SPAVI Parties' Supporting Evidence:</u> The absence of evidence that Cinco was a party to, or breached, any contract with any of the Counterclaimants is the supporting <u>evidence, as there is no way any of the Counterclaimants could have been harmed.</u> evidence, as there is no way any of the Counterclaimants could have been harmed.

g.  Element No. 6: ~~SPAYFs~~ SPA Vi's conduct was a substantial factor in

~~g.~~     causing harm to any of the Counterclaimants.

i. Disputed Stahis of Element 6: The parties dispute this element is satisfied.

ii. <u>Nature of Dispute:</u> factual and legal~~,~~.

hi. <u>PCJV USA Parties' Position Statement:</u> Plaintiff's position statement does not address a legal issue concerning this element. To the extent Plaintiffs position statement addresses element 1, PCJV USA Parties incorporate their respective response here

~~iv.~~ <u>iv. Plaintiffs Position Statement:</u> Again, this presumes Cinco breached a contract. The only contracts that have been identified as being "breached" are the unsigned licensee agreement and the AJVA. Neither document binds Cinco - indeed, that the AJVA constitutes an agreement to agree and not a contract has already been adjudicated and decided as law of the case. It is impossible to know what the specific contract

CASE NO. 2:24-CV-04546-SB(AGRX)
~~119~~
~~119~~
<u>AMENDED</u> JOINTLY FILED CLAIMS~~,~~

<u>AFFIRMATIVE DEFENSES</u> TO BE TRIED
~~175468760.1~~
~~175468760.1~~

is issued. ID #: 13554 To the extent any actual contract ever existed
between Cinco and these parties, the only one that is possible
is the Settlement Agreement and corresponding agreement
selling PCJV equity to GKK Capital. (Trial Exhibit 1176.)
Because Cinco has never been a party to any other contract
with any of the Counterclaim Defendants, that is the only one
that could possibly be at issue, but Defendants refuse to
acknowledge this.

v.    PCJV USA Parties' Supporting Evidence: the following

v.    categories, which are defined above, capture the key phases
and supporting evidence: Superseding Joint Venture (2008-
2010), Alternative Licensing Arrangements and Ongoing
Ratification (2011-2012), Formalization and Modification of
the Joint Venture (2012), LA Group Partnership Agreement
and Evolving Business Dynamics and Terms (2013-2018),
Dispute, Litigation, and State Court Proceedings (2018 and
Beyond), Ongoing Annual Ratification and Regulatory
Compliance, and SPAVI Parties' Tortious Conduct, SPAVI
and Cinco's Supporting Evidence: SPAVI's only act.

v.    SPA VI and Cinco's Supporting Evidence: SPA Vi's only act

JOINTLY FILED CLAIMS TO BE TRIED CASE NO. 2:24-CV-04546-SB(AGRX)
175468760.1
120
AMENDED

AFFIRMATIVE DEFENSES
175468760.1

vi.   that could have caused "harm" to any of the Counterclaimants is termination of the license, which it was permitted to do. The absence of evidence that Cinco was a party to, or breached, any contract with any of the Counterclaimants is the supporting evidence, as there is no way any of the Counterclaimants could have been harmed let alone as a result of any act by SPAVI.

2) <u>**Cause of Action No. 3: Intentional Interference with Contractual Relations.**</u>

a. <u>Element No. 1</u>: there were various contracts, including contracts with the Cinco parties, franchisees, suppliers, and vendors,

    i. <u>Disputed Status of Element 1</u>: The parties dispute that this element is satisfied.

    ii. <u>Nature of Dispute</u>: Legal and factual

    iii. <u>PCJV USA Parties' Legal Position</u>: The term for PCJV USA, EEC's use of the U.S. Potato Comer trademarks "can be [i]mplied from the nature of the contract and circumstances surrounding it." *See Consolidated Theatres, Inc.* v. *Theatrical Stage Emp. Union, Local 16,* 69 Cal.2d 713, 725 (1968). The "initial effort of the court, in construing contracts of continuing performance of forbearance which contain no express term of duration, must always be that of implying a term of duration commensurate with the intentions of the parties . . . " *Id.* at 727. Only when "the nature of the contract and the totality of the surrounding circumstances give no suggestion as to any ascertainable term . . ., the obligations under the contract shall be terminable at will by any party upon reasonable notice after such a reasonable time has elapsed." *Id.* Further, it is immaterial that SPAVI had full knowledge of the contracts' terms. *See Jenni Rivera Enterprises,* ~~LLC~~ ETC v. *Latin World Entertainment Holdings, Inc.,* 36 Cal. App. 5th 766, 783 (2019). Nor is ~~SPAVI's~~ SPA Vi's belief about the legal significance of facts or belief that the parties' agreements are legally binding or has a different legal effect from what it is judicially held to have. *See Little* v. *Amber Hotel Co.,* 202 Cal. App. 4th 280, 302

(2011).

vii. Plaintiffs Supporting Legal Position: The only contracts that have been identified as being "breached" are the unsigned licensee agreement and the AJVA. Neither document binds Cinco - indeed, that the AJVA constitutes an agreement to agree and not a contract has already been adjudicated and decided as law of the case. It is impossible to know what the specific contract is at issue here. To the extent any actual contract ever existed between Cinco and these parties, the only one that is possible is the Settlement Agreement and corresponding agreement selling PCJV equity to GKK Capital. (Trial Exhibit 1176.) Because Cinco has never been a party to any other contract with any of the Counterclaim Defendants, that is the only one that could possibly be at issue, but Defendants refuse to acknowledge this,

iv. PCJV USA Parties' Supporting Evidence: the following categories, which are defined above, capture the key phases and supporting evidence: Superseding Joint Venture (2008- 2010), Alternative Licensing Arrangements and Ongoing Ratification (2011-2012), Formalization and Modification of the Joint Venture (2012), LA Group Partnership Agreement and Evolving Business Dynamics and Terms (2013-2018), Dispute, Litigation, and State Court Proceedings (2018 and Beyond), and Ongoing Annual Ratification and Regulatory Compliance.

v. SPAVI and Cinco's Supporting Evidence: the absence of evidence is enough. There are no such contracts

b. Element No. 2: SPAVI knew of the contracts.

i. Disputed Status of Element 2: The parties dispute that this

element is satisfied.

    i.   Nature of Dispute: Factual.

    ii.   <u>PCJV USA Parties' Supporting Evidence:</u> the following category, which is defined above, captures the key phase and supporting evidence: SPAVI Parties' Tortious Conduct.

    iii.   <u>Plaintiffs Supporting Evidence:</u> the absence of evidence is enough. There are no such contracts.

b.c.    Element No. 3: SPAVEs <u>conduct prevented</u> performance or made performance more expensive or difficult.

    i.   Disputed Status of Element 3: The parties dispute that this

    i.   <del>9</del>element is satisfied.

    ii.   <u>Nature of Dispute:</u> Factual.

    iii.   <u>PCJV USA Parties' Supporting Evidence:</u> PCJV USA Parties' Supporting Evidence: the following categories, which are defined above, capture the key phases and supporting evidence: Superseding Joint Venture (2008-2010), Alternative Licensing Arrangements and Ongoing Ratification (2011- 2012), Formalization and Modification of the Joint Venture (2012), LA Group Partnership Agreement and Evolving Business Dynamics and Terms (2013-2018), Dispute, Litigation, and State Court Proceedings (2018 and Beyond), Ongoing Annual Ratification and Regulatory Compliance, and SPAVI Parties' Tortious Conduct.

    iv.   <u>SPAVI and Cinco's Supporting Evidence:</u> the absence of

**Formatted:** Indent: Left: 0.85", Hanging: 0.25", Line spacing: Exactly 24 pt, Outline numbered + Level: 1 + Numbering Style: a, b, c, ... + Start at: 2 + Alignment: Left + Aligned at: 0" + Indent at: 0", Pattern: Clear, Tab

**Formatted:** Body text (2)1, Indent: Left: 1.39", Hanging: 0.33", Line spacing: Exactly 24 pt, Outline numbered + Level: 1 + Numbering Style: i, ii, iii, ... + Start at: 1 + Alignment: Left + Aligned at: 0" + Indent at: 0", Tab

JOINTLY FILED CLAIMS TO BE TRIEDCASE NO. 2:24-CV-04546-SB(AGRX)
175468760.1
AMENDED JOINTLY FILED CLAIMS, COUNTERCLAIMS, THIRD PARTY CLAIMS, AND AFFIRMATIVE DEFENSES TO BE TRIED

evidence is enough. There are no such contracts

c.d.    Element No. 4: SPAVI either (a) intended to disrupt the performance of these contracts or (b) knew that disruption of performance was certain or substantially certain to occur.

   i.   Disputed Status of Element 4: The parties dispute that this element is satisfied.

   ii.  Nature of Dispute: Factual.

   iii. PCJV USA Parties' Supporting Evidence: the following category, which is defined above, captures the key phase and supporting evidence: SPAVI Parties' Tortious Conduct.

   iv.  SPAVI and Cinco's Supporting Evidence: the absence of evidence is enough. There are no such contracts

d.e.    Element No. 5: any one of the PCJV USA Parties were harmed,.

   i.   Disputed Status of Element 5: The parties dispute that this element is satisfied.

   ii.  Nature of Dispute: Factual.

   iii. PCJV USA Parties' Supporting Evidence:,.

   iv.  SPAVI Parties' Supporting Evidence: the absence of evidence is enough. There are no such contracts.

e.f.Element No., 6: SPA Vi's conduct was a substantial factor in causing any one of the PCJV USA Parties' harm.

   v.    Disputed Status of Element 6: The parties dispute that this element is satisfied.

   vi.   Nature of Dispute: Factual.

   vii.  PCJV USA Parties' Supporting Evidence:

   viii. SPAVI Parties' Supporting Evidence: the absence of evidence is enough. There are no such contracts

    i.   Disputed Status of Element 6: The parties dispute that this element is satisfied.

    ii.   Nature of Dispute: Factual.

    iii.  PCJV USA Parties' Supporting Evidence.

    iv.  SPAVI Parties' Supporting Evidence: the absence of evidence is enough. There are no such contracts

99

## 2)3)  Cause of Action No. 4: Interference with Prospective Economic Relations.

a. Element No. I: any one of the PCJV USA Parties were in various economic relations, including with Cinco parties, franchisees, suppliers, and venders were in that probably would have resulted in an economic benefit to Defendants.

    i.   Disputed Status of Element 1: The parties dispute that this element is satisfied.

    ii.   Nature of Dispute: Legal and factual.

    iii.  PCJV USA Parties' Supporting Legal Position: The term for PCJV USA, EEC's LLC's use of the U.S. Potato Comer trademarks "can be [i]mplied from the nature of the contract and circumstances surrounding it." *See Consolidated Theatres, Inc.* v. *Theatrical Stage Emp. Union, Local 16,* 69 Cal.2d 713, 725 (1968). The "initial effort of the court, in construing contracts of continuing performance perfonnance of forebearance which contain no express tenn of duration, must always be that of implying a tenn of duration commensurate with the intentions of the parties . . . " *Id.* at 727. Only when "the nature of the contract and the totality of the surrounding

**Formatted:** Heading #21, Indent: Left:  0.6", Hanging:  0.26", Outline numbered + Level: 1 + Numbering Style: 1, 2, 3, … + Start at: 3 + Alignment: Left + Aligned at:  0" + Indent at:  0", Keep with next, Keep lines together, Tab stops: 0.85", Left

**Formatted:** Indent: Left:  1.72", Line spacing:  Exactly 24 pt,  No bullets or numbering, Pattern: Clear

circumstances give no suggestion as to any ascertainable term . . . ., the obligations under the contract shall be terminable at will by any party upon reasonable notice after such a reasonable time has elapsed." *Id.* Further, it is immaterial that SPAVI had full knowledge of the contracts' terms. *See Jenni Rivera Enterprises, LLC* v. *Latin World Entertainment Holdings, Inc*., 36 Cal. App. 5th 766, 783 (2019). Nor is SPAVIN SPA Vi's belief about the legal significance of facts or belief that the parties' agreements are legally binding or has a different legal effect from what it is judicially held to have. See Little v. Amber Hotel Co., 202 Cal. App. 4th 280, 302 (2011).

    iv.  <u>Plaintiff's Supporting Legal Position:</u> the only relationships SPAVI knew about were with franchisees and certain vendors, the specific relationships at issue here have never been disclosed.

    v.  <u>PCJV USA Parties' Supporting Evidence:</u> the following categories, which are defined above, capture the key phases and supporting evidence: Superseding Joint Venture (2008- 2010), Alternative Licensing Arrangements and Ongoing Ratification (2011-2012), Formalization and Modification of the Joint Venture (2012), LA Group Partnership Agreement and Evolving Business Dynamics and Terms (2013-2018), Dispute, Litigation, and State Court Proceedings (2018 and

    v.  94 Beyond), and Ongoing Annual Ratification and Regulatory Compliance.

    vi.  <u>SPAYFs SPA Vi's Supporting Evidence:</u> testimony of executives.,

  b.  <u>Element No. 2</u>: SPAVI knew of the relationships.

Formatted: Body text (2)1, Indent: Left: 1.28", Hanging: 0.44", Line spacing: Exactly 24 pt, Outline numbered + Level: 1 + Numbering Style: i, ii, iii, ... + Start at: 1 + Alignment: Left + Aligned at: 0" + Indent at: 0", Tab

127
CASE NO. 2:24-CV-04546-SB(AGRX)
127
AMENDED JOINTLY FILED CLAIMS,
COUNTERCLAIMS, THIRD PARTY CLAIMS, AND
AFFIRMATIVE DEFENSES TO BE TRIED
175468760.1

    i.    Disputed Status of Element 2: The parties dispute that this element is satisfied.

    ii.    <u>Nature of Dispute:</u> Factual.

    iii.    <u>PCJV USA Parties' Supporting Evidence: t</u>he following category, which is defined above, captures the key phase and supporting evidence: SPAVI Parties' Tortious Conduct.

    iv.    SPAVEs SPA Vi's <u>Supporting Evidence:</u> testimony of executives

CASE NO. 2:24-CV-04546-SB(AGRX)
128
AMENDED JOINTLY FILED CLAIMS, COUNTERCLAIMS, THIRD PARTY CLAIMS, AND AFFIRMATIVE DEFENSES TO BE TRIED
175468760.1

   c. <u>Element No. 3</u>: SPAVI engaged in conduct to destroy the value of any one of the PCJV USA Parties' relationships by usurping the benefits of those relationships for ~~SPAVEs~~ SPAVI's benefit.

      i. Disputed Status of Element 3: The parties dispute that this element is satisfied.

      ii. Nature of Dispute: Factual.

      iii. PCJV USA Parties' Supporting Evidence: the following category, which is defined above, captures the key phase and supporting evidence: SPAVI Parties' Tortious Conduct.

      iv. ~~SPAVEs~~ SPA Vi's Supporting Evidence: ~~Testimony of Tan~~ Testimony of T an and Concepcion and Victor and Shaikh and Hussein will all support SPAVI here.

   d. <u>Element No. 4</u>: by engaging in this conduct, SPAVI either (a) intended to disrupt the relationships or (b) knew that disruption of the relationships was certain or substantially certain to occur.

      i. Disputed Status of Element 4: The parties dispute that this element is satisfied.

      ii. Nature of Dispute: Factual.

      iii. <u>PCJV USA Parties' Supporting Evidence</u>: the following category, which is defined above, captures the key phase and supporting evidence: SPAVI Parties' Tortious Conduct.

      iv. ~~SPAYFs~~ SPA Vi's <u>Supporting Evidence</u>: Tan and Concepcion and Victor and Shaikh and Hussein will all support SPAVI here.

   e. <u>Element No ~~.~~ 5</u>: those relationships were disrupted.

      i. Disputed Status of Element 5: The parties dispute that this element is satisfied.

      ii. Nature of Dispute: Factual.

      iii. <u>PCJV USA Parties' Supporting Evidence</u>: the following

categories, which are defined above, capture the key phases and supporting evidence: Superseding Joint Venture (2008- 2010), Alternative Licensing Arrangements and Ongoing Ratification (2011-2012), ~~Formalization~~ Fonnalization and Modification of the Joint Venture (2012), LA Group Partnership Agreement and Evolving Business Dynamics and Terms (2013-2018), Dispute, Litigation, and State Court Proceedings (2018 and Beyond), Ongoing Annual Ratification and Regulatory Compliance, and SPAVI Parties' Tortious Conduct.

 iv. SPAVI Parties' Supporting Evidence: it is unknown what relationships were disrupted.

 f. Element No. 6: any one of the PCJV USA Parties were harmed.

  i. Disputed Status of Element 6: The parties dispute that this element is satisfied.

  ii. Nature of Dispute: Factual.

  ~~iii.~~ PCJV USA Parties' Supporting Evidence: the following category, which is defined above, captures the key phase and

  iii. supporting evidence: SPAVI Parties' Tortious Conduct~~,~~.

  iv. SPAVI Parties' Supporting Evidence: no proof of this has ever been established, particularly harm caused by any of the responding parties.

 g. Element No~~.~~. 7: SPA Vi's conduct was a substantial factor in causing any one of the PCJV USA Parties' harm.

  i. Disputed Status of Element 7: The parties dispute that this element is satisfied.

  ii. Nature of Dispute: Factual.

  iii. PCJV USA Parties' Supporting Evidence: the following category, which is defined above, captures the key phase and supporting

> **Formatted:** Body text (2)1, Indent: Left: 1.17", Hanging: 0.43", Line spacing: Exactly 24 pt, Outline numbered + Level: 1 + Numbering Style: i, ii, iii, … + Start at: 1 + Alignment: Left + Aligned at: 0" + Indent at: 0", Tab

evidence: SPAVI Parties' Tortious Conduct.

    iv.  ~~SPAVI~~ SPA VI Parties' Supporting Evidence: no proof of this has ever been established, particularly harm caused by any of the responding parties.

**4) Cause of Action No. 5: Negligent Interference with Prospective Economic Advantage.**

  a.  Element No. 1: any one of the PCJV USA Parties were in various economic relations, including with Cinco parties, franchisees, suppliers, and venders that probably would have resulted in a future economic benefit to any one of the PCJV USA Parties.

> **Formatted:** Heading #21, Indent: Left: 0.49", Hanging: 0.25", Outline numbered + Level: 1 + Numbering Style: 1, 2, 3, … + Start at: 3 + Alignment: Left + Aligned at: 0" + Indent at: 0", Keep with next, Keep lines together, Tab stops: 0.74", Left

    i.  Disputed Status of Element 1: The parties dispute that this element is satisfied.

    ii.  Nature of Dispute: Legal and factual.

    iii.  PCJV USA Parties' Supporting ~~Legal~~ Leual Position: The term for PCJV USA, EEC's use of the U.S. Potato Comer trademarks "can be [i]mplied from the nature of the contract and circumstances surrounding it." *See Consolidated Theatres, Inc.* v. *Theatrical Stage Emp. Union, Local 16,* 69 Cal.2d 713, 725 (1968). The "initial effort of the court, in construing contracts of continuing ~~performance~~ perfonnance of forebearance which contain no express tenn of duration, must always be that of implying a tenn of duration commensurate with the intentions of the parties . . . ." *Id.* at 727. Only when "the nature of the contract and the totality of the surrounding circumstances give no suggestion as to any ascertainable term . . . , the obligations

131

under the contract shall be terminable at will by any party upon reasonable notice after such a reasonable time has elapsed." *Id.* Further, it is immaterial that SPAVI had full knowledge of the contracts' ~~terms~~tenns. *See Jenni Rivera Enterprises, ~~EEC~~ LLC* v. *Latin World Entertainment Holdings, Inc.*, 36 Cal. App. 5th 766, 783 (2019). Nor is SPAVIN belief about the legal significance of facts or belief that the parties' agreements are legally binding or has a different legal effect from what it is judicially held to have. *See Little* v. *Amber Hotel Co.,* 202 Cal. App. 4th 280, 302 (2011).

vii.   Plaintiff's Supporting Legal Position: the only relationships SPAVI knew about were with franchisees and certain vendors, the specific relationships at issue here have never been disclosed.

~~i.~~   PCJV USA Parties' Supporting Evidence: documents and testimony including and related to prospective supplier economic relationships and franchisee relations, the following categories, which are defined above, capture the key phases and supporting evidence: Superseding Joint Venture (2008- 2010), Alternative Licensing Arrangements and Ongoing 98

iv.    Ratification (2011-2012), Fonnalization and Modification of the Joint Venture (2012), LA Group Partnership Agreement and Evolving Business Dynamics and ~~Terms~~ Tenns (2013-2018), Dispute, Litigation, and State Court Proceedings (2018 and Beyond), Ongoing Annual Ratification and Regulatory Compliance, and SPAVI Parties' Tortious Conduct.

~~iv.~~v. ~~SPAVEs~~ SPA Vi's Supporting Evidence: testimony of executives.

~~a.~~b.    Element No. 2: SPAVI knew or should have known of these relationships.

132
~~JOINTLY FILED CLAIMS TO BE TRIED~~CASE NO. 2:24-CV-04546-SB(AGRX)
~~175468760.1~~
AMENDED JOINTLY FILED CLAIMS,
COUNTERCLAIMS, THIRD PARTY CLAIMS, AND
AFFIRMATIVE DEFENSES TO BE TRIED

**Formatted:** Indent: Left:  1.13", Hanging:  0.47", Space After:  0 pt, Line spacing: Exactly 24 pt, Outline numbered + Level: 1 + Numbering Style: i, ii, iii, … + Start at: 4 + Alignment: Left + Aligned at:  0" + Indent at:  0", Pattern: Clear, Tab

i.  Disputed Status of Element 2: The parties dispute that this element is satisfied.

ii.  Nature of Dispute: Factual.

iii.  PCJV USA Parties' Supporting Evidence: the following category, which is defined above, captures the key phase and supporting evidence: SPAVI Parties' Tortious Conduct.

iv.  SPAVI Parties' Supporting Evidence: testimony of executives

b.c.    Element No. 3: SPAVI knew or should have known that these relationships would be disrupted if it failed to act with reasonable care.

i.  Disputed Status of Element 3: The parties dispute that this element is satisfied.

ii.  Nature of Dispute: Factual.

iii.  PCJV USA Parties' Supporting Evidence: the following category, which is defined above, captures the key phase and supporting evidence: SPAVI Parties' Tortious Conduct.

iv.  SPAVEs SPA Vi's Supporting Evidence: Testimony of Tan Testimony of T an and Concepcion and Victor and Shaikh and Hussein will all support SPAVI here

c.d.    Element No. , 4: SPAVI failed to act with reasonable care.

99

i.  Disputed Status of Element 4: The parties dispute that this element is satisfied.

ii.   Nature of Dispute: Factual.

iii.  PCJV USA Parties' Supporting Evidence: the following category, which is defined above, captures the key phase and supporting evidence: SPAVI Parties' Tortious Conduct.

iv.  SPAVEs SPAYFs Supporting Evidence: Tan and Concepcion and Victor and Shaikh and Hussein will all support SPAVI here

---

**Formatted:** Indent: Left: 0.72", Hanging: 0.25", Line spacing: Exactly 24 pt, Outline numbered + Level: 1 + Numbering Style: a, b, c, ... + Start at: 2 + Alignment: Left + Aligned at: 0" + Indent at: 0", Pattern: Clear, Tab

**Formatted:** Indent: Left: 0.72", Hanging: 0.25", Space After: 0 pt, Line spacing: Exactly 24 pt, Outline numbered + Level: 1 + Numbering Style: a, b, c, ... + Start at: 2 + Alignment: Left + Aligned at: 0" + Indent at: 0", Pattern: Clear, Tab

d. e.    Element No. 5: SPAVI engaged in wrongful conduct through engaging in conduct to destroy the value of any one of the PCJV USA Parties' relationships by usurping the benefits of those relationships for SPAVEs SPAVFs benefit.

    i.    Disputed Status of Element 5: The parties dispute that this element is satisfied.

    ii.    Nature of Dispute: Factual.

    iii.    PCJV USA Parties' Supporting Evidence: the following categories, which are defined above, capture the key phases and supporting evidence: Superseding Joint Venture (2008- 2010), Alternative Licensing Arrangements and Ongoing Ratification (2011-2012), Formalization and Modification of the Joint Venture (2012), LA Group Partnership Agreement and Evolving Business Dynamics and Terms (2013-2018), Dispute, Litigation, and State Court Proceedings (2018 and Beyond), Ongoing Annual Ratification and Regulatory Compliance, and SPAVI Parties' Tortious Conduct.

    iv.    SPAVI Parties' Supporting Evidence: Tan and Concepcion and Victor and Shaikh and Hussein will all support SPAVI here

e. f. Element No. , 6: the relationships were disrupted.

    i.    Disputed Status of Element 6: The parties dispute that this element is satisfied.

    ii.    Nature of Dispute: Factual.

    iii.    PCJV USA Parties' Supporting Evidence: the following

Formatted: Indent: Left:  0.72", Hanging:  0.26", Line spacing:  Exactly 24 pt, Outline numbered + Level: 1 + Numbering Style: a, b, c, … + Start at: 2 + Alignment: Left + Aligned at:  0" + Indent at:  0", Pattern: Clear, Tab

Formatted: Indent: Left:  0.72", Hanging:  0.26", Line spacing:  Exactly 24 pt, Outline numbered + Level: 1 + Numbering Style: a, b, c, … + Start at: 2 + Alignment: Left + Aligned at:  0" + Indent at:  0", Pattern: Clear, Tab

category, which is defined above, captures the key phase and supporting evidence: SPAVI Parties' Tortious Conduct.

  iv. **SPAVI Parties' Supporting Evidence:** SPAVI is unaware of what relationships were harmed.

 f.g. Element No—. 7: any one of the PCJV USA Parties were harmed.

  i. Disputed Status of Element 7: The parties dispute that this element is satisfied.

  ii. Nature of Dispute: Factual.

  iii. **PCJV USA Parties' Supporting Evidence:** the following category, which is defined above, captures the key phase and supporting evidence: SPAVI Parties' Tortious Conduct.

  i. **SPAVI SPA VI Parties' Supporting Evidence:** no proof of this has ever been established, particularly harm caused by any of the responding parties

 g.h. Element No. 8: SPA Vi's wrongful conduct was a substantial factor in causing Defendants' harm.

  h.i. Disputed Status of Element 8: The parties dispute that this element is satisfied.

  ii. Nature of Dispute: Factual.

  iii. **PCJV USA Parties' Supporting Evidence:** the following category, which is defined above, captures the key phase and supporting evidence: SPAVI Parties' Tortious Conduct.

  iv. **SPA Vi's Supporting Evidence: n**o proof of this has ever been established, particularly harm caused by any of the responding parties.

**5) Cause of Action No. 6: Aiding and Abetting Torts.**

 a. Element No—. 1: SPAVI knew that a breach of a fiduciary duty, breach of the implied covenant of good faith and fair dealing, fraud, or conversion

was going to be committed by Cinco Corporation, its affiliates, or its agents against any one of the PCJV USA Parties.

    i.   Disputed Status of Element 1: The parties dispute that this element is satisfied.

    ii.   Nature of Dispute: Factual.

    iii.   <u>PCJV USA Parties' Supporting Evidence</u>: the following categories, which are defined above, capture the key phases and supporting evidence: Superseding Joint Venture (2008- 2010), Alternative Licensing Arrangements and Ongoing Ratification (2011-2012), ~~Formalization~~ Fonnalization and Modification of the Joint Venture (2012), LA Group Partnership Agreement and Evolving Business Dynamics and Terms (2013-2018), Dispute, Litigation, and State Court Proceedings (2018 and Beyond), Ongoing Annual Ratification and Regulatory Compliance, and SPAVI Parties' Tortious Conduct

    iv.   <u>SPAVEs Supporting Evidence</u>: no torts have occurred so nothing could be aided or abetted.

  b.  <u>Element No. 2</u>: SPAVI gave substantial assistance or encouragement to Cinco Corporation, its affiliates, or its agents.

    v.   Disputed Status of Element 2: The parties dispute that this element is satisfied.

    vi.   Nature of Dispute: Factual.

    ~~vh.~~ <u>PCJV USA Parties' Supporting Evidence</u>: the following

    vii.   category, which is defined above, captures the key phase and supporting evidence: SPAVI Parties' Tortious Conduct~~,~~.

    viii.   ~~SPAYFs~~ SPAVEs <u>Supporting Evidence</u>: no torts have occurred so

    ~~vii.~~ nothing could be aided or abetted.~~.~~

<div style="float:right; border:1px solid #999; font-size:smaller; width:180px;">
<b>Formatted:</b> Body text (2)1, Indent: Left: 1.15", Hanging: 0.44", Line spacing: Exactly 24 pt, Outline numbered + Level: 1 + Numbering Style: i, ii, iii, ... + Start at: 1 + Alignment: Left + Aligned at: 0" + Indent at: 0", Tab
</div>

<div style="float:right; border:1px solid #999; font-size:smaller; width:180px;">
<b>Formatted:</b> Indent: Left: 1.6", Line spacing: Exactly 24 pt, No bullets or numbering, Pattern: Clear
</div>

c. Element No., 3: Cinco Corporation's, its affiliates, or tis agents' conduct was a substantial factor in causing harm to any one of the PCJV USA Parties.

    viii. ix.    Disputed Status of Element 3: The parties dispute that this element is satisfied.

    ix. x. Nature of Dispute: Factual.

    x. xi. PCJV USA Parties' Supporting Evidence: the following category, which is defined above, captures the key phase and supporting evidence: SPAVI Parties' Tortious Conduct.

    xi. xii. SPA Vi's Supporting Evidence: no torts have occurred so nothing could be aided or abetted.

**6) Cause of Action No. 7: First Count of Breach of Fiduciary Duty.**

a. Element No. 1: either Cinco Corporation or SPAVI, as Cinco Corporation's successor-in-interest, was a joint venture partner of PCJV.

    i.    Disputed Status of Element 1: The parties dispute that this element is satisfied.

    ii.    Nature of Dispute: Factual.

    iii.    PCJV USA Parties' Supporting Evidence: the following categories, which are defined above, capture the key phases and supporting evidence: Superseding Joint Venture (2008- 2010), Alternative Licensing Arrangements and Ongoing Ratification (2011-2012), Fonnalization and Modification of the Joint Venture (2012), LA Group Partnership Agreement and Evolving Business Dynamics and Tenns (2013-2018), Dispute, Litigation, and State Court Proceedings (2018 and

CASE NO. 2:24-CV-04546-SB(AGRX)
AMENDED JOINTLY FILED CLAIMS, COUNTERCLAIMS, THIRD PARTY CLAIMS, AND AFFIRMATIVE DEFENSES TO BE TRIED
175468760.1

Formatted: Indent: Left: 1.17", Hanging: 0.43", Line spacing: Exactly 24 pt, Outline numbered + Level: 1 + Numbering Style: i, ii, iii, … + Start at: 1 + Alignment: Left + Aligned at: 0" + Indent at: 0", Pattern: Clear, Tab

Beyond), and Ongoing Annual Ratification and Regulatory Compliance.

    iv.   SPAVI and Cinco's Supporting Evidence: the absence of evidence will suffice. Also, no evidence that SPAVI is a successor in interest or took on this liability

b.  Element No. , 2: Cinco Corporation or SPAVI, as Cinco Chico Corporation's successor-in-interest, acted on PCJV's behalf for purposes of providing PCJV with an exclusive right to use the Potato Comer trademark in the United States.

    i.   Disputed Status of Element 2: The parties dispute that this element is satisfied.

    ii.   Nature of Dispute: Factual

    iii.   PCJV USA Parties' Supporting Evidence: the following categories, which are defined above, capture the key phases and supporting evidence: Superseding Joint Venture (2008- 2010), Alternative Licensing Arrangements and Ongoing Ratification (2011-2012), Formalization Fonnalization and Modification of the Joint Venture (2012), LA Group Partnership Agreement and Evolving Business Dynamics and Terms Tenns (2013-2018), Dispute, Litigation, and State Court Proceedings (2018 and Beyond), Ongoing Annual Ratification and Regulatory Compliance, and SPAVI Parties' Tortious Conduct

    iv.   SPAVI and Cinco's Supporting Evidence: the absence of evidence will suffice. Also, no evidence that SPAVI is a successor in interest or took on this liability

c.  Element No. , 3: Cinco Corporation or SPAVI, as Cinco Corporation's successor-in-interest, failed to act as a reasonably careful partner
c.   would have acted under the same or similar circumstances.

[Formatted: Centered, Right: 0.17", Line spacing: Exactly 24 pt, No bullets or numbering, Pattern: Clear]

    i.   Disputed Status of Element 3: The parties dispute that this element is satisfied.

    ii.   Nature of Dispute: Factual

    iii.   <u>PCJV USA Parties' Supporting Evidence:</u> the following categories, which are defined above, capture the key phases and supporting evidence: Superseding Joint Venture (2008- 2010), Alternative Licensing Arrangements and Ongoing Ratification (2011-2012), Fonnalization and Modification of the Joint Venture (2012), LA Group Partnership Agreement and Evolving Business Dynamics and Terms (2013-2018), Dispute, Litigation, and State Court Proceedings (2018 and Beyond), Ongoing Annual Ratification and Regulatory Compliance, and SPAVI Parties' Tortious Conduct

    iv.   <u>SPAVI and Cinco's Supporting Evidence:</u> the absence of evidence of a duty will suffice. Also, no evidence that SPAVI is a successor in interest or took on this liability

  d.  <u>Element No. 4</u>: any one of the PCJV USA Parties were ~~harmed~~banned.

    i.   Disputed Status of Element 4: The parties dispute that this element is satisfied.

    ii.   Nature of Dispute: factual

    iii.   <u>PCJV USA Parties' Supporting Evidence:</u> the following category, which is defined above, captures the key phase and supporting evidence: SPAVI Parties' Tortious Conduct.

    iv.   <u>SPAVI and Cinco's Supporting Evidence:</u> the absence of evidence of a duty will suffice. Also, no evidence that SPAVI is a successor in interest or took on this liability

  e.  <u>Element No. 5</u>: the conduct of Cinco Corporation or SPAVI, as Cinco Corporation's successor-in-interest, was a substantial factor in causing

CASE NO. 2:24-CV-04546-SB(AGRX)
~~139~~
AMENDED JOINTLY FILED CLAIMS~~,~~ COUNTERCLAIMS, THIRD PARTY CLAIMS, AND AFFIRMATIVE DEFENSES TO BE TRIED
~~175468760.1~~

Formatted: Indent: Left:  1.15", Hanging:  0.44", Line spacing:  Exactly 24 pt, Outline numbered + Level: 1 + Numbering Style: i, ii, iii, ... + Start at: 1 + Alignment: Left + Aligned at:  0" + Indent at:  0", Pattern: Clear, Tab

Formatted: Justified, Indent: Left:  0.74", Hanging:  0.25", Line spacing:  Exactly 24 pt, Outline numbered + Level: 1 + Numbering Style: a, b, c, ... + Start at: 5 + Alignment: Left + Aligned at:  0" + Indent at:  0", Pattern: Clear, Tab

any one of the PCJV USA Parties' harm.

    i.    Disputed Status of Element 5: The parties dispute that this element is satisfied.

    ii.    Nature of Dispute: factual

    iii.    <u>PCJV USA Parties' Supporting Evidence</u>: the following category, which is defined above, captures the key phase and supporting evidence: SPAVI Parties' Tortious Conduct

    iv.    <u>SPAVI and Cinco's Supporting Evidence:</u> the absence of evidence of a duty will suffice. Also, no evidence that SPAVI is a successor in interest or took on this liability

**7)**  **<u>Cause of Action No. 7: Second Count of Breach of Fiduciary Duty.</u>**

    a.  <u>Element No. 1</u>: Cinco Corporation or SPAVI, as Cinco Corporation's successor-in-interest, was a joint venture partner of PCJV.

        i.    Disputed Status of Element 1: The parties dispute that this element is satisfied.

        ii.    <u>Nature of Dispute:</u> factual

        iii.    ~~PCJV USA Parties' Supporting Evidence: [insert]~~

        iii.    <u>PCJV USA Parties' Supporting Evidence: the following categories, which are defined above, capture the key phases and supporting evidence: Superseding Joint Venture (2008- 2010), Alternative Licensing Arrangements and Ongoing Ratification (2011-2012), Fonnalization and Modification of the Joint Venture (2012), LA Group Partnership Agreement and Evolving Business Dynamics and Tenns (2013-2018), Dispute, Litigation, and State Court Proceedings (2018 and Beyond), and Ongoing Annual Ratification and Regulatory</u>

Compliance.

    iv.   <u>SPAVI and Cinco's Supporting Evidence:</u> the absence of evidence of a duty will suffice. Also, no evidence that SPAVI is a successor in interest or took on this liability

b. <u>Element No. , 2</u>: Cinco Corporation or SPAVI, as Cinco Corporation's successor-in-interest, knowingly acted against interests of PCJV and PCJV's other joint venture partners in connection with providing PCJV with an exclusive right to use the Potato Corner trademark in the United States.

    i.   Disputed Status of Element 2: The parties dispute that this element is satisfied.

    ii.   Nature of Dispute: Factual

    iii.   <u>PCJV USA Parties' Supporting Evidence:</u> the following categories, which are defined above, capture the key phases and supporting evidence: Superseding Joint Venture (2008- 2010), Alternative Licensing Arrangements and Ongoing Ratification (2011-2012), Formalization Fonnalization and Modification of the Joint Venture (2012), LA Group Partnership Agreement and Evolving Business Dynamics and Terms Tenns (2013-2018), Dispute, Litigation, and State Court Proceedings (2018 and Beyond), Ongoing Annual Ratification and Regulatory Compliance, and SPAVI Parties' Tortious Conduct

Dispute, Litigation, and State Court Proceedings (2018 and Beyond), Ongoing Annual Ratification and Regulatory Compliance, and SPAVI Parties' Tortious Conduct

    iv.   <u>SPAVI and Cinco's Supporting Evidence:</u> the absence of

    iv.   evidence of a duty will suffice. Also, no evidence that SPAVI is a successor in interest or took on this liability

**Formatted:** Body text (2)1, Indent: Left: 1.17", Hanging: 0.43", Line spacing: Exactly 24 pt, Outline numbered + Level: 1 + Numbering Style: i, ii, iii, … + Start at: 1 + Alignment: Left + Aligned at: 0" + Indent at: 0", Tab

c. Element No. , 3: any one of the PCJV USA Parties did not give informed consent to the conduct of Cinco Corporation or SPAVI, as

c. Cinco Corporation's successor-in-interest.

> **Formatted:** Indent: Left: 0.99", Line spacing: Exactly 24 pt, No bullets or numbering, Pattern: Clear

i. Disputed Status of Element 3: The parties dispute that this element is satisfied.

ii. Nature of Dispute: Factual

iii. PCJV USA Parties' Supporting Evidence: the following categories, which are defined above, capture the key phases and supporting evidence: Superseding Joint Venture (2008- 2010), Alternative Licensing Arrangements and Ongoing Ratification (2011-2012), Formalization Fonnalization and Modification of the Joint Venture (2012), LA Group Partnership Agreement and Evolving Business Dynamics and Terms (2013-2018), Dispute, Litigation, and State Court Proceedings (2018 and Beyond), Ongoing Annual Ratification and Regulatory Compliance, and SPAVI Parties' Tortious Conduct.

iv. SPAVI and Cinco's Supporting Evidence: the absence of evidence of a duty will suffice. Also, no evidence that SPAVI is a successor in interest or took on this liability

d. Element No. 4: any one of the PCJV USA Parties were harmed banned,

i. Disputed Status of Element 4: The parties dispute that this element is satisfied.

ii. Nature of Dispute: Factual.

iii. PCJV USA Parties' Supporting Evidence: the following category, which is defined above, captures the key phase and supporting evidence: SPAVI Parties' Tortious Conduct.

iv. SPAVI and Cinco's Supporting Evidence: the absence of evidence of a duty will suffice. Also, no evidence that SPAVI is a

successor in interest or took on this liability

   e. <u>Element No. 5</u>: the conduct of Cinco Corporation or SPAVI, as Cinco Corporation's successor-in-interest, was a substantial factor in causing any one of the PCJV USA Parties' harm.

      i. Disputed Status of Element 5: The parties dispute that this element is satisfied.

      ii. Nature of Dispute: factual

      iii. <u>PCJV USA Parties' Supporting Evidence: th</u>e following category, which is defined above, captures the key phase and supporting evidence: SPAVI Parties' Tortious Conduct

      iv. <u>SPAVI and Cinco's Supporting Evidence:</u> the absence of evidence of a duty will suffice. Also, no evidence that SPAVI is a successor in interest or took on this liability

**8) <u>Cause of Action No. 7̶8: Breach of Contract.</u>**

   a. Element No. 1: there is a contract between PCJV and Cinco Corporation or SPAVI, as Cinco Corporation's successor-in-interest.

      i. Disputed Status of Element 1: The parties dispute this element is satisfied.

      ii. Nature of Dispute: factual and legal

      iii. <u>PCJV USA Parties' Position Statement:</u> The term tenn for PCJV USA, EEC's use of the U.S. Potato Comer trademarks "can be [i]mplied from the nature of the contract and circumstances surrounding it." *See Consolidated Theatres, Inc.* v. *Theatrical Stage Emp. Union, Local 16,* 69 Cal.2d 713, 725 (1968). The "initial effort of the court, in construing contracts of continuing performance of forebearance which contain no express term tenn of duration, must always be that of implying a term tenn of duration commensurate with the

143
JOINTLY FILED CLAIMS TO BE TRIED CASE NO. 2:24-CV-04546-SB(AGRX)
175468760.1
AMENDED JOINTLY FILED CLAIMS,
COUNTERCLAIMS, THIRD PARTY CLAIMS, AND
AFFIRMATIVE DEFENSES TO BE TRIED

intentions of the parties . . . ." *Id.* at 727. Only when "the nature of the contract and the totality of the surrounding circumstances give no suggestion as to any ascertainable term . . ., the obligations under the contract shall be terminable at will by any party upon reasonable notice after such a reasonable time has elapsed." *Id.* Further, it is immaterial that SPAVI had full knowledge of the contracts' terms. *See Jenni See Jermi Rivera Enterprises, ETC LLC* v. *Latin World Entertainment Holdings, Inc.,* 36 Cal. App. 5th 766, 783 (2019). Nor is SPAVFs belief about the legal significance of facts or belief that the parties' agreements are legally binding or has a different legal effect from what it is judicially held to have. *See Little* v. *Amber Hotel Co.,* 202 Cal. App. 4th 280, 302 (2011)

iv.    Plaintiffs Plaintiff's Position Statement: as drafted it is impossible to know what the specific contract is that is at issue here. It has never been disclosed, and still undisclosed. Rather than jettison the claim or actually identify the contract, instead, Defendants' solution is to fudge with obtuse language in the jury instructions, designed to confuse everyone, including the jury: "there was a contract between any one of the PCJV Plaintiffs and any one of the Cinco parties." Indeed, the only contract that Cinco has been a party to with any of these Counterclaimants is the Settlement Agreement of the Prior Governance Action. There is no other written agreement between PCJV and Cinco, or between any other Counterclaimant and Cinco. It is possible that

iii. Counterclaimants are seeking to allege that Cinco is an alter ego of Potato Comer International or others, however,

> **Formatted:** Indent: Left:  1.72", Line spacing:  Exactly 24 pt,  No bullets or numbering, Pattern: Clear

PCJV and the other counterclaimants already alleged this ——  alt3er ego status of Cinco — and after a negotiated settlement, dismissed this claim with prejudice. They may not raise it now. *See, e.g., Torrey Pines Bank* v. *Superior ~~Cl~~Ct.,* 216 Cal. App. 3d 813, 820 (Ct. App. 1989) (holding that ""a dismissal with prejudice is the maiden name for a common law retraxit," and "[a] retraxit is equivalent to a judgment on the merits and as such bars further litigation on the same subject matter between the parties."); *Datta* v. *Staab,* 173 Cal. App. 2d 613, 620—21 (1959) ("The effect of a dismissal with prejudice is quite different, however, when it is executed and filed in return for a consideration moving from the defendant. Such a dismissal operates as a complete bar to any future action and has the same legal effect as a common law petraxit.").

~~iv.~~v. Defendants' Supporting Evidence: the following categories, which are defined above, capture the key phases and supporting evidence: Superseding Joint Venture (2008- 2010), Alternative Licensing Arrangements and Ongoing Ratification (2011-2012), Formalization and Modification of the Joint Venture (2012), LA Group Partnership Agreement and Evolving Business Dynamics and Tenns (2013-2018), Dispute, Litigation, and State Court Proceedings (2018 and Beyond), and Ongoing Annual Ratification and Regulatory Compliance.

~~v.~~vi.  SPAVI Parties' Supporting Evidence: Each of the agreements included in the trial exhibits and testimony of Mr. Magsaysay, Mr. Koren, and Ms. Victor - all of which will establish that none of the Counterclaimants - PCJV, PCIT, LA Group EEC, GK Capital, NKM, or Koren have any contract to

145
CASE NO. 2:24-CV-04546-SB(AGRX)
~~145~~
AMENDED JOINTLY FILED CLAIMS,
COUNTERCLAIMS, THIRD PARTY CLAIMS, AND
AFFIRMATIVE DEFENSES TO BE TRIED
~~175468760.1~~

which Cinco has privity; the settlement agreement (Trial Exhibit 1172) and evidence of the dismissals with prejudice, as well as the pleadings in the prior case establishing what has been dismissed, and subject to retraxit.

b. <u>Element No. 2:</u> PCJV USA Parties did all or substantially all of the things required under the contract, or were excused from so performing:

   i. Disputed Stahis of Element 2: The parties dispute this element is satisfied.

   ii. Nature of Dispute: factual and legal.

   iii. hi. <u>PCJV USA Parties' Position Statement:</u> Plaintiff's position statement does not address a legal issue concerning this element. To the extent Plaintiffs position statement addresses element 1, PCJV USA Parties incorporate their respective response here

   iv. <u>Plaintiffs Position Statement:</u> as drafted it is impossible to know what the specific contract is at issue here. It has never been disclosed, and still undisclosed. So, when this element in the instructions says, "the contract," whereas the prior element refers to some unidentified contract, as a matter of law, yes, this element is disputed. To the extent any actual

iv.   contract ever existed between Cinco and these parties, the only one that is possible is the Settlement Agreement and corresponding agreement selling PCJV equity to GKK Capital. (Trial Exhibit 1176.) Because Cinco has never been a party to any other contract with any of the Counterclaim Defendants, that is the only one that could possibly be at issue, but Defendants refuse to acknowledge this. It is possible that Counterclaimants are seeking to allege that Cinco is an alter ego of Potato Comer International or others, however, PCJV and the other counterclaimants already alleged this — alter ego status of Cinco — and after a negotiated settlement, dismissed this claim with prejudice. They may not raise it now. *See, e.g., Torrey Pines Bank* v. *Superior Ct.,* 216 Cal. App. 3d 813, 820 (Ct. App. 1989) (holding that "a dismissal with prejudice is the maiden name fir a common law retraxit," and "[a] retraxit is equivalent to a judgment on the merits and as such bars further litigation on the same subject matter between the parties."); *Datta* v. *Staab,* 173 Cal. App. 2d 613, 620—21 (1959) ("The effect of a dismissal with prejudice is quite different, however, when it is executed and filed in return for a consideration moving from the defendant. Such a dismissal operates as a complete bar to any future action and has the same legal effect as a common law petraxit.") (internal

v.   PCJV USA Parties' Supporting Evidence: the following categories, which are defined above, capture the key phases and supporting evidence: Superseding Joint Venture (2008-2010), Alternative Licensing Arrangements and Ongoing

Ratification (2011-2012), Formalization and Modification of the Joint Venture (2012), LA Group Partnership Agreement and Evolving Business Dynamics and Terms (2013-2018), Dispute, Litigation, and State Court Proceedings (2018 and Beyond), and Ongoing Annual Ratification and Regulatory Compliance. 2010), Alternative Licensing Arrangements and Ongoing Ratification (2011-2012), Formalization and Modification of the Joint Venture (2012), LA Group Partnership Agreement and Evolving Business Dynamics and Tenns (2013-2018), Dispute, Litigation, and State Court Proceedings (2018 and Beyond), and Ongoing Annual Ratification and Regulatory Compliance.

vi. <u>SPAVI Parties' Supporting Evidence:</u> Each of the agreements included in the trial exhibits and testimony of Mr. Magsaysay, Mr. Koren, and Ms. Victor - all of which will establish that none of the Counterclaimants - PCJV, PCIT, LA Group EEC, GK Capital, NKM, or Koren have any contract to which Cinco has privity; the settlement agreement (Trial Exhibit 1172) and evidence of the dismissals with prejudice, as well as the pleadings in the prior case establishing what has been dismissed, and subject to retraxit..

c. Element No. 3: Cinco Corporation or SPAVI, as Cinco Corporation's successor-in-interest, breached the contract

  i. Disputed ~~Stahis~~ Status of Element 3: The parties dispute this element is satisfied.

  ii. Nature of Dispute: factual and legal.

  iii. <u>PCJV USA Parties' Position Statement:</u> SPAVI intended to cause the breach of the above listed contracts by: (1) allegedly

148

acquiring IP rights from Cinco (which SPAVI claims include US IP rights), without LA

Group's/Koren's/PCJV's prior written consent in violation of the JVA/AJVA/LLC Agreement; (2) failing to allegedly acquire the associated obligations and burdens under those agreements to, for example, acknowledge our use and termination rights, make best efforts to cooperate for the success of PC JV, to perform perfonn further acts (such as execute and deliver all required documents), if necessary, to provide us use rights, or to, at minimum, acknowledge that PCJV maintains a 50-year license or at least may continue to use for as long as necessary under the franchise agreements it was authorized to sign with franchisees in violation of the JVA/AJVA/LLC Agreement/license agreements/MSA (and associated written, oral, implied-in-fact agreements/modifications, such as meeting minutes, written communications of the PCJV members/managers, FDDs);

(3) refusing to acknowledge PCJV's right to reverse engineer the powders/spices in violation of the PCJV board meeting minutes; (4) refusing to acknowledge PCJV's affiliated Koren stores' right not to pay royalties in accordance with the JVA/AJVA/LLC Agreement; (5) refusing to acknowledge LA Group's and Cinco Group/PCI Group's mutual waiver of royalties as to all other initial/franchise fees or other royalty income actually collected or to be collected by PCJV in accordance with the JVA/AJVA/LLC Agreement/FDDs; (6) refusing to honor the settlement struck with Cinco whereby Koren/GK acquired all interests and attached interests (despite

representing that it would); and (7) causing certain PCJV

franchisees to breach their franchise

150
JOINTLY FILED CLAIMS TO BE TRIED CASE NO. 2:24-CV-04546-SB(AGRX)
175468760.1
AMENDED JOINTLY FILED CLAIMS,
COUNTERCLAIMS, THIRD PARTY CLAIMS, AND
AFFIRMATIVE DEFENSES TO BE TRIED

agreements and associate themselves with ~~SPA VI~~SPAVI.

iv.    Plaintiffs Position Statement: The only contracts that have been identified as being "breached" are the unsigned licensee agreement and the AJVA. Neither document binds Cinco - indeed, that the AJVA constitutes an agreement to agree and not a contract has already been adjudicated and decided as law of the case. It is impossible to know what the specific contract is at issue here. To the extent any actual contract ever existed between Cinco and these parties, the only one that is possible is the Settlement Agreement and corresponding agreement selling PCJV equity to GKK Capital. (Trial Exhibit 1176.) Because Cinco has never been a party to any other contract with any of the Counterclaim Defendants, that is the only one that could possibly be at issue, but Defendants refuse to acknowledge this.

v.    PCJV USA Parties' Supporting Evidence: the following categories, which are defined above, capture the key phases and supporting evidence: Superseding Joint Venture (2008- 2010), Alternative Licensing Arrangements and Ongoing Ratification (2011-2012), Formalization and Modification of the Joint Venture (2012), LA Group Partnership Agreement and Evolving Business Dynamics and ~~Terms~~ Tenns (2013-2018), Dispute, Litigation, and State Court Proceedings (2018 and Beyond), Ongoing Annual Ratification and Regulatory Compliance, and SPAVI Parties' Tortious Conduct.

~~vi.~~    SPAVI Parties' Supporting Evidence: The absence of evidence that Cinco was a party to, or breached, any contract with any of the ~~Counterclaimants~~ Connterclaimants is the supporting

vi.    ~~115~~evidence.

Formatted: Body text (2)1, Indent: Left:  1.29", Hanging:  0.43", Line spacing:  Exactly 24 pt, Outline numbered + Level: 1 + Numbering Style: i, ii, iii, ... + Start at: 1 + Alignment: Left + Aligned at:  0" + Indent at:  0", Tab

ID #:10861  d.   Element No. 4: PCJV USA Parties were harmed.

    i.   Disputed Status Stahis of Element 4: The parties dispute this element is satisfied.

    ii.   Nature of Dispute: factual and legal.

    hi. Defendants' Position Statement: Plaintiff's position

    i.   Defendants' Position Statement: Plaintiff's position statement does not address a legal issue concerning this element. To the extent Plaintiffs position statement addresses element 1, PCJV USA Parties incorporate their respective response here.

    ii. iv.  Plaintiffs Position Statement: Cinco Chico breached no contract. The only contracts that have been identified as being "breached" are the unsigned licensee agreement and the AJVA. Neither document binds Cinco - indeed, that the AJVA constitutes an agreement to agree and not a contract has already been adjudicated and decided as law of the case. It is impossible to know what the specific contract is at issue here. To the extent any actual contract ever existed between Cinco and these parties, the only one that is possible is the Settlement Agreement and corresponding agreement selling PCJV equity to GKK Capital. (Trial Exhibit 1176.) Because Cinco has never been a party to any other contract with any of the Counterclaim Defendants, that is the only one that could possibly be at issue, but Defendants refuse to acknowledge this.

    v.   Defendants' Supporting Evidence: the following category,

    iii.   which is defined above, captures the key phase and supporting evidence: SPAVI Parties' Tortious Conduct.

: 24-CV-04546-S B-AG R

2:24-cv-04546-SB-AGR Document 258 263-1 Filed 08/12/25 08/14/25 Page 101 of 164 125 of 173 Page ID#:11263

ID #:10862    iv. vi. SPAVI Parties' Supporting Evidence: The absence of evidence that Cinco was a party to, or breached, any contract with any of the Counterclaimants is the supporting evidence, as there is no way any of the Counterclaimants could have been harmed.

**9) Cause of Action No. 9: Breach of Covenant oof Good Faith and Fair Dealing.**

e. Element No. 1: there is a contract between a Counterclaimant and Cinco Corporation / that SPAVI is a successor in interest to a contract with Cinco.

   i. Disputed Status of Element 1: The parties dispute this element is satisfied.

   ii. Nature of Dispute: factual and legal

   iii. PCJV USA Parties' Position Statement: The term for PCJV USA, EEC's use of the U.S. Potato Comer trademarks "can be [i]mplied from the nature of the contract and circumstances surrounding it." *See Consolidated Theatres, Inc.* v. *Theatrical Stage Emp. Union, Local 16,* 69 Cal.2d 713, 725 (1968). The "initial effort of the court, in construing contracts of continuing performance of forebearance which contain no express ~~term~~ tenn of duration, must always be that of implying a ~~term~~ tenn of duration commensurate with the intentions of the parties . . . ." *Id.* at 727. Only when "the nature of the contract and the totality of the surrounding circumstances give no suggestion as to any ascertainable ~~term . . ., the obligations under the contract shall be terminable at will by any party upon reasonable notice after such a reasonable time has elapsed." *Id.* Further, it is~~

Formatted: Indent: Left: 1.29", Hanging: 0.43", Line spacing: Exactly 23.75 pt, Outline numbered + Level: 1 + Numbering Style: i, ii, iii, … + Start at: 4 + Alignment: Left + Aligned at: 0" + Indent at: 0", Pattern: Clear, Tab

2:24-cv-04546-SB-AGR Document 258 263-1 Filed 08/12/25 08/14/25 Page 102 of 164 126 of 173

Page ID#:11264

ID #:10863    immaterial that SPAVI had full knowledge of the contracts' terms. *See Jermi Rivera Enterprises, LLC* v. *Latin World Entertainment Holdings, Inc.,* 36 Cal. App. 5th 766, 783 (2019). Nor is SPAVI's term . . ., the obligations under the contract shall be terminable at will by any party upon reasonable notice after such a reasonable time has elapsed" *Id.* Further, it is immaterial that SPAVI had full knowledge of the contracts' terms. *See Jermi Rivera Enterprises, LLC* v. *Latin World Entertainment Holdings, Inc.,* 36 Cal. App. 5th 766, 783 (2019). Nor is SPAVI IN belief about the legal significance of facts or belief that the parties' agreements are legally binding or has a different legal effect from what it is judicially held to have. *See Little* v. *Amber Hotel Co.,* 202 Cal. App. 4th 280, 302 (2011).

iv.    <u>Plaintiff's Position Statement:</u> Moreover, and again, as drafted it is impossible to know what the specific contract is that is at issue here. It has never been disclosed, and still undisclosed. Rather than jettison the claim or actually identify the contract, instead, Defendants' solution is to fudge with obtuse language in the jury instructions, designed to confuse everyone, including the jury: "there was a contract between any one of the PCJV Plaintiffs and any one of the Cinco parties." Indeed, the only contract that Cinco has been a party to with any of these Counterclaimants is the Settlement Agreement of the Prior Governance Action. There is no other written agreement between PCJV and Cinco, or between any other Counterclaimant and Cinco. It is possible that Counterclaimants are seeking to allege that Cinco is an alter ego of Potato Corner International or others, however, PCJV and the other

counterclaimants already alleged this — alt3er ego status of Cinco — and after a negotiated settlement, dismissed this claim with prejudice. They may not raise it now. *See, e.g., Torrey Pines Bank* v. *Superior Ct.,* 216 Cal. App. 3d 813, 820 (Ct. App. 1989) (holding that ""a dismissal with prejudice is the maiden name for a common law retraxit," and "[a] retrait is equivalent to a judgment on the merits and as such bars further litigation on the same subject matter between the parties."); *Datta* v. *Staab,* 173 Cal. App. 2d 613, 620—21 (1959) ("The effect of a dismissal with prejudice is quite different, however, when it is executed and filed in return for a consideration moving from the defendant. Such a dismissal operates as a complete bar to any future action and has the same legal effect as a common law petraxit."). Second, as for SPA VI SPAVI, it purchased intellectual property, and did not assume any contracts binding Cinco. Thus, the claim that SPAVI is bound to good faith and fair dealing as a "successor in interest has no basis" and can be resolved a matter of law,, given that this simply requires interpretation of contracts binding Cinco (of which there are no one) to which SPAVI assumed (also, null set). Put simply - S{PAVI is not a successor in interest to any contract of Cinco, and by purchasing the intellectual property of Cinco, it was only bound to those contracts involving the use and licensing of the brand - none of which are at issue in this case.

v. PCJV USA Parties' Supporting Evidence: the following categories, which are defined above, capture the key phases and supporting evidence: Superseding Joint Venture (2008- 2010), Alternative Licensing Arrangements and Ongoing Ratification

155
CASE NO. 2:24-CV-04546-SB(AGRX)
155
AMENDED JOINTLY FILED CLAIMS-,
COUNTERCLAIMS, THIRD PARTY CLAIMS, AND
AFFIRMATIVE DEFENSES TO BE TRIED
175468760.1

(2011-2012), Formalization and Modification of the Joint Venture (2012), LA Group Partnership Agreement and Evolving Business Dynamics and ~~Terms~~ Tenns (2013-2018),

v.     Dispute, Litigation, and State Court Proceedings (2018 and Beyond), and Ongoing Annual Ratification and Regulatory Compliance.

vi.    SPAVI Parties' Supporting Evidence: Each of the agreements included in the trial exhibits and testimony of Mr. Magsaysay, Mr. Koren, and Ms. Victor - all of which will establish that none of the Counterclaimants - PCJV, PCIT, LA Group EEC, GK Capital, NKM, or Koren have any contract to which Cinco has privity; the settlement agreement (Trial Exhibit 1172) and evidence of the dismissals with prejudice, as well as the pleadings in the prior case establishing what has been dismissed, and subject to retraxit.

f.  Element No. 2: The Counterclaimant that is a party to the contract did all or substantially all of the things required under the contract, or were excused from so performing:

i.    Disputed ~~Stahis~~ Status of Element 2: The parties dispute this element is satisfied.

ii.    Nature of Dispute: factual and legal.

iii.    PCJV USA Parties' Position Statement: Plaintiff's position statement does not address a legal issue concerning this element. To the extent Plaintiffs position statement

addresses element 1, PCJV USA Parties incorporate their respective response here.

i.   Plaintiffs Position Statement: as drafted it is impossible to know what the specific contract is at issue here. It has never been disclosed, and still undisclosed. So, when this element in the instructions says, "the contract," whereas the prior element refers to some unidentified contract, as a matter of law, yes, this element is disputed. To the extent any actual contract ever existed between Cinco and these parties, the only one that is possible is the Settlement Agreement and corresponding agreement selling PCJV equity to GKK Capital. (Trial Exhibit 1176.) Because Cinco has never been a party to any other contract with any of the Counterclaim Defendants, that is the only one that could possibly be at issue, but Defendants refuse to acknowledge this. It is possible that Counterclaimants are seeking to allege that Cinco is an alter ego of Potato Comer International or others, however, PCJV and the other counterclaimants already alleged this — alter ego status of Cinco — and after a negotiated settlement, dismissed this claim with prejudice. They may not raise it now. *See, e.g., Torrey Pines Bank* v. *Superior Ct.,* 216 Cal. App. 3d 813, 820 (Ct. App. 1989) (holding that "a dismissal with prejudice is the maiden name for a common law retraxit," and "[a] retraxit is equivalent to a judgment on the merits and as such bars further litigation on the same subject matter between the parties."); *Datta* v. *Staab,* 173 Cal. App. 2d 613, 620—21 (1959) ("The effect of a dismissal with prejudice is quite different, however, when it is executed and filed in return for a consideration moving from the

defendant. Such a dismissal operates as a complete bar to any future action and has the same legal effect as a common law petraxit."). Second, as for SPAVI, it purchased intellectual property, and did not assume any contracts binding Cinco. Thus, the claim that SPAVI is bound to good

iv.  faith and fair dealing as a "successor in interest has no basis" and can be resolved a matter of law,, given that this simply requires interpretation of contracts binding Cinco (of which there are no one) to which SPAVI assumed (also, null set). Put simply - S{PAVI is not a successor in interest to any contract of Cinco, and by purchasing the intellectual property of Cinco, it was only bound to those contracts involving the use and licensing of the brand - none of which are at issue in this case.

v.  PCJV USA Parties' Supporting Evidence: the following categories, which are defined above, capture the key phases and supporting evidence: Superseding Joint Venture (2008- 2010), Alternative Licensing Arrangements and Ongoing Ratification (2011-2012), Formalization and Modification of the Joint Venture (2012), LA Group Partnership Agreement and Evolving Business Dynamics and Terms Tenns (2013-2018), Dispute, Litigation, and State Court Proceedings (2018 and Beyond), Ongoing Annual Ratification and Regulatory Compliance, and SPAVI Parties' Tortious Conduct.

vi.  SPAVI Parties' Supporting Evidence: Each of the agreements included in the trial exhibits and testimony of Mr. Magsaysay, Mr. Koren, and Ms. Victor - all of which will establish that none of the Counterclaimants - PCJV, PCIT, LA Group EEC LLC, GK Capital, NKM, or Koren have any contract to which Cinco

2:24-cv-04546-SB-AGR Document 258 263-1 Filed 08/12/25 08/14/25 Page 107 of 164 131 of 173 Page ID#:11269 ID #:10868

has privity; the settlement agreement (Trial Exhibit 1172) and evidence of the dismissals with prejudice, as well as the pleadings in the prior case establishing what has been dismissed, and subject

:24-cv-04546-SB-AGR Document 258 Filed 08/12/25 Page 123 of 164 Page

vi.    ID#: 10884 to retraxit.

g.  Element No. 3: Cinco or SPAVI engaged in conduct that breached the duty of good faith and fair dealing.

i.  Disputed Stahis Status of Element 3: The parties dispute this element is satisfied.

ii.  Nature of Dispute: factual and legal.

iii.  PCJV USA Parties' Position Statement: Plaintiff's position statement does not address a legal issue concerning this element. To the extent Plaintiffs position statement addresses element 1, PCJV USA Parties incorporate their respective response here.

iv.    Plaintiffs Plaintiff s Position Statement: The only contracts that have been identified as being "breached" are the unsigned licensee agreement and the AJVA. Neither document binds Cinco - indeed, that the AJVA constitutes an agreement to agree and not a contract has already been adjudicated and decided as law of the case. It is impossible to know what the specific contract is at issue here. To the extent any actual contract ever existed between Cinco and these parties, the only one

**Formatted:** Body text (2)1, Indent: Left: 1.31", Hanging: 0.42", Line spacing: Exactly 24 pt, Outline numbered + Level: 1 + Numbering Style: i, ii, iii, … + Start at: 4 + Alignment: Left + Aligned at: 0" + Indent at: 0", Tab

that is possible is the Settlement Agreement and corresponding agreement selling PCJV equity to GKK Capital. (Trial Exhibit 1176.) Because Cinco has never been a party to any other contract with any of the Counterclaim Defendants, that is the only one that could possibly be at issue, but Defendants refuse to acknowledge this. In the absence of a contract binding Cinco, it is possible that Counterclaimants are seeking to allege that Cinco is an alter ego of Potato Comer International or others, however,

PCJV and the other counterclaimants already alleged this —— alter ego status of Cinco — and after a negotiated settlement, dismissed this claim with prejudice. They may not raise it now. *See, e.g., Torrey Pines Bank v. Superior Ct.,* 216 Cal. App. 3d 813, 820 (Ct. App. 1989) (holding that ""a dismissal with prejudice is the maiden name for a common law retraxit," and "[a] retraxit is equivalent to a judgment on the merits and as such bars further litigation on the same subject matter between the parties."); *Datta* v. *Staab,* 173 Cal. App. 2d 613, 620—21 (1959) ("The effect of a dismissal with prejudice is quite different, however, when it is executed and filed in return for a consideration moving from the defendant. Such a dismissal operates as a complete bar to any future action and has the same legal effect as a common law petraxit."). Second, as for SPAVI, it purchased intellectual property, and did not assume any contracts binding Cinco. Thus, the claim that SPAVI is bound to good faith and fair dealing as a "successor in interest has no basis" and can be resolved a matter of law,, given that this simply requires interpretation of contracts binding Cinco (of

160
CASE NO. 2:24-CV-04546-SB(AGRX)
160
AMENDED JOINTLY FILED CLAIMS,
COUNTERCLAIMS, THIRD PARTY CLAIMS, AND
AFFIRMATIVE DEFENSES TO BE TRIED
175468760.1

Formatted: Indent: Left: 1.25", Hanging: 0.47", Line spacing: Exactly 24 pt, No bullets or numbering, Pattern: Clear, Tab stops: 1.71", Left

which there are no one) to which SPAVI assumed (also, null set). Put simply - S{PAVI is not a successor in interest to any contract of Cinco, and by purchasing the intellectual property of Cinco, it was only bound to those contracts involving the use and licensing of the brand- none of which are at issue in this case.

v.    PCJV USA Parties' Supporting Evidence: the following

———  category, which is defined above, captures the key phase and

v.    supporting evidence: SPAVI Parties' Tortious Conduct,.

vi.   SPAVI Parties' Supporting Evidence: The absence of evidence that Cinco was a party to, or breached, any contract with any of the Counterclaimants is the supporting evidence. Plaintiff's Position Statement: In addition to the absence of any contract binding Cinco or SPAVI - thus there could be no corresponding breach of the covenant of good faith and fair dealing - the evidence of Keren's behavior during the license negotiations, particularly with SPAVI, lead to the conclusion that it was he that caused the negotiations to fail, not anyone else. Testimony of SPAVI (Gregorio and Tan) as well as their correspondence with Koren (Trial Exhibits 20-31) will establish this. The only contracts that have been identified as being "breached" are the unsigned licensee agreement and the AJVA. Neither document binds Cinco - indeed, that the AJVA constitutes an agreement to agree and not a contract has already been adjudicated and decided as law of the case. It is impossible to know what the specific contract is at issue here. To the extent any actual contract ever existed between Cinco and these parties, the only one that is possible is the Settlement Agreement and

> Formatted: Body text (2)1, Indent: Left: 1.31", Hanging: 0.42", Line spacing: Exactly 24 pt, Outline numbered + Level: 1 + Numbering Style: i, ii, iii, … + Start at: 1 + Alignment: Left + Aligned at: 0" + Indent at: 0", Tab

161
CASE NO. 2:24-CV-04546-SB(AGRX)
161
AMENDED JOINTLY FILED CLAIMS-,
COUNTERCLAIMS, THIRD PARTY CLAIMS, AND
AFFIRMATIVE DEFENSES TO BE TRIED
175468760.1

corresponding agreement selling PCJV equity to GKK Capital. (Trial Exhibit 1176.) I acknowledge has never been a party to any other contract with any of the Counterclaim Defendants, which is the only one that could possibly be at issue, but Defendants refuse to acknowledge this.

h. <u>Element No. 4:</u> Counterclaimants were harmed.

125

    i.   Disputed ~~Status~~ Stahis of Element 4: The parties dispute this element is satisfied.

    ii.   <u>Nature of Dispute:</u> legal.

    iii.   <u>PCJV Usa Parties' Position Statement</u>: Plaintiff's position statement does not address a legal issue concerning this element. To the extent Plaintiffs position statement addresses element 1, PCJV USA Parties incorporate their respective response here.

    iv.   <u>Plaintiffs Position Statement:</u> Cinco breached no contract. The only contracts that have been identified as being "breached" are the unsigned licensee agreement and the AJVA. Neither document binds Cinco - indeed, that the AJVA constitutes an agreement to agree and not a contract has already been adjudicated and decided as law of the case. It is impossible to know what the specific contract is at issue here. To the extent any actual contract ever existed between

Cinco and these parties, the only one that is possible is the Settlement Agreement and corresponding agreement selling PCJV equity to GKK Capital. (Trial Exhibit 1176.) Because Cinco has never been a party to any other contract with any of the Counterclaim Defendants, that is the only one that could possibly be at issue, but Defendants refuse to acknowledge this.

**i. Cause of Action No. 11: Quantum Meruit.**

i. Element No. 1: any of the SPAVI Parties requested, by words or conduct, that any one of the PCJV USA Parties perform perfonn services for the benefit of any of the SPAVI Parties,.

    i. Disputed Status of Element 1: The parties dispute that this element is satisfied.

    ii. Nature of Dispute: Factual

    iii. PCJV USA Parties' Supporting Evidence: the following categories, which are defined above, capture the key phases and supporting evidence: Superseding Joint Venture (2008-2010), Alternative Licensing Arrangements and Ongoing Ratification (2011-2012), Formalization and Modification of the Joint Venture (2012), LA Group Partnership Agreement and Evolving Business Dynamics and Terms Tenns (2013-2018), Dispute, Litigation, and State Court Proceedings (2018 and Beyond), and Ongoing Annual Ratification and Regulatory Compliance.

    iv. SPAVI and Cinco's Supporting Evidence: the lack of evidence of this will suffice. Testimony of Gregorio will confirm as will testimony of Koren.

ii. Element No. 2: any one of the PCJV USA Parties performed the services as requested.

163
CASE NO. 2:24-CV-04546-SB(AGRX)
163
AMENDED JOINTLY FILED CLAIMS,
COUNTERCLAIMS, THIRD PARTY CLAIMS, AND
AFFIRMATIVE DEFENSES TO BE TRIED
175468760.1

    i. Disputed Stahis of Element 2: The parties dispute that this element is satisfied.

    ii. Nature of Dispute: factual

    iii. <u>PCJV USA Parties' Supporting Evidence:</u> the following categories, which are defined above, capture the key phases and supporting evidence: Superseding Joint Venture (2008-2010), Alternative Licensing Arrangements and Ongoing Ratification (2011-2012), Formalization and Modification of the Joint Venture (2012), LA Group Partnership Agreement and Evolving <u>Business Dynamics and Terms (2013-2018), Dispute, Litigation, and State Court Proceedings (2018 and Beyond), Ongoing Annual Ratification and Regulatory Compliance, and SPAVI Parties' Tortious Conduct.</u> ~~Business Dynamics and Tenns (2013-2018), Dispute, Litigation, and State Court Proceedings (2018 and Beyond), Ongoing Annual Ratification and Regulatory Compliance, and SPAVI Parties' Tortious Conduct,~~

    iv. <u>SPAVI and Cinco's Supporting Evidence:</u> the lack of evidence of this will suffice. Testimony of Gregorio will confirm as will testimony of Koren.

  iii. <u>Element No. 3</u>: the requesting ~~SPA VI~~ SPAVI Party/Parties has not paid any one of the PCJV USA Parties for the services.

    i. Disputed Stahis of Element 3: The parties dispute that this element is satisfied.

    ii. Nature of Dispute: Factual

    iii. <u>PCJV USA Parties' Supporting Evidence:</u> the following category, which is defined above, captures the key phase and supporting evidence: SPAVI Parties' Tortious Conduct.

i. iv. SPAVI and Cinco's Supporting Evidence: the lack of evidence of this will suffice. Testimony of Gregorio will confirm as will testimony of Koren.

i. iv.   Element No. 4: the reasonable value of the services that were provided.

  i. Disputed Stahis of Element 4: The parties dispute that this element is satisfied.

  ii. Nature of Dispute: Factual

  iii. PCJV USA Parties' Supporting Evidence: documents and testimony including and related to the following: (1) PCJV USA Parties' financial records; (2) PCJV USA Parties' historical growth; and (3) PJCV USA Parties' franchisee agreements and communications.

  iv. SPAVI and Cinco's Supporting Evidence: there is no evidence of this.

**III.   SPAVI Parties Pai ties' Affirmative Defenses**

1) **Affirmative Defense No. 1:** Laches (asserted by Counter Defendant and Third Party Defendants as to all claims alleged against them) a. Element No. 1: A Delay in asserting a claim.

  i. This element is disputed

  ii. Nature of Dispute: Legal and Factual

  iii. Plaintiffs Position Statement: Laches is an affirmative defense.

  iv.   Defendants' Position Statement: Laches is an equitable

137

CASE NO. 2:24-CV-04546-SB(AGRX)
165
AMENDED JOINTLY FILED CLAIMS,
COUNTERCLAIMS, THIRD PARTY CLAIMS, AND
AFFIRMATIVE DEFENSES TO BE TRIED
175468760.1

2:24-cv-04546-SB-AGR Document 258 263-1 Filed 08/12/25 08/14/25 Page 114 of 164 138 of 173

Page ID#:11276
ID #:10875

iv.   claim to be tried by the Court. *Ultimax* *Cement* *Mfg* *CementMfg*.

*Corp.* v. *CTS Cement Mfg. Corp.,* 856 F.Supp. 2d 1136, 1151 (2012).

v.   Plaintiffs Plaintiff s Supporting Evidence: Both the JVA and AJVA contain an agreement to agree on a Master License Agreement. However, there was never a written license agreement executed between Counterclaimants and Cinco. Counterclaimants entered into a negotiation process with Cinco, prior to SPAVI's acquisition of the Potato Comer brand and all of the Potato Comer Intellectual Property from Cinco, for the terms tenns of a license to use the Potato Corner Intellectual Property. These negotiations began before SPAVI purchased the rights to the Potato Comer IP. So, Counterclaimants have been aware of the lack of ownership rights in the Potato Corner Intellectual Property and the non-existence of a written agreement. Then, between December of 2021 through 2024, the months immediately preceding this action, SPAVI engaged in a good faith and exhaustive attempt to negotiate the terms Corner Intellectual Property and the non-existence of a written agreement. Then, between December of 2021 through 2024, the months immediately preceding this action, SPAVI engaged in a good faith and exhaustive attempt to negotiate the tenns of a written license with PCJV as well. Never once did Counterclaimants state that they had ownership rights to the Potato Comer Intellectual Property, and SPAVI relied on that representation because had one been expressed, that

*[Formatted: Indent: Left: 1.97", Line spacing: Exactly 24 pt, No bullets or numbering, Pattern: Clear]*

would have been a dispute as to the ownership rights to which SPAVI would have filed this lawsuit sooner. Additional evidence includes: Notarized Deeds signed by seller and buyer; USPTO filings including Registrations and Assignments; Testimony of Gregorio (Plaintiffs CEO), Magsaysay (Cinco's CEO), Koren, Ybanez (Plaintiffs General Counsel), Tan (Director responsible for international franchising); and emails and correspondence during the negotiation of the terms of the license agreement.

    vi. PCJV USA's Parties Supporting Evidence: SPAVI parties have not articulated their defense beyond what is included in their Answers until 7am on August 12, 2025. *See* n. 1. As it is articulated in the Answers, PCJV Parties cannot determine the factual basis for the defense. As such, the out of an abundance of caution, PCJV Parties incorporate by reference all of the evidence cited in support of their causes of action

b. Element No. 2: acquiescence by Counterclaim Defendants or Third Party Defendants or their suffering of prejudice, which can include detrimental reliance on the status quo, loss of evidence, or other circumstances that make it inequitable to allow the claimants to assert their claim after the delay.

    i. This element is disputes

    ii. Nature of Dispute: Legal and factual

    iii. Plaintiff's Plaintiffs Position Statement: Laches is an affirmative affinnative defense.

    iv. PCJV USA Parties' Position Statement: PCJV USA Parties' Position Statement: Laches is an equitable claim to

be tried by the Court. *Ultimax Cement Mfg. Corp.* v.

139

*CTS* ~~*Cement Mfg*~~*CementMfg. Corp.,* 856 F.Supp. 2d 1136, 1151 (2012). "A defendant must demonstrate three elements to successfully assert laches defense: (1) delay in asserting a right or claim; (2) the delay was not reasonable or excusable; and (3) prejudice to the party against whom laches is asserted." *Magic Kitchen LLC* v. *Good Things Internat.,*

*Ltd.,* 153 Cal. App. 4th 1144, 1157 (2007).
SPAVI Parties' statement of what it needs to prove here as an element to laches is incorrect

v.  Plaintiff's Supporting Evidence: Both the JVA and AJVA contain an agreement to agree on a Master License Agreement. However, there was never a written license agreement executed between Counterclaimants and Cinco. Counterclaimants entered into a negotiation process with Cinco, prior to SPA Vi's acquisition of the Potato Comer brand and all of the Potato Comer Intellectual Property from Cinco, for the terms of a license to use the Potato Corner Intellectual Property. These negotiations began in [DATE], So, as of [DATE], Counterclaimants have been aware of the lack of ownership rights in the Potato Corner Intellectual Property and the non-existence of a written agreement. Then, between December of 2021 through 2024, the months immediately preceding this action, SPAVI engaged in a good faith and exhaustive attempt to negotiate the terms of a written license with PCJV as well. Never once did Counterclaimants state that they had

ownership rights to the Potato Corner Intellectual Property, and SPAVI relied on that representation because had one been expressed, that would have been a dispute as to the ownership rights to which SPAVI would have filed this lawsuit sooner. Additional evidence includes: Notarized Deeds signed by seller and buyer; USPTO filings including Registrations and Assignments; Testimony of Gregorio (Plaintiffs CEO), Magsaysay (~~Cinco's~~ Chico's CEO), Koren, Ybanez (Plaintiffs General Counsel), Tan (Director responsible for international franchising); and emails and correspondence during the negotiation of the ~~terms~~ tenns of the license agreement,

vi. ~~PCJV USA Parties' Supporting Evidence:~~ SPAVI parties have not articulated their defense beyond what is included in their Answers until 7am on August 12, 2025. *See* n. 1. As it is articulated in the Answers, PCJV Parties cannot determine the factual basis for the defense. As such, the out of an abundance of caution, PCJV Parties incorporate

vi. by reference all of the evidence cited in support of their causes of action.

2) **Affirmative Defense No. 2:** Consent (asserted by Counterclaim Defendant and Third Party Defendants as to all claims alleged against them)

   a. Element No. 1: One or more of the Counterclaimants or Third Party Plaintiffs consented to the acts about which they complain.

      i. This element is disputed.

      ii. Nature of Dispute: ~~Legal and~~ factual

> **Formatted:** Body text (2)1, Indent: Left: 1.67", Hanging: 0.31", Line spacing: Exactly 24 pt, Outline numbered + Level: 1 + Numbering Style: i, ii, iii, … + Start at: 1 + Alignment: Left + Aligned at: 0" + Indent at: 0", Tab

iii.  Plaintiffs Position Statement: The elements are taken from CACI1721

iv.  PCJV USA Parties' Position Statement: SPAVI Parties' appear to have combined an element of their laches affirmative defense. Otherwise, there is no legal support for SPAVI Parties' articulated element

iv.  v. Plaintiffs Supporting Evidence: Both the JVA and AJVA contain an agreement to agree on a Master License Agreement. However, there was never a written license agreement executed between Counterclaimants and Cinco. Counterclaimants entered into a negotiation process with Cinco, prior to SPAVI's acquisition of the Potato Comer brand and all of the Potato Comer Intellectual Property from Cinco, for the terms tenns of a license to use the Potato Corner Intellectual Property. These negotiations began in [DATE], So, as of [DATE], Counterclaimants have been aware of the lack of ownership rights in the Potato Corner Intellectual Property and the non-existence of a written agreement. Then, between December of 2021 through 2024, the months immediately preceding this action, SPAVI engaged in a good faith and exhaustive attempt to negotiate the terms tenns of a written license with PCJV as well. Never once did Counterclaimants state that they had ownership rights to the Potato Corner Intellectual Property, and SPAVI relied on that representation because had one been expressed, that would have been a dispute as to the ownership rights to which SPAVI would have filed this lawsuit sooner. Additional evidence includes: Notarized Deeds signed by

seller and buyer; USPTO filings including Registrations and Assignments;

Testimony of Gregorio (Plaintiffs CEO), Magsaysay (Cinco's Chico's CEO), Koren, Ybanez (Plaintiffs General Counsel), Tan (Director responsible for international franchising); and emails and correspondence during the negotiation of the terms of the license agreement,.

v.  vi.PCJV USA Parties' Supporting Evidence: SPAVI parties have not articulated their defense beyond what is included in their Answers until 7am on August 12, 2025. *See* n. 1. As it is articulated in the Answers, PCJV Parties cannot determine the factual basis for the defense. As such, the out of an abundance of caution, PCJV Parties incorporate by reference all of the evidence cited in support of their causes of action.

3) **Affirmative Defense No. 3:** Estoppel (asserted by Counterclaim Defendant and Third Party Defendants as to all claims alleged against them)

    a. Element No. 1: A representation or concealment of material facts;

        i.  This element is disputed

        ii.  Nature of Dispute: Legal and factual

        i.  hi. SPAVI and Cinco's Position Statement: Estoppel is an affirmative defense

        ii.iv.     PCJV USA Parties Position: PCJV USA Parties' Position Statement: Equitable estoppel is an equitable claim to be tried by the Court. *Ultimax Cement Mfg. Corp.* v. *CTS CementMfg. Corp.,* 856 F.Supp856F.Supp. 2d 1136, 1151 (2012).

        v.  Plaintiffs Supporting Evidence: Counterclaimants have no evidence of a written license to use SPAVEs SPAVI's Potato

*[Formatted: Indent: Left: 1.69", Hanging: 0.28", Line spacing: Exactly 23.75 pt, No bullets or numbering, Pattern: Clear]*

143

CASE NO. 2:24-CV-04546-SB(AGRX)
173
AMENDED JOINTLY FILED CLAIMS,
COUNTERCLAIMS, THIRD PARTY CLAIMS, AND
AFFIRMATIVE DEFENSES TO BE TRIED
175468760.1

iii.    Corner Intellectual Property, and, as such, its rights (that it has sold to its franchisees) derive from what is, at best, a terminable at will, fully revocable license because Defendants were nonetheless operating Potato Comer locations, as if a written license existed. See Pogrebnoy v. Russian Newspaper Distribution, Inc., 289 F. Supp. 3d 1061, 1070 (C.D. Cal. 2017), aff d, 742 F. App'x 291 (9th Cir. 2018) ("[A]n implied license, like any other contract, is terminable at the will of either party if it is not for a specified term."). After ~~SPAVEs~~ SPAVFs acquisition of the Potato Corner brand, it became the licensor of the Potato Comer Intellectual Property. Between December of 2021 through 2024, the months immediately preceding this action, SPAVI engaged in a good faith and exhaustive attempt to negotiate the terms of a written license with PCJV. Defendant Guy Koren engaged and participated in this negotiation, but was unwilling to agree to any minimally commercially viable licensing ~~terms~~ tenns. Never once did Counterclaimants state that they had ownership rights to the Potato Comer Intellectual Properly, and SPAVI relied on that representation. Additional evidence includes: Testimony of Gregorio (Plaintiffs CEO), Magsaysay (Cinco's CEO), Koren, Ybanez (Plaintiffs General Counsel), Tan (Director responsible for international franchising); and emails and correspondence during the negotiation of the ~~terms~~ tenns of the license agreement~~.~~,

~~iv.~~vi.    PCJV USA Parties' Supporting Evidence: SPAVI parties

have not articulated their defense beyond what is included in their Answers. As it is articulated there, PCJV Parties cannot determine the factual basis for the defense. As such, the out of an abundance of caution, PCJV Parties incorporate by reference all of the evidence cited in support of their causes of action.

a. b.    Element 2: Made with knowledge, actual or virtual, of the facts;

   i.  This element is disputed

   ii.  <u>Nature of Dispute:</u> Legal and factual

   iii.  <u>Plaintiffs Position Statement:</u> Estoppel is an affirmative defense

   iv.  <u>PCJV USA Parties' Position Statement:</u> Equitable estoppel is

an equitable claim to be tried by the Court. *Ultimax Cement Mfg. Corp.* v. *CTS Cement Mfg. Corp.,* 856 F.Supp. 2d 1136, 1151 (2012).

   v.  <u>Plaintiffs Supporting Evidence:</u> Plaintiffs Supporting Evidence: Counterclaimants have no evidence of a written license to use SPAVEs SPAVFs Potato Comer Intellectual Property, and, as such, its rights (that it has sold to its franchisees) derive from what is, at best, a terminable at will, fully revocable license because Defendants were nonetheless operating Potato Comer locations, as if a written license existed. *See Pogrebnoy* v. *Russian Newspaper Distribution, Inc.,* 289 F. Supp. 3d 1061, 1070 (C.D. Cal. 2017), aff d, 742 F. App'x 291 (9th Cir. 2018) ("[A]n implied license, like any other contract, is terminable at the will of either party if it is not for a

specified term."). After SPAVFs acquisition of the Potato Corner brand, it became the licensor of the Potato Comer Intellectual Property. Between December of 2021 through 2024, the months immediately preceding this action, SPAVI engaged in a good faith and exhaustive attempt to negotiate the terms of a written license with PCJV. Defendant Guy Koren engaged and participated in this negotiation, but was unwilling to agree to any minimally commercially viable licensing ~~terms~~tenns. Never once did Counterclaimants state that they had ownership rights to the Potato Comer Intellectual Properly, and SPAVI relied on that representation. Additional evidence includes: Testimony of Gregorio (Plaintiffs CEO), Magsaysay (Cinco's CEO), Koren, Ybanez (Plaintiffs General Counsel), Tan (Director responsible for international franchising); and emails and correspondence during the negotiation of the ~~terms~~tenns of the license agreement

~~vi.~~ PCJV USA Parties' Supporting Evidence: SPAVI parties have not articulated their defense beyond what is included

vi. in their Answers. As it is articulated there, PCJV Parties cannot ~~determine~~detennine the factual basis for the defense. As such, the out of an abundance of caution, PCJV Parties incorporate by reference all of the evidence cited in support of their causes of action

c. Element 3: To a party ignorant, actually, and permissibly, of the truth;

i. This element is disputed

> **Formatted:** Indent: Left: 1.65", Hanging: 0.33", Line spacing: Exactly 24 pt, Outline numbered + Level: 1 + Numbering Style: i, ii, iii, … + Start at: 1 + Alignment: Left + Aligned at: 0" + Indent at: 0", Pattern: Clear, Tab

176
CASE NO. 2:24-CV-04546-SB(AGRX)
176
AMENDED JOINTLY FILED CLAIMS,
COUNTERCLAIMS, THIRD PARTY CLAIMS, AND
AFFIRMATIVE DEFENSES TO BE TRIED
175468760.1

ii. Nature of Dispute: legal and factual

iii. <u>Plaintiffs position statement:</u> Estoppel is an affirmative defense

iv. <u>PCJV USA Parties' Position Statement:</u> Equitable estoppel is an equitable claim to be tried by the Court. *Ultimax Cement Mfg. Corp.* v. *CTS Cement Mfg. Corp.,* 856 F.Supp. 2d 1136, 1151 (2012).

v. <u>Plaintiffs Supporting Evidence:</u> Plaintiffs Supporting Evidence: Counterclaimants have no evidence of a written license to use SPAVEs Potato Comer Intellectual Property, and, as such, its rights (that it has sold to its franchisees) derive from what is, at best, a terminable at will, fully revocable license because Defendants were nonetheless operating Potato Comer locations, as if a written license existed. See Pogrebnoy v. Russian Newspaper Distribution, Inc., 289 F. Supp. 3d 1061,1070 (C.D. Cal. 2017), aff d, 742 F. App'x 291 (9th Cir. 2018) ("[A]n implied license, like any other contract, is terminable at the will of either party if it is not for a specified term."). After SPAVEs acquisition of the Potato Corner brand, it became the licensor of the Potato Comer Intellectual Property. Between December of 2021 through 2024, the months immediately preceding this action, SPAVI engaged in a good faith and exhaustive attempt to negotiate the ~~terms~~ tenns of a written license with PCJV. Defendant Guy Koren engaged and participated in this negotiation, but was unwilling to agree to any minimally commercially viable licensing ~~terms~~tenns. Never once did Counterclaimants state that they had ownership rights to the

Potato Comer Intellectual Properly, and SPAVI relied on that representation. Instead, Counterclaimant engaged in the negotiation process. Additional evidence includes: Testimony of Gregorio (Plaintiffs CEO), Magsaysay (Cinco's CEO), Koren, Ybanez (Plaintiffs General Counsel), Tan (Director responsible for international franchising); and emails and correspondence during the negotiation of the terms of the license agreement

vi. PCJV USA Parties' Supporting Evidence: SPAVI parties have not articulated their defense beyond what is included in their Answers. As it is articulated there, PCJV Parties cannot determine the factual basis for the defense. As such, the out of an abundance of caution, PCJV Parties incorporate by reference all of the evidence cited in support of their causes of action

d. Element 4: With the intention, actual or virtual, that the ignorant party act on it; and

    i. This element is disputed

    ii. Nature of Dispute: legal and factual

139

    iii. Plaintiffs position statement: Estoppel is an affirmative defense

    iv. PCJV USA Parties' Position Statement: Equitable estoppel is an equitable claim to be tried by the Court. *Ultimax Cement Mfg. Corp.* v. *CTS Cement Mfg. Corp.,* 856 F.Supp. 2d 1136, 1151 (2012).

    v. Plaintiffs Supporting Evidence: Never once did Counterclaimants state that they had ownership rights to the

Formatted: Indent: Left: 0.99", Hanging: 0.24", Line spacing: Exactly 23.75 pt, Outline numbered + Level: 1 + Numbering Style: a, b, c, ... + Start at: 2 + Alignment: Left + Aligned at: 0" + Indent at: 0", Pattern: Clear, Tab

Potato Comer Intellectual Property. Instead, Defendant Guy Koren engaged and participated in the negotiation of the license to use the Potato Comer Intellectual Property, with the intent of having SPAVI relied on that representation that Counterclaimant did not have a license. Additional evidence includes: Testimony of Gregorio (Plaintiffs CEO), Magsaysay (Cinco's CEO), Koren, Ybanez (Plaintiffs General Counsel), Tan (Director responsible for international franchising); and emails and correspondence during the negotiation of the terms of the license agreement

vi. <u>PCJV USA Parties' Supporting Evidence:</u> SPAVI parties have not articulated their defense beyond what is included in their Answers. As it is articulated there, PCJV Parties cannot determine the factual basis for the defense. As such, the out of an abundance of caution, PCJV Parties incorporate by reference all of the evidence cited in support of their causes of action.

e. Element 5: That party was induced to act on it and was ~~harmed,~~banned.

i. This element is disputed

ii. Nature of Dispute: legal and factual

iii. <u>Plaintiffs position statement:</u> Estoppel is an affirmative defense

iv. <u>PCJV USA Parties' Position Statement:</u> Equitable estoppel is an equitable claim to be tried by the Court.

> **Formatted:** Indent: Left: 0.99", First line: 0", Line spacing: Exactly 24 pt, Outline numbered + Level: 1 + Numbering Style: a, b, c, … + Start at: 2 + Alignment: Left + Aligned at: 0" + Indent at: 0", Pattern: Clear, Tab

*Ultimax Cement Mfg. Corp.* v. *CTS Cement Mfg. Corp.*, 856 F.Supp. 2d 1136, 1151 (2012).

v.  ~~Plaintiffs~~ Plaintiff's Supporting Evidence: Never once did

~~v.~~      Counterclaimants state that they had ownership rights to the Potato Comer Intellectual Property. Instead, Defendant Guy Koren engaged and participated in the negotiation of the license to use the Potato Comer Intellectual Property, with the intent of having SPAVI relied on that representation that Counterclaimant did not have a license. Guy Koren refused to, engage in reasonable and good faith negotiation. Instead, he only offered ~~royalty~~ royalty rates and license fees that were more than 90% below what Koren had agreed to be reasonable licensing fees over a decade prior. Koren also repeatedly disengaged from the negotiation process, but still was utilizing the Potato Corner Intellectual Property. In the three months prior to the termination of the licensing agreement, Koren had gone radio silent, leading SPAVI to believe that it no longer was interested in negotiating a license. Therefore, SPAVI had no option, but to terminate Counterclaimants license of the Potato Comer Intellectual Property. Additional evidence includes: Testimony of Gregorio (Plaintiffs CEO), Magsaysay (Cinco's CEO), Koren, Ybanez (Plaintiffs General Counsel), Tan (Director responsible for international franchising); and emails and correspondence during the negotiation of the terms of the license agreement

vi. PCJV USA Parties' Supporting Evidence: SPAVI parties have not articulated their defense beyond what is included in

---

180
CASE NO. 2:24-CV-04546-SB(AGRX)
~~180~~
AMENDED JOINTLY FILED CLAIMS~~,~~.
COUNTERCLAIMS, THIRD PARTY CLAIMS, AND
AFFIRMATIVE DEFENSES TO BE TRIED
~~175468760.1~~

**Formatted:** Indent: Left: 1.97", Line spacing: Exactly 24 pt, No bullets or numbering, Pattern: Clear

their Answers. As it is articulated there, PCJV Parties cannot determine the factual basis for the defense. As such, the out of an abundance of caution, PCJV Parties incorporate by reference all of the evidence cited in support of their causes of action.

4) **<u>Affirmative Defense No. 4</u>** Failure to Mitigate Damages (asserted by Counterclaim Defendant and Third Party Defendants as to all claims alleged against them)

    a. Element No. 1: That the party seeking the damage award failed to use reasonable efforts to mitigate damages

        i. This element is disputed

        ii. Nature of Dispute: factual

>:24-cv-04546-SB-AGR    Document 258 Filed 08/12/25 Page 143 of 164 Page ID#: 10904

Property. These negotiations began before SPAVI
purchased the rights to the Potato Corner IP. So,
Counterclaimants have been aware of the lack of
ownership rights in the Potato Corner Intellectual
Property and the non-existence of a written agreement.
Then, between December of 2021 through 2024, the
months immediately preceding the filing of this action,
SPAVI engaged in a good faith and exhaustive attempt to
negotiate the terms of a written license with
Counterclaimants as well. Never once did
Counterclaimants state that they had ownership rights to
the Potato Corner Intellectual Property, and SPAVI relied
on that representation because had one been expressed,
that would have been a dispute as to the ownership rights
to which SPAVI would have filed this lawsuit sooner.
Moreover, Guy Koren refused to engage in reasonable
and good faith negotiation, which would have led to the
execution of a licensing agreement. Instead, he only
offered royalty rates and license fees that were more than
90% below what Koren had agreed to be reasonable
licensing fees over a decade prior. Koren also repeatedly
disengaged from the negotiation process, but still was
utilizing the Potato Corner Intellectual Property. In the
three months prior to the termination of the licensing
agreement, Koren had gone radio silent, leading SPAVI to
believe that it no longer was interested in negotiating a
license. Therefore, SPAVI had no option, but to terminate
Counterclaimants license to use the Potato Corner

AFFIRMATIVE DEFENSES TO BE TRIED

175468760.1

iii.  Plaintiffs Supporting Evidence: Both the JVA and AJVA
contain an agreement to agree on a Master License
Agreement. There was never a written license agreement
between Counterclaimants and counter defendants or third
party defendants for the use of the Potato Corner Intellectual
Property. Counterclaimants entered into a negotiation
process with Cinco, prior to SPAVEs acquisition of the
Potato Corner brand and all of the Potato Comer Intellectual
Property from Cinco, for the terms of a license to use the
Potato Comer Intellectual Property. These negotiations
began before SPAVI purchased the rights to the Potato
Comer IP. So, Counterclaimants have been aware of the lack
of

III

ownership rights in the Potato Corner Intellectual Property
and the non-existence of a written agreement. Then, between
December of 2021 through 2024, the months immediately
preceding the filing of this action, SPAVI engaged in a good
faith and exhaustive attempt to negotiate the terms of a
written license with Counterclaimants as well. Never once
did Counterclaimants state that they had ownership rights to
the Potato Comer Intellectual Properly, and SPAVI relied on
that representation because had one been expressed, that
would have been a dispute as to the ownership rights to
which SPAVI would have filed this lawsuit sooner.
Moreover, Guy Koren refused to engage in reasonable and
good faith negotiation, which would have led to the

:24-cv-04546-SB-AGR **Document** 258 263-1 **Filed** 08/12/25 08/14/25 **Page** 124 of 164 152 of 173 **Page** ID#:11290
2:24-cv-04546-SB-AGR
ID #:10885

execution of a licensing agreement. Instead, he only offered royally rates and license fees that were more than 90% below what Koren had agreed to be reasonable licensing fees over a decade prior. Koren also repeatedly disengaged from the negotiation process, but still was utilizing the Potato Corner Intellectual Property. In the three months prior to the tennination of the licensing agreement, Koren had gone radio silent, leading SPAVI to believe that it no longer was interested in negotiating a license. Therefore, SPAVI had no option, but to terminate Counterclaimants license to use the Potato Comer Intellectual Property. Additional evidence includes: Notarized Deeds signed by seller and buyer; USPTO

filings including Registrations and Assignments; Testimony of Gregorio (Plaintiffs CEO), Magsaysay (Cinco's CEO), Koren, Ybanez (Plaintiffs General Counsel), Tan (Director responsible for international franchising); May 31, 2024 Termination Letter; and emails and correspondence during the negotiation of the terms of the license agreement.

i. iv. Defendants' Supporting Evidence: SPAVI parties have not articulated their defense beyond what is included in their Answers until 7am on August 12, 2025. *See* n. 1. As it is articulated in the Answers, PCJV Parties cannot determine the factual basis for the defense. As such, the out of an abundance of caution, PCJV Parties incorporate by reference all of the evidence cited in support of their causes of action

**Formatted:** Indent: Left: 1.67", Hanging: 0.31", Line spacing: Exactly 24 pt, Outline numbered + Level: 1 + Numbering Style: i, ii, iii, … + Start at: 4 + Alignment: Left + Aligned at: 0" + Indent at: 0", Pattern: Clear, Tab

b. Element No. 2: the amount, if any, by which damages have been mitigated

 i. This element is disputed

 ii. <u>Nature of Dispute:</u> factual

 iii. <u>Plaintiffs Supporting Evidence:</u> Had Counterclaimants negotiated in good faith, SPAVI would have executed a license agreement and not terminated the licensing agreement. The amount of alleged damage resulting from the termination of the license agreement could have been mitigated. Additional evidence includes: Amended Joint Venture Agreement and Joint Venture Agreement; Testimony of Koren, Plaintiff executives Gregorio (Plaiuntiffs CEO), Concepcion (Plaintiff's COO charged with US operations), Tan (Director responsible for international franchising); Emails and correspondence with

SPAVI, Koren, and PCJV relating to negotiations of a licensing agreement for the use of the Potato Corner Intellectual Property; Financial documents of Counterclaimants; May 31, 2024 Tennination Letter

    iv.  Defendants' Supporting Evidence: SPAVI parties have not articulated their defense beyond what is included in their Answers until 7am on August 12, 2025. *See* n. 1. As it is articulated in the Answers, PCJV Parties cannot determine the factual basis for the defense. As such, the out of an abundance of caution, PCJV Parties incorporate by reference all of the evidence cited in support of their causes of action

5) **Affirmative Defense No. 5:** Immunity (asserted by SPAVI as to all claims alleged against it)

    a.  Element No. 1 - That Counterclaim Defendant had a legitimate economic interest and thus shielded from liability in pursuit of its own lawful business interests

        i.  This element is disputed

        ii.  Nature of Dispute: Legal and factual

        iii.  PCJV USA Parties' Position Statement: PCJV USA Parties cannot articulate a response to this affirmative defense because SPAVI Parties did not provide their statement of what the applicable elements are or their positions regarding those elements. They have otherwise not articulated how this affirmative defense applies beyond their Answers.

        iv.  Plaintiffs Supporting Evidence: In December 2021, SPAVI entered into a transaction to acquire the Potato Corner Intellectual Property, including the Potato Corner Standard Characters Mark and the Potato Comer Logo Mark,

186
CASE NO. 2:24-CV-04546-SB(AGRX)
186
AMENDED JOINTLY FILED CLAIMS,
COUNTERCLAIMS, THIRD PARTY CLAIMS, AND
AFFIRMATIVE DEFENSES TO BE TRIED
175468760.1

and all of the rights thereto, from ~~Cinco~~Chico. That transaction closed during the first half of 2022. As such, SPAVI had an economic interest in the Potato Comer Intellectual Property. Additional evidence includes: Notarized Deeds signed by seller and buyer; USPTO filings including Registrations and Assignments, testimony of Gregorio (Plaintiffs CEO), Magsaysay (Cinco's CEO), Tan (Director responsible for international franchising)

    v. PCJV USA Parties' Supporting Evidence: SPAVI parties have not articulated their defense beyond what is included in their Answers. As it is articulated there, PCJV Parties cannot determine the factual basis for the defense. As such, the out of an abundance of caution, PCJV Parties incorporate by reference all of the evidence cited in support of their causes of action.

6) **<u>Affirmative Defense No. 6</u>:** Privilege (asserted by SPAVI as to all claims alleged against it)

    a. <u>Element No</u>~~.~~<u>, 1</u> - That Counterclaim Defendant had a legitimate economic interest

          ~~i.~~ i. This element is disputed

> **Formatted:** Indent: Left: 1.69", Hanging: 0.28", Line spacing: Exactly 23.75 pt, No bullets or numbering, Pattern: Clear

ii. Nature of Dispute: legal and factual

iii. <u>Defendants' Position Statement:</u> SPAVI parties have not articulated their defense beyond what is included in their Answers. *See* n. 1. As it is articulated in the Answers, PCJV Parties cannot ~~determine~~ detennine the legal basis for the defense

iv. <u>Plaintiffs Supporting Evidence:</u> In December 2021, SPAVI entered into a transaction to acquire the Potato Corner Intellectual Property, including the Potato Corner Standard Characters Mark and the Potato Comer Logo Mark, and all of the rights thereto, from Cinco. That transaction closed during the first half of 2022. As such, SPAVI had an economic interest in the Potato Comer Intellectual Property. Additional evidence includes: Notarized Deeds signed by seller and buyer; USPTO filings including Registrations and Assignments, testimony of Gregorio (Plaintiff's CEO), Magsaysay (~~Cinco's~~ Chico's CEO), Tan (Director responsible for international franchising)

v. <u>Defendants' Supporting Evidence:</u> SPAVI parties have not articulated their defense beyond what is included in their Answers until 7am on August 12, 2025. *See* n. 1. As it is articulated in the Answers, PCJV Parties cannot ~~determine~~ detennine the factual basis for the defense. As such, the out of an abundance of caution, PCJV Parties incorporate by reference all of the evidence cited in support of their causes of action

b. <u>Element No. 2</u> - That Counterclaim Defendant acted only to protect its own economic interest.

M7

188
CASE NO. 2:24-CV-04546-SB(AGRX)
AMENDED JOINTLY FILED CLAIMS,
COUNTERCLAIMS, THIRD PARTY CLAIMS, AND
AFFIRMATIVE DEFENSES TO BE TRIED

i. This element is disputed

ii. Nature of Dispute: legal and factual

iii. Defendants' Position Statement: SPAVI parties have not articulated their defense beyond what is included in their Answers. *See* n. 1. As it is articulated in the Answers, PCJV Parties cannot determine the legal basis for the defense.

iv. <u>Plaintiffs Supporting Evidence:</u> Counterclaimant have no evidence of a written license to use SPAVIN SPAVFs Potato Corner Intellectual PropertyProperly, and, as such, its rights (that it has sold to its franchisees) derive from what is, at best, a terminable at will, fully revocable license because Defendants were nonetheless operating Potato Comer locations, as if a written license existed. *See Pogrebnoy* v. *Russian Newspaper Distribution, Inc.,* 289 F. Supp. 3d 1061, 1070 (C.D. Cal. 2017), aff d, 742 F. App'x 291 (9th Cir. 2018) ("[A]n implied license, like any other contract, is terminable at the will of either party if it is not for a specified term."). After SPAVI's SPAVFs acquisition of the Potato Corner brand, it became the licensor of the Potato Comer Intellectual Property. Between December of 2021 through 2024, the months immediately preceding this action, SPAVI engaged in a good faith and exhaustive attempt to negotiate the terms of a written license with PCJV. Defendant Guy Koren engaged and participated in this negotiation, but was unwilling to agree to any minimally commercially viable licensing termstenns. Therefore, Plaintiff had no option to terminate the license of the Potato Corner Intellectual Property. Additional evidence includes:

Testimony of Koren, Plaintiff executives Gregorio (Plaiuntiff s CEO), Concepcion (Plaintiff's COO charged with US operations), Tan (Director responsible for international franchising), Magsaysay (Cinco's Chico's CEO); Emails and correspondence with SPAVI, Koren, and PCJV relating to negotiations of a licensing agreement for the use of the Potato Corner Intellectual Property; Amended Joint Venture Agreement; Franchise Agreements; FDDs; Trial Exhibit 29 (May 31, 2024 Termination)

    v. Defendants' Supporting Evidence: SPAVI parties have not articulated their defense beyond what is included in their Answers until 7am on August 12, 2025. *See* n. 1. As it is articulated in the Answers, PCJV Parties cannot determine the factual basis for the defense. As such, the out of an abundance of caution, PCJV Parties incorporate by reference all of the evidence cited in support of their causes of action.

c. Element No., 3 - That Counterclaim Defendant acted reasonably and in good faith to protect it.

    i. This element is disputed

    ii. Nature of Dispute: legal and factual

    iii. Defendants' Position Statement: SPAVI parties have not

articulated their defense beyond what is included in their Answers. *See* n. 1. As it is articulated in the Answers, PCJV Parties cannot determine the legal basis for the defense.

M9

    iv.  <u>Plaintiffs Supporting Evidence:</u> Counterclaimant have no evidence of a written license to use SPAVFs Potato Corner Intellectual Property, and, as such, its rights (that it has sold to its franchisees) derive from what is, at best, a terminable at will, fully revocable license because Defendants were nonetheless operating Potato Comer locations, as if a written license existed. *See Pogrebnoy* v. *Russian Newspaper Distribution, Inc.,* 289 F. Supp. 3d 1061, 1070 (C.D. Cal. 2017), aff d, 742 F. App'x 291 (9th Cir. 2018) ("[A]n implied license, like any other contract, is terminable at the will of either party if it is not for a specified term."). After SPAVFs acquisition of the Potato Corner brand, it became the licensor of the Potato Comer Intellectual Property. Between December of 2021 through 2024, the months immediately preceding this action,

SPAVI engaged in a good faith and exhaustive attempt to negotiate the terms of a written license with PCJV. Defendant Guy Koren engaged and participated in this negotiation, but was unwilling to agree to any minimally commercially viable licensing ~~terms~~tenns. Therefore, Plaintiff had no option to terminate the license of the Potato Corner Intellectual ~~Properly~~Property. Additional evidence includes: Testimony of Koren, Plaintiff executives Gregorio (Plaiuntiff s CEO), Concepcion (Plaintiffs COO

charged with US operations), Tan (Director responsible for international franchising), Magsaysay (Cinco's Chico's CEO); Emails and correspondence with SPAVI, Koren, and PCJV relating to negotiations of a licensing agreement for the use of the Potato Corner Intellectual Property; Amended Joint Venture Agreement; Franchise Agreements; FDDs; Trial Exhibit 29 (May 31, 2024 Termination)

   v. Defendants' Supporting Evidence: SPAVI parties have not articulated their defense beyond what is included in their Answers until 7am on August 12, 2025. *See* n. 1. As it is articulated in the Answers, PCJV Parties cannot determine the factual basis for the defense. As such, the out of an abundance of caution, PCJV Parties incorporate by reference all of the evidence cited in support of their causes of action.

7) **Affirmative Defense No. 7:** Unclean Hands (asserted by Counterclaim Defendant and Third Party Defendants as to all claims alleged against them)

   a. Element No., 1: Counterclaimant engaged in inequitable and/or unethical behavior that bars it from seeking relief

   i. This element is disputed

   ii. Nature of Dispute: factual

   iii. Plaintiffs Supporting Evidence: Counterclaimants have at best, a terminable at will, fully revocable license because Defendants were nonetheless operating Potato Corner locations, as if a written license existed. *See Pogrebnoy* v. *Russian Newspaper Distribution, Inc.,* 289 F. Supp Snpp. 3d 1061, 1070 (C.D. Cal. 2017), aff d, 742 F. App'x 291 (9th Cir. 2018) ("[A]n implied license, like any other contract, is terminable at the will of either party if it is not for a specified

term."). Despite using the Potato Corner Intellectual Property for over a decade, Counterclaimants have never once paid a single cent of a licensing for its use to Cinco nor SPA VI SPAVI. Counterclaimants have used Cinco's, and after the asset purchase, SPAVFs trademark without compensation to either party. Additional evidence includes: Financial statements of Counterclaimants evidence that no licensing fees have ever been paid; Notarized Deeds signed by seller and buyer; USPTO filings including Registrations and Assignments; Testimony of Gregorio (Plaintiffs CEO), Magsaysay (Cinco's CEO), Koren, Ybanez (Plaintiffs General Counsel), Tan (Director responsible for international franchising), Concepcion (Plaintiffs COO charged with US operations); emails and correspondence with Cinco, SPAVI, Koren, and PCJV relating to negotiations of a licensing agreement

iv.  Defendants' Supporting Evidence: SPAVI parties have not articulated their defense beyond what is included in their Answers until 7am on August 12, 2025. *See* n. 1. As it is articulated in the Answers, PCJV Parties cannot determine the factual basis for the defense. As such, the

193
CASE NO. 2:24-CV-04546-SB(AGRX)
193
AMENDED JOINTLY FILED CLAIMS, COUNTERCLAIMS, THIRD PARTY CLAIMS, AND AFFIRMATIVE DEFENSES TO BE TRIED
175468760.1

:24-cv-04546-SB-AGR Document 258 263-1 Filed 08/12/25 08/14/25 Page 129 of 164 162 of 173 Page ID #:10890:11300
2:24-cv-04546-SB-AGR

out of an abundance of caution, PCJV Parties incorporate by reference all of the evidence cited in support of their causes of action. Also, the state court preliminary injunction (holding that Cinco Corporation was not likely to prevail on prior claims of wrongdoing); confidential settlement communications do not support allegations; Cinco Corporation's settlement and release of prior allegations of wrongdoing.

8) **Affirmative Defense No. 8:** Waiver (asserted by Counterclaim Defendant and Third Party Defendants as to all claims alleged against them) a. <u>Element No. 1:</u> Through implied and/or express conduct, Counterclaimants knowingly waived a valid right, privilege, advantage, or benefit allegedly conferred upon it and its attempt to enforce that right, privilege, advantage, or benefit is thus barred.

   i.   This element is disputed

   ii.   Nature of Dispute: factual

   vii.   <u>Plaintiffs Supporting Evidence:</u> Both the JVA and AJVA contain an agreement to agree on a Master License Agreement. There was never a written license agreement between Counterclaimants and counter defendants or third party defendants. Counterclaimant entered into a negotiation process with Cinco, prior to SPAVEs acquisition of the Potato Corner brand and all of the Potato Comer Intellectual Property from Cinco, for the terms of a license to use the Potato Comer Intellectual Property. These negotiations began before SPAVI purchased the rights to the Potato Comer IP. So, Counterclaimants have been aware of the lack of ownership rights in the Potato Corner Intellectual Property and the non-existence of a written agreement. Then, between December of 2021 through 2024, the months immediately preceding the

filing of this action, SPAVI engaged in a good faith and exhaustive attempt to negotiate the terms of a written license with Counterclaimants as well. Never once did Counterclaimants state that they had ownership rights to the Potato Comer Intellectual ~~Property~~ Properly, and SPAVI relied on that representation because had one been expressed, that would have been a dispute as to the ownership rights to which SPAVI would have filed this lawsuit sooner. Instead, Counterclaimants and Counter Defendants continued to negotiate the terms of a license to use the Potato Comer Intellectual Property. Additional evidence includes: Notarized Deeds signed by seller and buyer; USPTO filings including Registrations and Assignments; Testimony of Gregorio (Plaintiffs CEO), Magsaysay (~~Cinco's~~ Chico's CEO), Koren, Ybanez (Plaintiffs General Counsel), Tan (Director responsible for international franchising); and emails and correspondence during the negotiation of the ~~terms~~ tenns of the license agreement,

iii. Defendants' Supporting Evidence: SPAVI parties have not articulated their defense beyond what is included in their Answers until 7am on August 12, 2025. *See* n. 1. As it is articulated in the Answers, PCJV Parties cannot

determine the factual basis for the defense. As such, the out of an abundance of caution, PCJV Parties incorporate by reference all of the evidence cited in support of their causes of action. The state court preliminary injunction (enjoining Cinco Corporation from interfering with PCJV's President's control over Potato Comer in the United States and

communicating with its franchisees); confidential settlement communications do not support any waiver, as Defendants never waived any rights but were trying to settle disputes; Cinco Corporation's settlement and release of prior allegations and transfer of the very interests, rights and obligations over which the parties are now litigating.

9) **Affirmative Defense No. 9:** Comparative Fault (asserted by Counterclaim Defendant SPAVI as to the negligent interference with prospective economic relations claim)

a. Element No. 1: That Counterclaimant was negligent

   i.  This element is disputed

   ii.  Nature of Dispute: factual

   iii.  <u>Plaintiffs Supporting Evidence:</u> Both the JVA and AJVA contain an agreement to agree on a Master License Agreement. As such, there was no written license agreement. Counterclaimant entered into a negotiation process with Cinco, prior to SPAVI's SPA Vi's acquisition of the Potato Comer brand and all of the Potato Comer Intellectual Property from Cinco, for the terms tenns of a license to use the Potato Corner Intellectual Property.

These negotiations began before SPAVI purchased the rights to the Potato Comer IP. So, Counterclaimants have been aware of the lack of ownership rights in the Potato Corner Intellectual Property and the non-existence of a written agreement. Then, between December of 2021 through 2024, the months immediately preceding this action, SPAVI engaged in a good faith and exhaustive attempt to negotiate the ~~terms~~ tenns of a written license with PCJV as well. Never once did Counterclaimants state that they had ownership rights to the Potato Comer

<center>155</center>

Intellectual Property, and SPAVI relied on that representation because had one been expressed, that would have been a dispute as to the ownership rights to which SPAVI would have filed this lawsuit sooner. Moreover, Guy Koren could have, but refused to, engage in reasonable and good faith negotiation. Instead, he only offered ~~royally~~ royalty rates and license fees that were more than 90% below what Koren had agreed to be reasonable licensing fees over a decade prior. Koren also repeatedly disengaged from the negotiation process, but still was utilizing the Potato Corner Intellectual Property. Additional evidence includes: Notarized Deeds signed by seller and buyer; USPTO filings including Registrations and Assignments; Testimony of Gregorio (Plaintiffs CEO), Magsaysay (Cinco's CEO), Koren, Ybanez (Plaintiffs General Counsel), Tan (Director responsible for international franchising); and emails and correspondence during the negotiation of the terms of the license agreement.

iv. Defendants' Supporting Evidence: SPAVI parties have not articulated their defense beyond what is included in their Answers until 7am on August 12, 2025. *See* n. 1. As it is articulated in the Answers, PCJV Parties cannot determine the factual basis for the defense. As such, the out of an abundance of caution, PCJV Parties incorporate by reference all of the evidence cited in support of their causes of action. The state court preliminary injunction (enjoining Cinco Corporation Coiporation from interfering with

iv. PCJV's President's control over Potato Comer in the United States and communicating with its franchisees); at all relevant times Defendants exercised control over Potato Comer in the United States and did not change the status quo between the parties, including in dealings with Plaintiff and Plaintiffs predecessor, b. Element No. 2: That Counterclaimant's negligence was a substantial factor in causing its harm.

    i. This element is disputed

    ii. Nature of Dispute: factual

    iii. Plaintiffs Supporting Evidence: Guy Guv Koren could have, but refused to, engage in reasonable and good faith negotiation. Instead, he only offered royalty rates and license fees that were more than 90% below what Koren had agreed to be reasonable licensing fees over a decade prior. Koren also repeatedly disengaged from the negotiation process, but still was utilizing the Potato Corner Intellectual Properly Property. In light of the two year negotiation process that went nowhere, and Counterclaimant no furnishing any consideration whatsoever in exchange for the use of the Potato Comer Intellectual Property, SPAVI concluded that it exhausted all efforts to negotiate a license

> **Formatted:** Body text (2)1, Indent: Left: 0.72", First line: 0.94", Line spacing: Exactly 24 pt, Outline numbered + Level: 1 + Numbering Style: i, ii, iii, … + Start at: 1 + Alignment: Left + Aligned at: 0" + Indent at: 0", Tab

agreement with Counterclaimants. As such, SPAVI had no choice by to terminate Counterclaimants licensing agreement. Additional supporting evidence includes: Notarized Deeds signed by seller and buyer; USPTO filings including Registrations and Assignments; Testimony of ~~157~~

iii.  Gregorio (Plaintiffs CEO), Magsaysay (Cinco's CEO), Koren, Ybanez (Plaintiffs General Counsel), Tan (Director responsible for international franchising); May 31, 2024 Termination Letter; and emails and correspondence during the negotiation of the terms of the license agreement.

iv.  Defendants' Supporting Evidence: SPAVI parties have not articulated their defense beyond what is included in their Answers until 7am on August 12, 2025. *See* n. ~~E~~ 1. As it is articulated in the Answers, PCJV Parties cannot determine the factual basis for the defense. As such, the out of an abundance of caution, PCJV Parties incorporate by reference all of the evidence cited in support of their causes of action. The state court preliminary injunction (enjoining Cinco Corporation from interfering with

**Formatted:** Body text (2)1, Indent: Left:  1.67", Hanging:  0.31", Line spacing:  Exactly 24 pt, Outline numbered + Level: 1 + Numbering Style: i, ii, iii, … + Start at: 1 + Alignment: Left + Aligned at:  0" + Indent at:  0", Tab

~~iv.~~    PCJV's President's control over Potato Comer in the United States and communicating with its franchisees); at all relevant times Defendants exercised control over Potato Comer in the United States and did not change the status quo between the parties, including in dealings with Plaintiff and Plaintiffs predecessor

10) **Affirmative Defense No. 10:** Lack or Inadequacy of Consideration (asserted by Counterclaim Defendant and Third Party Defendants as to all claims alleged against them)

a. <u>Element No. 1:</u> Counterclaimant has failed or refused to provide anything of value in exchange for the use of ~~SPA Vi's~~ SPAVFs license to use the Potato Comer Intellectual ~~Properly i.~~ Property

    <u>i.</u>  This element is disputed

~~158~~

    ii.  Nature of Dispute: factual

    <u>iii.</u>  <u>Plaintiffs Supporting Evidence:</u> Despite using the Potato Corner Intellectual Property for over a decade, Counterclaimants have never once paid a single cent of a licensing fee for its use to Cinco nor ~~SPA VI~~ SPAVI. Counterclaimants have used Cinco's, and after the asset purchase, SPAVFs trademark without compensation to either party. Additional evidence includes: Financial statements of Counterclaimants evidence that no licensing fees have ever been paid; Notarized Deeds signed by seller and buyer; USPTO filings including Registrations and Assignments; Testimony of Gregorio (Plaintiffs CEO), Magsaysay (~~Cinco's~~ Chico's CEO), Koren, Ybanez (~~Plaintiffs~~ Plaintiff's General Counsel), Tan (Director responsible

~~iii.~~    for international franchising), Concepcion (~~Plaintiffs~~

CASE NO. 2:24-CV-04546-SB(AGRX)
AMENDED JOINTLY FILED CLAIMS,
COUNTERCLAIMS, THIRD PARTY CLAIMS, AND
AFFIRMATIVE DEFENSES TO BE TRIED

Plaintiff s COO charged with US operations); JVA and AJVA; emails and correspondence with Cinco, SPAVI, Koren, and PCJV relating to negotiations of a licensing agreement

iv. Defendants' Supporting Evidence: SPAVI parties have not articulated their defense beyond what is included in their Answers until 7am on August 12, 2025. *See* n. 1. As it is articulated in the Answers, PCJV Parties cannot determine the factual basis for the defense. As such, the out of an abundance of caution, PCJV Parties incorporate by reference all of the evidence cited in support of their causes of action

11) **Affirmative Defense No. 11:** Abandonment or Mutual Recession of
~~159~~

Contract (asserted by Counterclaim Defendant and Third Party Defendants as to all claims alleged against them) a. Element No. 1: Counterclaimants license to use the Potato Comer Intellectual Property was effectively terminated by mutual consent or that Counterclaimants actions led SPAVI to believe that it was abandoned.

i. This element is disputed.

ii. Nature of Dispute: factual

iii. Plaintiffs Supporting Evidence: Counterclaimants have no evidence of a written license to use SPAVEs Potato Corner Intellectual ~~Properly~~Property, and, as such, its rights (that it has sold to its franchisees) derive from what is, at best, a terminable at will, fully revocable license because Defendants were nonetheless operating Potato Comer locations, as if a written license existed. *See Pogrebnoy* v. *Russian Newspaper Distribution, Inc.,* 289 F. ~~Supp~~Snpp. 3d

201
CASE NO. 2:24-CV-04546-SB(AGRX)
201
AMENDED JOINTLY FILED CLAIMS,
COUNTERCLAIMS, THIRD PARTY CLAIMS, AND
AFFIRMATIVE DEFENSES TO BE TRIED
175468760.1

1061, 1070 (C.D. Cal. 2017), aff d, 742 F. App'x 291 (9th Cir. 2018) ("[A]n implied license, like any other contract, is terminable at the will of either party if it is not for a specified term."). After SPAVEs SPAVFs acquisition of the Potato Corner brand, it became the licensor of the Potato Comer Intellectual Property. Between December of 2021 through 2024, the months immediately preceding this action, SPAVI engaged in a good faith and exhaustive attempt to negotiate the terms of a written license with PCJV. Defendant Guy Koren engaged and participated in this negotiation, but was unwilling to agree to any minimally commercially viable licensing terms. Moreover, Guy Koren refused to, engage in reasonable and good faith negotiation. Instead, he only offered royalty rates and license fees that were more than 90% below what Koren had agreed to be reasonable licensing fees over a decade prior. Koren also repeatedly disengaged from the negotiation process, but still was utilizing the Potato Corner Intellectual Properly. In the three months prior to the termination of the licensing agreement, Koren had gone radio silent, leading SPAVI to believe that it no longer was interested in negotiating a license. Therefore, SPAVI had no option, but to terminate tenninate Coutnerclaimants license of the Potato Comer Intellectual Property.

Additional evidence includes: Testimony of Koren, Plaintiff executives Gregorio (Plaiuntiff s CEO), Concepcion (~~Plaintiffs~~ Plaintiff s COO charged with US operations), Tan (Director responsible for international franchising), Magsaysay (Cinco's CEO); Emails and correspondence with SPAVI, Koren, and PCJV relating to negotiations of a licensing agreement for the use of the Potato Comer Intellectual Property; Amended Joint Venture Agreement; Franchise Agreements; FDDs; Trial Exhibit 29 (May 31, 2024 Termination)

~~iv.~~ Defendants' Supporting Evidence: SPAVI parties have not articulated their defense beyond what is included in their Answers until 7am on August 12, 2025. *See* n. 1. As it is articulated in the Answers, PCJV Parties cannot determine the factual basis for the defense. As such, the out of an abundance of caution, PCJV Parties incorporate

iv.  by reference all of the evidence cited in support of their causes of action. Defendants settled with Plaintiffs predecessor and acquired all of Plaintiff s predecessor's interests in PCJV and all "attached" rights; it did not abandon any rights or obligations under PCJV USA, ~~LLC's~~ EEC's governing documents.

## IV.  <u>Adjudication of Causes of Action, Counter Claims, Third Party Claims, and Affirmative Defenses Not to be Decided by a Jury</u>

The parties request adjudication of the following causes of action, counter claims, third party claims, and affirmative defenses in the following manner and at

the following time:

1) At the conclusion of trial, Plaintiff will seek a permanent injunction and declaratory relief with this Court, as well as for additional relief under the Lanham Act reserved for this Court. At that time, depending on the jury's reaction to the § 1125 unfair competition claim, Plaintiff will present that equitable claim to this Court. Plaintiff will also present at that time its affirmative defense of "One Who Seeks Equity Must Do Equity."

1) 2) PCJV USA Parties request the Court to adjudicate PCJV USA Parties' following causes of action at the conclusion of trial: (1) Declaratory Relief; and (2) Violations of Business & Professions Code §§ 17200, et seq

2) 3) PCJV USA Parties request the Court to adjudicate PCJV USA Parties' following affirmative affinnative defenses at the conclusion of trial: (1) failure to state a claim; (2) consent/acquiescence, ratification, promissory estoppel, equitable estoppel, and judicial estoppel; (3) unclean hands; (4) laches, (5) fraud on USPTO, (6) authorized use, (7) public availability of trade secrets, and (8) lack of at will license agreement

The parties abandoned the following claims:

1) PCJV USA Parties abandon their Accounting cause of action.

2) SPAVI Parties are no longer pursuing the claim for unregistered trademarks.


Dated: August 12 14, 2025                 /s/Michael D. Murphy_____
                                          Michael D. Murphy
                                          Matthew Follett
                                          Jessica Nwasike Fox
                                          Rothschild LLP
                                          *Attorneys for Plaintiff and Counterclaim*
                                          *Defendant, and Third Party Defendants*


Dated: August 12 14, 2025                 _____/s/ Arash Beral _____
                                          Arash Beral Todd M. Malynn Blank

Rome LLP
*Attorneys for Defendants,
Counterclaimants, and Third Party
Plaintiffs*

## CERTIFICATE OF SERVICE

The undersigned certifies that, on August 12, 2025, the foregoing document was electronically filed with the Clerk of the Court for the United States District Court, Central District of California, using the Court's ECF filing system. I further certify that all counsel for all parties to this action are registered CM/ECF users and that service will be accomplished by the CM/ECF system.

I certify under penalty of perjury that the foregoing is true and correct.

Dated: August ~~12~~14, 2025          Fox ROTHSCHILD LLP

/s ~~Michael~~ /*Michael D.* **Murphy** _____
Michael D. Murphy
Attorneys for Plaintiff and Counterclaim
Defendant SHAKEY'S PIZZA ASIA
VENTURES, INC. and Third Party
Defendants CINCO CORPORATION, PC
INTERNATIONAL PTE LTD., and
SPAVI INTERNATIONAL USA, INC.