1   MICHAEL D. MURPHY (SBN 224678)
mdmurphy@foxrothschild.com
2   MATTHEW FOLLETT (SBN 325481)
mfollett@foxrothschild.com
3   JESSICA NWASIKE (SBN 343087)
jnwasike@foxrothschild.com
4   FOX ROTHSCHILD LLP
Constellation Place
5   10250 Constellation Boulevard, Suite 900
Los Angeles, California 90067
6   Telephone: 310.598.4150
Facsimile: 310.556.9828
7

8

9   Attorneys for Plaintiff and Counterclaim
Defendant SHAKEY'S PIZZA ASIA
10   VENTURES, INC. and Third Party Defendants
CINCO CORPORATION, PC
11   INTERNATIONAL PTE LTD., and SPAVI
INTERNATIONAL USA, INC.
12

13       **UNITED STATES DISTRICT COURT**

14       **CENTRAL DISTRICT OF CALIFORNIA**

| | |
|---|---|
| 15   SHAKEY'S PIZZA ASIA VENTURES, INC, a Philippines corporation, | Case No. 2:24-CV-04546-SB(AGRx) |
| 16 | |
| 17           Plaintiff, | *The Hon. Stanley Blumenfeld, Jr.* |
| 18      v. | |
| 19   PCJV USA, LLC, a Delaware limited liability company; PCI TRADING, LLC, a | <span style="color:blue">**SECOND AMENDED**</span> **JOINTLY FILED CLAIMS, COUNTERCLAIMS, THIRD PARTY CLAIMS, AND AFFIRMATIVE DEFENSES TO BE TRIED** |
| 20   Delaware limited liability company; GUY KOREN, an individual; POTATO | |
| 21   CORNER LA GROUP, LLC, a California limited liability company; NKM CAPITAL GROUP, LLC, a California limited liability | |
| 22   company; J & K AMERICANA, LLC, a California limited liability company; J&K | |
| 23   LAKEWOOD, LLC, a California limited liability company; J&K VALLEY FAIR, | |
| 24   LLC, a California limited liability company; J & K ONTARIO, LLC, a | Complaint Filed: ——May 31, 2024 |
| 25   California limited liability company; HLK MILPITAS, LLC, a California, limited | Trial Date:   August ~~18~~26, 2025 |
| 26   liability company; GK CERRITOS, LLC, a California, limited liability company; J&K | |
| 27 | |

———————————————————————

1

28   <span style="color:blue">~~JOINTLY FILED CLAIMS TO BE TRIED~~SECOND AMENDED JOINTLY FILED CLAIMS, COUNTERCLAIMS, THIRD PARTY CLAIMS, AND AFFIRMATIVE DEFENSES TO BE TRIED</span>     CASE NO. 2:24-CV-04546-SB(AGRX)

<span style="color:blue">175689043.1</span>

1  PC TRUCKS, LLC, a California limited
   liability company; and, GK CAPITAL
2  GROUP, LLC, a California limited liability
   company and DOES 1 through 100,
3  inclusive,

4                    Defendants.

5

6  PCJV USA, LLC, a Delaware limited
   liability company; PCI TRADING LLC, a
7  Delaware limited liability company;
   POTATO CORNER LA GROUP LLC, a
8  California limited liability company; GK
   CAPITAL GROUP, LLC, a California
9  limited liability company; NKM CAPITAL
   GROUP LLC, a California limited liability
10 company; and GUY KOREN, an
   individual,

11                 Counter-Claimants,

12       v.

13 SHAKEY'S PIZZA ASIA VENTURES,
   INC, a Philippines corporation,

14                 Counter Defendant.

15

16 PCJV USA, LLC, a Delaware limited
   liability company; PCI TRADING LLC, a
17 Delaware limited liability company;
   POTATO CORNER LA GROUP LLC, a
18 California limited liability company; GK
   CAPITAL GROUP, LLC, a California
19 limited liability company; NKM CAPITAL
   GROUP LLC, a California limited liability
20 company; and GUY KOREN, an
   individual,

21                 Third Party Plaintiffs,

22       v.

23

24 PC INTERNATIONAL PTE LTD., a
   Singapore business entity; SPAVI
25 INTERNATIONAL USA, INC., a
   California corporation; CINCO
26 CORPORATION, a Philippines
   corporation; and DOES 1 through 10,
27 inclusive,

28

                                    2

1 | Third Party Defendants.

2

3 | ~~TABLE OF CONTENTS~~    ~~Page~~

4

5 | ~~I.    Plaintiff Shakey's Pizza Asia Venture's Inc. ("SPAVI" or "Plaintiff):  Claims to be Tried by a Jury.......................................................................5~~

6 | ~~1)    Claim 1: Trademark Infringement Against All Entity Defendants .......5~~

7 | ~~2)    Claim 3: False Designation of Origin and Description of Fact Against~~
8 | ~~All Entity Defendants (15 U.S.C. § 1125):........................................21~~

9 | ~~3)    Claim 4: Contributory Trademark Infringement Against All~~
  | ~~Defendants (Against Guy Koren, PCJV USA, LL, PCI Trading, LLC,~~
10 | ~~Potato Corner LA  Group, LLC; GK Capital,  LLC or NKM Capital~~
11 | ~~Group, LLC)........................................................................................33~~

12 | ~~4)    Claim 5: Contributory False Designation of Origin Against Guy~~
  | ~~Koren, PCJV USA, LL, PCI Trading, LLC, Potato Corner LA  Group,~~
13 | ~~LLC; GK Capital,  LLC or NKM Capital Group, LLC .......................37~~

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

~~JOINTLY FILED CLAIMS TO BE TRIED~~SECOND
AMENDED JOINTLY FILED CLAIMS,
COUNTERCLAIMS, THIRD PARTY CLAIMS, AND
AFFIRMATIVE DEFENSES TO BE TRIED
~~175468760.1~~

CASE NO. 2:24-CV-04546-SB(AGRX)

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

4

~~JOINTLY FILED CLAIMS TO BE TRIED~~SECOND
AMENDED JOINTLY FILED CLAIMS,
COUNTERCLAIMS, THIRD PARTY CLAIMS, AND
AFFIRMATIVE DEFENSES TO BE TRIED
~~175468760.1~~

CASE NO. 2:24-CV-04546-SB(AGRX)

1    ~    Pursuant to Dkt. No. 254, the parties submit the following causes of action,

2    counterclaims, third party claims, and affirmative defenses as at issue for trial.

3    ~~SPAVI further notes that two of its entries in this document are longer than one~~

4    ~~paragraph. With respect to those notes, given their rarity herein, and given the~~

5    ~~number of pleadings disputing those elements themselves, the disagreements abiu~~

6    ~~what can or cannot be presented therein have been extensive and cannot easily  be~~

7    ~~consolidated into one paragraph while communicating the same layered issues.~~

8    ~~SPAVI apologizes to this Court and assures this Court it was not meant as a sign of~~

9    ~~disrespect, bit, rather a sign of the importance of those elements at issue.~~

10   **I.    PLAINTIFF SHAKEY'S PIZZA ASIA VENTURE'S INC. ("SPAVI"**

11        **OR "PLAINTIFF"):  CLAIMS TO BE TRIED BY A JURY.**

12        **1)    Claim 1: Trademark Infringement Against All Entity Defendants**

13        (15 U.S.C. § 1114), regarding the three registered marks at issue: (1) U.S. Reg.

14   No. 5900257: the word mark "Potato Corner" ("Word Mark"); (2) U.S. Reg. No.

15   6088456 protecting "World's Best Flavored  French Fries (the "Slogan Mark"); and

16   (3) U.S. Reg. No. 3760041 (the "Logo Mark") protecting: 

17        a.    Element No. 1: the Word Mark, Slogan Mark, and/or the Logo

18            Mark (all collectively, the "Marks") are valid and protectible

19            trademarks:

20            1.    This element is not disputed.

21        b.    Element No. 2: Plaintiff owns the Word Mark, Slogan Mark,

22            and/or the Logo Mark

23            1.    This element is disputed.

24            2.    Nature of Dispute: Legal and Factual

25            3.    Plaintiff's Legal Position: Defendants do not dispute that

26                the registrations for all three Marks (Trial Exhibit Nos. 1,

27                3, and 5) identify Cinco as the registrant and the first to use

28

5

**Formatted:** Normal, Line spacing:  Exactly 24 pt, Don't keep with next, Don't keep lines together

each of the three Marks, nor do Defendants dispute that the Deeds of Assignment attached to the notices filed with the USPTO (Trial Exhibit Nos. 4 and 6) confirm that, unequivocally and without exception, the entirety of these Marks were sold and assigned to Plaintiff, along with all the goodwill arising out of or associated with the Marks. Defendants also do not dispute the testimony of Seller (Cinco) and Buyer (SPAVI) that the Deeds are accurate in every way, that the sale and assignments were comprehensive, without carve outs, and fully consummated. Instead, Defendants take internally inconsistent positions that are contradicted by various legal doctrine, including: **(1) Licensee Estoppel,** wherein PCJV (as well as all other Defendants that operate or own a business using the Marks), as a licensee of Cinco (and subsequently SPAVI) through the implied license or even the unsigned Master License Agreement claimed by Defendants to be binding "may not set up any adverse claim in it as against its licensor." *Pac. Supply Co-op. v. Farmers Union Cent. Exch. Inc.,* 318 F.2d 894, 908 (9th Cir. 1963). **(2) The Lanham Act provisions rendering Defendants' positions contrary to federal law**, in that Defendants' attempts to claim that the first time they used the Marks should be credited to them, even though they were acting as licensees of PCJV or Defendants' claim of ownership of the goodwill created through PCJV's stores (operated as licensees) inured to Defendants' benefit

6

1   contradicts 15 USC § 1055 (as well as the unsigned Master

2   License Agreement they claimed to be adhering to this

3   whole time). **(3) Law of the case**, in that Defendants'

4   challenge to Plaintiff's ownership of the Marks based on

5   Defendants' first use as licensee of Cinco has already been

6   resolved by this Court and the Ninth Circuit, which held

7   that "it is undisputed that Cinco registered the three marks

8   at issue then transferred ownership of those marks to

9   SPAVI." The Ninth Circuit then explicitly rejected PCJV's

10  theories that it was the first to use the marks domestically

11  by holding that "in the licensor-licensee context, a

12  licensee's use of a trademark inures to the benefit of the

13  licensor-registrant" (*Shakeys Pizza Asia Ventures, Inc. v.*

14  *PCJV USA, LLC*, No. 24-7084, 2025 WL 1431270, at *1

15  (9th Cir. May 19, 2025)), thus rendering, for example, any

16  allegation by PCJV of its use as a licensee as being proof

17  of its first use cannot serve as a basis to challenge SPAVI's

18  ownership because this theory has been considered and

19  rejected by the Ninth Circuit in this case, as has also the

20  various other legal theories of Defendants offered during

21  the injunction stage that are based on the same facts

22  asserted during the injunction and rejected by this Court.

23  Even at the injunction stage, rulings by this Court and the

24  Ninth Circuit "on pure issues of law, however, are

25  binding. *Ranchers Cattlemen Action Legal Fund United*

26  *Stockgrowers of Am. v. U.S. Dep't of Agr.*, 499 F.3d 1108,

27  1114 (9th Cir. 2007); s*ee, e.g. Arizona v. California*, 460

28

U.S. 605, 618 (1983) (citing the rule as being "when a court decides upon a rule of law, that decision should continue to govern the same issues in subsequent stages in the same case"). **(4) Authorities cited by Defendants do not support their position, including _Sengoku_,** which presented a distinguishable case – a foreign manufacturer that was the first to use versus the domestic distributor that was the registrant, whereas in this case the foreign licensor is both the first to use and the registrant – and yet, Defendants continue to cite it as supporting their claim of ownership or rights, and it does not. **(5) The merger doctrine,** wherein the purchase and sale agreement between Cinco and SPAVI selling and agreeing to assign to SPAVI the Potato Corner marks and brand merge into the undisputed and unequivocal deeds that are notarized and ratified by Buyer and Seller (Trial Exhibit Nos. 4 and 6) such that these Deeds would control if there was any inconsistency between the purchase and sale agreement and the deed (there is not, as those agreements said nothing about and acknowledged no rights held by any of the Defendants), such that Defendants' speculative theory that the purchase and sale agreement between Cinco and SPAVI reserved some rights for Defendants cannot even be presented to the jury given that the Deeds do not reserve anything for Defendants – a doctrine that applies in federal intellectual property cases and renders any questions as to what the deal between SPAVI and Cinco actually said,

~~JOINTLY FILED CLAIMS TO BE TRIED~~SECOND AMENDED JOINTLY FILED CLAIMS, COUNTERCLAIMS, THIRD PARTY CLAIMS, AND AFFIRMATIVE DEFENSES TO BE TRIED
~~175468760.1~~

CASE NO. 2:24-CV-04546-SB(AGRX)

irrelevant. *See, e.g., Palos Verdes Corp. v. Hous. Auth. of Los Angeles Cnty.,* 202 Cal. App. 2d 827, 836 (1962) (explaining that "if the language of a deed is plain, certain, and unambiguous, neither parol evidence nor surrounding facts and circumstances will be considered to add to, detract from, or vary its terms or to determine the estate conveyed); *B. F. Goodrich Co. v. A. T. I. Caribe, Inc.,* 366 F. Supp. 464,467 (D. Del. 1973) (applying this concept in the intellectual property context). **(6) Standing**, in that none of the Defendants were party to the transaction between Cinco and Plaintiff, and as such, have no standing to question whether the Deeds (notarized and ratified) represent the actual deal between Cinco and SPAVI or some other imagined reservation of their rights supposedly contained in the purchase and sale agreement that did not make it into the Deeds (a fantasy that did not happen). *See, e.g. Imperial Residential Design, Inc. v. Palms Dev. Grp., Inc.*, 70 F.3d 96, 99 (11th Cir. 1995) (agreeing that "that, where there is no dispute between the copyright owner and the transferee about the status of the copyright, it would be unusual and unwarranted to permit a third-party infringer to invoke [the requirement of a writing memorializing the status] to avoid suit for copyright infringement."). **(7) Judicial estoppel**, in his sworn allegations in the Prior Governance Action (*Cinco Corporation et. al. v. Guy Koren et. al.* Los Angeles Superior Court Case No. BC701075), Koren admitted repeatedly including in

1    verified allegations that Cinco "owned the Potato Corner

2    brand" (Trial Exhibit No. 1421, ¶ 26), an allegation that

3    Cinco ***admitted*** (Trial Exhibit, No. 1422, ¶ 26.), such that

4    PCJV and Koren must be barred from making a "factual

5    assertion" that Cinco did not own the brand "which

6    directly contradicts an earlier assertion made in the same

7    proceeding or a prior one.'" Un*ited States v. Lence*, 466

8    F.3d 721, 726 (9th Cir. 2006) (citing and quoting *Russell v.*

9    *Rolfs,* 893 F.2d 1033, 1037 (9th Cir.1990)).

10    4.    Defendants' Position Statement: The ownership issues

11    framed by the Proposed Final Pretrial Conference Order

12    (Dkt. No. 244), the Memoranda of Contentions of Law and

13    Fact (Dkt. Nos. 197 and 199) and pleadings are: (1) senior

14    use under *Sengoku*, including actual first use (restructure in

15    2009) and lawful first use, *see CreAgri, Inc. v. USANA*

16    *Health Services, Inc.*, 474 F3d 626, 630 (9th Cir. 2007); (2)

17    continuous use under 15 U.S.C § 1055; (3) assignment in

18    gross; (4) acquisition of "attached" rights by the PCJV

19    USA Parties and Plaintiff's corresponding denial of

20    acquiring burdens attached to the trademarks; (5) naked

21    license; and (6) priority favoring Defendants based on

22    other defenses. Plaintiff's proffered statement is non-

23    responsive. It is a combative, inappropriate and false

24    narrative of Defendants' position, record evidence,

25    preliminary rulings and the ownership issues for trail as set

26    forth in the Proposed Final Pretrial Conference Order (Dkt.

27    No. 244), Memorandums of Contentions of Law and Fact

28

1    (Dkt. Nos. 197 and 199) and pleadings. "The court's
2    preliminary injunction did not make final factual
3    determinations; no party moved for summary judgment;
4    and the jury needs to be instructed on the claims asserted
5    in this case." Dkt. No. 254 at 2. Plaintiff's unpled defenses
6    of infringer standing, licensee estoppel, judicial estoppel,
7    and merger (parol evidence) doctrine are not issues for trial
8    per the Proposed Final Pretrial Conference Order (Dkt. No.
9    244) or Plaintiff's Memorandum of Contentions of Law
10    and Fact (Dkt. No. 199). Plaintiff's asserted "legal
11    positions," which seek to avoid a trial on the merits, are
12    also based on inapplicable authority (or no authority at all)
13    and misstate the record. For these reasons, including
14    because Plaintiff's "legal positions" go beyond identifying
15    the actual ownership issues set for trial, Defendants will
16    address them if or when they arise after the evidence on
17    ownership is presented at trial

18    5.    Plaintiff's Supporting Evidence: Notarized Deeds signed
19        by seller and buyer; USPTO filings including Registrations
20        and Assignments, testimony of Gregorio (Plaintiff's CEO),
21        Magsaysay (Cinco's CEO), Koren, Ybanez (Plaintiff's
22        General Counsel), FDDs, Franchise Agreements.

23    6.    Defendants' Supporting Evidence: documents and
24        testimony including and related to (1) Defendants' senior
25        use and quality control of Potato Corner in the United
26        States; (2) the superseding partnership agreement; (3) DLA
27        Piper's notification of Cinco Corporation's unlawful use of

28

1    Potato Corner in the United States; (4) the State of
2    California's Department of Business Oversight's Order
3    sanctioning PCJV USA, LLC for Cinco Corporation's
4    alleged prior use of Potato Corner in the United States; (5)
5    the superseding and restructure agreement confirmed by
6    Guy Koren and Jose Magsaysay vesting ownership of
7    Potato Corner in their partnership; (6) the joint venture
8    agreement vesting co-ownership of Potato Corner in the
9    United States in PCJV USA, LLC; (7) control over Potato
10   Corner in the United States being vested with and exercised
11   by PCJV USA, LLC; (8) Potato Corner USA being affixed
12   to Potato Corner in the United States; (9) consumer
13   association of Potato Corner in the United States with
14   PCJV USA, LLC, to whom complaints, if any, were
15   lodged; (10) PCJV USA, LLC's creation, development and
16   hold over the goodwill of Potato Corner in the United
17   States for over a decade; (11) absent a license agreement,
18   which SPAVI Parties disavow, PCJV USA, LLC's use
19   inured to its own benefit; (12) Cinco Corporation's lack of
20   control of Potato Corner in the United States for over a
21   decade; (13) Defendants' objection to Plaintiff's alleged
22   acquisition of U.S. trademark rights in breach of Cinco
23   Corporation's fiduciary duties and PCJV USA, LLC's joint
24   venture agreement ("JVA") and First Amendment thereto
25   ("First Amendment") given that Plaintiff was disavowing
26   the existence of a license agreement; (14) Cinco
27   Corporation assigned U.S. Potato Corner trademarks to
28

JOINTLY FILED CLAIMS TO BE TRIEDSECOND
AMENDED JOINTLY FILED CLAIMS,
COUNTERCLAIMS, THIRD PARTY CLAIMS, AND
AFFIRMATIVE DEFENSES TO BE TRIED
175468760.1

CASE NO. 2:24-CV-04546-SB(AGRX)

Plaintiff without the goodwill associated with the trademarks; (15) Plaintiff's lack of control of Potato Corner in the United States after it allegedly acquired the U.S. trademarks; (16) Defendants' Membership Interest Purchase Agreement ("MIPA") with Cinco acquiring all of its Interests in PCJV USA, LLC and all rights "attached" thereto unencumbered by a need for a license from any third party; (17) Plaintiff's denial of stepping into Cinco Corporation's shoes and acquiring the licensing burdens attached to the U.S. trademarks; and (18) Plaintiff's suppression of ownership evidence.

    c.    <u>Element No. 3</u>: Defendants used the Word Mark, Slogan Mark, and/or the Logo Mark in interstate commerce after May 31, 2024:

        1.    This element is undisputed.

    d.    <u>Element No. 4</u>: Defendants' use of the Word Mark, Slogan Mark, and/or the Logo Mark in interstate commerce after May 31, 2024, was without the consent of Plaintiff and in a manner likely to cause confusion among ordinary consumers as to the source, sponsorship, affiliation, or approval of the services.

        1.    This element is disputed.

        2.    <u>Nature of Dispute</u>: Legal and Factual

        3.    <u>Plaintiff's Legal Position</u>: <u>As for absence of consent</u>, given the absence of any ownership rights, Defendants must locate some right as a licensee of the owner (SPAVI). Defendants offer two documents proffered as agreements that bind Cinco to a perpetual license. Neither work as a matter of law. First, they offer the unsigned October 10,

~~JOINTLY FILED CLAIMS TO BE TRIED~~SECOND AMENDED JOINTLY FILED CLAIMS, COUNTERCLAIMS, THIRD PARTY CLAIMS, AND AFFIRMATIVE DEFENSES TO BE TRIED
~~175468760.1~~

CASE NO. 2:24-CV-04546-SB(AGRX)

1  2010, document containing terms for a Master License

2  Agreement (Trial Exhibit No. 11), which this Court (and

3  the Ninth Circuit) have reviewed. Both have interpreted it

4  as a matter of law, concluding that it is an unsigned draft

5  (as Koren's testimony has confirmed) and illusory because

6  the licensor is given no consideration for this purported

7  agreement. The unsigned document cannot, as a matter of

8  law, have bound Cinco, even through implied contract law,

9  because Cinco did not do anything in furtherance of that

10  document to imply its assent. Moreover, multiple times

11  after October 10, 2010, documents were signed stating that

12  Cinco would be expecting a 30% royalty recovery. Second,

13  Plaintiffs point to § 3(g) of an Amended Joint Venture

14  Agreement (and its predecessor the Joint Venture

15  Agreement) – Trial Exhibit Nos. 8 and 9 – which this Court

16  has already interpreted to constitute an agreement to agree,

17  in the future, with Cinco on a license agreement. As the

18  Ninth Circuit said in affirming this conclusion, "the AJVA

19  contained an agreement to enter a *future* Master License

20  Agreement, not a "perpetual license" like PCJV claims."

21  *Shakeys Pizza Asia Ventures, Inc. v. PCJV USA, LLC*, No.

22  24-7084, 2025 WL 1431270, at *1 (9th Cir. May 19, 2025)

23  (citing *First Nat'l Mortg. Co. v. Fed. Realty Inv. Tr.*, 631

24  F.3d 1058, 1065 (9th Cir. 2011) ("[A]n 'agreement to

25  agree,' without more, is not a binding contract."). This

26  interpretation of the AJVA and JVA is a legal conclusion,

27  which, as affirmed  by the Ninth Circuit are legal

28

JOINTLY FILED CLAIMS TO BE TRIEDSECOND AMENDED JOINTLY FILED CLAIMS, COUNTERCLAIMS, THIRD PARTY CLAIMS, AND AFFIRMATIVE DEFENSES TO BE TRIED 175468760.1

CASE NO. 2:24-CV-04546-SB(AGRX)

1    conclusions, and, as such,  these are  pure conclusions of

2    law, which means: **this Court's conclusion that § 3(g) of**

3    **the JVA and AJVA are agreements to agree and do not**

4    **bind Cinco  to a "perpetual license" are law of the  case**

5    **and  cannot  be  disturbed  or  challenged  at  trial**.  This

6    theory  based  on  interpretation  of  a  contract  has  been

7    considered and rejected by this Court and the Ninth Circuit

8    in  this  case,  and  because  it   is   a  "pure  issue[]  of  law,

9    however,  [it  is]  binding"  on  Defendants  under  law  of  the

10   case.  *Ranchers  Cattlemen  Action  Legal  Fund  United*

11   *Stockgrowers  of  Am.  v.  U.S.  Dep't of Agr*., 499 F.3d 1108,

12   1114 (9th Cir. 2007); s*ee, e.g. Arizona v. California*, 460

13   U.S.  605,  618  (1983)  ((citing  the  rule  as  being  "when  a

14   court  decides  upon  a  rule  of  law,  that  decision  should

15   continue to govern the same issues in subsequent stages in

16   the  same  case").  Defendants  now  trot  out  other  theories

17   such as the fact that the JVA and prior Operating Agreement

18   are still somewhat live under a theory of partial integration,

19   however,  the  following  point  prevails  over  each  of  these

20   contortions:  Defendants  can  point  to  no  agreement  or

21   document,    or  acct,  or  statement,  binding  Cinco  to  a

22   perpetual,  irrevocable,  royalty  free  licensee  of  its  Marks.

23   As  such,  in  the  absence  of  any  written   agreement,  or

24   documentation of any license terms, the sole license that

25   existed as of May 31, 2024, was implied and terminable at

26   will   *See Pogrebnoy v. Russian Newspaper Distribution,*

27   *Inc.*, 289 F. Supp. 3d 1061, 1070 (C.D. Cal. 2017), *aff'd*,

28

~~JOINTLY FILED CLAIMS TO BE TRIED~~SECOND AMENDED JOINTLY FILED CLAIMS, COUNTERCLAIMS, THIRD PARTY CLAIMS, AND AFFIRMATIVE DEFENSES TO BE TRIED
~~175468760.1~~

CASE NO. 2:24-CV-04546-SB(AGRX)

1  742 F. App'x 291 (9th Cir. 2018) ("[A]n implied license,
2  like any other contract, is terminable at the will of either
3  party if it is not for a specified term."). One final flaw exists
4  in the attempt to bind Cinco to the AJVA, and that is one
5  of issue preclusion in favor of Plaintiffs. As evidenced by
6  Plaintiff's own Third Amended Complaint (verified) in the
7  Prior Governance Action, the entire pleading is based on
8  the theory that -- and it sought judgment concluding that -
9  - Cinco is an alter ego of the entity that was a 60% member
10  of PCJV. (*See* Trial Exhibit No. 1421 p. 7:3-14.) Such
11  allegations, having been dismissed, with  prejudice, by
12  Koren, re4nder thee accusations extinguished, and, as such,
13  Defendants are precluded from alleging them ever again.
14        Regarding likelihood of confusion,  which may be
15  resumed, and the jury  may  be so  instructed "[w]here,' as
16  here, "a licensee persists in the unauthorized use of a
17  licensor's trademark, courts have found that the continued
18  use alone establishes a likelihood of consumer
19  confusion." *Robert Trent Jones II, Inc. v. GFSI, Inc*., 537
20  F. Supp. 2d 1061, 1065 (N.D. Cal. 2008) (citing and
21  quoting *Sun Microsystems v. Microsoft Corp.,* 999
22  F.Supp. 1301, 1311 (N.D.Cal.1998) (citing *Paisa, Inc. v.
23  N & G Auto, Inc.,* 928 F.Supp. 1009, 1012 n. 4
24  (C.D.Cal.1996); *Hollywood Athletic Club,* 938 F.Supp. at
25  614–15 (C.D.Cal.1996)). The Sixth Circuit's analysis in
26  Max Rack, Inc. v. Core Health & Fitness, LLC, 40 F.4th
27  454, 464 (6th Cir. 2022) is instructive:
28

16

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

"A separate body of law has developed for this distinct claim that a holdover licensee has continued to use a licensor's mark after their agreement expired. *See* 4 McCarthy, *supra*, § 25:31 (citing cases). In this context, courts have jettisoned the usual totality-of-the-circumstances test in favor of a more categorical rule: "proof of continued, unauthorized use of an original trademark by one whose license to use the trademark had been terminated is sufficient to establish 'likelihood of confusion.' " *U.S. Structures, Inc. v. J.P. Structures, Inc.*, 130 F.3d 1185, 1190 (6th Cir. 1997); *ITT Indus., Inc. v. Wastecorp. Inc.*, 87 F. App'x 287, 293 (3d Cir. 2004); *Gorenstein Enters., Inc. v. Quality Care-USA, Inc.*, 874 F.2d 431, 435 (7th Cir. 1989); *Burger King Corp. v. Mason*, 710 F.2d 1480, 1492–93 (11th Cir. 1983); *Pro. Golfers Ass'n of Am. v. Bankers Life & Cas. Co.*, 514 F.2d 665, 670 (5th Cir. 1975); *L & L Wings, Inc. v. Marco-Destin, Inc.*, 676 F. Supp. 2d 179, 188 (S.D.N.Y. 2009). This rule makes good sense when a holdover licensee blatantly infringes the licensor's mark by using that mark in the same way as it did before the agreement expired. Without any need to tick through factors, it should be obvious that consumers will believe, for example, that a pizza restaurant remains affiliated with the "Little Caesars" chain when a terminated franchisee continues to operate the pizzeria as a Little Caesars. *See Little Caesar Enters., Inc. v. Miramar Quick Serv. Rest. Corp.*, 2020 WL 4516289, at *3 (6th Cir. 2020) (order)"

Although Plaintiff intends to, and will, adduce proof of the *Sleekcraft* factors, the presumption exists, and it is entitled to

17

~~JOINTLY FILED CLAIMS TO BE TRIED~~SECOND AMENDED JOINTLY FILED CLAIMS, COUNTERCLAIMS, THIRD PARTY CLAIMS, AND AFFIRMATIVE DEFENSES TO BE TRIED
175468760.1

CASE NO. 2:24-CV-04546-SB(AGRX)

stand on this presumption alone. *See also, Brookfield Commc'ns, Inc. v. W. Coast Ent. Corp.*, 174 F.3d 1036, 1056 (9th Cir. 1999) ("In light of the virtual identity of marks, if they were used with identical products or services likelihood of confusion would follow as a matter of course"); *Park 'n Fly, Inc. v. Dollar Park & Fly, Inc*., 782 F.2d 1508, 1509 (9th Cir. 1986) (holding that when marks and services are identical and channels are the same, likelihood of confusion is assumed, even if the other factors weight against); *see also Blue Mako Inc. v. Minidis*, No. CV 07-916 AHM (SHX), 2008 WL 11334205 (C.D. Cal. June 23, 2008) (applying these principles to similar facts). Although Plaintiff intends to, and will, adduce proof of the *Sleekcraft* factors, the presumption exists, and it is entitled to stand on this presumption alone.

4.  <u>Defendants' Position Statement:</u> If Defendants are not found to have a superior claim to ownership, authorization issues framed by the Proposed Final Pretrial Conference Order (Dkt. No. 244), the Memoranda of Contentions of Law and Fact (Dkt. Nos. 197 and 199) and pleadings are whether, based on a partnership meeting of the minds, governing documents, course of performance, fiduciary and contractual obligations, the implied covenant of good faith and fair dealing, and reasonable and detrimental reliance: (1) PCJV USA, LLC had a "lifetime" license as a joint venture partner; (2) PCJV USA, LLC had a 20-year license with three 10-year options; (3) PCJV USA, LLC had a non-terminable-at-will license; (4) Plaintiff owed

fiduciary or contractual obligations to provide PCJV USA,
LLC a long-term license consistent with the PCJV USA
Parties being joint venture partners, *see* J. Thomas
McCarthy, *McCarthy on Trademarks and Unfair
Competition,* § 18:15, at (5th ed.) ("'It is elementary
ancient law that an assignee never stands in any better
position than his assignor'") (citation omitted); and (5)
other defenses to enforcement, including promissory
estoppel, authorizing PCJV USA, LLC's continued use of
the U.S. trademarks. Plaintiff's proffered statement is non-
responsive. It is a combative, inappropriate and false
narrative of record evidence, preliminary rulings and the
authorization issues for trail as set forth in the Proposed
Final Pretrial Conference Order (Dkt. No. 244),
Memoranda of Contentions of Law and Fact (Dkt. Nos.
197 and 199) and pleadings. "The court's preliminary
injunction did not make final factual determinations; no
party moved for summary judgment; and the jury needs to
be instructed on the claims asserted in this case." Dkt. No.
254 at 2. Plaintiff's asserted "legal positions," which seek
to avoid a trial on the merits, are also based on inapplicable
authority (or no authority at all) and misstate the record.
For these reasons, including because Plaintiff's "legal
positions" go beyond identifying the actual authorization
issues set for trial, Defendants will address them if or when
they arise after the evidence on PCJV USA LLC's

JOINTLY FILED CLAIMS TO BE TRIEDSECOND
AMENDED JOINTLY FILED CLAIMS,
COUNTERCLAIMS, THIRD PARTY CLAIMS, AND
AFFIRMATIVE DEFENSES TO BE TRIED
175468760.1

CASE NO. 2:24-CV-04546-SB(AGRX)

1    authorization to continue using the U.S. trademarks is

2    presented at trial.

3    5.    Plaintiff's Supporting Evidence: Trial Exhibit 29 (May 31,

4          2024 Termination); photographs of various stores taken

5          from May 31, 2025 through the present; Testimony of

6          Koren; Plaintiff executives Gregorio (Plaiuntiff's CEO),

7          Concepcion (Plaintiff's COO charged with US operations),

8          Tan (Director responsible for international franchising);

9          investigator; Franchisees; Kim Lambert and Barry Kurtz;

10         in addition to  the following documents Amended Joint

11         Venture Agreement and Joint Venture Agreement.

12   6.    Defendants' Supporting Evidence:  documents  and

13         testimony including and related to (1) Defendants' senior

14         use and quality control of Potato Corner in the United

15         States; (2) the superseding and restructure agreement

16         confirmed by Guy Koren and Jose Magsaysay vesting

17         partnership rights to build, develop and control Potato

18         Corner in the United States; (3) the joint venture agreement

19         vesting lifetime partnership rights to build, develop and

20         control Potato Corner in the United States; (4) absent a

21         license agreement, which SPAVI Parties disavow, PCJV

22         USA, LLC's owns the U.S. Potato Corner marks as its use

23         inured to its own benefit; (5) all the terms and conditions

24         of the JVA and First Amendment thereto controlling

25         licensing, approval of franchisee agreements, including as

26         disclosed in franchise disclosure documents ("FDDs"), and

27         management and operations of Potato Corner in the United

28

1        States; (6) parol evidence regarding the partners' meeting

2        of the minds; (7) the JVA's related agreements, which

3        remained operative and under which Cinco Corporation

4        remained a fiduciary and party to the JVA after the First

5        Amendment as confirmed a plethora of documentary

6        evidence; (8) the license agreements setting forth the terms

7        and conditions upon which PCJV USA, LLC's senior use

8        and control of Potato Corner in the United States would

9        inure to the benefit of Cinco Corporation, which the SPAVI

10       Parties now disavow, even though Cinco Corporation

11       offered it through DLA Piper, or thereafter accepted,

12       countersigned or otherwise entered into the license

13       agreements as evidenced in many writings and agreed and

14       approved of in FDDs; (9) course of performance for more

15       than a decade as evidenced by approved FDDs, which

16       ratified the license agreements and confirmed an entered

17       into license agreement; (10) reasonable and detrimental

18       reliance; (11) fiduciary obligations, the implied covenant

19       of good faith and fair dealing, and the JVA and First

20       Amendment's plain acknowledgement that there are no

21       terminable-at-will branding rights; (12) Plaintiff's denial of

22       stepping into Cinco Corporation's shoes and acquiring the

23       licensing burdens attached to the U.S. trademarks; and (13)

24       Plaintiff's suppression of authorization evidence

25    e.   <u>Element No. 5</u>: Damage caused by infringement designation.

26       1.   This element is disputed.

27       2.   Nature of Dispute: ~~factual~~<u>Legal and Factual</u>

28

3.    Plaintiff's Position Statement: The standard to be followed is set forth in 15 USC § 1117 which only requires this Court's approval in equity to proceed with money damages. The Courts have, contrary to Defendant's apparent position, removed the requirement of willfulness to obtain disgorgement., *Romag Fasteners, Inc. v. Fossil, Inc.*, ⸺ U.S. ⸺, 140 S. Ct. 1492, 1495-97, 206 L.Ed.2d 672 (2020) (holding willfulness is not a precondition to disgorgement of profits under the Lanham Act). (Dkt. No. 594.) Defendants ignore the difference between normal infringement and this case, the holdover licensee, where the standard for likelihood of confusion is lowered, and even sometimes presumed, and irreparable harm is also presumed. The Lanham Act allows Defendants to raise the other arguments to rebut the presumption of irreparable harm, but the standard as applied here allows for disgorgement

4.    Defendants' Position Statement: Likelihood of confusion, when coupled with likely irreparable harm, is the standard for injunctive relief, the primary remedy under the Lanham Act (*National Grange of the Order of Patrons of Husbandry v. Cal. State Grange*, 182 F.Supp. 3d 1065, 1071 (E.D. Cal. 2016)), the benefits of which Plaintiff has already obtained in this case by flipping franchisees under contract with Defendants to join its organization—notwithstanding PCJV USA, LLC's rebranding rights and obligations disclosed in FDDs; Plaintiff fails to

**Formatted:** No underline

**Formatted:** Font: Italic

JOINTLY FILED CLAIMS TO BE TRIEDSECOND AMENDED JOINTLY FILED CLAIMS, COUNTERCLAIMS, THIRD PARTY CLAIMS, AND AFFIRMATIVE DEFENSES TO BE TRIED
175468760.1

CASE NO. 2:24-CV-04546-SB(AGRX)

acknowledge its legal and higher burden of proof to establish an entitlement to monetary recovery, whether legal damages (which Plaintiff is not pursuing as there is no evidence it has a legal right to conduct a franchise business in California or elsewhere in the United States) or disgorgement—both of which stem from actual confusion in the market not attributable to Plaintiff's own conduct as proof of a defendant actually trading on the goodwill of another resulting in either lost profits or unjust enrichment (*Gracie v. Gracie*, 217 F.3d 1060, 1068 (9th Cir. 2000)); in addition to there being no consumer survey evidence or probative evidence of actual confusion not attributable to Plaintiff's own conduct (let alone attributable to trademark infringement), Defendants' exercise of bona fide good faith belief not to waive (a) pre-existing partnership (whether ownership or authorization) rights and obligations to use and control the U.S. trademarks and to equally receive service fees if any royalties were paid to the registrant when (b) Plaintiff allegedly acquired U.S. Potato Corner trademarks in the middle of franchise litigation between joint venture partners, (c) over Defendants' objection, (d) initiating this lawsuit in a conspiracy 3 days after the settlement with Plaintiff's assignor to circumvent a state court injunction rather than go to trial in state court, (e) disregarding a tolling agreement to continue discussions and not filing an action for declaratory relief if there was an impasse to determine who has superior trademark rights,

23

1    (f) creating the risk of marketplace confusion by virtue of

2    its own conduct; and (e) suppressing evidence, including

3    properly served discovery ordered to be produced, does not

4    satisfy Plaintiff's legal burden of proof. *See Yuga Labs,*

5    *Inc. v. Ripps*, Case No. CV 22-4355-JFW(JEMx), 2023

6    WL 7089922, at *10 (C.D. Cal. Oct. 25, 2023) (while

7    totality of the circumstances are used to determine an

8    award of profits, "defendant's mental state is 'a highly

9    important consideration . . . .'").

10    ~~3.~~5.    Plaintiff's Supporting Evidence:    Defendants have

11    produced financials for the period in question May 31,

12    2024 through the present, and, given that the entirety of

13    their business is built of the confusion, we only need to

14    prove profits which can be disgorged. Thus, the financials

15    as well as Koren testimony and testimony of franchisees as

16    well as correspondence regarding costs of goods sold as

17    well as the testimony of the CFO of Shakey's will establish

18    damage. No expert is needed for arithmetic. To    the

19    contrary, it is Defendant who bears a heavier burden of

20    establishing what costs or expenses "actually contributed

21    to the sale of the infringing products." *Monster Energy Co.*

22    *v. Integrated Supply Network, LLC*, 533 F. Supp. 3d 928,

23    938 (C.D. Cal. 2021)

24    ~~4.    Defendants' Supporting Evidence:~~

25    6.    Defendant's Supporting Evidence: documents and

26    testimony including and related to (1) the parties' meeting

27    of the minds and partnership agreement to co-own Potato

28

~~JOINTLY FILED CLAIMS TO BE TRIED~~SECOND
AMENDED JOINTLY FILED CLAIMS,
COUNTERCLAIMS, THIRD PARTY CLAIMS, AND
AFFIRMATIVE DEFENSES TO BE TRIED
175468760.1

CASE NO. 2:24-CV-04546-SB(AGRX)

Corner in the United States, where Defendants promised to contribute services and Plaintiff promised to vest IP rights in the partnership as supported by written agreements and verified pleadings; (2) the JVA and related agreements vesting licensing and quality control in PCJV USA, LLC's President, approval of franchise agreements, including as disclosed in FDDs, in PCJV USA, LLC's Management, and authority to manage Potato Corner in the United States in PCJV USA, LLC's executive officers (not Cinco Corporation); (3) absent a license agreement, PCJV USA, LLC's use of the U.S. Potato Corner marks inured to PCJV USA, LLC's benefit; (4) Defendants' continuing authorization to use the U.S. Potato Corner trademarks under a lifetime, 50-year, or non-terminable-at-will license, including for the reasons stated herein; (5) Defendants' objection to Plaintiff's announced plans to acquire Cinco Corporation's assets and liabilities, but representations to Defendants that they would be bound by a settlement with Cinco resolving licensing issues; (6) the parties' tolling agreement, including to continue discussions after Defendants separately settled with Cinco Corporation; (7) Plaintiff and Cinco Corporation's bad faith conspiracy to initiate this lawsuit 3 days after the settlement with Plaintiff's assignor to circumvent a state court injunction rather than go to trial in state court or settle with Defendants; (8) Plaintiff's own misconduct creating the risk of marketplace confusion; (9) no consumer survey

JOINTLY FILED CLAIMS TO BE TRIEDSECOND AMENDED JOINTLY FILED CLAIMS, COUNTERCLAIMS, THIRD PARTY CLAIMS, AND AFFIRMATIVE DEFENSES TO BE TRIED

CASE NO. 2:24-CV-04546-SB(AGRX)

175468760.1

1  evidence or evidence of marketplace confusion attributable
2  to trademark infringement or unfair competition that is the
3  subject of this case; (10) Plaintiff's suppression of
4  evidence, including properly served discovery ordered to
5  be produced; (11) no evidence of unjust enrichment,
6  including no net profits or net profits attributable to the
7  alleged infringement at issue, to disgorge; and (12) no
8  evidence regarding individual Defendants' responsibility

9  **2)**  **Claim 3: False Designation of Origin and Description of Fact**
10  **Against All Entity Defendants (15 U.S.C. § 1125):**

11  a.  Element No. 1: The Defendants used a designation, such as a
12  word, term, name, device, or a combination thereof, or a false
13  designation of origin:

14  1.  This element is disputed.

15  2.  Nature of Dispute: Legal and Factual

16  3.  Plaintiff's Position Statement: This is essentially the
17  federal version of our § 17200 claim in that, when looked
18  at in its entirety, fits squarely within what was intended by
19  15 USDCD 1125(a)(1)(A). By continuing to operate using
20  the same federal trademarks, menu layouts, and color
21  schemes, and promotes its new brand as having the 'same
22  taste' after having reverse engineered the flavorings and
23  then used that, plus the menu that is unchanged – same
24  colors, fonts, pictures, layout, even same product names –
25  and all of this is likely to cause consumer confusion
26  regarding the source or origin of the goods or services, as
27  customers may believe the new business is still affiliated

28

JOINTLY FILED CLAIMS TO BE TRIEDSECOND
AMENDED JOINTLY FILED CLAIMS,
COUNTERCLAIMS, THIRD PARTY CLAIMS, AND
AFFIRMATIVE DEFENSES TO BE TRIED
175468760.1

CASE NO. 2:24-CV-04546-SB(AGRX)

1    with or originates from the original brand. *See generally*

2    *Blue Mako Inc. v. Minidis*, No. CV 07-916 AHM (SHX),

3    2008 WL 11334205 (C.D. Cal. June 23, 2008) (applying

4    these principles to similar facts).

5        4.    <u>Defendants' Position Statement:</u> The legal issues set for

6    trial in the Proposed Final Pretrial Conference Order (Dkt.

7    No. 244), Memoranda of Contentions of Law and Fact

8    (Dkt. Nos. 197 and 199) and pleadings regard ownership

9    of and authorization to use the U.S. Potato Corner

10   trademarks; there is no "trade dress" issue in the pleadings

11   set for trial. Moreover, "same as" comparative advertising

12   of taste or fragrance is not unfair competition. *Smith v.*

13   *Chanel*, Inc., 402 F.2d 562, 563 (9th Cir. 1968). Further,

14   proffered "former location" confusion is not actionable in

15   California (*see* Bus. & Prof. Code § 16600) nor proves or

16   is probative of ordinary consumer confusion that is the

17   subject of the Lanham Act after the market settles from a

18   partnership divorce, especially after Plaintiff is the one

19   who changed the *status quo* and caused any confusion

20       5.    <u>Plaintiff's Supporting Evidence:</u> Photographs and

21   testimony from former franchisees, the COO of SPAVI,

22   Mr. Concepcion, as well as the testimony of Koren, and the

23   Franchise Agreements, FDDs, and leases, of PCJV over the

24   years.

25       6.    <u>Defendants' Supporting Evidence:</u> documents and

26   testimony including and related to (1) Defendants'

27   ownership of the U.S. Potato Corner trademarks, which

28

merely are a symbol of PCJV USA, LLC's business and restaurant and catering services; (2) Defendants' authorization to use the U.S. Potato Corner trademarks; (3) no consumer survey evidence; (4) no evidence of actionable ordinary consumer confusion but just speculation about market conditions after the market stabilizes, let alone actionable confusion attributable to alleged unfair competition framed by the Proposed Final Pretrial Conference Order (Dkt. No. 244), Memoranda of Contentions of Law and Fact (Dkt. Nos. 197 and 199) and pleadings; (5) no marketplace confusion before Plaintiff brought this action; (6) any marketplace confusion would stem from Plaintiff's efforts to create it rather than Plaintiff just filing an action for declaratory relief to resolve ownership and authorization issues after it acquired contested assets in the middle of franchise litigation between joint venture partners; and (7) Plaintiff's suppression of evidence, including Plaintiff's communications with U.S. franchisees under contract with PCJV USA, LLC that were timely requested and ordered be produced.

   b.   Element No. 2: The use was in interstate commerce.

        i. This element is not disputed

   c.   Element No. 3 : The use was in connection with goods or services.

        1.   This element is disputed.

        2.   Nature of Dispute: Legal and Factual

~~JOINTLY FILED CLAIMS TO BE TRIED~~SECOND AMENDED JOINTLY FILED CLAIMS, COUNTERCLAIMS, THIRD PARTY CLAIMS, AND AFFIRMATIVE DEFENSES TO BE TRIED
~~175468760.1~~

CASE NO. 2:24-CV-04546-SB(AGRX)

3.    <u>Plaintiff's Position Statement:</u> Defendants' purported objection is one of fact no law. The registrations are for services, and the use of the marks was for services. If Defendants were using the Marks for some other purpose, they have more liability than previously known.

4.    <u>Defendants' Position Statement:</u> The registered first use of the registered marks are for restaurant and catering services; the registered marks are merely a symbol of Potato Corner in the United States, which distributed goods and services; the case is not a "goods" case, including because the registrations predate any alleged unfair competition.

5.    <u>Plaintiff's Supporting Evidence:</u> USPTO filings including Registrations and Assignments.

6.    <u>Defendants' Supporting Evidence:</u> documents and testimony including and related to (1) U.S. Reg. No. 5900257: the word mark "Potato Corner"; (2) U.S. Reg. No. 6088456: "World's Best Flavored French Fries; and (3) U.S. Reg. No. 3760041: the Logo Mark.

d.  <u>Element No. 4</u>: Defendants' designation or false designation is likely to cause confusion, mistake, or deception regarding either the affiliation, connection, or association of the defendant with another person, or the origin, sponsorship, or approval of the defendant's goods, services, or commercial activities by another person.

1.    This element is disputed in part.

2.    <u>Nature of Dispute:</u> Legal and Factual

3.  <u>Plaintiff's Legal Position</u>: The ultimate test" for unfair competition is exactly the same as for trademark infringement: "whether the public is likely to be deceived or confused." *Century 21 Real Est. Corp. v. Sandlin*, 846 F.2d 1175, 1178 (9th Cir. 1988)Regarding likelihood of confusion, which may be presumed, and the4 jury may be so instructed "[w]here,' as here, "a licensee persists in the unauthorized use of a licensor's trademark, courts have found that the continued use alone establishes a likelihood of consumer confusion." *Robert Trent Jones II, Inc. v. GFSI, Inc*., 537 F. Supp. 2d 1061, 1065 (N.D. Cal. 2008) (citing and quoting *Sun Microsystems v. Microsoft Corp.,* 999 F.Supp. 1301, 1311 (N.D.Cal.1998) (citing *Paisa, Inc. v. N & G Auto, Inc.,* 928 F.Supp. 1009, 1012 n. 4 (C.D.Cal.1996); *Hollywood Athletic Club,* 938 F.Supp. at 614–15 (C.D.Cal.1996)). The Sixth Circuit's analysis in <u>Max Rack, Inc. v. Core Health & Fitness, LLC</u>, 40 F.4th 454, 464 (6th Cir. 2022) is instructive:

> "A separate body of law has developed for this distinct claim that a holdover licensee has continued to use a licensor's mark after their agreement expired. *See* 4 McCarthy, *supra*, § 25:31 (citing cases). In this context, courts have jettisoned the usual totality-of-the-circumstances test in favor of a more categorical rule: "proof of continued, unauthorized use of an original trademark by one whose license to use the trademark had been terminated is sufficient to establish 'likelihood of confusion.' " *U.S. Structures, Inc. v. J.P. Structures, Inc.*, 130 F.3d 1185, 1190 (6th Cir. 1997); *ITT Indus., Inc. v.*

*Wastecorp. Inc.*, 87 F. App'x 287, 293 (3d Cir. 2004); *Gorenstein Enters., Inc. v. Quality Care-USA, Inc.*, 874 F.2d 431, 435 (7th Cir. 1989); *Burger King Corp. v. Mason*, 710 F.2d 1480, 1492–93 (11th Cir. 1983); *Pro. Golfers Ass'n of Am. v. Bankers Life & Cas. Co.*, 514 F.2d 665, 670 (5th Cir. 1975); *L & L Wings, Inc. v. Marco-Destin, Inc.*, 676 F. Supp. 2d 179, 188 (S.D.N.Y. 2009). This rule makes good sense when a holdover licensee blatantly infringes the licensor's mark by using that mark in the same way as it did before the agreement expired. Without any need to tick through factors, it should be obvious that consumers will believe, for example, that a pizza restaurant remains affiliated with the "Little Caesars" chain when a terminated franchisee continues to operate the pizzeria as a Little Caesars. *See Little Caesar Enters., Inc. v. Miramar Quick Serv. Rest. Corp.*, 2020 WL 4516289, at *3 (6th Cir. 2020) (order)"

Although Plaintiff intends to, and will, adduce proof of the *Sleekcraft* factors, the presumption exists, and it is entitled to stand on this presumption alone. *See also, Brookfield Commc'ns, Inc. v. W. Coast Ent. Corp.*, 174 F.3d 1036, 1056 (9th Cir. 1999) ("In light of the virtual identity of marks, if they were used with identical products or services likelihood of confusion would follow as a matter of course"); *Park 'n Fly, Inc. v. Dollar Park & Fly, Inc.*, 782 F.2d 1508, 1509 (9th Cir. 1986) (holding that when marks and services are identical and channels are the same, likelihood of confusion is assumed, even if the other factors weight against); *see also Blue Mako Inc. v. Minidis*, No. CV 07-916 AHM (SHX), 2008 WL 11334205 (C.D. Cal. June 23, 2008)

~~JOINTLY FILED CLAIMS TO BE TRIED~~SECOND AMENDED JOINTLY FILED CLAIMS, COUNTERCLAIMS, THIRD PARTY CLAIMS, AND AFFIRMATIVE DEFENSES TO BE TRIED
~~175468760.1~~

CASE NO. 2:24-CV-04546-SB(AGRX)

1  (applying these principles to similar facts).

2  4.  <u>Defendants' Position Statement:</u> Defendants are not going

3  to argue no likelihood of confusion arising from continuous

4  use of registered and unregistered trademarks if

5  Defendants do not prevail on ownership or authorization.

6  However, this is not a "trade dress" case. The legal issues

7  set for trial in the Proposed Final Pretrial Conference Order

8  (Dkt. No. 244), Memoranda of Contentions of Law and

9  Fact (Dkt. Nos. 197 and 199) and pleadings regard

10  ownership of and authorization to use the U.S. Potato

11  Corner trademarks; there is no "trade dress" issue in the

12  pleadings set for trial. Moreover, "same as" comparative

13  advertising of taste or fragrance is not unfair competition.

14  *Smith v. Chanel*, Inc., 402 F.2d 562, 563 (9th Cir.

15  1968). Further, proffered "former location" confusion is

16  not actionable in California (*see* Bus. & Prof. Code §

17  16600) nor proves or is probative of ordinary consumer

18  confusion that is the subject of the Lanham Act after the

19  market settles from a partnership divorce, especially after

20  Plaintiff is the one who changed the *status quo* and caused

21  any confusion.

22  5.  <u>Plaintiff's Supporting Evidence:</u> Trial Exhibit 29 (May 31,

23  2024 Termination); photographs of various stores taken

24  from May 31, 2025 through the present; Testimony of

25  Koren; Plaintiff executives Gregorio (Plaiuntiff's CEO),

26  Concepcion (Plaintiff's COO charged with US operations),

27  Tan (Director responsible for international franchising);

28

CASE NO. 2:24-CV-04546-SB(AGRX)

investigator; Franchisees; Kim Lambert and Barry Kurtz; in addition to the following documents Amended Joint Venture Agreement and Joint Venture Agreement; the COO of SPAVI, Mr. Concepcion, the Franchise Agreements, FDDs, and leases, of PCJV over the years.

6. _Defendants' Supporting Evidence:_ documents and testimony including and related to (1) Defendants' ownership of the U.S. Potato Corner trademarks, which merely are a symbol of PCJV USA, LLC's business and restaurant and catering services; (2) Defendants' authorization to use the U.S. Potato Corner trademarks; (3) no consumer survey evidence; (4) no evidence of actionable ordinary consumer confusion but just speculation about market conditions after the market stabilizes, let alone actionable confusion attributable to alleged unfair competition framed by the Proposed Final Pretrial Conference Order (Dkt. No. 244), Memoranda of Contentions of Law and Fact (Dkt. Nos. 197 and 199) and pleadings; (5) no marketplace confusion before Plaintiff brought this action; (6) any marketplace confusion would stem from Plaintiff's efforts to create it rather than Plaintiff just filing an action for declaratory relief to resolve ownership and authorization issues after it acquired contested assets in the middle of franchise litigation between joint venture partners; and (7) Plaintiff's suppression of evidence, including Plaintiff's communications with U.S. franchisees under contract with

33

~~JOINTLY FILED CLAIMS TO BE TRIED~~SECOND AMENDED JOINTLY FILED CLAIMS, COUNTERCLAIMS, THIRD PARTY CLAIMS, AND AFFIRMATIVE DEFENSES TO BE TRIED
~~175468760.1~~

CASE NO. 2:24-CV-04546-SB(AGRX)

1    PCJV USA, LLC that were timely requested and ordered

2    be produced

3    e.    Element No. 5: Damage caused by false designation.

4        1.    This element is disputed.

5        2.    Nature of Dispute: Legal and factual

6        3.    Plaintiff's Legal Position: The standard to be followed is

7            set forth in 15 USC § 1117 which only requires this Court's

8            approval in equity to proceed with money damages. The

9            Courts have, contrary to Defendant's apparent position,

10           removed the requirement of willfulness to obtain

11           disgorgement., *Romag Fasteners, Inc. v. Fossil, Inc.*, ——

12           U.S. ——, 140 S. Ct. 1492, 1495-97, 206 L.Ed.2d 672

13           (2020) (holding willfulness is not a precondition to

14           disgorgement of profits under the Lanham Act). (Dkt. No.

15           594.) Defendants ignore the difference between normal

16           infringement and this case, the holdover licensee, where

17           the standard for likelihood of confusion is lowered, and

18           even sometimes presumed, and irreparable harm is also

19           presumed. The Lanham Act allows Defendants to raise the

20           other arguments to rebut the presumption of irreparable

21           harm, but the standard as applied here allows for

22           disgorgement.

23       4.    Defendants' Position Statement: Likelihood of confusion,

24           when coupled with likely irreparable harm, is the standard

25           for injunctive relief, the primary remedy under the Lanham

26           Act (*National Grange of the Order of Patrons of*

27           *Husbandry v. Cal. State Grange*, 182 F.Supp. 3d 1065,

28

1071 (E.D. Cal. 2016)), the benefits of which Plaintiff has already obtained in this case by flipping franchisees under contract with Defendants to join its organization—notwithstanding PCJV USA, LLC's rebranding rights and obligations disclosed in FDDs; Plaintiff fails to acknowledge its legal and higher burden of proof to establish an entitlement to monetary recovery, whether legal damages (which Plaintiff is not pursuing as there is no evidence it has a legal right to conduct a franchise business in California or elsewhere in the United States) or disgorgement—both of which stem from actual confusion in the market not attributable to Plaintiff's own conduct as proof of a defendant actually trading on the goodwill of another resulting in either lost profits or unjust enrichment (*Gracie v. Gracie*, 217 F.3d 1060, 1068 (9th Cir. 2000)); in addition to there being no consumer survey evidence or probative evidence of actual confusion not attributable to Plaintiff's own conduct (let alone attributable to trademark infringement), Defendants' exercise of bona fide good faith belief not to waive (a) pre-existing partnership (whether ownership or authorization) rights and obligations to use and control the U.S. trademarks and to equally receive service fees if any royalties were paid to the registrant when (b) Plaintiff allegedly acquired U.S. Potato Corner trademarks in the middle of franchise litigation between joint venture partners, (c) over Defendants' objection, (d) initiating this lawsuit in a conspiracy 3 days after the

35

settlement with Plaintiff's assignor to circumvent a state court injunction rather than go to trial in state court, (e) disregarding a tolling agreement to continue discussions and not filing an action for declaratory relief if there was an impasse to determine who has superior trademark rights, (f) creating the risk of marketplace confusion by virtue of its own conduct; and (e) suppressing evidence, including properly served discovery ordered to be produced, does not satisfy Plaintiff's legal burden of proof. *See Yuga Labs, Inc. v. Ripps*, Case No. CV 22-4355-JFW(JEMx), 2023 WL 7089922, at *10 (C.D. Cal. Oct. 25, 2023) (while totality of the circumstances are used to determine an award of profits, "defendant's mental state is 'a highly important consideration . . . .'").

5.  <u>Plaintiff's Supporting Evidence:</u> Defendants have produced financials for the period in question May 31, 2024 through the present, and, given that the entirety off their business is built off the confusion, we only need to prove profits which can be disgorged. Thus, the financials as well as Koren testimony and testimony of franchisees as well; as correspondence regarding costs of goods sold as well as the testimony of the CFO of Shakley's will establish damage. No expert is needed for arithmetic. To the contrary, it is Defendant who bears a heavier burden of establishing what costs or expenses "actually contributed to the sale of the infringing products." *Monster Energy Co.*

1      *v. Integrated Supply Network, LLC*, 533 F. Supp. 3d 928,

2      938 (C.D. Cal. 2021)

3      6.   <u>Defendant's Supporting Evidence:</u> documents and

4      testimony including and related to (1) the parties' meeting

5      of the minds and partnership agreement to co-own Potato

6      Corner in the United States, where Defendants promised to

7      contribute services and Plaintiff promised to vest IP rights

8      in the partnership as supported by written agreements and

9      verified pleadings; (2) the JVA and related agreements

10     vesting licensing and quality control in PCJV USA, LLC's

11     President, approval of franchise agreements, including as

12     disclosed in FDDs, in PCJV USA, LLC's Management,

13     and authority to manage Potato Corner in the United States

14     in PCJV USA, LLC's executive officers (not Cinco

15     Corporation); (3) absent a license agreement, PCJV USA,

16     LLC's use of the U.S. Potato Corner marks inured to PCJV

17     USA, LLC's benefit; (4) Defendants' continuing

18     authorization to use the U.S. Potato Corner trademarks

19     under a lifetime, 50-year, or non-terminable-at-will

20     license, including for the reasons stated herein; (5)

21     Defendants' objection to Plaintiff's announced plans to

22     acquire Cinco Corporation's assets and liabilities, but

23     representations to Defendants that they would be bound by

24     a settlement with Cinco resolving licensing issues; (6) the

25     parties' tolling agreement, including to continue

26     discussions after Defendants separately settled with Cinco

27     Corporation; (7) Plaintiff and Cinco Corporation's bad

28

JOINTLY FILED CLAIMS TO BE TRIEDSECOND AMENDED JOINTLY FILED CLAIMS, COUNTERCLAIMS, THIRD PARTY CLAIMS, AND AFFIRMATIVE DEFENSES TO BE TRIED
175468760.1

CASE NO. 2:24-CV-04546-SB(AGRX)

| | |
|---|---|
| 1 | faith conspiracy to initiate this lawsuit 3 days after the |
| 2 | settlement with Plaintiff's assignor to circumvent a state |
| 3 | court injunction rather than go to trial in state court or settle |
| 4 | with Defendants; (8) Plaintiff's own misconduct creating |
| 5 | the risk of marketplace confusion; (9) no consumer survey |
| 6 | evidence or evidence of marketplace confusion attributable |
| 7 | to trademark infringement or unfair competition that is the |
| 8 | subject of this case; (10) Plaintiff's suppression of |
| 9 | evidence, including properly served discovery ordered to |
| 10 | be produced; (11) no evidence of unjust enrichment, |
| 11 | including no net profits or net profits attributable to the |
| 12 | alleged infringement at issue, to disgorge; and (12) no |
| 13 | evidence regarding individual Defendants' responsibility |

14  **3)**  **Claim 4: Contributory Trademark Infringement Against All**
15  **Defendants (Against Guy Koren, PCJV USA, LL, PCI Trading,**
16  **LLC, Potato Corner LA Group, LLC; GK Capital, LLC or NKM**
17  **Capital Group, LLC)**

18  a.  Element No. 1: inducement of any Defendant to infringe one of
19  the Marks (affirmative steps or actions taken to encourage
20  infringement, exercising control over means oof infringement,
21  offering tools to assist in infringement, instructing how to
22  infringe).

23  1.  This element is disputed.

24  2.  Nature of Dispute: Legal and Factual

25  3.  Plaintiff's Position Statement: it is assumed that the
26  primary dispute by  Defendants here will be as to the
27  underlying question  of infringement (ownership, license,

1  etc.). But if it is true that Plaintiff owned the Marks, and

2  had exclusive right to control them and Defendants lost

3  their right on May 31, 2024, the question is fairly on the

4  table whether (1) PCJV, the former licensees of the brand,

5  engaged in post termination contribution or inducement to

6  its sublicensees whose rights had also been terminated by

7  giving them aid and comfort (and collecting money from

8  them) after termination,, or (2) the supply chain affiliate

9  PCI Trading's sales of infringing cups etc. was constituted

10  contribution or inducement, or (3) whether Koren, the

11  owner or operator oof them all was also responsible for

12  contribution or inducement. 115 USC 1114; *Fonovisa, Inc.*

13  *v. Cherry Auction, Inc*., 76 F.3d 259, 264–65 (9th Cir.

14  1996) (applied to host of swap meets when host know

15  infringement was occurring); *citing Inwood Lab'ys, Inc. v.*

16  *Ives Lab'ys, Inc*., 456 U.S. 844, 854 (1982); *see Inwood*

17  *Lab'ys, Inc*., 456 U.S. at 844, 854 (1982) (explaining that

18  when a party "suppl[ies]] its product to one whom it knows

19  or has reason to know is engaging in trademark

20  infringement, the manufacturer or distributor is

21  contributorily responsible for any harm done as a result of

22  the deceit").

23      4.   <u>Defendants' Position Statement:</u> To establish liability for

24  contributory infringement, Plaintiff bears the burden of

25  proving the defendant had intent to cause direct

26  infringement or prior knowledge of direct infringement.

27  *See Perfect 10, Inc. v. Visa Intern. Service Ass'n,* 494 F.3d

28

~~JOINTLY FILED CLAIMS TO BE TRIED~~SECOND
AMENDED JOINTLY FILED CLAIMS,
COUNTERCLAIMS, THIRD PARTY CLAIMS, AND
AFFIRMATIVE DEFENSES TO BE TRIED
~~175468760.1~~

CASE NO. 2:24-CV-04546-SB(AGRX)

788, 807 (9th Cir. 2007). That is not the same thing as having knowledge of a bona fide dispute over trademark ownership or authorization to use a trademark. Similarly, officer or director liability includes a knowledge requirement to establish liability. *SinCo Technologies Pte Ltd. v. SinCo Electronics,* Case No. 17-cv-05517-EMC, 2018 WL 10638468, at *1 (N.D. Cal. Jan. 5, 2018).

5. <u>Plaintiff's Supporting Evidence:</u> Testimony and statements of Koren, franchisees, and SPAVI executives after termination; correspondence with franchisees by SPAVI; Franchise agreements and FDDs.

6. <u>Defendants' Supporting Evidence:</u> documents and testimony including and related to (1) the evidentiary record establishing a bona fide trademark dispute over ownership and authorization to use the U.S. Potato Corner trademarks; (2) the alleged contributory infringing Defendants did not have the intent to cause infringement or knowledge that direct infringement was occurring; (3) the alleged contributory infringing Defendants are not similarly situated, including because some our downstream users (who contributing nothing upstream) and one is simply a supplier of publicly available materials; (4) Mr. Koren, as an officer or member of Defendant entities, also had no intent to confuse consumers, had no intent to trade off the goodwill he did not own or have authorization to use, and had good faith reasons to believe that trademark infringement was not occurring.

JOINTLY FILED CLAIMS TO BE TRIEDSECOND AMENDED JOINTLY FILED CLAIMS, COUNTERCLAIMS, THIRD PARTY CLAIMS, AND AFFIRMATIVE DEFENSES TO BE TRIED
175468760.1

CASE NO. 2:24-CV-04546-SB(AGRX)

b. <u>Element No. 2:</u> Material contribution

    1. This element is disputed.

    2. Nature of Dispute: Factual

    3. <u>Plaintiff's Supporting Evidence:</u> testimony of Koren, his staff, franchisees, and their communications

    4. <u>Defendants' Supporting Evidence:</u> documents and testimony including and related to whether the contribution of each Defendant was material to the alleged infringement and was provided with the requisite knowledge.

c. <u>Element No. 3:</u> Injury to Plaintiff.

    1. This element is disputed

    2. <u>Nature of Dispute:</u> Legal and Factual

    3. <u>Plaintiff's Position Statement:</u> The standard to be followed is set forth in 15 USC 1117 which only requires this Court's approval in equity to proceed with money damages. The Courts have contrary to Defendant's apparent position removed the requirement of willfulness to obtain disgorgement., *Romag Fasteners, Inc. v. Fossil, Inc.*, ⎯⎯ U.S. ⎯⎯, 140 S. Ct. 1492, 1495-97, 206 L.Ed.2d 672 (2020) (holding willfulness is not a precondition to disgorgement of profits under the Lanham Act). (Dkt. No. 594.) Defendants ignore the difference between normal infringement and this case, the holdover licensee, where the standard for likelihood of confusion is lowered, and even sometimes presumed, and irreparable harm is also presumed. The Lanham Act allows Defendants to raise the other arguments to rebut the presumption of irreparable

41

JOINTLY FILED CLAIMS TO BE TRIED SECOND AMENDED JOINTLY FILED CLAIMS, COUNTERCLAIMS, THIRD PARTY CLAIMS, AND AFFIRMATIVE DEFENSES TO BE TRIED 175468760.1

    CASE NO. 2:24-CV-04546-SB(AGRX)

1    harm, but the standard as applied here allows for

2    disgorgement.

3        4.    <u>PCJV USA Parties' Position Statement:</u> Defendants

4            incorporate their positions legal positions above regarding

5            liability and damages for direct infringement and liability

6            for contributory infringement. In addition, damages for

7            contributory infringement should not be awarded upstream

8        5.    <u>Plaintiff's Supporting Evidence:</u> Defendants have

9            produced financials for the period in question May 31,

10           2024 through the present, and, given that the entirety of

11           their  business is built off the confusion, we only need to

12           prove profits which can be disgorged. Thus, the financials

13           as well as Koren testimony and testimony of franchisees as

14           well; as correspondence regarding costs of  goods sold as

15           well as the testimony of the CFO of Shakley's will

16           establish damage. No expert is needed for arithmetic. To

17           the contrary, it is Defendant who bears a heavier burden of

18           establishing what costs or expenses "actually contributed

19           to the sale of the infringing products." *Monster Energy Co.*

20           *v. Integrated Supply Network, LLC*, 533 F. Supp. 3d 928,

21           938 (C.D. Cal. 2021)

22       6.    <u>Defendants' Supporting Evidence:</u> Defendants incorporate

23           their above record<u>.</u>

24   **4)    <u>Claim 5: Contributory False Designation of Origin Against Guy</u>**

25       **<u>Koren, PCJV USA, LL, PCI Trading, LLC, Potato Corner LA</u>**

26       **<u>Group, LLC; GK Capital,  LLC or NKM Capital Group, LLC</u>**

27

28

42

a.  Element No. 1: inducement of any Defendant to make use a false designation, such as a word, term, name, device, or a combination thereof, or a false designation of origin (affirmative steps or actions taken to encourage infringement, exercising control over means oof infringement, offering tools to assist in infringement, instructing how to infringe).

ii.  This element is disputed.

iii.  Nature of Dispute: Legal and Factual

iv.  Plaintiff's Position Statement: it is assumed that the primary dispute by Defendants here will be as to the underlying question of infringement (ownership, license, etc.). But if it is true that Plaintiff owned the Marks, and had exclusive right to control them and Defendants lost their right on May 31, 2024, the question is fairly on the table whether (1) PCJV, the former licensees of the brand, engaged in post termination contribution or inducement to its sublicensees whose rights had also been terminated by giving them aid and comfort (and collecting money from them) after termination,, or (2) the supply chain affiliate PCI Trading's sales of infringing cups etc. was constituted contribution or inducement, or (3) whether Koren, the owner or operator oof them all was also responsible for contribution or inducement. 115 USC 1114; *Fonovisa, Inc. v. Cherry Auction, Inc*., 76 F.3d 259, 264–65 (9th Cir. 1996) (applied to host of swap meets when host know infringement was occurring); *citing Inwood Lab'ys, Inc. v. Ives Lab'ys, Inc*., 456 U.S. 844, 854 (1982); *see Inwood Lab'ys, Inc*., 456 U.S. at 844, 854 (1982) (explaining

JOINTLY FILED CLAIMS TO BE TRIED<u>SECOND AMENDED JOINTLY FILED CLAIMS, COUNTERCLAIMS, THIRD PARTY CLAIMS, AND AFFIRMATIVE DEFENSES TO BE TRIED</u>
175468760.1

CASE NO. 2:24-CV-04546-SB(AGRX)

1    that when a party "suppl[ies]] its product to one whom it

2    knows or has reason to know is engaging in trademark

3    infringement, the manufacturer or distributor is contributorily

4    responsible for any harm done as a result of the deceit").

5    v.    Defendants' Position Statement: To establish liability for

6    contributory infringement, Plaintiff bears the burden of

7    proving the defendant had intent to cause direct infringement

8    or prior knowledge of direct infringement. *See Perfect 10, Inc.*

9    *v. Visa Intern. Service Ass'n*, 494 F.3d 788, 807 (9th Cir.

10   2007). That is not the same thing as having knowledge of a

11   *bona fide* dispute over trademark ownership or authorization to

12   use a trademark. Similarly, officer or director liability includes

13   a knowledge requirement to establish liability. *SinCo*

14   *Technologies Pte Ltd. v. SinCo Electronics*, Case No. 17-cv-

15   05517-EMC, 2018 WL 10638468, at *1 (N.D. Cal. Jan. 5,

16   2018).

17   vi.   Plaintiff's Supporting Evidence: Testimony and

18   statements of Koren, franchisees, and SPAVI executives after

19   termination; correspondence with franchisees by SPAVI;

20   Franchise agreements and FDDs.

21   vii.   Defendants' Supporting Evidence: documents and

22   testimony including and related to (1) the evidentiary record

23   establishing a bona fide trademark dispute over ownership and

24   authorization to use the U.S. Potato Corner trademarks; (2) the

25   alleged contributory infringing Defendants did not have the

26   intent to cause infringement or knowledge that direct

27   infringement was occurring; (3) the alleged contributory

28

---

44

Formatted: Font: 14 pt

1    infringing Defendants are not similarly situated, including

2    because some our downstream users (who contributing nothing

3    upstream) and one is simply a supplier of publicly available

4    materials; (4) Mr. Koren, as an officer or member of

5    Defendant entities, also had no intent to confuse consumers,

6    had no intent to trade off the goodwill he did not own or have

7    authorization to use, and had good faith reasons to believe that

8    trademark infringement was not occurring.

9    b.  Element No. 2: Material contribution

10       i. This element is disputed.

11       ii.   Nature of Dispute: Factual

12       iii.   Plaintiff's Supporting Evidence: testimony of Koren, his

13            staff, franchisees, and their communications

14       iv.   Defendants' Supporting Evidence: documents and

15            testimony including and related to whether the contribution of

16            each Defendant was material to the alleged infringement and

17            was provided with the requisite knowledge.

18    c.  Element No. 3: Injury to Plaintiff.

19       i. This element is disputed.

20       ii.   Nature of Dispute: Legal and factual

21       ii. Plaintiff's Position Statement: The standard to be followed is

22            set forth in 15 USC 1117 which only requires this Court's

23            approval in  equity to proceed with money damages. The

24            Courts have contrary to Defendant's apparent position

25            removed the requirement of willfulness to obtain

26            disgorgement.,  *Romag Fasteners, Inc. v. Fossil, Inc.*, —— U.S.

27            ——, 140 S. Ct. 1492, 1495-97, 206 L.Ed.2d 672

28

1  (2020) (holding willfulness is not a precondition to

2  disgorgement of profits under the Lanham Act). (Dkt. No.

3  594.)  Defendants ignore the difference between normal

4  infringement and this case, the holdover licensee,  where the

5  standard for likelihood of confusion is lowered, and even

6  sometimes presumed, and irreparable harm is also presumed.

7  The Lanham Act allows Defendants to raise the other

8  arguments to rebut the presumption of irreparable harm, but

9  the standard as applied here allows for disgorgement,

10  iii.    PCJV USA Parties' Position Statement: Defendants

11  incorporate their legal positions above regarding liability and

12  damages for direct infringement and liability for contributory

13  infringement. In addition, damages for contributory

14  infringement should not be awarded upstream.

15  iv.    Plaintiff's Supporting Evidence: Defendants have

16  produced financials for the period in question May 31, 2024

17  through the present, and, given that the entirety off their

18  business is built off the confusion, we only need to prove

19  profits which can be disgorged. Thus, the financials as well as

20  Koren testimony and testimony of franchisees as well; as

21  correspondence regarding costs of  goods sold as well as the

22  testimony of the CFO of Shakley's will establish damage. No

23  expert is needed for arithmetic. To  the contrary, it is

24  Defendant who bears a heavier burden of establishing what

25  costs or expenses "actually contributed to the sale of the

26  infringing products." *Monster Energy Co. v. Integrated*

27  *Supply Network, LLC*, 533 F. Supp. 3d 928, 938 (C.D. Cal.

28

**Formatted:** Font: 14 pt

1  2021)

2      iii. <u>Defendants' Supporting Evidence:</u> Defendants incorporate

3      their above record.

4    **2) Claim 6: Common Law Trademark Infringement Against All**

5      **Defendants (Against Guy Koren, PCJV USA, LL, PCI Trading, LLC,**

6      **Potato Corner LA  Group, LLC; GK Capital,  LLC or NKM Capital**

7      **Group, LLC).**

8      a. <u>Element No. 1:</u> the Word Mark, Slogan Mark, and/or the Logo

9      Mark (all collectively, the "Marks") are valid and protectible

10      trademarks:

11        i. This element is undisputed

12      b. <u>Element No. 2:</u> Plaintiff owns the Word Mark, Slogan Mark, and/or

13      the Logo Mark

14        i. This element is disputed.

15        ii.   <u>Nature of Dispute:</u> Factual and Legal.

16        iii.   <u>Plaintiff's Legal Position:</u> Defendants do not dispute that

17      the registrations for all three Marks (Trial Exhibit Nos. 1, 3,

18      and 5) identify Cinco as the registrant and the first to use each

19      of the three Marks, nor do Defendants dispute that the Deeds

20      of Assignment attached to the notices filed with the USPTO

21      (Trial Exhibit Nos. 4 and 6) confirm that, unequivocally  and

22      without exception, the entirety of these Marks were sold and

23      assigned to Plaintiff, along with all the goodwill arising out of

24      or associated with the Marks. Defendants also do not dispute

25      the testimony of Seller (Cinco) and Buyer (SPAVI) that the

26      Deeds are accurate in every way, that the sale and assignments

27      were comprehensive, without carve outs, and fully

28

47

JOINTLY FILED CLAIMS TO BE TRIEDSECOND AMENDED JOINTLY FILED CLAIMS, COUNTERCLAIMS, THIRD PARTY CLAIMS, AND AFFIRMATIVE DEFENSES TO BE TRIED
175468760.1

CASE NO. 2:24-CV-04546-SB(AGRX)

1    consummated. Instead, Defendants take internally inconsistent

2    positions that are contradicted by various legal doctrine,

3    including the ones discussed *supra*: Licensee Estoppel, the

4    Lanham Act provisions rendering Defendants' positions

5    contrary to federal law, Law of the Case, that the Authorities

6    cited by Defendants do not support their position, including

7    *Sengoku*, the Merger Doctrine, and Defendants' standing.

8        ii.  <u>Defendants' Position Statement:</u> Defendants incorporate their

9            legal positions above

10       iii.  <u>Plaintiff's Supporting Evidence:</u> Notarized Deeds signed by

11            seller and buyer; USPTO filings including Registrations and

12            Assignments, testimony of Gregorio (Plaintiff's CEO),

13            Magsaysay (Cinco's CEO), Koren, Ybanez (Plaintiff's General

14            Counsel), FDDs, Franchise Agreements.

15       iv.  <u>Defendants' Supporting Evidence:</u> Defendants incorporate their

16            above factual positions.

17    c.  <u>Element No. 3:</u> Defendants used Word Mark, Slogan Mark, and/or the

18        Logo Mark in interstate commerce after May 31, 2024:

19            i.  This element is undisputed.

20    d.  <u>Element No. 4:</u> Defendants' use of the Word Mark, Slogan Mark,

21        and/or the Logo Mark in interstate commerce after May 31, 2024, was

22        without the consent of Plaintiff and in a manner likely to cause

23        confusion among ordinary consumers as to the source, sponsorship,

24        affiliation, or approval of the services.

25            ii.  This element is disputed.

26            iii.  <u>Nature of Dispute:</u> Legal and Factual

27            iv.  <u>Plaintiff's Legal Position:</u> As for absence of consent, given the

28

1  absence of any ownership  rights, Defendants must locate

2  some rights as a licensee of the owner (SPAVI). Defendants

3  offer two documents proffered as agreements that bind Cinco

4  to a perpetual license. Neither work as a matter of law. First,

5  they offer the unsigned October 10, 2010, document

6  containing terms for a Master License Agreement (Trial

7  Exhibit No. 11), which this Court (and the Ninth Circuit) have

8  reviewed. Both have interpreted it as a matter of law,

9  concluding that it is an unsigned draft (as Koren's testimony

10  has confirmed) and illusory because the licensor is given no

11  consideration for this purported agreement. The unsigned

12  document cannot, as a matter of law, have bound Cinco, even

13  through implied contract law, because Cinco did not do

14  anything in furtherance of that document to imply its assent.

15  Moreover, multiple times after October 10, 2010, documents

16  were signed stating that Cinco would be expecting a 30%

17  royalty recovery. Second, Plaintiffs point to § 3(g) of an

18  Amended Joint Venture Agreement (and its predecessor the

19  Joint Venture Agreement) – Trial Exhibit Nos. 8 and 9 – which

20  this Court has already interpreted to constitute an agreement to

21  agree, in the future, with Cinco on a license agreement. As the

22  Ninth Circuit said in affirming this conclusion, "the AJVA

23  contained an agreement to enter a *future* Master License

24  Agreement, not a "perpetual license" like PCJV claims."

25  *Shakeys Pizza Asia Ventures, Inc. v. PCJV USA, LLC*, No. 24-

26  7084, 2025 WL 1431270, at *1 (9th Cir. May 19, 2025) (citing

27  *First Nat'l Mortg. Co. v. Fed. Realty Inv. Tr.*, 631 F.3d 1058,

28

1    1065 (9th Cir. 2011) ("[A]n 'agreement to agree,' without

2    more, is not a binding contract."). This interpretation of the

3    AJVA and  JVA is a legal conclusion, which, as affirmed  by

4    the Ninth Circuit are legal conclusions, and, as such,  these are

5    pure conclusions of law, which means: **this Court's**

6    **conclusion that § 3(g) of the JVA and AJVA are**

7    **agreements to agree and do not  bind Cinco  to a**

8    **"perpetual license" are law of the  case and cannot be**

9    **disturbed or challenged at trial**. This theory based on

10   interpretation of a contract has been considered and rejected by

11   this Court and the Ninth Circuit in this case, and because it  is

12   a "pure issue[] of law, however, [it  is] binding" on Defendants

13   under law of the case. *Ranchers Cattlemen Action Legal Fund*

14   *United Stockgrowers of Am. v. U.S. Dep't of Agr*., 499 F.3d

15   1108, 1114 (9th Cir. 2007); s*ee, e.g. Arizona v. California*, 460

16   U.S. 605, 618 (1983) ((citing the rule as being "when a court

17   decides upon a rule of law, that decision should continue to

18   govern the same issues in subsequent stages in the same

19   case"). Defendants now trot out other theories such the fact

20   that the JVA and prior Operating Agreement are still

21   somewhat live under a theory of partial integration, however,

22   the following point prevails over each of these contortions:

23   Defendants can point to no agreement or document,  or acct, or

24   statement, binding Cinco to a perpetual, irrevocable, royalty

25   free licensee of its Marks. As such, in the absence of any

26   written  agreement, or documentation of any license terms, the

27   sole license that existed as of May 31, 2024, was implied and

28

JOINTLY FILED CLAIMS TO BE TRIEDSECOND
AMENDED JOINTLY FILED CLAIMS,
COUNTERCLAIMS, THIRD PARTY CLAIMS, AND
AFFIRMATIVE DEFENSES TO BE TRIED
175468760.1

CASE NO. 2:24-CV-04546-SB(AGRX)

1  terminable at will  *See Pogrebnoy v. Russian Newspaper*

2  *Distribution, Inc.*, 289 F. Supp. 3d 1061, 1070 (C.D. Cal.

3  2017), *aff'd*, 742 F. App'x 291 (9th Cir. 2018) ("[A]n implied

4  license, like any other contract, is terminable at the will of

5  either party if it is not for a specified term."). One final flaw

6  exists in the attempt to bind Cinco to the AJVA, and that is

7  one of issue preclusion in favor of Plaintiffs. As evidenced by

8  Plaintiff's own Third Amended Complaint (verified) in the

9  Prior Governance Action, the entire pleading is based on the

10 theory that -- and it sought judgment concluding that -- Cinco

11 is an alter ego of the entity that was a 60% member of PCJV.

12 (*See* Trial Exhibit No. 1421 p. 7:3-14.) Such allegations,

13 having been dismissed, with  prejudice, by  Koren, re4nder

14 thee accusations extinguished, and, as such, Defendants are

15 precluded from alleging them ever again.

16 Regarding likelihood of confusion,  which may be presumed,

17 and the jury  may  be so  instructed "[w]here,' as here, "a

18 licensee persists in the unauthorized use of a licensor's

19 trademark, courts have found that the continued use alone

20 establishes a likelihood of consumer confusion." *Robert Trent*

21 *Jones II, Inc. v. GFSI, Inc*., 537 F. Supp. 2d 1061, 1065 (N.D.

22 Cal. 2008) (citing and quoting *Sun Microsystems v. Microsoft*

23 *Corp.,* 999 F.Supp. 1301, 1311 (N.D.Cal.1998) (citing *Paisa,*

24 *Inc. v. N & G Auto, Inc.,* 928 F.Supp. 1009, 1012 n. 4

25 (C.D.Cal.1996); *Hollywood Athletic Club,* 938 F.Supp. at 614–

26 15 (C.D.Cal.1996)). The Sixth Circuit's analysis in <u>Max Rack,</u>

27 <u>Inc. v. Core Health & Fitness, LLC</u>, 40 F.4th 454, 464 (6th Cir.

28

2022) is instructive:

> "A separate body of law has developed for this distinct claim that a holdover licensee has continued to use a licensor's mark after their agreement expired. *See* 4 McCarthy, *supra*, § 25:31 (citing cases). In this context, courts have jettisoned the usual totality-of-the-circumstances test in favor of a more categorical rule: "proof of continued, unauthorized use of an original trademark by one whose license to use the trademark had been terminated is sufficient to establish 'likelihood of confusion.' " *U.S. Structures, Inc. v. J.P. Structures, Inc.*, 130 F.3d 1185, 1190 (6th Cir. 1997); *ITT Indus., Inc. v. Wastecorp. Inc.*, 87 F. App'x 287, 293 (3d Cir. 2004); *Gorenstein Enters., Inc. v. Quality Care-USA, Inc.*, 874 F.2d 431, 435 (7th Cir. 1989); *Burger King Corp. v. Mason*, 710 F.2d 1480, 1492–93 (11th Cir. 1983); *Pro. Golfers Ass'n of Am. v. Bankers Life & Cas. Co.*, 514 F.2d 665, 670 (5th Cir. 1975); *L & L Wings, Inc. v. Marco-Destin, Inc.*, 676 F. Supp. 2d 179, 188 (S.D.N.Y. 2009). This rule makes good sense when a holdover licensee blatantly infringes the licensor's mark by using that mark in the same way as it did before the agreement expired. Without any need to tick through factors, it should be obvious that consumers will believe, for example, that a pizza restaurant remains affiliated with the "Little Caesars" chain when a terminated franchisee continues to operate the pizzeria as a Little Caesars. *See Little Caesar Enters., Inc. v. Miramar Quick Serv. Rest. Corp.*, 2020 WL 4516289, at *3 (6th Cir. 2020) (order)"

Although Plaintiff intends to, and will, adduce proof of the *Sleekcraft* factors, the presumption exists, and it is entitled to

52

CASE NO. 2:24-CV-04546-SB(AGRX)

1    stand on this presumption alone.

2    v. Defendants' Position Statement: Defendants incorporate all

3    their above legal positions.

4    vi. Plaintiff's Supporting Evidence: Trial Exhibit 29 (May 31,

5    2024 Termination); photographs of various stores taken from

6    May 31, 2025 through the present; Testimony of Koren;

7    Plaintiff executives Gregorio (Plaiuntiff's CEO), Concepcion

8    (Plaintiff's COO charged with US operations), Tan (Director

9    responsible for international franchising); investigator;

10    Franchisees; Kim Lambert and Barry Kurtz; in addition to  the

11    following documents Amended Joint Venture Agreement and

12    Joint Venture Agreement.

13    vii.    Defendants' Supporting Evidence: Defendants

14    incorporate their above factual positions.

15    **3) Claim 9 (from FAC, Dkt. 65): Quantum Meruit Against PCJV**

16    a. Element No. 1: That Defendant requested, by words or conduct, that

17    Plaintiff provide a license to use the Potato Corner Intellectual

18    Property for the benefit of Defendant PCJV;

19    i. This element is disputed.

20    ii. Nature of Dispute: Legal and Factual

21    iii. Plaintiff's Position Statement: Defendants' issues are factual and

22    not legal.

23    iv. Defendants' Position Statement: *Quantum meruit* is an implied

24    contract (or quasi-contract) claim stemming from requested

25    services "under which a plaintiff who has rendered services

26    benefiting the defendant may recover the reasonable value of

27    those services when necessary to prevent unjust enrichment of

28

1  the defendant." *In re De Laurentiis Ent. Grp. Inc*., 963 F.2d

2  1269, 1272 (9th Cir. 1992). Plaintiff will be unable to establish

3  liability for *quantum meruit* for three reasons:  Defendants (1)

4  "requested" no (2) "services" from Plaintiff for which Plaintiff

5  had a (3) "reasonable expectation" of payment. *See McLeod v.*

6  *Zero Gravity Mgmt.,* 2:22-CV-01547-FWS-AGR, 2024 WL

7  3304527, at *10 (C.D. Cal. Jan. 8, 2024); *see also Corsini v.*

8  *Canyon Equity, LLC,* C-10-2061-JL, 2011 WL13247447, at *6

9  (N.D. Cal, May 23, 2011). Plaintiff's quantum meruit cause of

10  action does not contain critical elements of the cause of action.

11  *See* CACI No. 317.

12      v.  <u>Plaintiff's Supporting Evidence:</u> Course of Dealings between

13  Defendants and SPAVI,. Specifically, Defendants have no

14  evidence of a written license to use SPAVI's Potato Corner

15  Intellectual Property, and, as such, its rights (that it has sold to

16  its franchisees) derive from what is, at best, a terminable at will,

17  fully revocable license because Defendants were nonetheless

18  operating Potato Corner locations, as if a written license existed.

19  *See Pogrebnoy v. Russian Newspaper Distribution, Inc.,* 289 F.

20  Supp. 3d 1061, 1070 (C.D. Cal. 2017), aff'd, 742 F. App'x 291

21  (9th Cir. 2018) ("[A]n implied license, like any other contract, is

22  terminable at the will of either party if it is not for a specified

23  term."). After SPAVI's acquisition of the Potato Corner brand, it

24  became the licensor of the Potato Corner Intellectual Property.

25  Between December of 2021 through 2024, the months

26  immediately preceding this action, SPAVI engaged in a good

27  faith and exhaustive attempt to negotiate the terms of a written

28

CASE NO. 2:24-CV-04546-SB(AGRX)

1     license with PCJV. Defendant Guy Koren engaged and

2     participated in this negotiation; Testimony of Koren, Plaintiff

3     executives Gregorio (Plaiuntiff's CEO), Concepcion (Plaintiff's

4     COO charged with US operations), Tan (Director responsible

5     for international franchising), Magsaysay (Cinco's CEO);

6     Emails and correspondence with SPAVI, Koren, and PCJV

7     relating to negotiations of a licensing agreement for the use of

8     the Potato Corner Intellectual Property; Amended Joint Venture

9     Agreement; Franchise Agreements; FDDs

10        vi.  <u>Defendants' Supporting Evidence:</u> (1) There was no request for

11    services; PCJV USA, LLC's objected to Plaintiff's transaction

12    with its former fiduciary and joint venture partner Cinco

13    Corporation and asserted its pre-existing rights to use and

14    control Potato Corner in the United States; it did not "request"

15    any services from Plaintiff; rather, PCJV USA, LLC's became

16    subject to an involuntary interloper in breach of Cinco

17    Corporation's fiduciary and contractual obligations; (2) No

18    "services" were provided by Plaintiff to PCJV USA, LLC's

19    within the meaning of *quantum meruit* even according to

20    Plaintiff's own authority cited in its Memorandum of

21    Contentions of Law and Fact (Dkt. No. 199, citing *Cosmonova,*

22    *LLC v. BioFilm*, Inc., 763 F. Supp. 3d 1157 (S.D. Cal. 2025)

23    (dismissing quantum meruit claim)). Rather, Plaintiff allegedly

24    provided an implied "at-will" license allegedly extinguishing

25    PCJV USA, LLC's long-term right to use and/or to a long-term

26    license, which was beneficial to Plaintiff, indeed far more

27    beneficial to Plaintiff, and thus not a "service" within the

28

---

55

1    meaning of *quantum meruit*. *Cosmonova, LLC*, 763 F. Supp. 3d
2    at 1172. (3) Plaintiff had no reasonable expectation of any
3    royalty payment to Plaintiff for the same reason no royalty is
4    recoverable under the Lanham Act. Plaintiff never paid a royalty
5    to Cinco Corporation, no claim for breach of contract was
6    brought by Cinco Corporation, and Plaintiff cannot put itself
7    into a better situation than its assignor, Cinco Corporation. *See*
8    McCarthy, *supra*, § 18:15 ("'It is elementary ancient law that an
9    assignee never stands in any better position than his
10   assignor....'") (citation omitted). Defendants are simply seeking
11   a windfall or to punish Defendants' exercise of First
12   Amendment rights.

13   a.   <u>Element No. 2</u>: That Plaintiff provided such license to use the Potato
14        Corner Intellectual Property as requested by Defendant PCJV.

15        i.   This element is disputed.

16        ii.  Nature of Dispute: Legal and Factual

17        iii. <u>Plaintiff's Position Statement</u>: this is a factual dispute.

18        iv.  <u>Defendants' Position Statement</u>: Defendant disputes Element 2
19             for the same reason they dispute Element 1.

20        v.   <u>Plaintiff's Supporting Evidence</u>: Defendants have operated
21             Potato Corner locations that utilize the Potato Corner
22             Intellectual Property through what is, at best, a terminable at
23             will, fully revocable license because Defendants were
24             nonetheless operating Potato Corner locations, as if a written
25             license existed. *See Pogrebnoy v. Russian Newspaper*
26             *Distribution, Inc.,* 289 F. Supp. 3d 1061, 1070 (C.D. Cal. 2017),
27             aff'd, 742 F. App'x 291 (9th Cir. 2018) ("[A]n implied license,

28
<hr>

1    like any other contract, is terminable at the will of either party if

2    it is not for a specified term."). SPAVI has consented to that use

3    until the termination of the license agreement on May 31, 2024;

4    Trial Exhibit 29 (May 31, 2024 Termination); Testimony of

5    Concepcion (Plaintiff's COO charged with US operations), Tan

6    (Director responsible for international franchising), Magsaysay

7    (Cinco's CEO), Koren; Emails and correspondence with SPAVI,

8    Koren, and PCJV relating to negotiations of a licensing

9    agreement for the use of the Potato Corner Intellectual Property;

10   Amended Joint Venture Agreement; Franchise Agreements;

11   FDDs

12        vi.  Defendants' Supporting Evidence: Defendant relies upon the

13             same record evidence to dispute both Elements 1 and 2

14   b. Element No. 3: That Defendant has not paid Plaintiff royalties or any

15      other compensation to Plaintiff for the use of the Potato Corner

16      Intellectual Property

17        i. This element is disputed.

18        ii.     Nature of Dispute: Legal and Factual

19        iii.    Plaintiff's Position Statement: Plaintiff does not know

20             what the issue is here.

21        iv.     Defendants' Position Statement: Defendant disputes

22             Element 3 for the same reason they dispute Element 1.

23        v.      Plaintiff's Supporting Evidence: Financial statements

24             produced by Defendants showing that there have been no

25             royalty fees paid to SPAVI; Testimony of Koren, Plaintiff

26             executives Gregorio (Plaintiff's CEO), Concepcion (Plaintiff's

27             COO charged with US operations), Tan (Director responsible

28

1                for international franchising), Jose Magsaysay (Cinco's CEO)

2            vi.      <u>Defendants' Supporting Evidence:</u> Defendant relies upon

3                the same record evidence to dispute both Elements 1 and 2.

4      c. <u>Element No. 4:</u> The reasonable value for the use of the Potato Corner

5         Intellectual Property that was provided.

6            i. This element is disputed.

7            ii.      Nature of Dispute: Factual

8           v.    <u>Plaintiff's Supporting Evidence:</u> Financial statements produced

9             by Defendants showing that there have been no royalty fees paid

10           to SPAVI; Testimony of Koren, Plaintiff executives Gregorio

11           (Plaintiff's CEO), Concepcion (Plaintiff's COO charged with

12           US operations), Tan (Director responsible for international

13           franchising), Jose Magsaysay (Cinco's CEO); Notarized Deeds

14           signed by seller and buyer; USPTO filings including

15           Registrations and Assignments

16          iii.      <u>Defendants' Supporting Evidence:</u> The reasonable value

17           is nominal or $1.00 because the 15-year track record is equal

18           payment of royalties and service fees (followed by and waiver in

19           favor of growth). See McCarthy, supra, § 18:15 ("'It is

20           elementary ancient law that an assignee never stands in any

21           better position than his assignor….'") (citation omitted).

22

23     **4) Claim 10 (from FAC, Dkt. 65): Misappropriation of Trade Secrets**

24      a. <u>Element No. 1:</u> That SPAVI owned the recipes, ingredients, and

25         ingredient allocations for its proprietary flavorings, the identities of its

26         suppliers, and other know-how, procedures, and processes used and

27         employed at Potato Corner outlets, including outlets owned and/or

28

operated by Defendants ("Potato Corner Trade Secrets")

      i. This element is disputed.

      ii.    Nature of Dispute: Legal and Factual

      ~~iii.    [If legal dispute] Plaintiff's Position Statement: [insert]~~

      iii.    Plaintiff's Position Statement: SPAVI owned or controlled specific ingredients of the proprietary flavorings, the quantities of such ingredients, and the relative proportion of such ingredients,, including all steps taken to combine and mix specific ingredients, comprise of trade secrets.

      iv.    Defendants' Position Statement: As a threshold matter, a trade secret could only comprise "information, including a formula, pattern, compilation, program, device, method, technique, or process." Cal. Civ. Code 3426.1(d). SPAVI has not identified what "information" it claims Defendants misappropriated. "Flavors" is not information, and packaging is an object. Thus, SPAVI cannot carry its burden to "identify the trade secrets and carry the burden of showing they exist." *InteliClear, LLC v. ETC Global Holdings, Inc.*, 978 F.3d 653, 658. A flavor is an idea and catch-all phrase, which is not protected. *Id.*; *Silvaco Data Systems v. Intel Corp.*, 184 Cal. App. 4th 210, 220 (2010). Moreover, the plaintiff must "own" the trade secret—meaning the plaintiff either has title to the secret or has knowledge of the know how and licenses it with a confidentiality obligation. *See Sinclair v. Aquarius Electronics, Inc.*, 42 Cal.App.3d 216, 225-228 (1974) (trade secret licensing involves sharing sensitive, undisclosed information). A conclusory assignment from a prior reseller

59

~~JOINTLY FILED CLAIMS TO BE TRIED~~SECOND AMENDED JOINTLY FILED CLAIMS, COUNTERCLAIMS, THIRD PARTY CLAIMS, AND AFFIRMATIVE DEFENSES TO BE TRIED
175468760.1

CASE NO. 2:24-CV-04546-SB(AGRX)

1    with no knowledge of the trade secret does not establish the

2    required chain of title. *Memry Corp. v. Kentucky Oil*

3    *Technology, N.V.*, No. C-04-03843 RMW, 2006 WL 3734384,

4    at *5 (N.D. Cal. 2006). Here, there is no evidence of the

5    existence or ownership of trade secret information

6            v.      <u>Plaintiff's Supporting Evidence:</u> SPAVI owns all

7    trademarks, service marks, recipes, trade secrets, and other

8    intellectual property affiliated with the Potato Corner brand.

9    SPAVI acquired all of this intellectual property from the then-

10   owners, Cinco Corporation ("Cinco"), in a deal that closed in

11   2022.  Additional evidence includes: Notarized Deeds signed

12   by seller and buyer; USPTO filings including Registrations

13   and Assignments, testimony of Gregorio (Plaintiff's CEO),

14   Magsaysay (Cinco's CEO), Tan (Director responsible for

15   international franchising),

16           vi.     Defendants' Supporting Evidence: the following category,

17   which is defined above, captures the key phase and supporting

18   evidence: SPAVI Parties' Tortious Conduct. Among other

19   things, Cinco Corporation's consent to reverse engineering of

20   spices means that Plaintiff's predecessor did not know the

21   alleged secret, did not own or have a trade secret license, and

22   did not assign one to Plaintiff.

23       b.  <u>Element No. 2:</u> That these Potato Corner Trade Secrets were a secret at

24   the time of the misappropriation

25           i. This element is disputed

26           ii.     Nature of Dispute: factual

27           iii.    <u>Plaintiff's Supporting Evidence:</u> The Potato Corner brand

28

---

60

1    is identifiable by its preparation of fries, which uses seven

2    proprietary flavorings sold to SPAVI by one single supplier,

3    the identity of which is confidential and not publicly known.

4    The ingredients are not known outside the Potato Corner

5    family, and the specific recipe (and proportions of each

6    ingredient) are also kept secret. SPAVI maintains and benefits

7    from the secrecy of the recipes and ingredient allocation of

8    each flavoring and requires its supplier to protect that secrecy.

9    The only persons with access to the flavoring packets

10    delivered from the supplier (with ingredients listed but not

11    quantities and proportions) are those bound by confidentiality

12    and secrecy in favor. Anyone with access to the flavoring

13    packages and ingredients is prohibited from using them for a

14    purpose other than for the Potato Corner brand's benefit and

15    may not misappropriate or take for themselves any of the

16    proprietary information embodied in those packets. Additional

17    evidence includes: The Franchise Disclosure Documents

18    ("FDD"); agreements with the Franchisees; testimony of

19    Gregorio (Plaintiff's CEO), Magsaysay (Cinco's CEO),

20    Ybanez (Plaintiff's General Counsel), Tan (Director

21    responsible for international franchising), and Franchisees

22        iv.    Defendants' Supporting Evidence: supplier agreements;

23    third-party Ferna's sale of spices to the public that SPAVI

24    contends are secret; Cinco Corporation's consent for reverse

25    engineering of spices (meaning it did not know the alleged

26    secret and thus did not have a trade secret license); and

27    SPAVI's lack of evidence demonstrating it maintain secrecy,

28

---

61

1    including but not limited to non-disclosure agreements,

2    physically locked storage of product and recipes alleged to be

3    trade secrets, use of two-factor authentication to access online

4    storage of recipes alleged to be trade secrets, monitoring and

5    securing of employees' and agents' communications and use

6    technology to transfer data to third parties, such as by way of

7    flash drives and cloud storage.

8    c.    Element No. 3: That Defendants improperly acquired, used, or

9    disclosed the Potato Corner Trade Secrets

10    i. This element is disputed

11    ii.    Nature of Dispute: Legal and Factual

12    ~~iii.    Plaintiff's Position Statement: [insert]~~

13    iii.    Plaintiff's Position Statement: Defendants wrongfully

14    used or disclosed Potato Corner Trade Secrets by transferring

15    them to Third Parties despite acknowledging repeatedly that

16    they consisted of trade secrets in writings.

17    iv.    Defendants' Position Statement: By statute, reverse

18    engineering is fair competition. It follows that, to establish

19    wrongful acquisition, use or disclosure, Plaintiff must establish

20    a legal duty in the acquisition of a product not to reverse

21    engineer it. However, Plaintiff denies and cannot establish any

22    legal duty between Plaintiff and Defendants as it affirmatively

23    alleges they are not fiduciaries, it did not assume obligations

24    and there is no privity of contract establishing any

25    confidentiality obligation between them

26    v.    Plaintiff's Supporting Evidence: Both the JVA and AJVA

27    contain an agreement to agree on a Master License Agreement.

28

1    However, there was never a written license agreement between
2    Plaintiff and Defendants. After SPAVI acquired the Potato
3    Corner intellectual property rights, which included the Potato
4    Corner Trade Secrets, SPAVI engaged in a good faith and
5    exhaustive attempt to negotiate the terms of a written license
6    with Defendants. Defendant Guy Koren engaged and
7    participated in this negotiation, but was unwilling to agree to
8    any minimally commercially viable licensing terms. Moreover,
9    Guy Koren refused to, engage in reasonable and good faith
10    negotiation. Instead, he only offered royalty rates and license
11    fees that were more than 90% below what Koren had agreed to
12    be reasonable licensing fees over a decade prior. Koren also
13    repeatedly disengaged from the negotiation process, but still
14    was utilizing the Potato Corner Intellectual Property.
15    Therefore, SPAVI terminated the license agreement as of May
16    31, 2024. After the termination, Defendants improperly,
17    illegally, and unfairly misappropriated the flavoring packages
18    in their possession, which should have been returned
19    immediately following receipt of the May 31, 2024,
20    Termination Letter, and transferred possession of those
21    proprietary packages of flavorings to a third party for the
22    purpose of reverse-engineering the flavorings directly from the
23    packages themselves. Defendants also developed "Undercover
24    Fries" to roll out the reverse engineered fries to compete with
25    the Potato Corner brand while, at the same time, operating
26    Potato Corner outlets and being in possession of the Potato
27    Corner Intellectual Property, including the Potato Corner

JOINTLY FILED CLAIMS TO BE TRIEDSECOND
AMENDED JOINTLY FILED CLAIMS,
COUNTERCLAIMS, THIRD PARTY CLAIMS, AND
AFFIRMATIVE DEFENSES TO BE TRIED
175468760.1

CASE NO. 2:24-CV-04546-SB(AGRX)

1       Trade Secrets. Additional evidence includes: Franchisee

2       Photographs; Testimony from former franchisees, Concepcion

3       (Plaintiff's COO charged with US operations), Koren,

4       investigator; the Franchise Agreements; FDDs; and leases, of

5       PCJV over the years.

6           i.  Defendants' Supporting Evidence: Superseding Joint Venture

7       (2008–2010), Alternative Licensing Arrangements and Ongoing

8       Ratification (2011–2012), Formalization and Modification of the

9       Joint Venture (2012), LA Group Partnership Agreement and

10      Evolving Business Dynamics and Terms (2013–2018), Dispute,

11      Litigation, and State Court Proceedings (2018 and Beyond), and

12      Ongoing Annual Ratification and Regulatory Compliance.

13     d.  <u>Element No. 4:</u> That SPAVI was harmed and/or Defendants were

14      unjustly enriched by its use of the Potato Corner Trade Secrets

15          i. This element is disputed

16          ii.     Nature of Dispute: Factual

17          iii.    <u>Plaintiff's Supporting Evidence:</u> The secrecy of the Potato

18      Corner Trade Secrets holds value to SPAVI. The reverse

19      engineering was an unauthorized taking of a trade secret for

20      Defendants own personal benefit to open a competing store

21      "Undercover Fries". Additional evidence includes: Franchisee

22      Photographs; Testimony from former franchisees, Gregorio

23      (Plaintiff's CEO), Concepcion (Plaintiff's COO charged with

24      US operations), Ybanez (Plaintiff's General Counsel), Tan

25      (Director responsible for international franchising), and Koren;

26      the Franchise Agreements; FDDs; leases, of PCJV over the

27      years; and financial statements of Defendants.

28

JOINTLY FILED CLAIMS TO BE TRIED SECOND
AMENDED JOINTLY FILED CLAIMS,
COUNTERCLAIMS, THIRD PARTY CLAIMS, AND
AFFIRMATIVE DEFENSES TO BE TRIED
175468760.1

CASE NO. 2:24-CV-04546-SB(AGRX)

1              iv.      Defendants' Supporting Evidence: Defendants

2                     incorporate their above factual positions

3      e. <u>Element No. 5:</u> Defendants acquisition, use, or disclosure of the Potato

4         Corner Trade Secrets was a substantial factor in causing Plaintiff's

5         harm or for Defendants to be unjustly enriched.

6              i. This element is disputed

7              ii.     Nature of Dispute: Factual

8              iii.    <u>Plaintiff's Supporting Evidence:</u> Defendants'

9                     misappropriation, wrongful disclosure, and/or repudiation of

10                    the existence of SPAVI's above-described trade secrets and

11                    proprietary information, SPAVI has been damaged and

12                    continues to be damaged. Evidence includes: Defendants

13                    financials for the period in question May 31, 2024 through the

14                    present; testimony of Gregorio (Plaintiff's CEO), Ybanez

15                    (Plaintiff's General Counsel), Concepcion (Plaintiff's COO

16                    charged with US operations), Tan (Director responsible for

17                    international franchising), Koren, franchisees.

18             iv.      Defendants' Supporting Evidence: Defendants

19                    incorporate their above factual positions

20   I.    <u>Defendants' Affirmative Defenses to be Tried by a Jury</u>

21        1) <u>Affirmative Defense No. 1: Waiver (asserted by all Defendants as to</u>

22           <u>all claims alleged by SPAVI against them)</u>

23        a. <u>Element No. 1:</u> Through implied and/or express conduct, SPAVI

24           knowingly waived a valid right, privilege, advantage, or benefit

25           allegedly conferred upon it and its attempt to enforce that right,

26           privilege, advantage, or benefit is thus barred.

27              i.   The parties dispute that this element is satisfied.

28

[Formatted: Font: 14 pt]

65

JOINTLY FILED CLAIMS TO BE TRIED SECOND
AMENDED JOINTLY FILED CLAIMS,
COUNTERCLAIMS, THIRD PARTY CLAIMS, AND
AFFIRMATIVE DEFENSES TO BE TRIED
175468760.1                                    CASE NO. 2:24-CV-04546-SB(AGRX)

ii. <u>Nature of Dispute:</u> Factual and Legal

iii. <u>Defendants' Position Statement:</u> The specific rights or privileges that have been waived include the alleged right to terminate PCJV USA, LLC's right to use the U.S. Potato Corner marks, and the alleged right to claim that the purchased seasoning packages were secret and improperly acquired. Plaintiff's enforcement waiver is based on Plaintiff and Plaintiff's predecessor's knowing acquiescence in PCVJ USA, LLC's use and quality control of Potato Corner in the United States, including before and after Plaintiff's alleged acquisition of the same. *See* McCarthy, *supra*, § 18:15 ("'It is elementary ancient law that an assignee never stands in any better position than his assignor,' thus once an assignee has notice of an injunction against the assignor, it is bound to comply.") (citation omitted). Plaintiff's predecessor acquiesced for years in PCJV USA, LLC's use and quality contract. The fact of Plaintiff's due diligence, negotiations, and alleged transaction with Cinco Corporation before allegedly acquiring the U.S. trademarks put Plaintiff on actual notice of PCJV USA, LLC's use and control rights, and in response Plaintiff represented that it would be bound by any agreements related to the licensing of Potato Corner intellectual property in the United State, and thereafter did not attempt to enforce any alleged contrary right for years and then denied acquiring PCJV USA, LLC's use and quality control rights. As to the commercial sale of packaged seasonings, both Plaintiff and its predecessor have known for years that they did not own them, that they

1   were publicly available for purchase in the market, and that it

2   was not improper to reverse engineer them, and Plaintiff

3   thereafter fulfilled an order and agreed to a fulfill a second

4   order even after the alleged termination.

5   iv.  <u>Plaintiff's Position Statement:</u> Defendants fail  to identify any

6   specific right or privilege or benefit that was  waived. The only

7   relationship between SPAVI and any Defendant, was that of

8   licensor to licensee, pursuant  to an implied license. The only

9   right that SPAVI  possessed was to terminate or  negotiate. It

10  decision  to wait to negotiate  with Koren is not a waiver oof

11  its right to terminate.  Ironically, it is SPAVI that is alleging

12  that Defendants waived their right to claim the AJVA confers

13  perpetual licensing rights, after negotiating the terms of a

14  written license that would confer narrower rights for three

15  years without once taking the position that it did not need a

16  written license – a  three year  period during which much

17  occurred in reliance on Korenn's assent to the need for a

18  written license.

19  v.  <u>Defendants' Supporting Evidence:</u> The PCJV USA Parties

20  intend to rely on testimony and also on a robust written

21  evidentiary record which demonstrates the parties' mutual

22  intentions and the evolution of their business relationship from

23  the inception through the present. The following categories

24  and chronology capture the key phases and supporting

25  evidence: *1. Superseding Joint Venture (2008–2010)*,

26  including (a) testimony and documentary evidence (i.e.,

27  communications and the original NKM Master License

28

67

~~JOINTLY FILED CLAIMS TO BE TRIED~~SECOND AMENDED JOINTLY FILED CLAIMS, COUNTERCLAIMS, THIRD PARTY CLAIMS, AND AFFIRMATIVE DEFENSES TO BE TRIED ~~175468760.1~~

CASE NO. 2:24-CV-04546-SB(AGRX)

1    Agreement) showing the parties' shared intent to bring Potato
2    Corner to the U.S., (b) exhibits reflecting the transition from a
3    simple license to a joint venture partnership in 2009-2010,
4    including meeting minutes, correspondence, and planning
5    documents from April/May 2010, (c) evidence of the July
6    2010 formation of PCJV USA, LLC as the master franchisor
7    for all U.S. and Israel operations, with PCJV granted all rights
8    to use and license the U.S. intellectual property ("Superseding
9    Joint Venture (2008–2010)"); *2. Alternative Licensing*
10   *Arrangements and Ongoing Ratification (2011–2012)*,
11   including (a) documents and communications (i.e., DLA Piper
12   records, regulatory filings, and Franchise Disclosure
13   Documents) evidencing the parties' reliance on an alternative
14   license agreement in 2011 for Cinco's benefit, which was
15   referenced and ratified in annual FDDs and other regulatory
16   filings, (b) evidence of the 2012 Master Services Agreement,
17   which authorized the LA Group to license the brand for an
18   indefinite duration, further reflecting the parties' mutual
19   understanding and operational structure ("Alternative
20   Licensing Arrangements and Ongoing Ratification (2011–
21   2012)"); *3. Formalization and Modification of the Joint*
22   *Venture (2012)*, including (a) executed copies of the Joint
23   Venture Agreement (JVA) and the LLC Operating Agreement
24   from August 2012, memorializing the parties' rights,
25   obligations, and governance structure, (b) the First
26   Amendment to the JVA (October 2012), with supporting
27   meeting minutes, documenting specific modifications to the
28

JOINTLY FILED CLAIMS TO BE TRIEDSECOND AMENDED JOINTLY FILED CLAIMS, COUNTERCLAIMS, THIRD PARTY CLAIMS, AND AFFIRMATIVE DEFENSES TO BE TRIED
175468760.1

CASE NO. 2:24-CV-04546-SB(AGRX)

1    parties' governance protocols only ("Formalization and
2    Modification of the Joint Venture (2012)"); *4. LA Group*
3    *Partnership Agreement and Evolving Business Dynamics and*
4    *Terms (2013–2018)*, including (a) the 2013 written partnership
5    agreement entered into by the LA Group, reflecting further
6    refinement of the parties' roles and expectations, (b)
7    communications, board minutes, and negotiation records from
8    2015–2018 detailing ongoing discussions about operational
9    challenges, restructuring proposals (including Koren's
10   potential acquisition of Cinco shares or the LA Group's
11   acquisition of 100% of PCJV/PCI Trading), and a
12   contemplated new Master License Agreement for Cinco's
13   benefit in exchange for 100% ownership in PCJV/PCI Trading
14   ("LA Group Partnership Agreement and Evolving Business
15   Dynamics and Terms (2013–2018)"); *5. Dispute, Litigation,*
16   *and State Court Proceedings (2018 and Beyond)*, including (a)
17   evidence of the April 2018 board meeting and resolutions that
18   precipitated the state court litigation, including verified
19   pleadings, declarations, and court filings that set forth the
20   parties' mutual intentions and positions during the dispute,
21   including also, if necessary, settlement negotiation discussions
22   and the settlement and other agreements reached among the
23   parties, (b) additional documents and testimony from the state
24   court proceedings, including verified cross-complaints,
25   declarations, and orders, which further clarify the parties'
26   understanding and course of conduct ("Dispute, Litigation, and
27   State Court Proceedings (2018 and Beyond)"); *6. Ongoing*

28

1    *Annual Ratification and Regulatory Compliance*, including

2    FDDs, regulatory filings, and correspondence with state

3    agencies, evidencing the parties' continued mutual recognition

4    of the licensing and franchising structure, as well as the

5    ratification of their agreements and operational practices

6    ("Ongoing Annual Ratification and Regulatory Compliance");

7    *7. SPAVI Parties' Tortious Conduct*, including a

8    comprehensive body of documents and testimony which

9    demonstrates the SPAVI parties' coordinated and wrongful

10   actions aimed at appropriating the business operations, supply

11   chain, and goodwill of the Potato Corner USA franchise

12   system for their own benefit, such as (a) testimony and

13   documentary evidence showing SPAVI's deliberate efforts to

14   undermine and take over PCJV's established franchise

15   network in the United States, (b) communications, internal

16   memoranda, and correspondence reflecting SPAVI's outreach

17   to PCJV franchisees, including direct offers of temporary

18   licenses and inducements to sever ties with PCJV, as detailed

19   in termination letters and related notices, (c) evidence of

20   SPAVI's attempts to bypass PCJV's role as franchisor by

21   negotiating directly with third-party franchisees, thereby

22   disrupting existing contractual relationships and causing

23   business uncertainty, (d) documents and witness statements

24   establishing SPAVI's interference with PCI Trading's

25   procurement and distribution of supplies, (e) testimony

26   regarding SPAVI's refusal to supply powders to PCJV and its

27   franchisees following the purported termination of the license,

28

1    thereby jeopardizing ongoing operations and franchisee

2    livelihoods, (f) evidence of SPAVI's efforts to control or

3    redirect supplier relationships, including attempts to obtain

4    confidential supplier information and to assert exclusive rights

5    over the sourcing and distribution of Potato Corner products in

6    the U.S., (g) testimony and exhibits documenting SPAVI's use

7    of the established Potato Corner USA brand reputation and

8    customer base to promote its own interests, including public

9    statements, regulatory filings, and direct communications with

10   franchisees and suppliers, (h) rather than simply seeking

11   declaratory relief, SPAVI's own conduct has interjected

12   potential confusion in the marketplace, including the

13   unauthorized use of trademarks, solicitation of franchisees, and

14   dissemination of misleading information regarding the status

15   of the franchise system and intellectual property rights, (i)

16   documents showing SPAVI's attempts to claim ownership of

17   the goodwill and business relationships cultivated by PCJV

18   and PCI Trading over years of operation, despite the absence

19   of any direct contractual relationship with many U.S.

20   franchisees prior to the dispute, (j) evidence of the resulting

21   harm to PCJV, PCI Trading, and the broader franchise

22   network, including lost business opportunities, damaged

23   supplier relationships, and erosion of brand value and goodwill

24   ("SPAVI Parties' Tortious Conduct")..

25       vi.  Plaintiff's Supporting Evidence: testimony of the negotiators

26            from 2021 through 2024 including Mr. Gregorio and Mr. Tan

27            (from SSPAVI), their correspondence with Koren and his

28

---

71

1    testimony, the NKM  License agreement and the JVA and

2    AJVA (none of which SPAAVI is a party to or conferred

3    rights that SPAVI  is  responsible for. The absence of

4    contractual privity or otherwise is what disproves this

5    affirmative defense.

6    b.  <u>Causes of Action Barred by this Affirmative Defense</u>: all of SPAVI's

7        causes of action

8    **2)  <u>Affirmative Defense No. 2: In Pari Delicto (asserted as to all of</u>**

9        **<u>SPAVI's causes of action).</u>**

10    a.  <u>Element No. 1</u>: Plaintiff and Defendants have substantially equal

11        economic strength.

12        i.  This element is not in dispute.

13    b.  <u>Element No. 2</u>: Plaintiff is at least equally responsible for the harmful

14        conduct as Defendants.

15        i.  Disputed Status of Element 2: The parties dispute that this

16            element is satisfied.

17        ii.  Nature of Dispute: Legal and Factual

18        iii.  <u>Defendants' Position Statement</u>: Defendants' elements precisely

19            follow CACI No. 3431

20        iv.  <u>Plaintiff's Position Statement</u>: the statement of these  elements

21            omit that to apply "in  pari ~~director~~dilecto" requires that

22            SPPAVI have engaged in  "illegal, fraudulent, or inequitable

23            conduct,"  and that has never  been alleged, nor is there any

24            evidence of this.

25        v.  <u>Defendant's Supporting Evidence:</u> the following category,

26            which is defined above, captures the key phase and supporting

27            evidence: SPAVI Parties' Tortious Conduct.

28

vi. <u>Plaintiff's Supporting Evidence:</u> testimony of the negotiators from 2021 through 2024 including Mr. Gregorio and Mr. Tan (from SSPAVI), their correspondence with Koren and his testimony, the NKM  License agreement and the JVA and AJVA (none of which SPAAVI is a party to or conferred rights that SPAVI  is  responsible for. The absence of contractual privity or otherwise is what disproves this affirmative defense.

c. <u>Element No. 3</u>: Plaintiff was not held by economic pressure to engage in harmful conduct.

   i. Disputed Status of Element 3: The parties dispute that this element is satisfied.

   ii. <u>Nature of Dispute:</u> Legal and Factual.

   iii. <u>Defendants' Position Statement:</u> Defendants' elements precisely follow CACI No. 3431.

   iv. <u>Plaintiff's Position Statement:</u> the statement of these  elements omit that to apply "in  pari dilecto" requires that SPPAVI have engaged in  "illegal, fraudulent, or inequitable conduct,"  and that has never  been alleged, nor is there any evidence of this.

   v. <u>Defendant's Supporting Evidence:</u> documents and testimony including and related to (1) PCJV USA, LLC's right to use Potato Corner IP and quality control rights related thereto under PCJV USA, LLC's governing documents, including agreements and related negotiations, franchise disclosure documents and board minutes; (2) the parties' course of conduct regarding PCJV USA, LLC's use and control of U.S. Potato Corner trademarks; (3) the fact of SPAVI's due diligence, negotiations, and alleged acquisition of Cinco Corporation's assets and

JOINTLY FILED CLAIMS TO BE TRIEDSECOND AMENDED JOINTLY FILED CLAIMS, COUNTERCLAIMS, THIRD PARTY CLAIMS, AND AFFIRMATIVE DEFENSES TO BE TRIED 175468760.1

CASE NO. 2:24-CV-04546-SB(AGRX)

1   liabilities; (4) SPAVI's denial of acquiring any IP rights or

2   obligations under PCJV's governing documents; (5) SPAVI's

3   statement that it would be bound by a settlement with Cinco; (6)

4   SPAVI's knowing failure to do anything for years regarding

5   PCJV USA Parties' full exercise of its right to use and quality

6   control; and (7) SPAVI's decision to renege on a purchase order,

7   creating a short-term supply chain problem.

8       vi.  <u>Plaintiff's Supporting Evidence:</u> testimony of the negotiators

9   from 2021 through 2024 including Mr. Gregorio and Mr. Tan

10  (from SSPAVI), their correspondence with Koren and his

11  testimony, the NKM  License agreement and the JVA and

12  AJVA (none of which SPAAVI is a party to or conferred rights

13  that SPAVI  is  responsible for. The absence of contractual

14  privity or otherwise is what disproves this affirmative defense.

15    d.  <u>Causes of Action Barred by this Affirmative Defense</u>: all of SPAVI's

16  causes of action.

17  **3)  <u>Affirmative Defense No. 3: Statute of Limitations. (asserted as to all of</u>**

18  **<u>SPAVI's causes of action)</u>**

19    a.  <u>Element No. 1</u>: SPAVI (either independently or as successor-in-

20  interest to Cinco) knew, should have known, or had constructive notice

21  of PCJV USA Parties' alleged infringing conduct over three years

22  before SPAVI filed this action.

23      i.  The parties dispute that this element is satisfied.

24      ii.  Nature of Dispute: Factual

25      iii.  <u>Defendant's Supporting Evidence</u>: the following categories,

26  which are defined above, capture the key phases and supporting

27  evidence: Superseding Joint Venture (2008–2010), Alternative

28

Licensing Arrangements and Ongoing Ratification (2011–2012),
Formalization and Modification of the Joint Venture (2012), LA
Group Partnership Agreement and Evolving Business Dynamics
and Terms (2013–2018), Dispute, Litigation, and State Court
Proceedings (2018 and Beyond), Ongoing Annual Ratification
and Regulatory Compliance, and SPAVI Parties' Tortious
Conduct.

  iv. <u>Plaintiff's Supporting Evidence</u>: Testimony off Mr. Gregorio
(CEO of SPAVI) regarding termination of negotiations and
sending the Termination Letter hours before this lawsuit was
filed, such that, unless the statute of limitations is calculated by
way of hours rather than years, this defense is an impossibility.

 b. <u>Causes of Action Barred by this Affirmative Defense</u>: all of SPAVI's
causes of action.

**4) <u>Affirmative Defense No. 4: Abandonment through Assignment in Gross.</u>**

 a. <u>Element No. 1</u>: Cinco Corporation assigned U.S. Potato Corner
trademarks to SPAVI without the goodwill associated with the
trademarks.

  i. The parties dispute that this element is satisfied.

  ii. Nature of Dispute: Factual and Legal

  iii. <u>Defendants' Supporting Legal Position</u>: Trademarks cannot be
assigned or transferred apart from the goodwill of the business
they represent. *See Federal Treasury Enterprise*
*Sojuzplodoimport v. Spirits Intern. N.V.*, 623 F.3d 61, 68 (2d
Cir. 2010); *Glow Industries, Inc. v. Lopez*, 273 F. Supp. 2d
1095, 1108 (C.D. Cal. 2003); *Hallmark Hardwoods, Inv. ~~I~~ v.*
*Omni Wood Product, LLC*, 2011 WL 13176098, *15 (C.D. Cal.

75

~~JOINTLY FILED CLAIMS TO BE TRIED~~SECOND
AMENDED JOINTLY FILED CLAIMS,
COUNTERCLAIMS, THIRD PARTY CLAIMS, AND
AFFIRMATIVE DEFENSES TO BE TRIED
~~175468760.1~~

CASE NO. 2:24-CV-04546-SB(AGRX)

1    2011); *In re Impact Distributors, Inc.*, 260 B.R. 48, 53-55 (S.D.

2    Fla. 2001); *Money Store v. Harriscorp Fin., Inc.*, 689 F.2d 666,

3    670 (7th Cir. 1982).

4    iv.    Plaintiff's Supporting Legal Position: this is a factual dispute.

5    Plaintiff argues that it did receive goodwill, while Defendants

6    argue that we did not.

7    v.    ~~Defendants' Supporting Evidence: the following category,~~

8    ~~which is defined above, captures the key phase and supporting~~

9    ~~evidence: SPAVI Parties' Tortious Conduct.~~Defendants'

10    Supporting Evidence: documents and testimony including and

11    related to (1) Defendants' senior use and quality control of U.S.

12    Potato Corner trademarks; (2) PCJV USA, LLC's governing

13    documents, including agreements and related negotiations,

14    franchise disclosure documents and board minutes; (3) the

15    parties' course of conduct regarding PCJV USA, LLC's use and

16    control of U.S. Potato Corner trademarks; (4) SPAVI's

17    knowledge of the same; (5) Defendants' Membership Interest

18    Purchase Agreement ("MIPA") with Cinco acquiring all of

19    Cinco's Interests in and any and all rights "attached" thereto

20    unencumbered by a need for a license from any third party; and

21    (6) the fact of SPAVI's due diligence, negotiation, and alleged

22    acquisition of Cinco Corporation's assets and liabilities, and

23    denial of acquiring PCJV's Potato Corner franchise business and

24    any IP rights or obligations under PCJV's governing documents.

25    vi.    Plaintiff's Supporting Evidence: the  deeds filed with the

26    USPTO, proof of intent to continue using the marks,, including

27    plans to expand rapidly within the US (testimony of SPAVI

28

---

76

1            executives charged with this expansion, including Mr. Gregorio,

2            Mr. Tann, and Mr. Concepcion, the COO.)

3       b. <u>Causes of Action Barred by this Affirmative Defense</u>: SPAVI's causes

4            of action for Trademark Infringement (15 U.S.C. § 1114), Trademark

5            Infringement (15 U.S.C. § 1125(a)), False Designation of Origin and

6            Description of Fact (15 U.S.C. § 1125(a)), Contributory Trademark

7            Infringement (15 U.S.C. § 1114), Contributory Trademark and False

8            Designation of Fact (15 U.S.C. § 1125(a)), Common Law Trademark

9            Infringement, Declaratory Relief and Unfair Competition (Bus. &

10            Prof. Code § 17200).

11    **5)** <u>**Affirmative Defense No. 5: Abandonment through Naked Licensing.**</u>

12       a. <u>Element No. 1</u>: SPAVI Parties (including Cinco's) alleged licensed use

13            of U.S. Potato Corner trademarks to PCJV USA Parties.

14         i.   This element is disputed.

15         ii.   <u>Nature of the dispute:</u> Legal

16        iii.   <u>Defendants' Position Statement:</u> Defendants assert both

17             ownership and use rights arising from naked licensing, i.e.,

18             authorization to use without adequate control. Ownership arises

19             from Cinco Corporation's naked license because it barred the

20             sale of any trademark rights to Plaintiff, and the PCJV USA

21             Parties acquired all of Cinco Corporation's Interests and rights

22             in Potato Corner in the United States in their settlement and

23             MIPA. Ownership also arises from Plaintiff's naked licensing

24             because PCJV USA, LLC is a senior user of the mark, including

25             because Plaintiff never had any right to control Potato Corner in

26             the United States, did not exercise control over Potato Corner in

27             the United States, and had no grounds to believe PCJV USA,

28

~~JOINTLY FILED CLAIMS TO BE TRIED~~SECOND
AMENDED JOINTLY FILED CLAIMS,
COUNTERCLAIMS, THIRD PARTY CLAIMS, AND
AFFIRMATIVE DEFENSES TO BE TRIED
~~175468760.1~~
                 CASE NO. 2:24-CV-04546-SB(AGRX)

1     LLC would listen to or take any instruction from SPAVI.

2         iv.   Plaintiff's Supporting Legal Position: the wording of this

3               element, however, is going to be confusing to a jury. If it is

4               PCJV's position that it was not even a licensee as of May 31,

5               2024, the damages calculation will change considerably.

6     b.  Element No. 2: SPAVI Parties (including Cinco) did not exercise

7         adequate control over PCJV USA Parties' use of U.S. Potato Corner

8         trademarks.

9         i.    The parties dispute that this element is satisfied.

10        ii.   Nature of Dispute: Factual and Legal.

11        iii.  Defendant's Supporting Legal Position: [insert]

12        iii.  Defendant's Supporting Legal Position: Defendants assert both

13              ownership and use rights arising from naked licensing, *i.e.,*

14              authorization to use without adequate control. Ownership arises

15              from Cinco Corporation's naked license because it barred the

16              sale of any trademark rights to Plaintiff, and the PCJV USA

17              Parties acquired all of Cinco Corporation's Interests and rights

18              in Potato Corner in the United States in their settlement and

19              MIPA. Ownership also arises from Plaintiff's naked licensing

20              because PCJV USA, LLC is a senior user of the mark, including

21              because Plaintiff never had any right to control Potato Corner in

22              the United States, did not exercise control over Potato Corner in

23              the United States, and had no grounds to believe PCJV USA,

24              LLC would listen to or take any instruction from SPAVI.

25        iv.   Plaintiff's Supporting Legal Position: First, this is an incorrect

26              statement of the law, as the focus is less so on the use of the

27              Marks, but more so on the nature and quality of the goods and/or

28

78

services sold by the licensee. Second, though unsatisfying in its failure to conclusively resolve the debate, in the Ninth Circuit this defense likely requires a showing of clear and convincing evidence. FreecycleSunnyvale v. Freecycle Network, 626 F.3d 509, 514 (9th Cir. 2010)

Formatted: Font: 14 pt

    v.  Defendants' Supporting Evidence: the following categories, which are defined above, capture the key phases and supporting evidence: Superseding Joint Venture (2008–2010), Alternative Licensing Arrangements and Ongoing Ratification (2011–2012), Formalization and Modification of the Joint Venture (2012), LA Group Partnership Agreement and Evolving Business Dynamics and Terms (2013–2018), Dispute, Litigation, and State Court Proceedings (2018 and Beyond), Ongoing Annual Ratification and Regulatory Compliance, and SPAVI Parties' Tortious Conduct.

    vi.  Plaintiff's Supporting Evidence: Pursuant to the three considerations as to whether naked licensing has occurred, as summarized in F19 Franchising, LLC v. Endo Fitness LL, LLC, No. 2:23-CV-00185-MEMF-JCX, 2023 WL 11950376, at *6–9 (C.D. Cal. July 28, 2023), this is the one issue for trial  in which the prior action is actually relevant,, as it sets forth that efforts to exert control, as do the prior correspondence between Cinco and PCJV, and, moreover, the course of dealing prior to termination establishes the attempts to get control.

  c.  Causes of Action Barred by this Affirmative Defense: SPAVI's causes of action for Trademark Infringement (15 U.S.C. § 1114), Trademark Infringement (15 U.S.C. § 1125(a)), False Designation of Origin and

JOINTLY FILED CLAIMS TO BE TRIEDSECOND AMENDED JOINTLY FILED CLAIMS, COUNTERCLAIMS, THIRD PARTY CLAIMS, AND AFFIRMATIVE DEFENSES TO BE TRIED 175468760.1

CASE NO. 2:24-CV-04546-SB(AGRX)

1    Description of Fact (15 U.S.C. § 1125(a)), Contributory Trademark

2    Infringement (15 U.S.C. § 1114), Contributory Trademark and False

3    Designation of Fact (15 U.S.C. § 1125(a)), Common Law Trademark

4    Infringement, Declaratory Relief and Unfair Competition (Bus. &

5    Prof. Code § 17200).

6    6)  **Affirmative Defense No. 6: Senior Use.**

7        a.  Element6 No. 1: Defendants were the first to use the U.S. Potato

8        Corner trademarks in the United States.

9            i.  The parties dispute that this element is satisfied.

10           ii.  Nature of Dispute: Legal and factual.

11           iii.  Defendant's Legal Position Statement: "The first to use a mark

12           in an area is deemed the 'senior' user and has the right to enjoin

13           'junior users from using confusing similar marks in the same

14           industry or market or within the senior user's natural zone of

15           expansion." *Optimal Pets, Inc. v. Nutri-Vet, LLC*, 877 F. Supp.

16           953, 959 (C.D. Cal. 2012).

17           iv.  Plaintiff's Legal Position Statement: See 15 USC § 1055. This

18           argument is not made in good faith. It is also law of the case.

19           v.  Defendants' Supporting Evidence: [insert]

20           vi.  Plaintiff's Supporting Evidence: Registrations and testimony of

21           Koren and  Mr. Magsaysay

22       b.  Element No. 2: SPAVI intends to use the U.S. Potato Corner

23       trademarks in the United States.

24           i.  The parties dispute that this element is satisfied.

25           ii.  Nature of Dispute: Legal and factual.

26           iii.  Defendants' Legal Position Statement: "The first to use a mark

27           in an area is deemed the 'senior' user and has the right to enjoin

28

JOINTLY FILED CLAIMS TO BE TRIEDSECOND          CASE NO. 2:24-CV-04546-SB(AGRX)
AMENDED JOINTLY FILED CLAIMS,
COUNTERCLAIMS, THIRD PARTY CLAIMS, AND
AFFIRMATIVE DEFENSES TO BE TRIED
17546876O.1

Formatted: No underline

Formatted: No underline

'junior users from using confusing similar marks in the same industry or market or within the senior user's natural zone of expansion." *Optimal Pets, Inc.* v. *Nutri-Vet, LLC*, 877 F. Supp. 953, 959 (C.D. *Cal.* 2012).

iv.    Plaintiff's Legal Position Statement: Unclear what the dispute is here other than factual.

v.    Defendants' Supporting Evidence: the following categories, which are defined above, capture the key phases and supporting evidence: Superseding Joint Venture (2008–2010), Alternative Licensing Arrangements and Ongoing Ratification (2011–2012), Formalization and Modification of the Joint Venture (2012), LA Group Partnership Agreement and Evolving Business Dynamics and Terms (2013–2018), Dispute, Litigation, and State Court Proceedings (2018 and Beyond).

vi.    Plaintiff's Supporting Evidence: Testimony of Gregorio, Tan, Concepcion, and Shaikh and Hussein

e.a.    Causes of Action Barred by this Affirmative Defense: SPAVI's causes of action for Trademark Infringement (15 U.S.C. § 1114), Trademark Infringement (15 U.S.C. § 1125(a)), False Designation of Origin and Description of Fact (15 U.S.C. § 1125(a)), Contributory Trademark Infringement (15 U.S.C. § 1114), Contributory Trademark and False Designation of Fact (15 U.S.C. § 1125(a)), Common Law Trademark Infringement, Declaratory Relief and Unfair Competition (Bus. & Prof. Code § 17200).

7)6)    Affirmative Defense No. 7: **Continuous Prior Use Within Remote Geographic Area.**

a.    Element No. 1: Defendants continuously used the trademark, without

JOINTLY FILED CLAIMS TO BE TRIEDSECOND AMENDED JOINTLY FILED CLAIMS, COUNTERCLAIMS, THIRD PARTY CLAIMS, AND AFFIRMATIVE DEFENSES TO BE TRIED
175468760.1

CASE NO. 2:24-CV-04546-SB(AGRX)

1   interruption, in the U.S.

2          i.   The parties dispute that this element is satisfied.

3          ii.  Nature of Dispute: Legal and factual.

4          iii. <u>Defendants' Supporting Legal Position:</u> (1) PCJV USA, LLC's

5               is the senior use under *Sengoku*, including actual first use

6               (restructure in 2009) and lawful first use, *see CreAgri, Inc. v.*

7               *USANA Health Services, Inc.*, 474 F3d 626, 630 (9th Cir. 2007);

8               (2) but for a license agreement, which SPAVI Parties disavow,

9               PCJV USA, LLC's use inured to its own benefit; (3) Cinco

10              Corporation did not control PCJV USA, LLC's use of the Potato

11              Corner marks; and (4) SPAVI Parties did not control PCJV

12              USA, LLC's use of the Potato Corner marks.

13         iv.  <u>Plaintiff's Supporting Legal Position:</u> See 115 USC §1055. This

14              argument is not  made in good faith.

15         v.   <u>Defendants' Supporting Evidence:</u> the following categories,

16              which are defined above, capture the key phases and supporting

17              evidence: Superseding Joint Venture (2008–2010), Alternative

18              Licensing Arrangements and Ongoing Ratification (2011–2012),

19              Formalization and Modification of the Joint Venture (2012), LA

20              Group Partnership Agreement and Evolving Business Dynamics

21              and Terms (2013–2018), Dispute, Litigation, and State Court

22              Proceedings (2018 and Beyond).

23         vi.  <u>Plaintiff's Supporting Evidence:</u> All evidence presented in

24              Plaintiffs' case in chief will prove the defense of  this.

25      b.  <u>Element No. 2</u>: Defendants began using the trademark without

26          knowledge of SPAVI's prior use elsewhere.

27         i.   Disputed Status of Element 2: The parties dispute that this

28

---

82

1    element is satisfied.

2        ii.  <u>Nature of Dispute:</u> Factual.

3        iii.  <u>Defendants' Supporting Evidence:</u> the following categories,

4    which are defined above, capture the key phases and supporting

5    evidence: Superseding Joint Venture (2008–2010), Alternative

6    Licensing Arrangements and Ongoing Ratification (2011–2012),

7    Formalization and Modification of the Joint Venture (2012), LA

8    Group Partnership Agreement and Evolving Business Dynamics

9    and Terms (2013–2018), Dispute, Litigation, and State Court

10    Proceedings (2018 and Beyond).

11        iv.  <u>Plaintiff's Supporting Evidence:</u> Koren testimony, registrations.

12    c.  <u>Element No. 3</u>: Defendants used the trademark before SPAVI

13    published the registered trademark.

14        i.  Disputed Status of Element 3: The parties dispute that this

15    element is satisfied.

16        ii.  <u>Nature of Dispute:</u> factual.

17        iii.  <u>Defendants' Supporting Evidence:</u> the following categories,

18    which are defined above, capture the key phases and supporting

19    evidence: Superseding Joint Venture (2008–2010), Alternative

20    Licensing Arrangements and Ongoing Ratification (2011–2012),

21    Formalization and Modification of the Joint Venture (2012), LA

22    Group Partnership Agreement and Evolving Business Dynamics

23    and Terms (2013–2018), Dispute, Litigation, and State Court

24    Proceedings (2018 and Beyond).

25        iv.  <u>Plaintiff's Supporting Evidence:</u> 15 USC § 1055. This argument

26    is not made in good faith

27    d.  <u>Causes of Action Barred by this Affirmative Defense</u>: SPAVI's causes

28

1     of action for Trademark Infringement (15 U.S.C. § 1114), Trademark

2     Infringement (15 U.S.C. § 1125(a)), False Designation of Origin and

3     Description of Fact (15 U.S.C. § 1125(a)), Contributory Trademark

4     Infringement (15 U.S.C. § 1114), Contributory Trademark and False

5     Designation of Fact (15 U.S.C. § 1125(a)), Common Law Trademark

6     Infringement, Declaratory Relief and Unfair Competition (Bus. &

7     Prof. Code § 17200).

8     8)7)    **Affirmative Defense No. 67: Mitigation.**

9       a.  Element No. 1: SPAVI failed to use reasonable efforts to mitigate

10     alleged damages.

11         i.  The parties dispute that this element is satisfied.

12         ii.  Nature of Dispute: Factual.

13         iii.  Defendants' Supporting Evidence: the following category,

14           which is defined above, captures the key phase and supporting

15           evidence: SPAVI Parties' Tortious Conduct.

16         iv.  Plaintiff's Supporting Evidence: Plaintiff looks forward to

17           presenting the jury with every effort taken to get PCJV and

18           Koren to either pay for or stop, finally, using this brand for

19           which he has never paid to benefit from, whether that was

20           negotiating a license, terminating the license or other attempts.

21       b.  Element No. 2: the amount by which damages would have been

22     mitigated.

23         i.  The parties dispute that this element is satisfied.

24         ii.  Nature of Dispute: Factual.

25         iii.  Defendants' Supporting Evidence: the following category,

26           which is defined above, captures the key phase and supporting

27           evidence: SPAVI Parties' Tortious Conduct.

28

1          iv.  <u>Plaintiff's Supporting Evidence:</u> Testimony of Koren, Gregorio,

2              Victor Tan,  Financial documents.

3       c.  <u>Causes of Action Barred by this Affirmative Defense</u>: All of SPAVI

4          Parties' causes of action (to the extent they seek damages).

5    ~~9)~~8)    **Affirmative Defense No. ~~9~~8: Senior Use Trademark Ownership**

6       a.  <u>Element No. 1</u>: At the time of first lawful use, the partnership and JVA

7          evidence co-ownership of the U.S. Potato Corner marks.

8          i.  Disputed Status of Element 1: The parties dispute that this

9              element is satisfied.

10          ii.  Nature of Dispute: Legal and factual.

11          iii.  <u>Defendants' Position Statement:</u> The partnership and joint

12              venture agreement between PCJV USA, LLC's LA Group and

13              Cinco Group recognize and support per their terms and

14              conditions that PCJV USA, LLC—the first actual, lawful,

15              continuous and exclusive user of the U.S. Potato Corner

16              marks—owns the U.S. Potato Corner marks (which was the LA

17              Group's long-term security and consideration) at least until the

18              parties executed the contemplated master license agreement

19              (which was the Cinco Group's consideration) that they both

20              agreed to enter into in accordance with their fiduciary and

21              contractual obligations, but which still treated them as joint

22              venture partners. *See Sengoku Works Ltd. v. RMC Int'l, Ltd.*, 96

23              F.3d 1217, 1219 (9th Cir. 1996); *Optimal Pets, Inc. v. Nutri-Vet,*

24              *LLC*, 877 F. Supp. 953, 959 (C.D. Cal. 2012~~1996~~); *cf. Precision*

25              *Door Service, Inc. v. Bell,* No. C 02–01108 CW, 2002 WL

26              655053, at *6 (N.D. Cal April 18, 2002). Given that Plaintiff is

27              disavowing the license agreement—meaning the factual basis

28

85

~~JOINTLY FILED CLAIMS TO BE TRIED~~SECOND          CASE NO. 2:24-CV-04546-SB(AGRX)
AMENDED JOINTLY FILED CLAIMS,
COUNTERCLAIMS, THIRD PARTY CLAIMS, AND
AFFIRMATIVE DEFENSES TO BE TRIED
~~175468760.1~~

1    upon which PCJV USA, LLC's use might inure to Cinco
2    Corporation's benefit did not happen—the operative
3    coownership agreements favor Defendants or, at minimum, are
4    not dispositive as to ownership. Plaintiff does not get ownership
5    by default because all exclusive users under *Sengoku* are alleged
6    "related companies." Under *Sengoku*, an alleged "related
7    company" who is an exclusive user in the United States, gets to
8    rebut that presumption, especially where, as here, the registrant
9    filed an intent to use application that would only evidence senior
10    use if the exclusive user's first actual and lawful use inured to its
11    benefit. Under the partnership and joint venture agreement,
12    which "vested" in the joint venture and exclusive user complete
13    licensing rights and obligations in the United States, approval of
14    franchise agreements, including as disclosed in FDDs,
15    restrictions on transfer, payment of equal royalties and service
16    fees, and lifetime rights to license and quality control over
17    Potato Corner in the United States, it plainly supports ownership
18    in the joint venture or, at minimum, is not dispositive. The jury
19    is entitled to consider the following five factors used in the
20    Ninth Circuit to help determine ownership as between PCJV
21    USA, LLC, an exclusive domestic user, and Plaintiff, an
22    assignee of a foreign registrant, which plainly demonstrate that
23    PCJV USA, LLC owns the U.S. marks unless and until there
24    was a meeting of the minds on an enforceable license
25    agreement: (1) which party invented and affixed the mark to the
26    product; (2) which party's name appeared with the trademark;
27    (3) which party maintained the product's quality and uniformity;

1    (4) which party does the public identify with the product and

2    make complaints to; and (5) which party possesses the goodwill

3    associated with the product.

4    iv.  <u>Plaintiff's Position Statement:</u> This misstates the Lanhan act and

5    the rules  of priority. *See -Yagu*. And  *Sengoku*. See 15 USC

6    § 1055. This argument is not made in good faith. It is also law of

7    the case.~~.~~

8    v.  <u>Defendants' Supporting Evidence:</u> documents and testimony

9    including and related to (1) DLA Piper's notification of Cinco

10    Corporation's unlawful use of Potato Corner in the United

11    States; (2) the State of California's Department of Business

12    Oversight's Order sanctioning PCJV USA, LLC for Cinco

13    Corporation's alleged prior use of Potato Corner in the United

14    States; (3) the superseding and restructure agreement between

15    Guy Koren and Jose Magsaysay vesting ownership of Potato

16    Corner in their partnership; (4) the joint venture agreement

17    vesting co-ownership of Potato Corner in the United States in

18    PCJV USA, LLC; (5) control over Potato Corner in the United

19    States being vested with and exercised by PCJV USA, LLC; (6)

20    Potato Corner USA being affixed to Potato Corner in the United

21    States; (7) consumer association of Potato Corner in the United

22    States with PCJV USA, LLC, to whom complaints, if any, were

23    lodged; (8) PCJV USA, LLC's creation, development and hold

24    over the goodwill of Potato Corner in the United States for over

25    a decade; (9) Cinco's lack of control of Potato Corner in the

26    United States for over a decade; (10) Plaintiff's lack of control

27    of Potato Corner in the United States after it allegedly acquired

28

1    the U.S. trademarks and before it registered additional Potato

2    Corner trademarks; and (11) Plaintiff's suppression of evidence

3    relevant to ownership.

4        vi.    Plaintiff's Supporting Evidence: The registration and Koren's

5        admissions regarding control. Testimony of Koren and Mr.

6        Magsaysay.

7    b.    Element No. 2 (if Element No. 1 is not dispositive): The following

8    factors demonstrate PCJV USA, LLC owns the U.S. Potato Corner

9    Trademarks:  (1) which party invented and affixed the mark to the

10    product;  (2) which party's name appeared with the trademark; (3)

11    which party maintained the product's quality and uniformity; (4)

12    which party does the public identify with the product and make

13    complaints to; and (5) which party possesses the goodwill associated

14    with the product.

15        i.    Disputed Status of Element 3: The parties dispute that this

16        element is satisfied.

17        ii.    Nature of Dispute: Legal and factual.

18        iii.    Defendants' Position Statement: Defendants incorporate the

19        above legal position.

20        iv.    Plaintiff's Position Statement: this is incomprehensible and not

21        made in good faith.

22        v.    Defendants' Supporting Evidence: Defendants incorporate the

23        above legal positionreference to evidentiary support.

24        vi.    Plaintiff's Supporting Evidence: this is incomprehensible and

25        not made in good faith. Testimony of Gregorio, Tan,

26        Concepcion, and Shaikh and Hussein.

27    c.    Causes of Action Barred by this Affirmative Defense: SPAVI's causes

28

JOINTLY FILED CLAIMS TO BE TRIEDSECOND
AMENDED JOINTLY FILED CLAIMS,
COUNTERCLAIMS, THIRD PARTY CLAIMS, AND
AFFIRMATIVE DEFENSES TO BE TRIED
175468760.1

CASE NO. 2:24-CV-04546-SB(AGRX)

of action for Trademark Infringement (15 U.S.C. § 1114), Trademark Infringement (15 U.S.C. § 1125(a)), False Designation of Origin and Description of Fact (15 U.S.C. § 1125(a)), Contributory Trademark Infringement (15 U.S.C. § 1114), Contributory Trademark and False Designation of Fact (15 U.S.C. § 1125(a)), Common Law Trademark Infringement, Declaratory Relief and Unfair Competition (Bus. & Prof. Code § 17200).

**II.  Counterclaimants and Third Party Plaintiffs' ("PCJV USA Parties") Causes of Action to be Tried by a Jury**

**1) Cause of Action No. 2: Inducing Breach of Contract**

  b. <u>Element No. 1:</u> there was a contract between any one of the PCJV USA Parties, on the one hand, and any one of the Cinco parties (inclusive of the "Cinco Group" and "PCI Group") or franchises on the other hand.

   i.  Disputed Status of Element 1:  The parties dispute this element is satisfied.

   ii.  <u>Nature of Dispute:</u> factual and legal

   iii.  <u>PCJV USA Parties Legal Position Statement:</u> The term for PCJV USA, LLC's use of the U.S. Potato Corner trademarks "can be [i]mplied from the nature of the contract and circumstances surrounding it."  *See Consolidated Theatres, Inc. v. Theatrical Stage Emp. Union, Local 16*, 69 Cal.2d 713, 725 (1968).  The "initial effort of the court, in construing contracts of continuing performance of forbearance which contain no express term of duration, must always be that of implying a term of duration commensurate with the intentions of the parties . . . ."  *Id.* at 727.  Only

Formatted: Font: 14 pt

1      when "the nature of the contract and the totality of the

2      surrounding circumstances give no suggestion as to any

3      ascertainable term . . . , the obligations under the contract

4      shall be terminable at will by any party upon reasonable

5      notice after such a reasonable time has elapsed." *Id.* Further,

6      it is immaterial that SPAVI had full knowledge of the

7      contracts' terms. *See Jenni Rivera Enterprises, LLC v. Latin*

8      *World Entertainment Holdings, Inc.*, 36 Cal. App. 5th 766,

9      783 (2019). Nor is SPAVI's belief about the legal

10      significance of facts or belief that the parties' agreements are

11      legally binding or has a different legal effect from what it is

12      judicially held to have. *See Little v. Amber Hotel Co.*, 202

13      Cal. App. 4th 280, 302 (2011).

14     iv.   <u>Plaintiff's Position Statement:</u> as drafted it is impossible to

15      know what the specific contract is that is at issue here. It has

16      never been disclosed, and still undisclosed. Rather than

17      jettison the claim or actually identify the contract, instead,

18      Defendants' solution is to fudge with obtuse language in the

19      jury instructions, designed to confuse everyone, including the

20      jury: "there was a contract between any one of the PCJV

21      Plaintiffs and any one of the Cinco parties." Indeed, the only

22      contract that Cinco has been a party to with any of these

23      Counterclaimants is the Settlement Agreement of the Prior

24      Governance Action. There is no other written agreement

25      between PCJV and Cinco, or between any other

26      Counterclaimant and Cinco.

27     v.   <u>PCJV USA Parties' Supporting Evidence:</u> the following

28

~~JOINTLY FILED CLAIMS TO BE TRIED~~SECOND
AMENDED JOINTLY FILED CLAIMS,
COUNTERCLAIMS, THIRD PARTY CLAIMS, AND
AFFIRMATIVE DEFENSES TO BE TRIED
~~175468760.1~~
          CASE NO. 2:24-CV-04546-SB(AGRX)

1            categories, which are defined above, capture the key phases

2            and supporting evidence: Superseding Joint Venture (2008–

3            2010), Alternative Licensing Arrangements and Ongoing

4            Ratification (2011–2012), Formalization and Modification of

5            the Joint Venture (2012), LA Group Partnership Agreement

6            and Evolving Business Dynamics and Terms (2013–2018),

7            Dispute, Litigation, and State Court Proceedings (2018 and

8            Beyond), and Ongoing Annual Ratification and Regulatory

9            Compliance.

10       vi.   <u>SPAVI and Cinco Parties' Supporting Evidence:</u> Each of the

11            agreements included in the trial exhibits and  testimony of

12            Mr. Magsaysay, Mr. Koren, and Ms. Victor – all of  which

13            will establish that  none of the Counterclaimants – PCJV,

14            PCIT, LA Group LLC, GK Capital, NKM, or Koren have

15            any contract to which Cinco has privity.

16    c.  <u>Element No. 2:</u> SPAVI knew of the contract.

17       i.   Disputed Status of Element 2:  The parties dispute this

18            element is satisfied.

19       ii.   <u>Nature of Dispute:</u> factual  and legal.

20       iii.   <u>PCJV USA Parties Legal Position Statement:</u> "the contract"

21            refers to each and every applicable contract, including all

22            written, oral, and/or implied-in-fact agreements between the

23            "Cinco Group" and/or "PCI Group," on the one hand, and

24            Cross-Complainants PCJV, PCI Trading, LA Group, GK

25            Capital, NKM, and Koren, on the other hand, inclusive of the

26            JVA/AJVA, LLC Agreement, license agreements, MSA (as

27            restated, amended, modified, or appended over time through

28

      CASE NO. 2:24-CV-04546-SB(AGRX)

1    PCJV meeting minutes, written communications of the PCJV

2    Board, and/or representations made in FDDs); (2) the

3    Settlement Documents between the "Koren Parties" and

4    "Cinco Parties"; and (3) the franchise agreements PCJV

5    entered with franchisees. Plaintiff's position statement does

6    not assert a legal argument

7    iv.    SPAVI and Cinco's Position Statement: as drafted it is

8    impossible to  know what the specific contract is at issue

9    here. It has never been disclosed, and still undisclosed. So,

10    when this element in the instructions says, "the contract,"

11    whereas the prior element refers to some unidentified

12    contract, as a matter of law, yes, this element is disputed. To

13    the extent any actual contract ever existed between Cinco and

14    these parties, the only one that is possible is the Settlement

15    Agreement and corresponding agreement selling PCJV

16    equity to GKK Capital. (Trial Exhibit 1176.) Because Cinco

17    has never been a party to any other contract with any of the

18    Counterclaim Defendants, that is the only one that could

19    possibly be at issue, but Defendants refuse to acknowledge

20    this.

21    v.    PCJV USA Parties' Supporting Evidence: the following

22    category, which is defined above, captures the key phase and

23    supporting evidence: SPAVI Parties' Tortious Conduct.

24    vi.    SPAVI and Cinco Parties' Supporting Evidence: Each of the

25    agreements included in the trial exhibits and  testimony of

26    Mr. Gregorio, Mr.  Tan, Ms. Victor, as well as Mr. Koren  –

27    all of  which will establish that were aware of no contract

28

92

1    between none of the Counterclaimants – PCJV, PCIT, LA

2    Group LLC, GK Capital, NKM, or Koren have any contract

3    to which Cinco has privity. After the fact, now, having been

4    sued, SPAVI will unequivocally testify that it had knowledge

5    of the terms off the settlement and never saw the document

6    until this case commenced.

7    d. Element No. 3: SPAVI intended to cause any one of the Cinco

8    parties or franchisees to breach the contract

9    i. Disputed Status of Element 3: The parties dispute this

10    element is satisfied.

11    ii. Nature of Dispute: factual and legal.

12    iii. PCJV USA Parties' Position Statement: Plaintiff's position

13    statement does not address a legal issue concerning this

14    element. To the extent Plaintiff's position statement

15    addresses element 1, PCJV USA Parties incorporate their

16    respective response here.

17    iv. Plaintiff's Position Statement: as drafted it is impossible to

18    know what the specific contract is at issue here. It has never

19    been disclosed, and still undisclosed. So, when this element

20    in the instructions says, "the contract," whereas the prior

21    element refers to some unidentified contract, as a matter of

22    law, yes, this element is disputed. To the extent any actual

23    contract ever existed between Cinco and these parties, the

24    only one that is possible is the Settlement Agreement and

25    corresponding agreement selling PCJV equity to GKK

26    Capital. (Trial Exhibit 1176.) Because Cinco has never been

27    a party to any other contract with any of the Counterclaim

28

JOINTLY FILED CLAIMS TO BE TRIEDSECOND
AMENDED JOINTLY FILED CLAIMS,
COUNTERCLAIMS, THIRD PARTY CLAIMS, AND
AFFIRMATIVE DEFENSES TO BE TRIED
175468760.1

CASE NO. 2:24-CV-04546-SB(AGRX)

1  Defendants, that is the only one that could possibly be at

2  issue, but Defendants refuse to acknowledge this.

3      v.  <u>PCJV USA Parties' Supporting Evidence:</u> the following

4  category, which is defined above, captures the key phase and

5  supporting evidence: SPAVI Parties' Tortious Conduct.

**Formatted:** Font: 14 pt

6      vi.  <u>SPAVI's Supporting Evidence:</u> Each of the agreements

7  included in the trial exhibits and testimony of Mr. Gregorio,

8  Mr. Tan, Ms. Victor, as well as Mr. Koren – all of which

9  will establish that they were not aware of and had no intent

10  to cause anyone to breach any contract. Also, the

11  correspondence leading up to the termination of the license –

12  Trial Exhibits 20-31 – also confirm the intent was to

13  negotiate a license with PCJV, something for which years

14  were spent in pursuit, to no avail.

15    e.  <u>Element No. 4:</u> SPAVI's conduct caused any one of the Cinco

16    parties to breach the contract

17      i.  Disputed Status of Element 4: The parties dispute this

18  element is satisfied.

19      ii.  <u>Nature of Dispute:</u> factual and legal.

20      iii.  <u>PCJV USA Parties' Supporting Legal Position:</u> The term for

21  PCJV USA, LLC's use of the U.S. Potato Corner trademarks

22  "can be [i]mplied from the nature of the contract and

23  circumstances surrounding it." *See Consolidated Theatres,*

24  *Inc. v. Theatrical Stage Emp. Union, Local 16,* 69 Cal.2d

25  713, 725 (1968). The "initial effort of the court, in

26  construing contracts of continuing performance of

27  forebearance which contain no express term of duration,

28

JOINTLY FILED CLAIMS TO BE TRIED<u>SECOND AMENDED JOINTLY FILED CLAIMS, COUNTERCLAIMS, THIRD PARTY CLAIMS, AND AFFIRMATIVE DEFENSES TO BE TRIED</u> 175468760.1

CASE NO. 2:24-CV-04546-SB(AGRX)

1     must always be that of implying a term of duration

2     commensurate with the intentions of the parties . . . ." *Id.* at

3     727.  Only when "the nature of the contract and the totality

4     of the surrounding circumstances give no suggestion as to

5     any ascertainable term . . . , the obligations under the contract

6     shall be terminable at will by any party upon reasonable

7     notice after such a reasonable time has elapsed." *Id.* Further,

8     it is immaterial that SPAVI had full knowledge of the

9     contracts' terms. *See Jenni Rivera Enterprises, LLC v. Latin*

10    *World Entertainment Holdings, Inc.*, 36 Cal. App. 5th 766,

11    783 (2019). Nor is SPAVI's belief about the legal

12    significance of facts or belief that the parties' agreements are

13    legally binding or has a different legal effect from what it is

14    judicially held to have.  *See Little v. Amber Hotel Co.*, 202

15    Cal. App. 4th 280, 302 (2011).

16    iv.    Plaintiff's Position Statement: First, this presumes Cinco

17           breached a contract. The only contracts that have been

18           identified as being "breached" are the unsigned licensee

19           agreement and the AJVA. Neither document binds Cinco –

20           indeed, that the AJVA constitutes an agreement to agree and

21           not a contract  has  already been adjudicated and decided as

22           law of the case. It is impossible to  know what the specific

23           contract is at issue here. To the extent any actual contract

24           ever existed between Cinco and these parties, the only one

25           that is possible is the Settlement Agreement and

26           corresponding agreement selling PCJV equity to GKK

27           Capital. (Trial Exhibit 1176.) Because Cinco has never been

28

CASE NO. 2:24-CV-04546-SB(AGRX)

1     a party to any other contract with any of the Counterclaim

2     Defendants, that is the only one that could possibly be at

3     issue, but Defendants refuse to acknowledge this.

4     v.    PCJV USA Parties' Supporting Evidence: the following

5     categories, which are defined above, capture the key phases

6     and supporting evidence: Superseding Joint Venture (2008–

7     2010), Alternative Licensing Arrangements and Ongoing

8     Ratification (2011–2012), Formalization and Modification of

9     the Joint Venture (2012), LA Group Partnership Agreement

10    and Evolving Business Dynamics and Terms (2013–2018),

11    Dispute, Litigation, and State Court Proceedings (2018 and

12    Beyond), Ongoing Annual Ratification and Regulatory

13    Compliance, and SPAVI Parties' Tortious Conduct.

14    vi.   SPAVI Parties' Supporting Evidence: The absence of

15    evidence that Cinco was a party to, or breached, any

16    contract with any of the Counterclaimants is the supporting

17    evidence.

18    f.  Element No. 5: any one of the PCJV USA Parties were harmed

19    i.   Disputed Status of Element 4: The parties dispute this

20    element is satisfied.

21    ii.   Nature of Dispute: factual and legal.

22    iii.   PCJV USA Parties' Position Statement: Plaintiff's position

23    statement does not address a legal issue concerning this

24    element. To the extent Plaintiff's position statement

25    addresses element 1, PCJV USA Parties incorporate their

26    respective response here.

27    iv.   Plaintiff's Position Statement: First, this presumes Cinco

28

**Formatted:** Font: 14 pt

1  breached a contract. The only contracts that have been
2  identified as being "breached" are the unsigned licensee
3  agreement and the AJVA. Neither document binds Cinco –
4  indeed, that the AJVA constitutes an agreement to agree and
5  not a contract  has  already been adjudicated and decided as
6  law of the case. It is impossible to  know what the specific
7  contract is at issue here. To the extent any actual contract
8  ever existed between Cinco and these parties, the only one
9  that is possible is the Settlement Agreement and
10  corresponding agreement selling PCJV equity to GKK
11  Capital. (Trial Exhibit 1176.) Because Cinco has never been
12  a party to any other contract with any of the Counterclaim
13  Defendants, that is the only one that could possibly be at
14  issue, but Defendants refuse to acknowledge this.

15      v.  PCJV USA Parties' Supporting Evidence: the following
16  category, which is defined above, captures the key phase and
17  supporting evidence: SPAVI Parties' Tortious Conduct.

18      vi.  SPAVI Parties' Supporting Evidence: The absence of
19  evidence that  Cinco was a party to, or  breached, any
20  contract with any  of the Counterclaimants is  the supporting
21  evidence, as there is no way any of the Counterclaimants
22  could have been harmed.

23    g.  Element No. 6: SPAVI's conduct  was a substantial factor in
24  causing harm to any of the Counterclaimants.

25      i.  Disputed Status of Element  6:  The parties dispute this
26  element is satisfied.

27      ii.  Nature of Dispute: factual and legal.

28

97

iii. <u>PCJV USA Parties' Position Statement:</u> Plaintiff's position statement does not address a legal issue concerning this element. To the extent Plaintiff's position statement addresses element 1, PCJV USA Parties incorporate their respective response here

iv. <u>Plaintiff's Position Statement:</u> Again, this presumes Cinco breached a contract. The only contracts that have been identified as being "breached" are the unsigned licensee agreement and the AJVA. Neither document binds Cinco – indeed, that the AJVA constitutes an agreement to agree and not a contract  has  already been adjudicated and decided as law of the case. It is impossible to  know what the specific contract is at issue here. To the extent any actual contract ever existed between Cinco and these parties, the only one that is possible is the Settlement Agreement and corresponding agreement selling PCJV equity to GKK Capital. (Trial Exhibit 1176.) Because Cinco has never been a party to any other contract with any of the Counterclaim Defendants, that is the only one that could possibly be at issue, but Defendants refuse to acknowledge this.

v. <u>PCJV USA Parties' Supporting Evidence:</u> the following categories, which are defined above, capture the key phases and supporting evidence: Superseding Joint Venture (2008–2010), Alternative Licensing Arrangements and Ongoing Ratification (2011–2012), Formalization and Modification of the Joint Venture (2012), LA Group Partnership Agreement and Evolving Business Dynamics and Terms (2013–2018),

JOINTLY FILED CLAIMS TO BE TRIEDSECOND
AMENDED JOINTLY FILED CLAIMS,
COUNTERCLAIMS, THIRD PARTY CLAIMS, AND
AFFIRMATIVE DEFENSES TO BE TRIED
175468760.1

CASE NO. 2:24-CV-04546-SB(AGRX)

1         Dispute, Litigation, and State Court Proceedings (2018 and

2         Beyond), Ongoing Annual Ratification and Regulatory

3         Compliance, and SPAVI Parties' Tortious Conduct.

4       vi.   <u>SPAVI and Cinco's Supporting Evidence:</u> SPAVI's only act

5           that could have caused "harm" to any of the

6           Counterclaimants is termination of the license, which it was

7           permitted to do.  The absence of evidence that  Cinco was a

8           party to, or  breached, any contract with any  of the

9           Counterclaimants is  the supporting  evidence, as there is no

10          way any of the Counterclaimants  could have been harmed

11          let alone as a result of any act by SPAVI.

12  **2)** <u>**Cause of Action No. 3: Intentional Interference with Contractual**</u>

13     <u>**Relations.**</u>

14    a. <u>Element No. 1</u>: there were various contracts, including contracts with

15     the Cinco parties, franchisees, suppliers, and vendors,

16      i.   Disputed Status of Element 1:  The parties dispute that this

17          element is satisfied.

18      ii.  <u>Nature of Dispute:</u> Legal and factual

19      iii. <u>PCJV USA Parties' Legal Position:</u> The term for PCJV USA,

20          LLC's use of the U.S. Potato Corner trademarks "can be

21          [i]mplied from the nature of the contract and circumstances

22          surrounding it."  *See Consolidated Theatres, Inc. v. Theatrical*

23          *Stage Emp. Union, Local 16*, 69 Cal.2d 713, 725 (1968).  The

24          "initial effort of the court, in construing contracts of continuing

25          performance of forbearance which contain no express term of

26          duration, must always be that of implying a term of duration

27          commensurate with the intentions of the parties . . . ."  *Id.* at

28          99

**Formatted:** Font: 14 pt

727.  Only when "the nature of the contract and the totality of the surrounding circumstances give no suggestion as to any ascertainable term . . . , the obligations under the contract shall be terminable at will by any party upon reasonable notice after such a reasonable time has elapsed." *Id.* Further, it is immaterial that SPAVI had full knowledge of the contracts' terms. *See Jenni Rivera Enterprises, LLC v. Latin World Entertainment Holdings, Inc.*, 36 Cal. App. 5th 766, 783 (2019). Nor is SPAVI's belief about the legal significance of facts or belief that the parties' agreements are legally binding or has a different legal effect from what it is judicially held to have.  *See Little v. Amber Hotel Co.*, 202 Cal. App. 4th 280, 302 (2011).

vii.    <u>Plaintiff's Supporting Legal Position:</u> The only contracts that have been identified as being "breached" are the unsigned licensee agreement and the AJVA. Neither document binds Cinco – indeed, that the AJVA constitutes an agreement to agree and not a contract  has  already been adjudicated and decided as law of the case. It is impossible to  know what the specific contract is at issue here. To the extent any actual contract ever existed between Cinco and these parties, the only one that is possible is the Settlement Agreement and corresponding agreement selling PCJV equity to GKK Capital. (Trial Exhibit 1176.) Because Cinco has never been a party to any other contract with any of the Counterclaim Defendants, that is the only one that could possibly be at issue, but Defendants refuse to acknowledge this.

JOINTLY FILED CLAIMS TO BE TRIEDSECOND AMENDED JOINTLY FILED CLAIMS, COUNTERCLAIMS, THIRD PARTY CLAIMS, AND AFFIRMATIVE DEFENSES TO BE TRIED
175468760.1

CASE NO. 2:24-CV-04546-SB(AGRX)

iv.  PCJV USA Parties' Supporting Evidence: the following categories, which are defined above, capture the key phases and supporting evidence: Superseding Joint Venture (2008–2010), Alternative Licensing Arrangements and Ongoing Ratification (2011–2012), Formalization and Modification of the Joint Venture (2012), LA Group Partnership Agreement and Evolving Business Dynamics and Terms (2013–2018), Dispute, Litigation, and State Court Proceedings (2018 and Beyond), and Ongoing Annual Ratification and Regulatory Compliance.

v.  SPAVI and Cinco's Supporting Evidence: the absence of evidence is enough. There are no such contracts

b.  Element No. 2: SPAVI knew of the contracts.

i.  Disputed Status of Element 2: The parties dispute that this element is satisfied.

i.  Nature of Dispute: Factual.

ii.  PCJV USA Parties' Supporting Evidence: the following category, which is defined above, captures the key phase and supporting evidence: SPAVI Parties' Tortious Conduct.

iii.  Plaintiff's Supporting Evidence: the absence of evidence is enough. There are no such contracts.

c.  Element No. 3: SPAVI's conduct prevented performance or made performance more expensive or difficult.

i.  Disputed Status of Element 3: The parties dispute that this element is satisfied.

ii.  Nature of Dispute: Factual.

iii.  PCJV USA Parties' Supporting Evidence: PCJV USA Parties'

Formatted: Font: 14 pt

Formatted: Font: 14 pt

1    Supporting Evidence: the following categories, which are

2    defined above, capture the key phases and supporting

3    evidence: Superseding Joint Venture (2008–2010), Alternative

4    Licensing Arrangements and Ongoing Ratification (2011–

5    2012), Formalization and Modification of the Joint Venture

6    (2012), LA Group Partnership Agreement and Evolving

7    Business Dynamics and Terms (2013–2018), Dispute,

8    Litigation, and State Court Proceedings (2018 and Beyond),

9    Ongoing Annual Ratification and Regulatory Compliance, and

10   SPAVI Parties' Tortious Conduct.

11       iv.   <u>SPAVI and Cinco's Supporting Evidence:</u> the absence of

12             evidence is enough. There are no  such contracts

13   d.   <u>Element No. 4</u>: SPAVI either (a) intended <u>to</u> disrupt the performance

14   of these contracts or (b) knew that disruption of performance was

15   certain or substantially certain to occur.

16       i.    Disputed Status of Element 4:  The parties dispute that this

17             element is satisfied.

18       ii.   Nature of Dispute: Factual.

19       iii.  PCJV USA Parties' Supporting Evidence: the following

20             category, which is defined above, captures the key phase and

21             supporting evidence: SPAVI Parties' Tortious Conduct.

22       iv.   <u>SPAVI and Cinco's Supporting Evidence:</u> the absence of

23             evidence is enough. There are no  such contracts

24   e.   <u>Element No. 5</u>: any one of the PCJV USA Parties were harmed.

25       i.    Disputed Status of Element 5:  The parties dispute that this

26             element is satisfied.

27       ii.   Nature of Dispute: Factual.

28

---

102

iii.   PCJV USA Parties' Supporting Evidence: [insert].the following category, which is defined above, captures the key phase and supporting evidence: SPAVI Parties' Tortious Conduct.

iv.   SPAVI Parties' Supporting Evidence: the absence of evidence is enough. There are no  such contracts.

f.   Element No. 6: SPAVI's conduct was a substantial factor in causing any one of the PCJV USA Parties' harm.

   i.   Disputed Status of Element 6:  The parties dispute that this element is satisfied.

   ii.   Nature of Dispute: Factual.

   iii.   PCJV USA Parties' Supporting Evidence: [insert].the following category, which is defined above, captures the key phase and supporting evidence: SPAVI Parties' Tortious Conduct.

   iv.   SPAVI Parties' Supporting Evidence: the absence of evidence is enough. There are no  such contracts

3) **Cause of Action No. 4: Interference with Prospective Economic Relations.**

a.   Element No. 1: any one of the PCJV USA Parties were in various economic relations, including with Cinco parties, franchisees, suppliers, and venders were in that probably would have resulted in an economic benefit to Defendants.

   i.   Disputed Status of Element 1:  The parties dispute that this element is satisfied.

   ii.   Nature of Dispute: Legal and factual.

   iii.   PCJV USA Parties' Supporting Legal Position: The term for

JOINTLY FILED CLAIMS TO BE TRIEDSECOND
AMENDED JOINTLY FILED CLAIMS,
COUNTERCLAIMS, THIRD PARTY CLAIMS, AND
AFFIRMATIVE DEFENSES TO BE TRIED
175468760.1
                    CASE NO. 2:24-CV-04546-SB(AGRX)

1     PCJV USA, LLC's use of the U.S. Potato Corner trademarks

2     "can be [i]mplied from the nature of the contract and

3     circumstances surrounding it." *See Consolidated Theatres,*

4     *Inc. v. Theatrical Stage Emp. Union, Local 16*, 69 Cal.2d 713,

5     725 (1968). The "initial effort of the court, in construing

6     contracts of continuing performance of forebearance which

7     contain no express term of duration, must always be that of

8     implying a term of duration commensurate with the intentions

9     of the parties . . . ." *Id.* at 727. Only when "the nature of the

10    contract and the totality of the surrounding circumstances give

11    no suggestion as to any ascertainable term . . . , the obligations

12    under the contract shall be terminable at will by any party

13    upon reasonable notice after such a reasonable time has

14    elapsed." *Id.* Further, it is immaterial that SPAVI had full

15    knowledge of the contracts' terms. *See Jenni Rivera*

16    *Enterprises, LLC v. Latin World Entertainment Holdings, Inc.*,

17    36 Cal. App. 5th 766, 783 (2019). Nor is SPAVI's belief about

18    the legal significance of facts or belief that the parties'

19    agreements are legally binding or has a different legal effect

20    from what it is judicially held to have. See Little v. Amber

21    Hotel Co., 202 Cal. App. 4th 280, 302 (2011).

22    iv.   <u>Plaintiff's Supporting Legal Position:</u> the only relationships

23           SPAVI knew about were with franchisees and certain vendors.

24           the specific  relationships at issue here have never been

25           disclosed.

26    v.    <u>PCJV USA Parties' Supporting Evidence:</u> the following

27           categories, which are defined above, capture the key phases

28

---

104

1    and supporting evidence: Superseding Joint Venture (2008–

2    2010), Alternative Licensing Arrangements and Ongoing

3    Ratification (2011–2012), Formalization and Modification of

4    the Joint Venture (2012), LA Group Partnership Agreement

5    and Evolving Business Dynamics and Terms (2013–2018),

6    Dispute, Litigation, and State Court Proceedings (2018 and

7    Beyond), and Ongoing Annual Ratification and Regulatory

8    Compliance.

9        vi.  <u>SPAVI's Supporting Evidence</u>: testimony of executives.

10   b.  <u>Element No. 2</u>: SPAVI knew of the relationships.

11       i.  Disputed Status of Element 2:  The parties dispute that this

12         element is satisfied.

13       ii.  <u>Nature of Dispute:</u> Factual.

14       iii.  <u>PCJV USA Parties' Supporting Evidence:</u> the following

15         category, which is defined above, captures the key phase and

16         supporting evidence: SPAVI Parties' Tortious Conduct.

17       iv.  <u>SPAVI's Supporting Evidence:</u> testimony of executives

18   c.  <u>Element No. 3</u>: SPAVI engaged in conduct to destroy the value of any

19       one of the PCJV USA Parties' relationships by usurping the benefits of

20       those relationships for SPAVI's benefit.

21       i.  Disputed Status of Element 3:  The parties dispute that this

22         element is satisfied.

23       ii.  Nature of Dispute: Factual.

24       iii.  PCJV USA Parties' Supporting Evidence: the following

25         category, which is defined above, captures the key phase and

26         supporting evidence: SPAVI Parties' Tortious Conduct.

27       iv.  <u>SPAVI's Supporting Evidence:</u> Testimony of Tan and

28

1                   Concepcion and Victor and Shaikh and Hussein will all

2                   support SPAVI here.

3      d.  <u>Element No. 4</u>: by engaging in this conduct, SPAVI either (a) intended

4         to disrupt the relationships or (b) knew that disruption of the

5         relationships was certain or substantially certain to occur.

6           i.    Disputed Status of Element 4:  The parties dispute that this

7                element is satisfied.

8          ii.    Nature of Dispute: Factual.

9         iii.   <u>PCJV USA Parties' Supporting Evidence:</u> the following

10               category, which is defined above, captures the key phase and

11               supporting evidence: SPAVI Parties' Tortious Conduct.

12         iv.   <u>SPAVI's Supporting Evidence:</u> Tan and Concepcion and

13               Victor and Shaikh and Hussein will all support SPAVI here.

14      e.  <u>Element No. 5</u>: those relationships were disrupted.

15           i.    Disputed Status of Element 5:  The parties dispute that this

16                element is satisfied.

17          ii.    Nature of Dispute: Factual.

18         iii.   <u>PCJV USA Parties' Supporting Evidence:</u> the following

19               categories, which are defined above, capture the key phases

20               and supporting evidence: Superseding Joint Venture (2008–

21               2010), Alternative Licensing Arrangements and Ongoing

22               Ratification (2011–2012), Formalization and Modification of

23               the Joint Venture (2012), LA Group Partnership Agreement

24               and Evolving Business Dynamics and Terms (2013–2018),

25               Dispute, Litigation, and State Court Proceedings (2018 and

26               Beyond), Ongoing Annual Ratification and Regulatory

27               Compliance, and SPAVI Parties' Tortious Conduct.

28

iv.  <u>SPAVI Parties' Supporting Evidence:</u> it is unknown what
relationships were disrupted.

f.  <u>Element No. 6</u>: any one of the PCJV USA Parties were harmed.

i.  Disputed Status of Element 6:  The parties dispute that this
element is satisfied.

ii.  Nature of Dispute: Factual.

iii.  <u>PCJV USA Parties' Supporting Evidence:</u> the following
category, which is defined above, captures the key phase and
supporting evidence: SPAVI Parties' Tortious Conduct.

iv.  <u>SPAVI Parties' Supporting Evidence:</u> no proof of this has ever
been established, particularly harm caused by any of the
responding parties.

g.  <u>Element No. 7</u>: SPAVI's conduct was a substantial factor in causing
any one of the PCJV USA Parties' harm.

i.  Disputed Status of Element 7:  The parties dispute that this
element is satisfied.

ii.  Nature of Dispute: Factual.

iii.  <u>PCJV USA Parties' Supporting Evidence:</u> the following
category, which is defined above, captures the key phase and
supporting evidence: SPAVI Parties' Tortious Conduct.

iv.  <u>SPAVI Parties' Supporting Evidence:</u> no proof of this has ever
been established, particularly harm caused by any of the
responding parties.

**4) Cause of Action No. 5: Negligent Interference with Prospective
Economic Advantage.**

a.  <u>Element No. 1</u>: any one of the PCJV USA Parties were in various
economic relations, including with Cinco parties, franchisees,

1    suppliers, and venders that probably would have resulted in a future

2    economic benefit to any one of the PCJV USA Parties.

    i.    Disputed Status of Element 1:  The parties dispute that this

       element is satisfied.

    ii.    Nature of Dispute: Legal and factual.

    iii.    <u>PCJV USA Parties' Supporting Legal Position:</u> The term for

       PCJV USA, LLC's use of the U.S. Potato Corner trademarks

       "can be [i]mplied from the nature of the contract and

       circumstances surrounding it." *See Consolidated Theatres,*

       Inc. *v. Theatrical Stage Emp. Union, Local 16*, 69 Cal.2d 713,

       725 (1968).  The "initial effort of the court, in construing

       contracts of continuing performance of forebearance which

       contain no express term of duration, must always be that of

       implying a term of duration commensurate with the intentions

       of the parties . . . ." *Id.* at 727.  Only when "the nature of the

       contract and the totality of the surrounding circumstances give

       no suggestion as to any ascertainable term . . . , the obligations

       under the contract shall be terminable at will by any party

       upon reasonable notice after such a reasonable time has

       elapsed." *Id.* Further, it is immaterial that SPAVI had full

       knowledge of the contracts' terms. *See Jenni Rivera*

       *Enterprises, LLC v. Latin World Entertainment Holdings, Inc.*,

       36 Cal. App. 5th 766, 783 (2019). Nor is SPAVI's belief about

       the legal significance of facts or belief that the parties'

       agreements are legally binding or has a different legal effect

       from what it is judicially held to have.  *See Little v. Amber*

       *Hotel Co.*, 202 Cal. App. 4th 280, 302 (2011).

1    vii.    Plaintiff's Supporting Legal Position: the only relationships
2           SPAVI knew about were with franchisees and certain vendors.
3           the specific  relationships at issue here have never been
4           disclosed.
5    iv.    PCJV USA Parties' Supporting Evidence: documents and
6           testimony including and related to prospective supplier
7           economic relationships and franchisee relations.  the following
8           categories, which are defined above, capture the key phases
9           and supporting evidence: Superseding Joint Venture (2008–
10          2010), Alternative Licensing Arrangements and Ongoing
11          Ratification (2011–2012), Formalization and Modification of
12          the Joint Venture (2012), LA Group Partnership Agreement
13          and Evolving Business Dynamics and Terms (2013–2018),
14          Dispute, Litigation, and State Court Proceedings (2018 and
15          Beyond), Ongoing Annual Ratification and Regulatory
16          Compliance, and SPAVI Parties' Tortious Conduct.
17   v.     SPAVI's Supporting Evidence: testimony of executives.
18   b.  Element No. 2: SPAVI knew or should have known of these
19      relationships.
20      i.     Disputed Status of Element 2:  The parties dispute that this
21             element is satisfied.
22      ii.    Nature of Dispute: Factual.
23      iii.   PCJV USA Parties' Supporting Evidence: the following
24             category, which is defined above, captures the key phase and
25             supporting evidence: SPAVI Parties' Tortious Conduct.
26      iv.    SPAVI Parties' Supporting Evidence: testimony of executives
27   c.  Element No. 3: SPAVI knew or should have known that these
28

109

1  relationships would be disrupted if it failed to act with reasonable care.

2      i.   Disputed Status of Element 3:  The parties dispute that this

3          element is satisfied.

4      ii.   Nature of Dispute: Factual.

5      iii.  PCJV USA Parties' Supporting Evidence: the following

6          category, which is defined above, captures the key phase and

7          supporting evidence: SPAVI Parties' Tortious Conduct.

8      iv.  SPAVI's Supporting Evidence: Testimony of Tan and

9          Concepcion and Victor and Shaikh and Hussein will all

10          support SPAVI here

11    d. Element No. 4: SPAVI failed to act with reasonable care.

12      i.   Disputed Status of Element 4:  The parties dispute that this

13          element is satisfied.

14      ii.   Nature of Dispute: Factual.

15      iii.  PCJV USA Parties' Supporting Evidence: the following

16          category, which is defined above, captures the key phase and

17          supporting evidence: SPAVI Parties' Tortious Conduct.

18      iv.  SPAVI's Supporting Evidence: Tan and Concepcion and

19          Victor and Shaikh and Hussein will all support SPAVI here

20    e. Element No. 5: SPAVI engaged in wrongful conduct through engaging

21    in conduct to destroy the value of any one of the PCJV USA Parties'

22    relationships by usurping the benefits of those relationships for

23    SPAVI's benefit.

24      i.   Disputed Status of Element 5:  The parties dispute that this

25          element is satisfied.

26      ii.   Nature of Dispute: Factual.

27      iii.  PCJV USA Parties' Supporting Evidence: the following

28

       

1    categories, which are defined above, capture the key phases

2    and supporting evidence: Superseding Joint Venture (2008–

3    2010), Alternative Licensing Arrangements and Ongoing

4    Ratification (2011–2012), Formalization and Modification of

5    the Joint Venture (2012), LA Group Partnership Agreement

6    and Evolving Business Dynamics and Terms (2013–2018),

7    Dispute, Litigation, and State Court Proceedings (2018 and

8    Beyond), Ongoing Annual Ratification and Regulatory

9    Compliance, and SPAVI Parties' Tortious Conduct.

10    iv.    SPAVI Parties' Supporting Evidence: Tan and Concepcion

11    and Victor and Shaikh and Hussein will all support SPAVI

12    here

13    f.    Element No. 6: the relationships were disrupted.

14    i.    Disputed Status of Element 6:  The parties dispute that this

15    element is satisfied.

16    ii.    Nature of Dispute: Factual.

17    iii.    PCJV USA Parties' Supporting Evidence: the following

18    category, which is defined above, captures the key phase and

19    supporting evidence: SPAVI Parties' Tortious Conduct.

20    iv.    SPAVI Parties' Supporting Evidence: SPAVI is unaware of

21    what relationships were harmed.

22    g.    Element No. 7: any one of the PCJV USA Parties were harmed.

23    i.    Disputed Status of Element 7:  The parties dispute that this

24    element is satisfied.

25    ii.    Nature of Dispute: Factual.

26    iii.    PCJV USA Parties' Supporting Evidence: the following

27    category, which is defined above, captures the key phase and

28

---

111

1    supporting evidence: SPAVI Parties' Tortious Conduct.

2         i.   SPAVI Parties' Supporting Evidence: no proof of this has ever

3              been established, particularly harm caused by any of the

4              responding parties

5    h.  Element No. 8: SPAVI's wrongful conduct was a substantial factor in

6        causing Defendants' harm.

7         i.   Disputed Status of Element 8:  The parties dispute that this

8              element is satisfied.

9         ii.  Nature of Dispute: Factual.

10        iii. PCJV USA Parties' Supporting Evidence: the following

11             category, which is defined above, captures the key phase and

12             supporting evidence: SPAVI Parties' Tortious Conduct.

13        iv.  SPAVI's Supporting Evidence: no proof of this has ever been

14             established, particularly harm caused by any of the responding

15             parties.

16   **5)  Cause of Action No. 6: Aiding and Abetting Torts.**

17   a.  Element No. 1: SPAVI knew that a breach of a fiduciary duty, breach

18       of the implied covenant of good faith and fair dealing, fraud, or

19       conversion was going to be committed by Cinco Corporation, its

20       affiliates, or its agents against any one of the PCJV USA Parties.

21        i.   Disputed Status of Element 1:  The parties dispute that this

22             element is satisfied.

23        ii.  Nature of Dispute: Factual.

24        iii. PCJV USA Parties' Supporting Evidence: the following

25             categories, which are defined above, capture the key phases

26             and supporting evidence: Superseding Joint Venture (2008–

27             2010), Alternative Licensing Arrangements and Ongoing

28

112

JOINTLY FILED CLAIMS TO BE TRIEDSECOND
AMENDED JOINTLY FILED CLAIMS,
COUNTERCLAIMS, THIRD PARTY CLAIMS, AND
AFFIRMATIVE DEFENSES TO BE TRIED
175468760.1

CASE NO. 2:24-CV-04546-SB(AGRX)

Ratification (2011–2012), Formalization and Modification of the Joint Venture (2012), LA Group Partnership Agreement and Evolving Business Dynamics and Terms (2013–2018), Dispute, Litigation, and State Court Proceedings (2018 and Beyond), Ongoing Annual Ratification and Regulatory Compliance, and SPAVI Parties' Tortious Conduct

    iv. <u>SPAVI's Supporting Evidence:</u> no torts have occurred so nothing could be aided or abetted.

  b. <u>Element No. 2</u>: SPAVI gave substantial assistance or encouragement to Cinco Corporation, its affiliates, or its agents.

    v. Disputed Status of Element 2: The parties dispute that this element is satisfied.

    vi. Nature of Dispute: Factual.

    vii. <u>PCJV USA Parties' Supporting Evidence:</u> the following category, which is defined above, captures the key phase and supporting evidence: SPAVI Parties' Tortious Conduct.

    viii. <u>SPAVI's Supporting Evidence:</u> no torts have occurred so nothing could be aided or abetted.

  c. <u>Element No. 3</u>: Cinco Corporation's, its affiliates, or tis agents' conduct was a substantial factor in causing harm to any one of the PCJV USA Parties.

    ix. Disputed Status of Element 3: The parties dispute that this element is satisfied.

    x. Nature of Dispute: Factual.

    xi. <u>PCJV USA Parties' Supporting Evidence:</u> the following category, which is defined above, captures the key phase and supporting evidence: SPAVI Parties' Tortious Conduct.

JOINTLY FILED CLAIMS TO BE TRIEDSECOND
AMENDED JOINTLY FILED CLAIMS,
COUNTERCLAIMS, THIRD PARTY CLAIMS, AND
AFFIRMATIVE DEFENSES TO BE TRIED
175468760.1

CASE NO. 2:24-CV-04546-SB(AGRX)

xii.    SPAVI's Supporting Evidence: no torts have occurred so nothing could be aided or abetted.

6) **Cause of Action No. 7: First Count of Breach of Fiduciary Duty.**

a. Element No. 1: either Cinco Corporation or SPAVI, as Cinco Corporation's successor-in-interest, was a joint venture partner of PCJV.

i.    Disputed Status of Element 1:  The parties dispute that this element is satisfied.

ii.    Nature of Dispute: Factual.

iii.    PCJV USA Parties' Supporting Evidence: [insert]

iii.    PCJV USA Parties' Supporting Evidence: the following categories, which are defined above, capture the key phases and supporting evidence: Superseding Joint Venture (2008–2010), Alternative Licensing Arrangements and Ongoing Ratification (2011–2012), Formalization and Modification of the Joint Venture (2012), LA Group Partnership Agreement and Evolving Business Dynamics and Terms (2013–2018), Dispute, Litigation, and State Court Proceedings (2018 and Beyond), and Ongoing Annual Ratification and Regulatory Compliance.

iv.    SPAVI and Cinco's Supporting Evidence: the absence of evidence will suffice. Also, no evidence that SPAVI is a successor in interest or took on this liability

b. Element No. 2: Cinco Corporation or SPAVI, as Cinco Corporation's successor-in-interest, acted on PCJV's behalf for purposes of providing PCJV with an exclusive right to use the Potato Corner trademark in the United States.

114

1    i. Disputed Status of Element 2:  The parties dispute that this
2     element is satisfied.
3    ii. Nature of Dispute: Factual
4    iii. <u>PCJV USA Parties' Supporting Evidence:</u> the following
5     categories, which are defined above, capture the key phases
6     and supporting evidence: Superseding Joint Venture (2008–
7     2010), Alternative Licensing Arrangements and Ongoing
8     Ratification (2011–2012), Formalization and Modification of
9     the Joint Venture (2012), LA Group Partnership Agreement
10     and Evolving Business Dynamics and Terms (2013–2018),
11     Dispute, Litigation, and State Court Proceedings (2018 and
12     Beyond), Ongoing Annual Ratification and Regulatory
13     Compliance, and SPAVI Parties' Tortious Conduct
14    iv. <u>SPAVI and Cinco's Supporting Evidence:</u> the absence of
15     evidence will suffice. Also, no evidence that SPAVI is a
16     successor in interest or took on this liability
17  c. <u>Element No. 3</u>: Cinco Corporation or SPAVI, as Cinco Corporation's
18   successor-in-interest, failed to act as a reasonably careful partner
19   would have acted under the same or similar circumstances.
20    i. Disputed Status of Element 3:  The parties dispute that this
21     element is satisfied.
22    ii. Nature of Dispute: Factual
23    iii. <u>PCJV USA Parties' Supporting Evidence:</u> the following
24     categories, which are defined above, capture the key phases
25     and supporting evidence: Superseding Joint Venture (2008–
26     2010), Alternative Licensing Arrangements and Ongoing
27     Ratification (2011–2012), Formalization and Modification of
28

1    the Joint Venture (2012), LA Group Partnership Agreement

2    and Evolving Business Dynamics and Terms (2013–2018),

3    Dispute, Litigation, and State Court Proceedings (2018 and

4    Beyond), Ongoing Annual Ratification and Regulatory

5    Compliance, and SPAVI Parties' Tortious Conduct

6    iv.    SPAVI and Cinco's Supporting Evidence: the absence of

7    evidence of a duty will suffice. Also, no evidence that SPAVI

8    is a successor in interest or took on this liability

9    d.    Element No. 4: any one of the PCJV USA Parties were harmed.

10    i.    Disputed Status of Element 4:  The parties dispute that this

11    element is satisfied.

12    ii.    Nature of Dispute: factual

13    iii.    PCJV USA Parties' Supporting Evidence: the following

14    category, which is defined above, captures the key phase and

15    supporting evidence: SPAVI Parties' Tortious Conduct.

16    iv.    SPAVI and Cinco's Supporting Evidence: the absence of

17    evidence of a duty will suffice. Also, no evidence that SPAVI

18    is a successor in interest or took on this liability

19    e.    Element No. 5: the conduct of Cinco Corporation or SPAVI, as Cinco

20    Corporation's successor-in-interest, was a substantial factor in causing

21    any one of the PCJV USA Parties' harm.

22    i.    Disputed Status of Element 5:  The parties dispute that this

23    element is satisfied.

24    ii.    Nature of Dispute: factual

25    iii.    PCJV USA Parties' Supporting Evidence: the following

26    category, which is defined above, captures the key phase and

27    supporting evidence: SPAVI Parties' Tortious Conduct

28

JOINTLY FILED CLAIMS TO BE TRIEDSECOND
AMENDED JOINTLY FILED CLAIMS,
COUNTERCLAIMS, THIRD PARTY CLAIMS, AND
AFFIRMATIVE DEFENSES TO BE TRIED
175468760.1

CASE NO. 2:24-CV-04546-SB(AGRX)

    iv.   <u>SPAVI and Cinco's Supporting Evidence:</u> the absence of evidence of a duty will suffice. Also, no evidence that SPAVI is a successor in interest or took on this liability

**7)  <u>Cause of Action No. 7: Second Count of Breach of Fiduciary Duty.</u>**

  a.  <u>Element No. 1</u>: Cinco Corporation or SPAVI, as Cinco Corporation's successor-in-interest, was a joint venture partner of PCJV.

    i.   Disputed Status of Element 1:  The parties dispute that this element is satisfied.

    ii.  <u>Nature of Dispute:</u> factual

    iii.  ~~PCJV USA Parties' Supporting Evidence: [insert]~~

    iii.  PCJV USA Parties' Supporting Evidence: the following categories, which are defined above, capture the key phases and supporting evidence: Superseding Joint Venture (2008–2010), Alternative Licensing Arrangements and Ongoing Ratification (2011–2012), Formalization and Modification of the Joint Venture (2012), LA Group Partnership Agreement and Evolving Business Dynamics and Terms (2013–2018), Dispute, Litigation, and State Court Proceedings (2018 and Beyond), and Ongoing Annual Ratification and Regulatory Compliance.

    iv.  <u>SPAVI and Cinco's Supporting Evidence:</u> the absence of evidence of a duty will suffice. Also, no evidence that SPAVI is a successor in interest or took on this liability

  b.  <u>Element No. 2</u>: Cinco Corporation or SPAVI, as Cinco Corporation's successor-in-interest, knowingly acted against interests of PCJV and PCJV's other joint venture partners in connection with providing PCJV with an exclusive right to use the Potato Corner trademark in the

~~JOINTLY FILED CLAIMS TO BE TRIED~~SECOND AMENDED JOINTLY FILED CLAIMS, COUNTERCLAIMS, THIRD PARTY CLAIMS, AND AFFIRMATIVE DEFENSES TO BE TRIED
~~175468760.1~~

CASE NO. 2:24-CV-04546-SB(AGRX)

1    United States.

2        i.    Disputed Status of Element 2:  The parties dispute that this

3            element is satisfied.

4        ii.    Nature of Dispute: Factual

5        iii.    <u>PCJV USA Parties' Supporting Evidence:</u> the following

6            categories, which are defined above, capture the key phases

7            and supporting evidence: Superseding Joint Venture (2008–

8            2010), Alternative Licensing Arrangements and Ongoing

9            Ratification (2011–2012), Formalization and Modification of

10            the Joint Venture (2012), LA Group Partnership Agreement

11            and Evolving Business Dynamics and Terms (2013–2018),

12            Dispute, Litigation, and State Court Proceedings (2018 and

13            Beyond), Ongoing Annual Ratification and Regulatory

14            Compliance, and SPAVI Parties' Tortious Conduct

15        iv.    <u>SPAVI and Cinco's Supporting Evidence:</u> the absence of

16            evidence of a duty will suffice. Also, no evidence that SPAVI

17            is a successor in interest or took on this liability

18    c.    <u>Element No. 3</u>: any one of the PCJV USA Parties did not give

19        informed consent to the conduct of Cinco Corporation or SPAVI, as

20        Cinco Corporation's successor-in-interest.

21        i.    Disputed Status of Element 3:  The parties dispute that this

22            element is satisfied.

23        ii.    Nature of Dispute: Factual

24        iii.    <u>PCJV USA Parties' Supporting Evidence:</u> the following

25            categories, which are defined above, capture the key phases

26            and supporting evidence: Superseding Joint Venture (2008–

27            2010), Alternative Licensing Arrangements and Ongoing

28

118

~~JOINTLY FILED CLAIMS TO BE TRIED~~SECOND
AMENDED JOINTLY FILED CLAIMS,
COUNTERCLAIMS, THIRD PARTY CLAIMS, AND
AFFIRMATIVE DEFENSES TO BE TRIED
~~175468760.1~~                    CASE NO. 2:24-CV-04546-SB(AGRX)

Ratification (2011–2012), Formalization and Modification of the Joint Venture (2012), LA Group Partnership Agreement and Evolving Business Dynamics and Terms (2013–2018), Dispute, Litigation, and State Court Proceedings (2018 and Beyond), Ongoing Annual Ratification and Regulatory Compliance, and SPAVI Parties' Tortious Conduct.

    iv.  <u>SPAVI and Cinco's Supporting Evidence:</u> the absence of evidence of a duty will suffice. Also, no evidence that SPAVI is a successor in interest or took on this liability

d. <u>Element No. 4</u>: any one of the PCJV USA Parties were harmed,

    i.  Disputed Status of Element 4:  The parties dispute that this element is satisfied.

    ii.  Nature of Dispute: Factual.

    iii.  <u>PCJV USA Parties' Supporting Evidence:</u> the following category, which is defined above, captures the key phase and supporting evidence: SPAVI Parties' Tortious Conduct.

    iv.  <u>SPAVI and Cinco's Supporting Evidence:</u> the absence of evidence of a duty will suffice. Also, no evidence that SPAVI is a successor in interest or took on this liability

e. <u>Element No. 5</u>: the conduct of Cinco Corporation or SPAVI, as Cinco Corporation's successor-in-interest, was a substantial factor in causing any one of the PCJV USA Parties' harm.

    i.  Disputed Status of Element 5:  The parties dispute that this element is satisfied.

    ii.  Nature of Dispute: factual

    iii.  <u>PCJV USA Parties' Supporting Evidence:</u> the following category, which is defined above, captures the key phase and

1          supporting evidence: SPAVI Parties' Tortious Conduct

2      iv.    <u>SPAVI and Cinco's Supporting Evidence:</u> the absence of

3          evidence of a duty will suffice. Also, no evidence that SPAVI

4          is a successor in interest or took on this liability

5  **8)  <u>Cause of Action No. ~~7~~8: Breach of Contract.</u>**

6    a. Element No. 1: there is a contract between PCJV and Cinco

7       Corporation or SPAVI, as Cinco Corporation's successor-in-interest.

8      i.    Disputed Status of Element 1:  The parties dispute this

9          element is satisfied.

10      ii.    Nature of Dispute: factual and legal

11      iii.    <u>PCJV USA Parties' Position Statement:</u> The term for PCJV

12          USA, LLC's use of the U.S. Potato Corner trademarks "can

13          be [i]mplied from the nature of the contract and

14          circumstances surrounding it." *See Consolidated Theatres,*

15          *Inc. v. Theatrical Stage Emp. Union, Local 16*, 69 Cal.2d

16          713, 725 (1968). The "initial effort of the court, in construing

17          contracts of continuing performance of forebearance which

18          contain no express term of duration, must always be that of

19          implying a term of duration commensurate with the

20          intentions of the parties . . . ." *Id.* at 727. Only when "the

21          nature of the contract and the totality of the surrounding

22          circumstances give no suggestion as to any ascertainable

23          term . . . , the obligations under the contract shall be

24          terminable at will by any party upon reasonable notice after

25          such a reasonable time has elapsed." *Id.* Further, it is

26          immaterial that SPAVI had full knowledge of the contracts'

27          terms. *See Jenni Rivera Enterprises, LLC v. Latin World*

28

---

120

1     *Entertainment Holdings, Inc.*, 36 Cal. App. 5th 766, 783

2     (2019). Nor is SPAVI's belief about the legal significance of

3     facts or belief that the parties' agreements are legally binding

4     or has a different legal effect from what it is judicially held to

5     have. *See Little v. Amber Hotel Co.*, 202 Cal. App. 4th 280,

6     302 (2011).

7     iv.   Plaintiff's Position Statement: as drafted it is impossible to

8           know what the specific contract is that is at issue here. It has

9           never been disclosed, and still undisclosed. Rather than

10          jettison the claim or actually identify the  contract, instead,

11          Defendants' solution is to fudge with obtuse language in the

12          jury instructions, designed to confuse everyone, including the

13          jury: "there was a contract between any one of the PCJV

14          Plaintiffs and any one of the Cinco parties." Indeed, the only

15          contract that Cinco has been a party to with any of these

16          Counterclaimants is the Settlement Agreement of the Prior

17          Governance Action. There is no other written agreement

18          between  PCJV and Cinco, or between any other

19          Counterclaimant and Cinco.  It is possible that

20          Counterclaimants are seeking to allege that Cinco is an alter

21          ego of Potato Corner  International or others, however,

22          PCJV and the other counterclaimants already  alleged this --

23          alt3er ego status of Cinco --  and after a negotiated

24          settlement, dismissed this claim with prejudice. They may

25          not raise it now. *See, e.g., Torrey Pines Bank v. Superior Ct*.,

26          216 Cal. App. 3d 813, 820 (Ct. App. 1989) (holding that ""a

27          dismissal with prejudice is the maiden name for a  common

28

1    law retraxit," and "[a] retraxit is equivalent to a judgment on

2    the merits and as such bars further litigation on the same

3    subject matter between the parties."); *Datta v. Staab*, 173

4    Cal. App. 2d 613, 620—21 (1959) ("The effect of a dismissal

5    with prejudice is quite different, however, when it is

6    executed and filed in return for a consideration moving from

7    the defendant. Such a dismissal operates as a complete bar to

8    any future action and has the same legal effect as a common

9    law petraxit.").

10        v.    Defendants' Supporting Evidence: the following categories,

11              which are defined above, capture the key phases and

12              supporting evidence: Superseding Joint Venture (2008–

13              2010), Alternative Licensing Arrangements and Ongoing

14              Ratification (2011–2012), Formalization and Modification of

15              the Joint Venture (2012), LA Group Partnership Agreement

16              and Evolving Business Dynamics and Terms (2013–2018),

17              Dispute, Litigation, and State Court Proceedings (2018 and

18              Beyond), and Ongoing Annual Ratification and Regulatory

19              Compliance.

20        vi.   SPAVI Parties' Supporting Evidence: Each of the

21              agreements included in the trial exhibits and  testimony of

22              Mr. Magsaysay, Mr. Koren, and Ms. Victor – all of  which

23              will establish that  none of the Counterclaimants – PCJV,

24              PCIT, LA Group LLC, GK Capital, NKM, or Koren have

25              any contract to which Cinco has privity; the settlement

26              agreement (Trial Exhibit 1172) and evidence of the

27              dismissals with  prejudice, as well as the pleadings in the

28

1    prior case establishing what has been dismissed, and subject

2    to retrax it.

3    b. Element No. 2: PCJV USA Parties did all or substantially all of the

4    things required under the contract, or were excused from  so

5    performing:

6    i.   Disputed Status of Element 2:  The parties dispute this

7    element is satisfied.

8    ii.  Nature of Dispute: factual  and legal.

9    iii. PCJV USA Parties' Position Statement: Plaintiff's position

10    statement does not address a legal issue concerning this

11    element. To the extent Plaintiff's position statement

12    addresses element 1, PCJV USA Parties incorporate their

13    respective response here

14    iv.  Plaintiff's Position Statement: as drafted it is impossible to

15    know what the specific contract is at issue here. It has never

16    been disclosed, and still undisclosed. So, when this element

17    in the instructions says, "the contract," whereas the prior

18    element refers to some unidentified contract, as a matter of

19    law, yes, this element is disputed. To the extent any actual

20    contract ever existed between Cinco and these parties, the

21    only one that is possible is the Settlement Agreement and

22    corresponding agreement selling PCJV equity to GKK

23    Capital. (Trial Exhibit 1176.) Because Cinco has never been

24    a party to any other contract with any of the Counterclaim

25    Defendants, that is the only one that could possibly be at

26    issue, but Defendants refuse to acknowledge this. It is

27    possible that Counterclaimants are seeking to allege that

28

123

1        Cinco is an alter ego of Potato Corner International or

2        others, however, PCJV and the other counterclaimants

3        already alleged this -- alter ego status of Cinco -- and after

4        a negotiated settlement, dismissed this claim with prejudice.

5        They may not raise it now. *See, e.g., Torrey Pines Bank v.*

6        *Superior Ct.*, 216 Cal. App. 3d 813, 820 (Ct. App. 1989)

7        (holding that "a dismissal with prejudice is the maiden name

8        fir a common law retraxit," and "[a] retraxit is equivalent to a

9        judgment on the merits and as such bars further litigation on

10       the same subject matter between the parties."); *Datta v.*

11       *Staab*, 173 Cal. App. 2d 613, 620—21 (1959) ("The effect of

12       a dismissal with prejudice is quite different, however, when

13       it is executed and filed in return for a consideration moving

14       from the defendant. Such a dismissal operates as a complete

15       bar to any future action and has the same legal effect as a

16       common law petraxit.") (internal

17      v.    <u>PCJV USA Parties' Supporting Evidence</u>: the following

18        categories, which are defined above, capture the key phases

19        and supporting evidence: Superseding Joint Venture (2008–

20        2010), Alternative Licensing Arrangements and Ongoing

21        Ratification (2011–2012), Formalization and Modification of

22        the Joint Venture (2012), LA Group Partnership Agreement

23        and Evolving Business Dynamics and Terms (2013–2018),

24        Dispute, Litigation, and State Court Proceedings (2018 and

25        Beyond), and Ongoing Annual Ratification and Regulatory

26        Compliance.

27      vi.   <u>SPAVI Parties' Supporting Evidence</u>: Each of the

28

124

~~JOINTLY FILED CLAIMS TO BE TRIED~~<u>SECOND</u>
<u>AMENDED JOINTLY FILED CLAIMS,</u>
<u>COUNTERCLAIMS, THIRD PARTY CLAIMS, AND</u>
<u>AFFIRMATIVE DEFENSES TO BE TRIED</u>
~~175468760.1~~
              CASE NO. 2:24-CV-04546-SB(AGRX)

1    agreements included in the trial exhibits and  testimony of

2    Mr. Magsaysay, Mr. Koren, and Ms. Victor – all of  which

3    will establish that  none of the Counterclaimants – PCJV,

4    PCIT, LA Group LLC, GK Capital, NKM, or Koren have

5    any contract to which Cinco has privity; the settlement

6    agreement (Trial Exhibit 1172) and evidence of the

7    dismissals with  prejudice, as well as the pleadings in the

8    prior case establishing what has been dismissed, and subject

9    to retraxit..

10    c.    Element No. 3: Cinco Corporation or SPAVI, as Cinco

11    Corporation's successor-in-interest, breached the contract

12    i.    Disputed Status of Element 3:  The parties dispute this

13    element is satisfied.

14    ii.    Nature of Dispute: factual and legal.

15    iii.    <u>PCJV USA Parties' Position Statement:</u> SPAVI intended to

16    cause the breach of the above listed contracts by: (1)

17    allegedly acquiring IP rights from Cinco (which SPAVI

18    claims include US IP rights), without LA

19    Group's/Koren's/PCJV's prior written consent in violation of

20    the JVA/AJVA/LLC Agreement; (2) failing to allegedly

21    acquire the associated obligations and burdens under those

22    agreements to, for example, acknowledge our use and

23    termination rights, make best efforts to cooperate for the

24    success of PCJV, to perform further acts (such as execute

25    and deliver all required documents), if necessary, to provide

26    us use rights, or to, at minimum, acknowledge that PCJV

27    maintains a 50-year license or at least may continue to use

28

1         for as long as necessary under the franchise agreements it

2         was authorized to sign with franchisees in violation of the

3         JVA/AJVA/LLC Agreement/license agreements/MSA (and

4         associated written, oral, implied-in-fact

5         agreements/modifications, such as meeting minutes, written

6         communications of the PCJV members/managers, FDDs);

7         (3) refusing to acknowledge PCJV's right to reverse engineer

8         the powders/spices in violation of the PCJV board meeting

9         minutes; (4) refusing to acknowledge PCJV's affiliated

10        Koren stores' right not to pay royalties in accordance with

11        the JVA/AJVA/LLC Agreement; (5) refusing to

12        acknowledge LA Group's and Cinco Group/PCI Group's

13        mutual waiver of royalties as to all other initial/franchise fees

14        or other royalty income actually collected or to be collected

15        by PCJV in accordance with the JVA/AJVA/LLC

16        Agreement/FDDs; (6) refusing to honor the settlement struck

17        with Cinco whereby Koren/GK acquired all interests and

18        attached interests (despite representing that it would); and (7)

19        causing certain PCJV franchisees to breach their franchise

20        agreements and associate themselves with SPAVI.

21      iv.    <u>Plaintiff's Position Statement:</u> The only contracts that have

22        been identified as being "breached" are the unsigned licensee

23        agreement and the AJVA. Neither document binds Cinco –

24        indeed, that the AJVA constitutes an agreement to agree and

25        not a contract  has  already been adjudicated and decided as

26        law of the case. It is impossible to  know what the specific

27        contract is at issue here. To the extent any actual contract

28

JOINTLY FILED CLAIMS TO BE TRIEDSECOND
AMENDED JOINTLY FILED CLAIMS,
COUNTERCLAIMS, THIRD PARTY CLAIMS, AND
AFFIRMATIVE DEFENSES TO BE TRIED
175468760.1
                CASE NO. 2:24-CV-04546-SB(AGRX)

1    ever existed between Cinco and these parties, the only one

2    that is possible is the Settlement Agreement and

3    corresponding agreement selling PCJV equity to GKK

4    Capital. (Trial Exhibit 1176.) Because Cinco has never been

5    a party to any other contract with any of the Counterclaim

6    Defendants, that is the only one that could possibly be at

7    issue, but Defendants refuse to acknowledge this.

8         v.    PCJV USA Parties' Supporting Evidence: the following

9    categories, which are defined above, capture the key phases

10   and supporting evidence: Superseding Joint Venture (2008–

11   2010), Alternative Licensing Arrangements and Ongoing

12   Ratification (2011–2012), Formalization and Modification of

13   the Joint Venture (2012), LA Group Partnership Agreement

14   and Evolving Business Dynamics and Terms (2013–2018),

15   Dispute, Litigation, and State Court Proceedings (2018 and

16   Beyond), Ongoing Annual Ratification and Regulatory

17   Compliance, and SPAVI Parties' Tortious Conduct.

18        vi.   SPAVI Parties' Supporting Evidence: The absence of

19   evidence that  Cinco was a party to, or  breached, any

20   contract with any  of the Counterclaimants  is  the supporting

21   evidence.

22    d. Element No. 4: PCJV USA Parties were harmed.

23        i.    Disputed Status of Element 4:  The parties dispute this

24   element is satisfied.

25        ii.   Nature of Dispute: factual and legal.

26        iii.  Defendants' Position Statement: Plaintiff's position

27   statement does not address a legal issue concerning this

28

1      element. To the extent Plaintiff's position statement

2      addresses element 1, PCJV USA Parties incorporate their

3      respective response here.

4   iv.   Plaintiff's Position Statement: Cinco breached no contract.

5      The only contracts that have been identified as being

6      "breached" are the unsigned licensee agreement and the

7      AJVA. Neither document binds Cinco – indeed, that the

8      AJVA constitutes an agreement to agree and not a contract

9      has  already been adjudicated and decided as law of the case.

10     It is impossible to  know what the specific contract is at issue

11     here. To the extent any actual contract ever existed between

12     Cinco and these parties, the only one that is possible is the

13     Settlement Agreement and corresponding agreement selling

14     PCJV equity to GKK Capital. (Trial Exhibit 1176.) Because

15     Cinco has never been a party to any other contract with any

16     of the Counterclaim Defendants, that is the only one that

17     could possibly be at issue, but Defendants refuse to

18     acknowledge this.

19   v.   Defendants' Supporting Evidence: the following category,

20     which is defined above, captures the key phase and

21     supporting evidence: SPAVI Parties' Tortious Conduct.

22   vi.   SPAVI Parties' Supporting Evidence: The absence of

23     evidence that  Cinco was a party to, or  breached, any

24     contract with any  of the Counterclaimants is  the supporting

25     evidence, as there is no way any of the Counterclaimants

26     could have been harmed.

27   **9)  Cause of Action No. 9: Breach of Covenant oof Good Faith and Fair**

28

**Dealing.**

e.  Element No. 1: there is a contract between a Counterclaimant and
Cinco Corporation / that SPAVI is a successor in  interest to a contract
with Cinco.

    i.   Disputed Status of Element 1:  The parties dispute this
       element is satisfied.

    ii.  Nature of Dispute: factual and legal

    iii. <u>PCJV USA Parties' Position Statement:</u> The term for PCJV
       USA, LLC's use of the U.S. Potato Corner trademarks "can
       be [i]mplied from the nature of the contract and
       circumstances surrounding it." *See Consolidated Theatres,*
       *Inc. v. Theatrical Stage Emp. Union, Local 16*, 69 Cal.2d
       713, 725 (1968). The "initial effort of the court, in construing
       contracts of continuing performance of forebearance which
       contain no express term of duration, must always be that of
       implying a term of duration commensurate with the
       intentions of the parties . . . ." *Id.* at 727. Only when "the
       nature of the contract and the totality of the surrounding
       circumstances give no suggestion as to any ascertainable
       term . . . , the obligations under the contract shall be
       terminable at will by any party upon reasonable notice after
       such a reasonable time has elapsed." *Id.* Further, it is
       immaterial that SPAVI had full knowledge of the contracts'
       terms. *See Jenni Rivera Enterprises, LLC v. Latin World*
       *Entertainment Holdings, Inc.*, 36 Cal. App. 5th 766, 783
       (2019). Nor is SPAVI's belief about the legal significance of
       facts or belief that the parties' agreements are legally binding

1    or has a different legal effect from what it is judicially held to

2    have.  *See Little v. Amber Hotel Co.*, 202 Cal. App. 4th 280,

3    302 (2011).

4    iv.    <u>Plaintiff's Position Statement:</u> Moreover, and again, as

5    drafted it is impossible to  know what the specific contract is

6    that is at issue here. It has never been disclosed, and still

7    undisclosed. Rather than jettison the claim or actually

8    identify the  contract, instead, Defendants' solution is to

9    fudge with obtuse language in the jury instructions, designed

10   to confuse everyone, including the jury: "there was a contract

11   between any one of the PCJV Plaintiffs and any one of the

12   Cinco parties." Indeed, the only contract that Cinco has been

13   a party to with any of these Counterclaimants is the

14   Settlement Agreement of the Prior Governance Action. There

15   is no other written agreement between  PCJV and Cinco, or

16   between any other Counterclaimant and Cinco.  It is possible

17   that Counterclaimants are seeking to allege that Cinco is an

18   alter ego of Potato Corner  International or others, however,

19   PCJV and the other counterclaimants already  alleged this --

20   alt3er ego status of Cinco --  and after a negotiated

21   settlement, dismissed this claim with prejudice. They may

22   not raise it now. *See, e.g., Torrey Pines Bank v. Superior Ct*.,

23   216 Cal. App. 3d 813, 820 (Ct. App. 1989) (holding that ""a

24   dismissal with prejudice is the maiden name for a common

25   law retraxit," and "[a] retraxit is equivalent to a judgment on

26   the merits and as such bars further litigation on the same

27   subject matter between the parties."); *Datta v. Staab*, 173

28

130

1   Cal. App. 2d 613, 620—21 (1959) ("The effect of a dismissal

2   with prejudice is quite different, however, when it is

3   executed and filed in return for a consideration moving from

4   the defendant. Such a dismissal operates as a complete bar to

5   any future action and has the same legal effect as a common

6   law petraxit."). Second, as for SPAVI, it purchased

7   intellectual property, and did not assume any contracts

8   binding Cinco. Thus, the claim that SPAVI is bound to good

9   faith and fair dealing as a "successor in interest has no basis"

10  and can be resolved a matter of law,, given that this simply

11  requires interpretation of contracts binding Cinco (of which

12  there are no one) to which SPAVI assumed (also, null set).

13  Put simply – S{PAVI is not a successor in interest to any

14  contract of Cinco, and by purchasing the intellectual property

15  of Cinco, it was only bound to those contracts involving the

16  use and licensing of the brand – none of which are at issue in

17  this case.

18      v.   PCJV USA Parties' Supporting Evidence: the following

19           categories, which are defined above, capture the key phases

20           and supporting evidence: Superseding Joint Venture (2008–

21           2010), Alternative Licensing Arrangements and Ongoing

22           Ratification (2011–2012), Formalization and Modification of

23           the Joint Venture (2012), LA Group Partnership Agreement

24           and Evolving Business Dynamics and Terms (2013–2018),

25           Dispute, Litigation, and State Court Proceedings (2018 and

26           Beyond), and Ongoing Annual Ratification and Regulatory

27           Compliance.

28

---

131

JOINTLY FILED CLAIMS TO BE TRIEDSECOND
AMENDED JOINTLY FILED CLAIMS,
COUNTERCLAIMS, THIRD PARTY CLAIMS, AND
AFFIRMATIVE DEFENSES TO BE TRIED
175468760.1

                                    CASE NO. 2:24-CV-04546-SB(AGRX)

1    vi. <u>SPAVI Parties' Supporting Evidence:</u> Each of the

2      agreements included in the trial exhibits and  testimony of

3      Mr. Magsaysay, Mr. Koren, and Ms. Victor – all of  which

4      will establish that  none of the Counterclaimants – PCJV,

5      PCIT, LA Group LLC, GK Capital, NKM, or Koren have

6      any contract to which Cinco has privity; the settlement

7      agreement (Trial Exhibit 1172) and evidence of the

8      dismissals with  prejudice, as well as the pleadings in the

9      prior case establishing what has been dismissed, and subject

10      to retraxit.

11   f. Element No. 2: The Counterclaimant  that is a party to the contract

12    did all or substantially all of the things required under the contract,

13    or were excused from so performing:

14    i. Disputed Status of Element 2:  The parties dispute this

15      element is satisfied.

16    ii. Nature of Dispute: factual  and legal.

17    iii. <u>PCJV USA Parties' Position Statement:</u> Plaintiff's position

18      statement does not address a legal issue concerning this

19      element. To the extent Plaintiff's position statement

20      addresses element 1, PCJV USA Parties incorporate their

21      respective response here.

22    iv. <u>Plaintiff's Position Statement:</u> as drafted it is impossible to

23      know what the specific contract is at issue here. It has never

24      been disclosed, and still undisclosed. So, when this element

25      in the instructions says, "the contract," whereas the prior

26      element refers to some unidentified contract, as a matter of

27      law, yes, this element is disputed. To the extent any actual

28

1   contract ever existed between Cinco and these parties, the
2   only one that is possible is the Settlement Agreement and
3   corresponding agreement selling PCJV equity to GKK
4   Capital. (Trial Exhibit 1176.) Because Cinco has never been
5   a party to any other contract with any of the Counterclaim
6   Defendants, that is the only one that could possibly be at
7   issue, but Defendants refuse to acknowledge this. It is
8   possible that Counterclaimants are seeking to allege that
9   Cinco is an alter ego of Potato Corner  International or
10  others, however,  PCJV and the other counterclaimants
11  already  alleged this --  alter ego status of Cinco --  and after
12  a negotiated settlement, dismissed this claim with prejudice.
13  They may not raise it now. *See, e.g., Torrey Pines Bank v.*
14  *Superior Ct*., 216 Cal. App. 3d 813, 820 (Ct. App. 1989)
15  (holding that "a dismissal with prejudice is the maiden name
16  for a  common law retraxit," and "[a] retraxit is equivalent to
17  a judgment on the merits and as such bars further litigation
18  on the same subject matter between the parties."); *Datta v.*
19  *Staab*, 173 Cal. App. 2d 613, 620—21 (1959) ("The effect of
20  a dismissal with prejudice is quite different, however, when
21  it is executed and filed in return for a consideration moving
22  from the defendant. Such a dismissal operates as a complete
23  bar to any future action and has the same legal effect as a
24  common law petraxit."). Second, as for SPAVI, it purchased
25  intellectual property, and did not assume any contracts
26  binding Cinco. Thus, the claim that SPAVI is  bound to good
27  faith and fair dealing as a "successor in interest has no basis"
28

133

1    and can be resolved a matter of law,, given that this simply

2    requires interpretation of contracts binding Cinco (of which

3    there are no one) to which SPAVI assumed (also, null set).

4    Put simply – S{PAVI is not a successor in interest to any

5    contract of Cinco, and by purchasing the intellectual property

6    of Cinco, it was only bound to those contracts involving the

7    use and licensing of the brand – none of which are at issue in

8    this case.

9    v.    <u>PCJV USA Parties' Supporting Evidence:</u> the following

10    categories, which are defined above, capture the key phases

11    and supporting evidence: Superseding Joint Venture (2008–

12    2010), Alternative Licensing Arrangements and Ongoing

13    Ratification (2011–2012), Formalization and Modification of

14    the Joint Venture (2012), LA Group Partnership Agreement

15    and Evolving Business Dynamics and Terms (2013–2018),

16    Dispute, Litigation, and State Court Proceedings (2018 and

17    Beyond), Ongoing Annual Ratification and Regulatory

18    Compliance, and SPAVI Parties' Tortious Conduct.

19    vi.    <u>SPAVI Parties' Supporting Evidence:</u> Each of the

20    agreements included in the trial exhibits and testimony of

21    Mr. Magsaysay, Mr. Koren, and Ms. Victor – all of which

22    will establish that none of the Counterclaimants – PCJV,

23    PCIT, LA Group LLC, GK Capital, NKM, or Koren have

24    any contract to which Cinco has privity; the settlement

25    agreement (Trial Exhibit 1172) and evidence of the

26    dismissals with prejudice, as well as the pleadings in the

27    prior case establishing what has been dismissed, and subject

28

134

JOINTLY FILED CLAIMS TO BE TRIEDSECOND
AMENDED JOINTLY FILED CLAIMS,
COUNTERCLAIMS, THIRD PARTY CLAIMS, AND
AFFIRMATIVE DEFENSES TO BE TRIED
175468760.1

CASE NO. 2:24-CV-04546-SB(AGRX)

1      to retraxit.

2    g.  Element No. 3: Cinco or SPAVI engaged in conduct that breached

3      the duty of good faith and fair dealing.

4      i.   Disputed Status of Element 3:  The parties dispute this

5         element is satisfied.

6      ii.  Nature of Dispute: factual and legal.

7      iii. PCJV USA Parties' Position Statement: Plaintiff's position

8         statement does not address a legal issue concerning this

9         element. To the extent Plaintiff's position statement

10        addresses element 1, PCJV USA Parties incorporate their

11        respective response here.

12     iv.  Plaintiff's Position Statement: The only contracts that have

13        been identified as being "breached" are the unsigned licensee

14        agreement and the AJVA. Neither document binds Cinco –

15        indeed, that the AJVA constitutes an agreement to agree and

16        not a contract  has  already been adjudicated and decided as

17        law of the case. It is impossible to  know what the specific

18        contract is at issue here. To the extent any actual contract

19        ever existed between Cinco and these parties, the only one

20        that is possible is the Settlement Agreement and

21        corresponding agreement selling PCJV equity to GKK

22        Capital. (Trial Exhibit 1176.) Because Cinco has never been

23        a party to any other contract with any of the Counterclaim

24        Defendants, that is the only one that could possibly be at

25        issue, but Defendants refuse to acknowledge this. In the

26        absence of a contract binding Cinco, it is possible that

27        Counterclaimants are seeking to allege that Cinco is an alter

28

CASE NO. 2:24-CV-04546-SB(AGRX)

ego of Potato Corner  International or others, however,
PCJV and the other counterclaimants already  alleged this --
alter ego status of Cinco --  and after a negotiated settlement,
dismissed this claim with prejudice. They may not raise it
now. *See, e.g., Torrey Pines Bank v. Superior Ct*., 216 Cal.
App. 3d 813, 820 (Ct. App. 1989) (holding that ""a dismissal
with prejudice is the maiden name for a  common law
retraxit," and "[a] retraxit is equivalent to a judgment on the
merits and as such bars further litigation on the same subject
matter between the parties."); *Datta v. Staab*, 173 Cal. App.
2d 613, 620—21 (1959) ("The effect of a dismissal with
prejudice is quite different, however, when it is executed and
filed in return for a consideration moving from the defendant.
Such a dismissal operates as a complete bar to any future
action and has the same legal effect as a common law
petraxit."). Second, as for SPAVI, it purchased intellectual
property, and did not assume any contracts binding Cinco.
Thus, the claim that SPAVI is  bound to good faith and fair
dealing as a "successor in interest has no basis" and can be
resolved a matter of law,,  given that this  simply requires
interpretation of contracts  binding  Cinco (of which there are
no one) to which SPAVI assumed (also, null set). Put simply
– S{PAVI  is  not a  successor in interest to any contract of
Cinco, and by purchasing the intellectual property  of  Cinco,
it was only  bound to those contracts involving the use and
licensing of the brand– none of which are at issue  in this
case.

136

v.    <u>PCJV USA Parties' Supporting Evidence:</u> the following
category, which is defined above, captures the key phase and
supporting evidence: SPAVI Parties' Tortious Conduct.

vi.    <u>SPAVI Parties' Supporting Evidence:</u> The absence of
evidence that Cinco was a party to, or breached, any
contract with any of the Counterclaimants is the supporting
evidence. Plaintiff's Position Statement: In addition to the
absence of any contract binding Cinco or SPAVI – thus
there could be no corresponding breach of the covenant of
good faith and fair dealing – the evidence of Koren's
behavior during the license negotiations, particularly with
SPAVI, lead to the conclusion that it was he that caused the
negotiations to fail, not anyone else. Testimony of SPAVI
(Gregorio and Tan) as well as their correspondence with
Koren (Trial Exhibits 20-31) will establish this. The only
contracts that have been identified as being "breached" are
the unsigned licensee agreement and the AJVA. Neither
document binds Cinco – indeed, that the AJVA constitutes an
agreement to agree and not a contract has already been
adjudicated and decided as law of the case. It is impossible to
know what the specific contract is at issue here. To the extent
any actual contract ever existed between Cinco and these
parties, the only one that is possible is the Settlement
Agreement and corresponding agreement selling PCJV
equity to GKK Capital. (Trial Exhibit 1176.) I acknowledge
has never been a party to any other contract with any of the
Counterclaim Defendants, which is the only one that could

      

1    possibly be at issue, but Defendants refuse to acknowledge

2    this.

3       h. <u>Element No. 4:</u> Counterclaimants were harmed.

4         i.  Disputed Status of Element 4:  The parties dispute this

5    element is satisfied.

6         ii.  <u>Nature of Dispute:</u> legal.

7         iii.  <u>PCJV Usa Parties' Position Statement</u>: Plaintiff's position

8    statement does not address a legal issue concerning this

9    element. To the extent Plaintiff's position statement

10    addresses element 1, PCJV USA Parties incorporate their

11    respective response here.

12         iv.  <u>Plaintiff's Position Statement:</u> Cinco breached no contract.

13    The only contracts that have been identified as being

14    "breached" are the unsigned licensee agreement and the

15    AJVA. Neither document binds Cinco – indeed, that the

16    AJVA constitutes an agreement to agree and not a contract

17    has  already been adjudicated and decided as law of the case.

18    It is impossible to  know what the specific contract is at issue

19    here. To the extent any actual contract ever existed between

20    Cinco and these parties, the only one that is possible is the

21    Settlement Agreement and corresponding agreement selling

22    PCJV equity to GKK Capital. (Trial Exhibit 1176.) Because

23    Cinco has never been a party to any other contract with any

24    of the Counterclaim Defendants, that is the only one that

25    could possibly be at issue, but Defendants refuse to

26    acknowledge this.

27    **i. Cause of Action No. 11: Quantum Meruit.**

28

~~JOINTLY FILED CLAIMS TO BE TRIED~~SECOND
AMENDED JOINTLY FILED CLAIMS,
COUNTERCLAIMS, THIRD PARTY CLAIMS, AND
AFFIRMATIVE DEFENSES TO BE TRIED
~~175468760.1~~

CASE NO. 2:24-CV-04546-SB(AGRX)

1    i.    Element No. 1: any of the SPAVI Parties requested, by words

2          or conduct, that any one of the PCJV USA Parties perform

3          services for the benefit of any of the SPAVI Parties.

4          i.    Disputed Status of Element 1:  The parties dispute that

5                this element is satisfied.

6          ii.   Nature of Dispute: Factual

7          iii.  PCJV USA Parties' Supporting Evidence: the following

8                categories, which are defined above, capture the key

9                phases and supporting evidence: Superseding Joint

10               Venture (2008–2010), Alternative Licensing

11               Arrangements and Ongoing Ratification (2011–2012),

12               Formalization and Modification of the Joint Venture

13               (2012), LA Group Partnership Agreement and Evolving

14               Business Dynamics and Terms (2013–2018), Dispute,

15               Litigation, and State Court Proceedings (2018 and

16               Beyond), and Ongoing Annual Ratification and

17               Regulatory Compliance.

18         iv.   SPAVI and Cinco's Supporting Evidence: the lack of

19               evidence of this will suffice. Testimony of Gregorio will

20               confirm as will testimony of Koren.

21   ii.   Element No. 2: any one of the PCJV USA Parties performed

22         the services as requested.

23         i.    Disputed Status of Element 2:  The parties dispute that

24               this element is satisfied.

25         ii.   Nature of Dispute: factual

26         iii.  PCJV USA Parties' Supporting Evidence: the following

27               categories, which are defined above, capture the key

28

CASE NO. 2:24-CV-04546-SB(AGRX)

1      phases and supporting evidence: Superseding Joint

2      Venture (2008–2010), Alternative Licensing

3      Arrangements and Ongoing Ratification (2011–2012),

4      Formalization and Modification of the Joint Venture

5      (2012), LA Group Partnership Agreement and Evolving

6      Business Dynamics and Terms (2013–2018), Dispute,

7      Litigation, and State Court Proceedings (2018 and

8      Beyond), Ongoing Annual Ratification and Regulatory

9      Compliance, and SPAVI Parties' Tortious Conduct.

10         iv.   <u>SPAVI and Cinco's Supporting Evidence:</u> the lack of

11             evidence of this will suffice. Testimony of Gregorio will

12             confirm as will testimony of Koren.

13     iii.   <u>Element No. 3</u>: the requesting SPAVI Party/Parties has not

14         paid any one of the PCJV USA Parties for the services.

15         i.   Disputed Status of Element 3:  The parties dispute that

16             this element is satisfied.

17         ii.   Nature of Dispute: Factual

18         iii.   <u>PCJV USA Parties' Supporting Evidence:</u> the following

19             category, which is defined above, captures the key phase

20             and supporting evidence: SPAVI Parties' Tortious

21             Conduct.

22         iv.   <u>SPAVI and Cinco's Supporting Evidence:</u> the lack of

23             evidence of this will suffice. Testimony of Gregorio will

24             confirm as will testimony of Koren.

25     iv.   <u>Element No. 4</u>: the reasonable value of the services that were

26         provided.

27         i.   Disputed Status of Element 4:  The parties dispute that

28

<hr>

140

1    this element is satisfied.

2        ii.  Nature of Dispute: Factual

3        iii. <u>PCJV USA Parties' Supporting Evidence:</u> documents and

4             testimony including and related to the following: (1)

5             PCJV USA Parties' financial records; (2) PCJV USA

6             Parties' historical growth; and (3) PJCV USA Parties'

7             franchisee agreements and communications.

8        iv.  <u>SPAVI and Cinco's Supporting Evidence:</u> there is no

9             evidence of this.

10

11   **III.   <u>SPAVI Parties' Affirmative Defenses</u>**

12     1)  **<u>Affirmative Defense No. 1</u>**: Laches (asserted by Counter Defendant and

13         Third Party Defendants as to all claims alleged against them)

14       a.  Element No. 1: A Delay in asserting a claim.

15         i.  This element is disputed

16        ii.  Nature of Dispute: ~~Legal and~~ Factual

17        iii. Plaintiff's Position Statement: Laches is an affirmative

18             defense.

19        iv.  Defendants' Position Statement: Laches is an equitable

20             claim to be tried by the Court. *Ultimax Cement Mfg.*

21             *Corp. v. CTS Cement Mfg. Corp.*, 856 F.Supp. 2d 1136,

22             1151 (2012).

23         v.  Plaintiff's Supporting Evidence:  Both the JVA and

24             AJVA contain an agreement to agree on a Master License

25             Agreement. However, there was never a written license

26             agreement executed between Counterclaimants and

27             Cinco. Counterclaimants entered into a negotiation

28

141

1    process with Cinco, prior to SPAVI's acquisition of the

2    Potato Corner brand and all of the Potato Corner

3    Intellectual Property from Cinco, for the terms of a

4    license to use the Potato Corner Intellectual Property.

5    These negotiations began before SPAVI purchased the

6    rights to the Potato Corner IP. So, Counterclaimants have

7    been aware of the lack of ownership rights in the Potato

8    Corner Intellectual Property and the non-existence of a

9    written agreement. Then, between December of 2021

10    through 2024, the months immediately preceding this

11    action, SPAVI engaged in a good faith and exhaustive

12    attempt to negotiate the terms of a written license with

13    PCJV as well. Never once did Counterclaimants state that

14    they had ownership rights to the Potato Corner

15    Intellectual Property, and SPAVI relied on that

16    representation because had one been expressed, that

17    would have been a dispute as to the ownership rights to

18    which SPAVI would have filed this lawsuit sooner.

19    Additional evidence includes: Notarized Deeds signed by

20    seller and buyer; USPTO filings including Registrations

21    and Assignments; Testimony of Gregorio (Plaintiff's

22    CEO), Magsaysay (Cinco's CEO), Koren, Ybanez

23    (Plaintiff's General Counsel), Tan (Director responsible

24    for international franchising); and emails and

25    correspondence during the negotiation of the terms of the

26    license agreement.

27        vi.  PCJV USA's Parties Supporting Evidence: SPAVI parties

28

1    have not articulated their defense beyond what is included

2    in their Answers until 7am on August 12, 2025. *See* n. 1.

3    As it is articulated in the Answers, PCJV Parties cannot

4    determine the factual basis for the defense.  As such, the

5    out of an abundance of caution, PCJV Parties incorporate

6    by reference all of the evidence cited in support of their

7    causes of action

8    b.  Element No. 2: acquiescence by Counterclaim Defendants or Third

9    Party Defendants or their suffering of prejudice, which can include

10    detrimental reliance on the status quo, loss of evidence, or other

11    circumstances that make it inequitable to allow the claimants to

12    assert their claim after the delay.

13        i.  This element is disputes

14        ii.  Nature of Dispute: Legal and factual

15        iii.  Plaintiff's Position Statement: Laches is an affirmative

16            defense.

17        iv.  <u>PCJV USA Parties' Position Statement:</u> PCJV USA

18            Parties' Position Statement: Laches is an equitable claim

19            to be tried by the Court. *Ultimax Cement Mfg. Corp. v.*

20            *CTS Cement Mfg. Corp.*, 856 F.Supp. 2d 1136, 1151

21            (2012).  "A defendant must demonstrate three elements to

22            successfully assert laches defense: (1) delay in asserting a

23            right or claim; (2) the delay was not reasonable or

24            excusable; and (3) prejudice to the party against whom

25            laches is asserted." *Magic Kitchen LLC v. Good Things*

26            *Internat., Ltd.*, 153 Cal. App. 4th 1144, 1157 (2007).

27            SPAVI Parties' statement of what it needs to prove here

28

---

143

1  as an element to laches is incorrect

2  v. Plaintiff's Supporting Evidence: Both the JVA and AJVA

3  contain an agreement to agree on a Master License

4  Agreement. However, there was never a written license

5  agreement executed between Counterclaimants and

6  Cinco. Counterclaimants entered into a negotiation

7  process with Cinco, prior to SPAVI's acquisition of the

8  Potato Corner brand and all of the Potato Corner

9  Intellectual Property from Cinco, for the terms of a

10  license to use the Potato Corner Intellectual Property.

11  These negotiations began in [DATE]. So, as of [DATE],

12  Counterclaimants have been aware of the lack of

13  ownership rights in the Potato Corner Intellectual

14  Property and the non-existence of a written agreement.

15  Then, between December of 2021 through 2024, the

16  months immediately preceding this action, SPAVI

17  engaged in a good faith and exhaustive attempt to

18  negotiate the terms of a written license with PCJV as

19  well. Never once did Counterclaimants state that they had

20  ownership rights to the Potato Corner Intellectual

21  Property, and SPAVI relied on that representation because

22  had one been expressed, that would have been a dispute

23  as to the ownership rights to which SPAVI would have

24  filed this lawsuit sooner. Additional evidence includes:

25  Notarized Deeds signed by seller and buyer; USPTO

26  filings including Registrations and Assignments;

27  Testimony of Gregorio (Plaintiff's CEO), Magsaysay

28

1    (Cinco's CEO), Koren, Ybanez (Plaintiff's General

2    Counsel), Tan (Director responsible for international

3    franchising); and emails and correspondence during the

4    negotiation of the terms of the license agreement.

5        vi.  PCJV USA Parties' Supporting Evidence: SPAVI parties

6    have not articulated their defense beyond what is included

7    in their Answers until 7am on August 12, 2025. *See* n. 1.

8    As it is articulated in the Answers, PCJV Parties cannot

9    determine the factual basis for the defense.  As such, the

10   out of an abundance of caution, PCJV Parties incorporate

11   by reference all of the evidence cited in support of their

12   causes of action.

13   2) **Affirmative Defense No. 2:** Consent (asserted by Counterclaim

14   Defendant and Third Party Defendants as to all claims alleged against

15   them)

16       a.  Element No. 1: One or more of the Counterclaimants or Third Party

17   Plaintiffs consented to the acts about which they complain.

18           i.  This element is disputed.

19           ii.  Nature of Dispute: ~~Legal and~~ factual

20           iii.  Plaintiff's Position Statement: The elements are taken

21   from CACI 1721

22           iv.  ~~PCJV USA Parties' Position Statement: SPAVI Parties'~~

23   ~~appear to have combined an element of their laches~~

24   ~~affirmative defense. Otherwise, there is no legal support~~

25   ~~for SPAVI Parties' articulated element~~

26           ~~v.~~iv.  Plaintiff's Supporting Evidence: Both the JVA and AJVA

27   contain an agreement to agree on a Master License

28

145
~~JOINTLY FILED CLAIMS TO BE TRIED~~SECOND
AMENDED JOINTLY FILED CLAIMS,
COUNTERCLAIMS, THIRD PARTY CLAIMS, AND
AFFIRMATIVE DEFENSES TO BE TRIED
175468760.1                                    CASE NO. 2:24-CV-04546-SB(AGRX)

1   Agreement. However, there was never a written license

2   agreement executed between Counterclaimants and

3   Cinco. Counterclaimants entered into a negotiation

4   process with Cinco, prior to SPAVI's acquisition of the

5   Potato Corner brand and all of the Potato Corner

6   Intellectual Property from Cinco, for the terms of a

7   license to use the Potato Corner Intellectual Property.

8   These negotiations began in [DATE]. So, as of [DATE],

9   Counterclaimants have been aware of the lack of

10  ownership rights in the Potato Corner Intellectual

11  Property and the non-existence of a written agreement.

12  Then, between December of 2021 through 2024, the

13  months immediately preceding this action, SPAVI

14  engaged in a good faith and exhaustive attempt to

15  negotiate the terms of a written license with PCJV as

16  well. Never once did Counterclaimants state that they had

17  ownership rights to the Potato Corner Intellectual

18  Property, and SPAVI relied on that representation because

19  had one been expressed, that would have been a dispute

20  as to the ownership rights to which SPAVI would have

21  filed this lawsuit sooner. Additional evidence includes:

22  Notarized Deeds signed by seller and buyer; USPTO

23  filings including Registrations and Assignments;

24  Testimony of Gregorio (Plaintiff's CEO), Magsaysay

25  (Cinco's CEO), Koren, Ybanez (Plaintiff's General

26  Counsel), Tan (Director responsible for international

27  franchising); and emails and correspondence during the

28

146

~~JOINTLY FILED CLAIMS TO BE TRIED~~SECOND
AMENDED JOINTLY FILED CLAIMS,
COUNTERCLAIMS, THIRD PARTY CLAIMS, AND
AFFIRMATIVE DEFENSES TO BE TRIED
~~175468760.1~~

CASE NO. 2:24-CV-04546-SB(AGRX)

1  negotiation of the terms of the license agreement.

2  ~~vi.~~v. PCJV USA Parties' Supporting Evidence: SPAVI parties

3  have not articulated their defense beyond what is included

4  in their Answers until 7am on August 12, 2025. *See* n. 1.

5  As it is articulated in the Answers, PCJV Parties cannot

6  determine the factual basis for the defense.  As such, the

7  out of an abundance of caution, PCJV Parties incorporate

8  by reference all of the evidence cited in support of their

9  causes of action.

10  3) **Affirmative Defense No. 3:** Estoppel (asserted by Counterclaim

11  Defendant and Third Party Defendants as to all claims alleged against

12  them)

13  a. Element No. 1: A representation or concealment of material facts;

14  i. This element is disputed

15  ii. Nature of Dispute: Legal and factual

16  iii. SPAVI and Cinco's Position Statement: Estoppel is an

17  affirmative defense

18  iv. PCJV USA Parties Position: PCJV USA Parties' Position

19  Statement: Equitable estoppel is an equitable claim to be

20  tried by the Court. *Ultimax Cement Mfg. Corp. v. CTS*

21  *Cement Mfg. Corp.,* 856 F.Supp. 2d 1136, 1151 (2012).

22  v. Plaintiff's Supporting Evidence: Counterclaimants have

23  no evidence of a written license to use SPAVI's Potato

24  Corner Intellectual Property, and, as such, its rights (that

25  it has sold to its franchisees) derive from what is, at best,

26  a terminable at will, fully revocable license because

27  Defendants were nonetheless operating Potato Corner

28  

147

JOINTLY FILED CLAIMS TO BE TRIEDSECOND
AMENDED JOINTLY FILED CLAIMS,
COUNTERCLAIMS, THIRD PARTY CLAIMS, AND
AFFIRMATIVE DEFENSES TO BE TRIED
175468760.1

CASE NO. 2:24-CV-04546-SB(AGRX)

1  locations, as if a written license existed. See Pogrebnoy v.

2  Russian Newspaper Distribution, Inc., 289 F. Supp. 3d

3  1061, 1070 (C.D. Cal. 2017), aff'd, 742 F. App'x 291 (9th

4  Cir. 2018) ("[A]n implied license, like any other contract,

5  is terminable at the will of either party if it is not for a

6  specified term."). After SPAVI's acquisition of the Potato

7  Corner brand, it became the licensor of the Potato Corner

8  Intellectual Property. Between December of 2021 through

9  2024, the months immediately preceding this action,

10  SPAVI engaged in a good faith and exhaustive attempt to

11  negotiate the terms of a written license with PCJV.

12  Defendant Guy Koren engaged and participated in this

13  negotiation, but was unwilling to agree to any minimally

14  commercially viable licensing terms. Never once did

15  Counterclaimants state that they had ownership rights to

16  the Potato Corner Intellectual Property, and SPAVI relied

17  on that representation. Additional evidence includes:

18  Testimony of Gregorio (Plaintiff's CEO), Magsaysay

19  (Cinco's CEO), Koren, Ybanez (Plaintiff's General

20  Counsel), Tan (Director responsible for international

21  franchising); and emails and correspondence during the

22  negotiation of the terms of the license agreement.

23  vi.  <u>PCJV USA Parties' Supporting Evidence:</u> SPAVI parties

24  have not articulated their defense beyond what is included

25  in their Answers. As it is articulated there, PCJV Parties

26  cannot determine the factual basis for the defense.  As

27  such, the out of an abundance of caution, PCJV Parties

28

1    incorporate by reference all of the evidence cited in

2    support of their causes of action.

3    b.  Element 2: Made with knowledge, actual or virtual, of the facts;

4    i.  This element is disputed

5    ii.  Nature of Dispute: Legal and factual

6    iii.  Plaintiff's Position Statement: Estoppel is an affirmative

7    defense

8    iv.  PCJV USA Parties' Position Statement: Equitable

9    estoppel is an equitable claim to be tried by the Court.

10    *Ultimax Cement Mfg. Corp. v. CTS Cement Mfg. Corp.,*

11    856 F.Supp. 2d 1136, 1151 (2012).

12    v.  Plaintiff's Supporting Evidence: Plaintiff's Supporting

13    Evidence: Counterclaimants have no evidence of a written

14    license to use SPAVI's Potato Corner Intellectual

15    Property, and, as such, its rights (that it has sold to its

16    franchisees) derive from what is, at best, a terminable at

17    will, fully revocable license because Defendants were

18    nonetheless operating Potato Corner locations, as if a

19    written license existed. *See Pogrebnoy v. Russian*

20    *Newspaper Distribution, Inc.,* 289 F. Supp. 3d 1061, 1070

21    (C.D. Cal. 2017), aff'd, 742 F. App'x 291 (9th Cir. 2018)

22    ("[A]n implied license, like any other contract, is

23    terminable at the will of either party if it is not for a

24    specified term."). After SPAVI's acquisition of the Potato

25    Corner brand, it became the licensor of the Potato Corner

26    Intellectual Property. Between December of 2021 through

27    2024, the months immediately preceding this action,

28

SPAVI engaged in a good faith and exhaustive attempt to negotiate the terms of a written license with PCJV. Defendant Guy Koren engaged and participated in this negotiation, but was unwilling to agree to any minimally commercially viable licensing terms. Never once did Counterclaimants state that they had ownership rights to the Potato Corner Intellectual Property, and SPAVI relied on that representation. Additional evidence includes: Testimony of Gregorio (Plaintiff's CEO), Magsaysay (Cinco's CEO), Koren, Ybanez (Plaintiff's General Counsel), Tan (Director responsible for international franchising); and emails and correspondence during the negotiation of the terms of the license agreement

vi. <u>PCJV USA Parties' Supporting Evidence:</u> SPAVI parties have not articulated their defense beyond what is included in their Answers. As it is articulated there, PCJV Parties cannot determine the factual basis for the defense.  As such, the out of an abundance of caution, PCJV Parties incorporate by reference all of the evidence cited in support of their causes of action

c. <u>Element 3:</u> To a party ignorant, actually, and permissibly, of the truth;

    i. This element is disputed

    ii. Nature of Dispute: legal and factual

    iii. <u>Plaintiff's position statement:</u> Estoppel is an affirmative defense

    iv. <u>PCJV USA Parties' Position Statement:</u> Equitable

---

150

~~JOINTLY FILED CLAIMS TO BE TRIED~~<u>SECOND AMENDED JOINTLY FILED CLAIMS, COUNTERCLAIMS, THIRD PARTY CLAIMS, AND AFFIRMATIVE DEFENSES TO BE TRIED</u>
~~175468760.1~~

CASE NO. 2:24-CV-04546-SB(AGRX)

1    estoppel is an equitable claim to be tried by the Court.

2    *Ultimax Cement Mfg. Corp. v. CTS Cement Mfg. Corp.*,

3    856 F.Supp. 2d 1136, 1151 (2012).

4    v. <u>Plaintiff's Supporting Evidence:</u> Plaintiff's Supporting

5    Evidence: Counterclaimants have no evidence of a written

6    license to use SPAVI's Potato Corner Intellectual

7    Property, and, as such, its rights (that it has sold to its

8    franchisees) derive from what is, at best, a terminable at

9    will, fully revocable license because Defendants were

10   nonetheless operating Potato Corner locations, as if a

11   written license existed. See Pogrebnoy v. Russian

12   Newspaper Distribution, Inc., 289 F. Supp. 3d 1061, 1070

13   (C.D. Cal. 2017), aff'd, 742 F. App'x 291 (9th Cir. 2018)

14   ("[A]n implied license, like any other contract, is

15   terminable at the will of either party if it is not for a

16   specified term."). After SPAVI's acquisition of the Potato

17   Corner brand, it became the licensor of the Potato Corner

18   Intellectual Property. Between December of 2021 through

19   2024, the months immediately preceding this action,

20   SPAVI engaged in a good faith and exhaustive attempt to

21   negotiate the terms of a written license with PCJV.

22   Defendant Guy Koren engaged and participated in this

23   negotiation, but was unwilling to agree to any minimally

24   commercially viable licensing terms. Never once did

25   Counterclaimants state that they had ownership rights to

26   the Potato Corner Intellectual Property, and SPAVI relied

27   on that representation. Instead, Counterclaimant engaged

28

1　　　　　　　　　　in the negotiation process. Additional evidence includes:

2　　　　　　　　　　Testimony of Gregorio (Plaintiff's CEO), Magsaysay

3　　　　　　　　　　(Cinco's CEO), Koren, Ybanez (Plaintiff's General

4　　　　　　　　　　Counsel), Tan (Director responsible for international

5　　　　　　　　　　franchising); and emails and correspondence during the

6　　　　　　　　　　negotiation of the terms of the license agreement

7　　　　　　vi.　PCJV USA Parties' Supporting Evidence: SPAVI parties

8　　　　　　　　　　have not articulated their defense beyond what is included

9　　　　　　　　　　in their Answers. As it is articulated there, PCJV Parties

10　　　　　　　　　　cannot determine the factual basis for the defense.  As

11　　　　　　　　　　such, the out of an abundance of caution, PCJV Parties

12　　　　　　　　　　incorporate by reference all of the evidence cited in

13　　　　　　　　　　support of their causes of action

14　　　d.　Element 4: With the intention, actual or virtual, that the ignorant

15　　　　　　party act on it; and

16　　　　　　　i.　This element is disputed

17　　　　　　ii.　Nature of Dispute: legal and factual

18　　　　　iii.　Plaintiff's position statement: Estoppel is an affirmative

19　　　　　　　　　　defense

20　　　　　iv.　PCJV USA Parties' Position Statement: Equitable

21　　　　　　　　　　estoppel is an equitable claim to be tried by the Court.

22　　　　　　　　　　_Ultimax Cement Mfg. Corp. v. CTS Cement Mfg. Corp._,

23　　　　　　　　　　856 F.Supp. 2d 1136, 1151 (2012).

24　　　　　　v.　Plaintiff's Supporting Evidence: Never once did

25　　　　　　　　　　Counterclaimants state that they had ownership rights to

26　　　　　　　　　　the Potato Corner Intellectual Property. Instead,

27　　　　　　　　　　Defendant Guy Koren engaged and participated in the

28

JOINTLY FILED CLAIMS TO BE TRIEDSECOND
AMENDED JOINTLY FILED CLAIMS,
COUNTERCLAIMS, THIRD PARTY CLAIMS, AND
AFFIRMATIVE DEFENSES TO BE TRIED
175468760.1

CASE NO. 2:24-CV-04546-SB(AGRX)

1         negotiation of the license to use the Potato Corner

2         Intellectual Property, with the intent of having SPAVI

3         relied on that representation that Counterclaimant did not

4         have a license. Additional evidence includes: Testimony

5         of Gregorio (Plaintiff's CEO), Magsaysay (Cinco's CEO),

6         Koren, Ybanez (Plaintiff's General Counsel), Tan

7         (Director responsible for international franchising); and

8         emails and correspondence during the negotiation of the

9         terms of the license agreement

10      vi. <u>PCJV USA Parties' Supporting Evidence:</u> SPAVI parties

11         have not articulated their defense beyond what is included

12         in their Answers. As it is articulated there, PCJV Parties

13         cannot determine the factual basis for the defense.  As

14         such, the out of an abundance of caution, PCJV Parties

15         incorporate by reference all of the evidence cited in

16         support of their causes of action.

17    e. Element 5: That party was induced to act on it and was harmed.

18       i. This element is disputed

19      ii. Nature of Dispute: legal and factual

20     iii. <u>Plaintiff's position statement:</u> Estoppel is an affirmative

21         defense

22     iv. <u>PCJV USA Parties' Position Statement:</u> Equitable

23         estoppel is an equitable claim to be tried by the Court.

24         *Ultimax Cement Mfg. Corp. v. CTS Cement Mfg. Corp.*,

25         856 F.Supp. 2d 1136, 1151 (2012).

26      v. <u>Plaintiff's Supporting Evidence:</u> Never once did

27         Counterclaimants state that they had ownership rights to

28

153

~~JOINTLY FILED CLAIMS TO BE TRIED~~SECOND
AMENDED JOINTLY FILED CLAIMS,
COUNTERCLAIMS, THIRD PARTY CLAIMS, AND
AFFIRMATIVE DEFENSES TO BE TRIED
~~175468760.1~~

CASE NO. 2:24-CV-04546-SB(AGRX)

1    the Potato Corner Intellectual Property. Instead,

2    Defendant Guy Koren engaged and participated in the

3    negotiation of the license to use the Potato Corner

4    Intellectual Property, with the intent of having SPAVI

5    relied on that representation that Counterclaimant did not

6    have a license. Guy Koren refused to, engage in

7    reasonable and good faith negotiation. Instead, he only

8    offered royalty rates and license fees that were more than

9    90% below what Koren had agreed to be reasonable

10   licensing fees over a decade prior. Koren also repeatedly

11   disengaged from the negotiation process, but still was

12   utilizing the Potato Corner Intellectual Property. In the

13   three months prior to the termination of the licensing

14   agreement, Koren had gone radio silent, leading SPAVI to

15   believe that it no longer was interested in negotiating a

16   license. Therefore, SPAVI had no option, but to terminate

17   Counterclaimants license of the Potato Corner Intellectual

18   Property. Additional evidence includes: Testimony of

19   Gregorio (Plaintiff's CEO), Magsaysay (Cinco's CEO),

20   Koren, Ybanez (Plaintiff's General Counsel), Tan

21   (Director responsible for international franchising); and

22   emails and correspondence during the negotiation of the

23   terms of the license agreement

24        vi.   PCJV USA Parties' Supporting Evidence: SPAVI parties

25   have not articulated their defense beyond what is included

26   in their Answers. As it is articulated there, PCJV Parties

27   cannot determine the factual basis for the defense.  As

28

154

1    such, the out of an abundance of caution, PCJV Parties

2    incorporate by reference all of the evidence cited in

3    support of their causes of action.

4    4)  **Affirmative Defense No. 4** Failure to Mitigate  Damages (asserted by

5    Counterclaim Defendant and Third Party Defendants as to all claims

6    alleged against them)

7        a.  Element No. 1: That the party seeking the damage award failed to

8            use reasonable efforts to mitigate damages

9                i.  This element is disputed

10               ii.  Nature of Dispute: factual

11              iii.  <u>Plaintiff's Supporting Evidence:</u> Both the JVA and AJVA

12                   contain an agreement to agree on a Master License

13                   Agreement. There was never a written license agreement

14                   between Counterclaimants and counter defendants or third

15                   party defendants for the use of the Potato Corner

16                   Intellectual Property. Counterclaimants entered into a

17                   negotiation process with Cinco, prior to SPAVI's

18                   acquisition of the Potato Corner brand and all of the

19                   Potato Corner Intellectual Property from Cinco, for the

20                   terms of a license to use the Potato Corner Intellectual

21                   Property. These negotiations began before SPAVI

22                   purchased the rights to the Potato Corner IP. So,

23                   Counterclaimants have been aware of the lack of

24                   ownership rights in the Potato Corner Intellectual

25                   Property and the non-existence of a written agreement.

26                   Then, between December of 2021 through 2024, the

27                   months immediately preceding the filing of this action,

28

1    SPAVI engaged in a good faith and exhaustive attempt to
2    negotiate the terms of a written license with
3    Counterclaimants as well. Never once did
4    Counterclaimants state that they had ownership rights to
5    the Potato Corner Intellectual Property, and SPAVI relied
6    on that representation because had one been expressed,
7    that would have been a dispute as to the ownership rights
8    to which SPAVI would have filed this lawsuit sooner.
9    Moreover, Guy Koren refused to engage in reasonable
10   and good faith negotiation, which would have led to the
11   execution of a licensing agreement. Instead, he only
12   offered royalty rates and license fees that were more than
13   90% below what Koren had agreed to be reasonable
14   licensing fees over a decade prior. Koren also repeatedly
15   disengaged from the negotiation process, but still was
16   utilizing the Potato Corner Intellectual Property. In the
17   three months prior to the termination of the licensing
18   agreement, Koren had gone radio silent, leading SPAVI to
19   believe that it no longer was interested in negotiating a
20   license. Therefore, SPAVI had no option, but to terminate
21   Counterclaimants license to use the Potato Corner
22   Intellectual Property. Additional evidence includes:
23   Notarized Deeds signed by seller and buyer; USPTO
24   filings including Registrations and Assignments;
25   Testimony of Gregorio (Plaintiff's CEO), Magsaysay
26   (Cinco's CEO), Koren, Ybanez (Plaintiff's General
27   Counsel), Tan (Director responsible for international

28

1      franchising); May 31, 2024 Termination Letter; and

2      emails and correspondence during the negotiation of the

3      terms of the license agreement.

4          iv.   Defendants' Supporting Evidence: SPAVI parties have

5                not articulated their defense beyond what is included in

6                their Answers until 7am on August 12, 2025. *See* n. 1. As

7                it is articulated in the Answers, PCJV Parties cannot

8                determine the factual basis for the defense.  As such, the

9                out of an abundance of caution, PCJV Parties incorporate

10               by reference all of the evidence cited in support of their

11               causes of action

12     b.  Element No. 2: the amount, if any, by which damages have been

13         mitigated

14          i.   This element is disputed

15          ii.  <u>Nature of Dispute:</u> factual

16          iii. <u>Plaintiff's Supporting Evidence:</u> Had Counterclaimants

17               negotiated in good faith, SPAVI would have executed a

18               license agreement and not terminated the licensing

19               agreement. The amount of alleged damage resulting from

20               the termination of the license agreement could have been

21               mitigated. Additional evidence includes: Amended Joint

22               Venture Agreement and Joint Venture Agreement;

23               Testimony of Koren, Plaintiff executives Gregorio

24               (Plaiuntiff's CEO), Concepcion (Plaintiff's COO charged

25               with US operations), Tan (Director responsible for

26               international franchising); Emails and correspondence

27               with SPAVI, Koren, and PCJV relating to negotiations of

28

157

~~JOINTLY FILED CLAIMS TO BE TRIED~~SECOND
AMENDED JOINTLY FILED CLAIMS,
COUNTERCLAIMS, THIRD PARTY CLAIMS, AND
AFFIRMATIVE DEFENSES TO BE TRIED
~~175468760.1~~

CASE NO. 2:24-CV-04546-SB(AGRX)

1          a licensing agreement for the use of the Potato Corner

2          Intellectual Property; Financial documents of

3          Counterclaimants; May 31, 2024 Termination Letter

4     iv.   Defendants' Supporting Evidence: SPAVI parties have

5          not articulated their defense beyond what is included in

6          their Answers until 7am on August 12, 2025. *See* n. 1. As

7          it is articulated in the Answers, PCJV Parties cannot

8          determine the factual basis for the defense.  As such, the

9          out of an abundance of caution, PCJV Parties incorporate

10         by reference all of the evidence cited in support of their

11         causes of action

12  5) **Affirmative Defense No. 5:** Immunity (asserted by SPAVI as to all

13     claims alleged against it)

14     a.  <u>Element No. 1</u> – That Counterclaim Defendant had a legitimate

15         economic interest and thus shielded from liability in pursuit of its own

16         lawful business interests

17         i.   This element is disputed

18         ii.  Nature of Dispute: Legal and factual

19         iii. <u>PCJV USA Parties' Position Statement:</u> PCJV USA

20              Parties cannot articulate a response to this affirmative

21              defense because SPAVI Parties did not provide their

22              statement of what the applicable elements are or their

23              positions regarding those elements.  They have otherwise

24              not articulated how this affirmative defense applies

25              beyond their Answers.

26         iv.  <u>Plaintiff's Supporting Evidence:</u> In December 2021,

27              SPAVI entered into a transaction to acquire the Potato

28

---

158

1    Corner Intellectual Property, including the Potato Corner
2    Standard Characters Mark and the Potato Corner Logo
3    Mark, and all of the rights thereto, from Cinco. That
4    transaction closed during the first half of 2022. As such,
5    SPAVI had an economic interest in the Potato Corner
6    Intellectual Property. Additional evidence includes:
7    Notarized Deeds signed by seller and buyer; USPTO
8    filings including Registrations and Assignments,
9    testimony of Gregorio (Plaintiff's CEO), Magsaysay
10    (Cinco's CEO), Tan (Director responsible for
11    international franchising)
12        v. PCJV USA Parties' Supporting Evidence: SPAVI parties
13        have not articulated their defense beyond what is included
14        in their Answers. As it is articulated there, PCJV Parties
15        cannot determine the factual basis for the defense.  As
16        such, the out of an abundance of caution, PCJV Parties
17        incorporate by reference all of the evidence cited in
18        support of their causes of action.
19    6) **Affirmative Defense No. 6**: Privilege (asserted by SPAVI as to all claims
20        alleged against it)
21        a. Element No. 1 – That Counterclaim Defendant had a legitimate
22            economic interest
23            i. This element is disputed
24            ii. Nature of Dispute: legal and factual
25            iii. Defendants' Position Statement: SPAVI parties have not
26                articulated their defense beyond what is included in their
27                Answers. *See* n. 1. As it is articulated in the Answers,

CASE NO. 2:24-CV-04546-SB(AGRX)

1      PCJV Parties cannot determine the legal basis for the

2      defense

3      iv. <u>Plaintiff's Supporting Evidence:</u> In December 2021,

4      SPAVI entered into a transaction to acquire the Potato

5      Corner Intellectual Property, including the Potato Corner

6      Standard Characters Mark and the Potato Corner Logo

7      Mark, and all of the rights thereto, from Cinco. That

8      transaction closed during the first half of 2022. As such,

9      SPAVI had an economic interest in the Potato Corner

10     Intellectual Property. Additional evidence includes:

11     Notarized Deeds signed by seller and buyer; USPTO

12     filings including Registrations and Assignments,

13     testimony of Gregorio (Plaintiff's CEO), Magsaysay

14     (Cinco's CEO), Tan (Director responsible for

15     international franchising)

16     v. <u>Defendants' Supporting Evidence:</u> SPAVI parties have

17     not articulated their defense beyond what is included in

18     their Answers until 7am on August 12, 2025. *See* n. 1. As

19     it is articulated in the Answers, PCJV Parties cannot

20     determine the factual basis for the defense.  As such, the

21     out of an abundance of caution, PCJV Parties incorporate

22     by reference all of the evidence cited in support of their

23     causes of action

24     b. <u>Element No. 2</u> – That Counterclaim Defendant acted only to protect its

25     own economic interest.

26     i. This element is disputed

27     ii. Nature of Dispute: legal and factual

28

iii. Defendants' Position Statement: SPAVI parties have not articulated their defense beyond what is included in their Answers. *See* n. 1. As it is articulated in the Answers, PCJV Parties cannot determine the legal basis for the defense.

iv. Plaintiff's Supporting Evidence: Counterclaimant have no evidence of a written license to use SPAVI's Potato Corner Intellectual Property, and, as such, its rights (that it has sold to its franchisees) derive from what is, at best, a terminable at will, fully revocable license because Defendants were nonetheless operating Potato Corner locations, as if a written license existed. *See Pogrebnoy v. Russian Newspaper Distribution, Inc.,* 289 F. Supp. 3d 1061, 1070 (C.D. Cal. 2017), aff'd, 742 F. App'x 291 (9th Cir. 2018) ("[A]n implied license, like any other contract, is terminable at the will of either party if it is not for a specified term."). After SPAVI's acquisition of the Potato Corner brand, it became the licensor of the Potato Corner Intellectual Property. Between December of 2021 through 2024, the months immediately preceding this action, SPAVI engaged in a good faith and exhaustive attempt to negotiate the terms of a written license with PCJV. Defendant Guy Koren engaged and participated in this negotiation, but was unwilling to agree to any minimally commercially viable licensing terms. Therefore, Plaintiff had no option to terminate the license of the Potato Corner Intellectual Property. Additional evidence

161
JOINTLY FILED CLAIMS TO BE TRIEDSECOND AMENDED JOINTLY FILED CLAIMS, COUNTERCLAIMS, THIRD PARTY CLAIMS, AND AFFIRMATIVE DEFENSES TO BE TRIED
175468760.1

CASE NO. 2:24-CV-04546-SB(AGRX)

**Formatted:** Font: 14 pt

1    includes: Testimony of Koren, Plaintiff executives

2    Gregorio (Plaiuntiff's CEO), Concepcion (Plaintiff's

3    COO charged with US operations), Tan (Director

4    responsible for international franchising), Magsaysay

5    (Cinco's CEO); Emails and correspondence with SPAVI,

6    Koren, and PCJV relating to negotiations of a licensing

7    agreement for the use of the Potato Corner Intellectual

8    Property; Amended Joint Venture Agreement; Franchise

9    Agreements; FDDs; Trial Exhibit 29 (May 31, 2024

10    Termination)

11    v. Defendants' Supporting Evidence: SPAVI parties have

12    not articulated their defense beyond what is included in

13    their Answers until 7am on August 12, 2025. *See* n. 1. As

14    it is articulated in the Answers, PCJV Parties cannot

15    determine the factual basis for the defense.  As such, the

16    out of an abundance of caution, PCJV Parties incorporate

17    by reference all of the evidence cited in support of their

18    causes of action.

19    c. <u>Element No. 3</u> – That Counterclaim Defendant acted reasonably and in

20    good faith to protect it.

21    i. This element is disputed

22    ii. Nature of Dispute: legal and factual

23    iii. Defendants' Position Statement: SPAVI parties have not

24    articulated their defense beyond what is included in their

25    Answers. *See* n. 1. As it is articulated in the Answers,

26    PCJV Parties cannot determine the legal basis for the

27    defense.

28

iv. <u>Plaintiff's Supporting Evidence:</u> Counterclaimant have no
evidence of a written license to use SPAVI's Potato
Corner Intellectual Property, and, as such, its rights (that
it has sold to its franchisees) derive from what is, at best,
a terminable at will, fully revocable license because
Defendants were nonetheless operating Potato Corner
locations, as if a written license existed. *See Pogrebnoy v.*
*Russian Newspaper Distribution, Inc.,* 289 F. Supp. 3d
1061, 1070 (C.D. Cal. 2017), aff'd, 742 F. App'x 291 (9th
Cir. 2018) ("[A]n implied license, like any other contract,
is terminable at the will of either party if it is not for a
specified term."). After SPAVI's acquisition of the Potato
Corner brand, it became the licensor of the Potato Corner
Intellectual Property. Between December of 2021 through
2024, the months immediately preceding this action,
SPAVI engaged in a good faith and exhaustive attempt to
negotiate the terms of a written license with PCJV.
Defendant Guy Koren engaged and participated in this
negotiation, but was unwilling to agree to any minimally
commercially viable licensing terms. Therefore, Plaintiff
had no option to terminate the license of the Potato
Corner Intellectual Property. Additional evidence
includes: Testimony of Koren, Plaintiff executives
Gregorio (Plaiuntiff's CEO), Concepcion (Plaintiff's
COO charged with US operations), Tan (Director
responsible for international franchising), Magsaysay
(Cinco's CEO); Emails and correspondence with SPAVI,

1  Koren, and PCJV relating to negotiations of a licensing

2  agreement for the use of the Potato Corner Intellectual

3  Property; Amended Joint Venture Agreement; Franchise

4  Agreements; FDDs; Trial Exhibit 29 (May 31, 2024

5  Termination)

6    v.  Defendants' Supporting Evidence: SPAVI parties have

7  not articulated their defense beyond what is included in

8  their Answers until 7am on August 12, 2025. *See* n. 1. As

9  it is articulated in the Answers, PCJV Parties cannot

10  determine the factual basis for the defense.  As such, the

11  out of an abundance of caution, PCJV Parties incorporate

12  by reference all of the evidence cited in support of their

13  causes of action.

14  7)  **Affirmative Defense No. 7:** Unclean Hands (asserted by Counterclaim

15  Defendant and Third Party Defendants as to all claims alleged against

16  them)

17    a.  <u>Element No. 1</u>: Counterclaimant engaged in inequitable and/or

18  unethical behavior that bars it from seeking relief

19      i.  This element is disputed

20      ii.  Nature of Dispute: factual

21     iii.  <u>Plaintiff's Supporting Evidence:</u> Counterclaimants have at

22  best, a terminable at will, fully revocable license because

23  Defendants were nonetheless operating Potato Corner

24  locations, as if a written license existed. *See Pogrebnoy v.*

25  *Russian Newspaper Distribution, Inc.,* 289 F. Supp. 3d

26  1061, 1070 (C.D. Cal. 2017), aff'd, 742 F. App'x 291 (9th

27  Cir. 2018) ("[A]n implied license, like any other contract,

28

1    is terminable at the will of either party if it is not for a
2    specified term."). Despite using the Potato Corner
3    Intellectual Property for over a decade, Counterclaimants
4    have never once paid a single cent of a licensing for its
5    use to Cinco nor SPAVI. Counterclaimants have used
6    Cinco's, and after the asset purchase, SPAVI's trademark
7    without compensation to either party. Additional evidence
8    includes: Financial statements of Counterclaimants
9    evidence that no licensing fees have ever been paid;
10   Notarized Deeds signed by seller and buyer; USPTO
11   filings including Registrations and Assignments;
12   Testimony of Gregorio (Plaintiff's CEO), Magsaysay
13   (Cinco's CEO), Koren, Ybanez (Plaintiff's General
14   Counsel), Tan (Director responsible for international
15   franchising), Concepcion (Plaintiff's COO charged with
16   US operations); emails and correspondence with Cinco,
17   SPAVI, Koren, and PCJV relating to negotiations of a
18   licensing agreement

19   iv.   Defendants' Supporting Evidence: SPAVI parties have
20         not articulated their defense beyond what is included in
21         their Answers until 7am on August 12, 2025. *See* n. 1. As
22         it is articulated in the Answers, PCJV Parties cannot
23         determine the factual basis for the defense.  As such, the
24         out of an abundance of caution, PCJV Parties incorporate
25         by reference all of the evidence cited in support of their
26         causes of action. Also, the state court preliminary
27         injunction (holding that Cinco Corporation was not likely

28

---

165

1    to prevail on prior claims of wrongdoing); confidential

2    settlement communications do not support allegations;

3    Cinco Corporation's settlement and release of prior

4    allegations of wrongdoing.

5    8) **<u>Affirmative Defense No. 8</u>:** Waiver (asserted by Counterclaim Defendant

6    and Third Party Defendants as to all claims alleged against them)

7    a. <u>Element No. 1</u>: Through implied and/or express conduct,

8    Counterclaimants knowingly waived a valid right, privilege,

9    advantage, or benefit allegedly conferred upon it and its attempt to

10   enforce that right, privilege, advantage, or benefit is thus barred.

11   i.  This element is disputed

12   ii.  Nature of Dispute: factual

13   vii. <u>Plaintiff's Supporting Evidence:</u> Both the JVA and AJVA

14   contain an agreement to agree on a Master License

15   Agreement. There was never a written license agreement

16   between Counterclaimants and counter defendants or third

17   party defendants. Counterclaimant entered into a

18   negotiation process with Cinco, prior to SPAVI's

19   acquisition of the Potato Corner brand and all of the

20   Potato Corner Intellectual Property from Cinco, for the

21   terms of a license to use the Potato Corner Intellectual

22   Property. These negotiations began before SPAVI

23   purchased the rights to the Potato Corner IP. So,

24   Counterclaimants have been aware of the lack of

25   ownership rights in the Potato Corner Intellectual

26   Property and the non-existence of a written agreement.

27   Then, between December of 2021 through 2024, the

28

1    months immediately preceding the filing of this action,

2    SPAVI engaged in a good faith and exhaustive attempt to

3    negotiate the terms of a written license with

4    Counterclaimants as well. Never once did

5    Counterclaimants state that they had ownership rights to

6    the Potato Corner Intellectual Property, and SPAVI relied

7    on that representation because had one been expressed,

8    that would have been a dispute as to the ownership rights

9    to which SPAVI would have filed this lawsuit sooner.

10    Instead, Counterclaimants and Counter Defendants

11    continued to negotiate the terms of a license to use the

12    Potato Corner Intellectual Property. Additional evidence

13    includes: Notarized Deeds signed by seller and buyer;

14    USPTO filings including Registrations and Assignments;

15    Testimony of Gregorio (Plaintiff's CEO), Magsaysay

16    (Cinco's CEO), Koren, Ybanez (Plaintiff's General

17    Counsel), Tan (Director responsible for international

18    franchising); and emails and correspondence during the

19    negotiation of the terms of the license agreement.

20    iii.    Defendants' Supporting Evidence: SPAVI parties have

21    not articulated their defense beyond what is included in

22    their Answers until 7am on August 12, 2025. *See* n. 1. As

23    it is articulated in the Answers, PCJV Parties cannot

24    determine the factual basis for the defense.  As such, the

25    out of an abundance of caution, PCJV Parties incorporate

26    by reference all of the evidence cited in support of their

27    causes of action. The state court preliminary injunction

28

1    (enjoining Cinco Corporation from interfering with

2    PCJV's President's control over Potato Corner in the

3    United States and communicating with its franchisees);

4    confidential settlement communications do not support

5    any waiver, as Defendants never waived any rights but

6    were trying to settle disputes; Cinco Corporation's

7    settlement and release of prior allegations and transfer of

8    the very interests, rights and obligations over which the

9    parties are now litigating.

10    9) **Affirmative Defense No. 9:** Comparative Fault (asserted by

11    Counterclaim Defendant SPAVI as to the negligent interference with

12    prospective economic relations claim)

13    a. Element No. 1: That Counterclaimant was negligent

14    i. This element is disputed

15    ii. Nature of Dispute: factual

16    iii. Plaintiff's Supporting Evidence: Both the JVA and AJVA

17    contain an agreement to agree on a Master License

18    Agreement. As such, there was no written license

19    agreement. Counterclaimant entered into a negotiation

20    process with Cinco, prior to SPAVI's acquisition of the

21    Potato Corner brand and all of the Potato Corner

22    Intellectual Property from Cinco, for the terms of a

23    license to use the Potato Corner Intellectual Property.

24    These negotiations began before SPAVI purchased the

25    rights to the Potato Corner IP. So, Counterclaimants have

26    been aware of the lack of ownership rights in the Potato

27    Corner Intellectual Property and the non-existence of a

28

1    written agreement. Then, between December of 2021
2    through 2024, the months immediately preceding this
3    action, SPAVI engaged in a good faith and exhaustive
4    attempt to negotiate the terms of a written license with
5    PCJV as well. Never once did Counterclaimants state that
6    they had ownership rights to the Potato Corner
7    Intellectual Property, and SPAVI relied on that
8    representation because had one been expressed, that
9    would have been a dispute as to the ownership rights to
10   which SPAVI would have filed this lawsuit sooner.
11   Moreover, Guy Koren could have, but refused to, engage
12   in reasonable and good faith negotiation. Instead, he only
13   offered royalty rates and license fees that were more than
14   90% below what Koren had agreed to be reasonable
15   licensing fees over a decade prior. Koren also repeatedly
16   disengaged from the negotiation process, but still was
17   utilizing the Potato Corner Intellectual Property.
18       Additional evidence includes: Notarized Deeds signed by
19       seller and buyer; USPTO filings including Registrations
20       and Assignments; Testimony of Gregorio (Plaintiff's
21       CEO), Magsaysay (Cinco's CEO), Koren, Ybanez
22       (Plaintiff's General Counsel), Tan (Director responsible
23       for international franchising); and emails and
24       correspondence during the negotiation of the terms of the
25       license agreement.
26   iv. Defendants' Supporting Evidence: SPAVI parties have
27       not articulated their defense beyond what is included in

1    their Answers until 7am on August 12, 2025. *See* n. 1. As

2    it is articulated in the Answers, PCJV Parties cannot

3    determine the factual basis for the defense.  As such, the

4    out of an abundance of caution, PCJV Parties incorporate

5    by reference all of the evidence cited in support of their

6    causes of action. The state court preliminary injunction

7    (enjoining Cinco Corporation from interfering with

8    PCJV's President's control over Potato Corner in the

9    United States and communicating with its franchisees); at

10   all relevant times Defendants exercised control over

11   Potato Corner in the United States and did not change the

12   status quo between the parties, including in dealings with

13   Plaintiff and Plaintiff's predecessor.

14   b.  <u>Element No. 2</u>: That Counterclaimant's negligence was a substantial

15       factor in causing its harm.

16            i.  This element is disputed

17           ii.  Nature of Dispute: factual

18          iii.  <u>Plaintiff's Supporting Evidence:</u> Guy Koren could have,

19                but refused to, engage in reasonable and good faith

20                negotiation. Instead, he only offered royalty rates and

21                license fees that were more than 90% below what Koren

22                had agreed to be reasonable licensing fees over a decade

23                prior. Koren also repeatedly disengaged from the

24                negotiation process, but still was utilizing the Potato

25                Corner Intellectual Property. In light of the two year

26                negotiation process that went nowhere, and

27                Counterclaimant no furnishing any consideration

28

170

1    whatsoever in exchange for the use of the Potato Corner
2    Intellectual Property, SPAVI concluded that it exhausted
3    all efforts to negotiate a license agreement with
4    Counterclaimants. As such, SPAVI had no choice by to
5    terminate Counterclaimants licensing agreement.
6    Additional supporting evidence includes: Notarized
7    Deeds signed by seller and buyer; USPTO filings
8    including Registrations and Assignments; Testimony of
9    Gregorio (Plaintiff's CEO), Magsaysay (Cinco's CEO),
10   Koren, Ybanez (Plaintiff's General Counsel), Tan
11   (Director responsible for international franchising); May
12   31, 2024 Termination Letter; and emails and
13   correspondence during the negotiation of the terms of the
14   license agreement.

15      iv.  Defendants' Supporting Evidence: SPAVI parties have
16        not articulated their defense beyond what is included in
17        their Answers until 7am on August 12, 2025. *See* n. 1. As
18        it is articulated in the Answers, PCJV Parties cannot
19        determine the factual basis for the defense.  As such, the
20        out of an abundance of caution, PCJV Parties incorporate
21        by reference all of the evidence cited in support of their
22        causes of action. The state court preliminary injunction
23        (enjoining Cinco Corporation from interfering with
24        PCJV's President's control over Potato Corner in the
25        United States and communicating with its franchisees); at
26        all relevant times Defendants exercised control over
27        Potato Corner in the United States and did not change the

28

1    status quo between the parties, including in dealings with

2    Plaintiff and Plaintiff's predecessor

3    10)    **Affirmative Defense No. 10:** Lack or Inadequacy of Consideration

4    (asserted by Counterclaim Defendant and Third Party Defendants as to all

5    claims alleged against them)

6    a. <u>Element No. 1:</u> Counterclaimant has failed or refused to provide

7    anything of value in exchange for the use of SPAVI's license to use

8    the Potato Corner Intellectual Property

9        i. This element is disputed

10       ii. Nature of Dispute: factual

11      iii. <u>Plaintiff's Supporting Evidence:</u> Despite using the Potato

12          Corner Intellectual Property for over a decade,

13          Counterclaimants have never once paid a single cent of a

14          licensing fee for its use to Cinco nor SPAVI.

15          Counterclaimants have used Cinco's, and after the asset

16          purchase, SPAVI's trademark without compensation to

17          either party. Additional evidence includes: Financial

18          statements of Counterclaimants evidence that no licensing

19          fees have ever been paid; Notarized Deeds signed by

20          seller and buyer; USPTO filings including Registrations

21          and Assignments; Testimony of Gregorio (Plaintiff's

22          CEO), Magsaysay (Cinco's CEO), Koren, Ybanez

23          (Plaintiff's General Counsel), Tan (Director responsible

24          for international franchising), Concepcion (Plaintiff's

25          COO charged with US operations); JVA and AJVA;

26          emails and correspondence with Cinco, SPAVI, Koren,

27          and PCJV relating to negotiations of a licensing

28

---

172

1        agreement

2            iv.  Defendants' Supporting Evidence: SPAVI parties have

3                not articulated their defense beyond what is included in

4                their Answers until 7am on August 12, 2025. *See* n. 1. As

5                it is articulated in the Answers, PCJV Parties cannot

6                determine the factual basis for the defense.  As such, the

7                out of an abundance of caution, PCJV Parties incorporate

8                by reference all of the evidence cited in support of their

9                causes of action

10   11)    **Affirmative Defense No. 11**: Abandonment or Mutual Recession of

11       Contract (asserted by Counterclaim Defendant and Third Party

12       Defendants as to all claims alleged against them)

13       a.  Element No. 1: Counterclaimants license to use the Potato Corner

14           Intellectual Property was effectively terminated by mutual consent or

15           that Counterclaimants actions led SPAVI to believe that it was

16           abandoned.

17            i.  This element is disputed.

18            ii.  Nature of Dispute: factual

19            iii.  Plaintiff's Supporting Evidence: Counterclaimants have

20                no evidence of a written license to use SPAVI's Potato

21                Corner Intellectual Property, and, as such, its rights (that

22                it has sold to its franchisees) derive from what is, at best,

23                a terminable at will, fully revocable license because

24                Defendants were nonetheless operating Potato Corner

25                locations, as if a written license existed. *See Pogrebnoy v.*

26                *Russian Newspaper Distribution, Inc.,* 289 F. Supp. 3d

27                1061, 1070 (C.D. Cal. 2017), aff'd, 742 F. App'x 291 (9th

28                                                    173

1    Cir. 2018) ("[A]n implied license, like any other contract,
2    is terminable at the will of either party if it is not for a
3    specified term."). After SPAVI's acquisition of the Potato
4    Corner brand, it became the licensor of the Potato Corner
5    Intellectual Property. Between December of 2021 through
6    2024, the months immediately preceding this action,
7    SPAVI engaged in a good faith and exhaustive attempt to
8    negotiate the terms of a written license with PCJV.
9    Defendant Guy Koren engaged and participated in this
10   negotiation, but was unwilling to agree to any minimally
11   commercially viable licensing terms. Moreover, Guy
12   Koren refused to, engage in reasonable and good faith
13   negotiation. Instead, he only offered royalty rates and
14   license fees that were more than 90% below what Koren
15   had agreed to be reasonable licensing fees over a decade
16   prior. Koren also repeatedly disengaged from the
17   negotiation process, but still was utilizing the Potato
18   Corner Intellectual Property. In the three months prior to
19   the termination of the licensing agreement, Koren had
20   gone radio silent, leading SPAVI to believe that it no
21   longer was interested in negotiating a license. Therefore,
22   SPAVI had no option, but to terminate Coutnerclaimants
23   license of the Potato Corner Intellectual Property.
24   Additional evidence includes: Testimony of Koren,
25   Plaintiff executives Gregorio (Plaiuntiff's CEO),
26   Concepcion (Plaintiff's COO charged with US
27   operations), Tan (Director responsible for international

28

174

franchising), Magsaysay (Cinco's CEO); Emails and

correspondence with SPAVI, Koren, and PCJV relating to

negotiations of a licensing agreement for the use of the

Potato Corner Intellectual Property; Amended Joint

Venture Agreement; Franchise Agreements; FDDs; Trial

Exhibit 29 (May 31, 2024 Termination)

iv. Defendants' Supporting Evidence: SPAVI parties have

not articulated their defense beyond what is included in

their Answers until 7am on August 12, 2025. *See* n. 1. As

it is articulated in the Answers, PCJV Parties cannot

determine the factual basis for the defense.  As such, the

out of an abundance of caution, PCJV Parties incorporate

by reference all of the evidence cited in support of their

causes of action. Defendants settled with Plaintiff's

predecessor and acquired all of Plaintiff's predecessor's

interests in PCJV and all "attached" rights; it did not

abandon any rights or obligations under PCJV USA,

LLC's governing documents.

**IV.    Adjudication of Causes of Action, Counter Claims, Third Party Claims, and Affirmative Defenses Not to be Decided by a Jury**

The parties request adjudication of the following causes of action, counter claims, third party claims, and affirmative defenses in the following manner and at the following time:

1) At the conclusion of trial, Plaintiff will seek a permanent injunction and declaratory relief with this Court, as well as for additional relief under the Lanham Act reserved for this Court. At that time, depending on the jury's

175

JOINTLY FILED CLAIMS TO BE TRIEDSECOND
AMENDED JOINTLY FILED CLAIMS,
COUNTERCLAIMS, THIRD PARTY CLAIMS, AND
AFFIRMATIVE DEFENSES TO BE TRIED
175468760.1

CASE NO. 2:24-CV-04546-SB(AGRX)

1    ~~reaction to the § 1125 unfair competition claim, Plaintiff will present that~~

2    ~~equitable claim to this Court. Plaintiff will also present at that time its~~

3    ~~affirmative defense of "One Who Seeks Equity Must Do Equity."~~

4    ~~2)~~1)    PCJV USA Parties request the Court to adjudicate PCJV USA Parties'

5    following causes of action at the conclusion of trial:  (1) Declaratory

6    Relief; and (2) Violations of Business & Professions Code §§ 17200, et

7    *seq*

8    ~~3)~~2)    PCJV USA Parties request the Court to adjudicate PCJV USA Parties'

9    following affirmative defenses at the conclusion of trial: (1) failure to

10   state a claim; (2) consent/acquiescence, ratification, promissory estoppel,

11   equitable estoppel, and judicial estoppel; (3) unclean hands; (4) laches, (5)

12   fraud on USPTO, (6) authorized use, (7) public availability of trade

13   secrets, and (8) lack of at will license agreement

14   The parties abandoned the following claims:

15       1) PCJV USA Parties abandon their Accounting cause of action.

16       2) SPAVI Parties are no longer pursuing the claim for unregistered

17       trademarks.

**Formatted:** Font: 14 pt

**Formatted:** Line spacing:  Exactly 12 pt

26   Dated:  August ~~12~~22, 2025          */s/ Matthew Follett*

27                                          Michael D. Murphy

28                                          Matthew Follett



Jessica Nwasike
Fox Rothschild LLP
*Attorneys for Plaintiff and
Counterclaim Defendant, and Third
Party Defendants*

~~Dated:  August 12, 2025~~

~~Arash Beral~~
~~Todd M. Malynn~~
~~Blank Rome LLP~~
~~*Attorneys for Defendants,
Counterclaimants, and Third Party
Plaintiffs*~~

DATED:  August 22, 2025    **BLANK ROME LLP**

By:*/s/ Todd M. Malynn*
Todd M. Malynn
Arash Beral
Jamison T. Gilmore
Attorneys for Defendants, Counterclaimants,
and Third Party Plaintiffs PCJV USA, LLC,
PCI TRADING LLC, POTATO CORNER,
LA GROUP, LLC, GK CAPITAL GROUP,
LLC, NKM CAPITAL GROUP, LLC and
GUY KOREN, and Defendants J & K
AMERICANA, LLC, J&K LAKEWOOD,
LLC, J&K OAKRIDGE, LLC, J&K
VALLEY FAIR, LLC, J & K ONTARIO,
LLC, J&K PC TRUCKS, LLC, HLK
MILPITAS, LLC, and GK CERRITOS,
LLC

~~JOINTLY FILED CLAIMS TO BE TRIED~~SECOND
AMENDED JOINTLY FILED CLAIMS,
COUNTERCLAIMS, THIRD PARTY CLAIMS, AND
AFFIRMATIVE DEFENSES TO BE TRIED
~~175468760.1~~

CASE NO. 2:24-CV-04546-SB(AGRX)

**ATTESTATION OF E-FILED SIGNATURE**

Pursuant to Civil Local Rule 5-4.3.4(a)(2)(i), I, Todd M. Malynn, hereby attest that I have obtained concurrence in the filing of this document from the other signatories to this document. I declare under penalty of perjury under the laws of United States of America that the foregoing is true and correct.

DATED: August 22, 2025          **BLANK ROME LLP**


                                By: *Todd M. Malynn*
                                    Todd M. Malynn
                                    Arash Beral
                                    Jamison T. Gilmore
                                Attorneys for Defendants, Counterclaimants, and Third Party Plaintiffs PCJV USA, LLC, PCI TRADING LLC, POTATO CORNER, LA GROUP, LLC, GK CAPITAL GROUP, LLC, NKM CAPITAL GROUP, LLC and GUY KOREN, and Defendants J & K AMERICANA, LLC, J&K LAKEWOOD, LLC, J&K OAKRIDGE, LLC, J&K VALLEY FAIR, LLC, J & K ONTARIO, LLC, J&K PC TRUCKS, LLC, HLK MILPITAS, LLC, and GK CERRITOS, LLC

---

178

JOINTLY FILED CLAIMS TO BE TRIEDSECOND AMENDED JOINTLY FILED CLAIMS, COUNTERCLAIMS, THIRD PARTY CLAIMS, AND AFFIRMATIVE DEFENSES TO BE TRIED
17546876O.1

CASE NO. 2:24-CV-04546-SB(AGRX)

## CERTIFICATE OF SERVICE

The undersigned certifies that, on ~~August 12, 2025,~~August 22, 2025, the foregoing document was electronically filed with the Clerk of the Court for the United States District Court, Central District of California, using the Court's Electronic Case Filing (ECF ~~filing~~) system.  I further certify that all ~~counsel for all parties to this action~~participants in the case are registered CM/ECF users and that service will be accomplished by the CM/ECF system.

_____ I certify under penalty of perjury that the foregoing is true and correct.

Executed on August 22, 2025.

~~Dated:  August 12, 2025~~                    ~~FOX ROTHSCHILD LLP~~

~~Michael D. Murphy~~
~~Attorneys for Plaintiff and Counterclaim Defendant SHAKEY'S PIZZA ASIA VENTURES, INC. and Third Party Defendants CINCO CORPORATION, PC INTERNATIONAL PTE LTD., and SPAVI INTERNATIONAL USA, INC.~~

By:   _/s/AJ Cruickshank_

~~JOINTLY FILED CLAIMS TO BE TRIED~~SECOND AMENDED JOINTLY FILED CLAIMS, COUNTERCLAIMS, THIRD PARTY CLAIMS, AND AFFIRMATIVE DEFENSES TO BE TRIED                    CASE NO. 2:24-CV-04546-SB(AGRX)
175468760.1