MICHAEL D. MURPHY (SBN 224678)
mdmurphy@foxrothschild.com
MATTHEW FOLLETT (SBN 325481)
mfollett@foxrothschild.com
JESSICA NWASIKE (SBN 343087)
jnwasike@foxrothschild.com
FOX ROTHSCHILD LLP
Constellation Place
10250 Constellation Boulevard, Suite 900
Los Angeles, California 90067
Telephone:  310.598.4150
Facsimile:   310.556.9828

Attorneys for Plaintiff and Counterclaim
Defendant SHAKEY'S PIZZA ASIA
VENTURES, INC. and Third Party Defendants
CINCO CORPORATION, PC
INTERNATIONAL PTE LTD., and SPAVI
INTERNATIONAL USA, INC.

# UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| SHAKEY'S PIZZA ASIA VENTURES, INC, a Philippines corporation,<br><br>Plaintiff,<br><br>v.<br><br>PCJV USA, LLC, a Delaware limited liability company; PCI TRADING, LLC, a Delaware limited liability company; GUY KOREN, an individual; POTATO CORNER LA GROUP, LLC, a California limited liability company; NKM CAPITAL GROUP, LLC, a California limited liability company; J & K AMERICANA, LLC, a California limited liability company; J&K LAKEWOOD, LLC, a California limited liability company; J&K VALLEY FAIR, LLC, a California limited liability company; J & K ONTARIO, LLC, a California limited liability company; HLK MILPITAS, LLC, a California, limited liability company; GK CERRITOS, LLC, a California, limited liability company; J&K PC TRUCKS, LLC, a California limited | Case No. 2:24-CV-04546-SB(AGRx)<br><br>*The Hon. Stanley Blumenfeld, Jr.*<br><br>**SECOND AMENDED JOINTLY FILED CLAIMS, COUNTERCLAIMS, THIRD PARTY CLAIMS, AND AFFIRMATIVE DEFENSES TO BE TRIED**<br><br>Complaint Filed:    May 31, 2024<br>Trial Date:         August 26, 2025 |

1

SECOND AMENDED JOINTLY FILED CLAIMS,
COUNTERCLAIMS, THIRD PARTY CLAIMS, AND
AFFIRMATIVE DEFENSES TO BE TRIED

CASE NO. 2:24-CV-04546-SB(AGRX)

| | |
|---|---|
| 1 | liability company; and, GK CAPITAL GROUP, LLC, a California limited liability |
| 2 | company and DOES 1 through 100, inclusive, |
| 3 | |
| 4 | Defendants. |

| | |
|---|---|
| 5 | PCJV USA, LLC, a Delaware limited liability company; PCI TRADING LLC, a |
| 6 | Delaware limited liability company; POTATO CORNER LA GROUP LLC, a |
| 7 | California limited liability company; GK CAPITAL GROUP, LLC, a California |
| 8 | limited liability company; NKM CAPITAL GROUP LLC, a California limited liability |
| 9 | company; and GUY KOREN, an individual, |
| 10 | |
| 11 | Counter-Claimants, |
| 12 | v. |
| 13 | SHAKEY'S PIZZA ASIA VENTURES, INC, a Philippines corporation, |
| 14 | Counter Defendant. |

| | |
|---|---|
| 15 | PCJV USA, LLC, a Delaware limited liability company; PCI TRADING LLC, a |
| 16 | Delaware limited liability company; POTATO CORNER LA GROUP LLC, a |
| 17 | California limited liability company; GK CAPITAL GROUP, LLC, a California |
| 18 | limited liability company; NKM CAPITAL GROUP LLC, a California limited liability |
| 19 | company; and GUY KOREN, an individual, |
| 20 | |
| 21 | Third Party Plaintiffs, |
| 22 | v. |
| 23 | PC INTERNATIONAL PTE LTD., a Singapore business entity; SPAVI |
| 24 | INTERNATIONAL USA, INC., a California corporation; CINCO |
| 25 | CORPORATION, a Philippines corporation; and DOES 1 through 10, |
| 26 | inclusive, |
| 27 | Third Party Defendants. |
| 28 | |

SECOND AMENDED JOINTLY FILED CLAIMS, COUNTERCLAIMS, THIRD PARTY CLAIMS, AND AFFIRMATIVE DEFENSES TO BE TRIED

CASE NO. 2:24-CV-04546-SB(AGRX)

1   Pursuant to Dkt. No. 254, the parties submit the following causes of action,
2   counterclaims, third party claims, and affirmative defenses as at issue for trial.

3   **I.    PLAINTIFF SHAKEY'S PIZZA ASIA VENTURE'S INC. ("SPAVI"**
4   **OR "PLAINTIFF"):  CLAIMS TO BE TRIED BY A JURY.**

5   **1)    <u>Claim 1: Trademark Infringement Against All Entity Defendants</u>**

6   (15 U.S.C. § 1114), regarding the three registered marks at issue: (1) U.S. Reg.
7   No. 5900257: the word mark "Potato Corner" ("Word Mark"); (2) U.S. Reg. No.
8   6088456 protecting "World's Best Flavored  French Fries (the "Slogan Mark"); and
9   (3) U.S. Reg. No. 3760041 (the "Logo Mark") protecting: 

10  a.    <u>Element No. 1</u>: the Word Mark, Slogan Mark, and/or the Logo
11        Mark (all collectively, the "Marks") are valid and protectible
12        trademarks:
13        1.    This element is not disputed
14  b.    <u>Element No. 2</u>: Plaintiff owns the Word Mark, Slogan Mark,
15        and/or the Logo Mark
16        1.    This element is disputed.
17        2.    <u>Nature of Dispute:</u> Legal and Factual
18        3.    <u>Plaintiff's Legal Position:</u> Defendants do not dispute that
19              the registrations for all three Marks (Trial Exhibit Nos. 1,
20              3, and 5) identify Cinco as the registrant and the first to use
21              each of the three Marks, nor do Defendants dispute that the
22              Deeds of Assignment attached to the notices filed with the
23              USPTO (Trial Exhibit Nos. 4 and 6) confirm that,
24              unequivocally  and without exception, the entirety of these
25              Marks were sold and assigned to Plaintiff, along with all
26              the goodwill arising out of or associated with the Marks.
27              Defendants also do not dispute the testimony of Seller

28

SECOND AMENDED JOINTLY FILED CLAIMS,                    CASE NO. 2:24-CV-04546-SB(AGRX)
COUNTERCLAIMS, THIRD PARTY CLAIMS, AND
AFFIRMATIVE DEFENSES TO BE TRIED

(Cinco) and Buyer (SPAVI) that the Deeds are accurate in every way, that the sale and assignments were comprehensive, without carve outs, and fully consummated. Instead, Defendants take internally inconsistent positions that are contradicted by various legal doctrine, including: **(1) Licensee Estoppel,** wherein PCJV (as well as all other Defendants that operate or own a business using the Marks), as a licensee of Cinco (and subsequently SPAVI) through the implied license or even the unsigned Master License Agreement claimed by Defendants to be binding "may not set up any adverse claim in it as against its licensor." *Pac. Supply Co-op. v. Farmers Union Cent. Exch. Inc.,* 318 F.2d 894, 908 (9th Cir. 1963). **(2) The Lanham Act provisions rendering Defendants' positions contrary to federal law**, in that Defendants' attempts to claim that the first time they used the Marks should be credited to them, even though they were acting as licensees of PCJV or Defendants' claim of ownership of the goodwill created through PCJV's stores (operated as licensees) inured to Defendants' benefit contradicts 15 USC § 1055 (as well as the unsigned Master License Agreement they claimed to be adhering to this whole time). **(3) Law of the case**, in that Defendants' challenge to Plaintiff's ownership of the Marks based on Defendants' first use as licensee of Cinco has already been resolved by this Court and the Ninth Circuit, which held that "it is undisputed that Cinco registered the three marks

SECOND AMENDED JOINTLY FILED CLAIMS, COUNTERCLAIMS, THIRD PARTY CLAIMS, AND AFFIRMATIVE DEFENSES TO BE TRIED

CASE NO. 2:24-CV-04546-SB(AGRX)

1    at issue then transferred ownership of those marks to

2    SPAVI." The Ninth Circuit then explicitly rejected PCJV's

3    theories that it was the first to use the marks domestically

4    by holding that "in the licensor-licensee context, a

5    licensee's use of a trademark inures to the benefit of the

6    licensor-registrant" (*Shakeys Pizza Asia Ventures, Inc. v.*

7    *PCJV USA, LLC*, No. 24-7084, 2025 WL 1431270, at *1

8    (9th Cir. May 19, 2025)), thus rendering, for example, any

9    allegation by PCJV of its use as a licensee as being proof

10   of its first use cannot serve as a basis to challenge SPAVI's

11   ownership because this theory has been considered and

12   rejected by the Ninth Circuit in this case, as has also the

13   various other legal theories of Defendants offered during

14   the injunction stage that are based on the same facts

15   asserted during the injunction and rejected by this Court.

16   Even at the injunction stage, rulings by this Court and the

17   Ninth Circuit "on pure issues of law, however, are

18   binding." *Ranchers Cattlemen Action Legal Fund United*

19   *Stockgrowers of Am. v. U.S. Dep't of Agr.*, 499 F.3d 1108,

20   1114 (9th Cir. 2007); s*ee, e.g. Arizona v. California*, 460

21   U.S. 605, 618 (1983) (citing the rule as being "when a court

22   decides upon a rule of law, that decision should continue to

23   govern the same issues in subsequent stages in the same

24   case"). **(4) Authorities cited by Defendants do not**

25   **support their position, including _Sengoku_**, which

26   presented a distinguishable case – a foreign manufacturer

27   that was the first to use versus the domestic distributor that

28

SECOND AMENDED JOINTLY FILED CLAIMS,                    CASE NO. 2:24-CV-04546-SB(AGRX)
COUNTERCLAIMS, THIRD PARTY CLAIMS, AND
AFFIRMATIVE DEFENSES TO BE TRIED

was the registrant, whereas in this case the foreign licensor is both the first to use and the registrant – and yet, Defendants continue to cite it as supporting their claim of ownership or rights, and it does not. **(5) The merger doctrine,** wherein the purchase and sale agreement between Cinco and SPAVI selling and agreeing to assign to SPAVI the Potato Corner marks and brand merge into the undisputed and unequivocal deeds that are notarized and ratified by Buyer and Seller (Trial Exhibit Nos. 4 and 6) such that these Deeds would control if there was any inconsistency between the purchase and sale agreement and the deed (there is not, as those agreements said nothing about and acknowledged no rights held by any of the Defendants), such that Defendants' speculative theory that the purchase and sale agreement between Cinco and SPAVI reserved some rights for Defendants cannot even be presented to the jury given that the Deeds do not reserve anything for Defendants – a doctrine that applies in federal intellectual property cases and renders any questions as to what the deal between SPAVI and Cinco actually said, irrelevant. *See, e.g., Palos Verdes Corp. v. Hous. Auth. of Los Angeles Cnty.,* 202 Cal. App. 2d 827, 836 (1962) (explaining that "if the language of a deed is plain, certain, and unambiguous, neither parol evidence nor surrounding facts and circumstances will be considered to add to, detract from, or vary its terms or to determine the estate conveyed); *B. F. Goodrich Co. v. A. T. I. Caribe, Inc.,* 366

SECOND AMENDED JOINTLY FILED CLAIMS,
COUNTERCLAIMS, THIRD PARTY CLAIMS, AND
AFFIRMATIVE DEFENSES TO BE TRIED

CASE NO. 2:24-CV-04546-SB(AGRX)

1   F. Supp. 464,467 (D. Del. 1973) (applying this concept in
2   the intellectual property context). **(6) Standing**, in that
3   none of the Defendants were party to the transaction
4   between Cinco and Plaintiff, and as such, have no standing
5   to question whether the Deeds (notarized and ratified)
6   represent the actual deal between Cinco and SPAVI or
7   some other imagined reservation of their rights supposedly
8   contained in the purchase and sale agreement that did not
9   make it into the Deeds (a fantasy that did not happen). *See,*
10  *e.g. Imperial Residential Design, Inc. v. Palms Dev. Grp.,*
11  *Inc.*, 70 F.3d 96, 99 (11th Cir. 1995) (agreeing that "that,
12  where there is no dispute between the copyright owner and
13  the transferee about the status of the copyright, it would be
14  unusual and unwarranted to permit a third-party infringer
15  to invoke [the requirement of a writing memorializing the
16  status] to avoid suit for copyright infringement."). **(7)**
17  **Judicial estoppel**, in his sworn allegations in the Prior
18  Governance Action (*Cinco Corporation et. al. v. Guy*
19  *Koren et. al.* Los Angeles Superior Court Case No.
20  BC701075), Koren admitted repeatedly including in
21  verified allegations that Cinco "owned the Potato Corner
22  brand" (Trial Exhibit No. 1421, ¶ 26), an allegation that
23  Cinco ***admitted*** (Trial Exhibit, No. 1422, ¶ 26.), such that
24  PCJV and Koren must be barred from making a "factual
25  assertion" that Cinco did not own  the  brand "which
26  directly contradicts an earlier assertion made in the same
27  proceeding or a prior one.'" Un*ited States v. Lence*, 466
28

SECOND AMENDED JOINTLY FILED CLAIMS,                    CASE NO. 2:24-CV-04546-SB(AGRX)
COUNTERCLAIMS, THIRD PARTY CLAIMS, AND
AFFIRMATIVE DEFENSES TO BE TRIED

1    F.3d 721, 726 (9th Cir. 2006) (citing and quoting *Russell v.*

2    *Rolfs,* 893 F.2d 1033, 1037 (9th Cir.1990)).

3        4.    <u>Defendants' Position Statement:</u> The ownership issues

4    framed by the Proposed Final Pretrial Conference Order

5    (Dkt. No. 244), the Memoranda of Contentions of Law and

6    Fact (Dkt. Nos. 197 and 199) and pleadings are: (1) senior

7    use under *Sengoku*, including actual first use (restructure in

8    2009) and lawful first use, *see CreAgri, Inc. v. USANA*

9    *Health Services, Inc.*, 474 F3d 626, 630 (9th Cir. 2007); (2)

10    continuous use under 15 U.S.C § 1055; (3) assignment in

11    gross; (4) acquisition of "attached" rights by the PCJV

12    USA Parties and Plaintiff's corresponding denial of

13    acquiring burdens attached to the trademarks; (5) naked

14    license; and (6) priority favoring Defendants based on

15    other defenses. Plaintiff's proffered statement is non-

16    responsive. It is a combative, inappropriate and false

17    narrative of Defendants' position, record evidence,

18    preliminary rulings and the ownership issues for trail as set

19    forth in the Proposed Final Pretrial Conference Order (Dkt.

20    No. 244), Memorandums of Contentions of Law and Fact

21    (Dkt. Nos. 197 and 199) and pleadings. "The court's

22    preliminary injunction did not make final factual

23    determinations; no party moved for summary judgment;

24    and the jury needs to be instructed on the claims asserted

25    in this case." Dkt. No. 254 at 2. Plaintiff's unpled defenses

26    of infringer standing, licensee estoppel, judicial estoppel,

27    and merger (parol evidence) doctrine are not issues for trial

28

SECOND AMENDED JOINTLY FILED CLAIMS,                    CASE NO. 2:24-CV-04546-SB(AGRX)
COUNTERCLAIMS, THIRD PARTY CLAIMS, AND
AFFIRMATIVE DEFENSES TO BE TRIED

per the Proposed Final Pretrial Conference Order (Dkt. No. 244) or Plaintiff's Memorandum of Contentions of Law and Fact (Dkt. No. 199). Plaintiff's asserted "legal positions," which seek to avoid a trial on the merits, are also based on inapplicable authority (or no authority at all) and misstate the record. For these reasons, including because Plaintiff's "legal positions" go beyond identifying the actual ownership issues set for trial, Defendants will address them if or when they arise after the evidence on ownership is presented at trial

5. **Plaintiff's Supporting Evidence:** Notarized Deeds signed by seller and buyer; USPTO filings including Registrations and Assignments, testimony of Gregorio (Plaintiff's CEO), Magsaysay (Cinco's CEO), Koren, Ybanez (Plaintiff's General Counsel), FDDs, Franchise Agreements.

6. **Defendants' Supporting Evidence:** documents and testimony including and related to (1) Defendants' senior use and quality control of Potato Corner in the United States; (2) the superseding partnership agreement; (3) DLA Piper's notification of Cinco Corporation's unlawful use of Potato Corner in the United States; (4) the State of California's Department of Business Oversight's Order sanctioning PCJV USA, LLC for Cinco Corporation's alleged prior use of Potato Corner in the United States; (5) the superseding and restructure agreement confirmed by Guy Koren and Jose Magsaysay vesting ownership of Potato Corner in their partnership; (6) the joint venture

SECOND AMENDED JOINTLY FILED CLAIMS, COUNTERCLAIMS, THIRD PARTY CLAIMS, AND AFFIRMATIVE DEFENSES TO BE TRIED

CASE NO. 2:24-CV-04546-SB(AGRX)

agreement vesting co-ownership of Potato Corner in the United States in PCJV USA, LLC; (7) control over Potato Corner in the United States being vested with and exercised by PCJV USA, LLC; (8) Potato Corner USA being affixed to Potato Corner in the United States; (9) consumer association of Potato Corner in the United States with PCJV USA, LLC, to whom complaints, if any, were lodged; (10) PCJV USA, LLC's creation, development and hold over the goodwill of Potato Corner in the United States for over a decade; (11) absent a license agreement, which SPAVI Parties disavow, PCJV USA, LLC's use inured to its own benefit; (12) Cinco Corporation's lack of control of Potato Corner in the United States for over a decade; (13) Defendants' objection to Plaintiff's alleged acquisition of U.S. trademark rights in breach of Cinco Corporation's fiduciary duties and PCJV USA, LLC's joint venture agreement ("JVA") and First Amendment thereto ("First Amendment") given that Plaintiff was disavowing the existence of a license agreement; (14) Cinco Corporation assigned U.S. Potato Corner trademarks to Plaintiff without the goodwill associated with the trademarks; (15) Plaintiff's lack of control of Potato Corner in the United States after it allegedly acquired the U.S. trademarks; (16) Defendants' Membership Interest Purchase Agreement ("MIPA") with Cinco acquiring all of its Interests in PCJV USA, LLC and all rights "attached" thereto unencumbered by a need for a license from any

SECOND AMENDED JOINTLY FILED CLAIMS, COUNTERCLAIMS, THIRD PARTY CLAIMS, AND AFFIRMATIVE DEFENSES TO BE TRIED

CASE NO. 2:24-CV-04546-SB(AGRX)

third party; (17) Plaintiff's denial of stepping into Cinco Corporation's shoes and acquiring the licensing burdens attached to the U.S. trademarks; and (18) Plaintiff's suppression of ownership evidence.

c. Element No. 3: Defendants used the Word Mark, Slogan Mark, and/or the Logo Mark in interstate commerce after May 31, 2024:

1. This element is undisputed.

d. Element No. 4: Defendants' use of the Word Mark, Slogan Mark, and/or the Logo Mark in interstate commerce after May 31, 2024, was without the consent of Plaintiff and in a manner likely to cause confusion among ordinary consumers as to the source, sponsorship, affiliation, or approval of the services.

1. This element is disputed.

2. Nature of Dispute: Legal and Factual

3. Plaintiff's Legal Position: As for absence of consent, given the absence of any ownership  rights, Defendants must locate some right as a licensee of the owner (SPAVI). Defendants offer two documents proffered as agreements that bind Cinco to a perpetual license. Neither work as a matter of law. First, they offer the unsigned October 10, 2010, document containing terms for a Master License Agreement (Trial Exhibit No. 11), which this Court (and the Ninth Circuit) have reviewed. Both have interpreted it as a matter of law, concluding that it is an unsigned draft (as Koren's testimony has confirmed) and illusory because the licensor is given no consideration for this purported agreement. The unsigned document cannot, as a matter of

SECOND AMENDED JOINTLY FILED CLAIMS,                    CASE NO. 2:24-CV-04546-SB(AGRX)
COUNTERCLAIMS, THIRD PARTY CLAIMS, AND
AFFIRMATIVE DEFENSES TO BE TRIED

law, have bound Cinco, even through implied contract law, because Cinco did not do anything in furtherance of that document to imply its assent. Moreover, multiple times after October 10, 2010, documents were signed stating that Cinco would be expecting a 30% royalty recovery. Second, Plaintiffs point to § 3(g) of an Amended Joint Venture Agreement (and its predecessor the Joint Venture Agreement) – Trial Exhibit Nos. 8 and 9 – which this Court has already interpreted to constitute an agreement to agree, in the future, with Cinco on a license agreement. As the Ninth Circuit said in affirming this conclusion, "the AJVA contained an agreement to enter a *future* Master License Agreement, not a "perpetual license" like PCJV claims." *Shakeys Pizza Asia Ventures, Inc. v. PCJV USA, LLC*, No. 24-7084, 2025 WL 1431270, at *1 (9th Cir. May 19, 2025) (citing *First Nat'l Mortg. Co. v. Fed. Realty Inv. Tr.*, 631 F.3d 1058, 1065 (9th Cir. 2011) ("[A]n 'agreement to agree,' without more, is not a binding contract."). This interpretation of the AJVA and JVA is a legal conclusion, which, as affirmed by the Ninth Circuit are legal conclusions, and, as such, these are pure conclusions of law, which means: **this Court's conclusion that § 3(g) of the JVA and AJVA are agreements to agree and do not bind Cinco to a "perpetual license" are law of the case and cannot be disturbed or challenged at trial**. This theory based on interpretation of a contract has been considered and rejected by this Court and the Ninth Circuit

in this case, and because it is a "pure issue[] of law, however, [it is] binding" on Defendants under law of the case. *Ranchers Cattlemen Action Legal Fund United Stockgrowers of Am. v. U.S. Dep't of Agr.*, 499 F.3d 1108, 1114 (9th Cir. 2007); s*ee, e.g. Arizona v. California*, 460 U.S. 605, 618 (1983) ((citing the rule as being "when a court decides upon a rule of law, that decision should continue to govern the same issues in subsequent stages in the same case"). Defendants now trot out other theories such the fact that the JVA and prior Operating Agreement are still somewhat live under a theory of partial integration, however, the following point prevails over each of these contortions: Defendants can point to no agreement or document, or acct, or statement, binding Cinco to a perpetual, irrevocable, royalty free licensee of its Marks. As such, in the absence of any written agreement, or documentation of any license terms, the sole license that existed as of May 31, 2024, was implied and terminable at will *See Pogrebnoy v. Russian Newspaper Distribution, Inc.*, 289 F. Supp. 3d 1061, 1070 (C.D. Cal. 2017), *aff'd*, 742 F. App'x 291 (9th Cir. 2018) ("[A]n implied license, like any other contract, is terminable at the will of either party if it is not for a specified term."). One final flaw exists in the attempt to bind Cinco to the AJVA, and that is one of issue preclusion in favor of Plaintiffs. As evidenced by Plaintiff's own Third Amended Complaint (verified) in the Prior Governance Action, the entire pleading is based on

SECOND AMENDED JOINTLY FILED CLAIMS,
COUNTERCLAIMS, THIRD PARTY CLAIMS, AND
AFFIRMATIVE DEFENSES TO BE TRIED

CASE NO. 2:24-CV-04546-SB(AGRX)

1   the theory that -- and it sought judgment concluding that -

2   - Cinco is an alter ego of the entity that was a 60% member

3   of PCJV. (*See* Trial Exhibit No. 1421 p. 7:3-14.) Such

4   allegations, having been dismissed, with  prejudice, by

5   Koren, re4nder thee accusations extinguished, and, as such,

6   Defendants are precluded from alleging them ever again.

7   Regarding likelihood of confusion,  which may be

8   resumed, and the jury  may  be so  instructed "[w]here,' as

9   here, "a licensee persists in the unauthorized use of a

10  licensor's trademark, courts have found that the continued

11  use alone establishes a likelihood of consumer

12  confusion." *Robert Trent Jones II, Inc. v. GFSI, Inc*., 537

13  F. Supp. 2d 1061, 1065 (N.D. Cal. 2008) (citing and

14  quoting *Sun Microsystems v. Microsoft Corp.,* 999

15  F.Supp. 1301, 1311 (N.D.Cal.1998) (citing *Paisa, Inc. v.*

16  *N & G Auto, Inc.,* 928 F.Supp. 1009, 1012 n. 4

17  (C.D.Cal.1996); *Hollywood Athletic Club,* 938 F.Supp. at

18  614–15 (C.D.Cal.1996)). The Sixth Circuit's analysis in

19  <u>Max Rack, Inc. v. Core Health & Fitness, LLC</u>, 40 F.4th

20  454, 464 (6th Cir. 2022) is instructive:

21

22  "A separate body of law has developed for this
    distinct claim that a holdover licensee has
23  continued to use a licensor's mark after their
    agreement expired. *See* 4 McCarthy, *supra,* §
24  25:31 (citing cases). In this context, courts have
    jettisoned      the      usual      totality-of-the-
25  circumstances  test  in  favor  of  a  more
    categorical   rule:   "proof   of   continued,
26
    unauthorized  use  of  an  original  trademark  by
27  one  whose  license  to  use  the  trademark  had

28

---

14

been terminated is sufficient to establish 'likelihood of confusion.' " *U.S. Structures, Inc. v. J.P. Structures, Inc.*, 130 F.3d 1185, 1190 (6th Cir. 1997); *ITT Indus., Inc. v. Wastecorp. Inc.*, 87 F. App'x 287, 293 (3d Cir. 2004); *Gorenstein Enters., Inc. v. Quality Care-USA, Inc.*, 874 F.2d 431, 435 (7th Cir. 1989); *Burger King Corp. v. Mason*, 710 F.2d 1480, 1492–93 (11th Cir. 1983); *Pro. Golfers Ass'n of Am. v. Bankers Life & Cas. Co.*, 514 F.2d 665, 670 (5th Cir. 1975); *L & L Wings, Inc. v. Marco-Destin, Inc.*, 676 F. Supp. 2d 179, 188 (S.D.N.Y. 2009). This rule makes good sense when a holdover licensee blatantly infringes the licensor's mark by using that mark in the same way as it did before the agreement expired. Without any need to tick through factors, it should be obvious that consumers will believe, for example, that a pizza restaurant remains affiliated with the "Little Caesars" chain when a terminated franchisee continues to operate the pizzeria as a Little Caesars. *See Little Caesar Enters., Inc. v. Miramar Quick Serv. Rest. Corp.*, 2020 WL 4516289, at *3 (6th Cir. 2020) (order)"

Although Plaintiff intends to, and will, adduce proof of the *Sleekcraft* factors, the presumption exists, and it is entitled to stand on this presumption alone. *See also, Brookfield Commc'ns, Inc. v. W. Coast Ent. Corp.*, 174 F.3d 1036, 1056 (9th Cir. 1999) ("In light of the virtual identity of marks, if they were used with identical products or services likelihood of confusion would follow as a matter of course"); *Park 'n Fly, Inc. v. Dollar Park & Fly, Inc.*, 782 F.2d 1508, 1509 (9th Cir. 1986) (holding that when marks and services are identical and channels are the same, likelihood of confusion is assumed, even if the other

factors weight against); *see also Blue Mako Inc. v. Minidis*, No. CV 07-916 AHM (SHX), 2008 WL 11334205 (C.D. Cal. June 23, 2008) (applying these principles to similar facts). Although Plaintiff intends to, and will, adduce proof of the *Sleekcraft* factors, the presumption exists, and it is entitled to stand on this presumption alone.

4.   <u>Defendants' Position Statement:</u> If Defendants are not found to have a superior claim to ownership, authorization issues framed by the Proposed Final Pretrial Conference Order (Dkt. No. 244), the Memoranda of Contentions of Law and Fact (Dkt. Nos. 197 and 199) and pleadings are whether, based on a partnership meeting of the minds, governing documents, course of performance, fiduciary and contractual obligations, the implied covenant of good faith and fair dealing, and reasonable and detrimental reliance: (1) PCJV USA, LLC had a "lifetime" license as a joint venture partner; (2) PCJV USA, LLC had a 20-year license with three 10-year options; (3) PCJV USA, LLC had a non-terminable-at-will license; (4) Plaintiff owed fiduciary or contractual obligations to provide PCJV USA, LLC a long-term license consistent with the PCJV USA Parties being joint venture partners, s*ee* J. Thomas McCarthy, *McCarthy on Trademarks and Unfair Competition,* § 18:15, at (5th ed.) ("'It is elementary ancient law that an assignee never stands in any better position than his assignor'") (citation omitted); and (5) other defenses to enforcement, including promissory

SECOND AMENDED JOINTLY FILED CLAIMS, COUNTERCLAIMS, THIRD PARTY CLAIMS, AND AFFIRMATIVE DEFENSES TO BE TRIED

CASE NO. 2:24-CV-04546-SB(AGRX)

1    estoppel, authorizing PCJV USA, LLC's continued use of

2    the U.S. trademarks. Plaintiff's proffered statement is non-

3    responsive. It is a combative, inappropriate and false

4    narrative of record evidence, preliminary rulings and the

5    authorization issues for trail as set forth in the Proposed

6    Final Pretrial Conference Order (Dkt. No. 244),

7    Memoranda of Contentions of Law and Fact (Dkt. Nos.

8    197 and 199) and pleadings. "The court's preliminary

9    injunction did not make final factual determinations; no

10   party moved for summary judgment; and the jury needs to

11   be instructed on the claims asserted in this case." Dkt. No.

12   254 at 2. Plaintiff's asserted "legal positions," which seek

13   to avoid a trial on the merits, are also based on inapplicable

14   authority (or no authority at all) and misstate the record.

15   For these reasons, including because Plaintiff's "legal

16   positions" go beyond identifying the actual authorization

17   issues set for trial, Defendants will address them if or when

18   they arise after the evidence on PCJV USA LLC's

19   authorization to continue using the U.S. trademarks is

20   presented at trial.

21    5.   <u>Plaintiff's Supporting Evidence</u>: Trial Exhibit 29 (May 31,

22       2024 Termination); photographs of various stores taken

23       from May 31, 2025 through the present; Testimony of

24       Koren; Plaintiff executives Gregorio (Plaiuntiff's CEO),

25       Concepcion (Plaintiff's COO charged with US operations),

26       Tan (Director responsible for international franchising);

27       investigator; Franchisees; Kim Lambert and Barry Kurtz;

28

SECOND AMENDED JOINTLY FILED CLAIMS,              CASE NO. 2:24-CV-04546-SB(AGRX)
COUNTERCLAIMS, THIRD PARTY CLAIMS, AND
AFFIRMATIVE DEFENSES TO BE TRIED

in addition to the following documents Amended Joint Venture Agreement and Joint Venture Agreement.

6. <u>Defendants' Supporting Evidence</u>: documents and testimony including and related to (1) Defendants' senior use and quality control of Potato Corner in the United States; (2) the superseding and restructure agreement confirmed by Guy Koren and Jose Magsaysay vesting partnership rights to build, develop and control Potato Corner in the United States; (3) the joint venture agreement vesting lifetime partnership rights to build, develop and control Potato Corner in the United States; (4) absent a license agreement, which SPAVI Parties disavow, PCJV USA, LLC's owns the U.S. Potato Corner marks as its use inured to its own benefit; (5) all the terms and conditions of the JVA and First Amendment thereto controlling licensing, approval of franchisee agreements, including as disclosed in franchise disclosure documents ("FDDs"), and management and operations of Potato Corner in the United States; (6) parol evidence regarding the partners' meeting of the minds; (7) the JVA's related agreements, which remained operative and under which Cinco Corporation remained a fiduciary and party to the JVA after the First Amendment as confirmed a plethora of documentary evidence; (8) the license agreements setting forth the terms and conditions upon which PCJV USA, LLC's senior use and control of Potato Corner in the United States would inure to the benefit of Cinco Corporation, which the SPAVI

SECOND AMENDED JOINTLY FILED CLAIMS, COUNTERCLAIMS, THIRD PARTY CLAIMS, AND AFFIRMATIVE DEFENSES TO BE TRIED

CASE NO. 2:24-CV-04546-SB(AGRX)

Parties now disavow, even though Cinco Corporation offered it through DLA Piper, or thereafter accepted, countersigned or otherwise entered into the license agreements as evidenced in many writings and agreed and approved of in FDDs; (9) course of performance for more than a decade as evidenced by approved FDDs, which ratified the license agreements and confirmed an entered into license agreement; (10) reasonable and detrimental reliance; (11) fiduciary obligations, the implied covenant of good faith and fair dealing, and the JVA and First Amendment's plain acknowledgement that there are no terminable-at-will branding rights; (12) Plaintiff's denial of stepping into Cinco Corporation's shoes and acquiring the licensing burdens attached to the U.S. trademarks; and (13) Plaintiff's suppression of authorization evidence

e.  Element No. 5: Damage caused by infringement designation.

1.  This element is disputed.

2.  Nature of Dispute: Legal and Factual

3.  Plaintiff's Position Statement: The standard to be followed is set forth in 15 USC § 1117 which only requires this Court's approval in equity to proceed with money damages. The Courts have, contrary to Defendant's apparent position, removed the requirement of willfulness to obtain disgorgement., *Romag Fasteners, Inc. v. Fossil, Inc.*, ⸺ U.S. ⸺, 140 S. Ct. 1492, 1495-97, 206 L.Ed.2d 672 (2020) (holding willfulness is not a precondition to disgorgement of profits under the Lanham Act). (Dkt. No.

SECOND AMENDED JOINTLY FILED CLAIMS,
COUNTERCLAIMS, THIRD PARTY CLAIMS, AND
AFFIRMATIVE DEFENSES TO BE TRIED

CASE NO. 2:24-CV-04546-SB(AGRX)

594.)  Defendants ignore the difference between normal infringement and this case, the holdover licensee, where the standard for likelihood of confusion is lowered, and even sometimes presumed, and irreparable harm is also presumed. The Lanham Act allows Defendants to raise the other arguments to rebut the presumption of irreparable harm, but the standard as applied here allows for disgorgement

4.  <u>Defendants' Position Statement:</u> Likelihood of confusion, when coupled with likely irreparable harm, is the standard for injunctive relief, the primary remedy under the Lanham Act (*National Grange of the Order of Patrons of Husbandry v. Cal. State Grange*, 182 F.Supp. 3d 1065, 1071 (E.D. Cal. 2016)), the benefits of which Plaintiff has already obtained in this case by flipping franchisees under contract with Defendants to join its organization—notwithstanding PCJV USA, LLC's rebranding rights and obligations disclosed in FDDs; Plaintiff fails to acknowledge its legal and higher burden of proof to establish an entitlement to monetary recovery, whether legal damages (which Plaintiff is not pursuing as there is no evidence it has a legal right to conduct a franchise business in California or elsewhere in the United States) or disgorgement—both of which stem from actual confusion in the market not attributable to Plaintiff's own conduct as proof of a defendant actually trading on the goodwill of another resulting in either lost profits or unjust enrichment

SECOND AMENDED JOINTLY FILED CLAIMS,
COUNTERCLAIMS, THIRD PARTY CLAIMS, AND
AFFIRMATIVE DEFENSES TO BE TRIED

CASE NO. 2:24-CV-04546-SB(AGRX)

1    (*Gracie v. Gracie*, 217 F.3d 1060, 1068 (9th Cir. 2000)); in

2    addition to there being no consumer survey evidence or

3    probative evidence of actual confusion not attributable to

4    Plaintiff's own conduct (let alone attributable to trademark

5    infringement), Defendants' exercise of bona fide good faith

6    belief not to waive (a) pre-existing partnership (whether

7    ownership or authorization) rights and obligations to use

8    and control the U.S. trademarks and to equally receive

9    service fees if any royalties were paid to the registrant

10   when (b) Plaintiff allegedly acquired U.S. Potato Corner

11   trademarks in the middle of franchise litigation between

12   joint venture partners, (c) over Defendants' objection, (d)

13   initiating this lawsuit in a conspiracy 3 days after the

14   settlement with Plaintiff's assignor to circumvent a state

15   court injunction rather than go to trial in state court, (e)

16   disregarding a tolling agreement to continue discussions

17   and not filing an action for declaratory relief if there was

18   an impasse to determine who has superior trademark rights,

19   (f) creating the risk of marketplace confusion by virtue of

20   its own conduct; and (e) suppressing evidence, including

21   properly served discovery ordered to be produced, does not

22   satisfy Plaintiff's legal burden of proof. *See Yuga Labs,*

23   *Inc. v. Ripps*, Case No. CV 22-4355-JFW(JEMx), 2023

24   WL 7089922, at *10 (C.D. Cal. Oct. 25, 2023) (while

25   totality of the circumstances are used to determine an

26   award of profits, "defendant's mental state is 'a highly

27   important consideration . . . .'").

28

SECOND AMENDED JOINTLY FILED CLAIMS,                    CASE NO. 2:24-CV-04546-SB(AGRX)
COUNTERCLAIMS, THIRD PARTY CLAIMS, AND
AFFIRMATIVE DEFENSES TO BE TRIED

5.  <u>Plaintiff's Supporting Evidence:</u> Defendants have produced financials for the period in question May 31, 2024 through the present, and, given that the entirety of their business is built of the confusion, we only need to prove profits which can be disgorged. Thus, the financials as well as Koren testimony and testimony of franchisees as well as correspondence regarding costs of goods sold as well as the testimony of the CFO of Shakey's will establish damage. No expert is needed for arithmetic. To the contrary, it is Defendant who bears a heavier burden of establishing what costs or expenses "actually contributed to the sale of the infringing products." *Monster Energy Co. v. Integrated Supply Network, LLC*, 533 F. Supp. 3d 928, 938 (C.D. Cal. 2021)

6.  <u>Defendant's Supporting Evidence:</u> documents and testimony including and related to (1) the parties' meeting of the minds and partnership agreement to co-own Potato Corner in the United States, where Defendants promised to contribute services and Plaintiff promised to vest IP rights in the partnership as supported by written agreements and verified pleadings; (2) the JVA and related agreements vesting licensing and quality control in PCJV USA, LLC's President, approval of franchise agreements, including as disclosed in FDDs, in PCJV USA, LLC's Management, and authority to manage Potato Corner in the United States in PCJV USA, LLC's executive officers (not Cinco Corporation); (3) absent a license agreement, PCJV USA,

SECOND AMENDED JOINTLY FILED CLAIMS, COUNTERCLAIMS, THIRD PARTY CLAIMS, AND AFFIRMATIVE DEFENSES TO BE TRIED

CASE NO. 2:24-CV-04546-SB(AGRX)

LLC's use of the U.S. Potato Corner marks inured to PCJV USA, LLC's benefit; (4) Defendants' continuing authorization to use the U.S. Potato Corner trademarks under a lifetime, 50-year, or non-terminable-at-will license, including for the reasons stated herein; (5) Defendants' objection to Plaintiff's announced plans to acquire Cinco Corporation's assets and liabilities, but representations to Defendants that they would be bound by a settlement with Cinco resolving licensing issues; (6) the parties' tolling agreement, including to continue discussions after Defendants separately settled with Cinco Corporation; (7) Plaintiff and Cinco Corporation's bad faith conspiracy to initiate this lawsuit 3 days after the settlement with Plaintiff's assignor to circumvent a state court injunction rather than go to trial in state court or settle with Defendants; (8) Plaintiff's own misconduct creating the risk of marketplace confusion; (9) no consumer survey evidence or evidence of marketplace confusion attributable to trademark infringement or unfair competition that is the subject of this case; (10) Plaintiff's suppression of evidence, including properly served discovery ordered to be produced; (11) no evidence of unjust enrichment, including no net profits or net profits attributable to the alleged infringement at issue, to disgorge; and (12) no evidence regarding individual Defendants' responsibility

2) **Claim 3: False Designation of Origin and Description of Fact Against All Entity Defendants (15 U.S.C. § 1125):**

     a.    <u>Element No. 1</u>: The Defendants used a designation, such as a word, term, name, device, or a combination thereof, or a false designation of origin:

    1.    This element is disputed.

    2.    <u>Nature of Dispute:</u> Legal and Factual

    3.    <u>Plaintiff's Position Statement</u>: This is essentially the federal version of our § 17200 claim in that, when looked at in its entirety, fits squarely within what was intended by 15 USDCD 1125(a)(1)(A). By continuing to operate using the same federal trademarks, menu layouts, and color schemes, and promotes its new brand as having the 'same taste' after having reverse engineered the flavorings and then used that, plus the menu that is unchanged – same colors, fonts, pictures, layout, even same product names – and all of this is likely to cause consumer confusion regarding the source or origin of the goods or services, as customers may believe the new business is still affiliated with or originates from the original brand. *See generally Blue Mako Inc. v. Minidis*, No. CV 07-916 AHM (SHX), 2008 WL 11334205 (C.D. Cal. June 23, 2008) (applying these principles to similar facts).

    4.    <u>Defendants' Position Statement:</u> The legal issues set for trial in the Proposed Final Pretrial Conference Order (Dkt. No. 244), Memoranda of Contentions of Law and Fact (Dkt. Nos. 197 and 199) and pleadings regard ownership of and authorization to use the U.S. Potato Corner trademarks; there is no "trade dress" issue in the pleadings

SECOND AMENDED JOINTLY FILED CLAIMS,
COUNTERCLAIMS, THIRD PARTY CLAIMS, AND
AFFIRMATIVE DEFENSES TO BE TRIED

CASE NO. 2:24-CV-04546-SB(AGRX)

set for trial. Moreover, "same as" comparative advertising of taste or fragrance is not unfair competition. *Smith v. Chanel*, Inc., 402 F.2d 562, 563 (9th Cir. 1968). Further, proffered "former location" confusion is not actionable in California (*see* Bus. & Prof. Code § 16600) nor proves or is probative of ordinary consumer confusion that is the subject of the Lanham Act after the market settles from a partnership divorce, especially after Plaintiff is the one who changed the *status quo* and caused any confusion

5. Plaintiff's Supporting Evidence: Photographs and testimony from former franchisees, the COO of SPAVI, Mr. Concepcion, as well as the testimony of Koren, and the Franchise Agreements, FDDs, and leases, of PCJV over the years.

6. Defendants' Supporting Evidence: documents and testimony including and related to (1) Defendants' ownership of the U.S. Potato Corner trademarks, which merely are a symbol of PCJV USA, LLC's business and restaurant and catering services; (2) Defendants' authorization to use the U.S. Potato Corner trademarks; (3) no consumer survey evidence; (4) no evidence of actionable ordinary consumer confusion but just speculation about market conditions after the market stabilizes, let alone actionable confusion attributable to alleged unfair competition framed by the Proposed Final Pretrial Conference Order (Dkt. No. 244), Memoranda of Contentions of Law and Fact (Dkt. Nos. 197 and 199) and

SECOND AMENDED JOINTLY FILED CLAIMS,    CASE NO. 2:24-CV-04546-SB(AGRX)
COUNTERCLAIMS, THIRD PARTY CLAIMS, AND
AFFIRMATIVE DEFENSES TO BE TRIED

pleadings; (5) no marketplace confusion before Plaintiff brought this action; (6) any marketplace confusion would stem from Plaintiff's efforts to create it rather than Plaintiff just filing an action for declaratory relief to resolve ownership and authorization issues after it acquired contested assets in the middle of franchise litigation between joint venture partners; and (7) Plaintiff's suppression of evidence, including Plaintiff's communications with U.S. franchisees under contract with PCJV USA, LLC that were timely requested and ordered be produced.

    b.    <u>Element No. 2</u>: The use was in interstate commerce.

        i. This element is not disputed

    c.    <u>Element No. 3</u> : The use was in connection with goods or services.

        1.    This element is disputed.

        2.    <u>Nature of Dispute:</u> Legal and Factual

        3.    <u>Plaintiff's Position Statement:</u> Defendants' purported objection is one of fact no law. The registrations are for services, and the use of the marks was for services. If Defendants were using the Marks for some other purpose, they have more liability than previously known.

        4.    <u>Defendants' Position Statement:</u> The registered first use of the registered marks are for restaurant and catering services; the registered marks are merely a symbol of Potato Corner in the United States, which distributed goods and services; the case is not a "goods" case, including

1      because the registrations predate any alleged unfair

2      competition.

3      5.    Plaintiff's Supporting Evidence: USPTO filings including

4      Registrations and Assignments.

5      6.    Defendants' Supporting Evidence: documents and

6      testimony including and related to (1) U.S. Reg. No.

7      5900257: the word mark "Potato Corner"; (2) U.S. Reg.

8      No. 6088456: "World's Best Flavored  French Fries; and

9      (3) U.S. Reg. No. 3760041: the Logo Mark.

10    d.    Element No. 4: Defendants' designation or false designation is

11    likely to cause confusion, mistake, or deception regarding either

12    the affiliation, connection, or association of the defendant with

13    another person, or the origin, sponsorship, or approval of the

14    defendant's goods, services, or commercial activities by another

15    person.

16    1.    This element is disputed in part.

17    2.    Nature of Dispute: Legal and Factual

18    3.    Plaintiff's Legal Position: The ultimate test" for unfair

19    competition is exactly the same as for trademark

20    infringement: "whether the public is likely to be deceived

21    or confused." *Century 21 Real Est. Corp. v. Sandlin*, 846

22    F.2d 1175, 1178 (9th Cir. 1988)Regarding likelihood of

23    confusion, which may be presumed, and the4 jury may be

24    so  instructed "[w]here,' as here, "a licensee persists in the

25    unauthorized use of a licensor's trademark, courts have

26    found that the continued use alone establishes a likelihood

27    of consumer confusion." *Robert Trent Jones II, Inc. v.*

28

SECOND AMENDED JOINTLY FILED CLAIMS,        CASE NO. 2:24-CV-04546-SB(AGRX)
COUNTERCLAIMS, THIRD PARTY CLAIMS, AND
AFFIRMATIVE DEFENSES TO BE TRIED

*GFSI, Inc.*, 537 F. Supp. 2d 1061, 1065 (N.D. Cal. 2008) (citing and quoting *Sun Microsystems v. Microsoft Corp.,* 999 F.Supp. 1301, 1311 (N.D.Cal.1998) (citing *Paisa, Inc. v. N & G Auto, Inc.,* 928 F.Supp. 1009, 1012 n. 4 (C.D.Cal.1996); *Hollywood Athletic Club,* 938 F.Supp. at 614–15 (C.D.Cal.1996)). The Sixth Circuit's analysis in Max Rack, Inc. v. Core Health & Fitness, LLC, 40 F.4th 454, 464 (6th Cir. 2022) is instructive:

> "A separate body of law has developed for this distinct claim that a holdover licensee has continued to use a licensor's mark after their agreement expired. *See* 4 McCarthy, *supra*, § 25:31 (citing cases). In this context, courts have jettisoned the usual totality-of-the-circumstances test in favor of a more categorical rule: "proof of continued, unauthorized use of an original trademark by one whose license to use the trademark had been terminated is sufficient to establish 'likelihood of confusion.' " *U.S. Structures, Inc. v. J.P. Structures, Inc.*, 130 F.3d 1185, 1190 (6th Cir. 1997); *ITT Indus., Inc. v. Wastecorp. Inc.*, 87 F. App'x 287, 293 (3d Cir. 2004); *Gorenstein Enters., Inc. v. Quality Care-USA, Inc.*, 874 F.2d 431, 435 (7th Cir. 1989); *Burger King Corp. v. Mason*, 710 F.2d 1480, 1492–93 (11th Cir. 1983); *Pro. Golfers Ass'n of Am. v. Bankers Life & Cas. Co.*, 514 F.2d 665, 670 (5th Cir. 1975); *L & L Wings, Inc. v. Marco-Destin, Inc.*, 676 F. Supp. 2d 179, 188 (S.D.N.Y. 2009). This rule makes good sense when a holdover licensee blatantly infringes the licensor's mark by using that mark in the same way as it did before the agreement expired. Without any need to tick through factors, it should be obvious that consumers will believe, for example, that a pizza restaurant remains affiliated with the "Little Caesars" chain when a

terminated franchisee continues to operate the pizzeria as a Little Caesars. *See Little Caesar Enters., Inc. v. Miramar Quick Serv. Rest. Corp.*, 2020 WL 4516289, at *3 (6th Cir. 2020) (order)"

Although Plaintiff intends to, and will, adduce proof of the *Sleekcraft* factors, the presumption exists, and it is entitled to stand on this presumption alone. *See also, Brookfield Commc'ns, Inc. v. W. Coast Ent. Corp.*, 174 F.3d 1036, 1056 (9th Cir. 1999) ("In light of the virtual identity of marks, if they were used with identical products or services likelihood of confusion would follow as a matter of course"); *Park 'n Fly, Inc. v. Dollar Park & Fly, Inc.*, 782 F.2d 1508, 1509 (9th Cir. 1986) (holding that when marks and services are identical and channels are the same, likelihood of confusion is assumed, even if the other factors weight against); *see also Blue Mako Inc. v. Minidis*, No. CV 07-916 AHM (SHX), 2008 WL 11334205 (C.D. Cal. June 23, 2008) (applying these principles to similar facts).

4.   <u>Defendants' Position Statement:</u> Defendants are not going to argue no likelihood of confusion arising from continuous use of registered and unregistered trademarks if Defendants do not prevail on ownership or authorization. However, this is not a "trade dress" case. The legal issues set for trial in the Proposed Final Pretrial Conference Order (Dkt. No. 244), Memoranda of Contentions of Law and Fact (Dkt. Nos. 197 and 199) and pleadings regard ownership of and authorization to use the U.S. Potato Corner trademarks; there is no "trade dress" issue in the pleadings set for trial. Moreover, "same as" comparative

SECOND AMENDED JOINTLY FILED CLAIMS,
COUNTERCLAIMS, THIRD PARTY CLAIMS, AND
AFFIRMATIVE DEFENSES TO BE TRIED

CASE NO. 2:24-CV-04546-SB(AGRX)

1  advertising of taste or fragrance is not unfair competition.
2  *Smith v. Chanel*, Inc., 402 F.2d 562, 563 (9th Cir.
3  1968). Further, proffered "former location" confusion is
4  not actionable in California (*see* Bus. & Prof. Code §
5  16600) nor proves or is probative of ordinary consumer
6  confusion that is the subject of the Lanham Act after the
7  market settles from a partnership divorce, especially after
8  Plaintiff is the one who changed the *status quo* and caused
9  any confusion.

10      5.    <u>Plaintiff's Supporting Evidence:</u> Trial Exhibit 29 (May 31,
11  2024 Termination); photographs of various stores taken
12  from May 31, 2025 through the present; Testimony of
13  Koren; Plaintiff executives Gregorio (Plaiuntiff's CEO),
14  Concepcion (Plaintiff's COO charged with US operations),
15  Tan (Director responsible for international franchising);
16  investigator; Franchisees; Kim Lambert and Barry Kurtz;
17  in addition to  the following documents Amended Joint
18  Venture Agreement and Joint Venture Agreement; the
19  COO of SPAVI, Mr. Concepcion, the Franchise
20  Agreements, FDDs, and leases, of PCJV over the years.

21      6.    <u>Defendants' Supporting Evidence:</u> documents and
22  testimony including and related to (1) Defendants'
23  ownership of the U.S. Potato Corner trademarks, which
24  merely are a symbol of PCJV USA, LLC's business and
25  restaurant and catering services; (2) Defendants'
26  authorization to use the U.S. Potato Corner trademarks; (3)
27  no consumer survey evidence; (4) no evidence of

SECOND AMENDED JOINTLY FILED CLAIMS,          CASE NO. 2:24-CV-04546-SB(AGRX)
COUNTERCLAIMS, THIRD PARTY CLAIMS, AND
AFFIRMATIVE DEFENSES TO BE TRIED

actionable ordinary consumer confusion but just speculation about market conditions after the market stabilizes, let alone actionable confusion attributable to alleged unfair competition framed by the Proposed Final Pretrial Conference Order (Dkt. No. 244), Memoranda of Contentions of Law and Fact (Dkt. Nos. 197 and 199) and pleadings; (5) no marketplace confusion before Plaintiff brought this action; (6) any marketplace confusion would stem from Plaintiff's efforts to create it rather than Plaintiff just filing an action for declaratory relief to resolve ownership and authorization issues after it acquired contested assets in the middle of franchise litigation between joint venture partners; and (7) Plaintiff's suppression of evidence, including Plaintiff's communications with U.S. franchisees under contract with PCJV USA, LLC that were timely requested and ordered be produced

    e.    <u>Element No. 5:</u> Damage caused by false designation.

        1.    This element is disputed.

        2.    <u>Nature of Dispute</u>: Legal and factual

        3.    <u>Plaintiff's Legal Position:</u> The standard to be followed is set forth in 15 USC § 1117 which only requires this Court's approval in equity to proceed with money damages. The Courts have, contrary to Defendant's apparent position, removed the requirement of willfulness to obtain disgorgement., *Romag Fasteners, Inc. v. Fossil, Inc.*, ⸺ U.S. ⸺, 140 S. Ct. 1492, 1495-97, 206 L.Ed.2d 672

(2020) (holding willfulness is not a precondition to disgorgement of profits under the Lanham Act). (Dkt. No. 594.) Defendants ignore the difference between normal infringement and this case, the holdover licensee, where the standard for likelihood of confusion is lowered, and even sometimes presumed, and irreparable harm is also presumed. The Lanham Act allows Defendants to raise the other arguments to rebut the presumption of irreparable harm, but the standard as applied here allows for disgorgement.

4.    Defendants' Position Statement: Likelihood of confusion, when coupled with likely irreparable harm, is the standard for injunctive relief, the primary remedy under the Lanham Act (*National Grange of the Order of Patrons of Husbandry v. Cal. State Grange*, 182 F.Supp. 3d 1065, 1071 (E.D. Cal. 2016)), the benefits of which Plaintiff has already obtained in this case by flipping franchisees under contract with Defendants to join its organization— notwithstanding PCJV USA, LLC's rebranding rights and obligations disclosed in FDDs; Plaintiff fails to acknowledge its legal and higher burden of proof to establish an entitlement to monetary recovery, whether legal damages (which Plaintiff is not pursuing as there is no evidence it has a legal right to conduct a franchise business in California or elsewhere in the United States) or disgorgement—both of which stem from actual confusion in the market not attributable to Plaintiff's own conduct as

SECOND AMENDED JOINTLY FILED CLAIMS,
COUNTERCLAIMS, THIRD PARTY CLAIMS, AND
AFFIRMATIVE DEFENSES TO BE TRIED

CASE NO. 2:4-CV-04546-SB(AGRX)

1    proof of a defendant actually trading on the goodwill of

2    another resulting in either lost profits or unjust enrichment

3    (*Gracie v. Gracie*, 217 F.3d 1060, 1068 (9th Cir. 2000)); in

4    addition to there being no consumer survey evidence or

5    probative evidence of actual confusion not attributable to

6    Plaintiff's own conduct (let alone attributable to trademark

7    infringement), Defendants' exercise of bona fide good faith

8    belief not to waive (a) pre-existing partnership (whether

9    ownership or authorization) rights and obligations to use

10    and control the U.S. trademarks and to equally receive

11    service fees if any royalties were paid to the registrant

12    when (b) Plaintiff allegedly acquired U.S. Potato Corner

13    trademarks in the middle of franchise litigation between

14    joint venture partners, (c) over Defendants' objection, (d)

15    initiating this lawsuit in a conspiracy 3 days after the

16    settlement with Plaintiff's assignor to circumvent a state

17    court injunction rather than go to trial in state court, (e)

18    disregarding a tolling agreement to continue discussions

19    and not filing an action for declaratory relief if there was

20    an impasse to determine who has superior trademark rights,

21    (f) creating the risk of marketplace confusion by virtue of

22    its own conduct; and (e) suppressing evidence, including

23    properly served discovery ordered to be produced, does not

24    satisfy Plaintiff's legal burden of proof. *See Yuga Labs,*

25    *Inc. v. Ripps*, Case No. CV 22-4355-JFW(JEMx), 2023

26    WL 7089922, at *10 (C.D. Cal. Oct. 25, 2023) (while

27    totality of the circumstances are used to determine an

28

SECOND AMENDED JOINTLY FILED CLAIMS,                                    CASE NO. 2:24-CV-04546-SB(AGRX)
COUNTERCLAIMS, THIRD PARTY CLAIMS, AND
AFFIRMATIVE DEFENSES TO BE TRIED

award of profits, "defendant's mental state is 'a highly important consideration . . . .'").

5. <u>Plaintiff's Supporting Evidence:</u> Defendants have produced financials for the period in question May 31, 2024 through the present, and, given that the entirety off their business is built off the confusion, we only need to prove profits which can be disgorged. Thus, the financials as well as Koren testimony and testimony of franchisees as well; as correspondence regarding costs of goods sold as well as the testimony of the CFO of Shakley's will establish damage. No expert is needed for arithmetic. To the contrary, it is Defendant who bears a heavier burden of establishing what costs or expenses "actually contributed to the sale of the infringing products." *Monster Energy Co. v. Integrated Supply Network, LLC*, 533 F. Supp. 3d 928, 938 (C.D. Cal. 2021)

6. <u>Defendant's Supporting Evidence:</u> documents and testimony including and related to (1) the parties' meeting of the minds and partnership agreement to co-own Potato Corner in the United States, where Defendants promised to contribute services and Plaintiff promised to vest IP rights in the partnership as supported by written agreements and verified pleadings; (2) the JVA and related agreements vesting licensing and quality control in PCJV USA, LLC's President, approval of franchise agreements, including as disclosed in FDDs, in PCJV USA, LLC's Management, and authority to manage Potato Corner in the United States

SECOND AMENDED JOINTLY FILED CLAIMS,
COUNTERCLAIMS, THIRD PARTY CLAIMS, AND
AFFIRMATIVE DEFENSES TO BE TRIED

CASE NO. 2:24-CV-04546-SB(AGRX)

in PCJV USA, LLC's executive officers (not Cinco Corporation); (3) absent a license agreement, PCJV USA, LLC's use of the U.S. Potato Corner marks inured to PCJV USA, LLC's benefit; (4) Defendants' continuing authorization to use the U.S. Potato Corner trademarks under a lifetime, 50-year, or non-terminable-at-will license, including for the reasons stated herein; (5) Defendants' objection to Plaintiff's announced plans to acquire Cinco Corporation's assets and liabilities, but representations to Defendants that they would be bound by a settlement with Cinco resolving licensing issues; (6) the parties' tolling agreement, including to continue discussions after Defendants separately settled with Cinco Corporation; (7) Plaintiff and Cinco Corporation's bad faith conspiracy to initiate this lawsuit 3 days after the settlement with Plaintiff's assignor to circumvent a state court injunction rather than go to trial in state court or settle with Defendants; (8) Plaintiff's own misconduct creating the risk of marketplace confusion; (9) no consumer survey evidence or evidence of marketplace confusion attributable to trademark infringement or unfair competition that is the subject of this case; (10) Plaintiff's suppression of evidence, including properly served discovery ordered to be produced; (11) no evidence of unjust enrichment, including no net profits or net profits attributable to the alleged infringement at issue, to disgorge; and (12) no evidence regarding individual Defendants' responsibility

SECOND AMENDED JOINTLY FILED CLAIMS,
COUNTERCLAIMS, THIRD PARTY CLAIMS, AND
AFFIRMATIVE DEFENSES TO BE TRIED

CASE NO. 2:24-CV-04546-SB(AGRX)

**3)**  **Claim 4: Contributory Trademark Infringement Against All Defendants (Against Guy Koren, PCJV USA, LL, PCI Trading, LLC, Potato Corner LA  Group, LLC; GK Capital,  LLC or NKM Capital Group, LLC)**

a.  Element No. 1: inducement of any Defendant to infringe one of the Marks (affirmative steps or actions taken to encourage infringement, exercising control over means oof infringement, offering tools to assist in infringement, instructing how to infringe).

1.  This element is disputed.

2.  Nature of Dispute: Legal and Factual

3.  Plaintiff's Position Statement: it is assumed that the primary dispute by  Defendants here will be as to the underlying question  of infringement (ownership, license, etc.). But if it is true that Plaintiff owned the Marks, and had exclusive right to control them and Defendants lost their right on May 31, 2024, the question is fairly on the table whether (1) PCJV, the former licensees of the brand, engaged in post termination contribution  or inducement to its sublicensees  whose rights had also been terminated  by giving them aid and comfort (and collecting money from them) after  termination,, or (2) the supply chain affiliate PCI Trading's sales of infringing cups etc. was constituted contribution  or inducement, or (3) whether  Koren, the owner or operator oof them all was also responsible  for contribution  or inducement. 115 USC 1114; *Fonovisa, Inc. v. Cherry Auction, Inc*., 76 F.3d 259, 264–65 (9th Cir.

SECOND AMENDED JOINTLY FILED CLAIMS,
COUNTERCLAIMS, THIRD PARTY CLAIMS, AND
AFFIRMATIVE DEFENSES TO BE TRIED

CASE NO. 2:24-CV-04546-SB(AGRX)

1996) (applied to host of swap meets when host know infringement was occurring); *citing Inwood Lab'ys, Inc. v. Ives Lab'ys, Inc*., 456 U.S. 844, 854  (1982); *see Inwood Lab'ys, Inc*., 456 U.S. at 844, 854 (1982) (explaining that when a party "suppl[ies]] its product to one whom it knows or has reason to know is engaging in trademark infringement, the manufacturer or distributor is contributorily responsible for any harm done as a result of the deceit").

4.  Defendants' Position Statement: To establish liability for contributory infringement, Plaintiff bears the burden of proving the defendant had intent to cause direct infringement or prior knowledge of direct infringement. *See Perfect 10, Inc. v. Visa Intern. Service Ass'n,* 494 F.3d 788, 807 (9th Cir. 2007). That is not the same thing as having knowledge of a bona fide dispute over trademark ownership or authorization to use a trademark. Similarly, officer or director liability includes a knowledge requirement to establish liability. *SinCo Technologies Pte Ltd. v. SinCo Electronics,* Case No. 17-cv-05517-EMC, 2018 WL 10638468, at *1 (N.D. Cal. Jan. 5, 2018).

5.  Plaintiff's Supporting Evidence: Testimony and statements of Koren, franchisees, and SPAVI executives after termination; correspondence with franchisees by SPAVI; Franchise agreements and FDDs.

6.  Defendants' Supporting Evidence: documents and testimony including and related to (1) the evidentiary

SECOND AMENDED JOINTLY FILED CLAIMS,
COUNTERCLAIMS, THIRD PARTY CLAIMS, AND
AFFIRMATIVE DEFENSES TO BE TRIED

CASE NO. 2:24-CV-04546-SB(AGRX)

record establishing a bona fide trademark dispute over ownership and authorization to use the U.S. Potato Corner trademarks; (2) the alleged contributory infringing Defendants did not have the intent to cause infringement or knowledge that direct infringement was occurring; (3) the alleged contributory infringing Defendants are not similarly situated, including because some our downstream users (who contributing nothing upstream) and one is simply a supplier of publicly available materials; (4) Mr. Koren, as an officer or member of Defendant entities, also had no intent to confuse consumers, had no intent to trade off the goodwill he did not own or have authorization to use, and had good faith reasons to believe that trademark infringement was not occurring.

    b.   Element No. 2: Material contribution

        1.   This element is disputed.

        2.   Nature of Dispute: Factual

        3.   Plaintiff's Supporting Evidence: testimony of Koren, his staff, franchisees, and their communications

        4.   Defendants' Supporting Evidence: documents and testimony including and related to whether the contribution of each Defendant was material to the alleged infringement and was provided with the requisite knowledge.

    c.   Element No. 3: Injury to Plaintiff.

        1.   This element is disputed

        2.   Nature of Dispute: Legal and Factual

3.  Plaintiff's Position Statement: The standard to be followed is set forth in 15 USC 1117 which only requires this Court's approval in equity to proceed with money damages. The Courts have contrary to Defendant's apparent position removed the requirement of willfulness to obtain disgorgement., *Romag Fasteners, Inc. v. Fossil, Inc.,* ___ U.S. ___, 140 S. Ct. 1492, 1495-97, 206 L.Ed.2d 672 (2020) (holding willfulness is not a precondition to disgorgement of profits under the Lanham Act). (Dkt. No. 594.) Defendants ignore the difference between normal infringement and this case, the holdover licensee, where the standard for likelihood of confusion is lowered, and even sometimes presumed, and irreparable harm is also presumed. The Lanham Act allows Defendants to raise the other arguments to rebut the presumption of irreparable harm, but the standard as applied here allows for disgorgement.

4.  PCJV USA Parties' Position Statement: Defendants incorporate their positions legal positions above regarding liability and damages for direct infringement and liability for contributory infringement. In addition, damages for contributory infringement should not be awarded upstream

5.  Plaintiff's Supporting Evidence: Defendants have produced financials for the period in question May 31, 2024 through the present, and, given that the entirety of their business is built off the confusion, we only need to prove profits which can be disgorged. Thus, the financials

SECOND AMENDED JOINTLY FILED CLAIMS,                          CASE NO. 2:24-CV-04546-SB(AGRX)
COUNTERCLAIMS, THIRD PARTY CLAIMS, AND
AFFIRMATIVE DEFENSES TO BE TRIED

as well as Koren testimony and testimony of franchisees as well; as correspondence regarding costs of goods sold as well as the testimony of the CFO of Shakley's will establish damage. No expert is needed for arithmetic. To the contrary, it is Defendant who bears a heavier burden of establishing what costs or expenses "actually contributed to the sale of the infringing products." *Monster Energy Co. v. Integrated Supply Network, LLC*, 533 F. Supp. 3d 928, 938 (C.D. Cal. 2021)

      6.    <u>Defendants' Supporting Evidence:</u> Defendants incorporate their above record.

**4)  <u>Claim 5: Contributory False Designation of Origin Against Guy Koren, PCJV USA, LL, PCI Trading, LLC, Potato Corner LA Group, LLC; GK Capital, LLC or NKM Capital Group, LLC</u>**

    a.    <u>Element No. 1:</u> inducement of any Defendant to make use a false designation, such as a word, term, name, device, or a combination thereof, or a false designation of origin (affirmative steps or actions taken to encourage infringement, exercising control over means oof infringement, offering tools to assist in infringement, instructing how to infringe).

        ii.    This element is disputed.

        iii.    Nature of Dispute: Legal and Factual

        iv.    <u>Plaintiff's Position Statement:</u> it is assumed that the primary dispute by Defendants here will be as to the underlying question of infringement (ownership, license, etc.). But if it is true that Plaintiff owned the Marks, and had exclusive right to control them and Defendants lost their right

1    on May 31, 2024, the question is fairly on the table whether (1)

2    PCJV, the former licensees of the brand, engaged in post

3    termination contribution  or inducement to its sublicensees

4    whose rights had also been terminated  by giving them aid and

5    comfort (and collecting money from them) after  termination,,

6    or (2) the supply chain affiliate PCI Trading's sales of

7    infringing cups etc. was constituted contribution  or

8    inducement, or (3) whether  Koren, the owner or operator oof

9    them all was also responsible  for contribution  or inducement.

10    115 USC 1114; *Fonovisa, Inc. v. Cherry Auction, Inc*., 76 F.3d

11    259, 264–65 (9th Cir. 1996) (applied to host of swap meets

12    when host know  infringement was occurring); *citing Inwood*

13    *Lab'ys, Inc. v. Ives Lab'ys, Inc*., 456 U.S. 844, 854  (1982); *see*

14    *Inwood Lab'ys, Inc*., 456 U.S. at 844, 854 (1982) (explaining

15    that when a party "suppl[ies]] its product to one whom it

16    knows or has reason to know is engaging in trademark

17    infringement, the manufacturer or distributor is contributorily

18    responsible for any harm done as a result of the deceit").

19        v.    <u>Defendants' Position Statement:</u> To establish liability for

20    contributory infringement, Plaintiff bears the burden of

21    proving the defendant had intent to cause direct infringement

22    or prior knowledge of direct infringement. *See Perfect 10, Inc.*

23    *v. Visa Intern. Service Ass'n*, 494 F.3d 788, 807 (9th Cir.

24    2007). That is not the same thing as having knowledge of a

25    *bona fide* dispute over trademark ownership or authorization to

26    use a trademark. Similarly, officer or director liability includes

27    a knowledge requirement to establish liability. *SinCo*

28

SECOND AMENDED JOINTLY FILED CLAIMS,                    CASE NO. 2:24-CV-04546-SB(AGRX)
COUNTERCLAIMS, THIRD PARTY CLAIMS, AND
AFFIRMATIVE DEFENSES TO BE TRIED

1   *Technologies Pte Ltd. v. SinCo Electronics*, Case No. 17-cv-

2   05517-EMC, 2018 WL 10638468, at *1 (N.D. Cal. Jan. 5,

3   2018).

4       vi.    <u>Plaintiff's Supporting Evidence:</u> Testimony and

5   statements of Koren, franchisees, and SPAVI executives after

6   termination; correspondence with franchisees by SPAVI;

7   Franchise agreements and FDDs.

8       vii.    <u>Defendants' Supporting Evidence:</u> documents and

9   testimony including and related to (1) the evidentiary record

10   establishing a bona fide trademark dispute over ownership and

11   authorization to use the U.S. Potato Corner trademarks; (2) the

12   alleged contributory infringing Defendants did not have the

13   intent to cause infringement or knowledge that direct

14   infringement was occurring; (3) the alleged contributory

15   infringing Defendants are not similarly situated, including

16   because some our downstream users (who contributing nothing

17   upstream) and one is simply a supplier of publicly available

18   materials; (4) Mr. Koren, as an officer or member of

19   Defendant entities, also had no intent to confuse consumers,

20   had no intent to trade off the goodwill he did not own or have

21   authorization to use, and had good faith reasons to believe that

22   trademark infringement was not occurring.

23     b.  <u>Element No. 2:</u> Material contribution

24       i. This element is disputed.

25       ii.    Nature of Dispute: Factual

26       iii.    <u>Plaintiff's Supporting Evidence:</u> testimony of Koren, his

27   staff, franchisees, and their communications

28

SECOND AMENDED JOINTLY FILED CLAIMS,
COUNTERCLAIMS, THIRD PARTY CLAIMS, AND
AFFIRMATIVE DEFENSES TO BE TRIED

CASE NO. 2:24-CV-04546-SB(AGRX)

iv.     Defendants' Supporting Evidence: documents and testimony including and related to whether the contribution of each Defendant was material to the alleged infringement and was provided with the requisite knowledge.

c. Element No. 3: Injury to Plaintiff.

i. This element is disputed.

ii.     Nature of Dispute: Legal and factual

ii. Plaintiff's Position Statement: The standard to be followed is set forth in 15 USC 1117 which only requires this Court's approval in  equity to proceed with money damages. The Courts have contrary to Defendant's apparent position removed the requirement of willfulness to obtain disgorgement., *Romag Fasteners, Inc. v. Fossil, Inc.*, —— U.S. ——, 140 S. Ct. 1492, 1495-97, 206 L.Ed.2d 672 (2020) (holding willfulness is not a precondition to disgorgement of profits under the Lanham Act). (Dkt. No. 594.)  Defendants ignore the difference between normal infringement and this case, the holdover licensee,  where the standard for likelihood of confusion is lowered, and even sometimes presumed, and irreparable harm is also presumed. The Lanham Act allows Defendants to raise the other arguments to rebut the presumption of irreparable harm, but the standard as applied here allows for disgorgement,

iii.     PCJV USA Parties' Position Statement: Defendants incorporate their legal positions above regarding liability and damages for direct infringement and liability for contributory infringement. In addition, damages for contributory

1    infringement should not be awarded upstream.

2        iv.    <u>Plaintiff's Supporting Evidence:</u> Defendants have

3            produced financials for the period in question May 31, 2024

4            through the present, and, given that the entirety off their

5            business is built off the confusion, we only need to prove

6            profits which can be disgorged. Thus, the financials as well as

7            Koren testimony and testimony of franchisees as well; as

8            correspondence regarding costs of  goods sold as well as the

9            testimony of the CFO of Shakley's will establish damage. No

10           expert is needed for arithmetic. To  the contrary, it is

11           Defendant who bears a heavier burden of establishing what

12           costs or expenses "actually contributed to the sale of the

13           infringing products." *Monster Energy Co. v. Integrated*

14           *Supply Network, LLC*, 533 F. Supp. 3d 928, 938 (C.D. Cal.

15           2021)

16       iii. <u>Defendants' Supporting Evidence:</u> Defendants incorporate

17           their above record.

18   **2) <u>Claim 6: Common Law Trademark Infringement Against All</u>**

19       **<u>Defendants (Against Guy Koren, PCJV USA, LL, PCI Trading, LLC,</u>**

20       **<u>Potato Corner LA  Group, LLC; GK Capital,  LLC or NKM Capital</u>**

21       **<u>Group, LLC).</u>**

22       a.   <u>Element No. 1:</u> the Word Mark, Slogan Mark, and/or the Logo

23            Mark (all collectively, the "Marks") are valid and protectible

24            trademarks:

25            i. This element is undisputed

26       b.   <u>Element No. 2:</u> Plaintiff owns the Word Mark, Slogan Mark, and/or

27            the Logo Mark

28

SECOND AMENDED JOINTLY FILED CLAIMS,                    CASE NO. 2:24-CV-04546-SB(AGRX)
COUNTERCLAIMS, THIRD PARTY CLAIMS, AND
AFFIRMATIVE DEFENSES TO BE TRIED

i. This element is disputed.

ii.     <u>Nature of Dispute:</u> Factual and Legal.

iii.     <u>Plaintiff's Legal Position:</u> Defendants do not dispute that the registrations for all three Marks (Trial Exhibit Nos. 1, 3, and 5) identify Cinco as the registrant and the first to use each of the three Marks, nor do Defendants dispute that the Deeds of Assignment attached to the notices filed with the USPTO (Trial Exhibit Nos. 4 and 6) confirm that, unequivocally and without exception, the entirety of these Marks were sold and assigned to Plaintiff, along with all the goodwill arising out of or associated with the Marks. Defendants also do not dispute the testimony of Seller (Cinco) and Buyer (SPAVI) that the Deeds are accurate in every way, that the sale and assignments were comprehensive, without carve outs, and fully consummated. Instead, Defendants take internally inconsistent positions that are contradicted by various legal doctrine, including the ones discussed *supra*: Licensee Estoppel, the Lanham Act provisions rendering Defendants' positions contrary to federal law, Law of the Case, that the Authorities cited by Defendants do not support their position, including *Sengoku*, the Merger Doctrine, and Defendants' standing.

ii.     <u>Defendants' Position Statement:</u> Defendants incorporate their legal positions above

iii.     <u>Plaintiff's Supporting Evidence:</u> Notarized Deeds signed by seller and buyer; USPTO filings including Registrations and Assignments, testimony of Gregorio (Plaintiff's CEO), Magsaysay (Cinco's CEO), Koren, Ybanez (Plaintiff's General

SECOND AMENDED JOINTLY FILED CLAIMS,
COUNTERCLAIMS, THIRD PARTY CLAIMS, AND
AFFIRMATIVE DEFENSES TO BE TRIED

CASE NO. 2:24-CV-04546-SB(AGRX)

1   Counsel), FDDs, Franchise Agreements.

2       iv. <u>Defendants' Supporting Evidence:</u> Defendants incorporate their

3           above factual positions.

4   c. <u>Element No. 3:</u> Defendants used Word Mark, Slogan Mark, and/or the

5       Logo Mark in interstate commerce after May 31, 2024:

6           i. This element is undisputed.

7   d. <u>Element No. 4:</u> Defendants' use of the Word Mark, Slogan Mark,

8       and/or the Logo Mark in interstate commerce after May 31, 2024, was

9       without the consent of Plaintiff and in a manner likely to cause

10      confusion among ordinary consumers as to the source, sponsorship,

11      affiliation, or approval of the services.

12          ii. This element is disputed.

13          iii. <u>Nature of Dispute:</u> Legal and Factual

14          iv. <u>Plaintiff's Legal Position: As for absence of consent,</u> given the

15              absence of any ownership  rights, Defendants must locate

16              some rights as a licensee of the owner (SPAVI). Defendants

17              offer two documents proffered as agreements that bind Cinco

18              to a perpetual license. Neither work as a matter of law. First,

19              they offer the unsigned October 10, 2010, document

20              containing terms for a Master License Agreement (Trial

21              Exhibit No. 11), which this Court (and the Ninth Circuit) have

22              reviewed. Both have interpreted it as a matter of law,

23              concluding that it is an unsigned draft (as Koren's testimony

24              has confirmed) and illusory because the licensor is given no

25              consideration for this purported agreement. The unsigned

26              document cannot, as a matter of law, have bound Cinco, even

27              through implied contract law, because Cinco did not do

28

SECOND AMENDED JOINTLY FILED CLAIMS,                          CASE NO. 2:24-CV-04546-SB(AGRX)
COUNTERCLAIMS, THIRD PARTY CLAIMS, AND
AFFIRMATIVE DEFENSES TO BE TRIED

1  anything in furtherance of that document to imply its assent.

2  Moreover, multiple times after October 10, 2010, documents

3  were signed stating that Cinco would be expecting a 30%

4  royalty recovery. Second, Plaintiffs point to § 3(g) of an

5  Amended Joint Venture Agreement (and its predecessor the

6  Joint Venture Agreement) – Trial Exhibit Nos. 8 and 9 – which

7  this Court has already interpreted to constitute an agreement to

8  agree, in the future, with Cinco on a license agreement. As the

9  Ninth Circuit said in affirming this conclusion, "the AJVA

10  contained an agreement to enter a *future* Master License

11  Agreement, not a "perpetual license" like PCJV claims."

12  *Shakeys Pizza Asia Ventures, Inc. v. PCJV USA, LLC*, No. 24-

13  7084, 2025 WL 1431270, at *1 (9th Cir. May 19, 2025) (citing

14  *First Nat'l Mortg. Co. v. Fed. Realty Inv. Tr.*, 631 F.3d 1058,

15  1065 (9th Cir. 2011) ("[A]n 'agreement to agree,' without

16  more, is not a binding contract."). This interpretation of the

17  AJVA and  JVA is a legal conclusion, which, as affirmed  by

18  the Ninth Circuit are legal conclusions, and, as such,  these are

19  pure conclusions of law, which means: **this Court's**

20  **conclusion that § 3(g) of the JVA and AJVA are**

21  **agreements to agree and do not  bind Cinco  to a**

22  **"perpetual license" are law of the  case and cannot be**

23  **disturbed or challenged at trial**. This theory based on

24  interpretation of a contract has been considered and rejected by

25  this Court and the Ninth Circuit in this case, and because it  is

26  a "pure issue[] of law, however, [it  is] binding" on Defendants

27  under law of the case. *Ranchers Cattlemen Action Legal Fund*

28

SECOND AMENDED JOINTLY FILED CLAIMS,    CASE NO. 2:24-CV-04546-SB(AGRX)
COUNTERCLAIMS, THIRD PARTY CLAIMS, AND
AFFIRMATIVE DEFENSES TO BE TRIED

1    *United Stockgrowers of Am. v. U.S. Dep't of Agr.*, 499 F.3d

2    1108, 1114 (9th Cir. 2007); s*ee, e.g. Arizona v. California*, 460

3    U.S. 605, 618 (1983) ((citing the rule as being "when a court

4    decides upon a rule of law, that decision should continue to

5    govern the same issues in subsequent stages in the same

6    case"). Defendants now trot out other theories such the fact

7    that the JVA and prior Operating Agreement are still

8    somewhat live under a theory of partial integration, however,

9    the following point prevails over each of these contortions:

10   Defendants can point to no agreement or document,  or acct, or

11   statement, binding Cinco to a perpetual, irrevocable, royalty

12   free licensee of its Marks. As such, in the absence of any

13   written  agreement, or documentation of any license terms, the

14   sole license that existed as of May 31, 2024, was implied and

15   terminable at will  *See Pogrebnoy v. Russian Newspaper*

16   *Distribution, Inc.*, 289 F. Supp. 3d 1061, 1070 (C.D. Cal.

17   2017), *aff'd*, 742 F. App'x 291 (9th Cir. 2018) ("[A]n implied

18   license, like any other contract, is terminable at the will of

19   either party if it is not for a specified term."). One final flaw

20   exists in the attempt to bind Cinco to the AJVA, and that is

21   one of issue preclusion in favor of Plaintiffs. As evidenced by

22   Plaintiff's own Third Amended Complaint (verified) in the

23   Prior Governance Action, the entire pleading is based on the

24   theory that -- and it sought judgment concluding that --  Cinco

25   is an alter ego of the entity that was a 60% member of PCJV.

26   (*See* Trial Exhibit No. 1421 p. 7:3-14.) Such allegations,

27   having been dismissed, with  prejudice, by  Koren, re4nder

28

---

48

SECOND AMENDED JOINTLY FILED CLAIMS,
COUNTERCLAIMS, THIRD PARTY CLAIMS, AND
AFFIRMATIVE DEFENSES TO BE TRIED

CASE NO. 2:24-CV-04546-SB(AGRX)

1  thee accusations extinguished, and, as such, Defendants are

2  precluded from alleging them ever again.

3  Regarding likelihood of confusion, which may be presumed,

4  and the jury may be so instructed "[w]here,' as here, "a

5  licensee persists in the unauthorized use of a licensor's

6  trademark, courts have found that the continued use alone

7  establishes a likelihood of consumer confusion." *Robert Trent*

8  *Jones II, Inc. v. GFSI, Inc*., 537 F. Supp. 2d 1061, 1065 (N.D.

9  Cal. 2008) (citing and quoting *Sun Microsystems v. Microsoft*

10  *Corp.,* 999 F.Supp. 1301, 1311 (N.D.Cal.1998) (citing *Paisa,*

11  *Inc. v. N & G Auto, Inc.,* 928 F.Supp. 1009, 1012 n. 4

12  (C.D.Cal.1996); *Hollywood Athletic Club,* 938 F.Supp. at 614–

13  15 (C.D.Cal.1996)). The Sixth Circuit's analysis in <u>Max Rack,</u>

14  <u>Inc. v. Core Health & Fitness, LLC</u>, 40 F.4th 454, 464 (6th Cir.

15  2022) is instructive:

16

17  "A separate body of law has developed for this
distinct claim that a holdover licensee has

18  continued to use a licensor's mark after their
agreement expired. *See* 4 McCarthy, *supra*, §

19  25:31 (citing cases). In this context, courts have
jettisoned the usual totality-of-the-circumstances

20  test in favor of a more categorical rule: "proof of
continued, unauthorized use of an original

21  trademark by one whose license to use the
trademark had been terminated is sufficient to

22  establish 'likelihood of confusion.' " *U.S.*

23  *Structures, Inc. v. J.P. Structures, Inc.*, 130 F.3d

24  1185, 1190 (6th Cir. 1997); *ITT Indus., Inc. v.*
*Wastecorp. Inc.*, 87 F. App'x 287, 293 (3d Cir.

25  2004); *Gorenstein Enters., Inc. v. Quality Care-*

26  *USA, Inc.*, 874 F.2d 431, 435 (7th Cir. 1989);

27  *Burger King Corp. v. Mason*, 710 F.2d 1480,

28

49

1492–93 (11th Cir. 1983); *Pro. Golfers Ass'n of Am. v. Bankers Life & Cas. Co.*, 514 F.2d 665, 670 (5th Cir. 1975); *L & L Wings, Inc. v. Marco-Destin, Inc.*, 676 F. Supp. 2d 179, 188 (S.D.N.Y. 2009). This rule makes good sense when a holdover licensee blatantly infringes the licensor's mark by using that mark in the same way as it did before the agreement expired. Without any need to tick through factors, it should be obvious that consumers will believe, for example, that a pizza restaurant remains affiliated with the "Little Caesars" chain when a terminated franchisee continues to operate the pizzeria as a Little Caesars. *See Little Caesar Enters., Inc. v. Miramar Quick Serv. Rest. Corp.*, 2020 WL 4516289, at *3 (6th Cir. 2020) (order)"

Although Plaintiff intends to, and will, adduce proof of the *Sleekcraft* factors, the presumption exists, and it is entitled to stand on this presumption alone.

v. <u>Defendants' Position Statement:</u> Defendants incorporate all their above legal positions.

vi. <u>Plaintiff's Supporting Evidence:</u> Trial Exhibit 29 (May 31, 2024 Termination); photographs of various stores taken from May 31, 2025 through the present; Testimony of Koren; Plaintiff executives Gregorio (Plaiuntiff's CEO), Concepcion (Plaintiff's COO charged with US operations), Tan (Director responsible for international franchising); investigator; Franchisees; Kim Lambert and Barry Kurtz; in addition to the following documents Amended Joint Venture Agreement and Joint Venture Agreement.

vii. <u>Defendants' Supporting Evidence:</u> Defendants incorporate their above factual positions.

**3) <u>Claim 9 (from FAC, Dkt. 65): Quantum Meruit Against PCJV</u>**

    a. <u>Element No. 1:</u> That Defendant requested, by words or conduct, that Plaintiff provide a license to use the Potato Corner Intellectual Property for the benefit of Defendant PCJV;

        i. This element is disputed.

        ii. <u>Nature of Dispute:</u> Legal and Factual

        iii. <u>Plaintiff's Position Statement:</u> Defendants' issues are factual and not legal.

        iv. <u>Defendants' Position Statement:</u> *Quantum meruit* is an implied contract (or quasi-contract) claim stemming from requested services "under which a plaintiff who has rendered services benefiting the defendant may recover the reasonable value of those services when necessary to prevent unjust enrichment of the defendant." *In re De Laurentiis Ent. Grp. Inc.*, 963 F.2d 1269, 1272 (9th Cir. 1992). Plaintiff will be unable to establish liability for *quantum meruit* for three reasons:  Defendants (1) "requested" no (2) "services" from Plaintiff for which Plaintiff had a (3) "reasonable expectation" of payment. *See McLeod v. Zero Gravity Mgmt.,* 2:22-CV-01547-FWS-AGR, 2024 WL 3304527, at *10 (C.D. Cal. Jan. 8, 2024); *see also Corsini v. Canyon Equity, LLC,* C-10-2061-JL, 2011 WL13247447, at *6 (N.D. Cal, May 23, 2011). Plaintiff's quantum meruit cause of action does not contain critical elements of the cause of action. *See* CACI No. 317.

        v. <u>Plaintiff's Supporting Evidence:</u> Course of Dealings between Defendants and SPAVI,. Specifically, Defendants have no evidence of a written license to use SPAVI's Potato Corner

1   Intellectual Property, and, as such, its rights (that it has sold to
2   its franchisees) derive from what is, at best, a terminable at will,
3   fully revocable license because Defendants were nonetheless
4   operating Potato Corner locations, as if a written license existed.
5   *See Pogrebnoy v. Russian Newspaper Distribution, Inc.,* 289 F.
6   Supp. 3d 1061, 1070 (C.D. Cal. 2017), aff'd, 742 F. App'x 291
7   (9th Cir. 2018) ("[A]n implied license, like any other contract, is
8   terminable at the will of either party if it is not for a specified
9   term."). After SPAVI's acquisition of the Potato Corner brand, it
10  became the licensor of the Potato Corner Intellectual Property.
11  Between December of 2021 through 2024, the months
12  immediately preceding this action, SPAVI engaged in a good
13  faith and exhaustive attempt to negotiate the terms of a written
14  license with PCJV. Defendant Guy Koren engaged and
15  participated in this negotiation; Testimony of Koren, Plaintiff
16  executives Gregorio (Plaiuntiff's CEO), Concepcion (Plaintiff's
17  COO charged with US operations), Tan (Director responsible
18  for international franchising), Magsaysay (Cinco's CEO);
19  Emails and correspondence with SPAVI, Koren, and PCJV
20  relating to negotiations of a licensing agreement for the use of
21  the Potato Corner Intellectual Property; Amended Joint Venture
22  Agreement; Franchise Agreements; FDDs

23  vi.   Defendants' Supporting Evidence: (1) There was no request for
24  services; PCJV USA, LLC's objected to Plaintiff's transaction
25  with its former fiduciary and joint venture partner Cinco
26  Corporation and asserted its pre-existing rights to use and
27  control Potato Corner in the United States; it did not "request"

28

SECOND AMENDED JOINTLY FILED CLAIMS,                    CASE NO. 2:24-CV-04546-SB(AGRX)
COUNTERCLAIMS, THIRD PARTY CLAIMS, AND
AFFIRMATIVE DEFENSES TO BE TRIED

1    any services from Plaintiff; rather, PCJV USA, LLC's became

2    subject to an involuntary interloper in breach of Cinco

3    Corporation's fiduciary and contractual obligations; (2) No

4    "services" were provided by Plaintiff to PCJV USA, LLC's

5    within the meaning of *quantum meruit* even according to

6    Plaintiff's own authority cited in its Memorandum of

7    Contentions of Law and Fact (Dkt. No. 199, citing *Cosmonova,*

8    *LLC v. BioFilm*, Inc., 763 F. Supp. 3d 1157 (S.D. Cal. 2025)

9    (dismissing quantum meruit claim)). Rather, Plaintiff allegedly

10    provided an implied "at-will" license allegedly extinguishing

11    PCJV USA, LLC's long-term right to use and/or to a long-term

12    license, which was beneficial to Plaintiff, indeed far more

13    beneficial to Plaintiff, and thus not a "service" within the

14    meaning of *quantum meruit. Cosmonova, LLC*, 763 F. Supp. 3d

15    at 1172. (3) Plaintiff had no reasonable expectation of any

16    royalty payment to Plaintiff for the same reason no royalty is

17    recoverable under the Lanham Act. Plaintiff never paid a royalty

18    to Cinco Corporation, no claim for breach of contract was

19    brought by Cinco Corporation, and Plaintiff cannot put itself

20    into a better situation than its assignor, Cinco Corporation. *See*

21    McCarthy, *supra*, § 18:15 ("'It is elementary ancient law that an

22    assignee never stands in any better position than his

23    assignor….'") (citation omitted). Defendants are simply seeking

24    a windfall or to punish Defendants' exercise of First

25    Amendment rights.

26    a. <u>Element No. 2:</u> That Plaintiff provided such license to use the Potato

27    Corner Intellectual Property as requested by Defendant PCJV.

28

SECOND AMENDED JOINTLY FILED CLAIMS,                    CASE NO. 2:24-CV-04546-SB(AGRX)
COUNTERCLAIMS, THIRD PARTY CLAIMS, AND
AFFIRMATIVE DEFENSES TO BE TRIED

i.   This element is disputed.

ii.  Nature of Dispute: Legal and Factual

iii. Plaintiff's Position Statement: this is a factual dispute.

iv.  Defendants' Position Statement: Defendant disputes Element 2 for the same reason they dispute Element 1.

v.   Plaintiff's Supporting Evidence: Defendants have operated Potato Corner locations that utilize the Potato Corner Intellectual Property through what is, at best, a terminable at will, fully revocable license because Defendants were nonetheless operating Potato Corner locations, as if a written license existed. *See Pogrebnoy v. Russian Newspaper Distribution, Inc.,* 289 F. Supp. 3d 1061, 1070 (C.D. Cal. 2017), aff'd, 742 F. App'x 291 (9th Cir. 2018) ("[A]n implied license, like any other contract, is terminable at the will of either party if it is not for a specified term."). SPAVI has consented to that use until the termination of the license agreement on May 31, 2024; Trial Exhibit 29 (May 31, 2024 Termination); Testimony of Concepcion (Plaintiff's COO charged with US operations), Tan (Director responsible for international franchising), Magsaysay (Cinco's CEO), Koren; Emails and correspondence with SPAVI, Koren, and PCJV relating to negotiations of a licensing agreement for the use of the Potato Corner Intellectual Property; Amended Joint Venture Agreement; Franchise Agreements; FDDs

vi.  Defendants' Supporting Evidence: Defendant relies upon the same record evidence to dispute both Elements 1 and 2.

b.   Element No. 3: That Defendant has not paid Plaintiff royalties or any

---

54

1    other compensation to Plaintiff for the use of the Potato Corner
2    Intellectual Property
3        i. This element is disputed.
4        ii.    Nature of Dispute: Legal and Factual
5        iii.    Plaintiff's Position Statement: Plaintiff does not know
6            what the issue is here.
7        iv.    Defendants' Position Statement: Defendant disputes
8            Element 3 for the same reason they dispute Element 1.
9        v.    Plaintiff's Supporting Evidence: Financial statements
10           produced by Defendants showing that there have been no
11           royalty fees paid to SPAVI; Testimony of Koren, Plaintiff
12           executives Gregorio (Plaintiff's CEO), Concepcion (Plaintiff's
13           COO charged with US operations), Tan (Director responsible
14           for international franchising), Jose Magsaysay (Cinco's CEO)
15       vi.    Defendants' Supporting Evidence: Defendant relies upon
16           the same record evidence to dispute both Elements 1 and 2.
17    c.  Element No. 4: The reasonable value for the use of the Potato Corner
18        Intellectual Property that was provided.
19        i. This element is disputed.
20        ii.    Nature of Dispute: Factual
21        v.  Plaintiff's Supporting Evidence: Financial statements produced
22           by Defendants showing that there have been no royalty fees paid
23           to SPAVI; Testimony of Koren, Plaintiff executives Gregorio
24           (Plaintiff's CEO), Concepcion (Plaintiff's COO charged with
25           US operations), Tan (Director responsible for international
26           franchising), Jose Magsaysay (Cinco's CEO); Notarized Deeds
27           signed by seller and buyer; USPTO filings including
28

SECOND AMENDED JOINTLY FILED CLAIMS,                    CASE NO. 2:24-CV-04546-SB(AGRX)
COUNTERCLAIMS, THIRD PARTY CLAIMS, AND
AFFIRMATIVE DEFENSES TO BE TRIED

1    Registrations and Assignments

2    iii.    Defendants' Supporting Evidence: The reasonable value

3    is nominal or $1.00 because the 15-year track record is equal

4    payment of royalties and service fees (followed by and waiver in

5    favor of growth). See McCarthy, supra, § 18:15 ("'It is

6    elementary ancient law that an assignee never stands in any

7    better position than his assignor….'") (citation omitted).

8

9    **4) Claim 10 (from FAC, Dkt. 65): Misappropriation of Trade Secrets**

10    a.    Element No. 1: That SPAVI owned the recipes, ingredients, and

11    ingredient allocations for its proprietary flavorings, the identities of its

12    suppliers, and other know-how, procedures, and processes used and

13    employed at Potato Corner outlets, including outlets owned and/or

14    operated by Defendants ("Potato Corner Trade Secrets")

15    i. This element is disputed.

16    ii.    Nature of Dispute: Legal and Factual

17    iii.    Plaintiff's Position Statement: SPAVI owned or

18    controlled specific ingredients of the proprietary flavorings,

19    the quantities of such ingredients, and the relative proportion

20    of such ingredients,, including all steps taken to combine and

21    mix specific ingredients, comprise of trade secrets.

22    iv.    Defendants' Position Statement: As a threshold matter, a

23    trade secret could only comprise "information, including a

24    formula, pattern, compilation, program, device, method,

25    technique, or process." Cal. Civ. Code 3426.1(d). SPAVI has

26    not identified what "information" it claims Defendants

27    misappropriated. "Flavors" is not information, and packaging

28

1    is an object. Thus, SPAVI cannot carry its burden to "identify

2    the trade secrets and carry the burden of showing they exist."

3    *InteliClear, LLC v. ETC Global Holdings, Inc.*, 978 F.3d 653,

4    658. A flavor is an idea and catch-all phrase, which is not

5    protected. *Id.*; *Silvaco Data Systems v. Intel Corp.*, 184 Cal.

6    App. 4th 210, 220 (2010). Moreover, the plaintiff must "own"

7    the trade secret—meaning the plaintiff either has title to the

8    secret or has knowledge of the know how and licenses it with a

9    confidentiality obligation. *See Sinclair v. Aquarius*

10   *Electronics, Inc.,* 42 Cal.App.3d 216, 225-228 (1974) (trade

11   secret licensing involves sharing sensitive, undisclosed

12   information). A conclusory assignment from a prior reseller

13   with no knowledge of the trade secret does not establish the

14   required chain of title. *Memry Corp. v. Kentucky Oil*

15   *Technology, N.V.*, No. C-04-03843 RMW, 2006 WL 3734384,

16   at *5 (N.D. Cal. 2006). Here, there is no evidence of the

17   existence or ownership of trade secret information

18        v.    Plaintiff's Supporting Evidence: SPAVI owns all

19   trademarks, service marks, recipes, trade secrets, and other

20   intellectual property affiliated with the Potato Corner brand.

21   SPAVI acquired all of this intellectual property from the then-

22   owners, Cinco Corporation ("Cinco"), in a deal that closed in

23   2022.  Additional evidence includes: Notarized Deeds signed

24   by seller and buyer; USPTO filings including Registrations

25   and Assignments, testimony of Gregorio (Plaintiff's CEO),

26   Magsaysay (Cinco's CEO), Tan (Director responsible for

27   international franchising),

28

SECOND AMENDED JOINTLY FILED CLAIMS,                    CASE NO. 2:24-CV-04546-SB(AGRX)
COUNTERCLAIMS, THIRD PARTY CLAIMS, AND
AFFIRMATIVE DEFENSES TO BE TRIED

vi.    Defendants' Supporting Evidence: the following category, which is defined above, captures the key phase and supporting evidence: SPAVI Parties' Tortious Conduct. Among other things, Cinco Corporation's consent to reverse engineering of spices means that Plaintiff's predecessor did not know the alleged secret, did not own or have a trade secret license, and did not assign one to Plaintiff.

b.    Element No. 2: That these Potato Corner Trade Secrets were a secret at the time of the misappropriation

i. This element is disputed

ii.    Nature of Dispute: factual

iii.    Plaintiff's Supporting Evidence: The Potato Corner brand is identifiable by its preparation of fries, which uses seven proprietary flavorings sold to SPAVI by one single supplier, the identity of which is confidential and not publicly known. The ingredients are not known outside the Potato Corner family, and the specific recipe (and proportions of each ingredient) are also kept secret. SPAVI maintains and benefits from the secrecy of the recipes and ingredient allocation of each flavoring and requires its supplier to protect that secrecy. The only persons with access to the flavoring packets delivered from the supplier (with ingredients listed but not quantities and proportions) are those bound by confidentiality and secrecy in favor. Anyone with access to the flavoring packages and ingredients is prohibited from using them for a purpose other than for the Potato Corner brand's benefit and may not misappropriate or take for themselves any of the

SECOND AMENDED JOINTLY FILED CLAIMS, COUNTERCLAIMS, THIRD PARTY CLAIMS, AND AFFIRMATIVE DEFENSES TO BE TRIED

CASE NO. 2:24-CV-04546-SB(AGRX)

proprietary information embodied in those packets. Additional evidence includes: The Franchise Disclosure Documents ("FDD"); agreements with the Franchisees; testimony of Gregorio (Plaintiff's CEO), Magsaysay (Cinco's CEO), Ybanez (Plaintiff's General Counsel), Tan (Director responsible for international franchising), and Franchisees

    iv.    Defendants' Supporting Evidence: supplier agreements; third-party Ferna's sale of spices to the public that SPAVI contends are secret; Cinco Corporation's consent for reverse engineering of spices (meaning it did not know the alleged secret and thus did not have a trade secret license); and SPAVI's lack of evidence demonstrating it maintain secrecy, including but not limited to non-disclosure agreements, physically locked storage of product and recipes alleged to be trade secrets, use of two-factor authentication to access online storage of recipes alleged to be trade secrets, monitoring and securing of employees' and agents' communications and use technology to transfer data to third parties, such as by way of flash drives and cloud storage.

  c.  <u>Element No. 3:</u> That Defendants improperly acquired, used, or disclosed the Potato Corner Trade Secrets

    i. This element is disputed

    ii.    Nature of Dispute: Legal and Factual

    iii.    Plaintiff's Position Statement: Defendants wrongfully used or disclosed Potato Corner Trade Secrets by transferring them to Third Parties despite acknowledging repeatedly that they consisted of trade secrets in writings.

iv.    Defendants' Position Statement: By statute, reverse engineering is fair competition. It follows that, to establish wrongful acquisition, use or disclosure, Plaintiff must establish a legal duty in the acquisition of a product not to reverse engineer it. However, Plaintiff denies and cannot establish any legal duty between Plaintiff and Defendants as it affirmatively alleges they are not fiduciaries, it did not assume obligations and there is no privity of contract establishing any confidentiality obligation between them

v.    Plaintiff's Supporting Evidence: Both the JVA and AJVA contain an agreement to agree on a Master License Agreement. However, there was never a written license agreement between Plaintiff and Defendants. After SPAVI acquired the Potato Corner intellectual property rights, which included the Potato Corner Trade Secrets, SPAVI engaged in a good faith and exhaustive attempt to negotiate the terms of a written license with Defendants. Defendant Guy Koren engaged and participated in this negotiation, but was unwilling to agree to any minimally commercially viable licensing terms. Moreover, Guy Koren refused to, engage in reasonable and good faith negotiation. Instead, he only offered royalty rates and license fees that were more than 90% below what Koren had agreed to be reasonable licensing fees over a decade prior. Koren also repeatedly disengaged from the negotiation process, but still was utilizing the Potato Corner Intellectual Property. Therefore, SPAVI terminated the license agreement as of May 31, 2024. After the termination, Defendants improperly,

illegally, and unfairly misappropriated the flavoring packages in their possession, which should have been returned immediately following receipt of the May 31, 2024, Termination Letter, and transferred possession of those proprietary packages of flavorings to a third party for the purpose of reverse-engineering the flavorings directly from the packages themselves. Defendants also developed "Undercover Fries" to roll out the reverse engineered fries to compete with the Potato Corner brand while, at the same time, operating Potato Corner outlets and being in possession of the Potato Corner Intellectual Property, including the Potato Corner Trade Secrets. Additional evidence includes: Franchisee Photographs; Testimony from former franchisees, Concepcion (Plaintiff's COO charged with US operations), Koren, investigator; the Franchise Agreements; FDDs; and leases, of PCJV over the years.

     i. Defendants' Supporting Evidence: Superseding Joint Venture (2008–2010), Alternative Licensing Arrangements and Ongoing Ratification (2011–2012), Formalization and Modification of the Joint Venture (2012), LA Group Partnership Agreement and Evolving Business Dynamics and Terms (2013–2018), Dispute, Litigation, and State Court Proceedings (2018 and Beyond), and Ongoing Annual Ratification and Regulatory Compliance.

d. <u>Element No. 4</u>: That SPAVI was harmed and/or Defendants were unjustly enriched by its use of the Potato Corner Trade Secrets

     i. This element is disputed

     ii. Nature of Dispute: Factual

SECOND AMENDED JOINTLY FILED CLAIMS, COUNTERCLAIMS, THIRD PARTY CLAIMS, AND AFFIRMATIVE DEFENSES TO BE TRIED
    CASE NO. 2:24-CV-04546-SB(AGRX)

iii.     <u>Plaintiff's Supporting Evidence:</u> The secrecy of the Potato Corner Trade Secrets holds value to SPAVI. The reverse engineering was an unauthorized taking of a trade secret for Defendants own personal benefit to open a competing store "Undercover Fries". Additional evidence includes: Franchisee Photographs; Testimony from former franchisees, Gregorio (Plaintiff's CEO), Concepcion (Plaintiff's COO charged with US operations), Ybanez (Plaintiff's General Counsel), Tan (Director responsible for international franchising), and Koren; the Franchise Agreements; FDDs; leases, of PCJV over the years; and financial statements of Defendants.

iv.     Defendants' Supporting Evidence: Defendants incorporate their above factual positions

e.   <u>Element No. 5:</u> Defendants acquisition, use, or disclosure of the Potato Corner Trade Secrets was a substantial factor in causing Plaintiff's harm or for Defendants to be unjustly enriched.

i. This element is disputed

ii.     Nature of Dispute: Factual

iii.     <u>Plaintiff's Supporting Evidence:</u> Defendants' misappropriation, wrongful disclosure, and/or repudiation of the existence of SPAVI's above-described trade secrets and proprietary information, SPAVI has been damaged and continues to be damaged. Evidence includes: Defendants financials for the period in question May 31, 2024 through the present; testimony of Gregorio (Plaintiff's CEO), Ybanez (Plaintiff's General Counsel), Concepcion (Plaintiff's COO charged with US operations), Tan (Director responsible for

SECOND AMENDED JOINTLY FILED CLAIMS,          CASE NO. 2:24-CV-04546-SB(AGRX)
COUNTERCLAIMS, THIRD PARTY CLAIMS, AND
AFFIRMATIVE DEFENSES TO BE TRIED

international franchising), Koren, franchisees.

    iv.    **Defendants' Supporting Evidence:** Defendants

incorporate their above factual positions

**I.**    **Defendants' Affirmative Defenses to be Tried by a Jury**

    **1)**  **Affirmative Defense No. 1: Waiver (asserted by all Defendants as to**

        **all claims alleged by SPAVI against them)**

        a.  <u>Element No. 1:</u> Through implied and/or express conduct, SPAVI

knowingly waived a valid right, privilege, advantage, or benefit

allegedly conferred upon it and its attempt to enforce that right,

privilege, advantage, or benefit is thus barred.

      i.  The parties dispute that this element is satisfied.

      ii.  <u>Nature of Dispute:</u> Factual and Legal

      iii.  <u>Defendants' Position Statement:</u> The specific rights or

privileges that have been waived include the alleged right to

terminate PCJV USA, LLC's right to use the U.S. Potato

Corner marks, and the alleged right to claim that the purchased

seasoning packages were secret and improperly acquired.

Plaintiff's enforcement waiver is based on Plaintiff and

Plaintiff's predecessor's knowing acquiescence in PCVJ USA,

LLC's use and quality control of Potato Corner in the United

States, including before and after Plaintiff's alleged acquisition

of the same. *See* McCarthy, *supra*, § 18:15 ("'It is elementary

ancient law that an assignee never stands in any better position

than his assignor,' thus once an assignee has notice of an

injunction against the assignor, it is bound to comply.")

(citation omitted). Plaintiff's predecessor acquiesced for years

in PCJV USA, LLC's use and quality contract. The fact of

1   Plaintiff's due diligence, negotiations, and alleged transaction

2   with Cinco Corporation before allegedly acquiring the U.S.

3   trademarks put Plaintiff on actual notice of PCJV USA, LLC's

4   use and control rights, and in response Plaintiff represented

5   that it would be bound by any agreements related to the

6   licensing of Potato Corner intellectual property in the United

7   State, and thereafter did not attempt to enforce any alleged

8   contrary right for years and then denied acquiring PCJV USA,

9   LLC's use and quality control rights. As to the commercial

10   sale of packaged seasonings, both Plaintiff and its predecessor

11   have known for years that they did not own them, that they

12   were publicly available for purchase in the market, and that it

13   was not improper to reverse engineer them, and Plaintiff

14   thereafter fulfilled an order and agreed to a fulfill a second

15   order even after the alleged termination.

16   iv.   Plaintiff's Position Statement: Defendants fail  to identify any

17   specific right or privilege or benefit that was  waived. The only

18   relationship between SPAVI and any Defendant, was that of

19   licensor to licensee, pursuant  to an implied license. The only

20   right that SPAVI  possessed was to terminate or  negotiate. It

21   decision  to wait to negotiate  with Koren is not a waiver oof

22   its right to terminate.  Ironically, it is SPAVI that is alleging

23   that Defendants waived their right to claim the AJVA confers

24   perpetual licensing rights, after negotiating the terms of a

25   written license that would confer narrower rights for three

26   years without once taking the position that it did not need a

27   written license – a  three year  period during which much

28

SECOND AMENDED JOINTLY FILED CLAIMS,
COUNTERCLAIMS, THIRD PARTY CLAIMS, AND
AFFIRMATIVE DEFENSES TO BE TRIED

CASE NO. 2:24-CV-04546-SB(AGRX)

1    occurred in reliance on Korenn's assent to the need for a

2    written license.

3         v.    <u>Defendants' Supporting Evidence:</u> The PCJV USA Parties

4    intend to rely on testimony and also on a robust written

5    evidentiary record which demonstrates the parties' mutual

6    intentions and the evolution of their business relationship from

7    the inception through the present. The following categories

8    and chronology capture the key phases and supporting

9    evidence: *1. Superseding Joint Venture (2008–2010)*,

10    including (a) testimony and documentary evidence (i.e.,

11    communications and the original NKM Master License

12    Agreement) showing the parties' shared intent to bring Potato

13    Corner to the U.S., (b) exhibits reflecting the transition from a

14    simple license to a joint venture partnership in 2009-2010,

15    including meeting minutes, correspondence, and planning

16    documents from April/May 2010, (c) evidence of the July

17    2010 formation of PCJV USA, LLC as the master franchisor

18    for all U.S. and Israel operations, with PCJV granted all rights

19    to use and license the U.S. intellectual property ("Superseding

20    Joint Venture (2008–2010)"); *2. Alternative Licensing*

21    *Arrangements and Ongoing Ratification (2011–2012)*,

22    including (a) documents and communications (i.e., DLA Piper

23    records, regulatory filings, and Franchise Disclosure

24    Documents) evidencing the parties' reliance on an alternative

25    license agreement in 2011 for Cinco's benefit, which was

26    referenced and ratified in annual FDDs and other regulatory

27    filings, (b) evidence of the 2012 Master Services Agreement,

28

SECOND AMENDED JOINTLY FILED CLAIMS,    CASE NO. 2:24-CV-04546-SB(AGRX)
COUNTERCLAIMS, THIRD PARTY CLAIMS, AND
AFFIRMATIVE DEFENSES TO BE TRIED

which authorized the LA Group to license the brand for an
indefinite duration, further reflecting the parties' mutual
understanding and operational structure ("Alternative
Licensing Arrangements and Ongoing Ratification (2011–
2012)"); *3. Formalization and Modification of the Joint
Venture (2012)*, including (a) executed copies of the Joint
Venture Agreement (JVA) and the LLC Operating Agreement
from August 2012, memorializing the parties' rights,
obligations, and governance structure, (b) the First
Amendment to the JVA (October 2012), with supporting
meeting minutes, documenting specific modifications to the
parties' governance protocols only ("Formalization and
Modification of the Joint Venture (2012)"); *4. LA Group
Partnership Agreement and Evolving Business Dynamics and
Terms (2013–2018)*, including (a) the 2013 written partnership
agreement entered into by the LA Group, reflecting further
refinement of the parties' roles and expectations, (b)
communications, board minutes, and negotiation records from
2015–2018 detailing ongoing discussions about operational
challenges, restructuring proposals (including Koren's
potential acquisition of Cinco shares or the LA Group's
acquisition of 100% of PCJV/PCI Trading), and a
contemplated new Master License Agreement for Cinco's
benefit in exchange for 100% ownership in PCJV/PCI Trading
("LA Group Partnership Agreement and Evolving Business
Dynamics and Terms (2013–2018)"); *5. Dispute, Litigation,
and State Court Proceedings (2018 and Beyond)*, including (a)

SECOND AMENDED JOINTLY FILED CLAIMS,
COUNTERCLAIMS, THIRD PARTY CLAIMS, AND
AFFIRMATIVE DEFENSES TO BE TRIED

CASE NO. 2:24-CV-04546-SB(AGRX)

1   evidence of the April 2018 board meeting and resolutions that

2   precipitated the state court litigation, including verified

3   pleadings, declarations, and court filings that set forth the

4   parties' mutual intentions and positions during the dispute,

5   including also, if necessary, settlement negotiation discussions

6   and the settlement and other agreements reached among the

7   parties, (b) additional documents and testimony from the state

8   court proceedings, including verified cross-complaints,

9   declarations, and orders, which further clarify the parties'

10  understanding and course of conduct ("Dispute, Litigation, and

11  State Court Proceedings (2018 and Beyond)"); *6. Ongoing*

12  *Annual Ratification and Regulatory Compliance*, including

13  FDDs, regulatory filings, and correspondence with state

14  agencies, evidencing the parties' continued mutual recognition

15  of the licensing and franchising structure, as well as the

16  ratification of their agreements and operational practices

17  ("Ongoing Annual Ratification and Regulatory Compliance");

18  *7. SPAVI Parties' Tortious Conduct*, including a

19  comprehensive body of documents and testimony which

20  demonstrates the SPAVI parties' coordinated and wrongful

21  actions aimed at appropriating the business operations, supply

22  chain, and goodwill of the Potato Corner USA franchise

23  system for their own benefit, such as (a) testimony and

24  documentary evidence showing SPAVI's deliberate efforts to

25  undermine and take over PCJV's established franchise

26  network in the United States, (b) communications, internal

27  memoranda, and correspondence reflecting SPAVI's outreach

28

SECOND AMENDED JOINTLY FILED CLAIMS,                    CASE NO. 2:24-CV-04546-SB(AGRX)
COUNTERCLAIMS, THIRD PARTY CLAIMS, AND
AFFIRMATIVE DEFENSES TO BE TRIED

1     to PCJV franchisees, including direct offers of temporary

2     licenses and inducements to sever ties with PCJV, as detailed

3     in termination letters and related notices, (c) evidence of

4     SPAVI's attempts to bypass PCJV's role as franchisor by

5     negotiating directly with third-party franchisees, thereby

6     disrupting existing contractual relationships and causing

7     business uncertainty, (d) documents and witness statements

8     establishing SPAVI's interference with PCI Trading's

9     procurement and distribution of supplies, (e) testimony

10    regarding SPAVI's refusal to supply powders to PCJV and its

11    franchisees following the purported termination of the license,

12    thereby jeopardizing ongoing operations and franchisee

13    livelihoods, (f) evidence of SPAVI's efforts to control or

14    redirect supplier relationships, including attempts to obtain

15    confidential supplier information and to assert exclusive rights

16    over the sourcing and distribution of Potato Corner products in

17    the U.S., (g) testimony and exhibits documenting SPAVI's use

18    of the established Potato Corner USA brand reputation and

19    customer base to promote its own interests, including public

20    statements, regulatory filings, and direct communications with

21    franchisees and suppliers, (h) rather than simply seeking

22    declaratory relief, SPAVI's own conduct has interjected

23    potential confusion in the marketplace, including the

24    unauthorized use of trademarks, solicitation of franchisees, and

25    dissemination of misleading information regarding the status

26    of the franchise system and intellectual property rights, (i)

27    documents showing SPAVI's attempts to claim ownership of

28

SECOND AMENDED JOINTLY FILED CLAIMS,         CASE NO. 2:24-CV-04546-SB(AGRX)
COUNTERCLAIMS, THIRD PARTY CLAIMS, AND
AFFIRMATIVE DEFENSES TO BE TRIED

the goodwill and business relationships cultivated by PCJV and PCI Trading over years of operation, despite the absence of any direct contractual relationship with many U.S. franchisees prior to the dispute, (j) evidence of the resulting harm to PCJV, PCI Trading, and the broader franchise network, including lost business opportunities, damaged supplier relationships, and erosion of brand value and goodwill ("SPAVI Parties' Tortious Conduct")..

    vi. <u>Plaintiff's Supporting Evidence:</u> testimony of the negotiators from 2021 through 2024 including Mr. Gregorio and Mr. Tan (from SSPAVI), their correspondence with Koren and his testimony, the NKM  License agreement and the JVA and AJVA (none of which SPAAVI is a party to or conferred rights that SPAVI  is  responsible for. The absence of contractual privity or otherwise is what disproves this affirmative defense.

  b. <u>Causes of Action Barred by this Affirmative Defense</u>: all of SPAVI's causes of action

**2) <u>Affirmative Defense No. 2: In Pari Delicto (asserted as to all of SPAVI's causes of action).</u>**

  a. <u>Element No. 1</u>: Plaintiff and Defendants have substantially equal economic strength.

    i. This element is not in dispute.

  b. <u>Element No. 2</u>: Plaintiff is at least equally responsible for the harmful conduct as Defendants.

    i. Disputed Status of Element 2: The parties dispute that this element is satisfied.

ii. Nature of Dispute: Legal and Factual

iii. <u>Defendants' Position Statement:</u> Defendants' elements precisely follow CACI No. 3431

iv. <u>Plaintiff's Position Statement:</u> the statement of these elements omit that to apply "in pari dilecto" requires that SPPAVI have engaged in "illegal, fraudulent, or inequitable conduct," and that has never been alleged, nor is there any evidence of this.

v. <u>Defendant's Supporting Evidence:</u> the following category, which is defined above, captures the key phase and supporting evidence: SPAVI Parties' Tortious Conduct.

vi. <u>Plaintiff's Supporting Evidence:</u> testimony of the negotiators from 2021 through 2024 including Mr. Gregorio and Mr. Tan (from SSPAVI), their correspondence with Koren and his testimony, the NKM License agreement and the JVA and AJVA (none of which SPAAVI is a party to or conferred rights that SPAVI is responsible for. The absence of contractual privity or otherwise is what disproves this affirmative defense.

c. <u>Element No. 3</u>: Plaintiff was not held by economic pressure to engage in harmful conduct.

i. Disputed Status of Element 3: The parties dispute that this element is satisfied.

ii. <u>Nature of Dispute:</u> Legal and Factual.

iii. <u>Defendants' Position Statement:</u> Defendants' elements precisely follow CACI No. 3431.

iv. <u>Plaintiff's Position Statement:</u> the statement of these elements omit that to apply "in pari dilecto" requires that SPPAVI have engaged in "illegal, fraudulent, or inequitable conduct," and

1    that has never been alleged, nor is there any evidence of this.

2    v.   <u>Defendant's Supporting Evidence</u>: documents and testimony

3    including and related to (1) PCJV USA, LLC's right to use

4    Potato Corner IP and quality control rights related thereto under

5    PCJV USA, LLC's governing documents, including agreements

6    and related negotiations, franchise disclosure documents and

7    board minutes; (2) the parties' course of conduct regarding

8    PCJV USA, LLC's use and control of U.S. Potato Corner

9    trademarks; (3) the fact of SPAVI's due diligence, negotiations,

10   and alleged acquisition of Cinco Corporation's assets and

11   liabilities; (4) SPAVI's denial of acquiring any IP rights or

12   obligations under PCJV's governing documents; (5) SPAVI's

13   statement that it would be bound by a settlement with Cinco; (6)

14   SPAVI's knowing failure to do anything for years regarding

15   PCJV USA Parties' full exercise of its right to use and quality

16   control; and (7) SPAVI's decision to renege on a purchase order,

17   creating a short-term supply chain problem.

18   vi.  <u>Plaintiff's Supporting Evidence:</u> testimony of the negotiators

19   from 2021 through 2024 including Mr. Gregorio and Mr. Tan

20   (from SSPAVI), their correspondence with Koren and his

21   testimony, the NKM License agreement and the JVA and

22   AJVA (none of which SPAAVI is a party to or conferred rights

23   that SPAVI is responsible for. The absence of contractual

24   privity or otherwise is what disproves this affirmative defense.

25   d.  <u>Causes of Action Barred by this Affirmative Defense</u>: all of SPAVI's

26   causes of action.

27   **3) <u>Affirmative Defense No. 3: Statute of Limitations. (asserted as to all of</u>**

28

SECOND AMENDED JOINTLY FILED CLAIMS,                    CASE NO. 2:24-CV-04546-SB(AGRX)
COUNTERCLAIMS, THIRD PARTY CLAIMS, AND
AFFIRMATIVE DEFENSES TO BE TRIED

**SPAVI's causes of action)**

    a. <u>Element No. 1</u>: SPAVI (either independently or as successor-in-interest to Cinco) knew, should have known, or had constructive notice of PCJV USA Parties' alleged infringing conduct over three years before SPAVI filed this action.

        i. The parties dispute that this element is satisfied.

        ii. Nature of Dispute: Factual

        iii. <u>Defendant's Supporting Evidence</u>: the following categories, which are defined above, capture the key phases and supporting evidence: Superseding Joint Venture (2008–2010), Alternative Licensing Arrangements and Ongoing Ratification (2011–2012), Formalization and Modification of the Joint Venture (2012), LA Group Partnership Agreement and Evolving Business Dynamics and Terms (2013–2018), Dispute, Litigation, and State Court Proceedings (2018 and Beyond), Ongoing Annual Ratification and Regulatory Compliance, and SPAVI Parties' Tortious Conduct.

        iv. <u>Plaintiff's Supporting Evidence</u>: Testimony off Mr. Gregorio (CEO of SPAVI) regarding termination of negotiations and sending the Termination Letter hours before this lawsuit was filed, such that, unless the statute of limitations is calculated by way of hours rather than years, this defense is an impossibility.

    b. <u>Causes of Action Barred by this Affirmative Defense</u>: all of SPAVI's causes of action.

**4)** <u>**Affirmative Defense No. 4: Abandonment through Assignment in Gross.**</u>

    a. <u>Element No. 1</u>: Cinco Corporation assigned U.S. Potato Corner trademarks to SPAVI without the goodwill associated with the

1  trademarks.

2          i.  The parties dispute that this element is satisfied.

3          ii.  Nature of Dispute: Factual and Legal

4          iii.  Defendants' Supporting Legal Position: Trademarks cannot be

5              assigned or transferred apart from the goodwill of the business

6              they represent. *See Federal Treasury Enterprise*

7              *Sojuzplodoimport v. Spirits Intern. N.V.*, 623 F.3d 61, 68 (2d

8              Cir. 2010); *Glow Industries, Inc. v. Lopez*, 273 F. Supp. 2d

9              1095, 1108 (C.D. Cal. 2003); *Hallmark Hardwoods, Inv. v.*

10             *Omni Wood Product, LLC*, 2011 WL 13176098, *15 (C.D. Cal.

11             2011); *In re Impact Distributors, Inc.*, 260 B.R. 48, 53-55 (S.D.

12             Fla. 2001); *Money Store v. Harriscorp Fin., Inc.*, 689 F.2d 666,

13             670 (7th Cir. 1982).

14         iv.  Plaintiff's Supporting Legal Position: this is a factual dispute.

15             Plaintiff argues that it did receive goodwill, while Defendants

16             argue that we did not.

17          v.  Defendants' Supporting Evidence: documents and testimony

18             including and related to (1) Defendants' senior use and quality

19             control of U.S. Potato Corner trademarks; (2) PCJV USA,

20             LLC's governing documents, including agreements and related

21             negotiations, franchise disclosure documents and board minutes;

22             (3) the parties' course of conduct regarding PCJV USA, LLC's

23             use and control of U.S. Potato Corner trademarks; (4) SPAVI's

24             knowledge of the same; (5) Defendants' Membership Interest

25             Purchase Agreement ("MIPA") with Cinco acquiring all of

26             Cinco's Interests in and any and all rights "attached" thereto

27             unencumbered by a need for a license from any third party; and

28

SECOND AMENDED JOINTLY FILED CLAIMS,                    CASE NO. 2:24-CV-04546-SB(AGRX)
COUNTERCLAIMS, THIRD PARTY CLAIMS, AND
AFFIRMATIVE DEFENSES TO BE TRIED

(6) the fact of SPAVI's due diligence, negotiation, and alleged acquisition of Cinco Corporation's assets and liabilities, and denial of acquiring PCJV's Potato Corner franchise business and any IP rights or obligations under PCJV's governing documents.

vi. <u>Plaintiff's Supporting Evidence:</u> the  deeds filed with the USPTO, proof of intent to continue using the marks,, including plans to expand rapidly within the US (testimony of SPAVI executives charged with this expansion, including Mr. Gregorio, Mr. Tann, and Mr. Concepcion, the COO.)

b. <u>Causes of Action Barred by this Affirmative Defense</u>: SPAVI's causes of action for Trademark Infringement (15 U.S.C. § 1114), Trademark Infringement (15 U.S.C. § 1125(a)), False Designation of Origin and Description of Fact (15 U.S.C. § 1125(a)), Contributory Trademark Infringement (15 U.S.C. § 1114), Contributory Trademark and False Designation of Fact (15 U.S.C. § 1125(a)), Common Law Trademark Infringement, Declaratory Relief and Unfair Competition (Bus. & Prof. Code § 17200).

5) **<u>Affirmative Defense No. 5: Abandonment through Naked Licensing.</u>**

a. <u>Element No. 1</u>: SPAVI Parties (including Cinco's) alleged licensed use of U.S. Potato Corner trademarks to PCJV USA Parties.

i. This element is disputed.

ii. <u>Nature of the dispute:</u> Legal

iii. <u>Defendants' Position Statement:</u> Defendants assert both ownership and use rights arising from naked licensing, i.e., authorization to use without adequate control. Ownership arises from Cinco Corporation's naked license because it barred the sale of any trademark rights to Plaintiff, and the PCJV USA

Parties acquired all of Cinco Corporation's Interests and rights in Potato Corner in the United States in their settlement and MIPA. Ownership also arises from Plaintiff's naked licensing because PCJV USA, LLC is a senior user of the mark, including because Plaintiff never had any right to control Potato Corner in the United States, did not exercise control over Potato Corner in the United States, and had no grounds to believe PCJV USA, LLC would listen to or take any instruction from SPAVI.

iv. <u>Plaintiff's Supporting Legal Position:</u> the wording of this element, however, is going to be confusing to a jury. If it is PCJV's position that it was not even a licensee as of May 31, 2024, the damages calculation will change considerably.

b. <u>Element No. 2</u>: SPAVI Parties (including Cinco) did not exercise adequate control over PCJV USA Parties' use of U.S. Potato Corner trademarks.

i. The parties dispute that this element is satisfied.

ii. Nature of Dispute: Factual and Legal.

iii. Defendant's Supporting Legal Position: Defendants assert both ownership and use rights arising from naked licensing, *i.e.,* authorization to use without adequate control. Ownership arises from Cinco Corporation's naked license because it barred the sale of any trademark rights to Plaintiff, and the PCJV USA Parties acquired all of Cinco Corporation's Interests and rights in Potato Corner in the United States in their settlement and MIPA. Ownership also arises from Plaintiff's naked licensing because PCJV USA, LLC is a senior user of the mark, including because Plaintiff never had any right to control Potato Corner in

1    the United States, did not exercise control over Potato Corner in

2    the United States, and had no grounds to believe PCJV USA,

3    LLC would listen to or take any instruction from SPAVI.

4    iv.  Plaintiff's Supporting Legal Position: First, this is an incorrect

5    statement of the law, as the focus is  less so on  the use of the

6    Marks, but more so on the nature and quality of the goods and/or

7    services sold by the licensee. Second, though unsatisfying in its

8    failure to conclusively resolve the debate, in the Ninth Circuit

9    this defense likely requires a showing of clear and convincing

10   evidence. FreecycleSunnyvale v. Freecycle Network, 626 F.3d

11   509, 514 (9th Cir. 2010)

12   v.  Defendants' Supporting Evidence: the following categories,

13   which are defined above, capture the key phases and supporting

14   evidence: Superseding Joint Venture (2008–2010), Alternative

15   Licensing Arrangements and Ongoing Ratification (2011–2012),

16   Formalization and Modification of the Joint Venture (2012), LA

17   Group Partnership Agreement and Evolving Business Dynamics

18   and Terms (2013–2018), Dispute, Litigation, and State Court

19   Proceedings (2018 and Beyond), Ongoing Annual Ratification

20   and Regulatory Compliance, and SPAVI Parties' Tortious

21   Conduct.

22   vi.  Plaintiff's Supporting Evidence: Pursuant to the three

23   considerations as to whether naked licensing has occurred, as

24   summarized in F19 Franchising, LLC v. Endo Fitness LL, LLC,

25   No. 2:23-CV-00185-MEMF-JCX, 2023 WL 11950376, at *6–9

26   (C.D. Cal. July 28, 2023), this is the one issue for trial  in which

27   the prior action is actually relevant,, as it sets forth that efforts to

28

SECOND AMENDED JOINTLY FILED CLAIMS,                    CASE NO. 2:24-CV-04546-SB(AGRX)
COUNTERCLAIMS, THIRD PARTY CLAIMS, AND
AFFIRMATIVE DEFENSES TO BE TRIED

exert control, as do the prior correspondence between Cinco and PCJV, and, moreover, the course of dealing prior to termination establishes the attempts to get control.

   c. <u>Causes of Action Barred by this Affirmative Defense</u>: SPAVI's causes of action for Trademark Infringement (15 U.S.C. § 1114), Trademark Infringement (15 U.S.C. § 1125(a)), False Designation of Origin and Description of Fact (15 U.S.C. § 1125(a)), Contributory Trademark Infringement (15 U.S.C. § 1114), Contributory Trademark and False Designation of Fact (15 U.S.C. § 1125(a)), Common Law Trademark Infringement, Declaratory Relief and Unfair Competition (Bus. & Prof. Code § 17200).

**6) Affirmative Defense No. 6: Continuous Prior Use Within Remote Geographic Area.**

   a. <u>Element No. 1</u>: Defendants continuously used the trademark, without interruption, in the U.S.

      i. The parties dispute that this element is satisfied.

      ii. Nature of Dispute: Legal and factual.

      iii. <u>Defendants' Supporting Legal Position</u>: (1) PCJV USA, LLC's is the senior use under *Sengoku*, including actual first use (restructure in 2009) and lawful first use, *see CreAgri, Inc. v. USANA Health Services, Inc.*, 474 F3d 626, 630 (9th Cir. 2007); (2) but for a license agreement, which SPAVI Parties disavow, PCJV USA, LLC's use inured to its own benefit; (3) Cinco Corporation did not control PCJV USA, LLC's use of the Potato Corner marks; and (4) SPAVI Parties did not control PCJV USA, LLC's use of the Potato Corner marks.

      iv. <u>Plaintiff's Supporting Legal Position</u>: See115 USC §1055. This

SECOND AMENDED JOINTLY FILED CLAIMS,        CASE NO. 2:24-CV-04546-SB(AGRX)
COUNTERCLAIMS, THIRD PARTY CLAIMS, AND
AFFIRMATIVE DEFENSES TO BE TRIED

1    argument is not made in good faith.

2        v.  Defendants' Supporting Evidence: the following categories,

3            which are defined above, capture the key phases and supporting

4            evidence: Superseding Joint Venture (2008–2010), Alternative

5            Licensing Arrangements and Ongoing Ratification (2011–2012),

6            Formalization and Modification of the Joint Venture (2012), LA

7            Group Partnership Agreement and Evolving Business Dynamics

8            and Terms (2013–2018), Dispute, Litigation, and State Court

9            Proceedings (2018 and Beyond).

10       vi.  Plaintiff's Supporting Evidence: All evidence presented in

11            Plaintiffs' case in chief will prove the defense of this.

12    b.  Element No. 2: Defendants began using the trademark without

13        knowledge of SPAVI's prior use elsewhere.

14        i.  Disputed Status of Element 2: The parties dispute that this

15            element is satisfied.

16       ii.  Nature of Dispute: Factual.

17      iii.  Defendants' Supporting Evidence: the following categories,

18            which are defined above, capture the key phases and supporting

19            evidence: Superseding Joint Venture (2008–2010), Alternative

20            Licensing Arrangements and Ongoing Ratification (2011–2012),

21            Formalization and Modification of the Joint Venture (2012), LA

22            Group Partnership Agreement and Evolving Business Dynamics

23            and Terms (2013–2018), Dispute, Litigation, and State Court

24            Proceedings (2018 and Beyond).

25       iv.  Plaintiff's Supporting Evidence: Koren testimony, registrations.

26    c.  Element No. 3: Defendants used the trademark before SPAVI

27        published the registered trademark.

28

SECOND AMENDED JOINTLY FILED CLAIMS,                        CASE NO. 2:24-CV-04546-SB(AGRX)
COUNTERCLAIMS, THIRD PARTY CLAIMS, AND
AFFIRMATIVE DEFENSES TO BE TRIED

i.  Disputed Status of Element 3: The parties dispute that this element is satisfied.

ii.  <u>Nature of Dispute:</u> factual.

iii.  <u>Defendants' Supporting Evidence:</u> the following categories, which are defined above, capture the key phases and supporting evidence: Superseding Joint Venture (2008–2010), Alternative Licensing Arrangements and Ongoing Ratification (2011–2012), Formalization and Modification of the Joint Venture (2012), LA Group Partnership Agreement and Evolving Business Dynamics and Terms (2013–2018), Dispute, Litigation, and State Court Proceedings (2018 and Beyond).

iv.  <u>Plaintiff's Supporting Evidence:</u> 15 USC § 1055. This argument is not made in good faith

d.  <u>Causes of Action Barred by this Affirmative Defense</u>: SPAVI's causes of action for Trademark Infringement (15 U.S.C. § 1114), Trademark Infringement (15 U.S.C. § 1125(a)), False Designation of Origin and Description of Fact (15 U.S.C. § 1125(a)), Contributory Trademark Infringement (15 U.S.C. § 1114), Contributory Trademark and False Designation of Fact (15 U.S.C. § 1125(a)), Common Law Trademark Infringement, Declaratory Relief and Unfair Competition (Bus. & Prof. Code § 17200).

7) **Affirmative Defense No. 7: Mitigation.**

a.  <u>Element No. 1</u>: SPAVI failed to use reasonable efforts to mitigate alleged damages.

i.  The parties dispute that this element is satisfied.

ii.  Nature of Dispute: Factual.

iii.  <u>Defendants' Supporting Evidence</u>: the following category,

1      which is defined above, captures the key phase and supporting

2      evidence: SPAVI Parties' Tortious Conduct.

3          iv.  Plaintiff's Supporting Evidence: Plaintiff looks forward to

4               presenting the jury with every effort taken to get PCJV and

5               Koren to either pay for  or stop, finally, using this brand for

6               which he has never paid to benefit from, whether that was

7               negotiating a license, terminating the license  or other attempts.

8      b.  Element No. 2: the amount by which damages would have been

9          mitigated.

10         i.  The parties dispute that this element is satisfied.

11         ii.  Nature of Dispute: Factual.

12         iii.  Defendants' Supporting Evidence: the following category,

13               which is defined above, captures the key phase and supporting

14               evidence: SPAVI Parties' Tortious Conduct.

15         iv.  Plaintiff's Supporting Evidence: Testimony of Koren, Gregorio,

16               Victor Tan,  Financial documents.

17     c.  Causes of Action Barred by this Affirmative Defense: All of SPAVI

18         Parties' causes of action (to the extent they seek damages).

19  **8)  Affirmative Defense No. 8: Senior Use Trademark Ownership**

20     a.  Element No. 1: At the time of first lawful use, the partnership and JVA

21         evidence co-ownership of the U.S. Potato Corner marks.

22         i.  Disputed Status of Element 1: The parties dispute that this

23               element is satisfied.

24         ii.  Nature of Dispute: Legal and factual.

25         iii.  Defendants' Position Statement: The partnership and joint

26               venture agreement between PCJV USA, LLC's LA Group and

27               Cinco Group recognize and support per their terms and

28

SECOND AMENDED JOINTLY FILED CLAIMS,                    CASE NO. 2:24-CV-04546-SB(AGRX)
COUNTERCLAIMS, THIRD PARTY CLAIMS, AND
AFFIRMATIVE DEFENSES TO BE TRIED

conditions that PCJV USA, LLC—the first actual, lawful, continuous and exclusive user of the U.S. Potato Corner marks—owns the U.S. Potato Corner marks (which was the LA Group's long-term security and consideration) at least until the parties executed the contemplated master license agreement (which was the Cinco Group's consideration) that they both agreed to enter into in accordance with their fiduciary and contractual obligations, but which still treated them as joint venture partners. *See Sengoku Works Ltd. v. RMC Int'l, Ltd.*, 96 F.3d 1217, 1219 (9th Cir. 1996); *Optimal Pets, Inc. v. Nutri-Vet, LLC*, 877 F. Supp. 953, 959 (C.D. Cal. 2012); *cf. Precision Door Service, Inc. v. Bell*, No. C 02–01108 CW, 2002 WL 655053, at *6 (N.D. Cal April 18, 2002). Given that Plaintiff is disavowing the license agreement—meaning the factual basis upon which PCJV USA, LLC's use might inure to Cinco Corporation's benefit did not happen—the operative coownership agreements favor Defendants or, at minimum, are not dispositive as to ownership. Plaintiff does not get ownership by default because all exclusive users under *Sengoku* are alleged "related companies." Under *Sengoku*, an alleged "related company" who is an exclusive user in the United States, gets to rebut that presumption, especially where, as here, the registrant filed an intent to use application that would only evidence senior use if the exclusive user's first actual and lawful use inured to its benefit. Under the partnership and joint venture agreement, which "vested" in the joint venture and exclusive user complete licensing rights and obligations in the United States, approval of

1    franchise agreements, including as disclosed in FDDs,

2    restrictions on transfer, payment of equal royalties and service

3    fees, and lifetime rights to license and quality control over

4    Potato Corner in the United States, it plainly supports ownership

5    in the joint venture or, at minimum, is not dispositive. The jury

6    is entitled to consider the following five factors used in the

7    Ninth Circuit to help determine ownership as between PCJV

8    USA, LLC, an exclusive domestic user, and Plaintiff, an

9    assignee of a foreign registrant, which plainly demonstrate that

10    PCJV USA, LLC owns the U.S. marks unless and until there

11    was a meeting of the minds on an enforceable license

12    agreement: (1) which party invented and affixed the mark to the

13    product; (2) which party's name appeared with the trademark;

14    (3) which party maintained the product's quality and uniformity;

15    (4) which party does the public identify with the product and

16    make complaints to; and (5) which party possesses the goodwill

17    associated with the product.

18    iv. <u>Plaintiff's Position Statement:</u> This misstates the Lanhan act and

19    the rules  of priority. *See Yagu*. And  *Sengoku*. See 15 USC

20    § 1055. This argument is not made in good faith. It is also law of

21    the case.

22    v. <u>Defendants' Supporting Evidence:</u> documents and testimony

23    including and related to (1) DLA Piper's notification of Cinco

24    Corporation's unlawful use of Potato Corner in the United

25    States; (2) the State of California's Department of Business

26    Oversight's Order sanctioning PCJV USA, LLC for Cinco

27    Corporation's alleged prior use of Potato Corner in the United

28

SECOND AMENDED JOINTLY FILED CLAIMS,                    CASE NO. 2:24-CV-04546-SB(AGRX)
COUNTERCLAIMS, THIRD PARTY CLAIMS, AND
AFFIRMATIVE DEFENSES TO BE TRIED

States; (3) the superseding and restructure agreement between Guy Koren and Jose Magsaysay vesting ownership of Potato Corner in their partnership; (4) the joint venture agreement vesting co-ownership of Potato Corner in the United States in PCJV USA, LLC; (5) control over Potato Corner in the United States being vested with and exercised by PCJV USA, LLC; (6) Potato Corner USA being affixed to Potato Corner in the United States; (7) consumer association of Potato Corner in the United States with PCJV USA, LLC, to whom complaints, if any, were lodged; (8) PCJV USA, LLC's creation, development and hold over the goodwill of Potato Corner in the United States for over a decade; (9) Cinco's lack of control of Potato Corner in the United States for over a decade; (10) Plaintiff's lack of control of Potato Corner in the United States after it allegedly acquired the U.S. trademarks and before it registered additional Potato Corner trademarks; and (11) Plaintiff's suppression of evidence relevant to ownership.

      vi.  <u>Plaintiff's Supporting Evidence:</u> The registration and Koren's admissions regarding control. Testimony of Koren and Mr. Magsaysay.

    b.  <u>Element No. 2 (if Element No. 1 is not dispositive):</u> The following factors demonstrate PCJV USA, LLC owns the U.S. Potato Corner Trademarks:  (1) which party invented and affixed the mark to the product;  (2) which party's name appeared with the trademark; (3) which party maintained the product's quality and uniformity; (4) which party does the public identify with the product and make

1    complaints to; and (5) which party possesses the goodwill associated

2    with the product.

3         i.  Disputed Status of Element 3: The parties dispute that this

4             element is satisfied.

5         ii.  <u>Nature of Dispute:</u> Legal and factual.

6         iii.  <u>Defendants' Position Statement:</u> Defendants incorporate the

7              above legal position.

8         iv.  <u>Plaintiff's Position Statement:</u> this is incomprehensible and not

9              made in good faith.

10         v.  <u>Defendants' Supporting Evidence:</u> Defendants incorporate the

11             above reference to evidentiary support.

12         vi.  <u>Plaintiff's Supporting Evidence:</u> this is incomprehensible and

13             not made in good faith. Testimony of Gregorio, Tan,

14             Concepcion, and Shaikh and Hussein.

15      c.  <u>Causes of Action Barred by this Affirmative Defense</u>: SPAVI's causes

16          of action for Trademark Infringement (15 U.S.C. § 1114), Trademark

17          Infringement (15 U.S.C. § 1125(a)), False Designation of Origin and

18          Description of Fact (15 U.S.C. § 1125(a)), Contributory Trademark

19          Infringement (15 U.S.C. § 1114), Contributory Trademark and False

20          Designation of Fact (15 U.S.C. § 1125(a)), Common Law Trademark

21          Infringement, Declaratory Relief and Unfair Competition (Bus. &

22          Prof. Code § 17200).

23  **II.  <u>Counterclaimants and Third Party Plaintiffs' ("PCJV USA Parties")</u>**

24      **<u>Causes of Action to be Tried by a Jury</u>**

25      **1)  Cause of Action No. 2: Inducing Breach of Contract**

26          b.  <u>Element No. 1:</u> there was a contract between any one of the PCJV

27             USA Parties, on the one hand, and any one of the Cinco parties

28

SECOND AMENDED JOINTLY FILED CLAIMS,                    CASE NO. 2:24-CV-04546-SB(AGRX)
COUNTERCLAIMS, THIRD PARTY CLAIMS, AND
AFFIRMATIVE DEFENSES TO BE TRIED

1  (inclusive of the "Cinco Group" and "PCI Group") or franchisees

2  on the other hand.

3       i.    Disputed Status of Element 1:  The parties dispute this

4             element is satisfied.

5       ii.   Nature of Dispute: factual and legal

6       iii.  PCJV USA Parties Legal Position Statement: The term for

7             PCJV USA, LLC's use of the U.S. Potato Corner trademarks

8             "can be [i]mplied from the nature of the contract and

9             circumstances surrounding it."  *See Consolidated Theatres,*

10            *Inc. v. Theatrical Stage Emp. Union, Local 16*, 69 Cal.2d

11            713, 725 (1968).  The "initial effort of the court, in

12            construing contracts of continuing performance of

13            forbearance which contain no express term of duration, must

14            always be that of implying a term of duration commensurate

15            with the intentions of the parties . . . ."  *Id.* at 727.  Only

16            when "the nature of the contract and the totality of the

17            surrounding circumstances give no suggestion as to any

18            ascertainable term . . . , the obligations under the contract

19            shall be terminable at will by any party upon reasonable

20            notice after such a reasonable time has elapsed."  *Id.*  Further,

21            it is immaterial that SPAVI had full knowledge of the

22            contracts' terms. *See Jenni Rivera Enterprises, LLC v. Latin*

23            *World Entertainment Holdings, Inc.*, 36 Cal. App. 5th 766,

24            783 (2019). Nor is SPAVI's belief about the legal

25            significance of facts or belief that the parties' agreements are

26            legally binding or has a different legal effect from what it is

27            judicially held to have.  *See Little v. Amber Hotel Co.*, 202

28

SECOND AMENDED JOINTLY FILED CLAIMS,                    CASE NO. 2:24-CV-04546-SB(AGRX)
COUNTERCLAIMS, THIRD PARTY CLAIMS, AND
AFFIRMATIVE DEFENSES TO BE TRIED

1    Cal. App. 4th 280, 302 (2011).

2    iv.    Plaintiff's Position Statement: as drafted it is impossible to

3    know what the specific contract is that is at issue here. It has

4    never been disclosed, and still undisclosed. Rather than

5    jettison the claim or actually identify the  contract, instead,

6    Defendants' solution is to fudge with obtuse language in the

7    jury instructions, designed to confuse everyone, including the

8    jury: "there was a contract between any one of the PCJV

9    Plaintiffs and any one of the Cinco parties." Indeed, the only

10   contract that Cinco has been a party to with any of these

11   Counterclaimants is the Settlement Agreement of the Prior

12   Governance Action. There is no other written agreement

13   between  PCJV and Cinco, or between any other

14   Counterclaimant and Cinco.

15   v.    PCJV USA Parties' Supporting Evidence: the following

16   categories, which are defined above, capture the key phases

17   and supporting evidence: Superseding Joint Venture (2008–

18   2010), Alternative Licensing Arrangements and Ongoing

19   Ratification (2011–2012), Formalization and Modification of

20   the Joint Venture (2012), LA Group Partnership Agreement

21   and Evolving Business Dynamics and Terms (2013–2018),

22   Dispute, Litigation, and State Court Proceedings (2018 and

23   Beyond), and Ongoing Annual Ratification and Regulatory

24   Compliance.

25   vi.    SPAVI and Cinco Parties' Supporting Evidence: Each of the

26   agreements included in the trial exhibits and  testimony of

27   Mr. Magsaysay, Mr. Koren, and Ms. Victor – all of  which

28

SECOND AMENDED JOINTLY FILED CLAIMS,                    CASE NO. 2:24-CV-04546-SB(AGRX)
COUNTERCLAIMS, THIRD PARTY CLAIMS, AND
AFFIRMATIVE DEFENSES TO BE TRIED

1    will establish that  none of the Counterclaimants – PCJV,

2    PCIT, LA Group LLC, GK Capital, NKM, or Koren have

3    any contract to which Cinco has privity.

4    c. Element No. 2: SPAVI knew of the contract.

5    i. Disputed Status of Element 2:  The parties dispute this

6    element is satisfied.

7    ii. Nature of Dispute: factual  and legal.

8    iii. PCJV USA Parties Legal Position Statement: "the contract"

9    refers to each and every applicable contract, including all

10   written, oral, and/or implied-in-fact agreements between the

11   "Cinco Group" and/or "PCI Group," on the one hand, and

12   Cross-Complainants PCJV, PCI Trading, LA Group, GK

13   Capital, NKM, and Koren, on the other hand, inclusive of the

14   JVA/AJVA, LLC Agreement, license agreements, MSA (as

15   restated, amended, modified, or appended over time through

16   PCJV meeting minutes, written communications of the PCJV

17   Board, and/or representations made in FDDs); (2) the

18   Settlement Documents between the "Koren Parties" and

19   "Cinco Parties"; and (3) the franchise agreements PCJV

20   entered with franchisees. Plaintiff's position statement does

21   not assert a legal argument

22   iv. SPAVI and Cinco's Position Statement: as drafted it is

23   impossible to  know what the specific contract is at issue

24   here. It has never been disclosed, and still undisclosed. So,

25   when this element in the instructions says, "the contract,"

26   whereas the prior element refers to some unidentified

27   contract, as a matter of law, yes, this element is disputed. To

28

SECOND AMENDED JOINTLY FILED CLAIMS,                    CASE NO. 2:24-CV-04546-SB(AGRX)
COUNTERCLAIMS, THIRD PARTY CLAIMS, AND
AFFIRMATIVE DEFENSES TO BE TRIED

1    the extent any actual contract ever existed between Cinco and

2    these parties, the only one that is possible is the Settlement

3    Agreement and corresponding agreement selling PCJV

4    equity to GKK Capital. (Trial Exhibit 1176.) Because Cinco

5    has never been a party to any other contract with any of the

6    Counterclaim Defendants, that is the only one that could

7    possibly be at issue, but Defendants refuse to acknowledge

8    this.

9    v.    <u>PCJV USA Parties' Supporting Evidence</u>: the following

10    category, which is defined above, captures the key phase and

11    supporting evidence: SPAVI Parties' Tortious Conduct.

12    vi.    <u>SPAVI and Cinco Parties' Supporting Evidence:</u> Each of the

13    agreements included in the trial exhibits and  testimony of

14    Mr. Gregorio, Mr.  Tan, Ms. Victor, as well as Mr. Koren  –

15    all of  which will establish that were aware of no contract

16    between  none of the Counterclaimants – PCJV, PCIT, LA

17    Group LLC, GK Capital, NKM, or Koren have any contract

18    to which Cinco has privity. After the fact, now, having been

19    sued, SPAVI will unequivocally testify that it had knowledge

20    of the terms off the settlement and never  saw the document

21    until this  case commenced.

22    d.    <u>Element No. 3:</u> SPAVI intended to cause any one of the Cinco

23    parties or franchisees to breach the contract

24    i.    Disputed Status of Element 3:  The parties dispute this

25    element is satisfied.

26    ii.    <u>Nature of Dispute:</u> factual and legal.

27    iii.    <u>PCJV USA Parties' Position Statement:</u> Plaintiff's position

28

SECOND AMENDED JOINTLY FILED CLAIMS,                    CASE NO. 2:24-CV-04546-SB(AGRX)
COUNTERCLAIMS, THIRD PARTY CLAIMS, AND
AFFIRMATIVE DEFENSES TO BE TRIED

1   statement does not address a legal issue concerning this

2   element. To the extent Plaintiff's position statement

3   addresses element 1, PCJV USA Parties incorporate their

4   respective response here.

5   iv.   Plaintiff's Position Statement: as drafted it is impossible to

6   know what the specific contract is at issue here. It has never

7   been disclosed, and still undisclosed. So, when this element

8   in the instructions says, "the contract," whereas the prior

9   element refers to some unidentified contract, as a matter of

10   law, yes, this element is disputed. To the extent any actual

11   contract ever existed between Cinco and these parties, the

12   only one that is possible is the Settlement Agreement and

13   corresponding agreement selling PCJV equity to GKK

14   Capital. (Trial Exhibit 1176.) Because Cinco has never been

15   a party to any other contract with any of the Counterclaim

16   Defendants, that is the only one that could possibly be at

17   issue, but Defendants refuse to acknowledge this.

18   v.   PCJV USA Parties' Supporting Evidence: the following

19   category, which is defined above, captures the key phase and

20   supporting evidence: SPAVI Parties' Tortious Conduct.

21   vi.   SPAVI's Supporting Evidence: Each of the agreements

22   included in the trial exhibits and  testimony of Mr. Gregorio,

23   Mr.  Tan, Ms. Victor, as well as Mr. Koren  – all of  which

24   will establish that they were not aware of and  had no intent

25   to cause anyone to breach any contract.  Also, the

26   correspondence leading up to the termination of the license –

27   Trial Exhibits 20-31 – also confirm the intent was to

28

SECOND AMENDED JOINTLY FILED CLAIMS,
COUNTERCLAIMS, THIRD PARTY CLAIMS, AND
AFFIRMATIVE DEFENSES TO BE TRIED

CASE NO. 2:24-CV-04546-SB(AGRX)

1    negotiate a license with PCJV, something for which  years

2    were spent in pursuit, to no avail.

3    e.  Element No. 4: SPAVI's conduct caused any one of the Cinco

4        parties to breach the contract

5        i.   Disputed Status of Element 4:  The parties dispute this

6             element is satisfied.

7        ii.  Nature of Dispute: factual and legal.

8        iii. PCJV USA Parties' Supporting Legal Position: The term for

9             PCJV USA, LLC's use of the U.S. Potato Corner trademarks

10            "can be [i]mplied from the nature of the contract and

11            circumstances surrounding it." *See Consolidated Theatres,*

12            *Inc. v. Theatrical Stage Emp. Union, Local 16*, 69 Cal.2d

13            713, 725 (1968).  The "initial effort of the court, in

14            construing contracts of continuing performance of

15            forebearance which contain no express term of duration,

16            must always be that of implying a term of duration

17            commensurate with the intentions of the parties . . . ." *Id.* at

18            727.  Only when "the nature of the contract and the totality

19            of the surrounding circumstances give no suggestion as to

20            any ascertainable term . . . , the obligations under the contract

21            shall be terminable at will by any party upon reasonable

22            notice after such a reasonable time has elapsed." *Id.* Further,

23            it is immaterial that SPAVI had full knowledge of the

24            contracts' terms. *See Jenni Rivera Enterprises, LLC v. Latin*

25            *World Entertainment Holdings, Inc.*, 36 Cal. App. 5th 766,

26            783 (2019). Nor is SPAVI's belief about the legal

27            significance of facts or belief that the parties' agreements are

28

SECOND AMENDED JOINTLY FILED CLAIMS,                CASE NO. 2:24-CV-04546-SB(AGRX)
COUNTERCLAIMS, THIRD PARTY CLAIMS, AND
AFFIRMATIVE DEFENSES TO BE TRIED

1  legally binding or has a different legal effect from what it is

2  judicially held to have.  *See Little v. Amber Hotel Co.*, 202

3  Cal. App. 4th 280, 302 (2011).

4  iv.  <u>Plaintiff's Position Statement:</u> First, this presumes Cinco

5  breached a contract. The only contracts that have been

6  identified as being "breached" are the unsigned licensee

7  agreement and the AJVA. Neither document binds Cinco –

8  indeed, that the AJVA constitutes an agreement to agree and

9  not a contract  has  already been adjudicated and decided as

10  law of the case. It is impossible to  know what the specific

11  contract is at issue here. To the extent any actual contract

12  ever existed between Cinco and these parties, the only one

13  that is possible is the Settlement Agreement and

14  corresponding agreement selling PCJV equity to GKK

15  Capital. (Trial Exhibit 1176.) Because Cinco has never been

16  a party to any other contract with any of the Counterclaim

17  Defendants, that is the only one that could possibly be at

18  issue, but Defendants refuse to acknowledge this.

19  v.  <u>PCJV USA Parties' Supporting Evidence:</u> the following

20  categories, which are defined above, capture the key phases

21  and supporting evidence: Superseding Joint Venture (2008–

22  2010), Alternative Licensing Arrangements and Ongoing

23  Ratification (2011–2012), Formalization and Modification of

24  the Joint Venture (2012), LA Group Partnership Agreement

25  and Evolving Business Dynamics and Terms (2013–2018),

26  Dispute, Litigation, and State Court Proceedings (2018 and

27  Beyond), Ongoing Annual Ratification and Regulatory

28

SECOND AMENDED JOINTLY FILED CLAIMS,                                    CASE NO. 2:24-CV-04546-SB(AGRX)
COUNTERCLAIMS, THIRD PARTY CLAIMS, AND
AFFIRMATIVE DEFENSES TO BE TRIED

1      Compliance, and SPAVI Parties' Tortious Conduct.

2      vi.    SPAVI Parties' Supporting Evidence: The absence of

3             evidence that Cinco was a party to, or breached, any

4             contract with any of the Counterclaimants is the supporting

5             evidence.

6   f.   Element No. 5: any one of the PCJV USA Parties were harmed

7      i.     Disputed Status of Element 4: The parties dispute this

8             element is satisfied.

9      ii.    Nature of Dispute: factual and legal.

10     iii.   PCJV USA Parties' Position Statement: Plaintiff's position

11            statement does not address a legal issue concerning this

12            element. To the extent Plaintiff's position statement

13            addresses element 1, PCJV USA Parties incorporate their

14            respective response here.

15     iv.    Plaintiff's Position Statement: First, this presumes Cinco

16            breached a contract. The only contracts that have been

17            identified as being "breached" are the unsigned licensee

18            agreement and the AJVA. Neither document binds Cinco –

19            indeed, that the AJVA constitutes an agreement to agree and

20            not a contract has already been adjudicated and decided as

21            law of the case. It is impossible to know what the specific

22            contract is at issue here. To the extent any actual contract

23            ever existed between Cinco and these parties, the only one

24            that is possible is the Settlement Agreement and

25            corresponding agreement selling PCJV equity to GKK

26            Capital. (Trial Exhibit 1176.) Because Cinco has never been

27            a party to any other contract with any of the Counterclaim

28

SECOND AMENDED JOINTLY FILED CLAIMS,            CASE NO. 2:24-CV-04546-SB(AGRX)
COUNTERCLAIMS, THIRD PARTY CLAIMS, AND
AFFIRMATIVE DEFENSES TO BE TRIED

1    Defendants, that is the only one that could possibly be at

2    issue, but Defendants refuse to acknowledge this.

3        v.   PCJV USA Parties' Supporting Evidence: the following

4             category, which is defined above, captures the key phase and

5             supporting evidence: SPAVI Parties' Tortious Conduct.

6       vi.   SPAVI Parties' Supporting Evidence: The absence of

7             evidence that  Cinco was a party to, or  breached, any

8             contract with any  of the Counterclaimants is  the supporting

9             evidence, as there is no way any of the Counterclaimants

10            could have been harmed.

11   g.  Element No. 6: SPAVI's conduct  was a substantial factor in

12       causing harm to any of the Counterclaimants.

13        i.   Disputed Status of Element  6:  The parties dispute this

14             element is satisfied.

15       ii.   Nature of Dispute: factual and legal.

16      iii.   PCJV USA Parties' Position Statement: Plaintiff's position

17             statement does not address a legal issue concerning this

18             element. To the extent Plaintiff's position statement

19             addresses element 1, PCJV USA Parties incorporate their

20             respective response here

21       iv.   Plaintiff's Position Statement: Again, this presumes Cinco

22             breached a contract. The only contracts that have been

23             identified as being "breached" are the unsigned licensee

24             agreement and the AJVA. Neither document binds Cinco –

25             indeed, that the AJVA constitutes an agreement to agree and

26             not a contract  has  already been adjudicated and decided as

27             law of the case. It is impossible to  know what the specific

28

SECOND AMENDED JOINTLY FILED CLAIMS,                    CASE NO. 2:24-CV-04546-SB(AGRX)
COUNTERCLAIMS, THIRD PARTY CLAIMS, AND
AFFIRMATIVE DEFENSES TO BE TRIED

contract is at issue here. To the extent any actual contract ever existed between Cinco and these parties, the only one that is possible is the Settlement Agreement and corresponding agreement selling PCJV equity to GKK Capital. (Trial Exhibit 1176.) Because Cinco has never been a party to any other contract with any of the Counterclaim Defendants, that is the only one that could possibly be at issue, but Defendants refuse to acknowledge this.

v.   PCJV USA Parties' Supporting Evidence: the following categories, which are defined above, capture the key phases and supporting evidence: Superseding Joint Venture (2008–2010), Alternative Licensing Arrangements and Ongoing Ratification (2011–2012), Formalization and Modification of the Joint Venture (2012), LA Group Partnership Agreement and Evolving Business Dynamics and Terms (2013–2018), Dispute, Litigation, and State Court Proceedings (2018 and Beyond), Ongoing Annual Ratification and Regulatory Compliance, and SPAVI Parties' Tortious Conduct.

vi.  SPAVI and Cinco's Supporting Evidence: SPAVI's only act that could have caused "harm" to any of the Counterclaimants is termination of the license, which it was permitted to do. The absence of evidence that Cinco was a party to, or breached, any contract with any of the Counterclaimants is the supporting evidence, as there is no way any of the Counterclaimants could have been harmed let alone as a result of any act by SPAVI.

**2) Cause of Action No. 3: Intentional Interference with Contractual**

SECOND AMENDED JOINTLY FILED CLAIMS,                          CASE NO. 2:24-CV-04546-SB(AGRX)
COUNTERCLAIMS, THIRD PARTY CLAIMS, AND
AFFIRMATIVE DEFENSES TO BE TRIED

1    **Relations.**

2        a.  Element No. 1: there were various contracts, including contracts with

3            the Cinco parties, franchisees, suppliers, and vendors,

4                    i.   Disputed Status of Element 1:  The parties dispute that this

5                         element is satisfied.

6                    ii.  Nature of Dispute: Legal and factual

7                    iii. PCJV USA Parties' Legal Position: The term for PCJV USA,

8                         LLC's use of the U.S. Potato Corner trademarks "can be

9                         [i]mplied from the nature of the contract and circumstances

10                        surrounding it." *See Consolidated Theatres, Inc. v. Theatrical*

11                        *Stage Emp. Union, Local 16*, 69 Cal.2d 713, 725 (1968).  The

12                        "initial effort of the court, in construing contracts of continuing

13                        performance of forbearance which contain no express term of

14                        duration, must always be that of implying a term of duration

15                        commensurate with the intentions of the parties . . . ." *Id.* at

16                        727.  Only when "the nature of the contract and the totality of

17                        the surrounding circumstances give no suggestion as to any

18                        ascertainable term . . . , the obligations under the contract shall

19                        be terminable at will by any party upon reasonable notice after

20                        such a reasonable time has elapsed." *Id.* Further, it is

21                        immaterial that SPAVI had full knowledge of the contracts'

22                        terms. *See Jenni Rivera Enterprises, LLC v. Latin World*

23                        *Entertainment Holdings, Inc.*, 36 Cal. App. 5th 766, 783

24                        (2019). Nor is SPAVI's belief about the legal significance of

25                        facts or belief that the parties' agreements are legally binding

26                        or has a different legal effect from what it is judicially held to

27                        have.  *See Little v. Amber Hotel Co.*, 202 Cal. App. 4th 280,

28

SECOND AMENDED JOINTLY FILED CLAIMS,                     CASE NO. 2:24-CV-04546-SB(AGRX)
COUNTERCLAIMS, THIRD PARTY CLAIMS, AND
AFFIRMATIVE DEFENSES TO BE TRIED

1    302 (2011).

2    vii.    Plaintiff's Supporting Legal Position: The only contracts that

3    have been identified as being "breached" are the unsigned

4    licensee agreement and the AJVA. Neither document binds

5    Cinco – indeed, that the AJVA constitutes an agreement to

6    agree and not a contract  has  already been adjudicated and

7    decided as law of the case. It is impossible to  know what the

8    specific contract is at issue here. To the extent any actual

9    contract ever existed between Cinco and these parties, the

10    only one that is possible is the Settlement Agreement and

11    corresponding agreement selling PCJV equity to GKK

12    Capital. (Trial Exhibit 1176.) Because Cinco has never been

13    a party to any other contract with any of the Counterclaim

14    Defendants, that is the only one that could possibly be at

15    issue, but Defendants refuse to acknowledge this.

16    iv.    PCJV USA Parties' Supporting Evidence: the following

17    categories, which are defined above, capture the key phases

18    and supporting evidence: Superseding Joint Venture (2008–

19    2010), Alternative Licensing Arrangements and Ongoing

20    Ratification (2011–2012), Formalization and Modification of

21    the Joint Venture (2012), LA Group Partnership Agreement

22    and Evolving Business Dynamics and Terms (2013–2018),

23    Dispute, Litigation, and State Court Proceedings (2018 and

24    Beyond), and Ongoing Annual Ratification and Regulatory

25    Compliance.

26    v.    SPAVI and Cinco's Supporting Evidence: the absence of

27    evidence is enough. There are no  such contracts

28

SECOND AMENDED JOINTLY FILED CLAIMS,                    CASE NO. 2:24-CV-04546-SB(AGRX)
COUNTERCLAIMS, THIRD PARTY CLAIMS, AND
AFFIRMATIVE DEFENSES TO BE TRIED

b. Element No. 2: SPAVI knew of the contracts.

    i.   Disputed Status of Element 2: The parties dispute that this element is satisfied.

      i.   Nature of Dispute: Factual.

      ii.   PCJV USA Parties' Supporting Evidence: the following category, which is defined above, captures the key phase and supporting evidence: SPAVI Parties' Tortious Conduct.

      iii.   Plaintiff's Supporting Evidence: the absence of evidence is enough. There are no  such contracts.

c. Element No. 3: SPAVI's conduct prevented performance or made performance more expensive or difficult.

    i.   Disputed Status of Element 3:  The parties dispute that this element is satisfied.

    ii.   Nature of Dispute: Factual.

    iii.   PCJV USA Parties' Supporting Evidence: PCJV USA Parties' Supporting Evidence: the following categories, which are defined above, capture the key phases and supporting evidence: Superseding Joint Venture (2008–2010), Alternative Licensing Arrangements and Ongoing Ratification (2011–2012), Formalization and Modification of the Joint Venture (2012), LA Group Partnership Agreement and Evolving Business Dynamics and Terms (2013–2018), Dispute, Litigation, and State Court Proceedings (2018 and Beyond), Ongoing Annual Ratification and Regulatory Compliance, and SPAVI Parties' Tortious Conduct.

    iv.   SPAVI and Cinco's Supporting Evidence: the absence of evidence is enough. There are no  such contracts

d. <u>Element No. 4</u>: SPAVI either (a) intended <u>to</u> disrupt the performance of these contracts or (b) knew that disruption of performance was certain or substantially certain to occur.

    i.   Disputed Status of Element 4:  The parties dispute that this element is satisfied.

    ii.   Nature of Dispute: Factual.

    iii.   PCJV USA Parties' Supporting Evidence: the following category, which is defined above, captures the key phase and supporting evidence: SPAVI Parties' Tortious Conduct.

    iv.   <u>SPAVI and Cinco's Supporting Evidence:</u> the absence of evidence is enough. There are no  such contracts

e. <u>Element No. 5</u>: any one of the PCJV USA Parties were harmed.

    i.   Disputed Status of Element 5:  The parties dispute that this element is satisfied.

    ii.   Nature of Dispute: Factual.

    iii.   PCJV USA Parties' Supporting Evidence: the following category, which is defined above, captures the key phase and supporting evidence: SPAVI Parties' Tortious Conduct.

    iv.   SPAVI Parties' Supporting Evidence: the absence of evidence is enough. There are no  such contracts.

f. <u>Element No. 6</u>: SPAVI's conduct was a substantial factor in causing any one of the PCJV USA Parties' harm.

    i.   Disputed Status of Element 6:  The parties dispute that this element is satisfied.

    ii.   Nature of Dispute: Factual.

    iii.   PCJV USA Parties' Supporting Evidence: the following category, which is defined above, captures the key phase and

1    supporting evidence: SPAVI Parties' Tortious Conduct.

2         iv.    SPAVI Parties' Supporting Evidence: the absence of evidence

3                is enough. There are no  such contracts

4    **3) Cause of Action No. 4: Interference with Prospective Economic**

5    **Relations.**

6         a.  Element No. 1: any one of the PCJV USA Parties were in various

7             economic relations, including with Cinco parties, franchisees,

8             suppliers, and venders were in that probably would have resulted in an

9             economic benefit to Defendants.

10             i.    Disputed Status of Element 1:  The parties dispute that this

11                   element is satisfied.

12            ii.    Nature of Dispute: Legal and factual.

13           iii.    PCJV USA Parties' Supporting Legal Position: The term for

14                   PCJV USA, LLC's use of the U.S. Potato Corner trademarks

15                   "can be [i]mplied from the nature of the contract and

16                   circumstances surrounding it." *See Consolidated Theatres,*

17                   *Inc. v. Theatrical Stage Emp. Union, Local 16*, 69 Cal.2d 713,

18                   725 (1968).  The "initial effort of the court, in construing

19                   contracts of continuing performance of forebearance which

20                   contain no express term of duration, must always be that of

21                   implying a term of duration commensurate with the intentions

22                   of the parties . . . ." *Id.* at 727.  Only when "the nature of the

23                   contract and the totality of the surrounding circumstances give

24                   no suggestion as to any ascertainable term . . . , the obligations

25                   under the contract shall be terminable at will by any party

26                   upon reasonable notice after such a reasonable time has

27                   elapsed." *Id.* Further, it is immaterial that SPAVI had full

28

SECOND AMENDED JOINTLY FILED CLAIMS,                    CASE NO. 2:24-CV-04546-SB(AGRX)
COUNTERCLAIMS, THIRD PARTY CLAIMS, AND
AFFIRMATIVE DEFENSES TO BE TRIED

1    knowledge of the contracts' terms. *See Jenni Rivera*

2    *Enterprises, LLC v. Latin World Entertainment Holdings, Inc.*,

3    36 Cal. App. 5th 766, 783 (2019). Nor is SPAVI's belief about

4    the legal significance of facts or belief that the parties'

5    agreements are legally binding or has a different legal effect

6    from what it is judicially held to have.  See Little v. Amber

7    Hotel Co., 202 Cal. App. 4th 280, 302 (2011).

8    iv.    Plaintiff's Supporting Legal Position: the only relationships

9        SPAVI knew about were with franchisees and certain vendors.

10       the specific  relationships at issue here have never been

11       disclosed.

12    v.    PCJV USA Parties' Supporting Evidence: the following

13       categories, which are defined above, capture the key phases

14       and supporting evidence: Superseding Joint Venture (2008–

15       2010), Alternative Licensing Arrangements and Ongoing

16       Ratification (2011–2012), Formalization and Modification of

17       the Joint Venture (2012), LA Group Partnership Agreement

18       and Evolving Business Dynamics and Terms (2013–2018),

19       Dispute, Litigation, and State Court Proceedings (2018 and

20       Beyond), and Ongoing Annual Ratification and Regulatory

21       Compliance.

22    vi.    SPAVI's Supporting Evidence: testimony of executives.

23    b.  Element No. 2: SPAVI knew of the relationships.

24    i.    Disputed Status of Element 2:  The parties dispute that this

25       element is satisfied.

26    ii.    Nature of Dispute: Factual.

27    iii.    PCJV USA Parties' Supporting Evidence: the following

28

SECOND AMENDED JOINTLY FILED CLAIMS,                    CASE NO. 2:24-CV-04546-SB(AGRX)
COUNTERCLAIMS, THIRD PARTY CLAIMS, AND
AFFIRMATIVE DEFENSES TO BE TRIED

1     category, which is defined above, captures the key phase and

2     supporting evidence: SPAVI Parties' Tortious Conduct.

3          iv.   SPAVI's Supporting Evidence: testimony of executives

4     c.   Element No. 3: SPAVI engaged in conduct to destroy the value of any

5     one of the PCJV USA Parties' relationships by usurping the benefits of

6     those relationships for SPAVI's benefit.

7          i.   Disputed Status of Element 3:  The parties dispute that this

8               element is satisfied.

9          ii.  Nature of Dispute: Factual.

10         iii. PCJV USA Parties' Supporting Evidence: the following

11              category, which is defined above, captures the key phase and

12              supporting evidence: SPAVI Parties' Tortious Conduct.

13         iv.  SPAVI's Supporting Evidence: Testimony of Tan and

14              Concepcion and Victor and Shaikh and Hussein will all

15              support SPAVI here.

16    d.   Element No. 4: by engaging in this conduct, SPAVI either (a) intended

17    to disrupt the relationships or (b) knew that disruption of the

18    relationships was certain or substantially certain to occur.

19         i.   Disputed Status of Element 4:  The parties dispute that this

20              element is satisfied.

21         ii.  Nature of Dispute: Factual.

22         iii. PCJV USA Parties' Supporting Evidence: the following

23              category, which is defined above, captures the key phase and

24              supporting evidence: SPAVI Parties' Tortious Conduct.

25         iv.  SPAVI's Supporting Evidence: Tan and Concepcion and

26              Victor and Shaikh and Hussein will all support SPAVI here.

27    e.   Element No. 5: those relationships were disrupted.

28

SECOND AMENDED JOINTLY FILED CLAIMS,                    CASE NO. 2:24-CV-04546-SB(AGRX)
COUNTERCLAIMS, THIRD PARTY CLAIMS, AND
AFFIRMATIVE DEFENSES TO BE TRIED

1          i.    Disputed Status of Element 5:  The parties dispute that this

2                element is satisfied.

3          ii.   Nature of Dispute: Factual.

4          iii.  PCJV USA Parties' Supporting Evidence: the following

5                categories, which are defined above, capture the key phases

6                and supporting evidence: Superseding Joint Venture (2008–

7                2010), Alternative Licensing Arrangements and Ongoing

8                Ratification (2011–2012), Formalization and Modification of

9                the Joint Venture (2012), LA Group Partnership Agreement

10               and Evolving Business Dynamics and Terms (2013–2018),

11               Dispute, Litigation, and State Court Proceedings (2018 and

12               Beyond), Ongoing Annual Ratification and Regulatory

13               Compliance, and SPAVI Parties' Tortious Conduct.

14         iv.   SPAVI Parties' Supporting Evidence: it is unknown what

15               relationships were disrupted.

16    f.   Element No. 6: any one of the PCJV USA Parties were harmed.

17         i.    Disputed Status of Element 6:  The parties dispute that this

18               element is satisfied.

19         ii.   Nature of Dispute: Factual.

20         iii.  PCJV USA Parties' Supporting Evidence: the following

21               category, which is defined above, captures the key phase and

22               supporting evidence: SPAVI Parties' Tortious Conduct.

23         iv.   SPAVI Parties' Supporting Evidence: no proof of this has ever

24               been established, particularly harm caused by any of the

25               responding parties.

26    g.   Element No. 7: SPAVI's conduct was a substantial factor in causing

27         any one of the PCJV USA Parties' harm.

28

---

SECOND AMENDED JOINTLY FILED CLAIMS,                    CASE NO. 2:24-CV-04546-SB(AGRX)
COUNTERCLAIMS, THIRD PARTY CLAIMS, AND
AFFIRMATIVE DEFENSES TO BE TRIED

1           i.   Disputed Status of Element 7:  The parties dispute that this

2              element is satisfied.

3          ii.   Nature of Dispute: Factual.

4         iii.   PCJV USA Parties' Supporting Evidence: the following

5              category, which is defined above, captures the key phase and

6              supporting evidence: SPAVI Parties' Tortious Conduct.

7         iv.   SPAVI Parties' Supporting Evidence: no proof of this has ever

8              been established, particularly harm caused by any of the

9              responding parties.

10   **4) Cause of Action No. 5: Negligent Interference with Prospective**

11      **Economic Advantage.**

12      a.  Element No. 1: any one of the PCJV USA Parties were in various

13        economic relations, including with Cinco parties, franchisees,

14        suppliers, and venders that probably would have resulted in a future

15        economic benefit to any one of the PCJV USA Parties.

16          i.   Disputed Status of Element 1:  The parties dispute that this

17              element is satisfied.

18          ii.   Nature of Dispute: Legal and factual.

19         iii.   PCJV USA Parties' Supporting Legal Position: The term for

20              PCJV USA, LLC's use of the U.S. Potato Corner trademarks

21              "can be [i]mplied from the nature of the contract and

22              circumstances surrounding it."  *See Consolidated Theatres,*

23              *Inc.* *v. Theatrical Stage Emp. Union, Local 16*, 69 Cal.2d 713,

24              725 (1968).  The "initial effort of the court, in construing

25              contracts of continuing performance of forebearance which

26              contain no express term of duration, must always be that of

27              implying a term of duration commensurate with the intentions

28

1    of the parties . . . ." *Id.* at 727. Only when "the nature of the

2    contract and the totality of the surrounding circumstances give

3    no suggestion as to any ascertainable term . . . , the obligations

4    under the contract shall be terminable at will by any party

5    upon reasonable notice after such a reasonable time has

6    elapsed." *Id.* Further, it is immaterial that SPAVI had full

7    knowledge of the contracts' terms. *See Jenni Rivera*

8    *Enterprises, LLC v. Latin World Entertainment Holdings, Inc.*,

9    36 Cal. App. 5th 766, 783 (2019). Nor is SPAVI's belief about

10   the legal significance of facts or belief that the parties'

11   agreements are legally binding or has a different legal effect

12   from what it is judicially held to have. *See Little v. Amber*

13   *Hotel Co.*, 202 Cal. App. 4th 280, 302 (2011).

14        vii.   Plaintiff's Supporting Legal Position: the only relationships

15               SPAVI knew about were with franchisees and certain vendors.

16               the specific  relationships at issue here have never been

17               disclosed.

18        iv.    PCJV USA Parties' Supporting Evidence: documents and

19               testimony including and related to prospective supplier

20               economic relationships and franchisee relations.  the following

21               categories, which are defined above, capture the key phases

22               and supporting evidence: Superseding Joint Venture (2008–

23               2010), Alternative Licensing Arrangements and Ongoing

24               Ratification (2011–2012), Formalization and Modification of

25               the Joint Venture (2012), LA Group Partnership Agreement

26               and Evolving Business Dynamics and Terms (2013–2018),

27               Dispute, Litigation, and State Court Proceedings (2018 and

28

---

SECOND AMENDED JOINTLY FILED CLAIMS,                    CASE NO. 2:24-CV-04546-SB(AGRX)
COUNTERCLAIMS, THIRD PARTY CLAIMS, AND
AFFIRMATIVE DEFENSES TO BE TRIED

1      Beyond), Ongoing Annual Ratification and Regulatory

2      Compliance, and SPAVI Parties' Tortious Conduct.

3     v. <u>SPAVI's Supporting Evidence:</u> testimony of executives.

4   b. <u>Element No. 2</u>: SPAVI knew or should have known of these

5   relationships.

6     i. Disputed Status of Element 2:  The parties dispute that this

7      element is satisfied.

8     ii. Nature of Dispute: Factual.

9     iii. <u>PCJV USA Parties' Supporting Evidence</u>: the following

10      category, which is defined above, captures the key phase and

11      supporting evidence: SPAVI Parties' Tortious Conduct.

12     iv. <u>SPAVI Parties' Supporting Evidence:</u> testimony of executives

13   c. <u>Element No. 3</u>: SPAVI knew or should have known that these

14   relationships would be disrupted if it failed to act with reasonable care.

15     i. Disputed Status of Element 3:  The parties dispute that this

16      element is satisfied.

17     ii. Nature of Dispute: Factual.

18     iii. <u>PCJV USA Parties' Supporting Evidence</u>: the following

19      category, which is defined above, captures the key phase and

20      supporting evidence: SPAVI Parties' Tortious Conduct.

21     iv. <u>SPAVI's Supporting Evidence:</u> Testimony of Tan and

22      Concepcion and Victor and Shaikh and Hussein will all

23      support SPAVI here

24   d. <u>Element No. 4</u>: SPAVI failed to act with reasonable care.

25     i. Disputed Status of Element 4:  The parties dispute that this

26      element is satisfied.

27     ii. Nature of Dispute: Factual.

28

iii.   <u>PCJV USA Parties' Supporting Evidence:</u> the following category, which is defined above, captures the key phase and supporting evidence: SPAVI Parties' Tortious Conduct.

iv.   <u>SPAVI's Supporting Evidence:</u> Tan and Concepcion and Victor and Shaikh and Hussein will all support SPAVI here

e.   <u>Element No. 5</u>: SPAVI engaged in wrongful conduct through engaging in conduct to destroy the value of any one of the PCJV USA Parties' relationships by usurping the benefits of those relationships for SPAVI's benefit.

i.   Disputed Status of Element 5:  The parties dispute that this element is satisfied.

ii.   Nature of Dispute: Factual.

iii.   <u>PCJV USA Parties' Supporting Evidence:</u> the following categories, which are defined above, capture the key phases and supporting evidence: Superseding Joint Venture (2008–2010), Alternative Licensing Arrangements and Ongoing Ratification (2011–2012), Formalization and Modification of the Joint Venture (2012), LA Group Partnership Agreement and Evolving Business Dynamics and Terms (2013–2018), Dispute, Litigation, and State Court Proceedings (2018 and Beyond), Ongoing Annual Ratification and Regulatory Compliance, and SPAVI Parties' Tortious Conduct.

iv.   <u>SPAVI Parties' Supporting Evidence:</u> Tan and Concepcion and Victor and Shaikh and Hussein will all support SPAVI here

f.   <u>Element No. 6</u>: the relationships were disrupted.

i.   Disputed Status of Element 6:  The parties dispute that this

SECOND AMENDED JOINTLY FILED CLAIMS,                    CASE NO. 2:24-CV-04546-SB(AGRX)
COUNTERCLAIMS, THIRD PARTY CLAIMS, AND
AFFIRMATIVE DEFENSES TO BE TRIED

element is satisfied.

  ii. Nature of Dispute: Factual.

  iii. <u>PCJV USA Parties' Supporting Evidence:</u> the following category, which is defined above, captures the key phase and supporting evidence: SPAVI Parties' Tortious Conduct.

  iv. <u>SPAVI Parties' Supporting Evidence:</u> SPAVI is unaware of what relationships were harmed.

 g. <u>Element No. 7</u>: any one of the PCJV USA Parties were harmed.

  i. Disputed Status of Element 7:  The parties dispute that this element is satisfied.

  ii. Nature of Dispute: Factual.

  iii. <u>PCJV USA Parties' Supporting Evidence:</u> the following category, which is defined above, captures the key phase and supporting evidence: SPAVI Parties' Tortious Conduct.

  i. <u>SPAVI Parties' Supporting Evidence:</u> no proof of this has ever been established, particularly harm caused by any of the responding parties

 h. <u>Element No. 8</u>: SPAVI's wrongful conduct was a substantial factor in causing Defendants' harm.

  i. Disputed Status of Element 8:  The parties dispute that this element is satisfied.

  ii. Nature of Dispute: Factual.

  iii. <u>PCJV USA Parties' Supporting Evidence</u>: the following category, which is defined above, captures the key phase and supporting evidence: SPAVI Parties' Tortious Conduct.

  iv. <u>SPAVI's Supporting Evidence:</u> no proof of this has ever been established, particularly harm caused by any of the responding

1    parties.

2    **5) Cause of Action No. 6: Aiding and Abetting Torts.**

3        a. <u>Element No. 1</u>: SPAVI knew that a breach of a fiduciary duty, breach

4           of the implied covenant of good faith and fair dealing, fraud, or

5           conversion was going to be committed by Cinco Corporation, its

6           affiliates, or its agents against any one of the PCJV USA Parties.

7            i.    Disputed Status of Element 1:  The parties dispute that this

8                 element is satisfied.

9            ii.   Nature of Dispute: Factual.

10           iii.  <u>PCJV USA Parties' Supporting Evidence</u>: the following

11                categories, which are defined above, capture the key phases

12                and supporting evidence: Superseding Joint Venture (2008–

13                2010), Alternative Licensing Arrangements and Ongoing

14                Ratification (2011–2012), Formalization and Modification of

15                the Joint Venture (2012), LA Group Partnership Agreement

16                and Evolving Business Dynamics and Terms (2013–2018),

17                Dispute, Litigation, and State Court Proceedings (2018 and

18                Beyond), Ongoing Annual Ratification and Regulatory

19                Compliance, and SPAVI Parties' Tortious Conduct

20           iv.   <u>SPAVI's Supporting Evidence:</u> no torts have occurred so

21                nothing could be aided or abetted.

22       b. <u>Element No. 2</u>: SPAVI gave substantial assistance or encouragement

23          to Cinco Corporation, its affiliates, or its agents.

24           v.    Disputed Status of Element 2:  The parties dispute that this

25                element is satisfied.

26           vi.   Nature of Dispute: Factual.

27           vii.  <u>PCJV USA Parties' Supporting Evidence</u>: the following

28

---

SECOND AMENDED JOINTLY FILED CLAIMS,                    CASE NO. 2:24-CV-04546-SB(AGRX)
COUNTERCLAIMS, THIRD PARTY CLAIMS, AND
AFFIRMATIVE DEFENSES TO BE TRIED

category, which is defined above, captures the key phase and supporting evidence: SPAVI Parties' Tortious Conduct.

    viii.   SPAVI's Supporting Evidence: no torts have occurred so nothing could be aided or abetted.

  c.  Element No. 3: Cinco Corporation's, its affiliates, or tis agents' conduct was a substantial factor in causing harm to any one of the PCJV USA Parties.

    ix.   Disputed Status of Element 3: The parties dispute that this element is satisfied.

    x.   Nature of Dispute: Factual.

    xi.   PCJV USA Parties' Supporting Evidence: the following category, which is defined above, captures the key phase and supporting evidence: SPAVI Parties' Tortious Conduct.

    xii.   SPAVI's Supporting Evidence: no torts have occurred so nothing could be aided or abetted.

**6) Cause of Action No. 7: First Count of Breach of Fiduciary Duty.**

  a.  Element No. 1: either Cinco Corporation or SPAVI, as Cinco Corporation's successor-in-interest, was a joint venture partner of PCJV.

    i.   Disputed Status of Element 1: The parties dispute that this element is satisfied.

    ii.   Nature of Dispute: Factual.

    iii.   PCJV USA Parties' Supporting Evidence: the following categories, which are defined above, capture the key phases and supporting evidence: Superseding Joint Venture (2008–2010), Alternative Licensing Arrangements and Ongoing Ratification (2011–2012), Formalization and Modification of

the Joint Venture (2012), LA Group Partnership Agreement and Evolving Business Dynamics and Terms (2013–2018), Dispute, Litigation, and State Court Proceedings (2018 and Beyond), and Ongoing Annual Ratification and Regulatory Compliance.

    iv.   <u>SPAVI and Cinco's Supporting Evidence:</u> the absence of evidence will suffice. Also, no evidence that SPAVI is a successor in interest or took on this liability

b.  <u>Element No. 2</u>: Cinco Corporation or SPAVI, as Cinco Corporation's successor-in-interest, acted on PCJV's behalf for purposes of providing PCJV with an exclusive right to use the Potato Corner trademark in the United States.

    i.   Disputed Status of Element 2:  The parties dispute that this element is satisfied.

    ii.   Nature of Dispute: Factual

    iii.   <u>PCJV USA Parties' Supporting Evidence:</u> the following categories, which are defined above, capture the key phases and supporting evidence: Superseding Joint Venture (2008–2010), Alternative Licensing Arrangements and Ongoing Ratification (2011–2012), Formalization and Modification of the Joint Venture (2012), LA Group Partnership Agreement and Evolving Business Dynamics and Terms (2013–2018), Dispute, Litigation, and State Court Proceedings (2018 and Beyond), Ongoing Annual Ratification and Regulatory Compliance, and SPAVI Parties' Tortious Conduct

    iv.   <u>SPAVI and Cinco's Supporting Evidence:</u> the absence of evidence will suffice. Also, no evidence that SPAVI is a

SECOND AMENDED JOINTLY FILED CLAIMS,        CASE NO. 2:24-CV-04546-SB(AGRX)
COUNTERCLAIMS, THIRD PARTY CLAIMS, AND
AFFIRMATIVE DEFENSES TO BE TRIED

1  successor in interest or took on this liability

2  c.  Element No. 3: Cinco Corporation or SPAVI, as Cinco Corporation's

3  successor-in-interest, failed to act as a reasonably careful partner

4  would have acted under the same or similar circumstances.

5  i.  Disputed Status of Element 3:  The parties dispute that this

6  element is satisfied.

7  ii.  Nature of Dispute: Factual

8  iii.  PCJV USA Parties' Supporting Evidence: the following

9  categories, which are defined above, capture the key phases

10  and supporting evidence: Superseding Joint Venture (2008–

11  2010), Alternative Licensing Arrangements and Ongoing

12  Ratification (2011–2012), Formalization and Modification of

13  the Joint Venture (2012), LA Group Partnership Agreement

14  and Evolving Business Dynamics and Terms (2013–2018),

15  Dispute, Litigation, and State Court Proceedings (2018 and

16  Beyond), Ongoing Annual Ratification and Regulatory

17  Compliance, and SPAVI Parties' Tortious Conduct

18  iv.  SPAVI and Cinco's Supporting Evidence: the absence of

19  evidence of a duty will suffice. Also, no evidence that SPAVI

20  is a successor in interest or took on this liability

21  d.  Element No. 4: any one of the PCJV USA Parties were harmed.

22  i.  Disputed Status of Element 4:  The parties dispute that this

23  element is satisfied.

24  ii.  Nature of Dispute: factual

25  iii.  PCJV USA Parties' Supporting Evidence: the following

26  category, which is defined above, captures the key phase and

27  supporting evidence: SPAVI Parties' Tortious Conduct.

28

---

SECOND AMENDED JOINTLY FILED CLAIMS,                    CASE NO. 2:24-CV-04546-SB(AGRX)
COUNTERCLAIMS, THIRD PARTY CLAIMS, AND
AFFIRMATIVE DEFENSES TO BE TRIED

1            iv.     <u>SPAVI and Cinco's Supporting Evidence:</u> the absence of

2                       evidence of a duty will suffice. Also, no evidence that SPAVI

3                       is a successor in interest or took on this liability

4        e.    <u>Element No. 5</u>: the conduct of Cinco Corporation or SPAVI, as Cinco

5           Corporation's successor-in-interest, was a substantial factor in causing

6           any one of the PCJV USA Parties' harm.

7            i.      Disputed Status of Element 5: The parties dispute that this

8                       element is satisfied.

9            ii.     Nature of Dispute: factual

10           iii.    <u>PCJV USA Parties' Supporting Evidence</u>: the following

11                       category, which is defined above, captures the key phase and

12                       supporting evidence: SPAVI Parties' Tortious Conduct

13           iv.     <u>SPAVI and Cinco's Supporting Evidence:</u> the absence of

14                       evidence of a duty will suffice. Also, no evidence that SPAVI

15                       is a successor in interest or took on this liability

16     **7) <u>Cause of Action No. 7: Second Count of Breach of Fiduciary Duty.</u>**

17        a.    <u>Element No. 1</u>: Cinco Corporation or SPAVI, as Cinco Corporation's

18           successor-in-interest, was a joint venture partner of PCJV.

19            i.      Disputed Status of Element 1: The parties dispute that this

20                       element is satisfied.

21            ii.     <u>Nature of Dispute:</u> factual

22           iii.    <u>PCJV USA Parties' Supporting Evidence</u>: the following

23                       categories, which are defined above, capture the key phases

24                       and supporting evidence: Superseding Joint Venture (2008–

25                       2010), Alternative Licensing Arrangements and Ongoing

26                       Ratification (2011–2012), Formalization and Modification of

27                       the Joint Venture (2012), LA Group Partnership Agreement

28

SECOND AMENDED JOINTLY FILED CLAIMS,            CASE NO. 2:24-CV-04546-SB(AGRX)
COUNTERCLAIMS, THIRD PARTY CLAIMS, AND
AFFIRMATIVE DEFENSES TO BE TRIED

and Evolving Business Dynamics and Terms (2013–2018),
Dispute, Litigation, and State Court Proceedings (2018 and
Beyond), and Ongoing Annual Ratification and Regulatory
Compliance.

    iv.   SPAVI and Cinco's Supporting Evidence: the absence of
evidence of a duty will suffice. Also, no evidence that SPAVI
is a successor in interest or took on this liability

  b.  Element No. 2: Cinco Corporation or SPAVI, as Cinco Corporation's
successor-in-interest, knowingly acted against interests of PCJV and
PCJV's other joint venture partners in connection with providing
PCJV with an exclusive right to use the Potato Corner trademark in the
United States.

    i.   Disputed Status of Element 2:  The parties dispute that this
element is satisfied.

    ii.   Nature of Dispute: Factual

    iii.   PCJV USA Parties' Supporting Evidence: the following
categories, which are defined above, capture the key phases
and supporting evidence: Superseding Joint Venture (2008–
2010), Alternative Licensing Arrangements and Ongoing
Ratification (2011–2012), Formalization and Modification of
the Joint Venture (2012), LA Group Partnership Agreement
and Evolving Business Dynamics and Terms (2013–2018),
Dispute, Litigation, and State Court Proceedings (2018 and
Beyond), Ongoing Annual Ratification and Regulatory
Compliance, and SPAVI Parties' Tortious Conduct

    iv.   SPAVI and Cinco's Supporting Evidence: the absence of
evidence of a duty will suffice. Also, no evidence that SPAVI

SECOND AMENDED JOINTLY FILED CLAIMS,
COUNTERCLAIMS, THIRD PARTY CLAIMS, AND
AFFIRMATIVE DEFENSES TO BE TRIED

CASE NO. 2:24-CV-04546-SB(AGRX)

1        is a successor in interest or took on this liability

2        c. Element No. 3: any one of the PCJV USA Parties did not give

3            informed consent to the conduct of Cinco Corporation or SPAVI, as

4            Cinco Corporation's successor-in-interest.

5                i.    Disputed Status of Element 3:  The parties dispute that this

6                      element is satisfied.

7                ii.   Nature of Dispute: Factual

8                iii.  PCJV USA Parties' Supporting Evidence: the following

9                      categories, which are defined above, capture the key phases

10                     and supporting evidence: Superseding Joint Venture (2008–

11                     2010), Alternative Licensing Arrangements and Ongoing

12                     Ratification (2011–2012), Formalization and Modification of

13                     the Joint Venture (2012), LA Group Partnership Agreement

14                     and Evolving Business Dynamics and Terms (2013–2018),

15                     Dispute, Litigation, and State Court Proceedings (2018 and

16                     Beyond), Ongoing Annual Ratification and Regulatory

17                     Compliance, and SPAVI Parties' Tortious Conduct.

18               iv.   SPAVI and Cinco's Supporting Evidence: the absence of

19                     evidence of a duty will suffice. Also, no evidence that SPAVI

20                     is a successor in interest or took on this liability

21       d. Element No. 4: any one of the PCJV USA Parties were harmed,

22               i.    Disputed Status of Element 4:  The parties dispute that this

23                     element is satisfied.

24               ii.   Nature of Dispute: Factual.

25               iii.  PCJV USA Parties' Supporting Evidence: the following

26                     category, which is defined above, captures the key phase and

27                     supporting evidence: SPAVI Parties' Tortious Conduct.

28

---

SECOND AMENDED JOINTLY FILED CLAIMS,                    CASE NO. 2:24-CV-04546-SB(AGRX)
COUNTERCLAIMS, THIRD PARTY CLAIMS, AND
AFFIRMATIVE DEFENSES TO BE TRIED

iv.  SPAVI and Cinco's Supporting Evidence: the absence of
evidence of a duty will suffice. Also, no evidence that SPAVI
is a successor in interest or took on this liability

e.  Element No. 5: the conduct of Cinco Corporation or SPAVI, as Cinco
Corporation's successor-in-interest, was a substantial factor in causing
any one of the PCJV USA Parties' harm.

i.  Disputed Status of Element 5:  The parties dispute that this
element is satisfied.

ii.  Nature of Dispute: factual

iii.  PCJV USA Parties' Supporting Evidence: the following
category, which is defined above, captures the key phase and
supporting evidence: SPAVI Parties' Tortious Conduct

iv.  SPAVI and Cinco's Supporting Evidence: the absence of
evidence of a duty will suffice. Also, no evidence that SPAVI
is a successor in interest or took on this liability

8) **Cause of Action No. 8: Breach of Contract.**

a.  Element No. 1: there is a contract between PCJV and Cinco
Corporation or SPAVI, as Cinco Corporation's successor-in-interest.

i.  Disputed Status of Element 1:  The parties dispute this
element is satisfied.

ii.  Nature of Dispute: factual and legal

iii.  PCJV USA Parties' Position Statement: The term for PCJV
USA, LLC's use of the U.S. Potato Corner trademarks "can
be [i]mplied from the nature of the contract and
circumstances surrounding it." *See Consolidated Theatres,
Inc. v. Theatrical Stage Emp. Union, Local 16*, 69 Cal.2d
713, 725 (1968). The "initial effort of the court, in construing

SECOND AMENDED JOINTLY FILED CLAIMS,                    CASE NO. 2:24-CV-04546-SB(AGRX)
COUNTERCLAIMS, THIRD PARTY CLAIMS, AND
AFFIRMATIVE DEFENSES TO BE TRIED

1          contracts of continuing performance of forebearance which

2          contain no express term of duration, must always be that of

3          implying a term of duration commensurate with the

4          intentions of the parties . . . ." *Id.* at 727. Only when "the

5          nature of the contract and the totality of the surrounding

6          circumstances give no suggestion as to any ascertainable

7          term . . . , the obligations under the contract shall be

8          terminable at will by any party upon reasonable notice after

9          such a reasonable time has elapsed." *Id.* Further, it is

10         immaterial that SPAVI had full knowledge of the contracts'

11         terms. *See Jenni Rivera Enterprises, LLC v. Latin World*

12         *Entertainment Holdings, Inc.*, 36 Cal. App. 5th 766, 783

13         (2019). Nor is SPAVI's belief about the legal significance of

14         facts or belief that the parties' agreements are legally binding

15         or has a different legal effect from what it is judicially held to

16         have.  *See Little v. Amber Hotel Co.*, 202 Cal. App. 4th 280,

17         302 (2011)

18       iv.    <u>Plaintiff's Position Statement:</u> as drafted it is impossible to

19         know what the specific contract is that is at issue here. It has

20         never been disclosed, and still undisclosed. Rather than

21         jettison the claim or actually identify the  contract, instead,

22         Defendants' solution is to fudge with obtuse language in the

23         jury instructions, designed to confuse everyone, including the

24         jury: "there was a contract between any one of the PCJV

25         Plaintiffs and any one of the Cinco parties." Indeed, the only

26         contract that Cinco has been a party to with any of these

27         Counterclaimants is the Settlement Agreement of the Prior

28

1             Governance Action. There is no other written agreement

2             between  PCJV and Cinco, or between any other

3             Counterclaimant and Cinco.  It is possible that

4             Counterclaimants are seeking to allege that Cinco is an alter

5             ego of Potato Corner  International or others, however,

6             PCJV and the other counterclaimants already  alleged this --

7             alt3er ego status of Cinco --  and after a negotiated

8             settlement, dismissed this claim with prejudice. They may

9             not raise it now. *See, e.g., Torrey Pines Bank v. Superior Ct.*,

10            216 Cal. App. 3d 813, 820 (Ct. App. 1989) (holding that ""a

11            dismissal with prejudice is the maiden name for a  common

12            law retraxit," and "[a] retraxit is equivalent to a judgment on

13            the merits and as such bars further litigation on the same

14            subject matter between the parties."); *Datta v. Staab*, 173

15            Cal. App. 2d 613, 620—21 (1959) ("The effect of a dismissal

16            with prejudice is quite different, however, when it is

17            executed and filed in return for a consideration moving from

18            the defendant. Such a dismissal operates as a complete bar to

19            any future action and has the same legal effect as a common

20            law petraxit.").

21      v.    Defendants' Supporting Evidence: the following categories,

22            which are defined above, capture the key phases and

23            supporting evidence: Superseding Joint Venture (2008–

24            2010), Alternative Licensing Arrangements and Ongoing

25            Ratification (2011–2012), Formalization and Modification of

26            the Joint Venture (2012), LA Group Partnership Agreement

27            and Evolving Business Dynamics and Terms (2013–2018),

28

SECOND AMENDED JOINTLY FILED CLAIMS,
COUNTERCLAIMS, THIRD PARTY CLAIMS, AND
AFFIRMATIVE DEFENSES TO BE TRIED

CASE NO. 2:24-CV-04546-SB(AGRX)

1  Dispute, Litigation, and State Court Proceedings (2018 and

2  Beyond), and Ongoing Annual Ratification and Regulatory

3  Compliance.

4      vi.   <u>SPAVI Parties' Supporting Evidence:</u> Each of the

5  agreements included in the trial exhibits and  testimony of

6  Mr. Magsaysay, Mr. Koren, and Ms. Victor – all of  which

7  will establish that  none of the Counterclaimants – PCJV,

8  PCIT, LA Group LLC, GK Capital, NKM, or Koren have

9  any contract to which Cinco has privity; the settlement

10  agreement (Trial Exhibit 1172) and evidence of the

11  dismissals with  prejudice, as well as the pleadings in the

12  prior case establishing what has been dismissed, and subject

13  to retraxit.

14    b. <u>Element No. 2:</u> PCJV USA Parties did all or substantially all of the

15  things required under the contract, or were excused from  so

16  performing:

17      i.   Disputed Status of Element 2:  The parties dispute this

18  element is satisfied.

19      ii.   Nature of Dispute: factual  and legal.

20      iii.   <u>PCJV USA Parties' Position Statement:</u> Plaintiff's position

21  statement does not address a legal issue concerning this

22  element. To the extent Plaintiff's position statement

23  addresses element 1, PCJV USA Parties incorporate their

24  respective response here

25      iv.   <u>Plaintiff's Position Statement:</u> as drafted it is impossible to

26  know what the specific contract is at issue here. It has never

27  been disclosed, and still undisclosed. So, when this element

28

SECOND AMENDED JOINTLY FILED CLAIMS,      CASE NO. 2:24-CV-04546-SB(AGRX)
COUNTERCLAIMS, THIRD PARTY CLAIMS, AND
AFFIRMATIVE DEFENSES TO BE TRIED

1   in the instructions says, "the contract," whereas the prior

2   element refers to some unidentified contract, as a matter of

3   law, yes, this element is disputed. To the extent any actual

4   contract ever existed between Cinco and these parties, the

5   only one that is possible is the Settlement Agreement and

6   corresponding agreement selling PCJV equity to GKK

7   Capital. (Trial Exhibit 1176.) Because Cinco has never been

8   a party to any other contract with any of the Counterclaim

9   Defendants, that is the only one that could possibly be at

10  issue, but Defendants refuse to acknowledge this. It is

11  possible that Counterclaimants are seeking to allege that

12  Cinco is an alter ego of Potato Corner  International or

13  others, however,  PCJV and the other counterclaimants

14  already  alleged this --  alter ego status of Cinco --  and after

15  a negotiated settlement, dismissed this claim with prejudice.

16  They may not raise it now. *See, e.g., Torrey Pines Bank v.*

17  *Superior Ct.*, 216 Cal. App. 3d 813, 820 (Ct. App. 1989)

18  (holding that "a dismissal with prejudice is the maiden name

19  fir a common law retraxit," and "[a] retraxit is equivalent to a

20  judgment on the merits and as such bars further litigation on

21  the same subject matter between the parties."); *Datta v.*

22  *Staab*, 173 Cal. App. 2d 613, 620—21 (1959) ("The effect of

23  a dismissal with prejudice is quite different, however, when

24  it is executed and filed in return for a consideration moving

25  from the defendant. Such a dismissal operates as a complete

26  bar to any future action and has the same legal effect as a

27  common law petraxit.") (internal

28

SECOND AMENDED JOINTLY FILED CLAIMS,                    CASE NO. 2:24-CV-04546-SB(AGRX)
COUNTERCLAIMS, THIRD PARTY CLAIMS, AND
AFFIRMATIVE DEFENSES TO BE TRIED

1                v.     PCJV USA Parties' Supporting Evidence: the following

2                        categories, which are defined above, capture the key phases

3                        and supporting evidence: Superseding Joint Venture (2008–

4                        2010), Alternative Licensing Arrangements and Ongoing

5                        Ratification (2011–2012), Formalization and Modification of

6                        the Joint Venture (2012), LA Group Partnership Agreement

7                        and Evolving Business Dynamics and Terms (2013–2018),

8                        Dispute, Litigation, and State Court Proceedings (2018 and

9                        Beyond), and Ongoing Annual Ratification and Regulatory

10                       Compliance.

11               vi.    SPAVI Parties' Supporting Evidence: Each of the

12                        agreements included in the trial exhibits and  testimony of

13                        Mr. Magsaysay, Mr. Koren, and Ms. Victor – all of  which

14                        will establish that  none of the Counterclaimants – PCJV,

15                        PCIT, LA Group LLC, GK Capital, NKM, or Koren have

16                        any contract to which Cinco has privity; the settlement

17                        agreement (Trial Exhibit 1172) and evidence of the

18                        dismissals with  prejudice, as well as the pleadings in the

19                        prior case establishing what has been dismissed, and subject

20                        to retraxit..

21         c.  Element No. 3: Cinco Corporation or SPAVI, as Cinco

22           Corporation's successor-in-interest, breached the contract

23            i.    Disputed Status of Element 3:  The parties dispute this

24                      element is satisfied.

25            ii.    Nature of Dispute: factual and legal.

26           iii.   PCJV USA Parties' Position Statement: SPAVI intended to

27                      cause the breach of the above listed contracts by: (1)

28

SECOND AMENDED JOINTLY FILED CLAIMS,              CASE NO. 2:24-CV-04546-SB(AGRX)
COUNTERCLAIMS, THIRD PARTY CLAIMS, AND
AFFIRMATIVE DEFENSES TO BE TRIED

allegedly acquiring IP rights from Cinco (which SPAVI

claims include US IP rights), without LA

Group's/Koren's/PCJV's prior written consent in violation of

the JVA/AJVA/LLC Agreement; (2) failing to allegedly

acquire the associated obligations and burdens under those

agreements to, for example, acknowledge our use and

termination rights, make best efforts to cooperate for the

success of PCJV, to perform further acts (such as execute

and deliver all required documents), if necessary, to provide

us use rights, or to, at minimum, acknowledge that PCJV

maintains a 50-year license or at least may continue to use

for as long as necessary under the franchise agreements it

was authorized to sign with franchisees in violation of the

JVA/AJVA/LLC Agreement/license agreements/MSA (and

associated written, oral, implied-in-fact

agreements/modifications, such as meeting minutes, written

communications of the PCJV members/managers, FDDs);

(3) refusing to acknowledge PCJV's right to reverse engineer

the powders/spices in violation of the PCJV board meeting

minutes; (4) refusing to acknowledge PCJV's affiliated

Koren stores' right not to pay royalties in accordance with

the JVA/AJVA/LLC Agreement; (5) refusing to

acknowledge LA Group's and Cinco Group/PCI Group's

mutual waiver of royalties as to all other initial/franchise fees

or other royalty income actually collected or to be collected

by PCJV in accordance with the JVA/AJVA/LLC

Agreement/FDDs; (6) refusing to honor the settlement struck

SECOND AMENDED JOINTLY FILED CLAIMS,                    CASE NO. 2:24-CV-04546-SB(AGRX)
COUNTERCLAIMS, THIRD PARTY CLAIMS, AND
AFFIRMATIVE DEFENSES TO BE TRIED

1              with Cinco whereby Koren/GK acquired all interests and

2              attached interests (despite representing that it would); and (7)

3              causing certain PCJV franchisees to breach their franchise

4              agreements and associate themselves with SPAVI.

5       iv.   <u>Plaintiff's Position Statement:</u> The only contracts that have

6              been identified as being "breached" are the unsigned licensee

7              agreement and the AJVA. Neither document binds Cinco –

8              indeed, that the AJVA constitutes an agreement to agree and

9              not a contract  has  already been adjudicated and decided as

10             law of the case. It is impossible to  know what the specific

11             contract is at issue here. To the extent any actual contract

12             ever existed between Cinco and these parties, the only one

13             that is possible is the Settlement Agreement and

14             corresponding agreement selling PCJV equity to GKK

15             Capital. (Trial Exhibit 1176.) Because Cinco has never been

16             a party to any other contract with any of the Counterclaim

17             Defendants, that is the only one that could possibly be at

18             issue, but Defendants refuse to acknowledge this.

19       v.   <u>PCJV USA Parties' Supporting Evidence:</u> the following

20             categories, which are defined above, capture the key phases

21             and supporting evidence: Superseding Joint Venture (2008–

22             2010), Alternative Licensing Arrangements and Ongoing

23             Ratification (2011–2012), Formalization and Modification of

24             the Joint Venture (2012), LA Group Partnership Agreement

25             and Evolving Business Dynamics and Terms (2013–2018),

26             Dispute, Litigation, and State Court Proceedings (2018 and

27             Beyond), Ongoing Annual Ratification and Regulatory

28

1    Compliance, and SPAVI Parties' Tortious Conduct.

2         vi.    SPAVI Parties' Supporting Evidence: The absence of

3    evidence that Cinco was a party to, or breached, any

4    contract with any of the Counterclaimants is the supporting

5    evidence.

6    d. Element No. 4: PCJV USA Parties were harmed.

7         i.    Disputed Status of Element 4: The parties dispute this

8    element is satisfied.

9         ii.    Nature of Dispute: factual and legal.

10        iii.   Defendants' Position Statement: Plaintiff's position

11   statement does not address a legal issue concerning this

12   element. To the extent Plaintiff's position statement

13   addresses element 1, PCJV USA Parties incorporate their

14   respective response here.

15        iv.    Plaintiff's Position Statement: Cinco breached no contract.

16   The only contracts that have been identified as being

17   "breached" are the unsigned licensee agreement and the

18   AJVA. Neither document binds Cinco – indeed, that the

19   AJVA constitutes an agreement to agree and not a contract

20   has already been adjudicated and decided as law of the case.

21   It is impossible to know what the specific contract is at issue

22   here. To the extent any actual contract ever existed between

23   Cinco and these parties, the only one that is possible is the

24   Settlement Agreement and corresponding agreement selling

25   PCJV equity to GKK Capital. (Trial Exhibit 1176.) Because

26   Cinco has never been a party to any other contract with any

27   of the Counterclaim Defendants, that is the only one that

28

SECOND AMENDED JOINTLY FILED CLAIMS,                CASE NO. 2:24-CV-04546-SB(AGRX)
COUNTERCLAIMS, THIRD PARTY CLAIMS, AND
AFFIRMATIVE DEFENSES TO BE TRIED

1 | could possibly be at issue, but Defendants refuse to
2 | acknowledge this.
3 |     v.   <u>Defendants' Supporting Evidence:</u> the following category,
4 | which is defined above, captures the key phase and
5 | supporting evidence: SPAVI Parties' Tortious Conduct.
6 |     vi.   <u>SPAVI Parties' Supporting Evidence:</u> The absence of
7 | evidence that Cinco was a party to, or breached, any
8 | contract with any of the Counterclaimants is the supporting
9 | evidence, as there is no way any of the Counterclaimants
10 | could have been harmed.

**9)   Cause of Action No. 9: Breach of Covenant oof Good Faith and Fair
Dealing.**

    e.  Element No. 1: there is a contract between a Counterclaimant and
Cinco Corporation / that SPAVI is a successor in interest to a contract
with Cinco.

        i.   Disputed Status of Element 1: The parties dispute this
element is satisfied.

        ii.   Nature of Dispute: factual and legal

        iii.   <u>PCJV USA Parties' Position Statement:</u> The term for PCJV
USA, LLC's use of the U.S. Potato Corner trademarks "can
be [i]mplied from the nature of the contract and
circumstances surrounding it." *See Consolidated Theatres,
Inc. v. Theatrical Stage Emp. Union, Local 16*, 69 Cal.2d
713, 725 (1968). The "initial effort of the court, in construing
contracts of continuing performance of forebearance which
contain no express term of duration, must always be that of
implying a term of duration commensurate with the

intentions of the parties . . . ." *Id.* at 727. Only when "the nature of the contract and the totality of the surrounding circumstances give no suggestion as to any ascertainable term . . . , the obligations under the contract shall be terminable at will by any party upon reasonable notice after such a reasonable time has elapsed." *Id.* Further, it is immaterial that SPAVI had full knowledge of the contracts' terms. *See Jenni Rivera Enterprises, LLC v. Latin World Entertainment Holdings, Inc.*, 36 Cal. App. 5th 766, 783 (2019). Nor is SPAVI's belief about the legal significance of facts or belief that the parties' agreements are legally binding or has a different legal effect from what it is judicially held to have. *See Little v. Amber Hotel Co.*, 202 Cal. App. 4th 280, 302 (2011).

iv.    Plaintiff's Position Statement: Moreover, and again, as drafted it is impossible to  know what the specific contract is that is at issue here. It has never been disclosed, and still undisclosed. Rather than jettison the claim or actually identify the  contract, instead, Defendants' solution is to fudge with obtuse language in the jury instructions, designed to confuse everyone, including the jury: "there was a contract between any one of the PCJV Plaintiffs and any one of the Cinco parties." Indeed, the only contract that Cinco has been a party to with any of these Counterclaimants is the Settlement Agreement of the Prior Governance Action. There is no other written agreement between  PCJV and Cinco, or between any other Counterclaimant and Cinco.  It is possible

1    that Counterclaimants are seeking to allege that Cinco is an

2    alter ego of Potato Corner  International or others, however,

3    PCJV and the other counterclaimants already  alleged this --

4    alt3er ego status of Cinco --  and after a negotiated

5    settlement, dismissed this claim with prejudice. They may

6    not raise it now. *See, e.g., Torrey Pines Bank v. Superior Ct*.,

7    216 Cal. App. 3d 813, 820 (Ct. App. 1989) (holding that ""a

8    dismissal with prejudice is the maiden name for a common

9    law retraxit," and "[a] retraxit is equivalent to a judgment on

10   the merits and as such bars further litigation on the same

11   subject matter between the parties."); *Datta v. Staab*, 173

12   Cal. App. 2d 613, 620—21 (1959) ("The effect of a dismissal

13   with prejudice is quite different, however, when it is

14   executed and filed in return for a consideration moving from

15   the defendant. Such a dismissal operates as a complete bar to

16   any future action and has the same legal effect as a common

17   law petraxit."). Second, as for SPAVI, it purchased

18   intellectual property, and did not assume any contracts

19   binding Cinco. Thus, the claim that SPAVI is  bound to good

20   faith and fair dealing as a "successor in interest has no basis"

21   and can be resolved a matter of law,,  given that this  simply

22   requires interpretation of contracts  binding  Cinco (of which

23   there are no one) to which SPAVI assumed (also, null set).

24   Put simply – S{PAVI  is  not a  successor in interest to any

25   contract of Cinco, and by purchasing the intellectual property

26   of  Cinco, it was only  bound to those contracts  involving the

27   use and licensing of the brand – none of which are at issue  in

28

SECOND AMENDED JOINTLY FILED CLAIMS,                CASE NO. 2:24-CV-04546-SB(AGRX)
COUNTERCLAIMS, THIRD PARTY CLAIMS, AND
AFFIRMATIVE DEFENSES TO BE TRIED

1     this case.

2          v.    <u>PCJV USA Parties' Supporting Evidence:</u> the following

3                categories, which are defined above, capture the key phases

4                and supporting evidence: Superseding Joint Venture (2008–

5                2010), Alternative Licensing Arrangements and Ongoing

6                Ratification (2011–2012), Formalization and Modification of

7                the Joint Venture (2012), LA Group Partnership Agreement

8                and Evolving Business Dynamics and Terms (2013–2018),

9                Dispute, Litigation, and State Court Proceedings (2018 and

10               Beyond), and Ongoing Annual Ratification and Regulatory

11               Compliance.

12         vi.   <u>SPAVI Parties' Supporting Evidence:</u> Each of the

13               agreements included in the trial exhibits and  testimony of

14               Mr. Magsaysay, Mr. Koren, and Ms. Victor – all of  which

15               will establish that  none of the Counterclaimants – PCJV,

16               PCIT, LA Group LLC, GK Capital, NKM, or Koren have

17               any contract to which Cinco has privity; the settlement

18               agreement (Trial Exhibit 1172) and evidence of the

19               dismissals with  prejudice, as well as the pleadings in the

20               prior case establishing what has been dismissed, and subject

21               to retraxit.

22     f.   Element No. 2: The Counterclaimant  that is a party to the contract

23          did all or substantially all of the things required under the contract,

24          or were excused from so performing:

25          i.    Disputed Status of Element 2:  The parties dispute this

26                element is satisfied.

27          ii.   Nature of Dispute: factual  and legal.

28

SECOND AMENDED JOINTLY FILED CLAIMS,                    CASE NO. 2:24-CV-04546-SB(AGRX)
COUNTERCLAIMS, THIRD PARTY CLAIMS, AND
AFFIRMATIVE DEFENSES TO BE TRIED

1          iii.    <u>PCJV USA Parties' Position Statement:</u> Plaintiff's position

2                statement does not address a legal issue concerning this

3                element. To the extent Plaintiff's position statement

4                addresses element 1, PCJV USA Parties incorporate their

5                respective response here.

6          iv.    <u>Plaintiff's Position Statement:</u> as drafted it is impossible to

7                know what the specific contract is at issue here. It has never

8                been disclosed, and still undisclosed. So, when this element

9                in the instructions says, "the contract," whereas the prior

10              element refers to some unidentified contract, as a matter of

11              law, yes, this element is disputed. To the extent any actual

12              contract ever existed between Cinco and these parties, the

13              only one that is possible is the Settlement Agreement and

14              corresponding agreement selling PCJV equity to GKK

15              Capital. (Trial Exhibit 1176.) Because Cinco has never been

16              a party to any other contract with any of the Counterclaim

17              Defendants, that is the only one that could possibly be at

18              issue, but Defendants refuse to acknowledge this. It is

19              possible that Counterclaimants are seeking to allege that

20              Cinco is an alter ego of Potato Corner  International or

21              others, however,  PCJV and the other counterclaimants

22              already  alleged this --  alter ego status of Cinco --  and after

23              a negotiated settlement, dismissed this claim with prejudice.

24              They may not raise it now. *See, e.g., Torrey Pines Bank v.*

25              *Superior Ct.*, 216 Cal. App. 3d 813, 820 (Ct. App. 1989)

26              (holding that "a dismissal with prejudice is the maiden name

27              for a  common law retraxit," and "[a] retraxit is equivalent to

28

SECOND AMENDED JOINTLY FILED CLAIMS,           CASE NO. 2:24-CV-04546-SB(AGRX)
COUNTERCLAIMS, THIRD PARTY CLAIMS, AND
AFFIRMATIVE DEFENSES TO BE TRIED

1   a judgment on the merits and as such bars further litigation

2   on the same subject matter between the parties."); *Datta v.*

3   *Staab*, 173 Cal. App. 2d 613, 620—21 (1959) ("The effect of

4   a dismissal with prejudice is quite different, however, when

5   it is executed and filed in return for a consideration moving

6   from the defendant. Such a dismissal operates as a complete

7   bar to any future action and has the same legal effect as a

8   common law petraxit."). Second, as for SPAVI, it purchased

9   intellectual property, and did not assume any contracts

10  binding Cinco. Thus, the claim that SPAVI is  bound to good

11  faith and fair dealing as a "successor in interest has no basis"

12  and can be resolved a matter of law,,  given that this  simply

13  requires interpretation of contracts  binding  Cinco (of which

14  there are no one) to which SPAVI assumed (also, null set).

15  Put simply – S{PAVI  is  not a  successor in interest to any

16  contract of Cinco, and by purchasing the intellectual property

17  of  Cinco, it was only  bound to those contracts  involving the

18  use and licensing of the brand – none of which are at issue  in

19  this case.

20      v.   <u>PCJV USA Parties' Supporting Evidence:</u> the following

21           categories, which are defined above, capture the key phases

22           and supporting evidence: Superseding Joint Venture (2008–

23           2010), Alternative Licensing Arrangements and Ongoing

24           Ratification (2011–2012), Formalization and Modification of

25           the Joint Venture (2012), LA Group Partnership Agreement

26           and Evolving Business Dynamics and Terms (2013–2018),

27           Dispute, Litigation, and State Court Proceedings (2018 and

28

SECOND AMENDED JOINTLY FILED CLAIMS,                        CASE NO. 2:24-CV-04546-SB(AGRX)
COUNTERCLAIMS, THIRD PARTY CLAIMS, AND
AFFIRMATIVE DEFENSES TO BE TRIED

1    Beyond), Ongoing Annual Ratification and Regulatory

2    Compliance, and SPAVI Parties' Tortious Conduct.

3    vi.    SPAVI Parties' Supporting Evidence: Each of the

4    agreements included in the trial exhibits and testimony of

5    Mr. Magsaysay, Mr. Koren, and Ms. Victor – all of which

6    will establish that none of the Counterclaimants – PCJV,

7    PCIT, LA Group LLC, GK Capital, NKM, or Koren have

8    any contract to which Cinco has privity; the settlement

9    agreement (Trial Exhibit 1172) and evidence of the

10    dismissals with prejudice, as well as the pleadings in the

11    prior case establishing what has been dismissed, and subject

12    to retraxit.

13    g.    Element No. 3: Cinco or SPAVI engaged in conduct that breached

14    the duty of good faith and fair dealing.

15    i.    Disputed Status of Element 3: The parties dispute this

16    element is satisfied.

17    ii.    Nature of Dispute: factual and legal.

18    iii.    PCJV USA Parties' Position Statement: Plaintiff's position

19    statement does not address a legal issue concerning this

20    element. To the extent Plaintiff's position statement

21    addresses element 1, PCJV USA Parties incorporate their

22    respective response here.

23    iv.    Plaintiff's Position Statement: The only contracts that have

24    been identified as being "breached" are the unsigned licensee

25    agreement and the AJVA. Neither document binds Cinco –

26    indeed, that the AJVA constitutes an agreement to agree and

27    not a contract has already been adjudicated and decided as

28

SECOND AMENDED JOINTLY FILED CLAIMS,    CASE NO. 2:24-CV-04546-SB(AGRX)
COUNTERCLAIMS, THIRD PARTY CLAIMS, AND
AFFIRMATIVE DEFENSES TO BE TRIED

law of the case. It is impossible to know what the specific
contract is at issue here. To the extent any actual contract
ever existed between Cinco and these parties, the only one
that is possible is the Settlement Agreement and
corresponding agreement selling PCJV equity to GKK
Capital. (Trial Exhibit 1176.) Because Cinco has never been
a party to any other contract with any of the Counterclaim
Defendants, that is the only one that could possibly be at
issue, but Defendants refuse to acknowledge this. In the
absence of a contract binding Cinco, it is possible that
Counterclaimants are seeking to allege that Cinco is an alter
ego of Potato Corner International or others, however,
PCJV and the other counterclaimants already alleged this --
alter ego status of Cinco -- and after a negotiated settlement,
dismissed this claim with prejudice. They may not raise it
now. *See, e.g., Torrey Pines Bank v. Superior Ct*., 216 Cal.
App. 3d 813, 820 (Ct. App. 1989) (holding that ""a dismissal
with prejudice is the maiden name for a common law
retraxit," and "[a] retraxit is equivalent to a judgment on the
merits and as such bars further litigation on the same subject
matter between the parties."); *Datta v. Staab*, 173 Cal. App.
2d 613, 620—21 (1959) ("The effect of a dismissal with
prejudice is quite different, however, when it is executed and
filed in return for a consideration moving from the defendant.
Such a dismissal operates as a complete bar to any future
action and has the same legal effect as a common law
petraxit."). Second, as for SPAVI, it purchased intellectual

SECOND AMENDED JOINTLY FILED CLAIMS,          CASE NO. 2:24-CV-04546-SB(AGRX)
COUNTERCLAIMS, THIRD PARTY CLAIMS, AND
AFFIRMATIVE DEFENSES TO BE TRIED

1    property, and did not assume any contracts binding Cinco.

2    Thus, the claim that SPAVI is  bound to good faith and fair

3    dealing as a "successor in interest has no basis" and can be

4    resolved a matter of law,,  given that this  simply requires

5    interpretation of contracts  binding  Cinco (of which there are

6    no one) to which SPAVI assumed (also, null set). Put simply

7    – S{PAVI  is  not a  successor in interest to any contract of

8    Cinco, and by purchasing the intellectual property  of  Cinco,

9    it was only  bound to those contracts involving the use and

10   licensing of the brand– none of which are at issue  in this

11   case.

12   v.    PCJV USA Parties' Supporting Evidence: the following

13        category, which is defined above, captures the key phase and

14        supporting evidence: SPAVI Parties' Tortious Conduct.

15   vi.   SPAVI Parties' Supporting Evidence: The absence of

16        evidence that  Cinco was a party to, or  breached, any

17        contract with any  of the Counterclaimants is  the supporting

18        evidence. Plaintiff's Position Statement: In addition to the

19        absence of any contract binding Cinco  or  SPAVI – thus

20        there could be no corresponding breach of the covenant of

21        good  faith and fair dealing – the evidence of Koren's

22        behavior during the license negotiations, particularly with

23        SPAVI, lead  to the conclusion that it  was he that caused the

24        negotiations to fail, not anyone else. Testimony of SPAVI

25        (Gregorio and Tan) as well as their correspondence with

26        Koren (Trial Exhibits 20-31) will establish this. The only

27        contracts that have been identified as being "breached" are

28

SECOND AMENDED JOINTLY FILED CLAIMS,                    CASE NO. 2:24-CV-04546-SB(AGRX)
COUNTERCLAIMS, THIRD PARTY CLAIMS, AND
AFFIRMATIVE DEFENSES TO BE TRIED

the unsigned licensee agreement and the AJVA. Neither document binds Cinco – indeed, that the AJVA constitutes an agreement to agree and not a contract  has  already been adjudicated and decided as law of the case. It is impossible to know what the specific contract is at issue here. To the extent any actual contract ever existed between Cinco and these parties, the only one that is possible is the Settlement Agreement and corresponding agreement selling PCJV equity to GKK Capital. (Trial Exhibit 1176.) I acknowledge has never been a party to any other contract with any of the Counterclaim Defendants, which is the only one that could possibly be at issue, but Defendants refuse to acknowledge this.

h. Element No. 4: Counterclaimants were harmed.

   i.   Disputed Status of Element 4:  The parties dispute this element is satisfied.

   ii.   Nature of Dispute: legal.

   iii.   PCJV Usa Parties' Position Statement: Plaintiff's position statement does not address a legal issue concerning this element. To the extent Plaintiff's position statement addresses element 1, PCJV USA Parties incorporate their respective response here.

   iv.   Plaintiff's Position Statement: Cinco breached no contract. The only contracts that have been identified as being "breached" are the unsigned licensee agreement and the AJVA. Neither document binds Cinco – indeed, that the AJVA constitutes an agreement to agree and not a contract

has  already been adjudicated and decided as law of the case. It is impossible to  know what the specific contract is at issue here. To the extent any actual contract ever existed between Cinco and these parties, the only one that is possible is the Settlement Agreement and corresponding agreement selling PCJV equity to GKK Capital. (Trial Exhibit 1176.) Because Cinco has never been a party to any other contract with any of the Counterclaim Defendants, that is the only one that could possibly be at issue, but Defendants refuse to acknowledge this.

**i.   Cause of Action No. 11: Quantum Meruit.**

    i.   <u>Element No. 1</u>: any of the SPAVI Parties requested, by words or conduct, that any one of the PCJV USA Parties perform services for the benefit of any of the SPAVI Parties.

        i.   Disputed Status of Element 1:  The parties dispute that this element is satisfied.

        ii.   <u>Nature of Dispute:</u> Factual

        iii.   <u>PCJV USA Parties' Supporting Evidence:</u> the following categories, which are defined above, capture the key phases and supporting evidence: Superseding Joint Venture (2008–2010), Alternative Licensing Arrangements and Ongoing Ratification (2011–2012), Formalization and Modification of the Joint Venture (2012), LA Group Partnership Agreement and Evolving Business Dynamics and Terms (2013–2018), Dispute, Litigation, and State Court Proceedings (2018 and Beyond), and Ongoing Annual Ratification and

SECOND AMENDED JOINTLY FILED CLAIMS,
COUNTERCLAIMS, THIRD PARTY CLAIMS, AND
AFFIRMATIVE DEFENSES TO BE TRIED
        CASE NO. 2:24-CV-04546-SB(AGRX)

Regulatory Compliance.

    iv. <u>SPAVI and Cinco's Supporting Evidence:</u> the lack of evidence of this will suffice. Testimony of Gregorio will confirm as will testimony of Koren.

  ii. <u>Element No. 2</u>: any one of the PCJV USA Parties performed the services as requested.

    i. Disputed Status of Element 2:  The parties dispute that this element is satisfied.

    ii. Nature of Dispute: factual

    iii. <u>PCJV USA Parties' Supporting Evidence:</u> the following categories, which are defined above, capture the key phases and supporting evidence: Superseding Joint Venture (2008–2010), Alternative Licensing Arrangements and Ongoing Ratification (2011–2012), Formalization and Modification of the Joint Venture (2012), LA Group Partnership Agreement and Evolving Business Dynamics and Terms (2013–2018), Dispute, Litigation, and State Court Proceedings (2018 and Beyond), Ongoing Annual Ratification and Regulatory Compliance, and SPAVI Parties' Tortious Conduct.

    iv. <u>SPAVI and Cinco's Supporting Evidence:</u> the lack of evidence of this will suffice. Testimony of Gregorio will confirm as will testimony of Koren.

  iii. <u>Element No. 3</u>: the requesting SPAVI Party/Parties has not paid any one of the PCJV USA Parties for the services.

    i. Disputed Status of Element 3:  The parties dispute that this element is satisfied.

ii. Nature of Dispute: Factual

iii. <u>PCJV USA Parties' Supporting Evidence:</u> the following category, which is defined above, captures the key phase and supporting evidence: SPAVI Parties' Tortious Conduct.

iv. <u>SPAVI and Cinco's Supporting Evidence:</u> the lack of evidence of this will suffice. Testimony of Gregorio will confirm as will testimony of Koren.

iv. <u>Element No. 4</u>: the reasonable value of the services that were provided.

i. Disputed Status of Element 4: The parties dispute that this element is satisfied.

ii. Nature of Dispute: Factual

iii. <u>PCJV USA Parties' Supporting Evidence:</u> documents and testimony including and related to the following: (1) PCJV USA Parties' financial records; (2) PCJV USA Parties' historical growth; and (3) PJCV USA Parties' franchisee agreements and communications.

iv. <u>SPAVI and Cinco's Supporting Evidence:</u> there is no evidence of this.

## III. **SPAVI Parties' Affirmative Defenses**

1) **Affirmative Defense No. 1**: Laches (asserted by Counter Defendant and Third Party Defendants as to all claims alleged against them)

a. Element No. 1: A Delay in asserting a claim.

i. This element is disputed

ii. Nature of Dispute: Factual

1          iii.  Plaintiff's Position Statement: Laches is an affirmative

2               defense.

3          iv.  Defendants' Position Statement: Laches is an equitable

4               claim to be tried by the Court. *Ultimax Cement Mfg.*

5               *Corp. v. CTS Cement Mfg. Corp.*, 856 F.Supp. 2d 1136,

6               1151 (2012).

7          v.  Plaintiff's Supporting Evidence:  Both the JVA and

8               AJVA contain an agreement to agree on a Master License

9               Agreement. However, there was never a written license

10              agreement executed between Counterclaimants and

11              Cinco. Counterclaimants entered into a negotiation

12              process with Cinco, prior to SPAVI's acquisition of the

13              Potato Corner brand and all of the Potato Corner

14              Intellectual Property from Cinco, for the terms of a

15              license to use the Potato Corner Intellectual Property.

16              These negotiations began before SPAVI purchased the

17              rights to the Potato Corner IP. So, Counterclaimants have

18              been aware of the lack of ownership rights in the Potato

19              Corner Intellectual Property and the non-existence of a

20              written agreement. Then, between December of 2021

21              through 2024, the months immediately preceding this

22              action, SPAVI engaged in a good faith and exhaustive

23              attempt to negotiate the terms of a written license with

24              PCJV as well. Never once did Counterclaimants state that

25              they had ownership rights to the Potato Corner

26              Intellectual Property, and SPAVI relied on that

27              representation because had one been expressed, that

28

SECOND AMENDED JOINTLY FILED CLAIMS,             CASE NO. 2:24-CV-04546-SB(AGRX)
COUNTERCLAIMS, THIRD PARTY CLAIMS, AND
AFFIRMATIVE DEFENSES TO BE TRIED

1          would have been a dispute as to the ownership rights to

2          which SPAVI would have filed this lawsuit sooner.

3          Additional evidence includes: Notarized Deeds signed by

4          seller and buyer; USPTO filings including Registrations

5          and Assignments; Testimony of Gregorio (Plaintiff's

6          CEO), Magsaysay (Cinco's CEO), Koren, Ybanez

7          (Plaintiff's General Counsel), Tan (Director responsible

8          for international franchising); and emails and

9          correspondence during the negotiation of the terms of the

10         license agreement.

11      vi.  PCJV USA's Parties Supporting Evidence: SPAVI parties

12         have not articulated their defense beyond what is included

13         in their Answers until 7am on August 12, 2025. *See* n. 1.

14         As it is articulated in the Answers, PCJV Parties cannot

15         determine the factual basis for the defense.  As such, the

16         out of an abundance of caution, PCJV Parties incorporate

17         by reference all of the evidence cited in support of their

18         causes of action

19    b.  Element No. 2: acquiescence by Counterclaim Defendants or Third

20       Party Defendants or their suffering of prejudice, which can include

21       detrimental reliance on the status quo, loss of evidence, or other

22       circumstances that make it inequitable to allow the claimants to

23       assert their claim after the delay.

24        i. This element is disputes

25       ii. Nature of Dispute: Legal and factual

26      iii. Plaintiff's Position Statement: Laches is an affirmative

27         defense.

28

SECOND AMENDED JOINTLY FILED CLAIMS,        CASE NO. 2:24-CV-04546-SB(AGRX)
COUNTERCLAIMS, THIRD PARTY CLAIMS, AND
AFFIRMATIVE DEFENSES TO BE TRIED

iv. <u>PCJV USA Parties' Position Statement:</u> PCJV USA

Parties' Position Statement: Laches is an equitable claim

to be tried by the Court. *Ultimax Cement Mfg. Corp. v.*

*CTS Cement Mfg. Corp.*, 856 F.Supp. 2d 1136, 1151

(2012).  "A defendant must demonstrate three elements to

successfully assert laches defense: (1) delay in asserting a

right or claim; (2) the delay was not reasonable or

excusable; and (3) prejudice to the party against whom

laches is asserted." *Magic Kitchen LLC v. Good Things*

*Internat., Ltd.*, 153 Cal. App. 4th 1144, 1157 (2007).

SPAVI Parties' statement of what it needs to prove here

as an element to laches is incorrect

v. Plaintiff's Supporting Evidence: Both the JVA and AJVA

contain an agreement to agree on a Master License

Agreement. However, there was never a written license

agreement executed between Counterclaimants and

Cinco. Counterclaimants entered into a negotiation

process with Cinco, prior to SPAVI's acquisition of the

Potato Corner brand and all of the Potato Corner

Intellectual Property from Cinco, for the terms of a

license to use the Potato Corner Intellectual Property.

These negotiations began in [DATE]. So, as of [DATE],

Counterclaimants have been aware of the lack of

ownership rights in the Potato Corner Intellectual

Property and the non-existence of a written agreement.

Then, between December of 2021 through 2024, the

months immediately preceding this action, SPAVI

SECOND AMENDED JOINTLY FILED CLAIMS,                    CASE NO. 2:24-CV-04546-SB(AGRX)
COUNTERCLAIMS, THIRD PARTY CLAIMS, AND
AFFIRMATIVE DEFENSES TO BE TRIED

engaged in a good faith and exhaustive attempt to
negotiate the terms of a written license with PCJV as
well. Never once did Counterclaimants state that they had
ownership rights to the Potato Corner Intellectual
Property, and SPAVI relied on that representation because
had one been expressed, that would have been a dispute
as to the ownership rights to which SPAVI would have
filed this lawsuit sooner. Additional evidence includes:
Notarized Deeds signed by seller and buyer; USPTO
filings including Registrations and Assignments;
Testimony of Gregorio (Plaintiff's CEO), Magsaysay
(Cinco's CEO), Koren, Ybanez (Plaintiff's General
Counsel), Tan (Director responsible for international
franchising); and emails and correspondence during the
negotiation of the terms of the license agreement.

vi.  PCJV USA Parties' Supporting Evidence: SPAVI parties
have not articulated their defense beyond what is included
in their Answers until 7am on August 12, 2025. *See* n. 1.
As it is articulated in the Answers, PCJV Parties cannot
determine the factual basis for the defense.  As such, the
out of an abundance of caution, PCJV Parties incorporate
by reference all of the evidence cited in support of their
causes of action.

2) **Affirmative Defense No. 2:** Consent (asserted by Counterclaim
Defendant and Third Party Defendants as to all claims alleged against
them)

a.  Element No. 1: One or more of the Counterclaimants or Third Party

SECOND AMENDED JOINTLY FILED CLAIMS,                CASE NO. 2:24-CV-04546-SB(AGRX)
COUNTERCLAIMS, THIRD PARTY CLAIMS, AND
AFFIRMATIVE DEFENSES TO BE TRIED

1        Plaintiffs consented to the acts about which they complain.

2            i.  This element is disputed.

3           ii.  Nature of Dispute: factual

4          iii.  Plaintiff's Position Statement: The elements are taken

5               from CACI 1721

6           iv.  <u>Plaintiff's Supporting Evidence:</u> Both the JVA and AJVA

7               contain an agreement to agree on a Master License

8               Agreement. However, there was never a written license

9               agreement executed between Counterclaimants and

10              Cinco. Counterclaimants entered into a negotiation

11              process with Cinco, prior to SPAVI's acquisition of the

12              Potato Corner brand and all of the Potato Corner

13              Intellectual Property from Cinco, for the terms of a

14              license to use the Potato Corner Intellectual Property.

15              These negotiations began in [DATE]. So, as of [DATE],

16              Counterclaimants have been aware of the lack of

17              ownership rights in the Potato Corner Intellectual

18              Property and the non-existence of a written agreement.

19              Then, between December of 2021 through 2024, the

20              months immediately preceding this action, SPAVI

21              engaged in a good faith and exhaustive attempt to

22              negotiate the terms of a written license with PCJV as

23              well. Never once did Counterclaimants state that they had

24              ownership rights to the Potato Corner Intellectual

25              Property, and SPAVI relied on that representation because

26              had one been expressed, that would have been a dispute

27              as to the ownership rights to which SPAVI would have

28

SECOND AMENDED JOINTLY FILED CLAIMS,                     CASE NO. 2:24-CV-04546-SB(AGRX)
COUNTERCLAIMS, THIRD PARTY CLAIMS, AND
AFFIRMATIVE DEFENSES TO BE TRIED

filed this lawsuit sooner. Additional evidence includes: Notarized Deeds signed by seller and buyer; USPTO filings including Registrations and Assignments; Testimony of Gregorio (Plaintiff's CEO), Magsaysay (Cinco's CEO), Koren, Ybanez (Plaintiff's General Counsel), Tan (Director responsible for international franchising); and emails and correspondence during the negotiation of the terms of the license agreement.

    v. <u>PCJV USA Parties' Supporting Evidence:</u> SPAVI parties have not articulated their defense beyond what is included in their Answers until 7am on August 12, 2025. *See* n. 1. As it is articulated in the Answers, PCJV Parties cannot determine the factual basis for the defense.  As such, the out of an abundance of caution, PCJV Parties incorporate by reference all of the evidence cited in support of their causes of action.

3) **Affirmative Defense No. 3:** Estoppel (asserted by Counterclaim Defendant and Third Party Defendants as to all claims alleged against them)

    a. <u>Element No. 1:</u> A representation or concealment of material facts;

       i. This element is disputed

       ii. Nature of Dispute: Legal and factual

       iii. <u>SPAVI and Cinco's Position Statement:</u> Estoppel is an affirmative defense

       iv. <u>PCJV USA Parties Position:</u> PCJV USA Parties' Position Statement: Equitable estoppel is an equitable claim to be tried by the Court. *Ultimax Cement Mfg. Corp. v. CTS*

SECOND AMENDED JOINTLY FILED CLAIMS,       CASE NO. 2:24-CV-04546-SB(AGRX)
COUNTERCLAIMS, THIRD PARTY CLAIMS, AND
AFFIRMATIVE DEFENSES TO BE TRIED

1          *Cement Mfg. Corp.,* 856 F.Supp. 2d 1136, 1151 (2012).

2          v.    Plaintiff's Supporting Evidence: Counterclaimants have

3                no evidence of a written license to use SPAVI's Potato

4                Corner Intellectual Property, and, as such, its rights (that

5                it has sold to its franchisees) derive from what is, at best,

6                a terminable at will, fully revocable license because

7                Defendants were nonetheless operating Potato Corner

8                locations, as if a written license existed. See Pogrebnoy v.

9                Russian Newspaper Distribution, Inc., 289 F. Supp. 3d

10               1061, 1070 (C.D. Cal. 2017), aff'd, 742 F. App'x 291 (9th

11               Cir. 2018) ("[A]n implied license, like any other contract,

12               is terminable at the will of either party if it is not for a

13               specified term."). After SPAVI's acquisition of the Potato

14               Corner brand, it became the licensor of the Potato Corner

15               Intellectual Property. Between December of 2021 through

16               2024, the months immediately preceding this action,

17               SPAVI engaged in a good faith and exhaustive attempt to

18               negotiate the terms of a written license with PCJV.

19               Defendant Guy Koren engaged and participated in this

20               negotiation, but was unwilling to agree to any minimally

21               commercially viable licensing terms. Never once did

22               Counterclaimants state that they had ownership rights to

23               the Potato Corner Intellectual Property, and SPAVI relied

24               on that representation. Additional evidence includes:

25               Testimony of Gregorio (Plaintiff's CEO), Magsaysay

26               (Cinco's CEO), Koren, Ybanez (Plaintiff's General

27               Counsel), Tan (Director responsible for international

28

1    franchising); and emails and correspondence during the

2    negotiation of the terms of the license agreement.

3        vi.   <u>PCJV USA Parties' Supporting Evidence:</u> SPAVI parties

4    have not articulated their defense beyond what is included

5    in their Answers. As it is articulated there, PCJV Parties

6    cannot determine the factual basis for the defense.  As

7    such, the out of an abundance of caution, PCJV Parties

8    incorporate by reference all of the evidence cited in

9    support of their causes of action.

10   b.   <u>Element 2:</u> Made with knowledge, actual or virtual, of the facts;

11       i.   This element is disputed

12       ii.   <u>Nature of Dispute:</u> Legal and factual

13       iii.   <u>Plaintiff's Position Statement:</u> Estoppel is an affirmative

14   defense

15       iv.   <u>PCJV USA Parties' Position Statement:</u> Equitable

16   estoppel is an equitable claim to be tried by the Court.

17   *Ultimax Cement Mfg. Corp. v. CTS Cement Mfg. Corp.,*

18   856 F.Supp. 2d 1136, 1151 (2012).

19       v.   <u>Plaintiff's Supporting Evidence:</u> Plaintiff's Supporting

20   Evidence: Counterclaimants have no evidence of a written

21   license to use SPAVI's Potato Corner Intellectual

22   Property, and, as such, its rights (that it has sold to its

23   franchisees) derive from what is, at best, a terminable at

24   will, fully revocable license because Defendants were

25   nonetheless operating Potato Corner locations, as if a

26   written license existed. *See Pogrebnoy v. Russian*

27   *Newspaper Distribution, Inc.,* 289 F. Supp. 3d 1061, 1070

28

SECOND AMENDED JOINTLY FILED CLAIMS,                    CASE NO. 2:24-CV-04546-SB(AGRX)
COUNTERCLAIMS, THIRD PARTY CLAIMS, AND
AFFIRMATIVE DEFENSES TO BE TRIED

1  (C.D. Cal. 2017), aff'd, 742 F. App'x 291 (9th Cir. 2018)

2  ("[A]n implied license, like any other contract, is

3  terminable at the will of either party if it is not for a

4  specified term."). After SPAVI's acquisition of the Potato

5  Corner brand, it became the licensor of the Potato Corner

6  Intellectual Property. Between December of 2021 through

7  2024, the months immediately preceding this action,

8  SPAVI engaged in a good faith and exhaustive attempt to

9  negotiate the terms of a written license with PCJV.

10  Defendant Guy Koren engaged and participated in this

11  negotiation, but was unwilling to agree to any minimally

12  commercially viable licensing terms. Never once did

13  Counterclaimants state that they had ownership rights to

14  the Potato Corner Intellectual Property, and SPAVI relied

15  on that representation. Additional evidence includes:

16  Testimony of Gregorio (Plaintiff's CEO), Magsaysay

17  (Cinco's CEO), Koren, Ybanez (Plaintiff's General

18  Counsel), Tan (Director responsible for international

19  franchising); and emails and correspondence during the

20  negotiation of the terms of the license agreement

21  vi.  <u>PCJV USA Parties' Supporting Evidence:</u> SPAVI parties

22  have not articulated their defense beyond what is included

23  in their Answers. As it is articulated there, PCJV Parties

24  cannot determine the factual basis for the defense. As

25  such, the out of an abundance of caution, PCJV Parties

26  incorporate by reference all of the evidence cited in

27  support of their causes of action

28

SECOND AMENDED JOINTLY FILED CLAIMS,                    CASE NO. 2:24-CV-04546-SB(AGRX)
COUNTERCLAIMS, THIRD PARTY CLAIMS, AND
AFFIRMATIVE DEFENSES TO BE TRIED

c.  <u>Element 3</u>: To a party ignorant, actually, and permissibly, of the truth;

    i.  This element is disputed

    ii.  Nature of Dispute: legal and factual

    iii.  <u>Plaintiff's position statement:</u> Estoppel is an affirmative defense

    iv.  <u>PCJV USA Parties' Position Statement:</u> Equitable estoppel is an equitable claim to be tried by the Court. *Ultimax Cement Mfg. Corp. v. CTS Cement Mfg. Corp.*, 856 F.Supp. 2d 1136, 1151 (2012).

    v.  <u>Plaintiff's Supporting Evidence:</u> Plaintiff's Supporting Evidence: Counterclaimants have no evidence of a written license to use SPAVI's Potato Corner Intellectual Property, and, as such, its rights (that it has sold to its franchisees) derive from what is, at best, a terminable at will, fully revocable license because Defendants were nonetheless operating Potato Corner locations, as if a written license existed. See Pogrebnoy v. Russian Newspaper Distribution, Inc., 289 F. Supp. 3d 1061, 1070 (C.D. Cal. 2017), aff'd, 742 F. App'x 291 (9th Cir. 2018) ("[A]n implied license, like any other contract, is terminable at the will of either party if it is not for a specified term."). After SPAVI's acquisition of the Potato Corner brand, it became the licensor of the Potato Corner Intellectual Property. Between December of 2021 through 2024, the months immediately preceding this action, SPAVI engaged in a good faith and exhaustive attempt to

negotiate the terms of a written license with PCJV.
Defendant Guy Koren engaged and participated in this
negotiation, but was unwilling to agree to any minimally
commercially viable licensing terms. Never once did
Counterclaimants state that they had ownership rights to
the Potato Corner Intellectual Property, and SPAVI relied
on that representation. Instead, Counterclaimant engaged
in the negotiation process. Additional evidence includes:
Testimony of Gregorio (Plaintiff's CEO), Magsaysay
(Cinco's CEO), Koren, Ybanez (Plaintiff's General
Counsel), Tan (Director responsible for international
franchising); and emails and correspondence during the
negotiation of the terms of the license agreement

vi. <u>PCJV USA Parties' Supporting Evidence:</u> SPAVI parties
have not articulated their defense beyond what is included
in their Answers. As it is articulated there, PCJV Parties
cannot determine the factual basis for the defense.  As
such, the out of an abundance of caution, PCJV Parties
incorporate by reference all of the evidence cited in
support of their causes of action

d. <u>Element 4:</u> With the intention, actual or virtual, that the ignorant
party act on it; and

i. This element is disputed

ii. Nature of Dispute: legal and factual

iii. <u>Plaintiff's position statement:</u> Estoppel is an affirmative
defense

iv. <u>PCJV USA Parties' Position Statement:</u> Equitable

1              estoppel is an equitable claim to be tried by the Court.

2              *Ultimax Cement Mfg. Corp. v. CTS Cement Mfg. Corp.*,

3              856 F.Supp. 2d 1136, 1151 (2012).

4         v.  <u>Plaintiff's Supporting Evidence:</u> Never once did

5              Counterclaimants state that they had ownership rights to

6              the Potato Corner Intellectual Property. Instead,

7              Defendant Guy Koren engaged and participated in the

8              negotiation of the license to use the Potato Corner

9              Intellectual Property, with the intent of having SPAVI

10            relied on that representation that Counterclaimant did not

11            have a license. Additional evidence includes: Testimony

12            of Gregorio (Plaintiff's CEO), Magsaysay (Cinco's CEO),

13            Koren, Ybanez (Plaintiff's General Counsel), Tan

14            (Director responsible for international franchising); and

15            emails and correspondence during the negotiation of the

16            terms of the license agreement

17        vi.  <u>PCJV USA Parties' Supporting Evidence:</u> SPAVI parties

18            have not articulated their defense beyond what is included

19            in their Answers. As it is articulated there, PCJV Parties

20            cannot determine the factual basis for the defense.  As

21            such, the out of an abundance of caution, PCJV Parties

22            incorporate by reference all of the evidence cited in

23            support of their causes of action.

24     e.  Element 5: That party was induced to act on it and was harmed.

25        i.  This element is disputed

26        ii.  Nature of Dispute: legal and factual

27       iii.  <u>Plaintiff's position statement:</u> Estoppel is an affirmative

28

148

SECOND AMENDED JOINTLY FILED CLAIMS,             CASE NO. 2:24-CV-04546-SB(AGRX)
COUNTERCLAIMS, THIRD PARTY CLAIMS, AND
AFFIRMATIVE DEFENSES TO BE TRIED

1    defense

2    iv.  <u>PCJV USA Parties' Position Statement:</u> Equitable

3    estoppel is an equitable claim to be tried by the Court.

4    *Ultimax Cement Mfg. Corp. v. CTS Cement Mfg. Corp.*,

5    856 F.Supp. 2d 1136, 1151 (2012).

6    v.  <u>Plaintiff's Supporting Evidence:</u> Never once did

7    Counterclaimants state that they had ownership rights to

8    the Potato Corner Intellectual Property. Instead,

9    Defendant Guy Koren engaged and participated in the

10    negotiation of the license to use the Potato Corner

11    Intellectual Property, with the intent of having SPAVI

12    relied on that representation that Counterclaimant did not

13    have a license. Guy Koren refused to, engage in

14    reasonable and good faith negotiation. Instead, he only

15    offered royalty rates and license fees that were more than

16    90% below what Koren had agreed to be reasonable

17    licensing fees over a decade prior. Koren also repeatedly

18    disengaged from the negotiation process, but still was

19    utilizing the Potato Corner Intellectual Property. In the

20    three months prior to the termination of the licensing

21    agreement, Koren had gone radio silent, leading SPAVI to

22    believe that it no longer was interested in negotiating a

23    license. Therefore, SPAVI had no option, but to terminate

24    Counterclaimants license of the Potato Corner Intellectual

25    Property. Additional evidence includes: Testimony of

26    Gregorio (Plaintiff's CEO), Magsaysay (Cinco's CEO),

27    Koren, Ybanez (Plaintiff's General Counsel), Tan

28

SECOND AMENDED JOINTLY FILED CLAIMS,                    CASE NO. 2:24-CV-04546-SB(AGRX)
COUNTERCLAIMS, THIRD PARTY CLAIMS, AND
AFFIRMATIVE DEFENSES TO BE TRIED

1           (Director responsible for international franchising); and

2           emails and correspondence during the negotiation of the

3           terms of the license agreement

4      vi.  <u>PCJV USA Parties' Supporting Evidence:</u> SPAVI parties

5           have not articulated their defense beyond what is included

6           in their Answers. As it is articulated there, PCJV Parties

7           cannot determine the factual basis for the defense.  As

8           such, the out of an abundance of caution, PCJV Parties

9           incorporate by reference all of the evidence cited in

10           support of their causes of action.

11    4) **Affirmative Defense No. 4** Failure to Mitigate  Damages (asserted by

12       Counterclaim Defendant and Third Party Defendants as to all claims

13       alleged against them)

14      a.  Element No. 1: That the party seeking the damage award failed to

15          use reasonable efforts to mitigate damages

16         i.  This element is disputed

17        ii.  Nature of Dispute: factual

18       iii.  <u>Plaintiff's Supporting Evidence:</u> Both the JVA and AJVA

19           contain an agreement to agree on a Master License

20           Agreement. There was never a written license agreement

21           between Counterclaimants and counter defendants or third

22           party defendants for the use of the Potato Corner

23           Intellectual Property. Counterclaimants entered into a

24           negotiation process with Cinco, prior to SPAVI's

25           acquisition of the Potato Corner brand and all of the

26           Potato Corner Intellectual Property from Cinco, for the

27           terms of a license to use the Potato Corner Intellectual

28

150

SECOND AMENDED JOINTLY FILED CLAIMS,          CASE NO. 2:24-CV-04546-SB(AGRX)
COUNTERCLAIMS, THIRD PARTY CLAIMS, AND
AFFIRMATIVE DEFENSES TO BE TRIED

1    Property. These negotiations began before SPAVI

2    purchased the rights to the Potato Corner IP. So,

3    Counterclaimants have been aware of the lack of

4    ownership rights in the Potato Corner Intellectual

5    Property and the non-existence of a written agreement.

6    Then, between December of 2021 through 2024, the

7    months immediately preceding the filing of this action,

8    SPAVI engaged in a good faith and exhaustive attempt to

9    negotiate the terms of a written license with

10    Counterclaimants as well. Never once did

11    Counterclaimants state that they had ownership rights to

12    the Potato Corner Intellectual Property, and SPAVI relied

13    on that representation because had one been expressed,

14    that would have been a dispute as to the ownership rights

15    to which SPAVI would have filed this lawsuit sooner.

16    Moreover, Guy Koren refused to engage in reasonable

17    and good faith negotiation, which would have led to the

18    execution of a licensing agreement. Instead, he only

19    offered royalty rates and license fees that were more than

20    90% below what Koren had agreed to be reasonable

21    licensing fees over a decade prior. Koren also repeatedly

22    disengaged from the negotiation process, but still was

23    utilizing the Potato Corner Intellectual Property. In the

24    three months prior to the termination of the licensing

25    agreement, Koren had gone radio silent, leading SPAVI to

26    believe that it no longer was interested in negotiating a

27    license. Therefore, SPAVI had no option, but to terminate

28

SECOND AMENDED JOINTLY FILED CLAIMS,                    CASE NO. 2:24-CV-04546-SB(AGRX)
COUNTERCLAIMS, THIRD PARTY CLAIMS, AND
AFFIRMATIVE DEFENSES TO BE TRIED

1                      Counterclaimants license to use the Potato Corner

2                      Intellectual Property. Additional evidence includes:

3                      Notarized Deeds signed by seller and buyer; USPTO

4                      filings including Registrations and Assignments;

5                      Testimony of Gregorio (Plaintiff's CEO), Magsaysay

6                      (Cinco's CEO), Koren, Ybanez (Plaintiff's General

7                      Counsel), Tan (Director responsible for international

8                      franchising); May 31, 2024 Termination Letter; and

9                      emails and correspondence during the negotiation of the

10                     terms of the license agreement.

11             iv.  Defendants' Supporting Evidence: SPAVI parties have

12                     not articulated their defense beyond what is included in

13                     their Answers until 7am on August 12, 2025. *See* n. 1. As

14                     it is articulated in the Answers, PCJV Parties cannot

15                     determine the factual basis for the defense.  As such, the

16                     out of an abundance of caution, PCJV Parties incorporate

17                     by reference all of the evidence cited in support of their

18                     causes of action

19        b.  Element No. 2: the amount, if any, by which damages have been

20           mitigated

21             i.  This element is disputed

22            ii.  <u>Nature of Dispute:</u> factual

23           iii.  <u>Plaintiff's Supporting Evidence:</u> Had Counterclaimants

24                     negotiated in good faith, SPAVI would have executed a

25                     license agreement and not terminated the licensing

26                     agreement. The amount of alleged damage resulting from

27                     the termination of the license agreement could have been

28

SECOND AMENDED JOINTLY FILED CLAIMS,          CASE NO. 2:24-CV-04546-SB(AGRX)
COUNTERCLAIMS, THIRD PARTY CLAIMS, AND
AFFIRMATIVE DEFENSES TO BE TRIED

mitigated. Additional evidence includes: Amended Joint
Venture Agreement and Joint Venture Agreement;
Testimony of Koren, Plaintiff executives Gregorio
(Plaiuntiff's CEO), Concepcion (Plaintiff's COO charged
with US operations), Tan (Director responsible for
international franchising); Emails and correspondence
with SPAVI, Koren, and PCJV relating to negotiations of
a licensing agreement for the use of the Potato Corner
Intellectual Property; Financial documents of
Counterclaimants; May 31, 2024 Termination Letter

iv. Defendants' Supporting Evidence: SPAVI parties have
not articulated their defense beyond what is included in
their Answers until 7am on August 12, 2025. *See* n. 1. As
it is articulated in the Answers, PCJV Parties cannot
determine the factual basis for the defense.  As such, the
out of an abundance of caution, PCJV Parties incorporate
by reference all of the evidence cited in support of their
causes of action

5) **Affirmative Defense No. 5:** Immunity (asserted by SPAVI as to all
claims alleged against it)

a. <u>Element No. 1</u> – That Counterclaim Defendant had a legitimate
economic interest and thus shielded from liability in pursuit of its own
lawful business interests

i. This element is disputed

ii. Nature of Dispute: Legal and factual

iii. <u>PCJV USA Parties' Position Statement:</u> PCJV USA
Parties cannot articulate a response to this affirmative

SECOND AMENDED JOINTLY FILED CLAIMS,                    CASE NO. 2:24-CV-04546-SB(AGRX)
COUNTERCLAIMS, THIRD PARTY CLAIMS, AND
AFFIRMATIVE DEFENSES TO BE TRIED

defense because SPAVI Parties did not provide their statement of what the applicable elements are or their positions regarding those elements.  They have otherwise not articulated how this affirmative defense applies beyond their Answers.

    iv.  <u>Plaintiff's Supporting Evidence:</u> In December 2021, SPAVI entered into a transaction to acquire the Potato Corner Intellectual Property, including the Potato Corner Standard Characters Mark and the Potato Corner Logo Mark, and all of the rights thereto, from Cinco. That transaction closed during the first half of 2022. As such, SPAVI had an economic interest in the Potato Corner Intellectual Property. Additional evidence includes: Notarized Deeds signed by seller and buyer; USPTO filings including Registrations and Assignments, testimony of Gregorio (Plaintiff's CEO), Magsaysay (Cinco's CEO), Tan (Director responsible for international franchising)

    v.  PCJV USA Parties' Supporting Evidence: SPAVI parties have not articulated their defense beyond what is included in their Answers. As it is articulated there, PCJV Parties cannot determine the factual basis for the defense.  As such, the out of an abundance of caution, PCJV Parties incorporate by reference all of the evidence cited in support of their causes of action.

6) **<u>Affirmative Defense No. 6</u>**: Privilege (asserted by SPAVI as to all claims alleged against it)

SECOND AMENDED JOINTLY FILED CLAIMS,
COUNTERCLAIMS, THIRD PARTY CLAIMS, AND
AFFIRMATIVE DEFENSES TO BE TRIED

CASE NO. 2:24-CV-04546-SB(AGRX)

a. <u>Element No. 1</u> – That Counterclaim Defendant had a legitimate economic interest

    i. This element is disputed

    ii. Nature of Dispute: legal and factual

    iii. <u>Defendants' Position Statement:</u> SPAVI parties have not articulated their defense beyond what is included in their Answers. *See* n. 1. As it is articulated in the Answers, PCJV Parties cannot determine the legal basis for the defense

    iv. <u>Plaintiff's Supporting Evidence:</u> In December 2021, SPAVI entered into a transaction to acquire the Potato Corner Intellectual Property, including the Potato Corner Standard Characters Mark and the Potato Corner Logo Mark, and all of the rights thereto, from Cinco. That transaction closed during the first half of 2022. As such, SPAVI had an economic interest in the Potato Corner Intellectual Property. Additional evidence includes: Notarized Deeds signed by seller and buyer; USPTO filings including Registrations and Assignments, testimony of Gregorio (Plaintiff's CEO), Magsaysay (Cinco's CEO), Tan (Director responsible for international franchising)

    v. <u>Defendants' Supporting Evidence:</u> SPAVI parties have not articulated their defense beyond what is included in their Answers until 7am on August 12, 2025. *See* n. 1. As it is articulated in the Answers, PCJV Parties cannot determine the factual basis for the defense. As such, the

SECOND AMENDED JOINTLY FILED CLAIMS,
COUNTERCLAIMS, THIRD PARTY CLAIMS, AND
AFFIRMATIVE DEFENSES TO BE TRIED

CASE NO. 2:24-CV-04546-SB(AGRX)

1       out of an abundance of caution, PCJV Parties incorporate

2       by reference all of the evidence cited in support of their

3       causes of action

4       b.  <u>Element No. 2</u> – That Counterclaim Defendant acted only to protect its

5       own economic interest.

6       i.  This element is disputed

7       ii.  Nature of Dispute: legal and factual

8       iii.  Defendants' Position Statement: SPAVI parties have not

9       articulated their defense beyond what is included in their

10       Answers. *See* n. 1. As it is articulated in the Answers,

11       PCJV Parties cannot determine the legal basis for the

12       defense.

13       iv.  <u>Plaintiff's Supporting Evidence:</u> Counterclaimant have no

14       evidence of a written license to use SPAVI's Potato

15       Corner Intellectual Property, and, as such, its rights (that

16       it has sold to its franchisees) derive from what is, at best,

17       a terminable at will, fully revocable license because

18       Defendants were nonetheless operating Potato Corner

19       locations, as if a written license existed. *See Pogrebnoy v.*

20       *Russian Newspaper Distribution, Inc.,* 289 F. Supp. 3d

21       1061, 1070 (C.D. Cal. 2017), aff'd, 742 F. App'x 291 (9th

22       Cir. 2018) ("[A]n implied license, like any other contract,

23       is terminable at the will of either party if it is not for a

24       specified term."). After SPAVI's acquisition of the Potato

25       Corner brand, it became the licensor of the Potato Corner

26       Intellectual Property. Between December of 2021 through

27       2024, the months immediately preceding this action,

28

SECOND AMENDED JOINTLY FILED CLAIMS,          CASE NO. 2:24-CV-04546-SB(AGRX)
COUNTERCLAIMS, THIRD PARTY CLAIMS, AND
AFFIRMATIVE DEFENSES TO BE TRIED

1  SPAVI engaged in a good faith and exhaustive attempt to

2  negotiate the terms of a written license with PCJV.

3  Defendant Guy Koren engaged and participated in this

4  negotiation, but was unwilling to agree to any minimally

5  commercially viable licensing terms. Therefore, Plaintiff

6  had no option to terminate the license of the Potato

7  Corner Intellectual Property. Additional evidence

8  includes: Testimony of Koren, Plaintiff executives

9  Gregorio (Plaiuntiff's CEO), Concepcion (Plaintiff's

10  COO charged with US operations), Tan (Director

11  responsible for international franchising), Magsaysay

12  (Cinco's CEO); Emails and correspondence with SPAVI,

13  Koren, and PCJV relating to negotiations of a licensing

14  agreement for the use of the Potato Corner Intellectual

15  Property; Amended Joint Venture Agreement; Franchise

16  Agreements; FDDs; Trial Exhibit 29 (May 31, 2024

17  Termination)

18  v.  Defendants' Supporting Evidence: SPAVI parties have

19  not articulated their defense beyond what is included in

20  their Answers until 7am on August 12, 2025. *See* n. 1. As

21  it is articulated in the Answers, PCJV Parties cannot

22  determine the factual basis for the defense.  As such, the

23  out of an abundance of caution, PCJV Parties incorporate

24  by reference all of the evidence cited in support of their

25  causes of action.

26  c.  Element No. 3 – That Counterclaim Defendant acted reasonably and in

27  good faith to protect it.

28

SECOND AMENDED JOINTLY FILED CLAIMS,                    CASE NO. 2:24-CV-04546-SB(AGRX)
COUNTERCLAIMS, THIRD PARTY CLAIMS, AND
AFFIRMATIVE DEFENSES TO BE TRIED

1           i.  This element is disputed

2           ii.  Nature of Dispute: legal and factual

3          iii.  Defendants' Position Statement: SPAVI parties have not

4            articulated their defense beyond what is included in their

5            Answers. *See* n. 1. As it is articulated in the Answers,

6            PCJV Parties cannot determine the legal basis for the

7            defense.

8          iv.  Plaintiff's Supporting Evidence: Counterclaimant have no

9            evidence of a written license to use SPAVI's Potato

10           Corner Intellectual Property, and, as such, its rights (that

11           it has sold to its franchisees) derive from what is, at best,

12           a terminable at will, fully revocable license because

13           Defendants were nonetheless operating Potato Corner

14           locations, as if a written license existed. *See Pogrebnoy v.*

15           *Russian Newspaper Distribution, Inc.,* 289 F. Supp. 3d

16           1061, 1070 (C.D. Cal. 2017), aff'd, 742 F. App'x 291 (9th

17           Cir. 2018) ("[A]n implied license, like any other contract,

18           is terminable at the will of either party if it is not for a

19           specified term."). After SPAVI's acquisition of the Potato

20           Corner brand, it became the licensor of the Potato Corner

21           Intellectual Property. Between December of 2021 through

22           2024, the months immediately preceding this action,

23           SPAVI engaged in a good faith and exhaustive attempt to

24           negotiate the terms of a written license with PCJV.

25           Defendant Guy Koren engaged and participated in this

26           negotiation, but was unwilling to agree to any minimally

27           commercially viable licensing terms. Therefore, Plaintiff

28

1      had no option to terminate the license of the Potato

2      Corner Intellectual Property. Additional evidence

3      includes: Testimony of Koren, Plaintiff executives

4      Gregorio (Plaiuntiff's CEO), Concepcion (Plaintiff's

5      COO charged with US operations), Tan (Director

6      responsible for international franchising), Magsaysay

7      (Cinco's CEO); Emails and correspondence with SPAVI,

8      Koren, and PCJV relating to negotiations of a licensing

9      agreement for the use of the Potato Corner Intellectual

10      Property; Amended Joint Venture Agreement; Franchise

11      Agreements; FDDs; Trial Exhibit 29 (May 31, 2024

12      Termination)

13      v.  Defendants' Supporting Evidence: SPAVI parties have

14      not articulated their defense beyond what is included in

15      their Answers until 7am on August 12, 2025. *See* n. 1. As

16      it is articulated in the Answers, PCJV Parties cannot

17      determine the factual basis for the defense.  As such, the

18      out of an abundance of caution, PCJV Parties incorporate

19      by reference all of the evidence cited in support of their

20      causes of action.

21  7)  **Affirmative Defense No. 7:** Unclean Hands (asserted by Counterclaim

22      Defendant and Third Party Defendants as to all claims alleged against

23      them)

24      a.  Element No. 1: Counterclaimant engaged in inequitable and/or

25          unethical behavior that bars it from seeking relief

26          i.  This element is disputed

27          ii.  Nature of Dispute: factual

28

SECOND AMENDED JOINTLY FILED CLAIMS,                    CASE NO. 2:24-CV-04546-SB(AGRX)
COUNTERCLAIMS, THIRD PARTY CLAIMS, AND
AFFIRMATIVE DEFENSES TO BE TRIED

iii. <u>Plaintiff's Supporting Evidence:</u> Counterclaimants have at best, a terminable at will, fully revocable license because Defendants were nonetheless operating Potato Corner locations, as if a written license existed. *See Pogrebnoy v. Russian Newspaper Distribution, Inc.,* 289 F. Supp. 3d 1061, 1070 (C.D. Cal. 2017), aff'd, 742 F. App'x 291 (9th Cir. 2018) ("[A]n implied license, like any other contract, is terminable at the will of either party if it is not for a specified term."). Despite using the Potato Corner Intellectual Property for over a decade, Counterclaimants have never once paid a single cent of a licensing for its use to Cinco nor SPAVI. Counterclaimants have used Cinco's, and after the asset purchase, SPAVI's trademark without compensation to either party. Additional evidence includes: Financial statements of Counterclaimants evidence that no licensing fees have ever been paid; Notarized Deeds signed by seller and buyer; USPTO filings including Registrations and Assignments; Testimony of Gregorio (Plaintiff's CEO), Magsaysay (Cinco's CEO), Koren, Ybanez (Plaintiff's General Counsel), Tan (Director responsible for international franchising), Concepcion (Plaintiff's COO charged with US operations); emails and correspondence with Cinco, SPAVI, Koren, and PCJV relating to negotiations of a licensing agreement

iv. Defendants' Supporting Evidence: SPAVI parties have not articulated their defense beyond what is included in

their Answers until 7am on August 12, 2025. *See* n. 1. As it is articulated in the Answers, PCJV Parties cannot determine the factual basis for the defense.  As such, the out of an abundance of caution, PCJV Parties incorporate by reference all of the evidence cited in support of their causes of action. Also, the state court preliminary injunction (holding that Cinco Corporation was not likely to prevail on prior claims of wrongdoing); confidential settlement communications do not support allegations; Cinco Corporation's settlement and release of prior allegations of wrongdoing.

8) **Affirmative Defense No. 8:** Waiver (asserted by Counterclaim Defendant and Third Party Defendants as to all claims alleged against them)

   a. <u>Element No. 1:</u> Through implied and/or express conduct, Counterclaimants knowingly waived a valid right, privilege, advantage, or benefit allegedly conferred upon it and its attempt to enforce that right, privilege, advantage, or benefit is thus barred.

        i. This element is disputed

        ii. Nature of Dispute: factual

        vii. <u>Plaintiff's Supporting Evidence:</u> Both the JVA and AJVA contain an agreement to agree on a Master License Agreement. There was never a written license agreement between Counterclaimants and counter defendants or third party defendants. Counterclaimant entered into a negotiation process with Cinco, prior to SPAVI's acquisition of the Potato Corner brand and all of the Potato Corner Intellectual Property from Cinco, for the

1          terms of a license to use the Potato Corner Intellectual

2          Property. These negotiations began before SPAVI

3          purchased the rights to the Potato Corner IP. So,

4          Counterclaimants have been aware of the lack of

5          ownership rights in the Potato Corner Intellectual

6          Property and the non-existence of a written agreement.

7          Then, between December of 2021 through 2024, the

8          months immediately preceding the filing of this action,

9          SPAVI engaged in a good faith and exhaustive attempt to

10          negotiate the terms of a written license with

11          Counterclaimants as well. Never once did

12          Counterclaimants state that they had ownership rights to

13          the Potato Corner Intellectual Property, and SPAVI relied

14          on that representation because had one been expressed,

15          that would have been a dispute as to the ownership rights

16          to which SPAVI would have filed this lawsuit sooner.

17          Instead, Counterclaimants and Counter Defendants

18          continued to negotiate the terms of a license to use the

19          Potato Corner Intellectual Property. Additional evidence

20          includes: Notarized Deeds signed by seller and buyer;

21          USPTO filings including Registrations and Assignments;

22          Testimony of Gregorio (Plaintiff's CEO), Magsaysay

23          (Cinco's CEO), Koren, Ybanez (Plaintiff's General

24          Counsel), Tan (Director responsible for international

25          franchising); and emails and correspondence during the

26          negotiation of the terms of the license agreement.

27          iii.  Defendants' Supporting Evidence: SPAVI parties have

28

SECOND AMENDED JOINTLY FILED CLAIMS,        CASE NO. 2:24-CV-04546-SB(AGRX)
COUNTERCLAIMS, THIRD PARTY CLAIMS, AND
AFFIRMATIVE DEFENSES TO BE TRIED

1    not articulated their defense beyond what is included in

2    their Answers until 7am on August 12, 2025. *See* n. 1. As

3    it is articulated in the Answers, PCJV Parties cannot

4    determine the factual basis for the defense.  As such, the

5    out of an abundance of caution, PCJV Parties incorporate

6    by reference all of the evidence cited in support of their

7    causes of action. The state court preliminary injunction

8    (enjoining Cinco Corporation from interfering with

9    PCJV's President's control over Potato Corner in the

10   United States and communicating with its franchisees);

11   confidential settlement communications do not support

12   any waiver, as Defendants never waived any rights but

13   were trying to settle disputes; Cinco Corporation's

14   settlement and release of prior allegations and transfer of

15   the very interests, rights and obligations over which the

16   parties are now litigating.

17   9) **<u>Affirmative Defense No. 9:</u>** Comparative Fault (asserted by

18   Counterclaim Defendant SPAVI as to the negligent interference with

19   prospective economic relations claim)

20   a.   Element No. 1: That Counterclaimant was negligent

21          i.   This element is disputed

22          ii.   Nature of Dispute: factual

23          iii.   <u>Plaintiff's Supporting Evidence:</u> Both the JVA and AJVA

24                 contain an agreement to agree on a Master License

25                 Agreement. As such, there was no written license

26                 agreement. Counterclaimant entered into a negotiation

27                 process with Cinco, prior to SPAVI's acquisition of the

28

SECOND AMENDED JOINTLY FILED CLAIMS,                    CASE NO. 2:24-CV-04546-SB(AGRX)
COUNTERCLAIMS, THIRD PARTY CLAIMS, AND
AFFIRMATIVE DEFENSES TO BE TRIED

1    Potato Corner brand and all of the Potato Corner
2    Intellectual Property from Cinco, for the terms of a
3    license to use the Potato Corner Intellectual Property.
4    These negotiations began before SPAVI purchased the
5    rights to the Potato Corner IP. So, Counterclaimants have
6    been aware of the lack of ownership rights in the Potato
7    Corner Intellectual Property and the non-existence of a
8    written agreement. Then, between December of 2021
9    through 2024, the months immediately preceding this
10    action, SPAVI engaged in a good faith and exhaustive
11    attempt to negotiate the terms of a written license with
12    PCJV as well. Never once did Counterclaimants state that
13    they had ownership rights to the Potato Corner
14    Intellectual Property, and SPAVI relied on that
15    representation because had one been expressed, that
16    would have been a dispute as to the ownership rights to
17    which SPAVI would have filed this lawsuit sooner.
18    Moreover, Guy Koren could have, but refused to, engage
19    in reasonable and good faith negotiation. Instead, he only
20    offered royalty rates and license fees that were more than
21    90% below what Koren had agreed to be reasonable
22    licensing fees over a decade prior. Koren also repeatedly
23    disengaged from the negotiation process, but still was
24    utilizing the Potato Corner Intellectual Property.
25    Additional evidence includes: Notarized Deeds signed by
26    seller and buyer; USPTO filings including Registrations
27    and Assignments; Testimony of Gregorio (Plaintiff's
28

SECOND AMENDED JOINTLY FILED CLAIMS,                      CASE NO. 2:24-CV-04546-SB(AGRX)
COUNTERCLAIMS, THIRD PARTY CLAIMS, AND
AFFIRMATIVE DEFENSES TO BE TRIED

CEO), Magsaysay (Cinco's CEO), Koren, Ybanez (Plaintiff's General Counsel), Tan (Director responsible for international franchising); and emails and correspondence during the negotiation of the terms of the license agreement.

    iv. Defendants' Supporting Evidence: SPAVI parties have not articulated their defense beyond what is included in their Answers until 7am on August 12, 2025. *See* n. 1. As it is articulated in the Answers, PCJV Parties cannot determine the factual basis for the defense.  As such, the out of an abundance of caution, PCJV Parties incorporate by reference all of the evidence cited in support of their causes of action. The state court preliminary injunction (enjoining Cinco Corporation from interfering with PCJV's President's control over Potato Corner in the United States and communicating with its franchisees); at all relevant times Defendants exercised control over Potato Corner in the United States and did not change the status quo between the parties, including in dealings with Plaintiff and Plaintiff's predecessor.

  b. Element No. 2: That Counterclaimant's negligence was a substantial factor in causing its harm.

    i. This element is disputed

    ii. Nature of Dispute: factual

    iii. Plaintiff's Supporting Evidence: Guy Koren could have, but refused to, engage in reasonable and good faith negotiation. Instead, he only offered royalty rates and

1    license fees that were more than 90% below what Koren

2    had agreed to be reasonable licensing fees over a decade

3    prior. Koren also repeatedly disengaged from the

4    negotiation process, but still was utilizing the Potato

5    Corner Intellectual Property. In light of the two year

6    negotiation process that went nowhere, and

7    Counterclaimant no furnishing any consideration

8    whatsoever in exchange for the use of the Potato Corner

9    Intellectual Property, SPAVI concluded that it exhausted

10   all efforts to negotiate a license agreement with

11   Counterclaimants. As such, SPAVI had no choice by to

12   terminate Counterclaimants licensing agreement.

13   Additional supporting evidence includes: Notarized

14   Deeds signed by seller and buyer; USPTO filings

15   including Registrations and Assignments; Testimony of

16   Gregorio (Plaintiff's CEO), Magsaysay (Cinco's CEO),

17   Koren, Ybanez (Plaintiff's General Counsel), Tan

18   (Director responsible for international franchising); May

19   31, 2024 Termination Letter; and emails and

20   correspondence during the negotiation of the terms of the

21   license agreement.

22        iv.  Defendants' Supporting Evidence: SPAVI parties have

23   not articulated their defense beyond what is included in

24   their Answers until 7am on August 12, 2025. *See* n. 1. As

25   it is articulated in the Answers, PCJV Parties cannot

26   determine the factual basis for the defense.  As such, the

27   out of an abundance of caution, PCJV Parties incorporate

28

SECOND AMENDED JOINTLY FILED CLAIMS,                    CASE NO. 2:24-CV-04546-SB(AGRX)
COUNTERCLAIMS, THIRD PARTY CLAIMS, AND
AFFIRMATIVE DEFENSES TO BE TRIED

1          by reference all of the evidence cited in support of their

2          causes of action. The state court preliminary injunction

3          (enjoining Cinco Corporation from interfering with

4          PCJV's President's control over Potato Corner in the

5          United States and communicating with its franchisees); at

6          all relevant times Defendants exercised control over

7          Potato Corner in the United States and did not change the

8          status quo between the parties, including in dealings with

9          Plaintiff and Plaintiff's predecessor

10    10)    **Affirmative Defense No. 10:** Lack or Inadequacy of Consideration

11    (asserted by Counterclaim Defendant and Third Party Defendants as to all

12    claims alleged against them)

13      a.  Element No. 1: Counterclaimant has failed or refused to provide

14          anything of value in exchange for the use of SPAVI's license to use

15          the Potato Corner Intellectual Property

16             i.  This element is disputed

17            ii.  Nature of Dispute: factual

18           iii.  Plaintiff's Supporting Evidence: Despite using the Potato

19               Corner Intellectual Property for over a decade,

20               Counterclaimants have never once paid a single cent of a

21               licensing fee for its use to Cinco nor SPAVI.

22               Counterclaimants have used Cinco's, and after the asset

23               purchase, SPAVI's trademark without compensation to

24               either party. Additional evidence includes: Financial

25               statements of Counterclaimants evidence that no licensing

26               fees have ever been paid; Notarized Deeds signed by

27               seller and buyer; USPTO filings including Registrations

28

SECOND AMENDED JOINTLY FILED CLAIMS,        CASE NO. 2:24-CV-04546-SB(AGRX)
COUNTERCLAIMS, THIRD PARTY CLAIMS, AND
AFFIRMATIVE DEFENSES TO BE TRIED

and Assignments; Testimony of Gregorio (Plaintiff's
CEO), Magsaysay (Cinco's CEO), Koren, Ybanez
(Plaintiff's General Counsel), Tan (Director responsible
for international franchising), Concepcion (Plaintiff's
COO charged with US operations); JVA and AJVA;
emails and correspondence with Cinco, SPAVI, Koren,
and PCJV relating to negotiations of a licensing
agreement

    iv. Defendants' Supporting Evidence: SPAVI parties have
not articulated their defense beyond what is included in
their Answers until 7am on August 12, 2025. *See* n. 1. As
it is articulated in the Answers, PCJV Parties cannot
determine the factual basis for the defense.  As such, the
out of an abundance of caution, PCJV Parties incorporate
by reference all of the evidence cited in support of their
causes of action

11)  **Affirmative Defense No. 11**: Abandonment or Mutual Recession of
Contract (asserted by Counterclaim Defendant and Third Party
Defendants as to all claims alleged against them)

    a.  <u>Element No. 1</u>: Counterclaimants license to use the Potato Corner
Intellectual Property was effectively terminated by mutual consent or
that Counterclaimants actions led SPAVI to believe that it was
abandoned.

        i.  This element is disputed.

        ii.  Nature of Dispute: factual

        iii.  <u>Plaintiff's Supporting Evidence:</u> Counterclaimants have
no evidence of a written license to use SPAVI's Potato

1    Corner Intellectual Property, and, as such, its rights (that

2    it has sold to its franchisees) derive from what is, at best,

3    a terminable at will, fully revocable license because

4    Defendants were nonetheless operating Potato Corner

5    locations, as if a written license existed. *See Pogrebnoy v.*

6    *Russian Newspaper Distribution, Inc.,* 289 F. Supp. 3d

7    1061, 1070 (C.D. Cal. 2017), aff'd, 742 F. App'x 291 (9th

8    Cir. 2018) ("[A]n implied license, like any other contract,

9    is terminable at the will of either party if it is not for a

10   specified term."). After SPAVI's acquisition of the Potato

11   Corner brand, it became the licensor of the Potato Corner

12   Intellectual Property. Between December of 2021 through

13   2024, the months immediately preceding this action,

14   SPAVI engaged in a good faith and exhaustive attempt to

15   negotiate the terms of a written license with PCJV.

16   Defendant Guy Koren engaged and participated in this

17   negotiation, but was unwilling to agree to any minimally

18   commercially viable licensing terms. Moreover, Guy

19   Koren refused to, engage in reasonable and good faith

20   negotiation. Instead, he only offered royalty rates and

21   license fees that were more than 90% below what Koren

22   had agreed to be reasonable licensing fees over a decade

23   prior. Koren also repeatedly disengaged from the

24   negotiation process, but still was utilizing the Potato

25   Corner Intellectual Property. In the three months prior to

26   the termination of the licensing agreement, Koren had

27   gone radio silent, leading SPAVI to believe that it no

28

1　longer was interested in negotiating a license. Therefore,

2　SPAVI had no option, but to terminate Coutnerclaimants

3　license of the Potato Corner Intellectual Property.

4　Additional evidence includes: Testimony of Koren,

5　Plaintiff executives Gregorio (Plaiuntiff's CEO),

6　Concepcion (Plaintiff's COO charged with US

7　operations), Tan (Director responsible for international

8　franchising), Magsaysay (Cinco's CEO); Emails and

9　correspondence with SPAVI, Koren, and PCJV relating to

10　negotiations of a licensing agreement for the use of the

11　Potato Corner Intellectual Property; Amended Joint

12　Venture Agreement; Franchise Agreements; FDDs; Trial

13　Exhibit 29 (May 31, 2024 Termination)

14　iv. Defendants' Supporting Evidence: SPAVI parties have

15　not articulated their defense beyond what is included in

16　their Answers until 7am on August 12, 2025. *See* n. 1. As

17　it is articulated in the Answers, PCJV Parties cannot

18　determine the factual basis for the defense.  As such, the

19　out of an abundance of caution, PCJV Parties incorporate

20　by reference all of the evidence cited in support of their

21　causes of action. Defendants settled with Plaintiff's

22　predecessor and acquired all of Plaintiff's predecessor's

23　interests in PCJV and all "attached" rights; it did not

24　abandon any rights or obligations under PCJV USA,

25　LLC's governing documents.

26

27

28

SECOND AMENDED JOINTLY FILED CLAIMS,
COUNTERCLAIMS, THIRD PARTY CLAIMS, AND
AFFIRMATIVE DEFENSES TO BE TRIED

CASE NO. 2:24-CV-04546-SB(AGRX)

**IV.** **<u>Adjudication of Causes of Action, Counter Claims, Third Party Claims,</u>**
**<u>and Affirmative Defenses Not to be Decided by a Jury</u>**

The parties request adjudication of the following causes of action, counter claims, third party claims, and affirmative defenses in the following manner and at the following time:

1) PCJV USA Parties request the Court to adjudicate PCJV USA Parties' following causes of action at the conclusion of trial:  (1) Declaratory Relief; and (2) Violations of Business & Professions Code §§ 17200, et *seq*

2) PCJV USA Parties request the Court to adjudicate PCJV USA Parties' following affirmative defenses at the conclusion of trial: (1) failure to state a claim; (2) consent/acquiescence, ratification, promissory estoppel, equitable estoppel, and judicial estoppel; (3) unclean hands; (4) laches, (5) fraud on USPTO, (6) authorized use, (7) public availability of trade secrets, and (8) lack of at will license agreement

The parties abandoned the following claims:

1) PCJV USA Parties abandon their Accounting cause of action.

2) SPAVI Parties are no longer pursuing the claim for unregistered trademarks.

1

Dated:  August 22, 2025                    /s/ Matthew Follett_____

2                                          Michael D. Murphy
                                           Matthew Follett

3                                          Jessica Nwasike
                                           Fox Rothschild LLP

4                                          *Attorneys for Plaintiff and*

5                                          *Counterclaim Defendant, and Third*
                                           *Party Defendants*

6

7

8   DATED:  August 22, 2025               **BLANK ROME LLP**

9

10                                         By:*/s/ Todd M. Malynn*_____
                                           Todd M. Malynn

11                                         Arash Beral
                                           Jamison T. Gilmore

12                                         Attorneys for Defendants, Counterclaimants,
                                           and Third Party Plaintiffs PCJV USA, LLC,

13                                         PCI TRADING LLC, POTATO CORNER,
                                           LA GROUP, LLC, GK CAPITAL GROUP,

14                                         LLC, NKM CAPITAL GROUP, LLC and
                                           GUY KOREN, and Defendants J & K

15                                         AMERICANA, LLC, J&K LAKEWOOD,
                                           LLC, J&K OAKRIDGE, LLC, J&K

16                                         VALLEY FAIR, LLC, J & K ONTARIO,
                                           LLC, J&K PC TRUCKS, LLC, HLK

17                                         MILPITAS, LLC, and GK CERRITOS,
                                           LLC

18

19

20

21

22

23

24

25

26

27

28

SECOND AMENDED JOINTLY FILED CLAIMS,              CASE NO. 2:24-CV-04546-SB(AGRX)
COUNTERCLAIMS, THIRD PARTY CLAIMS, AND
AFFIRMATIVE DEFENSES TO BE TRIED

1

## ATTESTATION OF E-FILED SIGNATURE

2    Pursuant to Civil Local Rule 5-4.3.4(a)(2)(i), I, Todd M. Malynn, hereby attest

3   that I have obtained concurrence in the filing of this document from the other

4   signatories to this document. I declare under penalty of perjury under the laws of

5   United States of America that the foregoing is true and correct.

6
7   DATED: August 22, 2025          **BLANK ROME LLP**

8                                   By: *Todd M. Malynn*
9                                       Todd M. Malynn
                                        Arash Beral
10                                      Jamison T. Gilmore
                                        Attorneys for Defendants, Counterclaimants,
11                                      and Third Party Plaintiffs PCJV USA, LLC,
                                        PCI TRADING LLC, POTATO CORNER,
12                                      LA GROUP, LLC, GK CAPITAL GROUP,
                                        LLC, NKM CAPITAL GROUP, LLC and
13                                      GUY KOREN, and Defendants J & K
                                        AMERICANA, LLC, J&K LAKEWOOD,
14                                      LLC, J&K OAKRIDGE, LLC, J&K
                                        VALLEY FAIR, LLC, J & K ONTARIO,
15                                      LLC, J&K PC TRUCKS, LLC, HLK
                                        MILPITAS, LLC, and GK CERRITOS,
16                                      LLC

17

18

19

20

21

22

23

24

25

26

27

28

SECOND AMENDED JOINTLY FILED CLAIMS,          CASE NO. 2:24-CV-04546-SB(AGRX)
COUNTERCLAIMS, THIRD PARTY CLAIMS, AND
AFFIRMATIVE DEFENSES TO BE TRIED

**CERTIFICATE OF SERVICE**

The undersigned certifies that on August 22, 2025, the foregoing document was electronically filed with the Clerk of the Court for the United States District Court, Central District of California, using the Court's Electronic Case Filing (ECF) system.  I further certify that all participants in the case are registered CM/ECF users and that service will be accomplished by the CM/ECF system.

      I certify under penalty of perjury that the foregoing is true and correct. Executed on August 22, 2025.

                    By:   */s/AJ Cruickshank*

SECOND AMENDED JOINTLY FILED CLAIMS,      CASE NO. 2:24-CV-04546-SB(AGRX)
COUNTERCLAIMS, THIRD PARTY CLAIMS, AND
AFFIRMATIVE DEFENSES TO BE TRIED