1  MICHAEL D. MURPHY (SBN 224678)
   mdmurphy@foxrothschild.com
2  MATTHEW FOLLETT (SBN 325481)
   mfollett@foxrothschild.com
3  JESSICA NWASIKE (SBN 343087)
   jnwasike@foxrothschild.com
4  FOX ROTHSCHILD LLP
   Constellation Place
5  10250 Constellation Boulevard, Suite 900
   Los Angeles, California 90067
6  Telephone:  310.598.4150
   Facsimile:   310.556.9828
7

8

9  Attorneys for Plaintiff and Counterclaim
   Defendant SHAKEY'S PIZZA ASIA
10 VENTURES, INC. and Third Party Defendants
   CINCO CORPORATION, PC
11 INTERNATIONAL PTE LTD., and SPAVI
   INTERNATIONAL USA, INC.
12

13              **UNITED STATES DISTRICT COURT**

14              **CENTRAL DISTRICT OF CALIFORNIA**

15 SHAKEY'S PIZZA ASIA VENTURES,           Case No. 2:24-CV-04546-
   INC, a Philippines corporation,          SB(AGRx)
16
                                            *The Hon. Stanley Blumenfeld, Jr.*
17              Plaintiff,

18        v.                                **SECOND AMENDED**
                                            **JOINTLY FILED CLAIMS,**
19 PCJV USA, LLC, a Delaware limited        **COUNTERCLAIMS, THIRD**
   liability company; PCI TRADING, LLC, a   **PARTY CLAIMS, AND**
20 Delaware limited liability company; GUY  **AFFIRMATIVE DEFENSES**
   KOREN, an individual; POTATO             **TO BE TRIED**
21 CORNER LA GROUP, LLC, a California
   limited liability company; NKM CAPITAL
22 GROUP, LLC, a California limited liability
   company; J & K AMERICANA, LLC, a
23 California limited liability company; J&K
   LAKEWOOD, LLC, a California limited
24 liability company; J&K VALLEY FAIR,
   LLC, a California limited liability        Complaint Filed:   ——May 31,
25 company; J & K ONTARIO, LLC, a                               2024
   California limited liability company; HLK  Trial Date:        August 1826, 2025
26 MILPITAS, LLC, a California, limited
   liability company; GK CERRITOS, LLC, a
27 California, limited liability company; J&K

                                    1
28 ┌────────────────────────────────────────────────────────────────┐
   JOINTLY FILED CLAIMS TO BE TRIEDSECOND        CASE NO. 2:24-CV-04546-SB(AGRX)
   AMENDED JOINTLY FILED CLAIMS,
   COUNTERCLAIMS, THIRD PARTY CLAIMS, AND
   AFFIRMATIVE DEFENSES TO BE TRIED

   175689043.1

Formatted Table

1  PC TRUCKS, LLC, a California limited
   liability company; and, GK CAPITAL
2  GROUP, LLC, a California limited liability
   company and DOES 1 through 100,
3  inclusive,

4                  Defendants.

5

6  PCJV USA, LLC, a Delaware limited
   liability company; PCI TRADING LLC, a
7  Delaware limited liability company;
   POTATO CORNER LA GROUP LLC, a
8  California limited liability company; GK
   CAPITAL GROUP, LLC, a California
9  limited liability company; NKM CAPITAL
   GROUP LLC, a California limited liability
10 company; and GUY KOREN, an
   individual,

11             Counter-Claimants,

12      v.

13 SHAKEY'S PIZZA ASIA VENTURES,
   INC, a Philippines corporation,
14
                Counter Defendant.
15

16 PCJV USA, LLC, a Delaware limited
   liability company; PCI TRADING LLC, a
17 Delaware limited liability company;
   POTATO CORNER LA GROUP LLC, a
18 California limited liability company; GK
   CAPITAL GROUP, LLC, a California
19 limited liability company; NKM CAPITAL
   GROUP LLC, a California limited liability
20 company; and GUY KOREN, an
   individual,
21
             Third Party Plaintiffs,
22
        v.
23
   PC INTERNATIONAL PTE LTD., a
24 Singapore business entity; SPAVI
   INTERNATIONAL USA, INC., a
25 California corporation; CINCO
   CORPORATION, a Philippines
26 corporation; and DOES 1 through 10,
   inclusive,
27

28

---

2

JOINTLY FILED CLAIMS TO BE TRIEDSECOND
AMENDED JOINTLY FILED CLAIMS,
COUNTERCLAIMS, THIRD PARTY CLAIMS, AND
AFFIRMATIVE DEFENSES TO BE TRIED
175468760.1

CASE NO. 2:24-CV-04546-SB(AGRX)



Third Party Defendants.

**TABLE OF CONTENTS**

**Page**

I.   Plaintiff Shakey's Pizza Asia Venture's Inc. ("SPAVI" or "Plaintiff):   Claims to be Tried by a Jury.................................................................................... 5

 1)   Claim 1: Trademark Infringement Against All Entity Defendants ....... 5

 2)   Claim 3: False Designation of Origin and Description of Fact Against All Entity Defendants (15 U.S.C. § 1125):................................... 21

 3)   Claim 4: Contributory Trademark Infringement Against All Defendants (Against Guy Koren, PCJV USA, LL, PCI Trading, LLC, Potato Corner LA  Group, LLC; GK Capital,  LLC or NKM Capital Group, LLC)............................................................... 33

 4)   Claim 5: Contributory False Designation of Origin Against Guy Koren, PCJV USA, LL, PCI Trading, LLC, Potato Corner LA  Group, LLC; GK Capital,  LLC or NKM Capital Group, LLC ...................... 37

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

4

JOINTLY FILED CLAIMS TO BE TRIED SECOND AMENDED JOINTLY FILED CLAIMS, COUNTERCLAIMS, THIRD PARTY CLAIMS, AND AFFIRMATIVE DEFENSES TO BE TRIED

175468760.1

CASE NO. 2:24-CV-04546-SB(AGRX)

1   ~   Pursuant to Dkt. No. 254, the parties submit the following causes of action,

2   counterclaims, third party claims, and affirmative defenses as at issue for trial.

3   ~~SPAVI further notes that two of its entries in this document are longer than one~~

4   ~~paragraph. With respect to those notes, given their rarity herein, and given the~~

5   ~~number of pleadings disputing those elements themselves, the disagreements abiu~~

6   ~~what can or cannot be presented therein have been extensive and cannot easily  be~~

7   ~~consolidated into one paragraph while communicating the same layered issues.~~

8   ~~SPAVI apologizes to this Court and assures this Court it was not meant as a sign of~~

9   ~~disrespect, bit, rather a sign of the importance of those elements at issue.~~

10  **I.      PLAINTIFF SHAKEY'S PIZZA ASIA VENTURE'S INC. ("SPAVI"**

11  **OR "PLAINTIFF"):  CLAIMS TO BE TRIED BY A JURY.**

12          **1)      Claim 1: Trademark Infringement Against All Entity Defendants**

13  (15 U.S.C. § 1114), regarding the three registered marks at issue: (1) U.S. Reg.

14  No. 5900257: the word mark "Potato Corner" ("Word Mark"); (2) U.S. Reg. No.

15  6088456 protecting "World's Best Flavored  French Fries (the "Slogan Mark"); and

16  (3) U.S. Reg. No. 3760041 (the "Logo Mark") protecting: 

17          a.      Element No. 1: the Word Mark, Slogan Mark, and/or the Logo

18                  Mark (all collectively, the "Marks") are valid and protectible

19                  trademarks:

20                  1.      This element is not disputed

21          b.      Element No. 2: Plaintiff owns the Word Mark, Slogan Mark,

22                  and/or the Logo Mark

23                  1.      This element is disputed.

24                  2.      Nature of Dispute: Legal and Factual

25                  3.      Plaintiff's Legal Position: Defendants do not dispute that

26                          the registrations for all three Marks (Trial Exhibit Nos. 1,

27                          3, and 5) identify Cinco as the registrant and the first to use

28

~~JOINTLY FILED CLAIMS TO BE TRIED~~SECOND
AMENDED JOINTLY FILED CLAIMS,
COUNTERCLAIMS, THIRD PARTY CLAIMS, AND
AFFIRMATIVE DEFENSES TO BE TRIED
~~17546876O.1~~

CASE NO. 2:24-CV-04546-SB(AGRX)

Formatted: Normal, Line spacing:  Exactly 24 pt, Don't keep with next, Don't keep lines together

each of the three Marks, nor do Defendants dispute that the Deeds of Assignment attached to the notices filed with the USPTO (Trial Exhibit Nos. 4 and 6) confirm that, unequivocally and without exception, the entirety of these Marks were sold and assigned to Plaintiff, along with all the goodwill arising out of or associated with the Marks. Defendants also do not dispute the testimony of Seller (Cinco) and Buyer (SPAVI) that the Deeds are accurate in every way, that the sale and assignments were comprehensive, without carve outs, and fully consummated. Instead, Defendants take internally inconsistent positions that are contradicted by various legal doctrine, including: **(1) Licensee Estoppel,** wherein PCJV (as well as all other Defendants that operate or own a business using the Marks), as a licensee of Cinco (and subsequently SPAVI) through the implied license or even the unsigned Master License Agreement claimed by Defendants to be binding "may not set up any adverse claim in it as against its licensor." *Pac. Supply Co-op. v. Farmers Union Cent. Exch. Inc.,* 318 F.2d 894, 908 (9th Cir. 1963). **(2) The Lanham Act provisions rendering Defendants' positions contrary to federal law**, in that Defendants' attempts to claim that the first time they used the Marks should be credited to them, even though they were acting as licensees of PCJV or Defendants' claim of ownership of the goodwill created through PCJV's stores (operated as licensees) inured to Defendants' benefit

JOINTLY FILED CLAIMS TO BE TRIED SECOND
AMENDED JOINTLY FILED CLAIMS,
COUNTERCLAIMS, THIRD PARTY CLAIMS, AND
AFFIRMATIVE DEFENSES TO BE TRIED
175468760.1

CASE NO. 2:24-CV-04546-SB(AGRX)

1   contradicts 15 USC § 1055 (as well as the unsigned Master
2   License Agreement they claimed to be adhering to this
3   whole time). **(3) Law of the case**, in that Defendants'
4   challenge to Plaintiff's ownership of the Marks based on
5   Defendants' first use as licensee of Cinco has already been
6   resolved by this Court and the Ninth Circuit, which held
7   that "it is undisputed that Cinco registered the three marks
8   at issue then transferred ownership of those marks to
9   SPAVI." The Ninth Circuit then explicitly rejected PCJV's
10  theories that it was the first to use the marks domestically
11  by holding that "in the licensor-licensee context, a
12  licensee's use of a trademark inures to the benefit of the
13  licensor-registrant" (*Shakeys Pizza Asia Ventures, Inc. v.*
14  *PCJV USA, LLC*, No. 24-7084, 2025 WL 1431270, at *1
15  (9th Cir. May 19, 2025)), thus rendering, for example, any
16  allegation by PCJV of its use as a licensee as being proof
17  of its first use cannot serve as a basis to challenge SPAVI's
18  ownership because this theory has been considered and
19  rejected by the Ninth Circuit in this case, as has also the
20  various other legal theories of Defendants offered during
21  the injunction stage that are based on the same facts
22  asserted during the injunction and rejected by this Court.
23  Even at the injunction stage, rulings by this Court and the
24  Ninth Circuit "on pure issues of law, however, are
25  binding. *Ranchers Cattlemen Action Legal Fund United*
26  *Stockgrowers of Am. v. U.S. Dep't of Agr*., 499 F.3d 1108,
27  1114 (9th Cir. 2007); se*e, e.g. Arizona v. California*, 460
28

<div style="text-align:center">7</div>

1    U.S. 605, 618 (1983) (citing the rule as being "when a court

2    decides upon a rule of law, that decision should continue to

3    govern the same issues in subsequent stages in the same

4    case"). **(4) Authorities cited by Defendants do not**

5    **support their position, including _Sengoku_,** which

6    presented a distinguishable case – a foreign manufacturer

7    that was the first to use versus the domestic distributor that

8    was the registrant, whereas in this case the foreign licensor

9    is both the first to use and the registrant – and yet,

10    Defendants continue to cite it as supporting their claim of

11    ownership or rights, and it does not. **(5) The merger**

12    **doctrine,** wherein the purchase and sale agreement

13    between Cinco and SPAVI selling and agreeing to assign

14    to SPAVI the Potato Corner marks and brand merge into

15    the undisputed and unequivocal deeds that are notarized

16    and ratified by Buyer and Seller (Trial Exhibit Nos. 4 and

17    6) such that these Deeds would control if there was any

18    inconsistency between the purchase and sale agreement

19    and the deed (there is not, as those agreements said nothing

20    about and acknowledged no rights held by any of the

21    Defendants), such that Defendants' speculative theory that

22    the purchase and sale agreement between Cinco and

23    SPAVI reserved some rights for Defendants cannot even

24    be presented to the jury given that the Deeds do not reserve

25    anything for Defendants – a doctrine that applies in federal

26    intellectual property cases and renders any questions as to

27    what the deal between SPAVI and Cinco actually said,

28

1   irrelevant. *See, e.g., Palos Verdes Corp. v. Hous. Auth. of*

2   *Los Angeles Cnty.*, 202 Cal. App. 2d 827, 836 (1962)

3   (explaining that "if the language of a deed is plain, certain,

4   and unambiguous, neither parol evidence nor surrounding

5   facts and circumstances will be considered to add to,

6   detract from, or vary its terms or to determine the estate

7   conveyed); *B. F. Goodrich Co. v. A. T. I. Caribe, Inc.,* 366

8   F. Supp. 464,467 (D. Del. 1973) (applying this concept in

9   the intellectual property context). **(6) Standing**, in that

10  none of the Defendants were party to the transaction

11  between Cinco and Plaintiff, and as such, have no standing

12  to question whether the Deeds (notarized and ratified)

13  represent the actual deal between Cinco and SPAVI or

14  some other imagined reservation of their rights supposedly

15  contained in the purchase and sale agreement that did not

16  make it into the Deeds (a fantasy that did not happen). *See,*

17  *e.g. Imperial Residential Design, Inc. v. Palms Dev. Grp.,*

18  *Inc.*, 70 F.3d 96, 99 (11th Cir. 1995) (agreeing that "that,

19  where there is no dispute between the copyright owner and

20  the transferee about the status of the copyright, it would be

21  unusual and unwarranted to permit a third-party infringer

22  to invoke [the requirement of a writing memorializing the

23  status] to avoid suit for copyright infringement."). **(7)**

24  **Judicial estoppel**, in his sworn allegations in the Prior

25  Governance Action (*Cinco Corporation et. al. v. Guy*

26  *Koren et. al.* Los Angeles Superior Court Case No.

27  BC701075), Koren admitted repeatedly including in

28

1    verified allegations that Cinco "owned the Potato Corner
2    brand" (Trial Exhibit No. 1421, ¶ 26), an allegation that
3    Cinco **_admitted_** (Trial Exhibit,  No. 1422, ¶  26.), such that
4    PCJV and Koren must be barred from making a "factual
5    assertion" that Cinco did not own  the  brand "which
6    directly contradicts an earlier assertion made in the same
7    proceeding or a prior one.'" Un*ited States v. Lence*, 466
8    F.3d 721, 726 (9th Cir. 2006) (citing and quoting *Russell v.*
9    *Rolfs,* 893 F.2d 1033, 1037 (9th Cir.1990)).

10        4.    Defendants' Position Statement: The  ownership  issues
11            framed by the Proposed Final Pretrial Conference Order
12            (Dkt. No. 244), the Memoranda of Contentions of Law and
13            Fact (Dkt. Nos. 197 and 199) and pleadings are: (1) senior
14            use under *Sengoku*, including actual first use (restructure in
15            2009) and lawful first use, *see CreAgri, Inc. v. USANA*
16            *Health Services, Inc.*, 474 F3d 626, 630 (9th Cir. 2007); (2)
17            continuous use under 15 U.S.C § 1055; (3) assignment in
18            gross; (4) acquisition of "attached" rights by the PCJV
19            USA  Parties  and  Plaintiff's  corresponding  denial  of
20            acquiring burdens attached to the trademarks; (5) naked
21            license; and (6) priority favoring Defendants based on
22            other defenses. Plaintiff's proffered statement is non-
23            responsive. It is a combative, inappropriate and false
24            narrative  of  Defendants'  position,  record  evidence,
25            preliminary rulings and the ownership issues for trail as set
26            forth in the Proposed Final Pretrial Conference Order (Dkt.
27            No. 244), Memorandums of Contentions of Law and Fact

28

~~JOINTLY FILED CLAIMS TO BE TRIED~~SECOND
AMENDED JOINTLY FILED CLAIMS,
COUNTERCLAIMS, THIRD PARTY CLAIMS, AND
AFFIRMATIVE DEFENSES TO BE TRIED
~~175468760.1~~

CASE NO. 2:24-CV-04546-SB(AGRX)

1    (Dkt. Nos. 197 and 199) and pleadings. "The court's
2    preliminary injunction did not make final factual
3    determinations; no party moved for summary judgment;
4    and the jury needs to be instructed on the claims asserted
5    in this case." Dkt. No. 254 at 2. Plaintiff's unpled defenses
6    of infringer standing, licensee estoppel, judicial estoppel,
7    and merger (parol evidence) doctrine are not issues for trial
8    per the Proposed Final Pretrial Conference Order (Dkt. No.
9    244) or Plaintiff's Memorandum of Contentions of Law
10   and Fact (Dkt. No. 199). Plaintiff's asserted "legal
11   positions," which seek to avoid a trial on the merits, are
12   also based on inapplicable authority (or no authority at all)
13   and misstate the record. For these reasons, including
14   because Plaintiff's "legal positions" go beyond identifying
15   the actual ownership issues set for trial, Defendants will
16   address them if or when they arise after the evidence on
17   ownership is presented at trial

18       5.   <u>Plaintiff's Supporting Evidence:</u> Notarized Deeds signed
19            by seller and buyer; USPTO filings including Registrations
20            and Assignments, testimony of Gregorio (Plaintiff's CEO),
21            Magsaysay (Cinco's CEO), Koren, Ybanez (Plaintiff's
22            General Counsel), FDDs, Franchise Agreements.

23       6.   <u>Defendants' Supporting Evidence:</u> documents and
24            testimony including and related to (1) Defendants' senior
25            use and quality control of Potato Corner in the United
26            States; (2) the superseding partnership agreement; (3) DLA
27            Piper's notification of Cinco Corporation's unlawful use of

28

---

JOINTLY FILED CLAIMS TO BE TRIEDSECOND                        CASE NO. 2:24-CV-04546-SB(AGRX)
AMENDED JOINTLY FILED CLAIMS,
COUNTERCLAIMS, THIRD PARTY CLAIMS, AND
AFFIRMATIVE DEFENSES TO BE TRIED
175468760.1

1   Potato Corner in the United States; (4) the State of
2   California's Department of Business Oversight's Order
3   sanctioning PCJV USA, LLC for Cinco Corporation's
4   alleged prior use of Potato Corner in the United States; (5)
5   the superseding and restructure agreement confirmed by
6   Guy Koren and Jose Magsaysay vesting ownership of
7   Potato Corner in their partnership; (6) the joint venture
8   agreement vesting co-ownership of Potato Corner in the
9   United States in PCJV USA, LLC; (7) control over Potato
10  Corner in the United States being vested with and exercised
11  by PCJV USA, LLC; (8) Potato Corner USA being affixed
12  to Potato Corner in the United States; (9) consumer
13  association of Potato Corner in the United States with
14  PCJV USA, LLC, to whom complaints, if any, were
15  lodged; (10) PCJV USA, LLC's creation, development and
16  hold over the goodwill of Potato Corner in the United
17  States for over a decade; (11) absent a license agreement,
18  which SPAVI Parties disavow, PCJV USA, LLC's use
19  inured to its own benefit; (12) Cinco Corporation's lack of
20  control of Potato Corner in the United States for over a
21  decade; (13) Defendants' objection to Plaintiff's alleged
22  acquisition of U.S. trademark rights in breach of Cinco
23  Corporation's fiduciary duties and PCJV USA, LLC's joint
24  venture agreement ("JVA") and First Amendment thereto
25  ("First Amendment") given that Plaintiff was disavowing
26  the existence of a license agreement; (14) Cinco
27  Corporation assigned U.S. Potato Corner trademarks to
28

12

JOINTLY FILED CLAIMS TO BE TRIEDSECOND
AMENDED JOINTLY FILED CLAIMS,
COUNTERCLAIMS, THIRD PARTY CLAIMS, AND
AFFIRMATIVE DEFENSES TO BE TRIED
175468760.1
                                        CASE NO. 2:24-CV-04546-SB(AGRX)

Plaintiff without the goodwill associated with the trademarks; (15) Plaintiff's lack of control of Potato Corner in the United States after it allegedly acquired the U.S. trademarks; (16) Defendants' Membership Interest Purchase Agreement ("MIPA") with Cinco acquiring all of its Interests in PCJV USA, LLC and all rights "attached" thereto unencumbered by a need for a license from any third party; (17) Plaintiff's denial of stepping into Cinco Corporation's shoes and acquiring the licensing burdens attached to the U.S. trademarks; and (18) Plaintiff's suppression of ownership evidence.

c. Element No. 3: Defendants used the Word Mark, Slogan Mark, and/or the Logo Mark in interstate commerce after May 31, 2024:

1. This element is undisputed.

d. Element No. 4: Defendants' use of the Word Mark, Slogan Mark, and/or the Logo Mark in interstate commerce after May 31, 2024, was without the consent of Plaintiff and in a manner likely to cause confusion among ordinary consumers as to the source, sponsorship, affiliation, or approval of the services.

1. This element is disputed.

2. Nature of Dispute: Legal and Factual

3. Plaintiff's Legal Position: As for absence of consent, given the absence of any ownership rights, Defendants must locate some right as a licensee of the owner (SPAVI). Defendants offer two documents proffered as agreements that bind Cinco to a perpetual license. Neither work as a matter of law. First, they offer the unsigned October 10,

2010, document containing terms for a Master License Agreement (Trial Exhibit No. 11), which this Court (and the Ninth Circuit) have reviewed. Both have interpreted it as a matter of law, concluding that it is an unsigned draft (as Koren's testimony has confirmed) and illusory because the licensor is given no consideration for this purported agreement. The unsigned document cannot, as a matter of law, have bound Cinco, even through implied contract law, because Cinco did not do anything in furtherance of that document to imply its assent. Moreover, multiple times after October 10, 2010, documents were signed stating that Cinco would be expecting a 30% royalty recovery. Second, Plaintiffs point to § 3(g) of an Amended Joint Venture Agreement (and its predecessor the Joint Venture Agreement) – Trial Exhibit Nos. 8 and 9 – which this Court has already interpreted to constitute an agreement to agree, in the future, with Cinco on a license agreement. As the Ninth Circuit said in affirming this conclusion, "the AJVA contained an agreement to enter a *future* Master License Agreement, not a "perpetual license" like PCJV claims." *Shakeys Pizza Asia Ventures, Inc. v. PCJV USA, LLC*, No. 24-7084, 2025 WL 1431270, at *1 (9th Cir. May 19, 2025) (citing *First Nat'l Mortg. Co. v. Fed. Realty Inv. Tr.*, 631 F.3d 1058, 1065 (9th Cir. 2011) ("[A]n 'agreement to agree,' without more, is not a binding contract."). This interpretation of the AJVA and JVA is a legal conclusion, which, as affirmed by the Ninth Circuit are legal

14

conclusions, and, as such, these are pure conclusions of law, which means: **this Court's conclusion that § 3(g) of the JVA and AJVA are agreements to agree and do not bind Cinco to a "perpetual license" are law of the case and cannot be disturbed or challenged at trial**. This theory based on interpretation of a contract has been considered and rejected by this Court and the Ninth Circuit in this case, and because it is a "pure issue[] of law, however, [it is] binding" on Defendants under law of the case. *Ranchers Cattlemen Action Legal Fund United Stockgrowers of Am. v. U.S. Dep't of Agr.*, 499 F.3d 1108, 1114 (9th Cir. 2007); s*ee, e.g. Arizona v. California*, 460 U.S. 605, 618 (1983) ((citing the rule as being "when a court decides upon a rule of law, that decision should continue to govern the same issues in subsequent stages in the same case"). Defendants now trot out other theories such the fact that the JVA and prior Operating Agreement are still somewhat live under a theory of partial integration, however, the following point prevails over each of these contortions: Defendants can point to no agreement or document, or acct, or statement, binding Cinco to a perpetual, irrevocable, royalty free licensee of its Marks. As such, in the absence of any written agreement, or documentation of any license terms, the sole license that existed as of May 31, 2024, was implied and terminable at will  *See Pogrebnoy v. Russian Newspaper Distribution, Inc.*, 289 F. Supp. 3d 1061, 1070 (C.D. Cal. 2017), *aff'd*,

742 F. App'x 291 (9th Cir. 2018) ("[A]n implied license, like any other contract, is terminable at the will of either party if it is not for a specified term."). One final flaw exists in the attempt to bind Cinco to the AJVA, and that is one of issue preclusion in favor of Plaintiffs. As evidenced by Plaintiff's own Third Amended Complaint (verified) in the Prior Governance Action, the entire pleading is based on the theory that -- and it sought judgment concluding that -- Cinco is an alter ego of the entity that was a 60% member of PCJV. (*See* Trial Exhibit No. 1421 p. 7:3-14.) Such allegations, having been dismissed, with  prejudice, by Koren, re4nder thee accusations extinguished, and, as such, Defendants are precluded from alleging them ever again.

Regarding likelihood of confusion,  which may be resumed, and the jury  may  be so  instructed "[w]here,' as here, "a licensee persists in the unauthorized use of a licensor's trademark, courts have found that the continued use alone establishes a likelihood of consumer confusion." *Robert Trent Jones II, Inc. v. GFSI, Inc*., 537 F. Supp. 2d 1061, 1065 (N.D. Cal. 2008) (citing and quoting *Sun Microsystems v. Microsoft Corp.,* 999 F.Supp. 1301, 1311 (N.D.Cal.1998) (citing *Paisa, Inc. v. N & G Auto, Inc.,* 928 F.Supp. 1009, 1012 n. 4 (C.D.Cal.1996); *Hollywood Athletic Club,* 938 F.Supp. at 614–15 (C.D.Cal.1996)). The Sixth Circuit's analysis in Max Rack, Inc. v. Core Health & Fitness, LLC, 40 F.4th 454, 464 (6th Cir. 2022) is instructive:

16

~~JOINTLY FILED CLAIMS TO BE TRIED~~SECOND AMENDED JOINTLY FILED CLAIMS, COUNTERCLAIMS, THIRD PARTY CLAIMS, AND AFFIRMATIVE DEFENSES TO BE TRIED
~~175468760.1~~                                                    CASE NO. 2:24-CV-04546-SB(AGRX)

1

2      "A separate body of law has developed for this

3      distinct claim that a holdover licensee has

       continued to use a licensor's mark after their

4      agreement expired. *See* 4 McCarthy, *supra*, §

5      25:31 (citing cases). In this context, courts have

       jettisoned      the      usual    totality-of-the-

6      circumstances test in favor of a more

7      categorical    rule:   "proof   of   continued,

       unauthorized use of an original trademark by

8      one whose license to use the trademark had

9      been terminated is sufficient to establish

10     'likelihood of confusion.' " *U.S. Structures, Inc.*

       *v. J.P. Structures, Inc.*, 130 F.3d 1185, 1190

11     (6th Cir. 1997); *ITT Indus., Inc. v. Wastecorp.*

12     *Inc.*, 87 F. App'x 287, 293 (3d Cir. 2004);

       *Gorenstein Enters., Inc. v. Quality Care-USA,*

13     *Inc.*, 874 F.2d 431, 435 (7th Cir. 1989); *Burger*

14     *King Corp. v. Mason*, 710 F.2d 1480, 1492–93

       (11th Cir. 1983); *Pro. Golfers Ass'n of Am. v.*

15     *Bankers Life & Cas. Co.*, 514 F.2d 665, 670 (5th

16     Cir. 1975); *L & L Wings, Inc. v. Marco-Destin,*

       *Inc.*, 676 F. Supp. 2d 179, 188 (S.D.N.Y. 2009).

17     This rule makes good sense when a holdover

18     licensee blatantly infringes the licensor's mark

       by using that mark in the same way as it did

19     before the agreement expired. Without any need

20     to tick through factors, it should be obvious that

       consumers will believe, for example, that a

21     pizza restaurant remains affiliated with the

22     "Little Caesars" chain when a terminated

       franchisee continues to operate the pizzeria as a

23     Little Caesars. *See Little Caesar Enters., Inc. v.*

24     *Miramar Quick Serv. Rest. Corp.*, 2020 WL

       4516289, at *3 (6th Cir. 2020) (order)"

25

26     Although Plaintiff intends to, and will, adduce proof of the

27     *Sleekcraft* factors, the presumption exists, and it is entitled to

28
                                          17

1   stand on this presumption alone. *See also, Brookfield Commc'ns,*

2   *Inc. v. W. Coast Ent. Corp.*, 174 F.3d 1036, 1056 (9th Cir. 1999)

3   ("In light of the virtual identity of marks, if they were used with

4   identical products or services likelihood of confusion would

5   follow as a matter of course"); *Park 'n Fly, Inc. v. Dollar Park*

6   *& Fly, Inc.*, 782 F.2d 1508, 1509 (9th Cir. 1986) (holding that

7   when marks and services are identical and channels are the

8   same, likelihood of confusion is assumed, even if the other

9   factors weight against); *see also Blue Mako Inc. v. Minidis*, No.

10  CV 07-916 AHM (SHX), 2008 WL 11334205 (C.D. Cal. June

11  23, 2008) (applying these principles to similar facts). Although

12  Plaintiff intends to, and will, adduce proof of the *Sleekcraft*

13  factors, the presumption exists, and it is entitled to stand on this

14  presumption alone.

15      4.   <u>Defendants' Position Statement:</u> If Defendants are not

16         found to have a superior claim to ownership, authorization

17         issues framed by the Proposed Final Pretrial Conference

18         Order (Dkt. No. 244), the Memoranda of Contentions of

19         Law and Fact (Dkt. Nos. 197 and 199) and pleadings are

20         whether, based on a partnership meeting of the minds,

21         governing documents, course of performance, fiduciary

22         and contractual obligations, the implied covenant of good

23         faith and fair dealing, and reasonable and detrimental

24         reliance: (1) PCJV USA, LLC had a "lifetime" license as a

25         joint venture partner; (2) PCJV USA, LLC had a 20-year

26         license with three 10-year options; (3) PCJV USA, LLC

27         had a non-terminable-at-will license; (4) Plaintiff owed

28

18

fiduciary or contractual obligations to provide PCJV USA, LLC a long-term license consistent with the PCJV USA Parties being joint venture partners, *see* J. Thomas McCarthy, *McCarthy on Trademarks and Unfair Competition,* § 18:15, at (5th ed.) ("'It is elementary ancient law that an assignee never stands in any better position than his assignor'") (citation omitted); and (5) other defenses to enforcement, including promissory estoppel, authorizing PCJV USA, LLC's continued use of the U.S. trademarks. Plaintiff's proffered statement is non-responsive. It is a combative, inappropriate and false narrative of record evidence, preliminary rulings and the authorization issues for trail as set forth in the Proposed Final Pretrial Conference Order (Dkt. No. 244), Memoranda of Contentions of Law and Fact (Dkt. Nos. 197 and 199) and pleadings. "The court's preliminary injunction did not make final factual determinations; no party moved for summary judgment; and the jury needs to be instructed on the claims asserted in this case." Dkt. No. 254 at 2. Plaintiff's asserted "legal positions," which seek to avoid a trial on the merits, are also based on inapplicable authority (or no authority at all) and misstate the record. For these reasons, including because Plaintiff's "legal positions" go beyond identifying the actual authorization issues set for trial, Defendants will address them if or when they arise after the evidence on PCJV USA LLC's

1 | authorization to continue using the U.S. trademarks is
2 | presented at trial.
3 | 5. | <u>Plaintiff's Supporting Evidence</u>: Trial Exhibit 29 (May 31,
4 | 2024 Termination); photographs of various stores taken
5 | from May 31, 2025 through the present; Testimony of
6 | Koren; Plaintiff executives Gregorio (Plaiuntiff's CEO),
7 | Concepcion (Plaintiff's COO charged with US operations),
8 | Tan (Director responsible for international franchising);
9 | investigator; Franchisees; Kim Lambert and Barry Kurtz;
10 | in addition to  the following documents Amended Joint
11 | Venture Agreement and Joint Venture Agreement.
12 | 6. | <u>Defendants' Supporting Evidence</u>: documents and
13 | testimony including and related to (1) Defendants' senior
14 | use and quality control of Potato Corner in the United
15 | States; (2) the superseding and restructure agreement
16 | confirmed by Guy Koren and Jose Magsaysay vesting
17 | partnership rights to build, develop and control Potato
18 | Corner in the United States; (3) the joint venture agreement
19 | vesting lifetime partnership rights to build, develop and
20 | control Potato Corner in the United States; (4) absent a
21 | license agreement, which SPAVI Parties disavow, PCJV
22 | USA, LLC's owns the U.S. Potato Corner marks as its use
23 | inured to its own benefit; (5) all the terms and conditions
24 | of the JVA and First Amendment thereto controlling
25 | licensing, approval of franchisee agreements, including as
26 | disclosed in franchise disclosure documents ("FDDs"), and
27 | management and operations of Potato Corner in the United

1    States; (6) parol evidence regarding the partners' meeting
2    of the minds; (7) the JVA's related agreements, which
3    remained operative and under which Cinco Corporation
4    remained a fiduciary and party to the JVA after the First
5    Amendment as confirmed a plethora of documentary
6    evidence; (8) the license agreements setting forth the terms
7    and conditions upon which PCJV USA, LLC's senior use
8    and control of Potato Corner in the United States would
9    inure to the benefit of Cinco Corporation, which the SPAVI
10   Parties now disavow, even though Cinco Corporation
11   offered it through DLA Piper, or thereafter accepted,
12   countersigned or otherwise entered into the license
13   agreements as evidenced in many writings and agreed and
14   approved of in FDDs; (9) course of performance for more
15   than a decade as evidenced by approved FDDs, which
16   ratified the license agreements and confirmed an entered
17   into license agreement; (10) reasonable and detrimental
18   reliance; (11) fiduciary obligations, the implied covenant
19   of good faith and fair dealing, and the JVA and First
20   Amendment's plain acknowledgement that there are no
21   terminable-at-will branding rights; (12) Plaintiff's denial of
22   stepping into Cinco Corporation's shoes and acquiring the
23   licensing burdens attached to the U.S. trademarks; and (13)
24   Plaintiff's suppression of authorization evidence

25       e.    Element No. 5: Damage caused by infringement designation.
26           1.    This element is disputed.
27           2.    Nature of Dispute: ~~factual~~Legal and Factual
28

3. Plaintiff's Position Statement: The standard to be followed is set forth in 15 USC § 1117 which only requires this Court's approval in equity to proceed with money damages. The Courts have, contrary to Defendant's apparent position, removed the requirement of willfulness to obtain disgorgement., *Romag Fasteners, Inc. v. Fossil, Inc.*, ─── U.S. ───, 140 S. Ct. 1492, 1495-97, 206 L.Ed.2d 672 (2020) (holding willfulness is not a precondition to disgorgement of profits under the Lanham Act). (Dkt. No. 594.) Defendants ignore the difference between normal infringement and this case, the holdover licensee, where the standard for likelihood of confusion is lowered, and even sometimes presumed, and irreparable harm is also presumed. The Lanham Act allows Defendants to raise the other arguments to rebut the presumption of irreparable harm, but the standard as applied here allows for disgorgement

4. Defendants' Position Statement: Likelihood of confusion, when coupled with likely irreparable harm, is the standard for injunctive relief, the primary remedy under the Lanham Act (*National Grange of the Order of Patrons of Husbandry v. Cal. State Grange*, 182 F.Supp. 3d 1065, 1071 (E.D. Cal. 2016)), the benefits of which Plaintiff has already obtained in this case by flipping franchisees under contract with Defendants to join its organization—notwithstanding PCJV USA, LLC's rebranding rights and obligations disclosed in FDDs; Plaintiff fails to

22

~~JOINTLY FILED CLAIMS TO BE TRIED~~SECOND AMENDED JOINTLY FILED CLAIMS, COUNTERCLAIMS, THIRD PARTY CLAIMS, AND AFFIRMATIVE DEFENSES TO BE TRIED
~~175468760.1~~

CASE NO. 2:24-CV-04546-SB(AGRX)

Formatted: No underline

Formatted: Font: Italic

1  acknowledge its legal and higher burden of proof to
2  establish an entitlement to monetary recovery, whether
3  legal damages (which Plaintiff is not pursuing as there is
4  no evidence it has a legal right to conduct a franchise
5  business in California or elsewhere in the United States) or
6  disgorgement—both of which stem from actual confusion
7  in the market not attributable to Plaintiff's own conduct as
8  proof of a defendant actually trading on the goodwill of
9  another resulting in either lost profits or unjust enrichment
10  (*Gracie v. Gracie*, 217 F.3d 1060, 1068 (9th Cir. 2000)); in
11  addition to there being no consumer survey evidence or
12  probative evidence of actual confusion not attributable to
13  Plaintiff's own conduct (let alone attributable to trademark
14  infringement), Defendants' exercise of bona fide good faith
15  belief not to waive (a) pre-existing partnership (whether
16  ownership or authorization) rights and obligations to use
17  and control the U.S. trademarks and to equally receive
18  service fees if any royalties were paid to the registrant
19  when (b) Plaintiff allegedly acquired U.S. Potato Corner
20  trademarks in the middle of franchise litigation between
21  joint venture partners, (c) over Defendants' objection, (d)
22  initiating this lawsuit in a conspiracy 3 days after the
23  settlement with Plaintiff's assignor to circumvent a state
24  court injunction rather than go to trial in state court, (e)
25  disregarding a tolling agreement to continue discussions
26  and not filing an action for declaratory relief if there was
27  an impasse to determine who has superior trademark rights,

28

---

23

JOINTLY FILED CLAIMS TO BE TRIED~~SECOND AMENDED JOINTLY FILED CLAIMS, COUNTERCLAIMS, THIRD PARTY CLAIMS, AND AFFIRMATIVE DEFENSES TO BE TRIED~~
175468760.1

CASE NO. 2:24-CV-04546-SB(AGRX)

1  (f) creating the risk of marketplace confusion by virtue of
2  its own conduct; and (e) suppressing evidence, including
3  properly served discovery ordered to be produced, does not
4  satisfy Plaintiff's legal burden of proof. *See Yuga Labs,*
5  *Inc. v. Ripps*, Case No. CV 22-4355-JFW(JEMx), 2023
6  WL 7089922, at *10 (C.D. Cal. Oct. 25, 2023) (while
7  totality of the circumstances are used to determine an
8  award of profits, "defendant's mental state is 'a highly
9  important consideration . . . .'").

10  ~~3.~~5.  Plaintiff's Supporting Evidence:  Defendants have
11  produced financials for the period in question May 31,
12  2024 through the present, and, given that the entirety of
13  their business is built of the confusion, we only need to
14  prove profits which can be disgorged. Thus, the financials
15  as well as Koren testimony and testimony of franchisees as
16  well as correspondence regarding costs of goods sold as
17  well as the testimony of the CFO of Shakey's will establish
18  damage. No expert is needed for arithmetic. To  the
19  contrary, it is Defendant who bears a heavier burden of
20  establishing what costs or expenses "actually contributed
21  to the sale of the infringing products." *Monster Energy Co.*
22  *v. Integrated Supply Network, LLC*, 533 F. Supp. 3d 928,
23  938 (C.D. Cal. 2021)

24  ~~4.    Defendants' Supporting Evidence:~~
25  6.    Defendant's Supporting Evidence: documents and
26  testimony including and related to (1) the parties' meeting
27  of the minds and partnership agreement to co-own Potato

28

24

~~JOINTLY FILED CLAIMS TO BE TRIED~~SECOND
AMENDED JOINTLY FILED CLAIMS,
COUNTERCLAIMS, THIRD PARTY CLAIMS, AND
AFFIRMATIVE DEFENSES TO BE TRIED
175468760.1          CASE NO. 2:24-CV-04546-SB(AGRX)

1  Corner in the United States, where Defendants promised to
2  contribute services and Plaintiff promised to vest IP rights
3  in the partnership as supported by written agreements and
4  verified pleadings; (2) the JVA and related agreements
5  vesting licensing and quality control in PCJV USA, LLC's
6  President, approval of franchise agreements, including as
7  disclosed in FDDs, in PCJV USA, LLC's Management,
8  and authority to manage Potato Corner in the United States
9  in PCJV USA, LLC's executive officers (not Cinco
10  Corporation); (3) absent a license agreement, PCJV USA,
11  LLC's use of the U.S. Potato Corner marks inured to PCJV
12  USA, LLC's benefit; (4) Defendants' continuing
13  authorization to use the U.S. Potato Corner trademarks
14  under a lifetime, 50-year, or non-terminable-at-will
15  license, including for the reasons stated herein; (5)
16  Defendants' objection to Plaintiff's announced plans to
17  acquire Cinco Corporation's assets and liabilities, but
18  representations to Defendants that they would be bound by
19  a settlement with Cinco resolving licensing issues; (6) the
20  parties' tolling agreement, including to continue
21  discussions after Defendants separately settled with Cinco
22  Corporation; (7) Plaintiff and Cinco Corporation's bad
23  faith conspiracy to initiate this lawsuit 3 days after the
24  settlement with Plaintiff's assignor to circumvent a state
25  court injunction rather than go to trial in state court or settle
26  with Defendants; (8) Plaintiff's own misconduct creating
27  the risk of marketplace confusion; (9) no consumer survey
28

CASE NO. 2:24-CV-04546-SB(AGRX)

1    evidence or evidence of marketplace confusion attributable
2    to trademark infringement or unfair competition that is the
3    subject of this case; (10) Plaintiff's suppression of
4    evidence, including properly served discovery ordered to
5    be produced; (11) no evidence of unjust enrichment,
6    including no net profits or net profits attributable to the
7    alleged infringement at issue, to disgorge; and (12) no
8    evidence regarding individual Defendants' responsibility

9    **2)    Claim 3: False Designation of Origin and Description of Fact**
10   **Against All Entity Defendants (15 U.S.C. § 1125):**

11   a.    Element No. 1: The Defendants used a designation, such as a
12   word, term, name, device, or a combination thereof, or a false
13   designation of origin:

14   1.    This element is disputed.

15   2.    Nature of Dispute: Legal and Factual

16   3.    Plaintiff's Position Statement: This is essentially the
17   federal version of our § 17200 claim in that, when looked
18   at in its entirety, fits squarely within what was intended by
19   15 USDCD 1125(a)(1)(A). By continuing to operate using
20   the same federal trademarks, menu layouts, and color
21   schemes, and promotes its new brand as having the 'same
22   taste' after having reverse engineered the flavorings and
23   then used that, plus the menu that is unchanged – same
24   colors, fonts, pictures, layout, even same product names –
25   and all of this is likely to cause consumer confusion
26   regarding the source or origin of the goods or services, as
27   customers may believe the new business is still affiliated
28

1      with or originates from the original brand. *See generally*

2      *Blue Mako Inc. v. Minidis*, No. CV 07-916 AHM (SHX),

3      2008 WL 11334205 (C.D. Cal. June 23, 2008) (applying

4      these principles to similar facts).

5    4.   <u>Defendants' Position Statement:</u> The legal issues set for

6      trial in the Proposed Final Pretrial Conference Order (Dkt.

7      No. 244), Memoranda of Contentions of Law and Fact

8      (Dkt. Nos. 197 and 199) and pleadings regard ownership

9      of and authorization to use the U.S. Potato Corner

10      trademarks; there is no "trade dress" issue in the pleadings

11      set for trial. Moreover, "same as" comparative advertising

12      of taste or fragrance is not unfair competition. *Smith v.*

13      *Chanel*, Inc., 402 F.2d 562, 563 (9th Cir. 1968). Further,

14      proffered "former location" confusion is not actionable in

15      California (*see* Bus. & Prof. Code § 16600) nor proves or

16      is probative of ordinary consumer confusion that is the

17      subject of the Lanham Act after the market settles from a

18      partnership divorce, especially after Plaintiff is the one

19      who changed the *status quo* and caused any confusion

20    5.   <u>Plaintiff's Supporting Evidence:</u> Photographs and

21      testimony from former franchisees, the COO of SPAVI,

22      Mr. Concepcion, as well as the testimony of Koren, and the

23      Franchise Agreements, FDDs, and leases, of PCJV over the

24      years.

25    6.   <u>Defendants' Supporting Evidence:</u> documents and

26      testimony including and related to (1) Defendants'

27      ownership of the U.S. Potato Corner trademarks, which

28

27

JOINTLY FILED CLAIMS TO BE TRIED SECOND
AMENDED JOINTLY FILED CLAIMS,
COUNTERCLAIMS, THIRD PARTY CLAIMS, AND
AFFIRMATIVE DEFENSES TO BE TRIED
175468760.1

CASE NO. 2:24-CV-04546-SB(AGRX)

1  merely are a symbol of PCJV USA, LLC's business and

2  restaurant and catering services; (2) Defendants'

3  authorization to use the U.S. Potato Corner trademarks; (3)

4  no consumer survey evidence; (4) no evidence of

5  actionable ordinary consumer confusion but just

6  speculation about market conditions after the market

7  stabilizes, let alone actionable confusion attributable to

8  alleged unfair competition framed by the Proposed Final

9  Pretrial Conference Order (Dkt. No. 244), Memoranda of

10  Contentions of Law and Fact (Dkt. Nos. 197 and 199) and

11  pleadings; (5) no marketplace confusion before Plaintiff

12  brought this action; (6) any marketplace confusion would

13  stem from Plaintiff's efforts to create it rather than Plaintiff

14  just filing an action for declaratory relief to resolve

15  ownership and authorization issues after it acquired

16  contested assets in the middle of franchise litigation

17  between joint venture partners; and (7) Plaintiff's

18  suppression of evidence, including Plaintiff's

19  communications with U.S. franchisees under contract with

20  PCJV USA, LLC that were timely requested and ordered

21  be produced.

22  b.  Element No. 2: The use was in interstate commerce.

23  i. This element is not disputed

24  c.  Element No. 3 : The use was in connection with goods or services.

25  1.  This element is disputed.

26  2.  Nature of Dispute: Legal and Factual

27

28

---

28

3. <u>Plaintiff's Position Statement:</u> Defendants' purported objection is one of fact no law. The registrations are for services, and the use of the marks was for services. If Defendants were using the Marks for some other purpose, they have more liability than previously known.

4. <u>Defendants' Position Statement:</u> The registered first use of the registered marks are for restaurant and catering services; the registered marks are merely a symbol of Potato Corner in the United States, which distributed goods and services; the case is not a "goods" case, including because the registrations predate any alleged unfair competition.

5. <u>Plaintiff's Supporting Evidence:</u> USPTO filings including Registrations and Assignments.

6. <u>Defendants' Supporting Evidence:</u> documents and testimony including and related to (1) U.S. Reg. No. 5900257: the word mark "Potato Corner"; (2) U.S. Reg. No. 6088456: "World's Best Flavored French Fries; and (3) U.S. Reg. No. 3760041: the Logo Mark.

d. <u>Element No. 4</u>: Defendants' designation or false designation is likely to cause confusion, mistake, or deception regarding either the affiliation, connection, or association of the defendant with another person, or the origin, sponsorship, or approval of the defendant's goods, services, or commercial activities by another person.

1. This element is disputed in part.

2. <u>Nature of Dispute:</u> Legal and Factual

3.   <u>Plaintiff's Legal Position</u>: The ultimate test" for unfair competition is exactly the same as for trademark infringement: "whether the public is likely to be deceived or confused." *Century 21 Real Est. Corp. v. Sandlin*, 846 F.2d 1175, 1178 (9th Cir. 1988)Regarding likelihood of confusion, which may be presumed, and the4 jury may be so instructed "[w]here,' as here, "a licensee persists in the unauthorized use of a licensor's trademark, courts have found that the continued use alone establishes a likelihood of consumer confusion." *Robert Trent Jones II, Inc. v. GFSI, Inc*., 537 F. Supp. 1061, 1065 (N.D. Cal. 2008) (citing and quoting *Sun Microsystems v. Microsoft Corp.,* 999 F.Supp. 1301, 1311 (N.D.Cal.1998) (citing *Paisa, Inc. v. N & G Auto, Inc.,* 928 F.Supp. 1009, 1012 n. 4 (C.D.Cal.1996); *Hollywood Athletic Club,* 938 F.Supp. at 614–15 (C.D.Cal.1996)). The Sixth Circuit's analysis in <u>Max Rack, Inc. v. Core Health & Fitness, LLC</u>, 40 F.4th 454, 464 (6th Cir. 2022) is instructive:

> "A separate body of law has developed for this distinct claim that a holdover licensee has continued to use a licensor's mark after their agreement expired. *See* 4 McCarthy, *supra*, § 25:31 (citing cases). In this context, courts have jettisoned the usual totality-of-the-circumstances test in favor of a more categorical rule: "proof of continued, unauthorized use of an original trademark by one whose license to use the trademark had been terminated is sufficient to establish 'likelihood of confusion.' " *U.S. Structures, Inc. v. J.P. Structures, Inc.*, 130 F.3d 1185, 1190 (6th Cir. 1997); *ITT Indus., Inc. v.*

*Wastecorp. Inc.*, 87 F. App'x 287, 293 (3d Cir. 2004); *Gorenstein Enters., Inc. v. Quality Care-USA, Inc.*, 874 F.2d 431, 435 (7th Cir. 1989); *Burger King Corp. v. Mason*, 710 F.2d 1480, 1492–93 (11th Cir. 1983); *Pro. Golfers Ass'n of Am. v. Bankers Life & Cas. Co.*, 514 F.2d 665, 670 (5th Cir. 1975); *L & L Wings, Inc. v. Marco-Destin, Inc.*, 676 F. Supp. 2d 179, 188 (S.D.N.Y. 2009). This rule makes good sense when a holdover licensee blatantly infringes the licensor's mark by using that mark in the same way as it did before the agreement expired. Without any need to tick through factors, it should be obvious that consumers will believe, for example, that a pizza restaurant remains affiliated with the "Little Caesars" chain when a terminated franchisee continues to operate the pizzeria as a Little Caesars. *See Little Caesar Enters., Inc. v. Miramar Quick Serv. Rest. Corp.*, 2020 WL 4516289, at *3 (6th Cir. 2020) (order)"

Although Plaintiff intends to, and will, adduce proof of the *Sleekcraft* factors, the presumption exists, and it is entitled to stand on this presumption alone. *See also, Brookfield Commc'ns, Inc. v. W. Coast Ent. Corp.*, 174 F.3d 1036, 1056 (9th Cir. 1999) ("In light of the virtual identity of marks, if they were used with identical products or services likelihood of confusion would follow as a matter of course"); *Park 'n Fly, Inc. v. Dollar Park & Fly, Inc*., 782 F.2d 1508, 1509 (9th Cir. 1986) (holding that when marks and services are identical and channels are the same, likelihood of confusion is assumed, even if the other factors weight against); *see also Blue Mako Inc. v. Minidis*, No. CV 07-916 AHM (SHX), 2008 WL 11334205 (C.D. Cal. June 23, 2008)

---

31

1            (applying these principles to similar facts).

2            4.   <u>Defendants' Position Statement:</u> Defendants are not going to argue no likelihood of confusion arising from continuous use of registered and unregistered trademarks if Defendants do not prevail on ownership or authorization. However, this is not a "trade dress" case. The legal issues set for trial in the Proposed Final Pretrial Conference Order (Dkt. No. 244), Memoranda of Contentions of Law and Fact (Dkt. Nos. 197 and 199) and pleadings regard ownership of and authorization to use the U.S. Potato Corner trademarks; there is no "trade dress" issue in the pleadings set for trial. Moreover, "same as" comparative advertising of taste or fragrance is not unfair competition. *Smith v. Chanel*, Inc., 402 F.2d 562, 563 (9th Cir. 1968). Further, proffered "former location" confusion is not actionable in California (*see* Bus. & Prof. Code § 16600) nor proves or is probative of ordinary consumer confusion that is the subject of the Lanham Act after the market settles from a partnership divorce, especially after Plaintiff is the one who changed the *status quo* and caused any confusion.

5.   <u>Plaintiff's Supporting Evidence:</u> Trial Exhibit 29 (May 31, 2024 Termination); photographs of various stores taken from May 31, 2025 through the present; Testimony of Koren; Plaintiff executives Gregorio (Plaiuntiff's CEO), Concepcion (Plaintiff's COO charged with US operations), Tan (Director responsible for international franchising);

32

JOINTLY FILED CLAIMS TO BE TRIEDSECOND
AMENDED JOINTLY FILED CLAIMS,
COUNTERCLAIMS, THIRD PARTY CLAIMS, AND
AFFIRMATIVE DEFENSES TO BE TRIED
175468760.1

CASE NO. 2:24-CV-04546-SB(AGRX)

1    investigator; Franchisees; Kim Lambert and Barry Kurtz;

2    in addition to  the following documents Amended Joint

3    Venture Agreement and Joint Venture Agreement; the

4    COO of SPAVI, Mr. Concepcion, the Franchise

5    Agreements, FDDs, and leases, of PCJV over the years.

6    6.    Defendants' Supporting Evidence:  documents and

7    testimony including and related to (1) Defendants'

8    ownership of the U.S. Potato Corner trademarks, which

9    merely are a symbol of PCJV USA, LLC's business and

10    restaurant and catering services; (2) Defendants'

11    authorization to use the U.S. Potato Corner trademarks; (3)

12    no consumer survey evidence; (4) no evidence of

13    actionable ordinary consumer confusion but just

14    speculation about market conditions after the market

15    stabilizes, let alone actionable confusion attributable to

16    alleged unfair competition framed by the Proposed Final

17    Pretrial Conference Order (Dkt. No. 244), Memoranda of

18    Contentions of Law and Fact (Dkt. Nos. 197 and 199) and

19    pleadings; (5) no marketplace confusion before Plaintiff

20    brought this action; (6) any marketplace confusion would

21    stem from Plaintiff's efforts to create it rather than Plaintiff

22    just filing an action for declaratory relief to resolve

23    ownership and authorization issues after it acquired

24    contested assets in the middle of franchise litigation

25    between joint venture partners; and (7) Plaintiff's

26    suppression of evidence, including Plaintiff's

27    communications with U.S. franchisees under contract with

28

1    PCJV USA, LLC that were timely requested and ordered

2    be produced

3    e.    Element No. 5: Damage caused by false designation.

4        1.    This element is disputed.

5        2.    Nature of Dispute: Legal and factual

6        3.    Plaintiff's Legal Position: The standard to be followed is

7            set forth in 15 USC § 1117 which only requires this Court's

8            approval in equity to proceed with money damages. The

9            Courts have, contrary to Defendant's apparent position,

10           removed the requirement of willfulness to obtain

11           disgorgement., *Romag Fasteners, Inc. v. Fossil, Inc.*, ——

12           U.S. ——, 140 S. Ct. 1492, 1495-97, 206 L.Ed.2d 672

13           (2020) (holding willfulness is not a precondition to

14           disgorgement of profits under the Lanham Act). (Dkt. No.

15           594.)  Defendants ignore the difference between normal

16           infringement and this case, the holdover licensee, where

17           the standard for likelihood of confusion is lowered, and

18           even sometimes presumed, and irreparable harm is also

19           presumed. The Lanham Act allows Defendants to raise the

20           other arguments to rebut the presumption of irreparable

21           harm, but the standard as applied here allows for

22           disgorgement.

23       4.    Defendants' Position Statement: Likelihood of confusion,

24           when coupled with likely irreparable harm, is the standard

25           for injunctive relief, the primary remedy under the Lanham

26           Act (*National Grange of the Order of Patrons of*

27           *Husbandry v. Cal. State Grange*, 182 F.Supp. 3d 1065,

28

1071 (E.D. Cal. 2016)), the benefits of which Plaintiff has already obtained in this case by flipping franchisees under contract with Defendants to join its organization—notwithstanding PCJV USA, LLC's rebranding rights and obligations disclosed in FDDs; Plaintiff fails to acknowledge its legal and higher burden of proof to establish an entitlement to monetary recovery, whether legal damages (which Plaintiff is not pursuing as there is no evidence it has a legal right to conduct a franchise business in California or elsewhere in the United States) or disgorgement—both of which stem from actual confusion in the market not attributable to Plaintiff's own conduct as proof of a defendant actually trading on the goodwill of another resulting in either lost profits or unjust enrichment (*Gracie v. Gracie*, 217 F.3d 1060, 1068 (9th Cir. 2000)); in addition to there being no consumer survey evidence or probative evidence of actual confusion not attributable to Plaintiff's own conduct (let alone attributable to trademark infringement), Defendants' exercise of bona fide good faith belief not to waive (a) pre-existing partnership (whether ownership or authorization) rights and obligations to use and control the U.S. trademarks and to equally receive service fees if any royalties were paid to the registrant when (b) Plaintiff allegedly acquired U.S. Potato Corner trademarks in the middle of franchise litigation between joint venture partners, (c) over Defendants' objection, (d) initiating this lawsuit in a conspiracy 3 days after the

JOINTLY FILED CLAIMS TO BE TRIEDSECOND AMENDED JOINTLY FILED CLAIMS, COUNTERCLAIMS, THIRD PARTY CLAIMS, AND AFFIRMATIVE DEFENSES TO BE TRIED 175468760.1

CASE NO. 2:24-CV-04546-SB(AGRX)

1    settlement with Plaintiff's assignor to circumvent a state

2    court injunction rather than go to trial in state court, (e)

3    disregarding a tolling agreement to continue discussions

4    and not filing an action for declaratory relief if there was

5    an impasse to determine who has superior trademark rights,

6    (f) creating the risk of marketplace confusion by virtue of

7    its own conduct; and (e) suppressing evidence, including

8    properly served discovery ordered to be produced, does not

9    satisfy Plaintiff's legal burden of proof. *See Yuga Labs,*

10    *Inc. v. Ripps*, Case No. CV 22-4355-JFW(JEMx), 2023

11    WL 7089922, at *10 (C.D. Cal. Oct. 25, 2023) (while

12    totality of the circumstances are used to determine an

13    award of profits, "defendant's mental state is 'a highly

14    important consideration . . . .'").

15    5.    Plaintiff's Supporting Evidence: Defendants have

16    produced financials for the period in question May 31,

17    2024 through the present, and, given that the entirety off

18    their  business is built off the confusion, we only need to

19    prove profits which can be disgorged. Thus, the financials

20    as well as Koren testimony and testimony of franchisees as

21    well; as correspondence regarding costs of  goods sold as

22    well as the testimony of the CFO of Shakley's will

23    establish damage. No expert is needed for arithmetic. To

24    the contrary, it is Defendant who bears a heavier burden of

25    establishing what costs or expenses "actually contributed

26    to the sale of the infringing products." *Monster Energy Co.*

27

28

1    *v. Integrated Supply Network, LLC*, 533 F. Supp. 3d 928,

2    938 (C.D. Cal. 2021)

3    6.    Defendant's Supporting Evidence: documents and

4    testimony including and related to (1) the parties' meeting

5    of the minds and partnership agreement to co-own Potato

6    Corner in the United States, where Defendants promised to

7    contribute services and Plaintiff promised to vest IP rights

8    in the partnership as supported by written agreements and

9    verified pleadings; (2) the JVA and related agreements

10   vesting licensing and quality control in PCJV USA, LLC's

11   President, approval of franchise agreements, including as

12   disclosed in FDDs, in PCJV USA, LLC's Management,

13   and authority to manage Potato Corner in the United States

14   in PCJV USA, LLC's executive officers (not Cinco

15   Corporation); (3) absent a license agreement, PCJV USA,

16   LLC's use of the U.S. Potato Corner marks inured to PCJV

17   USA, LLC's benefit; (4) Defendants' continuing

18   authorization to use the U.S. Potato Corner trademarks

19   under a lifetime, 50-year, or non-terminable-at-will

20   license, including for the reasons stated herein; (5)

21   Defendants' objection to Plaintiff's announced plans to

22   acquire Cinco Corporation's assets and liabilities, but

23   representations to Defendants that they would be bound by

24   a settlement with Cinco resolving licensing issues; (6) the

25   parties' tolling agreement, including to continue

26   discussions after Defendants separately settled with Cinco

27   Corporation; (7) Plaintiff and Cinco Corporation's bad

28

37

JOINTLY FILED CLAIMS TO BE TRIEDSECOND
AMENDED JOINTLY FILED CLAIMS,
COUNTERCLAIMS, THIRD PARTY CLAIMS, AND
AFFIRMATIVE DEFENSES TO BE TRIED
175468760.1

CASE NO. 2:24-CV-04546-SB(AGRX)

faith conspiracy to initiate this lawsuit 3 days after the settlement with Plaintiff's assignor to circumvent a state court injunction rather than go to trial in state court or settle with Defendants; (8) Plaintiff's own misconduct creating the risk of marketplace confusion; (9) no consumer survey evidence or evidence of marketplace confusion attributable to trademark infringement or unfair competition that is the subject of this case; (10) Plaintiff's suppression of evidence, including properly served discovery ordered to be produced; (11) no evidence of unjust enrichment, including no net profits or net profits attributable to the alleged infringement at issue, to disgorge; and (12) no evidence regarding individual Defendants' responsibility

3) **Claim 4: Contributory Trademark Infringement Against All Defendants (Against Guy Koren, PCJV USA, LL, PCI Trading, LLC, Potato Corner LA Group, LLC; GK Capital, LLC or NKM Capital Group, LLC)**

  a.   Element No. 1: inducement of any Defendant to infringe one of the Marks (affirmative steps or actions taken to encourage infringement, exercising control over means oof infringement, offering tools to assist in infringement, instructing how to infringe).

    1.   This element is disputed.

    2.   Nature of Dispute: Legal and Factual

    3.   Plaintiff's Position Statement: it is assumed that the primary dispute by Defendants here will be as to the underlying question of infringement (ownership, license,

CASE NO. 2:24-CV-04546-SB(AGRX)

1   etc.). But if it is true that Plaintiff owned the Marks, and
2   had exclusive right to control them and Defendants lost
3   their right on May 31, 2024, the question is fairly on the
4   table whether (1) PCJV, the former licensees of the brand,
5   engaged in post termination contribution or inducement to
6   its sublicensees whose rights had also been terminated by
7   giving them aid and comfort (and collecting money from
8   them) after termination,, or (2) the supply chain affiliate
9   PCI Trading's sales of infringing cups etc. was constituted
10  contribution or inducement, or (3) whether Koren, the
11  owner or operator oof them all was also responsible for
12  contribution or inducement. 115 USC 1114; *Fonovisa, Inc.*
13  *v. Cherry Auction, Inc*., 76 F.3d 259, 264–65 (9th Cir.
14  1996) (applied to host of swap meets when host know
15  infringement was occurring); *citing Inwood Lab'ys, Inc. v.*
16  *Ives Lab'ys, Inc*., 456 U.S. 844, 854 (1982); *see Inwood*
17  *Lab'ys, Inc*., 456 U.S. at 844, 854 (1982) (explaining that
18  when a party "suppl[ies]] its product to one whom it knows
19  or has reason to know is engaging in trademark
20  infringement, the manufacturer or distributor is
21  contributorily responsible for any harm done as a result of
22  the deceit").
23      4.   Defendants' Position Statement: To establish liability for
24           contributory infringement, Plaintiff bears the burden of
25           proving the defendant had intent to cause direct
26           infringement or prior knowledge of direct infringement.
27           *See Perfect 10, Inc. v. Visa Intern. Service Ass'n,* 494 F.3d
28

JOINTLY FILED CLAIMS TO BE TRIED~~SECOND~~ AMENDED JOINTLY FILED CLAIMS, COUNTERCLAIMS, THIRD PARTY CLAIMS, AND AFFIRMATIVE DEFENSES TO BE TRIED 175468760.1      CASE NO. 2:24-CV-04546-SB(AGRX)

788, 807 (9th Cir. 2007). That is not the same thing as having knowledge of a bona fide dispute over trademark ownership or authorization to use a trademark. Similarly, officer or director liability includes a knowledge requirement to establish liability. *SinCo Technologies Pte Ltd. v. SinCo Electronics,* Case No. 17-cv-05517-EMC, 2018 WL 10638468, at *1 (N.D. Cal. Jan. 5, 2018).

5.   Plaintiff's Supporting Evidence: Testimony and statements of Koren, franchisees, and SPAVI executives after termination; correspondence with franchisees by SPAVI; Franchise agreements and FDDs.

6.   Defendants' Supporting Evidence: documents and testimony including and related to (1) the evidentiary record establishing a bona fide trademark dispute over ownership and authorization to use the U.S. Potato Corner trademarks; (2) the alleged contributory infringing Defendants did not have the intent to cause infringement or knowledge that direct infringement was occurring; (3) the alleged contributory infringing Defendants are not similarly situated, including because some our downstream users (who contributing nothing upstream) and one is simply a supplier of publicly available materials; (4) Mr. Koren, as an officer or member of Defendant entities, also had no intent to confuse consumers, had no intent to trade off the goodwill he did not own or have authorization to use, and had good faith reasons to believe that trademark infringement was not occurring.

b.    Element No. 2: Material contribution

    1.    This element is disputed.

    2.    Nature of Dispute: Factual

    3.    Plaintiff's Supporting Evidence: testimony of Koren, his staff, franchisees, and their communications

    4.    Defendants' Supporting Evidence: documents and testimony including and related to whether the contribution of each Defendant was material to the alleged infringement and was provided with the requisite knowledge.

c.    Element No. 3: Injury to Plaintiff.

    1.    This element is disputed

    2.    Nature of Dispute: Legal and Factual

    3.    Plaintiff's Position Statement: The standard to be followed is set forth in 15 USC 1117 which only requires this Court's approval in equity to proceed with money damages. The Courts have contrary to Defendant's apparent position removed the requirement of willfulness to obtain disgorgement., *Romag Fasteners, Inc. v. Fossil, Inc.*, ─── U.S. ───, 140 S. Ct. 1492, 1495-97, 206 L.Ed.2d 672 (2020) (holding willfulness is not a precondition to disgorgement of profits under the Lanham Act). (Dkt. No. 594.) Defendants ignore the difference between normal infringement and this case, the holdover licensee, where the standard for likelihood of confusion is lowered, and even sometimes presumed, and irreparable harm is also presumed. The Lanham Act allows Defendants to raise the other arguments to rebut the presumption of irreparable

JOINTLY FILED CLAIMS TO BE TRIEDSECOND
AMENDED JOINTLY FILED CLAIMS,
COUNTERCLAIMS, THIRD PARTY CLAIMS, AND
AFFIRMATIVE DEFENSES TO BE TRIED
175468760.1

CASE NO. 2:24-CV-04546-SB(AGRX)

1    harm, but the standard as applied here allows for

2    disgorgement.

3    4.    PCJV USA Parties' Position Statement: Defendants

4    incorporate their positions legal positions above regarding

5    liability and damages for direct infringement and liability

6    for contributory infringement. In addition, damages for

7    contributory infringement should not be awarded upstream

8    5.    Plaintiff's Supporting Evidence: Defendants have

9    produced financials for the period in question May 31,

10    2024 through the present, and, given that the entirety of

11    their  business is built off the confusion, we only need to

12    prove profits which can be disgorged. Thus, the financials

13    as well as Koren testimony and testimony of franchisees as

14    well; as correspondence regarding costs of  goods sold as

15    well  as  the  testimony  of  the  CFO  of  Shakley's  will

16    establish damage. No expert is needed for arithmetic. To

17    the contrary, it is Defendant who bears a heavier burden of

18    establishing what costs or expenses "actually contributed

19    to the sale of the infringing products." *Monster Energy Co.*

20    *v. Integrated Supply Network, LLC*, 533 F. Supp. 3d 928,

21    938 (C.D. Cal. 2021)

22    6.    Defendants' Supporting Evidence: Defendants incorporate

23    their above record.

24    4)    **Claim 5: Contributory False Designation of Origin Against Guy**

25    **Koren, PCJV USA, LL, PCI Trading, LLC, Potato Corner LA**

26    **Group, LLC; GK Capital,  LLC or NKM Capital Group, LLC**

27

28

---

42

a. <u>Element No. 1:</u> inducement of any Defendant to make use a false designation, such as a word, term, name, device, or a combination thereof, or a false designation of origin (affirmative steps or actions taken to encourage infringement, exercising control over means oof infringement, offering tools to assist in infringement, instructing how to infringe).

ii. This element is disputed.

iii. Nature of Dispute: Legal and Factual

iv. <u>Plaintiff's Position Statement:</u> it is assumed that the primary dispute by Defendants here will be as to the underlying question of infringement (ownership, license, etc.). But if it is true that Plaintiff owned the Marks, and had exclusive right to control them and Defendants lost their right on May 31, 2024, the question is fairly on the table whether (1) PCJV, the former licensees of the brand, engaged in post termination contribution or inducement to its sublicensees whose rights had also been terminated by giving them aid and comfort (and collecting money from them) after termination,, or (2) the supply chain affiliate PCI Trading's sales of infringing cups etc. was constituted contribution or inducement, or (3) whether Koren, the owner or operator oof them all was also responsible for contribution or inducement. 115 USC 1114; *Fonovisa, Inc. v. Cherry Auction, Inc*., 76 F.3d 259, 264–65 (9th Cir. 1996) (applied to host of swap meets when host know infringement was occurring); *citing Inwood Lab'ys, Inc. v. Ives Lab'ys, Inc*., 456 U.S. 844, 854 (1982); *see Inwood Lab'ys, Inc*., 456 U.S. at 844, 854 (1982) (explaining

43

JOINTLY FILED CLAIMS TO BE TRIEDSECOND AMENDED JOINTLY FILED CLAIMS, COUNTERCLAIMS, THIRD PARTY CLAIMS, AND AFFIRMATIVE DEFENSES TO BE TRIED 175468760.1                    CASE NO. 2:24-CV-04546-SB(AGRX)

1    that when a party "suppl[ies]] its product to one whom it

2    knows or has reason to know is engaging in trademark

3    infringement, the manufacturer or distributor is contributorily

4    responsible for any harm done as a result of the deceit").

5    v.    Defendants' Position Statement: To establish liability for

6    contributory infringement, Plaintiff bears the burden of

7    proving the defendant had intent to cause direct infringement

8    or prior knowledge of direct infringement. *See Perfect 10, Inc.*

9    *v. Visa Intern. Service Ass'n*, 494 F.3d 788, 807 (9th Cir.

10   2007). That is not the same thing as having knowledge of a

11   *bona fide* dispute over trademark ownership or authorization to

12   use a trademark. Similarly, officer or director liability includes

13   a knowledge requirement to establish liability. *SinCo*

14   *Technologies Pte Ltd. v. SinCo Electronics*, Case No. 17-cv-

15   05517-EMC, 2018 WL 10638468, at *1 (N.D. Cal. Jan. 5,

16   2018).

17   vi.    Plaintiff's Supporting Evidence: Testimony and

18   statements of Koren, franchisees, and SPAVI executives after

19   termination; correspondence with franchisees by SPAVI;

20   Franchise agreements and FDDs.

21   vii.    Defendants' Supporting Evidence: documents and

22   testimony including and related to (1) the evidentiary record

23   establishing a bona fide trademark dispute over ownership and

24   authorization to use the U.S. Potato Corner trademarks; (2) the

25   alleged contributory infringing Defendants did not have the

26   intent to cause infringement or knowledge that direct

27   infringement was occurring; (3) the alleged contributory

28

44

JOINTLY FILED CLAIMS TO BE TRIEDSECOND          CASE NO. 2:24-CV-04546-SB(AGRX)
AMENDED JOINTLY FILED CLAIMS,
COUNTERCLAIMS, THIRD PARTY CLAIMS, AND
AFFIRMATIVE DEFENSES TO BE TRIED
175468760.1

Formatted: Font: 14 pt

1            infringing Defendants are not similarly situated, including

2            because some our downstream users (who contributing nothing

3            upstream) and one is simply a supplier of publicly available

4            materials; (4) Mr. Koren, as an officer or member of

5            Defendant entities, also had no intent to confuse consumers,

6            had no intent to trade off the goodwill he did not own or have

7            authorization to use, and had good faith reasons to believe that

8            trademark infringement was not occurring.

9      b. <u>Element No. 2:</u> Material contribution

10           i. This element is disputed.

11           ii.    Nature of Dispute: Factual

12           iii.    <u>Plaintiff's Supporting Evidence:</u> testimony of Koren, his

13           staff, franchisees, and their communications

14           iv.    <u>Defendants' Supporting Evidence:</u> documents and

15           testimony including and related to whether the contribution of

16           each Defendant was material to the alleged infringement and

17           was provided with the requisite knowledge.

18      c. <u>Element No. 3:</u> Injury to Plaintiff.

19           i. This element is disputed.

20           ii.    Nature of Dispute: Legal and factual

21           ii.  <u>Plaintiff's Position Statement:</u> The standard to be followed is

22           set forth in 15 USC 1117 which only requires this Court's

23           approval in  equity to proceed with money damages. The

24           Courts have contrary to Defendant's apparent position

25           removed the requirement of willfulness to obtain

26           disgorgement., *Romag Fasteners, Inc. v. Fossil, Inc.*, ⸺ U.S.

27           ⸺, 140 S. Ct. 1492, 1495-97, 206 L.Ed.2d 672

28

~~JOINTLY FILED CLAIMS TO BE TRIED~~SECOND
AMENDED JOINTLY FILED CLAIMS,
COUNTERCLAIMS, THIRD PARTY CLAIMS, AND
AFFIRMATIVE DEFENSES TO BE TRIED
~~175468760.1~~               CASE NO. 2:24-CV-04546-SB(AGRX)

1    (2020) (holding willfulness is not a precondition to

2    disgorgement of profits under the Lanham Act). (Dkt. No.

3    594.)  Defendants ignore the difference between normal

4    infringement and this case, the holdover licensee,  where the

5    standard for likelihood of confusion is lowered, and even

6    sometimes presumed, and irreparable harm is also presumed.

7    The Lanham Act allows Defendants to raise the other

8    arguments to rebut the presumption of irreparable harm, but

9    the standard as applied here allows for disgorgement,

10    iii.    PCJV USA Parties' Position Statement: Defendants

11    incorporate their legal positions above regarding liability and

12    damages for direct infringement and liability for contributory

13    infringement. In addition, damages for contributory

14    infringement should not be awarded upstream.

**Formatted:** Font: 14 pt

15    iv.    Plaintiff's Supporting Evidence: Defendants have

16    produced financials for the period in question May 31, 2024

17    through the present, and, given that the entirety off their

18    business is built off the confusion, we only need to prove

19    profits which can be disgorged. Thus, the financials as well as

20    Koren testimony and testimony of franchisees as well; as

21    correspondence regarding costs of  goods sold as well as the

22    testimony of the CFO of Shakley's will establish damage. No

23    expert is needed for arithmetic. To  the contrary, it is

24    Defendant who bears a heavier burden of establishing what

25    costs or expenses "actually contributed to the sale of the

26    infringing products." *Monster Energy Co. v. Integrated*

27    *Supply Network, LLC*, 533 F. Supp. 3d 928, 938 (C.D. Cal.

28

1    2021)

2        iii. <u>Defendants' Supporting Evidence:</u> Defendants incorporate

3            their above record.

4    **2) Claim 6: Common Law Trademark Infringement Against All**

5    **Defendants (Against Guy Koren, PCJV USA, LL, PCI Trading, LLC,**

6    **Potato Corner LA  Group, LLC; GK Capital,  LLC or NKM Capital**

7    **Group, LLC).**

8        a. <u>Element No. 1:</u> the Word Mark, Slogan Mark, and/or the Logo

9            Mark (all collectively, the "Marks") are valid and protectible

10           trademarks:

11               i. This element is undisputed

12       b. <u>Element No. 2:</u> Plaintiff owns the Word Mark, Slogan Mark, and/or

13           the Logo Mark

14               i. This element is disputed.

15           ii.    <u>Nature of Dispute:</u> Factual and Legal.

16           iii.    <u>Plaintiff's Legal Position:</u> Defendants do not dispute that

17               the registrations for all three Marks (Trial Exhibit Nos. 1, 3,

18               and 5) identify Cinco as the registrant and the first to use each

19               of the three Marks, nor do Defendants dispute that the Deeds

20               of Assignment attached to the notices filed with the USPTO

21               (Trial Exhibit Nos. 4 and 6) confirm that, unequivocally  and

22               without exception, the entirety of these Marks were sold and

23               assigned to Plaintiff, along with all the goodwill arising out of

24               or associated with the Marks. Defendants also do not dispute

25               the testimony of Seller (Cinco) and Buyer (SPAVI) that the

26               Deeds are accurate in every way, that the sale and assignments

27               were comprehensive, without carve outs, and fully

28

1           consummated. Instead, Defendants take internally inconsistent

2           positions that are contradicted by various legal doctrine,

3           including the ones discussed *supra*: Licensee Estoppel, the

4           Lanham Act provisions rendering Defendants' positions

5           contrary to federal law, Law of the Case, that the Authorities

6           cited by Defendants do not support their position, including

7           *Sengoku*, the Merger Doctrine, and Defendants' standing.

8         ii. <u>Defendants' Position Statement:</u> Defendants incorporate their

9           legal positions above

10        iii. <u>Plaintiff's Supporting Evidence:</u> Notarized Deeds signed by

11           seller and buyer; USPTO filings including Registrations and

12           Assignments, testimony of Gregorio (Plaintiff's CEO),

13           Magsaysay (Cinco's CEO), Koren, Ybanez (Plaintiff's General

14           Counsel), FDDs, Franchise Agreements.

15        iv. <u>Defendants' Supporting Evidence:</u> Defendants incorporate their

16           above factual positions.

17      c. <u>Element No. 3:</u> Defendants used Word Mark, Slogan Mark, and/or the

18        Logo Mark in interstate commerce after May 31, 2024:

19         i.  This element is undisputed.

20      d. <u>Element No. 4:</u> Defendants' use of the Word Mark, Slogan Mark,

21        and/or the Logo Mark in interstate commerce after May 31, 2024, was

22        without the consent of Plaintiff and in a manner likely to cause

23        confusion among ordinary consumers as to the source, sponsorship,

24        affiliation, or approval of the services.

25         ii.  This element is disputed.

26        iii. <u>Nature of Dispute:</u> Legal and Factual

27        iv. <u>Plaintiff's Legal Position:</u> As for absence of consent, given the

28

<center>48</center>

1    absence of any ownership  rights, Defendants must locate

2    some rights as a licensee of the owner (SPAVI). Defendants

3    offer two documents proffered as agreements that bind Cinco

4    to a perpetual license. Neither work as a matter of law. First,

5    they offer the unsigned October 10, 2010, document

6    containing terms for a Master License Agreement (Trial

7    Exhibit No. 11), which this Court (and the Ninth Circuit) have

8    reviewed. Both have interpreted it as a matter of law,

9    concluding that it is an unsigned draft (as Koren's testimony

10   has confirmed) and illusory because the licensor is given no

11   consideration for this purported agreement. The unsigned

12   document cannot, as a matter of law, have bound Cinco, even

13   through implied contract law, because Cinco did not do

14   anything in furtherance of that document to imply its assent.

15   Moreover, multiple times after October 10, 2010, documents

16   were signed stating that Cinco would be expecting a 30%

17   royalty recovery. Second, Plaintiffs point to § 3(g) of an

18   Amended Joint Venture Agreement (and its predecessor the

19   Joint Venture Agreement) – Trial Exhibit Nos. 8 and 9 – which

20   this Court has already interpreted to constitute an agreement to

21   agree, in the future, with Cinco on a license agreement. As the

22   Ninth Circuit said in affirming this conclusion, "the AJVA

23   contained an agreement to enter a *future* Master License

24   Agreement, not a "perpetual license" like PCJV claims."

25   *Shakeys Pizza Asia Ventures, Inc. v. PCJV USA, LLC*, No. 24-

26   7084, 2025 WL 1431270, at *1 (9th Cir. May 19, 2025) (citing

27   *First Nat'l Mortg. Co. v. Fed. Realty Inv. Tr.*, 631 F.3d 1058,

28

JOINTLY FILED CLAIMS TO BE TRIEDSECOND
AMENDED JOINTLY FILED CLAIMS,
COUNTERCLAIMS, THIRD PARTY CLAIMS, AND
AFFIRMATIVE DEFENSES TO BE TRIED
175468760.1

CASE NO. 2:24-CV-04546-SB(AGRX)

1   1065 (9th Cir. 2011) ("[A]n 'agreement to agree,' without
2   more, is not a binding contract."). This interpretation of the
3   AJVA and  JVA is a legal conclusion, which, as affirmed  by
4   the Ninth Circuit are legal conclusions, and, as such,  these are
5   pure conclusions of law, which means: **this Court's**
6   **conclusion that § 3(g) of the JVA and AJVA are**
7   **agreements to agree and do not  bind Cinco  to a**
8   **"perpetual license" are law of the  case and cannot be**
9   **disturbed or challenged at trial**. This theory based on
10  interpretation of a contract has been considered and rejected by
11  this Court and the Ninth Circuit in this case, and because it  is
12  a "pure issue[] of law, however, [it  is] binding" on Defendants
13  under law of the case. *Ranchers Cattlemen Action Legal Fund*
14  *United Stockgrowers of Am. v. U.S. Dep't of Agr*., 499 F.3d
15  1108, 1114 (9th Cir. 2007); s*ee, e.g. Arizona v. California*, 460
16  U.S. 605, 618 (1983) ((citing the rule as being "when a court
17  decides upon a rule of law, that decision should continue to
18  govern the same issues in subsequent stages in the same
19  case"). Defendants now trot out other theories such the fact
20  that the JVA and prior Operating Agreement are still
21  somewhat live under a theory of partial integration, however,
22  the following point prevails over each of these contortions:
23  Defendants can point to no agreement or document,  or acct, or
24  statement, binding Cinco to a perpetual, irrevocable, royalty
25  free licensee of its Marks. As such, in the absence of any
26  written  agreement, or documentation of any license terms, the
27  sole license that existed as of May 31, 2024, was implied and

28

1   terminable at will  *See Pogrebnoy v. Russian Newspaper*
2   *Distribution, Inc.*, 289 F. Supp. 3d 1061, 1070 (C.D. Cal.
3   2017), *aff'd*, 742 F. App'x 291 (9th Cir. 2018) ("[A]n implied
4   license, like any other contract, is terminable at the will of
5   either party if it is not for a specified term."). One final flaw
6   exists in the attempt to bind Cinco to the AJVA, and that is
7   one of issue preclusion in favor of Plaintiffs. As evidenced by
8   Plaintiff's own Third Amended Complaint (verified) in the
9   Prior Governance Action, the entire pleading is based on the
10  theory that -- and it sought judgment concluding that -- Cinco
11  is an alter ego of the entity that was a 60% member of PCJV.
12  (*See* Trial Exhibit No. 1421 p. 7:3-14.) Such allegations,
13  having been dismissed, with  prejudice, by  Koren, re4nder
14  thee accusations extinguished, and, as such, Defendants are
15  precluded from alleging them ever again.
16  Regarding likelihood of confusion,  which may be presumed,
17  and the jury  may  be so  instructed "[w]here,' as here, "a
18  licensee persists in the unauthorized use of a licensor's
19  trademark, courts have found that the continued use alone
20  establishes a likelihood of consumer confusion." *Robert Trent*
21  *Jones II, Inc. v. GFSI, Inc*., 537 F. Supp. 2d 1061, 1065 (N.D.
22  Cal. 2008) (citing and quoting *Sun Microsystems v. Microsoft*
23  *Corp.,* 999 F.Supp. 1301, 1311 (N.D.Cal.1998) (citing *Paisa,*
24  *Inc. v. N & G Auto, Inc.,* 928 F.Supp. 1009, 1012 n. 4
25  (C.D.Cal.1996); *Hollywood Athletic Club,* 938 F.Supp. at 614–
26  15 (C.D.Cal.1996)). The Sixth Circuit's analysis in <u>Max Rack,</u>
27  <u>Inc. v. Core Health & Fitness, LLC</u>, 40 F.4th 454, 464 (6th Cir.
28

---

~~JOINTLY FILED CLAIMS TO BE TRIED~~SECOND
AMENDED JOINTLY FILED CLAIMS,
COUNTERCLAIMS, THIRD PARTY CLAIMS, AND
AFFIRMATIVE DEFENSES TO BE TRIED
~~175468760.1~~                                    CASE NO. 2:24-CV-04546-SB(AGRX)

1    2022) is instructive:

2

3         "A separate body of law has developed for this
4         distinct claim that a holdover licensee has
          continued to use a licensor's mark after their
5         agreement expired. *See* 4 McCarthy, *supra*, §
          25:31 (citing cases). In this context, courts have
6         jettisoned the usual totality-of-the-circumstances
          test in favor of a more categorical rule: "proof of
7         continued, unauthorized use of an original
8         trademark by one whose license to use the
          trademark had been terminated is sufficient to
9         establish 'likelihood of confusion.' " *U.S.
10        Structures, Inc. v. J.P. Structures, Inc.*, 130 F.3d
          1185, 1190 (6th Cir. 1997); *ITT Indus., Inc. v.
11        Wastecorp. Inc.*, 87 F. App'x 287, 293 (3d Cir.
12        2004); *Gorenstein Enters., Inc. v. Quality Care-
          USA, Inc.*, 874 F.2d 431, 435 (7th Cir. 1989);
13        *Burger King Corp. v. Mason*, 710 F.2d 1480,
14        1492–93 (11th Cir. 1983); *Pro. Golfers Ass'n of
          Am. v. Bankers Life & Cas. Co.*, 514 F.2d 665, 670
15        (5th Cir. 1975); *L & L Wings, Inc. v. Marco-
16        Destin, Inc.*, 676 F. Supp. 2d 179, 188 (S.D.N.Y.
17        2009). This rule makes good sense when a
          holdover licensee blatantly infringes the licensor's
18        mark by using that mark in the same way as it did
19        before the agreement expired. Without any need to
          tick through factors, it should be obvious that
20        consumers will believe, for example, that a pizza
21        restaurant remains affiliated with the "Little
          Caesars" chain when a terminated franchisee
22        continues to operate the pizzeria as a Little
23        Caesars. *See Little Caesar Enters., Inc. v. Miramar
          Quick Serv. Rest. Corp.*, 2020 WL 4516289, at *3
24        (6th Cir. 2020) (order)"

25

26        Although Plaintiff intends to, and will, adduce proof of the

27    *Sleekcraft* factors, the presumption exists, and it is entitled to

28
                                        52

1    stand on this presumption alone.

2         v.   Defendants' Position Statement: Defendants incorporate all

3              their above legal positions.

4         vi.  Plaintiff's Supporting Evidence: Trial Exhibit 29 (May 31,

5              2024 Termination); photographs of various stores taken from

6              May 31, 2025 through the present; Testimony of Koren;

7              Plaintiff executives Gregorio (Plaiuntiff's CEO), Concepcion

8              (Plaintiff's COO charged with US operations), Tan (Director

9              responsible for international franchising); investigator;

10             Franchisees; Kim Lambert and Barry Kurtz; in addition to the

11             following documents Amended Joint Venture Agreement and

12             Joint Venture Agreement.

13        vii.    Defendants' Supporting Evidence: Defendants

14             incorporate their above factual positions.

15   3)  **Claim 9 (from FAC, Dkt. 65): Quantum Meruit Against PCJV**

16      a. Element No. 1: That Defendant requested, by words or conduct, that

17         Plaintiff provide a license to use the Potato Corner Intellectual

18         Property for the benefit of Defendant PCJV;

19         i.   This element is disputed.

20         ii.  Nature of Dispute: Legal and Factual

21         iii. Plaintiff's Position Statement: Defendants' issues are factual and

22             not legal.

23         iv.  Defendants' Position Statement: *Quantum meruit* is an implied

24             contract (or quasi-contract) claim stemming from requested

25             services "under which a plaintiff who has rendered services

26             benefiting the defendant may recover the reasonable value of

27             those services when necessary to prevent unjust enrichment of

28

CASE NO. 2:24-CV-04546-SB(AGRX)

1  the defendant." *In re De Laurentiis Ent. Grp. Inc*., 963 F.2d
2  1269, 1272 (9th Cir. 1992). Plaintiff will be unable to establish
3  liability for *quantum meruit* for three reasons:  Defendants (1)
4  "requested" no (2) "services" from Plaintiff for which Plaintiff
5  had a (3) "reasonable expectation" of payment. *See McLeod v.*
6  *Zero Gravity Mgmt.,* 2:22-CV-01547-FWS-AGR, 2024 WL
7  3304527, at *10 (C.D. Cal. Jan. 8, 2024); *see also Corsini v.*
8  *Canyon Equity, LLC,* C-10-2061-JL, 2011 WL13247447, at *6
9  (N.D. Cal, May 23, 2011). Plaintiff's quantum meruit cause of
10  action does not contain critical elements of the cause of action.
11  *See* CACI No. 317.

12      v.  <u>Plaintiff's Supporting Evidence:</u> Course of Dealings between
13          Defendants and SPAVI,. Specifically, Defendants have no
14          evidence of a written license to use SPAVI's Potato Corner
15          Intellectual Property, and, as such, its rights (that it has sold to
16          its franchisees) derive from what is, at best, a terminable at will,
17          fully revocable license because Defendants were nonetheless
18          operating Potato Corner locations, as if a written license existed.
19          *See Pogrebnoy v. Russian Newspaper Distribution, Inc.,* 289 F.
20          Supp. 3d 1061, 1070 (C.D. Cal. 2017), aff'd, 742 F. App'x 291
21          (9th Cir. 2018) ("[A]n implied license, like any other contract, is
22          terminable at the will of either party if it is not for a specified
23          term."). After SPAVI's acquisition of the Potato Corner brand, it
24          became the licensor of the Potato Corner Intellectual Property.
25          Between December of 2021 through 2024, the months
26          immediately preceding this action, SPAVI engaged in a good
27          faith and exhaustive attempt to negotiate the terms of a written
28

          CASE NO. 2:24-CV-04546-SB(AGRX)

1    license with PCJV. Defendant Guy Koren engaged and

2    participated in this negotiation; Testimony of Koren, Plaintiff

3    executives Gregorio (Plaiuntiff's CEO), Concepcion (Plaintiff's

4    COO charged with US operations), Tan (Director responsible

5    for international franchising), Magsaysay (Cinco's CEO);

6    Emails and correspondence with SPAVI, Koren, and PCJV

7    relating to negotiations of a licensing agreement for the use of

8    the Potato Corner Intellectual Property; Amended Joint Venture

9    Agreement; Franchise Agreements; FDDs

10         vi.  Defendants' Supporting Evidence: (1) There was no request for

11    services; PCJV USA, LLC's objected to Plaintiff's transaction

12    with its former fiduciary and joint venture partner Cinco

13    Corporation and asserted its pre-existing rights to use and

14    control Potato Corner in the United States; it did not "request"

15    any services from Plaintiff; rather, PCJV USA, LLC's became

16    subject to an involuntary interloper in breach of Cinco

17    Corporation's fiduciary and contractual obligations; (2) No

18    "services" were provided by Plaintiff to PCJV USA, LLC's

19    within the meaning of *quantum meruit* even according to

20    Plaintiff's own authority cited in its Memorandum of

21    Contentions of Law and Fact (Dkt. No. 199, citing *Cosmonova,*

22    *LLC v. BioFilm*, Inc., 763 F. Supp. 3d 1157 (S.D. Cal. 2025)

23    (dismissing quantum meruit claim)). Rather, Plaintiff allegedly

24    provided an implied "at-will" license allegedly extinguishing

25    PCJV USA, LLC's long-term right to use and/or to a long-term

26    license, which was beneficial to Plaintiff, indeed far more

27    beneficial to Plaintiff, and thus not a "service" within the

28

1    meaning of *quantum meruit*. *Cosmonova, LLC*, 763 F. Supp. 3d
2    at 1172. (3) Plaintiff had no reasonable expectation of any
3    royalty payment to Plaintiff for the same reason no royalty is
4    recoverable under the Lanham Act. Plaintiff never paid a royalty
5    to Cinco Corporation, no claim for breach of contract was
6    brought by Cinco Corporation, and Plaintiff cannot put itself
7    into a better situation than its assignor, Cinco Corporation. *See*
8    McCarthy, *supra*, § 18:15 ("'It is elementary ancient law that an
9    assignee never stands in any better position than his
10   assignor….'") (citation omitted). Defendants are simply seeking
11   a windfall or to punish Defendants' exercise of First
12   Amendment rights.

13  a.  Element No. 2: That Plaintiff provided such license to use the Potato
14      Corner Intellectual Property as requested by Defendant PCJV.
15          i.  This element is disputed.
16          ii.  Nature of Dispute: Legal and Factual
17          iii.  Plaintiff's Position Statement: this is a factual dispute.
18          iv.  Defendants' Position Statement: Defendant disputes Element 2
19              for the same reason they dispute Element 1.
20          v.  Plaintiff's Supporting Evidence: Defendants have operated
21              Potato Corner locations that utilize the Potato Corner
22              Intellectual Property through what is, at best, a terminable at
23              will, fully revocable license because Defendants were
24              nonetheless operating Potato Corner locations, as if a written
25              license existed. *See Pogrebnoy v. Russian Newspaper*
26              *Distribution, Inc.,* 289 F. Supp. 3d 1061, 1070 (C.D. Cal. 2017),
27              aff'd, 742 F. App'x 291 (9th Cir. 2018) ("[A]n implied license,

28

1    like any other contract, is terminable at the will of either party if

2    it is not for a specified term."). SPAVI has consented to that use

3    until the termination of the license agreement on May 31, 2024;

4    Trial Exhibit 29 (May 31, 2024 Termination); Testimony of

5    Concepcion (Plaintiff's COO charged with US operations), Tan

6    (Director responsible for international franchising), Magsaysay

7    (Cinco's CEO), Koren; Emails and correspondence with SPAVI,

8    Koren, and PCJV relating to negotiations of a licensing

9    agreement for the use of the Potato Corner Intellectual Property;

10   Amended Joint Venture Agreement; Franchise Agreements;

11   FDDs

12         vi.  Defendants' Supporting Evidence: Defendant relies upon the

13              same record evidence to dispute both Elements 1 and 2

14   b.  Element No. 3: That Defendant has not paid Plaintiff royalties or any

15       other compensation to Plaintiff for the use of the Potato Corner

16       Intellectual Property

17         i. This element is disputed.

18         ii.      Nature of Dispute: Legal and Factual

19         iii.     Plaintiff's Position Statement: Plaintiff does not know

20                  what the issue is here.

21         iv.      Defendants' Position Statement: Defendant disputes

22                  Element 3 for the same reason they dispute Element 1.

23         v.       Plaintiff's Supporting Evidence: Financial statements

24                  produced by Defendants showing that there have been no

25                  royalty fees paid to SPAVI; Testimony of Koren, Plaintiff

26                  executives Gregorio (Plaintiff's CEO), Concepcion (Plaintiff's

27                  COO charged with US operations), Tan (Director responsible

28

57

1      for international franchising), Jose Magsaysay (Cinco's CEO)

2      vi.    Defendants' Supporting Evidence: Defendant relies upon

3      the same record evidence to dispute both Elements 1 and 2.

4   c. Element No. 4: The reasonable value for the use of the Potato Corner

5      Intellectual Property that was provided.

6      i. This element is disputed.

7      ii.    Nature of Dispute: Factual

8      v.    Plaintiff's Supporting Evidence: Financial statements produced

9      by Defendants showing that there have been no royalty fees paid

10     to SPAVI; Testimony of Koren, Plaintiff executives Gregorio

11     (Plaintiff's CEO), Concepcion (Plaintiff's COO charged with

12     US operations), Tan (Director responsible for international

13     franchising), Jose Magsaysay (Cinco's CEO); Notarized Deeds

14     signed by seller and buyer; USPTO filings including

15     Registrations and Assignments

16     iii.    Defendants' Supporting Evidence: The reasonable value

17     is nominal or $1.00 because the 15-year track record is equal

18     payment of royalties and service fees (followed by and waiver in

19     favor of growth). See McCarthy, supra, § 18:15 ("'It is

20     elementary ancient law that an assignee never stands in any

21     better position than his assignor….'") (citation omitted).

22

23   4) **Claim 10 (from FAC, Dkt. 65): Misappropriation of Trade Secrets**

24   a. Element No. 1: That SPAVI owned the recipes, ingredients, and

25      ingredient allocations for its proprietary flavorings, the identities of its

26      suppliers, and other know-how, procedures, and processes used and

27      employed at Potato Corner outlets, including outlets owned and/or

28

---

58

1    operated by Defendants ("Potato Corner Trade Secrets")

2    i. This element is disputed.

3    ii.    Nature of Dispute: Legal and Factual

4    ~~iii.    [If legal dispute] Plaintiff's Position Statement: [insert]~~

5    iii.    Plaintiff's Position Statement: SPAVI owned or

6    controlled specific ingredients of the proprietary flavorings,

7    the quantities of such ingredients, and the relative proportion

8    of such ingredients,, including all steps taken to combine and

9    mix specific ingredients, comprise of trade secrets.

10    iv.    Defendants' Position Statement: As a threshold matter, a

11    trade secret could only comprise "information, including a

12    formula, pattern, compilation, program, device, method,

13    technique, or process." Cal. Civ. Code 3426.1(d). SPAVI has

14    not identified what "information" it claims Defendants

15    misappropriated. "Flavors" is not information, and packaging

16    is an object. Thus, SPAVI cannot carry its burden to "identify

17    the trade secrets and carry the burden of showing they exist."

18    *InteliClear, LLC v. ETC Global Holdings, Inc.*, 978 F.3d 653,

19    658. A flavor is an idea and catch-all phrase, which is not

20    protected. *Id.*; *Silvaco Data Systems v. Intel Corp.*, 184 Cal.

21    App. 4th 210, 220 (2010). Moreover, the plaintiff must "own"

22    the trade secret—meaning the plaintiff either has title to the

23    secret or has knowledge of the know how and licenses it with a

24    confidentiality obligation. *See Sinclair v. Aquarius*

25    *Electronics, Inc.*, 42 Cal.App.3d 216, 225-228 (1974) (trade

26    secret licensing involves sharing sensitive, undisclosed

27    information). A conclusory assignment from a prior reseller

28

59

CASE NO. 2:24-CV-04546-SB(AGRX)

1   with no knowledge of the trade secret does not establish the

2   required chain of title. *Memry Corp. v. Kentucky Oil*

3   *Technology, N.V.*, No. C-04-03843 RMW, 2006 WL 3734384,

4   at *5 (N.D. Cal. 2006). Here, there is no evidence of the

5   existence or ownership of trade secret information

6        v.    <u>Plaintiff's Supporting Evidence:</u> SPAVI owns all

7   trademarks, service marks, recipes, trade secrets, and other

8   intellectual property affiliated with the Potato Corner brand.

9   SPAVI acquired all of this intellectual property from the then-

10  owners, Cinco Corporation ("Cinco"), in a deal that closed in

11  2022.  Additional evidence includes: Notarized Deeds signed

12  by seller and buyer; USPTO filings including Registrations

13  and Assignments, testimony of Gregorio (Plaintiff's CEO),

14  Magsaysay (Cinco's CEO), Tan (Director responsible for

15  international franchising),

16       vi.    Defendants' Supporting Evidence: the following category,

17  which is defined above, captures the key phase and supporting

18  evidence: SPAVI Parties' Tortious Conduct. Among other

19  things, Cinco Corporation's consent to reverse engineering of

20  spices means that Plaintiff's predecessor did not know the

21  alleged secret, did not own or have a trade secret license, and

22  did not assign one to Plaintiff.

23    b.  <u>Element No. 2:</u> That these Potato Corner Trade Secrets were a secret at

24  the time of the misappropriation

25       i. This element is disputed

26       ii.    Nature of Dispute: factual

27       iii.   <u>Plaintiff's Supporting Evidence:</u> The Potato Corner brand

28

---

60

1    is identifiable by its preparation of fries, which uses seven

2    proprietary flavorings sold to SPAVI by one single supplier,

3    the identity of which is confidential and not publicly known.

4    The ingredients are not known outside the Potato Corner

5    family, and the specific recipe (and proportions of each

6    ingredient) are also kept secret. SPAVI maintains and benefits

7    from the secrecy of the recipes and ingredient allocation of

8    each flavoring and requires its supplier to protect that secrecy.

9    The only persons with access to the flavoring packets

10    delivered from the supplier (with ingredients listed but not

11    quantities and proportions) are those bound by confidentiality

12    and secrecy in favor. Anyone with access to the flavoring

13    packages and ingredients is prohibited from using them for a

14    purpose other than for the Potato Corner brand's benefit and

15    may not misappropriate or take for themselves any of the

16    proprietary information embodied in those packets. Additional

17    evidence includes: The Franchise Disclosure Documents

18    ("FDD"); agreements with the Franchisees; testimony of

19    Gregorio (Plaintiff's CEO), Magsaysay (Cinco's CEO),

20    Ybanez (Plaintiff's General Counsel), Tan (Director

21    responsible for international franchising), and Franchisees

22        iv.    Defendants' Supporting Evidence: supplier agreements;

23    third-party Ferna's sale of spices to the public that SPAVI

24    contends are secret; Cinco Corporation's consent for reverse

25    engineering of spices (meaning it did not know the alleged

26    secret and thus did not have a trade secret license); and

27    SPAVI's lack of evidence demonstrating it maintain secrecy,

28

61

JOINTLY FILED CLAIMS TO BE TRIED SECOND
AMENDED JOINTLY FILED CLAIMS,
COUNTERCLAIMS, THIRD PARTY CLAIMS, AND
AFFIRMATIVE DEFENSES TO BE TRIED
175468760.1                                    CASE NO. 2:24-CV-04546-SB(AGRX)

1    including but not limited to non-disclosure agreements,
2    physically locked storage of product and recipes alleged to be
3    trade secrets, use of two-factor authentication to access online
4    storage of recipes alleged to be trade secrets, monitoring and
5    securing of employees' and agents' communications and use
6    technology to transfer data to third parties, such as by way of
7    flash drives and cloud storage.
8    c.  Element No. 3: That Defendants improperly acquired, used, or
9    disclosed the Potato Corner Trade Secrets
10       i. This element is disputed
11       ii.    Nature of Dispute: Legal and Factual
12       iii.   Plaintiff's Position Statement: [insert]
13       iii.   Plaintiff's Position Statement: Defendants wrongfully
14       used or disclosed Potato Corner Trade Secrets by transferring
15       them to Third Parties despite acknowledging repeatedly that
16       they consisted of trade secrets in writings.
17       iv.    Defendants' Position Statement: By statute, reverse
18       engineering is fair competition. It follows that, to establish
19       wrongful acquisition, use or disclosure, Plaintiff must establish
20       a legal duty in the acquisition of a product not to reverse
21       engineer it. However, Plaintiff denies and cannot establish any
22       legal duty between Plaintiff and Defendants as it affirmatively
23       alleges they are not fiduciaries, it did not assume obligations
24       and there is no privity of contract establishing any
25       confidentiality obligation between them
26       v.    Plaintiff's Supporting Evidence: Both the JVA and AJVA
27       contain an agreement to agree on a Master License Agreement.
28

1    However, there was never a written license agreement between
2    Plaintiff and Defendants. After SPAVI acquired the Potato
3    Corner intellectual property rights, which included the Potato
4    Corner Trade Secrets, SPAVI engaged in a good faith and
5    exhaustive attempt to negotiate the terms of a written license
6    with Defendants. Defendant Guy Koren engaged and
7    participated in this negotiation, but was unwilling to agree to
8    any minimally commercially viable licensing terms. Moreover,
9    Guy Koren refused to, engage in reasonable and good faith
10    negotiation. Instead, he only offered royalty rates and license
11    fees that were more than 90% below what Koren had agreed to
12    be reasonable licensing fees over a decade prior. Koren also
13    repeatedly disengaged from the negotiation process, but still
14    was utilizing the Potato Corner Intellectual Property.
15    Therefore, SPAVI terminated the license agreement as of May
16    31, 2024. After the termination, Defendants improperly,
17    illegally, and unfairly misappropriated the flavoring packages
18    in their possession, which should have been returned
19    immediately following receipt of the May 31, 2024,
20    Termination Letter, and transferred possession of those
21    proprietary packages of flavorings to a third party for the
22    purpose of reverse-engineering the flavorings directly from the
23    packages themselves. Defendants also developed "Undercover
24    Fries" to roll out the reverse engineered fries to compete with
25    the Potato Corner brand while, at the same time, operating
26    Potato Corner outlets and being in possession of the Potato
27    Corner Intellectual Property, including the Potato Corner

1    Trade Secrets. Additional evidence includes: Franchisee

2    Photographs; Testimony from former franchisees, Concepcion

3    (Plaintiff's COO charged with US operations), Koren,

4    investigator; the Franchise Agreements; FDDs; and leases, of

5    PCJV over the years.

6       i.  Defendants' Supporting Evidence: Superseding Joint Venture

7    (2008–2010), Alternative Licensing Arrangements and Ongoing

8    Ratification (2011–2012), Formalization and Modification of the

9    Joint Venture (2012), LA Group Partnership Agreement and

10   Evolving Business Dynamics and Terms (2013–2018), Dispute,

11   Litigation, and State Court Proceedings (2018 and Beyond), and

12   Ongoing Annual Ratification and Regulatory Compliance.

13     d.  <u>Element No. 4:</u> That SPAVI was harmed and/or Defendants were

14   unjustly enriched by its use of the Potato Corner Trade Secrets

15       i. This element is disputed

16       ii.  Nature of Dispute: Factual

17       iii.  <u>Plaintiff's Supporting Evidence:</u> The secrecy of the Potato

18   Corner Trade Secrets holds value to SPAVI. The reverse

19   engineering was an unauthorized taking of a trade secret for

20   Defendants own personal benefit to open a competing store

21   "Undercover Fries". Additional evidence includes: Franchisee

22   Photographs; Testimony from former franchisees, Gregorio

23   (Plaintiff's CEO), Concepcion (Plaintiff's COO charged with

24   US operations), Ybanez (Plaintiff's General Counsel), Tan

25   (Director responsible for international franchising), and Koren;

26   the Franchise Agreements; FDDs; leases, of PCJV over the

27   years; and financial statements of Defendants.

28

<del>JOINTLY FILED CLAIMS TO BE TRIED</del><ins>SECOND AMENDED JOINTLY FILED CLAIMS, COUNTERCLAIMS, THIRD PARTY CLAIMS, AND AFFIRMATIVE DEFENSES TO BE TRIED</ins>
<del>175468760.1</del>

CASE NO. 2:24-CV-04546-SB(AGRX)

iv.    Defendants' Supporting Evidence: Defendants

incorporate their above factual positions

e. <u>Element No. 5:</u> Defendants acquisition, use, or disclosure of the Potato

Corner Trade Secrets was a substantial factor in causing Plaintiff's

harm or for Defendants to be unjustly enriched.

i. This element is disputed

ii.    Nature of Dispute: Factual

iii.    <u>Plaintiff's Supporting Evidence:</u> Defendants'

misappropriation, wrongful disclosure, and/or repudiation of

the existence of SPAVI's above-described trade secrets and

proprietary information, SPAVI has been damaged and

continues to be damaged. Evidence includes: Defendants

financials for the period in question May 31, 2024 through the

present; testimony of Gregorio (Plaintiff's CEO), Ybanez

(Plaintiff's General Counsel), Concepcion (Plaintiff's COO

charged with US operations), Tan (Director responsible for

international franchising), Koren, franchisees.

iv.    Defendants' Supporting Evidence: Defendants

incorporate their above factual positions

**I.    <u>Defendants' Affirmative Defenses to be Tried by a Jury</u>**

**1) <u>Affirmative Defense No. 1: Waiver (asserted by all Defendants as to**

**all claims alleged by SPAVI against them)</u>**

a. <u>Element No. 1:</u> Through implied and/or express conduct, SPAVI

knowingly waived a valid right, privilege, advantage, or benefit

allegedly conferred upon it and its attempt to enforce that right,

privilege, advantage, or benefit is thus barred.

i.    The parties dispute that this element is satisfied.

**Formatted:** Font: 14 pt

1        ii.  <u>Nature of Dispute:</u> Factual and Legal

2       iii.  <u>Defendants' Position Statement:</u> The specific rights or

3           privileges that have been waived include the alleged right to

4           terminate PCJV USA, LLC's right to use the U.S. Potato

5           Corner marks, and the alleged right to claim that the purchased

6           seasoning packages were secret and improperly acquired.

7           Plaintiff's enforcement waiver is based on Plaintiff and

8           Plaintiff's predecessor's knowing acquiescence in PCVJ USA,

9           LLC's use and quality control of Potato Corner in the United

10         States, including before and after Plaintiff's alleged acquisition

11         of the same. *See* McCarthy, *supra*, § 18:15 ("'It is elementary

12         ancient law that an assignee never stands in any better position

13         than his assignor,' thus once an assignee has notice of an

14         injunction against the assignor, it is bound to comply.")

15         (citation omitted). Plaintiff's predecessor acquiesced for years

16         in PCJV USA, LLC's use and quality contract. The fact of

17         Plaintiff's due diligence, negotiations, and alleged transaction

18         with Cinco Corporation before allegedly acquiring the U.S.

19         trademarks put Plaintiff on actual notice of PCJV USA, LLC's

20         use and control rights, and in response Plaintiff represented

21         that it would be bound by any agreements related to the

22         licensing of Potato Corner intellectual property in the United

23         State, and thereafter did not attempt to enforce any alleged

24         contrary right for years and then denied acquiring PCJV USA,

25         LLC's use and quality control rights. As to the commercial

26         sale of packaged seasonings, both Plaintiff and its predecessor

27         have known for years that they did not own them, that they

28

1              were publicly available for purchase in the market, and that it

2              was not improper to reverse engineer them, and Plaintiff

3              thereafter fulfilled an order and agreed to a fulfill a second

4              order even after the alleged termination.

5       iv.  <u>Plaintiff's Position Statement:</u> Defendants fail  to identify any

6              specific right or privilege or benefit that was  waived. The only

7              relationship between SPAVI and any Defendant, was that of

8              licensor to licensee, pursuant  to an implied license. The only

9              right that SPAVI  possessed was to terminate or  negotiate. It

10             decision  to wait to negotiate  with Koren is not a waiver oof

11             its right to terminate.  Ironically, it is SPAVI that is alleging

12             that Defendants waived their right to claim the AJVA confers

13             perpetual licensing rights, after negotiating the terms of a

14             written license that would confer narrower rights for three

15             years without once taking the position that it did not need a

16             written license – a  three year  period during which much

17             occurred in reliance on Korenn's assent to the need for a

18             written license.

19       v.  <u>Defendants' Supporting Evidence:</u> The PCJV USA Parties

20             intend to rely on testimony and also on a robust written

21             evidentiary record which demonstrates the parties' mutual

22             intentions and the evolution of their business relationship from

23             the inception through the present. The following categories

24             and chronology capture the key phases and supporting

25             evidence: *1. Superseding Joint Venture (2008–2010)*,

26             including (a) testimony and documentary evidence (i.e.,

27             communications and the original NKM Master License

28

~~JOINTLY FILED CLAIMS TO BE TRIED~~SECOND
AMENDED JOINTLY FILED CLAIMS,
COUNTERCLAIMS, THIRD PARTY CLAIMS, AND
AFFIRMATIVE DEFENSES TO BE TRIED
~~175468760.1~~
              CASE NO. 2:24-CV-04546-SB(AGRX)

1   Agreement) showing the parties' shared intent to bring Potato
2   Corner to the U.S., (b) exhibits reflecting the transition from a
3   simple license to a joint venture partnership in 2009-2010,
4   including meeting minutes, correspondence, and planning
5   documents from April/May 2010, (c) evidence of the July
6   2010 formation of PCJV USA, LLC as the master franchisor
7   for all U.S. and Israel operations, with PCJV granted all rights
8   to use and license the U.S. intellectual property ("Superseding
9   Joint Venture (2008–2010)"); *2. Alternative Licensing*
10  *Arrangements and Ongoing Ratification (2011–2012)*,
11  including (a) documents and communications (i.e., DLA Piper
12  records, regulatory filings, and Franchise Disclosure
13  Documents) evidencing the parties' reliance on an alternative
14  license agreement in 2011 for Cinco's benefit, which was
15  referenced and ratified in annual FDDs and other regulatory
16  filings, (b) evidence of the 2012 Master Services Agreement,
17  which authorized the LA Group to license the brand for an
18  indefinite duration, further reflecting the parties' mutual
19  understanding and operational structure ("Alternative
20  Licensing Arrangements and Ongoing Ratification (2011–
21  2012)"); *3. Formalization and Modification of the Joint*
22  *Venture (2012)*, including (a) executed copies of the Joint
23  Venture Agreement (JVA) and the LLC Operating Agreement
24  from August 2012, memorializing the parties' rights,
25  obligations, and governance structure, (b) the First
26  Amendment to the JVA (October 2012), with supporting
27  meeting minutes, documenting specific modifications to the
28

1 | parties' governance protocols only ("Formalization and
2 | Modification of the Joint Venture (2012)"); *4. LA Group*
3 | *Partnership Agreement and Evolving Business Dynamics and*
4 | *Terms (2013–2018)*, including (a) the 2013 written partnership
5 | agreement entered into by the LA Group, reflecting further
6 | refinement of the parties' roles and expectations, (b)
7 | communications, board minutes, and negotiation records from
8 | 2015–2018 detailing ongoing discussions about operational
9 | challenges, restructuring proposals (including Koren's
10 | potential acquisition of Cinco shares or the LA Group's
11 | acquisition of 100% of PCJV/PCI Trading), and a
12 | contemplated new Master License Agreement for Cinco's
13 | benefit in exchange for 100% ownership in PCJV/PCI Trading
14 | ("LA Group Partnership Agreement and Evolving Business
15 | Dynamics and Terms (2013–2018)"); *5. Dispute, Litigation,*
16 | *and State Court Proceedings (2018 and Beyond)*, including (a)
17 | evidence of the April 2018 board meeting and resolutions that
18 | precipitated the state court litigation, including verified
19 | pleadings, declarations, and court filings that set forth the
20 | parties' mutual intentions and positions during the dispute,
21 | including also, if necessary, settlement negotiation discussions
22 | and the settlement and other agreements reached among the
23 | parties, (b) additional documents and testimony from the state
24 | court proceedings, including verified cross-complaints,
25 | declarations, and orders, which further clarify the parties'
26 | understanding and course of conduct ("Dispute, Litigation, and
27 | State Court Proceedings (2018 and Beyond)"); *6. Ongoing*
28 |

CASE NO. 2:24-CV-04546-SB(AGRX)

*Annual Ratification and Regulatory Compliance*, including FDDs, regulatory filings, and correspondence with state agencies, evidencing the parties' continued mutual recognition of the licensing and franchising structure, as well as the ratification of their agreements and operational practices ("Ongoing Annual Ratification and Regulatory Compliance");

*7. SPAVI Parties' Tortious Conduct*, including a comprehensive body of documents and testimony which demonstrates the SPAVI parties' coordinated and wrongful actions aimed at appropriating the business operations, supply chain, and goodwill of the Potato Corner USA franchise system for their own benefit, such as (a) testimony and documentary evidence showing SPAVI's deliberate efforts to undermine and take over PCJV's established franchise network in the United States, (b) communications, internal memoranda, and correspondence reflecting SPAVI's outreach to PCJV franchisees, including direct offers of temporary licenses and inducements to sever ties with PCJV, as detailed in termination letters and related notices, (c) evidence of SPAVI's attempts to bypass PCJV's role as franchisor by negotiating directly with third-party franchisees, thereby disrupting existing contractual relationships and causing business uncertainty, (d) documents and witness statements establishing SPAVI's interference with PCI Trading's procurement and distribution of supplies, (e) testimony regarding SPAVI's refusal to supply powders to PCJV and its franchisees following the purported termination of the license,

1    thereby jeopardizing ongoing operations and franchisee

2    livelihoods, (f) evidence of SPAVI's efforts to control or

3    redirect supplier relationships, including attempts to obtain

4    confidential supplier information and to assert exclusive rights

5    over the sourcing and distribution of Potato Corner products in

6    the U.S., (g) testimony and exhibits documenting SPAVI's use

7    of the established Potato Corner USA brand reputation and

8    customer base to promote its own interests, including public

9    statements, regulatory filings, and direct communications with

10   franchisees and suppliers, (h) rather than simply seeking

11   declaratory relief, SPAVI's own conduct has interjected

12   potential confusion in the marketplace, including the

13   unauthorized use of trademarks, solicitation of franchisees, and

14   dissemination of misleading information regarding the status

15   of the franchise system and intellectual property rights, (i)

16   documents showing SPAVI's attempts to claim ownership of

17   the goodwill and business relationships cultivated by PCJV

18   and PCI Trading over years of operation, despite the absence

19   of any direct contractual relationship with many U.S.

20   franchisees prior to the dispute, (j) evidence of the resulting

21   harm to PCJV, PCI Trading, and the broader franchise

22   network, including lost business opportunities, damaged

23   supplier relationships, and erosion of brand value and goodwill

24   ("SPAVI Parties' Tortious Conduct")..

25        vi.   Plaintiff's Supporting Evidence: testimony of the negotiators

26              from 2021 through 2024 including Mr. Gregorio and Mr. Tan

27              (from SSPAVI), their correspondence with Koren and his

28

1      testimony, the NKM  License agreement and the JVA and

2      AJVA (none of which SPAAVI is a party to or conferred

3      rights that SPAVI  is  responsible for. The absence of

4      contractual privity or otherwise is what disproves this

5      affirmative defense.

6      b.  Causes of Action Barred by this Affirmative Defense: all of SPAVI's

7          causes of action

8      **2) Affirmative Defense No. 2: In Pari Delicto (asserted as to all of**

9          **SPAVI's causes of action).**

10     a.  Element No. 1: Plaintiff and Defendants have substantially equal

11         economic strength.

12             i.  This element is not in dispute.

13     b.  Element No. 2: Plaintiff is at least equally responsible for the harmful

14         conduct as Defendants.

15             i.  Disputed Status of Element 2: The parties dispute that this

16                 element is satisfied.

17             ii.  Nature of Dispute: Legal and Factual

18            iii.  Defendants' Position Statement: Defendants' elements precisely

19                 follow CACI No. 3431

20            iv.  Plaintiff's Position Statement: the statement of these  elements

21                 omit that to apply "in  pari ~~director~~dilecto" requires that

22                 SPPAVI have engaged in  "illegal, fraudulent, or inequitable

23                 conduct,"  and that has never  been alleged, nor is there any

24                 evidence of this.

25             v.  Defendant's Supporting Evidence: the following category,

26                 which is defined above, captures the key phase and supporting

27                 evidence: SPAVI Parties' Tortious Conduct.

28

1          vi.  <u>Plaintiff's Supporting Evidence:</u> testimony of the negotiators
2               from 2021 through 2024 including Mr. Gregorio and Mr. Tan
3               (from SSPAVI), their correspondence with Koren and his
4               testimony, the NKM  License agreement and the JVA and
5               AJVA (none of which SPAAVI is a party to or conferred rights
6               that SPAVI  is  responsible for. The absence of contractual
7               privity or otherwise is what disproves this affirmative defense.
8      c.  <u>Element No. 3</u>: Plaintiff was not held by economic pressure to engage
9          in harmful conduct.
10          i.  Disputed Status of Element 3: The parties dispute that this
11              element is satisfied.
12          ii.  <u>Nature of Dispute:</u> Legal and Factual.
13          iii.  <u>Defendants' Position Statement:</u> Defendants' elements precisely
14               follow CACI No. 3431.
15          iv.  <u>Plaintiff's Position Statement:</u> the statement of these  elements
16               omit that to apply "in  pari dilecto" requires that SPPAVI have
17               engaged in  "illegal, fraudulent, or inequitable conduct,"  and
18               that has never  been alleged, nor is there any evidence of this.
19          v.  <u>Defendant's Supporting Evidence</u>: documents and testimony
20               including and related to (1) PCJV USA, LLC's right to use
21               Potato Corner IP and quality control rights related thereto under
22               PCJV USA, LLC's governing documents, including agreements
23               and related negotiations, franchise disclosure documents and
24               board minutes; (2) the parties' course of conduct regarding
25               PCJV USA, LLC's use and control of U.S. Potato Corner
26               trademarks; (3) the fact of SPAVI's due diligence, negotiations,
27               and alleged acquisition of Cinco Corporation's assets and
28

73

1          liabilities; (4) SPAVI's denial of acquiring any IP rights or

2          obligations under PCJV's governing documents; (5) SPAVI's

3          statement that it would be bound by a settlement with Cinco; (6)

4          SPAVI's knowing failure to do anything for years regarding

5          PCJV USA Parties' full exercise of its right to use and quality

6          control; and (7) SPAVI's decision to renege on a purchase order,

7          creating a short-term supply chain problem.

8             vi.  <u>Plaintiff's Supporting Evidence:</u> testimony of the negotiators

9                  from 2021 through 2024 including Mr. Gregorio and Mr. Tan

10                 (from SSPAVI), their correspondence with Koren and his

11                 testimony, the NKM License agreement and the JVA and

12                 AJVA (none of which SPAAVI is a party to or conferred rights

13                 that SPAVI  is  responsible for. The absence of contractual

14                 privity or otherwise is what disproves this affirmative defense.

15        d.  <u>Causes of Action Barred by this Affirmative Defense</u>: all of SPAVI's

16          causes of action.

17     **3)**  <u>**Affirmative Defense No. 3: Statute of Limitations. (asserted as to all of**</u>

18        <u>**SPAVI's causes of action)**</u>

19        a.  <u>Element No. 1</u>: SPAVI (either independently or as successor-in-

20          interest to Cinco) knew, should have known, or had constructive notice

21          of PCJV USA Parties' alleged infringing conduct over three years

22          before SPAVI filed this action.

23           i.  The parties dispute that this element is satisfied.

24          ii.  Nature of Dispute: Factual

25          iii.  <u>Defendant's Supporting Evidence</u>: the following categories,

26              which are defined above, capture the key phases and supporting

27              evidence: Superseding Joint Venture (2008–2010), Alternative

28

1       Licensing Arrangements and Ongoing Ratification (2011–2012),

2       Formalization and Modification of the Joint Venture (2012), LA

3       Group Partnership Agreement and Evolving Business Dynamics

4       and Terms (2013–2018), Dispute, Litigation, and State Court

5       Proceedings (2018 and Beyond), Ongoing Annual Ratification

6       and Regulatory Compliance, and SPAVI Parties' Tortious

7       Conduct.

8           iv.   <u>Plaintiff's Supporting Evidence</u>: Testimony off Mr. Gregorio

9                 (CEO of SPAVI) regarding termination of negotiations and

10                sending the Termination Letter hours before this lawsuit was

11                filed, such that, unless the statute of limitations is calculated by

12                way of hours rather than years, this defense is an impossibility.

13      b.   <u>Causes of Action Barred by this Affirmative Defense</u>: all of SPAVI's

14           causes of action.

15  **4)  <u>Affirmative Defense No. 4: Abandonment through Assignment in Gross.</u>**

16      a.   <u>Element No. 1:</u> Cinco Corporation assigned U.S. Potato Corner

17           trademarks to SPAVI without the goodwill associated with the

18           trademarks.

19            i.   The parties dispute that this element is satisfied.

20           ii.   Nature of Dispute: Factual and Legal

21          iii.   <u>Defendants' Supporting Legal Position:</u> Trademarks cannot be

22                assigned or transferred apart from the goodwill of the business

23                they represent. *See Federal Treasury Enterprise*

24                *Sojuzplodoimport v. Spirits Intern. N.V.*, 623 F.3d 61, 68 (2d

25                Cir. 2010); *Glow Industries, Inc. v. Lopez*, 273 F. Supp. 2d

26                1095, 1108 (C.D. Cal. 2003); *Hallmark Hardwoods, Inv. ~~v.~~ v.*

27                *Omni Wood Product, LLC*, 2011 WL 13176098, *15 (C.D. Cal.

28

1    2011); *In re Impact Distributors, Inc.*, 260 B.R. 48, 53-55 (S.D.

2    Fla. 2001); *Money Store v. Harriscorp Fin., Inc.*, 689 F.2d 666,

3    670 (7th Cir. 1982).

4       iv.  <u>Plaintiff's Supporting Legal Position:</u> this is a factual dispute.

5          Plaintiff argues that it did receive goodwill, while Defendants

6          argue that we did not.

7       v.  <u>~~Defendants' Supporting Evidence: the following category,~~</u>

8          ~~which is defined above, captures the key phase and supporting~~

9          ~~evidence: SPAVI Parties' Tortious Conduct.~~<u>Defendants'</u>

10         <u>Supporting Evidence: documents and testimony including and</u>

11         <u>related to (1) Defendants' senior use and quality control of U.S.</u>

12         <u>Potato Corner trademarks; (2) PCJV USA, LLC's governing</u>

13         <u>documents, including agreements and related negotiations,</u>

14         <u>franchise disclosure documents and board minutes; (3) the</u>

15         <u>parties' course of conduct regarding PCJV USA, LLC's use and</u>

16         <u>control of U.S. Potato Corner trademarks; (4) SPAVI's</u>

17         <u>knowledge of the same; (5) Defendants' Membership Interest</u>

18         <u>Purchase Agreement ("MIPA") with Cinco acquiring all of</u>

19         <u>Cinco's Interests in and any and all rights "attached" thereto</u>

20         <u>unencumbered by a need for a license from any third party; and</u>

21         <u>(6) the fact of SPAVI's due diligence, negotiation, and alleged</u>

22         <u>acquisition of Cinco Corporation's assets and liabilities, and</u>

23         <u>denial of acquiring PCJV's Potato Corner franchise business and</u>

24         <u>any IP rights or obligations under PCJV's governing documents.</u>

25       vi.  <u>Plaintiff's Supporting Evidence:</u> the  deeds filed with the

26          USPTO, proof of intent to continue using the marks,, including

27          plans to expand rapidly within the US (testimony of SPAVI

28

---

76

1    executives charged with this expansion, including Mr. Gregorio,

2    Mr. Tann, and Mr. Concepcion, the COO.)

3    b.   Causes of Action Barred by this Affirmative Defense: SPAVI's causes

4    of action for Trademark Infringement (15 U.S.C. § 1114), Trademark

5    Infringement (15 U.S.C. § 1125(a)), False Designation of Origin and

6    Description of Fact (15 U.S.C. § 1125(a)), Contributory Trademark

7    Infringement (15 U.S.C. § 1114), Contributory Trademark and False

8    Designation of Fact (15 U.S.C. § 1125(a)), Common Law Trademark

9    Infringement, Declaratory Relief and Unfair Competition (Bus. &

10    Prof. Code § 17200).

11    **5)  Affirmative Defense No. 5: Abandonment through Naked Licensing.**

12    a.   Element No. 1: SPAVI Parties (including Cinco's) alleged licensed use

13    of U.S. Potato Corner trademarks to PCJV USA Parties.

14    i.   This element is disputed.

15    ii.  Nature of the dispute: Legal

16    iii. Defendants' Position Statement: Defendants assert both

17    ownership and use rights arising from naked licensing, i.e.,

18    authorization to use without adequate control. Ownership arises

19    from Cinco Corporation's naked license because it barred the

20    sale of any trademark rights to Plaintiff, and the PCJV USA

21    Parties acquired all of Cinco Corporation's Interests and rights

22    in Potato Corner in the United States in their settlement and

23    MIPA. Ownership also arises from Plaintiff's naked licensing

24    because PCJV USA, LLC is a senior user of the mark, including

25    because Plaintiff never had any right to control Potato Corner in

26    the United States, did not exercise control over Potato Corner in

27    the United States, and had no grounds to believe PCJV USA,

28

1    LLC would listen to or take any instruction from SPAVI.

2        iv.   Plaintiff's Supporting Legal Position: the wording of this

3            element, however, is going to be confusing to a jury. If it is

4            PCJV's position that it was not even a licensee as of May 31,

5            2024, the damages calculation will change considerably.

6    b.  Element No. 2: SPAVI Parties (including Cinco) did not exercise

7        adequate control over PCJV USA Parties' use of U.S. Potato Corner

8        trademarks.

9        i.    The parties dispute that this element is satisfied.

10       ii.   Nature of Dispute: Factual and Legal.

11       iii.  ~~Defendant's Supporting Legal Position:~~ ~~[insert]~~

12       iii.  Defendant's Supporting Legal Position: Defendants assert both

13            ownership and use rights arising from naked licensing, *i.e.,*

14            authorization to use without adequate control. Ownership arises

15            from Cinco Corporation's naked license because it barred the

16            sale of any trademark rights to Plaintiff, and the PCJV USA

17            Parties acquired all of Cinco Corporation's Interests and rights

18            in Potato Corner in the United States in their settlement and

19            MIPA. Ownership also arises from Plaintiff's naked licensing

20            because PCJV USA, LLC is a senior user of the mark, including

21            because Plaintiff never had any right to conduct Potato Corner in

22            the United States, did not exercise control over Potato Corner in

23            the United States, and had no grounds to believe PCJV USA,

24            LLC would listen to or take any instruction from SPAVI.

25       iv.   Plaintiff's Supporting Legal Position: First, this is an incorrect

26            statement of the law, as the focus is  less so on  the use of the

27            Marks, but more so on the nature and quality of the goods and/or

28

services sold by the licensee. Second, though unsatisfying in its failure to conclusively resolve the debate, in the Ninth Circuit this defense likely requires a showing of clear and convincing evidence. <u>FreecycleSunnyvale v. Freecycle Network</u>, 626 F.3d 509, 514 (9th Cir. 2010)

**Formatted:** Font: 14 pt

      v. <u>Defendants' Supporting Evidence:</u> the following categories, which are defined above, capture the key phases and supporting evidence: Superseding Joint Venture (2008–2010), Alternative Licensing Arrangements and Ongoing Ratification (2011–2012), Formalization and Modification of the Joint Venture (2012), LA Group Partnership Agreement and Evolving Business Dynamics and Terms (2013–2018), Dispute, Litigation, and State Court Proceedings (2018 and Beyond), Ongoing Annual Ratification and Regulatory Compliance, and SPAVI Parties' Tortious Conduct.

      vi. <u>Plaintiff's Supporting Evidence:</u> Pursuant to the three considerations as to whether naked licensing has occurred, as summarized in F19 Franchising, LLC v. Endo Fitness LL, LLC, No. 2:23-CV-00185-MEMF-JCX, 2023 WL 11950376, at *6–9 (C.D. Cal. July 28, 2023), this is the one issue for trial  in which the prior action is actually relevant,, as it sets forth that efforts to exert control, as do the prior correspondence between Cinco and PCJV, and, moreover, the course of dealing prior to termination establishes the attempts to get control.

  c. <u>Causes of Action Barred by this Affirmative Defense</u>: SPAVI's causes of action for Trademark Infringement (15 U.S.C. § 1114), Trademark Infringement (15 U.S.C. § 1125(a)), False Designation of Origin and

---

1    Description of Fact (15 U.S.C. § 1125(a)), Contributory Trademark

2    Infringement (15 U.S.C. § 1114), Contributory Trademark and False

3    Designation of Fact (15 U.S.C. § 1125(a)), Common Law Trademark

4    Infringement, Declaratory Relief and Unfair Competition (Bus. &

5    Prof. Code § 17200).

6    6)  **Affirmative Defense No.** 6: Senior Use.

7       a.  Element6 No. 1: Defendants were the first to use the U.S. Potato

8          Corner trademarks in the United States.

9             i.  The parties dispute that this element is satisfied.

10            ii.  Nature of Dispute: Legal and factual.

11           iii.  Defendant's Legal Position Statement: "The first to use a mark

12                in an area is deemed the 'senior' user and has the right to enjoin

13                'junior users from using confusing similar marks in the same

14                industry or market or within the senior user's natural zone of

15                expansion." *Optimal Pets, Inc. v. Nutri-Vet, LLC*, 877 F. Supp.

16                953, 959 (C.D. Cal. 2012).

17            iv.  Plaintiff's Legal Position Statement: See 15 USC § 1055. This

18                argument is not made in good faith. It is also law of the case.

19             v.  Defendants' Supporting Evidence: [insert]

20            vi.  Plaintiff's Supporting Evidence: Registrations and testimony of

21                Koren and  Mr. Magsaysay

22       b.  Element No. 2: SPAVI intends to use the U.S. Potato Corner

23          trademarks in the United States.

24             i.  The parties dispute that this element is satisfied.

25            ii.  Nature of Dispute: Legal and factual.

26           iii.  Defendants' Legal Position Statement: "The first to use a mark

27                in an area is deemed the 'senior' user and has the right to enjoin

28

80

JOINTLY FILED CLAIMS TO BE TRIEDSECOND
AMENDED JOINTLY FILED CLAIMS,
COUNTERCLAIMS, THIRD PARTY CLAIMS, AND
AFFIRMATIVE DEFENSES TO BE TRIED
175468760.1                                    CASE NO. 2:24-CV-04546-SB(AGRX)

Formatted: No underline

Formatted: No underline

'junior users from using confusing similar marks in the same industry or market or within the senior user's natural zone of expansion." *Optimal Pets, Inc.* v. *Nutri-Vet, LLC*, 877 F. Supp. 953, 959 (C.D. *Cal.* 2012).

iv.   Plaintiff's Legal Position Statement: Unclear what the dispute is here other than factual.

v.   Defendants' Supporting Evidence: the following categories, which are defined above, capture the key phases and supporting evidence: Superseding Joint Venture (2008–2010), Alternative Licensing Arrangements and Ongoing Ratification (2011–2012), Formalization and Modification of the Joint Venture (2012), LA Group Partnership Agreement and Evolving Business Dynamics and Terms (2013–2018), Dispute, Litigation, and State Court Proceedings (2018 and Beyond).

vi.   Plaintiff's Supporting Evidence: Testimony of Gregorio, Tan, Concepcion, and Shaikh and Hussein

c.a.    Causes of Action Barred by this Affirmative Defense: SPAVI's causes of action for Trademark Infringement (15 U.S.C. § 1114), Trademark Infringement (15 U.S.C. § 1125(a)), False Designation of Origin and Description of Fact (15 U.S.C. § 1125(a)), Contributory Trademark Infringement (15 U.S.C. § 1114), Contributory Trademark and False Designation of Fact (15 U.S.C. § 1125(a)), Common Law Trademark Infringement, Declaratory Relief and Unfair Competition (Bus. & Prof. Code § 17200).

7)6)    **Affirmative Defense No. 7**: Continuous Prior Use Within Remote Geographic Area.

a.   Element No. 1: Defendants continuously used the trademark, without

Formatted: Font: Italic

Formatted: Font: 14 pt

1    interruption, in the U.S.

2        i.  The parties dispute that this element is satisfied.

3        ii.  Nature of Dispute: Legal and factual.

4        iii.  <u>Defendants' Supporting Legal Position:</u> (1) PCJV USA, LLC's

5            is the senior use under *Sengoku*, including actual first use

6            (restructure in 2009) and lawful first use, *see CreAgri, Inc. v.*

7            *USANA Health Services, Inc.*, 474 F3d 626, 630 (9th Cir. 2007);

8            (2) but for a license agreement, which SPAVI Parties disavow,

9            PCJV USA, LLC's use inured to its own benefit; (3) Cinco

10           Corporation did not control PCJV USA, LLC's use of the Potato

11           Corner marks; and (4) SPAVI Parties did not control PCJV

12           USA, LLC's use of the Potato Corner marks.

13       iv.  <u>Plaintiff's Supporting Legal Position:</u> See115 USC §1055. This

14           argument is not  made in good faith.

15       v.  <u>Defendants' Supporting Evidence:</u> the following categories,

16           which are defined above, capture the key phases and supporting

17           evidence: Superseding Joint Venture (2008–2010), Alternative

18           Licensing Arrangements and Ongoing Ratification (2011–2012),

19           Formalization and Modification of the Joint Venture (2012), LA

20           Group Partnership Agreement and Evolving Business Dynamics

21           and Terms (2013–2018), Dispute, Litigation, and State Court

22           Proceedings (2018 and Beyond).

23       vi.  <u>Plaintiff's Supporting Evidence:</u> All evidence presented in

24           Plaintiffs' case in chief will prove the defense of  this.

25   b.  <u>Element No. 2</u>: Defendants began using the trademark without

26       knowledge of SPAVI's prior use elsewhere.

27       i.  Disputed Status of Element 2: The parties dispute that this

28

---

CASE NO. 2:24-CV-04546-SB(AGRX)

1          element is satisfied.

2          ii.   Nature of Dispute: Factual.

3          iii.  Defendants' Supporting Evidence: the following categories,

4                which are defined above, capture the key phases and supporting

5                evidence: Superseding Joint Venture (2008–2010), Alternative

6                Licensing Arrangements and Ongoing Ratification (2011–2012),

7                Formalization and Modification of the Joint Venture (2012), LA

8                Group Partnership Agreement and Evolving Business Dynamics

9                and Terms (2013–2018), Dispute, Litigation, and State Court

10               Proceedings (2018 and Beyond).

11         iv.   Plaintiff's Supporting Evidence: Koren testimony, registrations.

12    c.   Element No. 3: Defendants used the trademark before SPAVI

13         published the registered trademark.

14         i.    Disputed Status of Element 3: The parties dispute that this

15               element is satisfied.

16         ii.   Nature of Dispute: factual.

17         iii.  Defendants' Supporting Evidence: the following categories,

18               which are defined above, capture the key phases and supporting

19               evidence: Superseding Joint Venture (2008–2010), Alternative

20               Licensing Arrangements and Ongoing Ratification (2011–2012),

21               Formalization and Modification of the Joint Venture (2012), LA

22               Group Partnership Agreement and Evolving Business Dynamics

23               and Terms (2013–2018), Dispute, Litigation, and State Court

24               Proceedings (2018 and Beyond).

25         iv.   Plaintiff's Supporting Evidence: 15 USC § 1055. This argument

26               is not made in good faith

27    d.   Causes of Action Barred by this Affirmative Defense: SPAVI's causes

28

CASE NO. 2:24-CV-04546-SB(AGRX)

1    of action for Trademark Infringement (15 U.S.C. § 1114), Trademark

2    Infringement (15 U.S.C. § 1125(a)), False Designation of Origin and

3    Description of Fact (15 U.S.C. § 1125(a)), Contributory Trademark

4    Infringement (15 U.S.C. § 1114), Contributory Trademark and False

5    Designation of Fact (15 U.S.C. § 1125(a)), Common Law Trademark

6    Infringement, Declaratory Relief and Unfair Competition (Bus. &

7    Prof. Code § 17200).

8    ~~8)~~7)    **Affirmative Defense No. ~~6~~7: Mitigation.**

9        a.  Element No. 1: SPAVI failed to use reasonable efforts to mitigate

10           alleged damages.

11               i.   The parties dispute that this element is satisfied.

12               ii.  Nature of Dispute: Factual.

13               iii. Defendants' Supporting Evidence: the following category,

14                    which is defined above, captures the key phase and supporting

15                    evidence: SPAVI Parties' Tortious Conduct.

16               iv.  Plaintiff's Supporting Evidence: Plaintiff looks forward to

17                    presenting the jury with every effort taken to get PCJV and

18                    Koren to either pay for  or stop, finally, using this brand for

19                    which he has never paid to benefit from, whether that was

20                    negotiating a license, terminating the license  or other attempts.

21       b.  Element No. 2: the amount by which damages would have been

22           mitigated.

23               i.   The parties dispute that this element is satisfied.

24               ii.  Nature of Dispute: Factual.

25               iii. Defendants' Supporting Evidence: the following category,

26                    which is defined above, captures the key phase and supporting

27                    evidence: SPAVI Parties' Tortious Conduct.

28

1      iv.  Plaintiff's Supporting Evidence: Testimony of Koren, Gregorio,

2          Victor Tan,  Financial documents.

3      c.  Causes of Action Barred by this Affirmative Defense: All of SPAVI

4          Parties' causes of action (to the extent they seek damages).

5      9)8)    **Affirmative Defense No. 98: Senior Use Trademark Ownership**

6      a.  Element No. 1: At the time of first lawful use, the partnership and JVA

7          evidence co-ownership of the U.S. Potato Corner marks.

8          i.  Disputed Status of Element 1: The parties dispute that this

9              element is satisfied.

10         ii.  Nature of Dispute: Legal and factual.

11         iii.  Defendants' Position Statement: The partnership and joint

12             venture agreement between PCJV USA, LLC's LA Group and

13             Cinco Group recognize and support per their terms and

14             conditions that PCJV USA, LLC—the first actual, lawful,

15             continuous and exclusive user of the U.S. Potato Corner

16             marks—owns the U.S. Potato Corner marks (which was the LA

17             Group's long-term security and consideration) at least until the

18             parties executed the contemplated master license agreement

19             (which was the Cinco Group's consideration) that they both

20             agreed to enter into in accordance with their fiduciary and

21             contractual obligations, but which still treated them as joint

22             venture partners. *See Sengoku Works Ltd. v. RMC Int'l, Ltd.*, 96

23             F.3d 1217, 1219 (9th Cir. 1996); *Optimal Pets, Inc. v. Nutri-Vet,*

24             *LLC*, 877 F. Supp. 953, 959 (C.D. Cal. 2012*1996*); *cf. Precision*

25             *Door Service, Inc. v. Bell,* No. C 02–01108 CW, 2002 WL

26             655053, at *6 (N.D. Cal April 18, 2002). Given that Plaintiff is

27             disavowing the license agreement—meaning the factual basis

28

85

upon which PCJV USA, LLC's use might inure to Cinco Corporation's benefit did not happen—the operative coownership agreements favor Defendants or, at minimum, are not dispositive as to ownership. Plaintiff does not get ownership by default because all exclusive users under *Sengoku* are alleged "related companies." Under *Sengoku*, an alleged "related company" who is an exclusive user in the United States, gets to rebut that presumption, especially where, as here, the registrant filed an intent to use application that would only evidence senior use if the exclusive user's first actual and lawful use inured to its benefit. Under the partnership and joint venture agreement, which "vested" in the joint venture and exclusive user complete licensing rights and obligations in the United States, approval of franchise agreements, including as disclosed in FDDs, restrictions on transfer, payment of equal royalties and service fees, and lifetime rights to license and quality control over Potato Corner in the United States, it plainly supports ownership in the joint venture or, at minimum, is not dispositive. The jury is entitled to consider the following five factors used in the Ninth Circuit to help determine ownership as between PCJV USA, LLC, an exclusive domestic user, and Plaintiff, an assignee of a foreign registrant, which plainly demonstrate that PCJV USA, LLC owns the U.S. marks unless and until there was a meeting of the minds on an enforceable license agreement: (1) which party invented and affixed the mark to the product; (2) which party's name appeared with the trademark; (3) which party maintained the product's quality and uniformity;

1    (4) which party does the public identify with the product and

2    make complaints to; and (5) which party possesses the goodwill

3    associated with the product.

4    iv.    Plaintiff's Position Statement: This misstates the Lanhan act and

5    the rules  of priority. *See* *Yagu*. And  *Sengoku*. See 15 USC

6    § 1055. This argument is not made in good faith. It is also law of

7    the case.

8    v.    Defendants' Supporting Evidence: documents and testimony

9    including and related to (1) DLA Piper's notification of Cinco

10    Corporation's unlawful use of Potato Corner in the United

11    States; (2) the State of California's Department of Business

12    Oversight's Order sanctioning PCJV USA, LLC for Cinco

13    Corporation's alleged prior use of Potato Corner in the United

14    States; (3) the superseding and restructure agreement between

15    Guy Koren and Jose Magsaysay vesting ownership of Potato

16    Corner in their partnership; (4) the joint venture agreement

17    vesting co-ownership of Potato Corner in the United States in

18    PCJV USA, LLC; (5) control over Potato Corner in the United

19    States being vested with and exercised by PCJV USA, LLC; (6)

20    Potato Corner USA being affixed to Potato Corner in the United

21    States; (7) consumer association of Potato Corner in the United

22    States with PCJV USA, LLC, to whom complaints, if any, were

23    lodged; (8) PCJV USA, LLC's creation, development and hold

24    over the goodwill of Potato Corner in the United States for over

25    a decade; (9) Cinco's lack of control of Potato Corner in the

26    United States for over a decade; (10) Plaintiff's lack of control

27    of Potato Corner in the United States after it allegedly acquired

28

1    the U.S. trademarks and before it registered additional Potato

2    Corner trademarks; and (11) Plaintiff's suppression of evidence

3    relevant to ownership.

4       vi. <u>Plaintiff's Supporting Evidence:</u> The registration and Koren's

5    admissions regarding control. Testimony of Koren and Mr.

6    Magsaysay.

7    b. <u>Element No. 2 (if Element No. 1 is not dispositive):</u> The following

8    factors demonstrate PCJV USA, LLC owns the U.S. Potato Corner

9    Trademarks:  (1) which party invented and affixed the mark to the

10    product;  (2) which party's name appeared with the trademark; (3)

11    which party maintained the product's quality and uniformity; (4)

12    which party does the public identify with the product and make

13    complaints to; and (5) which party possesses the goodwill associated

14    with the product.

15       i. Disputed Status of Element 3: The parties dispute that this

16    element is satisfied.

17       ii. <u>Nature of Dispute:</u> Legal and factual.

18       iii. <u>Defendants' Position Statement:</u> Defendants incorporate the

19    above legal position.

20       iv. <u>Plaintiff's Position Statement:</u> this is incomprehensible and not

21    made in good faith.

22       v. <u>Defendants' Supporting Evidence:</u> Defendants incorporate the

23    above legal position reference to evidentiary support.

24       vi. <u>Plaintiff's Supporting Evidence:</u> this is incomprehensible and

25    not made in good faith. Testimony of Gregorio, Tan,

26    Concepcion, and Shaikh and Hussein.

27    c. Causes of Action Barred by this Affirmative Defense: SPAVI's causes

28

JOINTLY FILED CLAIMS TO BE TRIED SECOND
AMENDED JOINTLY FILED CLAIMS,
COUNTERCLAIMS, THIRD PARTY CLAIMS, AND
AFFIRMATIVE DEFENSES TO BE TRIED
175468760.1

CASE NO. 2:24-CV-04546-SB(AGRX)

of action for Trademark Infringement (15 U.S.C. § 1114), Trademark
Infringement (15 U.S.C. § 1125(a)), False Designation of Origin and
Description of Fact (15 U.S.C. § 1125(a)), Contributory Trademark
Infringement (15 U.S.C. § 1114), Contributory Trademark and False
Designation of Fact (15 U.S.C. § 1125(a)), Common Law Trademark
Infringement, Declaratory Relief and Unfair Competition (Bus. &
Prof. Code § 17200).

II.    **Counterclaimants and Third Party Plaintiffs' ("PCJV USA Parties")**
       **Causes of Action to be Tried by a Jury**

       **1)  Cause of Action No. 2: Inducing Breach of Contract**

              b.  Element No. 1: there was a contract between any one of the PCJV
                  USA Parties, on the one hand, and any one of the Cinco parties
                  (inclusive of the "Cinco Group" and "PCI Group") or franchises
                  on the other hand.

                     i.   Disputed Status of Element 1:  The parties dispute this
                          element is satisfied.

                     ii.  Nature of Dispute: factual and legal

                     iii. PCJV USA Parties Legal Position Statement: The term for
                          PCJV USA, LLC's use of the U.S. Potato Corner trademarks
                          "can be [i]mplied from the nature of the contract and
                          circumstances surrounding it."  *See Consolidated Theatres,
                          Inc. v. Theatrical Stage Emp. Union, Local 16*, 69 Cal.2d
                          713, 725 (1968).  The "initial effort of the court, in
                          construing contracts of continuing performance of
                          forbearance which contain no express term of duration, must
                          always be that of implying a term of duration commensurate
                          with the intentions of the parties . . . ."  *Id.* at 727.  Only

Formatted: Font: 14 pt

1       when "the nature of the contract and the totality of the

2       surrounding circumstances give no suggestion as to any

3       ascertainable term . . . , the obligations under the contract

4       shall be terminable at will by any party upon reasonable

5       notice after such a reasonable time has elapsed." *Id.* Further,

6       it is immaterial that SPAVI had full knowledge of the

7       contracts' terms. *See Jenni Rivera Enterprises, LLC v. Latin*

8       *World Entertainment Holdings, Inc.*, 36 Cal. App. 5th 766,

9       783 (2019). Nor is SPAVI's belief about the legal

10      significance of facts or belief that the parties' agreements are

11      legally binding or has a different legal effect from what it is

12      judicially held to have. *See Little v. Amber Hotel Co.*, 202

13      Cal. App. 4th 280, 302 (2011).

14      iv.   <u>Plaintiff's Position Statement:</u> as drafted it is impossible to

15      know what the specific contract is that is at issue here. It has

16      never been disclosed, and still undisclosed. Rather than

17      jettison the claim or actually identify the  contract, instead,

18      Defendants' solution is to fudge with obtuse language in the

19      jury instructions, designed to confuse everyone, including the

20      jury: "there was a contract between any one of the PCJV

21      Plaintiffs and any one of the Cinco parties." Indeed, the only

22      contract that Cinco has been a party to with any of these

23      Counterclaimants is the Settlement Agreement of the Prior

24      Governance Action. There is no other written agreement

25      between  PCJV and Cinco, or between any other

26      Counterclaimant and Cinco.

27      v.   <u>PCJV USA Parties' Supporting Evidence:</u> the following

28

1              categories, which are defined above, capture the key phases

2              and supporting evidence: Superseding Joint Venture (2008–

3              2010), Alternative Licensing Arrangements and Ongoing

4              Ratification (2011–2012), Formalization and Modification of

5              the Joint Venture (2012), LA Group Partnership Agreement

6              and Evolving Business Dynamics and Terms (2013–2018),

7              Dispute, Litigation, and State Court Proceedings (2018 and

8              Beyond), and Ongoing Annual Ratification and Regulatory

9              Compliance.

10         vi.   <u>SPAVI and Cinco Parties' Supporting Evidence:</u> Each of the

11              agreements included in the trial exhibits and  testimony of

12              Mr. Magsaysay, Mr. Koren, and Ms. Victor – all of  which

13              will establish that  none of the Counterclaimants – PCJV,

14              PCIT, LA Group LLC, GK Capital, NKM, or Koren have

15              any contract to which Cinco has privity.

16      c.  <u>Element No. 2:</u> SPAVI knew of the contract.

17          i.   Disputed Status of Element 2:  The parties dispute this

18              element is satisfied.

19         ii.  <u>Nature of Dispute:</u> factual  and legal.

20        iii.  <u>PCJV USA Parties Legal Position Statement:</u> "the contract"

21              refers to each and every applicable contract, including all

22              written, oral, and/or implied-in-fact agreements between the

23              "Cinco Group" and/or "PCI Group," on the one hand, and

24              Cross-Complainants PCJV, PCI Trading, LA Group, GK

25              Capital, NKM, and Koren, on the other hand, inclusive of the

26              JVA/AJVA, LLC Agreement, license agreements, MSA (as

27              restated, amended, modified, or appended over time through

28

1    PCJV meeting minutes, written communications of the PCJV

2    Board, and/or representations made in FDDs); (2) the

3    Settlement Documents between the "Koren Parties" and

4    "Cinco Parties"; and (3) the franchise agreements PCJV

5    entered with franchisees. Plaintiff's position statement does

6    not assert a legal argument

7    iv.    SPAVI and Cinco's Position Statement: as drafted it is

8    impossible to  know what the specific contract is at issue

9    here. It has never been disclosed, and still undisclosed. So,

10    when this element in the instructions says, "the contract,"

11    whereas the prior element refers to some unidentified

12    contract, as a matter of law, yes, this element is disputed. To

13    the extent any actual contract ever existed between Cinco and

14    these parties, the only one that is possible is the Settlement

15    Agreement and corresponding agreement selling PCJV

16    equity to GKK Capital. (Trial Exhibit 1176.) Because Cinco

17    has never been a party to any other contract with any of the

18    Counterclaim Defendants, that is the only one that could

19    possibly be at issue, but Defendants refuse to acknowledge

20    this.

21    v.    PCJV USA Parties' Supporting Evidence: the following

22    category, which is defined above, captures the key phase and

23    supporting evidence: SPAVI Parties' Tortious Conduct.

24    vi.    SPAVI and Cinco Parties' Supporting Evidence: Each of the

25    agreements included in the trial exhibits and  testimony of

26    Mr. Gregorio, Mr.  Tan, Ms. Victor, as well as Mr. Koren  –

27    all of  which will establish that were aware of no contract

28

---

92

1    between none of the Counterclaimants – PCJV, PCIT, LA

2    Group LLC, GK Capital, NKM, or Koren have any contract

3    to which Cinco has privity. After the fact, now, having been

4    sued, SPAVI will unequivocally testify that it had knowledge

5    of the terms off the settlement and never saw the document

6    until this case commenced.

7        d.  <u>Element No. 3:</u> SPAVI intended to cause any one of the Cinco

8           parties or franchisees to breach the contract

9            i.  Disputed Status of Element 3: The parties dispute this

10            element is satisfied.

11          ii.  <u>Nature of Dispute:</u> factual and legal.

12         iii.  <u>PCJV USA Parties' Position Statement:</u> Plaintiff's position

13            statement does not address a legal issue concerning this

14            element. To the extent Plaintiff's position statement

15            addresses element 1, PCJV USA Parties incorporate their

16            respective response here.

17         iv.  <u>Plaintiff's Position Statement:</u> as drafted it is impossible to

18            know what the specific contract is at issue here. It has never

19            been disclosed, and still undisclosed. So, when this element

20            in the instructions says, "the contract," whereas the prior

21            element refers to some unidentified contract, as a matter of

22            law, yes, this element is disputed. To the extent any actual

23            contract ever existed between Cinco and these parties, the

24            only one that is possible is the Settlement Agreement and

25            corresponding agreement selling PCJV equity to GKK

26            Capital. (Trial Exhibit 1176.) Because Cinco has never been

27            a party to any other contract with any of the Counterclaim

28

1  Defendants, that is the only one that could possibly be at

2  issue, but Defendants refuse to acknowledge this.

3      v.   PCJV USA Parties' Supporting Evidence: the following

4  category, which is defined above, captures the key phase and

5  supporting evidence: SPAVI Parties' Tortious Conduct.

6      vi.  SPAVI's Supporting Evidence: Each of the agreements

7  included in the trial exhibits and  testimony of Mr. Gregorio,

8  Mr.  Tan, Ms. Victor, as well as Mr. Koren  – all of  which

9  will establish that they were not aware of and  had no intent

10  to cause anyone to breach any contract.  Also, the

11  correspondence leading up to the termination of the license –

12  Trial Exhibits 20-31 – also confirm the intent was to

13  negotiate a license with PCJV, something for which  years

14  were spent in pursuit, to no avail.

15    e. Element No. 4: SPAVI's conduct caused any one of the Cinco

16  parties to breach the contract

17      i.  Disputed Status of Element 4:  The parties dispute this

18  element is satisfied.

19      ii.  Nature of Dispute: factual and legal.

20      iii.  PCJV USA Parties' Supporting Legal Position: The term for

21  PCJV USA, LLC's use of the U.S. Potato Corner trademarks

22  "can be [i]mplied from the nature of the contract and

23  circumstances surrounding it."  *See Consolidated Theatres,*

24  *Inc. v. Theatrical Stage Emp. Union, Local 16,* 69 Cal.2d

25  713, 725 (1968).  The "initial effort of the court, in

26  construing contracts of continuing performance of

27  forebearance which contain no express term of duration,

28

CASE NO. 2:24-CV-04546-SB(AGRX)

**Formatted:** Font: 14 pt

1  must always be that of implying a term of duration

2  commensurate with the intentions of the parties . . . ." *Id.* at

3  727.  Only when "the nature of the contract and the totality

4  of the surrounding circumstances give no suggestion as to

5  any ascertainable term . . . , the obligations under the contract

6  shall be terminable at will by any party upon reasonable

7  notice after such a reasonable time has elapsed." *Id.* Further,

8  it is immaterial that SPAVI had full knowledge of the

9  contracts' terms. *See Jenni Rivera Enterprises, LLC v. Latin*

10 *World Entertainment Holdings, Inc.*, 36 Cal. App. 5th 766,

11 783 (2019). Nor is SPAVI's belief about the legal

12 significance of facts or belief that the parties' agreements are

13 legally binding or has a different legal effect from what it is

14 judicially held to have.  *See Little v. Amber Hotel Co.*, 202

15 Cal. App. 4th 280, 302 (2011).

16       iv.    Plaintiff's Position Statement: First, this presumes Cinco

17             breached a contract. The only contracts that have been

18             identified as being "breached" are the unsigned licensee

19             agreement and the AJVA. Neither document binds Cinco –

20             indeed, that the AJVA constitutes an agreement to agree and

21             not a contract  has  already been adjudicated and decided as

22             law of the case. It is impossible to  know what the specific

23             contract is at issue here. To the extent any actual contract

24             ever existed between Cinco and these parties, the only one

25             that is possible is the Settlement Agreement and

26             corresponding agreement selling PCJV equity to GKK

27             Capital. (Trial Exhibit 1176.) Because Cinco has never been

28

CASE NO. 2:24-CV-04546-SB(AGRX)

1    a party to any other contract with any of the Counterclaim

2    Defendants, that is the only one that could possibly be at

3    issue, but Defendants refuse to acknowledge this.

4        v.    <u>PCJV USA Parties' Supporting Evidence:</u> the following

5    categories, which are defined above, capture the key phases

6    and supporting evidence: Superseding Joint Venture (2008–

7    2010), Alternative Licensing Arrangements and Ongoing

8    Ratification (2011–2012), Formalization and Modification of

9    the Joint Venture (2012), LA Group Partnership Agreement

10   and Evolving Business Dynamics and Terms (2013–2018),

11   Dispute, Litigation, and State Court Proceedings (2018 and

12   Beyond), Ongoing Annual Ratification and Regulatory

13   Compliance, and SPAVI Parties' Tortious Conduct.

14       vi.   <u>SPAVI Parties' Supporting Evidence:</u> The absence of

15   evidence that  Cinco was a party to, or  breached, any

16   contract with any  of the Counterclaimants is  the supporting

17   evidence.

18     f.   <u>Element No. 5:</u> any one of the PCJV USA Parties were harmed

19       i.    Disputed Status of Element 4:  The parties dispute this

20   element is satisfied.

21       ii.   <u>Nature of Dispute:</u> factual and legal.

22       iii.  <u>PCJV USA Parties' Position Statement:</u> Plaintiff's position

23   statement does not address a legal issue concerning this

24   element. To the extent Plaintiff's position statement

25   addresses element 1, PCJV USA Parties incorporate their

26   respective response here.

27       iv.   <u>Plaintiff's Position Statement:</u> First, this presumes Cinco

28

JOINTLY FILED CLAIMS TO BE TRIEDSECOND
AMENDED JOINTLY FILED CLAIMS,
COUNTERCLAIMS, THIRD PARTY CLAIMS, AND
AFFIRMATIVE DEFENSES TO BE TRIED
175468760.1

CASE NO. 2:24-CV-04546-SB(AGRX)

Formatted: Font: 14 pt

1    breached a contract. The only contracts that have been

2    identified as being "breached" are the unsigned licensee

3    agreement and the AJVA. Neither document binds Cinco –

4    indeed, that the AJVA constitutes an agreement to agree and

5    not a contract  has  already been adjudicated and decided as

6    law of the case. It is impossible to  know what the specific

7    contract is at issue here. To the extent any actual contract

8    ever existed between Cinco and these parties, the only one

9    that is possible is the Settlement Agreement and

10    corresponding agreement selling PCJV equity to GKK

11    Capital. (Trial Exhibit 1176.) Because Cinco has never been

12    a party to any other contract with any of the Counterclaim

13    Defendants, that is the only one that could possibly be at

14    issue, but Defendants refuse to acknowledge this.

15    v.    PCJV USA Parties' Supporting Evidence: the following

16    category, which is defined above, captures the key phase and

17    supporting evidence: SPAVI Parties' Tortious Conduct.

18    vi.    SPAVI Parties' Supporting Evidence: The absence of

19    evidence that  Cinco was a party to, or  breached, any

20    contract with any  of the Counterclaimants is  the supporting

21    evidence, as there is no way any of the Counterclaimants

22    could have been harmed.

23    g.  Element No. 6: SPAVI's conduct  was a substantial factor in

24    causing harm to any of the Counterclaimants.

25    i.    Disputed Status of Element  6:  The parties dispute this

26    element is satisfied.

27    ii.    Nature of Dispute: factual and legal.

28

iii. <u>PCJV USA Parties' Position Statement:</u> Plaintiff's position statement does not address a legal issue concerning this element. To the extent Plaintiff's position statement addresses element 1, PCJV USA Parties incorporate their respective response here

iv. <u>Plaintiff's Position Statement:</u> Again, this presumes Cinco breached a contract. The only contracts that have been identified as being "breached" are the unsigned licensee agreement and the AJVA. Neither document binds Cinco – indeed, that the AJVA constitutes an agreement to agree and not a contract  has  already been adjudicated and decided as law of the case. It is impossible to  know what the specific contract is at issue here. To the extent any actual contract ever existed between Cinco and these parties, the only one that is possible is the Settlement Agreement and corresponding agreement selling PCJV equity to GKK Capital. (Trial Exhibit 1176.) Because Cinco has never been a party to any other contract with any of the Counterclaim Defendants, that is the only one that could possibly be at issue, but Defendants refuse to acknowledge this.

v. <u>PCJV USA Parties' Supporting Evidence:</u> the following categories, which are defined above, capture the key phases and supporting evidence: Superseding Joint Venture (2008–2010), Alternative Licensing Arrangements and Ongoing Ratification (2011–2012), Formalization and Modification of the Joint Venture (2012), LA Group Partnership Agreement and Evolving Business Dynamics and Terms (2013–2018),

1    Dispute, Litigation, and State Court Proceedings (2018 and
2    Beyond), Ongoing Annual Ratification and Regulatory
3    Compliance, and SPAVI Parties' Tortious Conduct.

Formatted: Font: 14 pt

4    vi.    SPAVI and Cinco's Supporting Evidence: SPAVI's only act
5         that could have caused "harm" to any of the
6         Counterclaimants is termination of the license, which it was
7         permitted to do.  The absence of evidence that  Cinco was a
8         party to, or  breached, any contract with any  of the
9         Counterclaimants is  the supporting  evidence, as there is no
10         way any of the Counterclaimants  could have been harmed
11         let alone as a result of any act by SPAVI.
12    **2)  Cause of Action No. 3: Intentional Interference with Contractual**
13         **Relations.**
14    a.    Element No. 1: there were various contracts, including contracts with
15         the Cinco parties, franchisees, suppliers, and vendors,
16         i.    Disputed Status of Element 1:  The parties dispute that this
17              element is satisfied.
18         ii.    Nature of Dispute: Legal and factual
19         iii.    PCJV USA Parties' Legal Position: The term for PCJV USA,
20              LLC's use of the U.S. Potato Corner trademarks "can be
21              [i]mplied from the nature of the contract and circumstances
22              surrounding it."  *See Consolidated Theatres, Inc. v. Theatrical*
23              *Stage Emp. Union, Local 16*, 69 Cal.2d 713, 725 (1968).  The
24              "initial effort of the court, in construing contracts of continuing
25              performance of forbearance which contain no express term of
26              duration, must always be that of implying a term of duration
27              commensurate with the intentions of the parties . . . ."  *Id.* at

28
99

727.  Only when "the nature of the contract and the totality of the surrounding circumstances give no suggestion as to any ascertainable term . . . , the obligations under the contract shall be terminable at will by any party upon reasonable notice after such a reasonable time has elapsed." *Id.* Further, it is immaterial that SPAVI had full knowledge of the contracts' terms. *See Jenni Rivera Enterprises, LLC v. Latin World Entertainment Holdings, Inc.*, 36 Cal. App. 5th 766, 783 (2019). Nor is SPAVI's belief about the legal significance of facts or belief that the parties' agreements are legally binding or has a different legal effect from what it is judicially held to have.  *See Little v. Amber Hotel Co.*, 202 Cal. App. 4th 280, 302 (2011).

vii.    Plaintiff's Supporting Legal Position: The only contracts that have been identified as being "breached" are the unsigned licensee agreement and the AJVA. Neither document binds Cinco – indeed, that the AJVA constitutes an agreement to agree and not a contract  has  already been adjudicated and decided as law of the case. It is impossible to  know what the specific contract is at issue here. To the extent any actual contract ever existed between Cinco and these parties, the only one that is possible is the Settlement Agreement and corresponding agreement selling PCJV equity to GKK Capital. (Trial Exhibit 1176.) Because Cinco has never been a party to any other contract with any of the Counterclaim Defendants, that is the only one that could possibly be at issue, but Defendants refuse to acknowledge this.

iv. <u>PCJV USA Parties' Supporting Evidence:</u> the following categories, which are defined above, capture the key phases and supporting evidence: Superseding Joint Venture (2008–2010), Alternative Licensing Arrangements and Ongoing Ratification (2011–2012), Formalization and Modification of the Joint Venture (2012), LA Group Partnership Agreement and Evolving Business Dynamics and Terms (2013–2018), Dispute, Litigation, and State Court Proceedings (2018 and Beyond), and Ongoing Annual Ratification and Regulatory Compliance.

v. <u>SPAVI and Cinco's Supporting Evidence:</u> the absence of evidence is enough. There are no such contracts

b. <u>Element No. 2</u>: SPAVI knew of <u>the</u> contracts.

i. Disputed Status of Element 2: The parties dispute that this element is satisfied.

i. Nature of Dispute: Factual.

ii. <u>PCJV USA Parties' Supporting Evidence:</u> the following category, which is defined above, captures the key phase and supporting evidence: SPAVI Parties' Tortious Conduct.

iii. <u>Plaintiff's Supporting Evidence:</u> the absence of evidence is enough. There are no such contracts.

c. <u>Element No. 3</u>: SPAVI's <u>conduct prevented</u> performance or made performance more expensive or difficult.

i. Disputed Status of Element 3: The parties dispute that this element is satisfied.

ii. <u>Nature of Dispute:</u> Factual.

iii. <u>PCJV USA Parties' Supporting Evidence:</u> PCJV USA Parties'

---
101

CASE NO. 2:24-CV-04546-SB(AGRX)

Formatted: Font: 14 pt

Formatted: Font: 14 pt

1    Supporting Evidence: the following categories, which are

2    defined above, capture the key phases and supporting

3    evidence: Superseding Joint Venture (2008–2010), Alternative

4    Licensing Arrangements and Ongoing Ratification (2011–

5    2012), Formalization and Modification of the Joint Venture

6    (2012), LA Group Partnership Agreement and Evolving

7    Business Dynamics and Terms (2013–2018), Dispute,

8    Litigation, and State Court Proceedings (2018 and Beyond),

9    Ongoing Annual Ratification and Regulatory Compliance, and

10    SPAVI Parties' Tortious Conduct.

11    iv.    SPAVI and Cinco's Supporting Evidence: the absence of

12    evidence is enough. There are no  such contracts

13    d.    Element No. 4: SPAVI either (a) intended to disrupt the performance

14    of these contracts or (b) knew that disruption of performance was

15    certain or substantially certain to occur.

16    i.    Disputed Status of Element 4:  The parties dispute that this

17    element is satisfied.

18    ii.    Nature of Dispute: Factual.

19    iii.    PCJV USA Parties' Supporting Evidence: the following

20    category, which is defined above, captures the key phase and

21    supporting evidence: SPAVI Parties' Tortious Conduct.

22    iv.    SPAVI and Cinco's Supporting Evidence: the absence of

23    evidence is enough. There are no  such contracts

24    e.    Element No. 5: any one of the PCJV USA Parties were harmed.

25    i.    Disputed Status of Element 5:  The parties dispute that this

26    element is satisfied.

27    ii.    Nature of Dispute: Factual.

28

1           iii.   PCJV USA Parties' Supporting Evidence: [insert].the

2                following category, which is defined above, captures the key

3                phase and supporting evidence: SPAVI Parties' Tortious

4                Conduct.

5           iv.   SPAVI Parties' Supporting Evidence: the absence of evidence

6                is enough. There are no  such contracts.

7      f.   <u>Element No. 6</u>: SPAVI's conduct was a substantial factor in causing

8        any one of the PCJV USA Parties' harm.

9          i.   Disputed Status of Element 6:  The parties dispute that this

10             element is satisfied.

11          ii.   Nature of Dispute: Factual.

12          iii.   PCJV USA Parties' Supporting Evidence: [insert].the

13                following category, which is defined above, captures the key

14                phase and supporting evidence: SPAVI Parties' Tortious

15                Conduct.

16          iv.   SPAVI Parties' Supporting Evidence: the absence of evidence

17                is enough. There are no  such contracts

18    **3) <u>Cause of Action No. 4: Interference with Prospective Economic</u>**

19       **<u>Relations.</u>**

20      a.   <u>Element No. 1</u>: any one of the PCJV USA Parties were in various

21        economic relations, including with Cinco parties, franchisees,

22        suppliers, and venders in that probably would have resulted in an

23        economic benefit to Defendants.

24          i.   Disputed Status of Element 1:  The parties dispute that this

25             element is satisfied.

26          ii.   Nature of Dispute: Legal and factual.

27          iii.   PCJV USA Parties' Supporting Legal Position: The term for

28

JOINTLY FILED CLAIMS TO BE TRIEDSECOND
AMENDED JOINTLY FILED CLAIMS,
COUNTERCLAIMS, THIRD PARTY CLAIMS, AND
AFFIRMATIVE DEFENSES TO BE TRIED
175468760.1
                                CASE NO. 2:24-CV-04546-SB(AGRX)

1    PCJV USA, LLC's use of the U.S. Potato Corner trademarks

2    "can be [i]mplied from the nature of the contract and

3    circumstances surrounding it." *See Consolidated Theatres,*

4    *Inc. v. Theatrical Stage Emp. Union, Local 16*, 69 Cal.2d 713,

5    725 (1968).  The "initial effort of the court, in construing

6    contracts of continuing performance of forebearance which

7    contain no express term of duration, must always be that of

8    implying a term of duration commensurate with the intentions

9    of the parties . . . ." *Id.* at 727.  Only when "the nature of the

10   contract and the totality of the surrounding circumstances give

11   no suggestion as to any ascertainable term . . . , the obligations

12   under the contract shall be terminable at will by any party

13   upon reasonable notice after such a reasonable time has

14   elapsed." *Id.* Further, it is immaterial that SPAVI had full

15   knowledge of the contracts' terms. *See Jenni Rivera*

16   *Enterprises, LLC v. Latin World Entertainment Holdings, Inc.*,

17   36 Cal. App. 5th 766, 783 (2019). Nor is SPAVI's belief about

18   the legal significance of facts or belief that the parties'

19   agreements are legally binding or has a different legal effect

20   from what it is judicially held to have.  See Little v. Amber

21   Hotel Co., 202 Cal. App. 4th 280, 302 (2011).

22   iv.    Plaintiff's Supporting Legal Position: the only relationships

23          SPAVI knew about were with franchisees and certain vendors.

24          the specific  relationships at issue here have never been

25          disclosed.

26   v.     PCJV USA Parties' Supporting Evidence: the following

27          categories, which are defined above, capture the key phases

28

1    and supporting evidence: Superseding Joint Venture (2008–

2    2010), Alternative Licensing Arrangements and Ongoing

3    Ratification (2011–2012), Formalization and Modification of

4    the Joint Venture (2012), LA Group Partnership Agreement

5    and Evolving Business Dynamics and Terms (2013–2018),

6    Dispute, Litigation, and State Court Proceedings (2018 and

7    Beyond), and Ongoing Annual Ratification and Regulatory

8    Compliance.

9        vi.    SPAVI's Supporting Evidence: testimony of executives.

10    b. Element No. 2: SPAVI knew of the relationships.

11        i.    Disputed Status of Element 2:  The parties dispute that this

12               element is satisfied.

13        ii.    Nature of Dispute: Factual.

14        iii.   PCJV USA Parties' Supporting Evidence: the following

15               category, which is defined above, captures the key phase and

16               supporting evidence: SPAVI Parties' Tortious Conduct.

17        iv.    SPAVI's Supporting Evidence: testimony of executives

18    c. Element No. 3: SPAVI engaged in conduct to destroy the value of any

19       one of the PCJV USA Parties' relationships by usurping the benefits of

20       those relationships for SPAVI's benefit.

21        i.    Disputed Status of Element 3:  The parties dispute that this

22               element is satisfied.

23        ii.    Nature of Dispute: Factual.

24        iii.   PCJV USA Parties' Supporting Evidence: the following

25               category, which is defined above, captures the key phase and

26               supporting evidence: SPAVI Parties' Tortious Conduct.

27        iv.    SPAVI's Supporting Evidence: Testimony of Tan and

28

JOINTLY FILED CLAIMS TO BE TRIEDSECOND
AMENDED JOINTLY FILED CLAIMS,
COUNTERCLAIMS, THIRD PARTY CLAIMS, AND
AFFIRMATIVE DEFENSES TO BE TRIED
175468760.1
                                                    CASE NO. 2:24-CV-04546-SB(AGRX)

1               Concepcion and Victor and Shaikh and Hussein will all

2               support SPAVI here.

3      d. <u>Element No. 4</u>: by engaging in this conduct, SPAVI either (a) intended

4        to disrupt the relationships or (b) knew that disruption of the

5        relationships was certain or substantially certain to occur.

6           i.   Disputed Status of Element 4:  The parties dispute that this

7              element is satisfied.

8           ii.   Nature of Dispute: Factual.

9          iii.   <u>PCJV USA Parties' Supporting Evidence:</u> the following

10              category, which is defined above, captures the key phase and

11              supporting evidence: SPAVI Parties' Tortious Conduct.

12          iv.   <u>SPAVI's Supporting Evidence:</u> Tan and Concepcion and

13              Victor and Shaikh and Hussein will all support SPAVI here.

14      e. <u>Element No. 5</u>: those relationships were disrupted.

15           i.   Disputed Status of Element 5:  The parties dispute that this

16              element is satisfied.

17           ii.   Nature of Dispute: Factual.

18          iii.   <u>PCJV USA Parties' Supporting Evidence:</u> the following

19              categories, which are defined above, capture the key phases

20              and supporting evidence: Superseding Joint Venture (2008–

21              2010), Alternative Licensing Arrangements and Ongoing

22              Ratification (2011–2012), Formalization and Modification of

23              the Joint Venture (2012), LA Group Partnership Agreement

24              and Evolving Business Dynamics and Terms (2013–2018),

25              Dispute, Litigation, and State Court Proceedings (2018 and

26              Beyond), Ongoing Annual Ratification and Regulatory

27              Compliance, and SPAVI Parties' Tortious Conduct.

28

iv.   SPAVI Parties' Supporting Evidence: it is unknown what
      relationships were disrupted.

f.   Element No. 6: any one of the PCJV USA Parties were harmed.

   i.   Disputed Status of Element 6:  The parties dispute that this
        element is satisfied.

   ii.   Nature of Dispute: Factual.

   iii.   PCJV USA Parties' Supporting Evidence: the following
          category, which is defined above, captures the key phase and
          supporting evidence: SPAVI Parties' Tortious Conduct.

   iv.   SPAVI Parties' Supporting Evidence: no proof of this has ever
         been established, particularly harm caused by any of the
         responding parties.

g.   Element No. 7: SPAVI's conduct was a substantial factor in causing
     any one of the PCJV USA Parties' harm.

   i.   Disputed Status of Element 7:  The parties dispute that this
        element is satisfied.

   ii.   Nature of Dispute: Factual.

   iii.   PCJV USA Parties' Supporting Evidence: the following
          category, which is defined above, captures the key phase and
          supporting evidence: SPAVI Parties' Tortious Conduct.

   iv.   SPAVI Parties' Supporting Evidence: no proof of this has ever
         been established, particularly harm caused by any of the
         responding parties.

4) **Cause of Action No. 5: Negligent Interference with Prospective
   Economic Advantage.**

a.   Element No. 1: any one of the PCJV USA Parties were in various
     economic relations, including with Cinco parties, franchisees,

1    suppliers, and venders that probably would have resulted in a future

2    economic benefit to any one of the PCJV USA Parties.

      i.    Disputed Status of Element 1:  The parties dispute that this

             element is satisfied.

      ii.   Nature of Dispute: Legal and factual.

      iii.  <u>PCJV USA Parties' Supporting Legal Position:</u> The term for

             PCJV USA, LLC's use of the U.S. Potato Corner trademarks

             "can be [i]mplied from the nature of the contract and

             circumstances surrounding it." *See Consolidated Theatres,*

             Inc*. v. Theatrical Stage Emp. Union, Local 16*, 69 Cal.2d 713,

             725 (1968).  The "initial effort of the court, in construing

             contracts of continuing performance of forebearance which

             contain no express term of duration, must always be that of

             implying a term of duration commensurate with the intentions

             of the parties . . . ." *Id.* at 727.  Only when "the nature of the

             contract and the totality of the surrounding circumstances give

             no suggestion as to any ascertainable term . . . , the obligations

             under the contract shall be terminable at will by any party

             upon reasonable notice after such a reasonable time has

             elapsed." *Id.* Further, it is immaterial that SPAVI had full

             knowledge of the contracts' terms. *See Jenni Rivera*

             *Enterprises, LLC v. Latin World Entertainment Holdings, Inc.*,

             36 Cal. App. 5th 766, 783 (2019). Nor is SPAVI's belief about

             the legal significance of facts or belief that the parties'

             agreements are legally binding or has a different legal effect

             from what it is judicially held to have.  *See Little v. Amber*

             *Hotel Co.*, 202 Cal. App. 4th 280, 302 (2011).

1            vii.     <u>Plaintiff's Supporting Legal Position:</u> the only relationships

2                    SPAVI knew about were with franchisees and certain vendors.

3                    the specific  relationships at issue here have never been

4                    disclosed.

5            iv.     <u>PCJV USA Parties' Supporting Evidence:</u> documents and

6                    testimony including and related to prospective supplier

7                    economic relationships and franchisee relations.  the following

8                    categories, which are defined above, capture the key phases

9                    and supporting evidence: Superseding Joint Venture (2008–

10                    2010), Alternative Licensing Arrangements and Ongoing

11                    Ratification (2011–2012), Formalization and Modification of

12                    the Joint Venture (2012), LA Group Partnership Agreement

13                    and Evolving Business Dynamics and Terms (2013–2018),

14                    Dispute, Litigation, and State Court Proceedings (2018 and

15                    Beyond), Ongoing Annual Ratification and Regulatory

16                    Compliance, and SPAVI Parties' Tortious Conduct.

17            v.     <u>SPAVI's Supporting Evidence:</u> testimony of executives.

18       b.   <u>Element No. 2</u>: SPAVI knew or should have known of these

19         relationships.

20            i.     Disputed Status of Element 2:  The parties dispute that this

21                    element is satisfied.

22            ii.     Nature of Dispute: Factual.

23            iii.     <u>PCJV USA Parties' Supporting Evidence</u>: the following

24                    category, which is defined above, captures the key phase and

25                    supporting evidence: SPAVI Parties' Tortious Conduct.

26            iv.     <u>SPAVI Parties' Supporting Evidence:</u> testimony of executives

27       c.   <u>Element No. 3</u>: SPAVI knew or should have known that these

28

1    relationships would be disrupted if it failed to act with reasonable care.

2       i.   Disputed Status of Element 3:  The parties dispute that this

3          element is satisfied.

4      ii.   Nature of Dispute: Factual.

5     iii.   <u>PCJV USA Parties' Supporting Evidence:</u> the following

6          category, which is defined above, captures the key phase and

7          supporting evidence: SPAVI Parties' Tortious Conduct.

8      iv.   <u>SPAVI's Supporting Evidence:</u> Testimony of Tan and

9          Concepcion and Victor and Shaikh and Hussein will all

10         support SPAVI here

11   d.  <u>Element No. 4</u>: SPAVI failed to act with reasonable care.

12       i.   Disputed Status of Element 4:  The parties dispute that this

13          element is satisfied.

14      ii.   Nature of Dispute: Factual.

15     iii.   <u>PCJV USA Parties' Supporting Evidence:</u> the following

16          category, which is defined above, captures the key phase and

17          supporting evidence: SPAVI Parties' Tortious Conduct.

18      iv.   <u>SPAVI's Supporting Evidence:</u> Tan and Concepcion and

19          Victor and Shaikh and Hussein will all support SPAVI here

20   e.  <u>Element No. 5</u>: SPAVI engaged in wrongful conduct through engaging

21   in conduct to destroy the value of any one of the PCJV USA Parties'

22   relationships by usurping the benefits of those relationships for

23   SPAVI's benefit.

24       i.   Disputed Status of Element 5:  The parties dispute that this

25          element is satisfied.

26      ii.   Nature of Dispute: Factual.

27     iii.   <u>PCJV USA Parties' Supporting Evidence:</u> the following

28

                        

1    categories, which are defined above, capture the key phases

2    and supporting evidence: Superseding Joint Venture (2008–

3    2010), Alternative Licensing Arrangements and Ongoing

4    Ratification (2011–2012), Formalization and Modification of

5    the Joint Venture (2012), LA Group Partnership Agreement

6    and Evolving Business Dynamics and Terms (2013–2018),

7    Dispute, Litigation, and State Court Proceedings (2018 and

8    Beyond), Ongoing Annual Ratification and Regulatory

9    Compliance, and SPAVI Parties' Tortious Conduct.

10        iv.    SPAVI Parties' Supporting Evidence: Tan and Concepcion

11               and Victor and Shaikh and Hussein will all support SPAVI

12               here

13    f.  Element No. 6: the relationships were disrupted.

14        i.     Disputed Status of Element 6:  The parties dispute that this

15               element is satisfied.

16        ii.    Nature of Dispute: Factual.

17        iii.   PCJV USA Parties' Supporting Evidence: the following

18               category, which is defined above, captures the key phase and

19               supporting evidence: SPAVI Parties' Tortious Conduct.

20        iv.    SPAVI Parties' Supporting Evidence: SPAVI is unaware of

21               what relationships were harmed.

22    g.  Element No. 7: any one of the PCJV USA Parties were harmed.

23        i.     Disputed Status of Element 7:  The parties dispute that this

24               element is satisfied.

25        ii.    Nature of Dispute: Factual.

26        iii.   PCJV USA Parties' Supporting Evidence: the following

27               category, which is defined above, captures the key phase and

28

1            supporting evidence: SPAVI Parties' Tortious Conduct.

2         i.    <u>SPAVI Parties' Supporting Evidence:</u> no proof of this has ever

3            been established, particularly harm caused by any of the

4            responding parties

5      h. <u>Element No. 8</u>: SPAVI's wrongful conduct was a substantial factor in

6        causing Defendants' harm.

7         i.    Disputed Status of Element 8:  The parties dispute that this

8            element is satisfied.

9         ii.    Nature of Dispute: Factual.

10        iii.    <u>PCJV USA Parties' Supporting Evidence</u>: the following

11            category, which is defined above, captures the key phase and

12            supporting evidence: SPAVI Parties' Tortious Conduct.

13        iv.    <u>SPAVI's Supporting Evidence:</u> no proof of this has ever been

14            established, particularly harm caused by any of the responding

15            parties.

16   **5) Cause of Action No. 6: Aiding and Abetting Torts.**

17      a. <u>Element No. 1</u>: SPAVI knew that a breach of a fiduciary duty, breach

18        of the implied covenant of good faith and fair dealing, fraud, or

19        conversion was going to be committed by Cinco Corporation, its

20        affiliates, or its agents against any one of the PCJV USA Parties.

21         i.    Disputed Status of Element 1:  The parties dispute that this

22            element is satisfied.

23         ii.    Nature of Dispute: Factual.

24        iii.    <u>PCJV USA Parties' Supporting Evidence</u>: the following

25            categories, which are defined above, capture the key phases

26            and supporting evidence: Superseding Joint Venture (2008–

27            2010), Alternative Licensing Arrangements and Ongoing

28

1                 Ratification (2011–2012), Formalization and Modification of

2                 the Joint Venture (2012), LA Group Partnership Agreement

3                 and Evolving Business Dynamics and Terms (2013–2018),

4                 Dispute, Litigation, and State Court Proceedings (2018 and

5                 Beyond), Ongoing Annual Ratification and Regulatory

6                 Compliance, and SPAVI Parties' Tortious Conduct

7        iv.   <u>SPAVI's Supporting Evidence:</u> no torts have occurred so

8                nothing could be aided or abetted.

9      b.  <u>Element No. 2</u>: SPAVI gave substantial assistance or encouragement

10       to Cinco Corporation, its affiliates, or its agents.

11        v.   Disputed Status of Element 2:  The parties dispute that this

12                element is satisfied.

13        vi.   Nature of Dispute: Factual.

14       vii.   <u>PCJV USA Parties' Supporting Evidence:</u> the following

15                category, which is defined above, captures the key phase and

16                supporting evidence: SPAVI Parties' Tortious Conduct.

17      viii.   <u>SPAVI's Supporting Evidence:</u> no torts have occurred so

18                nothing could be aided or abetted.

19      c.  <u>Element No. 3</u>: Cinco Corporation's, its affiliates, or tis agents'

20       conduct was a substantial factor in causing harm to any one of the

21       PCJV USA Parties.

22        ix.   Disputed Status of Element 3:  The parties dispute that this

23                element is satisfied.

24        x.   Nature of Dispute: Factual.

25       xi.   <u>PCJV USA Parties' Supporting Evidence:</u> the following

26                category, which is defined above, captures the key phase and

27                supporting evidence: SPAVI Parties' Tortious Conduct.

28

---

113

xii.   SPAVI's Supporting Evidence: no torts have occurred so nothing could be aided or abetted.

6) **Cause of Action No. 7: First Count of Breach of Fiduciary Duty.**

   a. Element No. 1: either Cinco Corporation or SPAVI, as Cinco Corporation's successor-in-interest, was a joint venture partner of PCJV.

      i.   Disputed Status of Element 1:  The parties dispute that this element is satisfied.

      ii.   Nature of Dispute: Factual.

      iii.   ~~PCJV USA Parties' Supporting Evidence:~~ [insert]

      iii.   PCJV USA Parties' Supporting Evidence: the following categories, which are defined above, capture the key phases and supporting evidence: Superseding Joint Venture (2008–2010), Alternative Licensing Arrangements and Ongoing Ratification (2011–2012), Formalization and Modification of the Joint Venture (2012), LA Group Partnership Agreement and Evolving Business Dynamics and Terms (2013–2018), Dispute, Litigation, and State Court Proceedings (2018 and Beyond), and Ongoing Annual Ratification and Regulatory Compliance.

      iv.   SPAVI and Cinco's Supporting Evidence: the absence of evidence will suffice. Also, no evidence that SPAVI is a successor in interest or took on this liability

   b. Element No. 2: Cinco Corporation or SPAVI, as Cinco Corporation's successor-in-interest, acted on PCJV's behalf for purposes of providing PCJV with an exclusive right to use the Potato Corner trademark in the United States.

---

114

1          i.    Disputed Status of Element 2:  The parties dispute that this

2               element is satisfied.

3         ii.    Nature of Dispute: Factual

4       iii.    <u>PCJV USA Parties' Supporting Evidence:</u> the following

5               categories, which are defined above, capture the key phases

6               and supporting evidence: Superseding Joint Venture (2008–

7               2010), Alternative Licensing Arrangements and Ongoing

8               Ratification (2011–2012), Formalization and Modification of

9               the Joint Venture (2012), LA Group Partnership Agreement

10              and Evolving Business Dynamics and Terms (2013–2018),

11              Dispute, Litigation, and State Court Proceedings (2018 and

12              Beyond), Ongoing Annual Ratification and Regulatory

13              Compliance, and SPAVI Parties' Tortious Conduct

14      iv.    <u>SPAVI and Cinco's Supporting Evidence:</u> the absence of

15              evidence will suffice. Also, no evidence that SPAVI is a

16              successor in interest or took on this liability

17     c.  <u>Element No. 3</u>: Cinco Corporation or SPAVI, as Cinco Corporation's

18        successor-in-interest, failed to act as a reasonably careful partner

19        would have acted under the same or similar circumstances.

20         i.    Disputed Status of Element 3:  The parties dispute that this

21              element is satisfied.

22        ii.    Nature of Dispute: Factual

23      iii.    <u>PCJV USA Parties' Supporting Evidence:</u> the following

24              categories, which are defined above, capture the key phases

25              and supporting evidence: Superseding Joint Venture (2008–

26              2010), Alternative Licensing Arrangements and Ongoing

27              Ratification (2011–2012), Formalization and Modification of

28

~~JOINTLY FILED CLAIMS TO BE TRIED~~SECOND
AMENDED JOINTLY FILED CLAIMS,
COUNTERCLAIMS, THIRD PARTY CLAIMS, AND
AFFIRMATIVE DEFENSES TO BE TRIED
~~175468760.1~~

CASE NO. 2:24-CV-04546-SB(AGRX)

1    the Joint Venture (2012), LA Group Partnership Agreement

2    and Evolving Business Dynamics and Terms (2013–2018),

3    Dispute, Litigation, and State Court Proceedings (2018 and

4    Beyond), Ongoing Annual Ratification and Regulatory

5    Compliance, and SPAVI Parties' Tortious Conduct

6    iv.   SPAVI and Cinco's Supporting Evidence: the absence of

7    evidence of a duty will suffice. Also, no evidence that SPAVI

8    is a successor in interest or took on this liability

9    d.   Element No. 4: any one of the PCJV USA Parties were harmed.

10    i.   Disputed Status of Element 4:  The parties dispute that this

11    element is satisfied.

12    ii.   Nature of Dispute: factual

13    iii.   PCJV USA Parties' Supporting Evidence: the following

14    category, which is defined above, captures the key phase and

15    supporting evidence: SPAVI Parties' Tortious Conduct.

16    iv.   SPAVI and Cinco's Supporting Evidence: the absence of

17    evidence of a duty will suffice. Also, no evidence that SPAVI

18    is a successor in interest or took on this liability

19    e.   Element No. 5: the conduct of Cinco Corporation or SPAVI, as Cinco

20    Corporation's successor-in-interest, was a substantial factor in causing

21    any one of the PCJV USA Parties' harm.

22    i.   Disputed Status of Element 5:  The parties dispute that this

23    element is satisfied.

24    ii.   Nature of Dispute: factual

25    iii.   PCJV USA Parties' Supporting Evidence: the following

26    category, which is defined above, captures the key phase and

27    supporting evidence: SPAVI Parties' Tortious Conduct

28

1      iv.  <u>SPAVI and Cinco's Supporting Evidence:</u> the absence of

2           evidence of a duty will suffice. Also, no evidence that SPAVI

3           is a successor in interest or took on this liability

4    **7) <u>Cause of Action No. 7: Second Count of Breach of Fiduciary Duty.</u>**

5      a. <u>Element No. 1</u>: Cinco Corporation or SPAVI, as Cinco Corporation's

6         successor-in-interest, was a joint venture partner of PCJV.

7         i.  Disputed Status of Element 1:  The parties dispute that this

8             element is satisfied.

9         ii. <u>Nature of Dispute:</u> factual

10        iii. ~~PCJV USA Parties' Supporting Evidence: [insert]~~

11        iii.  PCJV USA Parties' Supporting Evidence: the following

12              categories, which are defined above, capture the key phases

13              and supporting evidence: Superseding Joint Venture (2008–

14              2010), Alternative Licensing Arrangements and Ongoing

15              Ratification (2011–2012), Formalization and Modification of

16              the Joint Venture (2012), LA Group Partnership Agreement

17              and Evolving Business Dynamics and Terms (2013–2018),

18              Dispute, Litigation, and State Court Proceedings (2018 and

19              Beyond), and Ongoing Annual Ratification and Regulatory

20              Compliance.

21        iv. <u>SPAVI and Cinco's Supporting Evidence:</u> the absence of

22            evidence of a duty will suffice. Also, no evidence that SPAVI

23            is a successor in interest or took on this liability

24      b. <u>Element No. 2</u>: Cinco Corporation or SPAVI, as Cinco Corporation's

25         successor-in-interest, knowingly acted against interests of PCJV and

26         PCJV's other joint venture partners in connection with providing

27         PCJV with an exclusive right to use the Potato Corner trademark in the

28

1       United States.

2           i.    Disputed Status of Element 2:  The parties dispute that this

3                element is satisfied.

4           ii.   Nature of Dispute: Factual

5          iii.  <u>PCJV USA Parties' Supporting Evidence:</u> the following

6                categories, which are defined above, capture the key phases

7                and supporting evidence: Superseding Joint Venture (2008–

8                2010), Alternative Licensing Arrangements and Ongoing

9                Ratification (2011–2012), Formalization and Modification of

10             the Joint Venture (2012), LA Group Partnership Agreement

11             and Evolving Business Dynamics and Terms (2013–2018),

12             Dispute, Litigation, and State Court Proceedings (2018 and

13             Beyond), Ongoing Annual Ratification and Regulatory

14             Compliance, and SPAVI Parties' Tortious Conduct

15          iv.  <u>SPAVI and Cinco's Supporting Evidence:</u> the absence of

16                evidence of a duty will suffice. Also, no evidence that SPAVI

17                is a successor in interest or took on this liability

18     c.  <u>Element No. 3</u>: any one of the PCJV USA Parties did not give

19        informed consent to the conduct of Cinco Corporation or SPAVI, as

20        Cinco Corporation's successor-in-interest.

21           i.    Disputed Status of Element 3:  The parties dispute that this

22                element is satisfied.

23          ii.   Nature of Dispute: Factual

24          iii.  <u>PCJV USA Parties' Supporting Evidence:</u> the following

25                categories, which are defined above, capture the key phases

26                and supporting evidence: Superseding Joint Venture (2008–

27                2010), Alternative Licensing Arrangements and Ongoing

28

~~JOINTLY FILED CLAIMS TO BE TRIED~~SECOND
AMENDED JOINTLY FILED CLAIMS,
COUNTERCLAIMS, THIRD PARTY CLAIMS, AND
AFFIRMATIVE DEFENSES TO BE TRIED
~~175468760.1~~

CASE NO. 2:24-CV-04546-SB(AGRX)

1    Ratification (2011–2012), Formalization and Modification of

2    the Joint Venture (2012), LA Group Partnership Agreement

3    and Evolving Business Dynamics and Terms (2013–2018),

4    Dispute, Litigation, and State Court Proceedings (2018 and

5    Beyond), Ongoing Annual Ratification and Regulatory

6    Compliance, and SPAVI Parties' Tortious Conduct.

7         iv.   SPAVI and Cinco's Supporting Evidence: the absence of

8               evidence of a duty will suffice. Also, no evidence that SPAVI

9               is a successor in interest or took on this liability

10   d.  Element No. 4: any one of the PCJV USA Parties were harmed,

11        i.    Disputed Status of Element 4:  The parties dispute that this

12              element is satisfied.

13        ii.   Nature of Dispute: Factual.

14        iii.  PCJV USA Parties' Supporting Evidence: the following

15              category, which is defined above, captures the key phase and

16              supporting evidence: SPAVI Parties' Tortious Conduct.

17        iv.   SPAVI and Cinco's Supporting Evidence: the absence of

18              evidence of a duty will suffice. Also, no evidence that SPAVI

19              is a successor in interest or took on this liability

20   e.  Element No. 5: the conduct of Cinco Corporation or SPAVI, as Cinco

21        Corporation's successor-in-interest, was a substantial factor in causing

22        any one of the PCJV USA Parties' harm.

23        i.    Disputed Status of Element 5:  The parties dispute that this

24              element is satisfied.

25        ii.   Nature of Dispute: factual

26        iii.  PCJV USA Parties' Supporting Evidence: the following

27              category, which is defined above, captures the key phase and

28

119

1    supporting evidence: SPAVI Parties' Tortious Conduct

2    iv.    SPAVI and Cinco's Supporting Evidence: the absence of

3    evidence of a duty will suffice. Also, no evidence that SPAVI

4    is a successor in interest or took on this liability

5    **8) Cause of Action No. ~~7~~8: Breach of Contract.**

6    a. Element No. 1: there is a contract between PCJV and Cinco

7    Corporation or SPAVI, as Cinco Corporation's successor-in-interest.

8    i.    Disputed Status of Element 1: The parties dispute this

9    element is satisfied.

10    ii.    Nature of Dispute: factual and legal

11    iii.    PCJV USA Parties' Position Statement: The term for PCJV

12    USA, LLC's use of the U.S. Potato Corner trademarks "can

13    be [i]mplied from the nature of the contract and

14    circumstances surrounding it." *See Consolidated Theatres,*

15    *Inc. v. Theatrical Stage Emp. Union, Local 16*, 69 Cal.2d

16    713, 725 (1968). The "initial effort of the court, in construing

17    contracts of continuing performance of forebearance which

18    contain no express term of duration, must always be that of

19    implying a term of duration commensurate with the

20    intentions of the parties . . . ." *Id.* at 727. Only when "the

21    nature of the contract and the totality of the surrounding

22    circumstances give no suggestion as to any ascertainable

23    term . . . , the obligations under the contract shall be

24    terminable at will by any party upon reasonable notice after

25    such a reasonable time has elapsed." *Id.* Further, it is

26    immaterial that SPAVI had full knowledge of the contracts'

27    terms. *See Jenni Rivera Enterprises, LLC v. Latin World*

28

1    *Entertainment Holdings, Inc.*, 36 Cal. App. 5th 766, 783

2    (2019). Nor is SPAVI's belief about the legal significance of

3    facts or belief that the parties' agreements are legally binding

4    or has a different legal effect from what it is judicially held to

5    have.  *See Little v. Amber Hotel Co.*, 202 Cal. App. 4th 280,

6    302 (2011)

7    iv.    <u>Plaintiff's Position Statement:</u> as drafted it is impossible to

8    know what the specific contract is that is at issue here. It has

9    never been disclosed, and still undisclosed. Rather than

10   jettison the claim or actually identify the  contract, instead,

11   Defendants' solution is to fudge with obtuse language in the

12   jury instructions, designed to confuse everyone, including the

13   jury: "there was a contract between any one of the PCJV

14   Plaintiffs and any one of the Cinco parties." Indeed, the only

15   contract that Cinco has been a party to with any of these

16   Counterclaimants is the Settlement Agreement of the Prior

17   Governance Action. There is no other written agreement

18   between  PCJV and Cinco, or between any other

19   Counterclaimant and Cinco.  It is possible that

20   Counterclaimants are seeking to allege that Cinco is an alter

21   ego of Potato Corner  International or others, however,

22   PCJV and the other counterclaimants already  alleged this --

23   alt3er ego status of Cinco --  and after a negotiated

24   settlement, dismissed this claim with prejudice. They may

25   not raise it now. *See, e.g., Torrey Pines Bank v. Superior Ct*.,

26   216 Cal. App. 3d 813, 820 (Ct. App. 1989) (holding that ""a

27   dismissal with prejudice is the maiden name for a  common

28

1    law retraxit," and "[a] retraxit is equivalent to a judgment on

2    the merits and as such bars further litigation on the same

3    subject matter between the parties."); *Datta v. Staab*, 173

4    Cal. App. 2d 613, 620—21 (1959) ("The effect of a dismissal

5    with prejudice is quite different, however, when it is

6    executed and filed in return for a consideration moving from

7    the defendant. Such a dismissal operates as a complete bar to

8    any future action and has the same legal effect as a common

9    law petraxit.").

10   v.    Defendants' Supporting Evidence: the following categories,

11         which are defined above, capture the key phases and

12         supporting evidence: Superseding Joint Venture (2008–

13         2010), Alternative Licensing Arrangements and Ongoing

14         Ratification (2011–2012), Formalization and Modification of

15         the Joint Venture (2012), LA Group Partnership Agreement

16         and Evolving Business Dynamics and Terms (2013–2018),

17         Dispute, Litigation, and State Court Proceedings (2018 and

18         Beyond), and Ongoing Annual Ratification and Regulatory

19         Compliance.

20   vi.   SPAVI Parties' Supporting Evidence: Each of the

21         agreements included in the trial exhibits and  testimony of

22         Mr. Magsaysay, Mr. Koren, and Ms. Victor – all of  which

23         will establish that  none of the Counterclaimants – PCJV,

24         PCIT, LA Group LLC, GK Capital, NKM, or Koren have

25         any contract to which Cinco has privity; the settlement

26         agreement (Trial Exhibit 1172) and evidence of the

27         dismissals with  prejudice, as well as the pleadings in the

28

122

1  |  prior case establishing what has been dismissed, and subject

2  |  to retrax it.

3  |     b.  <u>Element No. 2:</u> PCJV USA Parties did all or substantially all of the

4  |  things required under the contract, or were excused from so

5  |  performing:

6  |       i.  Disputed Status of Element 2:  The parties dispute this

7  |  element is satisfied.

8  |      ii.  Nature of Dispute: factual  and legal.

9  |     iii.  <u>PCJV USA Parties' Position Statement:</u> Plaintiff's position

10 |  statement does not address a legal issue concerning this

11 |  element. To the extent Plaintiff's position statement

12 |  addresses element 1, PCJV USA Parties incorporate their

13 |  respective response here

14 |     iv.  <u>Plaintiff's Position Statement:</u> as drafted it is impossible to

15 |  know what the specific contract is at issue here. It has never

16 |  been disclosed, and still undisclosed. So, when this element

17 |  in the instructions says, "the contract," whereas the prior

18 |  element refers to some unidentified contract, as a matter of

19 |  law, yes, this element is disputed. To the extent any actual

20 |  contract ever existed between Cinco and these parties, the

21 |  only one that is possible is the Settlement Agreement and

22 |  corresponding agreement selling PCJV equity to GKK

23 |  Capital. (Trial Exhibit 1176.) Because Cinco has never been

24 |  a party to any other contract with any of the Counterclaim

25 |  Defendants, that is the only one that could possibly be at

26 |  issue, but Defendants refuse to acknowledge this. It is

27 |  possible that Counterclaimants are seeking to allege that

28 |

<center>123</center>

<s>JOINTLY FILED CLAIMS TO BE TRIED</s>SECOND
AMENDED JOINTLY FILED CLAIMS,
COUNTERCLAIMS, THIRD PARTY CLAIMS, AND
AFFIRMATIVE DEFENSES TO BE TRIED
<s>175468760.1</s>

CASE NO. 2:24-CV-04546-SB(AGRX)

1    Cinco is an alter ego of Potato Corner International or

2    others, however, PCJV and the other counterclaimants

3    already alleged this -- alter ego status of Cinco -- and after

4    a negotiated settlement, dismissed this claim with prejudice.

5    They may not raise it now. *See, e.g., Torrey Pines Bank v.*

6    *Superior Ct.*, 216 Cal. App. 3d 813, 820 (Ct. App. 1989)

7    (holding that "a dismissal with prejudice is the maiden name

8    fir a common law retraxit," and "[a] retraxit is equivalent to a

9    judgment on the merits and as such bars further litigation on

10   the same subject matter between the parties."); *Datta v.*

11   *Staab*, 173 Cal. App. 2d 613, 620—21 (1959) ("The effect of

12   a dismissal with prejudice is quite different, however, when

13   it is executed and filed in return for a consideration moving

14   from the defendant. Such a dismissal operates as a complete

15   bar to any future action and has the same legal effect as a

16   common law petraxit.") (internal

17       v.    PCJV USA Parties' Supporting Evidence: the following

18   categories, which are defined above, capture the key phases

19   and supporting evidence: Superseding Joint Venture (2008–

20   2010), Alternative Licensing Arrangements and Ongoing

21   Ratification (2011–2012), Formalization and Modification of

22   the Joint Venture (2012), LA Group Partnership Agreement

23   and Evolving Business Dynamics and Terms (2013–2018),

24   Dispute, Litigation, and State Court Proceedings (2018 and

25   Beyond), and Ongoing Annual Ratification and Regulatory

26   Compliance.

27       vi.   SPAVI Parties' Supporting Evidence: Each of the

28

JOINTLY FILED CLAIMS TO BE TRIEDSECOND
AMENDED JOINTLY FILED CLAIMS,
COUNTERCLAIMS, THIRD PARTY CLAIMS, AND
AFFIRMATIVE DEFENSES TO BE TRIED
175468760.1

CASE NO. 2:24-CV-04546-SB(AGRX)

1    agreements included in the trial exhibits and  testimony of

2    Mr. Magsaysay, Mr. Koren, and Ms. Victor – all of  which

3    will establish that  none of the Counterclaimants – PCJV,

4    PCIT, LA Group LLC, GK Capital, NKM, or Koren have

5    any contract to which Cinco has privity; the settlement

6    agreement (Trial Exhibit 1172) and evidence of the

7    dismissals with  prejudice, as well as the pleadings in the

8    prior case establishing what has been dismissed, and subject

9    to retraxit..

10    c.  Element No. 3: Cinco Corporation or SPAVI, as Cinco

11    Corporation's successor-in-interest, breached the contract

12    i.  Disputed Status of Element 3:  The parties dispute this

13    element is satisfied.

14    ii.  Nature of Dispute: factual and legal.

15    iii.  <u>PCJV USA Parties' Position Statement:</u> SPAVI intended to

16    cause the breach of the above listed contracts by: (1)

17    allegedly acquiring IP rights from Cinco (which SPAVI

18    claims include US IP rights), without LA

19    Group's/Koren's/PCJV's prior written consent in violation of

20    the JVA/AJVA/LLC Agreement; (2) failing to allegedly

21    acquire the associated obligations and burdens under those

22    agreements to, for example, acknowledge our use and

23    termination rights, make best efforts to cooperate for the

24    success of PCJV, to perform further acts (such as execute

25    and deliver all required documents), if necessary, to provide

26    us use rights, or to, at minimum, acknowledge that PCJV

27    maintains a 50-year license or at least may continue to use

28

125

1            for as long as necessary under the franchise agreements it

2            was authorized to sign with franchisees in violation of the

3            JVA/AJVA/LLC Agreement/license agreements/MSA (and

4            associated written, oral, implied-in-fact

5            agreements/modifications, such as meeting minutes, written

6            communications of the PCJV members/managers, FDDs);

7            (3) refusing to acknowledge PCJV's right to reverse engineer

8            the powders/spices in violation of the PCJV board meeting

9            minutes; (4) refusing to acknowledge PCJV's affiliated

10          Koren stores' right not to pay royalties in accordance with

11          the JVA/AJVA/LLC Agreement; (5) refusing to

12          acknowledge LA Group's and Cinco Group/PCI Group's

13          mutual waiver of royalties as to all other initial/franchise fees

14          or other royalty income actually collected or to be collected

15          by PCJV in accordance with the JVA/AJVA/LLC

16          Agreement/FDDs; (6) refusing to honor the settlement struck

17          with Cinco whereby Koren/GK acquired all interests and

18          attached interests (despite representing that it would); and (7)

19          causing certain PCJV franchisees to breach their franchise

20          agreements and associate themselves with SPAVI.

21       iv.    <u>Plaintiff's Position Statement:</u> The only contracts that have

22          been identified as being "breached" are the unsigned licensee

23          agreement and the AJVA. Neither document binds Cinco –

24          indeed, that the AJVA constitutes an agreement to agree and

25          not a contract  has  already been adjudicated and decided as

26          law of the case. It is impossible to  know what the specific

27          contract is at issue here. To the extent any actual contract

28

JOINTLY FILED CLAIMS TO BE TRIED SECOND
AMENDED JOINTLY FILED CLAIMS,
COUNTERCLAIMS, THIRD PARTY CLAIMS, AND
AFFIRMATIVE DEFENSES TO BE TRIED
175468760.1
                CASE NO. 2:24-CV-04546-SB(AGRX)

1    ever existed between Cinco and these parties, the only one

2    that is possible is the Settlement Agreement and

3    corresponding agreement selling PCJV equity to GKK

4    Capital. (Trial Exhibit 1176.) Because Cinco has never been

5    a party to any other contract with any of the Counterclaim

6    Defendants, that is the only one that could possibly be at

7    issue, but Defendants refuse to acknowledge this.

8    v.    PCJV USA Parties' Supporting Evidence: the following

9    categories, which are defined above, capture the key phases

10    and supporting evidence: Superseding Joint Venture (2008–

11    2010), Alternative Licensing Arrangements and Ongoing

12    Ratification (2011–2012), Formalization and Modification of

13    the Joint Venture (2012), LA Group Partnership Agreement

14    and Evolving Business Dynamics and Terms (2013–2018),

15    Dispute, Litigation, and State Court Proceedings (2018 and

16    Beyond), Ongoing Annual Ratification and Regulatory

17    Compliance, and SPAVI Parties' Tortious Conduct.

18    vi.    SPAVI Parties' Supporting Evidence: The absence of

19    evidence that Cinco was a party to, or breached, any

20    contract with any of the Counterclaimants is the supporting

21    evidence.

22    d.    Element No. 4: PCJV USA Parties were harmed.

23    i.    Disputed Status of Element 4: The parties dispute this

24    element is satisfied.

25    ii.    Nature of Dispute: factual and legal.

26    iii.    Defendants' Position Statement: Plaintiff's position

27    statement does not address a legal issue concerning this

28

1    element. To the extent Plaintiff's position statement

2    addresses element 1, PCJV USA Parties incorporate their

3    respective response here.

4    iv.    Plaintiff's Position Statement: Cinco breached no contract.

5    The only contracts that have been identified as being

6    "breached" are the unsigned licensee agreement and the

7    AJVA. Neither document binds Cinco – indeed, that the

8    AJVA constitutes an agreement to agree and not a contract

9    has already been adjudicated and decided as law of the case.

10    It is impossible to know what the specific contract is at issue

11    here. To the extent any actual contract ever existed between

12    Cinco and these parties, the only one that is possible is the

13    Settlement Agreement and corresponding agreement selling

14    PCJV equity to GKK Capital. (Trial Exhibit 1176.) Because

15    Cinco has never been a party to any other contract with any

16    of the Counterclaim Defendants, that is the only one that

17    could possibly be at issue, but Defendants refuse to

18    acknowledge this.

19    v.    Defendants' Supporting Evidence: the following category,

20    which is defined above, captures the key phase and

21    supporting evidence: SPAVI Parties' Tortious Conduct.

22    vi.    SPAVI Parties' Supporting Evidence: The absence of

23    evidence that Cinco was a party to, or breached, any

24    contract with any of the Counterclaimants is the supporting

25    evidence, as there is no way any of the Counterclaimants

26    could have been harmed.

27    **9)   Cause of Action No. 9: Breach of Covenant oof Good Faith and Fair**

28

<hr>

128

**Dealing.**

e. Element No. 1: there is a contract between a Counterclaimant and Cinco Corporation / that SPAVI is a successor in interest to a contract with Cinco.

    i. Disputed Status of Element 1: The parties dispute this element is satisfied.

    ii. Nature of Dispute: factual and legal

    iii. <u>PCJV USA Parties' Position Statement:</u> The term for PCJV USA, LLC's use of the U.S. Potato Corner trademarks "can be [i]mplied from the nature of the contract and circumstances surrounding it." *See Consolidated Theatres, Inc. v. Theatrical Stage Emp. Union, Local 16*, 69 Cal.2d 713, 725 (1968). The "initial effort of the court, in construing contracts of continuing performance of forebearance which contain no express term of duration, must always be that of implying a term of duration commensurate with the intentions of the parties . . . ." *Id.* at 727. Only when "the nature of the contract and the totality of the surrounding circumstances give no suggestion as to any ascertainable term . . . , the obligations under the contract shall be terminable at will by any party upon reasonable notice after such a reasonable time has elapsed." *Id.* Further, it is immaterial that SPAVI had full knowledge of the contracts' terms. *See Jenni Rivera Enterprises, LLC v. Latin World Entertainment Holdings, Inc.*, 36 Cal. App. 5th 766, 783 (2019). Nor is SPAVI's belief about the legal significance of facts or belief that the parties' agreements are legally binding

1  or has a different legal effect from what it is judicially held to

2  have.  *See Little v. Amber Hotel Co.*, 202 Cal. App. 4th 280,

3  302 (2011).

4  iv.  <u>Plaintiff's Position Statement:</u> Moreover, and again, as

5  drafted it is impossible to  know what the specific contract is

6  that is at issue here. It has never been disclosed, and still

7  undisclosed. Rather than jettison the claim or actually

8  identify the  contract, instead, Defendants' solution is to

9  fudge with obtuse language in the jury instructions, designed

10  to confuse everyone, including the jury: "there was a contract

11  between any one of the PCJV Plaintiffs and any one of the

12  Cinco parties." Indeed, the only contract that Cinco has been

13  a party to with any of these Counterclaimants is the

14  Settlement Agreement of the Prior Governance Action. There

15  is no other written agreement between  PCJV and Cinco, or

16  between any other Counterclaimant and Cinco.  It is possible

17  that Counterclaimants are seeking to allege that Cinco is an

18  alter ego of Potato Corner  International or others, however,

19  PCJV and the other counterclaimants already  alleged this --

20  alt3er ego status of Cinco --  and after a negotiated

21  settlement, dismissed this claim with prejudice. They may

22  not raise it now. *See, e.g., Torrey Pines Bank v. Superior Ct*.,

23  216 Cal. App. 3d 813, 820 (Ct. App. 1989) (holding that ""a

24  dismissal with prejudice is the maiden name for a common

25  law retraxit," and "[a] retraxit is equivalent to a judgment on

26  the merits and as such bars further litigation on the same

27  subject matter between the parties."); *Datta v. Staab*, 173

28

130

1   Cal. App. 2d 613, 620—21 (1959) ("The effect of a dismissal

2   with prejudice is quite different, however, when it is

3   executed and filed in return for a consideration moving from

4   the defendant. Such a dismissal operates as a complete bar to

5   any future action and has the same legal effect as a common

6   law petraxit."). Second, as for SPAVI, it purchased

7   intellectual property, and did not assume any contracts

8   binding Cinco. Thus, the claim that SPAVI is bound to good

9   faith and fair dealing as a "successor in interest has no basis"

10  and can be resolved a matter of law,, given that this simply

11  requires interpretation of contracts binding Cinco (of which

12  there are no one) to which SPAVI assumed (also, null set).

13  Put simply – S{PAVI is not a successor in interest to any

14  contract of Cinco, and by purchasing the intellectual property

15  of Cinco, it was only bound to those contracts involving the

16  use and licensing of the brand – none of which are at issue in

17  this case.

18  v.   PCJV USA Parties' Supporting Evidence: the following

19  categories, which are defined above, capture the key phases

20  and supporting evidence: Superseding Joint Venture (2008–

21  2010), Alternative Licensing Arrangements and Ongoing

22  Ratification (2011–2012), Formalization and Modification of

23  the Joint Venture (2012), LA Group Partnership Agreement

24  and Evolving Business Dynamics and Terms (2013–2018),

25  Dispute, Litigation, and State Court Proceedings (2018 and

26  Beyond), and Ongoing Annual Ratification and Regulatory

27  Compliance.

28

---

CASE NO. 2:24-CV-04546-SB(AGRX)

1           vi.    <u>SPAVI Parties' Supporting Evidence:</u> Each of the

2                 agreements included in the trial exhibits and  testimony of

3                 Mr. Magsaysay, Mr. Koren, and Ms. Victor – all of  which

4                 will establish that  none of the Counterclaimants – PCJV,

5                 PCIT, LA Group LLC, GK Capital, NKM, or Koren have

6                 any contract to which Cinco has privity; the settlement

7                 agreement (Trial Exhibit 1172) and evidence of the

8                 dismissals with  prejudice, as well as the pleadings in the

9                 prior case establishing what has been dismissed, and subject

10                to retraxit.

11      f.  Element No. 2: The Counterclaimant  that is a party to the contract

12         did all or substantially all of the things required under the contract,

13         or were excused from so performing:

14          i.    Disputed Status of Element 2:  The parties dispute this

15                element is satisfied.

16          ii.   Nature of Dispute: factual  and legal.

17          iii.  <u>PCJV USA Parties' Position Statement:</u> Plaintiff's position

18                 statement does not address a legal issue concerning this

19                 element. To the extent Plaintiff's position statement

20                 addresses element 1, PCJV USA Parties incorporate their

21                 respective response here.

22          iv.  <u>Plaintiff's Position Statement:</u> as drafted it is impossible to

23                 know what the specific contract is at issue here. It has never

24                 been disclosed, and still undisclosed. So, when this element

25                 in the instructions says, "the contract," whereas the prior

26                 element refers to some unidentified contract, as a matter of

27                 law, yes, this element is disputed. To the extent any actual

28

<div style="text-align:center">132</div>

contract ever existed between Cinco and these parties, the
only one that is possible is the Settlement Agreement and
corresponding agreement selling PCJV equity to GKK
Capital. (Trial Exhibit 1176.) Because Cinco has never been
a party to any other contract with any of the Counterclaim
Defendants, that is the only one that could possibly be at
issue, but Defendants refuse to acknowledge this. It is
possible that Counterclaimants are seeking to allege that
Cinco is an alter ego of Potato Corner International or
others, however, PCJV and the other counterclaimants
already alleged this -- alter ego status of Cinco -- and after
a negotiated settlement, dismissed this claim with prejudice.
They may not raise it now. *See, e.g., Torrey Pines Bank v.*
*Superior Ct*., 216 Cal. App. 3d 813, 820 (Ct. App. 1989)
(holding that "a dismissal with prejudice is the maiden name
for a common law retraxit," and "[a] retraxit is equivalent to
a judgment on the merits and as such bars further litigation
on the same subject matter between the parties."); *Datta v.*
*Staab*, 173 Cal. App. 2d 613, 620—21 (1959) ("The effect of
a dismissal with prejudice is quite different, however, when
it is executed and filed in return for a consideration moving
from the defendant. Such a dismissal operates as a complete
bar to any future action and has the same legal effect as a
common law petraxit."). Second, as for SPAVI, it purchased
intellectual property, and did not assume any contracts
binding Cinco. Thus, the claim that SPAVI is bound to good
faith and fair dealing as a "successor in interest has no basis"

JOINTLY FILED CLAIMS TO BE TRIEDSECOND
AMENDED JOINTLY FILED CLAIMS,
COUNTERCLAIMS, THIRD PARTY CLAIMS, AND
AFFIRMATIVE DEFENSES TO BE TRIED
175468760.1

CASE NO. 2:24-CV-04546-SB(AGRX)

1    and can be resolved a matter of law,, given that this simply

2    requires interpretation of contracts binding Cinco (of which

3    there are no one) to which SPAVI assumed (also, null set).

4    Put simply – S{PAVI is not a successor in interest to any

5    contract of Cinco, and by purchasing the intellectual property

6    of Cinco, it was only bound to those contracts involving the

7    use and licensing of the brand – none of which are at issue in

8    this case.

9    v.    <u>PCJV USA Parties' Supporting Evidence:</u> the following

10           categories, which are defined above, capture the key phases

11           and supporting evidence: Superseding Joint Venture (2008–

12           2010), Alternative Licensing Arrangements and Ongoing

13           Ratification (2011–2012), Formalization and Modification of

14           the Joint Venture (2012), LA Group Partnership Agreement

15           and Evolving Business Dynamics and Terms (2013–2018),

16           Dispute, Litigation, and State Court Proceedings (2018 and

17           Beyond), Ongoing Annual Ratification and Regulatory

18           Compliance, and SPAVI Parties' Tortious Conduct.

19    vi.   <u>SPAVI Parties' Supporting Evidence:</u> Each of the

20           agreements included in the trial exhibits and testimony of

21           Mr. Magsaysay, Mr. Koren, and Ms. Victor – all of which

22           will establish that none of the Counterclaimants – PCJV,

23           PCIT, LA Group LLC, GK Capital, NKM, or Koren have

24           any contract to which Cinco has privity; the settlement

25           agreement (Trial Exhibit 1172) and evidence of the

26           dismissals with prejudice, as well as the pleadings in the

27           prior case establishing what has been dismissed, and subject

28

JOINTLY FILED CLAIMS TO BE TRIEDSECOND
AMENDED JOINTLY FILED CLAIMS,
COUNTERCLAIMS, THIRD PARTY CLAIMS, AND
AFFIRMATIVE DEFENSES TO BE TRIED
175468760.1

CASE NO. 2:24-CV-04546-SB(AGRX)

1    to retraxit.

2    g.  <u>Element No. 3:</u> Cinco or SPAVI engaged in conduct that breached

3    the duty of good faith and fair dealing.

4        i.   Disputed Status of Element 3:  The parties dispute this

5             element is satisfied.

6        ii.  Nature of Dispute: factual and legal.

7        iii. PCJV USA Parties' Position Statement: Plaintiff's position

8             statement does not address a legal issue concerning this

9             element. To the extent Plaintiff's position statement

10            addresses element 1, PCJV USA Parties incorporate their

11            respective response here.

12       iv.  Plaintiff's Position Statement: The only contracts that have

13            been identified as being "breached" are the unsigned licensee

14            agreement and the AJVA. Neither document binds Cinco –

15            indeed, that the AJVA constitutes an agreement to agree and

16            not a contract  has  already been adjudicated and decided as

17            law of the case. It is impossible to  know what the specific

18            contract is at issue here. To the extent any actual contract

19            ever existed between Cinco and these parties, the only one

20            that is possible is the Settlement Agreement and

21            corresponding agreement selling PCJV equity to GKK

22            Capital. (Trial Exhibit 1176.) Because Cinco has never been

23            a party to any other contract with any of the Counterclaim

24            Defendants, that is the only one that could possibly be at

25            issue, but Defendants refuse to acknowledge this. In the

26            absence of a contract binding Cinco, it is possible that

27            Counterclaimants are seeking to allege that Cinco is an alter

28

135

JOINTLY FILED CLAIMS TO BE TRIED SECOND
AMENDED JOINTLY FILED CLAIMS,
COUNTERCLAIMS, THIRD PARTY CLAIMS, AND
AFFIRMATIVE DEFENSES TO BE TRIED
175468760.1

CASE NO. 2:24-CV-04546-SB(AGRX)

1    ego of Potato Corner  International or others, however,

2    PCJV and the other counterclaimants already  alleged this --

3    alter ego status of Cinco --  and after a negotiated settlement,

4    dismissed this claim with prejudice. They may not raise it

5    now. *See, e.g., Torrey Pines Bank v. Superior Ct*., 216 Cal.

6    App. 3d 813, 820 (Ct. App. 1989) (holding that ""a dismissal

7    with prejudice is the maiden name for a  common law

8    retraxit," and "[a] retraxit is equivalent to a judgment on the

9    merits and as such bars further litigation on the same subject

10   matter between the parties."); *Datta v. Staab*, 173 Cal. App.

11   2d 613, 620—21 (1959) ("The effect of a dismissal with

12   prejudice is quite different, however, when it is executed and

13   filed in return for a consideration moving from the defendant.

14   Such a dismissal operates as a complete bar to any future

15   action and has the same legal effect as a common law

16   petraxit."). Second, as for SPAVI, it purchased intellectual

17   property, and did not assume any contracts binding Cinco.

18   Thus, the claim that SPAVI is  bound to good faith and fair

19   dealing as a "successor in interest has no basis" and can be

20   resolved a matter of law,,  given that this  simply requires

21   interpretation of contracts  binding  Cinco (of which there are

22   no one) to which SPAVI assumed (also, null set). Put simply

23   – S{PAVI  is  not a  successor in interest to any contract of

24   Cinco, and by purchasing the intellectual property  of  Cinco,

25   it was only  bound to those contracts involving the use and

26   licensing of the brand– none of which are at issue  in this

27   case.

28

136

1       v.    <u>PCJV USA Parties' Supporting Evidence:</u> the following

2               category, which is defined above, captures the key phase and

3               supporting evidence: SPAVI Parties' Tortious Conduct.

4       vi.   <u>SPAVI Parties' Supporting Evidence:</u> The absence of

5               evidence that  Cinco was a party to, or  breached, any

6               contract with any  of the Counterclaimants is  the supporting

7               evidence. Plaintiff's Position Statement: In addition to the

8               absence of any contract binding Cinco  or  SPAVI – thus

9               there could be no corresponding breach of the covenant of

10              good  faith and fair dealing – the evidence of Koren's

11              behavior during the license negotiations, particularly with

12              SPAVI, lead  to the conclusion that it  was he that caused the

13              negotiations to fail, not anyone else. Testimony of SPAVI

14              (Gregorio and Tan) as well as their correspondence with

15              Koren (Trial Exhibits 20-31) will establish this. The only

16              contracts that have been identified as being "breached" are

17              the unsigned licensee agreement and the AJVA. Neither

18              document binds Cinco – indeed, that the AJVA constitutes an

19              agreement to agree and not a contract  has  already been

20              adjudicated and decided as law of the case. It is impossible to

21              know what the specific contract is at issue here. To the extent

22              any actual contract ever existed between Cinco and these

23              parties, the only one that is possible is the Settlement

24              Agreement and corresponding agreement selling PCJV

25              equity to GKK Capital. (Trial Exhibit 1176.) I acknowledge

26              has never been a party to any other contract with any of the

27              Counterclaim Defendants, which is the only one that could

28

1  possibly be at issue, but Defendants refuse to acknowledge

2  this.

3  h. Element No. 4: Counterclaimants were harmed.

4  i.  Disputed Status of Element 4:  The parties dispute this

5  element is satisfied.

6  ii.  Nature of Dispute: legal.

7  iii.  PCJV Usa Parties' Position Statement: Plaintiff's position

8  statement does not address a legal issue concerning this

9  element. To the extent Plaintiff's position statement

10  addresses element 1, PCJV USA Parties incorporate their

11  respective response here.

12  iv.  Plaintiff's Position Statement: Cinco breached no contract.

13  The only contracts that have been identified as being

14  "breached" are the unsigned licensee agreement and the

15  AJVA. Neither document binds Cinco – indeed, that the

16  AJVA constitutes an agreement to agree and not a contract

17  has  already been adjudicated and decided as law of the case.

18  It is impossible to  know what the specific contract is at issue

19  here. To the extent any actual contract ever existed between

20  Cinco and these parties, the only one that is possible is the

21  Settlement Agreement and corresponding agreement selling

22  PCJV equity to GKK Capital. (Trial Exhibit 1176.) Because

23  Cinco has never been a party to any other contract with any

24  of the Counterclaim Defendants, that is the only one that

25  could possibly be at issue, but Defendants refuse to

26  acknowledge this.

27  **i.  Cause of Action No. 11: Quantum Meruit.**

28

138

JOINTLY FILED CLAIMS TO BE TRIEDSECOND
AMENDED JOINTLY FILED CLAIMS,
COUNTERCLAIMS, THIRD PARTY CLAIMS, AND
AFFIRMATIVE DEFENSES TO BE TRIED
175468760.1

CASE NO. 2:24-CV-04546-SB(AGRX)

1    i.   Element No. 1: any of the SPAVI Parties requested, by words

2         or conduct, that any one of the PCJV USA Parties perform

3         services for the benefit of any of the SPAVI Parties.

4              i.   Disputed Status of Element 1:  The parties dispute that

5                   this element is satisfied.

6              ii.  Nature of Dispute: Factual

7              iii. PCJV USA Parties' Supporting Evidence: the following

8                   categories, which are defined above, capture the key

9                   phases and supporting evidence: Superseding Joint

10                  Venture (2008–2010), Alternative Licensing

11                  Arrangements and Ongoing Ratification (2011–2012),

12                  Formalization and Modification of the Joint Venture

13                  (2012), LA Group Partnership Agreement and Evolving

14                  Business Dynamics and Terms (2013–2018), Dispute,

15                  Litigation, and State Court Proceedings (2018 and

16                  Beyond), and Ongoing Annual Ratification and

17                  Regulatory Compliance.

18             iv.  SPAVI and Cinco's Supporting Evidence: the lack of

19                  evidence of this will suffice. Testimony of Gregorio will

20                  confirm as will testimony of Koren.

21   ii.  Element No. 2: any one of the PCJV USA Parties performed

22        the services as requested.

23             i.   Disputed Status of Element 2:  The parties dispute that

24                  this element is satisfied.

25             ii.  Nature of Dispute: factual

26             iii. PCJV USA Parties' Supporting Evidence: the following

27                  categories, which are defined above, capture the key

28

1    phases and supporting evidence: Superseding Joint

2    Venture (2008–2010), Alternative Licensing

3    Arrangements and Ongoing Ratification (2011–2012),

4    Formalization and Modification of the Joint Venture

5    (2012), LA Group Partnership Agreement and Evolving

6    Business Dynamics and Terms (2013–2018), Dispute,

7    Litigation, and State Court Proceedings (2018 and

8    Beyond), Ongoing Annual Ratification and Regulatory

9    Compliance, and SPAVI Parties' Tortious Conduct.

10        iv.  SPAVI and Cinco's Supporting Evidence: the lack of

11        evidence of this will suffice. Testimony of Gregorio will

12        confirm as will testimony of Koren.

13    iii.  Element No. 3: the requesting SPAVI Party/Parties has not

14    paid any one of the PCJV USA Parties for the services.

15        i.  Disputed Status of Element 3:  The parties dispute that

16        this element is satisfied.

17        ii.  Nature of Dispute: Factual

18        iii.  PCJV USA Parties' Supporting Evidence: the following

19        category, which is defined above, captures the key phase

20        and supporting evidence: SPAVI Parties' Tortious

21        Conduct.

22        iv.  SPAVI and Cinco's Supporting Evidence: the lack of

23        evidence of this will suffice. Testimony of Gregorio will

24        confirm as will testimony of Koren.

25    iv.  Element No. 4: the reasonable value of the services that were

26    provided.

27        i.  Disputed Status of Element 4:  The parties dispute that

28

---

140

1    this element is satisfied.

2        ii. Nature of Dispute: Factual

3        iii. <u>PCJV USA Parties' Supporting Evidence:</u> documents and

4            testimony including and related to the following: (1)

5            PCJV USA Parties' financial records; (2) PCJV USA

6            Parties' historical growth; and (3) PJCV USA Parties'

7            franchisee agreements and communications.

8        iv. <u>SPAVI and Cinco's Supporting Evidence:</u> there is no

9            evidence of this.

10

11   **III.   SPAVI Parties' Affirmative Defenses**

12       1) **Affirmative Defense No. 1**: Laches (asserted by Counter Defendant and

13           Third Party Defendants as to all claims alleged against them)

14           a. Element No. 1: A Delay in asserting a claim.

15               i. This element is disputed

16               ii. Nature of Dispute: ~~Legal and~~ Factual

17               iii. Plaintiff's Position Statement: Laches is an affirmative

18                   defense.

19               iv. Defendants' Position Statement: Laches is an equitable

20                   claim to be tried by the Court. *Ultimax Cement Mfg.*

21                   *Corp. v. CTS Cement Mfg. Corp.*, 856 F.Supp. 2d 1136,

22                   1151 (2012).

23               v. Plaintiff's Supporting Evidence:  Both the JVA and

24                   AJVA contain an agreement to agree on a Master License

25                   Agreement. However, there was never a written license

26                   agreement executed between Counterclaimants and

27                   Cinco. Counterclaimants entered into a negotiation

28

<center>141</center>

1    process with Cinco, prior to SPAVI's acquisition of the

2    Potato Corner brand and all of the Potato Corner

3    Intellectual Property from Cinco, for the terms of a

4    license to use the Potato Corner Intellectual Property.

5    These negotiations began before SPAVI purchased the

6    rights to the Potato Corner IP. So, Counterclaimants have

7    been aware of the lack of ownership rights in the Potato

8    Corner Intellectual Property and the non-existence of a

9    written agreement. Then, between December of 2021

10   through 2024, the months immediately preceding this

11   action, SPAVI engaged in a good faith and exhaustive

12   attempt to negotiate the terms of a written license with

13   PCJV as well. Never once did Counterclaimants state that

14   they had ownership rights to the Potato Corner

15   Intellectual Property, and SPAVI relied on that

16   representation because had one been expressed, that

17   would have been a dispute as to the ownership rights to

18   which SPAVI would have filed this lawsuit sooner.

19   Additional evidence includes: Notarized Deeds signed by

20   seller and buyer; USPTO filings including Registrations

21   and Assignments; Testimony of Gregorio (Plaintiff's

22   CEO), Magsaysay (Cinco's CEO), Koren, Ybanez

23   (Plaintiff's General Counsel), Tan (Director responsible

24   for international franchising); and emails and

25   correspondence during the negotiation of the terms of the

26   license agreement.

27          vi.   PCJV USA's Parties Supporting Evidence: SPAVI parties

28

---

142

1    have not articulated their defense beyond what is included

2    in their Answers until 7am on August 12, 2025. *See* n. 1.

3    As it is articulated in the Answers, PCJV Parties cannot

4    determine the factual basis for the defense.  As such, the

5    out of an abundance of caution, PCJV Parties incorporate

6    by reference all of the evidence cited in support of their

7    causes of action

8    b. Element No. 2: acquiescence by Counterclaim Defendants or Third

9    Party Defendants or their suffering of prejudice, which can include

10   detrimental reliance on the status quo, loss of evidence, or other

11   circumstances that make it inequitable to allow the claimants to

12   assert their claim after the delay.

13        i. This element is disputes

14        ii. Nature of Dispute: Legal and factual

15        iii. Plaintiff's Position Statement: Laches is an affirmative

16            defense.

17        iv. <u>PCJV USA Parties' Position Statement:</u> PCJV USA

18            Parties' Position Statement: Laches is an equitable claim

19            to be tried by the Court. *Ultimax Cement Mfg. Corp. v.*

20            *CTS Cement Mfg. Corp.*, 856 F.Supp. 2d 1136, 1151

21            (2012).  "A defendant must demonstrate three elements to

22            successfully assert laches defense: (1) delay in asserting a

23            right or claim; (2) the delay was not reasonable or

24            excusable; and (3) prejudice to the party against whom

25            laches is asserted." *Magic Kitchen LLC v. Good Things*

26            *Internat., Ltd.*, 153 Cal. App. 4th 1144, 1157 (2007).

27            SPAVI Parties' statement of what it needs to prove here

28

143

1    as an element to laches is incorrect

2    v. Plaintiff's Supporting Evidence: Both the JVA and AJVA

3    contain an agreement to agree on a Master License

4    Agreement. However, there was never a written license

5    agreement executed between Counterclaimants and

6    Cinco. Counterclaimants entered into a negotiation

7    process with Cinco, prior to SPAVI's acquisition of the

8    Potato Corner brand and all of the Potato Corner

9    Intellectual Property from Cinco, for the terms of a

10   license to use the Potato Corner Intellectual Property.

11   These negotiations began in [DATE]. So, as of [DATE],

12   Counterclaimants have been aware of the lack of

13   ownership rights in the Potato Corner Intellectual

14   Property and the non-existence of a written agreement.

15   Then, between December of 2021 through 2024, the

16   months immediately preceding this action, SPAVI

17   engaged in a good faith and exhaustive attempt to

18   negotiate the terms of a written license with PCJV as

19   well. Never once did Counterclaimants state that they had

20   ownership rights to the Potato Corner Intellectual

21   Property, and SPAVI relied on that representation because

22   had one been expressed, that would have been a dispute

23   as to the ownership rights to which SPAVI would have

24   filed this lawsuit sooner. Additional evidence includes:

25   Notarized Deeds signed by seller and buyer; USPTO

26   filings including Registrations and Assignments;

27   Testimony of Gregorio (Plaintiff's CEO), Magsaysay

28

---

144

1   (Cinco's CEO), Koren, Ybanez (Plaintiff's General

2   Counsel), Tan (Director responsible for international

3   franchising); and emails and correspondence during the

4   negotiation of the terms of the license agreement.

5   vi. PCJV USA Parties' Supporting Evidence: SPAVI parties

6   have not articulated their defense beyond what is included

7   in their Answers until 7am on August 12, 2025. *See* n. 1.

8   As it is articulated in the Answers, PCJV Parties cannot

9   determine the factual basis for the defense.  As such, the

10  out of an abundance of caution, PCJV Parties incorporate

11  by reference all of the evidence cited in support of their

12  causes of action.

13  2) **Affirmative Defense No. 2:** Consent (asserted by Counterclaim

14  Defendant and Third Party Defendants as to all claims alleged against

15  them)

16  a. Element No. 1: One or more of the Counterclaimants or Third Party

17  Plaintiffs consented to the acts about which they complain.

18  i. This element is disputed.

19  ii. Nature of Dispute: ~~Legal and~~ factual

20  iii. Plaintiff's Position Statement: The elements are taken

21  from CACI 1721

22  iv. ~~PCJV USA Parties' Position Statement: SPAVI Parties'~~

23  ~~appear to have combined an element of their laches~~

24  ~~affirmative defense. Otherwise, there is no legal support~~

25  ~~for SPAVI Parties' articulated element~~

26  ~~v.~~iv. Plaintiff's Supporting Evidence: Both the JVA and AJVA

27  contain an agreement to agree on a Master License

28

145

~~JOINTLY FILED CLAIMS TO BE TRIED~~SECOND
AMENDED JOINTLY FILED CLAIMS,
COUNTERCLAIMS, THIRD PARTY CLAIMS, AND
AFFIRMATIVE DEFENSES TO BE TRIED
~~175468760.1~~

CASE NO. 2:24-CV-04546-SB(AGRX)

1    Agreement. However, there was never a written license

2    agreement executed between Counterclaimants and

3    Cinco. Counterclaimants entered into a negotiation

4    process with Cinco, prior to SPAVI's acquisition of the

5    Potato Corner brand and all of the Potato Corner

6    Intellectual Property from Cinco, for the terms of a

7    license to use the Potato Corner Intellectual Property.

8    These negotiations began in [DATE]. So, as of [DATE],

9    Counterclaimants have been aware of the lack of

10    ownership rights in the Potato Corner Intellectual

11    Property and the non-existence of a written agreement.

12    Then, between December of 2021 through 2024, the

13    months immediately preceding this action, SPAVI

14    engaged in a good faith and exhaustive attempt to

15    negotiate the terms of a written license with PCJV as

16    well. Never once did Counterclaimants state that they had

17    ownership rights to the Potato Corner Intellectual

18    Property, and SPAVI relied on that representation because

19    had one been expressed, that would have been a dispute

20    as to the ownership rights to which SPAVI would have

21    filed this lawsuit sooner. Additional evidence includes:

22    Notarized Deeds signed by seller and buyer; USPTO

23    filings including Registrations and Assignments;

24    Testimony of Gregorio (Plaintiff's CEO), Magsaysay

25    (Cinco's CEO), Koren, Ybanez (Plaintiff's General

26    Counsel), Tan (Director responsible for international

27    franchising); and emails and correspondence during the

28

146

1    negotiation of the terms of the license agreement.

2    ~~vi.~~v. PCJV USA Parties' Supporting Evidence: SPAVI parties

3    have not articulated their defense beyond what is included

4    in their Answers until 7am on August 12, 2025. *See* n. 1.

5    As it is articulated in the Answers, PCJV Parties cannot

6    determine the factual basis for the defense.  As such, the

7    out of an abundance of caution, PCJV Parties incorporate

8    by reference all of the evidence cited in support of their

9    causes of action.

10    3) **Affirmative Defense No. 3:** Estoppel (asserted by Counterclaim

11    Defendant and Third Party Defendants as to all claims alleged against

12    them)

13    a. Element No. 1: A representation or concealment of material facts;

14    i. This element is disputed

15    ii. Nature of Dispute: Legal and factual

16    iii. SPAVI and Cinco's Position Statement: Estoppel is an

17    affirmative defense

18    iv. PCJV USA Parties Position: PCJV USA Parties' Position

19    Statement: Equitable estoppel is an equitable claim to be

20    tried by the Court. *Ultimax Cement Mfg. Corp. v. CTS*

21    *Cement Mfg. Corp.,* 856 F.Supp. 2d 1136, 1151 (2012).

22    v. Plaintiff's Supporting Evidence: Counterclaimants have

23    no evidence of a written license to use SPAVI's Potato

24    Corner Intellectual Property, and, as such, its rights (that

25    it has sold to its franchisees) derive from what is, at best,

26    a terminable at will, fully revocable license because

27    Defendants were nonetheless operating Potato Corner

28

147

1    locations, as if a written license existed. See Pogrebnoy v.

2    Russian Newspaper Distribution, Inc., 289 F. Supp. 3d

3    1061, 1070 (C.D. Cal. 2017), aff'd, 742 F. App'x 291 (9th

4    Cir. 2018) ("[A]n implied license, like any other contract,

5    is terminable at the will of either party if it is not for a

6    specified term."). After SPAVI's acquisition of the Potato

7    Corner brand, it became the licensor of the Potato Corner

8    Intellectual Property. Between December of 2021 through

9    2024, the months immediately preceding this action,

10   SPAVI engaged in a good faith and exhaustive attempt to

11   negotiate the terms of a written license with PCJV.

12   Defendant Guy Koren engaged and participated in this

13   negotiation, but was unwilling to agree to any minimally

14   commercially viable licensing terms. Never once did

15   Counterclaimants state that they had ownership rights to

16   the Potato Corner Intellectual Property, and SPAVI relied

17   on that representation. Additional evidence includes:

18   Testimony of Gregorio (Plaintiff's CEO), Magsaysay

19   (Cinco's CEO), Koren, Ybanez (Plaintiff's General

20   Counsel), Tan (Director responsible for international

21   franchising); and emails and correspondence during the

22   negotiation of the terms of the license agreement.

23   vi.   PCJV USA Parties' Supporting Evidence: SPAVI parties

24   have not articulated their defense beyond what is included

25   in their Answers. As it is articulated there, PCJV Parties

26   cannot determine the factual basis for the defense.  As

27   such, the out of an abundance of caution, PCJV Parties

28

1    incorporate by reference all of the evidence cited in

2    support of their causes of action.

3    b. <u>Element 2:</u> Made with knowledge, actual or virtual, of the facts;

4    i.  This element is disputed

5    ii. <u>Nature of Dispute:</u> Legal and factual

6    iii. <u>Plaintiff's Position Statement:</u> Estoppel is an affirmative

7    defense

8    iv. <u>PCJV USA Parties' Position Statement:</u> Equitable

9    estoppel is an equitable claim to be tried by the Court.

10   *Ultimax Cement Mfg. Corp. v. CTS Cement Mfg. Corp.,*

11   856 F.Supp. 2d 1136, 1151 (2012).

12   v.  <u>Plaintiff's Supporting Evidence:</u> Plaintiff's Supporting

13   Evidence: Counterclaimants have no evidence of a written

14   license to use SPAVI's Potato Corner Intellectual

15   Property, and, as such, its rights (that it has sold to its

16   franchisees) derive from what is, at best, a terminable at

17   will, fully revocable license because Defendants were

18   nonetheless operating Potato Corner locations, as if a

19   written license existed. *See Pogrebnoy v. Russian*

20   *Newspaper Distribution, Inc.,* 289 F. Supp. 3d 1061, 1070

21   (C.D. Cal. 2017), aff'd, 742 F. App'x 291 (9th Cir. 2018)

22   ("[A]n implied license, like any other contract, is

23   terminable at the will of either party if it is not for a

24   specified term."). After SPAVI's acquisition of the Potato

25   Corner brand, it became the licensor of the Potato Corner

26   Intellectual Property. Between December of 2021 through

27   2024, the months immediately preceding this action,

28

---

149

~~JOINTLY FILED CLAIMS TO BE TRIED~~SECOND
AMENDED JOINTLY FILED CLAIMS,
COUNTERCLAIMS, THIRD PARTY CLAIMS, AND
AFFIRMATIVE DEFENSES TO BE TRIED
~~175468760.1~~

CASE NO. 2:24-CV-04546-SB(AGRX)

1    SPAVI engaged in a good faith and exhaustive attempt to
2    negotiate the terms of a written license with PCJV.
3    Defendant Guy Koren engaged and participated in this
4    negotiation, but was unwilling to agree to any minimally
5    commercially viable licensing terms. Never once did
6    Counterclaimants state that they had ownership rights to
7    the Potato Corner Intellectual Property, and SPAVI relied
8    on that representation. Additional evidence includes:
9    Testimony of Gregorio (Plaintiff's CEO), Magsaysay
10   (Cinco's CEO), Koren, Ybanez (Plaintiff's General
11   Counsel), Tan (Director responsible for international
12   franchising); and emails and correspondence during the
13   negotiation of the terms of the license agreement

14   vi.   PCJV USA Parties' Supporting Evidence: SPAVI parties
15         have not articulated their defense beyond what is included
16         in their Answers. As it is articulated there, PCJV Parties
17         cannot determine the factual basis for the defense.  As
18         such, the out of an abundance of caution, PCJV Parties
19         incorporate by reference all of the evidence cited in
20         support of their causes of action

21   c.   Element 3: To a party ignorant, actually, and permissibly, of the
22        truth;
23        i.    This element is disputed
24        ii.   Nature of Dispute: legal and factual
25        iii.  Plaintiff's position statement: Estoppel is an affirmative
26              defense
27        iv.   PCJV USA Parties' Position Statement: Equitable

28

1  estoppel is an equitable claim to be tried by the Court.

2  *Ultimax Cement Mfg. Corp. v. CTS Cement Mfg. Corp.*,

3  856 F.Supp. 2d 1136, 1151 (2012).

4  v.  <u>Plaintiff's Supporting Evidence:</u> Plaintiff's Supporting

5  Evidence: Counterclaimants have no evidence of a written

6  license to use SPAVI's Potato Corner Intellectual

7  Property, and, as such, its rights (that it has sold to its

8  franchisees) derive from what is, at best, a terminable at

9  will, fully revocable license because Defendants were

10  nonetheless operating Potato Corner locations, as if a

11  written license existed. See Pogrebnoy v. Russian

12  Newspaper Distribution, Inc., 289 F. Supp. 3d 1061, 1070

13  (C.D. Cal. 2017), aff'd, 742 F. App'x 291 (9th Cir. 2018)

14  ("[A]n implied license, like any other contract, is

15  terminable at the will of either party if it is not for a

16  specified term."). After SPAVI's acquisition of the Potato

17  Corner brand, it became the licensor of the Potato Corner

18  Intellectual Property. Between December of 2021 through

19  2024, the months immediately preceding this action,

20  SPAVI engaged in a good faith and exhaustive attempt to

21  negotiate the terms of a written license with PCJV.

22  Defendant Guy Koren engaged and participated in this

23  negotiation, but was unwilling to agree to any minimally

24  commercially viable licensing terms. Never once did

25  Counterclaimants state that they had ownership rights to

26  the Potato Corner Intellectual Property, and SPAVI relied

27  on that representation. Instead, Counterclaimant engaged

28

151

~~JOINTLY FILED CLAIMS TO BE TRIED~~SECOND
AMENDED JOINTLY FILED CLAIMS,
COUNTERCLAIMS, THIRD PARTY CLAIMS, AND
AFFIRMATIVE DEFENSES TO BE TRIED
~~175468760.1~~                              CASE NO. 2:24-CV-04546-SB(AGRX)

1    in the negotiation process. Additional evidence includes:

2    Testimony of Gregorio (Plaintiff's CEO), Magsaysay

3    (Cinco's CEO), Koren, Ybanez (Plaintiff's General

4    Counsel), Tan (Director responsible for international

5    franchising); and emails and correspondence during the

6    negotiation of the terms of the license agreement

7         vi.  <u>PCJV USA Parties' Supporting Evidence:</u> SPAVI parties

8         have not articulated their defense beyond what is included

9         in their Answers. As it is articulated there, PCJV Parties

10        cannot determine the factual basis for the defense.  As

11        such, the out of an abundance of caution, PCJV Parties

12        incorporate by reference all of the evidence cited in

13        support of their causes of action

14   d.  <u>Element 4:</u> With the intention, actual or virtual, that the ignorant

15   party act on it; and

16        i.  This element is disputed

17        ii.  Nature of Dispute: legal and factual

18        iii.  <u>Plaintiff's position statement:</u> Estoppel is an affirmative

19        defense

20        iv.  <u>PCJV USA Parties' Position Statement:</u> Equitable

21        estoppel is an equitable claim to be tried by the Court.

22        *Ultimax Cement Mfg. Corp. v. CTS Cement Mfg. Corp.*,

23        856 F.Supp. 2d 1136, 1151 (2012).

24        v.  <u>Plaintiff's Supporting Evidence:</u> Never once did

25        Counterclaimants state that they had ownership rights to

26        the Potato Corner Intellectual Property. Instead,

27        Defendant Guy Koren engaged and participated in the

28

152

~~JOINTLY FILED CLAIMS TO BE TRIED~~SECOND
AMENDED JOINTLY FILED CLAIMS,
COUNTERCLAIMS, THIRD PARTY CLAIMS, AND
AFFIRMATIVE DEFENSES TO BE TRIED
~~175468760.1~~                              CASE NO. 2:24-CV-04546-SB(AGRX)

1       negotiation of the license to use the Potato Corner

2       Intellectual Property, with the intent of having SPAVI

3       relied on that representation that Counterclaimant did not

4       have a license. Additional evidence includes: Testimony

5       of Gregorio (Plaintiff's CEO), Magsaysay (Cinco's CEO),

6       Koren, Ybanez (Plaintiff's General Counsel), Tan

7       (Director responsible for international franchising); and

8       emails and correspondence during the negotiation of the

9       terms of the license agreement

10    vi. <u>PCJV USA Parties' Supporting Evidence:</u> SPAVI parties

11       have not articulated their defense beyond what is included

12       in their Answers. As it is articulated there, PCJV Parties

13       cannot determine the factual basis for the defense.  As

14       such, the out of an abundance of caution, PCJV Parties

15       incorporate by reference all of the evidence cited in

16       support of their causes of action.

17   e. Element 5: That party was induced to act on it and was harmed.

18      i. This element is disputed

19     ii. Nature of Dispute: legal and factual

20    iii. <u>Plaintiff's position statement:</u> Estoppel is an affirmative

21       defense

22    iv. <u>PCJV USA Parties' Position Statement:</u> Equitable

23       estoppel is an equitable claim to be tried by the Court.

24       *Ultimax Cement Mfg. Corp. v. CTS Cement Mfg. Corp.*,

25       856 F.Supp. 2d 1136, 1151 (2012).

26     v. <u>Plaintiff's Supporting Evidence:</u> Never once did

27       Counterclaimants state that they had ownership rights to

28

1   the Potato Corner Intellectual Property. Instead,

2   Defendant Guy Koren engaged and participated in the

3   negotiation of the license to use the Potato Corner

4   Intellectual Property, with the intent of having SPAVI

5   relied on that representation that Counterclaimant did not

6   have a license. Guy Koren refused to, engage in

7   reasonable and good faith negotiation. Instead, he only

8   offered royalty rates and license fees that were more than

9   90% below what Koren had agreed to be reasonable

10   licensing fees over a decade prior. Koren also repeatedly

11   disengaged from the negotiation process, but still was

12   utilizing the Potato Corner Intellectual Property. In the

13   three months prior to the termination of the licensing

14   agreement, Koren had gone radio silent, leading SPAVI to

15   believe that it no longer was interested in negotiating a

16   license. Therefore, SPAVI had no option, but to terminate

17   Counterclaimants license of the Potato Corner Intellectual

18   Property. Additional evidence includes: Testimony of

19   Gregorio (Plaintiff's CEO), Magsaysay (Cinco's CEO),

20   Koren, Ybanez (Plaintiff's General Counsel), Tan

21   (Director responsible for international franchising); and

22   emails and correspondence during the negotiation of the

23   terms of the license agreement

24   vi.  PCJV USA Parties' Supporting Evidence: SPAVI parties

25   have not articulated their defense beyond what is included

26   in their Answers. As it is articulated there, PCJV Parties

27   cannot determine the factual basis for the defense.  As

28

154

1    such, the out of an abundance of caution, PCJV Parties

2    incorporate by reference all of the evidence cited in

3    support of their causes of action.

4    4) **<u>Affirmative Defense No. 4</u>** Failure to Mitigate  Damages (asserted by

5    Counterclaim Defendant and Third Party Defendants as to all claims

6    alleged against them)

7    a.  Element No. 1: That the party seeking the damage award failed to

8    use reasonable efforts to mitigate damages

9    i.  This element is disputed

10    ii.  Nature of Dispute: factual

11    iii.  <u>Plaintiff's Supporting Evidence:</u> Both the JVA and AJVA

12    contain an agreement to agree on a Master License

13    Agreement. There was never a written license agreement

14    between Counterclaimants and counter defendants or third

15    party defendants for the use of the Potato Corner

16    Intellectual Property. Counterclaimants entered into a

17    negotiation process with Cinco, prior to SPAVI's

18    acquisition of the Potato Corner brand and all of the

19    Potato Corner Intellectual Property from Cinco, for the

20    terms of a license to use the Potato Corner Intellectual

21    Property. These negotiations began before SPAVI

22    purchased the rights to the Potato Corner IP. So,

23    Counterclaimants have been aware of the lack of

24    ownership rights in the Potato Corner Intellectual

25    Property and the non-existence of a written agreement.

26    Then, between December of 2021 through 2024, the

27    months immediately preceding the filing of this action,

28

1  |  SPAVI engaged in a good faith and exhaustive attempt to
2  |  negotiate the terms of a written license with
3  |  Counterclaimants as well. Never once did
4  |  Counterclaimants state that they had ownership rights to
5  |  the Potato Corner Intellectual Property, and SPAVI relied
6  |  on that representation because had one been expressed,
7  |  that would have been a dispute as to the ownership rights
8  |  to which SPAVI would have filed this lawsuit sooner.
9  |  Moreover, Guy Koren refused to engage in reasonable
10 |  and good faith negotiation, which would have led to the
11 |  execution of a licensing agreement. Instead, he only
12 |  offered royalty rates and license fees that were more than
13 |  90% below what Koren had agreed to be reasonable
14 |  licensing fees over a decade prior. Koren also repeatedly
15 |  disengaged from the negotiation process, but still was
16 |  utilizing the Potato Corner Intellectual Property. In the
17 |  three months prior to the termination of the licensing
18 |  agreement, Koren had gone radio silent, leading SPAVI to
19 |  believe that it no longer was interested in negotiating a
20 |  license. Therefore, SPAVI had no option, but to terminate
21 |  Counterclaimants license to use the Potato Corner
22 |  Intellectual Property. Additional evidence includes:
23 |  Notarized Deeds signed by seller and buyer; USPTO
24 |  filings including Registrations and Assignments;
25 |  Testimony of Gregorio (Plaintiff's CEO), Magsaysay
26 |  (Cinco's CEO), Koren, Ybanez (Plaintiff's General
27 |  Counsel), Tan (Director responsible for international
28 |

CASE NO. 2:24-CV-04546-SB(AGRX)

1    franchising); May 31, 2024 Termination Letter; and

2    emails and correspondence during the negotiation of the

3    terms of the license agreement.

4        iv. Defendants' Supporting Evidence: SPAVI parties have

5    not articulated their defense beyond what is included in

6    their Answers until 7am on August 12, 2025. *See* n. 1. As

7    it is articulated in the Answers, PCJV Parties cannot

8    determine the factual basis for the defense.  As such, the

9    out of an abundance of caution, PCJV Parties incorporate

10    by reference all of the evidence cited in support of their

11    causes of action

12      b. Element No. 2: the amount, if any, by which damages have been

13        mitigated

14          i. This element is disputed

15          ii. <u>Nature of Dispute:</u> factual

16         iii. <u>Plaintiff's Supporting Evidence:</u> Had Counterclaimants

17    negotiated in good faith, SPAVI would have executed a

18    license agreement and not terminated the licensing

19    agreement. The amount of alleged damage resulting from

20    the termination of the license agreement could have been

21    mitigated. Additional evidence includes: Amended Joint

22    Venture Agreement and Joint Venture Agreement;

23    Testimony of Koren, Plaintiff executives Gregorio

24    (Plaiuntiff's CEO), Concepcion (Plaintiff's COO charged

25    with US operations), Tan (Director responsible for

26    international franchising); Emails and correspondence

27    with SPAVI, Koren, and PCJV relating to negotiations of

28

157

JOINTLY FILED CLAIMS TO BE TRIEDSECOND                     CASE NO. 2:24-CV-04546-SB(AGRX)
AMENDED JOINTLY FILED CLAIMS,
COUNTERCLAIMS, THIRD PARTY CLAIMS, AND
AFFIRMATIVE DEFENSES TO BE TRIED
175468760.1

1    a licensing agreement for the use of the Potato Corner

2    Intellectual Property; Financial documents of

3    Counterclaimants; May 31, 2024 Termination Letter

4    iv.  Defendants' Supporting Evidence: SPAVI parties have

5    not articulated their defense beyond what is included in

6    their Answers until 7am on August 12, 2025. *See* n. 1. As

7    it is articulated in the Answers, PCJV Parties cannot

8    determine the factual basis for the defense.  As such, the

9    out of an abundance of caution, PCJV Parties incorporate

10    by reference all of the evidence cited in support of their

11    causes of action

12    5) **Affirmative Defense No. 5:** Immunity (asserted by SPAVI as to all

13    claims alleged against it)

14    a.  <u>Element No. 1</u> – That Counterclaim Defendant had a legitimate

15    economic interest and thus shielded from liability in pursuit of its own

16    lawful business interests

17    i.  This element is disputed

18    ii.  Nature of Dispute: Legal and factual

19    iii.  <u>PCJV USA Parties' Position Statement:</u> PCJV USA

20    Parties cannot articulate a response to this affirmative

21    defense because SPAVI Parties did not provide their

22    statement of what the applicable elements are or their

23    positions regarding those elements.  They have otherwise

24    not articulated how this affirmative defense applies

25    beyond their Answers.

26    iv.  <u>Plaintiff's Supporting Evidence:</u> In December 2021,

27    SPAVI entered into a transaction to acquire the Potato

28

<div align="center">158</div>

1    Corner Intellectual Property, including the Potato Corner

2    Standard Characters Mark and the Potato Corner Logo

3    Mark, and all of the rights thereto, from Cinco. That

4    transaction closed during the first half of 2022. As such,

5    SPAVI had an economic interest in the Potato Corner

6    Intellectual Property. Additional evidence includes:

7    Notarized Deeds signed by seller and buyer; USPTO

8    filings including Registrations and Assignments,

9    testimony of Gregorio (Plaintiff's CEO), Magsaysay

10    (Cinco's CEO), Tan (Director responsible for

11    international franchising)

12    v.  PCJV USA Parties' Supporting Evidence: SPAVI parties

13    have not articulated their defense beyond what is included

14    in their Answers. As it is articulated there, PCJV Parties

15    cannot determine the factual basis for the defense.  As

16    such, the out of an abundance of caution, PCJV Parties

17    incorporate by reference all of the evidence cited in

18    support of their causes of action.

19    6) **Affirmative Defense No. 6**: Privilege (asserted by SPAVI as to all claims

20    alleged against it)

21    a.  Element No. 1 – That Counterclaim Defendant had a legitimate

22    economic interest

23    i.  This element is disputed

24    ii.  Nature of Dispute: legal and factual

25    iii.  Defendants' Position Statement: SPAVI parties have not

26    articulated their defense beyond what is included in their

27    Answers. *See* n. 1. As it is articulated in the Answers,

28

159
JOINTLY FILED CLAIMS TO BE TRIEDSECOND
AMENDED JOINTLY FILED CLAIMS,
COUNTERCLAIMS, THIRD PARTY CLAIMS, AND
AFFIRMATIVE DEFENSES TO BE TRIED
175468760.1                          CASE NO. 2:24-CV-04546-SB(AGRX)

1                          PCJV Parties cannot determine the legal basis for the

2                          defense

3            iv.   <u>Plaintiff's Supporting Evidence:</u> In December 2021,

4                          SPAVI entered into a transaction to acquire the Potato

5                          Corner Intellectual Property, including the Potato Corner

6                          Standard Characters Mark and the Potato Corner Logo

7                          Mark, and all of the rights thereto, from Cinco. That

8                          transaction closed during the first half of 2022. As such,

9                          SPAVI had an economic interest in the Potato Corner

10                         Intellectual Property. Additional evidence includes:

11                         Notarized Deeds signed by seller and buyer; USPTO

12                         filings including Registrations and Assignments,

13                         testimony of Gregorio (Plaintiff's CEO), Magsaysay

14                         (Cinco's CEO), Tan (Director responsible for

15                         international franchising)

16            v.   <u>Defendants' Supporting Evidence:</u> SPAVI parties have

17                         not articulated their defense beyond what is included in

18                         their Answers until 7am on August 12, 2025. *See* n. 1. As

19                         it is articulated in the Answers, PCJV Parties cannot

20                         determine the factual basis for the defense.  As such, the

21                         out of an abundance of caution, PCJV Parties incorporate

22                         by reference all of the evidence cited in support of their

23                         causes of action

24       b.   <u>Element No. 2</u> – That Counterclaim Defendant acted only to protect its

25           own economic interest.

26           i.   This element is disputed

27           ii.   Nature of Dispute: legal and factual

28

1    iii.  Defendants' Position Statement: SPAVI parties have not

2    articulated their defense beyond what is included in their

3    Answers. *See* n. 1. As it is articulated in the Answers,

4    PCJV Parties cannot determine the legal basis for the

5    defense.

6    iv.  Plaintiff's Supporting Evidence: Counterclaimant have no

7    evidence of a written license to use SPAVI's Potato

8    Corner Intellectual Property, and, as such, its rights (that

9    it has sold to its franchisees) derive from what is, at best,

10   a terminable at will, fully revocable license because

11   Defendants were nonetheless operating Potato Corner

12   locations, as if a written license existed. *See Pogrebnoy v.*

13   *Russian Newspaper Distribution, Inc.,* 289 F. Supp. 3d

14   1061, 1070 (C.D. Cal. 2017), aff'd, 742 F. App'x 291 (9th

15   Cir. 2018) ("[A]n implied license, like any other contract,

16   is terminable at the will of either party if it is not for a

17   specified term."). After SPAVI's acquisition of the Potato

18   Corner brand, it became the licensor of the Potato Corner

19   Intellectual Property. Between December of 2021 through

20   2024, the months immediately preceding this action,

21   SPAVI engaged in a good faith and exhaustive attempt to

22   negotiate the terms of a written license with PCJV.

23   Defendant Guy Koren engaged and participated in this

24   negotiation, but was unwilling to agree to any minimally

25   commercially viable licensing terms. Therefore, Plaintiff

26   had no option to terminate the license of the Potato

27   Corner Intellectual Property. Additional evidence

28

---

161

**Formatted:** Font: 14 pt

1    includes: Testimony of Koren, Plaintiff executives

2    Gregorio (Plaiuntiff's CEO), Concepcion (Plaintiff's

3    COO charged with US operations), Tan (Director

4    responsible for international franchising), Magsaysay

5    (Cinco's CEO); Emails and correspondence with SPAVI,

6    Koren, and PCJV relating to negotiations of a licensing

7    agreement for the use of the Potato Corner Intellectual

8    Property; Amended Joint Venture Agreement; Franchise

9    Agreements; FDDs; Trial Exhibit 29 (May 31, 2024

10    Termination)

11        v.  Defendants' Supporting Evidence: SPAVI parties have

12            not articulated their defense beyond what is included in

13            their Answers until 7am on August 12, 2025. *See* n. 1. As

14            it is articulated in the Answers, PCJV Parties cannot

15            determine the factual basis for the defense.  As such, the

16            out of an abundance of caution, PCJV Parties incorporate

17            by reference all of the evidence cited in support of their

18            causes of action.

19    c.  Element No. 3 – That Counterclaim Defendant acted reasonably and in

20        good faith to protect it.

21        i.  This element is disputed

22        ii.  Nature of Dispute: legal and factual

23        iii.  Defendants' Position Statement: SPAVI parties have not

24             articulated their defense beyond what is included in their

25             Answers. *See* n. 1. As it is articulated in the Answers,

26             PCJV Parties cannot determine the legal basis for the

27             defense.

28

JOINTLY FILED CLAIMS TO BE TRIEDSECOND                    CASE NO. 2:24-CV-04546-SB(AGRX)
AMENDED JOINTLY FILED CLAIMS,
COUNTERCLAIMS, THIRD PARTY CLAIMS, AND
AFFIRMATIVE DEFENSES TO BE TRIED
175468760.1

1        iv.  <u>Plaintiff's Supporting Evidence:</u> Counterclaimant have no

2             evidence of a written license to use SPAVI's Potato

3             Corner Intellectual Property, and, as such, its rights (that

4             it has sold to its franchisees) derive from what is, at best,

5             a terminable at will, fully revocable license because

6             Defendants were nonetheless operating Potato Corner

7             locations, as if a written license existed. *See Pogrebnoy v.*

8             *Russian Newspaper Distribution, Inc.,* 289 F. Supp. 3d

9             1061, 1070 (C.D. Cal. 2017), aff'd, 742 F. App'x 291 (9th

10           Cir. 2018) ("[A]n implied license, like any other contract,

11           is terminable at the will of either party if it is not for a

12           specified term."). After SPAVI's acquisition of the Potato

13           Corner brand, it became the licensor of the Potato Corner

14           Intellectual Property. Between December of 2021 through

15           2024, the months immediately preceding this action,

16           SPAVI engaged in a good faith and exhaustive attempt to

17           negotiate the terms of a written license with PCJV.

18           Defendant Guy Koren engaged and participated in this

19           negotiation, but was unwilling to agree to any minimally

20           commercially viable licensing terms. Therefore, Plaintiff

21           had no option to terminate the license of the Potato

22           Corner Intellectual Property. Additional evidence

23           includes: Testimony of Koren, Plaintiff executives

24           Gregorio (Plaiuntiff's CEO), Concepcion (Plaintiff's

25           COO charged with US operations), Tan (Director

26           responsible for international franchising), Magsaysay

27           (Cinco's CEO); Emails and correspondence with SPAVI,

28

163
~~JOINTLY FILED CLAIMS TO BE TRIED~~SECOND         CASE NO. 2:24-CV-04546-SB(AGRX)
AMENDED JOINTLY FILED CLAIMS,
COUNTERCLAIMS, THIRD PARTY CLAIMS, AND
AFFIRMATIVE DEFENSES TO BE TRIED
~~175468760.1~~

1    Koren, and PCJV relating to negotiations of a licensing

2    agreement for the use of the Potato Corner Intellectual

3    Property; Amended Joint Venture Agreement; Franchise

4    Agreements; FDDs; Trial Exhibit 29 (May 31, 2024

5    Termination)

6        v.    Defendants' Supporting Evidence: SPAVI parties have

7            not articulated their defense beyond what is included in

8            their Answers until 7am on August 12, 2025. *See* n. 1. As

9            it is articulated in the Answers, PCJV Parties cannot

10           determine the factual basis for the defense.  As such, the

11           out of an abundance of caution, PCJV Parties incorporate

12           by reference all of the evidence cited in support of their

13           causes of action.

14    7)    **Affirmative Defense No. 7:** Unclean Hands (asserted by Counterclaim

15        Defendant and Third Party Defendants as to all claims alleged against

16        them)

17        a.    Element No. 1: Counterclaimant engaged in inequitable and/or

18            unethical behavior that bars it from seeking relief

19                i.    This element is disputed

20                ii.    Nature of Dispute: factual

21                iii.    Plaintiff's Supporting Evidence: Counterclaimants have at

22                    best, a terminable at will, fully revocable license because

23                    Defendants were nonetheless operating Potato Corner

24                    locations, as if a written license existed. *See Pogrebnoy v.*

25                    *Russian Newspaper Distribution, Inc.,* 289 F. Supp. 3d

26                    1061, 1070 (C.D. Cal. 2017), aff'd, 742 F. App'x 291 (9th

27                    Cir. 2018) ("[A]n implied license, like any other contract,

28

164

~~JOINTLY FILED CLAIMS TO BE TRIED~~SECOND
AMENDED JOINTLY FILED CLAIMS,
COUNTERCLAIMS, THIRD PARTY CLAIMS, AND
AFFIRMATIVE DEFENSES TO BE TRIED
~~175468760.1~~

CASE NO. 2:24-CV-04546-SB(AGRX)

1  is terminable at the will of either party if it is not for a
2  specified term."). Despite using the Potato Corner
3  Intellectual Property for over a decade, Counterclaimants
4  have never once paid a single cent of a licensing for its
5  use to Cinco nor SPAVI. Counterclaimants have used
6  Cinco's, and after the asset purchase, SPAVI's trademark
7  without compensation to either party. Additional evidence
8  includes: Financial statements of Counterclaimants
9  evidence that no licensing fees have ever been paid;
10  Notarized Deeds signed by seller and buyer; USPTO
11  filings including Registrations and Assignments;
12  Testimony of Gregorio (Plaintiff's CEO), Magsaysay
13  (Cinco's CEO), Koren, Ybanez (Plaintiff's General
14  Counsel), Tan (Director responsible for international
15  franchising), Concepcion (Plaintiff's COO charged with
16  US operations); emails and correspondence with Cinco,
17  SPAVI, Koren, and PCJV relating to negotiations of a
18  licensing agreement

19    iv.  Defendants' Supporting Evidence: SPAVI parties have
20         not articulated their defense beyond what is included in
21         their Answers until 7am on August 12, 2025. *See* n. 1. As
22         it is articulated in the Answers, PCJV Parties cannot
23         determine the factual basis for the defense.  As such, the
24         out of an abundance of caution, PCJV Parties incorporate
25         by reference all of the evidence cited in support of their
26         causes of action. Also, the state court preliminary
27         injunction (holding that Cinco Corporation was not likely

28

JOINTLY FILED CLAIMS TO BE TRIEDSECOND          CASE NO. 2:24-CV-04546-SB(AGRX)
AMENDED JOINTLY FILED CLAIMS,
COUNTERCLAIMS, THIRD PARTY CLAIMS, AND
AFFIRMATIVE DEFENSES TO BE TRIED
175468760.1

1    to prevail on prior claims of wrongdoing); confidential

2    settlement communications do not support allegations;

3    Cinco Corporation's settlement and release of prior

4    allegations of wrongdoing.

5    8) **Affirmative Defense No. 8:** Waiver (asserted by Counterclaim Defendant

6    and Third Party Defendants as to all claims alleged against them)

7        a.    Element No. 1: Through implied and/or express conduct,

8        Counterclaimants knowingly waived a valid right, privilege,

9        advantage, or benefit allegedly conferred upon it and its attempt to

10        enforce that right, privilege, advantage, or benefit is thus barred.

11            i.    This element is disputed

12            ii.   Nature of Dispute: factual

13            vii.  Plaintiff's Supporting Evidence: Both the JVA and AJVA

14                contain an agreement to agree on a Master License

15                Agreement. There was never a written license agreement

16                between Counterclaimants and counter defendants or third

17                party defendants. Counterclaimant entered into a

18                negotiation process with Cinco, prior to SPAVI's

19                acquisition of the Potato Corner brand and all of the

20                Potato Corner Intellectual Property from Cinco, for the

21                terms of a license to use the Potato Corner Intellectual

22                Property. These negotiations began before SPAVI

23                purchased the rights to the Potato Corner IP. So,

24                Counterclaimants have been aware of the lack of

25                ownership rights in the Potato Corner Intellectual

26                Property and the non-existence of a written agreement.

27                Then, between December of 2021 through 2024, the

28

1   months immediately preceding the filing of this action,

2   SPAVI engaged in a good faith and exhaustive attempt to

3   negotiate the terms of a written license with

4   Counterclaimants as well. Never once did

5   Counterclaimants state that they had ownership rights to

6   the Potato Corner Intellectual Property, and SPAVI relied

7   on that representation because had one been expressed,

8   that would have been a dispute as to the ownership rights

9   to which SPAVI would have filed this lawsuit sooner.

10  Instead, Counterclaimants and Counter Defendants

11  continued to negotiate the terms of a license to use the

12  Potato Corner Intellectual Property. Additional evidence

13  includes: Notarized Deeds signed by seller and buyer;

14  USPTO filings including Registrations and Assignments;

15  Testimony of Gregorio (Plaintiff's CEO), Magsaysay

16  (Cinco's CEO), Koren, Ybanez (Plaintiff's General

17  Counsel), Tan (Director responsible for international

18  franchising); and emails and correspondence during the

19  negotiation of the terms of the license agreement.

20  iii. Defendants' Supporting Evidence: SPAVI parties have

21  not articulated their defense beyond what is included in

22  their Answers until 7am on August 12, 2025. *See* n. 1. As

23  it is articulated in the Answers, PCJV Parties cannot

24  determine the factual basis for the defense.  As such, the

25  out of an abundance of caution, PCJV Parties incorporate

26  by reference all of the evidence cited in support of their

27  causes of action. The state court preliminary injunction

28

JOINTLY FILED CLAIMS TO BE TRIEDSECOND
AMENDED JOINTLY FILED CLAIMS,
COUNTERCLAIMS, THIRD PARTY CLAIMS, AND
AFFIRMATIVE DEFENSES TO BE TRIED
175468760.1

CASE NO. 2:24-CV-04546-SB(AGRX)

1    (enjoining Cinco Corporation from interfering with

2    PCJV's President's control over Potato Corner in the

3    United States and communicating with its franchisees);

4    confidential settlement communications do not support

5    any waiver, as Defendants never waived any rights but

6    were trying to settle disputes; Cinco Corporation's

7    settlement and release of prior allegations and transfer of

8    the very interests, rights and obligations over which the

9    parties are now litigating.

10    9) **Affirmative Defense No. 9:** Comparative Fault (asserted by

11    Counterclaim Defendant SPAVI as to the negligent interference with

12    prospective economic relations claim)

13    a.  Element No. 1: That Counterclaimant was negligent

14        i.  This element is disputed

15        ii.  Nature of Dispute: factual

16        iii.  Plaintiff's Supporting Evidence: Both the JVA and AJVA

17            contain an agreement to agree on a Master License

18            Agreement. As such, there was no written license

19            agreement. Counterclaimant entered into a negotiation

20            process with Cinco, prior to SPAVI's acquisition of the

21            Potato Corner brand and all of the Potato Corner

22            Intellectual Property from Cinco, for the terms of a

23            license to use the Potato Corner Intellectual Property.

24            These negotiations began before SPAVI purchased the

25            rights to the Potato Corner IP. So, Counterclaimants have

26            been aware of the lack of ownership rights in the Potato

27            Corner Intellectual Property and the non-existence of a

28

1    written agreement. Then, between December of 2021
2    through 2024, the months immediately preceding this
3    action, SPAVI engaged in a good faith and exhaustive
4    attempt to negotiate the terms of a written license with
5    PCJV as well. Never once did Counterclaimants state that
6    they had ownership rights to the Potato Corner
7    Intellectual Property, and SPAVI relied on that
8    representation because had one been expressed, that
9    would have been a dispute as to the ownership rights to
10   which SPAVI would have filed this lawsuit sooner.
11   Moreover, Guy Koren could have, but refused to, engage
12   in reasonable and good faith negotiation. Instead, he only
13   offered royalty rates and license fees that were more than
14   90% below what Koren had agreed to be reasonable
15   licensing fees over a decade prior. Koren also repeatedly
16   disengaged from the negotiation process, but still was
17   utilizing the Potato Corner Intellectual Property.
18   Additional evidence includes: Notarized Deeds signed by
19   seller and buyer; USPTO filings including Registrations
20   and Assignments; Testimony of Gregorio (Plaintiff's
21   CEO), Magsaysay (Cinco's CEO), Koren, Ybanez
22   (Plaintiff's General Counsel), Tan (Director responsible
23   for international franchising); and emails and
24   correspondence during the negotiation of the terms of the
25   license agreement.
26        iv.   Defendants' Supporting Evidence: SPAVI parties have
27              not articulated their defense beyond what is included in

---

169

1    their Answers until 7am on August 12, 2025. *See* n. 1. As

2    it is articulated in the Answers, PCJV Parties cannot

3    determine the factual basis for the defense.  As such, the

4    out of an abundance of caution, PCJV Parties incorporate

5    by reference all of the evidence cited in support of their

6    causes of action. The state court preliminary injunction

7    (enjoining Cinco Corporation from interfering with

8    PCJV's President's control over Potato Corner in the

9    United States and communicating with its franchisees); at

10    all relevant times Defendants exercised control over

11    Potato Corner in the United States and did not change the

12    status quo between the parties, including in dealings with

13    Plaintiff and Plaintiff's predecessor.

14    b.  Element No. 2: That Counterclaimant's negligence was a substantial

15       factor in causing its harm.

16          i.  This element is disputed

17          ii.  Nature of Dispute: factual

18          iii.  Plaintiff's Supporting Evidence: Guy Koren could have,

19              but refused to, engage in reasonable and good faith

20              negotiation. Instead, he only offered royalty rates and

21              license fees that were more than 90% below what Koren

22              had agreed to be reasonable licensing fees over a decade

23              prior. Koren also repeatedly disengaged from the

24              negotiation process, but still was utilizing the Potato

25              Corner Intellectual Property. In light of the two year

26              negotiation process that went nowhere, and

27              Counterclaimant no furnishing any consideration

28

170

JOINTLY FILED CLAIMS TO BE TRIEDSECOND                    CASE NO. 2:24-CV-04546-SB(AGRX)
AMENDED JOINTLY FILED CLAIMS,
COUNTERCLAIMS, THIRD PARTY CLAIMS, AND
AFFIRMATIVE DEFENSES TO BE TRIED
175468760.1

1    whatsoever in exchange for the use of the Potato Corner

2    Intellectual Property, SPAVI concluded that it exhausted

3    all efforts to negotiate a license agreement with

4    Counterclaimants. As such, SPAVI had no choice by to

5    terminate Counterclaimants licensing agreement.

6    Additional supporting evidence includes: Notarized

7    Deeds signed by seller and buyer; USPTO filings

8    including Registrations and Assignments; Testimony of

9    Gregorio (Plaintiff's CEO), Magsaysay (Cinco's CEO),

10    Koren, Ybanez (Plaintiff's General Counsel), Tan

11    (Director responsible for international franchising); May

12    31, 2024 Termination Letter; and emails and

13    correspondence during the negotiation of the terms of the

14    license agreement.

15    iv.  Defendants' Supporting Evidence: SPAVI parties have

16    not articulated their defense beyond what is included in

17    their Answers until 7am on August 12, 2025. *See* n. 1. As

18    it is articulated in the Answers, PCJV Parties cannot

19    determine the factual basis for the defense.  As such, the

20    out of an abundance of caution, PCJV Parties incorporate

21    by reference all of the evidence cited in support of their

22    causes of action. The state court preliminary injunction

23    (enjoining Cinco Corporation from interfering with

24    PCJV's President's control over Potato Corner in the

25    United States and communicating with its franchisees); at

26    all relevant times Defendants exercised control over

27    Potato Corner in the United States and did not change the

28

CASE NO. 2:24-CV-04546-SB(AGRX)

1      status quo between the parties, including in dealings with

2      Plaintiff and Plaintiff's predecessor

3      10)    **Affirmative Defense No. 10:** Lack or Inadequacy of Consideration

4      (asserted by Counterclaim Defendant and Third Party Defendants as to all

5      claims alleged against them)

6      a. <u>Element No. 1:</u> Counterclaimant has failed or refused to provide

7      anything of value in exchange for the use of SPAVI's license to use

8      the Potato Corner Intellectual Property

9      i.  This element is disputed

10     ii. Nature of Dispute: factual

11     iii. <u>Plaintiff's Supporting Evidence:</u> Despite using the Potato

12     Corner Intellectual Property for over a decade,

13     Counterclaimants have never once paid a single cent of a

14     licensing fee for its use to Cinco nor SPAVI.

15     Counterclaimants have used Cinco's, and after the asset

16     purchase, SPAVI's trademark without compensation to

17     either party. Additional evidence includes: Financial

18     statements of Counterclaimants evidence that no licensing

19     fees have ever been paid; Notarized Deeds signed by

20     seller and buyer; USPTO filings including Registrations

21     and Assignments; Testimony of Gregorio (Plaintiff's

22     CEO), Magsaysay (Cinco's CEO), Koren, Ybanez

23     (Plaintiff's General Counsel), Tan (Director responsible

24     for international franchising), Concepcion (Plaintiff's

25     COO charged with US operations); JVA and AJVA;

26     emails and correspondence with Cinco, SPAVI, Koren,

27     and PCJV relating to negotiations of a licensing

28

172

1    agreement

2    iv. Defendants' Supporting Evidence: SPAVI parties have

3    not articulated their defense beyond what is included in

4    their Answers until 7am on August 12, 2025. *See* n. 1. As

5    it is articulated in the Answers, PCJV Parties cannot

6    determine the factual basis for the defense.  As such, the

7    out of an abundance of caution, PCJV Parties incorporate

8    by reference all of the evidence cited in support of their

9    causes of action

10    11)    **Affirmative Defense No. 11**: Abandonment or Mutual Recession of

11    Contract (asserted by Counterclaim Defendant and Third Party

12    Defendants as to all claims alleged against them)

13    a. Element No. 1: Counterclaimants license to use the Potato Corner

14    Intellectual Property was effectively terminated by mutual consent or

15    that Counterclaimants actions led SPAVI to believe that it was

16    abandoned.

17    i. This element is disputed.

18    ii. Nature of Dispute: factual

19    iii. Plaintiff's Supporting Evidence: Counterclaimants have

20    no evidence of a written license to use SPAVI's Potato

21    Corner Intellectual Property, and, as such, its rights (that

22    it has sold to its franchisees) derive from what is, at best,

23    a terminable at will, fully revocable license because

24    Defendants were nonetheless operating Potato Corner

25    locations, as if a written license existed. *See Pogrebnoy v.*

26    *Russian Newspaper Distribution, Inc.,* 289 F. Supp. 3d

27    1061, 1070 (C.D. Cal. 2017), aff'd, 742 F. App'x 291 (9th

28

1    Cir. 2018) ("[A]n implied license, like any other contract,
2    is terminable at the will of either party if it is not for a
3    specified term."). After SPAVI's acquisition of the Potato
4    Corner brand, it became the licensor of the Potato Corner
5    Intellectual Property. Between December of 2021 through
6    2024, the months immediately preceding this action,
7    SPAVI engaged in a good faith and exhaustive attempt to
8    negotiate the terms of a written license with PCJV.
9    Defendant Guy Koren engaged and participated in this
10   negotiation, but was unwilling to agree to any minimally
11   commercially viable licensing terms. Moreover, Guy
12   Koren refused to, engage in reasonable and good faith
13   negotiation. Instead, he only offered royalty rates and
14   license fees that were more than 90% below what Koren
15   had agreed to be reasonable licensing fees over a decade
16   prior. Koren also repeatedly disengaged from the
17   negotiation process, but still was utilizing the Potato
18   Corner Intellectual Property. In the three months prior to
19   the termination of the licensing agreement, Koren had
20   gone radio silent, leading SPAVI to believe that it no
21   longer was interested in negotiating a license. Therefore,
22   SPAVI had no option, but to terminate Coutnerclaimants
23   license of the Potato Corner Intellectual Property.
24   Additional evidence includes: Testimony of Koren,
25   Plaintiff executives Gregorio (Plaiuntiff's CEO),
26   Concepcion (Plaintiff's COO charged with US
27   operations), Tan (Director responsible for international

28

174

1    franchising), Magsaysay (Cinco's CEO); Emails and

2    correspondence with SPAVI, Koren, and PCJV relating to

3    negotiations of a licensing agreement for the use of the

4    Potato Corner Intellectual Property; Amended Joint

5    Venture Agreement; Franchise Agreements; FDDs; Trial

6    Exhibit 29 (May 31, 2024 Termination)

7    iv.  Defendants' Supporting Evidence: SPAVI parties have

8    not articulated their defense beyond what is included in

9    their Answers until 7am on August 12, 2025. *See* n. 1. As

10    it is articulated in the Answers, PCJV Parties cannot

11    determine the factual basis for the defense.  As such, the

12    out of an abundance of caution, PCJV Parties incorporate

13    by reference all of the evidence cited in support of their

14    causes of action. Defendants settled with Plaintiff's

15    predecessor and acquired all of Plaintiff's predecessor's

16    interests in PCJV and all "attached" rights; it did not

17    abandon any rights or obligations under PCJV USA,

18    LLC's governing documents.

19

20  **IV.  Adjudication of Causes of Action, Counter Claims, Third Party Claims,**

21      **and Affirmative Defenses Not to be Decided by a Jury**

22    The parties request adjudication of the following causes of action, counter

23  claims, third party claims, and affirmative defenses in the following manner and at

24  the following time:

25    1)  At the conclusion of trial, Plaintiff will seek a permanent injunction and

26        declaratory relief with this Court, as well as for additional relief under the

27        Lanham Act reserved for this Court. At that time, depending on the jury's

28

175
JOINTLY FILED CLAIMS TO BE TRIEDSECOND                    CASE NO. 2:24-CV-04546-SB(AGRX)
AMENDED JOINTLY FILED CLAIMS,
COUNTERCLAIMS, THIRD PARTY CLAIMS, AND
AFFIRMATIVE DEFENSES TO BE TRIED
175468760.1

1    ~~reaction to the § 1125 unfair competition claim, Plaintiff will present that~~
2    ~~equitable claim to this Court. Plaintiff will also present at that time its~~
3    ~~affirmative defense of "One Who Seeks Equity Must Do Equity."~~
4    ~~2)~~1)    PCJV USA Parties request the Court to adjudicate PCJV USA Parties'
5          following causes of action at the conclusion of trial:  (1) Declaratory
6          Relief; and (2) Violations of Business & Professions Code §§ 17200, et
7          *seq*
8    ~~3)~~2)    PCJV USA Parties request the Court to adjudicate PCJV USA Parties'
9          following affirmative defenses at the conclusion of trial: (1) failure to
10         state a claim; (2) consent/acquiescence, ratification, promissory estoppel,
11         equitable estoppel, and judicial estoppel; (3) unclean hands; (4) laches, (5)
12         fraud on USPTO, (6) authorized use, (7) public availability of trade
13         secrets, and (8) lack of at will license agreement
14   The parties abandoned the following claims:
15         1)  PCJV USA Parties abandon their Accounting cause of action.
16         2)  SPAVI Parties are no longer pursuing the claim for unregistered
17             trademarks.

*Formatted: Font: 14 pt*

*Formatted: Line spacing:  Exactly 12 pt*

26   Dated:  August ~~12~~22, 2025              */s/ Matthew Follett*
27                                              Michael D. Murphy
                                                Matthew Follett
28
                                    176



1                     Jessica Nwasike

2                     Fox Rothschild LLP

3                     *Attorneys for Plaintiff and Counterclaim Defendant, and Third Party Defendants*

5

6  ~~Dated: August 12, 2025~~

7                    ~~Arash Beral~~

                     ~~Todd M. Malynn~~

8                    ~~Blank Rome LLP~~

9                    ~~*Attorneys for Defendants, Counterclaimants, and Third Party Plaintiffs*~~

10  DATED: August 22, 2025     **BLANK ROME LLP**

13                    By: */s/ Todd M. Malynn*

                     Todd M. Malynn

14                    Arash Beral

                     Jamison T. Gilmore

15                   Attorneys for Defendants, Counterclaimants, and Third Party Plaintiffs PCJV USA, LLC, PCI TRADING LLC, POTATO CORNER, LA GROUP, LLC, GK CAPITAL GROUP, LLC, NKM CAPITAL GROUP, LLC and GUY KOREN, and Defendants J & K AMERICANA, LLC, J&K LAKEWOOD, LLC, J&K OAKRIDGE, LLC, J&K VALLEY FAIR, LLC, J & K ONTARIO, LLC, J&K PC TRUCKS, LLC, HLK MILPITAS, LLC, and GK CERRITOS, LLC

~~JOINTLY FILED CLAIMS TO BE TRIED~~SECOND
AMENDED JOINTLY FILED CLAIMS,
COUNTERCLAIMS, THIRD PARTY CLAIMS, AND
AFFIRMATIVE DEFENSES TO BE TRIED
~~17546876O.1~~          CASE NO. 2:24-CV-04546-SB(AGRX)

1  **ATTESTATION OF E-FILED SIGNATURE**

2  Pursuant to Civil Local Rule 5-4.3.4(a)(2)(i), I, Todd M. Malynn, hereby attest

3  that I have obtained concurrence in the filing of this document from the other

4  signatories to this document. I declare under penalty of perjury under the laws of

5  United States of America that the foregoing is true and correct.

6

   DATED: August 22, 2025          **BLANK ROME LLP**

7

8                                  By: *Todd M. Malynn*

9                                      Todd M. Malynn
                                       Arash Beral
10                                     Jamison T. Gilmore
                                   Attorneys for Defendants, Counterclaimants,
11                                 and Third Party Plaintiffs PCJV USA, LLC,
                                   PCI TRADING LLC, POTATO CORNER,
12                                 LA GROUP, LLC, GK CAPITAL GROUP,
                                   LLC, NKM CAPITAL GROUP, LLC and
13                                 GUY KOREN, and Defendants J & K
                                   AMERICANA, LLC, J&K LAKEWOOD,
14                                 LLC, J&K OAKRIDGE, LLC, J&K
                                   VALLEY FAIR, LLC, J & K ONTARIO,
15                                 LLC, J&K PC TRUCKS, LLC, HLK
                                   MILPITAS, LLC, and GK CERRITOS,
16                                 LLC

17

18

19

20

21

22

23

24

25

26

27

28

---

178

1

## CERTIFICATE OF SERVICE

2  The undersigned certifies that, on ~~August 12, 2025,~~August 22, 2025, the foregoing

3  document was electronically filed with the Clerk of the Court for the United States

4  District Court, Central District of California, using the Court's Electronic Case

5  Filing (ECF ~~filing~~) system.  I further certify that all ~~counsel for all parties to this~~

6  ~~action~~participants in the case are registered CM/ECF users and that service will be

7  accomplished by the CM/ECF system.

8  _____ I certify under penalty of perjury that the foregoing is true and correct.

9  Executed on August 22, 2025.

10

11

12

13  ~~Dated:  August 12, 2025~~                     **FOX ROTHSCHILD LLP**

14

15                                              ~~Michael D. Murphy~~

16                                              ~~Attorneys for Plaintiff and Counterclaim~~
                                                ~~Defendant SHAKEY'S PIZZA ASIA~~

17                                              ~~VENTURES, INC. and Third Party~~
                                                ~~Defendants CINCO CORPORATION,~~

18                                              ~~PC INTERNATIONAL PTE LTD., and~~
                                                ~~SPAVI INTERNATIONAL USA, INC.~~

19                                              By:    */s/AJ Cruickshank*

20

21

22

23

24

25

26

27

28

~~JOINTLY FILED CLAIMS TO BE TRIED~~SECOND            CASE NO. 2:24-CV-04546-SB(AGRX)
AMENDED JOINTLY FILED CLAIMS,
COUNTERCLAIMS, THIRD PARTY CLAIMS, AND
AFFIRMATIVE DEFENSES TO BE TRIED
~~175468760.1~~