| | |
|---|---|
| 1 | **BLANK ROME LLP**<br>Todd M. Malynn (SBN 181595) |
| 2 | todd.malynn@blankrome.com<br>Arash Beral (SBN 245219) |
| 3 | arash.beral@blankrome.com<br>Jamison T. Gilmore (SBN 322100) |
| 4 | jamison.gilmore@blankrome.com<br>2029 Century Park East | 6th Floor |
| 5 | Los Angeles, CA 90067<br>Telephone: 424.239.3400 |
| 6 | Facsimile: 424.239.3434 |
| 7 | Attorneys for Defendants, Counterclaimants, and Third Party Plaintiffs PCJV USA, LLC, PCI |
| 8 | TRADING LLC, POTATO CORNER, LA GROUP, LLC, GK CAPITAL GROUP, LLC, |
| 9 | NKM CAPITAL GROUP, LLC and GUY KOREN, and Defendants J & K AMERICANA, |
| 10 | LLC, J&K LAKEWOOD, LLC, J&K OAKRIDGE, LLC, J&K VALLEY FAIR, LLC, J |
| 11 | & K ONTARIO, LLC, J&K PC TRUCKS, LLC, HLK MILPITAS, LLC, and GK CERRITOS, LLC |
| 12 | |
| 13 | **UNITED STATES DISTRICT COURT** |
| 14 | **CENTRAL DISTRICT OF CALIFORNIA** |

| | | |
|---|---|---|
| 15 | | |
| 16 | SHAKEY'S PIZZA ASIA VENTURES, INC, a Philippines corporation, | Case No. 2:24-CV-04546-SB(AGRx) |
| 17 | Plaintiff, | *Hon. Stanley Blumenfeld, Jr.* |
| 18 | vs. | **DECLARATION OF TODD M. MALYNN REGARDING** |
| 19 | PCJV USA, LLC, a Delaware limited | **VERDICT FORM (DKT NO. 284)** |
| 20 | liability company; PCI TRADING , LLC, a Delaware limited liability company; GUY | Complaint Filed: May 31, 2024<br>Trial Date: August 26, 2025 |
| 21 | KOREN, an individual; POTATO CORNER LA GROUP, LLC, a California limited | |
| 22 | liability company; NKM CAPITAL GROUP, LLC, a California limited liability company; | |
| 23 | J & K AMERICANA, LLC, a California limited liability company; J&K | |
| 24 | LAKEWOOD, LLC, a California limited liability company; J&K VALLEY FAIR, | |
| 25 | LLC, a California limited liability company; J & K ONTARIO, LLC, a California limited | |
| 26 | liability company; HLK MILPITAS, LLC, a California, limited liability company; GK | |
| 27 | CERRITOS, LLC, a California, limited liability company;  J&K PC TRUCKS, LLC, | |
| 28 | a California limited liability company; and, GK CAPITAL GROUP, LLC, a California | |

160850.00001/153289966v.1

**DECLARATION OF TODD M. MALYNN REGARDING VERDICT FORM [DKT NO. 284]**

| | |
|---|---|
| 1 | limited liability company and DOES 1 through 100, inclusive, |
| 2 | Defendants. |
| 3 | |
| 4 | PCJV USA, LLC, a Delaware limited liability company; PCI TRADING LLC, a Delaware limited liability company; POTATO CORNER LA GROUP LLC, a California limited liability company; GK CAPITAL GROUP, LLC, a California limited liability company; NKM CAPITAL GROUP LLC, a California limited liability company; and GUY KOREN, an individual, |
| 5 | |
| 6 | |
| 7 | |
| 8 | |
| 9 | Counter-Claimants, |
| 10 | v. |
| 11 | SHAKEY'S PIZZA ASIA VENTURES, INC, a Philippines corporation, |
| 12 | Counter Defendant. |
| 13 | |
| 14 | PCJV USA, LLC, a Delaware limited liability company; PCI TRADING LLC, a Delaware limited liability company; POTATO CORNER LA GROUP LLC, a California limited liability company; GK CAPITAL GROUP, LLC, a California limited liability company; NKM CAPITAL GROUP LLC, a California limited liability company; and GUY KOREN, an individual, |
| 15 | |
| 16 | |
| 17 | |
| 18 | |
| 19 | Third Party Plaintiffs, |
| 20 | v. |
| 21 | PC INTERNATIONAL PTE LTD., a Singapore business entity; SPAVI INTERNATIONAL USA, INC., a California corporation; CINCO CORPORATION, a Philippines corporation; and ROES 1 through 10, inclusive, |
| 22 | |
| 23 | |
| 24 | |
| 25 | Third Party Defendants. |
| 26 | |
| 27 | |
| 28 | |

160850.00001/153289966v.1                    1

**DECLARATION OF TODD M. MALYNN REGARDING VERDICT FORM [DKT NO. 284]**

# DECLARATION OF TODD M. MALYNN

I, Todd M. Malynn, declare as follows:

1. I am a partner at Blank Rome LLP, counsel of record for Defendants, Counterclaimants, and Third Party Plaintiffs (collectively, "PCJV USA Parties"). I have personal knowledge of the facts set forth in this declaration, and if called upon to testify under oath, I could and would testify competently thereto.

2. I file this declaration regarding the parties' failure to jointly file a verdict form. We have taken this matter very seriously given the Court's clear direction that the parties carefully consider the verdict form and promptly work to reach agreement in accordance with the Court's Orders.

3. I received the beginning of Plaintiff's proposed verdict form last Monday at 6:32 am (when it was due to be filed along with other filings by 8:30 am that morning). It was incomplete, but I worked quickly to revert a redline draft back to Mr. Murphy by 10:25 am. I also called Mr. Murphy to discuss it. He did not pick up. Rather, he emailed questions at 12:22 pm, which I promptly responded to at 1:05 pm. Seemingly not having read my redlined draft, Mr. Murphy replied that he rejects my proposal. I responded promptly: "I look forward to reviewing any proposal. I still do not know what you are talking about. We only included defenses we have raised and essential elements of your claims."

4. At 3:45 pm on Monday, I sent Mr. Murphy an email stating: "We have completed the reformatting of Defendants' verdict form to match the format you proposed as well as accepted changes to which we agreed. Please include any revised verdict from Plaintiff into this document or include our revised verdict form into your master document. If you have a further proposal, please let me know. If not, please circulate a proposed final for our review and approval for filing. Thank you." Mr. Murphy never did return my call or respond to this email.

5. Early Wednesday morning, August 20, 2025, I filed a declaration to inform the Court that I had not heard back from Plaintiff's counsel after I had

circulated, on Monday, August 18, a comprehensive redline verdict form only hours after receiving the beginning of a draft verdict form with comments from Plaintiff. I did not hear from Plaintiff on Wednesday either.

6. The next day, on Thursday, August 21, 2025, the Court issued an Order at 2:10 pm stating, in part: "Defendants filed a declaration of counsel stating that they have been waiting since August 18 for a response from Plaintiff's counsel. This is unacceptable. The parties shall promptly file the days-overdue joint verdict form." Mr. Beral and I asked Mr. Murphy to promptly provide us a redline copy of the draft form I had circulated on Monday showing his proposed changes so that we could review it and get on a conference to discuss it.

7. Mr. Murphy emailed us at 5:06 pm, which response only attached a clean version of a new revised draft form. He declined my request for a redline version. He did not work from the redline copy of the proposed verdict form I circulated on Monday. I proceeded to make two redline versions of Plaintiff's alternative proposal, one comparing the draft we had just received to our (8/18) proposal, and one comparing Plaintiff's (8/18) draft and comments to Plaintiff's (8/21) proposal. The result of those redlines was that Plaintiff's (8/21) 5:06 pm revised form did *not* include changes addressing the substantive differences between Plaintiff's comments and initial draft form and my redline form (on 8/18). Plaintiff's revised proposed form (which was 50 pages) simply continued to revise *Plaintiff's* own (8/18) draft. It did not substantively engage with my 8/18 draft at all.

8. As the filing was now days overdue without progress towards an agreement, on Friday, August 22, Mr. Beral attempted to bridge the gap. He prepared a new form, reducing the verdict form to less than 10 pages.

9. Rather than address Mr. Beral's proposed compromise verdict form, Mr. Murphy pivoted back to his own verdict form on August 23 without addressing our objections, yet, proclaiming he had addressed and somehow resolved our objections. That was not true.

10. In spite of the length and complexity of Plaintiff's verdict form, which continued to misstate the elements of Plaintiff's case-in-chief and continued to raise redundancies inviting a mistrial (if, for example, the jury were to make conflicting rulings on the same elements of Plaintiff's case-in-chief, which apply equally to each trademark and each trademark claim pled in the complaint that has not been withdrawn), Plaintiff's revised proposal (again not sent in redline) addressed only a few of the issues and did not propose substantive revisions as to Plaintiff's trademark claims whatsoever. It also did not offer an alternative or solution on many open items. Instead, nearly twenty times Mr. Murphy demanded that we offer proposals, which we had already done on August 18. It became clear to us that Mr. Murphy did not even review our August 18 redline proposal.

11. Like Plaintiff's counsel's 8/21 draft, Plaintiff's revised 8/23 draft did not respond to our substantive objections to Plaintiff's original 8/18 draft relating to Plaintiff's trademark claims. Attached as **Exhibit A** is a true and correct copy of a redline comparing Plaintiff's (8/23) 50-page verdict form to our (8/18) proposal—showing in purple all of Plaintiff's counsel deletions from our (8/18) proposal. Attached as **Exhibit B** is a true and correct copy of a redline comparing Plaintiff's first complete (8/21) draft and Plaintiff's revised (8/23) verdict form—showing in blue the minimal changes Plaintiff made ignoring our objections.

12. Below is a summary of unresolved issues stemming from Plaintiff's ongoing refusal to engage substantively with the problems we identified with his form:

    a. **One trademark question** versus three trademark questions for the elements of the trademark claims and defenses. This issue was identified on August 18, 2025. The PCJV USA Parties requested justification for tripling the size of a special verdict form or selectively asking the jury questions about "any of the three"

trademarks, risking a mistrial, rather than asking one question per element or defense as to "the U.S. trademarks."

    b. **Plaintiff's False Designation of Origin Claim**, an issue that was also identified on August 18, 2025:

        i. Failure to identify the basis of the claim (Plaintiff's form only proffered a generic recitation of the statute):

- Plaintiff's claims based on unregistered marks were withdrawn;
- No false advertising claim was pled; and
- No trade dress claim was pled.

        ii. Failure to explain how this claim presents separate legal elements or defenses as compared to Plaintiff's remaining trademark infringement claim, especially given that:

- There is no presumption of validity, including senior and continuous use of an unidentified and unregistered thing, or means by which to prove distinctiveness or secondary meaning;
- Because there is no pending claim for unfair competition, false advertising or trade dress infringement, there was no disclosure under Rule 26 of a protectable asset under the Lanham Act other than the registered marks (as to which claims are being prosecuted) and unregistered marks (as to which claims have been withdrawn);
- There is no identifiable basis to conduct a likelihood of confusion analysis if the PCJV USA Parties continued to use an unidentified thing; and

- There is no identifiable basis to disgorge profits for the alleged use of an unidentified thing.

  iii. Plaintiff's form included no elements of this claim. It simply asked the jury to award damages if it finds that the PCJV USA Parties used something Plaintiff has not identified (even if owned or licensed by the PCJV USA Parties) without consideration of any defenses.

c. **Plaintiff's Common Law and Statutory Unfair Competition Claims**:  Plaintiff has identified no authority that state law unfair competition has different elements than under the Lanham Act or that Bus. & Prof. Code § 16600 would permit state law to be interpreted more broadly than the Lanham Act. While Plaintiff's form included elements for its redundant state law claims, the jury should not be confused by being asked to make redundant findings, which would only risk a mistrial.

d. **Challenge to ownership** versus validity of trademarks, an issue that was identified prior to August 18, 2025. Plaintiff's form continued to ignore the PCJV USA Parties' position in this case in favor reinforcing with four redundant trademark claims misstatements as to what the jury is being asked to find:

  i. The PCJV USA Parties assert that they either own the U.S. trademarks or have a superior right to use them in interstate commerce. They are not challenging the validity of the trademarks;

  ii. The PCJV USA Parties assert ownership on multiple grounds—and thus seek transfer of the registrations pursuant to their action for declaratory relief:

- That the PCJV USA partnership made first lawful use of the U.S. trademarks;
- That Cinco Corporation did not make continuous use or property maintain the trademarks, and therefore ownership reverts to the exclusive user;
- That Plaintiff cannot make a *prima facie* case that Cinco Corporation sold the U.S. marks to Plaintiff over their objection in the middle of litigation with an injunction pending; in contrast, that the PCJV USA Parties, even if none of them were the owner by senior or exclusive use, can make a *prima facie* case that the U.S. trademark rights were acquired from Cinco Corporation in their settlement;
- That one of the following defenses applies and results in ownership favoring the PCJV USA Parties as the senior user or under the settlement:
   a. That Plaintiff's alleged trademark assignment is an assignment in gross;
   b. That Plaintiff engaged in a naked license;
   c. That Plaintiff waived rights to enforce the trademarks against the PCJV USA Parties; or
   d. That Plaintiff's enforcement action is barred by the doctrine of *in pari delicto*.

iii. Plaintiff's proposed verdict form continued to insist and be premised on the PCJV USA Parties' challenging the validity of the trademarks—not ownership of them, which would confuse the jury and risk a mistrial.

    e. **The proper burden of proof with regard to the validity of the registrations and validity of any proffered assignment** versus the validity of the trademarks, another issue that was identified prior to August 18, 2025. Plaintiff's form continued to ignore or eliminate Plaintiff's burden of proof in favor reinforcing with four redundant trademark claims misstatements as to what the jury is being asked to find and who has the burden of proof:

        i. The PCJV USA Parties assert that, upon making a *prima facie* case that the PCJV USA partnership made first lawful use of the U.S. trademarks, Cinco Corporation's presumption of ownership is rebutted and Plaintiff has to carry both a burden of production and persuasion that Cinco Corporation was the true owner of the U.S. trademarks at time of first lawful use;

        ii. The PCJV USA Parties assert that, upon making a clear and convincing showing that the PCJV USA LLC always controlled usage of the U.S. trademarks and Cinco Corporation engaged in a naked license—whether there was no meeting of the minds but an implied "at-will" license (rejecting the terms and conditions upon which the marks were used) or an agreed upon 50-year license as specified in franchise disclosure documents that were separately approved by Cinco Corporation, including in 2018, Cinco Corporation's presumption of ownership is rebutted and Plaintiff has to carry both a burden of production and persuasion under 15 U.S.C. § 1055 that Cinco Corporation made continuous use of the marks and

properly maintained their registrations as of March 2022, when Cinco Corporation allegedly sold them;

    iii. The PCJV USA Parties assert that, even if Cinco Corporation was the owner of the U.S. marks as of March 2022, it could only assign the U.S. trademarks to Plaintiff subject to the PCJV USA Parties' pre-existing trademark rights; and Plaintiff will be unable to make a *prima facie* case that such an assignment occurred, including for reasons stated in the PCJV USA Parties' offer of proof and because Plaintiff has repeatedly disavowed acquiring the PCJV USA Parties' pre-existing trademark rights and should be *estopped* from changing positions now;

    iv. The PCJV USA Parties assert that, even if such an assignment was attempted, it would be an assignment in gross, as to which the PCJV USA Parties have already made an offer of proof; and

    v. Notwithstanding the foregoing, Plaintiff's proffered verdict form repeatedly tries to eliminate Plaintiff's burden of proof on the above first three issues, including and in particular the third issue, as to which multiple authorities have been cited in pre-trial filings and briefs.

  f. **Pre-judging Plaintiff's ownership** before factual findings are made by the jury on all relevant trademark issues, an issue that was identified on August 18, 2025. Plaintiff's proposed verdict form seeks to ask the jury a legal conclusion regarding who has a superior claim to ownership at the outset of the verdict form before the jury makes factual findings relevant to the legal question of ownership, which is actually best suited for the Court

to resolve in connection with both parties' declaratory relief claims based on the jury's findings on all relevant issues.

g. **Assignment in gross or naked license** versus abandonment: The PCJV USA Parties have agreed to instruct the jury as to their heightened legal burden of proving their assignment in gross and naked license defenses; however, that should not mean they have to separately prove "abandonment" in addition to assignment in gross or naked license. That is a separately pled defense based on delay alone. Plaintiff, in contrast, wants to collapse the defenses together and suggest to the jury that the PCJV USA Parties have to prove both abandonment and an assignment in gross or abandonment and a naked license to prevail.

h. **Proving a right to terminate** versus lack of consent: Plaintiff's proposed verdict form presupposes that the PCJV USA Parties needed Plaintiff's consent to continue using the marks if Plaintiff is able to prove ownership; to the contrary, Plaintiff still has to prove wrongdoing, including that (a) it did not acquire trademarks rights subject to a pre-existing express or implied license that was not terminable at will, and (b) it had the right to terminate the PCJV USA Parties' use of the marks on May 31, 2024. Plaintiff attempts to remove its burden of proof that the PCJV USA Parties did not have long-term but terminable-at-will rights, and the PCJV USA Parties objected to this on April 18, 2025.

i. **Right to jury trial:** The parties have yet to reach agreement as to whether disgorgement should be tried to the jury.

j. *Quantum meruit*: Plaintiff attempts to remove essential elements of and defenses to its quantum meruit claim, which elements include "requested" and "performed" "services" pursuant to

        "reasonable expectation of payment" arising from an implied meeting of the minds and causing unjust enrichment, including a failure of the PCJV USA Parties to provide "value" for the alleged "requested" and "performed" "services." Plaintiff's own authority cited in its contentions of law and fact, *Cosmonova, LLC v. BioFilm, Inc.*, 763 F. Supp. 3d 1157 (S.D. Cal. 2025), explains the importance of a proper verdict form here.

    k.  **Litigation privilege**: The parties disagree as to the propriety of Plaintiff's effort to insert a jury question on this issue.

    l.  **Settlement privilege**: The parties disagree as to the propriety of Plaintiff's effort to use mediation and settlement communications as evidence at trial or a basis for a question in a verdict form.

    13.  I requested that Mr. Murphy substantively engage with these issues multiple times, but he refused. I tried again on Sunday afternoon and into the evening, at 4:02 pm and 6:57 pm, asking Mr. Murphy to send me his substantive responses (which he had promised to send earlier in the day). At 8:34 pm Sunday night, Mr. Murphy emailed back to say that he has to "conduct research," that I "sabotaged our ability to meet the 7 am deadline," and "what you will receive is incomplete because I cannot do your advocacy for you."

    14.  I waited several hours for Mr. Murphy to send back whatever "incomplete" substantive response he was contemplating. I went to sleep around 11:00 pm for a short few hours. Mr. Murphy emailed at 11:38 pm that he "will not be getting this to you for at least another hour" and again accusing me of failing to meet and confer. He did not, however, get us anything to review. And his claim that I failed to meet and confer by phone is false. I called him on Monday. He did not answer, nor ever return my call. I offered a call on Thursday after requesting a redline. He ignored my request.

15. Since Monday, August 18, 2025, Mr. Murphy has made no real effort to meaningfully engage on disputed issues or to substantively respond to Mr. Beral's form. I am in agreement with Mr. Beral relating to his proposed form and request that the Court accept his streamlined verdict form.

I declare under penalty of perjury under the law of the United States that the foregoing is true and correct. Executed on August 25, 2025, in Los Angeles, California.

*/s/ Todd M. Malynn*
Todd M. Malynn

**CERTIFICATE OF SERVICE**

The undersigned certifies that on August 25, 2025, the foregoing document was electronically filed with the Clerk of the Court for the United States District Court, Central District of California, using the Court's Electronic Case Filing (ECF) system. I further certify that all participants in the case are registered CM/ECF users and that service will be accomplished by the CM/ECF system.

I certify under penalty of perjury that the foregoing is true and correct. Executed on August 25, 2025.

By: */s/AJ Cruickshank*