MICHAEL D. MURPHY (SBN 224678)
mdmurphy@foxrothschild.com
MATTHEW FOLLETT (SBN 325481)
mfollett@foxrothschild.com
MEEGHAN H. TIRTASAPUTRA (SBN 325572)
mtirtasaputra@foxrothschild.com
**FOX ROTHSCHILD LLP**
Constellation Place
10250 Constellation Boulevard, Suite 900
Los Angeles, California 90067
Telephone:  310.598.4150
Facsimile:   310.556.9828

Attorneys for Plaintiff and Counterclaim Defendant SHAKEY'S PIZZA ASIA VENTURES, INC. and Third Party Defendants CINCO CORPORATION, PC INTERNATIONAL PTE LTD., and SPAVI INTERNATIONAL USA, INC.

**BLANK ROME LLP**
Todd M. Malynn (SBN 181595)
todd.malynn@blankrome.com
Arash Beral (SBN 245219)
arash.beral@blankrome.com
Jamison T. Gilmore (SBN 322100)
jamison.gilmore@blankrome.com
2029 Century Park East | 6th Floor
Los Angeles, CA 90067
Telephone:  424.239.3400
Facsimile:   424.239.3434

Attorneys for Defendants, Counterclaimants, and Third Party Plaintiffs PCJV USA, LLC, PCI TRADING LLC, POTATO CORNER, LA GROUP, LLC, GK CAPITAL GROUP, LLC, NKM CAPITAL GROUP, LLC and GUY KOREN, and Defendants J & K AMERICANA, LLC, J&K LAKEWOOD, LLC, J&K OAKRIDGE, LLC, J&K VALLEY FAIR, LLC, J & K ONTARIO, LLC, J&K PC TRUCKS, LLC, HLK MILPITAS, LLC, and GK CERRITOS, LLC

# UNITED STATES DISTRICT COURT

# CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| SHAKEY'S PIZZA ASIA VENTURES, INC, a Philippines corporation,<br><br>                              Plaintiff,<br><br>          vs.<br><br>PCJV USA, LLC, a Delaware limited liability company; PCI TRADING , LLC, a Delaware limited liability company; GUY KOREN, an individual; POTATO CORNER LA GROUP, LLC, a California limited liability company; NKM CAPITAL GROUP, LLC, a California limited liability company; | Case No. 2:24-CV-04546-SB(AGRx)<br><br>*Hon. Stanley Blumenfeld, Jr.*<br><br>**PARTIES' JOINT SECOND AMENDED CHALLENGED EXHIBITS TABLE**<br><br><br>Complaint Filed:   May 31, 2024<br>Trial Date:          August 18, 2025 |

J & K AMERICANA, LLC, a California limited liability company; J&K LAKEWOOD, LLC, a California limited liability company; J&K VALLEY FAIR, LLC, a California limited liability company; J & K ONTARIO, LLC, a California limited liability company; HLK MILPITAS, LLC, a California, limited liability company; GK CERRITOS, LLC, a California, limited liability company; J&K PC TRUCKS, LLC, a California limited liability company; and, GK CAPITAL GROUP, LLC, a California limited liability company and DOES 1 through 100, inclusive,

                    Defendants.

_____

PCJV USA, LLC, a Delaware limited liability company; PCI TRADING LLC, a Delaware limited liability company; POTATO CORNER LA GROUP LLC, a California limited liability company; GK CAPITAL GROUP, LLC, a California limited liability company; NKM CAPITAL GROUP LLC, a California limited liability company; and GUY KOREN, an individual,

                    Counter-Claimants,

        v.

SHAKEY'S PIZZA ASIA VENTURES, INC, a Philippines corporation,

                    Counter Defendant.

_____

PCJV USA, LLC, a Delaware limited liability company; PCI TRADING LLC, a Delaware limited liability company; POTATO CORNER LA GROUP LLC, a California limited liability company; GK CAPITAL GROUP, LLC, a California limited liability company; NKM CAPITAL GROUP LLC, a California limited liability company; and GUY KOREN, an individual,

                    Third Party Plaintiffs,

        v.

1

**SECOND AMENDED CHALLENGED EXHIBITS TABLE**

176721382.3

PC INTERNATIONAL PTE LTD., a
Singapore business entity; SPAVI
INTERNATIONAL USA, INC., a California
corporation; CINCO CORPORATION, a
Philippines corporation; and ROES 1 through
10, inclusive,

          Third Party Defendants.

**SECOND AMENDED CHALLENGED EXHIBITS TABLE**

176721382.3

## **LIST OF EXHIBITS NO LONGER IN DISPUTE**[1]

The parties have agreed to withdraw their objections, without prejudice, to the following exhibits:

1.      Exhibit No. 45-72[2]

2.      Exhibit No. 80, 89, 99, 101, 102, and 105[3]

3.      Exhibit No. 1059

4.      Exhibit No. 1083, 1088, 1089[4]

5.      Exhibit No. 1139

Moreover, after further review, Defendants are withdrawing Exhibit Nos. 1140, 1173, 1268, 1459, and 1490.

---

[1] This list does not include the exhibits withdrawn by the parties per dkt. 290, though the actual exhibit table below reflects the removal of such withdrawn exhibits.
[2] Defendants agree to withdraw objections to these exhibits, which group of exhibits mostly comprise declarations and attachments to declarations filed in this case, so long as declarations are used for a proper purpose (*i.e.*, impeachment).
[3] Defendants agree to withdraw objections to these exhibits, provided that a showing of relevance is made at trial.
[4] Plaintiff agrees to withdraw objections to these exhibits, provided that they are not being offered for the truth of the matter asserted.

**SECOND AMENDED CHALLENGED EXHIBITS TABLE**

176721382.3

# TABLE OF CONTENTS

| Ex. # | Description | Page |
|---|---|---|
| 2 | U.S. Patent and Trademark Office Section 8 & 15 Notice of Acceptance for Reg. No. 3760041 (Potato Corner Logo Mark) Dkt. 44-11 | 6 |
| 4 | U.S. Patent and Trademark Office Trademark Assignment Cover Sheet (Potato Corner Logo Mark and Characters Mark) Dkt. 44-13 | 7 |
| 6 | U.S. Patent and Trademark Office Trademark Assignment Cover Sheet (World's Best Characters Mark) Dkt. 44-15 | 9 |
| 20 | May 29, 2023 Email from Y. Tan | 11 |
| 21 | June 28, 2023 Email from G. Koren Dkt. 44-30 | 13 |
| 22 | July 3, 2023 Email from Y. Tan Dkt. 44-31 | 15 |
| 23 | July 12, 2023 Email from Y. Tan Dkt. 44-32 | 17 |
| 24 | January 23, 2024 Email from V. Gregorio Dkt. 44-33 | 19 |
| 25 | Y. Tan Text Messages with G. Koren Dkt. 44-34 | 21 |
| 26 | February 16, 2024 Email from G. Koren Dkt. 44-35 | 22 |
| 28 | March 5, 2024 Email from Y. Tan Dkt. 44-37 | 24 |
| 32 | April 15, 2024 Statement of Managements Responsibility for Consolidated Financial Statements Dkt. 44-41 | 26 |
| 36 | July 31, 2024 Email from K. Hsu Re: RE: SPAVI Dkt. 44-45 | 28 |
| 40 | SPAVIs Sample Franchise Agreement for Potato Corner Dkt. 44-48 | 28 |
| 44 | September 22, 2024 Email Re: RE: SPAVI/PCJV L.R. 7-3 Conference of Counsel Dkt. 44-52 | 29 |
| 104 | June 10, 2019 email re answers to questions | 30 |
| 107 | Online customer reviews | 30 |
| 1007 | May 2, 2017 Email from Ismael G. Khan to Erlinda Bartolome RE Letter of Appreciation to Guy Koren | 33 |
| 1019 | May 30, 2010 Meeting Minutes | 34 |
| 1036 | February 27, 2011 Email from Erlinda Bartolome to Kim Lambert RE Directors/Shareholders of NKM and PCJV | 36 |
| 1037 | April 10, 2011 Email from Erlinda Bartolome to Med Quiambao RE Ownership of PCJV | 37 |

4

1038    DLA Piper's August 16, 2011 Invoice (Invoice No. 2609883) .................38

1039    DLA Piper's August 16, 2011 Invoice (Invoice No. 2609884) .................39

1040    DLA Piper's August 16, 2011 Invoice (Invoice No. 2609885) .................40

1041    DLA Piper's August 16, 2011 Invoice (Invoice No. 2609887) .................41

1042    An Email Chain Beginning June 10, 2013 and Ending November 10, 2013 RE DLA Piper Outstanding Invoices .........................................................42

1045    Master Services Agreement dated on June 18, 2012 (duplicated) ............43

1057    LA Group's November 4, 2015 Letter to Cinco Group Board of Directors (duplicated) ..................................................................................44

1058    November 12, 2015 PCJV Meeting Minutes.............................................45

1069    Amir Jacoby's Privilege Log ..................................................................46

1146    PCJV's Growth Chart .............................................................................46

1147    PCJV's Spreadsheet RE SPAVI Royalty ..................................................47

**SECOND AMENDED CHALLENGED EXHIBITS TABLE**

176721382.3

| Ex. No. | Description | Objections | Response | Ruling |
|---|---|---|---|---|
| 2 | U.S. Patent and Trademark Office Section 8 & 15 Notice of Acceptance for Reg. No. 3760041 (Potato Corner Logo Mark) Dkt. 44-11 | Δ:<br><br>After further review, this exhibit appears to be an email sent from "TMOfficialNotices@USPTO.GOV" to an unidentified recipient referred to as "XXXX." The PCJV USA Parties are unclear as to the relevance of this email, the identity of the recipient, or which witness could properly lay the foundation and authenticate it as required under FRE 602 and 901. Furthermore, if Plaintiff seeks to introduce this exhibit to establish that a declaration of incontestability was filed in 2016, or for a similar purpose, it would constitute secondary evidence under FRE 1002.<br><br>As it stands, the email constitutes hearsay without any applicable exception under FRE 801. Plaintiff raises the effect on the listener non-hearsay rule but provides no explanation of the relevance of the effect or who the "listener" is. Additionally, "adherence to the requirements set forth in the document," as argued by Plaintiff as an exception to the hearsay rule is not an exception to the hearsay rule. Rather, it is an admission that this document is offered for the truth of the matter asserted—that Plaintiff complied with the declaration of use requirement for trademark registration. | Π:<br><br>Defendants of course know what TMOfficialNotices@ USPTO is: an automated email account of the United States Patent and Trademark Office which conducts that agency's business online (sending notices and updates regarding trademark applications, registrations). They also know, based on the year (2016) and the subject matter, that this is about the incontestability of the Logo Mark, during the years in which Cinco owned the brand.<br><br>This could be used for a variety of purposes that are non-hearsay or excused under the hearsay rule, including effect on listener, evidence of dates and acts relevant to the Marks, adherence to requirements set forth in the document, recollections regarding the history and scope of the Potato Corner brand, or, indeed, for other non hearsay uses, or uses that are excused.<br><br>Defendants' challenge to the admissibility and authentication of this document ignores the | |

**SECOND AMENDED CHALLENGED EXHIBITS TABLE**

| | | | multiple avenues under FRE 901 that could be used: the distinctive characteristics of business emails from the USPTO (FRE 901(b)(4)); this is a statement of a public office about a government record, both of which are maintained in the same office from which the email was sent (FRE 901(b)(7)(B); and it is also evidence "describing a process or system and showing that it provides an accurate result" as per (FRE 901(b)(9). | |
| | | | If Plaintiffs are forced to waste time laying a foundation to obtain the inevitable ruling by admitting this document, even though its authenticity is so obvious, Plaintiff should not be charged with the time it takes to jump through this hoop, should this Court decide to apply a clock to teach side's presentation of evidence. | |
| 4 | U.S. Patent and Trademark Office Trademark Assignment Cover Sheet | Δ: <br><br> The exhibit in question consists of two documents: a trademark assignment cover sheet and a deed of assignment dated February 21, 2022. PCJV USA Parties surmise that these documents are presented together because that is how they were submitted to the | Π: <br><br> Defendants posit that they never saw any transactional documents memorializing the sale of the Potato Corner brand to SPAVI. They have ignored the fact that the primary deal | |

7

**SECOND AMENDED CHALLENGED EXHIBITS TABLE**

| | | | |
|---|---|---|---|
| | (Potato Corner Logo Mark and Characters Mark) Dkt. 44-13 | USPTO. The cover sheet appears to be largely administrative, containing information likely prepared by an attorney in Troy, Michigan, and does not seem to have substantive relevance to the issues at hand. As such, it may be considered hearsay if offered for the truth of the matters asserted within it. FRE 801.<br><br>The deed of assignment serves as the key document Plaintiff will likely present to demonstrate that the "goodwill of the business symbolized" by the marks was transferred to it. However, introducing this document brings up an issue of secondary evidence. Merely reciting in a deed of assignment—a secondary document purportedly derived from an asset purchase agreement or other related purchase agreement documents—that the goodwill associated with a trademark was transferred is not sufficient to prove that a valid transfer of goodwill actually occurred. FRE 1002; Glow Industries, Inc. v. Lopez, 273 F. Supp. 2d 1095, 1108 (C.D. Cal. 2003); Hallmark Hardwoods, Inv. v. Omni Wood Product, LLC, 2011 WL 13176098, *15; Money Store v. Harriscorp Fin., Inc., 689 F.2d 666, 670 (7th Cir. 1982). | document in this transaction – the deed (notarized by seller and buyer) – was served on them almost a year ago. Est. of Stephens, 28 Cal. 4th 665, 672, 49 P.3d 1093, 1096–97 (2002) (explaining that deeds are an "an executed contract [that is] is subject to the rules applicable to contracts."). This can be authenticated the same way any other contract is evidence of its formation by a witness – of which there are many. Testimony by parties to a contract, validating the authenticity of a deal document happens every day. The deal is exclusively embodied in the deed, and the deed is notarized. Not only can it be authenticated, but it is also central to defeating Defendants' allegations.<br><br>Plaintiff is incorrect about the scope of the relevance of this document. Although the document can be used to show evidence of goodwill transferring along with the IP, it can be used for so much more, including the provision of conclusive evidence that SPAVI acquired the global Potato Corner brand (including trademarks and goodwill). The Seller (Mr. | |

8

| | | | | |
|---|---|---|---|---|
| | | | Magsaysay) will testify that it sold the brand to SPAVI without any carveouts or exceptions – testimony that will be matched by Buyer. Moreover, this testimony will be the springboard from which SPAVI will finally get to disclose – roll out – its US branding scheme and franchise program. That goes to use, existence of goodwill, the intent of SPAVI to capitalize on the goodwill, and ownership. As well as value.<br><br>The evidence is relevant, easily authenticated and has plenty of uses beyond hearsay, and will be central to Plaintiff's case. | |
| 6 | U.S. Patent and Trademark Office Trademark Assignment Cover Sheet (World's Best Characters Mark) Dkt. 44-15 | Δ:<br><br>Like Exhibit No. 4, this exhibit consists of two documents: a trademark assignment cover sheet and a deed of assignment dated March 5, 2022. Plaintiff will likely present the deed of assignment to demonstrate that the "goodwill of the business symbolized" by the marks was transferred to it. However, like Exhibit No. 4, introducing this document brings up an issue of secondary evidence. Merely reciting in a deed of assignment—a secondary document purportedly derived from an asset purchase agreement or other related purchase agreement | Π:<br><br>Defendants have attempted to challenge the rules on which posit that they never saw transactional documents memorializing the sale of the Potato Corner brand to SPAVI. They have ignored the fact that the primary deal document in this transaction – the deed (notarized by seller and buyer) – was served on them almost a year ago. Est. of Stephens, 28 Cal. 4th 665, 672, 49 P.3d 1093, 1096–97 | |

**SECOND AMENDED CHALLENGED EXHIBITS TABLE**

| | | documents—that the goodwill associated with a trademark was transferred is not sufficient to prove that a valid transfer of goodwill actually occurred. FRE 1002; Glow Industries, Inc. v. Lopez, 273 F. Supp. 2d 1095, 1108 (C.D. Cal. 2003); Hallmark Hardwoods, Inv. v. Omni Wood Product, LLC, 2011 WL 13176098, *15; Money Store v. Harriscorp Fin., Inc., 689 F.2d 666, 670 (7th Cir. 1982). | (2002) (explaining that deeds are an "an executed contract [that is] is subject to the rules applicable to contracts."). This can be authenticated by the same way any other contract is evidence of its formation by a witness – of which there are many. Testimony by parties to a contract, validating the authenticity of a deal document is common and Plaintiff is prepared to do so if Defendants will not so stipulate. The deal is exclusively embedded in the deed, and the deed is authenticated.<br><br>Plaintiff is incorrect about the scope of the relevance of this document. Although the document can be used to show evidence of goodwill transferring along with the IP, it can be used for so much more, including the provision of conclusive evidence that SPAVI acquired the global Potato Corner brand (including trademarks and goodwill). The Seller (Mr. Magsaysay) will testify that it sold the brand to SPAVI without any carveouts or exceptions – testimony that will be matched by Buyer. Moreover, this testimony will be the | |

**SECOND AMENDED CHALLENGED EXHIBITS TABLE**

| | | | springboard from which SPAVI will finally get to disclose – roll out – its US branding scheme and franchise program. That goes to use, existence of goodwill, the intent of SPAVI to capitalize on the goodwill, and ownership. As well as value.

The evidence is relevant, easily authenticated and has plenty of uses beyond hearsay, and will be central to Plaintiff's case. | |
|---|---|---|---|---|
| 20 | May 29, 2023 Email from Y. Tan | Δ:

The communications contained in Exhibit Nos. 20-26 and 28 (27 was withdrawn) are inadmissible as they constitute mediation and settlement discussions, which are protected under FRE 408 and Cal. Evid. Code sections 1115 et seq., 1152, and 1154. Plaintiff seeks to use negotiations regarding a potential "new license agreement" (see, for example, Exhibit No. 26 ["Please don't hesitate to let me know if you have any question regarding the audited financial statements and whenever you're done with your review we can schedule a zoom meeting to discuss the terms of a new license agreement and hopefully we can get on the same page and agree on the terms of a new license agreement that's mutually acceptable that will serve as the foundation of a new healthy partnership that can and will grow and | Π:

This email correspondence is not related to any lawsuit or dispute of claims such that it would be settlement communications.

Defendants cite to California Evidence Code Section 1152 in support of their argument that this is settlement communication, but that section specifically excludes from evidence "offers to compromise" that are offered to prove liability. This document is not an offer to compromise as there was no dispute between Guy Koren and SPAVI at the time this email was made, and this email is simply part of a business negotiation. Further, | |

| | | strengthen for years to come!"]) as evidence that Mr. Koren did not believe that PCJV possessed long-term rights or that any prior license agreement—whether written, oral, implied, or established through consent, waiver, acquiescence or estoppel—existed. Such use is unfairly prejudicial and contravenes the intent of FRE 408 and related state law, as well as the balancing test under FRE 403. Any "effect on the listener" that these communications have is irrelevant.

While Plaintiff may argue that these were not settlement communications, the "Proposed Term Sheet" circulated by Mr. Koren (Exhibit No. 21) explicitly states, "In connection with our settlement discussions …" Furthermore, these communications occurred during ongoing mediation and settlement proceedings in the state court action. Admitting these exhibits would also require the PCJV USA Parties to introduce numerous additional exhibits from the 2021-2024 period to provide necessary context, resulting in undue consumption of time and resources, in violation of FRE 403. | the document is not being offered to prove liability but instead being offered to prove effect on the listener, which is relevant to the claims alleged..

These were the exchanges of communications between SPAVI and Koren during the attempts to negotiate a license from 2022 through early 2024. There was no "controversy" between SPAVI and Koren, and Koren's having affixed the word "settlement" (referring to the prior negotiations in which the license as a part of the settlement discussion) does not unilaterally transform this into settlement talks. Furthermore, the ongoing settlement and mediation proceedings referred to by PCJV USA parties were not between PCJV and SPAVI. The testimony of SPAVI – Mr. Gregorio, Mr. Tan, as well as Mr. Concepcion will explain that these were business terms and there was no dispute to resolve. The objection fails to disclose that there was no claim to settle between SPAVI and Koren when their entire relationship had been as franchisor. Rule 408 | |

176721382.3

| | | | assumes the existence of a controversy and does not exclude statements or conduct made before such a controversy arises.<br><br>Finally, even if this was a settlement negotiation, these statements are admissible anyway because they do not discuss the prohibited information found in FRCP 408(a)(1)-(2). | |
|---|---|---|---|---|
| 21 | June 28, 2023 Email from G. Koren Dkt. 44-30 | Δ:<br><br>The communications contained in Exhibit Nos. Exhibit Nos. 20-26 and 28 (27 was withdrawn) are inadmissible as they constitute mediation and settlement discussions, which are protected under FRE 408 and Cal. Evid. Code sections 1115 et seq., 1152, and 1154. Plaintiff seeks to use negotiations regarding a potential "new license agreement" (see, for example, Exhibit No. 26 ["Please don't hesitate to let me know if you have any question regarding the audited financial statements and whenever you're done with your review we can schedule a zoom meeting to discuss the terms of a new license agreement and hopefully we can get on the same page and agree on the terms of a new license agreement that's mutually acceptable that will serve as the foundation of a new healthy partnership that can and will grow and strengthen for years to come!"]) as evidence that Mr. Koren did not believe that PCJV possessed long- | Π:<br><br>This email correspondence is not related to any lawsuit or dispute of claims such that it would be settlement communications.<br><br>Defendants cite to California Evidence Code Section 1152 in support of their argument that this is settlement communication, but that section specifically excludes from evidence "offers to compromise" that are offered to prove liability. This document is not an offer to compromise as there was no dispute between Guy Koren and SPAVI at the time this email was made, and this email is simply part of a business negotiation. Further, the document is not being offered to prove liability but instead being offered to prove effect on the | |

13

| | | term rights or that any prior license agreement—whether written, oral, implied, or established through consent, waiver, acquiescence or estoppel—existed. Such use is unfairly prejudicial and contravenes the intent of FRE 408 and related state law, as well as the balancing test under FRE 403. Any "effect on the listener" that these communications have is irrelevant.<br><br>While Plaintiff may argue that these were not settlement communications, the "Proposed Term Sheet" circulated by Mr. Koren (Exhibit No. 21) explicitly states, "In connection with our settlement discussions …" Furthermore, these communications occurred during ongoing mediation and settlement proceedings in the state court action. Admitting these exhibits would also require the PCJV USA Parties to introduce numerous additional exhibits from the 2021-2024 period to provide necessary context, resulting in undue consumption of time and resources, in violation of FRE 403. | listener which is relevant to the claims alleged.<br><br>These were the exchanges of communications between SPAVI and Koren during the attempts to negotiate a license from 2022 through early 2024. There was no "controversy" between SPAVI and Koren, and Koren's having affixed the word "settlement" (referring to the prior negotiations in which the license as a part of the settlement discussion) does not unilaterally transform this into settlement talks. Furthermore, the ongoing settlement and mediation proceedings referred to by PCJV USA parties were not between PCJV and SPAVI. The testimony of SPAVI – Mr. Gregorio, Mr. Tan, as well as Mr. Concepcion will explain that these were business terms and there was no dispute to resolve. The objection fails to disclose that there was no claim to settle between SPAVI and Koren when their entire relationship had been as franchisor. Rule 408 assumes the existence of a controversy and does not exclude statements or conduct | |

**SECOND AMENDED CHALLENGED EXHIBITS TABLE**

| | | | made before such a controversy arises. Finally, even if this was a settlement negotiation, these statements are admissible anyway because they do not discuss the prohibited information found in FRCP 408(a)(1)-(2). | |
|---|---|---|---|---|
| 22 | July 3, 2023 Email from Y. Tan Dkt. 44-31 | Δ: The communications contained in Exhibit Nos. Exhibit Nos. 20-26 and 28 (27 was withdrawn) are inadmissible as they constitute mediation and settlement discussions, which are protected under FRE 408 and Cal. Evid. Code sections 1115 et seq., 1152, and 1154. Plaintiff seeks to use negotiations regarding a potential "new license agreement" (see, for example, Exhibit No. 26 ["Please don't hesitate to let me know if you have any question regarding the audited financial statements and whenever you're done with your review we can schedule a zoom meeting to discuss the terms of a new license agreement and hopefully we can get on the same page and agree on the terms of a new license agreement that's mutually acceptable that will serve as the foundation of a new healthy partnership that can and will grow and strengthen for years to come!"]) as evidence that Mr. Koren did not believe that PCJV possessed long-term rights or that any prior license agreement—whether written, oral, implied, or established through consent, | Π: This email correspondence is not related to any lawsuit or dispute of claims such that it would be settlement communications. Defendants cite to California Evidence Code Section 1152 in support of their argument that this is settlement communication, but that section specifically excludes from evidence "offers to compromise" that are offered to prove liability. This document is not an offer to compromise as there was no dispute between Guy Koren and SPAVI at the time this email was made, and this email is simply part of a business negotiation. Further, the document is not being offered to prove liability but instead being offered to prove effect on the listener, which is relevant to the claims alleged.. | |

| | | | |
|---|---|---|---|
| | | waiver, acquiescence or estoppel—existed. Such use is unfairly prejudicial and contravenes the intent of FRE 408 and related state law, as well as the balancing test under FRE 403. Any "effect on the listener" that these communications have is irrelevant.<br><br>While Plaintiff may argue that these were not settlement communications, the "Proposed Term Sheet" circulated by Mr. Koren (Exhibit No. 21) explicitly states, "In connection with our settlement discussions …" Furthermore, these communications occurred during ongoing mediation and settlement proceedings in the state court action. Admitting these exhibits would also require the PCJV USA Parties to introduce numerous additional exhibits from the 2021-2024 period to provide necessary context, resulting in undue consumption of time and resources, in violation of FRE 403. | These were the exchanges of communications between SPAVI and Koren during the attempts to negotiate a license from 2022 through early 2024. There was no "controversy" between SPAVI and Koren, and Koren's having affixed the word "settlement" (referring to the prior negotiations in which the license as a part of the settlement discussion) does not unilaterally transform this into settlement talks. Furthermore, the ongoing settlement and mediation proceedings referred to by PCJV USA parties were not between PCJV and SPAVI. The testimony of SPAVI – Mr. Gregorio, Mr. Tan, as well as Mr. Concepcion will explain that these were business terms and there was no dispute to resolve. The objection fails to disclose that there was no claim to settle between SPAVI and Koren when their entire relationship had been as franchisor. Rule 408 assumes the existence of a controversy and does not exclude statements or conduct made before such a controversy arises.<br><br>Finally, even if this was a settlement | |

16

**SECOND AMENDED CHALLENGED EXHIBITS TABLE**

| | | | negotiation, these statements are admissible anyway because they do not discuss the prohibited information found in FRCP 408(a)(1)-(2). | |
|---|---|---|---|---|
| 23 | July 12, 2023 Email from Y. Tan Dkt. 44-32 | Δ:<br><br>The communications contained in Exhibit Nos. 20-26 and 28 (27 was withdrawn) are inadmissible as they constitute mediation and settlement discussions, which are protected under FRE 408 and Cal. Evid. Code sections 1115 et seq., 1152, and 1154. Plaintiff seeks to use negotiations regarding a potential "new license agreement" (see, for example, Exhibit No. 26 ["Please don't hesitate to let me know if you have any question regarding the audited financial statements and whenever you're done with your review we can schedule a zoom meeting to discuss the terms of a new license agreement and hopefully we can get on the same page and agree on the terms of a new license agreement that's mutually acceptable that will serve as the foundation of a new healthy partnership that can and will grow and strengthen for years to come!"]) as evidence that Mr. Koren did not believe that PCJV possessed long-term rights or that any prior license agreement—whether written, oral, implied, or established through consent, waiver, acquiescence or estoppel—existed. Such use is unfairly prejudicial and contravenes the intent of FRE 408 and related state law, as well as the | Π:<br><br>This email correspondence is not related to any lawsuit or dispute of claims such that it would be settlement communications.<br><br>Defendants cite to California Evidence Code Section 1152 in support of their argument that this is settlement communication, but that section specifically excludes from evidence "offers to compromise" that are offered to prove liability. This document is not an offer to compromise as there was no dispute between Guy Koren and SPAVI at the time this email was made, and this email is simply part of a business negotiation. Further, the document is not being offered to prove liability but instead being offered to prove effect on the listener, which is relevant to the claims alleged..<br><br>These were the exchanges of communications between SPAVI and Koren during the | |

17

**SECOND AMENDED CHALLENGED EXHIBITS TABLE**

176721382.3

| | | balancing test under FRE 403. Any "effect on the listener" that these communications have is irrelevant. | attempts to negotiate a license from 2022 through early 2024. There was no "controversy" between SPAVI and Koren, and Koren's having affixed the word "settlement" (referring to the prior negotiations in which the license as a part of the settlement discussion) does not unilaterally transform this into settlement talks. Furthermore, the ongoing settlement and mediation proceedings referred to by PCJV USA parties were not between PCJV and SPAVI. The testimony of SPAVI – Mr. Gregorio, Mr. Tan, as well as Mr. Concepcion will explain that these were business terms and there was no dispute to resolve. The objection fails to disclose that there was no claim to settle between SPAVI and Koren when their entire relationship had been as franchisor. Rule 408 assumes the existence of a controversy and does not exclude statements or conduct made before such a controversy arises.

Finally, even if this was a settlement negotiation, these statements are admissible anyway because they do not discuss the prohibited | |
| | | While Plaintiff may argue that these were not settlement communications, the "Proposed Term Sheet" circulated by Mr. Koren (Exhibit No. 21) explicitly states, "In connection with our settlement discussions …" Furthermore, these communications occurred during ongoing mediation and settlement proceedings in the state court action. Admitting these exhibits would also require the PCJV USA Parties to introduce numerous additional exhibits from the 2021-2024 period to provide necessary context, resulting in undue consumption of time and resources, in violation of FRE 403. | | |

18

176721382.3

| | | | information found in FRCP 408(a)(1)-(2). | |
|---|---|---|---|---|
| 24 | January 23, 2024 Email from V. Gregorio Dkt. 44-33 | Δ:<br><br>The communications contained in Exhibit Nos. 20-26 and 28 (27 was withdrawn) are inadmissible as they constitute mediation and settlement discussions, which are protected under FRE 408 and Cal. Evid. Code sections 1115 et seq., 1152, and 1154. Plaintiff seeks to use negotiations regarding a potential "new license agreement" (see, for example, Exhibit No. 26 ["Please don't hesitate to let me know if you have any question regarding the audited financial statements and whenever you're done with your review we can schedule a zoom meeting to discuss the terms of a new license agreement and hopefully we can get on the same page and agree on the terms of a new license agreement that's mutually acceptable that will serve as the foundation of a new healthy partnership that can and will grow and strengthen for years to come!"]) as evidence that Mr. Koren did not believe that PCJV possessed long-term rights or that any prior license agreement—whether written, oral, implied, or established through consent, waiver, acquiescence or estoppel—existed. Such use is unfairly prejudicial and contravenes the intent of FRE 408 and related state law, as well as the balancing test under FRE 403. Any "effect on the listener" that these | Π:<br><br>This email correspondence is not related to any lawsuit or dispute of claims such that it would be settlement communications.<br><br>Defendants cite to California Evidence Code Section 1152 in support of their argument that this is settlement communication, but that section specifically excludes from evidence "offers to compromise" that are offered to prove liability. This document is not an offer to compromise as there was no dispute between Guy Koren and SPAVI at the time this email was made, and this email is simply part of a business negotiation. Further, the document is not being offered to prove liability but instead being offered to prove effect on the listener, which is relevant to the claims alleged..<br><br>These were the exchanges of communications between SPAVI and Koren during the attempts to negotiate a license from 2022 through early 2024. There was no "controversy" | |

SECOND AMENDED CHALLENGED EXHIBITS TABLE

| | | communications have is irrelevant.

While Plaintiff may argue that these were not settlement communications, the "Proposed Term Sheet" circulated by Mr. Koren (Exhibit No. 21) explicitly states, "In connection with our settlement discussions …" Furthermore, these communications occurred during ongoing mediation and settlement proceedings in the state court action. Admitting these exhibits would also require the PCJV USA Parties to introduce numerous additional exhibits from the 2021-2024 period to provide necessary context, resulting in undue consumption of time and resources, in violation of FRE 403. | between SPAVI and Koren, and Koren's having affixed the word "settlement" (referring to the prior negotiations in which the license as a part of the settlement discussion) does not unilaterally transform this into settlement talks. Furthermore, the ongoing settlement and mediation proceedings referred to by PCJV USA parties were not between PCJV and SPAVI. The testimony of SPAVI – Mr. Gregorio, Mr. Tan, as well as Mr. Concepcion will explain that these were business terms and there was no dispute to resolve. The objection fails to disclose that there was no claim to settle between SPAVI and Koren when their entire relationship had been as franchisor. Rule 408 assumes the existence of a controversy and does not exclude statements or conduct made before such a controversy arises.

Finally, even if this was a settlement negotiation, these statements are admissible anyway because they do not discuss the prohibited information found in FRCP 408(a)(1)-(2). | |

**SECOND AMENDED CHALLENGED EXHIBITS TABLE**

| 25 | Y. Tan Text Messages with G. Koren Dkt. 44-34 | Δ:<br><br>The communications contained in Exhibit Nos. 20-26 and 28 (27 was withdrawn) are inadmissible as they constitute mediation and settlement discussions, which are protected under FRE 408 and Cal. Evid. Code sections 1115 et seq., 1152, and 1154. Plaintiff seeks to use negotiations regarding a potential "new license agreement" (see, for example, Exhibit No. 26 ["Please don't hesitate to let me know if you have any question regarding the audited financial statements and whenever you're done with your review we can schedule a zoom meeting to discuss the terms of a new license agreement and hopefully we can get on the same page and agree on the terms of a new license agreement that's mutually acceptable that will serve as the foundation of a new healthy partnership that can and will grow and strengthen for years to come!"]) as evidence that Mr. Koren did not believe that PCJV possessed long-term rights or that any prior license agreement—whether written, oral, implied, or established through consent, waiver, acquiescence or estoppel—existed. Such use is unfairly prejudicial and contravenes the intent of FRE 408 and related state law, as well as the balancing test under FRE 403. Any "effect on the listener" that these communications have is irrelevant.<br><br>While Plaintiff may argue that these were not | Π:<br><br>This email correspondence is not related to any lawsuit or dispute of claims such that it would be settlement communications.<br><br>Defendants cite to California Evidence Code Section 1152 in support of their argument that this is settlement communication, but that section specifically excludes from evidence "offers to compromise" that are offered to prove liability. This document is not an offer to compromise as there was no dispute between Guy Koren and SPAVI at the time this email was made, and this email is simply part of a business negotiation. Further, the document is not being offered to prove liability but instead being offered to prove effect on the listener, which is relevant to the claims alleged.<br><br>These were the exchanges of communications between SPAVI and Koren during the attempts to negotiate a license from 2022 through early 2024. There was no "controversy" between SPAVI and Koren, and Koren's having affixed the | |

21

**SECOND AMENDED CHALLENGED EXHIBITS TABLE**

| | | settlement communications, the "Proposed Term Sheet" circulated by Mr. Koren (Exhibit No. 21) explicitly states, "In connection with our settlement discussions …" Furthermore, these communications occurred during ongoing mediation and settlement proceedings in the state court action. Admitting these exhibits would also require the PCJV USA Parties to introduce numerous additional exhibits from the 2021-2024 period to provide necessary context, resulting in undue consumption of time and resources, in violation of FRE 403. | word "settlement" (referring to the prior negotiations in which the license as a part of the settlement discussion) does not unilaterally transform this into settlement talks. Furthermore, the ongoing settlement and mediation proceedings referred to by PCJV USA parties were not between PCJV and SPAVI. The testimony of SPAVI – Mr. Gregorio, Mr. Tan, as well as Mr. Concepcion will explain that these were business terms and there was no dispute to resolve. The objection fails to disclose that there was no claim to settle between SPAVI and Koren when their entire relationship had been as franchisor. Rule 408 assumes the existence of a controversy and does not exclude statements or conduct made before such a controversy arises.<br><br>Finally, even if this was a settlement negotiation, these statements are admissible anyway because they do not discuss the prohibited information found in FRCP 408(a)(1)-(2). | |
|---|---|---|---|---|
| 26 | February 16, 2024 Email | Δ:<br><br>The communications contained in Exhibit Nos. 20-26 and 28 (27 was | II:<br><br>This email correspondence is not related to any lawsuit | |

**SECOND AMENDED CHALLENGED EXHIBITS TABLE**

| | | |
|---|---|---|
| from G. Koren Dkt. 44-35 | withdrawn) are inadmissible as they constitute mediation and settlement discussions, which are protected under FRE 408 and Cal. Evid. Code sections 1115 et seq., 1152, and 1154. Plaintiff seeks to use negotiations regarding a potential "new license agreement" (see, for example, Exhibit No. 26 ["Please don't hesitate to let me know if you have any question regarding the audited financial statements and whenever you're done with your review we can schedule a zoom meeting to discuss the terms of a new license agreement and hopefully we can get on the same page and agree on the terms of a new license agreement that's mutually acceptable that will serve as the foundation of a new healthy partnership that can and will grow and strengthen for years to come!"]) as evidence that Mr. Koren did not believe that PCJV possessed long-term rights or that any prior license agreement—whether written, oral, implied, or established through consent, waiver, acquiescence or estoppel—existed. Such use is unfairly prejudicial and contravenes the intent of FRE 408 and related state law, as well as the balancing test under FRE 403. Any "effect on the listener" that these communications have is irrelevant.<br><br>While Plaintiff may argue that these were not settlement communications, the "Proposed Term Sheet" circulated by Mr. Koren (Exhibit No. 21) explicitly states, "In connection with | or dispute of claims such that it would be settlement communications.<br><br>Defendants cite to California Evidence Code Section 1152 in support of their argument that this is settlement communication, but that section specifically excludes from evidence "offers to compromise" that are offered to prove liability. This document is not an offer to compromise as there was no dispute between Guy Koren and SPAVI at the time this email was made, and this email is simply part of a business negotiation. Further, the document is not being offered to prove liability but instead being offered to prove effect on the listener, which is relevant to the claims alleged..<br><br>These were the exchanges of communications between SPAVI and Koren during the attempts to negotiate a license from 2022 through early 2024. There was no "controversy" between SPAVI and Koren, and Koren's having affixed the word "settlement" (referring to the prior negotiations in which the license as a part of the settlement | |

23

SECOND AMENDED CHALLENGED EXHIBITS TABLE

| | | our settlement discussions …" Furthermore, these communications occurred during ongoing mediation and settlement proceedings in the state court action. Admitting these exhibits would also require the PCJV USA Parties to introduce numerous additional exhibits from the 2021-2024 period to provide necessary context, resulting in undue consumption of time and resources, in violation of FRE 403. | discussion) does not unilaterally transform this into settlement talks. Furthermore, the ongoing settlement and mediation proceedings referred to by PCJV USA parties were not between PCJV and SPAVI. The testimony of SPAVI – Mr. Gregorio, Mr. Tan, as well as Mr. Concepcion will explain that these were business terms and there was no dispute to resolve. The objection fails to disclose that there was no claim to settle between SPAVI and Koren when their entire relationship had been as franchisor. Rule 408 assumes the existence of a controversy and does not exclude statements or conduct made before such a controversy arises.<br><br>Finally, even if this was a settlement negotiation, these statements are admissible anyway because they do not discuss the prohibited information found in FRCP 408(a)(1)-(2). | |
| 28 | March 5, 2024 Email from Y. Tan Dkt. 44-37 | Δ:<br><br>The communications contained in Exhibit Nos. 20-26 and 28 (27 was withdrawn) are inadmissible as they constitute mediation and settlement discussions, which are protected under FRE 408 and Cal. Evid. | Π:<br><br>This email correspondence is not related to any lawsuit or dispute of claims such that it would be settlement communications. | |

**SECOND AMENDED CHALLENGED EXHIBITS TABLE**

176721382.3

| | | | |
|---|---|---|---|
| | | Code sections 1115 et seq., 1152, and 1154. Plaintiff seeks to use negotiations regarding a potential "new license agreement" (see, for example, Exhibit No. 26 ["Please don't hesitate to let me know if you have any question regarding the audited financial statements and whenever you're done with your review we can schedule a zoom meeting to discuss the terms of a new license agreement and hopefully we can get on the same page and agree on the terms of a new license agreement that's mutually acceptable that will serve as the foundation of a new healthy partnership that can and will grow and strengthen for years to come!"]) as evidence that Mr. Koren did not believe that PCJV possessed long-term rights or that any prior license agreement—whether written, oral, implied, or established through consent, waiver, acquiescence or estoppel—existed. Such use is unfairly prejudicial and contravenes the intent of FRE 408 and related state law, as well as the balancing test under FRE 403. Any "effect on the listener" that these communications have is irrelevant.<br><br>While Plaintiff may argue that these were not settlement communications, the "Proposed Term Sheet" circulated by Mr. Koren (Exhibit No. 21) explicitly states, "In connection with our settlement discussions …" Furthermore, these communications occurred during ongoing mediation and settlement proceedings | Defendants cite to California Evidence Code Section 1152 in support of their argument that this is settlement communication, but that section specifically excludes from evidence "offers to compromise" that are offered to prove liability. This document is not an offer to compromise as there was no dispute between Guy Koren and SPAVI at the time this email was made, and this email is simply part of a business negotiation. Further, the document is not being offered to prove liability but instead being offered to prove effect on the listener, which is relevant to the claims alleged..<br><br>These were the exchanges of communications between SPAVI and Koren during the attempts to negotiate a license from 2022 through early 2024. There was no "controversy" between SPAVI and Koren, and Koren's having affixed the word "settlement" (referring to the prior negotiations in which the license as a part of the settlement discussion) does not unilaterally transform this into settlement talks. Furthermore, the ongoing | |

**SECOND AMENDED CHALLENGED EXHIBITS TABLE**

176721382.3

| | | | |
|---|---|---|---|
| | | in the state court action. Admitting these exhibits would also require the PCJV USA Parties to introduce numerous additional exhibits from the 2021-2024 period to provide necessary context, resulting in undue consumption of time and resources, in violation of FRE 403. | settlement and mediation proceedings referred to by PCJV USA parties were not between PCJV and SPAVI. The testimony of SPAVI – Mr. Gregorio, Mr. Tan, as well as Mr. Concepcion will explain that these were business terms and there was no dispute to resolve. The objection fails to disclose that there was no claim to settle between SPAVI and Koren when their entire relationship had been as franchisor. Rule 408 assumes the existence of a controversy and does not exclude statements or conduct made before such a controversy arises.<br><br>Finally, even if this was a settlement negotiation, these statements are admissible anyway because they do not discuss the prohibited information found in FRCP 408(a)(1)-(2). |
| 32 | April 15, 2024 Statement of Managements Responsibility for Consolidated Financial | Δ:<br><br>This proffered exhibit appears to be a third-party independent audit report for Plaintiff's international operations. This is not relevant and is hearsay. FRE 401-402, 801. To the extent proffered to serve a basis for an opinion (e.g., the value of trademarks associated with the United States business), Plaintiff has not designated an expert | Π:<br><br>This document has many non-hearsay uses, including just to establish what SPAVI was saying about its deal with Cinco, and the irrelevance of US Operations to the transaction, as well as statements about the trademarks, and trade secret issues pertinent | |

SECOND AMENDED CHALLENGED EXHIBITS TABLE

| | | | |
|---|---|---|---|
| Statements Dkt. 44-41 | witness to render opinions. FRE 701. Contrary to Plaintiff's position, a lay witness cannot opine as to valuation models. See FiTeq INC v. Venture Corp., Case No. 13-cv-01946-BLF, 2016 WL 683256, *7 (N.D. Cal. ) (excluding valuation testimony by lay witnesses who are not valuation experts). | to SPAVI and the brand and this case.

It is true that certain numbers related to the deal will be presented through this document – the truth of the matter therein –however, in anticipation of this objection, Mr. Gregorio has already offered necessary testimony to satisfy the requirements of Rule 803(6) (excepting from the hearsay rule "records of regularly conducted activity"). (Exh. 1439 (Gregorio Decl., ¶17.) As a result of that testimony, this document falls within the scope of cases allowing audited financial statements prepared annually for, as here, a publicly traded corporation to be admitted into evidence under this hearsay exception. See, e.g., S.E.C. v. Jasper, 678 F.3d 1116, 1124 (9th Cir. 2012). Finally, there is no rule of evidence prohibiting evidence of valuation unless presented through an expert. The value of the Potato Corner brand, and its goodwill, were each analyzed by Plaintiff's auditors and submitted to the SEC through public filings. That information is just as | |

| | | | reliable as any expert can provide. | |
|---|---|---|---|---|
| 36 | July 31, 2024 Email from K. Hsu Re: RE: SPAVI Dkt. 44-45 | Δ:<br><br>This email comprises communications between the lawyers in this case. They are not relevant and also unduly prejudicial. FRE 401, 402, 403. | Π:<br><br>In the immediate aftermath of the termination and initiation of this litigation, what was remarkable was the failure of Koren to ever concede that he was wrong, or express humility. Instead, he took an aggressive approach claiming adverse possession as a licensee. This goes to many facts including intent, willfulness, as well as the timeline of events, as this preceded the attempts to rescue franchisees from the sinking ship. This will not be a principal exhibit, but it is admissible for a variety of permissible purposes. | |
| 40 | SPAVIs Sample Franchise Agreement for Potato Corner Dkt. 44-48 | Δ:<br><br>This exhibit appears to be a sample franchise agreement drafted by Plaintiff. Unless proffered to establish a claim or defense at trial (which is not readily apparent to PCJV USA Parties), it does not appear to be relevant. FRE 401-402. To the extent Plaintiff argues it shows they maintained secrecy of alleged trade secrets, or another similar purpose, it would constitute secondary evidence that Plaintiff actually did in fact enter into confidentiality agreements with licensees under FRE 1002. Further, | Π:<br><br>Defendants dispute SPAVI's means to maintain secrecy of the trade secret at issue as well as the other commercial and proprietary information disclosed as part of being in the Potato Corner system. This document is a sample form agreement used by SPAVI with its license which establishes the confidentiality obligations, as well as the obligations of the franchisees to protect | |

**SECOND AMENDED CHALLENGED EXHIBITS TABLE**

| | | | | |
|---|---|---|---|---|
| | | any argument that this unsigned contract can be used when questioned regarding PCJV USA Parties' assignment in gross and naked licensing defenses because is baseless because it has no tendency to prove either (1) SPAVI acquired goodwill to U.S. Potato Corner trademarks or (2) any party, other than PCJV USA Parties, controlled the U.S. Potato Corner trademarks. | the trademarks which SPAVI is allowed to rely upon when questioned about the naked licensing and abandonment defense. | |
| 44 | September 22, 2024 Email Re: RE: SPAVI/PCJV L.R. 7-3 Conference of Counsel Dkt. 44-52 | Δ:<br><br>This email comprises communications between the lawyers in this case. They are not relevant and also unduly prejudicial. FRE 401, 402, 403. Plaintiff is also attempting to mislead the jury regarding the meaning of the representations in the FDDs, which Cinco's lawyers themselves drafted. FRE 403. Nor do the communications establish anything relating to a "competitor." That is misleading. FRE 403. | II:<br><br>The relevance – indeed importance – of this email chain cannot be overstated. This email chain is the first time Koren / Defendants or anyone acting on their behalf expressly repudiated the decade worth of assertions in the FDDs that the seasonings are trade secret and that as Potato Corner they are in possession of confidential and proprietary information. It also was the first time that Koren (or his representatives) admitted in a manner we could establish that they were developing a competitor of Potato Corner while under Potato Cortner's roof. This email is relevant, and admissible. | |
| | | Δ:<br><br>This appears to be an inadvertently produced | II:<br><br>This document was produced to Cinco in | |

| 104 | June 10, 2019 email re answers to questions | document by certain counsel in the state court action. The face of the document clearly shows that it comprises answers from Alon Koren to interrogatories. Alon Koren, who also was a party sued by Cinco in the state court action, was also in a common interest with Guy Koren and other parties. Therefore, the communication also constitutes a common interest communication. Beyond that, PCJV USA Parties cannot ascertain the relevance of this document. FRE 401-402. It also should be barred by FRE 403 for being prejudicial and necessitating undue consumption of time. | 2018 by an entity that does not even employ Alon Koren, and does not, itself, contain any information that reveals an attorney client communication. In fact, this document contains only facts – no evidence. There was nothing remotely alerting anyone that this could be privileged and Plaintiff is skeptical now, a half decade later. Who was Alon Koren's lawyer? And when? And why did they never object until now? Without answers to these questions, plus some analyses as to whether this document could be viewed as pouring in substance, this objection should be overruled. | |
| --- | --- | --- | --- | --- |
| 107 | Online customer reviews | Δ:<br><br>This document is a compilation of inadmissible hearsay consisting of selective online Yelp complaints that are made out of court and offered for the truth of the matter asserted. FRE 801; see, e.g., Exh. No. 107 at 1-2, 3, 7, 9. Further, many of the reviews are irrelevant, unduly prejudicial, and would necessitate unnecessary consumption of time to rebut. FRE 401, 402, 403. Online reviews of businesses must be authenticated to show (1) they were actually made by the reviewing customers and (2) an accurate | Π:<br><br>The online reviews are relevant to show the confusion amongst consumers between the Potato Corner brand and the Undercover Fries brand. The online reviews included the name of the poster, the geolocation, and url. As such, it is admissible evidence under FRE 901 and 902. | |

| | | representation of online reviews. See Wady v. Provident Life & Accident Ins. Co. of Am., 216 F. Supp. 2d 1060, 1064-165 (C.D. Cal. 2002). None of the purported reviewers are listed as witnesses expected to testify at trial and, thus, cannot authenticate the reviews (unless Plaintiff is willing to admit that its own agents submitted these reviews). | | |
|---|---|---|---|---|

**SECOND AMENDED CHALLENGED EXHIBITS TABLE**

176721382.3

**SECOND AMENDED CHALLENGED EXHIBITS TABLE**

176721382.3

| Ex. No. | Description | Objections | Response | Ruling |
|---|---|---|---|---|
| 1007 | May 2, 2017 Email from Ismael G. Khan to Erlinda Bartolome RE Letter of Appreciation to Guy Koren | Π: This exhibit is a communication between two individuals who in this context act on behalf of PCJV. As such, it is hearsay with no known exception. This exhibit is also irrelevant because it does not pertain to purported rights to Potato Corner Intellectual Property. It will also waste time as the parties take turns adding. As such, Plaintiff objections to this exhibit pursuant to FRE 401 and 403 – Relevance and FRE 801 and 802 – Hearsay. | Δ: As a threshold matter, there are numerous facts and issues of consequence in this action. Evidence of the parties' communications from 2008-2009—when Koren first met Magsaysay and attempted to negotiate a business deal, while also rejecting an at-will relationship—through the transformation into a joint venture partnership in 2009-2010, and the corresponding investment by Cinco of its trademarks into that joint venture partnership in exchange for a 60% interest in what later became PCJV, is highly relevant. The earlier and subsequent years of communications and records further evidence the parties' meetings of the minds on a variety of subject matters, including termination rights, long-term rights and obligations, consent rights, as well as their course of performance, acquiescence, and consent. All of this is important to demonstrate that PCJV USA Parties had long-term rights to use the intellectual property, whether by grant or license, express or implied, or via authority from PCJV as set forth in relevant franchise agreements. They also are important to establish the relationships the PCJV | |

| | | | USA Parties had, which relationships SPAVI interfered with. Moreover, because SPAVI is claiming that Cinco was not a party to these various agreements, the communications among the parties are necessarily relevant to show the consideration Cinco was receiving—for example, the release of significant contingent liabilities as shown in this exhibit. This exhibit also demonstrates Cinco's (and now SPAVI's) knowledge of U.S. franchise issues, the solid foundation of Mr. Koren's relationship with PCJV's franchisees, and rebuts any counter-narrative that Cinco or SPAVI may attempt to present to the jury. Accordingly, the evidence is relevant and not hearsay under Federal Rules of Evidence 801(d)(1), 801(d)(2), 803(1), 803(3), 803(5), and 803(6). | |
|---|---|---|---|---|
| 1019 | May 30, 2010 Meeting Minutes | Π: This exhibit is calculated for nothing more than to bias the jury. It contains an out-of-context, but admittedly poorly conceived (although quite possibly poorly interpreted or documented) remarks regarding conducting business with Jewish individuals. This case contains no allegations of bias | Δ: This exhibit evidences the joint venture partnership the parties entered long before PCJV was formed (and over two years before the JVA and LLC Agreement were signed). The document mentions the word "partner" seven times, alongside making other expressions of intent. This document was also ratified as PCJV's first board meeting minutes. The partners' words are relevant to prove or | |

34

**SECOND AMENDED CHALLENGED EXHIBITS TABLE**

| | | or antisemitism, and the probative value is far outweighed by any prejudice. In addition, this document is hearsay, with no exception because it captures portions of conversation by others than the declarant. The documents gives no indication of when in relation to the actual meeting that it purports to capture that it was actually drafted. It is further irrelevant because it contains no purported terms or discussion of the IP at issue in the case or the rights to it. As such, Plaintiff objections to this exhibit pursuant to FRE 401 and 403 – Relevance and FRE 801 and 802 – Hearsay | disprove the variety of issues of consequence in this action. The isolated statement from Magsaysay about "Jews" is relevant to show that Mr. Magsaysay was willing to overcome any concerns he had about doing business with non-Philippines-based individuals (and non-Christians), because of his bond with Mr. Koren and the LA Group. See Huddleston v. U.S., 108 S.Ct. 1496, 1499-1500 (1988) (extrinsic salacious evidence admissible if critical to establishing a disputed issue, such as the actor's state of mind). Indeed, a review of a separate exhibit (Exhibit No. 1024) reveals Mr. Magsaysay's mindset: | |
| | | | "We begun on mutual trust and this will be a key value the the JV company shall have. Any person bringing distrust to start a relationship with the JV company should be looked at with concern. The time we proffesionalize and have proffesional managers running things for us is the time we should let contracts and agreements with lawyers concern be ahead of trust. That's why to those who join our journey at this point when all we have is trust, I value them and their partnership and we should reep the benefits if trusting as blindly." | |
| | | | In a case where outsiders are now claiming that PCJV never had any | |

35

**SECOND AMENDED CHALLENGED EXHIBITS TABLE**

| | | | long-term rights in place, it is imperative for the jury to understand the true bond these partnership groups had built and to rebut any counter-narrative that Cinco or SPAVI may attempt to present to the jury (i.e., that there was not a meeting of the minds on a long-term agreement). Accordingly, the evidence is relevant and not hearsay under Federal Rules of Evidence 801(d)(1), 801(d)(2), 803(1), 803(3), 803(5), and 803(6). | |
| 1036 | February 27, 2011 Email from Erlinda Bartolome to Kim Lambert RE Directors/Shareholders of NKM and PCJV | Π: This exhibit is irrelevant because it pertains nothing to contractual rights over related to licensing or the Potato Corner intellectual property. It is additionally inadmissible because it is representations by agents of PCJV. As such, Plaintiff objections to this exhibit pursuant to FRE 401and 403 – Relevance and FRE 801 and 802 – Hearsay. | Δ: As with the prior challenged exhibits, there are numerous facts and issues of consequence in this action, which won't be summarized again here. This particular exhibit demonstrates the nature of the parties' meetings of the minds as this start-up business was continuing to evolve. It also is relevant to "first use" of the trademarks, how NKM's location at Santa Anita was "used as the prototype to precisely develop the Franchise Business Model of Potato Corner in the US," the preparation process of the FDDs by Cinco and its agents/attorneys, the Hong Kong entity's absence from the PCJV deal, etc. Certainly, the partners' and their agents' words are relevant to prove or disprove the variety of issues of consequence in this action, as mentioned above. The document | |

36

| | | | | |
|---|---|---|---|---|
| | | | also rebuts any counter-narrative that Cinco or SPAVI may attempt to present to the jury. Accordingly, the evidence is relevant and not hearsay under Federal Rules of Evidence 801(d)(1), 801(d)(2), 803(1), 803(3), 803(5), and 803(6). | |
| 1037 | April 10, 2011 Email from Erlinda Bartolome to Med Quiambao RE Ownership of PCJV | Π: <br><br>This exhibit is inadmissible because Bartolome is an agent of PCJV. It is also irrelevant because it pertains to (incorrectly) purported shareholdings of the parties, which is not a material issue of dispute. It pertains nothing to Potato Corner intellectual property or any agreement related to it. As such, Plaintiff objections to this exhibit pursuant to FRE 401and 403 – Relevance and FRE 801 and 802 – Hearsay. | Δ: <br><br>As with the prior challenged exhibits, there are numerous facts and issues of consequence in this action, which won't be summarized again here. First, Bartolome was Cinco's agent and international franchise consultant. It was years later that she also was appointed as PCJV's Corporate Secretary. She is a key, neutral witness in this case. This particular exhibit demonstrates the relative share breakdowns of PCJV, alongside the share breakdown of Potato Corner International. It establishes that Cinco was a party in PCJV. It establishes that the individuals were to be associated with PCJV. It establishes that PCI was never a "wholly-owned subsidiary" of Cinco. It also goes to show the nature of the parties' meetings of the minds as this start-up business was continuing to evolve. Certainly, the partners' and their agents' words are relevant to prove or disprove the variety of issues of consequence in this action, as mentioned | |

**SECOND AMENDED CHALLENGED EXHIBITS TABLE**

176721382.3

| | | | | |
|---|---|---|---|---|
| | | | above. The document also rebuts any counter-narrative that Cinco or SPAVI may attempt to present to the jury. Accordingly, the evidence is relevant and not hearsay under Federal Rules of Evidence 801(d)(1), 801(d)(2), 803(1), 803(3), 803(5), and 803(6). | |
| 1038 | DLA Piper's August 16, 2011 Invoice (Invoice No. 2609883) | II: <br><br> The document is irrelevant because it is simply an invoice related to legal work performed that was related to the formation of Defendants, which Plaintiffs do not dispute. Even if it were relevant, it is entirely hearsay as the entries reflect work purportedly completed. As such, Plaintiff objections to this exhibit pursuant to FRE 401 and 403 – Relevance and FRE 801 and 802 – Hearsay. | Δ: <br><br> As with the prior challenged exhibits, there are numerous facts and issues of consequence in this action, which won't be summarized again here. This particular exhibit comprises contemporaneous billing records from DLA Piper demonstrating the evolution of the work being done at what points in time to set PCJV up and create the franchise system in the US within the constructs of the partnership the two groups had developed. It is key evidence concerning the rights being granted PCJV, including evidence of who was performing the work in preparing FDDs and license agreements and the evolution thereof to the corresponding representations made in the FDDs regarding a 50-year license agreement. It also goes to show the nature of the parties' meetings of the minds as this start-up business was continuing to evolve. Certainly, the partners' and their agents' words are relevant to prove or disprove the variety of | |

**SECOND AMENDED CHALLENGED EXHIBITS TABLE**

176721382.3

| | | | | |
|---|---|---|---|---|
| | | | issues of consequence in this action, as mentioned above. The document also rebuts any counter-narrative that Cinco or SPAVI may attempt to present to the jury. Accordingly, the evidence is relevant and not hearsay under Federal Rules of Evidence 801(d)(1), 801(d)(2), 803(1), 803(3), 803(5), and 803(6). | |
| 1039 | DLA Piper's August 16, 2011 Invoice (Invoice No. 2609884) | Π:<br><br>The document is irrelevant because it is simply an invoice related to legal work performed that was related to the formation of Defendants, which Plaintiffs do not dispute. Even if it were relevant, it is entirely hearsay as the entries reflect work purportedly completed. As such, Plaintiff objections to this exhibit pursuant to FRE 401and 403 – Relevance and FRE 801 and 802 – Hearsay. | Δ:<br><br>As with the prior challenged exhibits, there are numerous facts and issues of consequence in this action, which won't be summarized again here. This particular exhibit comprises contemporaneous billing records from DLA Piper demonstrating the evolution of the work being done at what points in time to set PCJV up and create the franchise system in the US within the constructs of the partnership the two groups had developed. It is key evidence concerning the rights being granted PCJV, including evidence of who was performing the work in preparing FDDs and license agreements and the evolution thereof to the corresponding representations made in the FDDs regarding a 50-year license agreement. It also goes to show the nature of the parties' meetings of the minds as this start-up business was continuing to evolve. Certainly, the partners' and their agents' words | |

**SECOND AMENDED CHALLENGED EXHIBITS TABLE**

| | | | are relevant to prove or disprove the variety of issues of consequence in this action, as mentioned above. The document also rebuts any counter-narrative that Cinco or SPAVI may attempt to present to the jury. Accordingly, the evidence is relevant and not hearsay under Federal Rules of Evidence 801(d)(1), 801(d)(2), 803(1), 803(3), 803(5), and 803(6). | |
| 1040 | DLA Piper's August 16, 2011 Invoice (Invoice No. 2609885) | **Π:**<br><br>The document is irrelevant because it is simply an invoice related to legal work performed that was related to the formation of Defendants, which Plaintiffs do not dispute. Even if it were relevant, it is entirely hearsay as the entries reflect work purportedly completed. As such, Plaintiff objections to this exhibit pursuant to FRE 401and 403 – Relevance and FRE 801 and 802 – Hearsay. | **Δ:**<br><br>As with the prior challenged exhibits, there are numerous facts and issues of consequence in this action, which won't be summarized again here. This particular exhibit comprises contemporaneous billing records from DLA Piper demonstrating the evolution of the work being done at what points in time to set PCJV up and create the franchise system in the US within the constructs of the partnership the two groups had developed. It is key evidence concerning the rights being granted PCJV, including evidence of who was performing the work in preparing FDDs and license agreements and the evolution thereof to the corresponding representations made in the FDDs regarding a 50-year license agreement. It also goes to show the nature of the parties' meetings of the minds as this start-up business was continuing to evolve. | |

**SECOND AMENDED CHALLENGED EXHIBITS TABLE**

176721382.3

| | | | | |
|---|---|---|---|---|
| | | | Certainly, the partners' and their agents' words are relevant to prove or disprove the variety of issues of consequence in this action, as mentioned above. The document also rebuts any counter-narrative that Cinco or SPAVI may attempt to present to the jury. Accordingly, the evidence is relevant and not hearsay under Federal Rules of Evidence 801(d)(1), 801(d)(2), 803(1), 803(3), 803(5), and 803(6). | |
| 1041 | DLA Piper's August 16, 2011 Invoice (Invoice No. 2609887) | Π:<br><br>The document is irrelevant because it is simply an invoice related to legal work performed that was related to the formation of Defendants, which Plaintiffs do not dispute. Even if it were relevant, it is entirely hearsay as the entries reflect work purportedly completed. As such, Plaintiff objections to this exhibit pursuant to FRE 401and 403 – Relevance and FRE 801 and 802 – Hearsay. | Δ:<br><br>As with the prior challenged exhibits, there are numerous facts and issues of consequence in this action, which won't be summarized again here. This particular exhibit comprises contemporaneous billing records from DLA Piper demonstrating the evolution of the work being done at what points in time to set PCJV up and create the franchise system in the US within the constructs of the partnership the two groups had developed. It is key evidence concerning the rights being granted PCJV, including evidence of who was performing the work in preparing FDDs and license agreements and the evolution thereof to the corresponding representations made in the FDDs regarding a 50-year license agreement. It also goes to show the nature of the parties' meetings of the minds as | |

41

**SECOND AMENDED CHALLENGED EXHIBITS TABLE**

| | | | this start-up business was continuing to evolve. Certainly, the partners' and their agents' words are relevant to prove or disprove the variety of issues of consequence in this action, as mentioned above. The document also rebuts any counter-narrative that Cinco or SPAVI may attempt to present to the jury. Accordingly, the evidence is relevant and not hearsay under Federal Rules of Evidence 801(d)(1), 801(d)(2), 803(1), 803(3), 803(5), and 803(6). | |
| 1042 | An Email Chain Beginning June 10, 2013 and Ending November 10, 2013 RE DLA Piper Outstanding Invoices | **Π:** This Exhibit is irrelevant because it pertains only to unpaid invoices for legal services performed. Whether invoices were paid is not material to any issues in this already complicated enough case and will only serve to confuse the jury. As such, Plaintiff objections to this exhibit pursuant to FRE 401and 403 – Relevance and FRE 801 and 802 – Hearsay. | **Δ:** As with the prior challenged exhibits, there are numerous facts and issues of consequence in this action, which won't be summarized again here. This particular exhibit is an email between the partners addressing DLA Piper related issues. The earlier in time emails demonstrate the relationship between DLA and Cinco and may help prove or disprove any inferences that may be drawn, for example, relating to the license agreement and FDDs (i.e., that DLA Piper drafted them and was in confidential communications with Cinco and must be estopped from denying the existence of the agreement between the parties for a 50-year license). PCJV's financial condition is also relevant at various points in time | |

**SECOND AMENDED CHALLENGED EXHIBITS TABLE**

176721382.3

| | | | | |
|---|---|---|---|---|
| | | | in the context of PCJV's evolution and this email is but a small piece of the puzzle. It also goes to show the nature of the parties' meetings of the minds as this start-up business was continuing to evolve. Certainly, the partners' and their agents' words are relevant to prove or disprove the variety of issues of consequence in this action, as mentioned above. The document also rebuts any counter-narrative that Cinco or SPAVI may attempt to present to the jury. Accordingly, the evidence is relevant and not hearsay under Federal Rules of Evidence 801(d)(1), 801(d)(2), 803(1), 803(3), 803(5), and 803(6). | |
| 1045 | Master Services Agreement dated on June 18, 2012 (duplicated) | II:<br><br>This exhibit is irrelevant and meant to confuse because it sets forth no agreement pertaining to Potato Corner Intellectual Property rights, and also constitutes written hearsay. As such, Plaintiff objections to this exhibit pursuant to FRE 401 and 403 – Relevance and FRE 801 and 802 – Hearsay. | Δ:<br><br>As with the prior challenged exhibits, there are numerous facts and issues of consequence in this action, which won't be summarized again here. This particular exhibit is a signed written agreement demonstrating the mutual intent of the parties. It is legally operative language, not hearsay. The MSA was also signed with the understanding that the license agreement had been entered. The MSA itself gives the LA Group licensing and sublicensing rights. The MSA is also one of the many agreements that PCJV USA Parties are claiming was interfered with. The document also | |

| | | | rebuts any counter-narrative that Cinco or SPAVI may attempt to present to the jury. Accordingly, the evidence is relevant and not hearsay under Federal Rules of Evidence 801(d)(1), 801(d)(2), 803(1), 803(3), 803(5), and 803(6). | |
|---|---|---|---|---|
| 1057 | LA Group's November 4, 2015 Letter to Cinco Group Board of Directors (duplicated) | **II:**<br><br>The exhibit constitutes written hearsay. The contents of the letter are also being offered for the truth of the matter asserted. The contents of the letter similarly contain nothing to support Defendants' claims to ownership over the Potato Corner Trademarks. As such, Plaintiff objections to this exhibit pursuant to FRE 401and 403 – Relevance and FRE 801 and 802 – Hearsay. | **Δ:**<br><br>As with the prior challenged exhibits, there are numerous facts and issues of consequence in this action, which won't be summarized again here. This particular exhibit is a letter from one group to the other group concerning a variety of issues. It addresses the evolving financial concerns that PCJV was having. It addresses that the parties always believed that "Cinco Group" were the owners of PCJV (despite PCI holding an economic interest for tax and immigration purposes as will be shown, if necessary) and that each individual member would be exposed to "personal liability" if PCJV continues to be undercapitalized. It also shows the Cinco Group's knowledge of receipt of audited financials and other information. It also shows the partners' mutual intentions to rely on "both the Operating Agreement and Joint Venture Agreement." Certainly, the partners' and their agents' words are relevant to prove or disprove the variety of | |

**SECOND AMENDED CHALLENGED EXHIBITS TABLE**

176721382.3

| | | | | |
|---|---|---|---|---|
| | | | issues of consequence in this action, as mentioned above. The document also rebuts any counter-narrative that Cinco or SPAVI may attempt to present to the jury. Accordingly, the evidence is relevant and not hearsay under Federal Rules of Evidence 801(d)(1), 801(d)(2), 803(1), 803(3), 803(5), and 803(6). | |
| 1058 | November 12, 2015 PCJV Meeting Minutes | **Π:**<br><br>This exhibit is hearsay, with no exception because it captures portions of conversation by others than the declarant. The documents gives no indication of when in relation to the actual meeting that it purports to capture that it was actually drafted. It is further irrelevant because it contains no purported terms or discussion of the IP at issue in the case or the rights to it. As such, Plaintiff objections to this exhibit pursuant to FRE 401and 403 – Relevance and FRE 801 and 802 – Hearsay. | **Δ:**<br><br>As with the prior challenged exhibits, there are numerous facts and issues of consequence in this action, which won't be summarized again here. This particular exhibit comprises PCJV meeting minutes, at the very least, a business record. It speaks to knowledge of audits, and FDD renewals. It speaks to the growth projections of PCJV. It speaks to issues of expired flavors, their manufacture in Australia (getting into alleged secrets, reverse engineering, etc.), and intention to have the flavors reverse engineered in the US. It speaks to Cinco earning upcharges on those flavors. It also goes to show the nature of the parties' meetings of the minds as this start-up business was continuing to evolve. Certainly, the partners' and their agents' words are relevant to prove or disprove the variety of issues of consequence in this action, as mentioned above. The document | |

**SECOND AMENDED CHALLENGED EXHIBITS TABLE**

176721382.3

| | | | also rebuts any counter-narrative that Cinco or SPAVI may attempt to present to the jury. Accordingly, the evidence is relevant and not hearsay under Federal Rules of Evidence 801(d)(1), 801(d)(2), 803(1), 803(3), 803(5), and 803(6). | |
|------|------|------|------|------|
| 1069 | Amir Jacoby's Privilege Log | Π: This evidence is irrelevant because it does not discuss intellectual property rights pertaining to Potato Corner. It will only serve to confuse the jury and waste time regarding its context. As such, Plaintiff objections to this exhibit pursuant to FRE 401and 403 – Relevance and FRE 801 and 802 – Hearsay. | Δ: Amir Jacoby is listed as a witness. His privilege log of items he withheld from production include communications with Cinco, which may become relevant if Jacoby testifies, either to impeach or to demonstrate bias if necessary. | |
| 1146 | PCJV's Growth Chart | Π: This exhibit is irrelevant as it pertains nothing to intellectual property rights regarding Potato Corner or related to Defendants. As such, Plaintiff objections to this exhibit pursuant to FRE 401and 403 – Relevance and FRE 801 and 802 – Hearsay. | Δ: This is an exhibit prepared by SPAVI and presented to Koren during settlement negotiations. If not rendered inadmissible because it is a settlement document (like those offered by SPAVI at Exhs. 20-28), then it must be admissible to rebut any counter-narrative that Cinco or SPAVI may attempt to present to the jury. | |
| | | Π: Defendants have offered no means to | Δ: This is an exhibit prepared by SPAVI and | |

46

| 1147 | PCJV's Spreadsheet RE SPAVI Royalty | authenticate, and the document is being offered for the truth asserted in the spreadsheet. As such, Plaintiff objections to this exhibit pursuant to FRE 401and 403 – Relevance and FRE 801 and 802 – Hearsay. | presented to Koren during settlement negotiations. If not rendered inadmissible because it is a settlement document (like those offered by SPAVI at Exhs. 20-28), then it must be admissible to rebut any counter-narrative that Cinco or SPAVI may attempt to present to the jury. | |

**SECOND AMENDED CHALLENGED EXHIBITS TABLE**

176721382.3

Dated:  September 10, 2025

FOX ROTHSCHILD LLP

_/s/ Michael D. Murphy_
Michael D. Murphy
Matthew Follett
Meeghan H. Tirtasaputra
Attorneys for Plaintiff and Counterclaim
Defendant SHAKEY'S PIZZA ASIA
VENTURES, INC. and Third Party Defendants
CINCO CORPORATION, PC
INTERNATIONAL PTE LTD., and SPAVI
INTERNATIONAL USA, INC.

DATED:  September 10, 2025

BLANK ROME LLP

By: _/s/ Jamison T. Gilmore_
Todd M. Malynn
Arash Beral
Jamison T. Gilmore

Attorneys for Defendants, Counterclaimants,
and Third Party Plaintiffs PCJV USA, LLC,
PCI TRADING LLC, POTATO CORNER,
LA GROUP, LLC, GK CAPITAL GROUP,
LLC, NKM CAPITAL GROUP, LLC and
GUY KOREN, and Defendants J & K
AMERICANA, LLC, J&K LAKEWOOD,
LLC, J&K OAKRIDGE, LLC, J&K
VALLEY FAIR, LLC, J & K ONTARIO,
LLC, J&K PC TRUCKS, LLC, HLK
MILPITAS, LLC, and GK CERRITOS,
LLC

SECOND AMENDED CHALLENGED EXHIBITS TABLE

176721382.3

## **ATTESTATION**

Pursuant to Local Rule 5-4.3.4, the filer attests that all signatories listed, and on whose behalf the filing is submitted, concurs in the filing's content and have authorized the filing.

*/s/ Michael D. Murphy*
Michael D. Murphy

SECOND AMENDED CHALLENGED EXHIBITS TABLE

176721382.3

# CERTIFICATE OF SERVICE

The undersigned certifies that, on September 10, 2025, the foregoing document was electronically filed with the Clerk of the Court for the United States District Court, Central District of California, using the Court's ECF filing system. I further certify that all counsel for all parties to this action are registered CM/ECF user and that service will be accomplished by the CM/ECF system.

I certify under penalty of perjury that the foregoing is true and correct.

DATED: SEPTEMBER 10, 2025          FOX ROTHSCHILD LLP


                                   */s/ Michael D. Murphy*
                                   Michael D. Murphy
                                   Attorneys for Plaintiff and Counterclaim
                                   Defendant SHAKEY'S PIZZA ASIA
                                   VENTURES, INC. and Third Party
                                   Defendants CINCO CORPORATION,
                                   PC INTERNATIONAL PTE LTD., and
                                   SPAVI INTERNATIONAL USA, INC.

**SECOND AMENDED CHALLENGED EXHIBITS TABLE**

176721382.3