**BLANK ROME LLP**
Todd M. Malynn (SBN 181595)
todd.malynn@blankrome.com
Arash Beral (SBN 245219)
arash.beral@blankrome.com
Jamison T. Gilmore (SBN 322100)
jamison.gilmore@blankrome.com
2029 Century Park East | 6th Floor
Los Angeles, CA 90067
Telephone:   424.239.3400
Facsimile:   424.239.3434

Attorneys for Defendants, Counterclaimants, and Third Party Plaintiffs PCJV USA, LLC, PCI TRADING LLC, POTATO CORNER, LA GROUP, LLC, GK CAPITAL GROUP, LLC, NKM CAPITAL GROUP, LLC and GUY KOREN, and Defendants J & K AMERICANA, LLC, J&K LAKEWOOD, LLC, J&K OAKRIDGE, LLC, J&K VALLEY FAIR, LLC, J & K ONTARIO, LLC, J&K PC TRUCKS, LLC, HLK MILPITAS, LLC, and GK CERRITOS, LLC

## UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| SHAKEY'S PIZZA ASIA VENTURES, INC, a Philippines corporation,<br><br>Plaintiff,<br><br>vs.<br><br>PCJV USA, LLC, a Delaware limited liability company; PCI TRADING , LLC, a Delaware limited liability company; GUY KOREN, an individual; POTATO CORNER LA GROUP, LLC, a California limited liability company; NKM CAPITAL GROUP, LLC, a California limited liability company; J & K AMERICANA, LLC, a California limited liability company; J&K LAKEWOOD, LLC, a California limited liability company; J&K VALLEY FAIR, LLC, a California limited liability company; J & K ONTARIO, LLC, a California limited liability company; HLK MILPITAS, LLC, a California, limited liability company; GK CERRITOS, LLC, a California, limited liability company;  J&K PC TRUCKS, LLC, a California limited liability company; and, GK CAPITAL GROUP, LLC, a California | Case No. 2:24-CV-04546-SB(AGRx)<br><br>*Hon. Stanley Blumenfeld, Jr.*<br><br>**DEFENDANTS' OBJECTION TO PLAINTIFF'S PORTION OF DKT. NO. 297 AND REQUEST FOR ENTRY OF DISMISSAL WITH PREJUDICE OF PLAINTIFF'S TRADE SECRET MISAPPROPRIATION CLAIM**<br><br>Complaint Filed:   May 31, 2024<br>Trial Date:          September 16, 2025 |

limited liability company and DOES 1 through 100, inclusive,

Defendants.

_____

PCJV USA, LLC, a Delaware limited liability company; PCI TRADING LLC, a Delaware limited liability company; POTATO CORNER LA GROUP LLC, a California limited liability company; GK CAPITAL GROUP, LLC, a California limited liability company; NKM CAPITAL GROUP LLC, a California limited liability company; and GUY KOREN, an individual,

Counter-Claimants,

v.

SHAKEY'S PIZZA ASIA VENTURES, INC, a Philippines corporation,

Counter Defendant.

_____

PCJV USA, LLC, a Delaware limited liability company; PCI TRADING LLC, a Delaware limited liability company; POTATO CORNER LA GROUP LLC, a California limited liability company; GK CAPITAL GROUP, LLC, a California limited liability company; NKM CAPITAL GROUP LLC, a California limited liability company; and GUY KOREN, an individual,

Third Party Plaintiffs,

v.

PC INTERNATIONAL PTE LTD., a Singapore business entity; SPAVI INTERNATIONAL USA, INC., a California corporation; CINCO CORPORATION, a Philippines corporation; and ROES 1 through 10, inclusive,

Third Party Defendants.

_____

DEFENDANTS' OBJECTION TO PLAINTIFF'S PORTION OF DKT. NO. 297 AND REQUEST FOR ENTRY OF DISMISSAL WITH PREJUDICE OF PLAINTIFF'S TRADE SECRET MISAPPROPRIATION CLAIM

# <u>TABLE OF CONTENTS</u>

I.    INTRODUCTION ..........................................................................................1

II.   REASONS DEFENDANTS ARE OBJECTING.......................................1

III.  ALLOWING PLAINTIFF TO REPACKAGE ITS TRADE SECRET
      CLAIM UNDER THE LANHAM ACT WOULD CAUSE PREJUDICE4

      A.    Plaintiff's Request for Dismissal of its Trade Secret Claim Should
            be With Prejudice ..........................................................................6

            1.    Plaintiff Unreasonably Delayed Prosecuting Its Claims ......7

            2.    Dismissal Without Prejudice Would Be Prejudicial ............8

            3.    Plaintiff Knew It Could Not Prevail Under Cal-UTSA, Fully
                  Justifying Dismissal with Prejudice ....................................9

                  a.    The Non-Existence of a Disclosed Trade Secret.........9

                  b.    Prior and Subsequent Public Disclosure of the
                        Alleged Trade Secrets...................................................11

                  c.    PCJV USA, LLC Owns Its Own Intellectual Property
                        ......................................................................................12

                  d.    Reasonable Steps to Preserve Secrecy Were Not
                        Taken ...........................................................................13

      B.    Plaintiff Has Waived Any Unpled Claim for False Designation of
            Origin Based on Trade Dress or "Reverse Engineering"..............14

IV.   CONCLUSION ..........................................................................................15

**DEFENDANTS' OBJECTION TO PLAINTIFF'S PORTION OF DKT. NO. 297 AND REQUEST FOR ENTRY
OF DISMISSAL WITH PREJUDICE OF PLAINTIFF'S TRADE SECRET MISAPPROPRIATION CLAIM**

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Agency Solutions.Com, LLC v. TriZetto Grp., Inc.*,
  819 F. Supp. 2d 1001 (E.D. Cal. 2011) ................................................................. 10

*Agile Sourcing v. Dempsey*,
  2021 U.S. Dist. LEXIS 204631 (C.D. Cal. July 15, 2021) ..................................... 5

*Attia v. Google LLC*,
  983 F.3d 420 (9th Cir. 2020) ............................................................................... 11

*Big Island Candies, Inc. v. Cookie Corner*,
  269 F.Supp.2d 1236 (D. Hi. 2003) ......................................................................... 5

*Bikram's Yoga Coll. Of India, L.P. v. Evolation Yoga, LLC*,
  803 F.3d 1032 (9th Cir. 2015) ............................................................................... 5

*BladeRoom Grp. Ltd. v. Facebook, Inc.*,
  219 F. Supp. 3d 984 (N.D. Cal. 2017) ................................................................. 12

*Bluetooth SIG Inc. v. FCA US LLC*,
  30 F.4th 870 (9th Cir. 2022) ............................................................................... 14

*Bonito Boats, Inc. v. Thunder Craft Boats, Inc.*,
  489 U.S. 141 (1989) ............................................................................................... 4

*Bradford Co. v. Afco Mfg.*,
  Case No. 1:05-CV-449, 2009 WL 10679444 (S.D. Ohio June 22, 2009) ............... 6

*Buffets, Inc. v. Klinke*,
  73 F.3d 965 (9th Cir. 1996) ..................................................................... 9, 10, 13

*Chavez v. Huhtamaki, Inc.*,
  Case No. 2:21-cv-01073-ODW (JEMx), 2021 WL 4441976 (C.D. Cal. Sept. 28,
  2021) ....................................................................................................................... 8

*Chicago Lock Co. v. Fanberg*,
  676 F.2d 400 (9th Cir. 1982) ............................................................................... 10

*Cohen v. Chanin*,
  Case No. 2:18-cv-06186-MCS-AS, 2020 WL 10758583
  (C.D. Cal. Dec. 21, 2020) ....................................................................................... 7

*CTC Glob. Corp. v. Huang*,
  No. SACV 1702202AGKESX, 2019 WL 4148184 (C.D. Cal. July 29, 2019) ..... 10

*Diamond State Ins. Co. v. Genesis Ins. Co.*,
  379 F.App'x 671 (9th Cir. 2010) ........................................................................... 7

*Digital Envoy, Inc. v. Google, Inc.*,
  2005 WL 8162639 (N.D. Cal. July 15, 2005) ........................................................ 4

*Evenflo Co., Inc. v. Augustine*,
  Case No.: 14-CV-1630-AJB-JLB, 2015 WL 7568663 (S.D. Cal. Nov. 24, 2015) .. 6

*Hanks v. Anderson*,
  No. 2:19-CV-00999-DBB-JCB, 2024 WL 4092949 (D. Utah Sept. 5, 2024) ....... 13

iv

*Hargis v. Foster*,
   312 F.3d 404 (9th Cir. 2002) ............................................................................ 7

*Hutchison v. KFC Corp.*,
   883 F. Supp. 517 (D. Nev. 1993), aff'd, 51 F.3d 280 (9th Cir. 1995) ..................... 9

*Imax Corp.*,
   152 F.3d at 1164 (quoting *Universal Analytics v. MacNeal-Schwendler Corp.*, 707 F.Supp. 1170 (C.D.Cal.1989), *aff'd*, 914 F.2d 1256 (9th Cir.1990).................. 9, 10

*Imax Corp. v. Cinema Techs., Inc.*,
   152 F.3d 1161 (9th Cir. 1998) (citing *MAI Sys. Corp. v. Peak Computer, Inc.*, 991 F.2d 511 (9th Cir. 1993) ................................................................................ 9

*In re Providian Credit Card Cases*,
   96 Cal. App. 4th 292 (2002) ......................................................................... 11

*In re Sizzler Restaurants Intern., Inc.*,
   262 B.R. 811 (Bankr. C.D. Cal. 2001) .............................................................. 7

*Int'l Ord. of Job's Daughters v. Lindeburg & Co.*,
   633 F.2d 912 (9th Cir. 1980) ................................................................... 2, 3, 5

*JUUL Labs, Inc. v. Chou*,
   557 F. Supp. 3d 1041 (C.D. Cal. 2021) ...................................................... 2, 3, 6

*K.C. Multimedia, Inc. v. Bank of Am. Tech. & Operations, Inc.*,
   171 Cal. App. 4th 939 (2009) ......................................................................... 4

*Kim Seng Co. v. J & A Importers, Inc.*,
   810 F.Supp.2d 1046 (C.D. Cal. 2011) .............................................................. 5

*McCandless Grp., LLC v. Coy Collective, Inc.*,
   No. 221CV02069DOCKES, 2022 WL 2167686 (C.D. Cal. Feb. 14, 2022)............ 5

*Miracle Blade, LLC. v. Ebrands Commerce Group, LLC.*,
   207 F.Supp.2d 1136 (D. Nev. 2002)................................................................. 5

*Morlife, Inc. v. Perry*,
   56 Cal. App. 4th 1514 (1997) ....................................................................... 11

*R and A Synergy LLC v. Spanx, Inc.*,
   Case No. 2:17-cv-09147-SCW-AS, 2019 U.S. Dist. LEXIS 168266 (C.D. Cal. May 1, 2019)................................................................................................. 15

*Rachel v. Banana Republic, Inc.*,
   831 F.2d 1503 (9th Cir. 2002) ........................................................................ 5

*Ruckelshaus v. Monsanto Co.*,
   467 U.S. 986 (1984) ................................................................................... 11

*Scoma v. City of New York*,
   16-CV-6693 (KAM)(SJB) 2021 WL 1784385, 17 (E.D.N.Y. May 4, 2021) ......... 6

*Sinclair v. Aquarius Elecs., Inc.*,
   42 Cal. App. 3d 216 (1974) .................................................................... 10, 13

*SkinMedica, Inc. v. Histogen Inc.*,
   869 F. Supp. 2d 1176 (S.D. Cal. 2012) .......................................................... 13

*SPS Tech., LLC v. Briles Aerospace, Inc.*,
   Case No. CV 18-9536-MWF (ASx), 2021 WL 5779940 (C.D. Cal. Nov. 15, 2021)............................................................................................. 6

**DEFENDANTS' OBJECTION TO PLAINTIFF'S PORTION OF DKT. NO. 297 AND REQUEST FOR ENTRY OF DISMISSAL WITH PREJUDICE OF PLAINTIFF'S TRADE SECRET MISAPPROPRIATION CLAIM**

*Wolf v. Louis Marx & Co.*,
  No. 78 Civ. 2018, 1978 WL 21366 (S.D.N.Y. Oct. 2, 1978) ................................. 4

*Yeiser Rsch. & Dev. LLC v. Teknor Apex Co.*,
  281 F.Supp. 3d 1021 (S.D. Cal. 2017) ...................................................... 10

**Statutes**

15 U.S.C. § 1114 ................................................................................ 2, 5

15 U.S.C. § 1125(a) ............................................................................ 2, 5

17 U.S.C.A. § 101 ................................................................................. 5

Cal. Civ. Code § 3426.1(a) .................................................................. 14

Cal. Civ. Code § 3426.1(d) ................................................................... 9

**Other Authorities**

Bus. & Prof. Code § 17200 ..................................................................... 2

California's Uniform Trade Secrets Act .................................................... 1

Lanham Act ................................................................................. passim

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

**DEFENDANTS' OBJECTION TO PLAINTIFF'S PORTION OF DKT. NO. 297 AND REQUEST FOR ENTRY
OF DISMISSAL WITH PREJUDICE OF PLAINTIFF'S TRADE SECRET MISAPPROPRIATION CLAIM**

## I.   **INTRODUCTION**

Pursuant to Rule 41 of the Federal Rules of Civil Procedure, Defendants object to Plaintiff's portion of Dkt. No. 297, including the surprise statement that "Plaintiff has elected to forgo, and dismiss, without prejudice, its claim for trade secret misappropriation arising from the packages of seasonings that were reverse engineered…. Plaintiff instead will pursue the trademark infringement, and separately, the false designation of origin claims…." Dkt. No. 297 at pp. 6-7. To avoid prejudice to Defendants, ensure a fair trial on the merits, and avoid legal error and mistrial, Defendants believe the dismissal must be with prejudice. Indeed, having dismissed—on the eve of trial—its only trade secret misappropriation claim, Plaintiff cannot introduce and continue to argue the claim without secrecy and other requirements of the claim under a new cause of action that does not exist under state or federal law or its pleadings.

## II.   **REASONS DEFENDANTS ARE OBJECTING**

Plaintiff is not attempting to narrow its claims; it is trying to pivot from or expand them. At Dkt. No. 297, it spent 5 pages explaining why Defendants are allegedly liable for misappropriation of trade secrets—all leading to the statements made at pp. 6-7 that Plaintiff is dismissing the trade secret claim but "instead will pursue" the other claims which "can include items that are not protectible under the Lanham Act such as procedures, processes, or, *even proprietary information and trade secrets*." *Id.* at pp. 6-7. Plaintiff essentially is attempting to repackage its trade secret misappropriation claim under a new, unpled and non-existent theory. In doing so, Plaintiff seeks to shift the burden to Defendants to divert time in their defense, but now without jury instructions or trade secrecy requirements (disregarding federal and state preemption doctrines, including under California's Uniform Trade Secrets Act ("Cal-UTSA")) to prove a defense under Cal-UTSA. Plaintiff is trying to invent and introduce at trial an unpled count found nowhere in its Memorandum of Contentions of Law and Fact (Dkt. No. 199), Trial Brief (Dkt. No. 255), or

1

portions of the proposed Final Pretrial Order (Dkt. No. 244) that simply relabels its dismissed count for trade secret misappropriation as a "false designation of origin." There is no theory of liability under state or federal law that would allow Plaintiff to avoid proving elements unique to trade secret misappropriation—which it cannot prove—that would enable it to hold Defendants liable for allegedly "reverse engineering" publicly available seasonings.

There is no pled claim for false advertising or trade dress infringement and neither theory was identified in Plaintiff's Memorandum of Contentions of Law and Fact, Trial Brief, or portions of the proposed Final Pretrial Order. Plaintiff also has unambiguously stated that "SPAVI Parties are no longer pursuing the claim for unregistered trademarks." Dkt. No. 282-2 at 171. That leaves only trademark infringement upon which to instruct the jury—whether under 15 U.S.C. § 1114 (registered trademark), 15 U.S.C. § 1125(a) (false designation of origin) or state law (common law or Bus. & Prof. Code § 17200), with the caveat that any favorable trademark presumptions only apply under 15 U.S.C. § 1114.

Yet, Plaintiff argues that its new claim challenging "reverse engineering" as a "false designation of origin" is cognizable under the law, citing two cases, *Int'l Ord. of Job's Daughters v. Lindeburg & Co*., 633 F.2d 912 (9th Cir. 1980) and *JUUL Labs, Inc. v. Chou*, 557 F. Supp. 3d 1041 (C.D. Cal. 2021). Those cases, in fact, support the opposite conclusion in accord with settled law. Nevertheless, Plaintiff presents its newly fashioned claim as a "fallback" position that would somehow survive losing at trial on its trademark infringement counts, which is not true and would only result in mistrial if permitted and accepted by the jury.

Plaintiff further argues in the joint report at Dkt. No. 297:

Although Plaintiff is confident it will prevail over Defendants' nearly impossible task of proving by clear and convincing evidence that naked

2

**DEFENDANTS' OBJECTION TO PLAINTIFF'S PORTION OF DKT. NO. 297 AND REQUEST FOR ENTRY OF DISMISSAL WITH PREJUDICE OF PLAINTIFF'S TRADE SECRET MISAPPROPRIATION CLAIM**

licensing occurred, or an assignment in gross,[1] however, in the off chance that the jury goes sideways on those issues, false designation can still remain a theory of liability if a claim that requires registered trademarks goes down. Such a false designation theory will place, prominently, the act of reverse engineering, the lack of authority, the secrecy and clandestine nature of the adventure, and the use of these flavors to claim to be Potato Corner. This is the most appropriate place to present the jury with that aspect of the fact pattern – although it was indeed the theft of a trade secret." Dkt. No. 297 at p. 7.

There is no precedent for Plaintiff's "fallback" position, which neither *Int'l Ord. of Job's Daughters* nor *JUUL Labs, Inc.* support. Nor has Plaintiff pled or prosecuted a trade dress claim that, regardless, could not support liability for allegedly creating a non-secret, wholly functionable spice. Should Plaintiff fail to meet its burden of proof on ownership or transfer of the goodwill associated with Potato Corner USA's "restaurant and catering services" symbolized by the registered trademarks, or fail to prove ownership free and clear of a long-term trademark license or simply one it could terminate "at-will" on May 31, 2024, any unpled trade dress claim as to the "look" of the same Potato Corner USA's quick-service restaurants will also fail by law.

Defendants' ownership, right to control, or use the U.S. Potato Corner marks, which are part of the unpled trade dress and inextricably part of the goodwill Defendants created in the Potato Corner USA quick-service restaurant franchise business, was for the mutual benefit of PCJV's joint venture partners. Defendants' vested ownership, responsibility to control or right to use the U.S. trademarks could not have been transferred to Plaintiff because, for example, the associated goodwill of the business created by PCJV was never transferred to Plaintiff. And even if the goodwill was somehow impossibly transferred to Plaintiff, it was subject to pre-existing use or control rights vested in PCJV USA Parties. Either way, the alleged

---

[1] Defendants believe that the Court's Order (Dkt. No. 296) is correct and astute that Plaintiff bears the burden of proof on ownership, including by proving a transfer of relevant goodwill via a purported trademark assignment.

**DEFENDANTS' OBJECTION TO PLAINTIFF'S PORTION OF DKT. NO. 297 AND REQUEST FOR ENTRY OF DISMISSAL WITH PREJUDICE OF PLAINTIFF'S TRADE SECRET MISAPPROPRIATION CLAIM**

"reverse engineering" of seasonings is not actionable. It only wastes time and

unduly prejudices Defendants by trying to remove Plaintiff's obligation under Cal-

UTSA to prove secrecy and other essential elements of a trade secret claim, so as to

establish liability for unfair competition. It is unduly prejudicial, risks mistrial and

should be rejected.[2]

## III.   ALLOWING PLAINTIFF TO REPACKAGE ITS TRADE SECRET CLAIM UNDER THE LANHAM ACT WOULD CAUSE PREJUDICE

The Lanham Act does not protect ideas, processes, or functional features—

those are the domain of patent or trade secret law, both of which preempt other

claims. *Bonito Boats, Inc. v. Thunder Craft Boats, Inc.*, 489 U.S. 141, 168 (1989)

(unanimously holding that Florida statute creating cause of action protecting

disclosed boat designs preempted by Patent Act); Dkt. No. 99 (dismissing Plaintiff's

claim for breach of confidence claim as preempted) (citing *K.C. Multimedia, Inc. v.

Bank of Am. Tech. & Operations, Inc.*, 171 Cal. App. 4th 939, 958 (2009)). The

Lanham Act cannot be used as a substitute for trade secret law. *Digital Envoy, Inc.

v. Google, Inc.*, 2005 WL 8162639, at *2 n. 2 (N.D. Cal. July 15, 2005) (finding

claim that "simply restates the trade secrets claim…does not give rise to Lanham

Act claim…."); *Wolf v. Louis Marx & Co.*, No. 78 Civ. 2018, 1978 WL 21366, at *4

(S.D.N.Y. Oct. 2, 1978) (dismissing Lanham Act claims because "Plaintiffs cannot

bootstrap their state law claims of trade secret misappropriation into a federal cause

of action."). In cases where litigants have attempted to plead a claim under federal

law in an attempt to get around Cal-UTSA preemption, federal courts have similarly

---

[2] Plaintiff's dismissal and response to Dkt. No. 294 also concedes that, all along, Plaintiff had based its Cal-UTSA claim on protected speech in Franchise Disclosure Documents (which do not even say what Plaintiff thought they say) and, after Plaintiff realized that its approach is subject to attack (because it was relying on the FDD statements for presenting a trade secret claim while also claiming that the FDD statements are "fraudulent"), Plaintiff now is trying to walk away from and reject the FDDs all together because it now realizes a risk of loss through the FDD evidence. Removing the trade secret claim does just that.

**DEFENDANTS' OBJECTION TO PLAINTIFF'S PORTION OF DKT. NO. 297 AND REQUEST FOR ENTRY
OF DISMISSAL WITH PREJUDICE OF PLAINTIFF'S TRADE SECRET MISAPPROPRIATION CLAIM**

(and under the same logic) rejected those efforts. *See McCandless Grp., LLC v. Coy Collective, Inc.,* No. 221CV02069DOCKES, 2022 WL 2167686, at *5 (C.D. Cal. Feb. 14, 2022) (plaintiff "cannot circumvent CUTSA preemption by asserting a claim under DTSA"); *see also Agile Sourcing v. Dempsey,* 2021 U.S. Dist. LEXIS 204631, at *22 (C.D. Cal. July 15, 2021) (although filing under DTSA, "[t]he fact that Plaintiff has chosen not to plead a violation of CUTSA does not change the law's preemptive effect on its tort claims").

It also is well settled that there is no claim under either the Copyright Act or Lanham Act for allegedly infringing food recipes (which also is divorced from the evidence here as no party ever had any recipes)—which are freely copiable ideas. Recipes are not protectable Copyright expression. *See* 17 U.S.C.A. § 101; *Bikram's Yoga Coll. Of India, L.P. v. Evolation Yoga, LLC*, 803 F.3d 1032, 1040 (9th Cir. 2015); *Kim Seng Co. v. J & A Importers, Inc.*, 810 F.Supp.2d 1046, 1052-55 (C.D. Cal. 2011); *Miracle Blade, LLC. v. Ebrands Commerce Group, LLC.*, 207 F.Supp.2d 1136, 1150-51 (D. Nev. 2002). Nor are they a public "word, term, name, symbol, or device, or any combination thereof," or a "false designation of origin." 15 U.S.C. § 1125(a); *Rachel v. Banana Republic, Inc.*, 831 F.2d 1503, 1506 (9th Cir. 2002) ("'[U]nique arrangements of purely functional features constitute a functional design' not entitled as a matter of law to protection under the Lanham Act."); *Big Island Candies, Inc. v. Cookie Corner*, 269 F.Supp.2d 1236, 1247-48 (D. Hi. 2003) (holding that recipes and food flavorings fail to meet distinctiveness requirement for trade dress protection).

Even the cases Plaintiff cites for the proposition that it can assert a "fallback" claim for "reverse engineering" an alleged trade secret under the Lanham Act establish the opposite and support *Defendants'* position. Namely, *Int'l Ord.* states "the test for false designation of origin [is] similar to that for infringement of a registered trademark under 15 U.S.C. § 1114." *Int'l Ord. of Job's Daughters*, 633

DEFENDANTS' OBJECTION TO PLAINTIFF'S PORTION OF DKT. NO. 297 AND REQUEST FOR ENTRY
OF DISMISSAL WITH PREJUDICE OF PLAINTIFF'S TRADE SECRET MISAPPROPRIATION CLAIM

F.2d at 917. Likewise, *JULL Labs* states "[t]he elements for establishing unfair competition under California Business and Professions Code § 17200 by trademark infringement and common law trademark infringement are essentially the same as those for the Lanham Act." *JUUL Labs, Inc.*, 557 F. Supp. 3d at 1053-54.

In reversing a judgment for false designation of origin, the Ninth Circuit in *Int'l Ord.* explained why neither the Lanham Act nor state law unfair competition claims protect food flavors: "[t]rademark law is concerned only with identification of the maker, sponsor, or endorser of the product so as to avoid confusing consumers. Trademark law does not prevent a person from copying so-called 'functional' features of a product which constitute the actual benefit that the consumer wishes to purchase, as distinguished from an assurance that a particular entity made, sponsored, or endorsed a product." 633 F.2d at 917. Any alleged likelihood of confusion arising from a functional feature and actual benefit a consumer wishes to purchase is not actionable. *Id.* at 917-20.

## A.    Plaintiff's Request for Dismissal of its Trade Secret Claim Should be With Prejudice

Courts routinely dismiss claims with prejudice when the dismissal is sought on the eve of trial after the close of discovery. *See*, *e.g.*, *SPS Tech., LLC v. Briles Aerospace, Inc.*, Case No. CV 18-9536-MWF (ASx), 2021 WL 5779940, at *3-4 (C.D. Cal. Nov. 15, 2021) (dismissing with prejudice at the eve of trial); *Scoma v. City of New York*, 16-CV-6693 (KAM)(SJB) 2021 WL 1784385, at *3, 17 (E.D.N.Y. May 4, 2021) (same); *Bradford Co. v. Afco Mfg.*, Case No. 1:05-CV-449, 2009 WL 10679444, at *3 (S.D. Ohio June 22, 2009) (same); *Evenflo Co., Inc. v. Augustine*, Case No.: 14-CV-1630-AJB-JLB, 2015 WL 7568663, at *5-7 (S.D. Cal. Nov. 24, 2015) (dismissing with prejudice after close of fact discovery). "Rule 41 vests the district court with discretion to dismiss an action at the plaintiff's instance 'upon such terms and conditions as the court deems proper. That broad grant of

**DEFENDANTS' OBJECTION TO PLAINTIFF'S PORTION OF DKT. NO. 297 AND REQUEST FOR ENTRY OF DISMISSAL WITH PREJUDICE OF PLAINTIFF'S TRADE SECRET MISAPPROPRIATION CLAIM**

discretion does not contain a preference for one kind of dismissal or another." *Diamond State Ins. Co. v. Genesis Ins. Co.*, 379 F.App'x 671, 673 (9th Cir. 2010) (affirming dismissal with prejudice despite plaintiff asking for dismissal without prejudice); *Hargis v. Foster*, 312 F.3d 404, 407 (9th Cir. 2002) (affirming dismissal with prejudice despite plaintiff asking for dismissal without specifying without prejudice and later objecting to dismissal with prejudice).

Prior to the eve of trial, "courts generally allow dismissal without prejudice unless the defendant will suffer…prejudice to some legal interest, some legal claim, [or] some legal argument.'" *In re Sizzler Restaurants Intern., Inc.*, 262 B.R. 811, 820 (Bankr. C.D. Cal. 2001). Factors used to determine whether to enter a dismissal with prejudice include "(1) whether the defendants expended efforts or made preparations that would be undermined by granting withdrawal, (2) the plaintiff's delay in prosecuting the action, (3) the adequacy of the plaintiff's explanation for why withdrawal is necessary, and (4) the stage of the litigation at the time the request is made." *Cohen v. Chanin*, Case No. 2:18-cv-06186-MCS-AS, 2020 WL 10758583, at *1 (C.D. Cal. Dec. 21, 2020).

### 1.    Plaintiff Unreasonably Delayed Prosecuting Its Claims

In *Cohen*, the court declined to grant an eve-of-trial request for dismissal without prejudice because the defendant's expenditures were "more than nominal," and because the plaintiffs did not diligently prosecute their case. 2020 WL 10758583. at *2. In spite of efforts to fault the defendant for delays, the plaintiffs had failed their obligation to diligently move the case forward, even in response to defendants' purported gamesmanship. *Id.* Plaintiff has engaged in dilatory conduct similar to the plaintiffs in *Cohen* and this Court has found it was not diligent. Like the plaintiff's "months-long delays in the discovery phase" in *Cohen*, "Plaintiff waited more than five months (until February 14, 2025—a month before the close of fact discovery) to propound its first and only written fact discovery—a single set of

7

**DEFENDANTS' OBJECTION TO PLAINTIFF'S PORTION OF DKT. NO. 297 AND REQUEST FOR ENTRY OF DISMISSAL WITH PREJUDICE OF PLAINTIFF'S TRADE SECRET MISAPPROPRIATION CLAIM**

requests for production." Dkt. No. 294 at 1 n. 1. These facts "provide further support for the Court's finding that Plaintiff had not been diligent." *Id.*

### 2. Dismissal Without Prejudice Would Be Prejudicial

Defendants have worked diligently to prepare for trial, including defense of Plaintiff's trade secret claim. Defendants propounded written discovery on SPAVI's trade secret claim, which was followed by meet and confer efforts and a discovery conference in order to obtain that discovery and a trade secret disclosure which, in Defendants' view, was woefully deficient and did not even identify the "information" claimed to have been misappropriated; neither "seasoning packages" nor the spices inside them are "information," they are "things." Defendants have worked hundreds of hours in preparing for trial, meeting and conferring, preparing jury instructions, verdict forms, exhibits, and other pre-trial filings. *See*, *e.g.*, Dkt. Nos. 229, 230, 231, 233, 237, 243, 244, 245, 246, 247, 257, 258, 260, 265, 266, 271, 282-2, 290, 297. These actions far exceed what is required to warrant dismissal with prejudice and awarding costs and fees in preparing for trial, which should be awarded or Defendants should have the opportunity to recover after trial. *See*, *e.g.*, *Chavez v. Huhtamaki, Inc.*, Case No. 2:21-cv-01073-ODW (JEMx), 2021 WL 4441976, at *2 (C.D. Cal. Sept. 28, 2021) (finding cost of removal, opposing motion to remand, conducting written discovery, conducting one deposition, and filing second removal was sufficient to establish Rule 41 prejudice).

Further, Plaintiff's effort at repackaging its trade secret claim into a false designation of origin claim would only allow Plaintiff to dispense with the legal requirements to prove secrecy and wrongdoing. Plaintiff plainly admitted the elements between these two claims substantially differ. *See* Dkt. No. 282-2 at 23-35 and 56-63. If dismissed without prejudice, Plaintiff will be able to avoid proving necessary elements under Cal-UTSA, such as the existence of a trade secret and use of reasonable efforts to maintain secrecy, that are not required under its false

**DEFENDANTS' OBJECTION TO PLAINTIFF'S PORTION OF DKT. NO. 297 AND REQUEST FOR ENTRY OF DISMISSAL WITH PREJUDICE OF PLAINTIFF'S TRADE SECRET MISAPPROPRIATION CLAIM**

designation of origin claim. At the same time, Plaintiff will exploit its trade secret claim effectively tried under a different standard. Plaintiff should not be allowed to benefit from a dismissal without prejudice that would put Defendants in an impossible position of having to still vindicate themselves, but without jury instructions on the elements of a trade secret misappropriation claim.

### 3. Plaintiff Knew It Could Not Prevail Under Cal-UTSA, Fully Justifying Dismissal with Prejudice

Defendants had the right under Rule 50(a) or after trial to prevail and seek fees under Cal-UTSA. That right is now being prejudiced for the reasons below.

### a. The Non-Existence of a Disclosed Trade Secret

Plaintiff's burden was to "identify the trade secrets and carry the burden of showing they exist." *Imax Corp. v. Cinema Techs., Inc.*, 152 F.3d 1161, 1164 (9th Cir. 1998) (citing *MAI Sys. Corp. v. Peak Computer, Inc.*, 991 F.2d 511, 522 (9th Cir. 1993)). Trade secrets comprise "information, including a formula, pattern, compilation, program, device, method, technique, or process." Cal. Civ. Code § 3426.1(d). To be actionable, they must be identified with reasonable particularity to separate them "'from matters of general knowledge in the trade or of special knowledge of those persons skilled in the trade.'" *Imax Corp.*, 152 F.3d at 1164 (quoting *Universal Analytics v. MacNeal-Schwendler Corp.*, 707 F.Supp. 1170, 1177 (C.D.Cal.1989), *aff'd*, 914 F.2d 1256 (9th Cir.1990)).

No "trade secret" was ever disclosed. The only alleged "secret" Plaintiff has ever identified were "items" (the seasonings) that acquired from third party Ferna Corporation ("Ferna") and resold at a profit. Food flavors, resold in seasoning packages, are not protectable trade secrets. *See Hutchison v. KFC Corp.*, 883 F. Supp. 517, 520 (D. Nev. 1993), aff'd, 51 F.3d 280, 520 (9th Cir. 1995) ("[T]he desired flavoring" for fried chicken was not protectible trade secret); *Buffets, Inc. v. Klinke*, 73 F.3d 965, 968 (9th Cir. 1996) (holding under Washington law that flavors

9

**DEFENDANTS' OBJECTION TO PLAINTIFF'S PORTION OF DKT. NO. 297 AND REQUEST FOR ENTRY OF DISMISSAL WITH PREJUDICE OF PLAINTIFF'S TRADE SECRET MISAPPROPRIATION CLAIM**

of barbecue chicken and macaroni were not entitled to trade secret protection).[3] Nor is creating new seasonings based on reverse engineering actionable. *See Chicago Lock Co. v. Fanberg*, 676 F.2d 400, 405 (9th Cir. 1982) ("A lock purchaser's own reverse-engineering of his own lock, and subsequent publication of the serial number-key code correlation, is an example of the independent invention and reverse engineering expressly allowed by trade secret doctrine."); *Yeiser Rsch. & Dev. LLC v. Teknor Apex Co.*, 281 F.Supp. 3d 1021 (S.D. Cal. 2017) (Ability to ascertain information by reverse engineering "defeats the existence of a trade secret."); *Sinclair v. Aquarius Elecs., Inc.*, 42 Cal. App. 3d 216, 226 (1974) ("It is well recognized that a trade secret does not offer protection against discovery by fair and honest means such as by independent invention, accidental disclosure or by so-called reverse engineering, that is, starting with the known product and working backward to divine the process.").

Courts routinely grant summary judgment against trade secret claims for failure to sufficiently identify a trade secret. *E.g.*, *Imax Corp.*, 152 F.3d at 1164 (affirming summary judgment because plaintiff "failed to carry its burden of identifying for the court exactly what it claimed as trade secrets"); *accord Agency Solutions.Com, LLC v. TriZetto Grp., Inc.*, 819 F. Supp. 2d 1001, 1017 (E.D. Cal. 2011) ("Proprietary ways of doing the same thing that others in the same field do are not trade secrets"); *CTC Glob. Corp. v. Huang*, No. SACV 1702202AGKESX, 2019 WL 4148184, at *5 (C.D. Cal. July 29, 2019) ("CTC's broad and conclusory allegations regarding its pretension and encapsulation trade secrets are fatally nonspecific…CTC acknowledges that [they] were methods 'known in the industry,'

---

[3] Even in cases, *unlike this case*, involving the actual improper disclosure of alleged trade secret food recipes, recipes whose origins are well known or easily duplicated have been found not trade secret. *See Buffets, Inc.*, 73 F.3d at 968 (holding that disclosed recipes were not entitled to trade secret protection because, although more detailed than those of competitors, they "had their origins in well-known American cuisine" and could be easily discovered by others).

10

**DEFENDANTS' OBJECTION TO PLAINTIFF'S PORTION OF DKT. NO. 297 AND REQUEST FOR ENTRY OF DISMISSAL WITH PREJUDICE OF PLAINTIFF'S TRADE SECRET MISAPPROPRIATION CLAIM**

and it hasn't adequately distinguished between its allegedly protected methods and those that were publicly available.").

**b.**   **Prior and Subsequent Public Disclosure of the Alleged Trade Secrets**

Plaintiff could not meet its burden of proof under Cal-UTSA for a second reason: The alleged trade secrets freely fell into the public domain long before any dispute arose, including before Plaintiff's alleged transaction with Cinco, and continue to be in the public domain.

Under California law, once information is released to the public, such as product labeling of ingredients and the contents of seasoning packages, it cannot later become a trade secret. *See In re Providian Credit Card Cases*, 96 Cal. App. 4th 292, 304 (2002) ("Public disclosure, that is the absence of secrecy, is fatal to the existence of a trade secret."); *Morlife, Inc. v. Perry*, 56 Cal. App. 4th 1514, 1523 (1997) (to qualify as a trade secret, the information shall not be "generally known to the public"). "'If an individual discloses his trade secret to others who are under no obligation to protect the confidentiality of the information, or otherwise publicly discloses the secret, his property right is extinguished.'" *In re Providian Credit Card Cases*, 96 Cal. App. 4th at 304 (quoting *Ruckelshaus v. Monsanto Co.*, 467 U.S. 986, 1002 (1984)). Public disclosure extinguishes any protectable trade secret status. *Attia v. Google LLC*, 983 F.3d 420, 425-426 (9th Cir. 2020).

A basic Google search for "Potato Corner seasonings" alone leads to a popular e-commerce website in the Philippines selling the seasonings as the "second result" following Potato Corner's own website: https://pasabuystore.com/products/potato-corner-powder-seasoning-220g. A click of "Google Images" on the same search leads to an array of websites selling the packages (with Ferna's name, the product ingredients, nutritional facts, *etc.* displayed everywhere). Ferna also sells its own product all over the internet, including on "Lazada" (the "Amazon of Southeast

**DEFENDANTS' OBJECTION TO PLAINTIFF'S PORTION OF DKT. NO. 297 AND REQUEST FOR ENTRY OF DISMISSAL WITH PREJUDICE OF PLAINTIFF'S TRADE SECRET MISAPPROPRIATION CLAIM**

Asia"): https://www.lazada.com.ph/tag/ferna-powder-for-fries-potato-corner/.[4] The

examples are plenty. *See* Dkt. No. 48-10; Trial Exh. No. 1158; *see also*

https://www.ebay.com/itm/224228725145, https://nggsupply.com/products/copy-of-

potato-corner-cheese-seasoning-powder-220grams, *etc.*

There also are public web pages, such as Reddit, and apps like TikTok, where

consumers have determined the recipes themselves. One Redditor posted: "I know

they sell the seasoning online but I'm sure I would have most of the seasonings at

home and it'd be more convenient for me. Cousin used to work there and only

remember there being a ton of msg?" In response, another Redditor noted that the

Chili BBQ powder is "1 tsp Larry's French fry seasoning 1 tsp MSG 1 tablespoon

sugar 1/2 tsp cayenne pepper 1/2 tsp black pepper." Reddit link.

### c.    PCJV USA, LLC Owns Its Own Intellectual Property

Plaintiff could not meet its burden of proof on its trade secret claim for a third

reason: Plaintiff did not produce or include on the Exhibit List any alleged trade

secret license covering Plaintiff's commercial sales of Ferna's supplied seasoning

packages, and therefore Plaintiff could not establish the essential element of

"ownership" under Cal-UTSA. To prove the essential element of trade secret

ownership, Plaintiff had to establish with documentary evidence title to the alleged

trade secrets or a right to sue under a trade secret license. *See BladeRoom Grp. Ltd.

v. Facebook, Inc.*, 219 F. Supp. 3d 984, 990 (N.D. Cal. 2017) (trade secret licensee

may assert claim under Cal-UTSA when license obligates licensee to "maintain the

---

[4] Sometime after Plaintiff filed this lawsuit, Ferna began selling its seasonings
online in non-descript packages, such as the ones shown on Lazada.com's website
and on its own FernaUSA.com website, but also sold on Lazada.com and elsewhere
the seasonings bearing Potato Corner packaging. They are the same exact thing. It is
clear to Defendants that as litigation maneuver, Plaintiff attempted but failed to
cloak these decades-long publicly available seasonings into the "trade secret"
category. It bears noting that Potato Corner's roots in 1992 was born out of Ricky
Montelibano's (one of the Cinco Group's members, and Magsaysay's brother-in-
law) flavored popcorn business where he, too, purchased publicly available
seasonings and sold powdered popcorn.

**DEFENDANTS' OBJECTION TO PLAINTIFF'S PORTION OF DKT. NO. 297 AND REQUEST FOR ENTRY
OF DISMISSAL WITH PREJUDICE OF PLAINTIFF'S TRADE SECRET MISAPPROPRIATION CLAIM**

confidentiality of the secrets" and implement "mechanisms to limit the public disclosure of confidential information."); *Sinclair v. Aquarius Electronics, Inc.*, 42 Cal.App.3d 216, 225-28 (1974) (trade secret licensing involves sharing sensitive, undisclosed information). Secondary evidence is insufficient to establish ownership or the existence of a trade-secret license. *See Hanks v. Anderson*, No. 2:19-CV-00999-DBB-JCB, 2024 WL 4092949, at *10 (D. Utah Sept. 5, 2024) (finding "a lack of evidence in the record" to "meet[] the ownership requirement" as "confidentiality provision" in referenced membership interest purchase agreement "[did] not mention any alleged trade secrets or their ownership"). Plaintiff's failure to identify or produce any agreements demonstrating an ownership of the alleged trade secrets shows (at best) Plaintiff does not own the trade secrets and (most certainly) Plaintiff brought an objectively specious claim in bad faith.

### d.    Reasonable Steps to Preserve Secrecy Were Not Taken

Plaintiff also could not make a *prima facie* case that Plaintiff, Cinco, and their suppliers ever undertook reasonable steps to keep seasoning packages secret. Trade secret protection is lost if reasonable steps are not taken to protect secrecy. *See Buffets, Inc.*, 73 F.3d at 969 (holding that "job manuals were not trade secrets as they were not the subject of reasonable efforts to maintain their secrecy."); *SkinMedica, Inc. v. Histogen Inc.*, 869 F. Supp. 2d 1176, 1193 (S.D. Cal. 2012) ("[I]nformation is secret where it is not generally known, and where the owner has taken "efforts that are reasonable under the circumstances to maintain its secrecy.").

In this case, nobody in the supply chain treated, or took reasonable steps to treat, commercially sold seasoning packages as trade secret. As already shown, the original supplier (Ferna) did not take reasonable steps to allegedly maintain secrecy of publicly sold seasonings, nor did Cinco take reasonable steps to allegedly maintain secrecy of publicly sold seasonings. Plaintiff did not take reasonable steps to allegedly maintain secrecy of publicly sold seasonings either.

For example, is undisputed that after March 2022, Plaintiff did not enter into any confidentiality agreement with Defendants, while selling the seasonings to Defendants for *two and a half years*. After Plaintiff denied assuming any contractual or fiduciary obligations to or from Defendants, Plaintiff freely sold and delivered seasoning packages to defendant PCI Trading, LLC all the way through July 2024, even after it allegedly "terminated" an "implied" license on May 31, 2024. Once those goods properly changed hands, there was no restriction on the use of those goods under the first sale doctrine applicable under Cal-UTSA and the Lanham Act. *See* Cal. Civ. Code § 3426.1(a); *Bluetooth SIG Inc. v. FCA US LLC*, 30 F.4th 870, 872 (9th Cir. 2022) (recognizing it is well settled that the "right of a producer to control the distribution of its trademarked product does not extend beyond the first sale of the product…."). Plaintiff's affiliate also accepted a second purchase order in July 2024 well after Plaintiff allegedly "terminated" an "implied" license before Plaintiff reneged on the purchase order in September 2024, as yet another bad-faith litigation maneuver. *See* Dkt. No. 37. Plaintiff's affiliate (Highfive Corporation), whose name appears on the seasoning packages as the distributor of Ferna's seasonings, was among the many signatory releasors in the 2024 Settlement and Release Agreement executed by the parties. *See* Trial Exh. 1172.

## B. Plaintiff Has Waived Any Unpled Claim for False Designation of Origin Based on Trade Dress or "Reverse Engineering"

There also is no basis to proceed under the Lanham Act for "reverse engineering" or trade dress infringement. There is no trade dress claim in this case. No trade dress claim was pled or included in Plaintiff's Memorandum of Contentions of Law and Fact (Dkt. No. 199), Trial Brief (Dkt. No. 255), portion of the Final Pretrial Conference Order (Dkt. No. 244). A trade dress infringement claim must allege specific facts for each element of the alleged trade dress, including that the trade dress is nonfunctional. *R and A Synergy LLC v. Spanx, Inc.*,

Case No. 2:17-cv-09147-SCW-AS, 2019 U.S. Dist. LEXIS 168266, at *9-10 (C.D. Cal. May 1, 2019). Further, a trade dress infringement claim not only must assert that the trade dress is distinctive, but with respect to an alleged design or packaging, also plead and prove secondary meaning of the alleged trade dress. *Id.* at *21-25. Plaintiff has done none of these things. And none of these elements were identified as "issues" in the proposed Final Pretrial Conference order.

Similarly, there is no false designation of origin claim based on "reverse engineering" pled or included in Plaintiff's Memorandum of Contentions of Law and Fact (Dkt. No. 199), Trial Brief (Dkt. No. 255), portion of the Final Pretrial Conference Order (Dkt. No. 244), and for good reason. Even if Plaintiff had pled and prosecuted a trade dress claim, it would neither (a) involve whether Defendants successfully or unsuccessfully copied functional and publicly available spices or (b) survive an adverse ruling on Plaintiff's trademark claims, which will resolve who has superior claims to own, control or use the goodwill also symbolized by any trade dress promoting Potato Corner USA's restaurants.

## IV.   **CONCLUSION**

For the foregoing reasons, Defendants respectfully object and request that Plaintiff's claim for misappropriation of trade secrets be dismissed with prejudice and Plaintiff be precluded from repackaging its dismissed claim for "reverse engineering" publicly available seasoning packages as wrongful under the Lanham Act. Defendants further request recovery of their fees and costs subject to further briefing either under Rule 41 or under Cal-UTSA, or both.

**DEFENDANTS' OBJECTION TO PLAINTIFF'S PORTION OF DKT. NO. 297 AND REQUEST FOR ENTRY OF DISMISSAL WITH PREJUDICE OF PLAINTIFF'S TRADE SECRET MISAPPROPRIATION CLAIM**

DATED: September 12, 2025  **BLANK ROME LLP**

By: */s/ Todd M. Malynn*
_____
Todd M. Malynn
Arash Beral
Jamison T. Gilmore
Attorneys for Defendants, Counterclaimants, and Third Party Plaintiffs PCJV USA, LLC, PCI TRADING LLC, POTATO CORNER, LA GROUP, LLC, GK CAPITAL GROUP, LLC, NKM CAPITAL GROUP, LLC and GUY KOREN, and Defendants J & K AMERICANA, LLC, J&K LAKEWOOD, LLC, J&K OAKRIDGE, LLC, J&K VALLEY FAIR, LLC, J & K ONTARIO, LLC, J&K PC TRUCKS, LLC, HLK MILPITAS, LLC, and GK CERRITOS, LLC

**DEFENDANTS' OBJECTION TO PLAINTIFF'S PORTION OF DKT. NO. 297 AND REQUEST FOR ENTRY OF DISMISSAL WITH PREJUDICE OF PLAINTIFF'S TRADE SECRET MISAPPROPRIATION CLAIM**

## <u>CERTIFICATE OF COMPLIANCE</u>

The undersigned counsel of record for PCJV USA Parties, certify that this brief contains 4,973 words, which complies with the word limit of Local Rule 11-6.1.

DATED:  September 12, 2025

*/s/ Todd M. Malynn*
TODD M. MALYNN

**DEFENDANTS' OBJECTION TO PLAINTIFF'S PORTION OF DKT. NO. 297 AND REQUEST FOR ENTRY
OF DISMISSAL WITH PREJUDICE OF PLAINTIFF'S TRADE SECRET MISAPPROPRIATION CLAIM**

## <u>CERTIFICATE OF SERVICE</u>

The undersigned certifies that on September 12, 2025, the foregoing document was electronically filed with the Clerk of the Court for the United States District Court, Central District of California, using the Court's Electronic Case Filing (ECF) system.  I further certify that all participants in the case are registered CM/ECF users and that service will be accomplished by the CM/ECF system.

I certify under penalty of perjury that the foregoing is true and correct. Executed on September 12, 2025.

By:   /s/AJ Cruickshank

**DEFENDANTS' OBJECTION TO PLAINTIFF'S PORTION OF DKT. NO. 297 AND REQUEST FOR ENTRY OF DISMISSAL WITH PREJUDICE OF PLAINTIFF'S TRADE SECRET MISAPPROPRIATION CLAIM**