UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| SHAKEY'S PIZZA ASIA VENTURES, INC.,<br><br>    Plaintiff,<br><br>v.<br><br>PCJV USA, LLC et al.,<br><br>    Defendants. | Case No. 2:24-cv-04546-SB-AGR<br><br>ORDER PERMITTING EXPEDITED SUMMARY-JUDGMENT BRIEFING AND ADDRESSING OBJECTION TO DISMISSAL OF TRADE-SECRET CLAIM |

    This order addresses: (1) trial management and (2) Defendants' objection to the voluntary dismissal without prejudice of Plaintiff's trade-secret claim.

I.

    The Court continues its attempts to prepare this case for a jury trial—a task that remains challenging because of the major deficiencies in the parties' filings, which have been addressed at length elsewhere. It appears that both sides' claims will depend heavily on questions of contract interpretation that the Court must resolve. The core dispute over Plaintiff's trademark-based claims is whether one or more agreements (the existence of which Plaintiff disputes) between Defendants and Cinco or Plaintiff either rendered Plaintiff's acquisition of the registered marks from Cinco ineffective or preserved for Defendants a perpetual license to use the marks. Many of Defendants' counterclaims likewise depend on the Court's interpretation of their contracts as creating rights and obligations with which they contend that Plaintiff has interfered. Instructing the jury on the parties' claims without first interpreting the relevant contracts is a recipe for both confusion and inefficiency, with the potential for a post-trial motions practice that could render the jury's findings unnecessary.

    The Court has repeatedly prompted the parties to clarify and narrow their claims, with only limited success. After the parties suggested that judicial resolution of some legal issues would be helpful, the Court explained that although it was reluctant to delay trial further, "it appears possible that allowing time for the

1

parties to file concise, expedited briefing on discrete legal issues may be in the interest of judicial economy, given the large gap between the parties' positions and the work that remains to be done to prepare this case for trial." Dkt. No. 300. The Court instructed the parties to file a joint report identifying the issues on which they believe a ruling would be most helpful. *Id*. In their resulting report, the parties "agreed that narrowing the issues in this case would be beneficial but could not come to an agreement as to what issues would benefit from the Court's intervention." Dkt. No. 301 at 2. Plaintiff suggested five topics on which it would like a ruling—three of which involved clarifying contractual duties—and requested a total of 35 pages of briefing per side.[1] Defendants maintain that individual contracts cannot be assessed in isolation and that the Court's inquiry "must involve all agreements of the parties, construed together, in order to ascertain their objective, mutual intent." *Id*. at 9. They propose a single concurrent filing of one brief per side, limited to 30 pages, with 15-page replies.

In essence, what the parties have proposed is not narrow briefing on a few discrete legal issues but rather an untimely summary-judgment motion. As the Court has previously made clear, the parties could have avoided much of the delay and confusion the Court now faces by moving for summary judgment within the time allowed. Nevertheless, given (1) the unique circumstances of this case, which appears to depend largely on questions of law; (2) the unavailability of key witnesses for trial before October, making some delay inevitable; (3) the persistent inability of the parties to narrow the issues without judicial intervention; and (4) the practical difficulties of instructing the jury without resolving some of the fundamental legal disputes, the Court concludes that the interests of justice would be best served by allowing the parties to file expedited cross-motions for summary judgment or summary adjudication on the limited issues presented in their joint report. Provided that the parties file reasonable, focused briefs that facilitate an expedited ruling, the Court will endeavor to provide one.

---

[1] The "issue" Plaintiff identified as most important is not a single discrete dispute but rather a combination of the distinct doctrines of preclusion, estoppel, and law of the case. Plaintiff "anticipate[s] that, for each of the above three preclusion principles (issue preclusion, judicial estoppel, law of the case), the Parties will identify any allegation or claim or fact the other Parties will allege that are precluded, so that this Court can apply the principle to any challenged allegation." Dkt. No. 301 at 3. This "issue" therefore has the potential to encompass numerous distinct disputes. The Court expects the parties to focus on only material disputes.

To minimize delay and avoid the problems that have arisen nearly every time the parties in this case have been ordered to cooperate, the Court will dispense with its ordinary procedures for joint summary-judgment motions. By September 24, 2025, each side may file a summary-judgment motion of no more than 20 pages, limited to the first four issues identified by Plaintiff and the issue identified by Defendants in the joint report at Dkt. No. 301.[2] Each motion shall be accompanied by an appendix of evidence containing all the exhibits on which it relies. Exhibits shall be identified by the exhibit number they have been assigned for trial (to correspond with the exhibits that have already been provided to the Court in electronic form but have not yet been filed on the docket). The Court expects the parties to exercise judgment in focusing on the most relevant evidence, recognizing that requesting the Court to examine many hundreds of pages of exhibits will negate the purpose of an expedited motion.

Each party may file an opposition brief of no more than 20 pages no later than 8:00 a.m. on September 30. Any evidentiary objections shall be included in the opposition brief and shall count toward the 20 pages. Each party may file a reply brief of no more than seven pages (including responses to evidentiary objections) no later than October 1.[3]

If the parties elect to file such motions, and if the motions are reasonable and focused to enable an expedited ruling, the Court will continue trial until after it rules on the motions (which it expects to prioritize), to the extent claims remain for the jury. If both sides elect not to file summary-judgment motions, they shall notify the Court promptly of their decision, and the Court will continue in its

---

[2] The fifth issue identified by Plaintiff, relating to litigation privilege, appears to go to the admissibility of evidence and not to the viability of claims. Plaintiff has also identified it as the lowest priority among the five issues on which it seeks a ruling. The Court therefore intends to focus its limited resources on the more important questions that go to the heart of the parties' dispute.

[3] The Court has previously admonished counsel for their unprofessional and unnecessarily heated rhetoric. Recent filings include multiple examples of such unhelpful comments. *See, e.g.*, Dkt. No. 304 at 4 (accusing Defendants of "hoping to further prejudice the Court against Plaintiff and its counsel" by misstating facts and Plaintiff's positions "as has become standard practice"). Counsel are cautioned that such commentary about opposing counsel's intentions are both unprofessional and counterproductive. Both sides would be best served by briefs that stick to objective facts supported by the exhibits.

current approach—trailing the trial as long as necessary while it endeavors to resolve the parties' myriad disputes and formulate instructions and a verdict form that will adequately present the issues to the jury.

In the meantime, Court has trailed the jury trial to September 23. The Court grants Defendants' request for a religious accommodation and further trails the trial to September 26, 2025 at 8:30 a.m. in Courtroom 6C. Only counsel need appear, and the parties need not provide their "day one" submissions. The Court does not expect witnesses to be required before September 29.

II.

After the Court ordered the parties to clarify certain claims, they filed a joint report in which Plaintiff stated its intention to dismiss without prejudice its claim for trade-secret misappropriation. Dkt. No. 297 at 6. The Court therefore dismissed the claim without prejudice. Dkt. No. 300. Defendants later filed a 24-page objection, seeking dismissal with prejudice instead. Dkt. No. 302. Plaintiff filed a response to the objection, asking that it be denied outright or else that Plaintiff be allowed time for a fuller response. Dkt. No. 304.

Defendants' principal concern is that Plaintiff will attempt to raise its trade-secret allegations under the Lanham Act, given Plaintiff's assertion that a claim for false designation of origin under 15 U.S.C. § 1125(a) can encompass proprietary information and trade secrets. The Court need not decide whether § 1125(a) *could* include claims for reverse engineering and theft of trade secrets, because Plaintiff's § 1125(a) claim in Count 3 of the First Amended Complaint is limited to claims based on Plaintiff's "trademarks and service marks." Dkt. No. 65 ¶¶ 115–19; *see also id.* ¶¶ 137–42 (alleging contributory liability under § 1125(a) based on use of Plaintiff's "trademarks and service marks"). Nor did Plaintiff (1) provide notice in the proposed pretrial conference order that it sought to expand the scope of its Lanham Act claims to recover for misappropriation of trade secrets or reverse engineering or (2) propose any jury instructions addressing trade secrets or reverse engineering in connection with its Lanham Act claims. Dkt. No. 244 at 6; Dkt. No. 260.

Plaintiff suggests that Defendants have known about the inclusion of reverse engineering of seasonings in its § 1125(a) claim since it filed the "Claims to be Tried" document on August 12. That document, which spans 164 pages, contains one reference to reverse engineering in its recitation of the relevant facts of the § 1125(a) claim. Dkt. No. 258 at 21 ("By continuing to operate using the same

4

federal trademarks, menu layouts, and color schemes, and promot[ing] its new brand as having the 'same taste' after having reverse engineered the flavorings and then used that, plus the menu that is unchanged – same colors, fonts, pictures, layout, even same product names – and all of this is likely to cause consumer confusion regarding the source or origin of the goods or services, as customers may believe the new business is still affiliated with or originates from the original brand."). In the context of the other filings in this case, and particularly in the absence of a request to amend the pleading, the Court construes Plaintiff's statement as a description of the facts relevant to its claim that Defendants' use of Plaintiff's trademarks and service marks constitutes a false designation of origin, rather than an implicit request for leave to amend.[4]

In approving Plaintiff's voluntary dismissal of its trade-secret claim to narrow the scope of trial, the Court did not permit the expansion of any of Plaintiff's other claims. Thus, Plaintiff no longer has a claim alleging misappropriation of trade secrets. On the other hand, the Court's approval of the voluntary dismissal is not a ruling that evidence of reverse engineering or trade-secret misappropriation is irrelevant to the remaining claims. No evidentiary objection on that basis is properly before the Court.

With that clarification, Defendants' objection is overruled. Defendants have not shown a legal basis for the Court to summarily convert a voluntary dismissal without prejudice into a dismissal with prejudice, nor have they suggested that Plaintiff should be allowed to withdraw its dismissal and proceed to trial on the trade-secret claim. The trade-secret claim appears distinct from the core dispute in this case—trademark ownership. Any potential prejudice to Defendants will arise only if Plaintiff later seeks to pursue the dismissed claim in a new lawsuit and can be addressed at that time.

Date: September 18, 2025

_____
Stanley Blumenfeld, Jr.
United States District Judge

---

[4] Moreover, granting leave to amend the complaint to expand the scope of the § 1125(a) claim would nullify the benefit of Plaintiff's dismissal of its trade-secret claim, in addition to delaying trial further to allow Defendants to respond to the amended complaint.