1

**BLANK ROME LLP**
Todd M. Malynn (SBN 181595)
todd.malynn@blankrome.com
Arash Beral (SBN 245219)
arash.beral@blankrome.com
Jamison T. Gilmore (SBN 322100)
jamison.gilmore@blankrome.com
2029 Century Park East | 6th Floor
Los Angeles, CA 90067
Telephone:   424.239.3400
Facsimile:    424.239.3434

Attorneys for Defendants, Counterclaimants, and
Third Party Plaintiffs PCJV USA, LLC, PCI
TRADING LLC, POTATO CORNER, LA
GROUP, LLC, GK CAPITAL GROUP, LLC,
NKM CAPITAL GROUP, LLC and GUY
KOREN, and Defendants J & K AMERICANA,
LLC, J&K LAKEWOOD, LLC, J&K
OAKRIDGE, LLC, J&K VALLEY FAIR, LLC, J
& K ONTARIO, LLC, J&K PC TRUCKS, LLC,
HLK MILPITAS, LLC, and GK CERRITOS, LLC

## UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| SHAKEY'S PIZZA ASIA VENTURES, INC, a Philippines corporation,<br><br>Plaintiff,<br><br>vs.<br><br>PCJV USA, LLC, a Delaware limited liability company; PCI TRADING , LLC, a Delaware limited liability company; GUY KOREN, an individual; POTATO CORNER LA GROUP, LLC, a California limited liability company; NKM CAPITAL GROUP, LLC, a California limited liability company; J & K AMERICANA, LLC, a California limited liability company; J&K LAKEWOOD, LLC, a California limited liability company; J&K VALLEY FAIR, LLC, a California limited liability company; J & K ONTARIO, LLC, a California limited liability company; HLK MILPITAS, LLC, a California, limited liability company; GK CERRITOS, LLC, a California, limited liability company;  J&K PC TRUCKS, LLC, a California limited liability company; and, GK CAPITAL GROUP, LLC, a California | Case No. 2:24-CV-04546-SB(AGRx)<br><br>*Hon. Stanley Blumenfeld, Jr.*<br><br>**DEFENDANTS' MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF THEIR SUMMARY JUDGMENT MOTION IN ACCORDANCE WITH DKT. NO. 308**<br><br>Complaint Filed:   May 31, 2024<br>Trial Date:            September 26, 2025 |

limited liability company and DOES 1 through 100, inclusive,

Defendants.

_____

PCJV USA, LLC, a Delaware limited liability company; PCI TRADING LLC, a Delaware limited liability company; POTATO CORNER LA GROUP LLC, a California limited liability company; GK CAPITAL GROUP, LLC, a California limited liability company; NKM CAPITAL GROUP LLC, a California limited liability company; and GUY KOREN, an individual,

Counter-Claimants,

v.

SHAKEY'S PIZZA ASIA VENTURES, INC, a Philippines corporation,

Counter Defendant.

_____

PCJV USA, LLC, a Delaware limited liability company; PCI TRADING LLC, a Delaware limited liability company; POTATO CORNER LA GROUP LLC, a California limited liability company; GK CAPITAL GROUP, LLC, a California limited liability company; NKM CAPITAL GROUP LLC, a California limited liability company; and GUY KOREN, an individual,

Third Party Plaintiffs,

v.

PC INTERNATIONAL PTE LTD., a Singapore business entity; SPAVI INTERNATIONAL USA, INC., a California corporation; CINCO CORPORATION, a Philippines corporation; and ROES 1 through 10, inclusive,

Third Party Defendants.

_____

# <u>TABLE OF CONTENTS</u>

I.    INTRODUCTION ..................................................................................1

II.   STATEMENT OF UNDISPUTED FACTS ............................................1

III.  LEGAL STANDARD ...........................................................................5

IV.  ARGUMENT.........................................................................................6

     A.    Plaintiff Cannot Prove the "Without the Consent of" Element. ......6

          1.    The Record Confirms Defendants' Authorization to Use. ....6

               a.    The Stipulations of Fact are Dispositive. ...................6

               b.    PCJV's Structure and History Negates "Without Consent." ...................................................................7

               c.    Plaintiff's Own Conduct Confirms Authorization. .....7

               d.    Cinco's Sworn Statements Confirm Authorization.....8

          2.    The Agreements Confirm Indefinite, Non-Revocable Rights. ..................................................................................9

               a.    Plaintiff's "No License" Theory is Belied by the Record.........................................................................10

               b.    California Law Requires Holistic, Harmonious, Intent-Driven Interpretation. ......................................11

     B.    Plaintiff Cannot Prove Trademark Ownership by Assignment. ....16

     C.    Plaintiff is Bound by or Estopped From Challenging the Settlement.......................................................................................18

V.   CONCLUSION ...................................................................................20

**DEFENDANTS' MEMORANDUM IN SUPPORT OF MSJ**

# TABLE OF AUTHORITIES

**Cases**

*Adams v. Johns-Manville Corp.*,
 876 F.2d 702 (9th Cir. 2015) ................................................................. 19

*Ahl-E-Bait Media, Inc. v. Jadoo TV, Inc.*,
 CASE NO. CV 12-05307 (MMM (PJWx), 2013 WL 11324312
 (C.D. Cal. Apr. 16, 2013) .................................................................... 15

*Ariel Preferred Retail Group, LLC v. CWCapital Asset Management*,
 883 F. Supp. 2d 797 (E.D. Mo. 2012) ................................................. 17

*Ballard v. MacCallum*,
 15 Cal. 2d 440 (1940) ......................................................................... 13

*Christian Legal Soc'y Chapter v. Martinez*,
 561, U.S. 661 (2010) ............................................................................. 6

*Consolidated Theatres, Inc. v. Theatrical Stage Emps.*,
 69 Cal.2d 713 (1968) .......................................................................... 13

*Cornell University v. Illumina, Inc.*,
 C.A. No. 10-433-LPS-MPT, 2014 WL 12601516 (D. Del. Sept. 29, 2014) ......... 17

*Deutsch v. Phillips Petroleum Co.*,
 56 Cal. App. 3d 586, 592 (1976) ......................................................... 13

*F.B.T. Productions, LLC v. Aftermath Records*,
 621 F.3d 958 (9th Cir. 2010) .............................................................. 11

*Federal Treasury Enterprise Sojuzplodoimport v. Spirits Intern. N.V.*,
 623 F.3d 61 (2d Cir. 2010) .................................................................. 16

*Glow Indus., Inc. v. Lopez*,
 273 F. Supp. 2d 1095 (C.D. Cal. 2003) ............................................... 16

*Hallmark Hardwoods, Inv. v. Omni Wood Product, LLC*,
 CV 10-05896 SJO (JCGx), 2011 WL 13176098 (C.D. Cal. 2011) ........... 16

*ICEE Distribs., Inc. v. J&J Snack Foods Corp.*,
 325 F.3d 586 (5th Cir. 2003) ................................................... 14, 15, 16

*Kim v. Servosnax, Inc.*,
 10 Cal. App. 4th 1346 (1992) ........................................................ 7, 14

*Kiva Health Brands LLC v. Kiva Brands Inc.*,
 402 F. Supp. 3d 877 (N.D. Cal. 2019) ................................................ 13

*Magnolia Square Homeowners Assn. v. Safeco Ins. Co.*,
 221 Cal.App.3d 1049 (1990) ................................................................ 8

*Milenbach v. Comm'r Internal Revenue*,
 318 F. 3d 924 (9th Cir. 2003) ............................................................. 13

*Mister Donut of America, Inc. v. Mr. Donut, Inc.*,
 418 F.2d 838 (9th Cir. 1969) .............................................................. 16

*N.A.A.C.P. v. N.A.A.C.P. Legal Defense & Education Fund, Inc.*,
 753 F.2d 131 (D.C. Cir. 1985) .............................................................. 7

*Najor v. Wells Fargo Bank, N.A.*,
 Case No.: 3:19-cv-00015-H-AGS, 2019 WL 1858502 (S.D. Cal. Apr. 25, 2019) 15

*NcNeece v. Wood*,
  204 Cal. 280 (1928) .................................................................................... 13

*Pacific Gas & Electric Co. v. G.W. Thomas Drayage & Rigging Co.*,
  69 Cal.2d 33 (1968) .................................................................................... 11

*Pereda v. Atos Jiu Jitsu LLC*,
  85 Cal.App.5th 759 (2022) ............................................................................ 7

*Russell Road Food and Beverage, LLC v. Spencer*,
  829 F.3d 1152 (9th Cir. 2016) ...................................................................... 14

*S & R Corp. v. Jiffy Lube Int'l, Inc.*,
  968 F.2d 371, 375 (3d Cir. 1992) .................................................................... 6

*Serpa v. Jolly King Restaurants, Inc.*,
  62 F.R.D. 626 (S.D. Cal. 1974) .................................................................... 15

*State of California v. Cont'l Ins. Co.*,
  55 Cal. 4th 186 (2012) ................................................................................ 11

*Sun–Maid Raisin Growers of Cal. v. Cal. Packing Corp.*,
  273 F.2d 282 (9th Cir. 1959) ................................................................... 14, 15

*Thomson v. Hodgson*, --- F.4th ---,
  2025 WL 2406526 (9th Cir. Aug. 20, 2025) .................................................. 13

*U.S. v. Houston*,
  547 F.2d 104 (9th Cir. 1976) .......................................................................... 6

*Universal Sales Corp. v. Cal. Press Mfg. Co.*,
  20 Cal. 2d 751 (1942) ................................................................................. 13

*Waukesha Hygeia Mineral Springs Co. v. Hygeia Sparkling Distilled Water Co.*,
  63 F. 438 (7th Cir. 1894) ............................................................................. 14

*Yi v. Circle K Stores, Inc.*,
  258 F. Supp. 3d 1075 (C.D. Cal. 2017), *aff'd*, 747 Fed. Appx. 643 (9th Cir. 2019)
  ................................................................................................................... 11

**Statutes**

15 U.S.C. § 1055 ............................................................................................. 17

15 U.S.C. § 1060(a)(1) ..................................................................................... 16

15 U.S.C. § 1114(1) .......................................................................................... 6

Cal. Civ. Code § 1442 ..................................................................................... 13

1055 ............................................................................................................... 17

Cal. Civ. Code §§ 1650, 1653 ......................................................................... 15

Cal. Civ. Code § 1636 ..................................................................................... 11

Cal. Civ. Code § 1638 ..................................................................................... 11

Cal. Civ. Code § 1641 ..................................................................................... 11

Cal. Civ. Code § 1642 ..................................................................................... 11

Cal. Civ. Code § 1643 ..................................................................................... 11

Cal. Civ. Code § 1646 ..................................................................................... 11

Cal. Civ. Code § 1647 ..................................................................................... 11

Cal. Civ. Code §§ 1541–1542 .................................................................... 18, 20

DEFENDANTS' MEMORANDUM IN SUPPORT OF MSJ

Cal. Civ. Code §§ 1655–1656 ................................................................ 13

Cal. Civ. Code §1644 ............................................................................. 11

Cal. Civ. Proc. Code § 446(a) ................................................................. 8

Cal. Com. Code § 1303 .......................................................................... 11

Cal. Com. Code § 2202 .......................................................................... 11

Cal. Corp. Code § 31005(a) ................................................................... 14

Cal. Corp. Code § 31005(a)(2) ................................................................ 7

**Rules**

Fed. R. Civ. P. 56 ................................................................................... 5

## I.   **INTRODUCTION**

The record before the Court is unassailable: the undisputed facts, the parties' own stipulations, and the governing agreements resolve Plaintiff's claims. For over a decade, PCJV USA, LLC ("PCJV") has operated as the sole authorized master franchisor of Potato Corner in the United States, with each franchisee's rights and every aspect of the business grounded in clear, binding agreements. Franchisees' rights which stem from PCJV's rights—a stipulated fact—demonstrates by itself that PCJV possessed the very long-term rights that it granted to franchisees.

Indeed, Plaintiff's claims rest on a foundation that simply does not exist— Plaintiff never acquired the goodwill, business, or operational control necessary for a valid trademark assignment, and the law does not permit assignment in gross. The evidentiary record, supported by declarations and an appendix of 35 narrowed exhibits, is overwhelming in its clarity and depth. Admissions and the express terms of the controlling agreements all converge on a single, inescapable conclusion: Defendants' use of the Potato Corner marks was fully authorized and not revocable at the will of a successor. Plaintiff is also bound by or estopped from challenging the prior settlements and releases that resolved these very issues.

There is no genuine dispute and Plaintiff's legal theories are foreclosed by the record, the law, and the parties' own conduct. As such, Defendants are entitled to judgment as a matter of law and respectfully request that the Court grant summary judgment in their favor on all of Plaintiff's claims or, at minimum, partial summary judgment on the infringement claims.

## II.   **STATEMENT OF UNDISPUTED FACTS**

Since 2010, PCJV has served as the master franchisor of Potato Corner restaurants in the United States. Dkt. 257, Fact 7; Trial Exh. ("TE") 1172, Recital A. Each Potato Corner franchised restaurant in the United States obtained its rights to use Potato Corner marks from PCJV. Dkt. 257, Fact 8. These rights included, among other things, the right to establish and operate a restaurant "under the trade

name and service mark 'Potato Corner' and other related trademarks, service marks, logos, and commercial symbols," with terms extending years into the future. The September 12, 2024 franchise agreement provides a ten-year Initial Term, expiring September 11, 2034, with a Renewal Right for successive ten-year terms thereafter. TE 1248 §§ 1, 2.1, 3.1, 3.2, Exh. A. Likewise, the February 7, 2024 franchise agreement provides an initial term through February 6, 2034, with a right to successive ten-year renewals. TE 1239 §§ 1, 2.1, 3.1, 3.2, Exh. A. The remaining franchise agreements are consistent: each franchised restaurant obtained long-term rights from PCJV to use the Potato Corner marks.[1]

PCJV is governed by "a set of agreements, including" the Joint Venture Agreement (and its First Amendment) and the LLC Agreement. TE 1172, Recital B ("PCJV is governed by a set of agreements, including: (a) "Potato Comer USA Joint Venture Agreement;" (b) "Limited Liability Company Agreement of PCJV USA, LLC;" and (c) "PCJV USA LLC Joint Venture Agreement [First Amendment to the JV Agreement]"). The parties to the agreements specifically negotiated against a fixed ten-year term, opting "not to put term to the Agreement." TE 1023 at 4)a) ("BEN, the Board has agreed not to put term to the Agreement, is this legally possible?"); TE 1025 ("Section 4 – I modified this section to now provide only two causes for termination: vote by 66 2/3%[2] or mutual agreement by the parties"); *accord* TE 1050, 1053. The LLC Agreement is consistent, providing that the "Term" is indefinite (TE 62, § 2.7) and requiring dissolution of PCJV as a threshold for termination (TE 62 at §§ 9.1, 9.2). No party ever required PCJV's dissolution, including as a condition to the 2024 settlement. TE 1172.

---

[1] In keeping with a judicious approach, Defendants use TE 1248 and TE 1239 as exemplar executed franchise agreements. Defendants have also included in the appendix the first set of February 2011 FDDs—containing PCJV's initial approved disclosures and franchise agreement (TE 1034)—and the April 19, 2018 version filed and verified under oath by representatives of Cinco (TE 1184).

[2] This cause requirement was later increased to 75%. TE 1028 at 4)a); *accord* TE 1050, 1053; *accord* TE 62, § 2.7.

PCJV is a state and federally registered and regulated franchisor. PCJV is the only entity ever authorized to sell Potato Corner franchises in the U.S.; those franchised restaurants embody the goodwill symbolized by the marks, with all goodwill inuring to PCJV's exclusive benefit. *E.g.,* TE 1248/1239, § 9.1.

On May 8, 2018, Myrose Victor as "a representative of Cinco Group" swore under oath in a Verified Complaint (brought on behalf of PCJV) that "PCJV's business, reputation, and goodwill" are threatened because "PCJV may not be able to meet obligations to Potato Corner franchisees in the United States, or honor obligations to third party vendors and suppliers who contract with PCJV as the U.S. representative of the Potato Corner brand." She also swore that the defendants are "violating the terms of the license of PCJV to Potato Corner trademarks." TE 1413 at PDF p. 79, ¶¶ 99, 102. Her under-oath statements were based on the LLC Agreement authorizing PCJV to license the marks. *Id.* at ¶¶ 17, 26, Exh. A.

In the prior April 10, 2018 action, Cinco also swore that defendants were "violating the terms of the license of PCJV to Potato Corner trademarks." TE 1076, ¶ 63. In subsequent verified, under-oath pleadings and declarations from Jose P. Magsaysay, Jr., Cinco repeatedly swore that the Joint Venture Agreement governed the use of trademarks and provided that Cinco's "sole" right under the Joint Venture Agreement was to receive royalties for PCJV's use of Potato Corner marks, specifically "thirty percent of all initial/franchise fees and ongoing royalty fees paid to/collected by PCJV from its franchisees" (which it labeled the "Approved License Fee"). TE 1077, ¶ 31; TE 1078, ¶ 34; TE 1079, ¶ 34; *see also* TE 1086, ¶ 39; *accord* TE 1084, ¶ 39. Cinco further repeatedly swore that Cinco "authorized the waiver of Approved License Fees due and owing under the JVA," which it would not have authorized absent alleged fraud; it sought economic and non-economic damages as to those fees. TE 1077, ¶¶ 139-140; TE 1078, ¶¶ 151-152; TE 1079, ¶¶ 151-152.

Cinco further swore that the Joint Venture Agreement and Master Services Agreement conferred on Koren and his group an equal right to receive thirty percent

3

of all initial/franchise fees and continuing royalty fees paid to or collected by PCJV, and also vested the obligations to establish, manage, operate, market, maintain, and license the Potato Corner marks onto Koren and his group. TE 1077, ¶¶ 44-47; TE 1078, ¶¶ 47-50; TE 1079, ¶¶ 47-50; *accord* TE 1045.[3] Cinco repeatedly also stated under oath that there was no "meeting of the minds as to the intent of the amended terms" of the First Amendment to the JVA, confirming that no new or different termination rights or other rights, obligations or responsibilities, concerning IP rights arose. TE 1077, page 19; TE 1078, page 19; TE 1079, page 19.

Plaintiff did not acquire any ownership rights or equity in Cinco, PCI, PCJV, or PCI Trading, and the "Cinco Parties" (including their attorneys, agents, successors, etc.) withdrew from all U.S. interests, transferring them to Defendants, and released all known and unknown licensing and other claims, with such releases binding on successors, affiliates, *etc.* TE 1172, Recitals E, G, H and §§ 4.1, 5, 12. The same attorney represented (and still represents) the Cinco Parties and Plaintiff.

Based on the foregoing, the following are undisputed for summary judgment:

1. **SUF 1: PCJV's Exclusive Role and Authority.** Since 2010, PCJV has been the sole master franchisor of Potato Corner in the United States, and is the only entity ever authorized to sell Potato Corner franchises in the U.S. All U.S. franchisees obtained their rights to use the Potato Corner marks from PCJV, with franchise agreements providing for initial ten-year terms and rights to successive ten-year renewals, extending franchisee rights well into the future. Franchisees agreed that all goodwill inures to PCJV's exclusive benefit.

2. **SUF 2: Governing Agreements and Duration.** PCJV is governed by a set of agreements (the Joint Venture Agreement, its First Amendment, and the LLC Agreement), all of which provide for indefinite duration and require a supermajority vote or mutual agreement for termination.

---

[3] The June 18, 2012 Master Services Agreement vesting on to the LA Group all control and licensing obligations with respect to Potato Corner outlets/stores is also of indefinite duration. TE 1045, § 1 of "Duration of Agreement."

3. **SUF 3: Cinco's Under-Oath Allegations.** Cinco's verified pleadings and other sworn statements in prior litigation confirm that PCJV's business, reputation, and goodwill were at stake in U.S. operations, that PCJV's rights to the marks were governed by the JVA and LLC structure, and that Cinco's only right was to receive a share of franchise and royalty fees.[4]

4. **SUF 4: Plaintiff's Lack of Acquisition of Goodwill or Business.** Plaintiff did not acquire any ownership rights or equity in Cinco, PC International, PCJV, or PCI Trading, and expressly disavowed acquiring PCJV's membership interests, franchise agreements, regulatory obligations, supply chain contracts, and related businesses, as well as any contractual or fiduciary obligations owed to or by PCJV. As a result, Plaintiff did not acquire the goodwill of the U.S. franchised business.

5. **SUF 5: Binding Nature of Releases and Settlement Agreements**. The Cinco Parties' releases and settlement agreements, negotiated and executed with counsel who also represents Plaintiff, expressly bind successors, subsidiaries, affiliates, and assigns, including Plaintiff, and released all known and unknown licensing and related claims.

6. **SUF 6: Plaintiff's Conduct Post-Assignment**. Following the alleged assignment to Plaintiff, PCJV continued operating as master franchisor.[5]

III. **LEGAL STANDARD**

The Court is certainly no stranger to summary judgment motions. Summary judgment is proper when there is no genuine dispute as to any material fact and the

---

[4] While Defendants do not agree with Cinco's allegation that its sole role was that of licensor, it is a fact that Cinco made these verified allegations.

[5] The parties dispute whether, before March 2022, the U.S. trademarks were used for the joint venture's mutual benefit or solely for Cinco, and whether Cinco exercised quality control over PCJV's use for over a decade under 15 U.S.C. § 1055, which is required to establish continuous use by a senior user. For purposes of this motion, the Court need not adjudicate those issues.

movant is entitled to judgment as a matter of law. Fed. R. Civ. P. 56. Here, Defendants were authorized to bring this motion pursuant to Dkt. 308.

## IV.    ARGUMENT

### A.    Plaintiff Cannot Prove the "Without the Consent of" Element.

Plaintiff must prove that Defendants used the marks "without the consent of" the trademark owner. *See* 15 U.S.C. § 1114(1); *S & R Corp. v. Jiffy Lube Int'l, Inc.*, 968 F.2d 371, 375 (3d Cir. 1992). Plaintiff cannot meet its burden on this element. First, the record is replete with admissions disproving Defendants used without consent. Second, the agreements also establish consent.

#### 1.  The Record Confirms Defendants' Authorization to Use.

##### a.    *The Stipulations of Fact are Dispositive.*

Stipulations of fact are binding on summary judgment. *Christian Legal Soc'y Chapter v. Martinez*, 561, U.S. 661, 677 (2010) ("[Factual stipulations are] binding and conclusive …, and the facts stated are not subject to subsequent variation") (bracket in original, quotation and citation omitted); *see also U.S. v. Houston*, 547 F.2d 104, 107 (9th Cir. 1976) ("declin[ing] to entertain the claim that the stipulation was erroneous . . . [because w]hen parties have entered into stipulations as to material facts, those facts will be deemed to have been conclusively established.")

The August 2025 Joint Statement of Stipulated Facts (Dkt.  257, Facts 7, 8) establishes that PCJV was created as the master franchisor for Potato Corner in the United States, and that every U.S. franchisee obtained its rights to use the Potato Corner marks from PCJV. These facts are binding and conclusive and are not subject to subsequent variation. *Christian Legal*, 561 U.S. at 677. They confirm that Defendants' use of the marks was authorized, and because each franchised restaurant obtained its long-term rights from PCJV, PCJV necessarily possessed those rights to grant. The franchise agreements themselves confirm that PCJV granted long-term rights to franchisees, with terms extending well into the

future. TE 1248/1239, § 1, 2.1, 3.1, 3.2, Exh. A. Therefore, as PCJV possessed the rights to grant, it follows that PCJV's use could not have been "without consent."

### b. PCJV's Structure and History Negates "Without Consent."

PCJV was the result of a negotiated, indefinite-term joint venture structure, as reflected in the Joint Venture Agreement, its First Amendment, and the LLC Agreement. The parties specifically rejected a fixed term, and the LLC Agreement required dissolution of PCJV as a prerequisite to termination—an event that never occurred. TE 62, § 2.7, 9.1, 9.2; TE 1023 at 4)a); TE 1025. The parties indisputably established a franchise system vesting the franchisor with the right to use and license the Potato Corner marks to others.

The right to sell franchises using the franchisor's trademark rights and business model is inherent in the creation, operation, and maintenance of a U.S. franchise system. *See, e.g.*, Cal. Corp. Code § 31005(a)(2); *Pereda v. Atos Jiu Jitsu LLC*, 85 Cal.App.5th 759, 768–69 (2022). PCJV was the only entity ever authorized to sell Potato Corner franchises in the U.S., and all franchisees acknowledged PCJV's authority and the long-term nature of their rights. TE 1248/1239, § 9.1. The very nature of establishing a franchise system for the specific purpose of granting franchisees long-term rights under a trademarked brand and system coupled with subsequent performance demonstrates authorization for use. *See Kim v. Servosnax, Inc.*, 10 Cal. App. 4th 1346, 1353-58 (1992) (finding licensee-licensor relationship unlawful and discussing importance of control over goodwill as part of franchise).

### c. Plaintiff's Own Conduct Confirms Authorization.

Even after the alleged assignment to Plaintiff, PCJV continued to operate as it had since 2010. Plaintiff did not attempt to disavow PCJV's long-standing and long-term rights but confirmed, through its conduct and omissions, that PCJV had those rights. It was not until May 31, 2024 that Plaintiff attempted to revoke, and even then, PCJV's rights for existing franchisees extended well into the future. TE

7

1248/1239; *N.A.A.C.P. v. N.A.A.C.P. Legal Defense & Education Fund, Inc.*, 753 F.2d 131, 139, 141 (D.C. Cir. 1985) (finding 12-year delay to disavow licensing right coupled with encouraged continued use of the trademark barred relief).

### d.    Cinco's Sworn Statements Confirm Authorization.

Just like declarations, verified pleadings are reliable evidence. Cal. Civ. Proc. Code § 446(a) (verified pleadings sworn under penalty of perjury); *Magnolia Square Homeowners Assn. v. Safeco Ins. Co.,* 221 Cal.App.3d 1049, 1061 (1990). In prior verified pleadings and declarations related to the April 10, 2018 action brought by Cinco, Cinco consistently asserted under oath that the defendants were violating the terms of the PCJV license to use Potato Corner trademarks (TE 1076, ¶ 63), and that the Joint Venture Agreement governed trademark use, granting Cinco the right to receive "Approved License Fees." TE 1077, ¶ 31; TE 1078, ¶ 34; TE 1079, ¶ 34; *see also* TE 1086, ¶ 39; *accord* TE 1084, ¶ 39. Cinco also swore that it authorized the waiver of these fees only due to alleged fraud and sought damages for them. TE 1077, ¶¶ 139-140; TE 1078, ¶¶ 151-152; TE 1079, ¶¶ 151-152. Additionally, Cinco stated that the Joint Venture Agreement and Master Services Agreement gave Koren and his group an equal right to thirty percent of franchise and royalty fees, and imposed on them the obligations to manage and license the Potato Corner marks. TE 1077, ¶¶ 44-47; TE 1078, ¶¶ 47-50; TE 1079, ¶¶ 47-50; *accord* TE 1045. Cinco further declared there was no meeting of the minds regarding amendments to the JVA, so no new or different IP rights or obligations arose (TE 1077, p. 19; TE 1078, p. 19; TE 1079, p. 19), and the 2012 Master Services Agreement vested all control and licensing obligations for Potato Corner outlets in the LA Group for an indefinite duration (TE 1045, § 1).

Cinco's sworn statements are dispositive. They prove that Defendants always were authorized to use, had long-term rights, and were allowed to grant those long-term rights to franchisees.

## 2.  The Agreements Confirm Indefinite, Non-Revocable Rights.

The governing agreements—namely, the Joint Venture Agreement (TE 1050), its amendment (TE 1053), the LLC Agreement (TE 62), and the Master Services Agreement (TE 1045)—confirm that PCJV's rights to use and license the Potato Corner marks in the U.S. are of indefinite duration and cannot be unilaterally terminated by Cinco or any successor. These contracts reflect the parties' mutual intent to vest operational and licensing authority in PCJV, and they contain no provision allowing for unilateral revocation. Key contract provisions include:

- **Express Authorization:** The Company is given express authority to establish, operate, manage, license, and franchise Potato Corner outlets. TE 1050 at 1(a).

- **Vested Rights:** The 2012 LLC Agreement acknowledges that rights and obligations are "granted" and "vested" in each group. TE 62 at 3.1.

- **Control of Intellectual Property:** The Company's President and the LA Group are expressly given the right and responsibility to control the intellectual property. TE 62 at 4.11.7; TE 1050 at 3(i); TE 1045 at 1, "Services".

- **Restrictions on Assignment:** Assignments of rights or obligations require prior consent (TE 62 at 3.3; TE 1050 at 2(d); TE 1045 at 4, "General Provisions"), and both sides have mutual rights of first refusal.

- **Indefinite Duration and Termination Only by Supermajority or Mutual Agreement:** The agreements make clear that the granted and vested rights are of indefinite duration, binding the parties as partners and fiduciaries unless there is mutual agreement or a 75% vote to dissolve the LLC and terminate the joint venture. TE 62 at 2.7, 3.7, 9.1; TE 1050 at 4(a); TE 1045 at 1, "Duration of Agreement." Even then, "trailing IP rights" provisions ensure PCJV's continued right to use the marks. TE 62 at 9.2.1; TE 1050 at 4(b)(i).

9

- **Obligation to Cooperate:** The parties are required to use best efforts to ensure the Company's success and to perform any further acts necessary to implement the parties' intent. TE 1050 at 5(b).

Collectively, these provisions vest PCJV with indefinite, exclusive rights to use, control, and restrict the transfer of the marks, all for the mutual benefit of the joint venture partners. They establish use with consent.

### a.    Plaintiff's "No License" Theory is Belied by the Record.

Plaintiff's assertion that there never were a license agreement is flatly contradicted by the record. The LLC Agreement (4.17–4.18) and JVA (3(g)–3(h)) demonstrate the parties' agreement to share equally in the economic benefits of the intellectual property, with each group entitled to an equal share of franchise and royalty fees paid to the Company. *See* TE 1010 at 1.1.2–1.1.3; TE 62, 1050. Cinco's 60% ownership of the Company was expressly tied to the "grant of the master license to use" the Potato Corner marks. TE 1010 at 2.4. The parties' negotiations and agreements were built around this "master license," and the provisions were designed to ensure both sides benefited equally from it. TE 1023 at 3(h)(ii)(1), 3(i)(i) (adding the words "initial/franchise fees and on going royalty" to the co-equal sharing provisions making it clear that each side would benefit equally from the use of the IP). The grant of the master license was not a future condition—it was embedded in the parties' agreements from the outset.

The LLC Agreement (4.17) and JVA (3(g)) contain binding directives requiring the Company to "agree" to these terms. The obligation to act rests solely on the Company, not on Cinco, and is not conditioned on any further action or approval by Cinco. The use of "shall" and "agrees" signals a present, binding obligation. There is no language suggesting that Cinco's agreement was pending, subject to further negotiation, or required execution. Cinco's consent was pre-existing and presumed as part of the parties' negotiated rights and obligations.

### b.    *California Law Requires Holistic, Harmonious, Intent-Driven Interpretation.*

The first step of contract interpretation is to ascertain the governing law. Here, California law applies. *E.g.*, TE 62, § 12.10; TE 1045, § 4 "General Provisions." Under California law, the main objective in interpreting a contract is to determine the mutual intent of the parties at the time of contracting. Cal. Civ. Code § 1636; *Yi v. Circle K Stores, Inc.*, 258 F. Supp. 3d 1075, 1083 (C.D. Cal. 2017), *aff'd*, 747 Fed. Appx. 643 (9th Cir. 2019). This intent is inferred, if possible, solely from the contract's written provisions. *State of California v. Cont'l Ins. Co.*, 55 Cal. 4th 186, 195 (2012). Courts interpret contract terms according to their ordinary meaning unless a technical or special meaning is shown by usage. Cal. Civ. Code §§ 1638, 1644. Agreements between the same parties relating to the same matters are construed together, and every provision should be given effect. Cal. Civ. Code §§ 1641, 1642. Contracts must be interpreted to be lawful, operative, definite, reasonable, and capable of being carried into effect. Cal. Civ. Code § 1643. "A condition involving a forfeiture must be strictly interpreted against the party for whose benefit it is created." Cal. Civ. Code § 1442.

If the contract language is ambiguous or reasonably susceptible to more than one interpretation, extrinsic evidence is admissible to clarify intent, following a two-step process. *Pacific Gas & Electric Co. v. G.W. Thomas Drayage & Rigging Co.*, 69 Cal.2d 33, 37-40 (1968). First, the court provisionally receives all credible evidence to determine if the language is ambiguous. *F.B.T. Productions, LLC v. Aftermath Records*, 621 F.3d 958, 963 (9th Cir. 2010). If so, extrinsic evidence is admitted to interpret the contract. The parties' purpose, course of dealing, and industry custom are relevant to prove mutual intent. Cal. Civ. Code §§ 1646, 1647; Cal. Com. Code §§ 1303, 2202. If ambiguity remains, interpretive rules apply: the general intent and main purpose of the contract prevail over particular clauses, and any uncertainty is resolved against the drafter. *Id.* §§ 1650, 1653, 1654.

Here, the Joint Venture Agreement (TE 1050), the First Amendment (TE 1053), the LLC Agreement (TE 62), and the Master Services Agreement (TE 1045) are parts of a unified franchising venture allocating IP, management, and economics to operate "Potato Corner USA." They must be read as an integrated scheme that: (a) vests PCJV with operational and licensing authority; (b) allocates equal economic participation in initial fees/royalties; (c) restricts assignment/transfer; and (d) sets duration and termination mechanics.

The JVA and LLC Agreement repeatedly "grant," "vest," and "assign" to PCJV (through its President/LA Group) the responsibility and authority to establish, license, and franchise Potato Corner outlets in the U.S., and they direct the Company to enter a master license and to share "initial/franchise fees and ongoing royalty fees." TE 1050 §§ 3(g)-(h); TE 62 §§ 3.1, 4.11.7; TE 1045 § 1 "Services". The agreements also restrict assignments and impose mutual rights of first refusal, *e.g.*, TE 62 §§ 3.3, 8; TE 1050 § 2(d)), evidencing the parties' intent that these rights are not freely revocable or transferable by one side.

The LLC Agreement provides an indefinite "Term" (TE 62 § 2.7), supermajority (75%) or mutual-consent governance for fundamental changes (*e.g.*, TE 62 §§ 3.7, 9.1; *accord* TE 1050 § 4(a)), and "trailing IP rights" to honor existing franchise obligations upon termination (TE 62 § 9.2.1; *accord* TE 1050 § 4(b)(i)). The parties' agreements confirm that PCJV's licensing authority was agreed to last and to protect franchisees' long-term trademark rights.

For over a decade, PCJV acted as the franchisor, registered and filed FDDs, entered long-term franchise agreements, and collected/allocated franchise economics. Cinco verified PCJV's franchisor status and admitted its own "sole" economic right was royalties/fees. TE 1076–79, 1084, 1086, 1413; TE 1184.

The language of the contracts, the performance of the parties, and sworn statements by Cinco all dictate the same result: that PCJV always had long-term,

non-revocable rights unless by supermajority vote and dissolution. Plaintiff's interpretation, on the other hand, is contrary to California law.

First, California law enforces stated termination mechanics and disfavors readings that create at-will termination when the contract's structure, purpose and course of conduct indicate otherwise.[6] *See Consolidated Theatres, Inc. v. Theatrical Stage Emps.,* 69 Cal.2d 713, 725–27 (1968) (imply reasonable duration aligned with contract's purposes where bargain contemplates ongoing performance); *Thomson v. Hodgson*, --- F.4th ---, 2025 WL 2406526, at *4 (9th Cir. Aug. 20, 2025) (approving and following *Consolidated Theatres*); *see also* Cal. Civ. Code §§ 1655–1656. The parties here expressly negotiated no fixed 10-year term and adopted an indefinite term subject to dissolution by supermajority or mutual agreement. TE 1023 at 4(a); TE 1025; TE 62 §§ 2.7, 9.1–9.2; TE 1050 § 4(a). Even assuming *arguendo* some ambiguity, California would, at minimum, imply a duration that was at least coextensive with PCJV's franchise obligations and the system's long-term purpose, not an at-will terminability. *Consolidated Theatres*, 69 Cal.2d at 725–27. Under that scenario, summary judgment on Plaintiff's claims is warranted because the only reasonable conclusion is that Defendants' rights remain in effect.

Second, a construction resulting in forfeiture of vested rights is disfavored and strictly construed against the beneficiary of the forfeiture. Cal. Civ. Code § 1442; *Universal Sales Corp. v. Cal. Press Mfg. Co.*, 20 Cal. 2d 751, 771 (1942) ("A contract is not to be construed to provide a forfeiture unless no other interpretation is reasonably possible"). Where a contract can be reasonably interpreted to avoid forfeiture, courts must do so. Cal. Civ. Code § 1442; *Deutsch v. Phillips Petroleum Co.*, 56 Cal. App. 3d 586, 592 (1976) ("[T]he law abhors

---

[6] Even if Defendants lack express rights, they at least hold an implied license. *See Kiva Health Brands LLC v. Kiva Brands Inc.*, 402 F. Supp. 3d 877, 887 (N.D. Cal. 2019) (recognizing an implied trademark license based on the parties' course of conduct). For this motion, Defendants do not ask the Court to define the scope of implied rights. The point is that, even assuming only implied rights, Plaintiff cannot establish the elements of its claims.

forfeitures, and will strictly construe forfeiture provisions against the party in whose behalf they are invoked"); *Milenbach v. Comm'r Internal Revenue*, 318 F. 3d 924, 936 (9th Cir. 2003); *NcNeece v. Wood*, 204 Cal. 280, 284 (1928); *Ballard v. MacCallum*, 15 Cal. 2d 440, 444 (1940). Plaintiff's reading would retroactively strip PCJV of the core rights that underpinned a decade-plus franchising system, nullify long-term franchise grants, and upend the parties' economic allocations and regulatory filings—precisely the sort of forfeiture California law avoids.

Third, the JVA/LLC Agreement use mandatory language ("shall," "agrees") directing the Company to take a master license and to share defined franchise economics, with day-to-day IP control vested in PCJV's President/LA Group. TE 1050 §§ 3(g)-(h), 3(i); TE 62 §§ 3.1, 4.11.7; TE 1045 § 1. This is not an "agreement to agree;" it is a present allocation of authority and obligations that the parties implemented through filings, FDDs, and franchise agreements. TE 1034; TE 1184; TE 1239/1248. As a matter of trademark law, consent may be express or implied by conduct and course of dealing, and, once granted and relied upon in building a franchise system with long-term grants, it cannot be retroactively withdrawn by an assignee to vitiate settled rights. *Russell Road Food and Beverage, LLC v. Spencer*, 829 F.3d 1152, 1156 (9th Cir. 2016); *ICEE Distribs., Inc. v. J&J Snack Foods Corp.*, 325 F.3d 586, 593 (5th Cir. 2003).[7]

Fourth, the agreements embed quality control and operational control in PCJV and its President/LA Group, with board oversight and supermajority controls. TE 62

---

[7] *See also* 2 J. Thomas McCarthy, *McCarthy on Trademarks and Unfair Competition*, § 18:15 (5th ed.) ("'It is elementary ancient law that an assignee never stands in any better position than his assignor,' and thus once an assignee has notice of an injunction against the assignor, it is bound to comply.") (citation omitted); *Sun–Maid Raisin Growers of Cal. v. Cal. Packing Corp.*, 273 F.2d 282, 284 (9th Cir. 1959) ("The assignment of the trademark [does] not in and of itself cause all rights under…contract and injunction to vanish magically as in a puff of smoke."); *Waukesha Hygeia Mineral Springs Co. v. Hygeia Sparkling Distilled Water Co.*, 63 F. 438, 442 (7th Cir. 1894) ("No larger claim can be maintained than was possessed by the source of title, and the right is subject to the same equities, abandonment, or estoppel which could be asserted against the vendor.").

§§ 4.11.7, 4.12; TE 1050 §§ 3(i), 3(e); TE 1045 § 1. California franchise and partnership law and the parties' procedures ensured ongoing control—antithetical to at-will or "naked licensing." *See* Cal. Corp. Code § 31005(a); *Kim*, 10 Cal.App.4th 1346, 1353–58 (1992) (control of system/goodwill is essential in franchise); *see also Serpa v. Jolly King Restaurants, Inc.,* 62 F.R.D. 626, 640 (S.D. Cal. 1974) (finding self-dealing gives rise to breach of fiduciary duty). The duties of cooperation/good faith (TE 1050 § 5(b); TE 62 § 3.7) also bar one side from using formalities to defeat the other's bargained-for benefits. *See Najor v. Wells Fargo Bank, N.A.*, Case No.: 3:19-cv-00015-H-AGS, 2019 WL 1858502 (S.D. Cal. Apr. 25, 2019) (finding interferences with a party's benefit of the bargain is a breach of the implied covenant of good faith and fair dealing); *see also Ahl-E-Bait Media, Inc. v. Jadoo TV, Inc.*, CASE NO. CV 12-05307 (MMM (PJWx), 2013 WL 11324312, at *9 (C.D. Cal. Apr. 16, 2013) ("A party that is given discretion to perform by a contract breaches the covenant of good faith and fair dealing when it exercises that discretion in bad faith to deprive the other party of the benefit of the bargain.").

Fifth, if ambiguity exists after considering the text and structure, extrinsic evidence—including the parties' negotiations (*e.g.*, rejection of a 10-year fixed term), DLA Piper's regulatory strategy, PCJV's decade of franchising, and Cinco's verified pleadings—confirms that PCJV held long-term, indefeasible licensing authority subject only to supermajority/mutual termination and trailing IP protections. Any residual ambiguity is resolved to effect the main purpose over particular clauses (Cal. Civ. Code §§ 1650, 1653) and against the drafter (Cinco) (*Id.* § 1654). Plaintiff's reading would defeat the main purpose—establishing and growing a U.S. franchise system under PCJV—and therefore must be rejected.

On all these points, an assignee "stands in the shoes" of its assignor and takes subject to all defenses, equities, and existing license burdens; it cannot revoke consent previously granted and relied upon. *ICEE Distribs.*, 325 F.3d at 593; *Sun-Maid Raisin Growers*, 81 F.2d at 676–77 (9th Cir. 1936). The agreements' anti-

assignment, consent, and separate right of first refusal provisions confirm that any attempted reallocation of IP rights cannot circumvent PCJV's vested authorities and franchisee rights. TE 62 §§ 3.3, 8; TE 1050 § 2(d).

Construing the unified agreements under California law, PCJV's authority to use and license the Potato Corner marks in the U.S. is indefinite, non-revocable absent supermajority/mutual termination, and, at minimum, continues through the duration necessary to honor PCJV's franchise agreements. Plaintiff's contrary reading creates an impermissible forfeiture, disregards the integrated scheme and decade-long performance, and is foreclosed by California interpretive rules and trademark-license principles.

### B.  <u>Plaintiff Cannot Prove Trademark Ownership by Assignment.</u>

A trademark assignment is only valid if it includes the goodwill of the business associated with the mark. *See* 15 U.S.C. § 1060(a)(1); *Mister Donut of America, Inc. v. Mr. Donut, Inc.*, 418 F.2d 838, 842 (9th Cir. 1969); *Glow Indus., Inc. v. Lopez*, 273 F. Supp. 2d 1095, 1107 (C.D. Cal. 2003). Plaintiff cannot meet its burden of proof—no business, no franchise agreements, no goodwill transferred. *See Federal Treasury Enterprise Sojuzplodoimport v. Spirits Intern. N.V.*, 623 F.3d 61, 68 (2d Cir. 2010); *see also Glow Industries, Inc.*, 273 F. Supp. 2d at 1108; *Hallmark Hardwoods, Inv. v. Omni Wood Product, LLC*, CV 10-05896 SJO (JCGx), 2011 WL 13176098, *15 (C.D. Cal. 2011).

Plaintiff's alleged assignment from Cinco is a textbook assignment in gross. Cinco did not transfer the ongoing business, franchise agreements, supply chain contracts, or any of the relationships and obligations that constitute the goodwill of Potato Corner in the United States. In fact, Plaintiff expressly disavowed acquiring PCJV's membership interests, franchise agreements, regulatory obligations, and related businesses, as well as any contractual or fiduciary obligations owed to PCJV. Without these, Plaintiff cannot claim to have acquired the goodwill necessary for a

valid trademark assignment. *See ICEE Distribs., Inc.*, 325 F.3d at 593 (valid assignee takes subject to all burdens and limitations on use).

The decision in *Mister Donut of America* is directly on point. There, the Ninth Circuit held that a trademark assignment was invalid because the business and its goodwill had already been transferred to another party. 418 F.2d at 842. The same principle applies here: Cinco could not transfer the marks to Plaintiff without also transferring the underlying business and goodwill. Plaintiff's acquisition, which excluded the Potato Corner USA business and all operational and contractual rights and interests in PCJV and the U.S. franchise system, is therefore invalid as an assignment of trademark rights.

Indeed, Plaintiff's failure to acquire any right to control Potato Corner USA as a "related company" under 15 U.S.C. § 1055 is dispositive. The deeds offered by Plaintiff plainly severed the trademark registrations from the franchised business that created and maintained the goodwill associated with the marks. Cinco's only possible claim to lawful use and quality control in the U.S., which Cinco has denied possessing when it claimed its "sole" right was to obtain royalties, was through its ownership and management of PCJV, which Plaintiff did not acquire.

By claiming the benefits of the U.S. Potato Corner marks without acquiring the underlying business and obligations, Plaintiff cannot have obtained the goodwill required for a valid assignment. This is an assignment in gross and must be rejected.

Plaintiff's denial that it is bound by PCJV's franchise agreements with U.S. franchisees further confirms the absence of goodwill transfer. It is well established that an intellectual property owner is bound by sublicenses entered into by its licensee with third parties. *See Cornell University v. Illumina, Inc.*, C.A. No. 10-433-LPS-MPT, 2014 WL 12601516, at *5 (D. Del. Sept. 29, 2014).

In *Ariel Preferred Retail Group, LLC v. CWCapital Asset Management*, 883 F. Supp. 2d 797, 805 (E.D. Mo. 2012), for example, the court held that a trademark owner was estopped from denying its subsidiary's authority to enter a license

17

agreement, even though the owner did not sign it, because the subsidiary had apparent authority and permission to use the marks. Here, Plaintiff has stipulated that PCJV had actual authority to enter franchise agreements; at minimum, PCJV had apparent authority to enter them. Those agreements are valid and enforceable, yet Plaintiff has repeatedly notified U.S. franchisees that they, too, are enjoined from using the marks. *E.g.*, TE 1154-0001 ("[Y]our company is continuing to operate as a Potato Corner store, please be advised that you are in direct violation of the Court's order, which is a serious matter") (emphasis omitted). These enforceable agreements are significant because PCJV has always possessed (and still possesses) the rights and obligations under them and has bought Cinco out of these valid and enforceable agreements and the goodwill created by and underlying them.

In sum, Plaintiff cannot prove trademark ownership by assignment because it did not acquire the goodwill of the business, here a franchised restaurant business, associated with the marks. The assignment is invalid as a matter of law, and summary judgment should be granted for Defendants.

### C.    **Plaintiff is Bound by or Estopped From Challenging the Settlement.**

Plaintiff is also barred by release and estoppel. The "Cinco Parties"— including their successors, affiliates, and assigns—released all known and unknown licensing and other claims. TE 1172, Recitals E, G, H and §§ 4.1, 5, 12; see Cal. Civ. Code §§ 1541–1542. Those releases are binding on Plaintiff. Plaintiff admits it is a successor at least with respect to the "rights and obligations arising from its intellectual property." Dkt. 301 ("A ruling from the Court on this issue would clarify to what extent any Defendant can claim that [Plaintiff] is bound to anything *other than the rights and obligations arising from its intellectual property*…"). Plaintiff's Myrose Victor (formerly with Cinco), and Plaintiff's subsidiary or affiliate, Highfive Corporation, also executed the releases. TE 1172. Plaintiff's attorney negotiated and also is the party to be noticed in the settlement. *Id.* Therefore, Plaintiff is also contractually bound.

18

Additionally, Cinco and its affiliates, represented by the same counsel as Plaintiff, repeatedly swore in prior litigation that PCJV was the party with rights to the marks and that Cinco's "sole" right was to receive royalties. Under California law, estoppel prevents a party from taking a position that would result in injustice where another has reasonably relied to their detriment. To invoke estoppel, a party must show: (1) the estopped party knew the facts; (2) intended or acted so the other would rely; (3) the relying party was unaware of the true facts; and (4) relied to their injury. *Adams v. Johns-Manville Corp.*, 876 F.2d 702, 706-07 (9th Cir. 2015) (estopping a real party in interest from denying a settlement entered into on his behalf due to asymmetric information and his failure to timely object).

Here, Plaintiff, as successor to Cinco, stood in privity with Cinco, who entered into a settlement to resolve claims. Plaintiff had full knowledge of the settlement: its own attorney (also Cinco's) drafted the agreements. Plaintiff did not object or intervene, but instead allowed Cinco to represent its interests, and for Defendants to rely on the settlement.

Plaintiff and Cinco alone (not Defendants) knew who the real party-in-interest was on the licensing claims. Plaintiff also knew that Defendants believed Cinco was the real party-in-interest and that any assignment was invalid or subject to pre-existing rights. Yet, Plaintiff's attorney approved the following settlement terms that, if Plaintiff now claims to be the true owner, were at best misleading:

1. Koren Parties would acquire the franchise business (but suppressed that they would not include the goodwill associated with the business);

2. Koren Parties would acquire all ownership attributes (but suppressed that would not include control of the marks);

3. Koren Parties would acquire all attached rights (but suppressed that it would not include royalty income);

4. Koren Parties would be released from all licensing claims (but suppressed except those Plaintiff might assert later);

5.  Plaintiff would be licensor (but suppressed that it would not be on the terms affirmed by the written agreements as sworn by Cinco); and

6.  The settlement would not accelerate or terminate any license (but suppressed an exception that Plaintiff could choose to do so after the fact).

Plaintiff and its counsel suppressed the intentions of the alleged real party-in-interest, including when its attorney and agent were making representations and negotiating releases that purported to resolve all licensing claims. Counsel for both sides specifically negotiated a carve-out preserving claims for damages by Defendants. Counsel for the alleged real party in interest only preserved a carve-out for a counterclaim for declaratory relief if first sued for damages by Defendants. TE 1172, Recitals E, G, H and §§ 4.1, 5, 12; *see* Cal. Civ. Code §§ 1541–1542. Their concealment serves as estoppel. Plaintiff should either be bound by the settlement or estoped from challenging it.

## V.  CONCLUSION

The undisputed facts, the parties' own stipulations, the governing agreements, and binding principles of law all compel summary judgment for Defendants. Plaintiff cannot prove use "without consent," cannot establish ownership by assignment, and is estopped from relitigating settled issues. Judgment should be entered in Defendants' favor on all of Plaintiff's claims as a matter of law.

**DEFENDANTS' MEMORANDUM IN SUPPORT OF MSJ**

1  DATED: September 24, 2025  **BLANK ROME LLP**

2

3  By: */s/ Arash Beral*

4          Todd M. Malynn
           Arash Beral
           Jamison T. Gilmore
5  Attorneys for Defendants, Counterclaimants,
   and Third Party Plaintiffs PCJV USA, LLC,
6  PCI TRADING LLC, POTATO CORNER,
   LA GROUP, LLC, GK CAPITAL GROUP,
7  LLC, NKM CAPITAL GROUP, LLC and
   GUY KOREN, and Defendants J & K
8  AMERICANA, LLC, J&K LAKEWOOD,
   LLC, J&K OAKRIDGE, LLC, J&K
9  VALLEY FAIR, LLC, J & K ONTARIO,
   LLC, J&K PC TRUCKS, LLC, HLK
10 MILPITAS, LLC, and GK CERRITOS, LLC

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

## <u>CERTIFICATE OF WORD COUNT</u>

The undersigned counsel of record for PCJV USA Parties, certify that this brief contains 6,645 words, which complies with the word limit of Local Rule 11-6.1.

DATED:  September 24, 2025

/s/ Arash Beral
ARASH BERAL

# CERTIFICATE OF SERVICE

The undersigned certifies that on September 24, 2025, the foregoing document was electronically filed with the Clerk of the Court for the United States District Court, Central District of California, using the Court's Electronic Case Filing (ECF) system.  I further certify that all participants in the case are registered CM/ECF users and that service will be accomplished by the CM/ECF system.

I certify under penalty of perjury that the foregoing is true and correct. Executed on September 24, 2025.


By:   _/s/AJ Cruickshank_____

**DEFENDANTS' MEMORANDUM IN SUPPORT OF MSJ**