EXHIBIT 1413

TODD M. LANDER (BAR NO. 173031)
todd.lander@ffslaw.com
ARASH BERAL (BAR NO. 245219)
arash.beral@ffslaw.com
FREEMAN, FREEMAN & SMILEY, LLP
1888 Century Park East, Suite 1900
Los Angeles, California 90067
Telephone: (310) 255-6100
Facsimile: (310) 255-6200

Attorneys for Defendant
GUY KOREN

**SUPERIOR COURT OF THE STATE OF CALIFORNIA**

**COUNTY OF LOS ANGELES, CENTRAL DISTRICT**

| | |
|---|---|
| CINCO CORPORATION,<br><br>Plaintiff,<br><br>vs.<br><br>GUY KOREN, an individual; and DOES 1 through 25, inclusive,<br><br>Defendants. | Case No. BC701075<br><br>**DECLARATION OF GUY KOREN IN SUPPORT OF *EX PARTE* APPLICATION FOR ORDER TO SHOW CAUSE RE: PRELIMINARY INJUNCTION AND TEMPORARY RESTRAINING ORDER**<br><br>*[Ex Parte Application; Declarations of Emily Garcia, Vannrada Lai, Ashley Grudnowski and Arash Beral; Objections to DLA Piper's Involvement and Representation of Parties; Consolidated Opposition to Cinco's Ex Parte Application; and [Proposed] Order re: OSC/TRO filed concurrently herewith]*<br><br>Date:     May 11, 2018<br>Time:     8:30 a.m.<br>Dep:      86<br><br>**Assigned for All Purposes to the Hon. Rafael Ongkeko, Dept. 73**<br><br>Action Filed:      April 10, 2018 |

FREEMAN, FREEMAN & SMILEY, LLP
1888 CENTURY PARK EAST, SUITE 1900
LOS ANGELES, CALIFORNIA 90067
(310) 255-6100

3782253.1

Exhibit 1413 - 0001

FREEMAN, FREEMAN & SMILEY, LLP
1888 CENTURY PARK EAST, SUITE 1900
LOS ANGELES, CALIFORNIA 90067
(310) 255-6100

## **DECLARATION OF GUY KOREN**

I, Guy Koren, declare that:

1.    I am an individual over the age of eighteen.  All of the facts set forth in this Declaration are known to me personally to be true, unless stated on information and belief (in which case I believe them to be true), and if called upon to do so I could and would competently testify to them under oath.

2.    I am the President of PCJV USA, LLC ("PCJV"), and I have served in that capacity since on or about October 16, 2012.  In addition to my Verified Cross-Complaint filed on May 8, 2018 in this action, I submit this Declaration in additional support of my *Ex Parte* Application for Order to Show Cause re: Preliminary Injunction and Temporary Restraining Order.

3.    To be perfectly clear, I did not misappropriate any money from PCJV.  I simply moved accounts to a different bank under the same entity names (not in my name) in order to safeguard the company funds from further looting by Mr. Jacoby, and I promptly notified Cinco of this protective measure that I was taking.

4.    The claim that I improperly entered into a lease "without approval" is preposterous. I was negotiating a new lease, because our current office lease was ending, and the office was located very far from our warehouse.  We needed to consolidate our office space with our warehouse space to streamline our operations, and we needed a larger space to accommodate our rapidly growing business.  After a diligent search, I was able to locate an excellent office-warehouse space in Culver City, which increased our space from 3,300 square feet to 5,500 square feet.  I also negotiated a right to sublease the space to accommodate related entities so that we could defray the cost of our on-going operations while retaining the ability to scale up our operations within the existing space.  As the head of PCJV, I have always been given free rein to make both major and minor business decisions to operate the business.  I have never been advised by Cross-Defendants that I failed to secure their approval for any of the myriad of decisions that I have been making on behalf of PCJV for years.  Indeed, I never secured approval for our first lease, and we have been there for five years.  Therefore, Cross-Defendants' claim that my decision to enter into a new lease is somehow improper is entirely disingenuous, to say the least.

**Exhibit 1413 - 0002**

FREEMAN, FREEMAN & SMILEY, LLP
1888 CENTURY PARK EAST, SUITE 1900
LOS ANGELES, CALIFORNIA 90067
(310) 255-6100

5.      The allegation that I failed to provide a five-year strategic plan is similarly ludicrous.  The Cinco Group gave me a mere _one week_ to prepare a five-year strategic plan.  I was in the midst of an extremely busy time period, i.e., audit, and I truthfully advised the Cinco Group that I could not come up with a five-year strategic plan in merely a week.  In short, the reasons listed for my purported termination are entirely without merit and border on the absurd.

6.      As the President of PCJV, I am in charge of, and integrally involved with, all aspects of the business operations of Potato Corner, PCJV, PCIT, the corporate stores, and franchisee stores.  Among other things, I recruit and sign franchisees, I assist franchisees with setting up and opening stores (including construction, architect planning, design approvals, and lease negotiations), and I cultivate and maintain strong business relationships with our franchisees.  I also interface with our vendors, negotiate contracts/rebates/special pricing for all locations, oversee the preparation of financial reports, audits, FDD's, renewals, consultation with attorneys, develop and implement new products/vendors/procedures, coordinate the operations of PCIT with staff, oversee the Corporate store operations, oversee compliance and regulations at both the state and federal level, attend business conferences, and communications with Cinco.  Mr. Jacoby and the other Cross-Defendants do not have the experience to manage the day-to-day business operations of PCJV.  Over the years, Mr. Jacoby rarely participated in the day-to-day operations of PCJV and has little knowledge or experience with the internal workings of the Company.

7.      As I am charged with running the company and I do not believe that Cross-Defendants' conduct in removing me was proper, I continue to try to lead the operations at PCJV as best I can, including maintaining our relationships with all of our franchisees, continuously consulting with our franchisees to ensure their continued financial success, interfacing with our vendors, negotiating various contracts, paying our employees, and handling the countless other tasks and processes that are necessary to maintain PCJV and our network's success.

8.      On the other hand, the Cross-Defendants have engaged in a campaign to illegally oust me from PCJV.  They have attempted to illegally terminate me as well as certain members of my staff, they have terminated our business email accounts, they have cut-off our access to critical information, they have locked us out of our business bank accounts and ADP account, and they

Exhibit 1413 - 0003

FREEMAN, FREEMAN & SMILEY, LLP
1888 CENTURY PARK EAST, SUITE 1900
LOS ANGELES, CALIFORNIA 90067
(310) 255-6100

1  have locked us out of our facilities -- all of which significantly curtails our ability to effectively

2  handle the day-to-day business operations of PCJV.  The Cross-Defendants have further sent cease

3  and desist letters to our franchisees and other business partners, wrongfully advising them that I

4  have been "terminated" and publicizing false allegations about me.[1]

5         9.     The Cross-Defendants' continuing efforts to interfere and stymie our operations is

6  causing irreparable damage to our business operations and threatening our valuable relationships

7  with our network of franchisees and other business partners.  Further, the Cross-Defendants'

8  reckless misconduct is giving rise to unwarranted liabilities for claims for wrongful termination

9  and other potential liabilities, causing PCJV to miss many business opportunities, and tarnishing

10  our reputation in the highly competitive U.S. franchise market.

11         10.    PCJV will be irreparably harmed unless and until the Cross-Defendants are

12  enjoined from further interfering and impeding our business operations, including being enjoined

13  from, among other things, blocking our access to our facilities, blocking our access to our email

14  accounts and computer information, and blocking our access to the business bank accounts.

15         11.    Attached hereto as **Exhibit "A"** is a true and correct copy of a Balance Sheet dated

16  as of January 3, 2018, for the Potato Corner LA Group.  This document, prepared by Mrs. Jacoby,

17  makes clear that I own 61.3% of the LA Group.

18         12.    On or about May 4, 2018, I received notice of a lawsuit filed against the LA Group

19  for violation of the UNRUH Civil Rights Act pertaining to the website www.potatocornerusa.com.

20  Attached hereto as **Exhibit "B"** is a true and correct copy of that lawsuit.  Defending or resolving

21  this lawsuit will require me to also to defend and protect PCJV's rights, and I will need my email

22  access restored and access to my PCJV records in order to do so.

23         13.    Just late last night, I received word that *PCJV* filed suit against me and others.

24  While I have not yet been served with this suit, I was able to obtain a copy.  Attached hereto as

25

26

27

28

---

[1] The lack of email access has prejudiced me in this lawsuit in that I have been unable to access critical emails and files to show the Court the true unmeritorious nature of Cross-Defendants' conduct.

Exhibit 1413 - 0004

1 | **Exhibit "C"** is a true and correct copy of PCJV's lawsuit that I was able to obtain. I did not in

2 | any way authorize PCJV to file this lawsuit.

3 |     14.    I also understand that Wells Fargo intends to file suit to interplead PCJV's funds

4 | that they froze (assuming they have not filed already). I will need to promptly act on behalf of

5 | PCJV to obtain release of those funds.

6 |     I declare under penalty of perjury under the laws of the State of California that the

7 | foregoing is true and correct.

8 |     Executed on this 10th day of May 2018, at Los Angeles, California.

11 | Guy Koren

FREEMAN, FREEMAN & SMILEY, LLP
1888 CENTURY PARK EAST, SUITE 1900
LOS ANGELES, CALIFORNIA 90067
(310) 255-6100

3782253.1

5

DECLARATION OF GUY KOREN IN SUPPORT OF *EX PARTE* APPLICATION

**Exhibit 1413 - 0005**

# EXHIBIT A

**Exhibit 1413 - 0006**

2:16 PM
01/03/18
Accrual Basis

# Potato Corner LA Group
## Balance Sheet
### As of January 3, 2018

|  | Jan 3, 18 |
|---|---|
| **ASSETS** | |
|   **Current Assets** | |
|     **Checking/Savings** | |
|       Checking -3273 | 30,471.83 |
|     **Total Checking/Savings** | 30,471.83 |
|   **Total Current Assets** | 30,471.83 |
|   **Other Assets** | |
|     Investment - PCJV USA LLC | 350,768.00 |
|   **Total Other Assets** | 350,768.00 |
| **TOTAL ASSETS** | 381,239.83 |
| **LIABILITIES & EQUITY** | |
|   **Liabilities** | |
|     **Current Liabilities** | |
|       **Other Current Liabilities** | |
|         Due to NKM Capital Group LLC | 432.00 |
|       **Total Other Current Liabilities** | 432.00 |
|     **Total Current Liabilities** | 432.00 |
|   **Total Liabilities** | 432.00 |
|   **Equity** | |
|     Capital - Guy Koren (61.3%) | -40,557.23 |
|     Capital - Amir Jacoby (38.7%) | -9,230.36 |
|     Retained Earnings | 430,595.42 |
|   **Total Equity** | 380,807.83 |
| **TOTAL LIABILITIES & EQUITY** | 381,239.83 |

Page 1 of 1

**Exhibit 1413 - 0007**

# EXHIBIT B

**Exhibit 1413 - 0008**

To: 18668438308     From:  (5627530508)           04/06/18 10:34 AM    Page 2 of 7
From:                                              01/04/2018 16:43    #122 P.008/024

**SUM-100**

## SUMMONS
### (CITACION JUDICIAL)

FOR COURT USE ONLY
(SOLO PARA USO DE LA CORTE)

**CONFORMED COPY
ORIGINAL FILED**
SUPERIOR COURT OF CALIFORNIA
COUNTY OF LOS ANGELES

**APR 05 2018**

Sherri R. Carter, Executive Officer/Clerk
By _____ , Deputy
Heidi Hankins

**NOTICE TO DEFENDANT:** POTATO CORNER LA GROUP LLC., a
*(AVISO AL DEMANDADO):* California Corporation; and DOES 1-10,
inclusive,

**YOU ARE BEING SUED BY PLAINTIFF:** PERLA MAGENO, an
*(LO ESTÁ DEMANDANDO EL DEMANDANTE):* individual

**NOTICE!** You have been sued. The court may decide against you without your being heard unless you respond within 30 days. Read the information below.

You have 30 CALENDAR DAYS after this summons and legal papers are served on you to file a written response at this court and have a copy served on the plaintiff. A letter or phone call will not protect you. Your written response must be in proper legal form if you want the court to hear your case. There may be a court form that you can use for your response. You can find these court forms and more information at the California Courts Online Self-Help Center (www.courtinfo.ca.gov/selfhelp), your county law library, or the courthouse nearest you. If you cannot pay the filing fee, ask the court clerk for a fee waiver form. If you do not file your response on time, you may lose the case by default, and your wages, money, and property may be taken without further warning from the court.

There are other legal requirements. You may want to call an attorney right away. If you do not know an attorney, you may want to call an attorney referral service. If you cannot afford an attorney, you may be eligible for free legal services from a nonprofit legal services program. You can locate these nonprofit groups at the California Legal Services Web site (www.lawhelpcalifornia.org), the California Courts Online Self-Help Center (www.courtinfo.ca.gov/selfhelp), or by contacting your local court or county bar association. **NOTE:** The court has a statutory lien for waived fees and costs on any settlement or arbitration award of $10,000 or more in a civil case. The court's lien must be paid before the court will dismiss the case.
*¡AVISO! Lo han demandado. Si no responde dentro de 30 días, la corte puede decidir en su contra sin escuchar su versión. Lea la información a continuación.*

*Tiene 30 DÍAS DE CALENDARIO después de que le entreguen esta citación y papeles legales para presentar una respuesta por escrito en esta corte y hacer que se entregue una copia al demandante. Una carta o una llamada telefónica no lo protegen. Su respuesta por escrito tiene que estar en formato legal correcto si desea que procesen su caso en la corte. Es posible que haya un formulario que usted pueda usar para su respuesta. Puede encontrar estos formularios de la corte y más información en el Centro de Ayuda de las Cortes de California (www.sucorte.ca.gov), en la biblioteca de leyes de su condado o en la corte que le quede más cerca. Si no puede pagar la cuota de presentación, pida al secretario de la corte que le dé un formulario de exención de pago de cuotas. Si no presenta su respuesta a tiempo, puede perder el caso por incumplimiento y la corte le podrá quitar su sueldo, dinero y bienes sin más advertencia.*

*Hay otros requisitos legales. Es recomendable que llame a un abogado inmediatamente. Si no conoce a un abogado, puede llamar a un servicio de remisión a abogados. Si no puede pagar a un abogado, es posible que cumpla con los requisitos para obtener servicios legales gratuitos de un programa de servicios legales sin fines de lucro. Puede encontrar estos grupos sin fines de lucro en el sitio web de California Legal Services, (www.lawhelpcalifornia.org), en el Centro de Ayuda de las Cortes de California, (www.sucorte.ca.gov) o poniéndose en contacto con la corte o el colegio de abogados locales. AVISO: Por ley, la corte tiene derecho a reclamar las cuotas y los costos exentos por imponer un gravamen sobre cualquier recuperación de $10,000 ó más de valor recibida mediante un acuerdo o una concesión de arbitraje en un caso de derecho civil. Tiene que pagar el gravamen de la corte antes de que la corte pueda desechar el caso.*

| The name and address of the court is: | CASE NUMBER: (Número del Caso): |
|---|---|
| *(El nombre y dirección de la corte es):*<br>Superior Court of California, County of Los Angeles<br>300 East Olive<br>Burbank, California 91502 | **EC 068369** |

The name, address, and telephone number of plaintiff's attorney, or plaintiff without an attorney, is: Joseph R. Manning
*(El nombre, la dirección y el número de teléfono del abogado del demandante, o del demandante que no tiene abogado, es):*
The Law Offices of Joseph R. Manning, Jr.
4667 MACARTHUR BLVD STE 150, NEWPORT BEACH, CA 92660-8860          949-200-8755

| DATE: APR 0 5 2018 | SHERRI R. CARTER<br>EXECUTIVE OFFICER/CLERK | Clerk, by | **H. HANKINS** | , Deputy |
|---|---|---|---|---|
| *(Fecha)* | | *(Secretario)* | | *(Adjunto)* |

*(For proof of service of this summons, use Proof of Service of Summons (form POS-010).)*
*(Para prueba de entrega de esta citatión use el formulario Proof of Service of Summons, (POS-010)).*

**NOTICE TO THE PERSON SERVED:** You are served
1. ☐ as an individual defendant.
2. ☐ as the person sued under the fictitious name of *(specify):*
  *Potato Corner LA Group, LLC, a*
3. ☑ on behalf of *(specify):* California Corporation

under: ☑ CCP 416.10 (corporation)          ☐ CCP 416.60 (minor)
       ☐ CCP 416.20 (defunct corporation)  ☐ CCP 416.70 (conservatee)
       ☐ CCP 416.40 (association or partnership) ☐ CCP 416.90 (authorized person)
       ☐ other *(specify):*
4. ☐ by personal delivery on *(date):*

Page 1 of 1

Form Adopted for Mandatory Use
Judicial Council of California
SUM-100 (Rev. July 1, 2009)

**SUMMONS**

Code of Civil Procedure §§ 412.20, 465
www.courtinfo.ca.gov
Westlaw Doc & Form Builder

16:55:56 2018-04-04
Opt-Out: Not Defined

**Exhibit 1413 - 0009**

To: 18668438308      From: (5627530508)

04/06/18 10:35 AM    Page 4 of 7

04/0.  :018 16:39    #422 P.002/024

CM-010

| ATTORNEY OR PARTY WITHOUT ATTORNEY *(Name, State Bar number, and address):* | FOR COURT USE ONLY |
|---|---|
| Joseph R. Manning    SBN: 223381 The Law Offices of Joseph R. Manning, Jr. 4667 MACARTHUR BLVD STE 150, NEWPORT BEACH, CA 92660- TELEPHONE NO. 949-200-8755    FAX NO. 866-843-8308 ATTORNEY FOR *(Name):* Perla Mageno | **CONFORMED COPY ORIGINAL FILED** SUPERIOR COURT OF CALIFORNIA COUNTY OF LOS ANGELES |

SUPERIOR COURT OF CALIFORNIA, COUNTY OF LOS ANGELES
STREET ADDRESS: 300 East Olive
MAILING ADDRESS: 300 East Olive
CITY AND ZIP CODE: Burbank, 91502
BRANCH NAME: Burbank Courthouse

**APR 05 2018**

Sherri R. Carter, Executive Officer/Clerk
BY _____, Deputy
Heidi Hankins

CASE NAME: Perla Mageno v. Potato Corner LA Group LLC., et al.

| **CIVIL CASE COVER SHEET** | | **Complex Case Designation** | CASE NUMBER: |
|---|---|---|---|
| [X] Unlimited (Amount demanded exceeds $25,000) | [ ] Limited (Amount demanded is $25,000 or less) | [ ] Counter  [ ] Joinder Filed with first appearance by defendant (Cal. Rules of Court, rule 3.402) | **EC 068369** |
| | | | JUDGE: |
| | | | DEPT: |

*Items 1–6 below must be completed (see instructions on page 2).*

1. Check one box below for the case type that best describes this case:

| Auto Tort | Contract | Provisionally Complex Civil Litigation (Cal. Rules of Court, rules 3.400–3.403) |
|---|---|---|
| [ ] Auto (22) | [ ] Breach of contract/warranty (06) | [ ] Antitrust/Trade regulation (03) |
| [ ] Uninsured motorist (46) | [ ] Rule 3.740 collections (09) | [ ] Construction defect (10) |
| **Other PI/PD/WD (Personal Injury/Property Damage/Wrongful Death) Tort** | [ ] Other collections (09) | [ ] Mass tort (40) |
| [ ] Asbestos (04) | [ ] Insurance coverage (18) | [ ] Securities litigation (28) |
| [ ] Product liability (24) | [ ] Other contract (37) | [ ] Environmental/Toxic tort (30) |
| [ ] Medical malpractice (45) | **Real Property** | [ ] Insurance coverage claims arising from the above listed provisionally complex case types (41) |
| [ ] Other PI/PD/WD (23) | [ ] Eminent domain/Inverse condemnation (14) | |
| **Non-PI/PD/WD (Other) Tort** | [ ] Wrongful eviction (33) | **Enforcement of Judgment** |
| [ ] Business tort/unfair business practice (07) | [ ] Other real property (26) | [ ] Enforcement of judgment (20) |
| [X] Civil rights (08) | **Unlawful Detainer** | **Miscellaneous Civil Complaint** |
| [ ] Defamation (13) | [ ] Commercial (31) | [ ] RICO (27) |
| [ ] Fraud (16) | [ ] Residential (32) | [ ] Other complaint *(not specified above)* (42) |
| [ ] Intellectual property (19) | [ ] Drugs (38) | **Miscellaneous Civil Petition** |
| [ ] Professional negligence (25) | **Judicial Review** | [ ] Partnership and corporate governance (21) |
| [ ] Other non-PI/PD/WD tort (35) | [ ] Asset forfeiture (05) | [ ] Other petition *(not specified above)* (43) |
| **Employment** | [ ] Petition re: arbitration award (11) | |
| [ ] Wrongful termination (36) | [ ] Writ of mandate (02) | |
| [ ] Other employment (15) | [ ] Other judicial review (39) | |

2. This case [ ] is  [X] is not  complex under rule 3.400 of the California Rules of Court. If the case is complex, mark the factors requiring exceptional judicial management:
   a. [ ] Large number of separately represented parties
   b. [ ] Extensive motion practice raising difficult or novel issues that will be time-consuming to resolve
   c. [ ] Substantial amount of documentary evidence
   d. [ ] Large number of witnesses
   e. [ ] Coordination with related actions pending in one or more courts in other counties, states, or countries, or in a federal court
   f. [ ] Substantial postjudgment judicial supervision

3. Remedies sought *(check all that apply):* a. [X] monetary  b. [X] nonmonetary; declaratory or injunctive relief  c. [ ] punitive
4. Number of causes of action *(specify):* 1; ONE
5. This case [ ] is  [X] is not  a class action suit.
6. If there are any known related cases, file and serve a notice of related case. *(You may use form CM-015.)*

Date: 04/04/2018

Joseph R. Manning
(TYPE OR PRINT NAME)                 (SIGNATURE OF PARTY OR ATTORNEY FOR PARTY)

**NOTICE**
- Plaintiff must file this cover sheet with the first paper filed in the action or proceeding (except small claims cases or cases filed under the Probate Code, Family Code, or Welfare and Institutions Code). (Cal. Rules of Court, rule 3.220.) Failure to file may result in sanctions.
- File this cover sheet in addition to any cover sheet required by local court rule.
- If this case is complex under rule 3.400 et seq. of the California Rules of Court, you must serve a copy of this cover sheet on all other parties to the action or proceeding.
- Unless this is a collections case under rule 3.740 or a complex case, this cover sheet will be used for statistical purposes only.

Page 1 of 2

| Form Adopted for Mandatory Use Judicial Council of California CM-010 [Rev. July 1, 2007] | **CIVIL CASE COVER SHEET** | Cal. Rules of Court, rules 2.30, 3.220, 3.400–3.403, 3.740; Cal. Standards of Judicial Administration, std. 3.10 www.courtinfo.ca.gov Westlaw Doc & Form Builder |

16:55:56 2018-04-04
Opt-Out: Not Defined

**Exhibit 1413 - 0010**

CM-010

## INSTRUCTIONS ON HOW TO COMPLETE THE COVER SHEET

**To Plaintiffs and Others Filing First Papers.** If you are filing a first paper (for example, a complaint) in a civil case, you **must** complete and file, along with your first paper, the *Civil Case Cover Sheet* contained on page 1. This information will be used to compile statistics about the types and numbers of cases filed. You must complete items 1 through 6 on the sheet. In item 1, you must check **one** box for the case type that best describes the case. If the case fits both a general and a more specific type of case listed in item 1, check the more specific one. If the case has multiple causes of action, check the box that best indicates the **primary** cause of action. To assist you in completing the sheet, examples of the cases that belong under each case type in item 1 are provided below. A cover sheet must be filed only with your initial paper. Failure to file a cover sheet with the first paper filed in a civil case may subject a party, its counsel, or both to sanctions under rules 2.30 and 3.220 of the California Rules of Court.

**To Parties in Rule 3.740 Collections Cases.** A "collections case" under rule 3.740 is defined as an action for recovery of money owed in a sum stated to be certain that is not more than $25,000, exclusive of interest and attorney's fees, arising from a transaction in which property, services, or money was acquired on credit. A collections case does not include an action seeking the following: (1) tort damages, (2) punitive damages, (3) recovery of real property, (4) recovery of personal property, or (5) a prejudgment writ of attachment. The identification of a case as a rule 3.740 collections case on this form means that it will be exempt from the general time-for-service requirements and case management rules, unless a defendant files a responsive pleading. A rule 3.740 collections case will be subject to the requirements for service and obtaining a judgment in rule 3.740.

**To Parties in Complex Cases.** In complex cases, parties must also use the *Civil Case Cover Sheet* to designate whether the case is complex. If a plaintiff believes the case is complex under rule 3.400 of the California Rules of Court, this must be indicated by completing the appropriate boxes in items 1 and 2. If a plaintiff designates a case as complex, the cover sheet must be served with the complaint on all parties to the action. A defendant may file and serve no later than the time of its first appearance a joinder in the plaintiff's designation, a counter-designation that the case is not complex, or, if the plaintiff has made no designation, a designation that the case is complex.

### CASE TYPES AND EXAMPLES

**Auto Tort**
 Auto (22)–Personal Injury/Property
  Damage/Wrongful Death
 Uninsured Motorist (46) *(if the
  case involves an uninsured
  motorist claim subject to
  arbitration, check this item
  instead of Auto)*

**Other PI/PD/WD (Personal Injury/
Property Damage/Wrongful Death)
Tort**
 Asbestos (04)
  Asbestos Property Damage
  Asbestos Personal Injury/
   Wrongful Death
 Product Liability *(not asbestos or
  toxic/environmental)* (24)
 Medical Malpractice (45)
  Medical Malpractice–
   Physicians & Surgeons
  Other Professional Health Care
   Malpractice
 Other PI/PD/WD (23)
  Premises Liability (e.g., slip
   and fall)
  Intentional Bodily Injury/PD/WD
   (e.g., assault, vandalism)
  Intentional Infliction of
   Emotional Distress
  Negligent Infliction of
   Emotional Distress
  Other PI/PD/WD

**Non-PI/PD/WD (Other) Tort**
 Business Tort/Unfair Business
  Practice (07)
 Civil Rights (e.g., discrimination,
  false arrest) *(not civil
  harassment)* (08)
 Defamation (e.g., slander, libel)
  (13)
 Fraud (16)
 Intellectual Property (19)
 Professional Negligence (25)
  Legal Malpractice
  Other Professional Malpractice
   *(not medical or legal)*
 Other Non-PI/PD/WD Tort (35)

**Employment**
 Wrongful Termination (36)
 Other Employment (15)

**Contract**
 Breach of Contract/Warranty (06)
  Breach of Rental/Lease
   Contract *(not unlawful detainer
    or wrongful eviction)*
  Contract/Warranty Breach–Seller
   Plaintiff *(not fraud or negligence)*
  Negligent Breach of Contract/
   Warranty
  Other Breach of Contract/Warranty
 Collections (e.g., money owed, open
  book accounts) (09)
  Collection Case–Seller Plaintiff
  Other Promissory Note/Collections
   Case
 Insurance Coverage *(not provisionally
  complex)* (18)
  Auto Subrogation
  Other Coverage
 Other Contract (37)
  Contractual Fraud
  Other Contract Dispute

**Real Property**
 Eminent Domain/Inverse
  Condemnation (14)
 Wrongful Eviction (33)
 Other Real Property (e.g., quiet title) (26)
  Writ of Possession of Real Property
  Mortgage Foreclosure
  Quiet Title
  Other Real Property *(not eminent
   domain, landlord/tenant, or
   foreclosure)*

**Unlawful Detainer**
 Commercial (31)
 Residential (32)
 Drugs (38) *(it the case involves illegal
  drugs, check this item; otherwise,
  report as Commercial or Residential)*

**Judicial Review**
 Asset Forfeiture (05)
 Petition Re: Arbitration Award (11)
 Writ of Mandate (02)
  Writ–Administrative Mandamus
  Writ–Mandamus on Limited Court
   Case Matter
  Writ–Other Limited Court Case
   Review
 Other Judicial Review (39)
  Review of Health Officer Order
  Notice of Appeal–Labor
   Commissioner Appeals

**Provisionally Complex Civil Litigation (Cal.
Rules of Court Rules 3.400–3.403)**
 Antitrust/Trade Regulation (03)
 Construction Defect (10)
 Claims Involving Mass Tort (40)
 Securities Litigation (28)
 Environmental/Toxic Tort (30)
 Insurance Coverage Claims
  *(arising from provisionally complex
  case type listed above)* (41)

**Enforcement of Judgment**
 Enforcement of Judgment (20)
  Abstract of Judgment (Out of
   County)
  Confession of Judgment *(non-
   domestic relations)*
  Sister State Judgment
  Administrative Agency Award
   *(not unpaid taxes)*
  Petition/Certification of Entry of
   Judgment on Unpaid Taxes
  Other Enforcement of Judgment
   Case

**Miscellaneous Civil Complaint**
 RICO (27)
 Other Complaint *(not specified
  above)* (42)
  Declaratory Relief Only
  Injunctive Relief Only *(non-
   harassment)*
  Mechanics Lien
  Other Commercial Complaint
   Case *(non-tort/non-complex)*
  Other Civil Complaint
   *(non-tort/non-complex)*

**Miscellaneous Civil Petition**
 Partnership and Corporate
  Governance (21)
 Other Petition *(not specified
  above)* (43)
  Civil Harassment
  Workplace Violence
  Elder/Dependent Adult
   Abuse
  Election Contest
  Petition for Name Change
  Petition for Relief From Late
   Claim
  Other Civil Petition

CM-010 [Rev. July 1, 2007]

**CIVIL CASE COVER SHEET**

Page 2 of 2

**Exhibit 1413 - 0011**

To: 18668438308          From: (5627530508)          04/06/18 10:36 AM    Page 5 of 7

| SUPERIOR COURT OF CALIFORNIA COUNTY OF LOS ANGELES | RESERVED FOR CLERK FILE STAMP |
|---|---|
| North Central District<br>300 East Olive Avenue<br>Burbank, CA 91502 | **CONFORMED COPY**<br>**ORIGINAL FILED**<br>SUPERIOR COURT OF CALIFORNIA<br>COUNTY OF LOS ANGELES<br><br>**APR 05 2018**<br><br>Sherri R. Carter, Executive Officer/Clerk<br>BY _____ , Deputy<br>Heidi Hankins |
| **NOTICE OF ORDER TO SHOW CAUSE RE FAILURE TO COMPLY WITH TRIAL COURT DELAY REDUCTION ACT** | CASE NUMBER:<br>**EC 068369** |

**TO THE PLAINTIFF(S) AND/OR THEIR ATTORNEY(S) OF RECORD:**

Pursuant to California Rules of Court, Rule 3.110, all complaints shall be served and a proof of service thereof shall be filed within 60 days of the date the complaint is filed, unless the defendant makes an appearance within that 60 days. Plaintiff's failure to meet this deadline may result in sanctions.

**PLEASE TAKE NOTE** that this matter is set for an Order to Show Cause why the plaintiff should not be sanctioned for failure to comply with the rules described above on:

| Date:  JUN 19 2018 | Time: 8:30 am | Dept: BURBANK NC – A   B |
|---|---|---|
| Address: 300 EAST OLIVE AVENUE , BURBANK, CA 91502 | | |

At such time and place, the Court may (1) impose such sanctions as are authorized by law, including dismissal for failure to prosecute (Code of Civil Procedure Section 583.150 and Government Code Section 68608(b)) and (2) make further appropriate orders regarding the preparation of the case for trial.

**PLEASE TAKE FURTHER NOTICE** that no appearance is necessary at the hearing set forth above if there is (1) a proof of service filed and/or (2) an appearance in the action (i.e. by answer, demurrer, or motion contesting jurisdiction) by each named defendant BEFORE the date set for hearing. Plaintiff's appearance is MANDATORY, however, if any named defendants remain unserved at the date set for the hearing.

Date:  APR 05 2018

_____
Judge of the Superior Court
DARRELL MAVIS

**CERTIFICATE OF SERVICE**

I, the below named Executive Officer/Clerk of the above-entitled court, do hereby certify that I am not a party to the cause herein, and that on this date I served the NOTICE OF ORDER TO SHOW CAUSE RE FAILURE TO COMPLY WITH TRIAL COURT DELAY REDUCTION ACT upon each party or counsel named below:

☐  By depositing in the United States mail at the courthouse in Burbank, California, one copy of the original filed herein in a separate sealed envelope to each address as shown below with the postage thereon fully prepaid.

☒  By personally giving the party a copy of this notice upon filing of the complaint.

| | |
|---|---|
| | |
| | |

Date:  APR 05 2018                    SHERRI R. CARTER, Executive Officer / Clerk

By: _____ , Deputy Clerk
H. HANKINS

NOTICE OF ORDER TO SHOW CAUSE RE FAILURE TO COMPLY WITH TRIAL COURT DELAY REDUCTION ACT

Opt-Out: Not Defined

**Exhibit 1413 - 0012**

To: 18668438308    From: (5627530508)    04/06/18 10:37 AM    Page 6 of 7

## SUPERIOR COURT OF CALIFORNIA
## COUNTY OF LOS ANGELES

COURTHOUSE ADDRESS:
300 EAST OLIVE AVENUE, BURBANK, CA 91502

PLAINTIFF:

DEFENDANT:

**NOTICE OF CASE MANAGEMENT CONFERENCE**

Reserved for Clerk's File Stamp
**CONFORMED COPY
ORIGINAL FILED**
SUPERIOR COURT OF CALIFORNIA
COUNTY OF LOS ANGELES

**APR 05 2018**

Sherri R. Carter, Executive Officer/Clerk
BY _____ Deputy
H. Hankins

CASE NUMBER:
**EC 068369**

TO THE PLAINTIFF(S)/ATTORNEY(S) FOR PLAINTIFF(S) OF RECORD:

You are ordered to serve this notice of hearing on all parties/attorneys of record forthwith, and meet and confer with all parties/attorneys of record about the matters to be discussed no later than 30 days before the Case Management Conference.

Your Case Management Conference has been scheduled at the courthouse address shown above on:

Date: SEP 05 2018    Time: 8:30 A.M.    Dept.: NC-A/NC-B

NOTICE TO DEFENDANT:    THE SETTING OF THE CASE MANAGEMENT CONFERENCE DOES NOT EXEMPT THE DEFENDANT FROM FILING A RESPONSIVE PLEADING AS REQUIRED BY LAW.

Pursuant to California Rules of Court, rules 3.720-3.730, a completed Case Management Statement (Judicial Council form # CM-110) must be filed at least 15 calendar days prior to the Case Management Conference. The Case Management Statement may be filed jointly by all parties/attorneys of record or individually by each party/attorney of record. You must be familiar with the case and be fully prepared to participate effectively in the Case Management Conference.

At the Case Management Conference, the Court may make pretrial orders including the following, but not limited to, an order establishing a discovery schedule; an order referring the case to Alternative Dispute Resolution (ADR); an order reclassifying the case; an order setting subsequent conference and the trial date; or other orders to achieve the goals of the Trial Court Delay Reduction Act (Gov. Code, § 68600 et seq.)

Notice is hereby given that if you do not file the Case Management Statement or appear and effectively participate at the Case Management Conference, the Court may impose sanctions, pursuant to LASC Local Rule 3.37, Code of Civil Procedure sections 177.5, 575.2, 583.150, 583.360 and 583.410, Government Code section 68608, subdivision (b), and California Rules of Court, rule 2.2 et seq.

Dated: APR 05 2018                    _____ DARRELL MAVIS
                                        Judicial Officer

## CERTIFICATE OF SERVICE

I, the below named Executive Officer/Clerk of the above-entitled court, do hereby certify that I am not a party to the cause herein, and that on this date I served the Notice of Case Management Conference upon each party or counsel named below:

☐ by depositing in the United States mail at the courthouse in ____BURBANK____, California, one copy of the original filed herein in a separate sealed envelope to each address as shown below with the postage thereon fully prepaid.

☑ by personally giving the party notice upon filing of the complaint.

SHERRI R. CARTER, Executive/Officer Clerk

Dated: APR 05 2018                    By _____
                                        Deputy Clerk
                                        H. HANKINS

LACIV 132 (Rev. 07/13)                    **NOTICE OF**                    Cal. Rules of Court, rules 3.720-3.730
LASC Approved 10-03              **CASE MANAGEMENT CONFERENCE**            LASC Local Rules, Chapter Three
For Optional Use

Opt-Out: Not Defined

**Exhibit 1413 - 0013**

## SUPERIOR COURT OF CALIFORNIA, COUNTY OF LOS ANGELES
### NOTICE OF CASE ASSIGNMENT - UNLIMITED CIVIL CASE

Case Number     EC 068369

#### THIS FORM IS TO BE SERVED WITH THE SUMMONS AND COMPLAINT

Your case is assigned for all purposes to the judicial officer indicated below.

| ASSIGNED JUDGE | DEPT | ROOM | | ASSIGNED JUDGE | DEPT | ROOM |
|---|---|---|---|---|---|---|
| WILLIAM D. STEWART | A | BUR | | RALPH C. HOFER | D | GLN |
| BENNY C. OSORIO | B | BUR | | LAURA A. MATZ | E | GLN |
| | | | | | | |
| | | | | | | |
| | | | | | | |
| | | | | | | |
| | | | | | | |
| | | | | | | |
| | | | | | | |
| | | | | | | |
| | | | | | | |
| | | | | | | |
| | | | | | | |
| | | | | | | |
| | | | | | | |
| | | | | | | |
| | | | | | | |
| | | | | *Provisional complex (non-class action) case assignment pending complex determination | 309 | Supervising Judge CCW |

Given to the Plaintiff/Cross-Complainant/Attorney of Record on _____ APR 0 5 2018 _____
(Date)

SHERRI R. CARTER, Executive Officer/Clerk of Court

By _____ HHawking _____ , Deputy Clerk
H. HANKINS

LACIV 190 (Rev 12/17)          **NOTICE OF CASE ASSIGNMENT – UNLIMITED CIVIL CASE**
LASC Approved 05/06

Opt-Out: Not Defined

**Exhibit 1413 - 0014**

| SHORT TITLE Perla Mageno v. Potato Corner LA Group LLC., et al. | CASE NUMBER |
|---|---|

## CIVIL CASE COVER SHEET ADDENDUM AND
## STATEMENT OF LOCATION
### (CERTIFICATE OF GROUNDS FOR ASSIGNMENT TO COURTHOUSE LOCATION)

This form is required pursuant to Local Rule 2.3 in all new civil case filings in the Los Angeles Superior Court.

**Step 1:** After completing the Civil Case Cover Sheet (Judicial Council form CM-010), find the exact case type in Column A that corresponds to the case type indicated in the Civil Case Cover Sheet.

**Step 2:** In Column B, check the box for the type of action that best describes the nature of the case.

**Step 3:** In Column C, circle the number which explains the reason for the court filing location you have chosen.

**Applicable Reasons for Choosing Court Filing Location (Column C)**

1. Class actions must be filed in the Stanley Mosk Courthouse, Central District.

2. Permissive filing in central district.

3. Location where cause of action arose.

4. Mandatory personal injury filing in North District.

5. Location where performance required or defendant resides.

6. Location of property or permanently garaged vehicle.

7. Location where petitioner resides.

8. Location wherein defendant/respondent functions wholly.

9. Location where one or more of the parties reside.

10. Location of Labor Commissioner Office.

11. Mandatory filing location (Hub Cases – unlawful detainer, limited non-collection, limited collection, or personal injury).

| | A<br>Civil Case Cover Sheet<br>Category No. | B<br>Type of Action<br>(Check only one) | C<br>Applicable Reasons -<br>See Step 3 Above |
|---|---|---|---|
| Auto Tort | Auto (22) | ☐ A7100  Motor Vehicle - Personal Injury/Property Damage/Wrongful Death | 1, 4, 11 |
| | Uninsured Motorist (46) | ☐ A7110  Personal Injury/Property Damage/Wrongful Death – Uninsured Motorist | 1, 4, 11 |
| Other Personal Injury/ Property Damage/ Wrongful Death Tort | Asbestos (04) | ☐ A6070  Asbestos Property Damage | 1, 11 |
| | | ☐ A7221  Asbestos - Personal Injury/Wrongful Death | 1, 11 |
| | Product Liability (24) | ☐ A7260  Product Liability (not asbestos or toxic/environmental) | 1, 4, 11 |
| | Medical Malpractice (45) | ☐ A7210  Medical Malpractice - Physicians & Surgeons | 1, 4, 11 |
| | | ☐ A7240  Other Professional Health Care Malpractice | 1, 4, 11 |
| | Other Personal Injury Property Damage Wrongful Death (23) | ☐ A7250  Premises Liability (e.g., slip and fall) | 1, 4, 11 |
| | | ☐ A7230  Intentional Bodily Injury/Property Damage/Wrongful Death (e.g., assault, vandalism, etc.) | 1, 4, 11 |
| | | ☐ A7270  Intentional Infliction of Emotional Distress | 1, 4, 11 |
| | | ☐ A7220  Other Personal Injury/Property Damage/Wrongful Death | 1, 4, 11 |

CIVIL CASE COVER SHEET ADDENDUM
AND STATEMENT OF LOCATION

**Exhibit 1413 - 0015**

| SHORT TITLE: Perla Mageno v. Potato Corner LA Group LLC., et al. | | CASE NUMBER |
|---|---|---|

| | A<br>Civil Case Cover Sheet<br>Category No. | B<br>Type of Action<br>(Check only one) | C Applicable<br>Reasons - See Step 3<br>Above |
|---|---|---|---|
| **Non-Personal Injury/ Property Damage/ Wrongful Death Tort** | Business Tort (07) | ☐ A6029  Other Commercial/Business Tort (not fraud/breach of contract) | 1, 2, 3 |
| | Civil Rights (08) | ☒ A6005  Civil Rights/Discrimination | 1, 2, 3 |
| | Defamation (13) | ☐ A6010  Defamation (slander/libel) | 1, 2, 3 |
| | Fraud (16) | ☐ A6013  Fraud (no contract) | 1, 2, 3 |
| | Professional Negligence (25) | ☐ A6017  Legal Malpractice | 1, 2, 3 |
| | | ☐ A6050  Other Professional Malpractice (not medical or legal) | 1, 2, 3 |
| | Other (35) | ☐ A6025  Other Non-Personal Injury/Property Damage tort | 1, 2, 3 |
| **Employment** | Wrongful Termination (36) | ☐ A6037  Wrongful Termination | 1, 2, 3 |
| | Other Employment (15) | ☐ A6024  Other Employment Complaint Case | 1, 2, 3 |
| | | ☐ A6109  Labor Commissioner Appeals | 10 |
| **Contract** | Breach of Contract/ Warranty (06)<br>(not insurance) | ☐ A6004  Breach of Rental/Lease Contract (not unlawful detainer or wrongful eviction) | 2, 5 |
| | | ☐ A6008  Contract/Warranty Breach -Seller Plaintiff (no fraud/negligence) | 2, 5 |
| | | ☐ A6019  Negligent Breach of Contract/Warranty (no fraud) | 1, 2, 5 |
| | | ☐ A6028  Other Breach of Contract/Warranty (not fraud or negligence) | 1, 2, 5 |
| | Collections (09) | ☐ A6002  Collections Case-Seller Plaintiff | 5, 6, 11 |
| | | ☐ A6012  Other Promissory Note/Collections Case | 5, 11 |
| | | ☐ A6034  Collections Case-Purchased Debt (Charged Off Consumer Debt Purchased on or after January 1, 2014) | 5, 6, 11 |
| | Insurance Coverage (18) | ☐ A6015  Insurance Coverage (not complex) | 1, 2, 5, 8 |
| | Other Contract (37) | ☐ A6009  Contractual Fraud | 1, 2, 3, 5 |
| | | ☐ A6031  Tortious Interference | 1, 2, 3, 5 |
| | | ☐ A6027  Other Contract Dispute(not breach/insurance/fraud/negligence) | 1, 2, 3, 8, 9 |
| **Real Property** | Eminent Domain/Inverse Condemnation (14) | ☐ A7300  Eminent Domain/Condemnation          Number of parcels_____ | 2, 6 |
| | Wrongful Eviction (33) | ☐ A6023  Wrongful Eviction Case | 2, 6 |
| | Other Real Property (26) | ☐ A6018  Mortgage Foreclosure | 2, 6 |
| | | ☐ A6032  Quiet Title | 2, 6 |
| | | ☐ A6060  Other Real Property (not eminent domain, landlord/tenant, foreclosure) | 2, 6 |
| **Unlawful Detainer** | Unlawful Detainer-Commercial (31) | ☐ A6021  Unlawful Detainer-Commercial (not drugs or wrongful eviction) | 6, 11 |
| | Unlawful Detainer-Residential (32) | ☐ A6020  Unlawful Detainer-Residential (not drugs or wrongful eviction) | 6, 11 |
| | Unlawful Detainer-Post-Foreclosure (34) | ☐ A6020F Unlawful Detainer-Post-Foreclosure | 2, 6, 11 |
| | Unlawful Detainer-Drugs (38) | ☐ A6022  Unlawful Detainer-Drugs | 2, 6, 11 |

LACIV 109 (Rev 2/16)
LASC Approved 03-04

**CIVIL CASE COVER SHEET ADDENDUM
AND STATEMENT OF LOCATION**

Local Rule 2.3
Page 2 of 4

Exhibit 1413 - 0016

| SHORT TITLE: Perla Mageno v. Potato Corner LA Group LLC., et al. | | CASE NUMBER |
|---|---|---|

| | **A**<br>Civil Case Cover Sheet<br>Category No. | **B**<br>Type of Action<br>(Check only one) | **C** Applicable<br>Reasons - See Step 3<br>Above |
|---|---|---|---|
| **Judicial Review** | Asset Forfeiture (05) | ☐ A6108  Asset Forfeiture Case | 2, 3, 6 |
| | Petition re Arbitration (11) | ☐ A6115  Petition to Compel/Confirm/Vacate Arbitration | 2, 5 |
| | Writ of Mandate (02) | ☐ A6151  Writ - Administrative Mandamus | 2, 8 |
| | | ☐ A6152  Writ - Mandamus on Limited Court Case Matter | 2 |
| | | ☐ A6153  Writ - Other Limited Court Case Review | 2 |
| | Other Judicial Review (39) | ☐ A6150  Other Writ /Judicial Review | 2, 8 |
| **Provisionally Complex Litigation** | Antitrust/Trade Regulation (03) | ☐ A6003  Antitrust/Trade Regulation | 1, 2, 8 |
| | Construction Defect (10) | ☐ A6007  Construction Defect | 1, 2, 3 |
| | Claims Involving Mass Tort (40) | ☐ A6006  Claims Involving Mass Tort | 1, 2, 8 |
| | Securities Litigation (28) | ☐ A6035  Securities Litigation Case | 1, 2, 8 |
| | Toxic Tort<br>Environmental (30) | ☐ A6036  Toxic Tort/Environmental | 1, 2, 3, 8 |
| | Insurance Coverage Claims<br>from Complex Case (41) | ☐ A6014  Insurance Coverage/Subrogation (complex case only) | 1, 2, 5, 8 |
| **Enforcement of Judgment** | Enforcement<br>of Judgment (20) | ☐ A6141  Sister State Judgment | 2, 5, 11 |
| | | ☐ A6160  Abstract of Judgment | 2, 6 |
| | | ☐ A6107  Confession of Judgment (non-domestic relations) | 2, 9 |
| | | ☐ A6140  Administrative Agency Award (not unpaid taxes) | 2, 8 |
| | | ☐ A6114  Petition/Certificate for Entry of Judgment on Unpaid Tax | 2, 8 |
| | | ☐ A6112  Other Enforcement of Judgment Case | 2, 8, 9 |
| **Miscellaneous Civil Complaints** | RICO (27) | ☐ A6033  Racketeering (RICO) Case | 1, 2, 8 |
| | Other Complaints<br>(Not Specified Above) (42) | ☐ A6030  Declaratory Relief Only | 1, 2, 8 |
| | | ☐ A6040  Injunctive Relief Only (not domestic/harassment) | 2, 8 |
| | | ☐ A6011  Other Commercial Complaint Case (non-tort/non-complex) | 1, 2, 8 |
| | | ☐ A6000  Other Civil Complaint (non-tort/non-complex) | 1, 2, 8 |
| **Miscellaneous Civil Petitions** | Partnership Corporation<br>Governance (21) | ☐ A6113  Partnership and Corporate Governance Case | 2, 8 |
| | Other Petitions (Not<br>Specified Above) (43) | ☐ A6121  Civil Harassment | 2, 3, 9 |
| | | ☐ A6123  Workplace Harassment | 2, 3, 9 |
| | | ☐ A6124  Elder/Dependent Adult Abuse Case | 2, 3, 9 |
| | | ☐ A6190  Election Contest | 2 |
| | | ☐ A6110  Petition for Change of Name/Change of Gender | 2, 7 |
| | | ☐ A6170  Petition for Relief from Late Claim Law | 2, 3, 8 |
| | | ☐ A6100  Other Civil Petition | 2, 9 |

**CIVIL CASE COVER SHEET ADDENDUM
AND STATEMENT OF LOCATION**

Exhibit 1413 - 0017

| SHORT TITLE: Perla Mageno v. Potato Corner LA Group LLC., et al. | CASE NUMBER |
|---|---|

**Step 4: Statement of Reason and Address:** Check the appropriate boxes for the numbers shown under Column C for the type of action that you have selected. Enter the address which is the basis for the filing location, including zip code. (No address required for class action cases).

| REASON: | ADDRESS: |
|---|---|
| ☒ 1. ☒ 2. ☒ 3. ☐ 4. ☐ 5. ☐ 6. ☐ 7. ☐ 8. ☐ 9. ☐ 10. ☐ 11. | 1521 S. Gladys Ave |

| CITY: | STATE: | ZIP CODE: |
|---|---|---|
| San Gabriel | Ca | 91766 |

**Step 5: Certification of Assignment:** I certify that this case is properly filed in the ___North Central___ District of the Superior Court of California, County of Los Angeles [Code Civ. Proc., §392 et seq., and Local Rule 2.3(a)(1)(E)].

Dated: 04/04/2018 _____

_____
(SIGNATURE OF ATTORNEY/FILING PARTY)

**PLEASE HAVE THE FOLLOWING ITEMS COMPLETED AND READY TO BE FILED IN ORDER TO PROPERLY COMMENCE YOUR NEW COURT CASE:**

1. Original Complaint or Petition.

2. If filing a Complaint, a completed Summons form for issuance by the Clerk.

3. Civil Case Cover Sheet, Judicial Council form CM-010.

4. Civil Case Cover Sheet Addendum and Statement of Location form, LACIV 109, LASC Approved 03-04 (Rev. 02/16).

5. Payment in full of the filing fee, unless there is court order for waiver, partial or scheduled payments.

6. A signed order appointing the Guardian ad Litem, Judicial Council form CIV-010, if the plaintiff or petitioner is a minor under 18 years of age will be required by Court in order to issue a summons.

7. Additional copies of documents to be conformed by the Clerk. Copies of the cover sheet and this addendum must be served along with the summons and complaint, or other initiating pleading in the case.

LACIV 109 (Rev 2/16)
LASC Approved 03-04

**CIVIL CASE COVER SHEET ADDENDUM
AND STATEMENT OF LOCATION**

Local Rule 2.3
Page 4 of 4

**Exhibit 1413 - 0018**

Joseph R. Manning, Jr., Esq. (State Bar No. 223381)
Michael J. Manning, Esq. (State Bar No. 286879)
Tristan P. Jankowski, Esq. (State Bar No. 290301)
MANNING LAW, APC
4667 MacArthur Blvd., Suite 150
Newport Beach, CA 92660
Office: (949) 200-8755
Fax: (866) 843-8308
ADAPracticeGroup@manninglawoffice.com

Attorneys for Plaintiff PERLA MAGENO

CONFORMED COPY
ORIGINAL FILED
SUPERIOR COURT OF CALIFORNIA
COUNTY OF LOS ANGELES

APR 05 2018

Sherri R. Carter, Executive Officer/Clerk
BY _____, Deputy
Heidi Ha~kins

SUPERIOR COURT OF CALIFORNIA

IN AND FOR THE COUNTY OF LOS ANGELES

PERLA MAGENO, an individual

    Plaintiff,

v.

POTATO CORNER LA GROUP LLC., a
California Corporation; and DOES 1-10,
inclusive,

    Defendants.

Case No.:  **EC 068369**

**COMPLAINT**

Plaintiff Perla Mageno ("Plaintiff") alleges the following upon information and belief based upon

personal knowledge:

**INTRODUCTION**

1.    Plaintiff is a visually-impaired and legally blind person who requires screen-reading

software to read website content using a computer.  Plaintiff uses the terms "blind" or "visually-

impaired" to refer to all people with visual impairments who meet the legal definition of blindness in

that they have a visual acuity with correction of less than or equal to 20 x 200.  Some blind people

who meet this definition have limited vision.  Others have no vision.

**Exhibit 1413 - 0019**

Joseph R. Manning, Jr., Esq. (State Bar No. 223381)
Michael J. Manning, Esq. (State Bar No. 286879)
Tristan P. Jankowski, Esq. (State Bar No. 290301)
**MANNING LAW, APC**
4667 MacArthur Blvd., Suite 150
Newport Beach, CA 92660
Office: (949) 200-8755
Fax: (866) 843-8308
ADAPracticeGroup@manninglawoffice.com

Attorneys for Plaintiff PERLA MAGENO

## SUPERIOR COURT OF CALIFORNIA

### IN AND FOR THE COUNTY OF LOS ANGELES

PERLA MAGENO, an individual

    Plaintiff,

v.

POTATO CORNER LA GROUP LLC., a
California Corporation; and DOES 1-10,
inclusive,

    Defendants.

Case No.:

**COMPLAINT**

Plaintiff Perla Mageno ("Plaintiff") alleges the following upon information and belief based upon personal knowledge:

### INTRODUCTION

1.    Plaintiff is a visually-impaired and legally blind person who requires screen-reading software to read website content using a computer. Plaintiff uses the terms "blind" or "visually-impaired" to refer to all people with visual impairments who meet the legal definition of blindness in that they have a visual acuity with correction of less than or equal to 20 x 200. Some blind people who meet this definition have limited vision. Others have no vision.

COMPLAINT

1

MANNING LAW, APC
4667 MACARTHUR BLVD., STE. 150
NEWPORT BEACH, CA 92660

Exhibit 1413 - 0020

2.     Plaintiff brings this civil rights action against Potato Corner ("Defendant") for its failure to design, construct, maintain, and operate its website www.potatocornerusa.com (the "website" or "Defendant's website") to be fully accessible to and independently usable by Plaintiff and other blind or visually-impaired people.  Defendant's denial of full and equal access to its website and therefore denial of its products and services offered thereby and in conjunction with its brick-and-mortar locations, is a violation of Plaintiff's rights under the California's Unruh Civil Rights Act ("UCRA").

3.     The California Legislature provided a clear and statewide mandate for the elimination of discrimination against individuals with disabilities when it enacted the Unruh Civil Rights Act, Cal. Civ. Code § 51, *et seq.* Discrimination sought to be eliminated by the Unruh Civil Rights Act ("UCRA") includes barriers to full integration, independent living and equal opportunity for individuals with disabilities, which then necessarily includes barriers created by websites and other places of public accommodation that are inaccessible to blind and visually-impaired individuals.

4.     Because Defendant's website is not equally, independently or fully accessible to blind and visually-impaired consumers in violation of the UCRA, Plaintiff seeks a permanent injunction to cause a change in Defendant's corporate policies, practices, and procedures so that Defendant's website will become and remain accessible to blind and visually-impaired consumers.

## JURISDICTION AND VENUE

5.     This Court has subject matter jurisdiction over this action. This Court has personal jurisdiction over Defendant because it conducted and continues to conduct substantial business in the State of California, County of Los Angeles, and Defendant's offending website is available throughout California.

6.     Venue is proper in this Court because Defendant conducts substantial business in this County. Venue is also proper because a substantial portion of the conduct complained of herein occurred in this District.

## PARTIES

7.     Plaintiff, at all times relevant and as alleged herein, is a resident of California, County of Los Angeles. Plaintiff is legally blind and cannot use a computer without the assistance of screen-

MANNING LAW, APC
4667 MACARTHUR BLVD., STE. 150
NEWPORT BEACH, CA 92660

Exhibit 1413 - 0021

reading software (otherwise known as a "screen-reader"). However, Plaintiff is a proficient user of the JAWS screen-reader and uses it to access the internet. Plaintiff has visited www.potatocornerusa.com on separate occasions using the JAWS screen-reader. During Plaintiff's separate visits to Defendant's website, Plaintiff encountered multiple access barriers which denied Plaintiff full and equal access to the facilities, goods and services offered to the public and made available to the public on Defendant's website. Due to the widespread access barriers Plaintiff encountered on Defendant's website, Plaintiff has been deterred, on a regular basis, from accessing the website.

8.    The access barriers Plaintiff encountered on Defendant's website have deterred Plaintiff from visiting Defendant's brick-and-mortar locations.

9.    Plaintiff is informed and believes, and thereon alleges Defendant is a company incorporated in California, and has its principal place of business in Los Angeles, CA. Defendant operates brick-and-mortar locations in Los Angeles County, California. Defendant's brick-and-mortar locations constitute places of public accommodation. Defendant's website provides consumers with access to an array of goods, services and information related to Defendant's brick-and-mortar locations including: restaurant locations, menu descriptions, employment opportunities and many other benefits.

10.    The true names and capacities of the Defendants sued herein as DOES 1 through 10, inclusive, are currently unknown to Plaintiff, who therefore sues such Defendants by fictitious names. Each of the Defendants designated herein as a DOE is legally responsible for the unlawful acts alleged herein. Plaintiff will seek leave of Court to amend this Complaint to reflect the true names and capacities of the DOE Defendants when such identities become known.

11.    At all relevant times as alleged herein, each and every Defendant was acting as an agent and/or employee of each of the other Defendants and was acting within the course and/or scope of said agency and/or employment with the full knowledge and consent of each of the Defendants. Each of the acts and/or omissions complained of herein were alleged and made known to, and ratified by, each of the other Defendants (Defendant, together with any DOE Defendants, are collectively referred to hereinafter as "Defendant" or "Defendants").

MANNING LAW, APC
4667 MACARTHUR BLVD., STE. 150
NEWPORT BEACH, CA 92660

Exhibit 1413 - 0022

## VISUALLY IMPAIRED PERSONS' ACCESS TO THE INTERNET

12.    The Internet has become a significant source of information, a portal, and a tool for conducting business, doing everyday activities such as shopping, learning, banking, researching, as well as many other activities for sighted, blind and visually-impaired persons alike.  As an essential tool for many Americans, when accessible, the Internet provides individuals with disabilities great independence.  Blind persons are able to access websites using keyboards in conjunction with screen access software that vocalizes the visual information found on a computer screen.  This technology is known as screen-reading software.  Except for legally blind individuals whose residual vision allows them to use magnification, screen-reading software is currently the only method a blind person can fully and independently access the internet.

13.    Blind and visually-impaired users of Windows computers and devices have several screen-reading software programs available to them.

14.    Job Access With Speech, otherwise known as "JAWS," is currently the most popular, separately purchased screen-reading software program available for Windows.

15.    For screen-reading software to function, the information on a website must be capable of being rendered into text.  If the website content is not capable of being rendered into text, the blind or visually-impaired user is unable to access the same content available to sighted users using their keyboards because they are unable to see the screen or manipulate a mouse.

16.    Screen-reading software is currently the only method a blind or visually-impaired person may independently access the internet, websites and other digital content.

17.    If the website content is not capable of being rendered into text, the blind or visually-impaired user is unable to access and navigate the same content on a website or mobile app that is available to sighted users.

18.    There are well-established industry adopted guidelines for making websites accessible to visually-impaired people who require screen-reading software programs. These guidelines have existed for at least several years and are successfully followed by large business entities who want to ensure their websites are accessible to all persons. The Web Accessibility Initiative ("WAI"), an initiative of the World Wide Web Consortium developed guidelines on website accessibility.

MANNING LAW, APC
4667 MACARTHUR BLVD., STE. 150
NEWPORT BEACH, CA 92660

Exhibit 1413 - 0023

Through Section 508 of the Rehabilitation Act, the federal government also promulgated website accessibility standards. These guidelines, easily found on the Internet, recommend several basic components for making websites accessible, including, but not limited to: adding invisible alt-text to graphics; ensuring all functions can be performed using a keyboard and not just a mouse; ensuring that image maps are accessible and adding headings so blind and visually-impaired people can navigate websites and mobile applications just as sighted people do. Without these basic components, websites and mobile applications are inaccessible to a blind person using screen-reading software.

19.    Common barriers encountered by blind and visually impaired persons include, but are not limited to, the following:

a. A text equivalent for every non-text element is not provided;

b. Title frames with text are not provided for identification and navigation;

c. Equivalent text is not provided when using scripts;

d. Forms with the same information and functionality as for sighted persons are not provided;

e. Information about the meaning and structure of content is not conveyed by more than the visual presentation of content;

f. Text cannot be resized without assistive technology up to 200 percent without loss of content or functionality;

g. If the content enforces a time limit, the user is not able to extend, adjust or disable it;

h. Web pages do not have titles that describe the topic or purpose;

i. The purpose of each link cannot be determined from the link text alone or from the link text and its programmatically determined link context;

j. One or more keyboard operable user interface lacks a mode of operation where the keyboard focus indicator is discernible;

k. The default human language of each web page cannot be programmatically determined;

l. When a component receives focus, it may initiate a change in context;

MANNING LAW, APC
4667 MACARTHUR BLVD., STE. 150
NEWPORT BEACH, CA 92660

COMPLAINT

5

Exhibit 1413 - 0024

m. Changing the setting of a user interface component may automatically cause a change of context where the user has not been advised before using the component;

n. Labels or instructions are not provided when content requires user input;

o. In content which is implemented by using markup languages, elements do not have complete start and end tags, elements are not nested according to their specifications, elements may contain duplicate attributes and/or any IDs are not unique;

p. Inaccessible Portable Document Format (PDFs); and,

q. The name and role of all User Interface elements cannot be programmatically determined; items that can be set by the user cannot be programmatically set; and/or notification of changes to these items is not available to user agents, including screen-reading software.

20.     Within this context, numerous courts have recognized the viability of Unruh and Americans with Disabilities Act (hereinafter "ADA") claims against commercial website owners/operators with regard to the accessibility of such websites. *See, e.g., Robles v. Yum! Brands, Inc. d/b/a Pizza Hut,* No. 2:16-cv-08211-ODW(SS) at *15. (C.D. Cal. Jan. 25, 2018) (Wright) (denying a motion for summary judgment sought against ADA and California's Unruh Civil Rights Act claims)("Pizza Hut cannot simply post a customer service phone number on its website and claim that it is in compliance with the ADA unless it shows that a visually impaired customer 'will not be excluded, denied services, segregated or otherwise treated differently' from non-visually impaired customers who are able to enjoy full access to Pizza Hut's website" [citations omitted]); *Andrews v. Blick Art Materials, LLC,* No. 1:17-cv-00767-JBW-RLM (E.D.N.Y. Dec. 21, 2017) (Weinstein, J.) (Memorandum and Order approving settlement of website accessibility case in the form of judgment); *Brooke v. Dinesh Bhakta,* No. 2:17-cv-2663-HRH at 5. (A.Z. Nov. 21, 2017) (granting declaratory judgment that defendant's website did not comply with ADA; defendant enjoined to ensure equal access) ("[D]efendants are hereby enjoined and directed to alter their website reservations system so that ADA-accessible rooms may be reserved in the same manner as non-

MANNING LAW, APC
4667 MACARTHUR BLVD., STE. 150
NEWPORT BEACH, CA 92660

**Exhibit 1413 - 0025**

ADA-accessible rooms."); *Rios v. New York & Company, Inc.*, No. 2:17-cv-04676-ODW (AGr) (C.D. Cal. Nov. 16, 2017) (Wright) (denying a motion for judgment on the pleadings sought against Unruh Act claims) ("[T]he Court finds that this case is not unique, 'as federal courts have resolved effective communication claims under the ADA in a variety of contexts— including cases involving allegations of unequal access to goods, benefits and services provided through websites.' Hobby Lobby, 2017 WL 2957736, at *7"); *Access Now, Inc. v. Blue Apron, LLC*, No. 17-cv-116-JL at 21. (C.D. N.H. November 8, 2017) (denying a motion to dismiss sought against ADA claims) ("[Plaintiffs] rely on Title III of the ADA as governing the defendant's potential liability and invoke compliance with the WCAG 2.0 AA standards as a sufficient condition, but not a necessary condition, for such compliance, and therefore as a potential remedy."); *Gorecki v. Dave & Buster's, Inc.*, No. 2:17-cv-01138-PSG-AGR (C.D. Cal. October 10, 2017) (Gutierrez, P.) (denying a motion for summary judgment sought against ADA and California's Unruh Civil Rights Act claims)("a finding of liability regarding the Website's compliance with the ADA does not require sophisticated technical expertise beyond the ability of the Court"); *Kayla Reed v. CVS Pharmacy, Inc.*, Case No. 2:17-cv-03877-MWF-SK, at *9. (C.D. Cal. Oct. 3, 2017) (Fitzgerald) (denying a motion to dismiss sought against ADA and California's Unruh Civil Rights Act claims) ("The DOJ's position that the ADA applies to websites being clear, it is no matter that the ADA and the DOJ fail to describe exactly how any given website must be made accessible to people with visual impairments. Indeed, this is often the case with the ADA's requirements, because the ADA and its implementing regulations are intended to give public accommodations maximum flexibility in meeting the statute's requirements. This flexibility is a feature, not a bug, and certainly not a violation of due process."); *Andrews v. Blick Art Materials, LLC*, -- F. Supp. 3d --, 2017 WL 3278898, at *12, *15-*18 (E.D.N.Y. Aug. 1, 2017) (Weinstein, J.); *Gomez v. Lego Systems, Inc.*, Case 1:17-cv-21628-CMA (S.D. Fla. July 31, 2017) (denying a motion to dismiss an ADA claim alleging an inaccessible commercial website) [ECF #40]; *Thurston v. Chino Commercial Bank, N.A.*, No. CV 17-01078 BRO (JCx), 2017 WL 3224681, at *5 (C.D. Cal. July 27, 2017) (citing *Gorecki*); *Markett v. Five Guys Enterprises LLC*, No. 1:17-cv-00788-KBF, slip op. at 4-6 [ECF #33] (S.D.N.Y. July 21, 2017); *Gorecki v. Hobby Lobby Stores, Inc.*, No. 2:17-cv-01131-JFW-SK, 2017 WL 2957736 (C.D. Cal.

MANNING LAW, APC
4667 MACARTHUR BLVD., STE. 150
NEWPORT BEACH, CA 92660

COMPLAINT
7

Exhibit 1413 - 0026

June 15, 2017) (Walter, J.) (denying a motion to dismiss sought against ADA and California's Unruh

Civil Rights Act claims) ("[T]his is a relatively straightforward claim that Hobby Lobby failed to

provide disabled individuals full and equal enjoyment of goods and services . . . by not maintaining a

fully accessible website. There is nothing unique about this case, as federal courts have resolved

effective communication claims under the ADA in a wide variety of contexts-- including cases

involving allegations of unequal access to goods, benefits and services provided through websites.");

*Gil v. Winn-Dixie Stores, Inc.*, No. 16-23020-Civ-Scola, -- F. Supp. 3d --, 2017 WL 2547242, at *7

(S.D. Fla. June 13, 2017) (finding that the defendant, a large supermarket chain, had violated the

plaintiff's rights under the ADA by failing to maintain an accessible website after a non-jury trial);

*Frazier v. Ameriserv Financial Bank*, Nos. 2:16-cv-01898-AJS (Lead Case), 17cv0031 [ECF #107],

slip op. at 20 (W.D. Pa. Apr. 21, 2017) (denying a motion to dismiss an ADA claim alleging an

inaccessible commercial website); *Frazier v. Churchill Downs Inc.*, Nos. 2:16-cv-01898-AJS (Lead

Case), 2:16-cv-0007 (Member Case) [ECF #107] slip op. at 20 (W.D. Pa. Apr. 21, 2017) (same);

*OmahaSteaks.com, Inc. v. Access Now, Inc., et al.*, No. 8:17-cv-00060-LSC-CRZ [ECF #9-1] (D.

Neb. Apr. 17, 2017) (consent decree); *Access Now, Inc., et al. v. Omahasteaks.com, Inc.*, Nos. 2:16-

cv-01898-AJS (Lead Case), 2:17-cv-00269-AJS (Member Case) [ECF #99] (W.D. Pa. Apr. 11, 2017

(same); *Gil v. Winn-Dixie Stores, Inc.*, -- F. Supp. 3d --, No. 16-23020-Civ-Scola, 2017 WL 2609330

(S.D. Fla. Mar. 15, 2017) (denying a motion for judgment on the pleadings sought against an ADA

claim alleging an inaccessible commercial website); *Nat'l Ass'n of the Deaf v. Harvard Univ.*, Case

3:15-cv-30023-MGM, 2016 WL 3561622, at *12-*20 (D. Mass. Feb. 9, 2016) (Robertson, Mag. J.)

(recommending the denial of a motion to dismiss or stay predicated on the primary jurisdiction

doctrine), *adopted in Nat'l Ass'n of the Deaf v. Harvard Univ.*, Case 3:15-cv-30023-MGM, 2016 WL

6540446, at *1-*3 (D. Mass. Nov. 3, 2016) (Mastroianni, J.); *Nat'l Ass'n of the Deaf v.

Massachusetts Inst. of Tech.*, Case 3:15- cv-30024-MGM, 2016 WL 3561631, at *1 (D. Mass. Feb. 9,

2016) (Robertson, Mag. J.)(recommending the denial of a motion to dismiss or stay predicated on the

primary jurisdiction doctrine), *adopted in Nat'l Ass'n of the Deaf v. Massachusetts Inst. of Tech.*,

Case 3:15-cv-30024-MGM, 2016 WL 6652471, at *1 (D. Mass. Nov. 4, 2016) (Mastroianni, J.);

*Edward Davis v. Orlando Wilshire Investments Ltd., et al.*, No. 5:15-cv-01738-MWF-KK, slip op. at

MANNING LAW, APC
4667 MACARTHUR BLVD., STE. 150
NEWPORT BEACH, CA 92660

**COMPLAINT**
8

**Exhibit 1413 - 0027**

10 [ECF #17] (C.D. Cal. Nov. 2, 2015) (Fitzgerald, J.) (denying motion to dismiss in a website accessibility case) ("the Court concludes that the Complaint sufficiently alleges that the inaccessibility of the Website impedes the full and equal enjoyment of the Hotel."); *Nat'l Fed'n of the Blind v. Scribd, Inc.*, 98 F. Supp.3d 565, 576 (D. Vt. 2015) (denying a motion to dismiss an ADA claim against a commercial website operator); *James Patrick Brown v. BPS Direct, LLC, et al.*, Case No. LACV 14-04622 JAK (JEMx) slip op. at 4-7 [ECF #30] (C.D. Cal. Oct. 6, 2014) (Kronstadt, J.) (denying the defendant's motion to dismiss while relying on the *Target* decision as "persuasive", and holding "the Complaint does allege that Bass Pro Shops is a chain of brick-and-mortar stores and that BassPro.com is a website providing information about Bass Pro Shops products, offers, and locations.... [and that] a nexus could be established here through discovery."); *Penney v. Kohl's Dep't Stores, Inc., et al.*, No. 8:14-cv-01100-CJC-DFM [ECF #12] slip op. at 3 (C.D. Cal. Sept. 23, 2014) (Carney, J.) (denying a motion to dismiss and stating, "Thus, the Complaint states plausible facts that establish the requisite nexus between the challenged service and the place of public accommodation."); *National Ass'n of the Deaf v. Netflix, Inc.*, 869 F. Supp. 2d 196, 200 (D. Mass. 2012) (excluding web-based services would "run afoul of the purposes of the ADA and would severely frustrate Congress's intent that individuals with disabilities fully enjoy the goods, services, privileges, and advantages available indiscriminately to other members of the general public"); *id.* at 200-01 ("[T]he legislative history of the ADA makes clear that Congress intended the ADA to adapt to changes in technology.") (quoting H.R. Rep. 101-485(II), at 108 (1990)) ("[T]he Committee intends that the types of accommodation and services provided to individuals with disabilities, under all of the titles of this bill, should keep pace with the rapidly changing technology of the times."); *Shields v. Walt Disney Parks and Resorts US, Inc.*, 279 F.R.D. 529, 559 (C.D. Cal. 2011) (rejecting as "unpersuasive" Disney's argument that "there is no accepted accessibility standard" and the argument that the DOJ has yet to determine what standards to apply to websites and stating, "The lack of a widely accepted standard for website accessibility does not preclude injunctive relief that would improve access to Defendants' websites by the visually impaired."); *Nat'l Federation of the Blind v. Target Corp.*, 452 F. Supp. 2d 946, 953 (N.D. Cal. 2006) ("To limit the ADA to discrimination in the provision of services occurring on the premises of a public accommodation

MANNING LAW, APC
4667 MacARTHUR BLVD., STE. 150
NEWPORT BEACH, CA 92660

**Exhibit 1413 - 0028**

would contradict the plain language of the statute."); *id.* at 953-54 ("consistent with the plain language of the statute, no court has held that under the nexus theory a plaintiff has a cognizable claim only if the challenged service prevents physical access to a public accommodation. Further, it is clear that the purpose of the statute is broader than mere physical access—seeking to bar actions or omissions which impair a disabled person's "full enjoyment" of services or goods of a covered accommodation. 42 U.S.C. § 12182(a). Indeed, the statute expressly states that the denial of equal "participation" or the provision of "separate benefit[s]" are actionable under Title III. *See* 42 U.S.C. § 12182(b)(1)(A)."); *cf. Hindel v. Husted*, No. 2017 WL 432839, at *7 (S.D. Ohio Feb. 1, 2017) (granting a permanent injunction against the Ohio Secretary of State based on the accessibility of the state's website under Title II of the ADA and requiring accessibility); *Hindel v. Husted*, No. 17-3207 (6th Cir., Nov. 13, 2017) (defendant bears the burden of production and persuasion as to affirmative defenses such as fundamental alteration and subject matter of state election laws do not relieve defendant of these burdens); *Davis v. BMI/BNB Travelware company* No. CIVDS1504682 WL2935482 (Cal.Super. March 21, 2016)(granting motion for summary judgment for plaintiff and ordering that defendant's website be made WCAG 2.0 compliant and awarding Unruh damages in favor of plaintiff).

21.  Each of Defendant's violations of the ADA is likewise a violation of the UCRA. Indeed, the UCRA provides that any violation of the ADA constitutes a violation of the UCRA. Cal. Civ. Code § 51(f).

## FACTUAL BACKGROUND

22.  Defendant offers the commercial website www.potatocornerusa.com, to the public.

23.  The website offers features which should allow all consumers to access the goods and services offered in connection with its brick-and-mortar locations.

24.  Defendant's website provides consumers with access to an array of goods, services and information related to Defendant's brick-and-mortar locations which include, but are not limited to, the following: restaurant locations, menu descriptions, employment opportunities and many other benefits.

25.  Based on information and belief, it is Defendant's policy and practice to deny Plaintiff,

MANNING LAW, APC
4667 MACARTHUR BLVD., STE. 150
NEWPORT BEACH, CA 92660

Exhibit 1413 - 0029

along with other blind or visually-impaired users, access to Defendant's website, and to therefore
specifically deny the goods and services that are offered and integrated with Defendant's brick-and-
mortar locations and otherwise.

26.     Due to Defendant's failure and refusal to remove access barriers to its website,
Plaintiff and visually-impaired persons have been and are still being denied equal access to
Defendant's brick-and-mortar locations and the numerous goods, services, privileges, and benefits
offered to the public through Defendant's website.

27.     Plaintiff cannot use a computer without the assistance of screen-reading software.

28.     However, Plaintiff is a proficient user of the JAWS screen-reader and uses it to access
the Internet.

29.     Plaintiff has visited Defendant's website on several separate occasions using the
JAWS screen-reader.

30.     During Plaintiff's separate visits to Defendant's website, Plaintiff encountered
multiple access barriers which denied Plaintiff full and equal access to the facilities, goods and
services offered to the public and made available to the public on Defendant's website.

31.     Due to the widespread access barriers Plaintiff encountered on Defendant's website,
Plaintiff has been deterred, on a regular basis, from accessing Defendant's website. Similarly, the
access barriers Plaintiff encountered on Defendant's website have deterred Plaintiff from visiting
Defendant's brick-and-mortar locations.

32.     While attempting to navigate www.potatocornerusa.com, Plaintiff encountered
multiple accessibility barriers for blind or visually-impaired people that include, but are not limited
to:

a.  The home page has graphics, links, and buttons that are not labeled or are
incorrectly labeled, or lack alternative text ("Alt-text"). Alt-text is invisible
code embedded beneath a graphical image on a website. Web accessibility
requires that alt-text be coded with each picture so that screen-reading software
can speak the alt-text where a sighted user sees pictures. Alt-text does not
change the visual presentation, but instead a text box shows when the cursor

MANNING LAW, APC
4667 MACARTHUR BLVD., STE. 150
NEWPORT BEACH, CA 92660

Exhibit 1413 - 0030

moves over the picture. The lack of alt-text on these graphics prevents screen readers from accurately vocalizing a description of the graphics;

b. Plaintiff encountered multiple unlabeled or mislabeled buttons and links. Without descriptive alternate text, Plaintiffs, and other screen reader users, have no clue about the purpose or function of the button or link;

c. Plaintiff encountered multiple unreadable graphics and PDF pages with insufficient navigational headings requiring the Plaintiff to expend substantial additional time on the Website to access information;

d. Plaintiff was unable to locate a preferred restaurant location because the restaurant locator is inaccessible.

33.    Due to the unlabeled buttons, lack of alt text, the structure of the headings and Website, cursor traps, and other barriers, Plaintiff was unable to fully and independently access the Website to view the complete menu and find the nearest restaurant location.

34.    Since at least as early as February of 2018, and until the current date, Plaintiff attempted to do business with Defendant on www.potatocornerusa.com and Plaintiff encountered barriers to access on the website.

35.    Despite past and recent attempts to do business with Defendant on its website, the numerous access barriers contained on the website and encountered by Plaintiff have denied Plaintiff full and equal access.

36.    Plaintiff, as a result of the barriers on the Defendant's website, continues to be deterred on a regular basis from accessing Defendant's website. Likewise, based on the numerous access barriers Plaintiff has been impeded from the full and equal enjoyment of goods and services offered in connection with Defendant's brick-and-mortar locations.

37.    Due to the inaccessibility of www.potatocornerusa.com, blind and visually-impaired customers such as Plaintiff, who need screen-readers, cannot fully and equally use or enjoy the facilities, privileges, goods, and/or services Defendant offers to the public on its website.

38.    If www.potatocornerusa.com were equally accessible to all, Plaintiff could independently navigate the website and complete a desired transaction as sighted individuals do.

MANNING LAW, APC
4667 MacArthur Blvd., Ste. 150
NEWPORT BEACH, CA 92660

Exhibit 1413 - 0031

39. Having made many attempts to use Defendant's website, Plaintiff has actual knowledge of the access barriers that make these services inaccessible and independently unusable by blind and visually-impaired people.

40. There are readily available, well established guidelines, available to Defendant on the Internet, for designing, constructing and maintaining websites to be accessible to blind and visually-impaired persons. Other large business entities have used these guidelines, or have otherwise been able, to make their websites accessible, including but not limited to: adding alt-text to graphics and ensuring that all functions can be performed using a keyboard. In addition, incorporating these basic changes and adding certain elements to Defendant's website accessible would not fundamentally alter the nature of Defendant's business nor would it result in an undue burden to Defendant. Because maintaining and providing a website where all functions can be performed using a keyboard would provide full, independent and equal access to all consumers to www.potatocornerusa.com, Plaintiff alleges that Defendant has engaged in acts of intentional discrimination including, but not limited to the following policies or practices:

    a. Construction and maintenance of a website that is inaccessible to visually-impaired individuals, including Plaintiff;

    b. Failure to construct and maintain a website that is sufficiently intuitive so as to be equally accessible to visually-impaired individuals, including Plaintiff; and,

    c. Failure to take actions to correct these access barriers in the face of substantial harm and discrimination to blind and visually-impaired consumers, such as Plaintiff, as a member of a protected class.

41. Although Defendant may currently have centralized policies for maintenance and operation of its website, Defendant lacks a plan and policy reasonably calculated to make its website fully and equally accessible to, and independently usable by, blind and other visually-impaired consumers, including Plaintiff.

42. Without injunctive relief, Plaintiff and other visually-impaired consumers will continue to be unable to independently use Defendant's website in violation of their rights.

## FIRST CAUSE OF ACTION

MANNING LAW, APC
4667 MACARTHUR BLVD., STE. 150
NEWPORT BEACH, CA 92660

Exhibit 1413 - 0032

## VIOLATION OF THE UNRUH CIVIL RIGHTS ACT, CALIFORNIA CIVIL CODE §

### 51 *et seq.* [WWW.POTATOCORNERUSA.COM ]

**(By Plaintiff Against All Defendants)**

43.     Plaintiff re-alleges and incorporates by reference all paragraphs alleged above and each and every other paragraph in this Complaint necessary or helpful to state this cause of action as though fully set forth herein.

44.     California Civil Code § 51 *et seq.* guarantees equal access for people with disabilities to the accommodations, advantages, facilities, privileges, and services of all business establishments of any kind whatsoever.  Defendant is systematically violating the UCRA, Civil Code § 51 *et seq.*

45.     Defendant's brick-and-mortar locations are "business establishments" within the meaning of the Civil Code § 51 *et seq.*  Defendant generates millions of dollars in revenue through its website.  Defendant's website is a service provided by Defendant that is inaccessible to patrons who are blind or visually-impaired like Plaintiff.  This inaccessibility denies blind and visually-impaired patrons full and equal access to the facilities, goods, and services that Defendant makes available to the non-disabled public.  Defendant is violating the UCRA, Civil Code § 51 *et seq.*, by denying visually-impaired customers the goods and services provided on its website.  These violations are ongoing.

46.     Defendants' actions constitute intentional discrimination against Plaintiff on the basis of a disability, in violation of the UCRA, Civil Code § 51 *et seq.*, because of the following: Defendant has constructed a website that is inaccessible to Plaintiff; Defendant maintains the website www.potatocornerusa.com  in this inaccessible format; and, Defendant has failed to take action to correct and remove these barriers even after being on notice of the discrimination that such barriers cause to persons with Plaintiff's disability.

47.     Defendant is also violating the UCRA, Civil Code § 51 *et seq.* because the conduct alleged herein violates various provisions of the ADA, 42 U.S.C. § 12101 *et seq.*, as set forth above.  Section 51(f) of the Civil Code provides that a violation of the right of any individual under the ADA also constitutes a violation of the UCRA.

48.     The actions of Defendant violate UCRA, Civil Code § 51 *et seq.*, and Plaintiff is

MANNING LAW, APC
4667 MACARTHUR BLVD., STE. 150
NEWPORT BEACH, CA 92660

Exhibit 1413 - 0033

therefore entitled to injunctive relief remedying the discrimination. Plaintiff expressly limits the cost of injunctive relief sought to $50,000 or less.

49.    Plaintiff is entitled to statutory minimum damages pursuant to Civil Code § 52 for each and every offense; however, Plaintiff hereby expressly limits the amount of money such that the total amount Plaintiff seeks to for each and every offense shall not exceed $24,999.00.

50.    Plaintiff is also entitled to reasonable attorneys' fees and costs.

## PRAYER

**WHEREFORE, Plaintiff prays for judgment against Defendant, as follows:**

1. A preliminary and permanent injunction enjoining Defendant from further violations of the UCRA, Civil Code § 51 *et seq.* with respect to its website " www.potatocornerusa.com."

2. A preliminary and permanent injunction requiring Defendant to take the steps necessary to make www.potatocornerusa.com readily accessible to and usable by blind and visually-impaired individuals but Plaintiff hereby expressly limits the injunctive relief to require that Defendant expend no more than $50,000 thereon;

3. An award of statutory minimum damages of $4,000 per violation pursuant to § 52(a) of the California Civil Code;

4. For attorneys' fees and expenses pursuant to all applicable laws including, without limitation, Civil Code § 52(a);

5. For pre-judgment interest to the extent permitted by law;

6. For costs of suit; and,

7. For such other and further relief as this Court deems just and proper.

## DEMAND FOR JURY TRIAL

Plaintiff hereby respectfully requests a trial by jury on all appropriate issues raised in this Complaint.

///
///
///

MANNING LAW, APC
4667 MACARTHUR BLVD., STE. 150
NEWPORT BEACH, CA 92660

Exhibit 1413 - 0034

Dated:   March 28, 2018

MANNING LAW, APC

By: _____

Joseph R. Manning Jr., Esq.

Attorneys for Plaintiff

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

MANNING LAW, APC
4667 MACARTHUR BLVD., STE. 150
NEWPORT BEACH, CA 92660

COMPLAINT
16

Exhibit 1413 - 0035

# EXHIBIT C

Exhibit 1413 - 0036

**SUM-100**

## SUMMONS
### (CITACION JUDICIAL)

COPY

**NOTICE TO DEFENDANT:**
*(AVISO AL DEMANDADO):*
GUY KOREN, an individual; ALON KOREN, an individual; TOM HODGSON, an individual; EMILY GARCIA, an individual; ASHLEY GRUDNOWSKI, an individual; and DOES 1 through 25, inclusive

**YOU ARE BEING SUED BY PLAINTIFF:**
*(LO ESTÁ DEMANDANDO EL DEMANDANTE):*
PCJV USA, LLC, a Delaware limited liability company

*FOR COURT USE ONLY*
*(SOLO PARA USO DE LA CORTE)*

CONFORMED COPY
OF ORIGINAL FILED
Los Angeles Superior Court

MAY 08 2018

Sherri R. Carter, Executive Officer/Clerk

By Shaunya Bolden, Deputy

**NOTICE!** You have been sued. The court may decide against you without your being heard unless you respond within 30 days. Read the information below.

You have 30 CALENDAR DAYS after this summons and legal papers are served on you to file a written response at this court and have a copy served on the plaintiff. A letter or phone call will not protect you. Your written response must be in proper legal form if you want the court to hear your case. There may be a court form that you can use for your response. You can find these court forms and more information at the California Courts Online Self-Help Center (www.courtinfo.ca.gov/selfhelp), your county law library, or the courthouse nearest you. If you cannot pay the filing fee, ask the court clerk for a fee waiver form. If you do not file your response on time, you may lose the case by default, and your wages, money, and property may be taken without further warning from the court.

There are other legal requirements. You may want to call an attorney right away. If you do not know an attorney, you may want to call an attorney referral service. If you cannot afford an attorney, you may be eligible for free legal services from a nonprofit legal services program. You can locate these nonprofit groups at the California Legal Services Web site (www.lawhelpcalifornia.org), the California Courts Online Self-Help Center (www.courtinfo.ca.gov/selfhelp), or by contacting your local court or county bar association. NOTE: The court has a statutory lien for waived fees and costs on any settlement or arbitration award of $10,000 or more in a civil case. The court's lien must be paid before the court will dismiss the case.

*¡AVISO! Lo han demandado. Si no responde dentro de 30 días, la corte puede decidir en su contra sin escuchar su versión. Lea la información a continuación.*

*Tiene 30 DÍAS DE CALENDARIO después de que le entreguen esta citación y papeles legales para presentar una respuesta por escrito en esta corte y hacer que se entregue una copia al demandante. Una carta o una llamada telefónica no lo protegen. Su respuesta por escrito tiene que estar en formato legal correcto si desea que procesen su caso en la corte. Es posible que haya un formulario que usted pueda usar para su respuesta. Puede encontrar estos formularios de la corte y más información en el Centro de Ayuda de las Cortes de California (www.sucorte.ca.gov), en la biblioteca de leyes de su condado o en la corte que le quede más cerca. Si no puede pagar la cuota de presentación, pida al secretario de la corte que le dé un formulario de exención de pago de cuotas. Si no presenta su respuesta a tiempo, puede perder el caso por incumplimiento y la corte le podrá quitar su sueldo, dinero y bienes sin más advertencia.*

*Hay otros requisitos legales. Es recomendable que llame a un abogado inmediatamente. Si no conoce a un abogado, puede llamar a un servicio de remisión a abogados. Si no puede pagar a un abogado, es posible que cumpla con los requisitos para obtener servicios legales gratuitos de un programa de servicios legales sin fines de lucro. Puede encontrar estos grupos sin fines de lucro en el sitio web de California Legal Services, (www.lawhelpcalifornia.org), en el Centro de Ayuda de las Cortes de California, (www.sucorte.ca.gov) o poniéndose en contacto con la corte o el colegio de abogados locales. AVISO: Por ley, la corte tiene derecho a reclamar las cuotas y los costos exentos por imponer un gravamen sobre cualquier recuperación de $10,000 ó más de valor recibida mediante un acuerdo o una concesión de arbitraje en un caso de derecho civil. Tiene que pagar el gravamen de la corte antes de que la corte pueda desechar el caso.*

| The name and address of the court is: *(El nombre y dirección de la corte es):* | CASE NUMBER: *(Número del Caso):* |
|---|---|
| Los Angeles Superior Court<br>Central District<br>111 North Hill Street, Los Angeles, CA 90012 | BC 705 580 |

The name, address, and telephone number of plaintiff's attorney, or plaintiff without an attorney, is:
*(El nombre, la dirección y el número de teléfono del abogado del demandante, o del demandante que no tiene abogado, es):*
Robert W. Brownlie (SBN 138793)
DLA Piper LLP (US)
401 B Street, Suite 1700, San Diego, CA 92101-4297
Telephone 619.699.2700

DATE: MAY 08 2018                 *Sherri R. Carter*    Clerk, by    SHAUNYA BOLDEN    , Deputy
*(Fecha)*                         *(Secretario)*                                         *(Adjunto)*

(For proof of service of this summons, use Proof of Service of Summons (form POS-010).)
*(Para prueba de entrega de esta citación use el formulario Proof of Service of Summons, (POS-010)).*

**NOTICE TO THE PERSON SERVED:** You are served
1. ☒ as an individual defendant.
2. ☐ as the person sued under the fictitious name of *(specify):*

3. ☐ on behalf of *(specify):*
   under: ☐ CCP 416.10 (corporation)       ☐ CCP 416.60 (minor)
          ☐ CCP 416.20 (defunct corporation) ☐ CCP 416.70 (conservatee)
          ☐ CCP 416.40 (association or partnership) ☐ CCP 416.90 (authorized person)
          ☐ other *(specify):*
4. ☐ by personal delivery on *(date):*

Page 1 of 1

| Form Adopted for Mandatory Use<br>Judicial Council of California<br>SUM-100 [Rev. July 1, 2009] | **SUMMONS** | American LegalNet, Inc.<br>www.FormsWorkflow.com | Code of Civil Procedure §§ 412.20, 465<br>www.courtinfo.ca.gov<br>WEST\281426269.1 |

**Exhibit 1413 - 0037**

COPY

CM-010

| ATTORNEY OR PARTY WITHOUT ATTORNEY *(Name, State Bar number, and address)*: | FOR COURT USE ONLY |
|---|---|

Robert W. Brownlie (Bar No. 138793)
DLA Piper LLP (US)
401 B Street, Suite 1700
San Diego, CA 92101
TELEPHONE NO: (619) 699-2700    FAX NO: (619) 699-2701
ATTORNEY FOR *(Name)*: Plaintiff PCJV USA, LLP

**CONFORMED COPY**
OF ORIGINAL FILED
Los Angeles Superior Court

MAY 08 2018

Sherri R. Carter, Executive Officer/Clerk

By Shaunya Bolden, Deputy

SUPERIOR COURT OF CALIFORNIA, COUNTY OF **Los Angeles**
STREET ADDRESS: **111 North Hill Street**
MAILING ADDRESS:
CITY AND ZIP CODE: **Los Angeles, CA 90012**
BRANCH NAME: **Central District**

CASE NAME: **PCJV USA, LLP v. Guy Koren**

| CIVIL CASE COVER SHEET | Complex Case Designation | CASE NUMBER **BC 7 0 5 5 8 0** |
|---|---|---|
| ☒ Unlimited (Amount demanded exceeds $25,000) ☐ Limited (Amount demanded is $25,000 or less) | ☐ Counter ☐ Joinder Filed with first appearance by defendant *(Cal. Rules of Court, rule 3.402)* | JUDGE: DEPT: |

*Items 1–6 below must be completed (see instructions on page 2).*

1. Check one box below for the case type that best describes this case:

**Auto Tort**
☐ Auto (22)
☐ Uninsured motorist (46)
**Other PI/PD/WD (Personal Injury/Property Damage/Wrongful Death) Tort**
☐ Asbestos (04)
☐ Product liability (24)
☐ Medical malpractice (45)
☐ Other PI/PD/WD (23)
**Non-PI/PD/WD (Other) Tort**
☒ Business tort/unfair business practice (07)
☐ Civil rights (08)
☐ Defamation (13)
☐ Fraud (16)
☐ Intellectual property (19)
☐ Professional negligence (25)
☐ Other non-PI/PD/WD tort (35)
**Employment**
☐ Wrongful termination (36)
☐ Other employment (15)

**Contract**
☐ Breach of contract/warranty (06)
☐ Rule 3.740 collections (09)
☐ Other collections (09)
☐ Insurance coverage (18)
☐ Other contract (37)
**Real Property**
☐ Eminent domain/Inverse condemnation (14)
☐ Wrongful eviction (33)
☐ Other real property (26)
**Unlawful Detainer**
☐ Commercial (31)
☐ Residential (32)
☐ Drugs (38)
**Judicial Review**
☐ Asset forfeiture (05)
☐ Petition re: arbitration award (11)
☐ Writ of mandate (02)
☐ Other judicial review (39)

**Provisionally Complex Civil Litigation (Cal. Rules of Court, rules 3.400–3.403)**
☐ Antitrust/Trade regulation (03)
☐ Construction defect (10)
☐ Mass tort (40)
☐ Securities litigation (28)
☐ Environmental/Toxic tort (30)
☐ Insurance coverage claims arising from the above listed provisionally complex case types (41)
**Enforcement of Judgment**
☐ Enforcement of judgment (20)
**Miscellaneous Civil Complaint**
☐ RICO (27)
☐ Other complaint *(not specified above)* (42)
**Miscellaneous Civil Petition**
☐ Partnership and corporate governance (21)
☐ Other petition *(not specified above)* (43)

2. This case ☐ is ☒ is not    complex under rule 3.400 of the California Rules of Court. If the case is complex, mark the factors requiring exceptional judicial management:
   a. ☐ Large number of separately represented parties    d. ☐ Large number of witnesses
   b. ☐ Extensive motion practice raising difficult or novel issues that will be time-consuming to resolve    e. ☐ Coordination with related actions pending in one or more courts in other counties, states, or countries, or in a federal court
   c. ☐ Substantial amount of documentary evidence    f. ☐ Substantial postjudgment judicial supervision
3. Remedies sought *(check all that apply)*: a. ☒ monetary   b. ☒ nonmonetary; declaratory or injunctive relief   c. ☒ punitive
4. Number of causes of action *(specify)*: 4
5. This case ☐ is ☒ is not   a class action suit.
6. If there are any known related cases, file and serve a notice of related case. *(You may use form CM-015.)*
Date: May 8, 2018

Robert W. Brownlie
(TYPE OR PRINT NAME)                                    (SIGNATURE OF PARTY OR ATTORNEY FOR PARTY)

**NOTICE**
- Plaintiff must file this cover sheet with the first paper filed in the action or proceeding (except small claims cases or cases filed under the Probate Code, Family Code, or Welfare and Institutions Code). (Cal. Rules of Court, rule 3.220.) Failure to file may result in sanctions.
- File this cover sheet in addition to any cover sheet required by local court rule.
- If this case is complex under rule 3.400 et seq. of the California Rules of Court, you must serve a copy of this cover sheet on all other parties to the action or proceeding.
- Unless this is a collections case under rule 3.740 or a complex case, this cover sheet will be used for statistical purposes only.
Page 1 of 2

| Form Adopted for Mandatory Use Judicial Council of California CM-010 [Rev. July 1, 2007] WEST\281428263.1 | **CIVIL CASE COVER SHEET** | Cal. Rules of Court, rules 2.30, 3.220, 3.400–3.403, 3.740; Cal. Standards of Judicial Administration, std. 3.10 www.courtinfo.ca.gov |
|---|---|---|

BY FAX

**Exhibit 1413 - 0038**

CM-010

## INSTRUCTIONS ON HOW TO COMPLETE THE COVER SHEET

**To Plaintiffs and Others Filing First Papers.** If you are filing a first paper (for example, a complaint) in a civil case, you **must** complete and file, along with your first paper, the *Civil Case Cover Sheet* contained on page 1. This information will be used to compile statistics about the types and numbers of cases filed. You must complete items 1 through 6 on the sheet. In item 1, you must check **one** box for the case type that best describes the case. If the case fits both a general and a more specific type of case listed in item 1, check the more specific one. If the case has multiple causes of action, check the box that best indicates the **primary** cause of action. To assist you in completing the sheet, examples of the cases that belong under each case type in item 1 are provided below. A cover sheet must be filed only with your initial paper. Failure to file a cover sheet with the first paper filed in a civil case may subject a party, its counsel, or both to sanctions under rules 2.30 and 3.220 of the California Rules of Court.

**To Parties in Rule 3.740 Collections Cases.** A "collections case" under rule 3.740 is defined as an action for recovery of money owed in a sum stated to be certain that is not more than $25,000, exclusive of interest and attorney's fees, arising from a transaction in which property, services, or money was acquired on credit. A collections case does not include an action seeking the following: (1) tort damages, (2) punitive damages, (3) recovery of real property, (4) recovery of personal property, or (5) a prejudgment writ of attachment. The identification of a case as a rule 3.740 collections case on this form means that it will be exempt from the general time-for-service requirements and case management rules, unless a defendant files a responsive pleading. A rule 3.740 collections case will be subject to the requirements for service and obtaining a judgment in rule 3.740.

**To Parties in Complex Cases.** In complex cases, parties must also use the *Civil Case Cover Sheet* to designate whether the case is complex. If a plaintiff believes the case is complex under rule 3.400 of the California Rules of Court, this must be indicated by completing the appropriate boxes in items 1 and 2. If a plaintiff designates a case as complex, the cover sheet must be served with the complaint on all parties to the action. A defendant may file and serve no later than the time of its first appearance a joinder in the plaintiff's designation, a counter-designation that the case is not complex, or, if the plaintiff has made no designation, a designation that the case is complex.

### CASE TYPES AND EXAMPLES

**Auto Tort**
Auto (22)–Personal Injury/Property Damage/Wrongful Death
Uninsured Motorist (46) *(if the case involves an uninsured motorist claim subject to arbitration, check this item instead of Auto)*

**Other PI/PD/WD (Personal Injury/Property Damage/Wrongful Death) Tort**
Asbestos (04)
  Asbestos Property Damage
  Asbestos Personal Injury/Wrongful Death
Product Liability *(not asbestos or toxic/environmental)* (24)
Medical Malpractice (45)
  Medical Malpractice–Physicians & Surgeons
  Other Professional Health Care Malpractice
Other PI/PD/WD (23)
  Premises Liability (e.g., slip and fall)
  Intentional Bodily Injury/PD/WD (e.g., assault, vandalism)
  Intentional Infliction of Emotional Distress
  Negligent Infliction of Emotional Distress
  Other PI/PD/WD

**Non-PI/PD/WD (Other) Tort**
Business Tort/Unfair Business Practice (07)
Civil Rights (e.g., discrimination, false arrest) *(not civil harassment)* (08)
Defamation (e.g., slander, libel) (13)
Fraud (16)
Intellectual Property (19)
Professional Negligence (25)
  Legal Malpractice
  Other Professional Malpractice *(not medical or legal)*
Other Non-PI/PD/WD Tort (35)

**Employment**
Wrongful Termination (36) Other Employment (15)

**Contract**
Breach of Contract/Warranty (06)
  Breach of Rental/Lease Contract *(not unlawful detainer or wrongful eviction)*
  Contract/Warranty Breach–Seller Plaintiff *(not fraud or negligence)*
  Negligent Breach of Contract/Warranty
  Other Breach of Contract/Warranty
Collections (e.g., money owed, open book accounts) (09)
  Collection Case–Seller Plaintiff
  Other Promissory Note/Collections Case
Insurance Coverage *(not provisionally complex)* (18)
  Auto Subrogation
  Other Coverage
Other Contract (37)
  Contractual Fraud
  Other Contract Dispute

**Real Property**
Eminent Domain/Inverse Condemnation (14)
Wrongful Eviction (33)
Other Real Property (e.g., quiet title) (26)
  Writ of Possession of Real Property
  Mortgage Foreclosure
  Quiet Title
  Other Real Property *(not eminent domain, landlord/tenant, or foreclosure)*

**Unlawful Detainer**
Commercial (31)
Residential (32)
Drugs (38) *(if the case involves illegal drugs, check this item; otherwise, report as Commercial or Residential)*

**Judicial Review**
Asset Forfeiture (05)
Petition Re: Arbitration Award (11)
Writ of Mandate (02)
  Writ–Administrative Mandamus
  Writ–Mandamus on Limited Court Case Matter
  Writ–Other Limited Court Case Review
Other Judicial Review (39)
  Review of Health Officer Order
  Notice of Appeal–Labor Commissioner Appeals

**Provisionally Complex Civil Litigation (Cal. Rules of Court Rules 3.400–3.403)**
Antitrust/Trade Regulation (03)
Construction Defect (10)
Claims Involving Mass Tort (40)
Securities Litigation (28)
Environmental/Toxic Tort (30)
Insurance Coverage Claims *(arising from provisionally complex case type listed above)* (41)

**Enforcement of Judgment**
Enforcement of Judgment (20)
  Abstract of Judgment (Out of County)
  Confession of Judgment *(non-domestic relations)*
  Sister State Judgment
  Administrative Agency Award *(not unpaid taxes)*
  Petition/Certification of Entry of Judgment on Unpaid Taxes
  Other Enforcement of Judgment Case

**Miscellaneous Civil Complaint**
RICO (27)
Other Complaint *(not specified above)* (42)
  Declaratory Relief Only
  Injunctive Relief Only *(non-harassment)*
  Mechanics Lien
  Other Commercial Complaint Case *(non-tort/non-complex)*
  Other Civil Complaint *(non-tort/non-complex)*

**Miscellaneous Civil Petition**
Partnership and Corporate Governance (21)
Other Petition *(not specified above)* (43)
  Civil Harassment
  Workplace Violence
  Elder/Dependent Adult Abuse
  Election Contest
  Petition for Name Change
  Petition for Relief From Late Claim
  Other Civil Petition

American LegalNet, Inc.
www.FormsWorkflow.com

**Exhibit 1413 - 0039**

# COPY

| SHORT TITLE: PCJV USA, LLC v. GUY KOREN, et al. | CASE NUMBER BC 7 0 5 5 8 0 |
|---|---|

## CIVIL CASE COVER SHEET ADDENDUM AND STATEMENT OF LOCATION
### (CERTIFICATE OF GROUNDS FOR ASSIGNMENT TO COURTHOUSE LOCATION)

> This form is required pursuant to Local Rule 2.3 in all new civil case filings in the Los Angeles Superior Court.

**Step 1:** After completing the Civil Case Cover Sheet (Judicial Council form CM-010), find the exact case type in Column A that corresponds to the case type indicated in the Civil Case Cover Sheet.

**Step 2:** In Column B, check the box for the type of action that best describes the nature of the case.

**Step 3:** In Column C, circle the number which explains the reason for the court filing location you have chosen.

> **Applicable Reasons for Choosing Court Filing Location (Column C)**

1. Class actions must be filed in the Stanley Mosk Courthouse, Central District.
2. Permissive filing in central district.
3. Location where cause of action arose.
4. Mandatory personal injury filing in North District.
5. Location where performance required or defendant resides.
6. Location of property or permanently garaged vehicle.

7. Location where petitioner resides.
8. Location wherein defendant/respondent functions wholly.
9. Location where one or more of the parties reside.
10. Location of Labor Commissioner Office.
11. Mandatory filing location (Hub Cases – unlawful detainer, limited non-collection, limited collection, or personal injury).

*BY FAX*

| A Civil Case Cover Sheet Category No. | B Type of Action (Check only one) | C Applicable Reasons - See Step 3 Above |
|---|---|---|
| **Auto Tort** | | |
| Auto (22) | ☐ A7100  Motor Vehicle - Personal Injury/Property Damage/Wrongful Death | 1, 4, 11 |
| Uninsured Motorist (46) | ☐ A7110  Personal Injury/Property Damage/Wrongful Death - Uninsured Motorist | 1, 4, 11 |
| **Other Personal Injury/ Property Damage Wrongful Death Tort** | | |
| Asbestos (04) | ☐ A6070  Asbestos Property Damage | 1, 11 |
| | ☐ A7221  Asbestos - Personal Injury/Wrongful Death | 1, 11 |
| Product Liability (24) | ☐ A7260  Product Liability (not asbestos or toxic/environmental) | 1, 4, 11 |
| Medical Malpractice (45) | ☐ A7210  Medical Malpractice - Physicians & Surgeons | 1, 4, 11 |
| | ☐ A7240  Other Professional Health Care Malpractice | 1, 4, 11 |
| Other Personal Injury Property Damage Wrongful Death (23) | ☐ A7250  Premises Liability (e.g., slip and fall) | 1, 4, 11 |
| | ☐ A7230  Intentional Bodily Injury/Property Damage/Wrongful Death (e.g., assault, vandalism, etc.) | 1, 4, 11 |
| | ☐ A7270  Intentional Infliction of Emotional Distress | 1, 4, 11 |
| | ☐ A7220  Other Personal Injury/Property Damage/Wrongful Death | 1, 4, 11 |

| LACIV 109 (Rev 2/16) | CIVIL CASE COVER SHEET ADDENDUM | Local Rule 2.3 |
|---|---|---|
| LASC Approved 03-04 WEST\281428281.1 | AND STATEMENT OF LOCATION | Page 1 of 4 |


American LegalNet, Inc.
www.FormsWorkFlow.com

**Exhibit 1413 - 0040**

SHORT TITLE:
PCJV USA, LLC v. GUY KOREN, et al.

CASE NUMBER

| **A**<br>Civil Case Cover Sheet Category No. | **B**<br>Type of Action<br>(Check only one) | **C** Applicable<br>Reasons - See Step 3<br>Above |
|---|---|---|
| **Non-Personal Injury/ Property Damage/ Wrongful Death Tort** | | |
| Business Tort (07) | ☒ A6029  Other Commercial/Business Tort (not fraud/breach of contract) | 1, 2, 3 |
| Civil Rights (08) | ☐ A6005  Civil Rights/Discrimination | 1, 2, 3 |
| Defamation (13) | ☐ A6010  Defamation (slander/libel) | 1, 2, 3 |
| Fraud (16) | ☐ A6013  Fraud (no contract) | 1, 2, 3 |
| Professional Negligence (25) | ☐ A6017  Legal Malpractice | 1, 2, 3 |
| | ☐ A6050  Other Professional Malpractice (not medical or legal) | 1, 2, 3 |
| Other (35) | ☐ A6025  Other Non-Personal Injury/Property Damage tort | 1, 2, 3 |
| **Employment** | | |
| Wrongful Termination (36) | ☐ A6037  Wrongful Termination | 1, 2, 3 |
| Other Employment (15) | ☐ A6024  Other Employment Complaint Case | 1, 2, 3 |
| | ☐ A6109  Labor Commissioner Appeals | 10 |
| **Contract** | | |
| Breach of Contract/ Warranty (06)<br>(not insurance) | ☐ A6004  Breach of Rental/Lease Contract (not unlawful detainer or wrongful eviction) | 2, 5 |
| | ☐ A6008  Contract/Warranty Breach -Seller Plaintiff (no fraud/negligence) | 2, 5 |
| | ☐ A6019  Negligent Breach of Contract/Warranty (no fraud) | 1, 2, 5 |
| | ☐ A6028  Other Breach of Contract/Warranty (not fraud or negligence) | 1, 2, 5 |
| Collections (09) | ☐ A6002  Collections Case-Seller Plaintiff | 5, 6, 11 |
| | ☐ A6012  Other Promissory Note/Collections Case | 5, 11 |
| | ☐ A6034  Collections Case-Purchased Debt (Charged Off Consumer Debt Purchased on or after January 1, 2014) | 5, 6, 11 |
| Insurance Coverage (18) | ☐ A6015  Insurance Coverage (not complex) | 1, 2, 5, 8 |
| Other Contract (37) | ☐ A6009  Contractual Fraud | 1, 2, 3, 5 |
| | ☐ A6031  Tortious Interference | 1, 2, 3, 5 |
| | ☐ A6027  Other Contract Dispute(not breach/insurance/fraud/negligence) | 1, 2, 3, 8, 9 |
| **Real Property** | | |
| Eminent Domain/Inverse Condemnation (14) | ☐ A7300  Eminent Domain/Condemnation       Number of parcels _____ | 2, 6 |
| Wrongful Eviction (33) | ☐ A6023  Wrongful Eviction Case | 2, 6 |
| Other Real Property (26) | ☐ A6018  Mortgage Foreclosure | 2, 6 |
| | ☐ A6032  Quiet Title | 2, 6 |
| | ☐ A6060  Other Real Property (not eminent domain, landlord/tenant, foreclosure) | 2, 6 |
| **Unlawful Detainer** | | |
| Unlawful Detainer-Commercial (31) | ☐ A6021  Unlawful Detainer-Commercial (not drugs or wrongful eviction) | 6, 11 |
| Unlawful Detainer-Residential (32) | ☐ A6020  Unlawful Detainer-Residential (not drugs or wrongful eviction) | 6, 11 |
| Unlawful Detainer-Post-Foreclosure (34) | ☐ A6020F Unlawful Detainer-Post-Foreclosure | 2, 6, 11 |
| Unlawful Detainer-Drugs (38) | ☐ A6022  Unlawful Detainer-Drugs | 2, 6, 11 |

LACIV 109 (Rev 2/16)
LASC Approved 03-04

**CIVIL CASE COVER SHEET ADDENDUM
AND STATEMENT OF LOCATION**

Local Rule 2.3
Page 2 of 4


American LegalNet, Inc.
www.FormsWorkFlow.com

**Exhibit 1413 - 0041**

| SHORT TITLE: | CASE NUMBER |
|---|---|
| PCJV USA, LLC v. GUY KOREN, et al. | |

| | **A**<br>Civil Case Cover Sheet<br>Category No. | **B**<br>Type of Action<br>(Check only one) | **C** Applicable<br>Reasons - See Step 3<br>Above |
|---|---|---|---|
| **Judicial Review** | Asset Forfeiture (05) | ☐ A6108  Asset Forfeiture Case | 2, 3, 6 |
| | Petition re Arbitration (11) | ☐ A6115  Petition to Compel/Confirm/Vacate Arbitration | 2, 5 |
| | Writ of Mandate (02) | ☐ A6151  Writ - Administrative Mandamus | 2, 8 |
| | | ☐ A6152  Writ - Mandamus on Limited Court Case Matter | 2 |
| | | ☐ A6153  Writ - Other Limited Court Case Review | 2 |
| | Other Judicial Review (39) | ☐ A6150  Other Writ /Judicial Review | 2, 8 |
| **Provisionally Complex Litigation** | Antitrust/Trade Regulation (03) | ☐ A6003  Antitrust/Trade Regulation | 1, 2, 8 |
| | Construction Defect (10) | ☐ A6007  Construction Defect | 1, 2, 3 |
| | Claims Involving Mass Tort (40) | ☐ A6006  Claims Involving Mass Tort | 1, 2, 8 |
| | Securities Litigation (28) | ☐ A6035  Securities Litigation Case | 1, 2, 8 |
| | Toxic Tort<br>Environmental (30) | ☐ A6036  Toxic Tort/Environmental | 1, 2, 3, 8 |
| | Insurance Coverage Claims<br>from Complex Case (41) | ☐ A6014  Insurance Coverage/Subrogation (complex case only) | 1, 2, 5, 8 |
| **Enforcement of Judgment** | Enforcement<br>of Judgment (20) | ☐ A6141  Sister State Judgment | 2, 5, 11 |
| | | ☐ A6160  Abstract of Judgment | 2, 6 |
| | | ☐ A6107  Confession of Judgment (non-domestic relations) | 2, 9 |
| | | ☐ A6140  Administrative Agency Award (not unpaid taxes) | 2, 8 |
| | | ☐ A6114  Petition/Certificate for Entry of Judgment on Unpaid Tax | 2, 8 |
| | | ☐ A6112  Other Enforcement of Judgment Case | 2, 8, 9 |
| **Miscellaneous Civil Complaints** | RICO (27) | ☐ A6033  Racketeering (RICO) Case | 1, 2, 8 |
| | Other Complaints<br>(Not Specified Above) (42) | ☐ A6030  Declaratory Relief Only | 1, 2, 8 |
| | | ☐ A6040  Injunctive Relief Only (not domestic/harassment) | 2, 8 |
| | | ☐ A6011  Other Commercial Complaint Case (non-tort/non-complex) | 1, 2, 8 |
| | | ☐ A6000  Other Civil Complaint (non-tort/non-complex) | 1, 2, 8 |
| **Miscellaneous Civil Petitions** | Partnership Corporation<br>Governance (21) | ☐ A6113  Partnership and Corporate Governance Case | 2, 8 |
| | Other Petitions (Not<br>Specified Above) (43) | ☐ A6121  Civil Harassment | 2, 3, 9 |
| | | ☐ A6123  Workplace Harassment | 2, 3, 9 |
| | | ☐ A6124  Elder/Dependent Adult Abuse Case | 2, 3, 9 |
| | | ☐ A6190  Election Contest | 2 |
| | | ☐ A6110  Petition for Change of Name/Change of Gender | 2, 7 |
| | | ☐ A6170  Petition for Relief from Late Claim Law | 2, 3, 8 |
| | | ☐ A6100  Other Civil Petition | 2, 9 |

LACIV 109 (Rev 2/16)
LASC Approved 03-04

**CIVIL CASE COVER SHEET ADDENDUM
AND STATEMENT OF LOCATION**

Local Rule 2.3
Page 3 of 4

American LegalNet, Inc.
www.FormsWorkFlow.com

**Exhibit 1413 - 0042**

| SHORT TITLE: PCJV USA, LLC v. GUY KOREN, et al. | CASE NUMBER |
|---|---|

**Step 4: Statement of Reason and Address:** Check the appropriate boxes for the numbers shown under Column C for the type of action that you have selected. Enter the address which is the basis for the filing location, including zip code. (No address required for class action cases).

| REASON: ☐ 1. ☐ 2. ☒ 3. ☐ 4. ☐ 5. ☐ 6. ☐ 7. ☐ 8. ☐ 9. ☐ 10. ☐ 11. | ADDRESS: 6380 Wilshire Blvd, Suite 1100 |
|---|---|
| CITY: Los Angeles | STATE: CA | ZIP CODE: 90048 | |

**Step 5: Certification of Assignment:** I certify that this case is properly filed in the Central _____ District of the Superior Court of California, County of Los Angeles [Code Civ. Proc., §392 et seq., and Local Rule 2.3(a)(1)(E)].

Dated: May 8, 2018

_____
(SIGNATURE OF ATTORNEY/FILING PARTY)
Robert W. Brownlie

**PLEASE HAVE THE FOLLOWING ITEMS COMPLETED AND READY TO BE FILED IN ORDER TO PROPERLY COMMENCE YOUR NEW COURT CASE:**

1. Original Complaint or Petition.

2. If filing a Complaint, a completed Summons form for issuance by the Clerk.

3. Civil Case Cover Sheet, Judicial Council form CM-010.

4. Civil Case Cover Sheet Addendum and Statement of Location form, LACIV 109, LASC Approved 03-04 (Rev. 02/16).

5. Payment in full of the filing fee, unless there is court order for waiver, partial or scheduled payments.

6. A signed order appointing the Guardian ad Litem, Judicial Council form CIV-010, if the plaintiff or petitioner is a minor under 18 years of age will be required by Court in order to issue a summons.

7. Additional copies of documents to be conformed by the Clerk. Copies of the cover sheet and this addendum must be served along with the summons and complaint, or other initiating pleading in the case.

LACIV 109 (Rev 2/16)
LASC Approved 03-04
WEST\281428281.1

**CIVIL CASE COVER SHEET ADDENDUM
AND STATEMENT OF LOCATION**

Local Rule 2.3
Page 4 of 4

American LegalNet, Inc.
www.FormsWorkFlow.com

**Exhibit 1413 - 0043**

## SUPERIOR COURT OF CALIFORNIA, COUNTY OF LOS ANGELES
### NOTICE OF CASE ASSIGNMENT - UNLIMITED CIVIL CASE - IC

Case Number _____

### THIS FORM IS TO BE SERVED WITH THE SUMMONS AND COMPLAINT

Your case is assigned for all purposes to the judicial officer indicated below.

| ASSIGNED JUDGE | DEPT | ROOM | | ASSIGNED JUDGE | DEPT | ROOM |
|---|---|---|---|---|---|---|
| Hon. Debre K. Weintraub | 1 | 534 | | Hon. Elizabeth Allen White | 48 | 506 |
| Hon. Barbara A. Meiers | 12 | 636 | | Hon. Deirdre Hill | 49 | 509 |
| Hon. Terry A. Green | 14 | 300 | | Hon. Teresa A. Beaudet | 50 | 508 |
| Hon. Richard Fruin | 15 | 307 | | Hon. Michael J. Raphael | 51 | 511 |
| Hon. Rita Miller | 16 | 306 | | Hon. Susan Bryant-Deason | 52 | 510 |
| Hon. Richard E. Rico | 17 | 309 | | Hon. Howard L. Halm | 53 | 513 |
| Hon. Stephanie Bowick | 19 | 311 | | Hon. Ernest M. Hiroshige | 54 | 512 |
| Hon. Dalila Corral Lyons | 20 | 310 | | Hon. Malcolm H. Mackey | 55 | 515 |
| Hon. Robert L. Hess | 24 | 314 | | Hon. Holly J. Fujie | 56 | 514 |
| Hon. Yvette M. Palazuelos | 28 | 318 | | Hon. John P. Doyle | 58 | 516 |
| | | | | Hon. Steven J. Kleifield | 57 | 517 |
| Hon. Barbara Scheper | (30) | 400 | | Hon. Gregory Keosian | 61 | 732 |
| Hon. Samantha Jessner | 31 | 407 | | Hon. Michael L. Stern | 62 | 600 |
| Hon. Daniel S. Murphy | 32 | 406 | | Hon. Mark Mooney | 68 | 617 |
| Hon. Michael P. Linfield | 34 | 408 | | Hon. William F. Fahey | 69 | 621 |
| Hon. Gregory Alarcon | 36 | 410 | | Hon. Monica Bachner | 71 | 729 |
| Hon. David S. Cunnigham | 37 | 413 | | Hon. Ruth Ann Kwan | 72 | 731 |
| Hon. Maureen Duffy-Lewis | 38 | 412 | | Hon. Rafael Ongkeko | 73 | 733 |
| Hon. Elizabeth Feffer | 39 | 415 | | Hon. Michelle Williams Court | 74 | 735 |
| Hon. David Sotelo | 40 | 414 | | Hon. Gail Ruderman Feuer | 78 | 730 |
| Hon. Holly E. Kendig | 42 | 416 | | | | |
| Hon. Mel Red Recana | 45 | 529 | | | | |
| Hon. Randolph Hammock | 47 | 507 | | | | |

Given to the Plaintiff/Cross-Complainant/Attorney of Record on _____
                                                                        (Date)

SHERRI R. CARTER, Executive Officer/Clerk of Court

By _____, Deputy Clerk

LACIV 190 (Rev 12/17)    **NOTICE OF CASE ASSIGNMENT – UNLIMITED CIVIL CASE**
LASC Approved 05/06

**Exhibit 1413 - 0044**

## INSTRUCTIONS FOR HANDLING UNLIMITED CIVIL CASES

The following critical provisions of the California Rules of Court, Title 3, Division 7, as applicable in the Superior Court, are summarized for your assistance.

### APPLICATION
The Division 7 Rules were effective January 1, 2007. They apply to all general civil cases.

### PRIORITY OVER OTHER RULES
The Division 7 Rules shall have priority over all other Local Rules to the extent the others are inconsistent.

### CHALLENGE TO ASSIGNED JUDGE
A challenge under Code of Civil Procedure Section 170.6 must be made within 15 days after notice of assignment for all purposes to a judge, or if a party has not yet appeared, within 15 days of the first appearance.

### TIME STANDARDS
Cases assigned to the Independent Calendaring Courts will be subject to processing under the following time standards:

### COMPLAINTS
All complaints shall be served within 60 days of filing and proof of service shall be filed within 90 days.

### CROSS-COMPLAINTS
Without leave of court first being obtained, no cross-complaint may be filed by any party after their answer is filed. Cross-complaints shall be served within 30 days of the filing date and a proof of service filed within 60 days of the filing date.

### STATUS CONFERENCE
A status conference will be scheduled by the assigned Independent Calendar Judge no later than 270 days after the filing of the complaint. Counsel must be fully prepared to discuss the following issues: alternative dispute resolution, bifurcation, settlement, trial date, and expert witnesses.

### FINAL STATUS CONFERENCE
The Court will require the parties to attend a final status conference not more than 10 days before the scheduled trial date. All parties shall have motions in limine, bifurcation motions, statements of major evidentiary issues, dispositive motions, requested form jury instructions, special jury instructions, and special jury verdicts timely filed and served prior to the conference. These matters may be heard and resolved at this conference. At least five days before this conference, counsel must also have exchanged lists of exhibits and witnesses, and have submitted to the court a brief statement of the case to be read to the jury panel as required by Chapter Three of the Los Angeles Superior Court Rules.

### SANCTIONS
The court will impose appropriate sanctions for the failure or refusal to comply with Chapter Three Rules, orders made by the Court, and time standards or deadlines established by the Court or by the Chapter Three Rules. Such sanctions may be on a party, or if appropriate, on counsel for a party.

**This is not a complete delineation of the Division 7 or Chapter Three Rules, and adherence only to the above provisions is therefore not a guarantee against the imposition of sanctions under Trial Court Delay Reduction. Careful reading and compliance with the actual Chapter Rules is imperative.**

### Class Actions
Pursuant to Local Rule 2.3, all class actions shall be filed at the Stanley Mosk Courthouse and are randomly assigned to a complex judge at the designated complex courthouse. If the case is found not to be a class action it will be returned to an Independent Calendar Courtroom for all purposes.

### *Provisionally Complex Cases
Cases filed as provisionally complex are initially assigned to the Supervising Judge of complex litigation for determination of complex status. If the case is deemed to be complex within the meaning of California Rules of Court 3.400 et seq., it will be randomly assigned to a complex judge at the designated complex courthouse. If the case is found not to be complex, it will be returned to an Independent Calendar Courtroom for all purposes.

LACIV 190 (Rev 12/17)    **NOTICE OF CASE ASSIGNMENT – UNLIMITED CIVIL CASE**
LASC Approved 05/06

**Exhibit 1413 - 0045**

COPY

CM-015

| ATTORNEY OR PARTY WITHOUT ATTORNEY (Name, State Bar number, and address): | FOR COURT USE ONLY |
|---|---|

ATTORNEY OR PARTY WITHOUT ATTORNEY (Name, State Bar number, and address):
  Robert W. Brownlie (SBN 138793)
  DLA PIPER LLP (US)
  401 B Street, Suite 1700
  San Diego, CA 92101-4297
    TELEPHONE NO.: 619.699.2700    FAX NO. (Optional): 619.699.2701
  E-MAIL ADDRESS (Optional): robert.brownlie@dlapiper.com
  ATTORNEY FOR (Name): Plaintiff PCJV USA, LLC

SUPERIOR COURT OF CALIFORNIA, COUNTY OF LOS ANGELES
  STREET ADDRESS: 111 North Hill Street
  MAILING ADDRESS:
  CITY AND ZIP CODE: Los Angeles, CA 90012
  BRANCH NAME: Central District

**CONFORMED COPY**
OF ORIGINAL FILED
Los Angeles Superior Court

**MAY 08 2018**

Sherri R. Carter, Executive Officer/clerk

By Shaunya Bolden, Deputy

| PLAINTIFF/PETITIONER: PCJV USA, LLC, a Delaware limited liability company | CASE NUMBER: |
|---|---|
| | BC 705 580 |
| DEFENDANT/RESPONDENT: GUY KOREN, an individual; et al. | JUDICIAL OFFICER: |

| NOTICE OF RELATED CASE | DEPT.: |
|---|---|

BY FAX

Identify, in chronological order according to date of filing, all cases related to the case referenced above.

1. a. Title: Cinco Corporation v. Guy Koren
   b. Case number: BC701075
   c. Court: ☒ same as above
             ☐ other state or federal court (name and address):
   d. Department: 73
   e. Case type: ☐ limited civil  ☐ unlimited civil  ☒ probate  ☐ family law  ☐ other (specify):
   f. Filing date: April 10, 2018
   g. Has this case been designated or determined as "complex?"  ☐ Yes  ☒ No
   h. Relationship of this case to the case referenced above (check all that apply):
      ☐ involves the same parties and is based on the same or similar claims.
      ☒ arises from the same or substantially identical transactions, incidents, or events requiring the determination of the same or substantially identical questions of law or fact.
      ☐ involves claims against, title to, possession of, or damages to the same property.
      ☐ is likely for other reasons to require substantial duplication of judicial resources if heard by different judges.
         ☐ Additional explanation is attached in attachment 1h
   i. Status of case:
      ☒ pending
      ☐ dismissed  ☐ with  ☐ without prejudice
      ☐ disposed of by judgment

2. a. Title:
   b. Case number:
   c. Court: ☐ same as above
             ☐ other state or federal court (name and address):
   d. Department:

Page 1 of 3
WEST\281428588.1

| Form Approved for Optional Use<br>Judicial Council of California<br>CM-015 [Rev. July 1, 2007] | NOTICE OF RELATED CASE | Cal. Rules of Court, rule 3.300<br>www.courtinfo.ca.gov<br>American LegalNet, Inc.<br>www.FormsWorkflow.com |
|---|---|---|

Exhibit 1413 - 0046

CM-015

| PLAINTIFF/PETITIONER: PCJV USA, LLC | CASE NUMBER: |
|---|---|
| DEFENDANT/RESPONDENT: GUY KOREN, et al. | |

2. *(continued)*

   e. Case type: ☐ limited civil ☐ unlimited civil ☐ probate ☐ family law ☐ other *(specify)*:

   f. Filing date:

   g. Has this case been designated or determined as "complex?" ☐ Yes ☐ No

   h. Relationship of this case to the case referenced above *(check all that apply)*:

      ☐ involves the same parties and is based on the same or similar claims.

      ☐ arises from the same or substantially identical transactions, incidents, or events requiring the determination of the same or substantially identical questions of law or fact.

      ☐ involves claims against, title to, possession of, or damages to the same property.

      ☐ is likely for other reasons to require substantial duplication of judicial resources if heard by different judges.

        ☐ Additional explanation is attached in attachment 2h

   i. Status of case:

      ☐ pending

      ☐ dismissed ☐ with ☐ without prejudice

      ☐ disposed of by judgment

3. a. Title:

   b. Case number:

   c. Court: ☐ same as above

      ☐ other state or federal court *(name and address)*:

   d. Department:

   e. Case type: ☐ limited civil ☐ unlimited civil ☐ probate ☐ family law ☐ other *(specify)*:

   f. Filing date:

   g. Has this case been designated or determined as "complex?" ☐ Yes ☐ No

   h. Relationship of this case to the case referenced above *(check all that apply)*:

      ☐ involves the same parties and is based on the same or similar claims.

      ☐ arises from the same or substantially identical transactions, incidents, or events requiring the determination of the same or substantially identical questions of law or fact.

      ☐ involves claims against, title to, possession of, or damages to the same property.

      ☐ is likely for other reasons to require substantial duplication of judicial resources if heard by different judges.

        ☐ Additional explanation is attached in attachment 3h

   i. Status of case:

      ☐ pending

      ☐ dismissed ☐ with ☐ without prejudice

      ☐ disposed of by judgment

4. ☐ Additional related cases are described in Attachment 4. Number of pages attached: _____

Date: May 8, 2018

Robert W. Brownlie
_____
(TYPE OR PRINT NAME OF PARTY OR ATTORNEY)

▶ _____
(SIGNATURE OF PARTY OR ATTORNEY)

CM-015 [Rev. July 1, 2007]
WEST\281428588.1

**NOTICE OF RELATED CASE**

Page 2 of 3

American LegalNet, Inc.
www.FormsWorkflow.com

**Exhibit 1413 - 0047**

CM-015

| PLAINTIFF/PETITIONER: PCJV USA, LLC | CASE NUMBER: |
|---|---|
| DEFENDANT/RESPONDENT: GUY KOREN, et al. | |

## PROOF OF SERVICE BY FIRST-CLASS MAIL
### NOTICE OF RELATED CASE

*(NOTE: You cannot serve the Notice of Related Case if you are a party in the action. The person who served the notice must complete this proof of service. The notice must be served on all known parties in each related action or proceeding.)*

1. I am at least 18 years old and **not a party to this action.** I am a resident of or employed in the county where the mailing took place, and my residence or business address is *(specify):*

2. I served a copy of the *Notice of Related Case* by enclosing it in a sealed envelope with first-class postage fully prepaid and *(check one):*
   a. ☐ deposited the sealed envelope with the United States Postal Service.
   b. ☐ placed the sealed envelope for collection and processing for mailing, following this business's usual practices, with which I am readily familiar. On the same day correspondence is placed for collection and mailing, it is deposited in the ordinary course of business with the United States Postal Service.

3. The *Notice of Related Case* was mailed:
   a. on *(date):*
   b. from *(city and state):*

4. The envelope was addressed and mailed as follows:

   a. Name of person served:

      Street address:
      City:
      State and zip code:

   c. Name of person served:

      Street address:
      City:
      State and zip code:

   b. Name of person served:

      Street address:
      City:
      State and zip code:

   d. Name of person served:

      Street address:
      City:
      State and zip code:

☐ Names and addresses of additional persons served are attached. *(You may use form POS-030(P).)*

I declare under penalty of perjury under the laws of the State of California that the foregoing is true and correct.

Date:

_____          ▶          _____
(TYPE OR PRINT NAME OF DECLARANT)                              (SIGNATURE OF DECLARANT)

American LegalNet, Inc.
www.FormsWorkflow.com

**Exhibit 1413 - 0048**

# Superior Court of California
# County of Los Angeles



# ALTERNATIVE DISPUTE RESOLUTION (ADR)
# INFORMATION PACKET

The person who files a civil lawsuit (plaintiff) must include the ADR information Packet with the complaint when serving the defendant. Cross-complainants must serve the ADR Information Packet on any new parties named to the action together with the cross-complaint.

There are a number of ways to resolve civil disputes without having to sue someone. These alternatives to a lawsuit are known as alternative dispute resolution (ADR).

In ADR, trained, impartial persons decide disputes or help parties decide disputes themselves. These persons are called neutrals. For example, in mediations, the neutral is the mediator. Neutrals normally are chosen by the disputing parties or by the court. Neutrals can help resolve disputes without having to go to court.

LAADR 005 (Rev. 03/17)
LASC Adopted 10-03
Cal. Rules of Court, rule 3.221

Exhibit 1413 - 0049

**Advantages of ADR**
- Often faster than going to trial
- Often less expensive, saving the litigants court costs, attorney's fees and expert fees.
- May permit more participation, allowing parties to have more control over the outcome.
- Allows for flexibility in choice of ADR processes and resolution of the dispute.
- Fosters cooperation by allowing parties to work together with the neutral to resolve the dispute and mutually agree to remedy.
- There are fewer, if any, court appearances. Because ADR can be faster and save money, it can reduce stress.

**Disadvantages of ADR** – ADR may not be suitable for every dispute.
- If ADR is binding, the parties normally give up most court protections, including a decision by a judge or jury under formal rules of evidence and procedure, and review for legal error by an appellate court.
- ADR may not be effective if it takes place before the parties have sufficient information to resolve the dispute.
- The neutral may charge a fee for his or her services.
- If the dispute is not resolved through ADR, the parties may then have to face the usual and traditional costs of trial, such as attorney's fees and expert fees.

**The Most Common Types of ADR**

- **Mediation**

  In mediation, a neutral (the mediator) assists the parties in reaching a mutually acceptable resolution of their dispute. Unlike lawsuits or some other types of ADR, the parties, rather than the mediator, decide how the dispute is to be resolved.

  - **Mediation is particularly effective** when the parties have a continuing relationship, like neighbors or business people. Mediation is also very effective where personal feelings are getting in the way of a resolution. This is because mediation normally gives the parties a chance to express their feelings and find out how the other sees things.

  - **Mediation may not be effective** when one party is unwilling to cooperate or compromise or when one of the parties has a significant advantage in power over the other. Therefore, it may not be a good choice if the parties have a history of abuse or victimization.

LAADR 005 (Rev. 03/17)
LASC Adopted 10-03
Cal. Rules of Court, rule 3.221

Exhibit 1413 - 0050

- **Arbitration**

  In arbitration, a neutral person called an "arbitrator" hears arguments and evidence from each side and then decides the outcome of the dispute. Arbitration is typically less formal than a trial, and the rules of evidence may be relaxed. Arbitration may be either "binding" or "non-binding." Binding arbitration means the parties waive their right to a trial and agree to accept the arbitrator's decision as final. Non-binding arbitration means that the parties are free to request a trial if they reject the arbitrator's decision.

  Arbitration is best for cases where the parties want another person to decide the outcome of their dispute for them but would like to avoid the formality, time, and expense of a trial. It may also be appropriate for complex matters where the parties want a decision-maker who has training or experience in the subject matter of the dispute.

- **Mandatory Settlement Conference (MSC)**

  **Settlement Conferences are appropriate in any case where settlement is an option.** Mandatory Settlement Conferences are ordered by the Court and are often held near the date a case is set for trial. The parties and their attorneys meet with a judge who devotes his or her time exclusively to preside over the MSC. The judge does not make a decision in the case but assists the parties in evaluating the strengths and weaknesses of the case and in negotiating a settlement.

  The Los Angeles Superior Court Mandatory Settlement Conference (MSC) program is free of charge and staffed by experienced sitting civil judges who devote their time exclusively to presiding over MSCs. The judges participating in the judicial MSC program and their locations are identified in the List of Settlement Officers found on the Los Angeles Superior Court website at http://www.lacourt.org/. This program is available in general jurisdiction cases with represented parties from independent calendar (IC) and Central Civil West (CCW) courtrooms. In addition, on an ad hoc basis, personal injury cases may be referred to the program on the eve of trial by the personal injury master calendar courts in the Stanley Mosk Courthouse or the asbestos calendar court in CCW.

  In order to access the Los Angeles Superior Court MSC Program the judge in the IC courtroom, the CCW Courtroom or the personal injury master calendar courtroom must refer the parties to the program.  Further, all parties must complete the information requested in the Settlement Conference Intake Form and email the completed form to mscdept18@lacourt.org.

LAADR 005 (Rev. 03/17)
LASC Adopted 10-03
Cal. Rules of Court, rule 3.221

Exhibit 1413 - 0051

**Additional Information**

To locate a dispute resolution program or neutral in your community:

- Contact the California Department of Consumer Affairs (www.dca.ca.gov) Consumer Information Center toll free at 800-952-5210, or;
- Contact the local bar association (http://www.lacba.org/) or;
- Look in a telephone directory or search online for "mediators; or "arbitrators."

There may be a charge for services provided by private arbitrators and mediators.

A list of approved State Bar Approved Mandatory Fee Arbitration programs is available at
http://calbar.ca.gov/Attorneys/MemberServices/FeeArbitration/ApprovedPrograms.aspx#19

To request information about, or assistance with, dispute resolution, call the number listed below. Or you may call a Contract Provider agency directly. A list of current Contract Provider agencies in Los Angeles County is available at the link below.

http://css.lacounty.gov/programs/dispute-resolution-program-drp/

County of Los Angeles Dispute Resolution Program
3175 West 6th Street, Room 406
Los Angeles, CA 90020-1798
TEL: (213) 738-2621
FAX: (213) 386-3995

LAADR 005 (Rev. 03/17)
LASC Adopted 10-03
Cal. Rules of Court, rule 3.221

Exhibit 1413 - 0052

| NAME AND ADDRESS OF ATTORNEY OR PARTY WITHOUT ATTORNEY: | STATE BAR NUMBER | Reserved for Clerk's File Stamp |
|---|---|---|

TELEPHONE NO.:
E-MAIL ADDRESS (Optional):      FAX NO. (Optional):
ATTORNEY FOR (Name):

## SUPERIOR COURT OF CALIFORNIA, COUNTY OF LOS ANGELES

COURTHOUSE ADDRESS:

PLAINTIFF:

DEFENDANT:

| INFORMAL DISCOVERY CONFERENCE
(pursuant to the Discovery Resolution Stipulation of the parties) | CASE NUMBER: |
|---|---|

1. This document relates to:

   ☐ Request for Informal Discovery Conference
   ☐ Answer to Request for Informal Discovery Conference

2. Deadline for Court to decide on Request: _____ (insert date 10 calendar days following filing of the Request).

3. Deadline for Court to hold Informal Discovery Conference: _____ (insert date 20 calendar days following filing of the Request).

4. For a Request for Informal Discovery Conference, **briefly** describe the nature of the discovery dispute, **including the facts and legal arguments at issue. For an Answer to Request for Informal Discovery Conference, briefly** describe why the Court should deny the requested discovery, including the facts and legal arguments at issue.

LACIV 094 (new)
LASC Approved 04/11
For Optional Use

## INFORMAL DISCOVERY CONFERENCE
(pursuant to the Discovery Resolution Stipulation of the parties)

Exhibit 1413 - 0053

| NAME AND ADDRESS OF ATTORNEY OR PARTY WITHOUT ATTORNEY: | STATE BAR NUMBER | Reserved for Clerk's File Stamp |
|---|---|---|
| TELEPHONE NO.:<br>E-MAIL ADDRESS (Optional):<br>ATTORNEY FOR (Name): | FAX NO. (Optional): | |

**SUPERIOR COURT OF CALIFORNIA, COUNTY OF LOS ANGELES**

COURTHOUSE ADDRESS:

PLAINTIFF:

DEFENDANT:

| STIPULATION – DISCOVERY RESOLUTION | CASE NUMBER: |
|---|---|

**This stipulation is intended to provide a fast and informal resolution of discovery issues through limited paperwork and an informal conference with the Court to aid in the resolution of the issues.**

**The parties agree that:**

1. Prior to the discovery cut-off in this action, no discovery motion shall be filed or heard unless the moving party first makes a written request for an Informal Discovery Conference pursuant to the terms of this stipulation.

2. At the Informal Discovery Conference the Court will consider the dispute presented by parties and determine whether it can be resolved informally. Nothing set forth herein will preclude a party from making a record at the conclusion of an Informal Discovery Conference, either orally or in writing.

3. Following a reasonable and good faith attempt at an informal resolution of each issue to be presented, a party may request an Informal Discovery Conference pursuant to the following procedures:

    a. The party requesting the Informal Discovery Conference will:

    i. File a Request for Informal Discovery Conference with the clerk's office on the approved form (copy attached) and deliver a courtesy, conformed copy to the assigned department;

    ii. Include a brief summary of the dispute and specify the relief requested; and

    iii. Serve the opposing party pursuant to any authorized or agreed method of service that ensures that the opposing party receives the Request for Informal Discovery Conference no later than the next court day following the filing.

    b. Any Answer to a Request for Informal Discovery Conference must:

    i. Also be filed on the approved form (copy attached);

    ii. Include a brief summary of why the requested relief should be denied;

---

LACIV 036 (new)<br>LASC Approved 04/11<br>For Optional Use | **STIPULATION – DISCOVERY RESOLUTION** | Page 1 of 3

Exhibit 1413 - 0054

| SHORT TITLE: | | CASE NUMBER: |
|---|---|---|
| | | |

    iii.   Be filed within two (2) court days of receipt of the Request; and

    iv.   Be served on the opposing party pursuant to any authorized or agreed upon method of service that ensures that the opposing party receives the Answer no later than the next court day following the filing.

  c.  No other pleadings, including but not limited to exhibits, declarations, or attachments, will be accepted.

  d.  If the Court has not granted or denied the Request for Informal Discovery Conference within ten (10) days following the filing of the Request, then it shall be deemed to have been denied. If the Court acts on the Request, the parties will be notified whether the Request for Informal Discovery Conference has been granted or denied and, if granted, the date and time of the Informal Discovery Conference, which must be within twenty (20) days of the filing of the Request for Informal Discovery Conference.

  e.  If the conference is not held within twenty (20) days of the filing of the Request for Informal Discovery Conference, unless extended by agreement of the parties and the Court, then the Request for the Informal Discovery Conference shall be deemed to have been denied at that time.

4.  If (a) the Court has denied a conference or (b) one of the time deadlines above has expired without the Court having acted or (c) the Informal Discovery Conference is concluded without resolving the dispute, then a party may file a discovery motion to address unresolved issues.

5.  The parties hereby further agree that the time for making a motion to compel or other discovery motion is tolled from the date of filing of the Request for Informal Discovery Conference until (a) the request is denied or deemed denied or (b) twenty (20) days after the filing of the Request for Informal Discovery Conference, whichever is earlier, unless extended by Order of the Court.

    It is the understanding and intent of the parties that this stipulation shall, for each discovery dispute to which it applies, constitute a writing memorializing a "specific later date to which the propounding [or demanding or requesting] party and the responding party have agreed in writing," within the meaning of Code Civil Procedure sections 2030.300(c), 2031.320(c), and 2033.290(c).

6.  Nothing herein will preclude any party from applying *ex parte* for appropriate relief, including an order shortening time for a motion to be heard concerning discovery.

7.  Any party may terminate this stipulation by giving twenty-one (21) days notice of intent to terminate the stipulation.

8.  References to "days" mean calendar days, unless otherwise noted. If the date for performing any act pursuant to this stipulation falls on a Saturday, Sunday or Court holiday, then the time for performing that act shall be extended to the next Court day.

Exhibit 1413 - 0055

| SHORT TITLE: | | CASE NUMBER: |
|---|---|---|

**The following parties stipulate:**

Date:

_____
(TYPE OR PRINT NAME)

Date:

_____
(TYPE OR PRINT NAME)

Date:

_____
(TYPE OR PRINT NAME)

Date:

_____
(TYPE OR PRINT NAME)

Date:

_____
(TYPE OR PRINT NAME)

Date:

_____
(TYPE OR PRINT NAME)

➢ _____
(ATTORNEY FOR PLAINTIFF)

➢ _____
(ATTORNEY FOR DEFENDANT)

➢ _____
(ATTORNEY FOR DEFENDANT)

➢ _____
(ATTORNEY FOR DEFENDANT)

➢ _____
(ATTORNEY FOR _____)

➢ _____
(ATTORNEY FOR _____)

➢ _____
(ATTORNEY FOR _____)

LACIV 036 (new)
LASC Approved 04/11
For Optional Use

**STIPULATION – DISCOVERY RESOLUTION**

Page 3 of 3

**Exhibit 1413 - 0056**

| NAME AND ADDRESS OF ATTORNEY OR PARTY WITHOUT ATTORNEY | STATE BAR NUMBER | Reserved for Clerk's File Stamp |
|---|---|---|
| TELEPHONE NO.:<br>E-MAIL ADDRESS (Optional):<br>ATTORNEY FOR (Name): | FAX NO. (Optional): | |

## SUPERIOR COURT OF CALIFORNIA, COUNTY OF LOS ANGELES

COURTHOUSE ADDRESS:

PLAINTIFF:

DEFENDANT:

| STIPULATION AND ORDER – MOTIONS IN LIMINE | CASE NUMBER: |
|---|---|

**This stipulation is intended to provide fast and informal resolution of evidentiary issues through diligent efforts to define and discuss such issues and limit paperwork.**

**The parties agree that:**

1. At least _____ days before the final status conference, each party will provide all other parties with a list containing a one paragraph explanation of each proposed motion in limine. Each one paragraph explanation must identify the substance of a single proposed motion in limine and the grounds for the proposed motion.

2. The parties thereafter will meet and confer, either in person or via teleconference or videoconference, concerning all proposed motions in limine. In that meet and confer, the parties will determine:

   a. Whether the parties can stipulate to any of the proposed motions. If the parties so stipulate, they may file a stipulation and proposed order with the Court.

   b. Whether any of the proposed motions can be briefed and submitted by means of a short joint statement of issues. For each motion which can be addressed by a short joint statement of issues, a short joint statement of issues must be filed with the Court 10 days prior to the final status conference. Each side's portion of the short joint statement of issues may not exceed three pages. The parties will meet and confer to agree on a date and manner for exchanging the parties' respective portions of the short joint statement of issues and the process for filing the short joint statement of issues.

3. All proposed motions in limine that are not either the subject of a stipulation or briefed via a short joint statement of issues will be briefed and filed in accordance with the California Rules of Court and the Los Angeles Superior Court Rules.

**Exhibit 1413 - 0057**

| SHORT TITLE: | CASE NUMBER: |
|---|---|
| | |

**The following parties stipulate:**

Date: _____

_____
(TYPE OR PRINT NAME)

➤ _____
(ATTORNEY FOR PLAINTIFF)

Date: _____

_____
(TYPE OR PRINT NAME)

➤ _____
(ATTORNEY FOR DEFENDANT)

Date: _____

_____
(TYPE OR PRINT NAME)

➤ _____
(ATTORNEY FOR DEFENDANT)

Date: _____

_____
(TYPE OR PRINT NAME)

➤ _____
(ATTORNEY FOR DEFENDANT)

Date: _____

_____
(TYPE OR PRINT NAME)

(ATTORNEY FOR _____)

Date: _____

_____
(TYPE OR PRINT NAME)

➤ (ATTORNEY FOR _____)

Date: _____

_____
(TYPE OR PRINT NAME)

➤ (ATTORNEY FOR _____)

**THE COURT SO ORDERS.**

Date: _____

_____
JUDICIAL OFFICER

**Exhibit 1413 - 0058**

| NAME AND ADDRESS OF ATTORNEY OR PARTY WITHOUT ATTORNEY: | STATE BAR NUMBER | Reserved for Clerk's File Stamp |
|---|---|---|
| TELEPHONE NO.: FAX NO. (Optional): E-MAIL ADDRESS (Optional): ATTORNEY FOR (Name): | | |

**SUPERIOR COURT OF CALIFORNIA, COUNTY OF LOS ANGELES**

COURTHOUSE ADDRESS:

PLAINTIFF:

DEFENDANT:

| **STIPULATION – EARLY ORGANIZATIONAL MEETING** | CASE NUMBER: |
|---|---|

**This stipulation is intended to encourage cooperation among the parties at an early stage in the litigation and to assist the parties in efficient case resolution.**

**The parties agree that:**

1. The parties commit to conduct an initial conference (in-person or via teleconference or via videoconference) within 15 days from the date this stipulation is signed, *to discuss and consider whether there can be agreement on the following*:

    a. Are motions to challenge the pleadings necessary? If the issue can be resolved by amendment as of right, or if the Court would allow leave to amend, could an amended complaint resolve most or all of the issues a demurrer might otherwise raise? If so, the parties agree to work through pleading issues so that a demurrer need only raise issues they cannot resolve. Is the issue that the defendant seeks to raise amenable to resolution on demurrer, or would some other type of motion be preferable? Could a voluntary targeted exchange of documents or information by any party cure an uncertainty in the pleadings?

    b. Initial mutual exchanges of documents at the "core" of the litigation. (For example, in an employment case, the employment records, personnel file and documents relating to the conduct in question could be considered "core." In a personal injury case, an incident or police report, medical records, and repair or maintenance records could be considered "core.");

    c. Exchange of names and contact information of witnesses;

    d. Any insurance agreement that may be available to satisfy part or all of a judgment, or to indemnify or reimburse for payments made to satisfy a judgment;

    e. Exchange of any other information that might be helpful to facilitate understanding, handling, or resolution of the case in a manner that preserves objections or privileges by agreement;

    f. Controlling issues of law that, if resolved early, will promote efficiency and economy in other phases of the case. Also, when and how such issues can be presented to the Court;

    g. Whether or when the case should be scheduled with a settlement officer, what discovery or court ruling on legal issues is reasonably required to make settlement discussions meaningful, and whether the parties wish to use a sitting judge or a private mediator or other options as

**Exhibit 1413 - 0059**

| SHORT TITLE: | | CASE NUMBER: |
|---|---|---|
| | | |

discussed in the "Alternative Dispute Resolution (ADR) Information Package" served with the complaint;

h.  Computation of damages, including documents, not privileged or protected from disclosure, on which such computation is based;

i.  Whether the case is suitable for the Expedited Jury Trial procedures (see information at *www.lacourt.org* under "*Civil*" and then under "*General Information*").

2.  The time for a defending party to respond to a complaint or cross-complaint will be extended to _____ for the complaint, and _____ for the cross-
        (INSERT DATE)                              (INSERT DATE)
complaint, which is comprised of the 30 days to respond under Government Code § 68616(b), and the 30 days permitted by Code of Civil Procedure section 1054(a), good cause having been found by the Civil Supervising Judge due to the case management benefits provided by this Stipulation. A copy of the General Order can be found at *www.lacourt.org* under "*Civil*", click on "*General Information*", then click on "*Voluntary Efficient Litigation Stipulations*".

3.  The parties will prepare a joint report titled "Joint Status Report Pursuant to Initial Conference and Early Organizational Meeting Stipulation, and if desired, a proposed order summarizing results of their meet and confer and advising the Court of any way it may assist the parties' efficient conduct or resolution of the case. The parties shall attach the Joint Status Report to the Case Management Conference statement, and file the documents when the CMC statement is due.

4.  References to "days" mean calendar days, unless otherwise noted. If the date for performing any act pursuant to this stipulation falls on a Saturday, Sunday or Court holiday, then the time for performing that act shall be extended to the next Court day

The following parties stipulate:

Date:

_____            ➤    _____
        (TYPE OR PRINT NAME)                              (ATTORNEY FOR PLAINTIFF)
Date:

_____            ➤    _____
        (TYPE OR PRINT NAME)                              (ATTORNEY FOR DEFENDANT)
Date:

_____            ➤    _____
        (TYPE OR PRINT NAME)                              (ATTORNEY FOR DEFENDANT)
Date:

_____            ➤    _____
        (TYPE OR PRINT NAME)                              (ATTORNEY FOR DEFENDANT)
Date:

_____            ➤    _____
        (TYPE OR PRINT NAME)                              (ATTORNEY FOR _____)
Date:

_____            ➤    _____
        (TYPE OR PRINT NAME)                              (ATTORNEY FOR _____)
Date:

_____            ➤    _____
        (TYPE OR PRINT NAME)                              (ATTORNEY FOR _____)

**Exhibit 1413 - 0060**

## VOLUNTARY EFFICIENT LITIGATION STIPULATIONS



**Superior Court of California
County of Los Angeles**



**Los Angeles County
Bar Association
Litigation Section**

**Los Angeles County
Bar Association Labor and
Employment Law Section**



**Consumer Attorneys
Association of Los Angeles**



**Southern California
Defense Counsel**



**Association of
Business Trial Lawyers**



**California Employment
Lawyers Association**

LACIV 230 (NEW)
LASC Approved 4-11

The Early Organizational Meeting Stipulation, Discovery Resolution Stipulation, and Motions in Limine Stipulation are voluntary stipulations entered into by the parties. The parties may enter into one, two, or all three of the stipulations; however, they may not alter the stipulations as written, because the Court wants to ensure uniformity of application. These stipulations are meant to encourage cooperation between the parties and to assist in resolving issues in a manner that promotes economic case resolution and judicial efficiency.

*The following organizations endorse the goal of promoting efficiency in litigation and ask that counsel consider using these stipulations as a voluntary way to promote communications and procedures among counsel and with the court to fairly resolve issues in their cases.*

◆Los Angeles County Bar Association Litigation Section◆

◆ Los Angeles County Bar Association
Labor and Employment Law Section◆

◆Consumer Attorneys Association of Los Angeles◆

◆Southern California Defense Counsel◆

◆Association of Business Trial Lawyers◆

◆California Employment Lawyers Association◆

Exhibit 1413 - 0061

COPY

1   ROBERT W. BROWNLIE (Bar No. 138793)          **CONFORMED COPY**
    KELLIN M. CHATFIELD (Bar No. 288389)            OF ORIGINAL FILED
2   DAVID A. TONER (Bar No. 317030)               Los Angeles Superior Court
    **DLA PIPER LLP (US)**
3   401 B Street, Suite 1700                         MAY 08 2018
    San Diego, California 92101-4297
4   Tel: 619.699.2700                        Sherri R. Carter, Executive Officer/clerk
    Fax: 619.699.2701
5                                               By Shaunya Bolden, Deputy

6   Attorneys for Plaintiff
    PCJV USA, LLC
7

8            SUPERIOR COURT OF CALIFORNIA, COUNTY OF LOS ANGELES

9                             CENTRAL DISTRICT

10  PCJV USA, LLC, a Delaware limited        CASE NO. BC 705580
    liability company,
11                                           **VERIFIED COMPLAINT**
                  Plaintiff,
12
           v.
13
    GUY KOREN, an individual; ALON
14  KOREN, an individual; TOM HODGSON,
    an individual; EMILY GARCIA, an
15  individual; ASHLEY GRUDNOWSKI, an
    individual; and DOES 1 through 25,           **BY FAX**
16  inclusive,
17
                  Defendant.
18

19       Plaintiff PJCV USA, LLC ("PCJV" or the "Company") alleges:

20                        SUMMARY OF COMPLAINT

21       1.      On April 23, 2018, at a meeting of the Board of Managers of PCJV ("Managers")

22  — which was attended by defendants Guy Koren, Alon Koren and Tom Hodgson ("Hodgson") —

23  a majority of the Managers voted to remove Guy Koren as the President of the Company.  Guy

24  Koren and the other defendants, however, refuse to accept this result.  Instead, they have blocked

25  the newly elected management from gaining access to the Company's bank accounts, have

26  directed that funds be sent to a bank account that Guy Koren opened without authorization from

27  the Managers, have directed employees to not cooperate with new management, have concealed

28  /////

DLA PIPER LLP (US)    WEST\281324277.3              -1-
   SAN DIEGO
                                                              VERIFIED COMPLAINT

Exhibit 1413 - 0062

1    information vital to running the Company, including payroll information, and continue to hold

2    Guy Koren out as President of the Company.

3        2.    Then, on April 27, 2018, individuals broke into the Company's office and stole the

4    Company's computer servers, checkbooks, and other financial records.  Security cameras show

5    that Hodgson was outside the Company's office just before the break-in.  A mutual acquaintance

6    of Guy Koren and a member of current management said that Guy Koren asked the acquaintance,

7    on April 27, 2018, for his assistance in breaking into the Company's office.  On May 5, 2018,

8    Guy Koren issued payroll checks to several PCJV employees.  Each check was previously bound

9    in a checkbook stolen from the Company's office on April 27.  Therefore, PCJV is informed and

10   believes and thereon alleges that Guy Koren and Hodgson broke into the Company's offices and

11   stole computer servers, checkbooks, and other financial records.

12       3.    Defendants' actions and continued interference with the Company's operations are

13   causing the Company to suffer severe and irreparable harm.  Defendants have no justification for

14   ignoring the Managers' decision to dismiss Guy Koren as the Company's President.  Therefore,

15   immediate injunctive relief is necessary to allow the newly elected management team to control

16   the Company before Guy Koren and the other Defendants cause further damage to PCJV and its

17   business.

18                            <u>JURISDICTION & VENUE</u>

19       4.    Jurisdiction is proper in the Superior Court because PCJV seeks damages in excess

20   of the Superior Court's jurisdictional minimum and seeks injunctive and other equitable relief.

21       5.    Venue is proper within this judicial district because the acts and events alleged

22   herein occurred within Los Angeles County and because PCJV and Defendants reside in Los

23   Angeles County.

24                               <u>THE PARTIES</u>

25       6.    Plaintiff PCJV USA, LLC is a Delaware limited liability company with its

26   principle place of business in Los Angeles, California.

27       7.    Defendant Guy Koren is an individual and a resident of the State of California.

28   Until his removal, Defendant was the President and a Manager of PCJV.

DLA Piper LLP (US)    WEST\281324277.3                        -2-
    San Diego

                                                    VERIFIED COMPLAINT

Exhibit 1413 - 0063

8.      Defendant Alon Koren is an individual and a resident of the State of California. He is brother of Guy Koren.  Alon Koren has provided material assistance to Guy Koren in his effort to retain control over PCJV's business.

9.      Defendant Tom Hodgson is an individual and a resident of the State of California. Hodgson has provided material assistance to Guy Koren's effort to retain control over PCJV's business.

10.      Defendant Emily Garcia ("Garcia") is an individual and a resident of the State of California.  Garcia has provided material assistance to Guy Koren in his effort to retain control over PCJV's business.

11.      Defendant Ashley Grudnowki ("Grudnowski") is an individual and a resident of the State of California.  Grudnowski has provided material assistance to Guy Koren in his effort to retain control over PCJV's business.

12.      PCJV is unaware of the true names and capacities of the defendants sued in this action by the fictitious names DOES 1 through 25.  PCJV will amend its complaint when those names and/or capacities become known to PCJV.  PCJV is informed and believes that each of the fictitiously named defendants is in some manner responsible for the events and allegations set forth in this complaint.

13.      PCJV alleges on information and belief that at all material times herein mentioned, each of the defendants was the co-conspirator, agent and/or employee of each of the remaining defendants, and was at all relevant times acting within the course and scope of such conspiracy, agency and/or employment.

## BACKGROUND

### Governance of PCJV

14.      PCJV is the franchisor of the Potato Corner brand in the United States.  Potato Corner is an international fast food brand.  Dubbed the World's Best Flavored Fries, Potato Corner has been a leading brand in the food industry for 25 years with over 1,100 branches worldwide.

/////

Exhibit 1413 - 0064

15.     Cinco Corporation ("Cinco" or the "Cinco Group"), a company headquartered in the Philippines, is the owner of the international trademark and brand for Potato Corner and is the majority (60%) owner of PCJV.

16.     Three individuals residing in Los Angeles County, Guy Koren, Inbal Jacoby ("Inbal") and Amir Jacoby ("Amir"), own the remaining 40% interests in PCJV. These individuals are referred to as the "LA Group."

17.     Cinco and the LA Group are parties to the Limited Liability Company Agreement of PCJV USA, LLC (the "Operating Agreement"), a true and correct copy of which is attached hereto as Exhibit A. The Operating Agreement establishes the governance of PCJV.

18.     Section 4.1 of the Operating Agreement provides that "the business and affairs of the Company shall be managed and all the Company powers shall be exercised by or under the direction of the Mangers."

19.     Section 4.3.1 of the Operating Agreement entitles Cinco Group "to elect four (4) Managers, while the LA Group shall be entitled to elect three (3) Managers." The Operating Agreement, thus, gives the Cinco Group control of a majority of the Company's Managers.

20.     Section 4.4 of the Operating Agreement provides that "[a]ny Managers may be removed, with or without cause, by the vote of a Majority of the Members by written consent or at a meeting of Members called expressly for that purpose."

21.     Section 4.11.4 of the Operating Agreement provides that "[a]ny officer [of the Company] may be removed with or without cause, by the Managers, at any regular or special meeting thereof . . . ."

22.     Section 4.11.2 of the Operating Agreement provides that "[t]he officers of the Company . . . shall be chosen by the Managers . . . ."

23.     Section 4.1 of the Operating Agreement further authorizes the Company's Managers — not each individual Manager — to do certain things enumerated in the subsections to Section 4.1. The matters that the Managers acting collectively are authorized to undertake include:

/////

**Exhibit 1413 - 0065**

- "To approve compensation packages for the managers, executive offices [sic] and key personnel." (Section 4.1.1);

- "To approve all purchases and disbursements in excess of Ten Thousand Dollars ($10,000), provided that such amount may be changed or modified by Management as it deems necessary." (Section 4.1.5.);

- "To purchase, receive, lease or otherwise acquire and deal with the Property, wherever located." (Section 4.1.7);

- "To sell, convey, mortgage, pledge, lease, exchange, or otherwise Dispose of Property." (Section 4.1.8);

- "To lend money, invest and reinvest the Company's funds, and receive and hold Property as security for repayment, including, without limitation, the loaning of money to Members, officers, employees, and agents." (Section 4.1.9);

- "To change the principal place of business of the Company from one location to another as provided in Section 2.3 hereof, and to fix and locate from time to time one or more subsidiary offices of the Corporation." (Section 4.1.11); and

- "To select and remove all of the officers, agents and employees of the Company, to prescribe such powers and duties for them as may not be inconsistent with law, with the Certificate or this Operating Agreement, to fix their compensation, and to require from them security for faithful service." (Section 4.1.13).

24.     Section 4.8 of the Operating Agreement provides that "Managers shall owe fiduciary duties to the Company and the Members in the manner prescribed in the [Delaware Limited Liability Company] Act and under applicable case law."

**_The Parties Disagree over Guy Koren's Management of PCJV and Potato Corner USA_**

25.     Over the past eighteen months, Cinco Group and Guy Koren disagreed over Guy Koren's actions as President of PCJV.

26.     During his tenure as President of PCJV, Section 4.11.7.3 of the Operating Agreement required Guy Koren to "maintain a comprehensive system of records, books and accounts, with respect to the licensing and sub-licensing activities, operation, establishment,

**Exhibit 1413 - 0066**

1    management, maintenance and other activities of the 'Potato Corner' outlets /stores in the

2    Territory with the assistance of the Corporate Secretary." Section 4.11.7.4 of the Operating

3    Agreement required Guy Koren to provide, each month, "a statement of receipts and

4    disbursements, a schedule of accounts receivable and payable, and a schedule of fees collected

5    and distributed, together with a reconciled bank statement as of the last day of the [prior] month

6    with the assistance of the Corporate Secretary."

7          27.    Section 3.9.1.1 of the Operating Agreement gave the Cinco Group as a Member of

8    the Company the right to inspect and copy PCJV's financial statements (Section 2.6.6) and

9    PCJV's books and records as they relate to the internal affairs of the Company (Section 2.6.7).

10          28.    The Cinco Group, through its appointed Managers, repeatedly asked Guy Koren to

11    provide a full accounting and statement of accounts for PCJV. Notwithstanding his obligations to

12    keep and maintain such records and to provide them to the Cinco Group, and the Cinco Group's

13    right to such documents and information, Guy Koren refused to provide it to the Cinco Group.

14          29.    Cinco Group also asked Guy Koren, repeatedly, to provide a five-year plan for

15    PCJV, including projections. Guy Koren refused each time.

16          30.    Unable to resolve these disputes over management, in or around November 2017,

17    the LA Group (through Mr. Guy Koren and others) proposed to buy Cinco Group's interests in

18    PCJV. The parties, however, could not reach a deal.

19          31.    Guy Koren, without the authorization of the Company's Managers, entered into a

20    lease either on behalf of the LA Group or PCJV and used $71,000 of PCJV's funds in violation of

21    Sections 4.1.5 and 4.1.7 of the Operating Agreement.

22          32.    Guy Koren, without the authorization of the Company's Managers, increased his

23    salary and the salary or payments to his brother, Alon Koren, and his associates in violation of

24    Section 4.1.1 of the Operating Agreement.

25    ***Guy Koren Embezzles PCJV's Funds Before his Position is Terminated***

26          33.    On or about March 21, 2018, Guy Koren secretly emptied PCJV's bank accounts

27    at Wells Fargo by making three in-person withdrawals totaling approximately $1,000,000. PCJV

28    ////

Exhibit 1413 - 0067

1    is informed and believes and thereon alleges that Guy Koren also removed Cinco Group's

2    representatives as authorized signatories to the Company's accounts at Wells Fargo.

3         34.    These accounts held funds necessary for PCJV to honor its commitments and

4    obligations to its Potato Corner franchisees, vendors, and other third parties.  Consequently, Guy

5    Koren's looting of PCJV's bank accounts caused the Company's checks to bounce.

6    PCJV has recently discovered that on or about March 21, 2018, Guy Koren moved PCJV's

7    money to accounts at JPMorgan Chase Bank ("Chase Bank").  Guy Koren opened those accounts

8    without authorization and made himself the only signer on the accounts.  Guy Koren was not

9    authorized by the Company's Managers to disburse nearly $1,000,000 of the Company's money.

10   That sum was well over Section 4.1.5 of the Operating Agreement's threshold of $10,000 for

11   which the approval of the Managers was required.  Finally, Guy Koren had no authority from the

12   Managers to unilaterally open the accounts at Chase Bank.

13        35.    Upon learning that Guy Koren had looted the Company's bank accounts at Wells

14   Fargo, PCJV and the Cinco Group retained counsel in an effort to force Guy Koren to return the

15   withdrawn money to the Company's accounts at Wells Fargo.  But, even after representing that he

16   did so, Guy Koren refused repeated requests to restore the Cinco Group's authority as a signatory

17   to the account.  As a result, PCJV has been unable to independently confirm that Guy Koren

18   restored the full funds, cannot confirm that Guy Koren has not made additional withdrawals or

19   transfers, and cannot prevent Guy Koren from making unauthorized withdrawals in the future.

20        36.    Despite repeated requests, Guy Koren failed to provide a full accounting of what

21   was removed from Wells Fargo, deposited at Chase Bank or returned to Wells Fargo.  Guy Koren

22   has also failed to adequately explain why he emptied PCJV's accounts in the first place.

23   ***The Members Vote to Remove Guy Koren on April 9***

24        37.    On or around March 27, 2018, Cinco Group, through its four appointed Managers

25   of PCJV, served a notice of meeting on the LA Group, announcing a meeting of the PCJV

26   Members on April 9, 2018.  The meeting agenda included, among other things, an election of

27   Managers and Officers.  A true and correct copy of the Notice of Meeting is attached hereto as

28   Exhibit B.  As of the time the notice of meeting was sent, the Managers of PCJV consisted of the

DLA PIPER LLP (US)    WEST\281324277.3                    -7-
    SAN DIEGO

                                                                    VERIFIED COMPLAINT

Exhibit 1413 - 0068

1    following individuals: Jose P. Magsaysay; Marivic del Pilar; John Edward Hernandez; Ricardo

2    Enrique K. Montelibano; Guy Koren; Amir Jacoby; and Inbal Jacoby. This composition of

3    Managers is referred to as the "Prior Board."

4        38.    The Cinco Group owned 60% of the interests in the Company and had the right to

5    appoint four of the Company's seven Managers. The Cinco Group's super majority control of the

6    Member interests and majority control of the Company's Managers gave the Cinco Group the

7    unilateral ability to remove Managers and Officers of the Company. Guy Koren clearly knew this

8    and, even before receiving the notice of the April 9 meeting, began taking actions to entrench

9    himself as the individual in control of the Company's business. Such efforts began, as alleged

10    above, by moving the cash to accounts that he alone controlled.

11        39.    Next, Guy Koren took steps to secure the loyalty and assistance of key employees

12    who controlled access to the Company's accounting books and records, payroll accounts,

13    franchise agreements and other records necessary to operate PCJV's business. On or about April

14    2, 2018, in violation of Section 4.1.1 of the Operating Agreement, Guy Koren, unilaterally and

15    without authority, gave substantial increases in compensation to Garcia and Grudnowski. Guy

16    Koren clearly did this in anticipation of the April 9 Members' meeting at which he understood

17    that he would be removed from management of the Company.

18        40.    On April 9, 2018, as a result of Guy Koren's egregious misconduct and failure to

19    act properly as a fiduciary of PCJV, at a Members' meeting, 75% of the Member interests of

20    PCJV voted to remove Guy Koren as Manager and officer of PCJV. Under Sections 4.4 and

21    4.11.4 of the Operating Agreement, this vote was more than enough to remove Guy Koren from

22    these positions.

23        41.    After the vote to remove him as a Manager and officer, Guy Koren threatened to

24    "tank" PCJV and refused to acknowledge his removal. He further threatened that the Cinco

25    Group would have to physically remove him.

26        42.    Guy Koren then left the meeting and refused to further participate.

27        43.    In addition to removing Guy Koren as an officer of the Company, the Members

28    who remained at the meeting elected new Managers. The individuals elected to represent Potato

Exhibit 1413 - 0069

1   Corner International, Inc. / Cinco Group as Managers of PCJV USA, LLC were:  Jose P.

2   Magsaysay; Marivic del Pilar; John Edward Hernandez; and Marco del Pilar.  The individuals

3   elected to represent the LA Group as Managers of PCJV USA, LLC were:  Amir Jacoby and

4   Inbal Jacoby.  This composition of Managers is referred to as the "April 9 Board."  A true and

5   correct copy of the resolutions passed at the April 9 meeting is attached hereto as Exhibit C.

6         44.   After the April 9 meeting, Guy Koren continued in his refusal to acknowledge his

7   ouster and did his best to interfere in PCJV's operations.  Guy Koren refused to allow PCJV's

8   new management team to access to the Company's office, accounting books and records, and

9   material contracts, including franchise agreements.  Guy Koren deliberately caused confusion

10   among PCJV's franchisees and other third parties by insisting that he was still President of PCJV,

11   and directed Wells Fargo to continue to allow him access to PCJV funds and accounts, despite his

12   removal as signatory and removal as President.  Guy Koren also ordered the Company's

13   employees and independent contractors to take direction from him exclusively, insisting to them

14   that he remained President of the Company.

15         45.   After his ouster, Guy Koren instructed Grudnowski to change the locks on PCJV's

16   office, preventing the new management team from gaining entry.  A true and correct copy of the

17   email, sent on April 11, 2018, in which Grudnowski instructs the property manager to change

18   PCJV's locks, is attached hereto as Exhibit D.  On the same day, Guy Koren sent an email to

19   Gracia and Grudnowski, instructing them to move the Company's file cabinets to prevent the

20   Company's Managers and new officers from accessing the Company's business records.

21         46.   Guy Koren also kept and redirected PCJV funds to accounts at Chase Bank that

22   Guy Koren opened without authorization.  He has refused to give PCJV and its newly appointed

23   officers access to those accounts.

24         47.   By a letter, dated April 11, 2018, Guy Koren, through his counsel, objected to the

25   election on April 9 of Amir Jacoby and Inbal Jacoby as Managers to represent the LA Group.

26   Through his counsel, Guy Koren asserted that the individuals who represent the interests of the

27   LA Group as Managers of PCJV USA, LLC were:  Guy Koren; Alon Koren; and Hodgson.  Guy

28   Koren, Alon Koren and Hodgson together with Cinco's four representatives appointed to the

WEST\281324277.3                -9-

VERIFIED COMPLAINT

**Exhibit 1413 - 0070**

1   Board of Managers — Jose P. Magsaysay, Marivic del Pilar, John Edward Hernandez, and Marco

2   del Pilar — are referred to as the "April 11 Board."

3       48.    On April 18, 2018, Garcia conspired with Guy Koren to sweep more cash from the

4   Company's accounts at Wells Fargo into the accounts at Chase Bank.

5   *The Managers Again Vote to Remove Guy Koren on April 23*

6       49.    Also on April 18, 2018, the Cinco Group's appointed Managers noticed a special

7   meeting of the Managers of PCJV for April 23, 2018.  A true and correct copy of the Notice of

8   Special Meeting of Managers is attached hereto as Exhibit E.  The Cinco Group Managers did

9   this to remove all doubt about whether Guy Koren had been removed as President of the

10  Company.  The second vote was required because Guy Koren refused to respect or abide by his

11  removal as President of PCJV, and continued to cause active confusion and harm to PCJV by

12  proclaiming he was still the President.

13      50.    To ensure the effectiveness of the actions that were contemplated for the April 23

14  Managers' meeting, the Notice of Special Meeting was sent to the individuals who served as

15  Managers before April 9 (the Prior Board), the individuals who were elected as Managers on

16  April 9 (the April 9 Board) and the individuals that Guy Koren purported, in his counsel's April

17  11 letter, to appoint as Managers to represent the LA Group on the Board of Managers (the April

18  11 Board). . Moreover, the Notice of Special Meeting spelled out the purpose of the meeting as:

19      The purpose of the meeting will be to consider:

20      (1) the removal of all of the Company's officers, including its
        Chairman of the Board of Members, President, Corporate Secretary,
21      and Treasurer, and subordinate officers pursuant to Section 4.11.4
        of the Agreement [Limited Liability Company Agreement of PCJV
22      USA, LLC];

23      (2) the election of new officers of the Company, including its
        Chairman of the Board of Members, President, Corporate Secretary,
24      and Treasurer, and subordinate officers pursuant to Sections 4.11.2
        and 4.11.3 of the Agreement, respectively;
25
        (3) the termination of the Services Agreement by and between
26      Potato Corner Joint Venture also known as PCJV USA, LLC, on
        the one hand, and Guy Koren and Amir Jacoby, known as the LA
27      Group, on the other hand, dated January 1, 2017 (the "Services
        Agreement"), pursuant to Section 5 of the Services Agreement; and
28

DLA PIPER LLP (US)    WEST\281324277.3              -10-
SAN DIEGO
                                                                    VERIFIED COMPLAINT

**Exhibit 1413 - 0071**

1    (4) such other matters and items of business as may arise during the
2    course of the meeting.

3    51.    All of the individuals who were sent the Notice of Special Meeting appeared at the

4    meeting in person or telephonic and participated in the meeting. Those individual specifically

5    included Guy Koren, Alon Koren and Hodgson, the individuals that Guy Koren claimed

6    represented the LA Group as Managers. Guy Koren, Alon Koren and Hodgson participated in

7    voting on each item considered by the Company's Managers during the Special Meeting of

8    Managers. By participating in the meeting, Guy Koren, Alon Koren and Hodgson waived any

9    objection that they may have had to the Notice of Special Meeting or the validity of the actions

10   taken during the meeting.

11   52.    Pursuant to Sections 4.11.2 and 4.11.4 of the Operating Agreement, the Managers

12   have the authority to remove any officer and to appoint new officers.

13   53.    During the meeting, a motion was duly made to remove of all of the Company's

14   officers, including its Chairman of the Board of Members, President, Corporate Secretary, and

15   Treasurer, and subordinate officers. The motion was seconded, and a discussion ensued. After

16   the discussion, by a roll call vote, the motion was passed unanimously by the April 9 Board, by a

17   majority of the Prior Board with Guy Koren dissenting, and by a majority of the April 11 Board

18   with Guy Koren, Alon Koren, and Hodgson dissenting. Therefore, regardless of whether the

19   Managers consisted of the Prior Board, April 9 Board, or April 11 Board, the motion passed and

20   all of the Company's then current officers were removed, including Guy Koren as PCJV's

21   President. A true and correct copy of the Minutes of Special Meeting of Managers, held on

22   April 23, 2018, is attached hereto as Exhibit F.

23   54.    After the officers of the Company were removed, a second vote was taken to elect

24   new officers. A motion was duly made to elect the following individuals to serve as officers of

25   the Company:

26   Chairman of the Board:     John Edward P. Hernandez

27   President:     Amir Jacoby

28   Treasurer:     Marivic del Pilar

DLA PIPER LLP (US)    WEST\281324277.3                    -11-
SAN DIEGO

VERIFIED COMPLAINT

Exhibit 1413 - 0072

1      Corporate Secretary:        Ben Olivas

2  The motion was seconded, and a discussion ensued. After the discussion, by a roll call vote, the

3  motion was passed unanimously by the April 9 Board, by a majority of the Prior Board with Guy

4  Koren dissenting, and a by a majority of the April 11 Board with Guy Koren, Alon Koren, and

5  Hodgson dissenting. Therefore, regardless of whether the Managers consisted of the Prior Board,

6  April 9 Board, or April 11 Board, the motion passed. Consequently, Guy Koren was not

7  reappointed as President or any other officer of the Company.

8      55.    Notwithstanding his removal for a second time, Guy Koren insists he is still the

9  President of PCJV and, true to his threats on April 9, has begun a campaign to interfere with

10  PCJV's business and "tank" the Company.

11      56.    Guy Koren has repeatedly ordered employees to disregard instructions provided by

12  the new management team. Further, he continues to authorize their paid time off. A true and

13  correct copy of a representative example of Guy Koren's unauthorized direction to employees is

14  attached hereto as Exhibit G.

15      57.    Guy Koren has also sent threatening correspondence to Wells Fargo in which he

16  insists that he continue to have access to PCJV's bank accounts. Consequently, Wells Fargo has

17  informed PCJV that it intends to file an interpleader action unless Guy Koren concedes his

18  removal from the accounts. An interpleader action to regain access to its funds will require the

19  Company to pay for Wells Fargo's attorneys' fees and to pay for its own attorneys' fees..

20      58.    Guy Koren has refused and continues to refuse to give PCJV's management access

21  to the unauthorized accounts that he opened at Chase Bank and into which he deposited PCJV's

22  funds. PCJV is informed and believes and thereon alleges that Guy Koren has intercepted

23  franchise fee payments — PCJV's primary source of income — and has deposited those

24  payments in the accounts at Chase Bank or some other accounts controlled exclusively by Guy

25  Koren. Guy Koren has refused and continues to refuse to provide an accounting of the PCJV

26  funds he deposited in Chase Bank or has had others deposit into the Chase Bank accounts.

27      59.    Meanwhile, PCJV continues to lack access to crucial funds it needs to carry out its

28  operations.

Exhibit 1413 - 0073

1       60.    Guy Koren has also prevented new management from obtaining and accessing key

2   records, including records necessary to pay employees.  In an effort to stymie PCJV's operational

3   capacity, subsequent to his removal as President, Guy Koren and Garcia amended the digital

4   credentials required to access PCJV's account with its payroll provider, ADP.  Guy Koren and

5   Garcia changed the login name for the ADP account to venus_gemini@yahoo.com, which is

6   Garcia's personal email address.  As a result, PCJV cannot use its ADP account to pay its

7   employees.

8       61.    Guy Koren has also contacted mall operators — the prospective landlords for

9   potential franchisees — asserting that PCJV's legitimate representatives have been terminated,

10   and falsely representing that only he is authorized to act on PCJV's behalf.  Without authority,

11   Guy Koren is attempting to enter PCJV franchisees into expensive, crippling leases.  Because rent

12   is the predominant fixed cost associated with operating a Potato Corner franchise, if entered into,

13   these leases could prevent PCJV franchisees from earning a profit on their investment, dooming

14   them to failure.  Thus, not only does Guy Koren's interference with mall operators jeopardize

15   PCJV's income stream, it threatens to brand its franchises an unviable businesses, which could

16   destroy PCJV's reputation and franchise operations.

17       62.    PCJV has learned from Jerry Anderson, Vice President of Macerich Leasing, a

18   mall developer that partners with PCJV, that he was contacted by Guy Koren and led to believe

19   that PCJV's legitimate representatives have been terminated and that Guy Koren has the

20   exclusive authority to negotiate leases on behalf of PCJV's franchisees.  Guy Koren instructed

21   Mr. Anderson to deal directly and exclusively with him.

22       63.    Guy Koren insinuated to Therese Macaraig, a contractor who designs Potato

23   Corner franchises, that, regardless of the composition of PCJV's official management team, Guy

24   Koren is managing PCJV's operations.

25       64.    Guy Koren severed PCJV's control over its supply chain. Guy Koren is actively

26   disrupting PCJV's business relationship with Bunzl Distribution USA, Inc. ("Bunzl"), the third

27   party logistics distributor that provides PCJV franchisees with paper goods and proprietary spices

28   from the Philippines.  Potato Corner franchises cannot operate without these supplies.  Guy Koren

Exhibit 1413 - 0074

1   instructed Bunzl to ignore PCJV's new management team, and deal only with him. Bunzl is

2   heeding Guy Koren's demands, refusing to cooperate with, or take direction from, Amir Jacoby,

3   PCJV's President.

4       65.    Guy Koren is engaged in a deliberate campaign to mislead franchisees into

5   believing that he remains in control of PCJV's operations. Guy Koren has contacted franchisees,

6   inaccurately telling them that PCJV's true representatives are either terminated or illegitimate,

7   and describing members of the new management team as temporary interlopers. Guy Koren has

8   instructed franchisees to ignore PCJV's true officers, and conduct business solely with himself.

9       66.    Guy Koren misappropriated PCJV's franchise fees . In one instance, on or around

10  April 18, 2018, a thirty thousand dollar check, payable to PCJV, was impermissibly redirected by

11  Grudnowski to Guy Koren.

12      67.    On April 27, 2018, individuals broke into the Company's office and stole the

13  Company's computer servers, checkbooks from Guy Koren's secret Chase Bank account, eight

14  post-dated checks payable to PCJV and its corporate affiliates, a dozen corporate debit cards, a

15  check scanner, paper files, bank stamps, and other financial records. Security cameras show that

16  Hodgson was outside the Company's office just before the break-in. A mutual acquaintance of

17  Guy Koren and a member of current management said that Guy Koren asked him on April 27,

18  2018, for his assistance in breaking into the Company's office. Therefore, PCJV is informed and

19  believes and thereon alleges that Guy Koren and Hodgson broke into the Company's offices and

20  stole computer servers, checkbooks, and other financial records. A true and correct copy of the

21  police report on the break-in and theft is attached hereto as Exhibit H.

22      68.    On May 5, 2018, Guy Koren issued checks to three PCJV employees. Each check,

23  signed by Guy Koren and dated May 1, 2018, was previously bound in a checkbook stolen from

24  PCJV's office on April 27, 2018. The checks were handled by Garcia, who coordinated their

25  delivery to employees.

26      69.    Garcia has refused, and continues to refuse, to provide PCJV access to the

27  Company's accounting and other business records and log-in credentials to the Company's

28  electronic accounts, including its electronic payroll account.

DLA Piper LLP (US)
San Diego            WEST\281324277.3              -14-

                                                    VERIFIED COMPLAINT

Exhibit 1413 - 0075

70.    Grundnowski has refused, and continues to refuse, to provide PCJV access to the Company's business records pertaining to the Company's franchisees. Grundnowski instructed building management to change the locks to PCJV's office, preventing new management from accessing the premises. Grundnowski also misappropriated PCJV funds, directing them to Guy Koren.

71.    Alon Koren has refused and continues to refuse PCJV full and unfettered access to the Company's warehouse, supplies, inventory and other equipment.

<u>IMMEDIATE AND IRREPARABLE HARM</u>

72.    As alleged above, Defendants' fiduciary breaches and acts of unfair competition, unless immediately restrained and enjoined, threaten PCJV with immediate, severe and irreparable harm to its business and reputation.

73.    Defendants have already demonstrated that they will not respect Guy Koren's removal from office and have threatened to "tank" PCJV.

74.    From May 20-23, 2018, the International Shopping Center Council will be hosting its annual RECon convention. RECon is a major industry event, attended annually by representatives of PCJV. This year, at RECon, PCJV intends to introduce John Edward P. Hernandez, its newly installed Chairman of the Board, to many of PCJV's franchisees, vendors, landlords, and mall developers. Given the uncertainty created by Guy Koren's erratic and unauthorized behavior, it is crucial that PCJV's new management team definitively project its authority at this event. PCJV is informed and believes and thereon alleges that Guy Koren intends to appear at RECon to further advance his scheme of disruption.

75.    Defendants' conduct, if not enjoined, will cause immediate and irreparable harm because, in their attempt to seek revenge for Guy Koren's removal, they will permanently interfere with PCJV's business relationships in the United States, dissipate key PCJV assets and records that PCJV needs to continue its franchise business in the United States, and they will destroy records and assets that belong to PCJV.

/////

/////

Exhibit 1413 - 0076

## FIRST CAUSE OF ACTION

(Conversion Against All Defendants)

76.  PCJV realleges and incorporates paragraphs 1-75 as if fully set forth herein.

77.  On March 26, 2018, Guy Koren ransacked PCJV's bank accounts, making three unauthorized withdrawals totaling approximately $1 million.

78.  The money in those accounts belonged to PCJV, not Guy Koren, and Guy Koren did not have authority to withdraw more than $10,000 without the consent of PCJV's six other Managers.

79.  In violation of PCJV's rights, Guy Koren appropriated PCJV funds and exercised complete dominion over them.

80.  Despite repeated requests that he do so, Guy Koren failed to provide a complete accounting of the funds that he withdrew.  Guy Koren also failed to account for all funds removed from the accounts since March 26, 2018.

81.  Indeed, Guy Koren has maintained PCJV funds in an account at Chase Bank, to which PCJV does not have access.

82.  Guy Koren's actions have deprived PCJV of its own money.

83.  Guy Koren and the other Defendants have intercepted payments to PCJV and misappropriated those funds.  In one such incident, on or around April 18, 2018, a thirty thousand dollar check, payable to PCJV, was impermissibly redirected by Grudnowski to Guy Koren.

84.  Guy Koren and Garcia misappropriated PCJV's ADP account by changing the login credentials for that account and refusing to provide those credentials to PCJV.

85.  On April 27, 2018, individuals broke into the Company's office and stole the Company's computer servers, checkbooks, eight post-dated checks payable to PCJV and its corporate affiliates, a dozen corporate debit cards, a check scanner, paper files, bank stamps, and other financial records.  PCJV is informed and believes and thereon alleges that Guy Koren, Hodgson and the other defendants participated in the break-in and theft.

86.  Guy Koren, Alon Koren, Hodgson, Garcia and Grudnowski have, and continue to, exercise dominion and control over PCJV's accounting, business and other records, inventory,

DLA Piper LLP (US)
San Diego

WEST\281324277.3

-16-

VERIFIED COMPLAINT

Exhibit 1413 - 0077

1  equipment and funds, and have deprived PCJV of its right to possess, control and use accounting,

2  business and other records, inventory, equipment and funds.

3      87.      PCJV has been harmed in an amount to be proven at trial, including the loss of all

4  money Guy Koren withdrew and transferred to himself without authorization.

5      88.      The actions of Defendants and each of them as alleged herein were fraudulent,

6  malicious and oppressive and constitute despicable conduct in conscious disregard of PCJV's

7  rights, and PCJV is, therefore, entitled to exemplary and punitive damages pursuant to Civil Code

8  Section 3294.

9                              SECOND CAUSE OF ACTION

10         (Breach of Fiduciary Duty Against Guy Koren, Alon Koren and Hodgson)

11     89.      PCJV realleges and incorporates paragraphs 1-88 as if fully set forth herein.

12     90.      Pursuant to the Operating Agreement, Guy Koren, Alon Koren and Hodgson, as

13  individuals holding themselves out as Managers of PCJV, owed fiduciary duties to PCJV and its

14  Members.

15     91.      Guy Koren breached his fiduciary duties by emptying PCJV's bank accounts of all

16  funds, stripping PCJV of its ability to meet its obligations to third parties.

17     92.      Guy Koren further breached his duties by preventing PCJV's other Managers from

18  accessing the PCJV accounts, preventing them from taking action to protect PCJV and their own

19  interests.

20     93.      Guy Koren further breached his duties by interfering with PCJV's business

21  relationships – causing confusion with PCJV's employees, franchisees, lenders, financial

22  institutions, and lessors as to who is in charge of PCJV.

23     94.      Guy Koren further breached his fiduciary duties by threating to, and taking the

24  above mentioned action to, "tank" PCJV in retaliation for his removal.

25     95.      Guy Koren has, and upon information and belief, will also continue to

26  misrepresent himself as an agent acting on behalf of PCJV and Potato Corner.

27     96.      Guy Koren's actions deprived PCJV of its own funds.

28  /////

DLA PIPER LLP (US)
SAN DIEGO

WEST\281324277.3                              -17-

                                                VERIFIED COMPLAINT

Exhibit 1413 - 0078

97.    Guy Koren's actions will also cause confusion and interfere with PCJV's business operations in the United States and its relationship with its Potato Corner franchisees.

98.    In breach of fiduciary duties to PCJV and its Members, Guy Koren, Alon Koren, and Hodgson have, and continue to, exercise dominion and control over PCJV's accounting, business and other records, inventory, equipment and funds, and have deprived PCJV of its right to possess, control and use accounting, business and other records, inventory, equipment and funds.

99.    The conduct of Guy Koren, Alon Koren, and Hodgson imposes immediate and irreparable risks to PCJV's business, reputation, and goodwill, because, as a result of their conduct, PCJV may not be able to meet obligations to Potato Corner franchisees in the United States, or honor obligations to third party vendors and suppliers who contract with PCJV as the U.S. representative of the Potato Corner brand.

100.    The actions of Guy Koren, Alon Koren, and Hodgson, as alleged herein, were fraudulent, malicious and oppressive and constitute despicable conduct in conscious disregard of PCJV's rights, and PCJV is, therefore, entitled to exemplary and punitive damages pursuant to Civil Code Section 3294.

## THIRD CAUSE OF ACTION

(Violations of Business & Professions Code §17200, *et seq.* Against All Defendants)

101.    PCJV realleges and incorporates paragraphs 1-100 as if fully set forth herein.

102.    As set forth above, Guy Koren, Alon Koren, Hodgson, Garcia and Grudnowski are engaged in unlawful and unfair business practices by, inter alia: misappropriating and converting funds belonging to PCJV to prevent its Members and other Managers from carrying out their obligations to third parties and to one another; interfering with PCJV's business in the United States by taking PCJV's funds and preventing PCJV's new officers from accessing those funds; interfering with PCJV's newly appointed officers access to PCJV records; misrepresenting himself as an officer of PCJV to employees and third parties, such as realtors and landlords; causing confusion with PCJV's franchisees; and violating the terms of the license of PCJV to Potato Corner trademarks.

Exhibit 1413 - 0079

1    103.    As a result of his unlawful business practices, Guy Koren, Alon Koren, Hodgson,

2    Garcia and Grudnowski have been unjustly enriched by obtaining funds which lawfully belong to

3    PCJV.

4    104.    Defendants' conduct imposes immediate and irreparable risks to PCJV's business,

5    reputation, and goodwill, because, as a result of Defendants' conduct, PCJV may not be able to

6    meet obligations to Potato Corner franchisees in the United States, or honor obligations to third

7    party vendors and suppliers who contract with PCJV as the U.S. representative of the Potato

8    Corner brand.

9    <u>FOURTH CAUSE OF ACTION</u>

10   (Constructive Trust Against All Defendants)

11   105.    PCJV realleges and incorporates paragraphs 1-104 as if fully set forth herein.

12   106.    As set forth above, Guy Koren converted approximately $1 million in funds

13   belonging to PCJV on March 26, 2018 and continues to hold PCJV funds in an account at Chase

14   Bank to which he has not granted PCJV access.

15   107.    Guy Koren has threatened Wells Fargo such that Wells Fargo will not release

16   PCJV's funds to new management.

17   108.    Guy Koren, Grudnowski and the other Defendants have intercepted and have

18   misappropriated payments from PCJV's franchisees.

19   109.    This is money which, properly, belongs to PCJV and is necessary to carry out

20   PCJV's daily business.

21   110.    Accordingly, PCJV requests that the Court impose a constructive trust over all

22   PCJV funds misappropriated by Defendants and prevent Defendants from further appropriating or

23   converting PCJV funds.

24   WHEREFORE, PCJV prays for the following relief:

25   1.    A temporary restraining order and preliminary and permanent restraining order

26   restraining and enjoining Defendants from:

27   A.    Destroying, disposing of, discarding, selling, transferring, giving away, or

28   loaning the following items belonging to PCJV:

Exhibit 1413 - 0080

1                i.     All PCJV funds, including the money held in Wells Fargo accounts

2  for PCJV, any PCJV money transferred from the Wells Fargo accounts to any Chase Bank

3  accounts or any other bank, and any funds sent by PCJV's franchisees;

4                ii.     PCJV and Potato Corner inventory;

5                iii.    Computers, servers, hardware, office supplies.

6                iv.    Business records; and

7                v.     Intellectual Property.

8        B.     Failing or refusing to return to PCJV the following items belonging to

9  PCJV:

10               i.     All PCJV funds, including the money held in Wells Fargo accounts

11  for PCJV, any PCJV money transferred from the Wells Fargo accounts to any Chase Bank

12  accounts or any other bank, and any funds sent by PCJV's franchisees;

13              ii.     PCJV and Potato Corner inventory;

14              iii.    Computers, hardware, office supplies.

15              iv.    Business records;

16              v.     Login credentials to ADP and all other online accounts of PCJV;

17  and

18              vi.    Intellectual Property.

19        C.     Further use and/or disclosure to others of PCJV's trade secrets and

20  confidential and proprietary information and data, including its customer lists, supplier lists,

21  financial information, inventory lists, etc.;

22        D.     Keeping copies of any and all of PCJV's trade secrets and confidential and

23  proprietary information and data;

24        E.     Continuing to take action on behalf of or hold themselves out as officers,

25  employees or agents of PCJV or Potato Corner;

26        F.     Interfering with PCJV's relationships with its employees, including by,

27  inter alia, instructing employees not to appear for work or not cooperate with PCJV's

28  management;

Exhibit 1413 - 0081

1        G.     Interfering with PCJV's contractual relationships, including, inter alia,

2  relationships and negotiations with franchisees, suppliers, landlords, brokers, realtors, lenders,

3  and financial institutions;

4        H.     Doing any other act or thing calculated to, tending to, or likely to compete

5  unfairly with the Company or any other act in breach of Defendants' fiduciary duties to PCJV;

6  and

7        I.     Harassing, intimidating or otherwise threatening PCJV's employees,

8  officers, directors, agents, shareholders, customers or suppliers.

9     2.    An award of damages according to proof;

10     3.    An award of pre-judgment interest to the extent permitted by law;

11     4.    An award of punitive and exemplary damages;

12     5.    An award of PCJV's reasonable attorney's fees and costs to the extent permitted by

13  law;

14     6.    An accounting of all PCJV funds withdrawn or taken by Defendants; and

15     7.    Such other and further relief as the Court deems just and appropriate.

16

17  Dated: May 8, 2018

18                  DLA PIPER LLP (US)

19

20                  By                                    
                    ROBERT W. BROWNLIE

21                  KELLIN M. CHATFIELD
                    DAVID A. TONER

22                  Attorneys for Plaintiff
                    PCJV USA, LLC

23

24

25

26

27

28

DLA PIPER LLP (US)  WEST\281324277.3                -21-
SAN DIEGO
                                                         VERIFIED COMPLAINT

Exhibit 1413 - 0082

1                                  **VERIFICATION**

2         I, Amir Jacoby, state that:

3         I am over 18 years of age and am a resident of the United States.

4         I am the President of PCJV and am authorized to make this verification on its behalf.

5         I have read the Verified Complaint and to the best of my knowledge, based upon my

6 personal knowledge and/or upon information that I have learned or information that was made

7 available to me through the course of my job duties, I verify under penalty of perjury that the

8 foregoing is true and correct.

9 Dated: May 7, 2018

10

11                 Amir Jacoby

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28                               -22-

DLA PIPER LLP (US)
SAN DIEGO    WEST\281324277.3                                 **VERIFIED COMPLAINT**

**Exhibit 1413 - 0083**

1                             **VERIFICATION**

2       I, Myrose Victor, state that:

3       I am over 18 years of age and am a resident of the Republic of the Philippines.

4       I am a representative of Cinco Group.

5       I have read the Verified Complaint and to the best of my knowledge, based upon my

6 personal knowledge and/or upon information that I have learned or information that was made

7 available to me through the course of my job duties, I verify under penalty of perjury that the

8 foregoing is true and correct.

9 Dated: May 7, 2018

10 _____

11                 Myrose Victor

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

Exhibit 1413 - 0084

# EXHIBIT A

Exhibit 1413 - 0085

**LIMITED LIABILITY COMPANY AGREEMENT**
of
PCJV USA, LLC
A Delaware Limited Liability Company

THE INTERESTS CREATED BY THIS OPERATING AGREEMENT HAVE NOT BEEN
REGISTERED WITH THE SECURITIES AND EXCHANGE COMMISSION UNDER THE
SECURITIES ACT OF 1933, AS AMENDED, OR WITH THE SECURITIES AUTHORITIES
OF ANY STATE UNDER ANY STATE SECURITIES LAWS, AND MAY NOT BE SOLD
OR OTHERWISE TRANSFERRED UNLESS REGISTERED UNDER SUCH LAWS OR
UNLESS AN EXEMPTION FROM THE REGISTRATION REQUIREMENTS OF SUCH
LAWS IS AVAILABLE.  THE SALE OR TRANSFER OF SUCH INTERESTS IS SUBJECT
TO CERTAIN ADDITIONAL RESTRICTIONS DESCRIBED IN THIS OPERATING
AGREEMENT.

WEST\224283219.2

Exhibit 1413 - 0086

## TABLE OF CONTENTS

**Page**

ARTICLE I      DEFINITIONS ................................................................................................1

ARTICLE II     FORMATION .................................................................................................4

2.1    Purpose .........................................................................................................4
2.2    Powers ..........................................................................................................4
2.3    Formation and Name ....................................................................................4
2.4    Principal Place of Business ..........................................................................4
2.5    Registered Office and Registered Agent ......................................................4
2.6    Records to be Maintained .............................................................................5
2.7    Term ..............................................................................................................5

ARTICLE III    MEMBERS .....................................................................................................5

3.1    Classification of Members............................................................................5
3.2    Admission of Additional Members ..............................................................5
3.3    Right of First Refusal ...................................................................................6
3.4    Amendment of Member Listing ...................................................................6
3.5    Payment of Costs ..........................................................................................6
3.6    Limited Liability of Members ......................................................................6
3.7    Voting Rights.................................................................................................6
3.8    Meetings of Members ...................................................................................7
3.9    Right of Inspection; Provision of Records to Members ..............................10
3.10   Representations and Warranties ...................................................................12

ARTICLE IV    MANAGEMENT ...........................................................................................12

4.1    Management ..................................................................................................12
4.2    Number and Qualifications of Managers .....................................................14
4.3    Election of Managers....................................................................................14
4.4    Removal of Managers...................................................................................14
4.5    Resignation of Managers ..............................................................................14
4.6    Term of Office as Manager ..........................................................................14
4.7    Authority of Multiple Managers ..................................................................14
4.8    Fiduciary Duties Owed by Managers ...........................................................15
4.9    Conduct of Meetings of Managers ...............................................................15
4.10   Regular Monthly Meetings...........................................................................15
4.11   Officers .........................................................................................................15
4.12   Indemnification and Liability Insurance......................................................17
4.13   Actions of the Managers...............................................................................18
4.14   Meetings of Managers ..................................................................................18
4.15   Compensation of Manager ...........................................................................19
4.16   Authority of Members to Bind the Company ...............................................19
4.17   Specific Arrangements with the Cinco Group..............................................20
4.18   Specific Arrangements with the LA Group ..................................................20

WEST\224283219.2

Exhibit 1413 - 0087

**TABLE OF CONTENTS**
(continued)

| | | Page |
|---|---|---|
| ARTICLE V | CAPITAL | 21 |
| 5.1 | Initial Capital Contributions | 21 |
| 5.2 | Capital Accounts | 21 |
| 5.3 | Adjustment for Distributions in Kind | 21 |
| 5.4 | Interest | 21 |
| 5.5 | Deficit Capital Account | 22 |
| 5.6 | Return of Capital | 22 |
| 5.7 | Optional Adjustments to Capital Accounts | 22 |
| ARTICLE VI | INCOME AND LOSSES | 22 |
| 6.1 | Allocations | 22 |
| 6.2 | Qualified Income Offset | 22 |
| 6.3 | Minimum Gain Chargeback | 22 |
| 6.4 | Contributed Property and Revaluations | 22 |
| 6.5 | Timing | 23 |
| ARTICLE VII | DISTRIBUTIONS | 23 |
| 7.1 | Operating Distributions | 23 |
| 7.2 | Generally Pro Rata | 23 |
| 7.3 | Liquidating Distributions | 23 |
| ARTICLE VIII | ASSIGNMENT OF INTERESTS | 23 |
| 8.1 | Assignment of Interests | 23 |
| 8.2 | No Dissolution upon Assignment | 24 |
| 8.3 | Information Regarding Assignee | 24 |
| 8.4 | No Release of Liability of Assignor | 24 |
| 8.5 | Pledge of Membership Interest | 24 |
| 8.6 | Exercise of Rights upon Death or Incompetency | 24 |
| 8.7 | Exercise of Rights upon Dissolution or Termination | 24 |
| ARTICLE IX | DISSOLUTION AND WINDING UP | 24 |
| 9.1 | Dissolution | 24 |
| 9.2 | Effect of Dissolution | 25 |
| ARTICLE X | TAX AND ACCOUNTING MATTERS | 25 |
| 10.1 | Characterization as a Partnership | 25 |
| 10.2 | No Partnership Intended for Nontax Purposes | 25 |
| 10.3 | Fiscal Year | 26 |
| 10.4 | Accounting Method | 26 |
| 10.5 | Tax Information | 26 |
| 10.6 | Basis Adjustment | 26 |
| 10.7 | Other Elections | 26 |
| 10.8 | Taxes of Taxing Jurisdictions | 26 |
| 10.9 | Tax Matters Partner | 26 |

WEST\224283219.2

Exhibit 1413 - 0088

## TABLE OF CONTENTS
(continued)

| | | Page |
|---|---|---|
| ARTICLE XI | DISSOCIATION OF A MEMBER | 27 |
| 11.1 | Dissociation | 27 |
| 11.2 | Rights of Dissociating Member | 27 |
| ARTICLE XII | MISCELLANEOUS PROVISIONS | 28 |
| 12.1 | Amendment of Operating Agreement | 28 |
| 12.2 | Entire Agreement | 28 |
| 12.3 | Interpretation | 28 |
| 12.4 | Rights of Creditors and Third Parties under Operating Agreement | 28 |
| 12.5 | Valuation of Non-Cash Consideration | 28 |
| 12.6 | Counterpart Execution | 28 |
| 12.7 | Remedies | 28 |
| 12.8 | Successors and Assigns | 29 |
| 12.9 | Severability | 29 |
| 12.10 | Governing Law | 29 |

WEST\242832219.2

Exhibit 1413 - 0089

# LIMITED LIABILITY COMPANY AGREEMENT
## of
## PCJV USA, LLC

The Limited Liability Company Agreement is made and entered into as of the Effective Date by the Members listed below for the purpose of forming a Delaware limited liability company in accordance with the provisions hereinafter set forth.

## ARTICLE I

### DEFINITIONS

The following terms, as used herein, shall have the following respective meanings:

1.1     **Act** – The Delaware Limited Liability Company Act, 6 Del.C. §18-101, et seq., as amended from time to time.

1.2     **Additional Member** – A member other than an Initial Member or a Substitute Member who has acquired a Membership Interest from the Company.

1.3     **Assignee** – A transferee of a Membership Interest who has not been admitted as a Substitute Member.

1.4     **Assignor** – A transferor of a Membership Interest.

1.5     **Business Day** – Any day other than Saturday, Sunday or any legal holiday observed in the State of Delaware.

1.6     **Capital Account** – The account maintained for a Member or Assignee determined in accordance with Article V.

1.7     **Capital Contribution** – Any contribution actually made to the capital of the Company pursuant to Section 5.1 by or on behalf of a Member or Assignee. The initial Capital Contribution of the Members shall be US$50,000 which shall be fully subscribed and paid.

1.8     **Certificate** – The Certificate of Formation of the Company.

1.9     **Company** – The company named in the introductory paragraph of this Operating Agreement, and any successor thereof.

1.10    **Company Liability** – Any enforceable debt or obligation for which the Company is liable or which is secured by any Company Property.

1.11    **Company Minimum Gain** – The extent to which a nonrecourse liability exceeds the adjusted tax basis of the Company Property it encumbers. The amount of Company Minimum Gain shall be determined in accordance with Regulations Section 1.704-2(d) by substituting the terms "*Company*" and "*Holder*" for the terms "*partnership*" and "*partner*," respectively, in each place they appear therein.

Exhibit 1413 - 0090

1.12    **Company Property** – Any Property owned by the Company.

1.13    **Contribution** – A contribution as defined by the Act.

1.14    **Disposition (Dispose)** – Any sale, assignment, transfer, exchange, mortgage, pledge, grant, hypothecation, or other transfer, absolute or as security or encumbrance (including dispositions by operation of law)..

1.15    **Dissociation** – Any action which causes a Person to cease to be Member as described in Article XI hereof.

1.16    **Dissolution Event** – An event, the occurrence of which will result in the dissolution of the Company under ARTICLE IX unless the Members agree to the contrary.

1.17    **Distribution** – A distribution of Money or Property made pursuant to this Operating Agreement.

1.18    **Economic Interest** – A Person's right to share in the income, gains, losses, deductions, credits or similar items of, and to receive Distributions from, the Company, exclusive of any other rights of a Member including, without limitation, the right to vote or to participate in management, or any right to information concerning the business and affairs of the Company.

1.19    **Effective Date** – The date the Certificate is filed with the Delaware Secretary of State.

1.20    **Holder** – A Person holding an Economic Interest, whether as a Member or as an Assignee.

1.21    **Income and Losses** – With respect to a taxable year of the Company (or other period for which Income or Losses must be computed), the Company's taxable income or loss for federal income tax purposes, as determined by the tax advisors employed by the Company for this purpose, except that: (1) any tax-exempt income of the Company as described in IRC Section 705(a)(1)(B) shall be treated as gross income of the Company, (2) any nondeductible noncapital expenditures as described in IRC Section 705(a)(2)(B) shall be treated as a deduction of the Company, and (3) if any Company property is reflected on the books of the Company at a value ("***Book Value***") different from the adjusted tax basis of such property, any item of Income or Loss with respect to such property shall be computed by reference to such Book Value.

1.22    **Initial Capital Contribution** – The Capital Contribution agreed to be made by the Initial Members as described in Section 5.1.

1.23    **Initial Members** – Those persons identified on Exhibit A attached hereto and made a part hereof by this reference who have executed the Operating Agreement.

1.24    **IRC** – The Internal Revenue Code of 1986, as amended.

Exhibit 1413 - 0091

1.25    **Majority** – The affirmative vote or consent of Members having Percentage Interests in excess of one-half of the Percentage Interests of all the Members entitled to vote on a particular matter. Assignees and, in the case of approvals to withdrawal where consent of the remaining Members is required, Dissociating Members shall not be considered Members entitled to vote for the purpose of determining a Majority. In the case of a Member who has Disposed of that Member's entire Membership Interest to an Assignee, but has not been removed as provided below, the Percentage Interest of such Assignee shall be considered in determining a Majority and such Member's vote or consent shall be determined by such Percentage Interest.

1.26    **Management Right** – The right of a Member to participate in the management of the Company, including the rights to information and to consent or approve actions of the Company.

1.27    **Manager** – A manager selected to manage the affairs of the Company as provided under Article IV hereof.

1.28    **Member** – A member as defined by the Act, including all Initial Members, Substitute Members and Additional Members (but not including any Assignee or any Member who has Dissociated).

1.29    **Membership Interest** – A membership interest as defined by the Act.

1.30    **Money** – Cash or other legal tender of the United States, or any obligation that is immediately reducible to legal tender without delay or discount. Money shall be considered to have a fair market value equal to its face amount.

1.31    **Notice** – Except as otherwise expressly provided herein, all Notices shall be in writing. Notice to the Company shall be considered given when mailed by first class mail postage prepaid addressed to any Manager in care of the Company at the address of the principal place of business of the Company. Notice to a Member shall be considered given when mailed by first class mail postage prepaid addressed to the Member at the address reflected in the Operating Agreement unless the Member has given the Company a Notice of a different address.

1.32    **Operating Agreement** – This Limited Liability Company Agreement and all amendments thereto adopted in accordance with this Limited Liability Company Agreement and the Act.

1.33    **Organization** – A Person other than a natural person. Organization includes, without limitation, corporations (both non-profit and other corporations), partnerships (both limited and general), trusts, joint ventures, limited liability companies, and unincorporated associations, but the term does not include joint tenancies and tenancies by the entirety.

1.34    **Percentage Interest** – With respect to a Member, the percentage set forth opposite such Member's name on Exhibit A hereto, as such Exhibit is amended from time to time in accordance with Section 3.3 hereof, and with respect to a Holder not a Member, the Percentage Interest or part thereof corresponding to the portion of a Member's Economic Interest such Holder has acquired.

3

Exhibit 1413 - 0092

1.35    **Person** – A person as defined by the Act.

1.36    **Proceeding** – Any judicial or administrative trial, hearing or other activity, civil, criminal or investigative, the result of which may be that a court, arbitrator, or governmental agency may enter a judgment, order, decree, or other determination which, if not appealed and reversed, would be binding upon the Company, a Member or other person subject to the jurisdiction of such court, arbitrator, or governmental agency.

1.37    **Property** – Any property real or personal, tangible or intangible, including money and any legal or equitable interest in such property, but excluding services and promises to perform services in the future.

1.38    **Regulations** – Except where the context indicates otherwise, the permanent, temporary or proposed regulations of the Department of the Treasury promulgated under the IRC as such regulations may be amended from time to time.

1.39    **Taxing Jurisdiction** – Any state, local, or foreign government that collects tax, interest or penalties, however designated, on any Member's share of the income or gain attributable to the Company.

1.40    **Term** – As specified in Section 2.7.

## ARTICLE II

## FORMATION

2.1    Purpose.  The purpose of the Company is to engage in any lawful act or activity for which a limited liability company may be organized under the Act or the laws of any other jurisdiction in which the Company may do business.

2.2    Powers.  The Company shall have all powers necessary to accomplish its purposes without the necessity of their specific enumeration herein including, without limitation, all powers described in Section 18-106 of the Act.

2.3    Formation and Name.  The Members have caused to be formed a limited liability company under the name of PCJV USA, LLC (the "***Company***"), by the filing of the Certificate pursuant to the provisions of Section 18-201 of the Act.  The Members desire to govern the affairs of the Company by entering into this Operating Agreement.

2.4    Principal Place of Business.  The principal place of business of the Company shall be located at Suite 1110, 6380 Wilshire Blvd, CA 90048 USA, unless changed by the Managers.

2.5    Registered Office and Registered Agent.  The Company's registered office is at 615 South DuPont Highway, City of Dover, County of Kent 19901 and the name of its initial registered agent at such address is National Corporate Research, Ltd.  The Company may change the registered office and/or the registered agent at such times and from time to time as the Managers may deem advisable.

WEST\242832219.2

4

Exhibit 1413 - 0093

2.6    <u>Records to be Maintained</u>.  The Company shall maintain the following records at its principal place of business:

2.6.1    A current list of the full name and last known business or residence address of each Member and Assignee set forth in alphabetical order, together with a schedule showing the Capital Contribution and Percentage Interest of each Member and Assignee;

2.6.2    A current list of the full name and business or residence address of each Manager, if any;

2.6.3    A copy of the Certificate and all amendments thereto, together with any powers of attorney pursuant to which the Certificate or any amendments thereto were executed;

2.6.4    Copies of the Company's federal, state, and local income tax or information returns and reports, if any, for the six most recent taxable years;

2.6.5    A copy of this Operating Agreement and any amendments hereto, together with any powers of attorney pursuant to which this Operating Agreement or any amendments hereto were executed;

2.6.6    Copies of the financial statements of the Company, if any, for the six most recent fiscal years;

2.6.7    The books and records of the Company as they relate to the internal affairs of the Company for at least the current and past four fiscal years; and

2.6.8    Any other records to be maintained pursuant to the Act.

2.7    <u>Term</u>.  The Term of this Operating Agreement shall commence upon the date the Certificate is filed and shall continue indefinitely unless otherwise terminated by (i) an affirmative vote of 75 percent (75%) of all member interests, or (ii) upon mutual agreement by the Parties in writing.

**ARTICLE III**

**<u>MEMBERS</u>**

3.1    <u>Classification of Members</u>.  Pursuant to the Joint Venture Agreement entered into by the Members on ___*E.8.12*___ , the Members shall be classified and designated as either part of the Cinco Corporation (Philippines) group (the "Cinco Group") or the LA group (the "LA Group").  Both the Cinco Group and the LA Group agreed to the specific rights and obligations granted to each group, and undertake to fully observe the rights vested to each group under the Operating Agreement.

3.2    <u>Admission of Additional Members</u>.  Additional Members may be admitted to the Company upon the consent of the Members required pursuant to Section 3.7, which such consent

Exhibit 1413 - 0094

may be granted in their sole discretion. The Capital Contribution of any Additional Member shall be determined by the Members consenting to the admission. Each Additional Member shall execute a counterpart of this Operating Agreement, agreeing thereby to be bound by all of the terms and provisions hereof.

3.3    <u>Right of First Refusal</u>. A Member of the Cinco Group or the the LA Group shall not assign any of its rights or obligations nor his/its Member Interests in the Company outside of the Cinco Group and the LA Group, without the prior written consent of the non-assigning group. In the event a Member of either the Cinco Group or the LA Group desire to transfer or sell his/its pro rata members interest in the Company to a person other those in either the Cinco Group or the LA Group, such Member shall be obligated to sell the same first to the existing Members, which has have thirty (30) days within which to exercise its rights of first refusal from the date of receipt of a written notice to sell. For this purpose, the Parties hereby agree that the right of first refusal may be exercised in accordance with the following formula: The average of the Company's earnings before interest, depreciation, taxes and amortization (EBITDA) for the last two (2) years multiplied by 5 times, and further multiplied by the percentage of member interest subject to such right of first refusal over total outstanding Member Interests.

3.4    <u>Amendment of Member Listing</u>. Upon admission of an Additional Member, the Member listing required by Section 2.6 and Exhibit A hereto shall be amended accordingly.

3.5    <u>Payment of Costs</u>. All reasonable expenses, including attorneys' fees, incurred by the Company in connection with the admission of an Additional Member shall be borne by such Additional Member.

3.6    <u>Limited Liability of Members</u>. Members shall not be personally liable for the liabilities of the Company.

3.7    <u>Voting Rights</u>. All Members shall be entitled to vote on any matter submitted to a vote of the Members. Unless otherwise specified herein, actions to be taken by Members require the consent of a Majority of the Percentage Interests represented at a duly held meeting of the Members or, if such action is taken by written consent, by a Majority of all of the Percentage Interests. Notwithstanding the foregoing, the following actions require the consent described below:

| **Action** | **Consent Required** |
|---|---|
| Decision to dissolve the Company. | <u>75% of all Membership Interests</u> |
| Decision to continue the business of the Company after a Dissolution Event. | <u>75% of all Membership Interests</u> |
| Approval of the transfer of a Membership Interest and admission of an Assignee as a Substitute Member of the Company. | <u>Prior written consent of the other Member</u> |

Exhibit 1413 - 0095

| Action | Consent Required |
|---|---|
| Approval of the withdrawal and Dissociation of a Member of the Company. | Prior written consent of the other Member |
| Any amendment of the Certificate or this Operating Agreement. | 75% of all Membership Interests |
| Agreement of merger as defined in Section 17551 of the Act. | 75% of all Membership Interests |
| Disposition by the Company of all or substantially all of the Company's assets. | 75% of all Membership Interests |
| Confession of a judgment against the Company in excess of Ten Thousand Dollars. | 75% of all Membership Interests |

3.8     Meetings of Members.

3.8.1     Place of Meetings.  Meetings of Members may be held at any place, selected by the Person or Persons calling the meeting.  If no other place is stated or fixed, all meetings shall be held at the principal place of business of the Company.

3.8.2     Calling of Meetings.  A meeting of the Members may be called at any time by any Manager or by one or more Members with an aggregate Percentage Interest of more than ten percent (10%) for the purpose of addressing any matter on which the Members may vote.

3.8.3     Notice of Meetings.  Whenever Members are required or permitted to take any action at a meeting, a Notice of the meeting shall be given not less than ten (10) calendar days nor more than sixty (60) calendar days before the date of the meeting to each Member entitled to vote at the meeting.  The Notice shall state the place, date, and hour of the meeting and the general nature of the business to be transacted.  No other business may be transacted at such a meeting.

3.8.4     Means of Providing Notice of Meetings.  Any Notice of a meeting of the Members shall be given either personally or by mail or other means of written communication, charges prepaid, addressed to the Member at the address of the Member appearing on the books of the Company or given by the Member to the Company for the purpose of Notice, or, if no address appears or is given, at the place where the principal place of business of the Company is located or by publication at least once in a newspaper of general circulation in the county in which the principal place of business is located.  The Notice shall be deemed to have been given at the time when delivered personally or deposited in the mail or sent by other means of written communication.  An affidavit of mailing of any Notice in accordance with the provisions of this section, executed by a Manager or Member, shall be prima facie evidence of the giving of the Notice.

Exhibit 1413 - 0096

Upon written request to a Manager by any Person entitled to call a meeting of Members, the Manager shall immediately cause Notice to be given to the Members entitled to vote that a meeting will be held at a time requested by the Person calling the meeting, not less than ten (10) calendar days nor more than sixty (60) calendar days after the receipt of the request. If the Notice is not given within twenty (20) calendar days after receipt of the request, the Person entitled to call the meeting may give the Notice or, upon the application of that Person, the superior court of the county in which the principal place of business of the Company is located, or if the principal place of business is not in this state, the county in which the Company's address in this state is located, shall summarily order the giving of the Notice, after Notice to the Company affording it an opportunity to be heard.

The Members may, at their discretion, invite non-Members to join, but only as non-voting observers. Further, to the extent allowed by the financial condition of the Company, and as agreed upon by a majority of all member interests, the Company shall shoulder the expenses for the air fares, hotel accommodation and incidental expenses incurred by the Members in attendance.

3.8.5   Adjourned Meetings. When a Members' meeting is adjourned to another time or place, unless the Certificate or this Operating Agreement otherwise requires, and, except as provided in the Act, Notice need not be given of the adjourned meeting if the time and place thereof are announced at the meeting at which the adjournment is taken. At the adjourned meeting, the Company may transact any business that may have been transacted at the original meeting. If the adjournment is for forty-five (45) calendar days or more, or if after the adjournment a new record date is fixed for the adjourned meeting, a Notice of the adjourned meeting shall be given to each Member entitled to vote at the meeting.

3.8.6   Validation of Meeting Held Without Proper Call or Notice. The actions taken at any meeting of Members, however called and noticed, and wherever held, have the same validity as if taken at a meeting duly held after regular call and notice, if a quorum is present either in person or by proxy, and if, either before or after the meeting, each of the Members entitled to vote, not present in person or by proxy, signs a written waiver of Notice or consents to the holding of the meeting or approves the minutes of the meeting. All waivers, consents, and approvals shall be filed with the Company records or made a part of the minutes of the meeting. Attendance of a Member at a meeting shall constitute a waiver of Notice of the meeting, except when the Member objects, at the beginning of the meeting, to the transaction of any business because the meeting is not lawfully called or convened. Attendance at a meeting is not a waiver of any right to object to the consideration of matters required by this title to be included in the Notice but not so included, if the objection is expressly made at the meeting. Neither the business to be transacted nor the purpose of any meeting of Members need be specified in any written waiver of Notice, unless otherwise provided in the Certificate or this Operating Agreement, except as provided in subsection 3.8.8.

3.8.7   Participation Through Telecommunications Equipment. Members may participate in a meeting of the Company through the use of conference telephones or similar communications equipment, as long as all Members participating in the meeting

Exhibit 1413 - 0097

can hear one another. Participation in a meeting pursuant to this provision constitutes presence in person at that meeting.

3.8.8 Notice of General Nature of Meeting. Any action approved at a meeting, other than by unanimous approval of those entitled to vote, shall be valid only if the general nature of the proposal so approved was stated in the Notice of meeting or in any written waiver of Notice.

3.8.9 Quorum.

3.8.9.1 Members holding in excess of one-half of the Percentage Interests represented in person or by proxy shall constitute a quorum at a meeting of Members.

3.8.9.2 The Members present at a duly called or held meeting at which a quorum is present may continue to transact business until adjournment, notwithstanding the loss of a quorum, if any action taken after loss of a quorum, other than adjournment, is approved by the requisite Percentage Interests of Members specified in the Certificate, this Operating Agreement, or the Act.

3.8.9.3 In the absence of a quorum, any meeting of Members may be adjourned from time to time by the vote of a majority of the Membership Interests represented either in person or by proxy at such meeting, but no other business may be transacted, except as provided in subparagraph 3.8.9.2 above.

3.8.10 Action Without a Meeting.

3.8.10.1 Any action that may be taken at any meeting of the Members may be taken without a meeting if a consent in writing, setting forth the action so taken, is signed and delivered to the Company within sixty (60) calendar days of the record date for that action by Members having not less than the minimum number of votes that would be necessary to authorize or take that action at a meeting at which all Members entitled to vote thereon were present and voted.

3.8.10.2 Unless the consents of all Members entitled to vote have been solicited in writing, (A) Notice of any Member approval of an amendment to the Certificate or this Operating Agreement, a dissolution of the Company, or a merger of the Company, without a meeting by less than unanimous written consent shall be given at least ten (10) calendar days before the consummation of the action authorized by such approval, and (B) prompt Notice shall be given of the taking of any other action approved by Members without a meeting by less than unanimous written consent, to those Members entitled to vote who have not consented in writing.

3.8.10.3 Any Member giving a written consent, or the Member's proxyholder, may revoke the consent by a writing received by the Company prior to the time that written consents of Members having the minimum number of votes that would be required to authorize the proposed action have been received

WEST\224283219.2                                    9

Exhibit 1413 - 0098

by the Company, but may not do so thereafter. This revocation is effective upon its receipt at the principal place of business of the Company.

3.8.11 <u>Proxies</u>. Every Member entitled to vote shall have the right to do so in person or by one (1) or more agents authorized by a written proxy executed by such Member or his duly authorized agent and filed with the Company. Any proxy executed is not revoked and continues in full force and effect until (i) a writing stating that the proxy is revoked or a duly executed proxy bearing a later date is filed with the Company prior to the vote pursuant thereto, (ii) the Member executing the proxy attends the meeting and votes in person, or (iii) written Notice of the death or incapacity of the maker of such proxy is received by the Company before the vote pursuant thereto is counted; provided that no proxy shall be valid after the expiration of eleven months from the date of its execution, unless the person executing it specifies therein the length of time for which such proxy is to continue in force.

3.8.12 <u>Record Date</u>. In order that the Company may determine the Members of record entitled to Notices of any meeting or to vote, or entitled to receive any Distribution or to exercise any rights in respect of any other lawful action, a Manager, or Members representing more than ten percent (10%) of the Percentage Interests, may fix, in advance, a record date, that is not more than sixty (60) calendar days nor less than ten (10) calendar days prior to the date of the meeting and not more than sixty (60) calendar days prior to any other action. If no record date is fixed:

3.8.12.1 The record date for determining Members entitled to Notice of or to vote at a meeting of Members shall be at the close of business on the business day next preceding the day on which Notice is given or, if Notice is waived, at the close of business on the business day next preceding the day on which the meeting is held.

3.8.12.2 The record date for determining Members entitled to give consent to Company action in writing without a meeting shall be the day on which the first written consent is given.

3.8.12.3 The record date for determining Members for any other purpose shall be at the close of business on the day on which the Managers adopt the resolution relating thereto, or the sixtieth day prior to the date of the other action, whichever is later.

3.8.12.4 The determination of Members entitled to Notice of or to vote at a meeting of Members shall apply to any adjournment of the meeting unless a Manager or the Members who called the meeting fix a new record date for the adjourned meeting, but the Manager or the Members who called the meeting shall fix a new record date if the meeting is adjourned for more than forty five (45) calendar days from the date set for the original meeting.

3.9    <u>Right of Inspection; Provision of Records to Members</u>.

Exhibit 1413 - 0099

3.9.1  Right of Inspection. Each Member, Manager and Assignee has the right, upon reasonable request, for purposes reasonably related to the interest of that Person as a Member, Manager, or Assignee, to each of the following at the expense of the Company:

3.9.1.1    To inspect and copy during normal business hours any of the records required to be maintained by Sections 2.6.1, 2.6.2, 2.6.3 and 2.6.4 above; and

3.9.1.2    To obtain from a Manager, promptly after becoming available, a copy of the Company's federal, state, and local income tax or information returns for each year.

3.9.2  Additional Rights. So long as the Company has more than 35 Members:

3.9.2.1    A Manager shall cause an annual report to be sent to each of the Members not later than one hundred twenty (120) calendar days after the close of each fiscal year. That report shall contain a balance sheet as of the end of the fiscal year and an income statement and statement of changes in financial position for the fiscal year.

3.9.2.2    Members with an aggregate Percentage Interest of at least five percent (5%), or any three or more Members, may make a written request to a Manager for an income statement of the Company for the initial three-month, six-month, or nine-month period of the current fiscal ended more than thirty (30) calendar days prior to the date of request, and a balance sheet of the Company as of the end of that period. The statement shall be delivered or mailed to the Members within thirty (30) calendar days thereafter.

3.9.2.3    The financial statements referred to in this section shall be accompanied by the report thereon, if any, of the independent accounts engaged by the Company or, if there is no report, the certificate of the Treasurer of the Company that the financial statements were prepared without audit from the books and records of the Company.

3.9.3  Copy of Amendment of Certificate and Operating Agreement. A Manager shall promptly furnish to a Member a copy of any amendment to the Certificate or this Operating Agreement executed by that Manager pursuant to a power of attorney from the Member.

3.9.4  Tax Information. The Company shall send or cause to be sent to each Holder within ninety (90) calendar days after the end of each taxable year such information as is necessary to complete their respective federal and state income tax or information returns; and, if the Company has thirty-five (35) or fewer Holders, a copy of the Company's federal, state, and local income tax or information returns for the year.

3.9.5  Relationship with Act. Nothing in this Section 3.9 shall be construed as in any way limiting a Member's right of inspection as set forth in Section 18-305 of the Act.

Exhibit 1413 - 0100

3.10   Representations and Warranties.  Each Member hereby represents and warrants to the Company and each other Member that:

3.10.1  If that Member is a organization, that it is duly organized, validly existing, and in good standing under the law of its state of organization and that it has full organizational power to execute and agree to the Operating Agreement to perform its obligations hereunder;

3.10.2  Such Member is acquiring its interest in the Company for its own account for investment purposes only and not with a view to the resale or distribution of all or any part of such interest and such Member has no present intention, agreement or arrangement to divide its participation with others or to sell, assign, transfer or otherwise dispose of all or any part of such interest.  Such Member is aware that the interests have not been registered under the Securities Act of 1933, or any state securities laws, and that such interests may not be resold or otherwise disposed of unless they are registered thereunder or an exemption from registration is available.  Accordingly, each Member is aware that it must bear the economic risk of investment in the Company for an indefinite period of time.  Each Member is capable of bearing that risk.

## ARTICLE IV

## MANAGEMENT

4.1    Management.  Subject to the limitations of the Certificate, the Act, and this Operating Agreement as to actions to be authorized or approved by the Members, the business and affairs of the Company shall be managed and all the Company powers shall be exercised by or under the direction of the Managers.  The Managers may delegate the management of the day-to-day operation of the business of the Company to the officers of the Company or other persons provided that the business and affairs of the Company shall be managed and all powers shall be exercised under the ultimate direction of the Managers.  Without prejudice to such general powers, but subject to the same limitations, the Managers shall have the following powers:

4.1.1  To approve compensation packages for the managers, executive offices and key personnel.

4.1.2  To approve the Accounting System/Procedures/Software/Method to be used by the Company.

4.1.3  To approve the operating budget of the Company, and any changes to it.

4.1.4  To approve all franchising agreements, and lease agreements.

4.1.5  To approve all purchases and disbursements in excess of Ten Thousand Dollars ($10,000), provided that such amount may be changed or modified by Management as it deems necessary.

4.1.6  To institute, prosecute, and defend any Proceeding in the Company's name;

Exhibit 1413 - 0101

4.1.7  To purchase, receive, lease or otherwise acquire and deal with the Property, wherever located;

4.1.8  To sell, convey, mortgage, pledge, lease, exchange, or otherwise Dispose of Property;

4.1.9  To lend money, invest and reinvest the Company's funds, and receive and hold Property as security for repayment, including, without limitation, the loaning of money to Members, officers, employees, and agents;

4.1.10  To borrow money and incur indebtedness for the purposes of the Company, and to cause to be executed and delivered therefor in the Company name promissory notes, bonds, debentures, deeds of trust, mortgages, pledges, hypothecations or other evidences of debt and securities therefor;

4.1.11  To change the principal place of business of the Company from one location to another as provided in Section 2.3 hereof, and to fix and locate from time to time one or more subsidiary offices of the Corporation;

4.1.12  To prescribe the forms of Membership Certificates, and to alter the form of such Membership Certificates from time to time as in their judgment they deem best, provided such Membership Certificates shall at all times comply with provisions of law;

4.1.13  To select and remove all of the officers, agents and employees of the Company, to prescribe such powers and duties for them as may not be inconsistent with law, with the Certificate or this Operating Agreement, to fix their compensation, and to require from them security for faithful service;

4.1.14  To pay pensions and establish pension plans, pension trusts, profit sharing plans, and benefit and incentive plans for all or any of the current or former Members, employees, and agents of the Company;

4.1.15  To make donations to the public welfare or for religious, charitable, scientific, literary or educational purposes;

4.1.16  To purchase insurance on the life of any of the Members or Company employees for the benefit of the Company;

4.1.17  To participate in partnership agreements, joint ventures, or other associations of any kind with any person or persons; and

4.1.18  To authorize the issuance of Additional Membership Interests from time to time upon such terms as may be lawful in consideration of money paid, labor done, services actually rendered to the Company or for its benefit or in its formation or reorganization, debts or securities cancelled, and tangible or intangible property actually received either by the Company or any one of its wholly owned subsidiaries, if any, or future services.

Exhibit 1413 - 0102

4.2    Number and Qualifications of Managers. Until changed by amendment of the Certificate or an amendment to this section:

4.2.1    The agreed-upon and authorized number of Managers shall be seven (7), four (4) of whom shall be designated by the Cinco Group, and three (3) designated by the LA Group.

4.2.2    Upon the formation of the Company, the following shall be named and designated as managers:

4.2.2.1    For the Cinco Group: Jose P. Magsaysay, Jr., Jose Miguel Ma. Montinola, Ma. Victoria O. Bermejo, and Ricardo K. Montelibano.

4.2.2.2    For the LA Group: Amit Nemanim, Guy Koren, and Amir Jacoby.

4.3    Election of Managers.

4.3.1    Election at Meeting of Members. In any election of Managers at a meeting of Members duly called and noticed, the Cinco Group shall be entitled to elect four (4) Managers, while the LA Group shall be entitled to elect three (3) Managers. Interests entitled to be voted for them up to the number of Managers to be elected by such Members shall be elected. Elections for Managers need not be by ballot unless a Member demands election by ballot at the meeting and before the voting begins.

4.3.2    Election by Written Consent. Managers may alternatively be elected by a written consent action of Members made pursuant to Section 3.8.10 executed by a Majority of the Members.

4.4    Removal of Managers. Any Managers may be removed, with or without cause, by the vote of a Majority of the Members by written consent or at a meeting of Members called expressly for that purpose. Any removal shall be without prejudice to the rights, if any, of the Manager under any contract of employment.

4.5    Resignation of Managers. Any Manager may resign as a Manager at any time upon written Notice to the Company, without prejudice to the rights, if any, of the Company under any contract to which the Manager is a party.

4.6    Term of Office as Manager. Each Manager shall serve until the earliest to occur of (i) the resignation of the Manager, (ii) the removal of the Manager, or (iii) the election of a successor.

4.7    Authority of Multiple Managers. If, pursuant to Section 4.2 above, more than one manager is authorized, then any one or more Managers may take any action permitted to be taken by any one or more other Managers, unless this Operating Agreement or the Act requires the consent of more than one Manager.

Exhibit 1413 - 0103

4.8    Fiduciary Duties Owed by Managers.  Managers shall owe fiduciary duties to the Company and the Members in the manner prescribed in the Act and under applicable case law.

4.9    Conduct of Meetings of Managers.  The Managers may adopt such rules and regulations for the conduct of its meetings and the management of the Company not inconsistent with this Operating Agreement or applicable law.

4.10    Regular Monthly Meetings.  The Managers shall meet at least on a monthly basis, and may be done in person, via teleconference or through the internet.  The Managers may, at their discretion, invite non-Members to join, but only as non-voting observers.

4.11    Officers.

4.11.1    Officers.  The officers of the Company, if any, shall include the following: Chairman of the Board of Members, President, Corporate Secretary, and Treasurer.  The Company may also have, at the discretion of the Managers, one or more vice-presidents, one or more assistant secretaries, one or more assistant financial officers, and such other officers as may be appointed in accordance with the provisions of this Operating Agreement.  Any number of offices may be held by the same person.  Officers need not be Members.

4.11.2    Election.  The officers of the Company, except such officers as may be appointed in accordance with the provisions of Section 10.3, shall be chosen by the Managers, and each shall hold his office until he or she shall resign or shall be removed by the Managers or otherwise disqualified to serve, or his successor shall be elected and qualified.

4.11.3    Subordinate Officers.  The Managers may appoint, and may empower the President to appoint, such other officers as the business of the Company may require, each of whom shall hold office for such period, have such authority and perform such duties as the appointing authority may designate, subject to any limitations imposed by resolution of the Managers.

4.11.4    Removal.  Any officer may be removed, either with or without cause, by the Managers, at any regular or special meeting thereof or, except in case of an officer chosen by the Managers, by any officer upon whom such power of removal may be conferred by the Managers (subject, in each case, to the rights, if any, of an officer under any contract of employment).

4.11.5    Resignation.  Any officer may resign at any time by giving Notice to the Managers or to the President or to the Secretary of the Company, but without prejudice to the rights, if any, of the Company under any contract to which such officer is a party.  Any such resignation shall take effect at the date of the receipt of such Notice or any later time specified therein; and, unless otherwise specified therein, the acceptance of such resignation shall not be necessary to make it effective.

Exhibit 1413 - 0104

4.11.6  <u>Vacancies</u>.  A vacancy in any office because of death, resignation, removal, disqualification or any other cause shall be filled in the manner prescribed in this Operating Agreement for regular appointments to such office.

4.11.7  <u>President</u>.  The President shall be the chief executive officer of the Company and shall, subject to the control of the Managers, have general supervision, direction and control of the business and officers of the Company.  The President shall preside at all meetings of the Members and the Managers.  He or she shall have the general powers and duties of management usually vested in the office of the President of a corporation, and shall have such other powers and duties as may be prescribed by the Managers or this Operating Agreement.  As agreed upon by the Members, at any given time, the President shall be any of the following: Amit Nemanim, Guy Korean, and Amir Jacoby.  The initial President of the Company shall be Amit Nemanim.  The President of the Company shall render the following services and shall perform the following duties for the Company in a faithful, diligent and efficient manner:

4.11.7.1    The President shall be responsible for all management, operational, marketing, establishment, maintenance, licensing and sub-licensing activities with respect to the "Potato Corner" outlets/stores in the Territory.  He shall use his best efforts at all times during the term of this Agreement to operate and maintain the "Potato Corner" outlets/stores in the Territory according to the highest standards achievable consistent with the overall plan of the Management of the Company. The President shall comply with the rules, policies and procedures approved by the Management of the Company from time to time.

4.11.7.2    The President shall advertise market and promote the "Potato Corner" outlets/stores with the goal of causing public knowledge, awareness and patronage of the "Potato Corner" outlets/sites.

4.11.7.3    The President shall maintain a comprehensive system of records, books and accounts, with respect to the licensing and sub-licensing activities, operation, establishment, management, maintenance and other activities of the "Potato Corner" outlets /stores in the Territory with the assistance of the Corporate Secretary.

4.11.7.4    No later than the twentieth (20th) day of each month, with respect to the preceding month, the President shall render a statement of receipts and disbursements, a schedule of accounts receivable and payable, and a schedule of fees collected and distributed, together with a reconciled bank statement as of the last day of the month with the assistance of the Corporate Secretary.

4.11.7.5    No later than three (3) months after the end of a fiscal year, the President shall, with the assistance of the Corporate Secretary and external accountant hired by Management, cause the Company to issue audited financial statements, and shall provide a copy of the same to all the members of Management.

Exhibit 1413 - 0105

4.11.7.6   To the extent the President is lawfully able to do so, the President shall take such action as may be necessary to comply promptly with any and all laws, ordinances, orders or other requirements of any federal, state, county or municipal authority having jurisdiction of the Company and affecting the Company.

4.11.8  Secretary.  The Secretary shall record or cause to be recorded, and shall keep or cause to be kept, at the principal place of business of the Company and such other place or places as the Managers may order, a book of minutes of actions taken at all meetings of Managers, committees and Members, with the time and place of holding, whether regular or special, and, if special, how authorized, the Notice thereof given, the names of those present at Managers' and committee meetings, the Percentage Interest present or represented at Members' meetings, and the proceedings thereof.

The Secretary shall keep, or cause to be kept, at the principal place of business those records referenced in Section 2.6 above and, if the Company has issued Membership Certificates, a register showing the number and date of each Membership Certificate, and the number and date of each Membership Certificate surrendered for cancellation.

The Secretary shall give, or cause to be given, Notice of all the meetings of the Members and the Managers required by this Operating Agreement or by the Act to be given, and shall have such other powers and perform such other duties as may be prescribed by the Managers or by this Operating Agreement.

4.11.9  Treasurer.  The Treasurer shall keep and maintain, or cause to be kept and maintained, adequate and correct accounts of the properties and business transactions of the Company, including accounts of its assets, liabilities, receipts, disbursements, income, losses, changes in financial position, Capital Accounts, and retained earnings.

The Treasurer shall deposit all moneys and other valuables in the name and to the credit of the Company with such depositories as may be designated by the Managers.  He or she shall disburse the funds of the Company as may be ordered by the Managers, shall render to the President and the Managers whenever they request it, an account of all of his transactions as Treasurer and of the financial condition of the Company, and shall have such other powers and perform such other duties as may be prescribed by the Managers or this Operating Agreement.

4.12   Indemnification and Liability Insurance.

4.12.1  The Company may provide indemnification to its Managers, officers and agents to the fullest extent permitted by Delaware law.

4.12.2  The Company shall have the power to purchase and maintain insurance on behalf of any Manager or officer against any liability asserted against or incurred by a Manager or officer in that capacity or arising out of that person's status as a Manager or officer of the Company.

Exhibit 1413 - 0106

4.13    Actions of the Managers. Each Manager has the power to bind the Company as provided in this ARTICLE IV. If there is more than one Manager, decisions of the Managers shall be made by majority vote of the Managers if at a meeting, or by unanimous written consent. No act of a Member in contravention of such a determination shall bind the Company to Persons having knowledge of such determination.

4.14    Meetings of Managers.

4.14.1    Place of Meetings. Meetings of Managers may be held at any place, selected by the person or persons calling the meeting. If no other place is stated or fixed, all meetings shall be held at the principal place of business of the Company.

4.14.2    Calling of Meetings. A meeting of the Managers may be called at any time by the President or any two Managers.

4.14.3    Notice of Meetings. Notice of the time and place of meetings of Managers shall be personally delivered to each Manager or communicated to each Manager by telephone or mail, charges prepaid, addressed to the Manager's address as is shown upon the records of the Company, or if it is not so shown on such records or is not readily ascertainable, at the place at which the meetings of Managers are regularly held. In the case Notice is mailed, it shall be deposited in the United States mail at least ninety-six (96) hours prior to the time of the holding of the meeting. In the event Notice is delivered personally or communicated by telephone, it shall be so delivered or communicated at least forty-eight (48) hours prior to the time of the holding of a meeting.

Except as otherwise provided by the Act or this Operating Agreement, a Notice need not specify the purpose of the meeting of the Managers. Whenever any Manager has been absent from any meeting of the Manager for which Notice has not been dispensed with, an entry in the minutes to the effect that Notice has been duly given shall be conclusive and incontrovertible evidence that due Notice of such meeting was given to such Manager.

4.14.4    Participation Through Telecommunications Equipment. Managers may participate in a meeting of the Company through the use of conference telephones or similar communications equipment, as long as all Managers participating in the meeting can hear one another. Participation in a meeting pursuant to this provision constitutes presence in person at that meeting.

4.14.5    Adjourned Meetings. When a Managers' meeting is adjourned to another time or place, unless the Certificate or this Operating Agreement otherwise requires, and, except as provided in the Act, Notice need not be given of the adjourned meeting if the time and place thereof are announced at the meeting at which the adjournment is taken. At the adjourned meeting, the Managers may transact any business that may have been transacted at the original meeting. If the adjournment is for forty-eight hours or more, a Notice of the adjourned meeting shall be given to each Member entitled to vote at the meeting.

18

Exhibit 1413 - 0107

4.14.6  <u>Validation of Meeting Held Without Proper Call or Notice</u>.  The actions taken at any meeting of Managers, however called and noticed, and wherever held, have the same validity as if taken at a meeting duly held after regular call and notice, if a quorum is present either in person or by proxy, and if, either before or after the meeting, each of the Managers signs a written waiver of Notice or consents to the holding of the meeting or approves the minutes of the meeting.  All waivers, consents, and approvals shall be filed with the Company records or made a part of the minutes of the meeting.  Attendance of a Manager at a meeting shall constitute a waiver of Notice of the meeting, except when the Manager objects, at the beginning of the meeting, to the transaction of any business because the meeting is not lawfully called or convened.

4.14.7  <u>Participation Through Telecommunications Equipment</u>.  Managers may participate in a meeting of the Managers through the use of conference telephones or similar communications equipment, as long as all Managers participating in the meeting can hear one another.  Participation in a meeting pursuant to this provision constitutes presence in person at that meeting.

4.14.8  <u>Quorum</u>.

4.14.8.1    A majority of the Managers in attendance or represented by proxy shall constitute a quorum at a meeting of Managers.

4.14.8.2    The Managers present at a duly called or held meeting at which a quorum is present may continue to transact business until adjournment, notwithstanding the loss of a quorum, if any action taken after loss of a quorum, other than adjournment, is approved by the requisite number of Managers specified in the Certificate, this Operating Agreement, or the Act.

4.14.8.3    In the absence of a quorum, any meeting of Managers may be adjourned from time to time by the vote of a majority of the Managers in attendance, but no other business may be transacted, except as provided in subparagraph 4.14.8.24.14.8.2 above.

4.14.9  <u>Action Without a Meeting</u>.  Any action required or permitted to be taken by the Managers may be taken without a meeting if all the Managers shall individually or collectively consent in writing to such action.  Such consent or consents shall be filed with the minutes of the proceedings of the Managers and shall have the same force and effect as a unanimous vote of the Managers.

4.15    <u>Compensation of Manager</u>.  Each Manager shall be reimbursed all reasonable expenses incurred in managing the Company and shall be entitled to compensation in an amount, if any, to be determined from time to time by the affirmative vote of a Majority of the Members.

4.16    <u>Authority of Members to Bind the Company</u>.  The Members hereby agree that only the Managers and authorized agents of the Company shall have the authority to bind the Company.  No Member other than a Manager shall take any action as a Member to bind the Company, and each Member shall indemnify the Company for any costs or damages incurred by the Company as a result of the unauthorized action of such Member.

WEST\244283219.2                                    19

Exhibit 1413 - 0108

4.17    Specific Arrangements with the Cinco Group. As agreed upon in the Joint Venture Agreement, the Company shall enter into a Master License Agreement with Cinco Corporation (Philippines), Inc. (or an affiliated company designated) which shall include the following terms and conditions:

4.17.1   The Company agrees to license the "POTATO CORNER" intellectual property rights from Cinco Corporation (Philippines), Inc. (or an affiliated company designated) consisting of (i) the trademark, service mark and trade name "POTATO CORNER"; and (ii) various trademarks, service marks, trade names, slogans, designs, insignias, emblems, symbols, color schemes, package features, logo and other propriety identifying characteristics used in relation and in connection with the "Potato Corner" Products and the System; and (iii) as well as other intellectual property rights in connection with the "POTATO CORNER" intellectual property rights, for use in the Territory.

4.17.2   The Company agrees to pay, as an arm's length license fee, the following amounts: (i) With respect to the licensing / sub-licensing or franchising the "POTATO CORNER" intellectual property rights in connection with the "POTATO CORNER" outlets/stores, an amount equal to thirty percent (30%) of all initial/franchise fees and ongoing royalty fees paid to/ collected by the Company. Payments shall be made to Cinco (or an affiliated company to be designated by Cinco) by wire transfer using a bank or other financial institution specified by it within thirty (30) days from receipt of the fees by the Company; and (ii) All withholding and other applicable taxes levied by any authority on the payments by the Company shall be borne solely by the Company.

4.18    Specific Arrangements with the LA Group. As agreed upon in the Joint Venture Agreement, the Company agrees to engage the LA Group to provide management and strategic experience and expertise during the duration of this Agreement. The Company shall enter into a Master Services Agreement with the LA Group (or a corporation to be designated by the LA Group) which shall include the following terms and conditions:

4.18.1   In consideration for the provision of its services under the Master Services Agreement, the LA Group shall be entitled to a services fee equal to thirty (30%) percent of all initial/franchise fee and continuing royalty fees paid to/ collected by the Company.

4.18.2   All withholding and other applicable taxes levied by any authority on the payments by the Company to the LA Group under this Agreement shall be borne solely by the Company.

4.18.3   The LA Group shall faithfully, diligently and efficiently exercise its obligations and responsibilities under the Master Services Agreement.

4.18.4   The LA Group shall maintain and protect confidential information belonging to Cinco or the Company, and such undertaking shall apply to all of its partners, officers, employees, or agents.

20

Exhibit 1413 - 0109

**ARTICLE V**

**CAPITAL**

5.1     Initial Capital Contributions.  Upon execution of this Agreement, each Member shall assign, convey and transfer their respective Initial Capital Contribution to the Company. Each Member represents and warrants to the Company that (i) the Member's Shares are free of any mortgage, pledge, lien, security, interest or other encumbrance of any kind or nature, (ii) such Member is the lawful beneficial and record owner of, and has good and marketable title to, the Member's Shares, and (iii) to the best of such Member's knowledge, the Member's Shares are duly authorized, validly issued, fully paid and nonassessable.  Additional Members shall make Capital Contributions in the amount, at the time and on the terms determined by the Members consenting to the admission pursuant to Section 3.1 hereof.

5.2     Capital Accounts.  The Company shall establish and maintain a Capital Account for each Holder in accordance with Regulations Section 1.704-1(b)(2)(iv).  Accordingly, a Holder's Capital Account shall be increased by (1) the amount of money the Holder contributes to the Company, (2) the fair market value of property the Holder contributes to the Company (net of liabilities secured by such contributed property that the Company is considered to assume or take subject to under IRC Section 752, and (3) allocations to the Holder of Income (or items thereof), including income and gain exempt from tax and gain as computed for book purposes in accordance with Regulations Section 1.704-1(b)(2)(iv)(g) but excluding any gain separately computed for tax purposes as described in Regulations Section 1.704-1(b)(4)(i).  A Holder's Capital Account shall be decreased by (1) the amount of money the Company distributes to the Holder, (2) the fair market value of property the Company distributes to the Holder (net of any liabilities secured by such distributed property that the Holder is considered to assume or take subject to under IRC Section 752), (3) allocations to the Holder of the Company's nondeductible, noncapital expenditures, and (4) allocations to the Holder of Losses (or item thereof), including loss and deduction as computed for book purposes in accordance with Regulations Section 1.704-1(b)(2)(iv)(g) but excluding nondeductible, noncapital expenditures and loss and deduction separately computed for tax purposes as described in Regulations Section 1.704-1(b)(4)(i).  A Holder's Capital Account in all events shall be adjusted in accordance with the additional rules set forth in Regulations Section 1.704-1(b)(2)(iv).  In the event a Holder transfers all or any portion of his interest in the Company, the transferee shall succeed to the individual Capital Account balance of the transferor to the extent such individual Capital Account balance relates to the transferred interest.

5.3     Adjustment for Distributions in Kind.  Any asset of the Company distributed to the Holders in kind shall be valued according to its fair market value.  An item of Income or Loss shall be computed as if such asset had been sold at its fair market value, such hypothetical item shall be allocated as provided in Section 6.1, and each Holder's Capital Account shall be credited or charged, as the case may be, with the Holder's share of such hypothetical item prior to any such distribution of assets.

5.4     Interest.  No Capital Contribution or Capital Account balance shall bear interest.

Exhibit 1413 - 0110

5.5    Deficit Capital Account.  No Holder shall be obligated to restore a Capital Account having a balance of less than zero.

5.6    Return of Capital.  Except as otherwise provided in this Operating Agreement, no Holder shall have any right to withdraw or make a demand for Distribution or withdrawal or return of any Capital Contribution or Capital Account balance.

5.7    Optional Adjustments to Capital Accounts.  Upon (i) a contribution of cash or property (which shall be valued at its fair market value) to the Company by a new or existing Holder for a Membership or Economic Interest, or (ii) a distribution by the Company to a retiring or continuing Holder for a Membership or Economic Interest, the Company may, in the discretion of the Members, increase or decrease the Capital Accounts of the Holders to reflect a revaluation of Company Property on the books of the Company, in accordance with the provisions of Regulations Section 1.704-1(b)(2)(iv)(f).

## ARTICLE VI

## INCOME AND LOSSES

6.1    Allocations.  Except as otherwise provided in this Article VI, Income and Losses, and each item thereof, of the Company shall be allocated to the Holders in proportion to their Percentage Interests.

6.2    Qualified Income Offset.  A Holder whose Capital Account is unexpectedly reduced on account of an adjustment described in Section 1.704-1(b)(2)(ii)(d)(4) of the Regulations, an allocation described in Section 1.704-1(b)(2)(ii)(d)(5) of the Regulations, or a distribution described in Section 1.704-1(b)(2)(ii)(d)(6) of the Regulations, shall be allocated that Holder's pro rata portion of each item of Company income, including gross income, and gain in an amount and manner sufficient to eliminate such deficit balance as quickly as possible.

6.3    Minimum Gain Chargeback.  Notwithstanding any other provision herein, if there is a net decrease in Company Minimum Gain during any taxable year, items of Company income and gain shall be allocated in accordance with the provisions of Regulations Section 1.704-2(f). This provision is intended to comply with Regulations Section 1.704-2(e)(3).

6.4    Contributed Property and Revaluations.  In accordance with IRC Section 704(c), income, gain, loss and deduction with respect to property contributed to the Company by a Holder shall be allocated solely for tax purposes among the Holders so as to take account of any variation between the adjusted basis of the property to the Company and its fair market value on the date of the Contribution.  Further, if the book value of any Company asset is adjusted as described in Regulations Section 1.704-1(b)(2)(iv)(f), subsequent allocations for tax purposes of income, gain, loss and deduction with respect to such asset shall take into account any variation between its adjusted tax basis and its adjusted book value.  In either case, the Managers shall determine such allocations using a method that qualifies as reasonable within the meaning of Regulations Section 1.704-3.  No Holder's Capital Account shall be adjusted for allocations made under this Section.

Exhibit 1413 - 0111

6.5     Timing.  All allocations of Income or Losses shall be made to the Persons shown on the records of the Company to have been Holders as of the end of business on the last day of the Company's taxable year for which the allocation is made.  Notwithstanding the foregoing, upon the transfer of an Economic Interest or the admission of an Additional Member during a taxable year of the Company, the Income or Losses shall be allocated between the former Holder and the successor, or to the Additional Member, as the case may be, according to the number of days during such year each was a Holder.

## ARTICLE VII

## DISTRIBUTIONS

7.1     Operating Distributions.  The Managers from time to time may determine, in their reasonable judgment, that: (i) there is an excess of cash on hand beyond the Company's current and anticipated requirements, including, without limitation, cash flow and reserve requirements, and (ii) a distribution of such excess cash on hand, if any, is permissible under Section 18-607 of the Act.  In that event, the Managers may, in their sole and absolute discretion, make a distribution of all or a part of such excess (an "**Operating Distribution**") to the Holders, provided that no such Distribution shall be declared and paid unless, after such Distribution, the assets of the Company will exceed all liabilities of the Company.  Such Distributions may be made in cash or Property or partly in both, as determined in the sole and absolute discretion of the Managers.

7.2     Generally Pro Rata.  Except as provided in Section 7.3 below, Distributions shall be allocated to Holders in proportion to their Percentage Interests.

7.3     Liquidating Distributions.  Upon the dissolution of the Company, liquidating distributions in all cases shall be made in accordance with the positive Capital Account balances of the Holders, as determined after taking into account all Capital Account adjustments for the Company's taxable year during which such dissolution occurs (other than those made pursuant to this section), by the end of such taxable year or, if later, within ninety (90) days after the date of such dissolution.

## ARTICLE VIII

## ASSIGNMENT OF INTERESTS

8.1     Assignment of Interests.  An Economic Interest is assignable in whole or in part, provided, however, that no Membership Interest may be assigned to any Person (including any assignments for security purposes or other form of pledge) without the consent of Members required pursuant to Section 3.7.  Upon admission, the Assignee shall become a Substitute Member, and shall have the rights and benefits, and is subject to the restrictions and liabilities, of a Member under the Certificate, this Operating Agreement, and the Act.  A Substitute Member is also liable for the obligations of the Assignor to make Capital Contributions, and to return any unlawful distributions made to the Assignor under Chapter VI (commencing with Section 18 601) of the Act.  However, the Substitute Member is not obligated for liabilities unknown to the Substitute Member at the time the Substitute Member became a Member and that could not be ascertained from the Certificate or this Operating Agreement.

Exhibit 1413 - 0112

8.2    No Dissolution upon Assignment.  An assignment of an Economic Interest does not of itself dissolve the Company or, except as otherwise set forth herein, entitle the Assignee to vote or participate in the management and affairs of the Company or to become or exercise any rights of a Member.  An assignment of an Economic Interest merely entitles the Assignee to receive, to the extent assigned, the Income, Losses, Distributions and similar items to which the Assignor would be entitled.

8.3    Information Regarding Assignee.  Upon the assignment of all or part of an Economic Interest, the Assignor shall provide the Manager or Member of the Company responsible for maintaining the books and records with the name and address of the Assignee, together with details of the interest assigned.  Upon receipt of that Notice, the Company shall amend the list required by Section 2.6 accordingly.  Until the Assignee becomes a Substitute Member, the Assignor continues to be a Member and to have the power to exercise any rights and powers of a Member, including the right to vote which, in the case of a Member who has assigned his or her or its entire Economic Interest in the Company, shall include the right to vote in proportion to the Percentage Interest that the assigning Member would have, had the assignment not been made.

8.4    No Release of Liability of Assignor.  The Assignor is not released from liability as a Member solely as a result of the Assignment.  Whether or not an Assignee becomes a Substitute Member, the Assignor is not released from the Assignor's liability to the Company under Subchapter V (commencing with Section 18 501) and Subchapter VI (commencing with Section 18-601) of the Act.

8.5    Pledge of Membership Interest.  The pledge of, or granting of, a security interest, lien, or other encumbrance in or against any or all of the Membership Interest of a Member shall not cause the Member to cease to be a Member or to grant to anyone else the power to exercise any rights or powers of a Member.

8.6    Exercise of Rights upon Death or Incompetency.  If a Member who is a natural person dies or is adjudged by a court of competent jurisdiction to be incompetent to manage the Member's person or property, the Member's executor, administrator, guardian, conservator, or other legal representative may exercise all of the Member's rights for the purpose of settling the Member's estate or administering the Member's property, including any power the Member had under the Certificate or this Operating Agreement to assign its Membership Interest.

8.7    Exercise of Rights upon Dissolution or Termination.  If a Member which is an Organization is dissolved or terminated, the powers of that Member may be exercised by its legal representative or successor.

## ARTICLE IX

## DISSOLUTION AND WINDING UP

9.1    Dissolution.  The Company shall and may only be dissolved, and its affairs wound up, upon the first to occur of the following events (which, unless the Members agree to continue the business, shall constitute Dissolution Events):

Exhibit 1413 - 0113

9.1.1 the expiration of the Term, unless the business of the Company is continued with the consent of those Members required pursuant to Section 3.7;

9.1.2 the vote of such number of Members as is required pursuant to Section 3.7;

9.1.3 the Dissociation of a Member under Article XI, unless the business of the Company is continued with the consent of those Members required pursuant to Section 3.7 within ninety (90) calendar days after such Dissociation; or

9.1.4 the entry of a decree of judicial dissolution pursuant to the Act.

9.2 Effect of Dissolution. Upon dissolution, the Company shall be dissolved and wound up in accordance with the Act, and the Company Property shall be distributed in accordance with Section 7.3. In addition, upon dissolution, the following shall immediate apply:

9.2.1 All rights granted under the Master License Agreement shall terminate and the Company shall cease the use of the Potato Corner intellectual property rights, and confidential information, provided however, that the Company shall be permitted to use any of the foregoing as is reasonably required in order to comply with its obligations under its sub-licensing or franchising agreements, but only to the extent of the duration of sub-licensing or franchising agreements in existence at the time of the termination of this Operating Agreement.

9.2.2 The LA Group shall be subject to a non-compete arrangement and hereby agrees that, within two (2) years from the date of termination of this Operating Agreement, it shall not engage in the business of establishing, operating, managing, licensing and franchising identical or similar products sold by the Company, using the intellectual property rights identical or similar to those used by the Company, at the time of the termination of this Operating Agreement.

## ARTICLE X

## TAX AND ACCOUNTING MATTERS

10.1 Characterization as a Partnership. The Members intend that the Company be classified as a partnership for federal and state income tax purposes. Accordingly, this Operating Agreement is written and shall be construed in a manner consistent with such intent.

10.2 No Partnership Intended for Nontax Purposes. The Members have formed the Company under the Act, and expressly do not intend hereby to form a partnership under either the Delaware Uniform Partnership Law or the Delaware Revised Uniform Limited Partnership Act. The Members do not intend to be partners one to another, or partners as to any third party. To the extent any Member, by word or action, represents to another person that any other Member is a partner or that the Company is a partnership, the Member making such wrongful representation shall be liable to any other Member who incurs personal liability by reason of such wrongful representation.

Exhibit 1413 - 0114

10.3    Fiscal Year.  The fiscal year of the Company shall end on the last day of December of each year.  The Managers may at any time change the fiscal and taxable year of the Company, subject to any applicable limitation of law or regulation.

10.4    Accounting Method.  The Managers shall select the method of accounting by which the Company books of account shall be maintained and its income, gains, losses, deductions and credits shall be reported, for both financial and tax accounting purposes.  The Managers may at any time change the financial and tax accounting method of the Company, subject to any applicable limitation of law or regulation.

10.5    Tax Information.  As soon as reasonably practicable after the end of the Company fiscal year, the Managers shall cause each Holder to be furnished with a Schedule K-1 for such year and any other schedule or statement required by federal income tax law.

10.6    Basis Adjustment.  In the case of a Distribution of Company Property or a transfer of a Membership Interest, the Managers may cause the Company to file an election under IRC Section 754 to adjust the basis of the Company Property.  As a result of this election, the Managers shall have the right to require, as a condition to the granting of consent to any transfer, the reimbursement of expenditures made by the Company for any legal and accounting fees incurred to make any such basis adjustment.  The Managers shall have the right, in their sole and absolute discretion, to decline to make such an election; and further, the failure to make any election under the IRC in connection with any particular transfer of an interest in the Company shall not affect the right of the Managers to make, or refuse to make, such an election with respect to any subsequent transfer of an interest in the Company.

10.7    Other Elections.  The Company shall have the right, in the sole and absolute discretion of the Managers, to make any other elections or determinations required or permitted for federal or state income tax or other tax purposes.  The Managers may rely upon the advice of the Company's accountants or tax attorneys with respect to the making of any such election.

10.8    Taxes of Taxing Jurisdictions.  To the extent that the laws of any Taxing Jurisdiction requires, each Holder requested to do so by the Managers will submit an agreement indicating that the Holder will make timely income tax payments to the Taxing Jurisdiction and that the Holder accepts personal jurisdiction of the Taxing Jurisdiction with regard to the collection of income taxes attributable to the Holder's income, and interest, and penalties assessed on such income.  If the Holder fails to provide such agreement, the Company may withhold and pay over to such Taxing Jurisdiction the amount of tax, penalty and interest determined under the laws of the Taxing Jurisdiction with respect to such income.  Any such payments with respect to the income of a Holder shall be treated as a distribution to such Holder for purposes of ARTICLE VII.  The Company may, where permitted by the rules of any Taxing Jurisdiction, file a composite, combined or aggregate tax return reflecting the income of the Company and pay the tax, interest and penalties of some or all of the Holders on such income to the Taxing Jurisdiction, in which case the Company shall inform the Holders of the amount of such tax, interest and penalties so paid.

10.9    Tax Matters Partner.  The Managers shall designate one of their number or, if there are no Managers eligible to act as tax matters partner any other Member, as the tax matters

Exhibit 1413 - 0115

partner of the Company pursuant to IRC Section 6231(a)(7). Any Member designated as tax matters partner shall take such action as may be necessary to cause each other Member to become a notice partner within the meaning of IRC Section 6223. Any Member who is designated tax matter partner may not take any action contemplated by IRC Sections 6222 through 6232 without the consent of the Managers.

## ARTICLE XI

## DISSOCIATION OF A MEMBER

11.1    Dissociation. A Person shall cease to be a Member upon the happening of any of the following events:

11.1.1  the withdrawal of a Member with the consent of such number of Members as is required pursuant to Section 3.7;

11.1.2  the bankruptcy (as defined by the Act) of a Member;

11.1.3  in the case of a Member who is a natural Person, the death of the Member or the entry of an order by a court of competent jurisdiction adjudicating the Member incompetent to manage the Member's personal estate;

11.1.4  in the case of a Member who is acting as a Member by virtue of being a trustee of a trust, the termination of the trust (but not merely the substitution of a new trustee);

11.1.5  in the case of a Member that is a separate Organization other than a corporation, the dissolution and commencement of winding up of the separate Organization;

11.1.6  in the case of a Member that is a corporation, the filing of a certificate of dissolution, or its equivalent, for the corporation or the revocation of its charter; or

11.1.7  in the case of an estate, the distribution by the fiduciary of the estate's entire interest in the Company.

11.2    Rights of Dissociating Member. In the event any Member dissociates prior to the expiration of the Term:

11.2.1  if the Dissociation causes a dissolution and winding up of the Company, the Member shall be entitled to participate in the winding up of the Company to the same extent as any other Member except that any Distributions to which the Member would have been entitled shall be reduced by the damages sustained by the Company as a result of the Dissolution and winding up;

11.2.2  if the Dissociation does not cause a dissolution and winding up of the Company, the Member shall not be entitled to receive any amount in consideration of the Member's Membership Interest on account of such Dissociation, unless such Member no

Exhibit 1413 - 0116

longer holds the corresponding Economic Interest. Otherwise, the Dissociated Member shall continue as Holder of an Economic Interest only.

## ARTICLE XII

## MISCELLANEOUS PROVISIONS

12.1 _Amendment of Operating Agreement_. This Operating Agreement may be modified upon the vote of Members required pursuant to Section 3.7. No Member or Manager shall have any vested rights in the Operating Agreement which may not be modified through an amendment to the Operating Agreement.

12.2 _Entire Agreement_. The Operating Agreement represents the entire agreement among all the Members and between the Members and the Company.

12.3 _Interpretation_. To the extent any provision of this Operating Agreement is prohibited or ineffective under the Act, the Operating Agreement shall be considered amended to the smallest degree possible in order to make the agreement effective under the Act. In the event the Act is subsequently amended or interpreted in such a way to make any provision of the Operating Agreement that was formerly invalid valid, such provision shall be considered to be valid from the effective date of such interpretation or amendment.

12.4 _Rights of Creditors and Third Parties under Operating Agreement_. This Operating Agreement is entered into among the Company and the Members for the exclusive benefit of the Company, its Members, and their successors and assignees. This Operating Agreement is expressly not intended for the benefit of any creditor of the Company or any other Person. Except and only to the extent provided by applicable statute, no such creditor or third party shall have any rights under this Operating Agreement or any agreement between the Company and any Member with respect to any Capital Contribution or otherwise.

12.5 _Valuation of Non-Cash Consideration_. For purposes of this Operating Agreement, the procedure for valuing any non-cash consideration shall be as follows: If the parties cannot otherwise agree, each party shall select a qualified appraiser and the appraisers so selected shall jointly select an appraiser, and the valuation of the appraiser so selected shall be binding on all parties. Such valuation shall be based on an arm's length cash sale of the assets. If the non-cash consideration being valued is real property, the selected appraiser shall be an MAI appraiser.

12.6 _Counterpart Execution_. This Operating Agreement may be executed in any number of identical counterparts, each of which shall be deemed to be an original, and all of which together shall be deemed to be one and the same instrument when each party has signed one (1) such counterpart.

12.7 _Remedies_. The parties hereto recognize and agree that the breach of any term, provision, or condition of this Operating Agreement may cause irreparable damage, the amount of which is difficult to ascertain and that the award of damages may not be adequate relief to the party aggrieved; the parties therefore agree that, in addition to all other remedies available in the event of a breach of any of the terms or conditions of this Operating Agreement, the party

WEST\24283219.2

28

Exhibit 1413 - 0117

aggrieved shall have the right, in addition to all other remedies available in the event of a breach of this Operating Agreement, to injunctive or other equitable relief (from any court or other body having appropriate jurisdiction).

12.8    Successors and Assigns. Except as herein otherwise specifically provided, this Operating Agreement shall be binding upon and inure to the benefit of the parties and their legal representatives, heirs, administrators, executors, successors and assigns.

12.9    Severability. If any provision of this Operating Agreement, or the application of such provision to any Person or circumstance, shall be held invalid, the remainder of this Operating Agreement, or the application of such provision to Persons or circumstances other than those to which it is held invalid, shall not be affected thereby.

12.10    Governing Law. This Operating Agreement shall be governed by and construed and enforced in accordance with the laws of the State of California without regard to the principles governing conflicts of laws.

IN WITNESS WHEREOF, this Operating Agreement is entered into as of the Effective Date.

INSERT SIGNATURE BLOCKS

Exhibit 1413 - 0118

IN WITNESS WHEREOF, the parties have executed this Agreement on the date and in place first mentioned.

Cinco Group:

Cinco Corporation (Philippines)

Name: Jose P. Magsaysay

Title:   CEO

Jose P. Magsaysay, Jr.

Ma. Victoria O. Bermejo

Ricardo K. Montelibano

L.A. Group:

Amit Nemanim

Guy Koren

Amir Jacoby

SIGNED IN THE PRESENCE OF:

November 30, 2010

Exhibit 1413 - 0119

# EXHIBIT B

**Exhibit 1413 - 0120**

**From:** Jose Magsaysay, Jr. [mailto:jomag28@gmail.com]
**Sent:** Monday, March 26, 2018 5:10 PM
**To:** Guy Koren; guy '12 koren; amir PC USA; Amir Jacoby; Inbal Jacoby; inbal PC USA;
dom.hernandez@potatocorner.com; myrose.victor@futurevalue.ph; marivicdelpilar@gmail.com; edward
hernandez; macoydelpilar@gmail.com; Ricky Montelibano '16; Jojo G. Montinola;
miguelhernandez.mnl@gmail.com; Banz Banzon '16; Olivas, Ben
**Subject:** notice for members meeting

To our LA Partners,

We would like to request for a Member's meeting on Monday, April 9, 2018, 5:30pm (LA Time)
via teleconference primarily to discuss the Letter of Intent that was sent to the LA Group last
week.

AGENDA

1. Call to Order.

2. Determination of Quorum/ Attendance.

3. Welcome.

4. Guy Koren: To report 2017;
a) Business Development highlights (new territories, store growth, topline growth, franchise)
b) Store Operations highlights
c) Logistics and Supply Chain operational highlights
d) Marketing and Brand highlights
e) Administration updates
f) Other Matters

5. Inbal Jacoby: To Report on 2017 (and 2016) financial performance

6. Guy Koren and/or Amir Jacoby: To Present 5-year plan for PCJV.

7. Letter of Intent.

8. Matters for Approval.

9. Election of the Board of Directors and Officers of the Board.

10. Other Matters.

11. Adjournment.

Thank you.

**Exhibit 1413 - 0121**

Joe

Exhibit 1413 - 0122

# EXHIBIT C

Exhibit 1413 - 0123

**PCJV USA LLC – MEMBERS' AND MANAGERS' MEETING**
**April 9, 2018**
**Via Telephonic Call**

1. **Call to Order at 5:30 pm PDT**

   Meeting was called to order by Mr. Edward Hernandez, Chairman of the Board of PCJV USA LLC

2. **Determination of Quorum/Attendance**

   The following were in attendance in the meeting:

   *As Members:*

   *For Potato Corner International*, Member – Mr. Edward Hernandez

   *For the LA Group:*
   - Mr. Guy Koren
   - Mr. Amir Jacoby
   - Ms. Inbal Jacoby

   *As Managers:*

   *For Potato Corner International:*
   - Mr. Edward Hernandez – present in person
   - Mr. Jose Magsaysay, Jr. – present in person
   - Mr. Jojo Montinola – proxy held by Mr. E. Hernandez
   - Mr. Ricky Montelibano – proxy held by Mr. E. Hernandez
   - Ms. Marivic del Pilar – present in person

   *For the LA Group:*
   - Mr. Guy Koren – in person
   - Mr. Amir Jacoby – in person
   - Ms. Inbal Jacoby – in person

   *Others (non-voting participants):*
   - Mr. Marco del Pilar
   - Mr. Dom Hernandez
   - Ms. Myrose Victor
   - Mr. Ben Olivas, acting corporate secretary for the meeting
   - Ms. Kellin Chatfield, assisting Mr. B. Olivas

WEST\281134891.2

**Exhibit 1413 - 0124**

2

### 3. Welcome remarks

Mr. E. Hernandez, as Chairman, presided over the meeting. He made brief remarks welcoming the participants to the meeting duly convened.

### 4. Business report by Mr. Guy Koren

a. <u>Status of the FY 2017 audited Financial Statements</u> – A draft of the FY 2017 audited financial statements has been provided by the external auditors, Martini Iosue & Akpovi, CPAs ("MIA"), to Mr. G. Koren for his review and comments. Mr. G. Koren agreed to provide a copy of the draft to PC-International, prior to submitting to MIA for their final sign-off.

b. <u>Status of the 2018 Franchise Disclosure Document ("FDD")</u> – Mr. G. Koren has been working with Mr. Barry Kurtz to finalize the 2018 FDD, for submission to the relevant state regulators, including the California Department of Business Oversight ("DBO"). Mr. G. Koren reported that, in general, the 2018 FDD is the same as the prior year's FDD subject to the following changes: i) the addition of language describing the operation of food trucks, since there have been inquiries from prospective franchisees about food trucks, particularly in the Miami, FL area; ii) minor adjustments in the operating franchisees, due to changes in operating costs, and iii) potential increase in royalties to 6% (discussed further below).

c. <u>Potential increase of royalty rates to 6%</u> – Mr. G. Koren reported that he is considering increasing the royalties charged to 6%, but only for new franchisees. With respect to existing franchisees, per the recommendation of the franchise counsel, Mr. B. Kurtz, existing franchisees will be grandfathered in, and remain subject to a 5% royalty rate.

d. Ms. M. del Pilar inquired regarding the list of states in which PCJV is registered to engage in the franchising business, and Mr. G. Koren agreed to provide a list where PCJV is registered as of 2017. Mr. G. Koren will also provide a list of states it will consider adding this year. Mr. G. Koren explained that in order to saving filing costs, PCJV has decided not to file in all 50 states; rather, to only register in states where it may have substantial presence, and for which it is required to register.

e. <u>Change in supplier from Sysco to Bunzl</u> – Mr. G. Koren reported that he is currently in negotiations with Bunzl, to distribute certain products and supplies to franchisees. The proposed arrangement with Bunzl would be cheaper than distributing through Sysco, under the current arrangements. Further, over time, the arrangement with Bunzl will allow Potato Corner Trading, Inc. ("PC-Trading") to get rid of its warehousing operations, and thus allow the business to focus on franchising operations only.

**Exhibit 1413 - 0125**

3

    f.   Ms. M. Victor inquired about the 5-year business plan for PCJV, which the LA Group agreed to provide in the November 28, 2017 Members' meeting. Mr. G. Koren explained the there are no 5-year business plan available. Due to the difficulty in projecting the royalties from the current franchisees, Mr. Koren explained that he cannot project the revenues and income of the business.

    g.   New lease facilities – Mr. Koren reported that the current office lease will expire in June 2018. As such, he has negotiated and signed a new lease agreement for a much bigger office space that has a term of 8 years. He has also provided the lessor a deposit check of $71k, as required by the lease agreement. Mr. M. del Pilar requested a copy of the signed lease agreement, which Mr. Koren agreed to provide.

## 5.  Other Matters

    a.   Unilateral and unauthorized withdrawal of all of PCJV's funds from the Wells Fargo bank accounts – Mr. E. Hernandez requested Mr. Koren to explain why he withdrew of all of PCJV's cash from the Wells Fargo accounts, without providing prior notice or obtaining prior approval by the Managers, and without immediately informing Cinco of the whereabouts of the funds (until he was enjoined in writing to return the funds under the threat of appropriate legal action).

        Mr. Koren explained that, due to his ongoing dispute with Mr. A. Jacoby, with respect to matters involving their separate partnership arrangements, he felt that it was necessary to take this unilateral action in order to protect the money. He also said that Chase offered a better return on the cash, thus justifying the unilateral transfer by him in his capacity as President of PCJV.

        After Mr. Koren's explanation of the transfer, Mr. Jacoby took the floor in rebuttal. He noted that there was no immediate threat to the PCJV funds, as Mr. Koren alleges.

    b.   Unilateral and unauthorized signing of the lease agreement – Mr. E. Hernandez also requested Mr. Koren to explain why he signed the lease contract by himself, without informing the Cinco Group, as required by the LLC Operating Agreement. Mr. Koren explained that there was a business necessity to enter into the new lease agreement, since the current lease was about to expire, and that PCJV has expansion plans.

        In rebuttal, Mr. Jacoby argued that, notwithstanding repeated requests, Mr. Koren failed to provide business projections and plans that would justify the need for a substantially bigger office space. Mr. Jacoby noted that the rental expense is not justified by the current revenues and cash flows of PCJV.

WEST\281134891.2

**Exhibit 1413 - 0126**

4

In turn, Mr. Koren refuted Mr. Jacoby's arguments, and asserted that as President of PCJV, has the discretion to enter into the lease agreement, just as he has been managing the business for the 9 years of PCJV's existence.

## 6. Election of Managers and Officers

After the discussion of business developments and other matters, Mr. E. Hernandez then proceeded to the election of Managers and Officers of PCJV LLC. The following Members voted in favor of the following actions:

- PC International
- Amir Jacoby
- Inbal Jacoby

### Removal of the LA Group members as Managers

Mr. E. Hernandez cited the ongoing dispute between the Mr. Koren and Mr. Jacoby (and Ms. Jacoby) as a significant concern that is harmful to the continued health and viability of PCJV business. The ongoing dispute has resulted in a standstill and rendered PCJV unable to more forward effectively in its business. Moreover, due to this dispute, unilateral actions have been taken that, in violation of the procedures and processes set forth and agreed upon in the Operating Agreement (discussed above), have prejudiced the interests of PCJV and Cinco (as the joint venture partner). For instance, when the unilateral and unauthorized use of the funds from the Wells Fargo bank accounts have resulted in overdraft charges.

Further, when asked whether they have any possibility of working together, each one of them explicitly stated that they will not be able to continue working together in the future. Given the irreconcilable conflict between the LA Group members, and its prejudicial effect so far in the business of PCJV, the remaining Members, by 75% vote of all Membership Interests, voted to remove the LA Group members as Managers of PCJV. Further, the remaining Members, by 75% vote of all Membership Interests, voted to take all actions necessary to carry out this resolution.

### Removal of Mr. Guy Koren as President

The remaining Members, by 75% vote of all Membership Interests, voted to remove Mr. Koren as President of PCJV, for cause, due to the unilateral and unauthorized actions he has taken (discussed above), which are in violation of his fiduciary responsibilities to PCJV, as Manager and President. Further, the remaining Members, by 75% vote of all Membership Interests, voted to take all actions necessary, including i) amending Section 4.11.7 of the Operating Agreement, to carry out this resolution, ii) designating Ms. Inbal Jacoby and Mr. Brandon Lewis, on an interim basis, as authorized signatories to the PCJV bank accounts; and iii) designating Ms. Inbal Jacoby, Mr. Brandon Lewis, Ms. Myrose Victor, and Mr. Ben Olivas, as authorized representatives of PCJV during the transition period.

Exhibit 1413 - 0127

5

### Election of Managers

As provided by the LLC Operating Agreement, the following were elected as Managers:

*For the Cinco Group (PC International):*
- Mr. Edward Hernandez
- Mr. Marco del Pilar
- Ms. Marivic del Pilar
- Mr. Jose Magsaysay, Jr.

*For the LA Group:*
- Mr. Amir Jacoby
- Ms. Inbal Jacoby

### Election of Officers

The following were elected as officers:
- Mr. Edward Hernandez        Chairman of the Board
- Mr. Jose Magsaysay, Jr.     Chief Executive Officer
- Ms. Marivic del Pilar       Treasurer
- Mr. Ben Olivas              Corporate Secretary

7. **Adjournment**

There being no other business before to be transacted, the meeting was hereby adjourned.

WEST\281134891.2

Exhibit 1413 - 0128

6

IN WITNESS WHEREOF, the undersigned, being the Members (or duly authorized representatives of the Members of PCJV USA, LLC) and Managers of PCJV USA, LLC, hereby approve the meeting minutes as set forth above.

**PCJV USA, LLC Members:**

_____
Potato Corner International, Inc.

By: _____

_____
Amir Jacoby

_____
Inbal Jacoby


**PCJV USA, LLC Managers:**

**The Potato Corner International Group:**        **The LA Group:**

_____
Edward Hernandez

_____
Marco del Pilar

_____
Marivic del Pilar

_____
José Magsaysay, Jr.

_____
Amir Jacoby

_____
Inbal Jacoby

Attest:

_____
Ben R. Olivas
(Corporate Secretary)

WEST\281134891.2

Exhibit 1413 - 0129

**RESOLUTION**
**OF THE MEMBERS**
**OF**
**PCJV USA, LLC,**
A Delaware Limited Liability Company,
April 9, 2018

The undersigned Members representing at least seventy-five percent (75%) of PCJV USA, LLC's membership interest, do hereby approve and adopt the following resolutions (this "Resolution") pursuant to the laws of the State of Delaware.

### Removal of LA Group members as Managers

RESOLVED, that the LA Group members, for cause, consisting of Guy Koren, Amir Jacoby, and Inbal Jacoby, shall immediately be removed as Managers of PCJV USA, LLC.

### Removal of Guy Koren as President

RESOLVED, that Guy Koren, for cause, shall immediately be removed as President of PCJV USA, LLC.

FURTHER RESOLVED, that Section 4.11.7 of the PCJV USA, LLC Operating Agreement shall be amended as follows:

> 4.11.7 President. The President shall be the chief executive officer of the Company and shall, subject to the control of the Managers, have general supervision, direction and control of the business and officers of the Company. The President shall preside at all meetings of the Members and the Managers. He or she shall have the general powers and duties of management usually vested in the office of the President of a corporation, and shall have such other powers and duties as may be prescribed by the Managers or this Operating Agreement. ~~As agreed upon by the Members, at any given time, the President shall be any of the following: Amit Nemanim, Guy Korean, and Amir Jacoby. The initial President of the Company shall be Amit Nemanim.~~ The President of the Company shall render the following services and shall perform the following duties for the Company in a faithful, diligent and efficient manner:

### Election of PCJV USA, LLC Managers

RESOLVED, that the following individuals are hereby elected to represent Potato Corner International, Inc. / Cinco Group as Managers of PCJV USA, LLC, until their respective successors are duly elected and qualified or their earlier resignation or removal:

> Jose P. Magsaysay, Jr.
> Marivic del Pilar
> John Edward Hernandez
> Marco del Pilar

Exhibit 1413 - 0130

FURTHER RESOLVED, that the following individuals are hereby elected to represent the LA Group as Managers of PCJV USA, LLC, until their respective successors are duly elected and qualified or their earlier resignation or removal:

> Amir Jacoby
> Inbal Jacoby

### Election of Officers

RESOLVED, that the following individuals are hereby elected to serve in the offices of PCJV USA, LLC set forth opposite their respective names until their respective successors are duly elected and qualified or their earlier resignation or removal:

| | |
|---|---|
| Chief Executive Officer: | Jose Magsaysay, Jr. |
| Chairman of the Board: | John Edward Hernandez |
| Treasurer: | Marivic del Pilar |
| Corporate Secretary: | Ben Olivas |

FURTHER RESOLVED, that Section 4.11.1 of the PCJV USA, LLC Operating Agreement shall be amended as follows:

> 4.11.1 Officers. The officers of the Company, if any, shall include the following: Chairman of the Board of Members, Chief Executive Officer, President, Corporate Secretary, and Treasurer. The Company may also have, at the discretion of the Managers, one or more vice-presidents, one or more assistant secretaries, one or more assistant financial officers, and such other officers as may be appointed in accordance with the provisions of this Operating Agreement. Any number of offices may be held by the same person. Officers need not be Members.

The officers of PCJV USA, LLC, as elected by the Managers, are authorized and directed to insert a copy of this Resolution in the minute book of PCJV USA, LLC.

WEST\281143132.1

**Exhibit 1413 - 0131**

IN WITNESS WHEREOF, the undersigned, being the Members or duly authorized representatives of the Members of PCJV USA, LLC, execute this Resolution as of the date set forth above and hereby certify that the foregoing resolutions were passed by a vote of at least seventy-five percent (75%) of PCJV USA, LLC's membership interest.

Potato Corner International, Inc.

By: _____

Amir Jacoby

Inbal Jacoby

WEST\281143132.1

**Exhibit 1413 - 0132**

# EXHIBIT D

Exhibit 1413 - 0133

From: Ashley Grudnowski <ashley@potatocornerusa.com>
Date: Wed, 11 Apr 2018 09:42:23 -0700
Subject: Potato Corner Office Locks
To: Esther Cho <esthercho@jamisonservices.com>
Cc: Guy Koren <guy@potatocornerusa.com>

Hi Ester,

We are putting in an official request to change the locks for our office.
We need to change all of them as soon as possible; there are 3 locks total.
It is a very urgent matter on our part to ensure the security and safety of
our confidential business documents.

Could you please let us know how quickly we can get this done?

Thanks,

Ashley Grudnowski
Senior Manager, Franchise Development
Ashley@potatocornerusa.com
Potato Corner USA
Office: 323-951-1155
Fax: 888-810-1174

CONFIDENTIALITY NOTICE: This e-mail message, including any attachments, is
for the sole use of the intended recipient(s), and may contain confidential
and proprietary information of PCJV USA Corporation and/or its affiliates.
Any unauthorized review, use, disclosure, copying, or distribution, is
prohibited. If you are not the intended recipient, please contact the
sender by reply e-mail as well as admin@PotatoCornerUSA.com, and
delete/destroy all copies of the original message.

**Exhibit 1413 - 0134**

# EXHIBIT E

Exhibit 1413 - 0135

### NOTICE OF SPECAL MEETING
### OF MANAGERS OF
### PCJV USA, LLC

**PLEASE TAKE NOTICE THAT** the undersigned Managers of PCJV USA, LLC ("PCJV" or the "Company") hereby call a special meeting of Managers of PCJV pursuant to Section 4.14.3 of the Limited Liability Company Agreement of PCJV USA, LLC (the "Agreement").

**PURPOSE OF THE MEETING**

The purpose of the meeting will be to consider:

(1) the removal of all of the Company's officers, including its Chairman of the Board of Members, President, Corporate Secretary, and Treasurer, and subordinate officers pursuant to Section 4.11.4 of the Agreement;

(2) the election of new officers of the Company, including its Chairman of the Board of Members, President, Corporate Secretary, and Treasurer, and subordinate officers pursuant to Sections 4.11.2 and 4.11.3 of the Agreement, respectively;

(3) the termination of the Services Agreement by and between Potato Corner Joint Venture also known as PCJV USA, LLC, on the one hand, and Guy Koren and Amir Jacoby, known as the LA Group, on the other hand, dated January 1, 2017 (the "Services Agreement"), pursuant to Section 5 of the Services Agreement; and

(4) such other matters and items of business as may arise during the course of the meeting.

**TIME AND PLACE OF THE MEETING**

The meeting shall take place at 5:00 PM PDST on Monday, April 23, 2018 by telephone conference.  The telephone conference dial-in is 1-888-472-4293, access code 6993665#.

Dated:  April 18, 2018

JOHN EDWARD P. HERNANDEZ                    MARIVIC H. DEL PILAR

_____                    _____
**JOHN EDWARD P. HERNANDEZ**                  **MARIVIC H. DEL PILAR**
MANAGER OF PCJV USA, LLC                      MANAGER OF PCJV USA, LLC

WEST281926260.1

**Exhibit 1413 - 0136**

# EXHIBIT F

Exhibit 1413 - 0137

MINUTES OF SPECIAL MEETING
OF MANAGERS OF
PCJV USA, LLC,
A Delaware Limited Liability Company

**APRIL 23, 2018**

On April 23, 2018, at 5:11 PM PDST, the Board of Managers of PCJV USA, LLC ("PCJV" or the "Company") held, via telephone conference, a special meeting of Managers of PCJV pursuant to Section 4.14.3 of the Limited Liability Company Agreement of PCJV USA, LLC (the "Agreement") and Notice of Special Meeting, which was mailed on April 18, 2018.

The participants in the meeting were: Guy Koren; Alon Koren; Tom Hodgson; Jose Magsaysay, Jr.; Marivic del Pilar; Marco del Pilar; Ricardo Enrique K. Montelibano; John Edward Hernandez; Amir Jacoby; and Inbal Jacoby. Robert Brownlie of DLA Piper LLP (US) and Myrose Victor observed the meeting. Mr. Brownlie acted as secretary of the meeting.

John Edward Hernandez acted as the Chair of the meeting. At the outset of the call, Mr. Hernandez confirmed that the participants in the call could hear each other. Mr. Hernandez held proxy for any Managers of the Company appointed by Cinco Group and/or Potato Corner International, Inc.

**Explanatory Note**

Before April 9, 2018, the Managers of PCJV consisted of the following individuals: Jose P. Magsaysay; Marivic del Pilar; John Edward Hernandez; Ricardo Enrique K. Montelibano; Guy Koren; Amir Jacoby; and Inbal Jacoby. These individuals are referred to as the "Prior Board."

On April 9, 2018, the Members of PCJV held a meeting to, among other things, elect new Managers. The individuals elected to represent Potato Corner International, Inc. / Cinco Group as Managers of PCJV USA, LLC were: Jose P. Magsaysay; Marivic del Pilar; John Edward Hernandez; and Marco del Pilar. The individuals elected to represent the LA Group as Managers of PCJV USA, LLC were: Amir Jacoby and Inbal Jacoby. For the purposes of these minutes, the "April 9 Board" refers to Jose P. Magsaysay; Marivic del Pilar; John Edward Hernandez; Marco del Pilar; Amir Jacoby and Inbal Jacoby.

By a letter, dated April 11, 2018, counsel for Guy Koren objected to the election of Amir Jacoby and Inbal Jacoby as Managers to represent the LA Group. Through his counsel, Mr. Koren asserted that the individuals who represent the interests of the LA Group as Managers of PCJV USA, LLC were: Guy Koren; Alon Koren; and Tom Hodgson. For the purposes of these minutes, the "April 11 Board" refers to Jose P. Magsaysay; Marivic del Pilar; John Edward Hernandez; Marco del Pilar; Guy Koren; Alon Koren; and Tom Hodgson.

**Exhibit 1413 - 0138**

## REMOVAL OF CURRENT OFFICERS AND SUBORDINATE OFFICERS

The Chairman announced that the first item of business was to consider the removal of all of the Company's officers, including its Chairman of the Board of Members, President, Corporate Secretary, and Treasurer, and subordinate officers pursuant to Section 4.11.4 of the Agreement. A motion was duly made to remove of all of the Company's officers, including its Chairman of the Board of Members, President, Corporate Secretary, and Treasurer, and subordinate officers. The motion was seconded, and a discussion ensued. After the discussion, by a roll call vote, the motion was passed unanimously by the April 9 Board, by a majority of the Prior Board with Guy Koren dissenting, and a by a majority of the April 11 Board with Guy Koren, Alon Koren, and Tom Hodgson dissenting. Therefore, regardless of whether the Managers consisted of the Prior Board, April 9 Board, or April 11 Board, the motion passed.

## ELECTION OF NEW OFFICERS

The Chairman announced that the next item of business was to consider the election of new officers of the Company, including its Chairman of the Board of Members, President, Corporate Secretary, and Treasurer. A motion was duly made to elect the following individuals to serve as officers of the Company:

|  |  |
|---|---|
| Chairman of the Board: | John Edward P. Hernandez |
| President: | Amir Jacoby |
| Treasurer: | Marivic del Pilar |
| Corporate Secretary: | Ben Olivas |

The motion was seconded, and a discussion ensued. After the discussion, by a roll call vote, the motion was passed unanimously by the April 9 Board, by a majority of the Prior Board with Guy Koren dissenting, and a by a majority of the April 11 Board with Guy Koren, Alon Koren, and Tom Hodgson dissenting. Therefore, regardless of whether the Managers consisted of the Prior Board, April 9 Board, or April 11 Board, the motion passed.

## ELECTION OF NEW SUBBORDINATE OFFICER

The Chairman announced that the next item of business was to consider the election of a subordinate officer of the Company. A motion was duly made to elect Jose Magsaysay as the Chief Operating Officer of the Company. The motion was seconded, and a discussion ensued. After the discussion, by a roll call vote, the motion was passed unanimously by the April 9 Board, by a majority of the Prior Board with Guy Koren dissenting, and a by a majority of the April 11 Board with Guy Koren, Alon Koren, and Tom Hodgson dissenting. Therefore, regardless of whether the Managers consisted of the Prior Board, April 9 Board, or April 11 Board, the motion passed.

## TERMINATION OF THE SERVICES AGREEMENT

The Chairman announced that the next item of business was to consider the Services Agreement by and between Potato Corner Joint Venture also known as PCJV USA, LLC, on the one hand,

Exhibit 1413 - 0139

and Guy Koren and Amir Jacoby, known as the LA Group, on the other hand, dated January 1, 2017 (the "Services Agreement"), pursuant to Section 5 of the Services Agreement. A motion was duly made to terminate the Service Agreement. The motion was seconded, and a discussion ensued. After the discussion, by a roll call vote, the motion was passed unanimously by the April 9 Board, by a majority of the Prior Board with Guy Koren dissenting, and a by a majority of the April 11 Board with Guy Koren, Alon Koren, and Tom Hodgson dissenting. Therefore, regardless of whether the Managers consisted of the Prior Board, April 9 Board, or April 11 Board, the motion passed.

## THE COMPANY'S BANKING RELATIONSHIPS

The Chairman announced that the notice of meeting allowed the consideration of other items of business. One such matter has arisen as result of the removal and replacement of the Company's officers, which relates to the Company's banking relationships because among the individuals who were removed as officers were those who were the authorized signatories on the Company's bank accounts. A motion was duly made to:

    1) Close the Company's current banking relationships;

    2) Authorize the Company's officers to open new accounts at Citibank and ratify all actions that have been taken in that regard;

    3) Require two signatures for the Company's checks and withdrawals; and

    4) Authorize the following signatories for the Company's bank accounts: Jose Marco de Pilar; Jose P. Magsaysay, Jr.; Ricardo Enrique K. Montelibano; Marivic H. del Pilar; John Edward Hernandez; Chad Dominic Hernandez; Myrose April Victor; Inbal P. Jacoby; and Ben Olivas.

The motion was seconded, and a discussion ensued. After the discussion, by a roll call vote, the motion was passed unanimously by the April 9 Board, by a majority of the Prior Board with Guy Koren dissenting, and a by a majority of the April 11 Board with Guy Koren, Alon Koren, and Tom Hodgson dissenting. Therefore, regardless of whether the Managers consisted of the Prior Board, April 9 Board, or April 11 Board, the motion passed.

## ADJOURNMENT

After a motion duly made, seconded and approved, the meeting was adjourned on 5:34 PM.


JOHN EDWARD HERNANDEZ

ROBERT W. BROWNLIE

CHAIRMAN OF PCJV USA, LLC

ACTING SECRETARY


WEST\281304421.1

**Exhibit 1413 - 0140**

# EXHIBIT G

**Exhibit 1413 - 0141**

On Thu, 26 Apr 2018 at 11:02 AM obette mabbagu <obette623@gmail.com> wrote:

Hi Myrose,

I was in front of the office at 8:45am, I saw a sticker note on the door from the cleaners of the office, that they were not able to open the office for their cleaning duties. I tried to unlock the door like 3x but my key was not working.

I went back to my car at 6floor and texted Emily if they changed the lock, it was a group message for 5 people, then Guy called me, he said he was sorry that I was not informed about the changed lock. I told him that I will just wait for Ashley or Emily to come so I can enter the office as well, then he told me they are not coming.

Since there's no way for me to enter the office, I told him I will just go home as well, and he told me, 'You can go home', and he added I will call you in an hour. The call he mentioned never happened.

This what had transpired yesterday.

Regards,

Robert

**Exhibit 1413 - 0142**

# EXHIBIT H

Exhibit 1413 - 0143

Los Angeles Police Department
**INVESTIGATIVE REPORT**

UCR CODE
CC:

COMBINED EVID. REPORT
MULTIPLE DRS ON THIS REPORT

REPORT NO. DR NO. 78043000 2252

**CASE SCREENING FACTOR(S)**
- [x] SUSPECT VEHICLE NOT SEEN
- [x] PRINTS OR OTHER EVIDENCE NOT PRESENT
- [x] MO NOT DISTINCT
- [x] PROPERTY LOSS LESS THAN $5,000
- [x] NO WITNESS ABLE TO IDENTIFY
- [x] ONLY ONE VICTIM INVOLVED

VICTIM

LAST NAME, FIRST, MIDDLE (FIRM NAME IF BUSINESS)
POTATO CORNER
ADDRESS
6300 Wilshire Blvd St 1100
CITY                ZIP
PHONE 323-937-1833
CELL PHONE

E-MAIL ADDRESS
DR. LIC. NO. (IF NONE, OTHER ID & NO.)
FOREIGN LANGUAGE SPOKEN
OCCUPATION

**PREMISES** (SPECIFIC TYPE) ☐ ATM
Business 1857007

**ENTRY** (SPECIFY POINT OF ENTRY)  POINT OF EXIT
- [x] FRONT   DOOR
- [ ] REAR
- [ ] SIDE
- [ ] ROOF
- [ ] FLOOR
- [ ] OTHER   UNK TOOL

LOCATION OF OCCURRENCE
TIME AM. VS ☐ RES ☒ BUS   R.D. 0742   PRINTS BY PERS. INV. ☐ Y ☐ N   ATTEMPT ☐ Y ☐ N   OBTAINED ☐ Y ☐ N

METHOD   PREBOOK
DATE & TIME OF OCCURRENCE
4/17/2018 1500 - 4/30/2018 0830
DATE & TIME REPORTED TO PD
4/30/2018 1910

INSTRUMENT/TOOL USED
UNK TOOL

TYPE PROPERTY STOLEN/LOST/DAMAGED
(UNK) Books/merch, stamps

LOSS/AND DAMEN
$

STOLEN/LOST
$

RECOVERED
$

EST DAMAGED PERSON/PROP
$

VICT'S VEH. (IF INVOLVED) YEAR, MAKE, TYPE, COLOR, LIC. NO.
NOTIFICATIONS (PERSON & DIVISION)
CONNECTED REPORTS (TYPE & DR #)
DO NOT REPEAT ABOVE INFO BUT CLARIFY

**MO** (IF LONG FORM, LIST UNIQUE ACTIONS. IF SHORT FORM, DESCRIBE SUSPECT'S ACTIONS IN BRIEF PHRASES, INCLUDING WEAPON USED. DO NOT REPEAT ABOVE INFO BUT CLARIFY AS NECESSARY. IF ANY OF THE MISSING ITEMS ARE POTENTIALLY IDENTIFIABLE, ITEMIZE AND DESCRIBE ALL ITEMS MISSING IN THIS INCIDENT IN THE NARRATIVE.)
UNK SUSPS ENTERED LOC VIA FRONT DOOR & REMOVED
VICT'S PROP AND LEFT LOC VIA POE

MANDATORY DAISY'S RIGHTS CARD PROVIDED TO THE VICTIM ☒
MOTIVATED BY HATRED/PREJUDICE ☐
DOMESTIC VIOLENCE ☐

**REPORTING EMPLOYEE(S)**
INITIALS, LAST NAME   SERIAL NO.   DIV/DETAIL
DIAZ, M   39967   077/780
MCBRIDE   077/7X58

PERSON REPORTING

SIGNATURE

REVIEWED BY (NAME)

NOTE: IF SHORT FORM AND THEY ARE NOT THE SAME, ENTER THE INFORMATION IN INVOLVED PERSONS SECTION.

---

**THIS REPORT DOES NOT CONSTITUTE VALID IDENTIFICATION**

KEEP THIS REPORT FOR REFERENCE. INSTRUCCIONES EN ESPANOL AL REVERSO.

*Your case will be assigned to a detective for follow-up investigation based upon specific facts obtained during the initial investigation. Studies have shown that the presence of these facts can predict whether a detailed follow-up investigation would likely result in the arrest and prosecution of the suspect(s) or the recovery of property, in a manner that is cost-effective to you, the taxpayer. Significant decreases in personnel have made it impossible for detectives to personally discuss each and every case with all crime victims. A detective will not routinely contact you, unless the detective requires additional information.*

TO REPORT ADDITIONAL INFORMATION: If you wish to provide specific facts to provide which might assist in the investigation of your case, please contact the detective Monday through Friday, between 8:00 A.M. and 9:30 A.M., or between 2:30 P.M. and 4:00 P.M. at telephone number (213) 473-0476. If the detective is not available when you call, please leave a message and include the telephone number where you can be reached.

COPY OF REPORT: If you wish to purchase a copy of the complete report, phone (213) 486-8130 to obtain the purchase price. Send a check or money order payable to the Los Angeles Police Department to Records and Identification Division, Box 30158, Los Angeles, CA 90030. Include a copy of this report or the following information with your request: 1) Name and address of victims; 2) Type of report and DR number (if listed above); 3) Date and location of occurrence. NOTE: Requests not accompanied by proper payment will not be processed.

DR NUMBER: If not entered on this form, the DR number may be obtained by writing to Records and Identification Division and giving the information needed to obtain a copy of the report (see above paragraph). Specify that you only want the DR number. It will be forwarded without delay. There is no charge for this service.

CREDIT CARDS/CHECKS: Immediately notify concerned credit corporation or banks to avoid possibility of being liable for someone else using your stolen or lost credit card or check.

HOW YOU CAN HELP THE INVESTIGATION OF YOUR CASE:
* Keep this memo for reference.
* If stolen items have serial numbers not available at time of report, attempt to locate them and phone them to the detective at the listed number.
* If you discover additional losses, complete and mail in the Supplemental Property Loss form given to you by the reporting employee.
* Promptly report recovery of property.
* Promptly report additional information such as a neighbor informing you of suspicious activity at time crime occurred.

VICTIM-WITNESS ASSISTANCE PROGRAM: The Los Angeles City and County Victim-Witness Assistance Program (VWAP) can help to determine if you qualify for Victim of Violent Crime compensation. If you qualify, they will assist with filling your claim application. If you are a victim or a witness to a crime and will be going to court, they will explain the court procedures to you. Their staff may also assist you with other problems created by the crime.

To find the program location nearest to you, call the Victim-Witness Assistance Program at the Los Angeles City Attorney's Office (213) 485-6976, or the Los Angeles County District Attorney's Office (800) 380-3811.

VICTIMS OF VIOLENT CRIME COMPENSATION: Refer to paragraph at bottom of reverse side.

www.LAPDOnline.org
www.joinLAPD.com

Exhibit 1413 - 0144

# ALLIEDUNIVERSAL
## SECURITY SERVICES

# INCIDENT REPORT

| CRIMINAL | OPERATIONS | SERVICES |
|---|---|---|
| | | |

TYPE OF INCIDENT: _____

**CRIMINAL**
_____ ASSAULT
_____ ROBBERY/HOLD UP
✓ BURGLARY
_____ HARASSMENT
_____ SEX OFFENSE
_____ STOLEN VEHICLE
✓ THEFT
_____ VANDALISM
_____ UNDERAGE DRINKING
_____ NARCOTICS (use/possession)
_____ DISTURBANCE

**OPERATIONS**
_____ ALARM
_____ FIRE
_____ OPERATIONS EMERGENCY
_____ PERSONAL ACCIDENT
_____ AUTO ACCIDENT
_____ BOMB THREAT
_____ UNSECURED PROPERTY    OTHER _____
_____ SMOKE/ODOR INVEST.
_____ SAFETY HAZARD

**SERVICES**
_____ MEDICAL EMERG.
_____ LOST/FOUND
_____ PROPERTY
_____ ASSIST OTHER
_____ DEPARTMENTS

DATE OF INCIDENT: 4/27/18 2:30 Pm - 4/30/18 8:30 Am (A.M.) TIME OF INCIDENT: __/__/__ (P.M.)

DATE OF INCIDENT REPORTED: 4/30/18 TIME INCIDENT REPORTED: 10 Am (A.M.) (P.M.)

COMPLAINANT/PERSON REPORTING:

NAME: Amir Jacoby AGE: 40 SEX: M (M) ___ (F) PHONE# 310-400-4699 _____ HOME

ADDRESS/CITY/STATE/ZIP: 1100 / 6380 Wilshire Blvd, Suite 1100 _____ WORK
Los Angeles, CA 90048

IS REPORTING PARTY INVOLVED IN INCIDENT? Yes (YES) _____ (NO)

IF NO DESCRIBE THE RELATIONSHIP OF REPORTING PARTY (witness, relative, etc.): _____

VICTIM (if other than reporting party):

NAME: _____ AGE: _____ SEX: _____ (M) _____ (F) PHONE# _____ HOME

ADDRESS/CITY/STATE/ZIP: _____ WORK

HOW WAS REPORT RECEIVED: _____ AT TIME OF INCIDENT ✓ DELAYED IN PERSON _____ DELAYED BY TELEPHONE

REASON FOR DELAY (if any): Out of the office over the weekend

WERE LOCAL AUTHORITIES NOTIFIED: Yes (YES) No (NO) BY WHOM: _____

POLICE: X FIRE: _____ AMBULANCE: _____ OFFICERS BADGE/VEHICLE # 41675  # 39967

TIME OF ARRIVAL: 1400 (2:00) (A.M.) (P.M.)

CONTRACT/LOCATION: _____

TYPE OF PREMISES: _____ MALL ✓ OFFICE BUILDING _____ BANK _____ CONSTRUCTION

_____ CONDOMINIUM _____ PARKING GARAGE _____ NURSING HOME _____ OTHER (describe)

EXACT LOCATION OF INCIDENT (give landmarks): Inside office and accounting room

WAS CLIENT NOTIFIED? _____ (YES) _____ (NO) WHOM NOTIFIED? _____ (name and title)

WAS ACCOUNT SUPERVISOR NOTIFIED? _____ (YES) _____ (NO)

AUS-1001-2
SKU-653716 REV.09/2016

**Exhibit 1413 - 0145**

POST DATED CHECKS: missing

| PAYOR | CHECK # | MATURITY DATE | AMOUNT | FOR LMV # |
|---|---|---|---|---|
| STONEWOOD | 1556 | 4/30/18 | 1,534.50 | STONE62 |
| X GRAPEVINE | 1065 | 5/01/18 | 823. - | GRAPEVINE-4 |
| X MESQUITE | 1759 | - do - | 802.21 | TE-20 |
| - do - | 1760 | 5/07/18 | 802.21 | TE-20 |
| X GRAPEVINE | 1066 | 5/08/18 | 823. - | GRAPEVINE-4 |
| - do - | 1067 | 5/15/18 | 823. - | - do - |
| X MESQUITE | 1761 | - do - | 802.21 | TE-20 |
| STONEWOOD | 1557 | - do - | 1,304.90 | STONE063 |

Files

chase checkbooks missing
1. PCI Trading
2. PCIV USA LLC
3. Lakewood
4. Culver
5. Americana
6. NHM
7. Tech
8. Ontario
9. Valley Fair
10. Oakridge
11. LA Group
12. Consultants

Debit/CC card missing 12 cards
Bank stamps

**Exhibit 1413 - 0146**