**BLANK ROME LLP**
Arash Beral (SBN 245219)
arash.beral@blankrome.com
Todd M. Malynn (SBN 181595)
todd.malynn@blankrome.com
Victor Sandoval (SBN 344461)
victor.sandoval@blankrome.com
2029 Century Park East | 6ᵗʰ Floor
Los Angeles, CA 90067
Telephone:  424.239.3400
Facsimile:  424.239.3434

Attorneys for Defendants PCJV USA, LLC,
PCI TRADING, LLC, GUY KOREN,
POTATO CORNER LA GROUP, LLC,
NKM CAPITAL GROUP, LLC, J & K
AMERICANA, LLC, J&K LAKEWOOD,
LLC, J&K OAKRIDGE, LLC, J&K
VALLEY FAIR, LLC, J & K ONTARIO,
LLC, J&K PC TRUCKS, LLC, GK
CAPITAL GROUP, LLC, HLK MILPITAS,
LLC, and GK CERRITOS, LLC

# UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| SHAKEY'S PIZZA ASIA VENTURES, INC, a Philippines corporation,<br><br>Plaintiff,<br><br>vs.<br><br>PCJV USA, LLC, a Delaware limited liability company; PCI TRADING , LLC, a Delaware limited liability company; GUY KOREN, an individual; POTATO CORNER LA GROUP, LLC, a California limited liability company; NKM CAPITAL GROUP, LLC, a California limited liability company; J & K AMERICANA, LLC, a California limited liability company; J&K LAKEWOOD, LLC, a California limited liability company; J&K VALLEY FAIR, LLC, a California limited liability company; J & K ONTARIO, LLC, a California limited liability company; HLK MILPITAS, LLC, a California, limited liability company; GK CERRITOS, LLC, a California, limited liability company;  J&K PC TRUCKS, LLC. | Case No. 2:24-CV-04546-SB(AGRx)<br><br>*Hon. Stanley Blumenfeld, Jr.*<br><br>**DEFENDANTS' ANSWER TO PLAINTIFF'S FIRST AMENDED COMPLAINT AND COUNTERCLAIM/THIRD-PARTY COMPLAINT**<br><br>Complaint Filed:  May 31, 2024<br>Trial Date:          August 4, 2025<br><br><br>**DEMAND FOR JURY TRIAL** |

160850.00001/152864609v.3

160850.00001/152864609v.2

1   a California limited liability company; and
  GK CAPITAL GROUP, LLC, a California
2   limited liability company and DOES 1
  through 100, inclusive,
3

4                          Defendants.

5   PCJV USA, LLC, a Delaware limited
  liability company; PCI TRADING LLC, a
6   Delaware limited liability company;
  POTATO CORNER LA GROUP LLC, a
7   California limited liability company; GK
  CAPITAL GROUP, LLC, a California
8   limited liability company; NKM CAPITAL
  GROUP LLC, a California limited liability
9   company; and GUY KOREN, an individual,

10                   Counter-Claimants

11       v.

12   SHAKEY'S PIZZA ASIA VENTURES,
  INC, a Philippines corporation,
13

14                   Counter-Defendant.

15

16   PCJV USA, LLC, a Delaware limited
  liability company; PCI TRADING LLC, a
17   Delaware limited liability company;
  POTATO CORNER LA GROUP LLC, a
18   California limited liability company; GK
  CAPITAL GROUP, LLC, a California
19   limited liability company; NKM CAPITAL
  GROUP LLC, a California limited liability
20   company; and GUY KOREN, an individual,

21                 Third Party Plaintiffs

22       v.

23   PC INTERNATIONAL PTE LTD., a
  Singapore business entity; SPAVI
24   INTERNATIONAL USA, INC., a California
  corporation; CINCO CORPORATION, a
25   Philippines corporation; and ROES 1 through
  10, inclusive,
26                 Third Party Defendants.

27

28

All defendants named in the First Amended Complaint ("FAC," Doc. No. 65) of Plaintiff SHAKEY'S PIZZA ASIA VENTURES, INC ("Plaintiff" or "SPAVI"), namely Defendants PCJV USA, LLC ("PCJV"), PCI TRADING, LLC ("PCIT"), GUY KOREN ("Koren"), POTATO CORNER LA GROUP, LLC, NKM CAPITAL GROUP, LLC, J & K AMERICANA, LLC, J&K LAKEWOOD, LLC, J&K OAKRIDGE, LLC, J&K VALLEY FAIR, LLC, J & K ONTARIO, LLC, J&K PC TRUCKS, LLC, GK CAPITAL GROUP, LLC, HLK MILPITAS, LLC, and GK CERRITOS, LLC (collectively, "Defendants"), by and through their counsel, hereby answer the FAC (each paragraph number below correlates to the corresponding paragraph number of the FAC) as follows below (and certain of those Defendants assert counterclaims and third party claims as further set forth herein):

1.      Defendants admit that Potato Corner is a non-United States-based, "international fast food outlet chain originating in the Philippines," and are informed and believe that Potato Corner has over 1,000 (predominantly outdoor) food cart stands/units in or around the Philippines. Defendants deny the remaining factual allegations and of those that constitute legal argument, opinion, conclusion, innuendo, insinuation, or based on an unfounded or misleading premise, no response is required.

2.      Defendants deny that it is undisputed that Plaintiff owns Potato Corner United States intellectual property rights. Defendants lack knowledge or information sufficient to form a belief about the truth or falsity of the allegations relating to Plaintiff's alleged 2022 transaction with Cinco Corporation and, on that basis, deny those allegations.

3.      Defendants deny the factual allegations and of those that constitute legal argument, opinion, conclusion, innuendo, insinuation, or based on an unfounded or misleading premise, no response is required.

/ / /

/ / /

3
**DEFENDANTS' ANSWER TO PLAINTIFF'S FIRST AMENDED COMPLAINT AND COUNTERCLAIM/THIRD-PARTY COMPLAINT**

4.    Defendants deny the factual allegations and of those that constitute legal argument, opinion, conclusion, innuendo, insinuation, or based on an unfounded or misleading premise, no response is required.

5.    Defendants admit that they made reasonable and good faith efforts to resolve all actual, potential, and threatened litigation, making extremely generous concessions, and entering a tolling agreement to enable any further negotiations through at least January 2, 2025. Defendants deny the remaining factual allegations and of those that constitute legal argument, opinion, conclusion, innuendo, insinuation, or based on an unfounded or misleading premise, no response is required.

6.    Defendants deny the factual allegations and of those that constitute legal argument, opinion, conclusion, innuendo, insinuation, or based on an unfounded or misleading premise, no response is required.

7.    Defendants deny the factual allegations and of those that constitute legal argument, opinion, conclusion, innuendo, insinuation, or based on an unfounded or misleading premise, no response is required.

8.    Defendants deny the factual allegations and of those that constitute legal argument, opinion, conclusion, innuendo, insinuation, or based on an unfounded or misleading premise, no response is required.

9.    Defendants deny the factual allegations and of those that constitute legal argument, opinion, conclusion, innuendo, insinuation, or based on an unfounded or misleading premise, no response is required.

10.    Defendants admit that "flavorings" are not Plaintiff's trade secrets. Defendants deny the remaining factual allegations and of those that constitute legal argument, opinion, conclusion, innuendo, insinuation, or based on an unfounded or misleading premise, no response is required.

/ / /

/ / /

11.     Defendants deny the factual allegations and of those that constitute legal argument, opinion, conclusion, innuendo, insinuation, or based on an unfounded or misleading premise, no response is required.

12.     Defendants admit that annual franchise disclosure documents have been filed with appropriate state agencies. Defendants deny the remaining factual allegations and of those that constitute legal argument, opinion, conclusion, innuendo, insinuation, or based on an unfounded or misleading premise, no response is required.

13.     Defendants deny the factual allegations and of those that constitute legal argument, opinion, conclusion, innuendo, insinuation, or based on an unfounded or misleading premise, no response is required.

14.     Defendants deny the factual allegations and of those that constitute legal argument, opinion, conclusion, innuendo, insinuation, or based on an unfounded or misleading premise, no response is required.

15.     Defendants deny the factual allegations and of those that constitute legal argument, opinion, conclusion, innuendo, insinuation, or based on an unfounded or misleading premise, no response is required.

16.     Defendants deny the factual allegations and of those that constitute legal argument, opinion, conclusion, innuendo, insinuation, or based on an unfounded or misleading premise, no response is required.

17.     Defendants admit that the NKM License Agreement exists. Defendants deny the remaining factual allegations and of those that constitute legal argument, opinion, conclusion, innuendo, insinuation, or based on an unfounded or misleading premise, no response is required.

18.     Defendants admit that the JVA and AJVA exist. Defendants deny the remaining factual allegations and of those that constitute legal argument, opinion, conclusion, innuendo, insinuation, or based on an unfounded or misleading premise, no response is required.

**DEFENDANTS' ANSWER TO PLAINTIFF'S FIRST AMENDED COMPLAINT AND COUNTERCLAIM/THIRD-PARTY COMPLAINT**

19.    Defendants admit that the MLA exists and that Koren's 2018 declaration truthfully asserts testimony concerning, among other things, its existence and reliance thereon. Defendants deny the remaining factual allegations and of those that constitute legal argument, opinion, conclusion, innuendo, insinuation, or based on an unfounded or misleading premise, no response is required.

20.    Defendants deny the factual allegations and of those that constitute legal argument, opinion, conclusion, innuendo, insinuation, or based on an unfounded or misleading premise, no response is required.

21.    Defendants lack knowledge or information sufficient to form a belief about the truth or falsity of the factual allegations and, on that basis, deny those allegations, and of those that constitute legal argument, opinion, conclusion, innuendo, insinuation, or based on an unfounded or misleading premise, no response is required.

22.    Defendants admit the factual allegations relating to the entity's citizenship, management, and ownership, and of those that constitute legal argument, opinion, conclusion, innuendo, insinuation, or based on an unfounded or misleading premise, no response is required.

23.    Defendants admit the factual allegations relating to the entity's citizenship, management, and ownership, and of those that constitute legal argument, opinion, conclusion, innuendo, insinuation, or based on an unfounded or misleading premise, no response is required.

24.    Defendants admit the factual allegations relating to the entity's citizenship, management, and ownership, and of those that constitute legal argument, opinion, conclusion, innuendo, insinuation, or based on an unfounded or misleading premise, no response is required.

25.    Defendants admit the factual allegations relating to the entity's citizenship, management, and ownership, and of those that constitute legal

argument, opinion, conclusion, innuendo, insinuation, or based on an unfounded or misleading premise, no response is required.

26.     Defendants admit the factual allegations relating to the entity's citizenship, management, and ownership, and of those that constitute legal argument, opinion, conclusion, innuendo, insinuation, or based on an unfounded or misleading premise, no response is required.

27.     Defendants admit the factual allegations relating to the entity's citizenship, management, and ownership, and of those that constitute legal argument, opinion, conclusion, innuendo, insinuation, or based on an unfounded or misleading premise, no response is required.

28.     Defendants admit the factual allegations relating to the entity's citizenship, management, and ownership, and of those that constitute legal argument, opinion, conclusion, innuendo, insinuation, or based on an unfounded or misleading premise, no response is required.

29.     Defendants admit the factual allegations relating to the entity's citizenship, management, and ownership, and of those that constitute legal argument, opinion, conclusion, innuendo, insinuation, or based on an unfounded or misleading premise, no response is required.

30.     Defendants admit the factual allegations relating to the entity's citizenship, management, and ownership, and of those that constitute legal argument, opinion, conclusion, innuendo, insinuation, or based on an unfounded or misleading premise, no response is required.

31.     Defendants admit the factual allegations relating to the entity's citizenship, management, and ownership, and of those that constitute legal argument, opinion, conclusion, innuendo, insinuation, or based on an unfounded or misleading premise, no response is required.

32.     Defendants admit the factual allegations relating to the entity's citizenship, management, and ownership, and of those that constitute legal

**DEFENDANTS' ANSWER TO PLAINTIFF'S FIRST AMENDED COMPLAINT AND COUNTERCLAIM/THIRD-PARTY COMPLAINT**

argument, opinion, conclusion, innuendo, insinuation, or based on an unfounded or misleading premise, no response is required.

33.    Defendants admit the factual allegations relating to the entity's citizenship, management, and ownership, and of those that constitute legal argument, opinion, conclusion, innuendo, insinuation, or based on an unfounded or misleading premise, no response is required.

34.    Defendants admit the factual allegations relating to the entity's citizenship, management, and ownership, and of those that constitute legal argument, opinion, conclusion, innuendo, insinuation, or based on an unfounded or misleading premise, no response is required.

35.    Defendants deny the factual allegations and of those that constitute legal argument, opinion, conclusion, innuendo, insinuation, or based on an unfounded or misleading premise, no response is required.

36.    Defendants deny the factual allegations and of those that constitute legal argument, opinion, conclusion, innuendo, insinuation, or based on an unfounded or misleading premise, no response is required.

37.    No allegations made; no response is required.

38.    Legal argument/conclusion/opinion; no response is required.

39.    Legal argument/conclusion/opinion; no response is required.

40.    Defendants lack knowledge or information sufficient to form a belief about the truth or falsity of the factual allegations with respect to Plaintiff's alleged citizenship and the alleged amount in controversy, and deny those factual allegations, and of those that constitute legal argument, conclusion, or opinion, no response is required.

41.    Legal argument/conclusion/opinion; no response is required.

42.    Legal argument/conclusion/opinion; no response is required.

43.    Defendants lack knowledge or information sufficient to form a belief about the truth or falsity of the factual allegations and, on that basis, deny those

**DEFENDANTS' ANSWER TO PLAINTIFF'S FIRST AMENDED COMPLAINT AND COUNTERCLAIM/THIRD-PARTY COMPLAINT**

1   allegations, and of those that constitute legal argument, opinion, conclusion,

2   innuendo, insinuation, or based on an unfounded or misleading premise, no response

3   is required.

4         44.    Defendants are informed and believe that Potato Corner began in or

5   about 1992 and has over 1,000, predominantly outdoor, food cart stands in or around

6   the Philippines. Defendants deny the remaining factual allegations and of those that

7   constitute legal argument, opinion, conclusion, innuendo, insinuation, or based on

8   an unfounded or misleading premise, no response is required.

9         45.    Defendants lack knowledge or information sufficient to form a belief

10   about the truth or falsity of the factual allegations and, on that basis, deny those

11   allegations, and of those that constitute legal argument, opinion, conclusion,

12   innuendo, insinuation, or based on an unfounded or misleading premise, no response

13   is required.

14         46.    Defendants lack knowledge or information sufficient to form a belief

15   about the truth or falsity of the factual allegations and, on that basis, deny those

16   allegations, and of those that constitute legal argument, opinion, conclusion,

17   innuendo, insinuation, or based on an unfounded or misleading premise, no response

18   is required.

19         47.    Defendants lack knowledge or information sufficient to form a belief

20   about the truth or falsity of the factual allegations and, on that basis, deny those

21   allegations, and of those that constitute legal argument, opinion, conclusion,

22   innuendo, insinuation, or based on an unfounded or misleading premise, no response

23   is required.

24         48.    Defendants lack knowledge or information sufficient to form a belief

25   about the truth or falsity of the factual allegations and, on that basis, deny those

26   allegations, and of those that constitute legal argument, opinion, conclusion,

27   innuendo, insinuation, or based on an unfounded or misleading premise, no response

28   is required.

**DEFENDANTS' ANSWER TO PLAINTIFF'S FIRST AMENDED COMPLAINT AND COUNTERCLAIM/THIRD-PARTY COMPLAINT**

49.     Defendants deny the factual allegations and of those that constitute legal argument, opinion, conclusion, innuendo, insinuation, or based on an unfounded or misleading premise, no response is required.

50.     Defendants lack knowledge or information sufficient to form a belief about the truth or falsity of the factual allegations and, on that basis, deny those allegations, and of those that constitute legal argument, opinion, conclusion, innuendo, insinuation, or based on an unfounded or misleading premise, no response is required.

51.     Defendants lack knowledge or information sufficient to form a belief about the truth or falsity of the factual allegations and, on that basis, deny those allegations, and of those that constitute legal argument, opinion, conclusion, innuendo, insinuation, or based on an unfounded or misleading premise, no response is required.

52.     Defendants admit that Cinco Corporation and its owners (the "Cinco Group") alongside their agents explored a United States expansion through Koren and others in or about the 2008-2009 time period, and that the parties place a great deal of trust in each other.

53.     Defendants admit that the NKM License Agreement comprises the first written agreement of the parties, as later modified. Defendants admit that Nemanim and Jacoby are not parties to this action and no longer maintain any ownership interests in any of the Defendants. Defendants deny the remaining factual allegations and of those that constitute legal argument, opinion, conclusion, innuendo, insinuation, or based on an unfounded or misleading premise, no response is required.

54.     Defendants deny the factual allegations and of those that constitute legal argument, opinion, conclusion, innuendo, insinuation, or based on an unfounded or misleading premise, no response is required.

**DEFENDANTS' ANSWER TO PLAINTIFF'S FIRST AMENDED COMPLAINT AND COUNTERCLAIM/THIRD-PARTY COMPLAINT**

55.     Defendants admit that before the first domestic Potato Corner outlet opened, the Cinco Group alongside agents and attorneys approached Koren in or about 2010 to transform the relationship into a joint venture franchise relationship. Defendants deny the remaining factual allegations and of those that constitute legal argument, opinion, conclusion, innuendo, insinuation, or based on an unfounded or misleading premise, no response is required.

56.     Defendants admit that PCJV was formed to serve as the franchisor of Potato Corner outlets in the United States (and Israel), and that the LA Group maintained a right to 40% of PCJV's distributions alongside management rights, board seats, and voting rights. Defendants deny the remaining factual allegations and of those that constitute legal argument, opinion, conclusion, innuendo, insinuation, or based on an unfounded or misleading premise, no response is required.

57.     Defendants admit that the JVA and AJVA were negotiated between the Cinco Group and LA Group, and that the LA Group relied on the Cinco Group and DLA Piper LLP to comply with all regulatory requirements. Defendants admit that PCI was added to the AJVA for purposes unrelated to the franchisor operations. Defendants deny the remaining factual allegations and of those that constitute legal argument, opinion, conclusion, innuendo, insinuation, or based on an unfounded or misleading premise, no response is required.

58.     Defendants deny the factual allegations and of those that constitute legal argument, opinion, conclusion, innuendo, insinuation, or based on an unfounded or misleading premise, no response is required.

59.     Defendants deny the factual allegations and of those that constitute legal argument, opinion, conclusion, innuendo, insinuation, or based on an unfounded or misleading premise, no response is required.

/ / /

/ / /

60.     Defendants deny the factual allegations and of those that constitute legal argument, opinion, conclusion, innuendo, insinuation, or based on an unfounded or misleading premise, no response is required.

61.     Defendants admit that Cinco Corporation (not Cinco Group) filed the state court action on April 10, 2018. Defendants deny the remaining factual allegations and of those that constitute legal argument, opinion, conclusion, innuendo, insinuation, or based on an unfounded or misleading premise, no response is required.

62.     Defendants admit that Koren filed a declaration on June 13, 2018 alongside Exhibit "B" to that declaration correctly attaching the very written agreement that the relevant parties had entered, relied upon, and referenced at prior oral argument sessions with the state court. Defendants deny the remaining factual allegations, and of those that constitute legal argument, opinion, conclusion, innuendo, insinuation, or based on an unfounded or misleading premise, no response is required.

63.     Defendants admit that Koren's contention that the MLA, as modified, was and is an enforceable agreement was and is true. Defendants deny that Koren ever testified that the MLA was "executed" by Cinco (Defendants are without information or belief sufficient to admit or deny whether Cinco signed it), but that it was enforceable and relied upon by Defendants (including PCJV, the Cinco Group's own majority-controlled company who made annual representations in the FDDs regarding the efficacy of the MLA, among other things). Defendants deny the remaining factual allegations and of those that constitute legal argument, opinion, conclusion, innuendo, insinuation, or based on an unfounded or misleading premise, no response is required.

64.     Defendants admit that Koren's contention that the MLA, as modified, was and is an enforceable agreement was and is true. Defendants deny that Koren ever testified that the MLA was "executed" by Cinco (Defendants are without

information or belief sufficient to admit or deny whether Cinco signed it), but that it was enforceable and relied upon by Defendants (including PCJV, the Cinco Group's own majority-controlled company who made annual representations in the FDDs regarding the efficacy of the MLA, among other things). Defendants deny the remaining factual allegations and of those that constitute legal argument, opinion, conclusion, innuendo, insinuation, or based on an unfounded or misleading premise, no response is required.

65.    Defendants deny the factual allegations and of those that constitute legal argument, opinion, conclusion, innuendo, insinuation, or based on an unfounded or misleading premise, no response is required.

66.    Defendants deny the factual allegations and of those that constitute legal argument, opinion, conclusion, innuendo, insinuation, or based on an unfounded or misleading premise, no response is required.

67.    Defendants admit that they opened the first Potato Corner USA franchised unit in the United States. Defendants deny the remaining factual allegations and of those that constitute legal argument, opinion, conclusion, innuendo, insinuation, or based on an unfounded or misleading premise, no response is required.

68.    Defendants admit that Koren became PCJV's president, reported to a managing board of seven members composed of members of the Cinco Group (alongside the Cinco Group's attorneys and agents), and LA Group. Defendants deny the remaining factual allegations and of those that constitute legal argument, opinion, conclusion, innuendo, insinuation, or based on an unfounded or misleading premise, no response is required.

69.    Defendants deny the factual allegations and of those that constitute legal argument, opinion, conclusion, innuendo, insinuation, or based on an unfounded or misleading premise, no response is required.

/ / /

70.    Defendants admit that by virtue of a transaction whereby the Cinco Group transferred 55% of their interests to a third-party group (the "Hernandez Group") without the LA Group's consent, the LA Group and Koren asserted their claim that the Cinco Group had breached the prior consent provision in PCJV's governing documents alongside, also, the right of first refusal provision. Defendants deny the remaining factual allegations and of those that constitute legal argument, opinion, conclusion, innuendo, insinuation, or based on an unfounded or misleading premise, no response is required.

71.    Defendants admit that Cinco Corporation alone filed the state court action on April 10, 2018. Defendants deny the remaining factual allegations and of those that constitute legal argument, opinion, conclusion, innuendo, insinuation, or based on an unfounded or misleading premise, no response is required.

72.    Defendants admit that the state court made multiple TRO rulings on May 11, 2018, including the one alleged.

73.    Defendants admit that on or about June 19, 2018, the state court granted Koren preliminary injunctive relief. Defendants deny the remaining factual allegations and of those that constitute legal argument, opinion, conclusion, innuendo, insinuation, or based on an unfounded or misleading premise, no response is required.

74.    Defendants admit that the Hernandez Group (not Cinco Group) attempted to notice a board meeting and that Koren allowed a meeting with the Cinco Group (not Hernandez Group), but they declined. Defendants deny the remaining factual allegations and of those that constitute legal argument, opinion, conclusion, innuendo, insinuation, or based on an unfounded or misleading premise, no response is required.

75.    Defendants admit that Potato Corner International, Inc. ("PC International," not the "Cinco Group" or even Cinco) filed a motion for preliminary injunction attempting, essentially, to reverse the June 2018 injunction ruling, which

1  motion was correctly denied. Defendants deny the remaining factual allegations and

2  of those that constitute legal argument, opinion, conclusion, innuendo, insinuation,

3  or based on an unfounded or misleading premise, no response is required.

4      76.    Defendants deny the factual allegations and of those that constitute

5  legal argument, opinion, conclusion, innuendo, insinuation, or based on an

6  unfounded or misleading premise, no response is required.

7      77.    Defendants admit that a settlement agreement made effective May 28,

8  2024 was entered among relevant "Koren Parties" and "Cinco Parties," which

9  settlement documents comprise a settlement agreement and membership interest

10  purchase agreement whereby the Cinco Parties, inclusive of Cinco Corporation and

11  PC International, among other things, transferred all their rights and interests in

12  PCJV and PCIT to Koren's entity, GK Capital Group. Defendants admit that the

13  state court action was dismissed with prejudice on May 28, 2024 during a hearing

14  with the state court judge with Plaintiff's and the Cinco Parties' counsel in

15  attendance. Defendants deny the remaining factual allegations and of those that

16  constitute legal argument, opinion, conclusion, innuendo, insinuation, or based on

17  an unfounded or misleading premise, no response is required.

18      78.    Defendants lack knowledge or information sufficient to form a belief

19  about the truth or falsity of the factual allegations and, on that basis, deny those

20  allegations, and of those that constitute legal argument, opinion, conclusion,

21  innuendo, insinuation, or based on an unfounded or misleading premise, no response

22  is required.

23      79.    Defendants admit that they made reasonable and good faith efforts to

24  resolve all actual, potential, and threatened litigation, making extremely generous

25  concessions, and entering a tolling agreement to enable any further negotiations

26  through at least January 2, 2025. Defendants deny the remaining factual allegations

27  and of those that constitute legal argument, opinion, conclusion, innuendo,

28

insinuation, or based on an unfounded or misleading premise, no response is required.

80.     Defendants admit that they made reasonable and good faith efforts to resolve all actual, potential, and threatened litigation, making extremely generous concessions, and entering a tolling agreement to enable any further negotiations through at least January 2, 2025. Defendants deny the remaining factual allegations and of those that constitute legal argument, opinion, conclusion, innuendo, insinuation, or based on an unfounded or misleading premise, no response is required.

81.     Defendants admit that they made reasonable and good faith efforts to resolve all actual, potential, and threatened litigation, making extremely generous concessions, and entering a tolling agreement to enable any further negotiations through at least January 2, 2025. Defendants deny the remaining factual allegations and of those that constitute legal argument, opinion, conclusion, innuendo, insinuation, or based on an unfounded or misleading premise, no response is required.

82.     Defendants admit that they made reasonable and good faith efforts to resolve all actual, potential, and threatened litigation, making extremely generous concessions, and entering a tolling agreement to enable any further negotiations through at least January 2, 2025. Defendants deny the remaining factual allegations and of those that constitute legal argument, opinion, conclusion, innuendo, insinuation, or based on an unfounded or misleading premise, no response is required.

83.     Defendants admit that they made reasonable and good faith efforts to resolve all actual, potential, and threatened litigation, making extremely generous concessions, and entering a tolling agreement to enable any further negotiations through at least January 2, 2025. Defendants' deny the remaining factual allegations and of those that constitute legal argument, opinion, conclusion, innuendo,

1  insinuation, or based on an unfounded or misleading premise, no response is

2  required.

3       84.     Other than sending an inconspicuous transmission to Koren on May 31,

4  2024, side-stepping Defendants' counsel, which is admitted, Defendants lack

5  knowledge or information sufficient to form a belief about the truth or falsity of the

6  factual allegations and, on that basis, deny those allegations, and of those that

7  constitute legal argument, opinion, conclusion, innuendo, insinuation, or based on

8  an unfounded or misleading premise, no response is required.

9       85.     Other than continuing to operate as they had for 15 years until

10  preliminary enjoined, which is admitted, Defendants deny the remaining factual

11  allegations and of those that constitute legal argument, opinion, conclusion,

12  innuendo, insinuation, or based on an unfounded or misleading premise, no response

13  is required.

14       86.     Defendants deny the factual allegations and of those that constitute

15  legal argument, opinion, conclusion, innuendo, insinuation, or based on an

16  unfounded or misleading premise, no response is required.

17       87.     Defendants admit that Plaintiff has interfered with PCJV's and PCIT's

18  relationships and contracts and induced the breach of several agreements, among

19  other things. Defendants deny the remaining factual allegations and of those that

20  constitute legal argument, opinion, conclusion, innuendo, insinuation, or based on

21  an unfounded or misleading premise, no response is required.

22       88.     Defendants admit that "flavorings" are not Plaintiff's trade secrets.

23  Defendants deny the remaining factual allegations and of those that constitute legal

24  argument, opinion, conclusion, innuendo, insinuation, or based on an unfounded or

25  misleading premise, no response is required.

26       89.     Defendants deny the factual allegations and of those that constitute

27  legal argument, opinion, conclusion, innuendo, insinuation, or based on an

28  unfounded or misleading premise, no response is required.

90.     Defendants admit that "flavorings" are not Plaintiff's trade secrets. Defendants deny the remaining factual allegations and of those that constitute legal argument, opinion, conclusion, innuendo, insinuation, or based on an unfounded or misleading premise, no response is required.

91.     Defendants deny the factual allegations and of those that constitute legal argument, opinion, conclusion, innuendo, insinuation, or based on an unfounded or misleading premise, no response is required.

92.     Defendants deny the factual allegations and of those that constitute legal argument, opinion, conclusion, innuendo, insinuation, or based on an unfounded or misleading premise, no response is required.

93.     Defendants re-allege and incorporate by reference each of their responses contained in the preceding paragraphs as if fully set forth herein.

94.     Defendants deny all charging allegations, and of those that constitute legal argument, opinion, conclusion, innuendo, insinuation, or based on an unfounded or misleading premise, no response is required.

95.     Defendants deny all charging allegations, and of those that constitute legal argument, opinion, conclusion, innuendo, insinuation, or based on an unfounded or misleading premise, no response is required.

96.     Defendants deny all charging allegations, and of those that constitute legal argument, opinion, conclusion, innuendo, insinuation, or based on an unfounded or misleading premise, no response is required.

97.     Defendants deny all charging allegations, and of those that constitute legal argument, opinion, conclusion, innuendo, insinuation, or based on an unfounded or misleading premise, no response is required.

98.     Defendants deny all charging allegations, and of those that constitute legal argument, opinion, conclusion, innuendo, insinuation, or based on an unfounded or misleading premise, no response is required.

/ / /

99.   Defendants deny all charging allegations, and of those that constitute legal argument, opinion, conclusion, innuendo, insinuation, or based on an unfounded or misleading premise, no response is required.

100.   Defendants deny all charging allegations, and of those that constitute legal argument, opinion, conclusion, innuendo, insinuation, or based on an unfounded or misleading premise, no response is required.

101.   Defendants deny all charging allegations, and of those that constitute legal argument, opinion, conclusion, innuendo, insinuation, or based on an unfounded or misleading premise, no response is required.

102.   Defendants deny all charging allegations, and of those that constitute legal argument, opinion, conclusion, innuendo, insinuation, or based on an unfounded or misleading premise, no response is required.

103.   Defendants re-allege and incorporate by reference each of their responses contained in the preceding paragraphs as if fully set forth herein.

104.   Defendants deny all charging allegations, and of those that constitute legal argument, opinion, conclusion, innuendo, insinuation, or based on an unfounded or misleading premise, no response is required.

105.   Defendants deny all charging allegations, and of those that constitute legal argument, opinion, conclusion, innuendo, insinuation, or based on an unfounded or misleading premise, no response is required.

106.   Defendants deny all charging allegations, and of those that constitute legal argument, opinion, conclusion, innuendo, insinuation, or based on an unfounded or misleading premise, no response is required.

107.   Defendants deny all charging allegations, and of those that constitute legal argument, opinion, conclusion, innuendo, insinuation, or based on an unfounded or misleading premise, no response is required.

/ / /

/ / /

108. Defendants deny all charging allegations, and of those that constitute legal argument, opinion, conclusion, innuendo, insinuation, or based on an unfounded or misleading premise, no response is required.

109. Defendants deny all charging allegations, and of those that constitute legal argument, opinion, conclusion, innuendo, insinuation, or based on an unfounded or misleading premise, no response is required.

110. Defendants deny all charging allegations, and of those that constitute legal argument, opinion, conclusion, innuendo, insinuation, or based on an unfounded or misleading premise, no response is required.

111. Defendants deny all charging allegations, and of those that constitute legal argument, opinion, conclusion, innuendo, insinuation, or based on an unfounded or misleading premise, no response is required.

112. Defendants deny all charging allegations, and of those that constitute legal argument, opinion, conclusion, innuendo, insinuation, or based on an unfounded or misleading premise, no response is required.

113. Defendants deny all charging allegations, and of those that constitute legal argument, opinion, conclusion, innuendo, insinuation, or based on an unfounded or misleading premise, no response is required.

114. Defendants re-allege and incorporate by reference each of their responses contained in the preceding paragraphs as if fully set forth herein.

115. Defendants deny all charging allegations, and of those that constitute legal argument, opinion, conclusion, innuendo, insinuation, or based on an unfounded or misleading premise, no response is required.

116. Defendants deny all charging allegations, and of those that constitute legal argument, opinion, conclusion, innuendo, insinuation, or based on an unfounded or misleading premise, no response is required.

/ / /

/ / /

160850.00001/152864609v.3

20

**DEFENDANTS' ANSWER TO PLAINTIFF'S FIRST AMENDED COMPLAINT AND COUNTERCLAIM/THIRD-PARTY COMPLAINT**

160850.00001/152864609v.2

117.    Defendants deny all charging allegations, and of those that constitute legal argument, opinion, conclusion, innuendo, insinuation, or based on an unfounded or misleading premise, no response is required.

118.    Defendants deny all charging allegations, and of those that constitute legal argument, opinion, conclusion, innuendo, insinuation, or based on an unfounded or misleading premise, no response is required.

119.    Defendants deny all charging allegations, and of those that constitute legal argument, opinion, conclusion, innuendo, insinuation, or based on an unfounded or misleading premise, no response is required.

120.    Defendants deny all charging allegations, and of those that constitute legal argument, opinion, conclusion, innuendo, insinuation, or based on an unfounded or misleading premise, no response is required.

121.    Defendants deny all charging allegations, and of those that constitute legal argument, opinion, conclusion, innuendo, insinuation, or based on an unfounded or misleading premise, no response is required.

122.    Defendants deny all charging allegations, and of those that constitute legal argument, opinion, conclusion, innuendo, insinuation, or based on an unfounded or misleading premise, no response is required.

123.    Defendants deny all charging allegations, and of those that constitute legal argument, opinion, conclusion, innuendo, insinuation, or based on an unfounded or misleading premise, no response is required.

124.    Defendants deny all charging allegations, and of those that constitute legal argument, opinion, conclusion, innuendo, insinuation, or based on an unfounded or misleading premise, no response is required.

125.    Defendants re-allege and incorporate by reference each of their responses contained in the preceding paragraphs as if fully set forth herein.

/ / /

/ / /

126.   Defendants deny all charging allegations, and of those that constitute legal argument, opinion, conclusion, innuendo, insinuation, or based on an unfounded or misleading premise, no response is required.

127.   Defendants deny all charging allegations, and of those that constitute legal argument, opinion, conclusion, innuendo, insinuation, or based on an unfounded or misleading premise, no response is required.

128.   Defendants deny all charging allegations, and of those that constitute legal argument, opinion, conclusion, innuendo, insinuation, or based on an unfounded or misleading premise, no response is required.

129.   Defendants deny all charging allegations, and of those that constitute legal argument, opinion, conclusion, innuendo, insinuation, or based on an unfounded or misleading premise, no response is required.

130.   Defendants deny all charging allegations, and of those that constitute legal argument, opinion, conclusion, innuendo, insinuation, or based on an unfounded or misleading premise, no response is required.

131.   Defendants deny all charging allegations, and of those that constitute legal argument, opinion, conclusion, innuendo, insinuation, or based on an unfounded or misleading premise, no response is required.

132.   Defendants deny all charging allegations, and of those that constitute legal argument, opinion, conclusion, innuendo, insinuation, or based on an unfounded or misleading premise, no response is required.

133.   Defendants deny all charging allegations, and of those that constitute legal argument, opinion, conclusion, innuendo, insinuation, or based on an unfounded or misleading premise, no response is required.

134.   Defendants deny all charging allegations, and of those that constitute legal argument, opinion, conclusion, innuendo, insinuation, or based on an unfounded or misleading premise, no response is required.

/ / /

DEFENDANTS' ANSWER TO PLAINTIFF'S FIRST AMENDED COMPLAINT AND COUNTERCLAIM/THIRD-PARTY COMPLAINT

135.    Defendants re-allege and incorporate by reference each of their responses contained in the preceding paragraphs as if fully set forth herein.

136.    Defendants deny all charging allegations, and of those that constitute legal argument, opinion, conclusion, innuendo, insinuation, or based on an unfounded or misleading premise, no response is required.

137.    Defendants deny all charging allegations, and of those that constitute legal argument, opinion, conclusion, innuendo, insinuation, or based on an unfounded or misleading premise, no response is required.

138.    Defendants deny all charging allegations, and of those that constitute legal argument, opinion, conclusion, innuendo, insinuation, or based on an unfounded or misleading premise, no response is required.

139.    Defendants deny all charging allegations, and of those that constitute legal argument, opinion, conclusion, innuendo, insinuation, or based on an unfounded or misleading premise, no response is required.

140.    Defendants deny all charging allegations, and of those that constitute legal argument, opinion, conclusion, innuendo, insinuation, or based on an unfounded or misleading premise, no response is required.

141.    Defendants deny all charging allegations, and of those that constitute legal argument, opinion, conclusion, innuendo, insinuation, or based on an unfounded or misleading premise, no response is required.

142.    Defendants deny all charging allegations, and of those that constitute legal argument, opinion, conclusion, innuendo, insinuation, or based on an unfounded or misleading premise, no response is required.

143.    Defendants deny all charging allegations, and of those that constitute legal argument, opinion, conclusion, innuendo, insinuation, or based on an unfounded or misleading premise, no response is required.

/ / /

/ / /

144. Defendants deny all charging allegations, and of those that constitute legal argument, opinion, conclusion, innuendo, insinuation, or based on an unfounded or misleading premise, no response is required.

145. Defendants deny all charging allegations, and of those that constitute legal argument, opinion, conclusion, innuendo, insinuation, or based on an unfounded or misleading premise, no response is required.

146. Defendants deny all charging allegations, and of those that constitute legal argument, opinion, conclusion, innuendo, insinuation, or based on an unfounded or misleading premise, no response is required.

147. Defendants re-allege and incorporate by reference each of their responses contained in the preceding paragraphs as if fully set forth herein.

148. Defendants deny all charging allegations, and of those that constitute legal argument, opinion, conclusion, innuendo, insinuation, or based on an unfounded or misleading premise, no response is required.

149. Defendants deny all charging allegations, and of those that constitute legal argument, opinion, conclusion, innuendo, insinuation, or based on an unfounded or misleading premise, no response is required.

150. Defendants deny all charging allegations, and of those that constitute legal argument, opinion, conclusion, innuendo, insinuation, or based on an unfounded or misleading premise, no response is required.

151. Defendants deny all charging allegations, and of those that constitute legal argument, opinion, conclusion, innuendo, insinuation, or based on an unfounded or misleading premise, no response is required.

152. Defendants deny all charging allegations, and of those that constitute legal argument, opinion, conclusion, innuendo, insinuation, or based on an unfounded or misleading premise, no response is required.

/ / /

/ / /

**DEFENDANTS' ANSWER TO PLAINTIFF'S FIRST AMENDED COMPLAINT AND COUNTERCLAIM/THIRD-PARTY COMPLAINT**

153.   Defendants deny all charging allegations, and of those that constitute legal argument, opinion, conclusion, innuendo, insinuation, or based on an unfounded or misleading premise, no response is required.

154.   Defendants deny all charging allegations, and of those that constitute legal argument, opinion, conclusion, innuendo, insinuation, or based on an unfounded or misleading premise, no response is required.

155.   Defendants deny all charging allegations, and of those that constitute legal argument, opinion, conclusion, innuendo, insinuation, or based on an unfounded or misleading premise, no response is required.

156.   Defendants re-allege and incorporate by reference each of their responses contained in the preceding paragraphs as if fully set forth herein.

157.   Defendants deny all charging allegations, and of those that constitute legal argument, opinion, conclusion, innuendo, insinuation, or based on an unfounded or misleading premise, no response is required.

158.   Defendants deny all charging allegations, and of those that constitute legal argument, opinion, conclusion, innuendo, insinuation, or based on an unfounded or misleading premise, no response is required.

159.   Defendants deny all charging allegations, and of those that constitute legal argument, opinion, conclusion, innuendo, insinuation, or based on an unfounded or misleading premise, no response is required.

160.   Defendants deny all charging allegations, and of those that constitute legal argument, opinion, conclusion, innuendo, insinuation, or based on an unfounded or misleading premise, no response is required.

161.   Defendants deny all charging allegations, and of those that constitute legal argument, opinion, conclusion, innuendo, insinuation, or based on an unfounded or misleading premise, no response is required.

162.   Defendants re-allege and incorporate by reference each of their responses contained in the preceding paragraphs as if fully set forth herein.

DEFENDANTS' ANSWER TO PLAINTIFF'S FIRST AMENDED COMPLAINT AND COUNTERCLAIM/THIRD-PARTY COMPLAINT

163.    Defendants admit that a dispute and controversy exists. Defendants deny the remaining charging allegations, and of those that constitute legal argument, opinion, conclusion, innuendo, insinuation, or based on an unfounded or misleading premise, no response is required.

164.    Defendants deny all charging allegations, and of those that constitute legal argument, opinion, conclusion, innuendo, insinuation, or based on an unfounded or misleading premise, no response is required.

165.    Defendants deny all charging allegations, and of those that constitute legal argument, opinion, conclusion, innuendo, insinuation, or based on an unfounded or misleading premise, no response is required.

166.    Defendants re-allege and incorporate by reference each of their responses contained in the preceding paragraphs as if fully set forth herein.

167.    Defendants deny all charging allegations, and of those that constitute legal argument, opinion, conclusion, innuendo, insinuation, or based on an unfounded or misleading premise, no response is required.

168.    Defendants deny all charging allegations, and of those that constitute legal argument, opinion, conclusion, innuendo, insinuation, or based on an unfounded or misleading premise, no response is required.

169.    Defendants deny all charging allegations, and of those that constitute legal argument, opinion, conclusion, innuendo, insinuation, or based on an unfounded or misleading premise, no response is required.

170.    Defendants re-allege and incorporate by reference each of their responses contained in the preceding paragraphs as if fully set forth herein.

171.    Defendants deny all charging allegations, and of those that constitute legal argument, opinion, conclusion, innuendo, insinuation, or based on an unfounded or misleading premise, no response is required.

/ / /

/ / /

172.    Defendants deny all charging allegations, and of those that constitute legal argument, opinion, conclusion, innuendo, insinuation, or based on an unfounded or misleading premise, no response is required.

173.    Defendants deny all charging allegations, and of those that constitute legal argument, opinion, conclusion, innuendo, insinuation, or based on an unfounded or misleading premise, no response is required.

174.    Defendants deny all charging allegations, and of those that constitute legal argument, opinion, conclusion, innuendo, insinuation, or based on an unfounded or misleading premise, no response is required.

175.    Defendants deny all charging allegations, and of those that constitute legal argument, opinion, conclusion, innuendo, insinuation, or based on an unfounded or misleading premise, no response is required.

176.    Defendants deny all charging allegations, and of those that constitute legal argument, opinion, conclusion, innuendo, insinuation, or based on an unfounded or misleading premise, no response is required.

177.    Dismissed per Order on Defendants' Motion to Dismiss, Doc. No. 99. No response required.

178.    Dismissed per Order on Defendants' Motion to Dismiss, Doc. No. 99. No response required.

179.    Dismissed per Order on Defendants' Motion to Dismiss, Doc. No. 99. No response required.

180.    Dismissed per Order on Defendants' Motion to Dismiss, Doc. No. 99. No response required.

181.    Dismissed per Order on Defendants' Motion to Dismiss, Doc. No. 99. No response required.

182.    Dismissed per Order on Defendants' Motion to Dismiss, Doc. No. 99. No response required.

/ / /

# **PRAYER FOR RELIEF**

Defendants deny that Plaintiff is entitled to any of the relief sought in its prayer for relief.

## **AFFIRMATIVE DEFENSES**

Pursuant to Federal Rules of Civil Procedure, Rule 8(c), Defendants set forth the following affirmative defenses:

### **FIRST AFFIRMATIVE DEFENSE**

1.    Plaintiff's claims, in whole or in part, fail to state a claim upon which relief may be granted.

### **SECOND AFFIRMATIVE DEFENSE**

2.    Plaintiff's claims are barred, in whole or in part, by the Full Faith and Credit Clause of the U.S. Constitution, as implemented by the 1790 Act (28 U.S.C. § 1738) insofar as issues and claims were disposed through and with the effect of a state court judgment with prejudice and prior orders and releases, which should be given full and complete faith and credit.

### **THIRD AFFIRMATIVE DEFENSE**

3.    Plaintiff's claims are barred, in whole or in part, by the doctrines/rules of res judicata, issue preclusion, claim preclusion, collateral estoppel, and/or release, insofar as issues and claims were disposed through and with the effect of a state court judgment with prejudice and prior orders and releases, which are dispositive.

### **FOURTH AFFIRMATIVE DEFENSE**

4.    Plaintiff's claims are barred, in whole or in part, by the doctrines/rules of waiver, consent, acquiescence, ratification, promissory estoppel, equitable estoppel, and/or judicial estoppel insofar as Cinco Corporation (the owner of alleged intellectual property rights), Plaintiff, and their agents waived, consented to, acquiesced to, or ratified Defendants' conduct, and/or otherwise induced reliance on agreements based on promises, representations, and/or conduct, or otherwise made

1  judicial admissions in the prior state court action and this action that are dispositive
2  to the legal issues presented in this action.

3  ## FIFTH AFFIRMATIVE DEFENSE

4      5.    Plaintiff's claims are barred, in whole or in part, by the doctrines/rules
5  of fraud, tortious interference, breach of contract/inducement to breach contract,
6  unclean hands, bad faith, and *in pari delicto* insofar as Plaintiff's alleged acquisition
7  of intellectual property rights affecting the United States operations was improper.

8  ## SIXTH AFFIRMATIVE DEFENSE

9      6.    Plaintiff's claims are barred, in whole or in part, by the doctrines/rules
10  of laches and statutes of limitations insofar as the alleged claims long pre-existed the
11  initiation of this lawsuit insofar that the United States operations have largely
12  operated the same way for almost 15 years.

13  ## SEVENTH AFFIRMATIVE DEFENSE

14      7.    Plaintiff's claims are barred, in whole or in part, by virtue of the fact
15  that Defendants maintain statutory, prior, exclusive, perpetual, and/or senior rights
16  to the alleged intellectual property. Indeed, any alleged assigned registrations,
17  including any allegedly incontestable registration, are barred, in whole or in part, by
18  numerous statutory defenses, including those listed in Sections 14, 15 and 33(b) of
19  the Lanham Act. Among other things, as evidenced by PCJV's governing
20  documents, if PCJV did not transfer rights to Plaintiff's predecessor-in-interest
21  under the MLA, PCJV is the senior user of the mark, Plaintiff's predecessor-in-
22  interest falsely/fraudulently represented to the USPTO that it made continuous use
23  of the mark for five consecutive years, Plaintiff's predecessor-in-interest did not
24  perfect but abandoned any separately claimed trademark rights, the registered mark
25  has been controlled by PCJV for almost 15 years, Plaintiff and its predecessor-in-
26  interest acquiesced in PCJV's control of the mark, including years after the alleged
27  assignment to Plaintiff, Plaintiff aided and abetted and/or induced its predecessor-in-
28  interest to breach fiduciary and/or contractual obligations to Defendants, and

29

1  Plaintiff is barred by equitable principals from asserting the marks against
2  Defendants, including under the doctrines of prior notice of prior rights, retraxit,
3  laches, estoppel and unclean hands.

4  ### EIGHTH AFFIRMATIVE DEFENSE

5      8.      Plaintiff's claims are barred, in whole or in part, by virtue of the fact
6  that Defendants maintain licenses and/or other rights to use the alleged intellectual
7  property.

8  ### NINTH AFFIRMATIVE DEFENSE

9      9.      Plaintiff's claims are barred, in whole or in part, by virtue of the fact
10 that Plaintiff failed to join necessary and/or indispensable parties to its FAC.

11 ### TENTH AFFIRMATIVE DEFENSE

12     10.     Plaintiff's claims are barred, in whole or in part, since alleged "trade
13 secret information" was readily ascertainable by proper means.

14 ### ELEVENTH AFFIRMATIVE DEFENSE

15     11.     Plaintiff's claims are barred, in whole or in part, because Plaintiff failed
16 to mitigate alleged damages, if any.

17 ### TWELFTH AFFIRMATIVE DEFENSE

18     12.     Plaintiff's claims are barred, in whole or in part, because Plaintiff either
19 contributed to its own alleged harm or is not entitled to any recovery against
20 Defendants because any alleged harm to Plaintiff was the result of conduct of other
21 parties, such as Cinco Corporation and its agents.

22 ### THIRTEENTH AFFIRMATIVE DEFENSE

23     13.     Plaintiff's claims are barred, in whole or in part, due to the lack of an
24 offer, acceptance, or consideration of any alleged "at-will license" arrangement.

25 ### FOURTEENTH AFFIRMATIVE DEFENSE

26     14.     Plaintiff's claims are barred, in whole or in part, insofar as to the extent
27 Plaintiff is entitled to any relief, that relief must be reduced or eliminated by the
28 principles of offset or setoff.

1     **FIFTEENTH AFFIRMATIVE DEFENSE**

2     15.    Plaintiff's claims are barred, in whole or in part, because Plaintiff lacks

3 standing.

4     **COUNTERCLAIM AND THIRD-PARTY COMPLAINT**

5       Counterclaimants and Third Party Plaintiffs PCJV USA, LLC ("PCJV"), PCI

6 Trading LLC ("PCIT"), Potato Corner LA Group LLC ("LA Group LLC"), GK

7 Capital Group, LLC ("GK Capital"), NKM Capital Group LLC ("NKM"), and Guy

8 Koren ("Koren") (collectively, "Cross-Complainants") hereby bring the following

9 Counterclaim and Third-Party Complaint against Counterclaim-Defendants/Third

10 Party Defendants Shakey's Pizza Asia Ventures, Inc. ("SPAVI"), PC International

11 Pte Ltd. ("PCIPL"), SPAVI International USA, Inc. ("SPAVI USA"), Cinco

12 Corporation ("Cinco"), and ROES 1 through 10, inclusive (collectively, "Cross-

13 Defendants"), as follows:

14     **PARTIES**

15     1.    PCJV is a Delaware limited liability company, a citizen of the State of

16 California, doing business in Los Angeles County, California.

17     2.    PCIT is a Delaware limited liability company, a citizen of the State of

18 California, doing business in Los Angeles County, California.

19     3.    LA Group LLC is a California limited liability company, a citizen of

20 the State of California, doing business in Los Angeles County, California.

21     4.    GK Capital is a Delaware limited liability company, a citizen of the

22 State of California, doing business in Los Angeles County, California.

23     5.    NKM is a Delaware limited liability company, a citizen of the State of

24 California, doing business in Los Angeles County, California.

25     6.    Koren is an individual, a citizen of the State of California, and

26 managing member of PCJV, PCIT, LA Group LLC, GK Capital, and NKM.

27 / / /

28 / / /

31

7.      Cross-Complainants are informed and believe and thereon allege that SPAVI is a Philippines-based corporation doing business in the United States, including within this judicial district.

8.      Cross-Complainants are informed and believe and thereon allege that PCIPL is a Singapore-based corporation doing business in the United States, including within this judicial district.

9.      Cross-Complainants are informed and believe and thereon allege that SPAVI USA is a Delaware limited liability company with its principal place of business in Chino Hills, California, doing business in the United States, including within this judicial district.

10.     Cross-Complainants are informed and believe and thereon allege that Cinco is a Philippines-based corporation doing business in the United States, including within this judicial district.

11.     The true names and capacities of the Cross-Defendants sued herein as ROES 1 through 10, inclusive, are currently unknown to Cross-Complainants, who therefore sues such Cross-Defendants by fictitious names. Each of the Cross-Defendants designated herein as a ROE is legally responsible for the unlawful acts alleged herein. Cross-Complainants will seek leave of Court to amend this pleading to reflect the true names and capacities of the ROE Cross-Defendants when such identities become known.

12.     Cross-Complainants are informed and believe and thereon allege that at all relevant times, each and every Cross-Defendant was acting as an agent of other Cross-Defendants and was acting within the course and scope of said agency (or as alter egos) with the full knowledge and consent of other Cross-Defendants. Cross-Complainants are informed and believe and thereon alleges that each of the acts and/or omissions complained of herein was made known to, and ratified by, some or all the Cross-Defendants.

/ / /

## JURISDICTION AND VENUE

13.     Pursuant to 28 U.S.C. Sections 1331, 1338, and 1367, the Court has subject matter jurisdiction over this matter insofar as it raises federal questions and ancillary/supplemental jurisdiction over the remaining claims because the facts giving rise to those claims arise from the same common nucleus of operative facts.

14.     The Court has personal jurisdiction over Cross-Defendants because Cross-Defendants have either consented to personal jurisdiction over them or committed and continue to commit the wrongful acts complained of herein, within this State and judicial district, purposefully availing themselves of California's jurisdiction.

15.     Venue is proper in this District pursuant to 28 U.S.C. Section 1391 because Cross-Defendants transact business in this judicial district and because a substantial part of the events or omissions giving rise to the claims occurred in this judicial district.

## GENERAL ALLEGATIONS

16.     "It makes me feel safe to award you the rights to the U.S.," said the Potato Corner international brand-owner (Cinco's CEO, Jose P. Magsaysay, Jr.) to Koren over fifteen years ago. This commitment launched a series of events, first, entry into a written license agreement with NKM (the "NKM License Agreement," a true and correct copy of which is attached as **Exhibit A** and incorporated by reference) and, second, inducing Koren (then, only-NKM) to forego being a domestic licensee in California to becoming a partner with the international brand-owner in creating and developing a U.S. franchise system, and operating it, which the NKM License Agreement was ultimately rolled into.

17.     U.S.-based partners (led by Koren, known as the "LA Group" with a 40% ownership stake and 3 of 7 board seats) and Philippines-based partners (led by non-party Cinco Corporation ("Cinco") and its 4 owners (collectively, the "Cinco

Group" with a 60% ownership stake and 4 of 7 Board seats) launched PCJV,[1] the first continuous and exclusive user of U.S. Potato Corner marks. PCJV, through Koren, developed the U.S. model quick-service franchise restaurant system and grew to dozens of units.

18. PCJV's operations, including the right to control the U.S. trademarks, vested with PCJV's Board of Managers and President. As part of PCJV's governing documents, the Cinco Group not only agreed that PCJV could use and would be the vehicle through which intellectual property rights would expand in the United States, but also agreed that Koren and his LA Group would have control and management rights over it. The Cinco Group made that literal "investment" in PCJV when they approached Koren to advance capital and employ sweat equity to jointly develop and operate a national franchise system as the vehicle through which international branding rights would expand to the U.S. PCJV's governing documents, which *followed*, memorialized an agreement among the 7 partners that embodied an agreed-upon license:

    a. of perpetual duration (unless terminated by a 75% vote of the Board);

    b. obligating the to-be-formed "Company" (PCJV) to enter into a master license agreement with Cinco;

    c. restricting both the LA Group and the Cinco Group from assigning any rights or obligations with the prior written consent of the other;

    d. commanding the partners to use best efforts in cooperating for PCJV's success; and

    e. requiring the partners to execute and deliver all documents necessary to consummate the transactions contemplated therein.

/ / /

---

[1] PCJV stands for "Potato Corner Joint Venture." The same partners also launched PCIT, a supply-chain company.

1 True and correct copies of PCJV's Joint Venture Agreement ("JVA"), Limited

2 Liability Company Agreement ("LLC Agreement"), and Amended Joint Venture

3 Agreement ("AJVA") are attached hereto as **Exhibits B, C,** and **D**, respectively, and

4 incorporated by reference herein.

5        19.    Cinco's lawyers at DLA Piper LLP ("DLA") (who also represented

6 PCJV and formed it) presented a master license agreement (hereinafter, the "MLA")

7 to Koren and Koren signed the MLA on behalf of PCJV, thus satisfying PCJV's

8 obligations under each governing document and converting PCJV's non-

9 transferrable perpetual trademark license and vested control rights into a

10 transferrable 50-year license. A true and correct copy of the MLA is attached hereto

11 as **Exhibit E** and incorporated by reference herein.

12        20.    At no point did Cinco while represented by DLA ever take the position

13 that the MLA was unenforceable, inoperative, unsigned, etc. Quite the contrary,

14 each of DLA, PCJV, Cinco Group, and LA Group at various times (but consistently

15 for 15 years, even after disputes arose among them, including by Myrose Victor,

16 formerly of Cinco and now SPAVI's "Head of Investor Relations and Corporate

17 Strategy and Planning Director") reported, adopted, and affirmed in PCJV's

18 franchise disclosure documents ("FDDs") – originally drafted and issued by DLA –

19 that the MLA's terms were operative:

> Under a License Agreement with Cinco dated October 1, 2010, Cinco
> has licensed us to use the Marks and to sublicense them to our franchise
> owners in operating Potato Corner Stores. The license agreement
> is for 20 years with 3 successive automatic 10 year renewal terms. Cinco
> can terminate the Trademark License Agreement if we breach the
> Agreement and fail to cure within 30 days of written notice. We can
> terminate the Trademark License Agreement anytime upon 60 days'
> notice. Cinco has the right to approve all proposed uses of the Marks. No
> other agreement limits our right to use or license the Marks.

25        21.    Further with respect to the MLA, Cinco: (a) agreed to waive all fees

26 each year *and*, as memorialized in Board minutes, Cinco agreed to receive

27 remuneration through distribution income from PCJV instead of a royalty-bearing

28 license; (b) secretly profited millions of dollars from the sale of up-charged supplies

160850.00001/152864609v.3                    35
160850.00001/152864609v.2

**DEFENDANTS' ANSWER TO PLAINTIFF'S FIRST AMENDED COMPLAINT AND
COUNTERCLAIM/THIRD-PARTY COMPLAINT**

to PCIT; and (c) never accused PCJV, or any Cross-Complainant, as breaching any obligation to pay any royalties. To the contrary, Cinco made it known – and PCJV's Board approved – that any rights to remuneration for providing a license to PCJV would come from PCJV's distributions: "On the 30/30 share of Franchise Fees and Royalties per Joint Venture Agreement: Board has approved that this will not be an expense in the P & L of PCJV but shall be given as part of its distributive income." The JVA, LLC Agreement, AJVA, and MLA will hereinafter be collectively referred to as the "PCJV Governing Documents."

22.     In 2017, the Cinco Group sold 55% of their Cinco stock to a third-party group (the "Hernandez Group") in the Philippines who then claimed to be the majority owner of PCJV in contravention of the LA Group's prior consent rights in addition to the LA Group's right of first refusal rights. Certain PCJV board meetings and discussions ensued. Among them included the understanding that PCJV "will start working with "Newly Weds" spice company for the sourcing of the seasonings from their US plants and the LA Group will negotiate on PCJVs behalf." This was important to PCJV and PCIT because for years, the stream of supply from Philippines-based Ferna Corporation (the original supplier of seasonings) was erratic and problematic causing harm to the Potato Corner USA franchise system.

23.     In 2018, and for reasons not relevant here but having to do with pure greed, Cinco (and Cinco alone), through DLA, initiated a state court action against Koren. Cinco briefly prevailed but failed at a hostile takeover attempt of PCJV; after granting an *ex parte* TRO restraining Koren as PCJV's President from using intellectual property belonging to PCJV, a state court denied Cinco's preliminary injunction motion and granted Koren a wide-sweeping injunction protecting Koren's control over all of PCJV's business and affairs, including the licensing of the U.S. trademarks to franchisees. In 2019, the Cinco Group tried to change the *status quo* again, but the state court embraced its June 2018 injunction ruling and denied relief.

/ / /

24.     During the state court litigation, and sometime after DLA substituted out of the case in place of new counsel (SPAVI's current counsel), Cinco took the position that the MLA was unenforceable, and that Cinco (allegedly) never signed it. This was a "new" revelation, but nothing that carried any weight as the parties – and PCJV was independently represented, and so were the Cinco Group, the LA Group LLC, and Koren – annually represented in the FDDs that the terms of the MLA were operative.

25.     Mediation of the state court action began in January and February 2021, and in March 2021, Koren made a settlement proposal, which was based on a framework that involved Koren owning all U.S. interests and either: (a) entering a *new* license agreement with periodic license fees or; (b) *PCJV maintaining its irrevocable, perpetual rights.* Leading these settlement discussions were Michael D. Murphy (Plaintiff's counsel here) for the Cinco parties and Arash Beral (Defendants' counsel here) for the Koren parties. On November 1, 2021, Mr. Beral noted to Mr. Murphy: "Cinco also fails to address the value of the perpetual license PCJV owns."

26.     Almost a year into mediation, Cross-Complainants discovered a surprise filing regarding an undisclosed (and still undisclosed) "Asset Purchase Agreement" entered between Cinco and SPAVI. Discussions through the mediator ensued, including Cross-Complainants' stated intentions to immediately seek state court intervention for violations of the state court's preliminary injunction order and breach of fiduciary and contractual duties. On or about February 10, 2022, SPAVI sent a letter to address Cross-Complainants' concerns. In that letter, SPAVI never disclosed that it was purchasing U.S. trademark registrations and wrote only about international assets. It also indicated: "… upon closing, SPAVI would be bound by any agreements related to the licensing of Potato Corner intellectual property in the US." SPAVI effectively attempted to stop Koren from pursuing relief. A true and

1    correct copy of SPAVI's February 10, 2022 letter is attached hereto as **Exhibit F**

2    and incorporated by reference herein.

3           27.    On February 25, 2022, Cross-Complainants objected to the potential

4    transaction, formally putting Cinco and SPAVI on notice of "continuing and

5    repeated breaches of the PCJV operating agreement's consent and right of first

6    refusal provisions" (at the time, Cross-Complainants believed that Cinco Group

7    intended also to sell to SPAVI their interests in PCJV, which would have triggered

8    the right of first refusal) and noted (again) that there were "perpetual license rights

9    that Cinco granted to PCJV." A true and correct copy of the February 25, 2022 letter

10   is attached hereto as **Exhibit G** and incorporated by reference herein.

11          28.    "PCJV's perpetual license rights" as well as other rights under PCJV's

12   Governing Documents, as well as Koren's and his LA Group's consent rights, were

13   repeatedly mentioned throughout the course of the state court case and settlement

14   discussions with Cinco and SPAVI. But in order to avoid future disputes, the parties

15   continued in-person and remote settlement discussions, and also entered a tolling

16   agreement enabling discussions to continue through at least January 2, 2025, a true

17   and correct copy of which is attached hereto as **Exhibit H** and incorporated by

18   reference herein.

19          29.    Cross-Complainants and Cinco Group entered a settlement and

20   resolved the state court action on May 28, 2024, including (and releasing) all known

21   and unknown claims against Cross-Complainants, and also stipulated that May 28,

22   2024 would constitute the "Closing" date of their transaction. The Cinco Group

23   (then inclusive of the Hernandez Group) agreed to transfer *all* of their rights and

24   interests in PCJV and PCIT (including the rights and interests in the PCJV

25   Governing Documents) as well as all rights and interests "attached" thereto to GK

26   Capital, with a dismissal of all claims with prejudice.

27          30.    Cinco Group, including Cinco, executed, *inter alia*, a membership

28   interest purchase agreement and related assignments, and requested dismissals with

1  prejudice based on the terms and conditions of the settlement agreement and related

2  documents, and Cross-Complainants reasonably relied upon the terms and

3  conditions of that settlement in resolving the state court action.

4      31.    As it pertains to Plaintiff's alleged intellectual property rights in the

5  United States, Cinco plainly and unambiguously represented and warranted that no

6  rights under the PCJV Governing Documents "attached" to the "Interests" being

7  sold to GK Capital were subject to any rights previously sold to SPAVI, and,

8  further, that the "Interests" and the "attached" rights "do not and will not…require

9  any…license" and "do not and will not…violate or conflict with, result in the

10 acceleration of, or create in any party the right to accelerate, terminate, or modify

11 any…license." In other words, *all* rights including the rights to use, receive

12 distributions for, etc. all United States intellectual property (and Israel) were

13 transferred by Cinco (and its affiliates) to GK Capital, to remain with PCJV. True

14 and correct copies of the settlement agreement documents (comprising a settlement

15 agreement, membership interest purchase agreement, and corresponding

16 assignments, collectively, the "Settlement Documents") are attached collectively

17 hereto as **Exhibit I** and incorporated by reference herein.

18     32.    Despite the foregoing facts, three days later, on May 31, 2024, SPAVI

19 initiated this action claiming infringement. SPAVI has maintained that it never

20 purchased any interests in PCJV and PCIT but has not (to Cross-Complainants'

21 knowledge) ever admitted or denied whether it stepped into Cinco's shoes by virtue

22 of its alleged transaction with Cinco.

23              **FIRST CLAIM FOR RELIEF**

24                **Declaratory Relief**

25     **(By Cross-Complainants Against All Cross-Defendants)**

26     33.    Cross-Complainants incorporate by reference the foregoing paragraphs

27 as though each and every allegation was set forth herein.

28 / / /

34.     As alleged above, each of Cross-Complainants and each of Cross-Defendants have stated, made representations and inducements regarding, claimed, or otherwise have competing interests in intellectual property rights pertaining to the Potato Corner USA franchise system and Potato Corner USA related marks (hereinafter, the "U.S. IP"). With respect to PCIPL, it allegedly is a SPAVI affiliate who independently registered certain Potato Corner related marks in the United States, which were created by Cross-Complainants.

35.     An actual dispute and controversy exists among these parties regarding their rights, the efficacy of agreements and representations entered and made, the efficacy of alleged termination of licenses, the terms of use of U.S. IP (including which parties are to pay for those rights, if any, and on what amount(s) and terms), ownership and/or license rights, and/or cancellation and/or transfer of the registrations for the U.S. IP to their rightful owner(s).

36.     In light of the foregoing, Cross-Complainants seek a judicial declaration that: (a) they are the rightful, perpetual owners of U.S. IP under the PCJV Governing Documents; and/or (b) they are the rightful, perpetual owners of U.S. IP under the Settlement Documents; and, further, that all U.S. IP registrations by any party other than Cross-Complainants be ordered canceled and/or transferred to PCJV.

37.     In the alternative, Cross-Complainants seek a judicial declaration that: (a) PCJV maintains its royalty-free, perpetual license under the PCJV Governing Documents; or (b) PCJV maintains its royalty-free 50-year license under the MLA; and, further, that to the extent any such alternative relief is granted and such relief is conditioned on payment to SPAVI (or PCIPL), Cinco (and/or ROES 1 through 10, inclusive) be ordered to pay for it, or for such other relief the Court deems proper.

/ / /

/ / /

/ / /

<u>**SECOND CLAIM FOR RELIEF**</u>

**Inducing Breach of Contract**

**(By Cross-Complainants Against SPAVI)**

38.    Cross-Complainants incorporate by reference the foregoing paragraphs as though each and every allegation was set forth herein.

39.    As alleged above, the PCJV Governing Documents, as restated, amended, modified, or appended over time through PCJV meeting minutes, written communications of the PCJV Board, and/or representations made in FDDs, as well as the Settlement Documents constitute valid contracts.

40.    Cross-Complainants are informed and believe and thereon allege that SPAVI knew of these contracts.

41.    Cross-Complainants are informed and believe and thereon allege that SPAVI intended to cause the breach of these contracts.

42.    Cross-Complainants are informed and believe and thereon allege that SPAVI's conduct caused the breach of these contracts.

43.    Cross-Complainants were harmed as a result of SPAVI's conduct.

44.    SPAVI's conduct was a substantial factor in causing Cross-Complainants' harm.

45.    SPAVI's conduct was malicious, oppressive, and/or fraudulent warranting the imposition of punitive damages.

<u>**THIRD CLAIM FOR RELIEF**</u>

**Intentional Interference with Contractual Relations**

**(By Cross-Complainants Against SPAVI)**

46.    Cross-Complainants incorporate by reference the foregoing paragraphs as though each and every allegation was set forth herein.

47.    As alleged above, the PCJV Governing Documents, as restated, amended, modified, or appended over time through PCJV meeting minutes, written

communications of the PCJV Board, and/or representations made in FDDs, as well as the Settlement Documents, as well as supplier contracts constitute valid contracts.

48.    Cross-Complainants are informed and believe and thereon allege that SPAVI knew of these contracts.

49.    Cross-Complainants are informed and believe and thereon allege that SPAVI's conduct prevented performance or made performance more expensive or difficult.

50.    Cross-Complainants are informed and believe and thereon allege that SPAVI intended to disrupt the performance of these contracts and/or knew that disruption of performance was certain or substantially certain to occur.

51.    Cross-Complainants were harmed as a result of SPAVI's conduct.

52.    SPAVI's conduct was a substantial factor in causing Cross-Complainants' harm.

53.    SPAVI's conduct was malicious, oppressive, and/or fraudulent warranting the imposition of punitive damages.

## FOURTH CLAIM FOR RELIEF

### Intentional Interference with Prospective Economic Relations

### (By Cross-Complainants Against SPAVI)

54.    Cross-Complainants incorporate by reference the foregoing paragraphs as though each and every allegation was set forth herein.

55.    Cross-Complainants and their suppliers were in an economic relationship that probably would have resulted in an economic benefit to Cross-Complainants.

56.    Cross-Complainants are informed and believe and thereon allege that SPAVI knew of these relationships.

57.    Cross-Complainants are informed and believe and thereon allege that SPAVI's engaged in conduct to destroy the value of these relationships by usurping

the benefits of those relationships for themselves or otherwise harming Cross-Complainants' interests in those relationships.

58.     Cross-Complainants are informed and believe and thereon allege that SPAVI intended to disrupt these relationships or knew that disruption of these relationships was certain or substantially certain to occur.

59.     Cross-Complainants were harmed as a result of SPAVI's conduct by the disruption of those relationships.

60.     SPAVI's conduct was a substantial factor in causing Cross-Complainants' harm.

61.     SPAVI's conduct was malicious, oppressive, and/or fraudulent warranting the imposition of punitive damages.

## FIFTH CLAIM FOR RELIEF

### Negligent Interference with Prospective Economic Relations

### (By Cross-Complainants Against SPAVI)

62.     Cross-Complainants incorporate by reference the foregoing paragraphs as though each and every allegation was set forth herein.

63.     Cross-Complainants and their suppliers were in an economic relationship that probably would have resulted in an economic benefit to Cross-Complainants.

64.     Cross-Complainants are informed and believe and thereon allege that SPAVI knew or should have known of these relationships.

65.     Cross-Complainants are informed and believe and thereon allege that SPAVI knew or should have known that these relationships would be disrupted if they failed to act with reasonable care.

66.     Cross-Complainants are informed and believe and thereon allege that SPAVI failed to act with reasonable care.

67.     Cross-Complainants are informed and believe and thereon allege that SPAVI's conduct engaged in wrongful conduct to destroy the value of these

1  relationships by usurping the benefits of those relationships for themselves or
2  otherwise harming Cross-Complainants' interests in those relationships.

3      68.    Cross-Complainants were harmed as a result of SPAVI's conduct by
4  the disruption of those relationships.

5      69.    SPAVI's conduct was a substantial factor in causing Cross-
6  Complainants' harm.

7      70.    SPAVI's conduct was malicious, oppressive, and/or fraudulent
8  warranting the imposition of punitive damages.

9                      **SIXTH CLAIM FOR RELIEF**

10                      **Aiding and Abetting Torts**

11              **(By Cross-Complainants Against SPAVI)**

12     71.    Cross-Complainants incorporate by reference the foregoing paragraphs
13  as though each and every allegation was set forth herein.

14     72.    As alleged above, the PCJV Governing Documents, as restated,
15  amended, modified, or appended over time through PCJV meeting minutes, written
16  communications of the PCJV Board, and/or representations made in FDDs, as well
17  as the Settlement Documents constitute valid contracts, which SPAVI knew existed.

18     73.    Cross-Complainants are informed and believe and thereon allege that in
19  engaging in the alleged acquisition of intellectual property assets from Cinco,
20  SPAVI knew that Cinco would be in breach of its "consent" obligations under the
21  PCJV Governing Documents if it were to assign or transfer any PCJV-related rights,
22  interests, or obligations to SPAVI without Koren's or the LA Group LLC's consent.
23  SPAVI also knew that Cinco would be in violation of the state court preliminary
24  injunction order if it were to engage in any activity that affected PCJV's rights and
25  Koren's management of PCJV. With respect to other of PCJV's Governing
26  Documents, SPAVI knew of PCJV's and PCIT's rights, including long-term rights
27  to use the U.S. IP. With respect to the Settlement Documents, SPAVI knew of the

28

wide-sweeping representations and warranties made therein and the wholesale transfer of all of Cinco's interests to GK Capital.

74.     Cross-Complainants are informed and believe and thereon allege that despite all that, SPAVI gave substantial assistance or encouragement to Cinco to breach fiduciary and other duties owed to Cross-Complainants and to effectuate a fraud.

75.     SPAVI's conduct was a substantial factor in causing Cross-Complainants' harm.

76.     SPAVI's conduct was malicious, oppressive, and/or fraudulent warranting the imposition of punitive damages.

## SEVENTH CLAIM FOR RELIEF

### Breach of Fiduciary Duty

### (By Cross-Complainants Against SPAVI and Cinco)

77.     Cross-Complainants incorporate by reference the foregoing paragraphs as though each and every allegation was set forth herein.

78.     As alleged above, Cinco was a joint venturer and partner in PCJV and PCIT, and to the extent that SPAVI stepped into Cinco's shoes by virtue of its alleged acquisition with Cinco, SPAVI became Cinco's successor-in-interest such that it, too, owed (and owes) Cross-Complainants a fiduciary duty.

79.     SPAVI and Cinco, however, breached their fiduciary duty by failing to use reasonable care or to act with undivided loyalty vis-à-vis Cross-Complainants.

80.     Cross-Complainants never consented to such conduct by SPAVI and Cinco, and were harmed by that conduct.

81.     SPAVI's and Cinco's conduct was a substantial factor in causing Cross-Complainants' harm.

82.     SPAVI's and Cinco's conduct was malicious, oppressive, and/or fraudulent warranting the imposition of punitive damages.

/ / /

## EIGHTH CLAIM FOR RELIEF

### Breach of Contracts

### (By Cross-Complainants Against SPAVI and Cinco)

83.    Cross-Complainants incorporate by reference the foregoing paragraphs as though each and every allegation was set forth herein.

84.    As alleged above, Cinco was a joint venturer and partner in PCJV and PCIT, and to the extent that SPAVI stepped into Cinco's shoes by virtue of its alleged acquisition with SPAVI, SPAVI became Cinco's successor-in-interest such that it, too, owed (and owes) Cross-Complainants contractual duties.

85.    As alleged above, the PCJV Governing Documents, as restated, amended, modified, or appended over time through PCJV meeting minutes, written communications of the PCJV Board, and/or representations made in FDDs, as well as the Settlement Documents (which SPAVI represented in February 2022 it would be bound by) constitute valid contracts.

86.    Cross-Complainants did all, or substantially all, of the significant things that the contracts required them to do, unless otherwise prevented, waived or excused.

87.    SPAVI and Cinco, however, breached these contracts, and Cross-Complainants were harmed by those breaches.

88.    SPAVI's and Cinco's conduct was a substantial factor in causing Cross-Complainants' harm.

## NINTH CLAIM FOR RELIEF

### Breach of the Implied Covenant of Good Faith and Fair Dealing

### (By Cross-Complainants Against SPAVI and Cinco)

89.    Cross-Complainants incorporate by reference the foregoing paragraphs as though each and every allegation was set forth herein.

90.    As alleged above, Cinco was a joint venturer and partner in PCJV and PCIT, and to the extent that SPAVI stepped into Cinco's shoes by virtue of its

alleged acquisition with SPAVI, SPAVI became Cinco's successor-in-interest such that it, too, owed (and owes) Cross-Complainants contractual duties, including the duty underlying the implied covenant of good faith and fair dealing.

91.    As alleged above, the PCJV Governing Documents, as restated, amended, modified, or appended over time through PCJV meeting minutes, written communications of the PCJV Board, and/or representations made in FDDs, as well as the Settlement Documents, and the Tolling Agreement, constitute valid contracts, all of which maintained implied covenants of good faith and fair dealing.

92.    Cross-Complainants did all, or substantially all, of the significant things that the implied covenants of good faith and fair dealing underlying the contracts required them to do, unless otherwise prevented, waived or excused.

93.    SPAVI and Cinco, however, breached the implied covenants of good faith and fair dealing underlying the contracts by engaging in negotiations in bad faith to effectuate a fraud or otherwise obtain an upper hand against Cross-Complainants, and by engaging in efforts to undermine Cross-Complainants' long-term rights in the U.S. IP.

94.    Cross-Complainants were harmed by those breaches of the implied covenant of good faith and fair dealing.

95.    SPAVI's and Cinco's conduct was a substantial factor in causing Cross-Complainants' harm.

### TENTH CLAIM FOR RELIEF

**Violations of Business & Professions Code §§ 17200,** *et seq.*

**(By Cross-Complainants Against all Cross-Defendants)**

96.    Cross-Complainants incorporate by reference the foregoing paragraphs as though each and every allegation was set forth herein.

97.    By virtue of the conduct alleged above, including continuing threatened conduct to harm Cross-Complainants, Cross-Defendants have engaged in unlawful,

1  unfair, and/or fraudulent business practices in violation of California Business and

2  Professions Code, Section 17200, *et seq.*

3       98.   Cross-Complainants are informed and believe and thereon allege that

4  Cross-Defendants have assisted in creating and/or created an enterprise in the

5  United States designed to unfairly compete with Cross-Complainants, including

6  usurping Cross-Complainants' goodwill and trading on it.

7       99.   As a direct and proximate result of Cross-Defendants' conduct, Cross-

8  Complainants have lost, and Cross-Defendants have gained, money or property at

9  Cross-Complainants' expense and/or otherwise have acted in a manner that is

10  unlawful, unfair, and/or fraudulent.

11       100.  As a result, Cross-Complainants are entitled to restitution and

12  injunctive relief under the Business & Professions Code.

13       101.  SPAVI's and Cinco's conduct was a substantial factor in causing

14  Cross-Complainants' harm.

15  **ELEVENTH CLAIM FOR RELIEF**

16  **Quantum Meruit**

17  **(By Cross-Complainants Against all Cross-Defendants)**

18       102.  Cross-Complainants incorporate by reference the foregoing paragraphs

19  as though each and every allegation was set forth herein.

20       103.  In the event it is determined that Cross-Complainants do not have

21  binding long-term rights to the U.S. IP, it remains true that Cross-Complainants

22  spent nearly 15 years at great expense to add substantial value to the U.S. IP. As

23  such, they are entitled to the reasonable value they created, developed, and/or added

24  (and which Cross-Defendants gained) by the doctrine of quantum meruit.

25       104.  Cross-Complainants seek, in the alternative to damages and other

26  claims asserted above, quantum meruit recovery for the value they created,

27  developed, added with respect to the U.S. IP.

28  / / /

## TWELFTH CLAIM FOR RELIEF

### Accounting

### (By Cross-Complainants Against all Cross-Defendants)

105.   Cross-Complainants incorporate by reference the foregoing paragraphs as though each and every allegation was set forth herein.

106.   Cross-Defendants have earned millions of dollars by exploiting the rights of Cross-Complainants as alleged above.

107.   The amounts and status of the funds received by Cross-Defendants is unknown at this time and could only be ascertained by an accounting.

108.   Cross-Complainants thus demand an accounting of all funds belonging to them.

## DEMAND FOR JURY TRIAL

Pursuant to Federal Rule of Civil Procedure Rule 38(b), Cross-Complainants demand a trial by jury of all issues triable herein.

## PRAYER FOR RELIEF

WHEREFORE, Cross-Complainants pray for:

1.    Declaratory relief;

2.    Accounting;

3.    Constructive trust(s);

4.    Damages in an amount subject to proof at trial;

5.    Restitution;

6.    Disgorgement;

7.    Injunctive relief;

8.    Punitive damages;

9.    Quantum meruit;

10.    Pre- and post-judgment interest;

11.    Reasonable attorneys' fees and costs as may be allowed; and

12.    Such further and other relief as this Court deems just and proper.

1    DATED:  February 20, 2025        **BLANK ROME LLP**

2                                      By: */s/ Arash Beral*

3                                          Arash Beral
                                           Todd Malynn
4                                          Victor Sandoval
                                      Attorneys for Defendants, Counterclaimants,
5                                      and Third Party Plaintiffs PCJV USA, LLC,
                                      PCI TRADING LLC, POTATO CORNER,
6                                      LA GROUP, LLC, GK CAPITAL GROUP,
                                      LLC, NKM CAPITAL GROUP, LLC and
7                                      GUY KOREN, and Defendants J & K
                                      AMERICANA, LLC, J&K LAKEWOOD,
8                                      LLC, J&K OAKRIDGE, LLC, J&K
                                      VALLEY FAIR, LLC, J & K ONTARIO,
9                                      LLC, J&K PC TRUCKS, LLC, HLK
                                      MILPITAS, LLC, and GK CERRITOS,
10                                     LLC

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

# CERTIFICATE OF SERVICE

     The undersigned certifies that on February 20, 2025, the foregoing document was electronically filed with the Clerk of the Court for the United States District Court, Central District of California, using the Court's Electronic Case Filing (ECF) system.  I further certify that all participants in the case are registered CM/ECF users and that service will be accomplished by the CM/ECF system.

     I certify under penalty of perjury that the foregoing is true and correct. Executed on February 20, 2025.

                             By:   /s/AJ Cruickshank

PROOF OF SERVICE