MICHAEL D. MURPHY (SBN 224678)
mdmurphy@foxrothschild.com
MATTHEW FOLLETT (SBN 325481)
mfollett@foxrothschild.com
MEEGHAN H. TIRTASAPUTRA (SBN 325572)
mtirtasaputra@foxrothschild.com
JESSICA I. NWASIKE (SBN 343087)
jnwasike@foxrothschild.com
FOX ROTHSCHILD LLP
Constellation Place
10250 Constellation Boulevard, Suite 900
Los Angeles, California 90067
Telephone:  310.598.4150
Facsimile:   310.556.9828

Attorneys for Plaintiff and Counterclaim Defendant
SHAKEY'S PIZZA ASIA VENTURES, INC. and
Third-Party Defendants CINCO CORPORATION,
PC INTERNATIONAL PTE LTD., and SPAVI
INTERNATIONAL USA, INC.

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| SHAKEY'S PIZZA ASIA VENTURES, INC, a Philippines corporation,<br><br>Plaintiff,<br><br>v.<br><br>PCJV USA, LLC, A Delaware limited liability company; PCI TRADING, LLC, a Delaware limited liability company; GUY KOREN, an individual; POTATO CORNER LA GROUP, LLC, a California limited liability company; NKM CAPITAL GROUP, LLC, a California limited liability company; J & K AMERICANA, LLC, a California limited liability company; J&K LAKEWOOD, LLC, a California limited liability company; J&K VALLEY FAIR, LLC, a California limited liability company; J & K ONTARIO, LLC, a California limited liability company; HLK MILPITAS, LLC, a California, limited liability company; GK CERRITOS, LLC, a California, limited liability company; | Case No. 2:24-CV-04546-SB(AGRx)<br><br>*The Hon. Stanley Blumenfeld, Jr.*<br><br>**PLAINTIFF AND COUNTERCLAIM DEFENDANT SHAKEY'S PIZZA ASIA VENTURES, INC. AND THIRD-PARTY DEFENDANTS' MOTION FOR SUMMARY JUDGMENT**<br><br>[*Concurrently filed with appendix of evidence*] |

1

1  J&K PC TRUCKS, LLC, a California
limited liability company; and GK
2  CAPITAL GROUP, LLC, a California
limited liability company and does 1
3  through 100, inclusive,

4                    Defendants.

5  ─────────────────────────────

6  PCJV USA, LLC, a Delaware limited
liability company; PCI TRADING LLC,
7  a Delaware limited liability company;
POTATO CORNER LA GROUP LLC,
8  a California limited liability company;
GK CAPITAL GROUP, LLC, a
9  California limited liability company;
NKM CAPITAL GROUP LLC, a
10 California limited liability company; and
GUY KOREN, an individual,

11                   Counterclaimants,

12       v.

13 SHAKEY'S PIZZA ASIA VENTURES,
INC, a Philippines corporation,
14
                  Counter Defendant.
15 ─────────────────────────────

16 PCJV USA, LLC, a Delaware limited
liability company; PCI TRADING LLC,
17 a Delaware limited liability company;
POTATO CORNER LA GROUP LLC,
18 a California limited liability company;
GK CAPITAL GROUP, LLC, a
19 California limited liability company;
NKM CAPITAL GROUP LLC, a
20 California limited liability company; and
GUY KOREN, an individual,
21
                  Third Party Plaintiffs,
22
         v.
23
PC INTERNATIONAL PTE LTD., a
24 Singapore business entity; SPAVI
INTERNATIONAL USA, INC., a
25 California corporation; CINCO
CORPORATION, a Philippines
26 corporation; and does 1 through 10,
inclusive,
27
                  Third Party Defendants.
28

2

**TO ALL PARTIES AND THEIR ATTORNEYS OF RECORD:**

**PLEASE TAKE NOTICE THAT**, pursuant to the Court's order (dkt. 308), Plaintiff and Counterclaim Defendant Shakey's Pizza Asia Ventures, Inc. ("Plaintiff" or "SPAVI") and Third-Party Defendants PC International Pte Ltd., SPAVI International USA, Inc., and Cinco Corporation (collectively, "Third-Party Defendants") will and hereby do move the Court for an order granting summary judgment in their favor and against Counterclaimants and Third-Party Plaintiffs PCJV USA, LLC; PCI Trading, LLC; Guy Koren; Potato Corner LA Group, LLC; GK Capital Group, LLC; and NKM Capital Group (collectively, "Counterclaimants" or "Complaining Defendants") as to each and every claim for relief stated in the Counterclaim and Third-Party Complaint (dkt. 108) (the "Counterclaim") and as to every affirmative defense stated in that same pleading. In addition, or in the alternative, SPAVI and the Third-Party Defendants seek partial summary judgment (or summary adjudication) on each of the first four issues presented in their portion of the Joint Statement (dkt. 301).

Because each of those first four issues would result in adjudication of all claims alleged against the Third-Party Defendants, summary judgment is proper as to each of them. As for SPAVI, granting this motion would result in the sole issues for trial being that which has been alleged and remains at issue in its First Amended Complaint,

Specifically, this motion seeks summary judgment on the following grounds:

1. **First, Second, Third, Fourth, Fifth, Sixth, Tenth, and Eleventh Claims for Relief Against Plaintiff**. Plaintiff is entitled to summary judgment on Counterclaimants' First Claim for Relief for Declaratory Relief, Second Claim for Relief for Inducing Breach of Contract, Third Claim for Relief for Intentional Interference with Contractual Relations, Fourth Claim for Relief for Intentional Interference with Prospective Economic Relations, Fifth Claim for Relief for Negligent Interference

3

with Prospective Economic Relations, Sixth Claim for Relief for Aiding and Abetting Torts, Tenth for Violations of Business and Professions Code § 17200, et seq., and Eleventh Claim for Quantum Meruit because all such claims are predicated on the existence and validity of the Amended Joint Venture Agreement as well as the Master License Agreement, neither of which are binding on Third-Party Defendant Cinco Corporation and, thus, not binding on Plaintiff as its purported "successor in interest," as Counterclaimants allege.

2. **Seventh, Eighth, and Ninth Claims for Relief Against Third-Party Defendant Cinco Corporation**. Cinco Corporation is entitled to summary judgment on Counterclaimants' Seventh Claim for Relief for Breach of Fiduciary Duty, Eighth Claim for Relief for Breach of Contract, and Ninth Claim for Relief for Breach of the Implied Covenant of Good Faith and Fair Dealing because Cinco Corporation is not in contractual privity with any Counterclaimant nor does Cinco Corporation have a special relationship with any Counterclaimant such that Cinco Corporation owes any Counterclaimant any fiduciary duties. Moreover some or all of these claims are barred under the Settlement Agreement in a prior case.

3. **Seventh, Eighth, and Ninth Claims for Relief Against Plaintiff.** Plaintiff is entitled to summary judgment on Counterclaimants' Seventh Claim for Relief for Breach of Fiduciary Duty, Eighth Claim for Relief for Breach of Contract, and Ninth Claim for Relief for Breach of the Implied Covenant of Good Faith and Fair Dealing because such claims against SPAVI are based on a "successor in interest" theory. Because Counterclaimants lack a basis upon which a fiduciary duty can be imposed upon Cinco Corporation, it follows that Plaintiff also owes no fiduciary duties to any Counterclaimant.

4

4.     **Third-Party Defendants PC International Pte Ltd. and SPAVI International USA, Inc.** The Counterclaim fails to allege a single claim for relief against Third-Party Defendants PC International PTE Ltd. and SPAVI International USA, Inc. As such, Third-Party Defendants PC International PTE Ltd. and SPAVI International USA, Inc. are entitled to summary judgment on the Counterclaim or, in the alternative, dismissal from the Counterclaim.

5.     **First, Second, Third, Fourth, Fifth, Seventh, Eighth, Ninth Twelfth, and Fifteenth Affirmative Defenses Against Plaintiff.** Plaintiff is entitled to summary judgment on each of these Affirmative Defenses because each is premised on the existence of a contractual or fiduciary duty owed by SPAVI to any of the Counterclaimants, which there is no evidence to establish.

To the extent the Court does not grant all the relief requested by this motion, Plaintiff and Third-Party Defendants hereby move the Court for an order pursuant to Federal Rule of Civil Procedure 56(g) establishing in this case any material fact not genuinely in dispute.

This motion is made pursuant to Fed. Rule Civ, P. 56(a) and (g), and is based on the accompanying memorandum of points and authorities, the accompanying appendix of exhibits, subsequent filings made in support of this motion, and any arguments made during any hearing on this motion as well as the contents of the docket in this matter.

5

1   Dated:  September 25, 2025                    FOX ROTHSCHILD LLP

2

3                                                /s/ Michael D. Murphy
                                                 Michael D. Murphy
4                                                Matthew Follett
                                                 Meeghan H. Tirtasaputra
5                                                Attorneys for Plaintiff and Counterclaim
                                                 Defendant Shakey's Pizza Asia
6                                                Ventures, Inc. and Third-Party
                                                 Defendants Cinco Corporation, PC
7                                                International Pte Ltd., and SPAVI
                                                 International Usa, Inc.

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**PLAINTIFF AND COUNTERCLAIM DEFENDANT SHAKEY'S
PIZZA ASIA VENTURES, INC. AND THIRD-PARTY
DEFENDANTS' MOTION FOR SUMMARY JUDGMENT**          CASE NO. 2:24-CV-04546-SB(AGRX)
177365297.4

# TABLE OF CONTENTS

I.    INTRODUCTION ................................................................... 12

II.   STATEMENT OF FACTS ...................................................... 12

      A.    PCJV was Formed in 2010 as a Joint Venture Between Guy
            Koren's "LA Group" and a Subsidiary of Cinco ................................ 13

      B.    The Amended Joint Venture Agreement is Agreed to on October
            17, 2012, Excusing Cinco from PCJV, and, by PCJV's own
            Admission, "Constituted the Operative Agreement Governing
            PCJV's Affairs." ............................................................................ 13

      C.    PCJV's Use of the Potato Corner Intellectual Property Was Never
            Memorialized in a Written Signed Agreement. ................................. 16

      D.    The Prior Governance Action Seeking Unrelated Governance
            Rulings as to PCJV's Governance and its Binding Effect on
            Counterclaimants' Claims. .............................................................. 19

      E.    SPAVI Acquires the PC Brand from Cinco ....................................... 21

III.  ARGUMENT ......................................................................... 22

      A.    The Summary Judgment Standard as Applied to Claims and
            Defenses that Depend Upon Contract Interpretation. ...................... 23

      B.    Cinco is Entitled to Summary Judgment On All Third-Party
            Claims Alleged Because It Owed No Contractual or Fiduciary
            Duties to Any Counterclaimant ...................................................... 24

            i.     Cinco is Not a Party to Any Contract with Any
                   Counterclaimant that Conferred Any Duty to Maintain a
                   License for the PC-IP Perpetually, Irrevocably, and For
                   Free. ..................................................................................... 25

            ii.    The Rules of Preclusion, Estoppel, Retraxit, and Law of the
                   Case Limit Defendants' Allegations. ...................................... 25

            iii.   The AJVA is Not Susceptible to the Interpretation Urged by
                   Defendants and Can be Dispensed as a Matter of Law. ........... 27

            iv.    Because Counterclaimants Cannot Produce Any Other
                   Signed Agreement to Which Cinco is a Signatory, It Owes
                   No Contractual Duties to any of the Defendants ..................... 30

            v.     There Is No Evidence of a "Special Relationship"
                   Conferring a Fiduciary Duty Upon Cinco; Therefore, No
                   Fiduciary Duty exists ............................................................ 31

      C.    SPAVI is Also Entitled to Summary Judgment on all
            Counterclaims and Affirmative Defenses Alleged Because It Owed
            No Contractual or Fiduciary Duties to any Defendant. ................... 31

7

i.     SPAVI Owes No Contractual Duty to Any Counterclaimant Because SPAVI is Not in Contractual Privity with Any Counterclaimant and SPAVI is Not Cinco's "Successor in Interest"...................................................................................31

ii.    Even If SPAVI Was Cinco's Successor In Interest, Cinco Owed No Duty to Any Counterclaimants so SPAVI Owes No Duty to Any Counterclaimant................................32

IV.    CONCLUSION ....................................................................33

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

8

# <u>TABLE OF AUTHORITIES</u>

**Page(s)**

**Cases**

*Ah Quin v. Cnty. of Kauai Dep't of Transp.*,
  733 F.3d 267 (9th Cir. 2013) ..................................................................... 26

*Allstate Ins. Co. v. Madan*,
  889 F.Supp.374 (C.D. Cal. 1995) .............................................................. 24

*Anderson v. Liberty Lobby, Inc.*,
  106 S. Ct. 2505 (1986) .............................................................................. 24

*Beck Park Apts. v. U.S. Dep't of Housing*,
  695 F.2d 366 (9th Cir.1982) ..................................................................... 24

*Brinderson-Newberg Joint Venture v. Pac. Erectors, Inc.*,
  971 F.2d 272 (9th Cir. 1992) ..................................................................... 29

*Cinco Corporation v. Guy Koren*,
  Los Angeles County Superior Court Case No. BC701075 ............................. 14

*City of Hope Nat'l Med. Ctr. v. Genentech, Inc.*,
  43 Cal.4th 375 (2008) ............................................................................... 31

*DiMaria v. Arcis Golf LLC*,
  No. 2:23-CV-05249-SVW-JC, 2024 WL 290273 (C.D. Cal. Jan. 25,
  2024) ................................................................................................. 28, 29

*First Nat'l Mortg. Co. v. Fed. Realty Inv. Tr.*,
  631 F.3d 1058 (9th Cir. 2011) ................................................................... 29

*Freyr Holdings, LLC v. Legacy Life Advisors, LLC*,
  No. CV 10-9446 GAF EX, 2014 WL 293649 (C.D. Cal. Jan. 24,
  2014) ........................................................................................................ 30

*Manetti-Farrow, Inc. v. Gucci Am., Inc.*,
  858 F.2d 509 (9th Cir. 1988) ..................................................................... 29

*Nationwide Mut. Ins. Co. v. Zurich Am. Ins. Co.*,
  748 F. Supp. 3d 939 (E.D. Cal. 2024) ........................................................ 27

*Negrete v. Fid. & Guar. Life Ins. Co.*,
  444 F. Supp. 2d 998 (C.D. Cal. 2006) ........................................................ 31

*Noel v. Hall*,
  341 F.3d 1148 (9th Cir. 2003) ................................................................... 26

*Pierce v. Lyman*,
  1 Cal.App.4th 1093 (1991) ........................................................................ 31

9

*Pogrebnoy v. Russian Newspaper Distribution, Inc.*,
  289 F. Supp. 3d 1061 (C.D. Cal. 2017), *aff'd*, 742 F. App'x 291
  (9th Cir. 2018) ................................................................................... 19

*Recorded Picture Co. [Productions ] Ltd. v. Nelson Entertainment,*
  *Inc.*
  (1997) 53 Cal.App.4th 350 ................................................................ 33

*Robi v. Five Platters, Inc.*,
  918 F.2d 1439 (9th Cir. 1990) ........................................................... 23

*Roybal v. University Ford*,
  207 Cal.App.3d 1080 (1989) ............................................................. 26

*San Francisco Baykeeper v. Levin Enters., Inc.*,
  12 F.Supp.3d 1208 (N.D. Cal. 2013) ................................................. 23

*San Pasqual Band of Mission Indians v. State of Cal. (San Pasqual)*,
  241 Cal.App.4th 746 (2015) .......................................................... 28, 30

*Shakeys Pizza Asia Ventures, Inc., v. PCJV USA, LLC*,
  No. 24-7084, 2025 WL 1431270 (9th Cir. May 19, 2025) ................. 29

*Simmons v. Ware*,
  213 Cal.App.4th 1035 (2013) ............................................................ 31

*Torrey Pines Bank v. Super. Ct.*,
  216 Cal.App.3d 813 (Ct. App. 1989) ................................................. 26

*TRB Invs., Inc. v. Fireman's Fund Ins. Co.*,
  40 Cal.4th 19 (2006) ......................................................................... 27

*U.S. v. King Features Entm't, Inc.*,
  843 F.2d 394 (9th Cir.1988) .............................................................. 24

*U.S. v. Lummi Indian Tribe*,
  235 F.3d 443 (9th Cir. 2000) ............................................................. 29

*Walsh v. W. Valley Mission Cmty. Coll. Dist.*,
  66 Cal. App. 4th 1532 (1998) ............................................................ 30

*Waverly Prods., Inc. v. RKO General, Inc.*
  (1963) 217 Cal.App.2d 721 .............................................................. 33

*Westport Ins. Corp. v. N. Cal.a Relief*,
  76 F.Supp.3d 869 (N.D. Cal. 2014) ................................................... 27

*Wolf v. Super. Ct.*
  (2003) 107 Cal.App.4th 25 ................................................................ 33

*World Surveillance Grp., Inc. v. La Jolla Cove Investors, Inc.*,
  66 F.Supp.3d 1233 (N.D. Cal. 2014) ................................................. 31

10

**Other Authorities**

18 Charles Alan Wright & Arthur R. Miller, Federal Practice and
    Procedure § 4478.5 (2002) ....................................................................29

FRCP 56(a) ...............................................................................................23

FRCP 56(e) ...............................................................................................24

FRCP 56(g) ........................................................................................23, 33

Rule 56 ................................................................................................24, 25

11

## I.    INTRODUCTION

The Counterclaim and Third-Party Complaint (dkt. 108) (the "Counterclaim") is a delicate house of cards disguised as a brick castle that only time has been able to deteriorate only to reveal the empty and unsubstantiated legal theories supporting it. Through their own trial exhibits and pretrial filings, Counterclaimants and Third-Party Plaintiffs PCJV USA, LLC; PCI Trading, LLC; Guy Koren; Potato Corner LA Group, LLC; GK Capital Group, LLC; and NKM Capital Group (collectively, "Counterclaimants") reveal that they lack the evidence necessary to prove any of the four issues presented in dkt. 301 preceding this Motion. The claims for relief against Plaintiff and Counterclaim Defendant Shakey's Pizza Asia Ventures, Inc. ("Plaintiff" or "SPAVI") are all conditioned and predicated on the allegation that Third-Party Defendant Cinco Corporation ("Cinco") was bound by the Amended Joint Venture Agreement (the "AJVA") and Master Licensing Agreement, neither of which Cinco signed. Their inability to prove the existence of an actual contract in turn causes the inevitable toppling of the entire Counterclaim. This in turn imposes no contractual, fiduciary, or other duties upon Cinco and, thus, any successor in interest to Cinco cannot adopt and be liable under any duty as none existed to begin with.

## II.    STATEMENT OF FACTS

On October 16, 1992, Mr. Jose Magsaysay and three business partners (and their spouses) opened the first Potato Corner branded outlet, a food cart located in Mandaluyong, Philippines. Ex. 46, ¶ 4 (Decl. of Jose Magsaysay (the "Magsaysay Declaration").[1] From that first food cart until 2022, these founders built the portfolio of intellectual property that continues to serve as the foundation for the Potato Corner brand, including trademarks and service marks, the French fry flavorings, and other confidential information and trade secrets. *Id.* All ownership in this intellectual property was vested in Quattro Food and Resources, Inc. ("Quattro"), a Philippines corporation that later was renamed Cinco Corporation (when a fifth owner joined)

---

[1] All references to exhibits ("Ex.") herein shall mean and refer to Trial Exhibits.

12

whose purpose was ownership of the Potato Corner brand and to operate the Potato Corner outlets growing in number from the first food cart. *Id.* at ¶¶ 5-7.

## A.   PCJV was Formed in 2010 as a Joint Venture Between Guy Koren's "LA Group" and a Subsidiary of Cinco

In 2008, Defendant Guy Koren ("Koren") pitched to Mr. Magsaysay the introduction of the Potato Corner brand to the United States market. Ex. 46, ¶ 23. Mr. Magsaysay agreed to let Koren lead this effort, even though another store was already in progress of development by a different licensee, who was actually the first to use Potato Corner in commerce, domestically. *Id.*

Initially, the attempt made by Koren to penetrate the United States market was going to be through a license agreement (the "NKM License") between a Cinco affiliate (with the same ownership as Cinco) called Potato Corner Global Company Ltd. And an entity of Koren's called NKM Capital Group LLC ("NKM"). *Id.* At ¶ 24. Executed in April of 2009, the NKM License granted NKM rights to use the Potato Corner intellectual property to expand the brand within a specific region in exchange for NKM's payment of a license fee of 5% of gross sales. *Id.* At ¶¶ 24-25; Ex. 57, ¶ 9, Ex. 1 (Trial Ex. 007).

In 2010, the structure of Potato Corner's expansion shifted from PCJV serving as a licensee to that of a domestic franchisor. Ex. 46, ¶¶ 27-32. The joint venture would be owned by a subsidiary of Cinco, Potato Corner International, Inc. ("PCI") (60%), and Koren and his then business partners (40%) (the "LA Group"). *Id.* PCJV (which stands for Potato Corner Joint Venture) was organized as a Delaware limited liability company on July 16, 2010 by Cinco and the LA Group, under which they operated their joint venture. Ex. 57, ¶ 26 (Decl. of Guy Koren ("Koren Declaration")). Later, the parties – Cinco and the LA Group, including Koren – agreed to and signed the Joint Venture Agreement ("JVA"). *Id.* At ¶ 26.

## B.   The Amended Joint Venture Agreement is Agreed to on October 17, 2012, Excusing Cinco from PCJV, and, by PCJV's own Admission, "Constituted the Operative Agreement Governing

13

1        **PCJV's Affairs."**

2        PCJV and Cinco's subsidiary, PCI, were formed on the same day, and

3   immediately thereafter, Cinco assigned its membership interests and all rights (and

4   obligations, to the extent Cinco had any) in and to PCJV to PCI. Ex. 46, ¶ 33-35; Ex.

5   57, ¶ 31; *see also* Ex. 10 at 2, n. 1. Counterclaimants squawked in the Prior

6   Governance Action[2], as they do now, that the assignment was not memorialized in

7   writing. Ex. 73 ¶¶ 65, 67, 123-127. This is despite Counterclaimants failure to find

8   any requirement under Delaware law (PCI's jurisdictional selection) mandating a

9   written assignment. A signed writing authorizing assignments of interest is

10  rewquired; however, in the JVA recitals, the parties to that agreement consented to

11  Cinco's transfer of its membership to PCI. Ex. 57, ¶ 26, Ex. 3 (Trial Ex. 1050).

12       PCJV offers as trial exhibits minutes prepared by its secretary, Erlinda

13  Bartolome, after creation of the entity, presumably as business records under Federal

14  Rules of Evidence ("FRE") 803(6) or (7). One such set of minutes memorializes a

15  meeting of the PCJV Board on October 16, 2012, where it was decided that the JVA

16  would be amended. Ex. 1052 at 3 ("3. Operating Agreement and Structure")); *see*

17  *also* Ex. 57 ¶¶ 30 (authenticating the minutes as "true and correct").

18       In that Section 3 of the October 16, 2012 Meeting Minutes, it is noted that

19  there were two parallel structures being built: one in which the brand would be spread

20  through sublicenses and the other through franchises. *Id.* Accordingly, these minutes

21  confirm that the Board, including Koren and his "LA Group," voted and agreed that

22  the "License Agreement with NKM will be terminated and shall be migrated to an

23  Areas Development Agreement in favor of J&K." *Id.* The minutes further reflect that

24  the (never executed Areas Development Agreement) would require standard

25  franchise fees to be paid by Koren's company.[3] *Id.*

26  _____

27  [2] The Prior Governance Action means and refers to *Cinco Corporation v. Guy
    Koren,* Los Angeles County Superior Court Case No. BC701075.

28  [3] Strangely, Koren now contradicts these unequivocal agreements he approved in
    2012, alleging that the NKM License never terminated and that he was "promised"

14

After this board meeting, and pursuant to the agreements set forth in the minutes of that meeting (Ex. 1052 at 3(d)), the very next day on October 17, 2012, the First Amendment to the Joint Venture Agreement (the "AJVA") was entered into, which amended and superseded the JVA. (Ex. 057 at ¶ 31.)

As explained herein, it is obvious why Koren cannot rely exclusively on the AJVA to stretch his tall tale far enough to allege a breach of contract against Cinco arising out of that contract. That is, he cannot escape the admissions – sworn under penalty of perjury – by PCJV itself that "the First Amendment to the JV Agreement [](Exhibit "D") **modified all prior agreements** and constitutes the operative agreement governing PCJV's affairs." Ex. 73, ¶ 67 (PCJV's Verified First Amended Cross-Claim in the Prior Governance Action)) (emphasis added); *see also* Ex. 57 (Korean Decl. at ¶ 31 ("The Amended JV Agreement was and is the operative agreement governing PCJV.")).

This "operating agreement governing PCJV's affairs" confirms that PCJV had two members: Cinco's subsidiary, PCI, and the LA Group. Ex. 46, ¶¶ 32-34; Ex. 57 ¶ 31, Ex. 7 (Trial Ex. 1053 (AJVA)). Koren confirmed this repeatedly in the Prior Governance Action, as well as in this case (and otherwise), including in his declaration on June 10, 2018. Ex. 10 at 2, n. 1 (Decl. of Guy Koren in the Prior Governance Action dated June 13, 2018 testifying "clearly that PCJV has two owners (Potato Corner International and Potato Corner LA Group.")).

Each of Counterclaimants' attempts to make Cinco a party to the AJVA fail on the face of the AJVA. Obviously, Cinco was not a signatory, nor do the recitals identify Cinco as being bound. Ex. 1053. Counterclaimants regularly point out that Cinco is indeed referenced in the document. These are obvious vestigial terms from the superseded JVA – as evidenced by the typos that are carried over from one to the other. *Compare* Ex. 1050 (authenticated by Trial Ex. 57 (Koren Decl.)) (JVA (recital

that none of his stores would ever have to pay license fees. Curiously, there is no written record of these promises that contradict Koren's own evidence he wishes to show the jury.

15

PLAINTIFF AND COUNTERCLAIM DEFENDANT SHAKEY'S PIZZA ASIA VENTURES, INC. AND THIRD-PARTY DEFENDANTS' MOTION FOR SUMMARY JUDGMENT

CASE NO. 2:24-CV-04546-SB(AGRX)

177365297.4

"WHEREAS Cinco may assign **and or all** of its rights to the joint venture company formed under this Agreement to a wholly-owned subsidiary as it deems fit.") where "and or all" was obviously supposed to say, "any and all"); *with* Ex. 1053, the AJVA final recital adopting identical typo in the same place.

Given Cinco's assignment and transfer of interests in PCJV to PCI, Cinco had no rights whatsoever in the management, governance, or operations in or to PCJV. Ex. 046 at ¶¶ 35-41. The absence of any privity between Cinco and PCJV, and the inability to claim any straws for which they grasp, reinforces rather than undermines this Court's prior interpretation that Section 3(g) of the AJVA (Trial Ex. 1053) is an agreement to agree and not a license agreement itself.

### C.    PCJV's Use of the Potato Corner Intellectual Property Was Never Memorialized in a Written Signed Agreement.

The AJVA allocated governance rights and also contained two agreements to agree on future contracts with non-signatories. The first agreement to agree was with respect to a "Master Services Agreement" with PCJV (a non-signatory to the AJVA) governing the LA Group's compensation and management of PCJV. Ex. 46 ¶¶ 42-48, Ex. 11 (Trial Ex. 1053 § 3(h).) This agreement to agree was actually executed and signed on June 18, 2012, ensuring significant compensation to Koren. *Id.* The second agreement to agree was, structurally, identical to 3(h), except it called for a "Master License Agreement" between Cinco and PCJV (both non-signatories to the AJVA), documenting what PCJV was going to have to pay in exchange for the intellectual property, to which it already had access. *Id.* at ¶¶ 42-48, Ex. 11 (Trial Ex. 1053 § 3(g).) The "Master License Agreement" was to document Cinco, as licensor of the Potato Corner Intellectual Property ("PC IP"), entitlement to a royalty of 30% of PCJV's royalties and initial franchise fees as compensation for its license to use the PC IP[4]. *Id.* The AJVA was silent on the length of the term for this future Master

---

[4] The PC IP includes three registered trademarks: (1) the "Potato Corner Logo Mark" (U.S. Reg. No. 3760041); (2) the "Potato Corner Characters Mark (U.S. Reg. No.

License Agreement. *Id.* And, while a Master Services Agreement was quickly executed, a Master License Agreement was never signed. Ex. 46 ¶¶ 42-48.

Counterclaimants' apparent strategy of day-trading on the facts is on full display with respect to the wholesale absence of any evidence of any license agreement. Here, as in other aspects of this case, Counterclaimants try to manufacture one excuse to avoid a different fatal fact, which always leads to yet another fatal fact, which then they try to concoct yet another new fact. Using this "strategy," Counterclaimants offer three rebuttals to the absence of any written license agreement that each sound in equity.

First, Counterclaimants attempt to rescue the fact that it is undisputed PCJV never paid a single penny to Cinco as a royalty for use of the PC IP, and, as such, eliminating their right to enforce that same agreement to which they themselves had breached. Ex. 46, ¶ 44. Instead, Counterclaimants point to the Minutes of the Board meeting the day before, and quote from very ambiguous language that, at best, suggests, a temporary moratorium on royalty payments. Ex. 57, ¶ 31 (quoting from Ex. 6 (Trial Ex. 1052) ("Board has approved that this will not be an expense in the P & L of PCJV but shall be given as part of its distributive income.")).

Even if that language did contain an unambiguous waiver of all future royalties (it does not), that promise was wiped away the very next day when the AJVA was executed with a merger clause. Ex. 1053 ("This Agreement shall constitute the entire agreement between the Parties and shall supersede any previous agreements, written or otherwise, with respect to the same subject matter which may have been made by the Parties prior hereto".) Ever dedicated to a lost cause, it appears Counterclaimants have a new response involving partial integration, which they have yet to fully flesh out. As it stands, however, that Board "resolution" the day before the AJVA was executed, even if insufficiently comprehensive, still cannot answer how PCJV can

---

5900257); and (3) the "World's Best Flavored Fries Characters Mark" (U.S. Reg. No. 6088456). (Ex. 45, ¶ 5 (Dkt. 44-2), Exs. 1-6 (Trial Exs. 1-6.)

enforce a contract with Cinco, as supposedly memorialized in Section 3(g), when it has never complied with its end of the bargain.

Second, Counterclaimants insist that, even though it is not signed, Cinco was "acting" as if it was bound by the fake "Trademark, Copyright, and Know How License Agreement" (Ex. 11) and that Koren attached to a declaration on June 13, 2018, representing to the Court that it is indeed an executed contract. Ex. 10, ¶ 9. Koren never really has an answer for the illusory nature of the agreement (given that it contains scrivener notes asking what the consideration should be). Instead, Koren focuses instead on the absence of a signature.[5] Indeed, Counterclaimants repeat the argument that all parties acted in accordance with the agreement, manifesting intent. What they fail to point out is what obligation or right was arising out of that contract that Cinco took affirmative actions to comply with so as to manifest intent. The reason for the failure is because, as with each of the other day's trading moves, there is no competent evidence, only speculation.

Third, and finally, Counterclaimants argue that some duty – whether it be fiduciary duty, or negligence – obligated Cinco to never monetize, sell, or take advantage of the brand that it established and conceived.

Whereas there is no competent evidence to prove any of Counterclaimants' theories, there is evidence of the opposite – that all parties recognized the absence of, and need for, a Master License Agreement, and discussed this prior to this dispute over the source of PCJV's rights. *See, e.g.,* Ex. 1055 (May 25, 2015 email from Ben Olivas (counsel) to the PCI and LA Group appointed members of PCJV's Board negotiating the terms of a Master License Agreement); Ex. 1065 (December 3, 2017 email from a co-owner of PCJV, Amir Jacoby, stating that as part of moving forward,

---

[5] A new factual misdirection Counterclaimants are fond of is trying to blame the annual representation by PCJV, in PCJV's FDD, including ***after*** SPAVI's acquisition of the brand, that the fake and illusory document that is Ex. 11 is a binding contract, even though there is no proof that Cinco or SPAVI ever sanctioned that or ordered Koren to engage in franchise fraud (putting aside that this also constitutes a surprising abdication of responsibility from the parties who claim only they can properly spread the brand domestically).

18

**PLAINTIFF AND COUNTERCLAIM DEFENDANT SHAKEY'S PIZZA ASIA VENTURES, INC. AND THIRD-PARTY DEFENDANTS' MOTION FOR SUMMARY JUDGMENT**          CASE NO. 2:24-CV-04546-SB(AGRX)

177365297.4

1    a Master License Agreement needed to be negotiated); Ex. 1072 (March 13, 2018

2    Dom Hernandez froma principal of Cinco, re need to negotiate a License Agreement).

3          Moreover, as detailed in the Declarations of Jose Magsaysay (Ex. 46, ¶¶ 59-

4    60). Jose Alvero (Ex. 49 ¶¶ 10-19), Vicente Gregorio (Ex. 1439 ¶¶ 31-70), and Yiow

5    Tan (Ex. 48, ¶¶ 7-12, 24-25, 30-66); Counterclaimants' principal, Koren negotiated

6    a potential license agreement for three years, and not once did he assert that he did

7    not need a written license agreement because of the rights he is now asserting herein.

8          As there was (and still is) no agreement memorializing PCJV's license of the

9    PC IP ever executed, PCJV's license is implied and therefore terminable at will,

10    meaning that it could be terminated anytime without notice. *See Pogrebnoy v.*

11    *Russian Newspaper Distribution, Inc.*, 289 F.Supp.3d 1061, 1070 (C.D. Cal. 2017),

12    *aff'd*, 742 F. App'x 291 (9th Cir. 2018) ("[A]n implied license, like any other

13    contract, is terminable at the will of either party if it is not for a specified term.").

14         **D.**    **The Prior Governance Action Seeking Unrelated Governance**

15              **Rulings as to PCJV's Governance and its Binding Effect on Counterclaimants' Claims.**

16          In or around 2017, corporate governance fights between PCI and the members

17    of the PCJV Board versus Koren and the LA Group, erupted into litigation in 2018,

18    *i.e.*, the Prior Governance Action. Ex. 46, ¶¶ 49-54; Ex. 1079. In that case, PCI sued

19    derivatively, on behalf of PCJV, against Koren and his stores, for rights arising out

20    of the AJVA, and Cinco sued for fraud. Koren, PCJV, and the stores then all

21    countersued basically everyone that had any connection to Cinco and PCI. Ex. 1079

22    (Verified Third Amended Complaint); Ex. 073 (First Amended Cross-Complaint of

23    PCJV); Ex. 038 (Verified Third Amended Cross Complaint of Guy Koren).

24          At issue in the Prior Governance Action was the interpretation and application

25    of the AJVA and what it says about ownership, who sits on its Board of Managers,

26    and whether it was breached by various acts of various parties, including its right of

27    first refusal (AJVA § 2d) when Cinco shares were sold to third parties (AJVA § 2d ).

28    Not one single disputed fact or issue in the Prior Governance Action pertained to or

**PLAINTIFF AND COUNTERCLAIM DEFENDANT SHAKEY'S PIZZA ASIA VENTURES, INC. AND THIRD-PARTY DEFENDANTS' MOTION FOR SUMMARY JUDGMENT**    CASE NO. 2:24-CV-04546-SB(AGRX)

177365297.4

addressed whether PCJV has the right to use the PC IP; in fact, rights to use and own the IP was not even alleged. *Id.*

A central set of allegations by Koren, PCJV, the same category affiliates named as Counterclaimants herein accused PCI of being an alter ego of Cinco and its shareholders and demanded that the corporate separateness of Cinco, and its subsidiary, PCI, be disregarded in whole or in part, and that Cinco be held responsible for all of PCI's obligations as the 60% member of PCJV and as the signatory to the AJVA. Ex. 1353 ¶¶ 56(d), 58(c)-(h), 104(b), 112-115, 208-209.

In 2021, the Court in the Prior Governance Action entered a stay allowing the parties to have space to settle the entire case, and, one year into that prolonged negotiation, Cinco sold the PC IP to SPAVI. Having no interest in Potato Corner other than damages arising out of Koren and his affiliates for themselves, Cinco was willing to compromise those claims just to exit PCJV altogether.

Accordingly, on or around April 19, 2024, the parties to the Prior Governance Action entered into a settlement agreement, wherein PCI would sell its membership interests in PCJV to Koren's affiliate in exchange for full and complete general releases against everyone sued by Koren and PCJV, including, most importantly, PCI and Cinco. Ex. 1172.

The only claims that, as of April 2024 were preserved by Koren against any of the Cinco or PCI-related parties were so-called "Excluded Claims" defined to be "claims arising out of the sale of Potato Corner IP to SPAVI, including declarations of rights by the Koren Parties as to the Potato Corner IP and claims that Cinco breached contractual or other duties owed to the Koren Parties as a result of the acquisition by SPAVI of the Potato Corner IP as well as any related declarations of rights by Cinco." Ex. 1172 (I). As such, unless it is a claim against Cinco Corporation for breached duties or assertions of rights arising out of the sale of PC IP to Cinco, all claims between them were released. *Id.* Any claims that would require piercing PCI's veil, however, were released forever. *Id.*

20

1    Between the final signature and the final hearing in that case in or around May

2    2024, all parties knew that case was over and that PCI was effectively no longer a

3    member of PCJV and that Cinco was out of the Potato Corner business entirely. The

4    entire case was voluntarily dismissed, with prejudice, on May 28, 2024.

5         **E.    SPAVI Acquires the PC Brand from Cinco.**

6         As of the filing of the Prior Governance Action in 2018, PCJV had no written

7    license agreement to use the PC IP, and, as explained above, was operating under an

8    implied terminable at-will license. Ex. 46, ¶ 58. Prior to Cinco's sale of the PC IP to

9    SPAVI, Cinco engaged in negotiations with Koren for a written license agreement.

10   *Id.* at 60. The two discussed the duration of the license agreement, fees, renewals,

11   and rules on modifications. *Id*. No agreement was ever made. *Id*.

12        On March 5, 2022, Cinco sold all of the intellectual property comprising the

13   Potato Corner brand, including the PC IP, to SPAVI in an asset sale. *Id*. at ¶ 61; Ex.

14   1439, ¶¶ 10-13 (Decl. of Vicente Gregorio (the "Gregorio Decl.")). The sale did not

15   include any membership interest in PCJV, nor were any liabilities of Cinco assigned

16   to SPAVI – it was an asset sale. *Id*. Since then, the entire PC IP portfolio has belonged

17   to SPAVI or SPAVI-controlled entities. *Id*.

18        Upon learning about the acquisition, Koren met with SPAVI's representatives

19   and with one exception never objected to the transaction, nor disputed SPAVI's

20   ownership. Ex. 57 ¶41. Contrary to Counterclaimants' allegations, they did not assert

21   the intellectual property rights they now claim (ownership or a "perpetual license").

22   Dkt. 108 at 38, ¶ 27 (Defendant's Answer to Plaintiff's Frist Amended Complaint

23   and Counterclaim/Third-Party Complaint). If one looks at the actual letter cited,

24   Koren's counsel was complaining that Koren should have been given the right of first

25   refusal to SPAVI's acquisition of the IP pursuant to the AJVA. Ex. 1354. A cursory

26   review of the AJVA right of first refusal provision confirms the baseless nature of a

27   claim of entitlement to a preemptive right to acquire the PC-IP and hardly represents

28   an assertion – and indeed, contradicts – a claim of effective ownership or a

21

**PLAINTIFF AND COUNTERCLAIM DEFENDANT SHAKEY'S PIZZA ASIA VENTURES, INC. AND THIRD-PARTY DEFENDANTS' MOTION FOR SUMMARY JUDGMENT**    CASE NO. 2:24-CV-04546-SB(AGRX)

177365297.4

"perpetual" license to the IP that was sold.

In his subsequent two-year negotiation with SPAVI, Koren never insisted to Cinco nor SPAVI that his consent was required for the transaction. Ex. 46 ¶¶ 60-63; Ex. 49 ¶¶ 10-19. Instead, Koren, who had already been trying to negotiate a written license agreement with Cinco, engaged SPAVI to complete that negotiation. Ex. 49 ¶¶ 10-12. Between May of 2022 and May 31, 2024, SPAVI negotiated such an agreement in good faith with Koren, acting on behalf of all Defendants. Ex. 1439, ¶¶ 31-74; Ex. 49, ¶¶ 10-19; Ex. 48, ¶¶ 24-56. At no point during these negotiations did Koren claim a written license was unnecessary because PCJV either owns the PC-IP or has an irrevocable license to use the PC IP. Ex. 48, ¶ 24; Ex. 49, ¶¶ 13-14.

In the end, Koren caused the negotiations to fail by demanding unreasonable terms (including freebies for all of his stores), and then vanishing for months, sometimes a half-year. Ex. 1439, ¶¶ 61-70; Ex. 48 ¶¶ 44-45. By May 2024, after Koren ignored SPAVI's requests to negotiate since February, SPAVI concluded Defendants were unwilling to agree to reasonable terms. Ex. 1439, ¶¶ 61-70.

On May 31, 2024, SPAVI sent to PCJV a notice (1) terminating any license (the "Termination Letter"); (2) demanding that Counterclaimants cease and desist from using PC IP and to inventory the same; and (3) advising franchisees how to contact SPAVI. *Id*. Ex. 29 (Ex. No. 1437). Koren ignored the letter, and PCJV continued operating Potato Corner as if nothing had changed. Ex. 1439, ¶ 73; Ex. 48, ¶ 66. SPAVI then filed this action. Ex. 1551.

## III.   ARGUMENT

In its Order authorizing this motion, this Court correctly observed that "[m]any of Defendants' counterclaims likewise depend on the Court's interpretation of their contracts as creating rights and obligation with which they contend that Plaintiff has interfered." (Dkt. 308 at 1). To be sure, Plaintiff and Third-Party Defendants contend all of Counterclaimants' affirmative claims and defenses require a finding that Cinco was bound by either the AJVA or the never-executed Master License Agreement (or

22

some (inchoate) fiduciary duty), as those are the only two contracts specifically alleged to be binding on Cinco. (*See, e.g.*, Dkt. 108, ¶ 37.) As for SPAVI and its affiliates sued as Third-Party Defendants, their liability requires an additional finding that any duties owed by Cinco were transferred to them in the sale of the PC IP. Because there is no evidence that supports any of these assertions, SPAVI and Third-Party Defendants are entitled to summary judgment as to each of these issues, which must then result in a dismissal of all their Counterclaims and Third-Party Claims.

### A. The Summary Judgment Standard as Applied to Claims and Defenses that Depend Upon Contract Interpretation.

Any party may move for summary judgment of any claim or issue, including "part of each claim or defense," so long as there is "no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." FRCP 56(a). Alternatively, "summary adjudication," or "partial summary judgment" is permitted to adjudicate specific facts, adjudicate and narrow "clearly defined issues," and "dispose of affirmative defenses." *San Francisco Baykeeper v. Levin Enters., Inc.*, 12 F.Supp.3d 1208, 1215 (N.D. Cal. 2013) (citing *Robi v. Five Platters, Inc.*, 918 F.2d 1439, 1441-42 (9th Cir. 1990)).

Here, SPAVI, Cinco, and Third-Party Defendants seek both and, in the alternative, judgment as to Third-Party Defendants, as the conclusions herein would dispose of the entire Third-Party Complaint and excuse them from this case. As for SPAVI, the Counterclaims and certain affirmative defenses would be dispensed with, leaving SPAVI's case in chief to be tried. Alternatively, each of the parties ask that the issues presented herein, and as set forth in Dkt. 301, to be decided as a matter of law pursuant to FRCP 56(g).

Plaintiff and Third-Party Defendants bear the initial burden of demonstrating the absence of a genuine issue of material fact for trial. *Allstate Ins. Co. v. Madan*, 889 F.Supp.374, 378 (C.D. Cal. 1995) (citing *Anderson v. Liberty Lobby, Inc.*, 106 S. Ct. 2505, 2514 (1986). Whether a fact is material is determined by looking to the

23

governing substantive law; a fact is material if it may affect the outcome of the suit. *Id.* If the moving party seeks summary adjudication with respect to a claim or defense upon which it bears the burden of proof at trial, its burden must be satisfied by affirmative admissible evidence. *Id.* By contrast, when the non-moving party bears the burden of proving the claim or defense, the moving party can meet its burden by pointing out the absence of evidence from the non-moving party. The moving party need not disprove the other party's case. *Id.* (internal citation omitted).

When the moving party meets its burden, the "adverse party may not rest upon the mere allegations or denials of the adverse party's pleadings, but the adverse party's response, by affidavits or as otherwise provided in this rule, must set forth specific facts showing that there is a genuine issue for trial." FRCP 56(e). Summary judgment will be entered against the non-moving party, when appropriate, if that party does not present these specific facts. *Id.*

Much of the issues herein address contract interpretation. Summary judgment is appropriate in this context if the contract terms are clear and unambiguous, even when the parties disagree about their meaning. *See U.S. v. King Features Entm't, Inc.*, 843 F.2d 394, 398 (9th Cir.1988)). Interpretation of the contract, including if it is ambiguous, is a matter of law, and therefore appropriate for resolution under Rule 56. *Beck Park Apts. v. U.S. Dep't of Housing*, 695 F.2d 366, 369 (9th Cir.1982).

**B.** **Cinco is Entitled to Summary Judgment On All Third-Party Claims Alleged Because It Owed No Contractual or Fiduciary Duties to Any Counterclaimant**

As a result of the settlement in the Prior Governance Action (the "Settlement Agreement"), the only claims that may be alleged against Cinco by any Counterclaimant are those that "arise out of" the sale of the PC IP from Cinco to SPAVI, which closed on March 2022. Ex. 1172. Here, each of the Counterclaimants alleging affirmative claims allege breach of "contracts" as well as breach of fiduciary duty in addition to seeking declarations that each possesses either ownership or

"perpetual" license to the PC IP.

>     i.    *Cinco is Not a Party to Any Contract with Any Counterclaimant that Conferred Any Duty to Maintain a License for the PC-IP Perpetually, Irrevocably, and For Free.*

Counterclaimants adopt vague, rhetorical devices to conceal that, other than the Settlement Agreement, there is no executed written contract to which Cinco and any of the Counterclaimants are parties. This explains why they refer obliquely to a "royalty free, perpetual license under the PCJV Governing Documents." (Dkt. 108 at 40 at ¶¶ 36-37.) FRCP 56 cannot allow these devices because actual proof is required. They must prove the existence of a contract, and that Cinco and each Counterclaimant executed or were somehow bound by it.

>     ii.    *The Rules of Preclusion, Estoppel, Retraxit, and Law of the Case Limit Defendants' Allegations.*

Counterclaimants allege the "Governing Agreements" that were supposedly breached as being the JVA, the "LLC Agreement," and the Master License Agreement. This is contrary to the allegations these same parties made in the Prior Governance Action in which they allege that "before the [AJVA]," and after the JVA, "PCJV's Limited Liability Company Agreement" was prepared and executed." Ex. 1576, ¶ 68, 24:1-9.   Koren then alleges and affirmatively adopts the Court's conclusion (from the Prior Governance Action) that the "First Amendment to the JV Agreement modified all prior agreements and constitutes the operative agreement governing PCJV's affairs." Ex. 1576 at 24:7-9 (¶ 68); *see also* Ex. 1135-13 (June 18, 2018 Ruling in the Governance Action stating that "[i]t is therefore reasonable to interpret the AJVA as the operative agreement among the parties, superseding the Operating Agreement and the JVA.").

It is understandable why Counterclaimants wish to revive the JVA and LLC Agreement because, particularly the JVA, has Cinco as an actual signatory (albeit with the right of assignment signed by all parties). Counterclaimants should not be able to allege one thing in one case (with success) and then a contrary allegation in

25

**PLAINTIFF AND COUNTERCLAIM DEFENDANT SHAKEY'S PIZZA ASIA VENTURES, INC. AND THIRD-PARTY DEFENDANTS' MOTION FOR SUMMARY JUDGMENT**      CASE NO. 2:24-CV-04546-SB(AGRX)

177365297.4

this case when it suits them. It is for this reason that these clearly inconsistent positions – in this case claiming the JVA and LLC Agreement are live and concurrent agreements, whereas in the Prior Governance Action alleging they have been superseded since 2012 by the AJVA and adopting the Court's ruling on this point – should be precluded under the doctrine of judicial estoppel. *See, e.g,. Ah Quin v. Cnty. of Kauai Dep't of Transp.*, 733 F.3d 267, 270 (9th Cir. 2013). Estoppel of this inconsistent position is particularly appropriate, where, as here Counterclaimants "would derive an unfair advantage or impose an unfair detriment on the opposing party if not estopped." *Id.*

The preclusive effect of the Prior Governance Action does not stop there. Indeed, much of Counterclaimants' affirmative claims and defenses suffer because of their prior retraxit, which is another name for "dismissal with prejudice." *Torrey Pines Bank v. Super. Ct.*, 216 Cal.App.3d 813, 820 (Ct. App. 1989). Under preclusion principles, a retraxit must be "deemed a judgment on the merits against" Counterclaimants "estopping [them] from subsequently maintaining an action for the cause renounced." *Id.* (*citing Roybal v. University Ford*, 207 Cal.App.3d 1080, 1086 (1989)). Under the Full Faith and Credit Clause, this Court must apply California's "preclusion rules in determining the preclusive effect of [California] state judgments." *Noel v. Hall*, 341 F.3d 1148, 1166 (9th Cir. 2003).

This has serious consequences for Counterclaimants who sought desperately in the Prior Governance Action to have Cinco bound by the obligations of its subsidiary as a result of PCI's execution of the AJVA and its membership in PCJV. By dismissing with prejudice its claims that the corporate separateness of PCI and Cinco are disregarded, this "invok[es] the bar of res judicata" and collateral estoppel. *Torrey Pines Bank,* 216 Cal.App.3d at 821.

Neither Koren, PCJV, nor any other Counterclaimant may ever seek relief that is dependent upon a ruling that seeks to pierce the veil of PCI in any way. This is because that subject matter – the extent to which Cinco is bound to the obligations of

26

PLAINTIFF AND COUNTERCLAIM DEFENDANT SHAKEY'S PIZZA ASIA VENTURES, INC. AND THIRD-PARTY DEFENDANTS' MOTION FOR SUMMARY JUDGMENT    CASE NO. 2:24-CV-04546-SB(AGRX)

177365297.4

its subsidiary, PCI – is now precluded and an estoppel.

      iii.    *The AJVA is Not Susceptible to the Interpretation Urged by*
*Defendants and Can be Dispensed as a Matter of Law.*

    The parties are asking this Court, in effect, to interpret § 3(g) of the AJVA, and determine whether that clause (or any other part of the AJVA) conveys the stunningly powerful license described in paragraph 18 of the Counterclaim. Dkt. 108 at 34. In doing so, this Court "must give effect to the mutual intention of the parties which should be inferred **<u>solely</u>** from the written provisions of the contract if possible." *Nationwide Mut. Ins. Co. v. Zurich Am. Ins. Co*., 748 F. Supp. 3d 939, 946 (E.D. Cal. 2024) (internal quotation marks omitted) (emphasis added). Total primacy is given to "[t]he clear and explicit meaning of these provisions, interpreted in their ordinary and popular sense, unless used by the parties in a technical sense or a special meaning is given to them by usage," and only after exhaustion of that analysis may "judicial interpretation" occur. *Id.* (*citing TRB Invs., Inc. v. Fireman's Fund Ins. Co.,* 40 Cal.4th 19, 27 (2006) (internal quotation marks omitted)). Courts should not strain to create ambiguity in a contract where none exists. *Westport Ins. Corp. v. N. Cal.a Relief,* 76 F.Supp.3d 869, 879 (N.D. Cal. 2014).

    Counterclaimants' interpretation of the AJVA is illogical, contrary to the plain language, and ignores – indeed takes great pains to avoid – discussing the actual text. This is because they cannot explain how an agreement that two non-parties to the AJVA – PCJV and Cinco – "shall enter into" can be interpreted to mean "have, by this agreement, entered into." By addressing the actual text, however, Counterclaimants would then have to answer how it is that Cinco can be bound at all, unless it is implying that it is bound because its subsidiary was bound. This hinted at – implied – suggestion should be called out as an attempt to avoid the res judicata effect of PCJV's retraxit of its claim that the corporate separateness of PCI and Cinco should be disregarded. That is precluded plain and simple. The only route to bind Cinco to a license is by direct agreement, and none exists.

27

The "clear and explicit meaning" of 3(g) is that the parties agreed to cause non-parties to the AJVA to enter into *another* (*i.e.,* different) agreement (not even yet drafted). As such, the AJVA was an "agreement to agree" regarding PCJV's use of the PC IP. Counterclaimants' own conduct, including its writings after the AJVA, confirm such. Indeed, they *spent months* negotiating to use the intellectual property.

Counterclaimants urge a tortured interpretation of the AJVA that they never claimed before this case. Sometimes they insist that it is actually *Counterclaimants* that own it. Other times they claim that it means they hold an irrevocable license. Both (inconsistent) positions mandate a divorce from the fundamental tenants of contract interpretation. And aside from themselves, everyone so far has rejected it.

In sum, then, the interpretation offered by Counterclaimants is not reasonable, and SPAVI's is reasonable, meaning there is only one way to read this unambiguous contract. Terms are only ambiguous if their language "is 'reasonably susceptible' to the interpretation urged by a party." *DiMaria v. Arcis Golf LLC*, No. 2:23-CV-05249-SVW-JC, 2024 WL 290273, at *1 (C.D. Cal. Jan. 25, 2024). It is the Court who decides if a term is "reasonable susceptible." *See San Pasqual Band of Mission Indians v. State of Cal. (San Pasqual)*, 241 Cal.App.4th 746, 755 (2015).

Of course, this Court has already concluded this, recognizing that ". . . the AJVA plainly acknowledged Cinco's ownership of the marks by requiring PCJV to license the Potato Corner intellectual property including trademarks from Cinco." Dkt. 56 at 9 (observing further that Counterclaimants show no "rights PCJV may have obtained from Cinco through the AJVA [that] deprive SPAVI of ownership of the registered trademarks at issues," and that the AJVA itself recognizes Cinco's ownership). Finally, the Court recognized that the AJVA summarily dispatched Counterclaimants' unserious argument that the PCJV board minutes on October 16, 2025, meant that no royalties should be due because the minutes predated the AJVA, which had an integration clause. Dkt. 56, at 7, n. 2.

The Ninth Circuit also observed that "the AJVA contained an agreement to

28

enter a future Master License Agreement, not a "perpetual license" like PCJV claims." *Shakeys Pizza Asia Ventures, Inc., v. PCJV USA, LLC*, No. 24-7084, 2025 WL 1431270, at *1 (9th Cir. May 19, 2025) (*citing First Nat'l Mortg. Co. v. Fed. Realty Inv. Tr.*, 631 F.3d 1058, 1065 (9th Cir. 2011) ("[A]n 'agreement to agree,' without more, is not a binding contract.").

Counterclaimants have unearthed no new evidence proving their interpretation since this Court issued its preliminary injunction ruling or the affirmance on appeal. Under the law of the case doctrine, "a court is generally precluded from reconsidering an issue previously decided by the same court, or a higher court in the identical case." *U.S. v. Lummi Indian Tribe*, 235 F.3d 443, 452 (9th Cir. 2000). The doctrine's new evidence exception only applies if proffered evidence "is both new and substantial." *Id.* (collecting cases). This rule even applies to legal conclusions made during an injunction, so long as no new evidence has been discovered. *See* 18 Charles Alan Wright & Arthur R. Miller, Federal Practice and Procedure § 4478.5 (2002).

Even the "evidence" that Counterclaimants already have is inadmissible to interpret the AJVA because the AJVA has no ambiguous terms that require interpretation, so it cannot be admitted under the parol evidence rule. "The test of admissibility of extrinsic evidence to explain the meaning of a written instrument is . . . whether the offered evidence is relevant to prove a meaning to which the language of the instrument is reasonably susceptible." *Brinderson-Newberg Joint Venture v. Pac. Erectors, Inc.*, 971 F.2d 272, 277 (9th Cir. 1992) (citation omitted); *see also, Manetti-Farrow, Inc. v. Gucci Am., Inc.*, 858 F.2d 509, 514 (9th Cir. 1988) ("Traditional contract law provides that extrinsic evidence is inadmissible to interpret an unambiguous contract."). Terms are only ambiguous if their language "is 'reasonably susceptible' to the interpretation urged by a party." *DiMaria*, 2024 WL 290273, at *1. It is the Court who decides if a term is "reasonable susceptible." *See San Pasqual*, 241 Cal.App.4th at 237.

Even if parol evidence was permitted to "interpret" this unambiguous contract,

29

no such evidence exists. Not once before this litigation did Defendants claim to own or have a perpetual right the intellectual property arising out of section 3(g), instead relying on the right of first refusal. When SPAVI took over the trademarks, Koren negotiated for a license to use them *for months*. These attempts are well-documented. For instance, he sent financial documents to SPAVI to try justifying the abhorrently-low terms under which he tried to pay to use the SPAVI trademarks. Not once while negotiating did Koren claim to SPAVI *or* Cinco that PCJV owned the trademarks or had a perpetual, irrevocable, and rotalty free right to them. Indeed, under the Unsigned Master License Agreement, which Koren has previously contended as operative, PCJV recognized Cinco as the owner to the intellectual property and agreed to a limited term that also acknowledged that Cinco had a right to sell the IP.

  iv. *Because Counterclaimants Cannot Produce Any Other Signed Agreement to Which Cinco is a Signatory, It Owes No Contractual Duties to any of the Defendants.*

  Cinco owes no contractual duties to Counterclaimants because there are no signed (or other) agreements between them. The first element to proving a breach of contract is establishing that one exists. *See Walsh v. W. Valley Mission Cmty. Coll. Dist.*, 66 Cal. App. 4th 1532, 1545 (1998). "The agreement must be determined through some combination of written or spoken words and conduct." *Freyr Holdings, LLC v. Legacy Life Advisors, LLC*, No. CV 10-9446 GAF EX, 2014 WL 293649, at *2 (C.D. Cal. Jan. 24, 2014) "[T]he law provides that a contract is formed only when and to the extent that "the parties all agree upon the same thing in the same sense." *Id.* (collecting cases). Here, Counterclaimants have simply failed to demonstrate competent evidence that demonstrate a material issue of fact as to this key element.

  The only contract that was signed by both is the Settlement Agreement; however, that document says nothing about conferring continuing license rights (and indeed, the recitals acknowledge the ongoing negotiation for license with SPAVI). (Ex. 1172 at Recital G). The reference in the section before section 3.03 of the corresponding sale of equity in PCJV is referring to licensed needed by a member of

30

PLAINTIFF AND COUNTERCLAIM DEFENDANT SHAKEY'S PIZZA ASIA VENTURES, INC. AND THIRD-PARTY DEFENDANTS' MOTION FOR SUMMARY JUDGMENT  CASE NO. 2:24-CV-04546-SB(AGRX)

177365297.4

PCJV, not PCJV itself. (Ex. 1172 at 20.) Owners of an LLC licensing IP rights do not need their own IP licenses to be an owner.

> v.    There Is No Evidence of a "Special Relationship" Conferring a Fiduciary Duty Upon Cinco; Therefore, No Fiduciary Duty exists.

Cinco cannot have a fiduciary duty relationship with Counterclaimants because, inter alia, it has no special relationship with them. To prove a claim for breach of fiduciary duty, the claimant must first prove the existence of a fiduciary relationship giving rise to a fiduciary duty. *Negrete v. Fid. & Guar. Life Ins. Co.*, 444 F. Supp. 2d 998, 1003 (C.D. Cal. 2006) (citing *Pierce v. Lyman,* 1 Cal.App.4th 1093 (1991). But a fiduciary relationship is only found where an entity "has knowingly undertaken a high duty" or the law imposes it "because of a special relationship, such as an agency, partnership, or joint venture." *World Surveillance Grp., Inc. v. La Jolla Cove Investors, Inc.*, 66 F.Supp.3d 1233, 1235 (N.D. Cal. 2014).

Counterclaimants have not evidenced any "high duty" that Cinco undertook. They would have to show an undertaking by Cinco related to PCJV that was for the primary benefit of PCJV, instead of meant as a "mutually beneficial arrangement." *City of Hope Nat'l Med. Ctr. v. Genentech, Inc.*, 43 Cal.4th 375, 386 (2008). They instead prop their premise on a naked assertion that Cinco was a joint venturer. A party, however, cannot prove a joint venture unless it shows joint control over it, the members sharing in the undertaking's profits, and each having an ownership interest in the enterprise. *Simmons v. Ware*, 213 Cal.App.4th 1035, 1049 (2013). This too, Counterclaimants have offered no competent evidence for.

**C.    SPAVI is Also Entitled to Summary Judgment on all Counterclaims and Affirmative Defenses Alleged Because It Owed No Contractual or Fiduciary Duties to any Defendant.**

Counterclaimants cannot demonstrate that Plaintiff has either a contractual relationship with SPAVI such that SPAVI owes any duties to Counterclaimants.

> i.    *SPAVI Owes No Contractual Duty to Any Counterclaimant Because SPAVI is Not in Contractual Privity with Any Counterclaimant and SPAVI is Not Cinco's "Successor in Interest"*

31

In support of their Seventh Claim for Relief for Breach of Fiduciary Duty in their Counterclaim, Counterclaimants allege that "to the extent that SPAVI stepped into Cinco's shoes by virtue of its alleged acquisition with Cinco, SPAVI became Cinco's successor-in-interest such that it, too, owed (and owes) [Counterclaimants] a fiduciary duty." Dkt. 108, ¶ 78. This allegation is rooted in Counterclaimants allegation that Cinco was a joint venturer and partner in PCJV and PCIT. Dkt. 108, ¶ 78. Assuming the truth of this allegation (though Cinco disputes it), Counterclaimants have failed to demonstrate with any evidence that SPAVI in fact "became Cinco's successor-in-interest such that it, too, owed (and owes) [Counterclaimants] a fiduciary duty." Dkt. 108, ¶ 78.

In fact, Cinco's principal, Mr. Magsaysay, testified that Cinco only sold to SPAVI the "entire portfolio of Potato Corner Intellectual Property, and all goodwill associated with each item in that portfolio . . . ." Ex. 46, ¶ 16. SPAVI's CEO, Mr. Gregorio, confirmed this, testifying that SPAVI only acquired "all assets and intellectual properly (including all trademarks, all copyrights, all trade secrets, etc.) relating to the "Potato Corner" brand from Cinco Corporation ("Cinco") and its affiliated companies." Ex. 47, ¶ 10. This is further documented through the Deeds of Assignment of the Potato Corner Intellectual Property. *See* Exs. 4, 6. Cinco sold no other assets, ownership interests, or any other interests to SPAVI.

Counterclaimants have no documents or other evidence to refute this or otherwise demonstrate that SPAVI was Cinco's "successor in interest" as a joint venturer and partner in PCJV and PCIT.

    ii.    *Even If SPAVI Was Cinco's Successor In Interest, Cinco Owed No Duty to Any Counterclaimants so SPAVI Owes No Duty to Any Counterclaimant*

As discussed above, Cinco owes no duty to Counterclaimants, whether it be through a contract or a special relationship. Cinco is not in contractual privity with any of the Counterclaimants, so Cinco cannot and does not owe any duties to any Counterclaimant arising out of a contract. *See Waverly Prods., Inc. v. RKO General,*

32

1  *Inc.* (1963) 217 Cal.App.2d 721, 732 ("A mere contract or a debt does not constitute
2  a trust or create a fiduciary relationship."); *see also Wolf v. Super. Ct.* (2003) 107
3  Cal.App.4th 25, 30–31, 33–34; *Recorded Picture Co. [Productions ] Ltd. v. Nelson*
4  *Entertainment, Inc.* (1997) 53 Cal.App.4th 350, 370.

5  Cinco also owes no fiduciary duties to any Counterclaimant because it has no
6  special relationship with any of them. Counterclaimants have failed to demonstrate
7  that a joint venture exists through contract or conduct, and Counterclaimants have
8  not alleged any other premise upon which a fiduciary duty may be had.

9  It only follows, then, that even if SPAVI was Cinco's successor in interest, it
10  would have the same responsibilities (or lack thereof) that Cinco did, which did not
11  include any duty to Counterclaimants. As such, Counterclaimants' successor-in-
12  interest theory fails. Given the foregoing, Counterclaimants have failed to
13  demonstrate that SPAVI owes any Counterclaimant any duties, regardless of whether
14  or not SPAVI is a successor in interest to Cinco.

15  **IV.   CONCLUSION**

16  For the reasons stated herein, Plaintiff and Third-Party Defendants hereby
17  request that this Court grant this Motion for Summary Judgment as to each and every
18  claim for relief stated in the Counterclaim and Third-Party Complaint. To the extent
19  the Court does not grant all the relief requested by this motion, Plaintiff and Third-
20  Party Defendants hereby move the Court for an order pursuant to Federal Rule of
21  Civil Procedure 56(g) establishing in this case any material fact not genuinely in
22  dispute.

23
24
25
26
27
28

33

1    Dated:  9/24/2025                          FOX ROTHSCHILD LLP

2

3                                              /s/ Michael D. Murphy
                                               Michael D. Murphy
4                                              Matthew Follett
                                               Meeghan H. Tirtasaputra
5                                              Attorneys for Plaintiff and Counterclaim
                                               Defendant SHAKEY'S PIZZA ASIA
6                                              VENTURES, INC. and Third Party
                                               Defendants CINCO CORPORATION,
7                                              PC INTERNATIONAL PTE LTD., and
                                               SPAVI INTERNATIONAL USA, INC.
8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

34

# CERTIFICATE OF SERVICE

The undersigned certifies that, on September 24, 2025, the foregoing document was electronically filed with the Clerk of the Court for the United States District Court, Central District of California, using the Court's ECF filing system. I further certify that all counsel for all parties to this action are registered CM/ECF user and that service will be accomplished by the CM/ECF system.

I certify under penalty of perjury that the foregoing is true and correct.

Dated:  September 24, 2025

FOX ROTHSCHILD LLP

_/s/ Michael D. Murphy_
Michael D. Murphy
Attorneys for Plaintiff and Counterclaim
Defendant SHAKEY'S PIZZA ASIA
VENTURES, INC. and Third-Party
Defendants CINCO CORPORATION,
PC INTERNATIONAL PTE LTD., and
SPAVI INTERNATIONAL USA, INC.

35