**BLANK ROME LLP**
Todd M. Malynn (SBN 181595)
todd.malynn@blankrome.com
Arash Beral (SBN 245219)
arash.beral@blankrome.com
Jamison T. Gilmore (SBN 322100)
jamison.gilmore@blankrome.com
2029 Century Park East | 6th Floor
Los Angeles, CA 90067
Telephone:   424.239.3400
Facsimile:   424.239.3434

Attorneys for Defendants, Counterclaimants, and Third Party Plaintiffs PCJV USA, LLC, PCI TRADING LLC, POTATO CORNER, LA GROUP, LLC, GK CAPITAL GROUP, LLC, NKM CAPITAL GROUP, LLC and GUY KOREN, and Defendants J & K AMERICANA, LLC, J&K LAKEWOOD, LLC, J&K OAKRIDGE, LLC, J&K VALLEY FAIR, LLC, J & K ONTARIO, LLC, J&K PC TRUCKS, LLC, HLK MILPITAS, LLC, and GK CERRITOS, LLC

# UNITED STATES DISTRICT COURT

# CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| SHAKEY'S PIZZA ASIA VENTURES, INC, a Philippines corporation,<br><br>Plaintiff,<br><br>vs.<br><br>PCJV USA, LLC, a Delaware limited liability company; PCI TRADING , LLC, a Delaware limited liability company; GUY KOREN, an individual; POTATO CORNER LA GROUP, LLC, a California limited liability company; NKM CAPITAL GROUP, LLC, a California limited liability company; J & K AMERICANA, LLC, a California limited liability company; J&K LAKEWOOD, LLC, a California limited liability company; J&K VALLEY FAIR, LLC, a California limited liability company; J & K ONTARIO, LLC, a California limited liability company; HLK MILPITAS, LLC, a California, limited liability company; GK CERRITOS, LLC, a California, limited liability company;  J&K PC TRUCKS, LLC, a California limited liability company; and, GK CAPITAL GROUP, LLC, a California | Case No. 2:24-CV-04546-SB(AGRx)<br><br>*Hon. Stanley Blumenfeld, Jr.*<br><br>**MEMORANDUM OF POINTS AND AUTHORITIES IN OPPOSITION TO MOTION FOR SUMMARY JUDGMENT BY COUNTER-DEFENDANT/THIRD PARTY DEFENDANTS**<br><br>Complaint Filed:   May 31, 2024<br>Trial Date:          TBD |

i

1  limited liability company and DOES 1
   through 100, inclusive,

2                          Defendants.

3  _____

4  PCJV USA, LLC, a Delaware limited
   liability company; PCI TRADING LLC, a
5  Delaware limited liability company;
   POTATO CORNER LA GROUP LLC, a
6  California limited liability company; GK
   CAPITAL GROUP, LLC, a California
7  limited liability company; NKM CAPITAL
   GROUP LLC, a California limited liability
   company; and GUY KOREN, an individual,
8
                        Counter-Claimants,
9
         v.
10
   SHAKEY'S PIZZA ASIA VENTURES,
11 INC, a Philippines corporation,

12                     Counter Defendant.

13 _____

14 PCJV USA, LLC, a Delaware limited
   liability company; PCI TRADING LLC, a
15 Delaware limited liability company;
   POTATO CORNER LA GROUP LLC, a
16 California limited liability company; GK
   CAPITAL GROUP, LLC, a California
17 limited liability company; NKM CAPITAL
   GROUP LLC, a California limited liability
   company; and GUY KOREN, an individual,
18
19                     Third Party Plaintiffs,

20       v.

21 PC INTERNATIONAL PTE LTD., a
   Singapore business entity; SPAVI
22 INTERNATIONAL USA, INC., a California
   corporation; CINCO CORPORATION, a
23 Philippines corporation; and ROES 1 through
   10, inclusive,
24
                       Third Party Defendants.
25

26

27

28
                                    ii

# **TABLE OF CONTENTS**

I.    INTRODUCTION ........................................................................................1

II.   PRELIMINARY PROCEDURAL/EVIDENTIARY DEFICIENCIES.....4

III.  RESPONSIVE STATEMENT OF MATERIAL FACTS..........................5

IV.   LEGAL STANDARD .................................................................................8

V.    ARGUMENT...............................................................................................8

    A.    Plaintiffs Have Not Shown Ownership by Valid Assignment.........8

    B.    PCJV's Authorization and Long-Term Rights are Established......11

        1.    The Agreements Granted PCJV Long-Term Rights. ..........11

        2.    At Minimum, Long-Term Duration Must Be Implied. .......14

        3.    Plaintiffs' "Cinco Exit" and "No License" Theories are Irreconcilable with the Record..............................................16

    C.    Independent Grounds Defeat Plaintiffs' Motion and Support Judgment for Defendants. ...............................................................18

        1.    Senior and Continuous Use Favor PCJV............................18

        2.    Preclusion and Law-of-the-Case Do Not Support Plaintiffs. ............................................................................................20

    D.    Plaintiffs' Conclusory Attacks on the Claims/Defenses Fail.........21

    E.    The Rule 56(g) Request Should be Denied; Facts Favor Defendants.......................................................................................22

VI.   CONCLUSION .........................................................................................22

iii

**MEMORANDUM OF POINTS AND AUTHORITIES IN OPPOSITION TO MOTION FOR SUMMARY JUDGMENT BY COUNTER-DEFENDANT/THIRD PARTY DEFENDANTS**

1

## **TABLE OF AUTHORITIES**

2

3

**Page(s)**

4

5

**Cases**

6

*Ahl-E-Bait Media, Inc. v. Jadoo TV, Inc.*,
  Case No. CV 12-05307 (MMM (PJWx), 2013 WL 11324312 (C.D. Cal. Apr. 16, 2013) ................................................................................................................ 16

7

8

*Albino v. Baca*,
  747 F.3d 1162 (9th Cir. 2014) (*en banc*) ............................................................ 4, 8

9

*Arana v. Tesla Motors, Inc.*,
  2024 WL 693802 (C.D. Cal. Jan. 8, 2024) ................................................................ 5

10

*Ariel Preferred Retail Group, LLC v. CWCapital Asset Management*,
  883 F. Supp. 2d 797 (E.D. Mo. 2012) ...................................................................... 18

11

*Ballard v. MacCallum*,
  15 Cal. 2d 440 (1940) .............................................................................................. 15

12

13

*Banner Entertainment, Inc. v. Superior Court*,
  62 Cal. App. 4th 348 (1998) .................................................................................... 12

14

*Beck Park Apts. v. HUD*,
  695 F.2d 366 (9th Cir. 1982) ............................................................................. 11, 12

15

*Bridgeway-Partners, L.L.C. v. Cox Business Services, LLC*,
  2015 WL 12644567 (C.D. Cal. June 22, 2015) .......................................................... 8

16

*California Packing Corp. v. Sun-Maid Raisin Growers*,
  81 F.2d 674 (9th Cir. 1936) ...................................................................................... 13

17

18

*Ceballos v. Banda Maguey Corp.*,
  2024 WL 3469047 (C.D. Cal. 2024) .......................................................................... 5

19

*Certified Corp. v. Hawaii Teamsters*,
  597 F.2d 1269 (9th Cir. 1979) .................................................................................. 17

20

*Cornell University v. Illumina, Inc.*,
  C.A. No. 10-433-LPS-MPT, 2014 WL 12601516 (D. Del. Sept. 29, 2014).......... 18

21

*Ctr. for Biological Diversity v. Salazar*,
  706 F.3d 1085 (9th Cir. 2013) .................................................................................. 21

22

23

*Deutsch v. Phillips Petroleum Co.*,
  56 Cal. App. 3d 586 (1976) ...................................................................................... 15

24

*E. & J. Gallo Winery v. Gallo Cattle*,
  967 F.2d 1280 (9th Cir. 1992) .................................................................................. 10

25

*Esparza v. Kohl's, Inc.*,
  723 F.Supp. 3d 934 (S.D. Cal. 2024) ......................................................................... 5

26

*Fed. Treasury Enter. Sojuzplodoimport v. Spirits Int'l N.V.*,
  623 F.3d 61 (2d Cir. 2010) .......................................................................................... 9

27

*Glass v. Sue*,
  2010 WL 4274581 (C.D. Cal. Oct. 22, 2010) ........................................................... 5

28

iv

*Glow Indus., Inc. v. Lopez,*
  273 F. Supp. 2d 1095 (C.D. Cal. 2003) ................................................ 10

*Grupo Gigante SA De CV v. Dallo & Co., Inc.,*
  391 F.3d 1088 (9th Cir. 2004) ............................................................ 14

*ICEE Distribs., Inc. v. J&J Snack Foods Corp.,*
  325 F.3d 586 (5th Cir. 2003) .............................................................. 13

*In re Impact Distributors, Inc.,*
  260 B.R. 48 (Bankr. S.D. Fla. 2001) (citing *TMT North America, Inc. v. Magic Touch,* 124 F.3d 876 (7th Cir. 1997)) ................................................ 9

*In re OFT Expl., Inc.,*
  No. 95-3-193-TC, 1997 WL 195440 (N.D. Cal. Apr. 10, 1997) .......... 16

*Ingram Micro Inc. v. Signeo Int'l, Ltd.,*
  No. SACV 13-1934-DOC ANX, 2014 WL 3721197 (C.D. Cal. July 22, 2014)... 16

*Jones v. Sunset Oil Co.,*
  118 Cal. App. 2d 668 (1953) .............................................................. 17

*Kiva Health Brands LLC v. Kiva Brands Inc.,*
  402 F. Supp. 3d 877 (N.D. Cal. 2019) ................................................ 13

*Major v. Wells Fargo Bank, N.A.,*
  Case No.: 3:19-cv-00015-H-AGS, 2019 WL 1858502 (S.D. Cal. Apr. 25, 2019) 16

*Malmstrom v. Kaiser Aluminum & Chemical Corp.,*
  187 Cal. App. 3d 299 (1986) .............................................................. 18

*Matanuska Valley Farmers Coop. Ass'n v. Monaghan,*
  188 F.2d 906 (9th Cir. 1951) .............................................................. 17

*McNeece v. Wood,*
  204 Cal. 280 (1928) ............................................................................ 15

*Merced County Sheriff's Employees' Assn. v. County of Merced,*
  (1987) 188 Cal. App. 3d 662 .............................................................. 12

*Milenbach v. Comm'r Internal Revenue,*
  318 F. 3d 924 (9th Cir. 2003) ............................................................ 15

*Miran v. Convergent,*
  2017 WL 1410296 (S.D. Cal. 2017) ............................................. 11, 17

*Mister Donut of Am. v. Mr. Donut,*
  418 F.2d 838 (9th Cir. 1969) .............................................................. 10

*N.A.A.C.P. v. N.A.A.C.P. Legal Defense & Education Fund, Inc.,*
  753 F.2d 131 (D.C. Cir. 1985) ............................................................ 13

*Nat'l Union Fire v. Argonaut,*
  701 F.2d 95 (9th Cir. 1983) .................................................................. 8

*Parkinson v. Robanda Intern., Inc.,*
  641 Fed. Appx. 745, 747 (9th Cir. 2016) ............................................ 9

*Pogrebnoy v. Russian Newspaper Distribution, Inc.,*
  289 F.Supp. 3d 1061 (C.D. Cal. 2017) ................................................ 15

*Precision Door Service, Inc. v. Bell,*
  2002 WL 655053 (N.D. Cal. Apr. 18, 2002) ...................................... 19

v

**MEMORANDUM OF POINTS AND AUTHORITIES IN OPPOSITION TO MOTION FOR SUMMARY JUDGMENT BY COUNTER-DEFENDANT/THIRD PARTY DEFENDANTS**

*Ranchers Cattlemen Action Legal Fund United Stockgrowers of Am. v. U.S. Dep't of Agric.*,
    499 F.3d 1108 (9th Cir. 2007) .................................................... 21

*Russell Road Food & Beverage, LLC v. Spencer*,
    829 F.3d 1152 (9th Cir. 2016) .................................................... 13

*Sarieddine v. Alien Visions E-Juice, Inc.*,
    No. CV 18-3658 PA (MAAx), 2019 WL 1966661 (C.D. Cal. April 12, 2019)....... 9

*Simmons v. Ware*,
    213 Cal. App. 4th 1035 (2013) .................................................... 18

*Stormans, Inc. v. Wiesman*,
    794 F.3d 1064 (9th Cir. 2015) .................................................... 21

*Thomson v. Hodgson*,
    2025 WL 2406526 (9th Cir. Aug. 20, 2025) .................................... 4, 14

*U.S. v. Dahan*,
    369 F. Supp. 2d 1187 (C.D. Cal. 2005) ........................................ 8

*U.S. v. S. Cal. Edison Co.*,
    300 F.Supp.2d 964 (E.D. Cal. 2004) ............................................ 5

*Universal Sales Corp. v. Cal. Press Mfg. Co.*,
    20 Cal. 2d 751 (1942) .......................................................... 15

*Vita Planning & Landscape Architecture, Inc. v. HKS Architects, Inc.*,
    240 Cal. App. 4th 763 (2015) .................................................. 12

*Williamson v. Superior Court of Los Angeles County*,
    21 Cal.3d 829 (1978) .......................................................... 10

*Wind Dancer Prod. Grp. v. Walt Disney Pictures*,
    10 Cal. App. 5th 56 (2017) .................................................... 17

**Statutes**

15 U.S.C. § 1055 ................................................................. 19

Cal. Civ. Code § 1442 ........................................................... 15

Cal. Civ. Code §§ 1641, 1643 .................................................... 11

Cal. Civ. Code §§ 1650, 1654 .................................................... 16

**MEMORANDUM OF POINTS AND AUTHORITIES IN OPPOSITION TO MOTION FOR SUMMARY
JUDGMENT BY COUNTER-DEFENDANT/THIRD PARTY DEFENDANTS**

## I.    __INTRODUCTION__

At bottom, Plaintiffs'[1] motion fails no matter which lane they choose:

*Lane One*: If Cinco had no licensing obligations to PCJV, the case turns on trademark ownership—whether Cinco or PCJV was the senior or continuous user, and, if Cinco, whether there was a valid assignment of the business/goodwill. The record shows a joint venture with control vested in PCJV's President. Plaintiffs did not acquire the business or goodwill of PCJV's U.S. franchise system and, at most, received a naked license. Plaintiffs themselves contend Cinco exited the joint venture; thus, Plaintiff acquired no control, business, or enforceable rights. In contrast, Defendants acquired full ownership and goodwill in 2024.

*Lane Two*: If Cinco had licensing obligations, the same ownership issues remain, but Plaintiffs must also negate consent or authorization. They cannot. The governing documents, course of dealing, and Cinco's own statements confirm Defendants' authorization and long-term rights.

*Lane Three*: If Plaintiffs rely on state-court proceedings or preclusion doctrines, that too fails: (1) Plaintiffs did not plead, and have waived, res judicata and collateral estoppel; (2) the Court has already ruled the state case did not adjudicate trademark ownership or licensing burdens; and (3) the Court has twice stated its prior rulings were preliminary and based on an incomplete record.

When stripped of its rhetoric and hyperbole, Plaintiffs' motion rests solely on a series of logical fallacies and unsupported premises. The motion advances an all-or-nothing narrative that if there is no fully executed separate license agreement, Defendants could not have any enforceable rights; that a sale of trademark registrations alone confers unfettered power to revoke long-standing franchise rights; and that Plaintiff can be a successor for benefits but not for burdens. Each move ignores the record, controlling law and Plaintiff's own and Cinco's prior sworn admissions. The logical fallacies are numerous:

---

[1] For ease, Defendants refer to the movants as "Plaintiffs" and SPAVI as "Plaintiff."

1    <u>False Dichotomy</u>: Plaintiff asserts that the absence of a "Master License

2  Agreement" means there was no authorization at all. But the undisputed record

3  establishes a decade-plus of authorized, long-term use implemented through a

4  unified set of governing agreements and course of dealing: PCJV has been the sole

5  master franchisor in the U.S. since 2010; every franchisee obtained rights from

6  PCJV; the franchise agreements grant initial 10-year terms with successive 10-year

7  renewals; and goodwill inures to PCJV. Plaintiff's own authorities confirm that

8  licenses can be expressed, implied, and implied by conduct, and that California law

9  construes related integrated agreements holistically, not by isolating a single

10  document. Plaintiff's "no signature = no rights" framing is erroneous.

11    <u>Strawman</u>: The motion fixates on one clause (First Amendment § 3(g)) while

12  ignoring both threshold issues that render whatever that one clause means moot as

13  well as (a) the unified scheme allocating day-to-day IP control and franchising

14  authority to PCJV and its President/LA Group (JVA/LLC/MSA), (b) the indefinite

15  duration and supermajority/mutual termination mechanics, and (c) trailing IP

16  protections. It also ignores Cinco's testimony admitting that PCJV had a license

17  "under the JVA" and that Cinco's "sole" right was to share in franchise and royalty

18  fees—admissions squarely inconsistent with Plaintiff's present theory. The motion

19  constructs an erroneous version of Defendants' position to knock down, not the

20  actual record before the Court to adjudicate under applicable authorities.

21    <u>Equivocation</u>: Plaintiff alternately disclaims being Cinco's successor (to avoid

22  obligations and defenses) while claiming to stand in Cinco's shoes to control the

23  marks against Defendants and third-party franchisees. An assignee "stands in the

24  shoes" of its assignor and takes subject to all defenses, equities, and existing license

25  burdens; it cannot claim greater rights than its assignor had, nor revoke consent long

26  relied upon in a franchise system. Plaintiff cannot be a successor for benefits but not

27  for burdens, especially in the face of settlement releases and estoppel.

28

2

False Premise on Ownership: Plaintiff assumes it validly acquired trademark ownership. But it makes no showing to rebut PCJV's senior and sole continuous use as well as the undisputed record showing it did not acquire the U.S. franchise business, membership interests, franchise agreements, regulatory obligations, supply chain contracts, or related goodwill—indeed, it disavowed them. It cannot and does not even attempt to meet its burden of proof. A trademark assignment without transfer of the business and its goodwill is invalid as an assignment in gross.

Misapplication of Preclusion/Estoppel: Plaintiff asks the Court to preclude Defendants' positions while disregarding (a) its pleadings and pre-trial waivers of such defenses, (b) the Court's plain guidance on these issues, (c) legal authority governing them, and (d) Cinco's own actually contrary sworn positions, the unified contractual scheme, and the settlement's binding releases. Preclusion and estoppel principles here cut only against Plaintiff, as an assignee cannot relitigate or expand rights beyond the assignor's—especially where the assignor's verified pleadings confirm PCJV's licensing rights and limited economic entitlement to royalties/fees. Plaintiff's motion tries to weaponize preclusion asymmetrically and ignores the same doctrines when they apply against it.

Forfeiture-Based Construction: Plaintiff's reading would retroactively forfeit vested franchise and JV rights, nullify long-term grants, and upend over a decade of regulated franchising—all contrary to California contract principles, which disfavor forfeitures, imply reasonable durations consistent with the contract's purpose, and enforce stated termination mechanics (supermajority, mutual consent and dissolution). Plaintiff cannot convert a negotiated, indefinite-term venture into a mere at-will license collapsible by an alleged asset purchaser.

Disregard of Third-Party and Public-Regulatory Interests: The motion treats franchisee rights as extinguishable by assignment. But the core dispute turns on contract interpretation across the parties' related agreements, with PCJV as the sole

MEMORANDUM OF POINTS AND AUTHORITIES IN OPPOSITION TO MOTION FOR SUMMARY JUDGMENT BY COUNTER-DEFENDANT/THIRD PARTY DEFENDANTS

U.S. franchisor whose franchisees took long-term rights and whose goodwill inures to PCJV. Plaintiff cannot erase those settled rights or the regulatory framework by pointing to unreliable and irregular secondary evidence of alleged deeds.

The Court invited focused briefing to resolve threshold legal issues grounded in contract interpretation and ownership. The dispositive record (as supplemented) establishes that Plaintiffs cannot meet their burdens. At minimum, the recent decision in *Thomson v. Hodgson*, 2025 WL 2406526, at *4–8 (9th Cir. Aug. 20, 2025) confirms that duration can be implied from the nature and surrounding circumstances of IP agreements and parties' conduct—plainly satisfied here.

Plaintiffs' motion does not carry its initial burden on any issue. It ignores core evidence, proffers public-record notices for the truth of disputed matters, and sidesteps the undisputed course of dealing that controls under state law. The motion should be denied. Given Plaintiffs' failure of proof on ownership and lack of consent, the Court may also enter judgment for Defendants on Plaintiffs' claims. *Albino v. Baca*, 747 F.3d 1162, 1176 (9th Cir. 2014) (*en banc*).

## II.    PRELIMINARY PROCEDURAL/EVIDENTIARY DEFICIENCIES

Plaintiffs' motion is procedurally deficient. As movants, they bear the initial burden to show the absence of a genuine issue of material fact before any burden shifts to Defendants. Instead, Plaintiffs proceed as if Defendants must prove every element of their claims and defenses, which is not the law. Plaintiffs must negate an essential element or point out the absence of evidence with record citations; conclusory assertions that Defendants "lack evidence" do not satisfy Rule 56. It is also unreasonable to expect Defendants to prove every element of their defenses and counterclaims in a 22-page brief, especially on an expedited schedule.

Plaintiffs' motion is substantively wrong. The Court has recognized that both sides' claims depend on unresolved contract interpretation and ownership issues, and that proceeding without resolving these threshold questions would cause

**MEMORANDUM OF POINTS AND AUTHORITIES IN OPPOSITION TO MOTION FOR SUMMARY JUDGMENT BY COUNTER-DEFENDANT/THIRD PARTY DEFENDANTS**

confusion and inefficiency. Plaintiffs seek rulings on duties, consent, and ownership while disputing the very expressed and implied agreements the Court has identified as foundational. Until these issues are resolved, the existence or scope of any duty cannot be determined as a matter of law.

Also, Plaintiffs failed to file a Statement of Uncontroverted Facts or new declarations authenticating the Trial Exhibits, which is fatal to their motion. *See Arana v. Tesla Motors, Inc.*, 2024 WL 693802, at *2 (C.D. Cal. Jan. 8, 2024); *Glass v. Sue*, 2010 WL 4274581, at *6 n.4 (C.D. Cal. Oct. 22, 2010). Defendants cannot discern what Plaintiffs claim are undisputed material facts supported by admissible evidence to appropriately respond under Rule 56. On that note, Defendants must object on due process grounds to the lack of a separate summary judgment record, which prevents proper evidentiary objections. Out of caution, Defendants object to all declarations as constituting hearsay including inadmissible former testimony, lacking foundation, conclusory, or secondary evidence.

Defendants also object to Plaintiffs' request for judicial notice, which could only be limited to the existence of public records, not the truth of their contents or disputed facts. *See Esparza v. Kohl's, Inc.*, 723 F.Supp. 3d 934, 940 (S.D. Cal. 2024); *U.S. v. S. Cal. Edison Co.*, 300 F.Supp.2d 964, 974 (E.D. Cal. 2004); *Ceballos v. Banda Maguey Corp.*, 2024 WL 3469047, at *3 (C.D. Cal. 2024).

## III.  RESPONSIVE STATEMENT OF MATERIAL FACTS

Because Plaintiffs did not file a separate statement, Defendants have identified twelve material points that, based on the record of the cross-motions and the supplemental evidence submitted with this opposition, are either undisputed or supported by evidence sufficient to entitle Defendants to judgment as a matter of law—or, at minimum, to defeat Plaintiffs' motion:

1. Since 2010, PCJV has been the sole master franchisor of Potato Corner in the United States, and is the only entity ever authorized to sell Potato

Corner franchises in the U.S. All U.S. franchisees obtained their rights to use the Potato Corner marks from PCJV, with franchise agreements providing for initial ten-year terms and rights to successive ten-year renewals, extending franchisee rights well into the future. Franchisees agreed that all goodwill inures to PCJV's exclusive benefit. Dkt. 257; TE 62, 1045, 1050, 1053; Bartolome Decl. ¶¶ 13–20; Supp. Bartolome Decl. ¶¶ 9–18; Kurtz Decl. ¶¶ 4–14; Mandel Decl. ¶¶ 10-12; Koren Decl. ¶ 20(a).

2. PCJV is governed by a set of agreements (including the Joint Venture Agreement, its First Amendment, the LLC Agreement, and the Master Services Agreement), all of which provide for indefinite duration and require a supermajority vote or mutual agreement for termination. TE 62 §§ 2.7, 4.11.7, 9.1–9.2; TE 1050/1053 §§ 3, 4; TE 1045; Supp. Bartolome Decl. ¶¶ 9–18; Supp. Koren Decl. ¶¶ 4–8, 16–23; Koren Decl. ¶ 20(b).

3. The First Amendment is additive, not substitutive, and did not release or novate Cinco. TE 1052; Supp. Bartolome Decl. ¶¶ 9–13, 18(b).

4. Course of dealing confirms the long-term authorization: PCJV's decade of franchising, mutual royalty waivers, FDDs reflecting a minimum 50-year term (20 + 3×10), and management/control structure. Bartolome Decl. ¶¶ 16–20; Supp. Bartolome Decl. ¶¶ 9–17; Mandel Decl. ¶¶ 7–17.

5. Cinco's verified pleadings and other sworn statements in prior litigation confirm that PCJV's business, reputation, and goodwill were at stake in U.S. operations, and that PCJV's rights to the marks were governed by the JVA and LLC structure, and alleged that Cinco's "sole" right was to receive a share of franchise and royalty fees ("due and owing")—an allegation inherited but only partially advanced by Plaintiff in its proffered triple "exit" (but no license) position. Dkt. 309-1 at 8–10; 1084 ¶ 39; 1086 ¶ 39; TE 1077–1079; Koren Decl. ¶ 20(c).

**MEMORANDUM OF POINTS AND AUTHORITIES IN OPPOSITION TO MOTION FOR SUMMARY JUDGMENT BY COUNTER-DEFENDANT/THIRD PARTY DEFENDANTS**

6. Plaintiff did not acquire any ownership rights or equity in Cinco, PCI, PCJV, or PCI Trading, and expressly disavowed acquiring PCJV's membership interests, franchise agreements, regulatory obligations, supply chain contracts, and related businesses, as well as any contractual or fiduciary obligations owed to or by PCJV. As a result, Plaintiff did not acquire the goodwill of the U.S. franchised business. There are no transactional documents in the record showing a valid transfer of U.S. goodwill. The record, rather, reflects unreliable and irregular documents including an August 2024 notarized "Amended and Restated Trademark Licensing Agreement" inconsistent with a 2022 transfer. TE 4 at 5; TE 6 at 3; TE 1520 at 4; Koren Decl. ¶ 20(d).

7. The Cinco Parties' 2024 releases and settlement agreement, negotiated and executed with counsel who also represents Plaintiff, expressly bind successors, subsidiaries, affiliates, and assigns, including Plaintiff, and released all known and unknown claims, including verified claims for licensing royalties. The negotiated and agreed-upon state-court settlement and releases bind successors, affiliates, and assigns, and preserved only Defendants' claims tied to the purported 2022 sale. TE 1172 at 2.

8. Following the alleged assignment to Plaintiff, PCJV continued operating as master franchisor. Plaintiff did not intervene in or seek relief for years in state court, did not "correct" Cinco's positions, conduct, and verified admissions, but allowed PCJV's continued operation for years, corroborating Defendants' authorization, control, and continuous use. Supp. Bartolome Decl. ¶¶ 14–18; Supp. Koren Decl. ¶¶ 26–29.

9. PCJV's use of the U.S. marks was for the mutual benefit of the Joint Venture Partnership, as documented in the Joint Venture Agreement, its First Amendment, the LLC Agreement, and Master Services Agreement.

**MEMORANDUM OF POINTS AND AUTHORITIES IN OPPOSITION TO MOTION FOR SUMMARY JUDGMENT BY COUNTER-DEFENDANT/THIRD PARTY DEFENDANTS**

Bartolome Decl. ¶¶ 10–14, 32(a)-(e); Supp. Bartolome Decl. ¶¶ 6, 11, 13–14; Koren Decl. ¶ 20; Supp. Koren Decl. ¶¶ 4–8.

10. Following years of operating as a joint venture partner under PCJV's governing documents, Cinco filed state court actions against PCJV's President in a failed effort to obtain control over PCJV's use of the U.S. trademarks and recover verified damages for waived royalties due and owing. TE 1076-1079, TE 1084 ¶¶ 12, 18; TE 1086  ¶¶ 12, 18; 1413; Bartolome Decl. ¶¶ 28, 31–32; Supp. Bartolome Decl. ¶¶ 13–14; Koren Decl. ¶¶ 17–18, 20; Supp. Koren Decl. ¶¶ 17–22.

11. Senior use and continuous use are with PCJV; Plaintiffs offer no admissible contrary evidence. Bartolome Decl. ¶ 13; Mandel Decl. ¶¶ 10-12; Supp. Bartolome Decl. ¶ 18.a.

12. The California DBO stipulation confirms early California franchise-law compliance issues were addressed through PCJV, consistent with PCJV as the franchising/licensing "vehicle." TE 1257; Kurtz Decl. ¶¶ 4–8.

## IV.  LEGAL STANDARD

Ambiguity and intent informed by extrinsic evidence are jury questions unless the record supports only one reasonable construction. *Nat'l Union Fire v. Argonaut*, 701 F.2d 95, 97 (9th Cir. 1983); *Bridgeway-Partners, L.L.C. v. Cox Business Services, LLC*, 2015 WL 12644567, at *7 (C.D. Cal. June 22, 2015). When the movant fails to meet its burden, judgment may enter for the nonmovant. *Albino*, 747 F.3d at 1176; *U.S. v. Dahan*, 369 F. Supp. 2d 1187, 1192–93 (C.D. Cal. 2005).

## V.  ARGUMENT

### A.  Plaintiffs Have Not Shown Ownership by Valid Assignment.

Plaintiffs' threshold burden is to establish a valid assignment, without which there is no presumption of ownership. *Fed. Treasury Enter. Sojuzplodoimport v. Spirits Int'l N.V.*, 623 F.3d 61, 68 (2d Cir. 2010); McCarthy § 26:5 ("If the alleged

8

MEMORANDUM OF POINTS AND AUTHORITIES IN OPPOSITION TO MOTION FOR SUMMARY JUDGMENT BY COUNTER-DEFENDANT/THIRD PARTY DEFENDANTS

'senior user' traces rights through an assignment, the transaction is subject to judicial scrutiny to be sure it was in fact a valid assignment"). Boilerplate assignments and secondary evidence are insufficient; rather, courts scrutinize transactions to ensure goodwill continuity and clear title. *See In re Impact Distributors, Inc.,* 260 B.R. 48, 53-54 (Bankr. S.D. Fla. 2001) (citing *TMT North America, Inc. v. Magic Touch,* 124 F.3d 876, 884 (7th Cir. 1997)) ("Requiring strong evidence to establish an assignment is appropriate both to prevent parties from using self-serving testimony to gain ownership of trademarks and to give parties incentives to identify expressly the ownership of the marks they employ."); *see also Sarieddine v. Alien Visions E-Juice, Inc.,* No. CV 18-3658 PA (MAAx), 2019 WL 1966661, at *6 (C.D. Cal. April 12, 2019) (slip op.) ("[C]ourts must be cautious in scenarios that do not involve clear written documents of assignment. Requiring strong evidence to establish an assignment is appropriate both to prevent parties from using self-serving testimony to gain ownership of trademarks and to give parties incentive to identify expressly the ownership of the marks they employ.") (citations omitted). Courts properly reject reliance on secondary evidence of a trademark assignment when documentary proof is available but not provided or is provided but is insufficient. *See, e.g., Parkinson v. Robanda Intern., Inc.,* 641 Fed. Appx. 745, 747 (9th Cir. 2016) (rejecting testimonial allegations as proof of valid assignment due to irregularities in underlying trademark license agreement documents); *In re Impact Distributors, Inc.,* 260 B.R. at 54-55 (rejecting testimonial evidence of "oral, license-back" agreement necessary to defense of claim).

Plaintiffs offer no documents showing transfer of the U.S. franchised business, franchise contracts, regulatory obligations, or supply chain relationships. Rather, they rely on irregular, inadmissible secondary "deeds." The August 2024 "deed" displays notary pages referencing an "Agreement" called an "Amended and Restated Trademark Licensing Agreement" executed by each of Mr. Magsaysay and

**MEMORANDUM OF POINTS AND AUTHORITIES IN OPPOSITION TO MOTION FOR SUMMARY JUDGMENT BY COUNTER-DEFENDANT/THIRD PARTY DEFENDANTS**

Mr. Po on August 15, 2024, which by itself undermines Plaintiff's alleged chain of title. TE 6, 1520. Defendants—and the Court—are left to question why Plaintiff and Cinco executed an "Amended and Restated Trademark Licensing Agreement" in August 2024 when Plaintiff claims to have acquired all IP rights in 2022.[2]

That concerning and fatal issue aside, Plaintiff also affirmatively disclaimed acquiring PCJV, its franchise agreements, or obligations, severing the marks from the U.S. goodwill accrued by PCJV's system—an assignment in gross. *Mister Donut of Am. v. Mr. Donut*, 418 F.2d 838, 842 (9th Cir. 1969). By contrast, where transactions survive scrutiny, transaction documents prove the transfer of goodwill in the business symbolized by the marks and ongoing ability "to continue the lure of business." *E. & J. Gallo Winery v. Gallo Cattle*, 967 F.2d 1280, 1289 (9th Cir. 1992). In *Glow Indus., Inc. v. Lopez*, 273 F. Supp. 2d 1095, 1107–08 (C.D. Cal. 2003), the court held that a trademark assignment was invalid where the plaintiff failed to provide evidence of a transfer of goodwill, finding that attesting to a recitation in the assignment agreement was insufficient. Here, as in *Glow* and unlike *E. & J. Gallo Winery*, there is no reliable evidence that Plaintiff acquired the goodwill developed by PCJV, rendering the assignment in gross and invalid under controlling authority. This failure is dispositive against Plaintiffs' motion and supports judgment for Defendants. *See also* McCarthy §§ 18:24, 26:5.

Plaintiffs' reliance on Cinco's multiple "exits"—Cinco's alleged departure from the joint venture in 2010 when the LLC was formed, or in 2012 when the First Amendment entered, or in 2022 when it signed a deed over to Plaintiff— and sale of

---

[2] This unexplained agreement casts doubt on the authenticity and validity of Plaintiff's claimed rights, particularly since Plaintiff has denied the existence of any prior PCJV license and Defendants acquired rights before August 2024. It is unclear whether the notarized license covers the United States, whether it amends the DLA Piper drafted and billed for Trademark License Agreement, why the signatures on TE 6 and TE 1520 differ, or why TE 6 is offered as a trial exhibit when the USPTO-recorded version (TE 1520) conflicts. At minimum, suppression renders even admissible evidence unreliable. *Williamson v. Superior Court of Los Angeles County*, 21 Cal.3d 829, 836 n.2 (1978).

its interest in the business to Defendants, further underscores the point. If Cinco's only remaining interest in the joint venture was a right to receive royalties (as it verified), not ownership or control in 2010, 2012 or 2022 (control residing in PCI or PCJV), then this sequence is classic evidence of an assignment in gross: by admittedly severing registration from control of the business, any purported assignment to Plaintiff is invalid as a matter of law. *See* McCarthy § 18:51 (discussing problem and explaining ownership follows control).

**B.    PCJV's Authorization and Long-Term Rights are Established.**

**1.  The Agreements Granted PCJV Long-Term Rights.**

California law requires a holistic, intent-driven reading that harmonizes all instruments and circumstances, including regulatory context and performance, as set forth in Defendants' moving papers at Dkt. 309, and pursuant to Cal. Civ. Code §§ 1641, 1643 and Plaintiff's own authority, *Beck Park Apts. v. HUD*, 695 F.2d 366, 369 (9th Cir. 1982) ("[L]aws which exist at the time of entering into a contract form a part of the contract"). The JVA, First Amendment, LLC Agreement, and MSA collectively vest franchising and licensing functions in PCJV's management, with PCJV's President responsible for trademark control (TE 62 §§ 3.1, 4.11.7; TE 1050/1053 §§ 3(g)–(j)); provide for supermajority or mutual termination and trailing IP protections, which are inconsistent with at-will termination (TE 62 §§ 2.7, 9.1– 9.2; TE 1050/1053 § 4; TE 1045); are additive rather than substitutive, with no novation or release (TE 1052; Supp. Bartolome Decl. ¶¶ 9–13, 18(a); *Miran v. Convergent*, 2017 WL 1410296, at *3 (S.D. Cal. 2017) (novation requires clear and convincing evidence)); and expressly tie an indefinite duration term to IP rights (Supp. Koren Decl. ¶¶ 4-8; Supp. Bartolome Decl. ¶ 19).

The stipulated facts and course of dealing also confirms this construction: decade-long franchising, board approvals, royalty waivers, FDDs, *etc.*, establish long-term rights. Dkt. 257; Bartolome Decl. ¶¶ 16–20; Supp. Bartolome Decl. ¶¶ 9–

11

17; Mandel Decl. ¶¶ 4-7, 15–17. Plaintiff's authority, *Beck Park*, confirms that
contracts—especially those subject to regulatory frameworks—must be interpreted
in light of applicable law and contracting structure. 695 F.2d at 369. There, the
Ninth Circuit plainly rejected the plaintiff's proffered interpretation of a government
regulated contract incompatible with expected or ordinary application of applicable
law. *Id.* As in *Beck Park*, Plaintiffs' proffered construction here ignores the agreed
joint venture structure, which vested PCJV's President with responsibility for
trademark licensing as U.S. master franchisor and granted PCJV indefinite, long-
term rights, including trailing IP protections. The parties' stipulations and years of
performance—including franchise grants and supply chain arrangements—confirm
that franchisees' rights stem from PCJV's rights, which could only exist if PCJV
held a long-term, licensable interest in the marks. Cinco's sworn statements and
conduct further corroborate this structure. Dkt. 257; Dkt. 309-1 at 8–10.

Here, the "master license" provisions in the LLC Agreement, JVA, and First
Amendment impose binding obligations on the Company alone to "agree" to
licensing terms already settled by Cinco and the LA Group—covering control,
benefit, duration, and transferability. The use of "shall" and "agrees" reflects a
present, binding obligation, with no language requiring further action or approval by
Cinco. The plain meaning of "enter" does not mean "execute;" even non-executed
contracts could be "entered" contracts. *See Vita Planning & Landscape
Architecture, Inc. v. HKS Architects, Inc.*, 240 Cal. App. 4th 763, 772-773 (2015);
*Banner Entertainment, Inc. v. Superior Court*, 62 Cal. App. 4th 348, 358 (1998);
*Merced County Sheriff's Employees' Assn. v. County of Merced*, (1987) 188 Cal.
App. 3d 662, 670 ("The manifestation of assent to a contractual provision may be
'wholly or partly by written or spoken words or by other acts or by failure to act'").

Cinco's consent was pre-existing and presumed, including as to negotiated
termination provisions preserving trademark rights. TE 62 §§ 2.7, 9.1, 9.2.1; TE

**MEMORANDUM OF POINTS AND AUTHORITIES IN OPPOSITION TO MOTION FOR SUMMARY
JUDGMENT BY COUNTER-DEFENDANT/THIRD PARTY DEFENDANTS**

1050 §§ 4(a)-(b); TE 1053 §§ 4(a)-(b). PCJV properly "agreed" to indefinite trademark licensing and trailing IP rights, whether orally or by course of conduct, as confirmed by years of performance, Cinco's sworn statements, and royalty waivers. *See Kiva Health Brands LLC v. Kiva Brands Inc.*, 402 F. Supp. 3d 877, 887 (N.D. Cal. 2019) (recognizing trademarks rights can be transferred without writing). No subsequent assignment can defeat PCJV's pre-existing long-term license or avoid related burdens and equities. *See Russell Road Food & Beverage, LLC v. Spencer*, 829 F.3d 1152, 1156 (9th Cir. 2016); *California Packing Corp. v. Sun-Maid Raisin Growers*, 81 F.2d 674, 676–77 (9th Cir. 1936); *ICEE Distribs., Inc. v. J&J Snack Foods Corp.*, 325 F.3d 586, 593 (5th Cir. 2003); McCarthy § 18:15.

The notion that "no signed MLA = no rights" is a false syllogism. The parties vested control of the U.S. trademarks in PCJV's President/LA Group, agreed to equally split royalty income from licensing and franchising, and rejected fixed 10-year terms in favor of indefinite and trailing rights. TE 1050 §§ 3(g)-(h), 3(i); TE 62 §§ 3.1, 4.11.7, 2.7, 9.1–9.2; TE 1045 § 1; TE 1023 § 4(a)-(b); TE 1025; Bartolome Decl. ¶¶ 13, 15; Mandel Decl. ¶ 16; Supp. Koren Decl. ¶¶ 4-8; Supp. Bartolome Decl. ¶ 19. The subsequent license drafts were controlled, created, and implemented by Cinco's own counsel and auditors solely to facilitate audits and regulatory approvals, not to alter the parties' agreement. Bartolome Decl. ¶¶ 16, 17, 19a-f, 20.

California law does not require a single signed document where multiple agreements, reliance, and a decade of consistent conduct establish master franchising rights. Even if no standalone but somehow still required license existed, genuine issues of material fact remain. *See, e.g., N.A.A.C.P. v. N.A.A.C.P. Legal Defense & Education Fund, Inc.*, 753 F.2d 131, 139, 141 (D.C. Cir. 1985) (finding 12-year delay to disavow licensing right coupled with encouraged continued use of trademark barred relief); *Grupo Gigante SA De CV v. Dallo & Co., Inc.*, 391 F.3d 1088, 1101-05 (9th Cir. 2004) (affirming summary judgment for defendant and

13

**MEMORANDUM OF POINTS AND AUTHORITIES IN OPPOSITION TO MOTION FOR SUMMARY JUDGMENT BY COUNTER-DEFENDANT/THIRD PARTY DEFENDANTS**

denial of injunctive relief where defendant was first actual U.S. user and plaintiff's claims were barred by laches after knowing of defendant's use for four years).

### 2. At Minimum, Long-Term Duration Must Be Implied.

The Ninth Circuit's recent August 2025 decision in *Thomson v. Hodgson* is directly on point and powerfully supports Defendants' position. There, the Court reaffirmed California's three-step framework for contract duration: (1) look for an express term; (2) if absent, determine if a term can be implied from the contract's nature and circumstances; and (3) if not, supply a reasonable term. 2025 WL 2406526 at *4. The Ninth Circuit held that, even without an express duration, the nature and course of performance of a music publishing agreement implied a long-term license lasting as long as royalties were earned, rejecting the notion that such an arrangement was an impermissible "perpetual" obligation. *Id.* at *6. The Court emphasized that the parties' long-term conduct and delay in claiming at-will termination rights were "powerful evidence" of intent. *Id.* at *6–7.

Here, the facts are even stronger for Defendants. PCJV's governing documents contain express termination provisions and were designed to grant indefinite, long-term rights to use the Potato Corner IP, with trailing rights to protect franchisees. TE 1050 § 4(a); TE 1053 § 4(a); TE 62 §§ 2.7, 3.7; Supp. Bartolome Decl. ¶ 18f; Supp. Koren Decl. ¶¶ 4–6, 16–21. The JVA, First Amendment, LLC Agreement, and MSA all obligate PCJV's President and LA Group to franchise Potato Corner outlets and share royalties, and their termination provisions reference PCJV's license rights. TE 1050 §§ 3(h)(i), 3(i)(i), 3(j), 4(b); TE 1053 §§ 3(h)(i), 3(i)(i), 3(j), 4(b); TE 62 §§ 4.18, 4.11.7–4.11.7.6; TE 1045 ¶¶ 1, 4 ("Services"), ¶ 1 ("Duration of Agreement"). Even if the agreements were silent, *Thomson* teaches that a reasonable duration can be implied from the nature of the contracts and the parties' conduct. Here, the implied license should last as long as PCJV continues to use the U.S. trademarks as agreed with Cinco or as agreed with its franchisees.

**MEMORANDUM OF POINTS AND AUTHORITIES IN OPPOSITION TO MOTION FOR SUMMARY JUDGMENT BY COUNTER-DEFENDANT/THIRD PARTY DEFENDANTS**

That implication is appropriate here as the parties expressly rejected at-will termination, agreed to trailing rights, and consistently acted in accordance with a long-term, not at-will, right to use—further confirming the intent and enforceability of PCJV's rights. Further, the nature of the enterprise (master franchising and long-term franchise grants), supermajority termination architecture, trailing IP rights, and the parties' pre-dispute conduct all, at minimum, imply long-term duration—not at-will. Plaintiffs' reliance on *Pogrebnoy v. Russian Newspaper Distribution, Inc.*, 289 F.Supp. 3d 1061, 1070 (C.D. Cal. 2017), for the proposition that "an implied license, like any other contract, is terminable at the will of either party if it is not for a specified term" is inapposite; first, even under Plaintiffs' view, nothing was mutually at-will or terminable solely by PCJV or by any defendant and, second, there was "a specified term" supplied in the contracts (an indefinite term) and certainly ascertainable long-term rights under *Thomson*.

It remains true that the very objective of Cinco oscillating from an enforceable license with 30% royalty obligation that was waived, allegedly fraudulently, to an "agreement to agree" is to cause a forfeiture of the LA Group's (a) investment of time and treasure over a decade to build the Potato Corner brand and franchise system, and (b) mutual waiver of royalty-based income, which must be avoided. Cal. Civ. Code § 1442; *Universal Sales Corp. v. Cal. Press Mfg. Co.*, 20 Cal. 2d 751, 771 (1942); *Deutsch v. Phillips Petroleum Co.*, 56 Cal. App. 3d 586, 592 (1976); *Milenbach v. Comm'r Internal Revenue*, 318 F. 3d 924, 936 (9th Cir. 2003); *McNeece v. Wood*, 204 Cal. 280, 284 (1928); *Ballard v. MacCallum*, 15 Cal. 2d 440, 444 (1940). Plaintiffs would have this Court retroactively strip Defendants of the core rights that underpinned a decade-plus franchising system, nullify long-term franchise grants, and upend the parties' economic allocations and regulatory filings—precisely the sort of forfeiture California law avoids.

The objective of the no-license, "at-will" termination interpretation is to also avoid (a) a no assignment provision, (b) cooperation and best efforts obligations, and (c) fiduciary obligations in favor of finding "fraud on franchisees," all of which is anti-thetical to applicable franchise law,[3] fiduciary obligations,[4] and the implied covenant of good faith and fair dealing. *See Najor v. Wells Fargo Bank, N.A.*, Case No.: 3:19-cv-00015-H-AGS, 2019 WL 1858502 (S.D. Cal. Apr. 25, 2019); *see also Ahl-E-Bait Media, Inc. v. Jadoo TV, Inc.*, CASE NO. CV 12-05307 (MMM (PJWx), 2013 WL 11324312, at *9 (C.D. Cal. Apr. 16, 2013). Plaintiffs seek to defeat the main purpose of PCJV and benefit from alleged uncertainty created by Cinco—both of which is also contrary to California law. *See* Cal. Civ. Code §§ 1650, 1654.

### 3.  Plaintiffs' "Cinco Exit" and "No License" Theories are Irreconcilable with the Record.

The issue of what agreements govern PCJV was conclusively decided and agreed in the settlement. TE 1172, Recital B. In that settlement, all parties expressly agreed that all prior agreements govern PCJV, "including" (but not limited to) the JVA, its First Amendment, and the LLC Agreement. *Id.*; Supp. Koren Decl. ¶ 22.[5] Despite that, Plaintiffs' motion advances two contradictory positions: that PCJV was formed as a joint venture between the LA Group and a *subsidiary* of Cinco, and that the First Amendment "excused" Cinco from PCJV. Neither of these contrary positions is supported by the record or the governing agreements.

---

[3] Cal. Corp. Code § 31005(a); *Kim v. Servosnax, Inc.*, 10 Cal. App. 4th 1346, 1353-58 (1992).

[4] *Serpa v. Jolly King Restaurants, Inc.,* 62 F.R.D. 626, 640 (S.D. Cal. 1974).

[5] At minimum, there are genuine issues of material fact as to whether the parties' intended a form boilerplate integration clause copied from one related agreement to completely (rather than partially) integrate related agreements. *Compare In re OFT Expl., Inc.*, No. 95-3-193-TC, 1997 WL 195440, at *2 (N.D. Cal. Apr. 10, 1997) (holding that general integration clause does not support finding that agreement fully discharged all prior existing agreements) *with Ingram Micro Inc. v. Signeo Int'l, Ltd.*, No. SACV 13-1934-DOC ANX, 2014 WL 3721197, at *1 n. 2, *3 (C.D. Cal. July 22, 2014) (relying on expressed identification of prior agreements as evidence of intent to integrate prior agreements). There is no evidence that the parties intended to void the LLC Agreement and MSA, for example.

16

1    First, the notion that Cinco was not a joint venture partner is flatly

2 contradicted by the JVA and LLC Agreement, both of which Cinco signed and

3 which unambiguously establish its role as a partner. *See* Supp. Bartolome

4 Decl. ¶¶ 9-13, 18(b). Indeed, Cinco passed a resolution amending the *LLC*

5 *Agreement* in 2018, the last amendment in time. *Id.* ¶ 16. Second, Plaintiffs' claim

6 that the First Amendment "excused" Cinco from the joint venture is equally

7 baseless, as the record contains no evidence of a novation, pre-2024 release, or any

8 written consent authorizing Cinco to assign its duties or obligations in violation of

9 the no-assignment provisions in the JVA and LLC Agreement. The parties

10 continued to operate under the same governing documents for over a decade—

11 something impossible had Cinco truly exited in 2012 or not been involved in PCJV

12 from its formation. The only potential carve-out to the no-assignment clauses was

13 for "Economic Interests," and even then, only as to rights, not duties or obligations,

14 and only to a wholly owned subsidiary. The agreements are clear: duties and

15 obligations could not be assigned, and no such assignment or release ever

16 occurred. *See* Supp. Bartolome Decl. ¶¶ 13–17; Supp. Koren Decl. ¶¶ 20–23.

17    This reading is confirmed by the extrinsic evidence, including board minutes

18 and Cinco's own admissions before and after the First Amendment, in which Cinco

19 continued to assert rights as a joint venture partner, acknowledging only economic

20 rights were transferred to PCI.[6] The absence of a signature block for Cinco in the

21 First Amendment is immaterial; there is no clear and convincing evidence of a

22 novation, as required by California law.[7] *See Miran*, 2017 WL 1410296, at \*3

---

[6] Board minutes and subsequent conduct may clarify ambiguities or show a new agreement or waiver, even with an integration clause. *See Wind Dancer Prod. Grp. v. Walt Disney Pictures*, 10 Cal. App. 5th 56, 62, 78-83 (2017); *Certified Corp. v. Hawaii Teamsters*, 597 F.2d 1269, 1271, 1272-73 (9th Cir. 1979); *Matanuska Valley Farmers Coop. Ass'n v. Monaghan*, 188 F.2d 906, 328, 330-32 (9th Cir. 1951); *Jones v. Sunset Oil Co.*, 118 Cal. App. 2d 668, 672-73, 675 (1953).

[7] Under Plaintiffs' own authorities, the elements of a JV partnership ("joint control over it, the member sharing in the undertaking's profits, and each having an ownership interest in the enterprise") binding parties as fiduciaries exists here. Dkt.

17

(novation requires mutual assent, intent to discharge old contract, and clear and convincing evidence); *Malmstrom v. Kaiser Aluminum & Chemical Corp.*, 187 Cal. App. 3d 299, 317–18 (1986) (no novation where subsequent agreement did not expressly cancel prior duties). Plaintiffs' reliance on an integration clause or the partial execution of the First Amendment cannot substitute for the clear, mutual intent and formalities required to corroborate a novation or release. Plaintiff has not even proffered a written assignment of any obligations to PCI. The testimony of the very witness who drafted the First Amendment confirms that the parties never intended it to operate as a novation or release. Bartolome Decl. ¶ 18.

As to licensing under the terms and conditions of the operating agreements, Cinco's own sworn admissions in state court confirm that PCJV held a license under the JVA/LLC agreements and that "Approved License Fees" were due, which is fundamentally inconsistent with Plaintiffs' current "no license" position. TE 1077–1079. The parties' course of dealing further reinforces this: for years, Cinco accepted PCJV's role as franchisor, approved FDDs, and never attempted to terminate PCJV's rights at will. Bartolome Decl. ¶¶ 16–20; Supp. Bartolome Decl. ¶¶ 9–17. The undisputed evidence thus forecloses Plaintiffs' attempt to rewrite the parties' long-standing fiduciary, contractual and business relationship.[8]

## C.   Independent Grounds Defeat Plaintiffs' Motion and Support Judgment for Defendants.

### 1.  Senior and Continuous Use Favor PCJV.

Defendants are entitled to, or at minimum entitled to pursue at trial, a declaratory judgment that PCJV is the senior user and owner of the Potato Corner

---

312 at 31:19-21 (citing *Simmons v. Ware*, 213 Cal. App. 4th 1035, 1049 (2013)).

[8] Finally, regardless of whether the First Amendment completely integrated prior agreements or novated Cinco, Cinco remained bound by the expressed and implied rights therein and course of dealing thereunder as agreed by its subsidiary. *See Cornell University v. Illumina, Inc.*, C.A. No. 10-433-LPS-MPT, 2014 WL 12601516, at \*5 (D. Del. Sept. 29, 2014); *Ariel Preferred Retail Group, LLC v. CWCapital Asset Management*, 883 F. Supp. 2d 797, 805 (E.D. Mo. 2012).

U.S. trademarks, including as against any confusingly similar franchise system or subsequently registered marks by PC International PTE Ltd. or SPAVI International USA, Inc. Plaintiffs' motion ignores two critical ownership issues: (a) who is the senior user of the U.S. trademarks—a question that begins with contractual interpretation at the time of first lawful use; and, if Cinco is proven to be the senior user, (b) whether Cinco exercised adequate quality control over the U.S. marks under 15 U.S.C. § 1055 to qualify as the sole continuous user. Both issues are dispositive and can be resolved on the undisputed record.

Under *Sengoku*, the party with continuous, lawful use of a trademark in the U.S. has priority, even over a foreign registrant, unless the user is merely a "related company" whose use inured to the registrant's benefit. This rule applies in the franchise context, allowing the alleged licensee (here a U.S. franchisor partnership) to rebut any presumption of ownership and establish that its use inured to its own benefit, not the licensor's. *See Precision Door Service, Inc. v. Bell*, 2002 WL 655053, at *6 (N.D. Cal. Apr. 18, 2002).

The *Sengoku* analysis proceeds in two steps. First, courts look to the parties' agreements at the time of first lawful use, as parties may contractually determine who is the senior user. If the agreements are not dispositive, courts consider common law factors, including first lawful use, consumer association, and control of goodwill. Here, Defendants have made a *prima facie* showing of senior use: (1) PCJV was the only continuous user of the marks in the U.S. and has been for over a decade; (2) the operative joint venture agreements vested PCJV with the rights and obligations of a trademark owner, including indefinite, non-transferable control of the marks for the mutual benefit of the partners; and (3) all relevant common law factors—first use, consumer association, and control—point to PCJV. *See* Supp. Koren Decl. ¶¶ 4-8, 12-23; Mandel Decl. ¶¶ 4-17; Bartolome Decl. ¶¶ 2-8, 13-26; Kurtz Decl. ¶¶ 4-14; Supp. Bartolome Decl. ¶¶ 6, 9-12.

19

**MEMORANDUM OF POINTS AND AUTHORITIES IN OPPOSITION TO MOTION FOR SUMMARY JUDGMENT BY COUNTER-DEFENDANT/THIRD PARTY DEFENDANTS**

Plaintiffs, by contrast, did not and cannot make a *prima facie* case of senior use. They offer no evidence of any use other than PCJV's, and they deny the existence of any license agreement that would make PCJV's use inure to Cinco's benefit. Their references to first use by someone other than Defendants are unsupported, and the record shows that Defendants were the first to use the marks in the U.S. Moreover, any pre-FDD license was unlawful under California franchise law, and both JV groups agreed PCJV would be the "vehicle" for U.S. expansion and the source of all U.S. trademark rights. *See* TE 1257; Kurtz Decl. ¶¶ 4-8; Supp. Bartolome Decl. ¶ 18; Koren Decl. ¶ 20(a).

Because Plaintiff disavows any license agreement, it cannot establish a meeting of the minds that PCJV's use would inure to Cinco's (not PCJV's) benefit and rebut Defendants' *prima facie* case of ownership. Even if Plaintiffs could raise a factual dispute under the first step of *Sengoku*, they cannot do so under the second: every relevant factor supports PCJV's senior use among U.S. consumers. As to continuous use, although Cinco had the right to exercise control over PCJV through its officers and board, it abdicated that control, ceding the U.S. model to PCJV's President and LA Group. When Cinco transferred the registrations to Plaintiff—who likewise exercised no control—a naked license resulted at best. Plaintiff did not intervene in the state court action and acquiesced in PCJV's control for years, and their motion offers no evidence of quality control or continuous use by Cinco. On this record, Plaintiffs' motion must be denied, and PCJV should be declared the senior and continuous user of the U.S. Potato Corner marks.

### 2. Preclusion and Law-of-the-Case Do Not Support Plaintiffs.

Plaintiffs' reliance on preclusion and law-of-the-case doctrines is both procedurally and substantively misplaced. First, Plaintiffs have not properly pled or preserved any preclusion defenses—such as res judicata, collateral estoppel, retraxit, or full faith and credit—in their Answers, Contentions of Law and Fact, Trial Brief,

or the Final Pretrial Order. The Court has already recognized that the state court dismissals were not final judgments on the merits and did not adjudicate the material issues now before this Court. As a result, any attempt by Plaintiffs to invoke preclusion at this stage is both untimely, waived and lacks merit.

Second, Plaintiffs' suggestion that the Court's preliminary injunction rulings or the Ninth Circuit's affirmance should control the outcome here is legally incorrect. It is well-settled that preliminary injunction decisions do not constitute law of the case on mixed questions of law and fact. *See Ctr. for Biological Diversity v. Salazar*, 706 F.3d 1085, 1090 (9th Cir. 2013). The rare exception—where an appellate court issues a reasoned decision on a purely legal issue based on a fully developed record—does not apply here. *See Ranchers Cattlemen Action Legal Fund United Stockgrowers of Am. v. U.S. Dep't of Agric.*, 499 F.3d 1108, 1114 (9th Cir. 2007); *Stormans, Inc. v. Wiesman*, 794 F.3d 1064, 1076 n.5 (9th Cir. 2015).

Consistent with this settled law, this Court has repeatedly made clear that its preliminary injunction ruling was not a final determination of the merits. The injunction was issued early in the case, on a limited and undeveloped record, without the benefit of critical witness testimony, and without resolving key factual and legal issues. The Ninth Circuit's opinion likewise did not finally adjudicate any mixed question of law and fact; it held that the Court did not abuse its discretion in crediting Plaintiff's plausible allegations for purposes of Rule 65.

### D.    **Plaintiffs' Conclusory Attacks on the Claims/Defenses Fail.**

Plaintiffs do not specifically identify or substantiate any grounds for dismissing Defendants' claims. Instead, they offer only conclusory assertions, without addressing the actual elements or evidence. Defendants have thoroughly supported their claims in prior filings with the Court and have, through this cross-summary judgment motion process, delivered additional testimony and records on which their claims rely. To the extent Plaintiffs' motion challenges these claims, it

21

does so solely on the basis of privity of contract and contractual interpretation. Because Plaintiffs' analysis of contractual duties is legally and factually deficient, its attack on Defendants' affirmative claims necessarily fails as well.

Similarly, Plaintiffs' motion does not specify or support which of Defendants' affirmative defenses it seeks to challenge, nor does it identify which elements of those defenses allegedly require privity of contract or depend on the interpretation of contracts. Many of Defendants' defenses do not depend on privity of contract or contractual interpretation. Defendants have already provided ample support for these defenses, including an offer of proof on waiver, for example. Their evidentiary showing on these cross-motion papers further supports their defenses.

Plaintiffs' unspecified and conclusory attacks on Defendants' claims and defenses are unsupported by both the record and the law and provide no basis for summary judgment. At minimum, and especially given the expedited briefing timeline, Defendants should be entitled to further briefing on specific, articulated issues to support their claims and defenses.

**E.      The Rule 56(g) Request Should be Denied; Facts Favor Defendants.**

Plaintiffs' Rule 56(g) request is improper because they have not met their burden under Rule 56(a), and genuine disputes remain. They also failed to submit a Statement of Uncontroverted Facts, leaving no proper evidentiary basis for their request. Only facts supported by Defendants' evidence could be established for trial. Plaintiffs' conclusory assertions fall short of the standard for summary judgment. The Court should deny Plaintiffs' Rule 56(g) request and, if any facts are established, they should be those supported by Defendants' undisputed evidence.

## VI.   **CONCLUSION**

For all of the foregoing reasons, Plaintiffs' motion should be denied and judgment should be entered in Defendants' favor.

**MEMORANDUM OF POINTS AND AUTHORITIES IN OPPOSITION TO MOTION FOR SUMMARY JUDGMENT BY COUNTER-DEFENDANT/THIRD PARTY DEFENDANTS**

DATED: September 30, 2025   **BLANK ROME LLP**

By: */s/ Arash Beral*
_____
Todd M. Malynn
Arash Beral
Jamison T. Gilmore
Attorneys for Defendants, Counterclaimants, and Third Party Plaintiffs PCJV USA, LLC, PCI TRADING LLC, POTATO CORNER, LA GROUP, LLC, GK CAPITAL GROUP, LLC, NKM CAPITAL GROUP, LLC and GUY KOREN, and Defendants J & K AMERICANA, LLC, J&K LAKEWOOD, LLC, J&K OAKRIDGE, LLC, J&K VALLEY FAIR, LLC, J & K ONTARIO, LLC, J&K PC TRUCKS, LLC, HLK MILPITAS, LLC, and GK CERRITOS, LLC

**MEMORANDUM OF POINTS AND AUTHORITIES IN OPPOSITION TO MOTION FOR SUMMARY JUDGMENT BY COUNTER-DEFENDANT/THIRD PARTY DEFENDANTS**

# <u>CERTIFICATE OF COMPLIANCE</u>

The undersigned counsel of record for PCJV USA Parties, certify that this brief contains 7,248 words, which complies with the word limit of Local Rule 11-6.1.

DATED:  September 30, 2025

*/s/ Arash Beral*        
ARASH BERAL

**MEMORANDUM OF POINTS AND AUTHORITIES IN OPPOSITION TO MOTION FOR SUMMARY JUDGMENT BY COUNTER-DEFENDANT/THIRD PARTY DEFENDANTS**

## <u>CERTIFICATE OF SERVICE</u>

The undersigned certifies that on September 30, 2025, the foregoing document was electronically filed with the Clerk of the Court for the United States District Court, Central District of California, using the Court's Electronic Case Filing (ECF) system. I further certify that all participants in the case are registered CM/ECF users and that service will be accomplished by the CM/ECF system.

I certify under penalty of perjury that the foregoing is true and correct. Executed on September 30, 2025.

By:    /s/AJ Cruickshank                          

**MEMORANDUM OF POINTS AND AUTHORITIES IN OPPOSITION TO MOTION FOR SUMMARY JUDGMENT BY COUNTER-DEFENDANT/THIRD PARTY DEFENDANTS**

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

# <u>CERTIFICATE OF SERVICE</u>

The undersigned certifies that on September 30, 2025, the foregoing document was electronically filed with the Clerk of the Court for the United States District Court, Central District of California, using the Court's Electronic Case Filing (ECF) system.  I further certify that all participants in the case are registered CM/ECF users and that service will be accomplished by the CM/ECF system.

I certify under penalty of perjury that the foregoing is true and correct. Executed on September 30, 2025.

By:   <u>/s/AJ Cruickshank</u>

26

**MEMORANDUM OF POINTS AND AUTHORITIES IN OPPOSITION TO MOTION FOR SUMMARY JUDGMENT BY COUNTER-DEFENDANT/THIRD PARTY DEFENDANTS**