MICHAEL D. MURPHY (SBN 224678)
mdmurphy@foxrothschild.com
MATTHEW FOLLETT (SBN 325481)
mfollett@foxrothschild.com
MEEGHAN H. TIRTASAPUTRA (SBN 325572)
mtirtasaputra@foxrothschild.com
JESSICA I. NWASIKE (SBN 343087)
jnwasike@foxrothschild.com
FOX ROTHSCHILD LLP
Constellation Place
10250 Constellation Boulevard, Suite 900
Los Angeles, California 90067
Telephone:  310.598.4150
Facsimile:   310.556.9828

Attorneys for Plaintiff and Counterclaim Defendant
SHAKEY'S PIZZA ASIA VENTURES, INC. and
Third-Party Defendants CINCO CORPORATION,
PC INTERNATIONAL PTE LTD., and SPAVI
INTERNATIONAL USA, INC.

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| SHAKEY'S PIZZA ASIA VENTURES, INC, a Philippines corporation,<br><br>Plaintiff,<br><br>v.<br><br>PCJV USA, LLC, A Delaware limited liability company; PCI TRADING, LLC, a Delaware limited liability company; GUY KOREN, an individual; POTATO CORNER LA GROUP, LLC, a California limited liability company; NKM CAPITAL GROUP, LLC, a California limited liability company; J & K AMERICANA, LLC, a California limited liability company; J&K LAKEWOOD, LLC, a California limited liability company; J&K VALLEY FAIR, LLC, a California limited liability company; J & K ONTARIO, LLC, a California limited liability company; HLK MILPITAS, LLC, a California, limited liability company; GK CERRITOS, LLC, a California, limited liability company; J&K PC TRUCKS, LLC, a California | Case No. 2:24-CV-04546-SB(AGRx)<br><br>*The Hon. Stanley Blumenfeld, Jr.*<br><br>**PLAINTIFF AND COUNTERCLAIM DEFENDANT SHAKEY'S PIZZA ASIA VENTURES, INC. AND THIRD-PARTY DEFENDANTS' OPPOSITION TO DEFENDANTS' MOTION FOR SUMMARY JUDGMENT**<br><br>[*Concurrently filed with appendix of exhibits*; *Response to Defendants' Statement of Uncontroverted Facts*] |

1

limited liability company; and GK
CAPITAL GROUP, LLC, a California
limited liability company and does 1
through 100, inclusive,

Defendants.

PCJV USA, LLC, a Delaware limited
liability company; PCI TRADING LLC,
a Delaware limited liability company;
POTATO CORNER LA GROUP LLC,
a California limited liability company;
GK CAPITAL GROUP, LLC, a
California limited liability company;
NKM CAPITAL GROUP LLC, a
California limited liability company; and
GUY KOREN, an individual,

Counterclaimants,

v.

SHAKEY'S PIZZA ASIA VENTURES,
INC, a Philippines corporation,

Counter Defendant.

PCJV USA, LLC, a Delaware limited
liability company; PCI TRADING LLC,
a Delaware limited liability company;
POTATO CORNER LA GROUP LLC,
a California limited liability company;
GK CAPITAL GROUP, LLC, a
California limited liability company;
NKM CAPITAL GROUP LLC, a
California limited liability company; and
GUY KOREN, an individual,

Third Party Plaintiffs,

v.

PC INTERNATIONAL PTE LTD., a
Singapore business entity; SPAVI
INTERNATIONAL USA, INC., a
California corporation; CINCO
CORPORATION, a Philippines
corporation; and does 1 through 10,
inclusive,

Third Party Defendants.

2

# TABLE OF CONTENTS

I.      INTRODUCTION .................................................................................................. 7

II.     DEFENDANTS' FAILURE to meet their burden under Rule 56 limits PLAINTIFF'S burden in opposition .............................................................. 10

III.    factual statement ................................................................................................ 10

IV.     ARGUMENT ...................................................................................................... 11

        A.      Summary Judgment Must Be Denied Because Defendants Failed to Establish any Evidence, Let Alone Conclusive Evidence That No Reasonable Juror Could Conclude Consent After May 31, 2024 ...... 12

                i.      Stipulated Facts Do Not Establish Consent After May 31, 2024 ...................................................................................... 12

                ii.     The Existence of a "Franchise System" Does Not Limit the Right to Terminate Licenses for the Marks on Which that System is Based ......................................................................... 13

                iii.    Plaintiff's Conduct Established the Absence of a Written License Agreement and Diligent and Immediate Protection of Its Rights ........................................................................... 14

                iv.     Cinco's Verified Pleadings in the Prior Governance Action are Noticeable and Consistent with SPAVI's Position Herein. The Stipulation of Fact Do Not Establish Consent After May 31, 2024 ................................................................. 14

        B.      Neither Plaintiff nor the PC IP are Bound or Restricted by Any of the "Governing Agreements" and as Such Cannot Serve as a Basis to Adjudicate Any of Plaintiff's Claims ............................................. 15

        C.      Defendants Fail to Satisfy their Initial Burden as to the Affirmative Defenses Placed at Issue: Abandonment, Estoppel, and Release ....... 19

        D.      Defendants Attempt to Argue that Plaintiff is Estoped from Asserting its Claims Because they were Released by Cinco is not Supported by Any Law or Fact ......................................................... 21

V.      CONCLUSION ................................................................................................... 24

# <u>TABLE OF AUTHORITIES</u>

**Page(s)**

## Cases

*L.A. Soda Work v. S. Cal. Aquazone Co.*,
103 Cal.App.105 (1954) ............................................................................ 16

*Ah Quin v. Cnty. of Kauai Dep't of Transp.*,
733 F.3d 267 (9th Cir. 2013) ..................................................................... 14

*Auburn Farms Inc. v. Mckee Foods Corp.*,
51 U.S.P.Q.2d 1439 (T.T.A.B. 1999) (Trademark Trial and Appeal
Board finding assignment in gross because before assignment,
assignor had not use trademark for eight years) ..................................... 20

*Autry v. Republic Prods.*,
30 Cal.2d 144 (1947) ................................................................................. 17

*Blue Mako Inc. v. Minidis*,
No. CV 07-916 AHM (SHX), 2008 WL 11334205 (C.D. Cal. June
23, 2008) ..................................................................................................... 12

*Brinderson-Newberg Joint Venture v. Pac. Erectors, Inc.*,
971 F.2d 272 (9th Cir. 1992) ..................................................................... 19

*Bustamante v. Intuit, Inc.*,
141 Cal.App.4th 199 (2006) ....................................................................... 17

*City of Grass Valley v. Cohen*,
17 Cal.App.5th 567 (2017), *as modified on denial of reh'g* (Dec.
19, 2017), *as modified* (Dec. 20, 2017) .................................................... 16

*City of Oakland v. Dep't of Fin.*,
79 Cal.App.5th 431 (2022), *as modified on denial of reh'g* (May
31, 2022) ..................................................................................................... 16

*Clark v. Capital Credit & Collection Servs.*,
460 F.3d 1162 (9th Cir.2006) .................................................................... 19

*Copeland v. Baskin Robbins U.S.A.*,
96 Cal. App. 4th 1251 (2002) .................................................................... 17

*Dunsmore v. San Diego Cnty. Sheriff's Dep't*,
2025 WL 2315038 (S.D. Cal. Aug. 11, 2025) ........................................... 10

*eMachines, Inc. v. Ready Access Memory, Inc.*,
No. EDCV00-00374-VAPEEX, 2001 WL 456404 (C.D. Cal. Mar.
5, 2001) ....................................................................................................... 20

*FBB IP LLC v. Big Boy Rest. Grp., LLC*,
769 F. Supp. 3d 765 (S.D. Ohio 2025) ...................................................... 21

4

*Gerritsen v. Warner Bros. Ent. Inc.*,
  116 F. Supp. 3d 1104 (C.D. Cal. 2015) ................................................................ 22

*Hess v. Ford Motor Co.*,
  27 Cal.4th 516 (2002) ........................................................................................... 24

*hiQ Labs, Inc. v. LinkedIn Corp.*,
  639 F.Supp.3d 944 (N.D. Cal. 2022) .................................................................... 22

*J.P. Cosms., Inc. v. Miss Marion Cosms., Inc.*,
  No. 17-23876-CIV, 2018 WL 7959709 (S.D. Fla. Sept. 6, 2018) ...................... 19

*Jackson v. Donovan*,
  30 Cal. Rptr. 755 (Ct. App. 1963) ........................................................................ 19

*Kim v. Servosnax, Inc.*,
  10 Cal.App.4th 1346 (1992) .................................................................................. 18

*Ledo Pizza Sys., Inc. v. Ledo's Inc.*,
  No. 20 CV 7350, 2024 WL 1013897 (N.D. Ill. Mar. 7, 2024) ........................... 20

*Liquid Glass Enters., Inc. v. Liquid Glass Indus. of Canada, Ltd.*,
  No. 88-71510, 1989 WL 222653 (E.D. Mich. Apr. 28, 1989) ............................ 20

*Manetti-Farrow, Inc. v. Gucci Am., Inc.*,
  858 F.2d 509 (9th Cir. 1988) ................................................................................ 19

*Mister Donut of Am., Inc. v. Mr. Donut, Inc.*,
  418 F.2d 838 (9th Cir. 1969) ................................................................................ 21

*Pepsico, Inc. v. Grapette Co.*,
  416 F.2d 285 (8th Cir. 1969) ................................................................................ 20

*Procter & Gamble Co. v. Quality King Distributors, Inc.*,
  123 F. Supp. 2d 108 (E.D.N.Y. 2000) .................................................................. 20

*Rennick v. O.P.T.I.O.N. Care, Inc.*,
  77 F.3d 309 (9th Cir.1996) ................................................................................... 17

*S & R Corp. v. Jiffy Lube Int'l, Inc.*,
  968 F.2d 371 (3d Cir. 1992) ................................................................................. 12

*Smissaert v. Chiodo*,
  163 Cal.App.2d 827 (1958) ................................................................................... 17

*Torrey Pines Bank v. Super. Ct.*,
  216 Cal.App.3d 813 (Ct. App. 1989) .................................................................... 15

**Statutes**

Cal. Corp. Code § 31005(a) ........................................................................................ 18

JVA ......................................................................................................................... 11, 15, 18

JVA. (Ex. 057 at ¶ 31.) .............................................................................................. 10

5

Lanham Act ........................................................................................................ 12

Lanham Act. 15 U.S.C. § 1115(a) ..................................................................... 20

Supported by Any Law ....................................................................................... 21

**Other Authorities**

First Amendment ................................................................................................ 10

RULE 56 ............................................................................................................ 10

6

## I.     INTRODUCTION

In seeking to adjudicate the claims of Plaintiff Shakey's Pizza Asia Ventures Inc. ("SPAVI" or "Plaintiff") in their favor, Defendants' Motion for Summary Judgment ("MSJ") makes three arguments. Each argument fails spectacularly, and so much so that it reaffirms not only that Defendants' MSJ must be denied, but that Plaintiff's concurrently pending Motion for Summary Judgment must be granted. Again, as Plaintiff has argued at the outset, liability is not in dispute. All Defendants have accomplished in the last year is increasing the parties' attorneys' fees needlessly and proving that the infringement is willful, as a result of the knowing violations of the injunction. This remains a damages case and only a damages case.

Defendants' primary argument is that prior to SPAVI's acquisition of the Potato Corner intellectual property (the "PC IP"), the seller, Third-Party Defendant Cinco Corporation ("Cinco"), had knowingly granted to Defendant PCJV USA, LLC ("PCJV") a royalty free and eternal license to use the same trademarks, service marks, trade secrets, and proprietary information that comprise the Potato Corner brand.[1]

Curiously, more than a quarter of their brief is spent on this argument. Their focus, however, is on rebutting a "straw man" argument that SPAVI never made about whether there was a licensor at all. Defendants' MSJ at 6-16. SPAVI has never argued there was "no license," as Defendants suggest, nor is it controversial that PCJV was allowed to use the PC IP and sublicense it to a franchise network.

What is in dispute is the nature of the license SPAVI inherited, and whether, as Defendants argue, it was forever and free. Defendants, however, can identify no

---

[1] The inevitable result of the license Defendants ask this Court to impose necessarily includes one additional characteristic: it is naked. By righteously arguing for their imagined perpetual, revocable, and royalty free license, Defendants are logically also attempting to block the licensor from exerting quality control absent use of the Courts. If the forever and free license imagined by PCJV was real, what is SPAVI's leverage for poor quality services provided under the Potato Corner name? It cannot increase the price because there is no price; nor can it threaten termination, because that is not allowed. SPAVI must simply go to Court (without an attorney fee clause) over and over and over again.

contract to which Cinco is bound in which it agreed to a royalty free license that would last forever, and that could not be terminated or assigned. The two contracts identified by Defendants do not prove this.

First, Section 3(g) of the October 17, 2012 Amended Joint Venture Agreement ("AJVA") – which Cinco was not a party to and did not execute – is only susceptible to one interpretation: that the owners of PCJV (Potato Corner International and the LA Group) will enter into a license agreement with the mandatory terms PCJV's members will accept. Defendants' MSJ fails to explain (1) how the words "shall enter into a Master License Agreement" can reasonably be interpreted to mean "hereby enters into a license agreement"; (2) what words establish the irrevocable and permanent nature of the license; (3) how it could be royalty free given the contrary express language in section 3(g)(i) describing the royalty to be paid; or (4) how Cinco could be bound to this document as a non-signatory. By failing to offer any textual explanations to these questions, Defendants concede that their interpretation is not reasonable and indeed contradicts the express words of section 3(g) of the AJVA.

Because there is only one interpretation of the AJVA that is reasonable – SPAVI's – no extrinsic evidence may be considered to interpret it, and the analysis should end there. Even if Defendants could get past the determination of unambiguity and have their parol evidence considered, most of it is inadmissible as it consists of self-serving declarations containing undisclosed interpretations, speculation about Cinco's intent, or inadmissible opinions offered by persons not qualified under *Daubert*. Defendants offer no evidence whatsoever of Cinco's objective expression of intent that a license be granted that is permanent and irrevocable and royalty free. To be sure, Defendants' evidence is the opposite, as it intended to be paid and did not intend to relinquish any right to terminate or sell its intellectual property.

Defendants attempt to fill this evidentiary vacuum with a request that this Court "harmonize" other agreements that ceased to exist upon execution of the AJVA on October 17, 2012 or that were never executed at all, *e.g.*, the "Trademark,

8

Copyright, and Know How License Agreement" supposedly dated October 10, 2010. Not only are these arguments unsupportable in fact or law, but they are also self-defeating, particularly Defendants' reliance on the unsigned draft Master Licensing Agreement (the "MLA"). By adopting the MLA as having governed the license, Defendants concede that their license was for a limited time period and was terminable (TE 11, ¶ 2), was assignable by Cinco (TE 11, ¶ 10), and forbade PCJV from denying the licensor's ownership (TE 11, ¶ 4) or from questioning that the goodwill brought by the work of PCJV inured to the benefit of the licensor and not PCJV.

The only other contract to which Cinco was a party is the Settlement Agreement and concurrent purchase and sale agreement. However, Defendants' argument here requires the bending of space and time as well as logic. If Plaintiff understands correctly, Defendants argue that when Cinco released claims against PCJV in 2024, that was retroactively binding on SPAVI as a result of its purchase of assets from Cinco two years earlier. This nonsense is not supported by any law or fact whatsoever, let alone the plain language of any agreement.

Having failed to identify any contract that binds Cinco to – or evidence that Cinco intended to – provide a forever and for free license to PCJV, all Defendants have shown in this proceeding is what Plaintiff has argued for all along: an unwritten license with no agreement on the remaining terms. As such, in the summary judgment context, Defendants fail to establish that their interpretation of the contracts is correct or that they have some other right to use the PC IP after May 31, 2024.

Defendants offer one final argument – abandonment encampment due to an assignment in gross – but they do so apparently not having read this Court's Order on September 9, 2025. Dkt. 296. This Court specifically confirmed its analysis of the Special Verdict Form as incorrectly describing this as an element for Plaintiff to prove when it is an affirmative defense for which Defendants bear the burden – and a high one at that. Dkt. 296. Defendants offer no evidence whatsoever to support this

9

affirmative defense, let alone a showing so compelling that no rational jury would conclude that goodwill was transferred from Cinco to SPAVI.

Given the absence of any contract binding Cinco to any license, let alone establishing Cinco's intent to deliver a free and forever license to PCJV, Defendants fail to establish as a matter of law that they had any right to use the PC IP after May 31, 2024, the date of termination. Further, because they cannot prove that SPAVI lost the right to enforce its rights as the owner of the PC IP, Defendants' MSJ must fail, just as Plaintiff's Motion for Summary Judgment must be granted. All that remains to be tried are Plaintiff's claims including damages.

## II.    DEFENDANTS' FAILURE TO MEET THEIR BURDEN UNDER RULE 56 LIMITS PLAINTIFF'S BURDEN IN OPPOSITION

Defendants' MSJ, although lacking in  Notice, can be construed as seeking to adjudicate the entirety of Plaintiff's First Amended Complaint (Dkt. 65) (the "FAC") in favor of each of the Defendants.

At summary judgment, a movant cannot prevail against a nonmoving party who has the burden of proof at trial unless the party shows either an absence of evidence or evidence that negates an essential element of the nonmoving party's claim. *Dunsmore v. San Diego Cnty. Sheriff's Dep't*, 2025 WL 2315038, at *2 (S.D. Cal. Aug. 11, 2025). If the movant fails to meet this initial burden, the nonmoving party has no obligation to produce evidence. However, if the movant succeeds, the burden shifts to the nonmoving party to show that a genuine dispute of material fact exists. *Id.*

## III.    FACTUAL STATEMENT

On October 17, 2012, the First Amendment to the Joint Venture Agreement (the "AJVA") was entered into, which amended and superseded the JVA. (Ex. 057 at ¶ 31.) PCJV later verified—under penalty of perjury—that "the First Amendment to the JV Agreement [(Exhibit "D") **modified all prior agreements** and constitutes the operative agreement governing PCJV's affairs." Ex. 73, ¶ 67 (PCJV's Verified

First Amended Cross-Claim in the Prior Governance Action)) (emphasis added); *see also* Ex. 57 (Korean Decl. at ¶ 31 ("The Amended JV Agreement was and is the operative agreement governing PCJV.")). *Now*, it claims that the governing agreements are the JVA (TE 1050), its amendment (TE 1053), the LLC Agreement (TE 62), and the Master Services Agreement (TE 1045) afford it the privilege of using Potato Corners's intellectual property until the end of time. Mtn. p. 9:2-8.

The Prior Governance Action never pertained to IP. It was a corporate governance fight between PCI and the members of the PCJV Board versus Koren and the LA Group, Ex. 46, ¶¶ 49-54; Ex. 1079. It also pertained to allegations of fraud. *Id*.

PCI sued derivatively, on behalf of PCJV, against Koren and his stores, for rights arising out of the AJVA, and Cinco sued for fraud. Koren, PCJV, the stores and anyone with a connection to Cinco and PCI. Ex. 1079 (Verified Third Amended Complaint); Ex. 073 (First Amended Cross-Complaint of PCJV); Ex. 1421 (Verified Third Amended Cross Complaint of Guy Koren). The rights at issue were over ownership, the Board of Directors, and the purported acts of various parties. When the case settled, the only claims that, as of April 2024 were preserved by Koren against any of the Cinco or PCI parties were so-called "Excluded Claims" defined to be "claims arising out of the sale of Potato Corner IP to SPAVI, including declarations of rights by the Koren Parties as to the Potato Corner IP and claims that Cinco breached contractual or other duties owed to the Koren Parties as a result of the acquisition by SPAVI of the Potato Corner IP as well as any related declarations of rights by Cinco." Ex. 1172 (I).

## IV.   ARGUMENT

Defendants' MSJ effectively challenges SPAVI's ability to prove elements of each of its claims, and, separately, argues that the assignment in gross accusation should be adjudicated as a matter of law (although Defendants misunderstand the burdens of proof on that claim of abandonment.) Each is addressed in turn.

11

**A.**    **Summary Judgment Must Be Denied Because Defendants Failed to Establish any Evidence, Let Alone Conclusive Evidence That No Reasonable Juror Could Conclude Consent After May 31, 2024**

Defendants' primary argument is that Plaintiff cannot prove Defendants' use was without consent. Defendants misunderstand the allegation in framing this argument. As alleged in the FAC, the issue is not whether PCJV and the other Defendants ever had consent, but, instead, whether the consent was withdrawn when the license was terminated. Dkt. 65 ¶¶ 60-66, 94-96, 104-107, 128. As to the former, SPAVI agrees that there was consent prior to May 31, 2024, but when the license was terminated, on that date, consent was withdrawn. Dkt. 65 ¶¶ 55-60. As the Third Circuit itself held in the same *Jiffy Lube* case on which Defendants rely: "[o]nce a franchise is terminated, the franchisor has the right to enjoin unauthorized use of its trademark under the Lanham Act." *S & R Corp. v. Jiffy Lube Int'l, Inc.*, 968 F.2d 371, 375 (3d Cir. 1992). This is an analogous situation as in *Jiffy Lube* given that the license was terminated, and upon that termination, Defendants' use of the intellectual property was to cease, immediately. *See also Blue Mako Inc. v. Minidis*, No. CV 07-916 AHM (SHX), 2008 WL 11334205, at *6–8 (C.D. Cal. June 23, 2008) (analyzing and applying the *Jiffy Lube* case in support of the proposition that the withdrawal of consent is proper if the termination was, also, proper).

Defendants offer three categories of facts to establish that no jury could possibly agree that they did not have consent to use the PC IP. When focused, on the specific allegation of continued use after consent was withdrawn, however, Defendants produce no evidence whatsoever, for the period after May 31, 2024.

**i.**    ***Stipulated Facts Do Not Establish Consent After May 31, 2024***

It is absolutely true that, in 2010, with the consent of Cinco, "PCJV was established as the master franchisor of Potato Corner restaurants and that the franchised restaurants (which include all Defendants that own or operate stores) derived their rights from PCJV as sublicensees. This fact does not confirm, as Defendants assert that, ***after May 31, 2024***, "Defendants' use of the marks was

12

authorized." MSJ at 6:23-24. Just because PCJV once possessed the right to sublicense, and then did so, does not mean that the licensor is blocked its right to terminate the license. Indeed, this is why the fraudulent statement in one FDD after another – that there was written contract granting a 20-year renewable license – is so serious; once the franchisees were locked into a franchise with a franchisor whose license could be pulled any day, it is these third parties that stand to lose the most.

### ii. The Existence of a "Franchise System" Does Not Limit the Right to Terminate Licenses for the Marks on Which that System is Based

It is true that PCJV established a "franchise system" with Cinco's consent. But the term "franchise system" does not carry any legal significance in its effect or weight of the licensor to the franchise system to terminate. That the trademark rights are fundamental to an operating franchise system explains why it was inexplicable that PCJV would ignore the negotiation with SPAVI and make such unreasonable demands, including the demand to pay less than 1% of gross, when PCJV is receiving 5-6% from the franchisees (except, of course, his stores, which he made sure did not have to pay a thin dime). Ex.[2] 1439 ¶ 53.

The fact that franchisees acknowledged PCJV's 'authority' and the long-term nature of their rights has no bearing whatsoever on what Cinco intended and provided. By way of example, PCJV has attached as Ex. 1248 a franchisee agreement entered into on September 12, 2024, while this case was pending and after termination of the license. Ex. 1248. In that agreement, PCJV purports to grant the right "to use and display the Potato Corner Marks and use the Potato Corner system" to a new franchisee. Ex. 1248 at 8-9 (§§ 2.1-2.3 "Grant"). Putting aside that this franchisee may not have had this dispute disclosed to her, the fact that "as between [PCJV] and franchisee, [PCJV] owns the Potato Corner Marks" and "Franchisee's use of the Potato Corner marks and any goodwill established by that use shall inure to exclusive benefit of Franchisor" does not make these statements true (and they are

---

[2] All references to Exhibits herein shall be to Trial Exhibits.

13

not). Because Cinco did not sign or agree to this contract, using this to prove Cinco's consent is about as compelling as someone who purchased the proverbial Brooklyn Bridge from some stranger on the street.

These agreements do not, in any way "demonstrate authorization for use" after May 31, 2024. MSJ at 7:17-20. It does demonstrate, however, that PCJV was falsely advising others that it had authority to enter into franchise agreements.

### iii. Plaintiff's Conduct Established the Absence of a Written License Agreement and Diligent and Immediate Protection of Its Rights

Upon taking ownership of Potato Corner in 2022, Plaintiff set out to obtain a final agreement with Defendants for what their compensation would be for Defendants' use of the marks as well as the scope of expansion of Potato Corner nationally. Ex. 1439 ¶¶ 31-74; Ex. 49 ¶¶ 10-19; Ex. 48 ¶¶ 24-56. By engaging in the negotiation, SPAVI and Defendants were both acting as if no written license was in place. *Id.*

### iv. Cinco's Verified Pleadings in the Prior Governance Action are Noticeable and Consistent with SPAVI's Position Herein. The Stipulation of Fact Do Not Establish Consent After May 31, 2024

Each of Plaintiff and Defendants have been gleeful in their attempts to use the others' statements from the Prior Governance Action under oath against them. How they can be used determines the context.

Statements made under oath can be admissible like any other statement of a party, and can, at a minimum, serve as an evidentiary admission that can be explained by the speaker. *Magnolia Square Homeowners Assn. v. Safeco Ins*. Co., 221 Cal.App.3d 1049, 1061 (Ct. App. 1990). Prior statements cross over to admissions requiring an estoppel when an allegation is made in one case that contradicts the same parties' allegations in another case, particularly if the former position was adopted by a court. *See, e.g. Ah Quin v. Cnty. of Kauai Dep't of Transp.*, 733 F.3d 267, 270 (9th Cir. 2013). Similarly, a party is estopped from alleging a claim in the prior action, and then dismissing that claim, with prejudice, constituting retraxit such that

14

no claim on similar facts can ever be repleaded. *Torrey Pines Bank v. Super. Ct*., 216 Cal.App.3d 813, 820 (Ct. App. 1989).

In this case, Defendants wish to introduce verified pleadings of Cinco as binding admissions against Plaintiff, arguing the allegations identified "are dispositive" (MSJ at 8:25). They apparent seek to impose them as an estoppel or judicial admission. As a threshold matter, each of the allegations are indeed true, or were true at the time, and don't contradict anything alleged in this action. For example, as alleged by Cinco, when it signed the JVA, it did believe that a license had been formed and it needed to be memorialized and that the compensation in that agreement was going to have to be 30% of gross revenue. Ex. 1078 ¶ 33-35. That fee was waived by Cinco temporarily on account of false representations by Guy Koren. Ex. 1078 ¶ 151-52.

Cinco expected to be paid for the time period that preceded the signature on a Master License Agreement, so long as the PC-IP was being used. This is not a controversial fact (and indeed, is a basis upon which quantum meruit is also being sought in Plaintiffs' Complaint).

**B.     Neither Plaintiff nor the PC IP are Bound or Restricted by Any of the "Governing Agreements" and as Such Cannot Serve as a Basis to Adjudicate Any of Plaintiff's Claims**

As stated above, it appears from the MSJ that Defendants are confused as to the issues here and what is being argued, which may be the source of much of Defendants' contentiousness in this action. Defendants seemingly do not understand that neither SPAVI nor Cinco are contending that PCJV never had authority to use the PC IP. In fact, SPAVI and Cinco agree that PCJV did have authority to use the PC IP. However, that authority was immediately revoked upon SPAVI's issuance of the Termination Letter (Ex. 48 ¶ 66, Ex. 29 (Trial Ex. 1437)), at which time PCJV should have immediately ceased all use of the PC IP. In contending that PCJV has an "indefinite" and "non-revocable" right to use and license the PC IP, Defendants' arguments are more akin to establishing ownership, which is not something any party

ever agreed to. Try as they may, Defendants have failed to demonstrate that the governing documents (*i.e.*, the AJVA, the Operating Agreement, and the Master Services Agreement) support the conclusion that PCJV has an "indefinite, non-revocable" license to the use the PC IP.

Defendants' first mistake is the melding of the AJVA and the Operating Agreement with the purported Master License Agreement. Putting aside that Defendants make conclusory statements with no factual evidence, including direct quotes from either agreement, the agreements themselves do not say what Defendants claim they do. While Defendants claim the parties agreed to a licensing agreement within the AJVA and the Operating Agreement, such language referencing any license agreement therein is merely an agreement to agree, which is unenforceable.

An agreement to agree is not a valid enforceable contract. *City of Oakland v. Dep't of Fin.,* 79 Cal.App.5th 431, 448 (2022), *as modified on denial of reh'g* (May 31, 2022); *see also City of Grass Valley v. Cohen,* 17 Cal.App.5th 567, 583 (2017), *as modified on denial of reh'g* (Dec. 19, 2017), *as modified* (Dec. 20, 2017) ("Preliminary negotiations or agreements for future negotiations—so-called agreements to agree—are not enforceable contracts."). "[I]f something is reserved for the future agreement of both parties, the promise can give rise to no legal obligation until such future agreement. Since either party by the very terms of the promise may refuse to agree to anything to which the other party will agree, it is impossible for the law to affix any obligation to such a promise.*" L.A. Soda Work v. S. Cal. Aquazone Co.,* 103 Cal.App.105, 108 (1954).

The AJVA, with respect to the license agreement, is an unenforceable agreement to agree. It states that PCJV "***shall enter into a Master License Agreement*** with Cinco (or an affiliated company to be designated by Cinco)" with certain terms to be included in the future Master License Agreement. Ex. 1053 § 3(g) (emphasis added). This reference to a separate agreement in and of itself demonstrates the parties' intent to negotiate and enter into a future agreement. Even Defendants admit

16

that this is merely a "directive" to agree, *i.e.*, an agreement to agree. MSJ at 16:21-22. It does not matter that the language in the AJVA uses "mandatory language," as Defendants call it; an agreement to agree is still unenforceable.

Further, while some terms were listed in the AJVA for the future Master License Agreement, these terms did not include certain material terms that undoubtedly needed to be negotiated and agreed upon first. These un-negotiated materials terms include the term of the future license and the licensing fee to be paid to Cinco. *Copeland v. Baskin Robbins U.S.A.,* 96 Cal. App. 4th 1251, 1256 (2002) ("It is still the general rule that where any of the essential elements of a promise are reserved for the future agreement of both parties, no legal obligation arises 'until such future agreement is made.'") (where the court determined that there were still material terms to be negotiated despite already agreeing to the amount of ice cream to be purchased, including packaging, the flavors to be manufactured, quality control standards, and responsibility for waste); *see Bustamante v. Intuit, Inc.,* 141 Cal.App.4th 199, 213 (2006) (*citing Rennick v. O.P.T.I.O.N. Care, Inc.,* 77 F.3d 309, 316 (9th Cir.1996)) ("[T]here is no contract where the objective manifestations of intent demonstrate that the parties chose not to bind themselves until a subsequent agreement [was] made."). In these circumstances, "[t]he court may not imply what the parties will agree upon." *Autry v. Republic Prods.,* 30 Cal.2d 144, 152 (1947). Defendants are correct that the Court should consider construction of the document as a whole, but a binding contract can still only be bound where all of the essential terms are "definitely agreed upon in the writing," which is not the case here. *Smissaert v. Chiodo*, 163 Cal.App.2d 827, 830 (1958).

There is similarly no conduct that would demonstrate an agreement to a licensing agreement, and especially not one with an indefinite term. Defendants cite a number of communications and draft agreements to support their contention that the parties intended to have an indefinite term. MSJ at 19:11-12. For instance, Defendants cite to Ex. 1023, which is an email communication attaching a draft joint

venture agreement, which, on every page, contains a header that says "DRAFT" and also includes internal notes and highlights. MSJ at 19:11 (citing to Ex. 1023). Section 4(a) of this draft includes a term of 10 years, though it is followed by an internal note in red (demonstrating its incompleteness) that asks "BEN, the Board has agreed not to put term to the Agreement, is this legally possible?" Ex. 1023 § 4(a). Not only is this clearly a draft, but it is a draft of the JVA and not a licensing agreement and, even if it were the latter, it includes a fixed 10-year term. *See generally* Ex. 1023. Defendants cite another draft JVA agreement circulated after the prior draft (Ex. 1023), which includes an indefinite term as well as the "draft" header and highlights. Ex. 1025. However, like the prior draft agreement, this agreement was never signed. The bottom line is that these drafts were never signed and agreed upon; they are merely drafts.

Further, the agreements that Defendants claim to embed PCJV with operational control have nothing to do with ownership or a perpetual license to the marks. Its claim, for example, that the boilerplate provision in PCJV's LLC agreement about the duties of the LLC's president somehow conveys it an eternal right to use the Potato Corner marks is another example of Defendants' tortured interpretations. MSJ at 14:20-21. They try to inject ambiguity where there is none; the provision says nothing about trademark ownership or purported licensing agreements that last for time aeternum. Similarly, neither the statutes nor case law that Defendants so readily cite stand for the proposition that PCJV—totally absent any such written agreement—had the eternal right to another companies' trademark—against the companies' desire. *See, e.g.,* Cal. Corp. Code § 31005(a); *Kim v. Servosnax, Inc.,* 10 Cal.App.4th 1346 (1992). Finally, Defendants' suggestion that its benefit of the bargain was interfered with and thus was a breach of the implied covenant of good faith and fair dealing, is a red herring. The benefit of any bargain with Defendants never included an eternal right to use the PC IP.

Finally, no extrinsic evidence is permitted because none of the terms in the

signed writings between the parties are ambiguous. *Manetti-Farrow, Inc. v. Gucci Am., Inc.,* 858 F.2d 509, 514 (9th Cir. 1988) ("Traditional contract law provides that extrinsic evidence is inadmissible to interpret an unambiguous contract.") "The test of admissibility of extrinsic evidence to explain the meaning of a written instrument is . . . whether the offered evidence is relevant to prove a meaning to which the language of the instrument is reasonably susceptible." *Brinderson-Newberg Joint Venture v. Pac. Erectors, Inc.,* 971 F.2d 272, 277 (9th Cir. 1992) (citation omitted) Defendants posit that a reasonably susceptible reading is one whereby Cinco handed over to Defendants the rights to use the Potato Corner marks for an "indefinite, non-revocable" period. MSJ at 16:5. This is not only unreasonable, it is illogical. It also ignores basic tenets of contract interpretation that require for specific provisions in an agreement to prevail over the inconsistent generalities that Defendants awkwardly insist to exist here. *Jackson v. Donovan,* 30 Cal. Rptr. 755, 758 (Ct. App. 1963).

SPAVI's claims to ownership are consistent with basic tenets of contractual interpretation, which should always govern. Defendants' calls for exotic interpretations that would allow it to hold Potato Corner's intellectual property hostage should be rejected.

### C.    Defendants Fail to Satisfy their Initial Burden as to the Affirmative Defenses Placed at Issue: Abandonment, Estoppel, and Release

When a defendant seeks summary judgment based on an affirmative defense, the defendant must establish all essential elements of that defense "beyond peradventure". *Cooper v. Hungry Buzzard Recovery, LLC*, WL 5299422, at *1 (W.D. Wash. Nov. 4, 2011); *see also Clark v. Capital Credit & Collection Servs*., 460 F.3d 1162, 1177 (9th Cir.2006) (recognizing that a defendant bears the burden of proof at summary judgment with respect to an affirmative defense).

Because an assignment in gross can result in the involuntary forfeiture of trademark rights, courts impose a significant burden on the party alleging that it happened. *See, J.P. Cosms., Inc. v. Miss Marion Cosms., Inc.,* No. 17-23876-CIV, 2018 WL 7959709, at *5 (S.D. Fla. Sept. 6, 2018) (assignment in gross is a form of

19

abandonment; and because abandonment is an involuntary forfeiture, the defendant faces a "strict" burden of proof) (citation omitted); *see, also, Procter & Gamble Co. v. Quality King Distributors, Inc.,* 123 F. Supp. 2d 108, 116 (E.D.N.Y. 2000) ("A mark may be deemed abandoned by an assignment in gross," but to succeed on such a claim, "the defendant must meet a high burden of proof").

Defendants' "evidence" falls far short of the high bar they must meet for the Court to find as a matter of law that SPAVI's assignment was in gross, especially in light of the presumption of ownership to which SPAVI is entitled under the Lanham Act. 15 U.S.C. § 1115(a).

To start, goodwill was explicitly identified as being assigned. Ex. 4 ¶ 2. Indeed, "[g]eneral principles of contract law can be applied to determine whether good will transferred with the assignment. *Ledo Pizza Sys., Inc. v. Ledo's Inc.,* No. 20 CV 7350, 2024 WL 1013897, at *4 (N.D. Ill. Mar. 7, 2024) (citation omitted). An assignment is upheld if it ensures continuity of good will and meets consumer expectations for quality. *Id.* "An entire business or its tangible assets need not be transferred . . . ." *eMachines, Inc. v. Ready Access Memory, Inc.,* No. EDCV00-00374-VAPEEX, 2001 WL 456404, at *11 (C.D. Cal. Mar. 5, 2001). Because "[g]ood will is the advantage obtained from use of a trademark, which includes the public's name recognition of the product that differentiates it from others," courts typically find assignments in gross where either the trademark was entirely unused, the assignor continued to use the marks, or the assignee's use of the marks was divorced from prior consumer expectations. *See, e.g.,Liquid Glass Enters., Inc. v. Liquid Glass Indus. of Canada, Ltd.,* No. 88-71510, 1989 WL 222653, at *5 (E.D. Mich. Apr. 28, 1989) (assignment in gross because inter alia assignor continued to use trademark and assignee agreed to not pursue assignor's customers); *see, e.g, Auburn Farms Inc. v. Mckee Foods Corp.,* 51 U.S.P.Q.2d 1439 (T.T.A.B. 1999) (Trademark Trial and Appeal Board finding assignment in gross because before assignment, assignor had not use trademark for eight years); *Pepsico, Inc. v. Grapette*

20

*Co.,* 416 F.2d 285 (8th Cir. 1969) (assignment in gross where trademark was assigned and used on different product than assignor used for many years); *Compare with e.g, FBB IP LLC v. Big Boy Rest. Grp., LLC*, 769 F. Supp. 3d 765, 777 (S.D. Ohio 2025) (no assignment in gross where trademarks were assigned together with goodwill symbolized by marks).

Contrary to Defendants' claim, *Mister Donut of Am., Inc. v. Mr. Donut, Inc.*, 418 F.2d 838 (9th Cir. 1969) resembles nothing like this case. There, the Court found an assignment in gross because the trademark was purchased from the estate of a deceased man who had disposed of his business before his death. *Mister Donut of Am., Inc.*, 418 F.2d at 842. Here, Cinco was obviously very much "alive" and operating as a business in the food service industry when it assigned the trademarks to SPAVI. Defendants' contrived equivalency can thus be easily dispatched.

Given the severe consequences of an assignment in gross—the involuntary forfeiture of trademark rights—Defendants have utterly failed to meet their high burden for a judgment as a matter of law on whether an assignment in gross occurred.

**D.    Defendants Attempt to Argue that Plaintiff is Estopped from Asserting its Claims Because they were Released by Cinco is not Supported by Any Law or Fact**

Defendants' argument of release and estoppel is not only a non sequitur but flawed in every aspect of the law and unsupported by the facts. Defendants weakly argue that Plaintiff is barred from asserting claims by release and estoppel because the "Cinco Parties" released all known and unknown licensing and other claims in the prior Settlement Agreement. MSJ at 18:17-28. Defendants allege that the releases are binding on Plaintiff as a successor to Cinco. *Id.*

First, the release of claims is not binding on SPAVI because Defendants have not established that SPAVI is a successor-in-interest to Cinco. The transfer of intellectual property rights alone does not establish successor liability on the purchaser. Under California law, a successor company has liability for a predecessor's actions if: (1) the successor expressly or impliedly agrees to assume the

subject liabilities; (2) the transaction amounts to a consolidation or merger of the successor and the predecessor; (3) the successor is the mere continuation of the predecessor; or (4) the transfer of assets to the successor is for the fraudulent purpose of escaping liability for the predecessor's debts." *Gerritsen v. Warner Bros. Ent. Inc.,* 116 F. Supp. 3d 1104, 1127 (C.D. Cal. 2015).

Defendants have not pointed to a single fact that supports successor liability, such that certain releases are binding on SPAVI nor can it. The asset sale between Cinco and SPAVI was only for the rights to the Potato Corner Brand, which included the PC IP. Ex. 46, ¶ 61; Ex. 1439 ¶¶ 10-13. The sale did not include any membership interest in PCJV nor were any liabilities of Cinco assigned to SPAVI. *Id.* Furthermore, the record is devoid of any evidence that SPAVI and Cinco merged as a result of the sale or that the sale was to escape liability. To the contrary, the documents and actions of the parties consistently evidence that Cinco and SPAVI were distinct entities. *See* Ex. 46, ¶ 61 (Decl. of Magsaysay testifying to negotiations for a licensing agreement he engaged in with Koren on behalf of Cinco); *see also* Ex. 1439 ¶¶ 31-74 (Decl. of Gregorio testifying to continuing the negotiations of a licensing agreement with SPAVI, after the sale of the PC IP to SPAVI). In fact, the clear intent of the parties was solely for the sale of the PC IP and nothing more. Thus, the lack of a successor-in-interest relationship between Cinco and SPAVI causes Defendants' estoppel argument to fail at the outset, as SPAVI is not contractually bound by the Settlement Agreement.

Second, Defendants cannot invoke an estoppel argument when the record supports that there was no misrepresentation or detrimental reliance on the part of Defendants. Estoppel requires the following elements: (1) "the party to be estopped must be apprised of the facts;" (2) "he must intend that his conduct shall be acted upon, or must so act that the party asserting the estoppel had a right to believe it was so intended;" (3) "the other party must be ignorant of the true state of facts;" and (4) "he must rely upon the conduct to his injury." *hiQ Labs, Inc. v. LinkedIn Corp.,* 639

F.Supp.3d 944, 963 (N.D. Cal. 2022). Here, Defendants supposed belief that Cinco was the real party-in-interest on the licensing claims is unconvincing. Section G of the Settlement Agreement clearly disposes of that notion as it states "SPAVI – which is not a party to any of the actions referred to herein, *nor this Agreement* – acquired all of the [PC IP], and, as such became the licensor to PCJV and PCI Trading." (emphasis added). Ex. 1172. The section then goes on to state "SPAVI and Koren attempted to negotiate the terms of a license." *Id.* There is simply no way that Defendants can interpret these statements as misrepresentations that Cinco held the licensing rights and therefore the licensing claims when the Settlement Agreement that they also entered into says the complete opposite. This is particularly the case when Defendants were knowledgeable of the asset sale and engaged in negotiating a licensing agreement with SPAVI.

The Settlement Agreement also makes clear that SPAVI's role was solely tied to ownership of the intellectual property rights associated with Potato Corner, while Cinco retained its separate obligations and liabilities. This is specifically underscored in the carveout for the preservation of claims against Cinco. The Settlement Agreement includes a carveout stating that "the Parties have agreed that (1) any releases of claims against Cinco Corporation by the Koren Parties will exclude claims arising out of the sale of Potato Corner IP to SPAVI, including declarations of rights by the Koren Parties as to the Potato Corner IP and claims that Cinco breached contractual or other duties owed to the Koren Parties as a result of the acquisition by SPAVI of the Potato Corner IP." Ex. 1172. Thus, Defendants now arguing that it believed that Cinco was the real party-in-interest on the licensing claim is completely unreasonable. How can Cinco release a claim to licenses that it has no rights to when two sections above, Section G of the Settlement Agreement explicitly states that SPAVI is the licensor. Defendants' list of six "misrepresentations" fail based on the same argument. Defendants cannot feign reliance in order to bind Plaintiff to Cinco's releases when doing so would directly contradict the texts of the Settlement

23

1  Agreement that Defendants themselves rely on.

2       Finally, under California law, releases are contractual and bind only those

3  parties (or true corporate successors) intended by the parties. *See Hess v. Ford Motor*

4  *Co.*, 27 Cal.4th 516, 524 (2002). Defendants cannot stretch Cinco's release beyond

5  the scope agreed to in Section G and I of the Settlement Agreement to include SPAVI,

6  when it was made clear that SPAVI was (1) the owner of the PC-IP; (2) had rights as

7  a licensor; and (3) was not a party to the Settlement Agreement.

8  ## V.    CONCLUSION

9       For the reasons stated herein, Plaintiff and Third-Party Defendants hereby

10  request that this Court deny Defendants' Motion for Summary Judgment.

11  Dated:  September 30, 2025        **FOX ROTHSCHILD LLP**

12

13                      */s/ Michael D. Murphy*

14                      Michael D. Murphy
                    Matthew Follett

15                      Meeghan H. Tirtasaputra
                    Attorneys for Plaintiff and Counterclaim

16                      Defendant SHAKEY'S PIZZA ASIA
                    VENTURES, INC. and Third Party

17                      Defendants CINCO CORPORATION,
                    PC INTERNATIONAL PTE LTD., and

18                      SPAVI INTERNATIONAL USA, INC.

19

20

21

22

23

24

25

26

27

28

Plaintiff And Counterclaim Defendant Shakey's Pizza Asia Ventures, Inc. And Third-Party
Defendants' Opposition To Defendants Motion For Summary Judgment    Case No. 2:24-CV-04546-SB(AGRX)
177582412.1

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

# CERTIFICATE OF SERVICE

The undersigned certifies that, on September 30, 2025, the foregoing document was electronically filed with the Clerk of the Court for the United States District Court, Central District of California, using the Court's ECF filing system. I further certify that all counsel for all parties to this action are registered CM/ECF user and that service will be accomplished by the CM/ECF system.

I certify under penalty of perjury that the foregoing is true and correct.

Dated:  September 30, 2025

FOX ROTHSCHILD LLP

/s/ Michael D. Murphy
Michael D. Murphy
Attorneys for Plaintiff SHAKEY'S
PIZZA ASIA VENTURES, INC.

25