**BLANK ROME LLP**
Todd M. Malynn (SBN 181595)
todd.malynn@blankrome.com
Arash Beral (SBN 245219)
arash.beral@blankrome.com
Jamison T. Gilmore (SBN 322100)
jamison.gilmore@blankrome.com
2029 Century Park East | 6th Floor
Los Angeles, CA 90067
Telephone:  424.239.3400
Facsimile:   424.239.3434

Attorneys for Defendants, Counterclaimants, and Third Party Plaintiffs PCJV USA, LLC, PCI TRADING LLC, POTATO CORNER, LA GROUP, LLC, GK CAPITAL GROUP, LLC, NKM CAPITAL GROUP, LLC and GUY KOREN, and Defendants J & K AMERICANA, LLC, J&K LAKEWOOD, LLC, J&K OAKRIDGE, LLC, J&K VALLEY FAIR, LLC, J & K ONTARIO, LLC, J&K PC TRUCKS, LLC, HLK MILPITAS, LLC, and GK CERRITOS, LLC

# UNITED STATES DISTRICT COURT

# CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| SHAKEY'S PIZZA ASIA VENTURES, INC, a Philippines corporation,<br><br>Plaintiff,<br><br>vs.<br><br>PCJV USA, LLC, a Delaware limited liability company; PCI TRADING , LLC, a Delaware limited liability company; GUY KOREN, an individual; POTATO CORNER LA GROUP, LLC, a California limited liability company; NKM CAPITAL GROUP, LLC, a California limited liability company; J & K AMERICANA, LLC, a California limited liability company; J&K LAKEWOOD, LLC, a California limited liability company; J&K VALLEY FAIR, LLC, a California limited liability company; J & K ONTARIO, LLC, a California limited liability company; HLK MILPITAS, LLC, a California, limited liability company; GK CERRITOS, LLC, a California, limited liability company;  J&K PC TRUCKS, LLC, a California limited liability company; and, GK CAPITAL GROUP, LLC, a California | Case No. 2:24-CV-04546-SB(AGRx)<br><br>*Hon. Stanley Blumenfeld, Jr.*<br><br>**REPLY BRIEF SUPPORTING DEFENDANTS' MOTION FOR SUMMARY JUDGMENT**<br><br>Complaint Filed:   May 31, 2024<br>Trial Date:              TBD |

| | |
|---|---|
| 1 | limited liability company and DOES 1 through 100, inclusive, |
| 2 | Defendants. |
| 3 | |
| 4 | PCJV USA, LLC, a Delaware limited liability company; PCI TRADING LLC, a Delaware limited liability company; POTATO CORNER LA GROUP LLC, a California limited liability company; GK CAPITAL GROUP, LLC, a California limited liability company; NKM CAPITAL GROUP LLC, a California limited liability company; and GUY KOREN, an individual, |
| 8 | |
| 9 | Counter-Claimants, |
| 10 | v. |
| 11 | SHAKEY'S PIZZA ASIA VENTURES, INC, a Philippines corporation, |
| 12 | Counter Defendant. |
| 13 | |
| 14 | PCJV USA, LLC, a Delaware limited liability company; PCI TRADING LLC, a Delaware limited liability company; POTATO CORNER LA GROUP LLC, a California limited liability company; GK CAPITAL GROUP, LLC, a California limited liability company; NKM CAPITAL GROUP LLC, a California limited liability company; and GUY KOREN, an individual, |
| 18 | |
| 19 | Third Party Plaintiffs, |
| 20 | v. |
| 21 | PC INTERNATIONAL PTE LTD., a Singapore business entity; SPAVI INTERNATIONAL USA, INC., a California corporation; CINCO CORPORATION, a Philippines corporation; and ROES 1 through 10, inclusive, |
| 25 | Third Party Defendants. |

**REPLY BRIEF SUPPORTING DEFENDANTS' MOTION FOR SUMMARY JUDGMENT**

# TABLE OF CONTENTS

I.    INTRODUCTION ................................................................................. 1

II.   ARGUMENT ....................................................................................... 1

    A.    Plaintiff Lacks Ownership: No Valid Assignment. ......................... 1

        1.    Plaintiff Did Not Prove Ownership. ..................................... 1

        2.    Plaintiff's Own Authorities Confirm Assignment in Gross. .. 2

        3.    Plaintiff Fails to Show Cinco Had Superior Rights to Assign. ................................................................................... 3

            a.    *Cinco Had No Goodwill to Transfer to Plaintiff.* ........ 3

            b.    *Plaintiff Could Not Inherit Greater Rights Than Defendants Due to Pre-Existing Equities and Burdens.* ..................................................................... 4

    B.    Plaintiff Did Not Prove Its "Without Consent" Element. ................ 4

        1.    The Stipulated Facts Establish Consent ................................ 4

        2.    PCJV's Partnership Structure and Franchise Law Establish Consent Under Plaintiff's Own Authority. ............................ 5

        3.    The Record Establishes Consent under *Thomson*. ................ 6

        4.    An "Agree to an Agreement," Not an "Agreement to Agree." ................................................................................... 7

    C.    Releases and Estoppel Bar Plaintiff's Claims. ................................ 7

III.  CONCLUSION .................................................................................... 7

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Ariel Preferred Retail Group, LLC v. CWCapital Asset Management*,
  883 F. Supp. 2d 797 (E.D. Mo. 2012) .................................................................. 5

*Auburn Farms Inc. v. Mckee Foods Corp.*,
  51 U.S.P.Q.2d 1439 (T.T.A.B. 1999) ................................................................... 3

*Beck Park Apts. v. HUD*,
  695 F.2d 366 (9th Cir. 1982) ................................................................................. 5

*Blue Mako Inc. v. Minidis*,
  No. CV 07-916 AHM (SHX), 2008 WL 11334205 (C.D. Cal. June 23, 2008) ....... 7

*California Packing Corporation v. Sun-Maid R. Growers*,
  81 F.2d 674 (9th Cir. 1936) ................................................................................... 4

*Cornell University v. Illumina, Inc.*,
  C.A. No. 10-433-LPS-MPT, 2014 WL 12601516 (D. Del. Sept. 29, 2014) ........... 5

*E. & J. Gallo Winery v. Gallo Cattle Co.*,
  967 F.2d 1280 (9th Cir. 1992) ............................................................................... 3

*eMachines, Inc. v. Ready Access Memory, Inc.*,
  2001 WL 456404 (C.D. Cal. Mar. 5, 2001) .......................................................... 3

*FBB IP LLC v. Big Boy Rest. Grp., LLC*,
  769 F. Supp. 3d 765 (S.D. Ohio 2025) .................................................................. 3

*Glow Indus., Inc. v. Lopez*,
  273 F. Supp. 2d 1095 (C.D. Cal. 2003) ................................................................ 1

*Grupo Gigante SA De CV v. Dallo & Co., Inc.*,
  391 F.3d 1088 (9th Cir. 2004) ............................................................................... 4

*ICEE Distribs., Inc. v. J&J Snack Foods Corp.*,
  325 F.3d 586 (5th Cir. 2003) ................................................................................. 4

*In re Impact Distributors, Inc.*,
  260 B.R. 48 (Bankr. S.D. Fla. 2001) ..................................................................... 2

*Ledo Pizza Sys., Inc. v. Ledo's Inc.*,
  2024 WL 1013897 (N.D. Ill. 2024) ....................................................................... 3

*Liquid Glass Enters., Inc. v. Liquid Glass Indus. of Canada, Ltd.*,
  No. 88-71510, 1989 WL 222653 (E.D. Mo. Apr. 28, 1989) ................................. 3

*N.A.A.C.P. v. N.A.A.C.P. Legal Defense & Education Fund, Inc.*,
  753 F.2d 131 (D.C. Cir. 1985) ........................................................................ 2, 4

*Pepsico, Inc. v. Grapette Co.*,
  416 F.2d 285 (8th Cir. 1969) ................................................................................. 3

*Russell Road Food and Beverage, LLC v. Spencer*,
  829 F.3d 1152 (9th Cir. 2016) ............................................................................... 4

*S & R Corp. v. Jiffy Lube Int'l, Inc.*,
  968 F.2d 371 (3d Cir. 1992) .................................................................................. 5

*Thomson v. Hodgson*,
    --- F.3d ---, 2025 WL 2406526 (9th Cir. Aug. 20, 2025) ..................................... 6, 7
*Treasury Enter. Sojuzplodoimport v. Spirits Int'l N.V.*,
    623 F.3d 61 (2d Cir. 2010) .................................................................................. 1
*Univ. Book Store v. Univ. of Wisc. Bd. of Regents*,
    33 U.S.P.Q.2d 1385 (TTAB 1994) ...................................................................... 7

**Statutes**

Cal. Corp. Code § 31005(a)(1)-(3) ............................................................................ 6

# I. INTRODUCTION

Plaintiff failed to carry its burden on the most basic elements of its claims. Plaintiff did not show a valid assignment or transactional documents evidencing a transfer of goodwill, and did not establish any superior right to the marks. Instead, Plaintiff relies on secondary, irregular, and inadmissible evidence, while sidestepping the undisputed facts and the controlling law. There is no genuine dispute. Plaintiff's failure to prove a valid assignment and transfer of goodwill is fatal to its claims. The Court is empowered not only to grant summary judgment against Plaintiff, but also to enter declaratory relief in Defendants' favor as against all Plaintiffs, confirming that PCJV is the rightful owner of the U.S. IP.[1]

# II. ARGUMENT

## A. Plaintiff Lacks Ownership: No Valid Assignment.

### 1. Plaintiff Did Not Prove Ownership.

Ownership is Plaintiff's burden (Dkt. 296), and Plaintiff has not shown a valid assignment. Plaintiff relies solely on secondary (and concerningly irregular, *see* TE 6, 1520) evidence, not on the transfer of the U.S. goodwill, franchise operations, or the franchisor enterprise that generates and maintains that goodwill. In response to SUF 4, Plaintiff essentially admits that goodwill did not transfer. Dkt. 317-1 at 16-17. Courts have long held that "naked" or "in gross" assignments—those severed from the underlying business and goodwill—are invalid and confer no enforcement rights; "only after a *valid* assignment of trademarks does the assignee succeed to the rights of the assignor." *Fed. Treasury Enter. Sojuzplodoimport v. Spirits Int'l N.V.*, 623 F.3d 61, 68 (2d Cir. 2010) (emphasis original); *accord Glow Indus., Inc. v. Lopez*, 273 F. Supp. 2d 1095, 1107, 1108 (C.D. Cal. 2003) ("[A] mere recitation… is not sufficient to establish a valid transfer."); McCarthy §§ 18:24, 26:5.[2]

---

[1] Plaintiffs' suggestion that Defendants have "abandoned" claims is wrong. The "claims to be tried" document was limited to jury claims, not claims for the Court.

[2] Assignment in gross cases arise from two basic fact patterns: (1) where there is a seniority or ownership dispute—*e.g.*, the plaintiff claims senior title via assignment and accuses an alleged junior user of causing confusion; and (2) where there is no

1
**REPLY BRIEF SUPPORTING DEFENDANTS' MOTION FOR SUMMARY JUDGMENT**

Plaintiff did not meet its burden of proof. The record includes no evidence, due diligence or transaction documents.[3] *See Glow Indus.*, 273 F. Supp. 2d at 1107 (rejecting assignment as insufficient); *In re Impact Distributors, Inc.*, 260 B.R. 48, 53-54 (Bankr. S.D. Fla. 2001) (rejecting secondary evidence as insufficient). Because it did not prove a valid assignment, Plaintiff's ownership claim fails.

### 2. Plaintiff's Own Authorities Confirm Assignment in Gross.

Under Plaintiff's triple "exit"/agreement-to-agree position, there can be no material dispute. Cinco admittedly had no goodwill to sell to Plaintiff; neither did PCI sell anything to Plaintiff. When, according to the assignor, its "sole" right was to passively receive due and owing royalties because of an alleged assignment of interests in the royalty generating business to a subsidiary (PCI), who allegedly controlled the marks through a "related company" licensee (PCJV), and the parent (a) allegedly sold the marks to a third party (Plaintiff) with no interest in the alleged related company or subsidiary, and (b) sold all its and its subsidiary's interests in the business to Defendants, the business' goodwill is severed from the marks and ownership of the goodwill follows control of the business. "'Regardless of their being related companies, only one [can be an] owner. Whether the [Cinco/PCI] relationship [was] that of licensor/licensee or parent/subsidiary, the one entity which [allegedly] ***control[led]*** the nature and quality of the [services] sold under the mark [was] the [alleged] owner.'" McCarthy § 18:51 (citation omitted, emphasis added). Who controlled the nature or quality of Potato Corner USA's restaurant/catering services symbolized by the marks prior to March 2022 is no longer material. PCJV

---

dispute as to seniority, and the junior user claims abandonment. This case presents the former scenario. Plaintiff incorrectly relies on authority addressing the latter.

[3] Plaintiff's proffered "deeds" are unreliable on their face given the notary's attestation to a suppressed August 2024 Restated and Amended Trademark Licensing Agreement. Defendants re-assert their objections to the "deeds" (TE 4, 6, 1520) and any testimony regarding the transaction/due diligence, including Magsaysay Decl. (TE 46 ¶¶ 58-60) and Gregorio Decl. (TE ¶¶ 10-13) as hearsay, lacking foundation or personal knowledge and inadmissible secondary evidence/opinion testimony.

consolidated ownership via the SRA and MIPA. TE 1172.

Plaintiff's cases are in accord with Defendants' authority *Mister Donut of America*. Three in fact found an assignment in gross for pertinent reasons—all of which apply: no independent prior use by the alleged assignor for eight years (*Auburn Farms Inc. v. Mckee Foods Corp.*, 51 U.S.P.Q.2d 1439, at *6 (T.T.A.B. 1999)); no delivery of assets held by the actual user pertinent to continuity (*Liquid Glass Enters., Inc. v. Liquid Glass Indus. of Canada, Ltd.*, No. 88-71510, 1989 WL 222653, at *5-6 (E.D. Mo. Apr. 28, 1989)); no supportive actual use by the alleged assignee (*Pepsico, Inc. v. Grapette Co.*, 416 F.2d 285, 290-91 (8th Cir. 1969)). Plaintiff's other cases did not involve a seniority/ownership dispute or arose from a Rule 65 proceeding,[4] or, as in *E. & J. Gallo Winery v. Gallo Cattle Co.*, 967 F.2d 1280, 1289 (9th Cir. 1992), scrutinized the documents to confirm clear legal title— that both the goodwill of the business and assets pertinent to continuity were transferred to the alleged assignee.[5] Here, Plaintiff did not prove that it acquired the goodwill of Potato Corner USA and necessary continuity assets.

### 3. Plaintiff Fails to Show Cinco Had Superior Rights to Assign.

#### a. Cinco Had No Goodwill to Transfer to Plaintiff.

In response to a clear summary judgment record (*see* Mandel Decl. ¶¶ 5-17; Bartolome Decl. ¶¶ 5-35; Kurtz Decl. ¶¶ 4-14; Koren ¶¶ 19-20) establishing Defendants' *prima facie* case that PCJV is both the senior user and the sole continuous user of the U.S. trademarks—*i.e.*, a partnership agreement that governed PCJV's first lawful use that inured to PCJV's benefit and under which PCJV solely exercised quality control, Plaintiff, an alleged assignee, just rested after any presumption of ownership was rebutted. That fails to create a genuine issue of material fact that Cinco owned trademark rights to assign in March 2022.

---

[4] *See eMachines, Inc. v. Ready Access Memory, Inc.*, 2001 WL 456404, at *11 (C.D. Cal. Mar. 5, 2001) (actual use dispute); *FBB IP LLC v. Big Boy Rest. Grp., LLC*, 769 F. Supp. 3d 765, 777, 778 (S.D. Ohio 2025) (TRO application).

[5] *See Ledo Pizza Sys., Inc. v. Ledo's Inc.*, 2024 WL 1013897, *5-6 (N.D. Ill. 2024).

3
**REPLY BRIEF SUPPORTING DEFENDANTS' MOTION FOR SUMMARY JUDGMENT**

### b. Plaintiff Could Not Inherit Greater Rights Than Defendants Due to Pre-Existing Equities and Burdens.

The record establishes that Cinco encouraged and consented for over a decade in PCJV establishing the Potato Corner USA brand and franchise system—licensing the U.S. marks to franchisees as agreed on decade-long initial/decade-long renewal terms, which Cinco approved, condoned, signed, and admitted. Therefore, whether PCJV is the sole domestic user for over three years as in *Grupo Gigante SA De CV v. Dallo & Co., Inc.*, 391 F.3d 1088, 1101-05 (9th Cir. 2004) or a junior user as in *N.A.A.C.P. v. N.A.A.C.P. Legal Defense & Education Fund, Inc.*, 753 F.2d 131, 139, 141 (D.C. Cir. 1985), Cinco had no legal right to terminate PCJV's right to use the U.S. marks, including to support PCJV's U.S. franchisees. As Cinco's alleged assignee, Plaintiff could not have acquired any greater rights than Cinco, itself, could enforce against PCJV. *See Russell Road Food and Beverage, LLC v. Spencer*, 829 F.3d 1152, 1156 (9th Cir. 2016); *California Packing Corporation v. Sun-Maid R. Growers,* 81 F.2d 674, 676-77 (9th Cir. 1936); *ICEE Distribs., Inc. v. J&J Snack Foods Corp.*, 325 F.3d 586, 593 (5th Cir. 2003); McCarthy § 18:15. Because Plaintiff disavows acquiring burdens with respect to PCJV, and Defendants acquired all of Cinco's and PCI's rights/interests in PCJV, PCJV necessarily is the sole or senior user of the U.S. marks under *Grupo Gigante SA De CV*.

### B. Plaintiff Did Not Prove Its "Without Consent" Element.

#### 1. The Stipulated Facts Establish Consent.

Plaintiff's opposition impermissibly asks the Court to disregard a binding fact from August 2025—one that confirms PCJV's authority to grant tenured rights to every U.S. franchisee—simply because the meaning and logical consequence of the fact has become inconvenient. Plaintiff's effort to contest a stipulated fact is not a good-faith legal argument; it is an improper invitation for the Court, and an anticipatory invitation for the jury, to nullify a stipulated fact, along with the logic, legal consequences and legal framework that give stipulations their force. After

stipulating that at least through August 2025, PCJV has been the source of decade-term and decade-renewal term IP rights obtained by U.S. franchisees—the law does not permit a party to then urge the factfinder to disregard the logical inferences that necessarily follow. Plaintiff's effort to attack a stipulated fact is not just contrary to law, it undermines the integrity of the judicial process and the rule of law.

## 2. PCJV's Partnership Structure and Franchise Law Establish Consent Under Plaintiff's Own Authority.

Even if Plaintiff could change the stipulated facts, Cinco would still be bound and could not revoke PCJV's contracts with U.S. franchisees. *Cornell University v. Illumina, Inc.*, C.A. No. 10-433-LPS-MPT, 2014 WL 12601516, at *5 (D. Del. Sept. 29, 2014); *Ariel Preferred Retail Group, LLC v. CWCapital Asset Management*, 883 F. Supp. 2d 797, 805 (E.D. Mo. 2012). Plaintiff ignores this settled law when it repeats its strawman argument about U.S. franchisees allegedly being in jeopardy—their rights were secured the moment PCJV entered into those contracts.

Under any construction of the operative agreements, PCJV remained the U.S. franchisor pursuant to valid and enforceable contracts with U.S. franchisees. This is consistent with Plaintiff's own authority holding that U.S. franchise laws in effect at the time of contracting become part of the contract. *Beck Park Apts. v. HUD*, 695 F.2d 366, 369 (9th Cir. 1982). Neither Cinco nor Plaintiff, as mere alleged licensors, are authorized under franchise laws to control franchises under the branded business model, marketing plan and scheme PCJV created, which the U.S. marks symbolize. *See* Cal. Corp. Code § 31005(a)(1)-(3); *Kim v. Servosnax, Inc.*, 10 Cal. App. 4th 1346, 1353-58 (1992) (finding licensee-licensor model unlawful).

Plaintiff's reliance on *S & R Corp. v. Jiffy Lube Int'l, Inc.,* 968 F.2d 371, 375 (3d Cir. 1992) is misplaced. The Third Circuit held it is the *franchisor* (here, PCJV) that had a right to terminate franchisees pursuant to their agreements. It did not hold and it cannot lawfully follow that a mere international licensor (Cinco or Plaintiff)

5
REPLY BRIEF SUPPORTING DEFENDANTS' MOTION FOR SUMMARY JUDGMENT

bound by those agreements has the unilateral right to take over a U.S. franchisor or operate its business or terminate its contracts to start a competing franchise system.

### 3. The Record Establishes Consent under *Thomson*.

Whether the First Amendment is viewed in isolation or among the "set of agreements" the parties agreed govern PCJV,[6] under *Thomson v. Hodgson*, 2025 WL 2406526, at *4–8 (9th Cir. Aug. 20, 2025), courts are to enforce the specified duration of an IP license, including where, as here, there is an indefinite term tied to supermajority/mutual agreement termination/dissolution requirements coupled with IP trailing rights or, at least, imply an ascertainable term from the parties' agreement or course of conduct. Under *Thomson*, PCJV had either express perpetual rights or, at minimum, implied long-term trademark rights that follow certainly beyond the date of Plaintiff's alleged "termination" letter. There is no path to "at-will" IP rights, which were rejected in negotiations, especially when, as in *Thomson*, Cinco would not have delayed but would have asserted them in 2018 if it had them.

PCJV's agreements include the material terms of a valid and enforceable "master license," including one that also "granted" ownership rights to each partnership group, including: (a) an indefinite right to use the U.S. marks subject to termination by supermajority/mutual agreement with "vested" control in PCJV's President; (b) an equal sharing of non-transferable royalty rights (30%/30%) for the benefit of each partnership group; and (c) PCJV's President and LA Group being required to establish and maintain the quality of Potato Corner USA's restaurant and catering services symbolized by the U.S. trademarks they license to U.S. franchisees.[7] *See* McCarthy §§ 18:38, 18:43.

---

[6] There is no dispute that the First Amendment evidenced a 75% supermajority requirement to control PCJV's major decisions, including termination. There also is no *bona fide* dispute that the First Amendment only partially (not fully) integrated PCJV's set of agreements, as Cinco swore in verified pleadings and the parties agreed in the settlement agreement. TE 1172.

[7] Royalties and duration are non-essential terms for trademark licenses. *See Thomson*, 2025 WL 2406526, at *4–8 (finding perpetual duration was implied in IP license); *Univ. Book Store v. Univ. of Wisc. Bd. of Regents,* 33 U.S.P.Q.2d 1385, at

6
**REPLY BRIEF SUPPORTING DEFENDANTS' MOTION FOR SUMMARY JUDGMENT**

### 4. An "Agree to an Agreement," Not an "Agreement to Agree."

Since the Complaint filing and the same-day "termination" letter (Dkt. 1-6), Plaintiff has focused on the notion of an "agreement to agree." *See Copeland* line of cases. But this was fallacy and misdirection. The subject language at issue actually reflects a binding obligation on the "Company" to agree to terms that were already settled. If anything, this was an "agree to an agreement," not an "agreement to agree." The only step remaining was for the Company to "enter" the pre-agreed agreement—which it did—without requiring execution of a new document, as confirmed by Plaintiff's own pre-*Thomson* authority, *Blue Mako Inc. v. Minidis,* No. CV 07-916 AHM (SHX), 2008 WL 11334205, at *6–8 (C.D. Cal. June 23, 2008) (oral licenses are valid). As such, none of the *Copeland* line of cases apply.

### C. Releases and Estoppel Bar Plaintiff's Claims.

The settlement releases bind successors and assigns—including Plaintiff, who allegedly acquired the IP from Cinco before (TE 4) and after (TE 6) the settlement. Claiming not to be a party to the settlement is unavailing to a real party in interest whose counsel negotiated a settlement that expressly covers all claims "arising out of or in any way related to the subject matter of the Parties' relationships," which necessarily includes the IP. The releases were intended to resolve all claims relating to the U.S. franchise system, except for narrowly defined "Excluded Claims" by Defendants that do not apply to Plaintiff's claims. Estoppel bars Plaintiff from relitigating issues resolved in the settlement. The Court should enforce the releases and estoppel, and grant summary judgment for Defendants on all barred claims. Plaintiff's own authority (*Gerritson*) supports this outcome.

### III. CONCLUSION

The Court should grant summary judgment on Plaintiff's claims, or at least partial summary judgment to narrow the issues.

---

*10 (TTAB 1994) (finding implied, royalty-free license).

DATED: October 5, 2025     **BLANK ROME LLP**

By: */s/ Arash Beral*
　　Todd M. Malynn
　　Arash Beral
　　Jamison T. Gilmore
Attorneys for Defendants, Counterclaimants, and Third Party Plaintiffs PCJV USA, LLC, PCI TRADING LLC, POTATO CORNER, LA GROUP, LLC, GK CAPITAL GROUP, LLC, NKM CAPITAL GROUP, LLC and GUY KOREN, and Defendants J & K AMERICANA, LLC, J&K LAKEWOOD, LLC, J&K OAKRIDGE, LLC, J&K VALLEY FAIR, LLC, J & K ONTARIO, LLC, J&K PC TRUCKS, LLC, HLK MILPITAS, LLC, and GK CERRITOS, LLC

**CERTIFICATE OF WORD COUNT**

The undersigned counsel of record for PCJV USA Parties, certify that this brief contains 2,448 words, which complies with the word limit of Local Rule 11-6.1.

DATED: October 5, 2025

                                              */s/ Arash Beral*
                                              ARASH BERAL

# CERTIFICATE OF SERVICE

The undersigned certifies that on October 5, 2025, the foregoing document was electronically filed with the Clerk of the Court for the United States District Court, Central District of California, using the Court's Electronic Case Filing (ECF) system. I further certify that all participants in the case are registered CM/ECF users and that service will be accomplished by the CM/ECF system.

I certify under penalty of perjury that the foregoing is true and correct. Executed on October 5, 2025.

By:   */s/AJ Cruickshank*