John Shaeffer (SBN 138331)
jshaeffer@foxrothschild.com
Matthew Follett (SBN 325481)
mfollett@foxrothschild.com
Meeghan H. Tirtasaputra (SBN 325572)
mtirtasaputra@foxrothschild.com
**FOX ROTHSCHILD LLP**
Constellation Place
10250 Constellation Boulevard, Suite 900
Los Angeles, California 90067
Telephone:  310.598.4150
Facsimile:  310.556.9828

Attorneys for Plaintiff, Counterclaim Defendant, and Third Party Defendants

**BLANK ROME LLP**
Todd M. Malynn (SBN 181595)
todd.malynn@blankrome.com
Arash Beral (SBN 245219)
arash.beral@blankrome.com
Jamison T. Gilmore (SBN 322100)
jamison.gilmore@blankrome.com
2029 Century Park East | 6th Floor
Los Angeles, CA 90067
Telephone:  424.239.3400
Facsimile:  424.239.3434

Attorneys for Defendants, Counterclaimants, and Third Party Plaintiffs

# UNITED STATES DISTRICT COURT
# CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| SHAKEY'S PIZZA ASIA VENTURES, INC, a Philippines corporation,<br><br>Plaintiff,<br><br>vs.<br><br>PCJV USA, LLC, a Delaware limited liability company; PCI TRADING , LLC, a Delaware limited liability company; GUY KOREN, an individual; POTATO CORNER LA GROUP, LLC, a California limited liability company; NKM CAPITAL GROUP, LLC, a California limited liability company; J & K AMERICANA, LLC, a California limited liability company; J&K LAKEWOOD, LLC, a California limited liability company; J&K VALLEY FAIR, LLC, a California limited liability company; J & K ONTARIO, LLC, a California limited | Case No. 2:24-CV-04546-SB(AGRx)<br><br>*Hon. Stanley Blumenfeld, Jr.*<br><br>**JOINT REPORT IN RESPONSE TO NOVEMBER 19, 2025 ORDER (DKT. 331)**<br><br>Complaint Filed:  May 31, 2024 |

1

liability company; HLK MILPITAS, LLC, a California, limited liability company; GK CERRITOS, LLC, a California, limited liability company; J&K PC TRUCKS, LLC, a California limited liability company; and, GK CAPITAL GROUP, LLC, a California limited liability company and DOES 1 through 100, inclusive,

                Defendants.

---

PCJV USA, LLC, a Delaware limited liability company; PCI TRADING LLC, a Delaware limited liability company; POTATO CORNER LA GROUP LLC, a California limited liability company; GK CAPITAL GROUP, LLC, a California limited liability company; NKM CAPITAL GROUP LLC, a California limited liability company; and GUY KOREN, an individual,

                Counter-Claimants,

    v.

SHAKEY'S PIZZA ASIA VENTURES, INC, a Philippines corporation,

                Counter Defendant.

---

PCJV USA, LLC, a Delaware limited liability company; PCI TRADING LLC, a Delaware limited liability company; POTATO CORNER LA GROUP LLC, a California limited liability company; GK CAPITAL GROUP, LLC, a California limited liability company; NKM CAPITAL GROUP LLC, a California limited liability company; and GUY KOREN, an individual,

                Third Party Plaintiffs,

    v.

PC INTERNATIONAL PTE LTD., a Singapore business entity; SPAVI INTERNATIONAL USA, INC., a California corporation; CINCO CORPORATION, a Philippines corporation; and ROES 1 through 10, inclusive,

                Third Party Defendants.

## I.   INTRODUCTION

The parties submit this Joint Report in response to the Court's November 19, 2025 Order on Cross-Motions for Summary Judgment ("the Order"). Dkt. 331. Immediately following the November 14, 2025 hearing (and before the entry of Dkt. 331), counsel for the parties met and conferred in the hallway outside the courtroom to schedule a time to meet. Counsel scheduled a meeting at the offices of Blank Rome LLP on Wednesday afternoon, November 19, 2025, at 2:00 p.m. The Order was entered immediately before counsel's scheduled meeting.

Also immediately before the Wednesday afternoon meeting and through Friday, November 21, counsel for Plaintiff, Counter-Defendant, and Third Party Defendants (collectively "Plaintiff") transmitted to counsel for Defendants, Cross Complainants, and Third Party Complainants (collectively, "Defendants") drafts of a number of proposed amended pretrial filings, including a proposed: (1) Amended Pretrial Conference Order; (2) Amended Jury Instructions; (3) Amended Witness List; (4) Amended Exhibit List; and (5) Amended Verdict Form. Defendants had not reviewed the new proposed pretrial filings before the Wednesday afternoon meeting nor had they completed their review of the Order but discussed it during the meeting.

The parties had a meaningful two-hour in-person meeting followed by an over 30-minute phone conference later that evening with Judge Stone (who previously mediated the state court matter and is familiar with these disputes) to potentially assist the parties in resolving their disputes. The parties had a further call with Judge Stone on Thursday morning, when Defendants' counsel proposed that the principals of the parties meet via video conference to discuss resolution. In Defendants' counsel's view, no settlement could be achieved until the parties begin talking to each other again (directly). Plaintiff's counsel, too, believed that a meeting with the clients would be a good idea and assisted in arranging a Zoom conference of all principals of the parties, which ultimately took place on November 25, 2025 at 8 p.m. PT. The progress of the parties' settlement discussions is

discussed below.

Before the conference with Judge Stone on Wednesday afternoon, counsel for the parties had a robust discussion not only on (1) ways to resolve their dispute; but (2) the application of the Order to the claims, counterclaims, and defenses asserted; (3) whether any claims, counterclaims, or defenses would be withdrawn or narrowed; (5) how to narrow the presentation to the jury; and (5) the appropriateness of amending any of the pretrial filings. Specifically, and as expanded below, counsel for Plaintiff informed counsel for Defendants that Plaintiff would no longer pursue certain claims and defenses and that the impact of this decision was reflected in the draft amended pretrial filing providing in advance of the meeting. Counsel for Defendants indicated that they would review the Order in detail and address further changes to their defenses and counterclaims, and have subsequently proposed a narrowing path forward as discussed below.

## II.  SETTLEMENT EFFORTS

On November 25, 2025, at 8 p.m. PT, the parties' principals and counsel met via Zoom to discuss ways to resolve their disputes. In attendance were counsel (John Shaeffer, Meeghan Tirtasaputra, Todd Malynn, and Arash Beral), SPAVI (represented by Vicente Gregorio, Jorge Concepcion, Yiow Tan, Joy Ybanez, and Aissa Llave), and Defendants (represented by Guy Koren).

The discussion lasted nearly an hour and focused on both sides' passion for the brand and exploring a business resolution that centers on growing that brand. The upshot of the conversation was that the parties identified two potential ways to resolve their disputes: (1) a new arrangement between Defendants and SPAVI focused on U.S. development and growth; or (2) a complete or partial "divorce." SPAVI's representatives informed Defendants that their board would be meeting on November 26, 2025 to discuss these paths and would get back to Defendants on a framework of a potential resolution. All parties agreed that discussions should proceed quickly. The parties further agreed that they would meet again on Tuesday night, December 2, 2025 to have further discussions.

In the meantime, and if SPAVI's board approves the transmission of a settlement framework, SPAVI will provide that to Defendants prior to December 2.

## III. NARROWING OF THE CASE

### A. Plaintiff

#### 1. Proposal Sent to Defendants on November 20, 2025

Following their meeting on November 19, 2025, Plaintiff sent an initial draft of this report for Defendants' consideration that included Plaintiff's proposal for narrowing the case that is set forth below.

As reflected in the Amened Proposed Pretrial Conference Order provided to the Defendants in advance of the parties' meeting, Plaintiff intend to narrow their claims to infringement of a registered trademark pursuant to 15 U.S.C. § 1114 and common law trademark infringement only. Plaintiff will also narrow their affirmative defenses to unclean hands, justification, and mitigation only. Plaintiff intends to call only four witnesses in support of their case in chief and, with the assumption that they will need to cross-examine Defendants' expert, believe that their case and defense can be completed in 12 court hours. Plaintiff will file the appropriate requests for dismissal without prejudice to reflect the narrowed case.

Counsel for Plaintiff also proposed methods for addressing the number of Defendants in the case. As mentioned, Plaintiff will file appropriate requests for dismissal without prejudice with respect to those Defendants who are not accused of direct trademark infringement. The remaining case will then consist of Defendant PCJV USA LLC ("PCJV") and those various franchisees that are directly or indirectly owned and controlled by Defendant Guy Koren and are commonly represented by counsel for PCJV. While Defendants informed Plaintiff that there are different ownership structures among these franchisees and each has earned different revenues, their trademark liability is common and turns on the effectiveness of Plaintiff's termination of PCJV's licensed use of the Potato Corner trademarks. As such, Plaintiff suggested that PCJV simply assume

5

responsibility for any liability suffered by these franchisees, meaning that any revenues presented to the jury from which damages could be calculated would include not only those earned by PCJV but those earned by the Defendant franchisees. This would simplify the verdict form significantly and would put the burden on Guy Koren and his other investors (rather than the jury) as to how to allocate any damages awarded Plaintiff. Additionally, and assuming a verdict in Plaintiff's favor, the Court could still issue a permanent injunction against each of the franchisees with respect to their use of the Potato Corner marks since their use wholly derived from the license held by PCJV. At the end of our meeting, counsel for Defendants indicated that they would consider Plaintiff's proposal and get back to Plaintiff.

Plaintiff additionally suggested that neither Third Party Defendants PC International PTE Ltd. nor Third Party Defendant SPAVI International USA, Inc., both of whom are subsidiaries of Plaintiff, need to be part of the case presented to the jury. Plaintiff learned during the meeting that both parties are named as third party defendants because they are listed as owners on certain of the Potato Corner trademarks and/or created a competing franchise operation. To the extent the jury determines that Third Party Defendant Cinco Corporation abandoned the Potato Corner trademarks either as the result of a naked license or as an assignment in gross to Plaintiff such that PCJV owns the Potato Corner trademarks, PCJV wants to ensure that such a finding is binding upon them as well. Plaintiff believes that a stipulation along such lines can be accomplished so that the jury need not hear about these third party defendants.

### 2. Response to Defendants' November 26, 2025 Amendments to this Report

Defendants first provided their response to Plaintiff's draft report on November 26, 2025. In their portion, Defendants suggest for the first time to bifurcate Plaintiff's federal and common law causes of action from Defendants' counterclaims. While Plaintiff is not necessarily opposed to the suggestion, Plaintiff questions how it will promote judicial

efficiency since the same witnesses will need to testify in both phases of the case and many of the factual issues overlap. Defendants seem to suggest bifurcation will assist them with the prosecution of their affirmative claims.

Defendants' portion of the report also includes extensive argument on the merits of its positions in this case. Plaintiff disputes this recitation but understands that an argument on the case's merits was not something the Court requested to be included in this report.

B. **Defendants**

1. **Frank Discussions About the Evidence**

In order to help eliminate issues and streamline this case for resolution (via settlement or trial), at Wednesday afternoon's in-person meeting, counsel had open discussions over the MSJ testimony and record. Emails and billing records show that a draft "Trademark, Copyright and Know-How License Agreement" (hereinafter, the "TCKHLA") was once prepared and circulated for signature – one that Mr. Koren signed at Cinco's agent's request and had believed was an enforceable agreement but which Plaintiff disputed was ever entered or executed. As Defendants showed in their MSJ filings and counsel discussed on Wednesday afternoon, the record demonstrates that the TCKHLA was changed, including its name, to "Trademark License Agreement" (hereinafter, the "TLA"). On February 7, 2011, Cinco Corporation's "Chief Executive Officer" while concurrently serving as PCJV's "Chairman and Managing Partner," Jose P. Magsaysay, Jr. (*see* TE 1034 at "Item 2") met with Ben Olivas (joint counsel for PCJV and Cinco) and finalized and executed PCJV's first set of Franchise Disclosure Documents ("2011 FDD") and its corresponding FDD application (which must be signed under oath) (*see* TE 1038). See Dkt. 309-2, ¶ 19. Mr. Magsaysay announced in the FDD as an authorized officer of PCJV and Cinco that:

> *Under a License Agreement with Cinco dated October 1, 2010, Cinco has licensed us to use the Marks and to sublicense them to our franchise owners to use in operating Potato Corner Stores. The license agreement is for 20*

7

*years with 3 successive automatic 10 year renewal terms. Cinco can terminate the Trademark License Agreement if we breach the Agreement and fail to cure within 30 days of written notice. We can terminate the Trademark License Agreement anytime upon 60 days' notice. Cinco has the right to approve all proposed uses of the Marks. No other agreement limits our right to use or license the Marks.* TE 1034 at "Item 13."

Concurrently, Mr. Magsaysay authorized the issuance of franchise agreements by PCJV to franchisees across the United States stating:

*Cinco Corporation has licensed the Marks to us [PCJV] to use in connection with the franchising, development, and operation of Potato Corner Stores ... You may not at any time during or after this Agreement's term contest or assist any other person in contesting the validity or our [PCJV's] ownership, of the Marks.* TE 1034 at Franchise Agreement, Section 5.A.

The TLA's term of duration was indisputably reported in the FDDs and, at a minimum, Cinco announced that PCJV had enforceable trademark rights *for 20 years with 3 successive automatic 10 year renewal terms* beginning October 1, 2010. Cinco (as PCJV's majority owner) and Magsasysay (as PCJV's Chairman and Cinco's CEO) repeatedly caused PCJV's FDDs to continuously state those exact terms.

On April 9, 2018, Cinco exercised its majority control power and removed Guy Koren from PCJV. On the same day, PCJV passed a resolution formally removing Mr. Koren as President and electing Mr. Magsaysay as PCJV's CEO and other Cinco-affiliated individuals as Chairman, Treasurer, and Corporate Secretary. On the next day, April 10, 2018, Cinco filed a Verified Complaint against Mr. Koren. TE 1076.

On the very following evening, on April 11, 2018, Mr. Magsaysay on behalf of Cinco emailed PCJV's auditors, copying Cinco's Ricky Montelibano and then-Cinco's (now SPAVI's) Myrose Victor:

/ / /

*I am good Chester, except for daily headaches. Although it has only been 2 weeks since my last brain surgery. Thank you*

**This is to confirm that our group is waiving the 30% distribution for 2017.**

*Thank you and best always,*

*joe*[1]

On April 19, 2018, PCJV (then 100% under Cinco's control) issued another set of FDDs again announcing that under the TLA, PCJV maintains an "*exclusive 20 year license with 3 successive automatic 10 year renewal terms …*" TE 1184 at "Item 13." It also reported that PCJV's obligations to remit 30% collected royalty fees to its 40% ownership group (LA Group) and 30% collected royalty fees to its 60% ownership group (Cinco) "have been waived by the respective parties for the years ended December 31, 2017, 2016 and 2015." TE 1184 at "Note 7 – Related Party Transactions."

On June 10, 2020, Cinco filed a Verified Answer admitting the truth of all of the statements made in the April 19, 2018 FDDs, including the TLA and the annual mutual 30% waivers. *See* TE 1355, ¶¶ 143-144; *compare* TE 1421 (affirmative allegations).

Further, in this action, Cinco and SPAVI furnished the Court with a document (TE 6; *see also* TE 1520) prepared by Plaintiff's former lead counsel's former law firm (Ervin Cohen & Jessup LLP). Through error and oversight it appears, the wrong notary pages were affixed to this document. Those notary pages indisputably show that on August 15, 2024, each of Mr. Magsaysay and Mr. Po appeared before different notaries, furnishing those notaries an executed copy of an "Amended and Restated Trademark Licensing Agreement" (the "A&R TLA"). The A&R TLA appears to implicate, and purport to amend and restate the TLA while potentially being "backdated" and made effective March 5, 2022 while Mr. Magsaysay still claimed to be the Chairman of PCJV. There is no other

---

[1] At the Wednesday afternoon meeting, defense counsel provided Plaintiff's counsel a copy of this impeachment exhibit. Plaintiff's counsel appeared unaware of the exhibit (despite it being Plaintiff's obligation to have produced it, alongside the TLA, and other documents which were not produced in this litigation).

9

explanation for Cinco and SPAVI executing the A&R TLA in August 2024 if Cinco sold SPAVI its entire trademark portfolio in 2022.[2]

### 2. The Settlement Discussions

Following the conferences with Judge Stone on Wednesday and Thursday last week leading to last night's meeting of the principals, Defendants were and are cautiously optimistic about the prospects of a resolution. In Defendants' view (a view Defendants believe Plaintiff shares), a business resolution is much more in the mutual interests of all parties rather than going to trial.

### 3. Narrowing the Claims and Defenses for Trial

Defendants have meaningfully read and absorbed Dkt. 331 and appreciate the Court's guidance, and are working on meaningfully narrowing the case to focus on: (a) whether SPAVI is a valid assignee; and (b) if so, whether PCJV had an expressed or implied license and right to continue using the trademarks after May 31, 2024. If SPAVI cannot establish that it is a valid assignee, its claims fail; similarly, if SPAVI cannot establish "without consent" infringement, its claims fail. As it relates to the counterclaims, whether PCJV is an express or implied licensee under the TLA or an implied-in-fact/oral license agreement is a matter that would inform and streamline Defendants' counterclaims. For example, if the jury finds that the TLA is the operative agreement of the parties with the material terms set as reported in the FDDs, Defendants' claims would

---

[2] Neither Cinco nor SPAVI has ever made a claim of breach of the TLA (or the A&R TLA). Neither Cinco nor SPAVI has ever claimed that Cinco's and the LA Group's mutual waivers (or October 2012 modification in favor of 60/40 distributions) were ineffectual, other than alleging that Cinco's waivers were purportedly procured by fraud. Neither Cinco nor SPAVI has ever attempted to enforce PCJV's obligation to pay Cinco (or SPAVI) 30% of collected royalties. Cinco's claims for 30% royalties, if any, were released as part of a May 2024 settlement. During the agreed "tolling period" under the Tolling Agreement executed with SPAVI, SPAVI rejected PCJV's proposal set forth in an email counsel offering to enter a license either: "(1) on the exact terms set forth in PCJV's JVA/LLC Agreement/AJVA: "30% of all initial/franchise fees and ongoing royalty fees paid to/collected by the Company" with payments to be made "within 30 days from receipt of the fees by the Company;" or (2) as we've offered before, per financial terms as recommended by a neutral, independent industry expert. In addition, PCJV would agree to be bound by the expert's recommendation."

be reduced to tortious interference claims and breach of the TLA. But if the jury were to find that no enforceable license was in place, Defendants' counterclaims will rest on tort and contract breaches over the obligations to provide PCJV a license.

In Defendants' view, to best streamline and narrow the jury trial in this case, bifurcating for trial SPAVI's two remaining claims for trademark infringement, limited to liability only, with a special verdict form to the jury for findings resolving common, threshold issues that will govern the balance of the case, is the best approach. Not only would bifurcation reduce juror confusion, bifurcation is warranted because the proposed "Phase One" trial would isolate threshold issues (valid assignee and consent) that could dispose of the Complaint or sharply narrow "Phase Two." After obtaining client approval, Defendants first raised this proposal on November 25 (not November 26 as Plaintiff suggests) and continued further discussions over the proposal on November 26.

Because Plaintiff is not completely in agreement (and has set forth its position elsewhere in this report), Defendants would appreciate the opportunity to brief the issue of "bifurcation" as further submissions could help address the judicial efficiency questions Plaintiff raises. By way of illustration, listed below are Defendants' remaining defenses and counterclaims, many of which could and would be narrowed following a short "Phase One" trial with a summary explanation that follows.

*Remaining Affirmative Defenses Tried to the Jury:* Waiver, Failure to Mitigate Damages, Naked Licensing. (All defenses are eliminated if SPAVI cannot prove that it is a valid assignee and that Defendants did not have consent. Naked licensing principally applies only if jury finds the TLA or another agreement containing quality control provisions is not the operative license agreement).

*Remaining Affirmative Defenses Tried to the Court:* Acquiescence, Laches, Unclean Hands, In Pari Delicto, Estoppel. (All defenses are eliminated if SPAVI does not carry its burden of proof on the threshold issues tried to the Jury. If SPAVI prevails, special findings could help inform the Court's analysis of these equitable defenses.)

11

*Remaining Counterclaims Tried to the Jury:*

1. *Claims that Operate if PCJV is a Licensee (against SPAVI)*: breach of the written TLA or, in the alternative, implied-in-fact or oral license agreement. (If the jury finds that the TLA is the operative agreement, there would be no need to try an implied or oral license claim, and vice versa.)

2. *Claims that Operate if PCJV is Not a Licensee (against SPAVI)*: breach of contract or inducing breach/interference of/with the AJVA, aiding and abetting breach of fiduciary duty and fraud, breach of the covenant of good faith and fair dealing, quantum meruit. (If the jury finds that PCJV is a licensee, these claims are all eliminated.)

3. *Claims that Operate if PCJV is Not a Licensee (against Cinco – as a AJVA contracting/fiduciary party and/or as alter ego of PCI):* breach of the AJVA, breach of the implied covenant of good faith and fair dealing, breach of fiduciary duty. (Likewise, if the jury finds that PCJV is a licensee, these claims are all eliminated.)

4. *Claims that Operate Independent of Whether PCJV is a Licensee (against SPAVI):* inducing breach/interference/prospective interference claims involving Defendants' contracts and relationships. (These claims will be tried regardless of the jury's findings on "Phase One," however, there would be a strong likelihood that the matter would be resolved following Phase One-if not resolved prior to Phase One.)

*Remaining Counterclaims Tried to the Court:* Declaratory Relief, Unfair Competition (against all counter-defendants/third-party defendants). (Phase One could certainly help inform the Court's rulings on these claims. If, for example, SPAVI cannot prove that it is a valid assignee, the Court could enter declaratory relief for Defendants. If the jury finds that a license exists with identified material terms, the Court could enter declaratory relief that SPAVI took the marks subject to that license and assumed the licensor's obligations and, if necessary, the Court could set the license terms and/or order specific performance/injunctive relief.

/ / /

## IV. AMENDMENT TO THE PRETRIAL FILINGS

The parties agree that new pretrial filings are necessary. Defendants would appreciate the Court's further guidance on their bifurcation proposal, which will inform how the amendments will be made, narrowed, and phased. Plaintiff requests that bifurcation not be allowed and the parties re-set and file new pretrial documents in accordance with the Court's Civil Pretrial and Trial Order with new "four-week" and "two-week" deadlines to submit new joint documents. Defendants request that the parties further narrow and streamline their approach, be allowed to brief the issue of bifurcation, and submit new pretrial documents only with respect to a proposed Phase One trial, should bifurcation be ordered.

## V. CONCLUSION

The parties are cooperating and working towards resolution and also streamlining the trial. It is safe to say that the parties are more in a collaborative business posture than ever before.

Dated: November 26, 2025        **FOX ROTHSCHILD LLP**

*/s/ John Shaeffer*
John Shaeffer
Matthew Follett
Meeghan H. Tirtasaputra
Attorneys for Plaintiff and Counterclaim Defendant SHAKEY'S PIZZA ASIA VENTURES, INC. and Third Party Defendants CINCO CORPORATION, PC INTERNATIONAL PTE LTD., and SPAVI INTERNATIONAL USA, INC.

| | |
|---|---|
| Dated: November 26, 2025 | **BLANK ROME LLP** |
| | */s/ Arash Beral* |
| | Todd M. Malynn |
| | Arash Beral |
| | Jamison T. Gilmore |
| | Attorneys for Defendants, Counterclaimants, and Third Party Plaintiffs PCJV USA, LLC, PCI TRADING LLC, POTATO CORNER, LA GROUP, LLC, GK CAPITAL GROUP, LLC, NKM CAPITAL GROUP, LLC and GUY KOREN, and Defendants J & K AMERICANA, LLC, J&K LAKEWOOD, LLC, J&K OAKRIDGE, LLC, J&K VALLEY FAIR, LLC, J & K ONTARIO, LLC, J&K PC TRUCKS, LLC, HLK MILPITAS, LLC, and GK CERRITOS, LLC |