**BLANK ROME LLP**
Todd M. Malynn (SBN 181595)
todd.malynn@blankrome.com
Arash Beral (SBN 245219)
arash.beral@blankrome.com
Todd M. Malynn (SBN 181595)
jamison.gilmore@blankrome.com
2029 Century Park East | 6th Floor
Los Angeles, CA 90067
Telephone:  424.239.3400
Facsimile:   424.239.3434

Attorneys for Defendants PCJV USA, LLC, NKM CAPITAL GROUP, LLC, J&K AMERICANA, LLC, J&K LAKEWOOD, LLC, J&K ONTARIO, LLC, HLK MILPITAS, LLC, GK CERRITOS, LLC, J&K PC TRUCKS, LLC, and GK CAPITAL GROUP, LLC; and for Counterclaimants and Third-Party Plaintiffs PCJV USA, LLC, PCI TRADING LLC, POTATO CORNER LA GROUP LLC, GK CAPITAL GROUP, LLC, NKM CAPITAL GROUP LLC, and GUY KOREN

# UNITED STATES DISTRICT COURT

# CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| SHAKEY'S PIZZA ASIA VENTURES, INC, a Philippines corporation,<br><br>        Plaintiff,<br><br>    vs.<br><br>PCJV USA, LLC, a Delaware limited liability company; PCI TRADING , LLC, a Delaware limited liability company; GUY KOREN, an individual; POTATO CORNER LA GROUP, LLC, a California limited liability company; NKM CAPITAL GROUP, LLC, a California limited liability company; J & K AMERICANA, LLC, a California limited liability company; J&K LAKEWOOD, LLC, a California limited liability company; J&K VALLEY FAIR, LLC, a California limited liability company; J & K ONTARIO, LLC, a California limited liability company; HLK MILPITAS, LLC, a California, limited liability company; GK CERRITOS, LLC, a California, limited liability company;  J&K PC TRUCKS, LLC, a California limited liability company; and, GK CAPITAL GROUP, LLC, a California limited liability company and DOES 1 through 100, inclusive, | Case No. 2:24-CV-04546-SB(AGRx)<br><br>*Hon. Stanley Blumenfeld, Jr.*<br><br>**DEFENDANTS' REPORT RE: NARROWING/STREAMLINING THE COUNTERCLAIMS**<br><br>PTC:    January 9, 2026<br>Time:  8:30 a.m.<br><br>Complaint Filed:   May 31, 2024<br>Trial Date:             January 20, 2026 |

160850.00001/154448422v.1

**DEFENDANTS' REPORT RE: NARROWING/STREAMLINING THE COUNTERCLAIMS**

|   |   |   |
|---|---|---|
| | Defendants. | |

PCJV USA, LLC, a Delaware limited liability company; PCI TRADING LLC, a Delaware limited liability company; POTATO CORNER LA GROUP LLC, a California limited liability company; GK CAPITAL GROUP, LLC, a California limited liability company; NKM CAPITAL GROUP LLC, a California limited liability company; and GUY KOREN, an individual,

          Counter-Claimants,

   v.

SHAKEY'S PIZZA ASIA VENTURES, INC, a Philippines corporation,

          Counter Defendant.

PCJV USA, LLC, a Delaware limited liability company; PCI TRADING LLC, a Delaware limited liability company; POTATO CORNER LA GROUP LLC, a California limited liability company; GK CAPITAL GROUP, LLC, a California limited liability company; NKM CAPITAL GROUP LLC, a California limited liability company; and GUY KOREN, an individual,

          Third Party Plaintiffs,

   v.

PC INTERNATIONAL PTE LTD., a Singapore business entity; SPAVI INTERNATIONAL USA, INC., a California corporation; CINCO CORPORATION, a Philippines corporation; and ROES 1 through 10, inclusive,

          Third Party Defendants.

## REPORT RE: NARROWING/STREAMLINING THE COUNTERCLAIMS

In its December 4, 2025 Order (Dkt. 336), the Court encouraged the parties to cooperate to narrow the issues for trial. Defendants respectfully advise the Court that they are materially narrowing their counterclaims (without prejudice) with the intent to streamline the trial.

First, Defendants are eliminating all counterclaims based on supplier/vendor relationships and any claims premised on leases or landlord/site agreements. The remaining tort claims are now focused on the AJVA, the franchisee contracts and franchise-development relationships.

Second, Defendants are withdrawing any causes of action under the tolling agreement, settlement documents, and MIPA; those instruments will be used solely as evidentiary support for knowledge, notice, intent, and improper means, or for any other relevant purpose at trial.

Third, to align their claims with the Court's summary judgment ruling, Defendants are not asserting any claims against SPAVI predicated on a JV-succession theory.

Fourth, to streamline party presentation (including through the jury instructions and verdict form) and as a procedural efficiency measure, Defendants intend to prosecute their counterclaims solely on behalf of PCJV. The parties have meaningfully discussed this issue and explored ways to ensure that Defendants would incur no resultant prejudice, including either through targeted language in the verdict form, jury instructions, or via stipulation. The parties are continuing to meet and confer on this subject.

Fifth, Defendants previously abandoned their accounting claim and now also are abandoning their quantum meruit claim. Withdrawal of the quantum meruit claim will also allow streamlining the counterclaims to be tried to the jury as against only SPAVI and Cinco (as opposed to all named counter-defendants/third party

defendants), and will ease the parties' burdens on the jury instructions and verdict forms, alongside also the other pre-trial documents.[1]

## Summary of the Facts Underlying the Narrowed Counterclaims

PCJV alleges against SPAVI and Cinco that they executed a coordinated scheme to undermine the Potato Corner USA joint venture and to seize control of the Potato Corner-branded U.S. businesses, while repudiating contractual and fiduciary obligations owed to PCJV under the AJVA. The scheme included secret negotiations, a structured asset deal, and a communications campaign premised on misleading statements and omissions about rights to the Potato Corner marks, the existence and terms of the parties' agreed license framework, and the governance and consent regime under the AJVA.

PCJV and Cinco entered the AJVA (and the agreements preceding it) to govern the development and operation of Potato Corner-branded quick-service restaurants in the United States. The license framework contemplated a license with material economic terms including a 30/30 royalty split and a 20-year base term plus three 10-year options, and preserved JV governance and consent/no-assignment provisions restricting unilateral transfer of rights or control. For years, the joint venture structure and parties' performance reflected those rights, obligations, and expectations.

Cinco, however, repudiated its joint venture role and obligations to PCJV, disclaimed the AJVA's governance and consent regime, and conducted secret negotiations with SPAVI to sell Potato Corner assets in a manner that disregarded the AJVA's consent/no-assignment provisions and the parties' agreed license framework. SPAVI knowingly induced, encouraged, and substantially assisted Cinco's repudiation. After consummating their deal, SPAVI and Cinco prosecuted a

---

[1] These changes will also enable further narrowing of the pretrial documents. Defendants respectfully renew their request for additional time to file the pretrial documents, and a continuance of the Pre-Trial Conference and Trial. Dkt. 342.

coordinated campaign to re-trade the parties' rights, including by: falsely characterizing PCJV's rights as, "at most," an "at-will" license; denying or suppressing the existence and terms of the parties' license framework; threatening or purporting to terminate franchisee relationships; and directing franchisees to cease performance under their franchise and area development agreements with PCJV.

SPAVI's and Cinco's communications to PCJV and other counterparties omitted and/or misrepresented material facts necessary to make their statements not misleading, including: the existence of the AJVA governance/consent structure; the parties' agreed license framework and material terms; the absence of any novation or waiver; and the absence of any basis to unilaterally terminate PCJV's or franchisees' rights in the manner asserted. SPAVI further engaged in a bad-faith strategy around a tolling agreement and proposed settlement, using half-truths regarding its intended business resolution, its view of license rights and royalty obligations, and the consequences of the MIPA and related documents, to induce reliance and delay countermeasures while SPAVI consolidated its position.

As a direct and proximate result of this misconduct, PCJV suffered disruption to franchise development and operations; lost revenues and profits; increased costs and lost enterprise value; and other damages in an amount to be proven at trial. PCJV also seeks punitive damages on all tort claims against SPAVI and Cinco.

## COUNTERCLAIMS TO BE TRIED TO THE JURY

### Intentional interference with contractual relations (against SPAVI)

PCJV had valid and existing contracts, including but not limited to: the AJVA and agreements with franchisees (franchise agreements and area development agreements). SPAVI knew of these contracts and their material terms. With knowledge of these contracts, SPAVI intentionally engaged in acts designed to cause breaches or terminations, including by: directing and pressuring counterparties to cease performance; asserting false and/or misleading ownership

and licensing positions; repudiating the AJVA consent/no-assignment regime; and coordinating with Cinco to structure a sale and subsequent communications aimed at displacing PCJV and rerouting performance to SPAVI or its designees. Counterparties breached or terminated, in whole or in part, as a result of SPAVI's conduct, causing PCJV damages. SPAVI's conduct was independently wrongful because it was accomplished through fraud, deceit, and unfair business practices, including affirmative misrepresentations and material omissions about rights to the Potato Corner marks, the existence and terms of the license framework, and the effect of the MIPA/settlement/tolling arrangements.

<u>Inducing breach of contract (against SPAVI)</u>

Cinco and other counterparties owed contractual obligations to PCJV, including duties under the AJVA to comply with consent/no-assignment provisions, to cooperate in and enter a license (if one did not already exist) with the agreed economic/term structure, and to act in good faith in completing the license documentation and ongoing performance. SPAVI knew of these obligations and intentionally induced Cinco and other counterparties to breach by offering and consummating a transaction structured to evade the AJVA's restrictions; by encouraging repudiation of joint venture governance and the license framework; and by directing communications to counterparties calculated to cause nonperformance or termination. The breaches occurred and were a substantial factor in causing PCJV's damages. SPAVI lacked any privilege or justification because it used wrongful means, including fraudulent and deceptive statements and omissions and bad-faith interference with existing contracts.

<u>Intentional interference with prospective economic relations (against SPAVI)</u>

PCJV had existing and probable prospective economic relationships with franchisees, with the probability of future economic benefit to PCJV. SPAVI knew of these relationships and their probable benefits. SPAVI intentionally engaged in wrongful conduct designed to disrupt these relationships, including misrepresenting

authority and rights to the marks; suppressing and/or denying the agreed license framework; threatening termination or litigation to chill continued dealings; and instructing franchisees to cease doing business with Counterclaimants. SPAVI's conduct was independently wrongful beyond the interference itself because it was fraudulent, deceitful, and unfair, including affirmative misrepresentations, half-truths, and material omissions in negotiations and counterpart communications. The relationships were disrupted and PCJV was harmed thereby.

<u>Negligent interference with prospective economic relations (against SPAVI)</u>

PCJV had existing and probable prospective economic relationships as described above. SPAVI knew or should have known that, absent due care, its conduct would disrupt those relationships. SPAVI failed to act with reasonable care by, among other things, making and disseminating inaccurate, incomplete, and misleading statements of right and authority; withholding material information necessary to not mislead; and disregarding known contractual governance and consent regimes. The relationships were disrupted, causing economic harm to PCJV. SPAVI's conduct was independently wrongful and/or otherwise not privileged for the same reasons stated above.

<u>Aiding and abetting breach of fiduciary duty (against SPAVI)</u>

Cinco owed fiduciary duties of loyalty, care, and good faith to PCJV as joint venture partner and/or majority participant under the AJVA and the parties' course of dealing. Cinco breached those duties by secretly negotiating with SPAVI to transfer control and rights in derogation of the AJVA; by repudiating joint venture governance and consent/no-assignment provisions; by suppressing the agreed license framework; and by acting in self-interest rather than in furtherance of the PCJV. SPAVI knew of Cinco's fiduciary status and of the facts constituting breach, and gave substantial assistance and encouragement to Cinco's breaches by structuring and consummating the asset deal; coordinating termination and

transition messaging; and exploiting the breaches to displace PCJV. SPAVI's assistance was a substantial factor in causing PCJV's damages.

<u>Breach of fiduciary duty (against Cinco)</u>

Cinco owed fiduciary duties of loyalty, care, and good faith to PCJV as joint venture partner and/or majority participant under the AJVA and the parties' course of performance. Cinco breached those duties by repudiating and denying its joint venture role; acting contrary to the AJVA's consent/no-assignment and governance provisions; failing to obtain a novation; refusing to cooperate in and enter a license with the agreed terms; suppressing and/or denying the license framework and AJVA restrictions; and conspiring with SPAVI to toll and settle, while SPAVI intended to "terminate" PCJV's rights and sue in bad faith to displace PCJV. As a direct and proximate result, PCJV suffered damages, and is entitled to equitable relief including disgorgement.

<u>Breach of contract (against Cinco) and breach of the implied covenant of good faith and fair dealing (against Cinco)</u>

The AJVA is a valid and enforceable contract governing the parties' rights. PCJV performed, or was excused from performing, all conditions precedent. Cinco (either directly or as an alter ego) breached by violating the consent/no-assignment and governance provisions; failing and refusing to enter a license embodying the parties' agreed framework; failing to exercise best efforts and good faith to complete the license documentation; and repudiating the AJVA's structure and restrictions. The implied covenant obligated Cinco not to do anything to unfairly interfere with PCJV's right to receive the benefits of the AJVA and the agreed license framework; Cinco breached the covenant by the same conduct. PCJV suffered damages thereby.

/ / /

/ / /

/ / /

## COUNTERCLAIMS TO BE TRIED TO THE COURT

Counterclaimants are withdrawing all of their counterclaims to be tried to the Court (Declaratory Relief and Unfair Competition) with the exception that if the jury finds that Plaintiff did not prove it is a valid assignee and, thus, did not establish that it is the "owner" of the subject marks, that PCJV be awarded declaratory and injunctive relief that PCJV is the rightful owner of all Potato Corner marks in the United States with an attendant permanent injunction prohibiting all counter-defendants, third-party defendants, and their affiliates, officers, employees, parties working in concert with them, etc. from using the subject marks). PCJV further requests the same relief if it establishes its abandonment (naked license) defense (failure to exercise adequate quality control) or any other defense that would warrant the same or similar declaratory/injunctive relief.[2]

Dated:  December 23, 2025            **BLANK ROME LLP**

                                     /s/ Arash Beral
                                     Todd M. Malynn
                                     Arash Beral
                                     Jamison T. Gilmore

                                     Attorneys for Defendants, Counterclaimants, and Third Party Plaintiffs

---

[2] As reported in Dkt. 333, Defendants' affirmative defenses of Acquiescence, Laches, Unclean Hands, In Pari Delicto, and Estoppel would also be tried to the Court.

**CERTIFICATE OF SERVICE**

The undersigned certifies that on December 23, 2025, the foregoing document was electronically filed with the Clerk of the Court for the United States District Court, Central District of California, using the Court's Electronic Case Filing (ECF) system. I further certify that all participants in the case are registered CM/ECF users and that service will be accomplished by the CM/ECF system.

I certify under penalty of perjury that the foregoing is true and correct. Executed on December 23, 2025.

By:  */s/ Ann Grosso*