1

2

3

4

5

6

7

8

# UNITED STATES DISTRICT COURT

9

# CENTRAL DISTRICT OF CALIFORNIA

10

11 SHAKEY'S PIZZA ASIA VENTURES, INC, a Philippines corporation,

12                    Plaintiff,

13        v.

14 PCJV USA, LLC, a Delaware limited
15 liability company; PCI TRADING, LLC, a Delaware limited liability company; GUY
16 KOREN, an individual; POTATO CORNER LA GROUP, LLC, a California
17 limited liability company; NKM CAPITAL GROUP, LLC, a California
18 limited liability company; J & K AMERICANA, LLC, a California limited
19 liability company; J&K LAKEWOOD, LLC, a California limited liability
20 company; J&K VALLEY FAIR, LLC, a California limited liability company; J & K
21 ONTARIO, LLC, a California limited liability company; HLK MILPITAS, LLC,
22 a California, limited liability company; GK CERRITOS, LLC, a California, limited
23 liability company; J&K PC TRUCKS, LLC, a California limited liability
24 company; and, GK CAPITAL GROUP, LLC, a California limited liability
25 company and DOES 1 through 100, inclusive,

26                    Defendants.

27

28 PCJV USA, LLC, a Delaware limited

Case No. 2:24-CV-04546-SB(AGRx)

*The Hon. Stanley Blumenfeld, Jr.*

## [PROPOSED] UPDATED PRETRIAL CONFERENCE ORDER

### Pre-trial Conference
Date:    January 9, 2026
Time:    8:30 a.m.
Place:   6C

### Trial
Date:    January 20, 2026
Time:    8:00 a.m.
Place:   6C

4

liability company; PCI TRADING LLC, a Delaware limited liability company; POTATO CORNER LA GROUP LLC, a California limited liability company; GK CAPITAL GROUP, LLC, a California limited liability company; NKM CAPITAL GROUP LLC, a California limited liability company; and GUY KOREN, an individual,

Counter-Claimants,

v.

SHAKEY'S PIZZA ASIA VENTURES, INC, a Philippines corporation,

Counter Defendant.

PCJV USA, LLC, a Delaware limited liability company; PCI TRADING LLC, a Delaware limited liability company; POTATO CORNER LA GROUP LLC, a California limited liability company; GK CAPITAL GROUP, LLC, a California limited liability company; NKM CAPITAL GROUP LLC, a California limited liability company; and GUY KOREN, an individual,

Third Party Plaintiffs,

v.

PC INTERNATIONAL PTE LTD., a Singapore business entity; SPAVI INTERNATIONAL USA, INC., a California corporation; CINCO CORPORATION, a Philippines corporation; and DOES 1 through 10, inclusive,

Third Party Defendants.

5

Subject to and following pretrial proceedings, pursuant to FRCP 16 and Local Rule 16, **IT IS ORDERED**:

1. **The parties are**:

   - Plaintiff and Counter Defendant SHAKEY'S PIZZA ASIA VENTURES, INC ("SPAVI"), a Philippines corporation;

   - Defendant, Counterclaimant, and Third Party Plaintiff PCJV USA, LLC ("PCJV"), a Delaware limited liability company;

   - Counterclaimant and Third Party Plaintiff GUY KOREN, an individual;

   - Counterclaimant and Third Party Plaintiff POTATO CORNER LA GROUP, LLC, a California limited liability company;

   - Defendant NKM CAPITAL GROUP, LLC ("NKM"), a California limited liability company;

   - Defendant J&K AMERICANA, LLC, a California limited liability company;

   - Defendant J&K LAKEWOOD, LLC, a California limited liability company;

   - Defendant J&K VALLEY FAIR, LLC, a California limited liability company;

   - Defendant J&K ONTARIO, LLC, a California limited liability company;

   - Defendant HLK MILPITAS, LLC, a California, limited liability company;

   - Defendant GK CERRITOS, LLC, a California, limited liability company;

   - Defendant J&K PC TRUCKS, LLC, a California limited liability company;

   - Defendant GK CAPITAL GROUP, LLC, Ca1ifornia limited liability company;

   - Third Party Defendant PC INTERNATIONAL PTE LTD., a Singapore business entity;

   - Third Party Defendant SPAVI INTERNATIONAL USA, INC., a California corporation; and

   - Third Party Defendant CINCO CORPORATION ("Cinco"), a Philippines

6

corporation.

For ease of reference and where appropriate, the Defendants, Counterclaimants, and Third Party Plaintiffs are collectively referred to as the "PCJV Parties" or "Defendants" while SPAVI as a counter defendant along with the other third party defendants are collectively referred to as "Third Party Defendants."

**The pleadings that raise the issues are:**

- SPAVI's First Amended Complaint. Dkt. 65.
- The Answer to First Amended Complaint and Counterclaim/Third Party Complaint. Dkt. 108.
- SPAVI's Answer and Affirmative Defenses to the PCJV Parties' Counterclaim/Third Party Complaint. Dkt. 129.
- Third Party Defendants' Answer and Affirmative Defenses to the PCJV Parties' Counterclaim/Third Party Complaint. Dkt. 156.

## 2. Federal jurisdiction and venue:

Federal jurisdiction and venue are invoked on the following grounds: this Court has subject matter jurisdiction in this matter pursuant to 28 U.S.C. Sections 1331 and 1338(a) (federal question; trademarks) as it arises under acts of Congress related to trademarks. The Court has ancillary jurisdiction over the California state law claims alleged herein pursuant to 28 U.S.C. Sections 1338(b) and 1367 because the facts giving rise to those claims arise from the same common nucleus of operative facts as the claims subject to subject matter jurisdiction. Venue is proper in this District pursuant to 28 U.S.C. Section 1391 because the PCJV Parties transact regular and established business within this District and because a substantial part of the events or omissions giving rise to the claims occurred in this District.

## 3. Trial Length

Based on 33 hours of projected witness time, alongside voir dire, openings, closings, etc., the parties' trial estimate is six-eight (6-8) days.

### 4. Jury or Non-Jury Trial

All parties seek a jury trial on all non-equitable issues.

SPAVI contends its unclean hands affirmative defense should also be tried to the jury, and the Court has discretion to allow a jury to decide this defense. *See Kendall-Jackson Winery, Ltd. v. Super. Ct.*, 76 Cal.App.4th 970, 985 (1999). SPAVI contends that the equitable issues to be tried to the Court on SPAVI's affirmative claims would be any damage enhancement and any determination of this case being exceptional.

Defendants object to the selective handling of equitable defenses, including the unclean hands defense, which both parties raise in this case, and request the Court's guidance whether all defenses, both parties' unclean hands defense or no equitable defenses will be tried to the jury on a binding or non-binding basis. Defendants contend that their claims for declaratory and injunctive relief are tried to the Court.

### 5. The following facts are admitted and require no proof:

Defendants contend that all stipulated facts previously agreed to at Dkt. 257 are facts that are admitted and require no proof.

SPAVI contends that only the following facts are admitted and require no proof:

- SPAVI is a publicly traded food services corporation headquartered in the Republic of the Philippines.
- In 1992, four individuals—Jose Magsaysay Jr. (also known as "JoMag"), Ricky Montelibano, Danny Bermejo, and George Wieneke, originally operating under Quattro Corporation and later under Cinco Corporation ("Cinco")—established the Potato Corner brand in the Philippines.
- PCJV USA, LLC ("PCJV") is a Delaware limited liability company operating in the United States.
- PCJV stands for "Potato Corner Joint Venture." As a result of a 2024 settlement, PCJV is wholly owned by Guy Koren through his entities (Potato Corner LA Group, LLC and GK Capital Group, LLC).
- PCI Trading LLC ("PCIT") is a Delaware limited liability company operating in

8

the United States.

- Similar to PCJV, as a result of a 2024 settlement, PCIT is now wholly owned by Guy Koren (individually and through GK Capital Group, LLC).

- Beginning in 2010, Cinco filed applications to register certain marks with the United States Patent and Trademark Office ("USPTO").

- Those applications included an application to register a Potato Corner logo mark, a Potato Corner word mark, and a slogan mark.

- The USPTO issued registrations for the marks.

- Potato Corner LA Group, LLC is a California limited liability company owned by Guy Koren.

- GK Capital Group, LLC is a California limited liability company owned by Guy Koren.

**6. The following facts, though stipulated, shall be without prejudice to any evidentiary objections:**

None.

**7. Claims and Defenses**

**SPAVI and Third Party Defendants**

(a)    SPAVI plans on pursuing the following claims and the Third Party Defendants plan on pursuing the following affirmative defenses:

- Claim 1: Defendants and each of them are liable for Trademark Infringement (15 U.S.C. § 1114);

- Claim 2: Defendants and each of them are liable for Common Law Trademark Infringement;

- Affirmative Defense 1: Justification;

- Affirmative Defense 2: Mitigation;

- Affirmative Defense 3: Unclean Hands.

(b)    The elements required for SPAVI's claims and Third Party Defendants' affirmative defenses are:

- The elements required to establish SPAVI's federal and common law trademark infringement claims are the same except as specifically provided below:

  1. SPAVI owns valid, protectable trademarks;

  2. The PCJV Parties have used the same or similar trademarks in interstate commerce;

  3. The PCJV Parties used these trademarks without the consent of SPAVI in a manner that is likely to cause confusion among ordinary consumers as to source, sponsorship, affiliation, or approval of the goods;

  4. SPAVI has been damaged by the PCJV Parties' infringement in a calculable amount;

  5. The PCJV Parties' infringement was intentional, willful, and/or the product of malice, fraud, or oppression.

- The elements required to prove justification as an affirmative defense to an interference tort are:

  1. SPAVI and Third Party Defendants had a legitimate financial interest in the relation;

  2. SPAVI and Third Party Defendants acted only to protect their own financial interest;

  3. SPAVI and Third Party Defendants acted reasonably and in good faith to protect it; and

  4. SPAVI and Third Party Defendants used appropriate means to protect it.

- The elements required to prove mitigation are:

  1. The PCJV USA Parties failed to use reasonable efforts to mitigate damages; and

  2. The amount by which damages would have been mitigated.

10

- The elements required to prove unclean hands are:

    1. That the PCJV Parties' conduct is inequitable, which requires only a showing of wrongfulness, willfulness, bad faith, or gross negligence. The misconduct does need not be a crime or an actionable tort. Any conduct that violates conscience or good faith or other equitable standards of conduct is sufficient cause to invoke the unclean hands doctrine.

    2. That the PCJV Parties' inequitable conduct is related to the subject matter of the PCJV Parties' counterclaims and third party claims. Thus, what is material under this theory is not just that the PCJV Parties' hands are dirty, but that they dirtied their hands in acquiring the right they now assert in this action.

(c)    In brief, the key evidence SPAVI and Third Party Defendants rely on for each of the claims is:

- Trademark Causes of Action.

    ○ **Ownership of the Marks.**  The Potato Corner brand as indicative of a fast-food establishment featuring flavored French fries dates to a single cart started in the Philippines in 1992. Cinco initially owned the brand and established or franchised outlets utilizing the trademark throughout Asia. In 2009, Cinco brought the fast-food concept to the United States by first licensing a Potato Corner outlet in San Francisco and then licensing outlets in Los Angeles County to Guy Koren. Cinco would go on to register the Potato Corner name and brand, along with ancillary taglines, with the USPTO. All authorized domestic use of the Potato Corner brand has been by license or sublicense as authorized by the trademark holder.  In 2022, Cinco sold the assets of its Potato Corner business to SPAVI, which included the business's worldwide trademark registrations

11

and goodwill. Since then, SPAVI has operated or franchised Potato Corner outlets throughout the world.

o **The PCJV Parties' Use of the Potato Corner Marks.** In 2009, Cinco's then international licensing agent granted NKM a license to establish Potato Corner outlets in Los Angeles County. Shortly thereafter, Cinco with Guy Koren established PCJV for the purpose of acting as the master franchisor for Potato Corner franchises throughout the United States. Cinco's 60% membership interest in PCJV would be owned by non-party Potato Corner International Inc. ("PCI") and the remaining 40% would purportedly come to be owned by Potato Corner LA Group LLC[1]. PCJV agreed to license the Potato Corner Intellectual Property, which included the Potato Corner trademarks, from Cinco in exchange for a royalty payment. PCJV would then franchise Potato Corner outlets throughout the United States, which included a sublicensed right to use the Potato Corner trademarks subject to PCJV's licensed rights from Cinco. These sublicensees include the remaining defendants in this action, which are all entities that Guy Koren holds an ownership interest in. In 2022, after SPAVI acquired the Potato Corner business from Cinco, SPAVI attempted to negotiate a license agreement with PCJV for its continued use of the Potato Corner intellectual property. While SPAVI's acquisition of the Potato Corner business was subject to Cinco's existing contractual relationships, since PCJV had never paid any royalties to Cinco for its use of the Potato Corner intellectual property, PCJV was in breach of any license agreement. When PCJV refused to negotiate in good faith, SPAVI,

---

[1] To be clear, Potato Corner LA Group, LLC is not a party to the Joint Venture Agreement (Trial Exhibit 8), the First Amendment to the Joint Venture Agreement (Trial Exhibit 1053), or the Limited Liability Operating Agreement (Trial Exhibits 62, 128).

in a May 31, 2024 letter, notified PCJV that any license it may have held with respect to the Potato Corner marks was terminated, which similarly terminated the sublicense rights held by any of the PJCV Parties.

o **The PCJV Parties' Use of the Potato Corner Marks without Consent.** After SPAVI terminated PCJV's license to use the Potato Corner intellectual property in May of 2024 due to PCJV's failure to negotiate in good faith towards a new license and for its failure to pay any royalties for its use, the PCJV Parties' continued use of the Potato Corner marks was without SPAVI's consent. Irrespective of this termination and despite the Court's preliminary injunction, some of the PCJV Parties continued to use the Potato Corner marks without SPAVI's consent.

o **Damages.** Since SPAVI's acquisition of the Potato Corner assets from Cinco, the PCJV Parties have earned more than $45 million in the form of royalties from non-party sublicensees or from revenues form their own outlets operating as Potato Corner. SPAVI's damages can be calculated based on a reasonable royalty applied to this amount of at least 6%, which is consistent with the royalty rate PCJV charged sublicensees.

o **Bad Conduct.** While a subsidiary of Cinco was the 60% owner of PCJV, Guy Koren, during all relevant times, was the president of PCJV with extremely broad powers to control PCJV. Guy Koren caused PCJV to agree that the Potato Corner outlets he controlled were excepted from any royalty obligations to PCJV and Cinco. Similarly, Guy Koren caused PCJV to agree that PCJV itself would not pay any royalties to Cinco (and subsequently to SPAVI) for its use of the Potato Corner intellectual property. The conduct of the

13

PCJV parties as it relates to Cinco or derives from Cinco was released by Cinco pursuant to a March 2026 settlement agreement, whereby the Potato Corner LA Group acquired the 60% interest in PCJV indirectly held by Cinco. SPAVI, however, was not a party to that release and the PCJV Parties continued to intentionally and willfully refuse to pay any royalties for that use after SPAVI acquired the Potato Corner assets from Cinco. Not only did the PCJV Parties refuse to negotiate in good faith with SPAVI towards a new license for such use, but the PCJV Parties continued to use the marks after SPAVI terminated any possible licensed right they may have had. The PCJV Parties have continued to use the marks in willful disregard of this Court's preliminary injunction, and, as such, have acted with fraud, malice, and oppression.

2. Justification Affirmative Defense

o **Legitimate financial interest.** In or about 2018, after five brain surgeries starting since 2014, continuing seizures, and other highly serious medical conditions, Cinco's founder and CEO, Jose Magsaysay, decided he wanted to take a step back from running Potato Corner and sell the Potato Corner business, and his partners supported him. Cinco received its first offer to purchase the Potato Corner business in 2018 and three more thereafter, though ultimately none of them were the right fit. SPAVI, which operated a number of fast-food franchises in the Philippines and surrounding countries, was the fifth entity to make an offer to purchase the Potato Corner business in 2022, and Mr. Magsaysay knew that SPAVI would take care of the Potato Corner business. After some negotiations, SPAVI acquired the worldwide assets of the Potato Corner business, including its trademarks. SPAVI, however, did

not acquire any membership interests held by Cinco or any of its wholly owned subsidiaries, including any such membership interest in PCJV.  SPAVI acquired the assets for the legitimate business purpose of continuing the operation and franchising of Potato Corner outlets throughout the world.  SPAVI acquired these assets subject to any contractual or legal obligations already attached to them.  SPAVI had a legitimate business interest in terminating any license held by PCJV for the use of the Potato Corner trademarks because PCJV had not paid any royalties for its use following SPAVI's acquisition of the Potato Corner business assets and because PCJV was unwilling to enter into a license agreement for its use that included a financially viable royalty rate for SPAVI.

o **SPAVI and Third Party Defendants acted only to protect their own financial interests**.  Cinco sold the assets of its Potato Corner business due to its CEO's health concerns and resulting desires to take a step back from holding such a demanding job. SPAVI purchased the assets of the worldwide Potato Corner business because that business fit well with SPAVI's existing business plan and SPAVI had the assets and resources to weather the lockdowns. SPAVI had a legitimate business interest in terminating any license held by PCJV because PCJV had never paid SPAVI any royalties for PCJV's use of the Potato Corner intellectual property, including the Potato Corner trademarks, and had refused to negotiate a new license with SPAVI that included a financially viable royalty rate. While SPAVI terminated PCJV's license to use and sublicense the Potato Corner trademarks, SPAVI has continued to license the use of such marks for the operating of authorized Potato Corner outlets in the United States, including those outlets that had previously

15

sublicensed such rights from PCJV.

o **SPAVI and Third Party Defendants acted reasonably and in good faith to protect their interests**.  Cinco's decision to sell the assets of its worldwide Potato Corner business was driven by its CEO's personal health concerns. SPAVI purchased the assets of the Potato Corner business because they fit well with SPAVI's existing portfolio of fast-food establishments and SPAVI had the financial resources to weather lockdowns. SPAVI acted reasonably in terminating any license held by PCJV because PCJV had never paid SPAVI any royalties for its use of the Potato Corner trademarks and, after a two-year effort, PCJV was unwilling to enter into a commercially reasonable licensing arrangement with SPAVI or provide any justification as to why it should receive special treatment.  Following the termination of PCJV's license, SPAVI promptly reached out to PCJV's sublicensees to minimize any disruption of their business, and SPAVI has continued to operate and expand the Potato Corner business both domestically and worldwide.

o **SPAVI and Third Party Defendants used appropriate means to protect their interests.**  When Cinco's CEO decided to sell the Potato Corner business due to his health concerns, multiple offers came from various entities to take over the Potato Corner business. However, none of them felt like the right fit until SPAVI came along in 2022, at which time SPAVI acquired the assets of Cinco's worldwide Potato Corner business. Thereafter, SPAVI took over Cinco's negotiations with PCJV for a license to the Potato Corner intellectual property.  Despite PCJV's agreement to pay royalties for the use of the Potato Corner intellectual property, it had never

paid any such royalties to Cinco nor did it commence payment of any royalties to SPAVI following the acquisition. For nearly two years, SPAVI sought to engage PCJV in negotiations for a license of its continued use and sublicense of the Potato Corner intellectual property. SPAVI proposed a below market, commercially reasonable license to PCJV at the outset. PCJV would thereafter respond by proposing a significantly lower royalty rate that was not financially viable for a publicly traded company like SPAVI. This proposal also exempted PCJV-owned Potato Corner outlets (each of which Guy Koren holds a personal stake) from paying any royalty rates. PCJV never responded to SPAVI's repeated requests for documentation that would substantiate why such a low royalty rate was appropriate in this case. Following a nearly two-year effort during which PCJV made no royalty payment to SPAVI, SPAVI sent PCJV a termination notice expecting that it would prompt PCJV to reengage in license negotiations, but it did not. After sending the termination notice to PCJV, SPAVI followed up with PCJV's sublicensees to offer them commercially reasonable royalty rates to continue to use the Potato Corner intellectual property. SPAVI filed suit to protect its interest in the Potato Corner trademarks and sought and obtained from the Court a preliminary injunction in which the Court decided that SPAVI was likely to prevail on its claims of ownership to the Potato Corner trademarks and that PCJV, as well as the outlets controlled by Guy Koren, were infringing those marks by their continued use following SPAVI's termination of any licensed rights to them.

3. **Mitigation**

   o **The PCJV Parties failed to use reasonable effort to mitigate**

17

**damages**.  The damage expert for the PCJV Parties does not include any analysis of the value of the Potato Corner brand to the revenues earned by the PCJV Parties or the fact that the PCJV Parties have rebranded their outlets away from Potato Corner and continue to operate and earn revenues.  The damage expert for the PCJV Parties suggests that PCJV would have been able to license additional franchisees for the Potato Corner brand but include no analysis as to whether PCJV could simply establish a new franchise business under his new brand.

o **The amount by which damages would have been mitigated**. PCJV was never successful in achieving any meaningful positive brand identification for Potato Corner outlets as reflected by the stagnant growth in outlets over time, with many outlets closing after operating for only a few years as well as the anemic interest by others in opening new Potato Corner outlets.  As such, there is no reason to believe that the PCJV Parties would earn any greater revenues had their outlets remained branded as Potato Corner rather than as they are currently branded.  Thus, the PCJV Parties fail to show any amount of damages that would not otherwise be mitigated by the continued operations of outlets under a different brand.

4. **Unclean Hands**

o **The PCJV Parties' Conduct was inequitable**. SPAVI relied upon the PCJV Parties, and in particular Guy Koren, to operate the franchise business in the best interest of its members and to honor the rights of Cinco as the owner of the Potato Corner intellectual property.  Instead, Guy Koren used his role at PCJV to simply enrich himself.  He refused to honor PCJV's royalty obligation by falsely informing both auditors overseeing franchise boards as well

as potential franchisees that PCJV's obligation to make royalty payments had been waived by the members when no such waiver ever occurred on an annual basis as PCJV, through Koren, told others. Guy Koren then signed, both on behalf of PCJV as well as his entity, a separate service agreement paying him hundreds of thousands of dollars per year of purported management fees while informing Cinco that it lacked the funds to pay royalties. Guy Koren also caused each of the outlets that he controlled to be exempt from any royalty obligations by signing documents amending their franchise agreements with PCJV to permit such exceptions. After SPAVI acquired the assets of the Potato Corner business, Guy Koren refused to negotiate in good faith for a license to permit PCJV to continue to use and sublicense the PCJV intellectual property. During the entire time he delayed the negotiations with SPAVI, Guy Koren caused PCJV not to pay any royalties to SPAVI for the continued use of the intellectual property. In response to SPAVI's below market offer of a license arrangement for PCJV, PCJV responded, through Guy Koren, that PCJV could not afford even that reduced rate and proposed in response a commercially unreasonable rate. PCJV, again through Guy Koren, refused to substantiate this contention that PCJV was unable to pay any reasonable royalty rate for its continued use of the Potato Corner intellectual property. During the entire time PCJV continued to utilize the Potato Corner intellectual property after it had been acquired by SPAVI, Guy Koren continued to cause both PCJV and the outlets he controlled to divert money for his personal benefit in an effort to show that PCJV and the outlets Guy Koren controlled were unable to make reasonable royalty payments

19

to SPAVI. After receiving a termination notice from SPAVI, Guy Koren caused PCJV to continue to improperly utilize the Potato Corner intellectual property and improperly threatened franchisees to dissuade them from entering into agreements with SPAVI for the continued use of the Potato Corner intellectual property even though PCJV was in breach of the franchise arrangement with these franchisees because PCJV could no longer provide them the right to use the Potato Corner intellectual property. The PCJV Parties' inequitable conduct continued by its continued use of the Potato Corner intellectual property even after this Court issued a preliminary injunction barring such continued use and held the PCJV Parties in contempt for that continued use.

○ **The PCJV Parties' inequitable conduct relates to the subject matter of SPAVI's and the PCJV Parties' claims.** SPAVI terminated PCJV's license to use the Potato Corner intellectual property because Guy Koren refused to negotiate with SPAVI in good faith and because PCJV had never paid any royalties to SPAVI or Cinco for its use of that intellectual property or the use by the outlets controlled by Guy Koren. The PCJV Parties bring a variety of causes of action against the Third Party Defendants arising from Cinco's sale of the assets of its Potato Corner business to SPAVI claiming that conduct was inconsistent with the joint venture obligations of Cinco and its subsidiary that were owed to PCJV and its members. The PCJV Parties, however, never honored their obligation to either Cinco, its subsidiary, or SPAVI. Instead, Guy Koren caused PCJV to not pay any royalties to Cinco or SPAVI and caused PCJV to divert money belonging to the members to Guy Koren as well as causing the outlets he controlled

to divert money due PCJV to his personal benefit.

**Defendants, Counter Claimants, and Third Party Plaintiffs**

(A) Based on the Court's summary judgment ruling and order as to Plaintiff's burden to prove ownership as an assignee under the Ninth Circuit's jury instruction 15.15, either PCJV as the sole counterclaimant (once the parties formalize that agreement) or PCJV alongside Guy Koren and Potato Corner LA Group, LLC plan to pursue the following counterclaims/third party claims and the remaining Defendants to this action plan to pursue the following affirmative defenses:

- Claims against SPAVI
  - a. Intentional Interference with Contractual Relations
  - b. Inducing Breach of Contract
  - c. Intentional Interference with Prospective Economic Relations
  - d. Negligent Interference with Prospective Economic Relations
  - e. Aiding and Abetting Breach of Fiduciary Duty
- Claims against Cinco
  - a. Breach of Fiduciary Duty
  - b. Breach of Contract
  - c. Breach of the Implied Covenant of Good Faith and Fair Dealing
- Claims tried to the Court (as narrowed)
  - a. Declaratory Relief
  - b. Violations of Business & Professions Code §§ 17200, *et seq.*
- Affirmative Defenses
  - a. Abandonment by Naked License
  - b. Waiver
  - c. Acquiescence
  - d. Ratification
  - e. Promissory Estoppel
  - f. Equitable Estoppel

21

g. Judicial Estoppel

h. Unclean Hands

i. *In pari delicto*

j. Mitigation

(a)   The elements required to establish the PCJV Parties' counterclaims/third party claims and Defendants' affirmative defenses:

- The PCJV USA Parties' Counterclaims/Third Party Claims
  - <u>Intentional Interference with Contractual Relations</u> – (1) that PCJV (inclusive of Koren and LA Group) had contracts with the Cinco parties, including Cinco, as well as with U.S. franchisees; (2) that SPAVI knew of the contracts; (3) that SPAVI's conduct prevented performance or made performance more expensive or difficult; (4) that SPAVI either intended to disrupt the performance of these contracts or knew that disruption of performance was certain or substantially certain to occur; (5) that PCJV was harmed; and (6) that SPAVI's conduct was a substantial factor in causing PCJV's harm.
  - <u>Inducing Breach of Contract</u> – (1) that PCJV (inclusive of Koren and LA Group) had contracts with the Cinco parties, including Cinco, as well as with U.S. franchisees; (2) that SPAVI knew of the contracts; (3) that SPAVI intended to cause any one of the Cinco parties or U.S. franchisees to breach contractual obligations; (4) that SPAVI's conduct caused a breach the contract with the PCJV Parties; (5) that PCKV was harmed; and (6) that SPAVI's conduct was a substantial factor in causing the harm.
  - <u>Interference with Prospective Economic Relations</u> – (1) that PCJV had economic relations with the Cinco parties and U.S. franchisees that probably would have resulted in a future economic benefit to

22

them; (2) that SPAVI knew of the relationships; (3) that SPAVI engaged in independently wrongful conduct to destroy the value of any one of the relationships by usurping the benefits of those relationships for SPAVI's benefit using improper means and methods; (4) that by engaging in this conduct, SPAVI either intended to disrupt the relationships or knew that disruption of the relationships was certain or substantially certain to occur; (5) that those relationships were disrupted; (6) that PCJV was harmed; and (7) that SPAVI's conduct was a substantial factor in causing PCJV's harm.

o <u>Negligent Interference with Prospective Economic Relations</u> – (1) that PCJV had economic relations with any of the Cinco parties and U.S. franchisees that probably would have resulted in a future economic benefit to PCJV; (2) that SPAVI knew or should have known of these relationships; (3) that SPAVI knew or should have known that these relationships would be disrupted if it failed to act with reasonable care; (4) that SPAVI failed to act with reasonable care; (5) that SPAVI engaged in independently wrongful conduct to destroy the value of PCJV's relationships by usurping the benefits of those relationships for SPAVI's benefit using improper means and methods; (6) that the relationship was disrupted; (7) that PCJV was harmed; and (8) that SPAVI's wrongful conduct was a substantial factor in causing PCJV's harm.

o <u>Aiding and Abetting Breach of Fiduciary Duty</u> – (1) that Cinco breached a fiduciary duty; (2) SPAVI knew that a breach of a fiduciary duty would be committed by Cinco against PCJV (inclusive of Koren and LA Group); (2) that SPAVI gave substantial assistance or encouragement to Cinco; and (3) that

SPAVI's conduct was a substantial factor in causing harm to PCJV.

o <u>Breach of Fiduciary Duty</u> – (1) that Cinco was a joint venture partner of or member in PCJV; (2) that Cinco failed to act as a reasonably careful partner or member would have acted under the same or similar circumstances such that it breached its duty of care, or knowingly acted against PCJV's interests without PCJV's informed consent such that it breached its duty of loyalty; and (3) that Cinco's conduct was a substantial factor in causing harm.

o <u>Breach of Contract</u> – (1) that PCJV (inclusive of Koren and LA Group) and Cinco entered into a contract; (2) that PCJV did all, or substantially all, of the significant things that the contract required it to do if not excused; (3) that Cinco failed to do something that the contract required it to do; (4) that PCJV was harmed; and (5) that Cinco's breach was a substantial factor in causing PCJV's harm.

o <u>Breach of Implied Covenant of Good Faith and Fair Dealing</u> – (1) that PCJV (inclusive of Koren and LA Group) and Cinco entered into a contract; (2) that PCJV did all, or substantially all of the significant things that the contract required them to do if not excused; (3) that Cinco, by its conduct, acted unfairly or in bad faith so as to deprive PCJV of the benefits of the contract; and (4) that PCJV was harmed by Cinco's conduct.

o <u>Declaratory Relief</u> – if the jury finds that SPAVI is not a valid assignee or that Cinco or SPAVI did not exercise adequate quality control over Potato Corner USA's catering or restaurant services, then PCJV seeks a declaration and injunctive relief against all Counter Defendants and Third Party Defendants that PCJV is the true owner and senior user of the Potato Corner USA marks entitled

24

to ancillary injunctive relief, so as to avoid a likelihood of confusion; and

- o <u>Violations of Business & Professions Code §§ 17200, *et seq.*</u> – if the jury finds that SPAVI was not a valid assignee or that Cinco or SPAVI did not exercise adequate quality control over Potato Corner USA's catering or restaurant services, then PCJV seeks a judgment that Counter Defendants and Third Party Defendants engaged in unfair competition and thus should be enjoined from interfering with PCJV's rights.

- Defendants' Affirmative Defenses
  - o <u>Abandonment by Naked License</u> – that Cinco and/or SPAVI failed to exercise adequate quality control over PCJV's use of the Potato Corner marks to promote PCJV's restaurant and catering services. Alternatively, SPAVI inherited Cinco's naked license as a limitation of any trademark rights SPAVI acquired from Cinco and cannot assert greater rights than acquired from Cinco.

  - o <u>Waiver</u> – that (1) Cinco or SPAVI knew of the right to a written license and payment of royalties as specified in the AJVA; and (2) Cinco or SPAVI freely and knowingly gave up that right, or by words or conduct intentionally acted inconsistently with an intent to enforce the right. Alternatively, (3) SPAVI inherited Cinco's waiver of the right to a written license and royalties as specified in the AJVA as a limitation of any trademark rights SPAVI acquired from Cinco and cannot assert greater rights than acquired from Cinco, nor assert rights SPAVI did not acquire under the AJVA.

  - o <u>Acquiescence</u> – that Cinco or SPAVI actively conveyed through affirmative words or deeds its consent to PCJV's ongoing long-term use of the Potato Corner marks in accordance with the parties'

course of dealing, and Defendants relied on the consent and would be substantially prejudiced if long-term rights were withdrawn. Alternatively, SPAVI inherited Cinco's acquiescence as a limitation on any trademark rights acquired from Cinco and cannot assert greater rights than acquired from Cinco, nor assert rights SPAVI did not acquire under the AJVA.

- o Ratification – that (1) the parties' prior agreements superseded by the AJVA's integration clause were subsequently ratified and approved as operative agreements per their course of dealing; and (2) SPAVI inherited Cinco's ratification of prior agreements as a limitation on any trademark rights it acquired from Cinco and cannot assert greater rights than acquired from Cinco.

- o Promissory Estoppel – that (1) Cinco promised the PCJV Parties may exclusively use the "Potato Corner" marks in the U.S., (2) the PCJV Parties relied on Cinco's promise, and (3) the PCJV Parties were injured from Cinco's promise.

- o Judicial Estoppel – that (1) SPAVI took a prior position in this case disavowing a license agreement—claiming there was only an "agreement to agree" to a license, which, "at best" constitutes an "at-will" license; (2) SPAVI now takes the opposite position affirming that it inherited a license agreement—not a duty to enter into or to negotiate a license agreement, which it alleged in its complaint it attempted to do to no avail; (3) the Court took Cinco's initial position as true and granted SPAVI as preliminary injunction; (4) the positions are inconsistent; and (5) the first position was not taken as a result of ignorance, fraud, or mistake.

- o Laches – that, if SPAVI is not judicially estopped from asserting and did not repudiate and waive a term license with 30/30 royalty

26

sharing obligations as specified in the AJVA, then it (1) unreasonably delayed raising such a claim, and (2) the PCJV Parties have been prejudiced by SPAVI's delay.

o <u>Unclean Hands</u> – that (1) SPAVI engaged in inequitable conduct or inherited inequitable conduct by Cinco as Cinco's assignee sufficient to invoke the doctrine of unclean hands; and (2) SPAVI's or Cinco's inequitable conduct is sufficiently related to the subject matter of SPAVI's claims so as to bar relief.

o <u>*In Pari Delicto*</u> – that (1) SPAVI and Defendants have substantially equal economic strength, (2) SPAVI is at least equally responsible for the harmful conduct as Defendants, and (3) SPAVI was not held by economic pressure to engage in the harmful conduct.

o <u>Mitigation</u> – that (1) SPAVI failed to use reasonable efforts to mitigate damages and (2) the amount by which damages would have been mitigated.

(b)    In brief, the key evidence the PCJV USA Parties rely on for each counterclaim, third party claim and affirmative defense is:

• Claims against SPAVI

a. <u>Intentional Interference with Contractual Relations</u>

o The PCJV USA Parties' contractual relations with the Cinco Group, including Cinco, under the AJVA, including any agreements flowing therefrom, and contractual relations with U.S. franchises in reliance on the AJVA and any related agreements;

o Cinco and SPAVI's coordinated scheme to undermine the Potato Corner USA joint venture and to seize control of the Potato Corner-branded U.S. businesses, while repudiating, *inter alia,* contractual and fiduciary obligations owed to PCJV under the AJVA and disrupting contractual obligations U.S. franchisees owed to PCJV.

The scheme included secret negotiations, a structured asset deal, and a communications campaign premised on misleading statements and omissions about rights to the Potato Corner marks, the existence and terms of the parties' agreed license framework, the governance and consent regime under the AJVA, and U.S. franchisee obligations. The scheme involved fraudulent, deceitful, and unfair conduct in connection with negotiations, including in connection with a tolling and a settlement agreement with a fiduciary of PCJV; and

o The damages the PCJV USA Parties suffered as a result of Plaintiff's intentional interference, including leading to the announcement of its deal with Cinco in December 2021, and how that was a substantial factor in PCJV's inability to thrive, prosper and grow.

b. Inducing Breach of Contract

o Cinco and other counterparties, including U.S. franchisees, owed contractual obligations to PCJV, including duties under the AJVA to comply with consent/no-assignment provisions, to cooperate in and enter a license (if one did not already exist) with the agreed economic/term structure, to act in good faith in completing the license documentation and ongoing performance, and to rebrand as required under U.S. franchisee agreements;

o SPAVI knew of these obligations and intentionally induced Cinco and other counterparties to breach by offering and consummating a transaction structured to evade the AJVA's restrictions; by encouraging repudiation of joint venture governance and the license framework; and by directing communications to counterparties calculated to cause nonperformance or termination;

28

- o The breaches occurred and were a substantial factor in causing PCJV's damages, including the decline of Potato Corner USA compared to Potato Corner USA's historic track record.

c. <u>Tortious Interference with Prospective Economic Advantage</u>

- o PCJV USA Parties' claims for intentional and negligence interference with prospective economic advantage against SPAVI are based on the same contractual relationships and evidence as the PCJV USA Parties' claims for interference with contractual relations and inducing breach of contract, but also include prospective franchisees.

- o One key evidentiary difference is that these claims apply if any of the contracts underlying PCJV USA Parties' contractual relations with any of the Cinco parties or U.S. franchisees is deemed terminable "at-will" for any reason; even in such case, the contractual relationships afforded probable economic advantages to PCJV USA Parties but for SPAVI's tortious interference, including wrongful conduct independent from the interference itself;

d. <u>Aiding and Abetting Breach of Fiduciary Duty</u>

- o Cinco owed fiduciary duties of loyalty, care, and good faith to PCJV as joint venture partner and/or majority participant under the AJVA and the parties' course of dealing;

- o Cinco breached those duties by secretly negotiating with SPAVI to transfer control and rights in derogation of the AJVA; by repudiating joint venture governance and consent/no-assignment provisions; by suppressing the agreed license framework; and by acting in self-interest rather than in furtherance of the PCJV;

- o SPAVI knew of Cinco's fiduciary status and of the facts constituting breach, and gave substantial assistance and

29

encouragement to Cinco's breaches by structuring and consummating the asset deal; coordinating termination and transition messaging; and exploiting the breaches to displace PCJV;

- o SPAVI's assistance was a substantial factor in causing PCJV's damages, as already described above;

- Claims against Cinco

  a. <u>Breach of Fiduciary Duty</u>

   - o Cinco owed fiduciary duties of loyalty, care, and good faith to PCJV as joint venture partner and/or majority participant under the AJVA and the parties' course of performance;

   - o Cinco breached those duties by repudiating and denying its joint venture role; acting contrary to the AJVA's consent/no-assignment and governance provisions; failing to obtain a novation; refusing to cooperate in and enter a license with the agreed terms; suppressing and/or denying the license framework and AJVA restrictions; and conspiring with SPAVI to toll and settle, while SPAVI intended to "terminate" PCJV's rights and sue in bad faith to displace PCJV;

   - o As a direct and proximate result, PCJV suffered damages, and is entitled to equitable relief including disgorgement.

  b. <u>Breach of Contract/Implied Covenant of Good Faith and Fair Dealing</u>

   - o The AJVA is a valid and enforceable contract governing the parties' rights and PCJV performed, or was excused from performing, all conditions precedent;

   - o Cinco (either directly or as an alter ego) breached by violating the consent/no-assignment and governance provisions; by failing or refusing to enter a written license embodying the parties' agreed framework; by failing to exercise best efforts and good faith to complete the license documentation; and by repudiating contractual

30

obligations and agreements, including the AJVA's structure and restrictions and implied covenant not to do anything to unfairly interfere with PCJV's right to receive the benefits of the AJVA and the agreed license framework;

    o   PCJV suffered resulting damages as already discussed.

- Affirmative Defenses

    a.  <u>Abandonment by Naked License</u>:  Both PCJV's first lawful use of the U.S. Potato Corner marks under 15 U.S.C. § 1055 and PCJV's sole continuous use under the AJVA and the parties' course of dealing thereunder was under PCJV's control.

    b.  Waiver:  At all relevant times Cinco and SPAVI, as Cinco's successor-in-interest, knew of Cinco's agreement not to pay 30/30 royalties but to reinvest into PCJV, and both repudiated Cinco's obligation under the AJVA to enter into a written license agreement with PCJV under the terms specified in the AJVA, and waived any right to a written license or royalty payments thereunder.

    c.  <u>Acquiescence</u>: Cinco or SPAVI, as Cinco's successor-in-interest, actively conveyed their consent to PCJV's ongoing long-term use of the Potato Corner marks in accordance with the parties' course of dealing, and PCJV USA Parties relied on the consent and would be substantially prejudiced if long-term rights were withdrawn.

    d.  <u>Ratification</u>: Over the parties' course of dealing after entering into the AJVA, Cinco expressly or impliedly ratified PCJV's LLC agreement, master services agreement, and long-term trademark rights under the AJVA, including the right to enter into long-term U.S. franchisee agreements, right to continue operating PCJV per their agreements, which involved paying upcharges on seasonings and reinvesting in PCJV, and right to a written license under the agreed-upon royalty

31

structure if Cinco wanted to change their operating agreements/course of dealing.

e. <u>Promissory Estoppel:</u>  Cinco promised the PCJV Parties (1) long-term rights to use, license and franchise Potato Corner in the United States and (2) PCJV's President would control those rights; the PCJV Parties relied on Cinco's promise to create, develop and grow Potato Corner USA and would be substantially and unfairly prejudiced if Cinco's promise inherited by SPAVI was not enforced.

f. <u>Judicial Estoppel:</u> SPAVI took the position in its complaint and in moving for a preliminary injunction that the AJVA was merely an "agreement to agree" to a license agreement, that there was no license agreement, that it tried to negotiate a license agreement in good faith with Koren to no avail, and that PCJV Parties had "at best" an "at-will" license to use the Potato Corner marks, which SPAVI terminated on May 31, 2024; SPAVI has also argued that the PCJV Parties falsely informed U.S. franchisees that it had a term license for 20 years plus three 10 year options, and that it properly informed U.S. franchisees of the PCJV Parties' false representation; (2) the Court accepted SPAVI's factual position as true and granted SPAVI a preliminary injunction; (3) to Defendants' prejudice after having commenced a lawsuit and obtained an injunction under the asserted "agreement to agree"/"at best" an "at-will" license premise, SPAVI on the eve of trial has taken the position that PCJV Parties did not falsely represent that the parties had a term license agreement, that SPAVI supposedly honored and accepted the term license as Cinco's assignee, and that the license was not terminable "at-will"; (4) the positions are inconsistent; and (5) the first position was not taken as a result of ignorance, fraud, or mistake.

g. <u>Laches:</u>  If SPAVI is not judicially estopped from asserting and did not

repudiate or waive a term license with 30/30 royalty sharing obligations as specified in the AJVA, then it (1) unreasonably delayed raising such a claim, and (2) the PCJV USA Parties have been prejudiced by SPAVI's delay.

h. <u>Unclean Hands</u> – SPAVI coordinated a scheme with Cinco to undermine the Potato Corner USA joint venture and to seize control of the Potato Corner-branded U.S. businesses, while repudiating contractual and fiduciary obligations owed to PCJV, which scheme included secret negotiations, a structured asset deal, and a communications campaign premised on misleading statements and omissions about rights to the Potato Corner marks, the existence and terms of the parties' agreed license framework, and the governance and consent regime under the AJVA, constitutes inequitable conduct directly tied to SPAVI's alleged acquisition of superior trademark rights in the United States.

i. *In Pari Delicto* – SPAVI at least had substantially equal economic strength as Defendants from March 2022 to present, and is at least equally responsible for any harmful conduct causing it harm or any lost profits from or due to Potato Corner USA, and SPAVI was not under any economic pressure to engage in the harmful conduct.

j. <u>Mitigation</u> – SPAVI failed to use reasonable efforts to mitigate damages given its substantial delay in asserting trademark rights against PCJV, including any royalty obligation, as well as in creating a competing Potato Corner USA franchise; indeed, 100% of its loss could have been avoided through reasonable, honest dealings.

- Common Factual Materials

    a. Testimony regarding how PCJV's LA Group, including Guy Koren and PCJV itself, created Potato Corner USA's kiosk-style/in-line

33

quick-service restaurants and developed the goodwill in the U.S. brand and connected to PCJV's catering and restaurant services;

b. Guy Koren/Jose Magsaysay's communications regarding, *inter alia,* the creation of the PCJV joint venture partnership and limited liability company and agreement granting PCJV long-term trademarks rights and vesting of control in PCJV's President over the use, licensing and franchising of Potato Corner in the United States and Isreal;

c. The AJVA and subsequent ratification of PCJV's other governing documents as set forth in the settlement agreement between the PCJV USA Parties and Cinco parties;

d. The license agreements referenced in the record, including in the complaint, billing records and notary page, and denied by SPAVI as being valid and enforceable;

e. PCJV's FDDs and Board Minutes;

f. Cinco's verified pleadings in the state court action and SPAVI's pleadings here;

g. The tolling agreement, settlement agreement, membership interest purchase agreement, corresponding assignments and parol evidence that resulted in Koren's consolidation of interests of PCJV, Cinco's dismissal with prejudice of asserted claims and release of all known and unknown claims against Koren Parties with no carve out for any claims for damages, preserving only a claim for declaratory relief as to SPAVI's acquisition of international trademark rights, and purchase of all of Cinco's interests in PCJV and all of Cinco's licensing rights "attached" thereto, unencumbered by any claim by any third-party with respect thereto, along with representations and warranties that PCJV did not need any license from any third party to operate its U.S. Potato Corner USA franchise business;

34

h. PCJV's governing documents and testimonial evidence regarding the consideration paid to Cinco thereunder, the absence of any claim against PCJV for breach of contract for allegedly failing to pay royalties, and Cinco's release of all known and unknown claims regarding any alleged failure to pay royalties;

i. Testimonial evidence that there is no privity of contract between SPAVI and PCJV;

j. PCJV's governing documents and testimonial evidence regarding Koren's First Amendment right to stand on his good faith belief regarding PCJV's trademark rights upon the agreed upon regime, whether owned by PCJV or inherited by SPAVI;

k. SPAVI's March 31, 2024 alleged termination of IP rights, including as stated in writing and pled in SPAVI's complaint;

l. SPAVI's decision to continue to sell, and offer to sell, at a profit flavored seasoning package to PCJV until September 2024;

m. Evidence of damages, and expert report, opinion, testimony.

## 8. Issues Remaining

In view of the admitted facts and the elements required to establish the claims, counterclaims, and affirmative defenses, the following issues remain to be tried:

SPAVI Parties identify the following issues remaining for trial:

**Trademark Infringement Both Registered and at Common Law**

- SPAVI's ownership of the marks;
- Whether Cinco or SPAVI abandoned the marks;
- Defendants' infringement of the marks by failing to pay royalties and continuing to use the marks following SPAVI's termination of any license that may have been held by PCJV or any affiliate:
- The harm suffered by SPAVI from Defendants' infringing use;

- Whether Defendants', or any one of them, infringement was intentional, willful, or in bad faith;
- Whether an enhancement of damages is appropriate;
- Whether PCJV, or any of its agents or affiliates, acted with fraud, malice, or oppression;
- The amount of any punitive damages that should be awarded to SPAVI;
- Whether Defendants should be permanently enjoined from using the Asserted Trademarks and anything confusingly similar; and
- Whether this is an exceptional case warranting an award of attorney's fees and, if so, the amount of those attorney's fees.

**Unclean Hands**

- Whether Counterclaimants, their agents, or any one of them engaged in conduct that was wrongful, willful, in bad faith, or grossly negligent; and
- Whether such inequitable conduct is related to the subject matter of Counterclaimants' claims.

**Counterclaims**

- Whether Counterclaimants' claim for interference with contractual relations or inducing breach of contract should be limited to the contracts entered into with Cinco or its affiliates because that is all that Counterclaimants pled in their Counterclaim?
- Whether SPAVI's alleged inducement of a breach of contract was privileged or protected as justified?
- Whether PCJV has specifically identified a unique prospective relationship that has been interfered with?

Defendants identify the following alternative or additional remaining issues:

**Trademark Ownership**

1.    Whether Plaintiff is the owner of—by a valid assignment including transfer of goodwill of the business or businesses connected with—the U.S. marks, especially

where, as here, Plaintiff claimed it did not inherit a control agreement and Plaintiff concedes that Defendants are not its "related companies" and further concedes that Plaintiff did not acquire from any of the Defendants or even the registrant (Cinco) any interest including the right to control the use of the marks in the U.S., and as of and subsequent to the alleged assignments (including before the alleged assignments), neither SPAVI nor the registrant controlled the use of the marks?

2.      Whether Cinco or SPAVI abandoned the right to enforce the trademarks against the PCJV Parties by failing to exercise quality to control over PCJV's restaurant and catering services, including whether SPAVI inherited a naked license?

3.      Whether PCJV has a superior claim to ownership as the first lawful and continuous user of the trademarks if SPAVI is barred from enforcement by some other defense to its efforts to start a competing Potato Corner business in the United States?

**Trademark Use Without Consent**

4.      Whether PCJV Parties' use of the marks after May 31, 2024 was with consent, including as inherited by SPAVI?

5.      Whether, prior to May 31, 2024, SPAVI discharged an assumed obligation to enter or negotiate the written license agreement referenced in the AJVA

6.      Whether Plaintiff, after pleading that Defendants, "at best" enjoyed an "at-will license, which it alleged terminated after it was unable to negotiate a license agreement on May 31, 2024, is judicially estopped, waived or repudiated any claim of breach of a license agreement as a ground for claiming trademark infringement?

7.      Whether any other defense, including acquiescence, ratification, unclean hands, or laches, bar Plaintiff from claiming that PCJV's use of the trademarks after May 31, 2024 was without consent?

**PCJV Parties' Good Faith**

8.      Whether PCJV Parties' use of the U.S. marks after May 31, 2024 was based on their good faith belief their superior pre-existing trademark rights?

37

**Intentional Interference with Contractual Relations Claim Against SPAVI**

9.    Whether SPAVI engaged in conduct that prevented performance of known valid contracts with PCJV or made performance of these contracts more expensive or difficult, including the AJVA and agreements with franchisees (franchise agreements and area development agreements)?

10.    Whether SPAVI knew of these contracts and either intended to disrupt the performance of these contracts or knew that disruption of performance was certain or substantially certain to occur?

11.    Whether Defendants were harmed and whether SPAVI's conduct was a substantial factor in causing Defendants' harm?

12.    Whether SPAVI's actions were privileged or protected as justified?

**Inducing Breach of Contract Against SPAVI**

13.    Whether Cinco and other counterparties owed contractual obligations to PCJV, including (a) duties under the AJVA to comply with consent/no-assignment provisions, to cooperate in and enter a license (if one did not already exist) with the agreed economic/term structure, and to act in good faith in completing the license documentation and ongoing performance, and (b) duties under their term franchise agreements to buy supplies from, pay remuneration to, and remain franchisees of PCJV?

14.    Whether SPAVI knew of these obligations and intentionally induced Cinco and other counterparties to breach their obligations by offering and consummating a transaction structured to evade the AJVA's restrictions; by encouraging repudiation of joint venture governance and the license framework; and by directing communications to counterparties calculated to cause nonperformance or termination?

15.    Whether the breaches occurred and were a substantial factor in causing PCJV's damages?

**Intentional Interference with Prospective Economnic Advantage**

16.    Whether PCJV had existing and probable prospective economic relationships with franchisees, with the probability of future economic benefit to PCJV?

17.    Whether SPAVI knew of these relationships and their probable benefits?

18.    Whether SPAVI intentionally engaged in wrongful conduct designed to disrupt these relationships, including misrepresenting authority and rights to the marks; suppressing and/or denying the agreed license framework; threatening termination or litigation to chill continued dealings; and instructing franchisees to cease doing business with Counterclaimants?

19.    Whether SPAVI's conduct was independently wrongful beyond the interference?

20.    Whether the relationships were disrupted and PCJV was harmed thereby?

**Intentional Interference with Prospective Econonomic Advantage**

21.    Whether PCJV had existing and probable prospective economic relationships with franchisees, with the probability of future economic benefit to PCJV?

22.    Whether SPAVI knew or should have known that, absent due care, its conduct would disrupt those relationships?

23.    Whether SPAVI failed to act with reasonable care by, among other things, making and disseminating inaccurate, incomplete, and misleading statements of right and authority; withholding material information necessary to not mislead; and disregarding known contractual governance and consent regimes?

24.    Whether SPAVI's conduct was independently wrongful beyond the interference?

25.    Whether the relationships were disrupted, causing economic harm to PCJV?

26.    Whether SPAVI's conduct was independently wrongful and/or otherwise not privileged for the same reasons stated above.

**Aiding and Abetting Breach of Fiduciary Duty Against SPAVI**

27.    Whether Cinco owed fiduciary duties of loyalty, care, and good faith to PCJV as joint venture partner and/or majority participant under the AJVA and the parties' course of dealing?

28.    Whether Cinco breached those duties by secretly negotiating with SPAVI to

transfer control and rights in derogation of the AJVA; by repudiating joint venture governance and consent/no-assignment provisions; by suppressing the agreed license framework; and by acting in self-interest rather than in furtherance of the PCJV?

29.    Whether SPAVI knew of Cinco's fiduciary status and facts constituting breach?

30.    Whether SPAVI gave substantial assistance and encouragement to Cinco's breaches by structuring and consummating the asset deal; coordinating termination and transition messaging; and exploiting the breaches to displace PCJV?

31.    Whether SPAVI's assistance was a substantial factor in causing PCJV's damages?

**Breach of Fiduciary Duty Claims Against Cinco**

32.    Whether Cinco owed fiduciary duties of loyalty, care, and good faith to PCJV as joint venture partner and/or majority participant under the AJVA and the parties' course of performance?

33.    Whether Cinco breached those duties by repudiating and denying its joint venture role; acting contrary to the AJVA's consent/no-assignment and governance provisions; failing to obtain a novation; refusing to cooperate in and enter a license with the agreed terms; suppressing and/or denying the license framework and AJVA restrictions; and conspiring with SPAVI to toll and settle, while SPAVI intended to "terminate" PCJV's rights and sue in bad faith to displace PCJV?

34.    Whether as a direct and proximate result, PCJV suffered damages, and is entitled to equitable relief including disgorgement?

**Breach of Contract, Including of the Implied Covenant Good Faith and Fair Dealing, Against Cinco**

35.    Whether PCJV performed, or was excused from performing, all conditions to performance by Cinco (directly or as an alter ego) under the AJVA?

36.    Whether Cinco (directly or as an alter ego) breached the AJVA by violating the consent/no-assignment and governance provisions; failing and refusing to enter a

40

license embodying the parties' agreed framework; failing to exercise best efforts and good faith to complete the license documentation; and repudiating the AJVA's structure and restrictions?

37.     Whether the implied covenant of good faith and fair dealing further obligated Cinco not to do anything to unfairly interfere with PCJV's right to receive the benefits of the AJVA and the agreed license framework?

38.     Whether Cinco breached the covenant by the same conduct?

39.     Whether PCJV suffered damages thereby?

**Remedies to Defendants**

40.     The amount of any damages to that should be awarded to Defendants and against SPAVI and/or Cinco?

41.     Whether SPAVI and/or Cinco acted with oppression, fraud or malice; if so, the amount of punitive damages that should be awarded to Defendants?

42.     Whether PCJV should be declared the owner of the U.S. marks and Counter-Defendant, all Third Party Defendants and those in active concert or participation should be permanently enjoined from using the trademark marks and anything confusingly similar in the United States.

**9. All discovery is complete.**

**10.Rule 26(a)(3) disclosures**.

SPAVI contends that all disclosures under Federal Rule of Civil Procedure 26(a)(3) have not been made. Defendants dispute that contention.

The updated joint exhibit list of the parties has been filed under separate cover as required by Local Rule 16-6.1. Unless all parties agree that an exhibit shall be withdrawn, all exhibits will be admitted without objection at trial, except those exhibits listed below:

(a) SPAVI objects to the following Exhibit Nos. on the following grounds:

| Ex. | Description | Objection[2] |
|---|---|---|
| 36. | July 31, 2024 Email from K. Hsu Re: RE: SPAVI Dkt. 44-45 | F, H |
| 38. | November 12, 2019 Verified Third Amended Cross-Complaint filed by Guy Koren in Cinco Corp. v. Koren et al., Los Angeles Superior Court, Case No. BC701075 Dkt. 44-46 | H, P |
| 45. | Declaration of Maria Rosario L. Ybanez (October 10, 2024) Dkt. 44-2 | H. Third-Party Witness |
| 46. | Declaration of Jose P. Magsaysay (October 10, 2024) Dkt. 44-3 | H. Cinco employee |
| 48. | Declaration of Yiow Leong Tan (October 10, 2024) Dkt. 44-5 | H. SPAVI employee |
| 49. | Declaration of Jose Arnold T. Alvero (October 10, 2024) Dkt. 44-6 | H. SPAVI employee |
| 50. | Declaration of Jorge Ma. Q. Concepcion (October 10, 2024) Dkt. 44-7 | H. SPAVI employee |
| 53. | WhatsApp Messages between Alon Koren and Catherine Joy Antonio Dkt. 37-4 | Foundation and hearsay. |
| 54. | July/August 2024 Emails with Catherine Joy Antonio Dkt. 37-5 | Foundation and hearsay. |
| 56. | Rada Kong Decl. Dkt. 37-7 | H. PCJV franchisee |
| 66. | June 6, 2018 Reporter's Transcript Dkt. 37-17 | H, P |
| 1007. | May 2, 2017 Email from Ismael G. Khan to Erlinda Bartolome RE Letter of Appreciation to Guy Koren | H |
| 1018. | May 18, 2010 Email from Erlinda Bartolome to Amit Nemanim, et al. RE The First Board Meeting of PCE Management on May 30, 2010 | H |
| 1030. | October 1, 2010 Email from Kim Lambert to Erlinda Bartolome RE<br><br>Franchisor Entity Not Holding Any Assets to Any Stores | F, H |
| 1038. | DLA Piper's August 16, 2011 Invoice (Invoice No. 2609883) | F, H |
| 1039. | DLA Piper's August 16, 2011 Invoice (Invoice No. 2609884) | F, H |

---

[2] Ledger ("F") foundation, ("R") relevance, ("P") Rule 403, ("H") hearsay not within an exception, ("C") improper compilation of documents, ("O") impermissible opinion, and ("S") settlement communication.

| Ex. | Description | Objection[2] |
|---|---|---|
| 1040. | DLA Piper's August 16, 2011 Invoice (Invoice No. 2609885) | F, H |
| 1041. | DLA Piper's August 16, 2011 Invoice (Invoice No. 2609887) | F, H |
| 1069. | Amir Jacoby's Privilege Log | R, P |
| 1076. | Verified Complaint of Cinco Corporation, filed April 10, 2018 | R, P |
| 1077. | First Amended Complaint of Cinco Corporation and Potato Corner International, Inc., filed August 24, 2018 | R, P |
| 1078. | Verified Second Amended Complaint of Cinco Corporation and Potato Corner International, Inc., filed December 18, 2018 | R, P |
| 1079. | Verified Third Amended Complaint of Cinco Corporation and Potato Corner International, Inc., filed June 28, 2019 | R, P |
| 1080. | Verified Cross-Complaint of Cross-Complainant Guy Koren, filed May 8, 2018 | R, P |
| 1082. | Cross-Complaint Guy Koren's Verified Second Amended Cross- Complaint, filed July 22, 2019 | R, P |
| 1083. | Defendant and Cross-Complainant Guy Koren's Opposition to Brief to Cinco Corporation's *Ex Parte* Application for Order to Show Cause Re Preliminary Injunction | R, P |
| 1088. | Plaintiff Cinco Corporation and Potato Corner International, Inc.'s Motion to File Under Seal Certain Exhibits In Support of Motion for Summary Adjudication, filed December 19, 2018 | R, P |
| 1134. | *9/20/24 Declaration of Guy Koren | C |
| 1135. | 6/19/18 Order Denying Cinco's Request for Injunctive Relief and Granting Koren's Request for Injunctive Relief | R, P |
| 1136. | 6/4/19 Order Granting Motion to Quash | R, P |
| 1137. | 8/30/19 Order Denying Potato Corner International's Motion for Preliminary Injunction | R, P |
| 1138. | 5/28/24 Minutes Regarding Trial Readiness Conference | R, P |
| 1139. | 5/14/18 Order Granting Ex Parte Application for Temporary Restraining Order in Case No. BC701075 | R, P |
| 1141. | 6/4/19 Order Granting Plaintiffs' Motion to Quash Subpoenas in Case No. BC701075 | R, P |

43

| Ex. | Description | Objection[2] |
|-----|-------------|------------|
| 1143. | 5/28/24 Order Dismissing Case No. BC701075 | R, P |
| 1146. | PCJV's Growth Chart | F, R, P, H |
| 1148. | *11/19/24 Declaration of Barry Kurtz | H, P, O |
| 1149. | *11/19/24 Declaration of Ashley Grudnowski | H, P |
| 1153. | *12/01/2024 Declaration of Rada Kong | H, P |
| 1160. | *1/10/25 Declaration of Adam Mandel | H, O |
| 1161. | *1/10/25 Declaration of Ashley Grudnowski | H |
| 1164. | *1/10/25 Declaration of Barry Kurtz | H, O |
| 1177. | *12/20/24 Declaration of Jason Engel | H, P |
| 1178. | Engel Expert Report of JAE 2/28/25 | H, P |
| 1352. | *1/12/21 Declaration of Inbal Jacoby | H, P |
| 1353. | 1/13/21 First Amended Cross-Complaint | H, P |
| 1354. | 2/25/22 A. Beral Letter to M. Murphy RE Cinco v. Koren | H |
| 1355. | 6/10/20 Cinco's and PCI's Verified Answer to TACC | P |
| 1359. | *8/19/22 M. Reeve Decl. | R, P, H |
| 1360. | 5/14/18 Order Granting PCJV's Temporary Restraining Order Against Cinco | P |
| 1364. | *12/8/20 A. Jacoby Declaration | H |
| 1365. | *12/16/20 Supplemental A. Jacoby Declaration | H |
| 1371. | *3/1/21 M. Tung Declaration | R, P, H |
| 1372. | *1/1/21 M. Reeve Declaration | R, P, H |
| 1373. | *12/31/20 D. Xie Declaration | R, P, H |
| 1374. | *1/4/21 E. Garcia Declaration | R, P, H |
| 1375. | *1/5/21 G. Koren Declaration in Opposition to A. Jacoby's PI Motion | H, C |
| 1377. | *8/13/20 G. Koren Declaration | R, P |
| 1378. | 7/24/19 E. Bartolome Declaration | H, C |

| Ex. | Description | Objection[2] |
|---|---|---|
| 1379. | *7/24/19 G. Koren Declaration | C |
| 1380. | *6/23/19 I. Jacoby Declaration | H, C |
| 1381. | *6/23/19 A. Jacoby Declaration | H, C |
| 1382. | *6/14/19 B. Kurtz Declaration | P, H, C, O |
| 1383. | *6/17/19 A. Grudnowski Declaration | P, H, C, |
| 1384. | *6/17/19 A. Koren Declaration | P, H |
| 1385. | 6/17/19 T. Hodgson Declaration | P, H |
| 1386. | 6/16/19 E. Bartolome Declaration | P, H, C |
| 1387. | *6/17/19 G. Koren Declaration | P, H, C |
| 1388. | *12/3/18 A. Jacoby Declaration | P, H, C |
| 1389. | *11/27/18 G. Koren Declaration | R, P, H, C |
| 1390. | *11/14/18 A. Jacoby Verified Response to Demurrer | R, P, H |
| 1394. | *6/13/18 G. Koren Declaration | H, C |
| 1396. | *5/31/18 M. Li Declaration | R, P, H |
| 1397. | *5/26/18 M. Zhang Declaration | R, P, H |
| 1398. | *5/28/18 F. Shaikh Declaration | R, P, H |
| 1399. | 5/29/18 E. Bartolome Declaration | P, H, C |
| 1400. | 5/30/18 T. Hodgson Declaration | P, H, |
| 1403. | *5/23/18 M.A. Victor Declaration | F, P, H |
| 1405. | *5/17/18 Supplemental G. Koren Declaration | P, H, C |
| 1406. | *5/9/18 A. Grudnowski Declaration | R, P, H |
| 1407. | *5/9/18 V. Lai Declaration | R, P, H |
| 1408. | *5/10/18 E. Garcia Declaration | R, P, H |
| 1409. | *5/3/18 T. Macaraig Declaration | R, P, H |
| 1410. | *2018.05.10 M.A. Victor Declaration | R, P, H |
| 1411. | *5/10/18 J. Konstantinides Declaration | R, P, H |

45

| Ex. | Description | Objection[2] |
|---|---|---|
| 1412. | *5/10/18 A. Jacoby Declaration | R, P, H |
| 1413. | *5/10/18 G. Koren Declaration | R, P, H |
| 1415. | 5/8/18 G. Koren Verified Answer to Cinco Complaint | R, P, H |
| 1417. | 6/14/18 A. & I. Jacoby Verified Answer to G. Koren CC | R, P, H |
| 1418. | 7/22/19 PCJV Verified Answer to Cinco & PCI TAC | R, P, H |
| 1419. | 7/18/19 G. Koren Verified Answer to Cinco & PCI TAC | R, P, H |
| 1421. | 11/12/19 G. Koren Verified TACC | R, P, H |
| 1422. | 6/9/20 Cinco & PCI Verified Answer to G. Koren TACC | R, P, H |
| 1423. | 8/31/20 A. & I. Jacoby Verified Answer to G. Koren's TACC | R, P, H |
| 1424. | 8/31/20 A. & I. Jacoby Verified CC | R, P, H |
| 1425. | 9/18/20 A. & I. Jacoby Verified Answer to 4th Amended CC | R, P, H |
| 1426. | 10/1/20 A. & I. Jacoby Verified Cross-Complaint | R, P, H |
| 1427. | 11/15/24 A. Beral email to M. Murphy RE PCJV/SPAVI | S, P, H |
| 1432. | Exh. A 5/4/23 letter | F, S, P, H |
| 1433. | Exh. C Graph of PCJV's Total Open Store Count from 2010-2024 | F, P, H |
| 1438. | *11/19/24 A. Mandel Declaration | H, P, C |
| 1442. | Exh. B 2022-2023 Net Royalities for Multiple PCJV Locations | F, P, H |
| 1445. | Exh. 1 Jason A. Engel Professional Qualifications | F, H |
| 1446. | Exh. 2 List of Cases Involving Expert Testimony By Jason Engel | F, P, H |
| 1447. | Exh. 3 Shakey's pizza Asia Ventures, Inc. v. PCJV USA, LLC et al Documents Reviewed and Considered as of 2/25/25 | F, P, H |
| 1545. | 11/18/24 - Estimate Cost of Removal of Existing Signage - Potato Corner; Comfort Messers DBA MDR Builders LLC | F, H |

(b) In accordance with the Updated Challenged Exhibits Table, the PCJV Parties

46

object to the following Exhibits on the following grounds:

| Ex. | Description | Objections |
|---|---|---|
| 32 | April 15, 2024 Statement of Managements Responsibility for Consolidated Financial Statements Dkt. 44-41 | Δ: This proffered exhibit appears to be a third-party independent audit report for Plaintiff's international operations. This is not relevant and is hearsay. FRE 401-402, 801. To the extent proffered to serve a basis for an opinion (e.g., the value of trademarks associated with the United States business), Plaintiff has not designated an expert witness to render opinions. FRE 701. Contrary to Plaintiff's position, a lay witness cannot opine as to valuation models. *See FiTeq INC v. Venture Corp.*, Case No. 13-cv-01946-BLF, 2016 WL 683256, *7 (N.D. Cal.) (excluding valuation testimony by lay witnesses who are not valuation experts). |
| 104 | June 10, 2019 email re answers to questions | Δ: This appears to be an inadvertently produced document by certain counsel in the state court action. The face of the document clearly shows that it comprises answers from Alon Koren to interrogatories. Alon Koren, who also was a party sued by Cinco in the state court action, was also in a common interest with Guy Koren and other parties. Therefore, the communication also constitutes a common interest communication. Beyond that, PCJV USA Parties cannot ascertain the relevance of this document. FRE 401-402. It also should be barred by FRE 403 for being prejudicial and necessitating undue consumption of time. |
| 107 | Online customer reviews | This document is a compilation of inadmissible hearsay consisting of selective online Yelp complaints that are made out of court and offered for the truth of the matter asserted. FRE 801; *see, e.g.*, Exh. No. 107 at 1-2, 3, 7, 9. Further, many of the reviews are irrelevant, unduly prejudicial, and would |

| Ex. | Description | Objections |
|-----|-------------|------------|
|  |  | necessitate unnecessary consumption of time to rebut. FRE 401, 402, 403. Online reviews of businesses must be authenticated to show (1) they were actually made by the reviewing customers and (2) an accurate representation of online reviews. *See Wady v. Provident Life & Accident Ins. Co. of Am.*, 216 F. Supp. 2d 1060, 1064-165 (C.D. Cal. 2002). None of the purported reviewers are listed as witnesses expected to testify at trial and, thus, cannot authenticate the reviews (unless Plaintiff is willing to admit that its own agents submitted these reviews). |
| 108-152 | Newly Proffered Exhibits | Δ: <br><br> Violates Dkt. 336. |

**11.    Witness lists of the parties have been filed with the Court**.

Only the witnesses identified in the Updated Joint Witness List will be permitted to testify (other than solely for impeachment), though, as noted in the Updated Joint Witness List, SPAVI has objected to a number of the PCJV Parties' witnesses on the grounds that such witnesses were not identified and disclosed as a potential witness in the PCJV Parties' Rule 26 Disclosure (Dkt. 173-6). To the extent the PCJV Parties attempt to argue that these witness were included as part of a disclosed category of witnesses (*i.e.*, a Rule 30(b)(6) witness of a party entity), these specific witnesses were never specifically disclosed by name as required under Rule 26(a)(1)(A)(i) even though the PCJV Parties knew these witnesses would be the Rule 30(b)(6) witness for the respective party entity and is thus a violation of Rule 26(a)(1)(A)(i). Given this violation, SPAVI contends exclusion of these witnesses is proper under Federal Rule of Civil Procedure 37(c)(1).

Each party intending to present evidence by way of deposition testimony has marked such depositions in accordance with Local Rule 16-2.7.

**12.    The following law and motion matters and motions *in limine*, and no others, are pending or contemplated**:

SPAVI is contemplating a second motion for contempt in the absence of a prompt trial date because some of the PCJV Parties continue to use the Potato Corner trademarks despite this Court's preliminary injunction.

The parties have filed motions *in limine*. All parties may make appropriate motions at trial.

**13.    Bifurcation of the following issues for trial is ordered**:

SPAVI contends that if the jury returns a finding of fraud, malice, or oppression on SPAVI's common law trademark infringement cause of action, the amount of punitive damages should be bifurcated.  Additionally, all equitable claims should be bifurcated, including any claim for a finding on enhancement and an award of attorney's fees under the Lanham Act, as well as Defendants claims for declaratory relief and for unfair competition as well as several of its affirmative defenses.

Defendants do not believe that punitive damage issues should be bifurcated and further contend that the SPAVI Parties waived any right to seek bifurcation of punitive damages. *See, e.g.*, Dkt. 199 at 18 ("Bifurcation of *punitive* damages is ***inappropriate*** here … This case can, and should, be trial all at once.") (original emphasis).

Finally, Defendants previously had requested a bifurcated trial limited to liability only (first isolating threshold findings on infringement elements of ownership/assignment and without consent). *See* Dkt. 333 at 11. The Court stated at Dkt. 336 that the parties "should proceed on the assumption that trial will not be bifurcated" with stated reasons while leaving open the potential for a joint request if the parties could agree and demonstrate to the Court's satisfaction that it would be more efficient. *Id.* at 2.

**14.    The foregoing admissions having been made by the parties, and the parties having specified the foregoing issues remaining to be litigated, this Final Pretrial Conference Order shall supersede the pleadings and govern the course of the trial of this cause, unless modified to prevent manifest injustice.

49

DATED: _____

_____
Stanley Blumenfeld, Jr.
United States District Judge

Approved as to form and content.

Dated:  December 29, 2025          /s/ John J. Shaeffer_____
                                  John J. Shaeffer
                                  Matthew Follett
                                  Meeghan H. Tirtasaputra
                                  *Attorneys for Plaintiff and*
                                  *Counterclaim Defendant, and Third*
                                  *Party Defendants*

Dated:  December 29, 2025          /s/ Arash Beral_____
                                  Arash Beral
                                  Todd M. Malynn
                                  Jamison T. Gilmore
                                  *Attorneys for Defendants,*
                                  *Counterclaimants, and Third Party*
                                  *Plaintiffs*

# **ATTESTATION**

Pursuant to Local Rule 5-4.3.4, the filer attests that all signatories listed, and on whose behalf the filing is submitted, concurs in the filing's consent and have authorized the filing.

Dated: December 29, 2025

FOX ROTHSCHILD LLP

*/s/ John J. Shaeffer*
John J. Shaeffer
*Attorneys for Plaintiff and Counterclaim
Defendant, and Third Party Defendants*

[PROPOSED] UPDATED PRETRIAL CONFERENCE ORDER          CASE NO. 2:24-CV-04546-SB(AGRX)
180651808.1

## **CERTIFICATE OF SERVICE**

The undersigned certifies that, on December 29, 2025, the foregoing document was electronically filed with the Clerk of the Court for the United States District Court, Central District of California, using the Court's ECF filing system. I further certify that all counsel for all parties to this action are registered CM/ECF users and that service will be accomplished by the CM/ECF system.

I certify under penalty of perjury that the foregoing is true and correct.


Dated:  December 29, 2025

**FOX ROTHSCHILD LLP**


 */s/ John J. Shaeffer*
John J. Shaeffer
*Attorneys for Plaintiff and Counterclaim Defendant, and Third Party Defendants*

52